RECEIVED
CLERK'S OFFICE
2000 JUN 26 P 3: 08

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN 26 2000

FILED
CLERK'S OFFICE

PLEADING NO. 7

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL-1358—In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

## SUNOCO, INC. (R&M)'S RESPONSE TO MOTION OF DEFTS. BP AMOCO CORPORATION, AMOCO OIL COMPANY, ATLANTIC RICHFIELD COMPANY, CITGO PETROLEUM CORPORATION AND CHEVRON U.S.A., INC., FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK OR THE SOUTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Sunoco, Inc. (R&M) ("Sunoco")[1] respectfully submits this response to the motion by BP

Amoco Corporation, Amoco Oil Company, Atlantic Richfield Company, Citgo Petroleum

Corporation, and Chevron U.S.A., Inc. ("Moving Defendants") for coordinated and consolidated

---

[1]The First Amended Complaint in <u>Berisha et al. v. Amerada Hess et al.</u>, No. 00 CIV 1898 (S.D.N.Y. filed Mar. 10, 2000) names Sunoco, Inc. as a Defendant. In reality, the proper party is Sunoco, Inc. (R&M).

OFFICIAL FILE COPY IMAGED JUN 27 '00

pretrial proceedings pursuant to 28 U.S.C. § 1407 and Rules 7.1 and 7.2 of the Rules of

Procedure of the Judicial Panel on Multidistrict Litigation.[2]   Sunoco responds to the Moving

Defendants' statements as follows:

       1.     Sunoco denies that it is a defendant in two methyl tertiary butyl ether

("MTBE") putative class actions.

       2.     Sunoco admits the averments in Paragraph 2, except that Sunoco denies that it is a

named defendant in <u>England, et al. v. Atlantic Richfield Co., et al.,</u> File Nos. 00-370-WDS, 00-

371-DRH (S.D. Ill.).

       3.     Sunoco denies that these actions are substantially identical as alleged in Paragraph

3.  While there are common factual issues, these do not predominate over the localized issues

specific to each action.

            a.     Sunoco denies that both actions seek relief on behalf of virtually
                identical classes. The class proposed in <u>Berisha</u> is composed solely
                of property owners with wells in New York.  The class proposed in
                <u>England</u> is composed of property owners with wells in sixteen
                states other than New York.

            b.     Sunoco admits the allegations in subparagraph 3(b).

            c.     Sunoco admits that both actions allege claims for conspiracy and
                negligence, but denies that both actions contain "multiple other practically
                identical causes of action." <u>England</u> contains an additional cause of action

---

[2]     Sunoco is also submitting, herewith, its "Brief in Opposition to Motion of Defts.
BP Amoco Corporation, Amoco Oil Company, Atlantic Richfield Company, Citgo Petroleum
Corporation and Chevron U.S.A., Inc., for Transfer of Actions to the Southern District of New
York or the Southern District of Illinois for Coordinated or Consolidated Pretrial Proceedings
Pursuant to 28 U.S.C. § 1407."

for strict liability. <u>England</u> Complaint ¶ 63.  <u>Berisha</u> contains far more additional causes of action.[3]

    d.      Sunoco admits the allegations in subparagraph 3(d).

    4.      Sunoco admits that the two Complaints allege some common questions of fact, but denies that these common issues predominate:

    a.      Sunoco denies that the questions of fact identified in subparagraph 4(a) are common questions of fact.  The factual issue in the <u>Berisha</u> matter is specific only to New York state.  The factual issue in <u>England</u> is specific only to the sixteen <u>England</u> States.

    b.      Sunoco admits that the questions of fact identified in subparagraph 4(b) are common to both cases.

    c.      Sunoco denies that the questions of fact identified in subparagraph 4(c) are common to both cases.  The Defendants in <u>Berisha</u> are different from those in <u>England</u>.

    d.      Sunoco denies that the questions of  fact identified in subparagraph 4(d) are common to both cases.   The Defendants in <u>Berisha</u> are different from those in <u>England</u>. Additionally, the substantive law of the differing states will determine what facts are necessary to constitute a conspiracy.

    e.      Sunoco admits that the questions of fact identified in subparagraph 4(e) are common to both cases, but denies that the averment pertaining to the American Petroleum Institute is alleged in the paragraph cited.

    f.      Sunoco admits the statement in subparagraph 4(f).

---

[3]     The additional causes of action in <u>Berisha</u> are: strict liability for failure to warn; strict liability for design defect; strict liability for misrepresentations; deceptive business acts and practices in violation of New York General Business Law § 349; public nuisance;  private nuisance; and fraud.  <u>Berisha</u> First Amended Complaint ¶¶ 157, 176, 182, 189, 194, 203, 210, 224.

5.    Sunoco admits that the Complaints in England and Berisha assert common

questions of fact for class purposes as stated in Paragraph 5, but denies that those common

questions predominate over the individualized questions of fact for class purposes.

     a.    Sunoco admits that the question of fact identified in subparagraph 5(a) is alleged in England, but denies that it is alleged in the paragraph cited.

     b.    Sunoco admits that the question of fact identified in subparagraph 5(b) is alleged in England.

     c.    Sunoco admits that the question of fact identified in subparagraph 5(c) is alleged in England.

Sunoco does not admit that the predominance of the class action allegations in Berisha "mirror"
those in England:

     a.    Sunoco admits that the question of fact identified in the second subparagraph 5(a) is alleged in Berisha.

     b.    Sunoco admits that the question of fact identified in the second subparagraph 5(b) is alleged in Berisha.

     c.    Sunoco admits that the question of fact identified in the second subparagraph 5(c) is alleged in Berisha.

6.    Sunoco denies the statement in Paragraph 6.  Transfer of Berisha and England is

not warranted.

7.    Sunoco denies that these putative class actions raise substantially identical claims:

Berisha raises factual questions particular to Plaintiffs and class members in New York only,

including:

- whether the private water supplies of Plaintiffs and all residents of New York who fall into the Plaintiff class have been or are threatened to be contaminated by MTBE.  Berisha First Amended Complaint ¶ 149 (e).

- whether all Plaintiffs and all residents of New York who fall into the Plaintiff class have sustained damages.  Berisha First Amended Complaint ¶ 149 (x).

- whether property values throughout New York state have been diminished due to MTBE contamination.  <u>Berisha</u> First Amended Complaint ¶ 149 (v).

- whether defendants violated New York's common law and laws regulating business practices. <u>Berisha</u> First Amended Complaint ¶¶ 149 (n), (o).

<u>England</u> raises factual questions particular to Plaintiffs and class members in sixteen state

other than New York ("<u>England</u> States"), including:

- Whether members of the proposed classes in the sixteen <u>England</u> States, which do not include New York, have or will be  required to conduct tests of their water supplies. <u>England</u> Complaint ¶¶ 59, 64, 74.

- Whether MTBE has contaminated the water wells of all Plaintiff class members in the sixteen <u>England</u> States, which do not include New York. <u>England</u> Complaint ¶ 60, 65, 75.

- Whether MTBE contamination of groundwater in the <u>England</u> States has required residents in those sixteen states, which do not include New York, to obtain alternative sources of water, such as bottled water. <u>England</u> Complaint ¶ 60, 65, 75.

- Whether there are facts sufficient to prove a conspiracy under the laws of each of the sixteen <u>England</u> States. <u>England</u> Complaint ¶ 73, 128, 182.

Sunoco denies that the two putative class actions seek substantially identical relief.  While both

proposed classes seek the establishment of a fund for a state-wide sampling program (<u>Berisha</u>

First Amended Complaint at 50 ¶ 2; <u>England</u> Complaint ¶ 3(b)) and compensatory damages for

lost property values (<u>Berisha</u>, First Amended Complaint at 50 ¶ 4; <u>England</u>, Complaint at 39,

"Wherefore" clause), the relief sought in <u>Berisha</u> is far different from that in <u>England</u>:

The putative classes in <u>Berisha</u> seek additional relief including the following:

- An order requiring defendants to issue warnings to downstream handlers and the general public in New York, and to conduct or pay for a court-supervised statewide program of public education.  <u>Berisha</u> First Amended Complaint at 50 ¶ 3.

- Compensatory damages for loss of use and enjoyment of water and property, the cost of clean-ups of all class members' well water known or determined to be contaminated with concentrations in excess of two (2) parts per billion MTBE, and incidental and consequential damages in an amount to be determined by the Court or a jury. <u>Berisha</u> First Amended Complaint at 50 ¶ 4.

- Imposition of a constructive trust and asset freeze upon the profits received arising out of the sale of MTBE or gasoline containing MTBE, in order to assure that Plaintiffs and the Plaintiff class have an adequate remedy at law. <u>Berisha</u> First Amended Complaint at 50 ¶ 5.

- Punitive damages in an amount sufficient to punish Defendants and to deter such conduct in the future. <u>Berisha</u> First Amended Complaint at 50 ¶ 6.

- Interest on damages. <u>Berisha</u> First Amended Complaint at 50 ¶ 7.

   The putative classes in <u>England</u> seek the following additional relief:

- Compensatory damages associated with supplying bottled water and/or providing a permanent hook up to the local municipal or private water system, or providing a filter system to redress contamination by MTBE. <u>England</u> Complaint ¶ 3 (b).

Sunoco denies that these putative class actions contain a "core" of identical Defendants: There are sixteen named Defendants in <u>Berisha</u> and twelve in <u>England</u>.  Only seven Defendants are common to both <u>Berisha</u> and <u>England</u> and only five of those seven are partaking in this motion. Therefore, less than half of the Defendants named in both <u>Berisha</u> and <u>England</u> bring this motion and less than half the <u>Berisha</u> Defendants are also named in <u>England</u>.

   **WHEREFORE**, Sunoco respectfully requests that the Panel deny the Defendants' Motion For Transfer of Actions To the Southern District of New York or the Southern District of Illinois For Coordinated or Consolidated Pretrial Proceedings.[4]

---

[4]   However, should the Panel grant the motion, Sunoco respectfully requests that the coordinated or consolidated pre-trial proceedings be administered in the Southern District of New York.

Dated: June 26, 2000                          Respectfully submitted,


                                              John S. Guttmann
                                              BEVERIDGE & DIAMOND, P.C.
                                              1350 I Street, N.W., Suite 700
                                              Washington, D.C. 20005-3311
                                              (202) 789-6020

                                              ATTORNEYS FOR
                                              SUNOCO, INC. (R&M)


Of Counsel

Sy Gruza
Heather M. Andrade
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue
15th Floor
New York, NY 10002
(212) 702-5400


N:\09\43\010522\Plg\MDL motion FINAL.wpd



JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN 26 2000

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

---

MDL-1358—In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

---

**SUNOCO, INC. (R&M)'S BRIEF IN OPPOSITION TO MOTION OF DEFTS. BP
AMOCO CORPORATION, AMOCO OIL COMPANY, ATLANTIC
RICHFIELD COMPANY, CITGO PETROLEUM CORPORATION AND
CHEVRON U.S.A., INC., FOR TRANSFER OF ACTIONS TO THE
SOUTHERN DISTRICT OF NEW YORK OR THE SOUTHERN
DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED
<u>PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407</u>**

BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C.  20005
(202) 789-6000

Attorneys for
SUNOCO, INC. (R&M)

June 26, 2000

RECEIVED
CLERK'S OFFICE
2000 JUN 26  P 3: 07

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# **TABLE OF CONTENTS**

**Page
Number**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    THE PUTATIVE CLASS ACTIONS SHOULD NOT BE TRANSFERRED OR
      CONSOLIDATED BECAUSE LOCALIZED ISSUES PREDOMINATE  . . . . . . . . . 6

      A.    The Individualized Issues Raised By the Plaintiffs in the Sixteen <u>England</u>
            States and the New York Plaintiffs in <u>Berisha</u> Predominate Over Common
            Questions Concerning the Nature of MTBE . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    There is No Threat of Inconsistent Pretrial Class Determinations Because
            the Proposed Classes in <u>Berisha</u> and <u>England</u> Do Not Overlap . . . . . . . . . . . . 10

II.   THE PANEL SHOULD DENY THE MOTION BECAUSE THE TRIAL
      COURTS IN THESE ACTIONS CAN AND WILL CONTROL DUPLICATIVE
      DISCOVERY WITHOUT TRANSFER AND CONSOLIDATION . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**Page
Number**

### FEDERAL CASES

In re Asbestos and Asbestos Insulation Material Products Liability Litigation,
        431 F. Supp. 906 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

In re Asbestos Products Liability Litigation (No. VI),
        771 F. Supp. 415 (J.P.M.L. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Brandywine Associates Antitrust and Mortgage Foreclosure Litigation,
        407 F. Supp. 236 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Cable Tie Patent Litigation,
        487 F. Supp. 1351 (J.P.M.L. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

In re Commercial Lighting Products Inc. Contract Litigation,
        415 F. Supp. 392 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

In re Eli Lilly and Co. Patent Litigation,
        446 F. Supp. 242 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

In re Environmental Protection Agency Pesticide Listing Confidentiality Litigation,
        434 F. Supp. 1235 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re First National Bank, Heavener, Oklahoma Securities Litigation,
        451 F. Supp. 995 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Garrison Diversion Unit Litigation,
        458 F. Supp. 223 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12

In re Grand Funk R.R. Trademark Litigation,
        371 F. Supp. 1084 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Harmony Loan Company, Inc., Securities Litigation,
        372 F. Supp. 1406 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Interstate Medicaid Patients at Good Samaritan Nursing Center,
415 F. Supp. 389 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re McDonnell Douglas 'Wild Weasel AN/APR-38' Contract Litigation,
415 F. Supp. 387 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Plumbing Fixture Cases,
298 F. Supp. 484 (J.P.M.L. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Public Air Travel Tariff Litigation,
360 F. Supp. 1397 (J.P.M.L. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Royal Typewriter Co. (Royal Bond Copier) Breach of Warranty Litigation,
435 F. Supp. 925 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

In re United Gas Pipe Line Company Litigation,
391 F. Supp. 774 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Westinghouse Electric Corp. Employment Discrimination Litigation,
438 F. Supp. 937 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

## DOCKETED CASES

Berisha v. Amerada Hess, No. 00 CIV 1898 (S.D.N.Y. filed Mar. 10, 2000) . . . . . . . . .  passim

England v. Atlantic Richfield Co., Nos. 00-370-WDS, 00-371-DRH (S.D. Ill.) . . . . . . . .  passim

## FEDERAL STATUTES

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

## MISCELLANEOUS

17 James Wm. Moore et al., Moore's Federal Practice, §§ 112.04[1][a], [e] . . . . . . . . . . . . 5, 8

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN 26 2000

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

---

MDL-1358—In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

---

## SUNOCO, INC. (R&M)'S BRIEF IN OPPOSITION TO MOTION OF DEFTS. BP AMOCO CORPORATION, AMOCO OIL COMPANY, ATLANTIC RICHFIELD COMPANY, CITGO PETROLEUM CORPORATION AND CHEVRON U.S.A., INC., FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK OR THE SOUTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Sunoco, Inc. (R & M) ("Sunoco")[1] respectfully submits this Brief in Opposition to the

motion by BP Amoco Corporation, Amoco Oil Company, Atlantic Richfield Company, Citgo

---

[1]      The First Amended Complaint in <u>Berisha et al. v. Amerada Hess et al.</u>, No. 00 CIV 1898 (S.D.N.Y. filed Mar. 10, 2000) names Sunoco, Inc. as a Defendant.  In reality, the property party is  Sunoco, Inc, (R&M).

Petroleum Corporation, and Chevron U.S.A., Inc. ("Moving Defendants") for coordinated and consolidated pretrial proceeding pursuant to 28 U.S.C. § 1407.[2]

## INTRODUCTION

Two proposed class actions are currently pending before two separate federal courts in which the Plaintiffs allege property damage due to methyl tertiary butyl ether ("MTBE") contamination. <u>Berisha v. Amerada Hess</u>, No. 00 CIV 1898 is pending in the Southern District of New York, and <u>England v. Atlantic Richfield Co.</u>, Nos. 00-370-WDS, 00-371-DRH (S.D. Ill.) is pending in the Southern District of Illinois. There are sixteen named Defendants in <u>Berisha</u>[3] and twelve in <u>England</u>.[4] There are seven Defendants common to both <u>Berisha</u> and <u>England</u>.[5] Of those seven, five Defendants[6] move the Judicial Panel on Multidistrict Litigation ("Panel") to

---

[2]   Sunoco is also submitting, herewith, its "Response to Motion of Defts. BP Amoco Corporation, Amoco Oil Company, Atlantic Richfield Company, Citgo Petroleum Corporation and Chevron U.S.A., Inc., for Transfer of Actions to the Southern District of New York or the Southern District of Illinois for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407."

[3]   The <u>Berisha</u> defendants are: Amerada Hess Corporation; Atlantic Richfield Company; BP Amoco Corporation; Chevron U.S.A., Inc., Citgo Petroleum Corporation; Coastal Corporation; Exxon Corporation; Gulf Oil Ltd Partnership; Mobil Oil Corporation; Motiva Enterprises, LLC; Shell Oil Products Company; Sunoco Inc., Texaco, Inc.; Tosco Corporation; United Refining Company; and, Valero Energy, Inc.

[4]   The <u>England</u> defendants are: Atlantic Richfield Company; BP Amoco Corporation; Amoco Oil Company; Citgo Petroleum Corporation; Conoco, Inc.; Exxon Mobil Corporation, f/k/a Exxon Corporation and f/k/a Mobil Corporation; Equilon Enterprises, LLC; Chevron U.S.A., Inc.; Phillips Petroleum Company; Shell Oil Company; and Texaco Refining and Marketing, Inc.

[5]   The common defendants are: Atlantic Richfield Company; BP Amoco Corporation; Chevron U.SA., Inc.; Citgo Petroleum Corporation; Exxon Mobil Corporation f/k/a Exxon Corporation and f/k/a Mobil Corporation; Texaco, Inc.

[6]   The Moving Defendants are: BP Amoco Corporation; Amoco Oil Company; Atlantic Richfield Company; Citgo Petroleum Corporation; and, Chevron U.SA., Inc.

-2-

transfer and consolidate <u>Berisha</u> and <u>England</u> under 28 U.S.C. § 1407.  Therefore, contrary to the Moving Defendants' claim that a commonality of "core Defendants" is present in the two cases (Moving Defendants' Brief at 8), less than half of the Defendants named in either <u>Berisha</u> or <u>England</u> bring this Motion and less than half the <u>Berisha</u> Defendants are also named in <u>England</u>. Sunoco opposes this motion because individual, localized issues predominate over common factual questions and the transfer would not serve the just and efficient conduct of this litigation.

In <u>Berisha</u>, four named Plaintiffs seek to represent two separate classes of residents of New York.[7]  Two of the <u>Berisha</u> Plaintiffs allege that their wells are contaminated and purport to represent all others with contaminated wells. <u>Berisha</u> First Amended Complaint ¶¶ 20-21, 145. The other two Plaintiffs allege that they do not know if their wells have been contaminated, but claim that their property values are diminished due to negative public perception regarding MTBE and its presence in groundwater. <u>Berisha</u> First Amended Complaint ¶¶ 22-23, 145. Therefore, in addition to questions regarding MTBE's alleged propensity to contaminate groundwater, these Plaintiffs raise the following questions regarding their property damage and other issues particular to New York:

- whether the private water supplies of Plaintiffs and all residents of New York who fall into the Plaintiff class have been contaminated by MTBE.  <u>Berisha</u> First Amended Complaint ¶ 149 (e).

---

[7]     The two proposed subclasses in <u>Berisha</u> are a "Contaminated Well Subclass" and an "Uncontaminated Well Subclass." <u>Berisha</u> First Amended Complaint ¶ 145.  The Contaminated Well Subclass "is comprised of and defined as: all persons or entities who . . . <u>had an interest in real property in New York </u>and . . . their well water was tested and the tests verified that it has been contaminated with MTBE in concentrations at or above 2 ppb." <u>Id</u>. (emphasis added). The Uncontaminated Well Subclass "is comprised of and defined as: all persons or entities who . . . <u>had an interest in real property in New York</u> and . . . their well has not yet tested positive for the presence of MTBE." <u>Id</u>. (emphasis added).

- whether all Plaintiffs and all residents of New York who fall into the Plaintiff class have sustained damages. <u>Berisha</u> First Amended Complaint ¶ 149 (x).

- whether values of specific properties in New York have been diminished due to MTBE contamination. <u>Berisha</u> First Amended Complaint ¶ 149 (v).

- whether the <u>Berisha</u> Defendants violated New York's common law and laws regulating business practices. <u>Berisha</u> First Amended Complaint ¶¶ 149 (n), (o).

- whether and to what extent New York's air pollution problem requires the use of gasoline containing MTBE. <u>Berisha</u> First Amended Complaint ¶ 149 (s).

- whether the <u>Berisha</u> Defendants are liable under a market share theory of liability under New York law. <u>Berisha</u> First Amended Complaint ¶ 149 (y).

- whether the <u>Berisha</u> Defendants are liable for punitive damages under New York law. <u>Berisha</u> First Amended Complaint ¶ 149 (z).

In <u>England</u> there are two proposed classes.[8] One of the purported classes would represent those residents who own wells and would like to have them tested for the presence of MTBE in the states of California, Connecticut, Delaware, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Texas, Wisconsin, and Virginia (<u>England</u> States"). <u>England</u> Complaint ¶¶ 2, 43. The second proposed class represents all residents of the sixteen <u>England</u> States who own wells that have been contaminated by MTBE. <u>England</u> Complaint ¶¶ 2, 44. There is no overlap of the classes proposed in <u>England</u> and <u>Berisha</u>. The proposed classes in <u>Berisha</u> contain only residents of New York and the proposed classes in <u>England</u> are only residents of the sixteen <u>England</u> States. Accordingly, the <u>England</u> litigation will entail

---

[8]        The proposed subclasses in <u>England</u> are the "Testing Sub-Class" and the "Alternative Water Source Sub-Class." <u>England</u> Complaint ¶¶ 43, 44. The Testing Sub-Class is defined as "All persons <u>who own real property in the [sixteen England States]</u> . . .and who have had or would like to have their water supply well tested for MTBE." <u>Id.</u> ¶ 43 (emphasis added). The Alternative Water Source Sub-Class is defined as "All persons <u>who own real property in the [sixteen England States]</u> . . . which has been contaminated by MTBE." <u>Id.</u> ¶ 44 (emphasis added).

many questions of fact regarding localized issues in the sixteen <u>England</u> States that do not pertain

to the <u>Berisha</u> action in New York.  These questions include:

- Whether members of the proposed classes in the sixteen <u>England</u> states, which do not include New York, have or will be required to conduct tests of their water supplies. <u>England</u> Complaint ¶¶ 59, 64, 74.

- Whether MTBE has contaminated the water wells of all Plaintiff class members in the sixteen <u>England</u> States, which do not include New York. <u>England</u> Complaint ¶ 60, 65, 75.

- Whether MTBE contamination of groundwater in the sixteen <u>England</u> States has required residents in the sixteen states, which do not include New York, to obtain alternative sources of water such as bottled water. <u>England</u> Complaint ¶ 60, 65, 75.

- Whether there are facts sufficient to prove a conspiracy under the laws of each of the sixteen <u>England</u> States. <u>England</u> Complaint ¶ 73, 128, 182.

- Whether there are facts sufficient to prove that each individual Defendant, excluding those Defendants named only in the New York action, entered into or acted in furtherance of a conspiracy. <u>England</u> Complaint ¶ 24.

- Whether the individual named Defendants made any misrepresentations. <u>England</u> Complaint ¶ 24.

- Whether there has been a diminution in property values due to MTBE contamination in the sixteen <u>England</u> States. <u>England</u> Complaint ¶ 120, 174.

## ARGUMENT

A party moving for transfer under the MDL statute has the burden of showing that the

following three statutory requirements for transfer are met: 1) there must be one or more

common questions of fact, 2) the transfer must be for the convenience of parties and witnesses,

and 3) the transfer must promote the just and efficient conduct of such actions.  28 U.S.C.

§ 1407(a); 17 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 112.04[1][a] (3d ed. 1997).

The Moving Defendants have failed to meet this burden.  Accordingly, the Panel should deny

their motion to transfer and consolidate the <u>Berisha</u> and <u>England</u> actions.

-5-

I.     **THE PUTATIVE CLASS ACTIONS SHOULD NOT BE TRANSFERRED OR CONSOLIDATED BECAUSE LOCALIZED ISSUES PREDOMINATE**

To grant a motion to transfer and consolidate, the Panel must find that the actions that are the subject of the motion have common factual questions that predominate over localized issues. While it is true, as the Moving Defendants argue, that the Panel can transfer and consolidate actions that have one or more common questions without regard to the number of actions that exist, the movant faces a large burden when the motion only involves a minimal number of actions. In re Garrison Diversion Unit Litig., 458 F.Supp. 223 (J.P.M.L. 1978); In re Commercial Lighting Products Inc. Contract Litig., 415 F.Supp. 392 (J.P.M.L. 1976); In re Interstate Medicaid Patients at Good Samaritan Nursing Center, 415 F.Supp. 389 (J.P.M.L. 1976); In re Brandywine Associates Antitrust and Mortgage Foreclosure Litig., 407 F.Supp. 236 (J.P.M.L. 1976). In Garrison, which only involved two actions, the Panel ruled that, despite the presence of common questions of fact, "in order to justify transfer under Section 1407 when only a minimal number of actions is involved, the movant is under a heavy burden to show that those common questions of fact are sufficiently complex and that the accompanying discovery will be so time-consuming as to further the purposes of Section 1407." 458 F.Supp. at 225. Therefore, the Moving Defendants have a heavy burden to bear in showing that the common issues involved in Berisha and England are sufficient to warrant transfer and consolidation.

A.     **The Individualized Issues Raised By the Plaintiffs in the Sixteen England States and the New York Plaintiffs in Berisha Predominate Over Common Questions Concerning the Nature of MTBE**

While the Panel may consolidate and transfer actions that have one or more common factual questions, it should not do so when individual factual issues predominate over common issues. In re Asbestos and Asbestos Insulation Material Products Liab. Litig., 431 F.Supp. 906

-6-

(J.P.M.L. 1977); In re Westinghouse Electric Corp. Employment Discrimination Litig., 438

F.Supp. 937 (J.P.M.L. 1977); In re Environmental Protection Agency Pesticide Listing

Confidentiality Litig., 434 F.Supp. 1235 (J.P.M.L. 1977); In re Royal Typewriter Co. (Royal

Bond Copier) Breach of Warranty Litig., 435 F.Supp. 925 (J.P.M.L. 1977); In re McDonnell

Douglas 'Wild Weasel AN/APR−38' Contract Litig., 415 F.Supp. 387 (J.P.M.L. 1976); In re

United Gas Pipe Line Company Litig., 391 F.Supp. 774 (J.P.M.L. 1975); In re Grand Funk R.R.

Trademark Litig., 371 F.Supp. 1084 (J.P.M.L. 1974).  This is because when individualized issues

predominate over common issues, "Section 1407 proceedings would not necessarily serve the

convenience of the parties and witnesses or promote the just and efficient conduct of [the]

litigation." Westinghouse, 438 F.Supp. at 938.

        For example, in Westinghouse, the Panel denied a motion to consolidate two class actions

and one individual action that all alleged discriminatory behavior by the defendants at separate

facilities. Id. The Panel found that individual issues predominated over the common issue of

"division-wide racial discrimination" because each action chiefly involved allegations of specific

discriminatory acts at the individual facilities relating to the named plaintiffs. Id. Similarly, in

Royal Typewriter, the Panel would not consolidate one breach of warranty claim and two breach

of promissory note agreement actions that were based upon alleged common representations by

the defendant. 435 F.Supp. at 926.  The Panel held that individualized issues would predominate

because there were separate contractual relationships involved in each action and, as such, joint

discovery would neither serve the convenience of the parties nor promote the just and efficient

conduct of the litigation. Id.

The principle that transfer is inappropriate when individual issues predominate was best demonstrated in the <u>Asbestos</u> action where the Panel would not transfer and consolidate 103 actions involving claims by workers who were exposed to asbestos dust.[9] 431 F.Supp. at 906. The Panel was unpersuaded that the common thread of asbestos exposure was enough to grant the motion because of the predominance of individualized issues including: specific causation, the actual injuries incurred by each plaintiff, and the fact that liability in the actions would be based on state substantive law. <u>Id</u>. at 909-910.  "As a result, transfer would not promote the parties' and witnesses' convenience regarding discovery." <u>Id</u>. at 910.  <u>See also Environmental Protection Agency</u>, 434 F.Supp. at 1236 (individual questions of whether data is exempt from disclosure predominated over the common question of EPA's interpretation of the disclosure statute and transfer would not serve the convenience of the parties or promote the just and efficient conduct of the actions).

This action is no different from those cited above because, while some common questions are present, individualized issues predominate.  As discussed above, the two putative class actions both contain many individualized issues particular to separate groups of people–residents in the sixteen <u>England</u> States and residents in New York.  Just as in the <u>Asbestos</u> case, these

---

[9]    The asbestos cases were later transferred and consolidated because the circumstances of the actions had changed.  <u>In re Asbestos Products Liability Litigation (No. VI)</u>, 771 F.Supp. 415 (J.P.M.L. 1991); 17 <u>Moore's Federal Practice 3d</u>, § 112.04[1][e] ("[I]n 1977 the Panel declined to transfer asbestos litigation because the Panel was not convinced that such cases raised sufficient common questions of fact.  By 1991, however, the number of asbestos cases in the federal courts had grown to more than 26,000.  At that point, the Panel decided that transfer . . . was appropriate.  In the 1991 opinion, the Panel . . . decided that changed circumstances had altered the scene dramatically. The Panel was 'persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach.'")

localized issues overshadow the "common thread" of MTBE exposure.  Most of the discovery

will not focus upon the defective nature of MTBE.  It will focus on the plaintiffs: the nature of

their properties, the degree of contamination, when they learned of such contamination, the

location of actual gasoline leaks or spills nearby their properties, and whether the values of their

specific properties have been impacted.  Contrary to the Moving Defendants' assertions that "the

case will involve discovery of many of the same facts, documents and witnesses" (Moving

Defendants' Brief at 6), these two cases will actually involve discovery of many more different

facts, documents, and witnesses than common ones.

 The main common claim in these two cases is that Defendants' misrepresented the nature

of MTBE.  However, as seen in <u>Royal Typewriter</u>, this common misrepresentation is not enough.

 As discussed <u>supra</u> at 3-5, in addition to the individualized issues regarding property damages in

each state, there are many Defendant-specific issues that will be addressed in one action, but not

the other.  For example, there are allegations in both actions that the Defendants made

misrepresentations.  To the extent that there are different Defendants in each action, this issue is

individual to each action because each Defendant is alleged to have made its own public

statements concerning the nature of MTBE.  Another individualized issue involves Plaintiffs'

allegations that each Defendant was involved in trade association activity.  Some Defendants,

including Sunoco, were not members of the named associations for key periods and discovery on

this matter would only involve the Defendants named in each action. Due to the predominance of

individualized issues, it would not serve the convenience of the parties or promote the just and

efficient conduct of the actions to consolidate these cases.

-9-

**B.**     **There is No Threat of Inconsistent Pretrial Class Determinations Because the Proposed Classes in <u>Berisha</u> and <u>England</u> Do Not Overlap**

The Moving Defendants argue that the Panel's transfer and coordination of these class actions is "essential." Moving Defendants' Brief at 7. In so arguing, they misapply the test applied by the Panel in earlier rulings.

In general, the Panel will transfer and coordinate purported class actions with overlapping members in an effort to eliminate conflicting class determinations. <u>In re First Nat'l Bank, Heavener, Oklahoma Securities Litig.</u>, 451 F.Supp. 995 (J.P.M.L. 1978); <u>In re Public Air Travel Tariff Litig.</u>, 360 F.Supp. 1397 (J.P.M.L. 1973); <u>In re Plumbing Fixture Cases</u>, 298 F.Supp. 484 (J.P.M.L. 1968). For instance, in <u>Public Air Travel</u>, the Panel consolidated  five actions where plaintiffs in each action purported to represent a class of all passengers subject to an overcharge. 360 F.Supp. at 1398. Similarly, in <u>First National Bank</u>, the Panel consolidated two actions because plaintiffs in each case sought to represent the same class of bond-holders. 451 F.Supp. at 996. The Panel held that "[b]ecause these actions have been brought on behalf of the same plaintiff class, we emphasize that it is desirable to have a single judge oversee the class action issues in both cases to avoid duplicative efforts in this area." <u>Id</u> at 997. Finally, in <u>Plumbing Fixture</u>, the Panel consolidated the actions because separate district courts had already been requested to make conflicting class action determinations. 298 F.Supp. at 493.

These cases were different from both <u>Westinghouse</u> and <u>Asbestos</u>. In <u>Westinghouse</u>, the Panel denied transfer and consolidation of purported class actions where the putative classes did not contain overlapping members. 483 F.Supp. at 938. The Panel determined that there was no danger of conflicting class determinations and other pretrial rulings. <u>Id</u>. at 939. Similarly, in <u>Asbestos</u>, several of the 103 actions were proposed class actions. 431 F.Supp. at 908. The Panel

-10-

denied the motion to transfer because there was not a significant possibility of inconsistent or overlapping class action determinations since any certifiable class would only include persons exposed in a particular plant. Id at 910. In sum, these cases demonstrate that the Panel will not transfer and coordinate purported class actions simply because they are class actions. Rather, the Panel will deny transfer and consolidation when there is no threat of inconsistent pretrial class determinations because the classes do not contain the same plaintiffs. That is the case here.

The purported classes represented in <u>Berisha</u> are all exclusively New York state residents who are suing exclusively under New York law. The proposed classes represented in <u>England</u> are residents of the states of California, Connecticut, Delaware, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Texas, Wisconsin, and Virginia, who are suing under the laws of those sixteen different states. As in <u>Westinghouse</u> and <u>Asbestos</u>, there will not be inconsistent pretrial rulings regarding class certification in these matters because the two purported classes do not include overlapping members.

## II    THE PANEL SHOULD DENY THE MOTION BECAUSE THE TRIAL COURTS IN THESE ACTIONS CAN AND WILL CONTROL <u>DUPLICATIVE DISCOVERY WITHOUT TRANSFER AND CONSOLIDATION</u>

Duplicative and overlapping discovery can be avoided through alternatives such as effective management of the cases by the District Courts where the cases are pending and cooperation between the parties. In such circumstances, the Panel has held that transfer and consolidation is not warranted. <u>In re Cable Tie Patent Litig.</u>, 487 F.Supp. 1351 (J.P.M.L. 1980); <u>In re Eli Lilly and Co. Patent Litig.</u>, 446 F.Supp. 242 (J.P.M.L. 1978); <u>In re Garrison Diversion Unit Litig.</u>, 458 F.Supp. 223 (J.P.M.L. 1978); <u>In re Asbestos and Asbestos Insulation Material</u>

-11-

Products Liab. Litig., 431 F.Supp. 906 (J.P.M.L. 1977); In re Commercial Lighting Products, Inc. Contract Litig., 415 F.Supp. 392 (J.P.M.L. 1976); In re Harmony Loan Company, Inc., Securities Litig., 372 F.Supp. 1406 (J.P.M.L. 1974). For instance, in Cable Tie, the Panel held that, although the actions involved common questions of fact, transfer was not necessary to serve the convenience of the parties or the just and efficient conduct of the litigation, in part, because the parties had already cooperated in a variety of ways to avoid duplication of effort and expense in the discovery process. 487 F.Supp. at 1354. The Panel also pointed out alternatives to transfer that would minimize the possibility of duplicative or unreasonable discovery, including, a request by parties that discovery completed in one action be made applicable to the other actions. Id. The parties could also seek to agree upon stipulation that any discovery relevant to more than one action may be used in all actions and that notices for a particular deposition could be filed in all actions. Id.

In Asbestos, the Panel decided that transfer and consolidation of 103 actions was not necessary, in part, because arrangements for sharing the common aspects of discovery had been made among the parties. 431 F.Supp. at 909. The Panel held that "[t]ransfer would cause unnecessary additional expenses which can be avoided by voluntary coordination efforts among the parties." Id. See also, Garrison, 458 F.Supp. at 225 (motion for transfer denied where cooperation between parties and the two concerned district courts would be sufficient); Commercial Lighting, 415 F.Supp. at 393 (Panel denied transfer and suggested alternatives to avoid duplicative discovery); Harmony, 372 F.Supp. at 1407 (transfer denied when there were limited common questions of fact and attorneys were making efforts at accommodation in order

to prevent any duplicative discovery); <u>Eli Lilly</u>, 446 F.Supp. at 244 (alternatives and cooperation among parties eliminated the need to transfer and consolidate minimal number of actions).

In <u>Berisha</u>, the District Court is managing the case to ensure that such cooperation and coordination will take place. The District Court has already directed defendants Chevron U.S.A., Inc., Exxon Corporation, Mobil Oil Corporation, Shell Oil Products Company, and Texaco, Inc. to make available to the <u>Berisha</u> Plaintiffs discovery materials from other cases in state court in California involving MTBE contamination. <u>See</u> <u>Berisha</u> Order of April 24, 2000 which is attached as Exhibit A.[10] This Order and cooperation among parties, like those in <u>Cable Tie</u>, <u>Asbestos</u>, and the other cited cases, works to avoid duplicative discovery. In light of these efforts, and foreseeable similar efforts under the direction of Judge Scheindlin, as in <u>Cable Tie</u> and <u>Asbestos</u>, the Panel should deny the motion to transfer and consolidate because any issues of duplicative discovery are currently being addressed.

## CONCLUSION

The Panel should not transfer or consolidate the putative class actions in <u>England</u> and <u>Berisha</u> because the localized factual issues specific to the Plaintiff classes in each of those actions predominate over the common issues. Furthermore, there are no legitimate concerns regarding inconsistent pretrial class determinations because the proposed classes do not overlap. Finally, as exhibited in <u>Berisha</u>, management by the District Courts and party cooperation can

---

[10]At an April 24, 2000 Conference, Judge Scheindlin explicitly recognized that most of the documents that had already been produced in the California state court cases would be irrelevant to the <u>Berisha</u> matter because the majority of the documents related to local issues such as particular gas stations or water utilities in California. Transcript, April 24, 2000 Case Management Conference with Judge Scheindlin at 34. <u>See</u> Exhibit A. Thus, Judge Scheindlin ordered production to the <u>Berisha</u> Plaintiffs of any documents that had been produced in the California state cases that would arguably be relevant to the New York action.

-13-

eliminate concerns regarding duplicative discovery.  Therefore, transfer and consolidation of

these actions would not promote convenience and the just and efficient conduct of  these

actions.[11]

Dated: June 26, 2000                                       Respectfully submitted,

                                                          John S. Guttmann
                                                          BEVERIDGE & DIAMOND, P.C.
                                                          1350 I Street, N.W., Suite 700
                                                          Washington, D.C. 20005-3311
                                                          (202) 789-6020


                                                          ATTORNEYS FOR
                                                          SUNOCO, INC. (R&M)


Of Counsel

Sy Gruza
Heather M. Andrade
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue
15th Floor
New York, NY 10002
(212) 702-5400


N:\09\43\010522\Plg\HMA MDL brief FINAL.wpd

---

[11]        However, should the Panel grant the Motion, Sunoco respectfully requests that the
coordinated or consolidated pre-trial proceedings be administered in the Southern District of
New York.

A

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN 26   2000

FILED
CLERK'S OFFICE

US OFFICE PRODUCTS

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2000 JUN 26   P 3: 08

RECEIVED
CLERK'S OFFICE

040VBERC                                                        1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   DONNA BERISHA, on behalf of
    herself and all others
4   similarly situated, et al

5                   Plaintiffs,

6           v.                              00 Civ. 1898 (SAS)

7   AMERADA HESS CORPORATION, BP
    AMOCO CORPORATION, CHEVRON
8   CORPORATION, CITGO PETROLEUM
    CORPORATION, EXXON CORPORATION,
9   GETTY PETROLEUM CORPORATION,
    GULF OIL LTD. PARTNERSHIP,
10  MOBIL OIL CORPORATION,
    SHELL OIL PRODUCTS COMPANY,
11  SUNOCO, INC., TOSCO CORPORATION,
    DOES 1 THROUGH 100, inclusive,
12  and TEXACO, INC.,
                    Defendants.
13
    -------------------------------x
14
                                        April 24, 2000
15                                      5:00 p.m.

16

17

18  Before:

19              HON. SHIRA A. SCHEINDLIN,

20                                      District Judge

21

22                      APPEARANCES

23  LEWIS SAUL & ASSOCIATES, P.C.
         Attorneys for Plaintiffs
24  BY: LEWIS SAUL
        JOHN HINCK

25

1          THE COURT:  Does it raise similar issues as this

2   motion?

3          MR. HINCK:  As far as I can tell from the scant

4   letter it would raise similar issues in some cases and I

5   imagine in other points it would not be.

6          MR. SAUL:  There are a number of cases around the

7   country, for instance, Lake Tahoe in California, that's

8   progressing quickly.  I think Mr. Wallace is involved in 50 or

9   a hundred cases around the country.

10          MR. WALLACE:  Two, your Honor.

11          MR. SAUL:  Somebody told me that you were --

12          THE COURT:  Two of the ones that you already

13   discussed?

14          MR. WALLACE:  Actually, no, I'm not involved in any

15   of the others that he has mentioned.  I know something about

16   them and would like an opportunity to set the record straight

17   but I'm not directly involved in the others.

18          MR. SAUL:  There is Lake Tahoe and also Santa Monica,

19   both in state court in California where a number of documents

20   have been produced.  So we believe that we would first like to

21   start with all the depositions and all the documents that have

22   been produced in these other cases --

23          THE COURT:  But if the documents have been produced

24   in these other cases and you are counsel in these cases then

25   you have the documents.

1   in this case.  It seems to me --

2              THE COURT:  How about addressing the point that

3   Mr. Brosterman raised that if it doesn't go forward as a class

4   action the scope of discovery would be extraordinarily

5   different?

6              MR. HINCK:  Well, actually we would have the same

7   claim, strict liability, strict product liability for failure

8   to warrant.

9              THE COURT:  On that claim.  But regardless of whether

10  it was a class or individual?

11             MR. HINCK:  Right.  And those kind of documents would

12  be exactly the same.  We could work something out with the

13  defendants that we are not that interested in the documents

14  dealing with the horrible Herbst gas station in South Lake

15  Tahoe, which is a large part of the documents that have been

16  produced and I'm afraid the court might have to look at it

17  after the discussion here today, but there was a tremendous

18  amount of material that is exactly on point to this case

19  having to do with the introduction of MTBE in gasoline.

20             Our claims are going to be very much the same issues

21  as plaintiffs were raising in the Tahoe case and also the

22  other case, which is abbreviated CBE.

23             THE COURT:  Which one is that?

24             MR. HINCK:  That's the case brought under --

25             THE COURT:  What state?

1  requests and interrogatories that address the class

2  certification issues because the sooner you start on that the

3  sooner we can move toward a briefing schedule and a hearing

4  schedule and class certification.  So I would ask that you get

5  that material out 30 days after you receive the amended

6  complaint so that if you serve your discovery requests on or

7  about June 5, which is a Monday.

8          With respect permitting the plaintiffs to inspect

9  what has already been produced in a different litigation, I

10  frankly think that is a good way to begin.  Even though for

11  this purpose I accept what the defense says that 90 percent of

12  it might be local and irrelevant, I don't know why that

13  initial production can't be done on an inspect basis.

14          In other words, if you have got that material in a

15  warehouse or in some rooms in your offices and they can come

16  in and begin to look through it, they will realize that it is

17  a waste of their money and time to start asking for copies of

18  documents that relate solely to gas stations or water

19  utilities in south Lake Tahoe.  It is just not this case.  And

20  this would be done under an order that would prevent them from

21  sharing the information that they gain.  But I think it would

22  be a cursory and quick review initially.

23          When they do have that review they can begin to

24  isolate that portion of the prior production that they need

25  copies of, and then they can supplement with a document

1   request.  So it seems to me initially you should be able to

2   inspect at the defendant's offices rather than the plaintiff's

3   office what they produced and begin to be able to make some

4   cuts by category of what you really don't need.  And then you

5   should submit a document request and interrogatories also that

6   relate to this case, and then we can talk about depositions.

7   But I think we would be getting ahead of ourselves to schedule

8   depositions today.  What I would rather do is have a fair

9   number of frequent conferences to stay in touch with the

10  progress.

11          So if you have this beginning inspection by June 5,

12  where you go to their offices and have your inspection, and

13  I'm not limiting your hours and neither should they, if you

14  want to spend three consecutive days so be it to get a good

15  handle on what there is and convince yourself of what

16  percentage is relevant or not to this lawsuit.  Then, if you

17  do that by June 5th you would have until June 30th to serve

18  document requests and interrogatories that are more focused on

19  this particular case.  And then I would try to have a

20  conference sometime in July to begin to hear objections, if

21  necessary, or a schedule for production and where we are

22  heading for the possibility of depositions.  So that's where I

23  begin with discovery.

24          Returning to the motion briefing, we are going to

25  have an amended complaint May 5th.  Frankly I think it would

1   cite law.  If they had such law on any of these I would be

2   happy to see it before we amended the complaint.

3           THE COURT:  That's fair enough.  I would encourage if

4   you want to supplement that letter to do so no later than May

5   1st.  If you do find a clearly controlling case on some issue,

6   and I don't know what's in this case because I haven't looked

7   at it but I certainly still remember the tobacco decision that

8   reversed my denying the motion to dismiss, but in any event I

9   still remember that one, so you might find interesting law

10  there.  But look around in the Second Circuit and see if you

11  can find something that you consider controlling and point it

12  out to your adversaries and not waste time.  If you find

13  something being, you find something.

14          MR. HINCK:  One other point of clarification --

15          THE COURT:  Nothing will be held up pending that.

16  The point is the more forthcoming you are the better.

17          MR. HINCK:  We would drop any claims that are not

18  worth fighting over.  The other point was on the order

19  regarding inspecting documents that had been produced.  I

20  assume that would cover either of the two, both of the two

21  California cases we were discussing?

22          THE COURT:  It should.  I assume that defendants who

23  produce have this material organized in some reasonable way.

24  These are all top notch firms.

25          So let's talk about the motion schedule.  The letter,

**CERTIFICATE OF SERVICE**

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN 26  2000

FILED
CLERK'S OFFICE

The undersigned attorney hereby certifies that on this 26th day of June, 2000, true and correct copies of Sunoco, Inc. (R&M)'s Response and Brief in Opposition were hand delivered to the Judicial Panel on Multidistrict Litigation and were served via first class mail upon the following counsel of record in the cases of <u>Berisha, et al. v. Amerada Hess Corp., et al.</u> And <u>England, et al. v. Atlantic Richfield Company, et al.</u>

Christopher S. Colman, Esq.
Associate General Counsel
Amerada Hess Corporation
One Hess Plaza
Woodbridge, NJ  07095

Robert Shulman, Esq.
Howrey, Simon, Arnold & White
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
**COUNSEL FOR AMERADA HESS CORP. (In <u>Berisha</u>)**

Richard C. Godfrey, Esq.
J. Andrew Langan, Esq.
Thomas Tozer, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

Yosef J. Riemer, Esq.
Kirkland & Ellis
Citicorp Center
153 East 53rd Street
New York, NY  10022-4675
**COUNSEL FOR BP AMOCO CORP. AND ATLANTIC
         RICHFIELD CO. (In <u>Berisha</u> and <u>England</u>)**

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2000 JUN 26  P 3: 08

RECEIVED
CLERK'S OFFICE

Richard E. Wallace, Jr., Esq.
Anthony F. King, Esq.
Peter C. Condron, Esq.
Wallace, King, Marraro & Branson, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C.  20007
**COUNSEL FOR CHEVRON CORP., EXXON CORP.,
         MOBIL OIL CORP., MOTIVA ENTERPRISES LLC,**

SHELL OIL PRODUCTS CO., AND TEXACO, INC.
(In <u>Berisha</u>) and COUNSEL FOR EQUILON
ENTERPRISES, LLC, SHELL OIL CO., AND
TEXACO REFINING AND MARKETING, INC.
(In <u>England</u>)

Eric M. Kraus, Esq.
Sharon M. Dutch, Esq.
Sedgwick Detert Moran & Arnold
125 Broad Street, 39th Floor
New York, NY 10004-2400
COUNSEL FOR CHEVRON CORP., EXXON CORP.,
MOBIL OIL CORP., MOTIVA ENTERPRISES LLC,
SHELL OIL PRODUCTS CO., AND TEXACO, INC.
(In <u>Berisha</u>)

Robert W. Jones, Esq.
Thompson & Knight
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
COUNSEL FOR EQUILON ENTERPRISES, LLC, SHELL OIL
CO., AND TEXACO REFINING AND MARKETING,
INC. (In <u>England</u>)

Nathan P. Eimer, Esq.
Sidley & Austin
One First National Plaza
10 South Dearborn
Chicago, IL 60603

Katherine Adams, Esq.
875 Third Avenue
New York, NY 10022
COUNSEL FOR CITGO PETROLEUM (In <u>Berisha</u> and <u>England</u>)

Charlotte Biblow, Esq.
Rivkin, Radler & Kremer LLP
EAB Plaza
Uniondale, NY 11556-0111
COUNSEL FOR GETTY PETROLEUM CORP. (In <u>Berisha</u>)

Mark E. Tully, Esq.
Goodwin, Procter & Hoar LLP
Exchange Place
Boston, MA 02109-2881

J. Todd Hahn, Esq.
Goodwin, Procter & Hoar LLP
599 Lexington Avenue, 40th Floor
New York, NY   10022
**COUNSEL FOR GULF OIL LTD., PARTNERSHIP (In <u>Berisha</u>)**

Kenneth Pasquale, Esq.
Stroock, Stroock & Lavan LLP
180 Maiden Lane
New York, NY   10038-4982
**COUNSEL FOR TOSCO CORP. (In <u>Berisha</u>)**

Dan H. Ball, Esq.
Kurt E. Reitz, Esq.
Roman P. Wuller, Esq.
Thompson Coburn LLP
One Firstar Plaza, Suite 3300
St. Louis, MO   63101
**COUNSEL FOR CONOCO, INC., CHEVRON U.S.A., INC.**
**AND EXXON MOBIL CORP. (In <u>England</u>)**

John Galvin, Esq.
Lyndon Sommer, Esq.
Sandberg, Phoenix & von Gontard
One City Centre, 15th Floor
515 North Sixth Street
St. Louis, MO   63101-1880
**COUNSEL FOR PHILLIPS PETROLEUM CO.  (In <u>England</u>)**

Lewis Saul, Esq.
Lewis Saul & Associates, P.C.
5301 Wisconsin Avenue., N.W., Suite 550
Washington, D.C.   20015

Stanley E. Margolies, Esq.
Kurzman Karelsen & Frank, LLP
230 Park Avenue, 23rd Floor
New York, NY   10169
**COUNSEL FOR PLAINTIFFS (In <u>Berisha</u>)**

Stephen M. Tillery, Esq.
Christine J. Moody, Esq.
Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz & Glass
10 Executive Woods Court
Swansea, IL   62226

Scott Summy, Esq.
Celeste Evangelasti, Esq.
Cooper & Scully, P.C.
900 Jackson Street, Suite 100
Dallas, TX   75202

Edward Masry, Esq.
Joseph D. Gonzalez, Esq.
Law Offices of Masry & Vititoe
5707 Corsa Avenue, Second Floor
Westlake Village, CA   92362

Victor M. Sher, Esq.
Duane C. Miller, Esq.
A. Curtis Sawyer, Jr., Esq.
Miller, Sher & Sawyer
100 Hoe Avenue, Suite S-120
Sacramento, CA   95825-5407
**COUNSEL FOR PLAINTIFFS (In <u>England</u>)**

Steven L. Leifer, Esq.
Baker, Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C.   20004-2400
**COUNSEL FOR VALERO MARKETING & SUPPLY CO.**

Edward S. Weltman, Esq.
Schneck Weltman & Hashmall LLP
1285 Avenue of the Americas
New York, NY   10019
**COUNSEL FOR UNITED REFINING COMPANY**

John S. Guttmann
Attorney for Sunoco, Inc. (R&M)

O:\CLI\09\43\10522\Pldg\JSG 6-23-00 Certificate of Service.wpd