15

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUL - 3 2000

**MDL 1358**

FILED
CLERK'S OFFICE

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

--------------------------------------------------------
                      :

IN RE:                    :

MTBE PRODUCTS LIABILITY   :    MDL Docket No. 1358
LITIGATION              :
                      :
                      :

--------------------------------------------------------

### CERTAIN MTBE LITIGATION DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407

Richard C. Godfrey
J. Andrew Langan
Thomas A. Tozer
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60602

Mark E. Holstein
200 East Randolph Drive
Suite 2000
Chicago Illinois, 60601

Attorneys for Defendants
BP AMOCO CORPORATION,
AMOCO OIL COMPANY and
ATLANTIC RICHFIELD COMPANY

Dan H. Ball
Roman P. Wuller
One Firstar Plaza
Suite 3500
St. Louis, Missouri 63101

Attorneys for Defendant
CHEVRON U.S.A., INC.

Nathan P. Eimer
Eimer Stahl Klevorn & Solberg
122 South Michigan Avenue
Suite 1776
Chicago, Illinois 60603

Attorney for Defendant
CITGO PETROLEUM CORPORATION

July 3, 2000

**OFFICIAL FILE COPY**
IMAGED JUL 6 '00

PLEADING NO. 15

## **Table of Contents**

**Page**

I.   MDL TREATMENT IS APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Virtually Every Party Favors Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   The Objectors' Arguments Against Consolidation Should be Rejected. . . . . . . . . 4

        1.   Two Cases May be Consolidated for § 1407 Treatment . . . . . . . . . . . . . 4

        2.   The Defendants in Each Action Need Not be Identical . . . . . . . . . . . . . . 6

        3.   The Existence of Individual Well Owner Issues Does Not Diminish the Fact That, for Purposes of § 1407, the Two Actions Share Factual Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.   Mere Geographic Distinctions Between Putative Class Definitions Do Not Weigh Against Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  THE SOUTHERN DISTRICT OF ILLINOIS IS THE MOST CONVENIENT FORUM FOR THE PARTIES AND WITNESSES, AND WILL PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS . . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Case Management Considerations Favor the Southern District of Illinois . . . . . 11

    B.   The Southern District of Illinois is Centrally Located . . . . . . . . . . . . . . . . . . . . . 12

    C.   The Progression of the Two Actions is Similar . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. CONSOLIDATION OF THE *LYNN* UST CASE WITH THE MTBE CASES IS INAPPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.   The *Lynn* UST Case is Not an MTBE Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.   The *Lynn* UST Plaintiffs' Claim That *Lynn* is an MTBE Case is a Recent Tactical Phenomenon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    C.   The MTBE Cases and *Lynn* UST Case are So Dissimilar in Procedural Development, There is No Benefit to Consolidating *Lynn* . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

**Table of Authorities**

**Page**

**Cases**

*Asbestos School Prods. Liab. Litig.,*
   606 F. Supp. 713 (J.P.M.L. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Air Crash Disaster Near Papeete, Tahiti, on July 22, 1973,*
   397 F. Supp. 886 (J.P.M.L.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Airport Car Rental Litig.,*
   448 F. Supp. 273 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re American Financial Corp. Litig.,*
   434 F. Supp. 1232 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.,*
   431 F. Supp 906 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Brandywine Associates Antitrust and Mortgage Foreclosure Litig.,*
   407 F. Supp. 236 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Brown Co. Sec. Litig.,*
   325 F. Supp. 307 (J.P.M.L. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Camco Patent Infringement Litig.,*
   343 F. Supp. 1406 (J.P.M.L. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Capital Underwriters, Inc. Sec. Litig.,*
   464 F. Supp. 955 (J.P.M.L. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re CBS Licensing Antitrust Litig.,*
   328 F. Supp. 511 (J.P.M.L. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Celotex Corp. "Technifoam" Prods. Liab. Litig.,*
   68 F.R.D. 502 (J.P.M.L.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 19

*In re Clark Oil & Refining Corp. Antitrust Litig.,*
   364 F. Supp. 458 (J.P.M.L. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Commercial Lighting Prods. Inc. Contract Litig.*,
  415 F. Supp. 392 (J.P.M.L.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Corrugated Container Antitrust Litig.*,
  441 F. Supp. 921 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Cross-Florida Barge Canal Litig.*,
  329 F. Supp. 543 (J.P.M.L. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Cuisinart Food Processor Antitrust Litig.*,
  506 F. Supp 651 (J.P.M.L. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Dept. of Energy Stripper Well Exemption Litig.*,
  472 F. Supp. 1282 (J.P.M.L. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*,
  391 F. Supp. 763 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Eli Lilly & Co. "OraFlex" Prods. Liab. Litig.*,
  578 F. Supp. 422 (J.P.M.L. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*In re Equity Funding Corp. of America Sec. Litig.*,
  375 F. Supp 1378 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re First Nat'l Bank, Heavener, Oklahoma Sec. Litig.*,
  451 F. Supp. 995 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Garrison Diversion Unit Litig.*,
  458 F. Supp. 223 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re General Aircraft Corp. Anti-Trust/Tort Claims Act Litig.*,
  449 F. Supp. 604 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Grand Funk R.R. Trademark Litig.*,
  371 F. Supp. 1084 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Gypsum Wallboard Cases*,
  303 F. Supp. 510 (J.P.M.L.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iii

*In re Insulin Mfg. Antitrust Litig.*,
487 F. Supp. 1359 (J.P.M.L. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Interstate Medicaid Patients*,
415 F. Supp 392 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Japanese Elec. Prods. Antitrust Litig.*,
388 F. Supp. 565 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re L.E. Lay & Co. Antitrust Litig.*,
391 F. Supp. 1054 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re MCI Non-Subscriber Tel. Rates Litig.*,
No 1275, 1999 U.S. Dist. LEXIS 5076 (J.P.M.L. Apr. 14, 1999) . . . . . . . . . . . . . . 11, 12

*In re Midwest Milk Monopolization Litig.*,
441 F. Supp. 930 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*,
299 F. Supp. 1403 (J.P.M.L. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Nat'l Student Mktg. Litig.*,
368 F. Supp. 1311 (J.P.M.L. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Nissan Motor Corp. Antitrust Litig.*,
385 F. Supp. 1253 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Peruvian Road Litig.*,
380 F. Supp. 796 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Petroleum Prods. Antitrust Litig.*,
393 F. Supp. 1091 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*In re Phonometrics, Inc., Elec. Long Distance Call Cost Computer and Records Patent Litig.*,
1997 WL 83673 (J.P.M.L. Feb. 19, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Rely Tampon Prods. Liab. Litig*,
533 F. Supp. 1346 (J.P.M.L. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

*In re Republic National- Realty Equities Sec. Litig.,*
   382 F. Supp. 1403 (J.P.M.L.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Rio Hair Naturalizer Prods. Liab. Litig.,*
   904 F. Supp. 1407 (J.P.M.L 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Royal Typewriter Co. Breach of Warranty Litig.,*
   435 F. Supp. 925 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Transit Company Tire Antitrust Litig.,*
   350 F. Supp. 1165 (J.P.M.L. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Underground Petroleum Storage Tanks Litig.,*
   MDL Docket No. 1134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re United Gas Pipe Line Co. Litig.,*
   391 F. Supp. 774 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.,*
   450 F. Supp. 1168 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re West Coast Bakery Flour Antitrust Litig.,*
   368 F. Supp. 808 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re "Fine Paper" Antitrust Litig.,*
   453 F. Supp. 118 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**<u>Statutes</u>**

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

Movants BP Amoco Corporation, Amoco Oil Company, Atlantic Richfield Company, Chevron U.S.A., Inc. and CITGO Petroleum Corporation ("Movants") respectfully submit this reply memorandum in accordance with Panel Rule 7.2 (d) in support of their motion to transfer pursuant to 28 U.S.C. § 1407.

The majority of parties to this action concur that MDL treatment for two MTBE gasoline additive class actions (*England* -- S.D. Ill. and *Berisha* -- S.D.N.Y.) is appropriate. Only one group of Plaintiffs and two of the 23 Defendants on the Panel Service List oppose § 1407 consolidation.  And for good reason.  As shown below, this concurrence conforms to this Panel's precedent and to the letter and spirit of § 1407.

Movants also respectfully suggest that the Southern District of Illinois is the most convenient and appropriate forum.  Its geographic centrality, easy accessibility and less congested docket make it the ideal transferee district for this matter.  In addition, the Southern District of Illinois, and Judge David Herndon in particular, have MDL experience.[1]

Separately, plaintiffs in a purported underground storage tank ("UST") class action in the Middle District of Alabama *(Lynn et al. v. Amoco Oil, et al.*, No. 96-T-940-N) have filed papers suggesting that the *Lynn* UST case is a related case to these MTBE class actions.  It is not.  Filed in 1996, *Lynn* involves allegations that the defendant oil companies, for decades, conspired to suppress technology relating to underground storage tanks ("USTs").  For four years, the *Lynn* plaintiffs have advanced this UST conspiracy claim.  Those plaintiffs' new claim that their UST conspiracy case is really about MTBE – a gasoline additive – is without merit.  As

---

[1]  Judge Herndon is now permanently assigned to the *England* case, Nos. 00-370-DRH and 00371-DRH.

currently pled and as historically described, the *Lynn* UST case involves different factual

allegations and different legal claims.  *Lynn* is also approaching the close of discovery and is now

ready for summary judgment on the named plaintiffs' claims.  The *Lynn* UST case is not an

appropriate candidate for consolidation with the MTBE cases, and is not even a related case

within the meaning of the Panel Rules.

I.      **MDL TREATMENT IS APPROPRIATE.**

       A.      **Virtually Every Party Favors Consolidation.**

           The overwhelming majority of interested parties support MDL transfer and

consolidation.  The "vote" total for the parties in the two actions – giving each Named Plaintiff

and Defendant one vote for each action in which they appear – is 31 in support of consolidation

versus six opposed.  *See* Comparison of Support and Opposition to Consolidation (Ex. A).  (If

defendants named twice are given only one vote, the vote in favor is 27-6.)

           This widespread support for consolidation is not surprising given the sound

reasons here for § 1407 treatment.  As detailed in the Memorandum in Support of the Motion –

for which nine additional Defendants recently expressed support[2] – the *England* and *Berisha*

cases are virtually identical in important respects:

---

[2]  In their joint response to the Motion, Exxon Mobil Corporation and Conoco, Inc. expressly
adopted the Memorandum in Support of the Motion to Transfer.  *See* those parties' *Joint
Response to MDL Motion and Suggestions in Support of Transfer to the Southern District of
Illinois*, which was submitted to the Panel Clerk on June 26, 2000.  Phillips has also filed
supporting papers.  Similarly, Texaco Inc., Texaco Refining and Marketing Inc., Shell Oil
Company, Shell Oil Products Company, Equilon Enterprises LLC and Motiva Enterprises also
"support the relief sought" by Movants, as noted in their joint response to the Motion.

- There is substantial overlap of defendants, including the largest defendants, an overlap that has grown in the last several weeks with the additions of Atlantic Richfield Company and Chevron U.S.A., Inc. and the dropping of Getty Petroleum Corporation and Chevron Corporation as *Berisha* Defendants.

- The putative class definitions -- private well owners -- are strikingly similar.

- The Complaints allege the same story about MTBE; indeed, the allegations are essentially replicated in the two complaints.

- Every cause of action in the two cases revolves around common allegations that (1) Defendants misled the federal government into approving MTBE's use, and (2) Defendants should never have blended MTBE into gasoline.

- The same relief – Defendant-funded well testing – is sought in both cases.

As the parties overwhelmingly recognize, coordinated or consolidated pretrial proceedings are appropriate. Given the complex nature of the allegations in *England* and *Berisha*, and the scope of those allegations both in time and geography, there are likely to be numerous witnesses, a multitude of documents, and several pretrial motions on issues ranging from discovery to class certification. Centralization in a single forum will aid efficiency in each of these areas, and lessen the burden on the parties, the witnesses and the courts. *See In re Phonometrics, Inc., Elec. Long Distance Call Cost Computer and Records Patent Litig.*, 1997 WL 83673, *1 (J.P.M.L. Feb. 19, 1997) ("Centralization under Section 1407 will thus eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L 1995).

The fact that a significant majority of parties favors transfer can be a determining factor in this Panel's decision to grant that relief. *See, e.g., In re Brown Co. Sec. Litig.*, 325 F. Supp. 307, 308 (J.P.M.L. 1971) (describing decision to consolidate as "an easy one" in part

3

because "nearly all parties favor transfer"). Indeed, even the three parties that object to

consolidation – Sunoco Inc., Tosco Corporation and the *Berisha* Plaintiffs ("Objectors") – admit

that the two actions share common fact allegations.[3]

**B.      The Objectors' Arguments Against Consolidation Should be Rejected.**

The Objectors arguments against consolidation should also be set aside because

they have little factual support or legal merit. First, two cases may be consolidated for § 1407

treatment. Second, the defendants in two actions need not be identical for consolidation to occur.

Third, the existence of individual issues *among plaintiffs* does not, for § 1407 purposes, diminish

the fact that common factual questions *between actions* support consolidation. And finally,

geographic distinctions between putative class definitions do not weigh against transfer.

1.      Two Cases May Be Consolidated for § 1407 Treatment.

Objectors incorrectly claim that this Panel is averse to consolidating a small

number of factually similar actions. To the contrary, where the convenience and economizing

purposes of § 1407 are served by consolidation, this Panel has not hesitated to grant a motion to

transfer. *See, e.g., In re General Aircraft Corp. Anti-Trust/Tort Claims Act Litigation*, 449 F.

Supp. 604 (J.P.M.L. 1978) (transferring two actions sharing factual questions concerning

multiple defendants' conduct over twenty-year period); *In re Petroleum Prods. Antitrust Litig.*,

---

[3] For example, Sunoco admits that both actions share a "'common thread' of MTBE exposure" allegations, and that "[t]he main common claim in these two cases is that the Defendants misrepresented the nature of MTBE." *Sunoco's Brief in Opp. to Motion*, at 9. Tosco also agrees with Movants that both cases "assert similar allegations with respect to the chemical properties of MTBE, the alleged risk to groundwater from the use of MTBE as a fuel additive, and the defendants' knowledge of such risks." *Tosco's Brief in Response to Motion*, at 7-8. And the *Berisha* Plaintiffs admit that "each of the two class actions share common questions of fact," and that the actions "both arise out of the use of MTBE as a gasoline additive" and include "some common defendants and claims . . . ." *Berisha Plaintiffs' Brief in Response to Motion*, at 1.

4

393 F. Supp. 1091, 1092-93 (J.P.M.L. 1975) (consolidating two actions sharing factual allegations and involving some common oil industry defendants); *In re CBS Licensing Antitrust Litig.*, 328 F. Supp. 511 (J.P.M.L. 1971) (transferring two actions with common factual and legal questions, **but no common defendants**).  The Panel has been especially willing to transfer a small number of class actions.  *In re Equity Funding Corp. of America Sec. Litig.*, 375 F. Supp 1378, 1386 (J.P.M.L. 1974) (two class actions).  *In re First Nat'l Bank, Heavener, Oklahoma Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (transferring two actions because "it is desirable to have a single judge oversee the class action issues").

Moreover, foreclosing consolidation simply because a random numeric threshold is not exceeded would violate the letter and spirit of 28 U.S.C. § 1407.  Under that provision, two or more actions may be consolidated by the Panel.  § 1407(a).  Where, as here, two cases share enough common factual questions so that their consolidation would serve the convenience of the parties and witnesses and promote the just and efficient conduct of those actions, this Panel should consolidate the actions as it has in many other cases.[4]

2.   The Defendants in Each Action Need Not be Identical.

It is undisputed that the MTBE actions share as common defendants in both cases almost all of the largest oil companies in the United States: Exxon Mobil, BP Amoco, Arco,

---

[4] *See, e.g., In re L.E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1055 (J.P.M.L. 1975) (consolidating two actions); *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763 (J.P.M.L. 1975) (same); *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) (same); *In re West Coast Bakery Flour Antitrust Litig.*, 368 F. Supp. 808 (J.P.M.L. 1974) (same); *In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F. Supp. 458 (J.P.M.L. 1973) (same); *In re Camco Patent Infringement Litig.*, 343 F. Supp. 1406 (J.P.M.L. 1972) (same); *In re Cross-Florida Barge Canal Litig.*, 329 F. Supp. 543 (J.P.M.L. 1971) (same).

Chevron, CITGO, Shell, and Texaco.  The Objectors nonetheless suggest that the Motion should be denied because all of the Defendants in the two actions are not identical.  For example, Sunoco and Tosco point out that they are named only in the *Berisha* case.  *Tosco Brief in Response to Motion,* at 2; *Sunoco Brief in Opp. to Motion,* at 2.  Neither the statute nor this Panel requires exact identity of parties as a condition for granting transfer.  *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) (transferring case involving four additional defendants because "[t]ransfer under Section 1407 is not dependent on a strict identity of . . . parties") (citing *In re Gypsum Wallboard Cases*, 303 F. Supp. 510, 511 (J.P.M.L.1969)); *See also In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (transfer granted where actions "involve[d] some different defendants"); *In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 68 F.R.D. 502, 505 (J.P.M.L.1975) ("The presence of defendants in addition to Celotex in some of the actions before us does not merit the exclusion of those actions from coordinated or consolidated pretrial proceedings"); *In re Airport Car Rental Litig.*, 448 F. Supp. 273, 275 (J.P.M.L. 1978) ("The fact that [a party] is a defendant in only one action does not ipso facto merit the exclusion of the claims against it from transfer").

The Panel is familiar with parties' suggestions that, since they are only named in one action, their unique needs and issues will be overrun if consolidation occurs.  In response to this common complaint, the Panel has assured those parties that

> [t]he transferee judge, of course, will have the flexibility and overall perspective of this litigation to design a pretrial program that will accommodate the needs of each party for any unique discovery or judicial attention concurrently with the common pretrial matters and, as a result, the litigation will harmoniously proceed for the benefit of the parties, their witnesses and the judiciary.

6

*In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979); *See also In re Republic National- Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1405-06 (J.P.M.L.1974). In addition, no party must participate in pretrial proceedings (such as depositions) that the party believes will not affect its interests. *In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. at 960; *In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 68 F.R.D. at 505.

        3.    <u>The Existence of Individual Well Owner Issues Does Not Diminish the Fact That, for Purposes of § 1407, the Two Actions Share Factual Issues.</u>

        Tosco and Sunoco also point to individual issues affecting the validity of specific Plaintiffs' claims. Tosco, for example, highlights the need for individual inquiry into the cause and impact of any specific instance of alleged contamination of a given Plaintiff's property. *Tosco's Brief in Opp. to Motion*, at 7. And Sunoco identifies a host of individual issues relevant to specific plaintiffs' claims, namely "the nature of their property, . . . the location of actual gasoline leaks or spills nearby their property, and whether the values of their specific properties have been impacted." *Sunoco's Brief in Response to Motion*, at 9.

        Movants agree that there are many issues affecting individual plaintiffs. That concern, however, is misplaced in the context of the current motion. Arguments about the abundance (indeed predominance) of "individual issues" will be addressed in Defendants' opposition to class certification under Rule 23. But that does not refute the fact that the two *actions* are so factually similar to merit consolidation for pretrial proceedings. In fact, Tosco's and Sunoco's arguments weigh in favor of transfer, not against it. Because the same "individual plaintiff" arguments will be raised by both the *England* and *Berisha* Defendants during class certification, consolidation would allow these issues regarding the lack of predominance of

common issues under Rule 23 to be raised in one proceeding, and to be resolved consistently.[5]

Similarly, the fact that different states' substantive laws will apply to different Plaintiffs does not weigh against transfer for *pretrial* proceedings, as the Objectors suggest.  This Panel's focus under § 1407 is on whether common *factual* questions exist.  *In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 299 F. Supp. 1403 (J.P.M.L. 1969) (different legal theories present no bar to transfer).  While variance in state laws means, in Movants' view, that no national or multi-state class (or indeed any class) could ever be properly certified under Rule 23, such variances do not preclude § 1407 transfer.

Indeed, similar cases hailing from different states are frequently consolidated.  *In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 68 F.R.D. at 505 ("although each action may raise legal issues regarding application of the law of a particular state, this is an insufficient ground for denying transfer of this litigation"); *In re Petroleum Prods. Antitrust Litig.*, 393 F. Supp. 1091, 1092 (J.P.M.L. 1975) (where "[t]welve major oil companies [were] defendants in

---

[5]  Sunoco's cases do not support its assertion that Movants have not met their burden to show common factual issues.  In *In re Garrison Diversion Unit Litig.*, 458 F. Supp. 223 (J.P.M.L. 1978), the Panel denied transfer because the case involved no complex issues and there was no showing of a need for extensive discovery.  Not a single party here asserts this case is "a simple one," or denies there will be extensive discovery.  Transfer was denied in *In re Interstate Medicaid Patients*, 415 F. Supp 392 (J.P.M.L. 1976) because the common factual issues had already been developed in a prior state proceeding, and the only remaining common issues were issues of law.  The Panel in *In re Brandywine Associates Antitrust and Mortgage Foreclosure Litig.*, 407 F. Supp. 236 (J.P.M.L. 1976), denied transfer because one of the cases was proceeding rapidly to trial.  The fact is, not even Sunoco contends that these cases do not involve "common questions of fact [that] are so complex and the accompanying discovery so time-consuming as to serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *In re Commercial Lighting Products Inc. Contract Litig.*, 415 F. Supp. 392, 393 (J.P.M.L.1976) (two simple tortious interference with contract cases).  Movants have met their burden.  The *Berisha Plaintiffs' Response* merely claims the differences in legal theories should control.  But, as Movants have shown, that is not the law.

both actions," consolidation ordered despite existence of "defendants and state law allegations

unique to each action"); *See also In re Air Crash Disaster Near Papeete, Tahiti, on July 22,*

*1973*, 397 F. Supp. 886, 887 (J.P.M.L.1975); *In re Plumbing Fixture Cases*, 298 F. Supp. 484,

495-96 (J.P.M.L.1968).[6]

4.   Mere Geographic Distinctions Between Putative Class Definitions Do Not
     Weigh Against Consolidation.

The Objectors suggest that no matter how substantively similar the class

definitions in *England* and *Berisha* may be, there is no reason to consolidate because the two

putative classes do not overlap geographically. *See, e.g., Sunoco Response at 10-11.* To the

contrary, as the Panel observed in one case:

> While we recognize that the purported classes in the tag-along
> actions and the previously defined classes in the actions in the
> transferee district are geographically distinct, Section 1407
> proceedings will have the salutary effect of ensuring consistent
> application of Rule 23.

---

[6] This case is not like those Sunoco cites to support its contention that individual issues
predominate here. *In re Asbestos and Asbestos Insulation Material Products Liability Litig.*, 431
F. Supp 906 (J.P.M.L. 1977), is readily distinguishable. That case involved individual personal
injury plaintiffs who were each required to show exposure and injury (among other things), the
single common factual question was the state of scientific knowledge at certain points in time,
and there was near unanimous opposition to transfer. In *England* and *Berisha* there are **no**
personal injury claims, there are a multitude of complex factual issues including a purported 20-
year conspiracy among major oil companies involving a quiltwork of industry associations, *and*
support for transfer heavily outweighs opposition. Sunoco's other cases are no more apt. *In re
Royal Typewriter Co. Breach of Warranty Litig.,* 435 F. Supp. 925 (J.P.M.L. 1977), involved
separate individual contracts. *In re United Gas Pipe Line Co. Litig.*, 391 F. Supp. 774, 776
(J.P.M.L. 1975) likewise concerned individual issues: "allegations of breach of contract give rise
to factual issues predominantly unique to each particular plaintiff's relationship with defendant
United." No such facts exist here. Finally, in *In re Grand Funk R.R. Trademark Litig.*, 371 F.
Supp. 1084 (J.P.M.L. 1974), the Panel denied transfer because discovery in one of the fora was
almost complete and the case (like *Lynn*) was rapidly approaching trial. Here, *England* and
*Berisha* are both at the threshold of the discovery process.

*In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974). This Panel

should eliminate the potential for inconsistent class rulings in MTBE cases by consolidating

*England* and *Berisha*.[7]

In addition, the central allegations in the cases are not particular to any state. The

alleged conspiracy to mislead the government about the properties of MTBE is claimed to have

been a national effort by major oil companies. The regulations at issue are federal regulations

promulgated by the federal EPA under the Clean Air Act. And Plaintiffs' common attempt to

hold Defendants liable simply for the acts of producing and distributing gasoline containing

MTBE is not state-specific, either. In short, the allegations are truly national in scope.

## II.    THE SOUTHERN DISTRICT OF ILLINOIS IS THE MOST CONVENIENT FORUM FOR THE PARTIES AND WITNESSES, AND WILL PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS.

Of those who have taken a position at all, the clear majority of parties would

prefer that the two actions be consolidated in the Southern District of Illinois. *See Comparison of*

*Support and Opposition to Southern District of Illinois As Transferee Forum*  (Ex. B). While

Movants have no strong objection to the Southern District of New York, the Movants urge the

Panel to adopt the expressed majority preference by transferring *Berisha* to the Southern District

---

[7]  Sunoco is correct that geographic overlap between classes weighs heavily in favor of transfer. But Sunoco is incorrect in arguing that overlap is a necessary factor. Rather, any "*similar* or overlapping classes" are strong candidates for consolidation, *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp 651, 655 (J.P.M.L. 1981) (emphasis added), and the class definitions in England and Berisha are plainly "similar," asserting claims on behalf of well owners. Sunoco's citation to *Asbestos* and *Westinghouse* is not persuasive. As noted, *Asbestos* involved individual personal injuries. In *Westinghouse*, individual issues of race discrimination at separate plants existed (including fact that some plants were governed by labor agreements), and contrary to Sunoco's assertion, there was overlap among the classes due to the similar EEOC proceeding.

of Illinois for consolidation with *England*.  Case management and geographic considerations

clearly favor transfer to that District.  And because the proceedings in *England* and *Berisha* are

both at early stages, the progression of neither case is significant enough to warrant transfer on

that basis.

### A.      Case Management Considerations Favor the Southern District of Illinois.

The availability of judicial resources in a critical factor in choosing an appropriate

transferee district.  *In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1973)

(refusing to transfer actions to the Southern District of New York where alternative district's

docket less congested); *In re Peruvian Road Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974)

("[T]he District of Idaho has a significantly lighter civil action docket than the Southern District

of Texas and, therefore, the transferee judge will be able to devote quick attention to this

litigation.").

A comparison of the dockets of the two districts proposed as transferees here

indicates the desirability of the Southern District of Illinois, and confirms this Panel's recent

finding that "the Southern Illinois caseload makes it a good candidate for a multidistrict docket."

*In re MCI Non-Subscriber Tel. Rates Litig.*, No 1275, 1999 U.S. Dist. LEXIS 5076, at *2

(J.P.M.L. Apr. 14, 1999).  The most recent federal court statistics establish the following:

- The Southern District of New York had a 36 percent **increase** in filings per
  judgeship last year, compared to a one percent **decrease** in the Southern District
  of Illinois

- The Southern District of New York had 630 pending cases per judgeship,
  compared to only 336 in the Southern District of Illinois

11

- The median time from filing to trial in the Southern District of New York was 24 months, compared to only 16 months in the Southern District of Illinois.

*See* Administrative Office's 1999 Federal Court Management Statistics, at 48, 103 (statistics for 12-month period ending Sept. 30, 1999).

In addition to having a significantly lighter docket, the Southern District of Illinois in general, and *England* Judge David Herndon in particular, have recent multidistrict litigation experience. *In re MCI Non-Subscriber Tel. Rates Litig.*, 1999 U.S. Dist. LEXIS 5076.[8]

**B.      The Southern District of Illinois is Centrally Located.**

In these cases, there will be relevant parties, witnesses and documents located throughout the United States.  Plaintiffs reside in various states.  So do defendants.  Although several defendants are headquartered in Illinois, defendants have offices and facilities variously located throughout the United States.  No one forum or District is materially more significant than others as a source of proofs.  In short, these are nationwide cases involving nationwide proofs.

When litigation is nationwide in scope, the Panel has frequently noted the importance of choosing a centralized location. *See, e.g., In re MCI Non-Subscriber Tel. Rates Litig.*, 1999 U.S. Dist. LEXIS 5076, at *2 ("the geographic location of the Southern District of Illinois makes it a convenient forum for parties located throughout the United States"); *In re Dept. of Energy Stripper Well Exemption Litig.*, 472 F. Supp. 1282, 1286 (J.P.M.L. 1979)

---

[8] Two parties, Amerada Hess and Valero, suggest that the S.D.N.Y. is the more appropriate forum in part "because the Southern District of New York encompasses approximately seven times as many judges as the Southern District of Illinois. . . ." (*Response*, at 5.)  Of course, as the cited statistics on relative docket congestion demonstrate, the absolute number of judges sitting in a District is not meaningful.

12

("Since this litigation is nationwide, the geographically central location of the District of Kansas also commends its selection as the transferee district"); *In re Corrugated Container Antitrust Litig.*, 441 F. Supp. 921, 924 (J.P.M.L. 1977).

Together, the Plaintiffs in *Berisha* and *England* purport to represent well owners living from coast to coast, and from the Mexican to the Canadian border.  Many of the Defendants in both actions have corporate or operational presence throughout the country.  And Metropolitan St. Louis – easily accessible via Lambert International Airport – is near the population center of the United States, and just minutes from East St. Louis, locus of the courtroom of Judge Herndon.

The *Berisha* plaintiffs argue that New York is more appropriate as a forum because MTBE is allegedly an "eastern" problem.  *See Berisha Plaintiffs' Response at 6-7.*  In fact, of the reformulated gasoline ("rfg") states at issue, Illinois is one of the states and several others are in the Midwest and adjacent to Illinois: Kentucky and Missouri.

Selecting a geographically centralized location is especially important where, as here, additional actions may be filed across the country.  The Panel has explained that where it is likely that similar actions will be filed, "any justification for transferring the cases to either an East or West Coast location will diminish."  *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 (J.P.M.L. 1972) (choosing Kansas City over Los Angeles and Philadelphia).

C.    **The Progression of the Two Actions is Similar.**

Certain parties have asserted that somehow *Berisha* is in a more advanced state than *England*. *See Berisha Plaintiffs Brief in Response to Motion*, at 7-8; *Memorandum in Support of Response of Amerada Hess and Valero*, at 2-4.  While Movants have no doubt of the *Berisha* court's case management abilities, in fact, both cases are in their initial stages.  Both were filed in 2000.  Neither case is fully at issue.  The *Berisha* court has not yet established a schedule for consideration of class certification, discovery or trial.

If anything, the *England* case has a more advanced structure in place.  In *England*, Judge Herndon has already issued an initial Notice to Counsel.  (Exh. C.)  Furthermore, the parties in *England*, in accordance with that initial notice, are preparing to submit before a July 7 court conference a joint case management order that will, among other things, establish a schedule for (1) responsive pleadings; (2) written discovery on class issues; (3) fact and expert depositions on class issues; (4) consideration of class certification; and (5) trial.  In a matter of days, *England* will have a comprehensive plan in place for efficient management of the case through trial.

III.    **CONSOLIDATION OF THE *LYNN* UST CASE WITH THE MTBE CASES IS INAPPROPRIATE.**

Consolidation of the case captioned *Lynn v. Amoco Oil. Co., et al*, Case No. CV 96-T-640-N in the Middle District of Alabama, Northern Division, which involves allegations that defendants suppressed underground storage tank ("UST") technology, with the *England* and *Berisha* MTBE cases, is inappropriate.  The MTBE cases that are the subject of this motion are very different from the *Lynn* UST case.  Any MTBE-specific issues are at best peripheral – an

14

afterthought – in the *Lynn* case. In any event, because the *Lynn* case is four years old and far more developed than the *England* and *Berisha* matters, consolidation would therefore serve no economizing purpose.

### A.    The *Lynn* UST Case Is Not an MTBE Case.

Although this Panel may consolidate matters that share as little as one common factual question, in practice, the Panel has resisted consolidation where common issues do not predominate or form a "core" of factual disputes between two actions, because such consolidation will not serve the purposes of Section 1407. *Asbestos School Prods. Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985) (recognizing that some common questions of fact are not sufficient to support consolidation where the common questions between the actions do not predominate); *In re Eli Lilly & Co. "OraFlex" Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (where common questions between the actions existed but did not predominate, Panel "cannot conclude that centralization of the actions in this litigation under Section 1407 will further the purposes of the statute."); *In re Rely Tampon Prods. Liab. Litig.*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (same).

The *Lynn* UST case does not share core factual issues with *England* and *Berisha*. Indeed, any MTBE allegations in the *Lynn* UST matter are peripheral to that action. The *Lynn* UST plaintiffs allege that various defendants conspired:

- to use cheap UST technology;

- to prevent development of better but more expensive USTs;

15

- to sell off company-owned USTs to service station property owners; and

- to suppress public knowledge of the extent of UST contamination issues.

(*Lynn* 3rd Am. Cplt. ¶ 133, *Lynn* plaintiffs' Ex. A.)

In contrast, the wrongful acts allegedly committed by the MTBE defendants focus exclusively on (1) an alleged conspiracy to misinform the government about the dangers of MTBE in order to obtain EPA approval for the additive's use, and (2) an allegation that MTBE is a dangerous product that should never have been mixed with gasoline intended for widespread consumption. In short, the issue in *Lynn* is whether there was a conspiracy or other wrongful acts regarding storage and handling of all kinds of petroleum products in USTs; while the issue in the MTBE cases involve not product storage, but adding MTBE to gasoline.

The *England* and *Berisha* Plaintiffs seek to represent classes of persons owning wells, regardless of proximity to retail service stations. (*Berisha Am. Cplt.* ¶ 145; *England Cplt.* ¶¶ 43-44.) They assert damage to their wells specifically, not to their property generally. (*Berisha Am. Cplt.* ¶ 1; *England Cplt.* ¶ 2.) They claim that damage was caused by one gasoline additive, MTBE, and not by any other petroleum product or additive. (*Berisha Am. Cplt.* ¶ 3; *England Cplt.* ¶¶ 1.) They allege damage arising not just from retail storage tanks leaks, but from any release of gasoline containing MTBE, including tanker and consumer overfills and vehicle accident rollovers. (*Berisha Am. Cplt.* ¶ 90; *England Cplt.* ¶¶ 34.)

The core factual disputes in the *Lynn* matter and the *England-Berisha* matters are completely different. There is therefore nothing warranting consolidation of *Lynn* with the MTBE lawsuits, *England* and *Berisha.* Indeed, as we next show, the *Lynn* plaintiffs themselves have long recognized the difference.

16

**B.**     **The *Lynn* UST Plaintiffs' Claim That *Lynn* is an MTBE Case is a Recent Tactical Phenomenon.**

For more than four years, the *Lynn* plaintiffs have been pursuing the UST "conspiracy" claims described above in the Middle District of Alabama.  They have hired "UST" experts and taken massive discovery on their UST claims.  For the *Lynn* plaintiffs now to suggest that the *Lynn* UST case is, instead, a case complaining about MTBE in gasoline, is the obvious result of a recent tactical decision, one that occurred only **after** other plaintiffs' lawyers started bringing MTBE class actions such as *Berisha* and *England.*

The *Lynn* UST case (formerly known as *Peters*) was in fact the subject of a prior proceeding before this Panel.  The name of that proceeding was very different, for good reason: *In re Underground Petroleum Storage Tanks Litig.*, MDL Docket No. 1134.  In that proceeding, the *Lynn* plaintiffs filed papers in 1996 **opposing** MDL treatment of the UST claims made in that case.  A copy of the *Lynn* plaintiffs' MDL 1134 papers are attached as Exhibit D hereto.

Tellingly, in 1996, the *Lynn (Peters)* UST plaintiffs never mentioned MTBE to the Panel when describing their claims.  Instead, their brief to the Panel stated:

> "The *Peters* action arises out of defendants' **conspiracy to conceal their knowledge of and information about their leaking underground gasoline storage tanks**."

(Exh. D, *Peters Plaintiffs' Memorandum to the Panel*, at 2.)[9]

Other plaintiffs' pleadings in *Lynn* also confirm that, as currently pled and as historically described, *Lynn* is a UST case.  Those pleadings also plainly show that the MTBE claim is a tactical afterthought.  For instance, the *Lynn* UST Third Amended Complaint describes

---

[9]  The proceedings in MDL 1134 ended when the parties who had moved to transfer withdrew their motion before the Panel on or about August 19, 1996.

the class in the cases as follows:

> Plaintiffs' class claims include fraudulent concealment, trespass, nuisance and conspiracy, and all arise out of Defendants' uniform course of conduct in **knowingly allowing their tanks to leak** . . . . (*3rd Am. Cplt,.* p. 1-2, *Lynn* plaintiffs' Ex. A)

The First Amended Complaint was similar:

> This is a nationwide Class Action lawsuit for compensatory and punitive damages brought on behalf of property owners whose properties have been damaged **as a result of petroleum products leaking from Defendants' underground storage tanks (UST) systems**. (Ex. E, *1st Am. Cplt.*, p.2)

And in opposing the *Lynn* UST defendants' motion to dismiss in 1998, the *Lynn*

plaintiffs left no doubt that their case was about the alleged "UST problem":

> Plaintiffs have made allegations of joint wrongful conduct against the defendants: The conspiracy claim, at paragraphs 155-157 of the Complaint, describes defendants conspiracy and agreement too conceal the UST problem, and to dupe the plaintiffs and the class to avoid having to deal with or face liability for the UST problem. Additional details are provided elsewhere in the Complaint. As early as the 1950's, defendants knowingly refused to take appropriate actions to address the then-known problem of unprotected USTs, by implementing leak prevention, detection, and abatement plans. [*Cplt.* ¶¶ 87-88.] Instead, beginning in the 1950's, the defendants through their trade association (the American Petroleum Institute) initiated, jointly a series of actions intended to (a) conceal the leaking UST problem, (b) falsely convey that the industry was addressing the problem, and, generally, (c) avoid having to take meaningful measures to address the issue posed by their leaking tanks. [*Id.*, ¶¶ 88-97.]

(Ex. F, p. 10.)

> For years, the *Lynn* plaintiffs have pursued what they themselves called a UST

case. Their attempt to shift ground now for tactical reasons should be rejected.

C.   **The MTBE Case and *Lynn* UST Case Are So Dissimilar in Procedural
     Development, There is No Benefit to Consolidating *Lynn*.**

This Panel has resisted consolidating cases where one of the prospective matters

was considerably more developed than others. *In re Eli Lilly "OraFlex" Prods. Liab. Litig.*, 578

F. Supp. at 423; *In re Rely Tampons Prods. Liab. Litig.*, 533 F. Supp. at 1347; *In re Insulin Mfg.*

*Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980) (where action was filed two years

earlier, considerable discovery had occurred and the case was nearly ready for trial, consolidation

of that case was denied); *In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 68 F.R.D. 502,

505 ("Since discovery in that action has apparently been completed, nothing will be achieved by

coupling it with the remainder of the actions."); *In re Upjohn Co. Antibiotic "Cleocin" Prods.*

*Liab. Litig.*, 450 F. Supp. 1168, 1170 (J.P.M.L. 1978) (transfer of cases that have completed

discovery is not appropriate); *In re American Financial Corp. Litig.*, 434 F. Supp. 1232, 1234

(J.P.M.L. 1977) (same); *In re Midwest Milk Monopolization Litig.*, 441 F. Supp. 930, 932

(J.P.M.L. 1977) (refusing to consolidate case that had been pending for 3½ years).

For the same reasons, the *Lynn* UST matter is inappropriate for consolidation with

*England-Berisha*. The *Lynn* UST case is four years old, and much more developed procedurally

than either of the MTBE cases. There would be little if any judicial economy or benefit to the

parties in consolidating this action with *England* and *Berisha*. Fact discovery in the *Lynn* matter

as to the named plaintiffs' claims is complete. Expert discovery is underway, with depositions of

all parties' experts scheduled for completion by July 31, 2000. Summary judgment motions are

about to be filed. In short, the *Lynn* case is all but ready for trial on the individual claims,

presently scheduled in April 2001. Indeed, the *Lynn* plaintiffs' action is apparently an attempt to

19

inject delay into that schedule. In stark contrast, the *England* and *Berisha* lawsuits are new, filed just this year and in their initial stages.

The *Lynn* plaintiffs' suggestion that the advanced stage of the *Lynn* case is grounds for transfer of these actions to the Middle District of Alabama is ironic indeed. In 1996, in their filings before this Panel, they argued the opposite: that the "relatively advanced" stage of the *Lynn* proceeding in 1996 was grounds for **denying** MDL transfer. (Exh. D, *Peters' Plaintiffs' Response*, at 1.) Now, four years later, they argue that the far more advanced stage of *Lynn* somehow makes it ripe for MDL treatment.

In summary, the distinct factual allegations and advanced procedural posture of *Lynn* make that case an inappropriate candidate for consolidation with the MTBE litigation in *England* and *Berisha*. The purpose of Section 1407 – to serve the convenience of the parties and witnesses and to promote just and efficient litigation – would be undermined rather than served by consolidating the *Lynn* case in the MTBE MDL action.

## CONCLUSION

The undersigned Defendants respectfully request that this Panel grant the Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings Under 28 U.S.C. § 1407, and transfer *Berisha* to the Southern District of Illinois for consolidation with *England*. The Panel should also reject the suggestion that the *Lynn* UST case is a related matter, and refuse to consolidate that action with the MTBE cases.

Dated: July 3, 2000

Respectfully submitted,

*Andy Langan /AB*

Richard C. Godfrey
J. Andrew Langan
Thomas A. Tozer
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois  60602
(312) 861-2000

Mark E. Holstein
200 East Randolph Drive
Suite 2000
Chicago Illinois, 60601
(312) 861-5437

Attorneys for Defendants
**BP AMOCO CORPORATION,
AMOCO OIL COMPANY and
ATLANTIC RICHFIELD COMPANY**

*Dan Ball /AB*

Dan H. Ball
Roman P. Wuller
One Firstar Plaza, Suite 3500
St. Louis, Missouri 63101
(314) 552-6000

OF COUNSEL:
THOMPSON COBURN LLP

Attorneys for Defendant
**CHEVRON U.S.A., INC.**

*Nathan Eimer /AB*

Nathan P. Eimer
Eimer Stahl Klevorn & Solberg
122 South Michigan Avenue, Suite 1776
Chicago, Illinois 60603

Attorney for Defendant
**CITGO PETROLEUM CORPORATION**

21

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION - PANEL ATTORNEY SERVICE LIST                                                June 29, 2000

DOCKET: 1,358 - In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation                                Page 1
STATUS: Pending

TRANSFEREE INFORMATION
   Dist:
   Judge:

   ATTORNEY - FIRM                                    REPRESENTED PARTY(S)

   Ball, Dan H.                                       => Chevron USA, Inc.; Conoco, Inc.*; Exxon Corp.; Exxon Mobil Corp.*, Mobil Oil
   Thompson & Coburn, L.L.P.                             Corp.
   One Firstar Plaza
   St. Louis, MO  63101

   Elmer, Nathan P.                                   => Citgo Petroleum Corp.*
   Sidley & Austin
   Bank One Plaza
   10 South Dearborn Street
   Chicago, IL  60603

   Galvin, John E.                                    => Phillips Petroleum Co.*
   Sandberg, Phoenix & von Gontard
   One City Centre
   Suite 1500
   St. Louis, MO  63101

   Gray, Joanne                                       => United Refining Co.*
   Schneck, Weltman & Hashmall, LLP
   1285 Avenue of the Americas
   New York, NY  10019

   Guttmann, John S.                                  => Sunoco, Inc.*
   Beveridge & Diamond, P.C.
   1350 I Street, N.W.
   Suite 700
   Washington, DC  20005

   Hinck, Jon                                         => Arcuri, Melanie J.*; Rexinha, Donna*; Greene, Steven C.; La Susa, Ron*
   Lewis, Saul & Associates, P.C.
   183 Middle Street
   Suite 200
   Portland, ME  04101

   Langan, J. Andrew                                  => Amoco Oil Co.*; Atlantic Richfield Co.*; BP Amoco Corp.*
   Kirkland & Ellis
   200 East Randolph Drive
   Chicago, IL  60601

   Leifer, Steven L.                                  => Valero Marketing  & Supply Co.*
   Baker, Botts, L.L.P.
   1299 Pennsylvania Avenue, N.W.
   Washington, DC  20004

   O'Connor, Mark G.                                  => Coastal Corp.*
   Regional Counsel
   Coastal Oil New York, Inc.
   511 Rt. 46 West
   Hasbrouck Heigh, NJ  07604

   Pasquale, Kenneth                                  => Tosco Corp.*
   Stroock, Stroock & Lavan, L.L.P.
   180 Maiden Lane
   New York, NY  10038

   Shulman, Robert H.                                 => Amerada Hess Corp.*
   Howrey Simon Arnold & White, LLP
   1299 Pennsylvania Avenue, N.W.
   Washington, DC  20004

   Tillery, Stephen M.                                => Asbill, Donna L.*; Bauer, James*; Christiansen, Claudia*; England, David*;
   Carr, Korein, Tillery, Kunin, Montroy &               McMannis, Rhea Susan*; Owca, Marvin*

NOTE: Please refer to the title page for complete report scope and key.
   *   Signifies that an appearance was made on behalf of the party by the representing attorney.
   #   Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
   NOTE: All dismissed parties (and counsel representing only dismissed parties) were suppressed.

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION - PANEL ATTORNEY SERVICE LIST                          June 29, 2000
(1,358 Panel Attorney Service List Cont'd)
                                                                                                   Page  2

| ATTORNEY - FIRM | REPRESENTED PARTY(s) |
|---|---|
| Glawslo Executive Woods Court<br>Swansea, IL  62226 | |
| Tully, Mark E.<br>Goodwin, Procter & Hoar, L.L.P.<br>53 State Street<br>Boston, MA  02109 | => Gulf Oil Ltd. Partnership* |
| Wallace, Richard E. Jr.<br>Wallace, King, Marraro & Branson, P.L.L.C.<br>1050 Thomas Jefferson Street, N.W.<br>Washington, DC  20007 | => Equilon Enterprises, L.L.C.*; Motiva Enterprises, L.L.C.*; Shell Oil Co.*; Shell<br>Oil Products Co.*; Texaco Refining & Marketing, Inc.*; Texaco, Inc.* |

NOTE: Please refer to the title page for complete report scope and key.
  *   signifies that an appearance was made on behalf of the party by the representing attorney.
  #   Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
  NOTE: All dismissed parties (and counsel representing only dismissed parties) were suppressed.

A

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUL -3 2000

FILED
CLERK'S OFFICE

ALL-STATE® LEGAL  800.222.0510   E0511   RECYCLED

RECEIVED
CLERK'S OFFICE

2000 JUL -3 P 2 19

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# EXHIBIT A

## COMPARISON OF SUPPORT AND OPPOSITION TO CONSOLIDATION

| BERISHA (Southern District of New York) | | ENGLAND (Southern District of Illinois) | |
|---|---|---|---|
| *Support/Not Opposed* **14** | *Opposed* **6** | *Support/Not Opposed* **17** | *Opposed* **0** |
| Amerada Hess Corporation | Plaintiffs (4) | Plaintiffs (6) | |
| Atlantic Richfield Company | Sunoco Inc. | Amoco Oil Company | |
| BP Amoco Corporation | Tosco Corporation | Atlantic Richfield Company | |
| Chevron USA, Inc. | | BP Amoco Corporation | |
| CITGO Petroleum Corporation | | Chevron USA, Inc. | |
| Coastal Corp. | | CITGO Petroleum Corporation | |
| Exxon Corporation | | Conoco, Inc. | |
| Gulf Oil Ltd. Partnership | | Equlion Enterprises LLC | |
| Mobil Oil Corporation | | ExxonMobil Corporation | |
| Motiva Enterprises, LLC | | Phillips Petroleum Company | |
| Shell Oil Products Co. | | Shell Oil Company | |
| Texaco Inc. | | Texaco Refining and Marketing Inc. | |
| United Refining Company | | | |
| Valero Marketing and Supply Company | | | |

B

# EXHIBIT B

## COMPARISON OF SUPPORT AND OPPOSITION TO SOUTHERN DISTRICT OF ILLINOIS AS TRANSFEREE FORUM

| *Parties Expressly Favoring S.D. Illinois* | *Parties Expressly Opposed to S.D. Illinois* |
|---|---|
| *England* Plaintiffs | *Berisha* Plaintiffs |
| Amoco Oil Company (*England*) | Amerada Hess Corporation (*Berisha*) |
| Atlantic Richfield Company (*both cases*) | Tosco Corporation (*Berisha*) |
| BP Amoco Corporation (*both cases*) | Valero Marketing and Supply Co. (*Berisha*) |
| Chevron USA, Inc. (*both cases*) | |
| CITGO Petroleum Corporation (*both cases*) | |
| Conoco, Inc. (*England*) | |
| Exxon Corporation (*England*) | |
| ExxonMobil Corporation (*Berisha*) | |
| Mobil Oil Corporation (*England*) | |
| Phillips Petroleum Company (*England*) | |

C

ALL STATE LEGAL 800-222-0510   EDS-11   RECYCLED

*Andy Langan*

**FILED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUN 0 7 2000

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

DAVID ENGLAND, et al.,  )

        Plaintiff(s),  )

        vs.  )

ATLANTIC RICHFIELD COMPANY, et al.,  )

        Defendant(s).  )

CASE NO.  00-371-DRH

CJRA TRACK C

PRESUMPTIVE TRIAL MONTH:
SEPTEMBER 2001

JUDGE DAVID R. HERNDON

## NOTICE TO COUNSEL

Pursuant to Local Rule 16.1, the above-styled cause has been assigned as a "Track * C *" case.  Therefore, you are hereby placed on notice that a presumptive trial month has been set as indicated above.

Local Rule 16.2(c) calls for an initial pre-trial scheduling and discovery conference, which is hereby set before <u>Honorable Gerald B. Cohn</u> on July 7, 2000, 8:30 a.m.   The purposes of this conference are:

1.      To discuss the Joint Report of the Parties as to the proposed discovery plan;

2.      To discuss the possibility of settlement;

3.      To discuss the possibility of using a voluntary alternative dispute resolution device (e.g., mediation, arbitration, summary jury trial, mini-trial) to resolve the dispute;

4.      To discuss the complexity of the case and, if it is tried, the approximate number of days necessary to complete the testimony;

5.      To confirm the presumptive date for the trial (see Local Rule 16.1(a));

6.      To set a cut-off date for completion of all discovery including experts' discovery (or in the case of extraordinarily complex cases, the cut-off date for completion of core

RECEIVED

JUN 1 6 2000

J. A. L.

discovery) which date shall be no later than ninety (90) days before the first day of the month of the presumptive trial date;

7.    To establish a plan for the management of discovery in the case, including any limitations on the use of the various discovery devices that may be agreed to by the parties, ordered by the judicial officer presiding over the conference, or required by Local Rule (see Rule 33.1 of the Local Rules) of this Court restricting a party to twenty-five (25) interrogatories, except by leave of Court and requirements as to disclosures and scheduling of discovery relating to expert witnesses;

8.    To formulate, simplify and narrow the issues;

9.    To discuss and set deadlines for amendments to the pleadings including the filing of third-party complaints, which deadline shall be no later than ninety (90) days following this conference;

10.   To discuss the filing of potential motions and a schedule for their disposition, including the cut-off date for filing dispositive motions;

11.   To set the approximate date of the settlement conference (see Local Rule 16.3);

12.   To set the approximate date of the final pre-trial conference (see Local Rule 16.2);

13.   To consider the advisability of referring various matters to a Magistrate Judge or a Special Master;

14.   To discuss the advisability of one or more additional case management conferences prior to the final pre-trial conference; and

15.   To cover any other procedural issues that the judicial officer hearing the case determines to be appropriate for the fair and efficient management of the litigation.

The Joint Report of Parties and Proposed Scheduling and Discovery Order, consented to and

signed by each party or by an attorney of record, at the discretion of the assigned judicial officer, may be deemed to satisfy the requirements of Local Rule 16.2(c).

All actions taken at the initial pre-trial scheduling and discovery conference will be incorporated into a pre-trial scheduling and discovery order, which shall be modified only by Order of Court.

The scheduling and discovery conference may, at the discretion of the Magistrate Judge, be canceled if the Magistrate Judge approves the parties' Joint Report of Parties and Proposed Scheduling and Discovery Order as submitted.

Dated:  June 7, 2000

NORBERT G. JAWORSKI
CLERK OF COURT

By:  _J. M. Swift_____
J. M. Swift, Deputy Clerk

**Forms referenced in this document are available, free of charge, downloadable from the district court web site at www.ilsd.uscourts.gov or from the Clerk's Office for a fee of $3.00.  Copies of the new forms are included as attachments in the January, 2000 revision of the Local Rules.**

D

ALL-STATE LEGAL  800.222.0510   F7S511   RECYCLED

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| | ) | MDL DOCKET NO. 1134 |
| UNDERGROUND PETROLEUM | ) | |
| STORAGE TANKS LITIGATION | ) | |
| | ) | |

### *PETERS* PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1407

Plaintiffs' class counsel in Peters v. Brants Grocery, et al., Civil Action No. 96-D-940-N, pending in the United States District Court for the Middle District of Alabama before the Honorable Ira Dement, hereby respond to the motion to transfer filed by some of the defendants in that action. Defendants ask this panel to transfer the already-certified and relatively advanced Peters proceeding to the United States District Court for the District of Massachusetts, where the action titled Jareanvai v. Citgo Petroleum Corp., et al., Civil Action No. 96-11310PBS, was later-filed, and, a few weeks later, dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(i). Plaintiffs in the relatively undeveloped Jareanvai action have dismissed that case, in order to join forces with the plaintiffs in the Peters action, to continue prosecuting a single nationwide class action, in a *single*

certified on May 8, 1996. After the filing and certification of the <u>Peters</u> action, defendants did

for approximately three weeks face a second uncertified plaintiff class action, the <u>Jareanvai</u>

action; however, the <u>Jareanvai</u> action was dismissed, and is no longer pending against

defendants.

        2.    Plaintiffs' class counsel do not deny that allegations in the later-filed and

previously-dismissed <u>Jareanvai</u> action were similar to the allegations in the <u>Peters</u> case.

Plaintiffs respectfully submit that this similarity does not justify transferring the <u>Peters</u> action

from the Middle District of Alabama, which has become the sole and most advanced forum for

nationwide plaintiff class proceedings against all defendants.

        3.    Transfer of the <u>Peters</u> action to the <u>Jareanvai</u> action for coordinated and

consolidated pretrial proceedings will *not* promote the just and efficient conduct of these actions,

and will not avoid overlapping and conflicting discovery. There will be no consolidated or

coordinated pretrial proceedings and there will be no overlapping discovery because the

<u>Jareanvai</u> action has been dismissed. Nothing in that case will overlap anything that has been

done or is being done in the <u>Peters</u> action.

        4.    Plaintiffs and plaintiffs' counsel in the <u>Jareanvai</u> action have joined forces

with plaintiffs and class counsel in the <u>Peters</u> action to prosecute a single case in the Alabama

district court. This is a significant development, which avoids what could have been competition

among two competing groups of plaintiffs' counsel for control of or leadership positions in the

nationwide prosecution of all class members' claims against defendants arising out of defendants'

misconduct with respect to their leaking underground storage tanks. Plaintiffs have

cooperatively worked among themselves to make sure that the jurisdiction of the Alabama

005.UST                                     - 3 -

district court is not compromised, and that the Alabama district court is able to organize and manage the litigation to make a more final class certification determination. upon additional discovery and briefing, and to assess the merits of all plaintiffs' claims in a single proceeding.

5.      The District of Massachusetts, where the <u>Jareanvai</u> case was pending. is not the appropriate forum in which to conduct coordinated and consolidated pretrial proceedings. The <u>Peters</u> action is more advanced.  Plaintiffs in the <u>Jareanvai</u> action have dismissed their claims in order to prosecute their claims through the <u>Peters</u> action.  The court in the <u>Peters</u> action is poised to aggressively manage the litigation.  The only goal which would be accomplished by transferring the <u>Peters</u> action to Massachusetts would be defendants' goal of delaying the prosecution of plaintiffs' claims in the <u>Peters</u> action.

6.      Defendants have not put forth a single fact demonstrating that the District of Massachusetts is a "more convenient forum."  The <u>Peters</u> action involves the most named parties and witnesses.  Defendants weakly argue that Boston is a better location for the prosecution of this litigation because it is a bigger city, and because no defendants are headquartered in Alabama.  Defendants fail to inform the Panel that they are also not headquartered in Massachusetts, and that the nationwide class which was certified in <u>Peters</u> involves a national pattern of conduct by defendants (*e.g.*, knowingly concealing its knowledge of leaking underground storage tanks from all plaintiffs' class members), in a nationwide conspiracy.  Defendants' conduct took place in and affected class members in every state.  This case will be prosecuted on a national basis.  The fact that plaintiffs' counsel in an already-certified class have commenced the prosecution of the litigation in Alabama tips the scales towards Alabama over a forum such as Massachusetts, where the judge is completely unfamiliar

with the litigation, and in which a case was only recently filed. and. shortly thereafter. dismissed.

      7. ·     Contrary to defendants' assertion. prejudice *will* result to all plaintiff class

members from a consolidation of these actions and transfer to the District of Massachusetts.

Defendants' goal by filing the motion to transfer is to disrupt and delay the proceedings in the

Alabama case.  Not surprisingly, defendants moved to stay proceedings in the Alabama/

Peters action shortly after the filing of the MDL petition.  Prosecution of the case would be made

most efficient, economical and convenient for all parties, if the court were either to deny

defendants' motion to transfer as an unnecessary procedural tactic in light of the dismissal of the

Jareanvai action or, alternatively, to transfer all proceedings to the Middle District of Alabama to

permit that court to continue managing and exercising its jurisdiction over this nationwide class

action.

                        Respectfully submitted,

                        Joe R. Whatley

                        COOPER, MITCH, CRAWFORD,
                            KUYKENDALL & WHATELY
                        1100 Financial Center
                        505 20th Street North
                        Birmingham, AL  35203-2605

                        Attorney for *Peters* Plaintiffs' Class Counsel

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| UNDERGROUND PETROLEUM | ) MDL DOCKET NO. 1134 |
| STORAGE TANKS LITIGATION | ) |
| | ) |

### *PETERS* PLAINTIFFS' MEMORANDUM
### IN SUPPORT OF RESPONSE TO DEFENDANTS'
### MOTION TO TRANSFER UNDER 28 U.S.C. § 1407

Joe R. Whatley
COOPER, MITCH, CRAWFORD,
KUYKENDALL & WHATELY
1100 Financial Center
505 20th Street North
Birmingham, AL  35203-2605

For *Peters* Plaintiffs' Class Counsel

July 24, 1996

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  TRANSFER SHOULD BE DENIED BECAUSE IT IS NOT JUSTIFIED BY THE
      PRINCIPLES UNDERLYING 28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   IN THE ALTERNATIVE, THE *PETERS* AND *JAREANVAI* PLAINTIFFS JOINTLY
      REQUEST TRANSFER TO THE MIDDLE DISTRICT OF ALABAMA, WHICH IS
      THE FORUM WHICH CAN CONTINUE TO EQUITABLY AND EFFICIENTLY
      MANAGE THE PROSECUTION OF THIS NATIONWIDE CLASS ACTION . . . . . . 6

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

In re "Lite Beer" Trademark Lit.,
    437 F. Supp. 754 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Lit.,
    446 F. Supp. 242 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Peruvian Road Lit.,
    380 F. Supp. 796 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Petroleum Products Antitrust Lit.,
    393 F. Supp. 1091 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Raymond Lee Organization, Inc. Secur. Lit.,
    446 F. Supp. 1266 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Scotch Whiskey Antitrust Lit.,
    299 F. Supp. 543 (J.P.M.L. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re U.S. Navy Variable Reenlistment Bonus Lit.,
    407 F. Supp. 1405 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**FEDERAL STATUTES**

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 6

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 41(a)(1)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## I.   INTRODUCTION

Plaintiffs' class counsel in Peters v. Brants Grocery, et al., Civil Action No. 96-D-940-N, pending in the United States District Court for the Middle District of Alabama, respectfully submit this memorandum of law in support Peters plaintiffs' response to defendants' motion to transfer under 28 U.S.C. § 1407.  Plaintiffs submit that defendants' motion to transfer is part and parcel of defendants' overall strategy to prevent the efficient and equitable resolution of this nationwide class action, before the court in which an already-certified class is pending and being prosecuted, and in which the litigation is being rapidly prosecuted on a nationwide class basis.  Through their motion, defendants seek to transfer the relatively advanced Peters proceeding from the Middle District of Alabama to a district court in Massachusetts in which the now-dismissed Jareanvai action was pending for a few weeks.

Plaintiffs respectfully suggest that defendants' motion to transfer should be denied, because there are a minimal number of (only two) actions which defendants have identified as actions subject to their motion to transfer, one of which has been dismissed.[1]  In the alternative, plaintiffs recommend transfer of the Jareanvai action to the Middle District of Alabama, the forum which will ensure the just and efficient resolution of these proceedings because:  (1) all plaintiffs' counsel in both the Peters and the Jareanvai action seek to prosecute a single action in the Middle District of Alabama, and are presently working together towards that end; (2) the

---

[1]Defendants have moved to strike the notice of dismissal filed in the Massachusetts district court.  However, the Jareanvai plaintiffs do not intend to prosecute their Massachusetts district court action; instead, whether through the previously filed notice of dismissal, or if forced by defendants' continuing procedural games, through a motion to dismiss the Massachusetts case, Jareanvai plaintiffs will prosecute their claims in the Peters action, with Peters class counsel, in the Middle District of Alabama.

Peters/Middle District of Alabama action is more advanced than the only other action which is subject to the defendants' motion to transfer; (3) a plaintiffs' class has already been certified in the Peters action; and (4) the Middle District of Alabama is the most convenient forum, for the reasons set forth herein.

## II.   STATEMENT OF FACTS

The Peters action arises out of defendants' conspiracy to conceal their knowledge of and information about their leaking underground gasoline storage tanks. Peters was filed on May 7, 1996, along with a motion for class certification, and was tentatively and conditionally certified based upon the detailed allegations of the complaint on May 8, 1996. Peters is the only certified nationwide class action of which Peters plaintiff class counsel are aware.[2] The Peters action is being aggressively managed both by plaintiff class counsel and the Court. Plaintiffs are discussing case management issues with the defendants, and hope to file a joint case management order. The Peters court has set certain discovery and briefing schedules on various pending motions in the action.

Jareanvai was filed on approximately June 26, 1996, and, within a few weeks, dismissed as of right by notice of voluntary dismissal without prejudice and pursuant to Fed. R. Civ. P. 41(a)(1)(i). Jareanvai plaintiffs dismissed their action in order to join forces with plaintiff class counsel in the Peters case, to jointly prosecute a single nationwide class action in a single forum before one judge. The Jareanvai plaintiffs have no intention of prosecuting an action in

_____

[2]Plaintiffs are aware that prior individual actions have proceeded to conclusion -- either by settlement or jury verdict favorable to plaintiffs -- against various Peters defendants. However, Peters is the first and only pending class action of which plaintiffs class counsel are aware.

Massachusetts District Court because they will work through the already-certified class in <u>Peters</u>.

Plaintiff Class Counsel are unaware of any other pending class action -- putative or certified -- involving similar claims.

### III. TRANSFER SHOULD BE DENIED BECAUSE IT IS NOT JUSTIFIED BY THE PRINCIPLES UNDERLYING 28 U.S.C. § 1407

Defendants' motion should be denied because it does not achieve the primary goal of 28 U.S.C. § 1407. 28 U.S.C. § 1407(a) states that motions to transfer will be granted only where they "promote the just and efficient conduct" of the actions which are the subject of the motion, and where transfer would promote "convenience of parties and witnesses." Plaintiffs address the issue of convenience in Section IV, below. "When, as here, a minimal number of actions [2] are under consideration for transfer under Section 1407, the movants bear a strong burden to show that . . . transfer would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." <u>In re Raymond Lee Organization, Inc. Secur. Lit.</u>, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978); <u>In re Scotch Whiskey Antitrust Lit.</u>, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

Under circumstances similar to those present in this case, the Panel in the <u>Raymond Lee Organization</u> litigation declined to transfer actions to a single forum where there were only two cases, where one case was more advanced than the other, and where the courts had the option of coordinating discovery or staying one of the proceedings. <u>In re Raymond Lee Organization</u>, <u>supra</u> ("We find that movants have not met [their] burden, although we recognize that these actions share common questions of fact").

Defendants cannot meet their burden to justify their transfer motion here because

one of the two actions which is the subject of defendants' motion has been dismissed, leaving only one nationwide class action pending in the Middle District of Alabama. The Middle District of Alabama has proved to be an efficient and competent forum for the management of the litigation. Defendants cannot and do not identify any problems with the management of the litigation to date in the Middle District of Alabama. On the contrary, their motion is no doubt motivated in large part by the fact that the litigation has proceeded in Alabama aggressively and with all deliberate speed.

Defendants identify two (incorrect) arguments in support of their theory that transfer to Massachusetts would promote the interests of judicial economy. First, defendants incorrectly assert that the existence of the <u>Jareanvai</u> action will result in overlapping discovery. This is untrue because the <u>Jareanvai</u> plaintiffs have dismissed their action, and intend to prosecute their claims in the already-certified <u>Peters</u> action. Defendants also wrongly assert that the existence of the <u>Jareanvai</u> action will lead to potentially inconsistent class certification determinations. This is also false. The <u>Peters</u> court is the only court of which plaintiffs' class counsel are aware in which class allegations are pending. Moreover, the <u>Peters</u> court has already conditionally certified a nationwide plaintiff class in that action, and exercised jurisdiction over that nationwide class to continue receiving argument and evidence on the issue of class certification so that it may make a determination regarding class certification that will be dispositive. <u>Jareanvai</u> plaintiffs have dismissed their action, and have no intention of moving for class certification in Massachusetts District Court. Instead, they will prosecute their claims under the existing <u>Peters</u> class action.

Under similar circumstances, this panel has denied motions to transfer. For

example, in In re "Lite Beer" Trademark Lit., 437 F. Supp. 754 (J.P.M.L. 1977), the panel

vacated an order to show cause, finding that transfer "would not necessarily serve the

convenience of the parties and witnesses or promote the just and efficient conduct of the

litigation," despite the existence of common issues of fact, where: (1) the recent determination

regarding a key issue in the case by one court would have a dispositive effect on other pending

actions; and (2) the parties had agreed to stay one of five actions pending the outcome of

litigation in the other actions. Id. at 755. Similarly, in In re U.S. Navy Variable Reenlistment

Bonus Lit., 407 F. Supp. 1405 (J.P.M.L. 1976), the court held that "while these actions may

involve some common questions of fact, we find that at this time their transfer to a single forum

under Section 1407 will neither serve the convenience of the parties and their witnesses, nor

promote the just and efficient conduct of this litigation" because the disposition of a key issue in

the appellate court in one of the actions would have a dispositive effect on matters in related

pending actions. Id. See also In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Lit., 446 F.

Supp. 242 (J.P.M.L. 1978) (Where a forum has already or is about to make rulings on significant

and/or dispositive issues, and where alternatives to coordination exist [such as coordination of

discovery or abatement of one of the actions], the transfer motion is properly denied).

        The purpose of 28 U.S.C. § 1407 -- the efficiency and centralized management of

complex litigation -- has been accomplished by plaintiffs in the Peters action, through their effort

to prosecute one class action in one forum, the Middle District of Alabama. the Jareanvai

plaintiffs have joined in that effort. On these facts, defendants' motion is unnecessary, and would

have the sole effect of delaying and disrupting litigation pending in Alabama.

006.UST

IV.   **IN THE ALTERNATIVE, THE *PETERS* AND *JAREANVAI* PLAINTIFFS JOINTLY REQUEST TRANSFER TO THE MIDDLE DISTRICT OF ALABAMA, WHICH IS THE FORUM WHICH CAN CONTINUE TO EQUITABLY AND EFFICIENTLY MANAGE THE PROSECUTION OF THIS NATIONWIDE CLASS ACTION**

Even if the Panel determines that the already-dismissed <u>Jareanvai</u> action should be coordinated with the <u>Peters</u> action, defendants have not demonstrated and cannot demonstrate that the District Court of Massachusetts is the appropriate forum for transfer. 28 U.S.C. § 1407 requires transfer to the forum which will "be for the convenience of the parties and witnesses and will promote the just and efficient conduct of" the actions. As demonstrated herein, the Middle District of Alabama is that forum.

Defendants submit two arguments in support of transfer to Boston: (1) Boston is a big city; and (2) it will be easier for witnesses to travel to Boston. Plaintiffs respectfully submit that the size of Boston is irrelevant, and the Panel should instead give much greater weight to the fact that the Middle District of Alabama's docket has been able to absorb and handle the <u>Peters</u> action efficiently and aggressively. Moreover, defendants' arguments regarding convenience are nonsensical. Since parties and witnesses generally do not participate in pretrial proceedings, it is not likely that they will ever have to travel to the transferee forum. Moreover, because this is a nationwide class action involving nationwide uniform misconduct in the form of a conspiracy among all named defendants, discovery to be coordinated by the Middle District of Alabama will be conducted on a nationwide basis. There is no justification for deeming Massachusetts to be any more the center of gravity of the litigation than is Alabama.

On the contrary, Alabama has proved to be an extremely convenient and efficient forum. Plaintiffs' counsel have organized in that forum and are already working on a leadership

structure for the nationwide prosecution of the litigation in that district.  In addition, a nationwide

class has already been certified and is pending in that forum.  Plaintiffs have been engaging in

substantial meet and confer discussions with local and national counsel for defendants in the

Alabama District Court.  All plaintiff class member claims can be resolved and/or adjudicated in

the Alabama District Court.

   Not only is the Middle District of Alabama a convenient forum, but, in addition,

the Middle District of Alabama -- unlike the Massachusetts District Court -- will best "promote

the just and efficient conduct" of this nationwide class action.  Plaintiffs' counsel have already

organized themselves in the Middle District of Alabama, and the prosecution of the litigation is

already well-underway in Alabama, before a court which has already gained some familiarity

with the parties and the litigation.  There is already a schedule for motion practice in the Middle

District of Alabama.  Where, as here, the Middle District of Alabama is the only district in which

an active case is pending, in which a class certification decision has been made, and in which the

litigation is being actively prosecuted, any transfer should be made to that district.  See, e.g., In re

Peruvian Road Lit., 380 F. Supp. 796 (J.P.M.L. 1974) (familiarity of transferee judge with issues

raised is a factor supporting transfer to that district); In re Petroleum Products Antitrust Lit.,

393 F. Supp. 1091 (J.P.M.L. 1975) (same).

V.   **CONCLUSION**

For the foregoing reasons, Peters plaintiff class counsel respectfully recommend denial of defendants' motion to transfer.  In the alternative, any litigation should be transferred to the Middle District of Alabama, where it is presently being efficiently and aggressively prosecuted and managed.

Respectfully submitted,

Joe R. Whatley

COOPER, MITCH, CRAWFORD,
   KUYKENDALL & WHATELY
1100 Financial Center
505 20th Street North
Birmingham, AL  35203-2605

For *Peters* Plaintiffs' Class Counsel

E

ALL-STATE® LEGAL  800 222-7510   EDS11   RECYCLED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES PETERS; ALMA PETERS;
TOMMY PETERS; BUDDY LYNN;
JANET LYNN; ROBERT PATE, JR.;
GLORIA MOBLEY; RUFUS J.
VANABLE; OLA MAE WELLS;
WILL R. PETERSON; ARCHIE L.
BLAXLEY; JOHNNIE E. WILLIAMS;
EARL C. CUNNINGHAM;
RONNIE E. CHAPPELL,
on behalf of themselves
and as representative of a class
of persons similarly situated

Plaintiffs,

v.

AMOCO OIL COMPANY;
TEXACO REFINING AND
MARKETING, INC.;
CHEVRON, USA, INC.; CHEVRON
USA PRODUCTS COMPANY;
EXXON CORPORATION
d/b/a EXXON COMPANY USA;
B.P. EXPLORATION & OIL, INC.;
TENNECO INC; CONOCO, INC;
STAR ENTERPRISE; SHELL OIL
PRODUCTS COMPANY;
MAPCO PETROLEUM, INC.;
PHILLIPS PETROLEUM COMPANY;
DIAMOND SHAMROCK REFINING
AND MARKETING COMPANY;
UNOCAL SERVICE CORPORATION;
FINA OIL AND CHEMICAL COMPANY;
MOBIL OIL CORPORATION;
CITGO PETROLEUM CORPORATION;
SUN COMPANY, INC.;
OCCIDENTAL PETROLEUM
SERVICES, INC.; ATLANTIC
RICHFIELD COMPANY;

Defendants

CIVIL ACTION NO:

96-D-940-N

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES PETERS; ALMA PETERS; )
TOMMY PETERS; BUDDY LYNN; )
JANET LYNN; ROBERT PATE, JR.; )
GLORIA MOBLEY; RUFUS J. )
VANABLE; OLA MAE WELLS; )
WILL R. PETERSON; ARCHIE L. )
BLAXLEY; JOHNNIE E. WILLIAMS; )
EARL C. CUNNINGHAM; )
RONNIE E. CHAPPELL, )
on behalf of themselves )
and as representative of a class )
of persons similarly situated )
)
Plaintiffs, )       CIVIL ACTION NO:
)
v. )          96-D-940-N
)
AMOCO OIL COMPANY; )
TEXACO REFINING AND )
MARKETING, INC.; )
CHEVRON, USA, INC.; CHEVRON )
USA PRODUCTS COMPANY; )
EXXON CORPORATION )
d/b/a EXXON COMPANY USA; )
B.P. EXPLORATION & OIL, INC.; )
TENNECO INC; CONOCO, INC.; )
STAR ENTERPRISE; SHELL OIL )
PRODUCTS COMPANY; )
MAPCO PETROLEUM, INC.; )
PHILLIPS PETROLEUM COMPANY; )
DIAMOND SHAMROCK REFINING )
AND MARKETING COMPANY; )
UNOCAL SERVICE CORPORATION; )
FINA OIL AND CHEMICAL COMPANY; )
MOBIL OIL CORPORATION; )
CITGO PETROLEUM CORPORATION; )
SUN COMPANY, INC.; )
OCCIDENTAL PETROLEUM )
SERVICES, INC.; ATLANTIC )
RICHFIELD COMPANY; )
)
Defendants

### FIRST AMENDED COMPLAINT

Plaintiffs, James Peters, Alma Peters, and Tommy Peters, et. al., having received the written consent of all adverse parties in accordance with Rule 15(a) of the Federal Rules of Civil Procedure, hereby file their First Amended Complaint. Plaintiffs are amending their complaint to add additional class representatives and class defendants. In their original complaint filed in state court, plaintiffs had named two fictitious parties, defendant A and defendant B, as defendants.[1]

Plaintiffs hereby make the following allegations against all Defendants: This is a nationwide Class Action lawsuit for compensatory and punitive damages brought on behalf of property owners whose properties have been damaged as a result of petroleum products leaking from Defendants' underground storage tanks (UST) systems at service station sites located in the United States. The value of the properties owned by Plaintiff Class members has been substantially reduced by contamination caused by the seepage from leaking tank systems of gasoline and waste oil containing, among other chemicals, benzene, a recognized cancer causing agent.

### PARTIES

Named Plaintiffs:

1.      The named Plaintiffs are persons who reside in, and/or own or possess real

---

[1] Plaintiffs named the following fictitious parties as defendants: "DEFENDANT A: Whether singular or plural, that entity or those entities who were responsible for the release of pollutants or contaminants; DEFENDANT B: Whether singular or plural, that entity or those entities which failed to warn with regard to safety of the presence of pollution; Plaintiffs aver that the identities of the fictitious party defendants are not known to the plaintiffs at this time, and their true names will be substituted by amendment when ascertained."

2

F

ALL-STATE® LEGAL   800-222-0510   E5511   RECYCLED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES PETERS, et al., | Case Number CV 96-D-940-N |
| Plaintiffs, | |
| v. | |
| AMOCO OIL COMPANY, et al., | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS, PART I

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Individual and representative plaintiffs filed this action on behalf of themselves and all others similarly situated (owners of property near defendants' leaking underground storage tank sites at which leaks have been reported to environmental agencies).  Plaintiffs allege that:

- Defendants installed UST's in close proximity to plaintiffs' property, knowing that their underground tanks would leak  [*Compl.*, ¶¶ 2-27; 163.]

- Defendants refused to take available precautions to prevent, detect or contain the leaks they knew would occur.  [*Compl.*, ¶¶ 148, 162, 164.]

- As a result, tens of thousands of defendants' UST's have leaked, contaminating the defendants' sites, and spreading contamination plumes onto nearby property.  [*Compl.*, ¶¶ 107, 156.] The named plaintiffs all reside near sites where confirmed leaks have been reported to environmental agencies.

- Defendants conspired to conceal the problem of leaking UST's from plaintiffs and the class, to allow themselves to commit trespass and nuisance, and to avoid having to face liability for the environmental problems they created.  [*Compl.*, ¶¶ 79, 89, 150, 157.]

- Defendants have failed to notify plaintiffs of the contamination at their leaking UST sites, or to test for and/or notify plaintiffs of the results of tests for off-site contamination, or to remediate plaintiffs' property.  [*Compl.*, ¶¶ 125, 148, 156.]

- Plaintiffs have been injured by defendants' conduct, because they face the continuing and immediate threat of contamination from defendants' leaking sites, and/or have already been contaminated.  [*Compl.*, ¶¶ 83, 129, 159, 165, 171.]

To remedy this misconduct, plaintiffs have pleaded the following causes of action: (1) nuisance; (2) trespass; (3) fraudulent concealment; (4) civil conspiracy; (5) negligence/gross negligence; and (6) strict liability.

Plaintiffs seek to prosecute this case in two phases:  In Phase I, plaintiffs intend to seek <u>only</u>

*Id.* at 476-77 (bracketed text added).  Like *Miller*, Defendants here are individually listed as defendants in the Complaint, and are all accused of conspiring together to engage in the misconduct alleged, and are alleged to be liable therefor.

Plaintiffs have made allegations of joint wrongful conduct against the defendants:  The conspiracy claim, at paragraphs 155-157 of the Complaint, describes defendants conspiracy and agreement to conceal the UST problem, and to dupe the plaintiffs and the class to avoid having to deal with or face liability for the UST problem.  Additional details are provided elsewhere in the Complaint.  As early as the 1950s, defendants knowingly refused to take appropriate actions to address the then-known problem of unprotected USTs, by implementing leak prevention, detection, and abatement plans.  [*Compl.*, ¶¶ 87-88.]  Instead, beginning in the 1950s, the defendants through their trade association (the American Petroleum Institute) initiated, jointly, a series of actions intended to (a) conceal the leaking UST problem, (b) falsely convey that the industry was addressing the problem, and, generally, (c) avoid having to take meaningful measures to address the issue posed by their leaking tanks.  [*Id.*, ¶¶ 88-97.]

Among other things, the defendants "decided to attempt to cover up and divest themselves of the problem [by getting rid of known leaking sites] through their on-going conspiracy rather than making a meaningful attempt to avoid the trespasses and nuisances"[9/] [*id.*, ¶ 98], and "defendants through their ongoing conspiracy attempted to conceal the fact . . . that thorough testing and investigation of all their UST systems would have undoubtedly revealed an unfolding environmental disaster."  [*Id.*, ¶ 100.]

"The defendants have also met periodically and schemed to avoid liability for leaking underground storage tanks.  These meetings have involved both the lawyers and managers of the defendants who attempted to develop various strategies to avoid liability for this massive problem

---

[9/]"The divestiture program was part of the on-going conspiracy used by the defendants to avoid the liability which this lawsuit seeks to impose."  [*Compl.*, ¶ 106.]