**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 8 2000

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | ) ) ) ) |

MDL Docket No. 1358



### SUPPLEMENTAL BRIEF OF *BERISHA* PLAINTIFFS IN OPPOSITION TO TRANSFER OF ACTIONS TO THE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

The Plaintiffs in *Berisha, et al. v. Amerada Hess Corp., et al.,* File No. 00-CIV 1898

(SAS) (S.D.N.Y. , Scheindlin, J.) previously filed a response opposing transfer and consolidation

of the case with *England, et al. v. Atlantic Richfield Co., et al.,* File No. 00-CV-0371-DRH

(S.D. Ill., Herndon, J.).[1] This Supplemental Brief is filed in response to the Supplemental Brief

of the *England* plaintiffs, as well as to join in the opposition of other parties to the suggestion by

the plaintiffs in *Lynn, et al. v. Amoco Oil Co., et al.,* Civil Action No. 96-T-940-N, the

underground storage tank case pending in the Middle District of Alabama, that it is related to and

should be consolidated with the *Berisha* and *England* cases in Alabama.

---

1. At the time the response was filed, the *England* case apparently was pending before two different District Court judges under two different docket numbers as a consequence of two removal petitions having been filed. The *Berisha* plaintiffs here refer to the docket number pending before District Judge David R. Herndon, on the basis of the August 23, 2000 Memorandum and Order filed with this Panel as an attachment to the Supplemental Brief of the *England* plaintiffs. Their Supplemental Brief does not indicate the status of the parallel proceeding.

OFFICIAL FILE COPY
IMAGED SEP 2 0 '00

**INTRODUCTION**

The pending motion to transfer and consolidate the *Berisha* and *England* cases under 28 U.S.C. § 1407 was filed by BP Amoco, Amoco Oil, ARCO, CITGO and Chevron, defendants in both cases. In their initial filing movants expressed no preference for designation of either the Southern District of New York or the Southern District of Illinois as the transferee court.

The *Berisha* plaintiffs opposed the motion for transfer. Alternatively, they contended that the Southern District of New York was the appropriate transferee court if the motion was granted. Tosco Corporation, a defendant in *Berisha* but not *England*, took the same position in its response.[2] Amerada Hess Corporation and Valero Marketing and Supply Company supported the motion and suggested the Southern District of New York as the appropriate transferee court.

The *England* plaintiffs; Conoco, Inc., ExxonMobil Corporation and Phillips Petroleum Company, defendants in *England* but not *Berisha*; and, Exxon Corporation and Mobil Oil Corporation defendants in *Berisha* and *England*, supported the motion and contended that the Southern District of Illinois was the appropriate transferee court. Movants BP Amoco, Amoco Oil, ARCO and CITGO also filed a lengthy Reply Brief in which they abandoned their previous neutrality and argued that the transferee court should be the Southern District of Illinois.[3]

On September 6, 2000, the *England* plaintiffs filed a Supplemental Brief attaching a scheduling order from that case entered on August 23, 2000. Based on that order, they contend that the *England* case is now "far more advanced" than *Berisha*.

---

2 . Gulf Oil Limited Partnership, a defendant in *Berisha* but not *England*, also took this position. However, Gulf has since been dismissed from *Berisha* by stipulation.

3 . *England* defendants Equilon Enterprises LLC, Shell Oil Company and Texaco Refining and Marketing Inc. and *Berisha* defendants Motiva Enterprises LLC, Shell Oil Products Company and Texaco, Inc. supported the motion but were silent regarding the appropriate transferee court.

In fact, as detailed below, from the filing of the transfer motion to the present the *Berisha* case has moved forward rapidly with Judge Scheindlin's regular and substantial involvement, whereas little progress has been made in the *England* case. The rapid progress in *Berisha* further militates against transfer and consolidation. Should this Panel nevertheless grant the motion to transfer, the substantial advancement in *Berisha* and the considerable efforts of Judge Scheindlin in the case warrant her designation as the transferee judge.

I.   **GIVEN THE RAPID PROGRESS BEING MADE IN *BERISHA*, TRANSFER AND CONSOLIDATION WITH *ENGLAND* WOULD NOT "PROMOTE THE JUST AND EFFICIENT CONDUCT OF SUCH ACTIONS."**

Under 28 U.S.C. § 1407(a), "civil actions involving one or more common questions of fact . . . may be transferred to any district for coordinated or consolidated pretrial proceedings . . . by the judicial panel . . . upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Hence, there are three requirements for transfer under § 1407(a) that must be satisfied: [1] the existence of common questions of fact, and determinations by the Panel that transfer and consolidation [2] will serve the convenience of parties and witnesses and [3] promote the just and efficient conduct of the actions.

These requirements necessarily overlap and to some degree may conflict. For example, where common issues of fact are present but are substantially outweighed by issues of fact specific to individual cases, consolidated pretrial discovery may undermine rather than promote the just and efficient conduct of the actions. *See* C. Wright, A. Miller & E. Cooper, 15 Fed. Prac. & Proc. Juris. 2d § 3863 at nn. 18 & 19 (1986 & Supp. 2000) (citing cases). Consolidation of *Berisha* and *England* is just such a case. For example, a key element of the relief sought in *Berisha* is a court-supervised statewide program to test all private wells for MTBE

3

contamination. The availability of this remedy in New York, or any other state, will depend in part upon the geographic extent of groundwater contamination and the consequent degree to which surrounding properties are threatened.

Another way in which the requirements of § 1407(a) may conflict concerns the respective interests of the courts, the plaintiffs, and the defendants, in terms of convenience and the just and efficient conduct of the actions. For example, while there may be a net gain in terms of efficiency to the courts and the (common) defendants from consolidation, it frequently delays the resolution of individual cases, particularly those that are more advanced and are progressing rapidly. Where a large number of cases are involved, the interests of the courts and the defendants may, of necessity, take precedence over the interests of the plaintiffs in particular cases. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. VI)* 771 F. Supp. 415, 417-18 (J.P.M.L. 1991). However, where, as here, only two cases are involved, the disadvantage in terms of the just and efficient conduct of the action that would accrue to the *Berisha* plaintiffs if the case were transferred and consolidated with *England*, logically should be entitled to considerably more weight. *See, e.g., In re Garrison Diversion Unit Litig.,* 458 F. Supp. 223, 225 (J.P.M.L. 1978).

Since *Berisha* was removed to the Southern District of New York in March of this year, the case has progressed rapidly and Judge Scheindlin has been regularly and substantially involved. The court conducted lengthy hearings on March 17, April 24, July 28, August 18 and August 31, as well as two telephone conferences with all counsel. Two additional hearings are scheduled for the week of September 18 including one following the MDL hearing . Defendants filed a joint motion to dismiss all causes of action asserted by plaintiffs, which has been fully briefed and is due for decision in October. Progress toward determination of class certification is well underway, with plaintiffs to designate experts by September 15 and provide expert reports

4

by September 30, defendants to designate experts by October 15 and provide expert reports by October 30, and briefing to be completed by February 15, 2001. Depositions by defendants of the representative plaintiffs will be completed by September 20.

With respect to discovery, Judge Scheindlin is personally dealing with all discovery disputes, rather than delegating them to a magistrate. She has already required the defendants to provide to the *Berisha* plaintiffs all discovery material produced in the state cases to which the *England* plaintiffs will be entitled pursuant to the August 23 scheduling order in that case. Indeed, Plaintiffs have already have reviewed over 700 boxes of documents from such other litigation. In addition, lead counsel for plaintiffs, Mr. Saul, has associated with three major plaintiff firms with substantial experience in complex class action litigation – Weitz & Luxenberg, P.C.; Lieff, Cabraser, Heimann & Bernstein, L.L.P.; and Ness, Motley, Loadholt, Richardson & Poole, P.A. – further accelerating the pace of briefing and discovery.

So far as the interests of the defendants are concerned, transfer and consolidation would achieve little in terms of added convenience and efficiency. First, it would not eliminate simultaneous pretrial proceedings in state cases pending in California, Maine and North Carolina. Second, as demonstrated both by the discovery already completed in *Berisha* and by the agreement of the defendants in *England* to produce discovery materials from the state cases, duplicative discovery can be minimized by voluntary and court-directed cooperation between the parties. Finally, for defendants named in only one of the two lawsuits, consolidation may add to the burden of litigation, rather than making it more convenient, as Tosco has complained.

A further consideration that weighs against transfer is where it would "serve any ulterior motive of any party or parties, such as forumshopping". *In re 'East of the Rockies' Concrete Pipe Antitrust Cases,* 302 F. Supp. 244, 256 (J.P.M.L. 1969) (Weigel, J., concurring). The

possibility that *Berisha* was removed to federal court to enable a possible MDL transfer was foreshadowed by Mr. Saul at the very first hearing before Judge Scheindlin. Transcript of Mar. 17, 2000 Hearing at 38: 24 -39:18 (Attachment A). Although plaintiffs contested the basis of federal jurisdiction (as discussed further below), they concluded that Judge Scheindlin was committed to pressing the case forward. In addition, they believed that there was at least a tacit understanding that defendants would not seek MDL transfer if plaintiffs did not seek remand to state court, a "trade-off" that defendants did not reciprocate. Transcript of July 28, 2000 Hearing at 5:16 – 6:3 & 7: 6-7 (Attachment B).

Other circumstances from which an inference of forum shopping could be drawn include the following:

- The transfer motion was neutral regarding whether the cases should be consolidated in New York or Illinois, but in their Reply Brief certain of the movants argued that the transferee court should be the Southern District of Illinois, ostensibly on the basis of factors (its lighter docket and central location) that were equally arguable at the time that the motion was filed;

- The law in the Seventh Circuit is particularly unfavorable to plaintiffs seeking to utilize Fed. R. Civ. P. 23 in the "mass tort" context, *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir. 1995), and

- Plaintiffs believe that the movants were unhappy with the aggressive "hands on" approach to progressing the *Berisha* case taken from the outset by Judge Scheindlin.

Based upon the substantial progress made and being made in *Berisha* and the other matters addressed herein and in Plaintiffs' Response to the transfer motion, the *Berisha* plaintiffs respectfully submit that consolidation with the *England* case under § 1407 is not warranted. Accordingly, the transfer motion should be denied.

II.    **IF THE TRANSFER MOTION IS GRANTED, THE *ENGLAND* CASE SHOULD BE TRANSFERRED TO JUDGE SCHEINDLIN FOR CONSOLIDATED PRETRIAL PROCEEDINGS.**

Should the Panel grant the transfer motion, Judge Scheindlin clearly is the appropriate transferee judge. The arguments that have been made in support of the Southern District of Illinois as the transferee court include: (1) the central geographic location of St. Louis, (2) the relatively lighter docket of that court compared to the Southern District of New York, (3) that the two cases have made similar progress, and (4) that a majority of parties support transfer to the Southern District of Illinois. None of these arguments hold up under close scrutiny.

*Central Geographic Location.* Although St. Louis may be geographically the center of the United States, New York is closer to the geographic center of the problem of MTBE groundwater contamination. The dominant oxygenate additive in areas of the Midwest in which reformulated gasoline ("RFG") was sold was ethanol, not MTBE. *See* graphic accompanying Wald, "Industry Blames Chemical Additives for High Gas Prices", New York Times National at A12, col. 1 (June 26, 2000) (Attachment C).

Moreover, the slim thread upon which federal jurisdiction was asserted to remove *Berisha* and *England* to federal court was the potential application of Texaco's 1988 bankruptcy discharge to the claims of certain putative class members.[4] Texaco is headquartered in New York and the bankruptcy proceeding took place there. Should Texaco seek to reopen its

---

4 .  Plaintiffs understand that federal preemption also was asserted as a basis for federal question jurisdiction in *England.* If so, that claimed basis for federal jurisdiction plainly is lacking. Ordinarily, federal question jurisdiction must arise from a federal *claim* asserted by plaintiffs. A federal preemption *defense* to state law claims only provides a basis for federal question jurisdiction in cases of *complete* preemption. *See, e.g., Hart v. Bayer Corp.,* 199 F.3d 239 (5th Cir. 2000); *Ell v. S.E.T. Landscape Design, Inc.,* 34 F. Supp. 2d 188 (S.D.N.Y. 1999). The Clean Air Act, under which the RFG program was established, contains an express savings clause for statutory and common law causes of action. 42 U.S.C. § 7604(e). Whether or not this savings clause preserves the particular claims at issue in *England* and/or *Berisha* (an issue that has been briefed in connection with the motion to dismiss presently awaiting decision in *Berisha*), it forecloses any possible finding of complete preemption necessary to found federal question jurisdiction in either case.

7

bankruptcy case in connection with *Berisha* and/or *England*, as foreshadowed in ¶ 8 of its Notice of Removal in *Berisha* (Attachment D), it would be far more convenient to all concerned for the transferee court also to be located in New York.

*Relatively Lighter Docket and Comparative Progress of Cases.* Statistics concerning numbers of cases filed, time to trial, etc. in the Southern District of New York and Southern District of Illinois do not reflect the actual handling of the *Berisha* and *England* cases. As summarized above, Judge Scheindlin has devoted substantial time and effort to advancing the *Berisha* case, which has progressed at a rapid rate. She has demonstrated a keen understanding of and interest in the novel issues raised by the case and has considerable experience in managing complex class action litigation.

In comparison, the *Berisha* plaintiffs understand that there has been just one status conference in *England* and that discovery disputes have been or will be delegated to a magistrate judge. In fact, so far as can be inferred from the Scheduling Order entered in *England* on August 23, as of that date discovery had not yet commenced.

Regardless of the comparative dockets and delays in the Southern District of New York and the Southern District of Illinois, the *Berisha* case has advanced far more quickly than the *England* case, under the guidance of a committed, experienced judge. In contrast, little has been accomplished in *England* beyond the recent entry of a consensual scheduling order that more or less mimics and foreshadows what already has been accomplished in *Berisha,* and which appears to be little more than eleventh hour window dressing to support transfer of *Berisha* to the Southern District of Illinois.

*Support for Transfer to the Southern District of Illinois.* That a majority of parties favor transfer to the Southern District of Illinois should bear little weight in light of the facts, as

explained above, that New York is the true locus of this litigation, the *Berisha* case is far more advanced, and the presiding judge is far more involved in and familiar with the case as well as quite experienced in managing complex class action litigation.  Moreover, as discussed above, there is a reasonable basis to infer shopping for a more favorable forum as the principle reason why the majority of defendants that have expressed a preference for the Southern District of Illinois as the transferee court.  The plaintiffs in both cases naturally have a personal interest in their case remaining where it was filed.

**CONCLUSION**

For the reasons stated herein and in Plaintiffs' Response to the transfer motion, the *Berisha* plaintiffs respectfully submit that this Panel should deny the motion.  Alternatively, should the transfer motion be granted, plaintiffs respectfully submit that the *England* case should be transferred to Judge Scheindlin.

Dated: September 15, 2000                    Respectfully submitted,



Lewis J. Saul
Jon Hinck
Charles Wolfson
LEWIS SAUL & ASSOCIATES, P.C.
183 Middle Street, Suite 200
Portland, Maine  04101
207-874-7407
207-874-4930 (fax)

1

"A"

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  DONNA BERISHA, on behalf of
    herself and all others
 4  similarly situated, et al.

 5            Plaintiffs,

 6        v.                            00 Civ. 1898

 7  AMERADA HESS CORPORATION, et al.

 8            Defendants.

 9  ------------------------------x

10                                      March 17, 2000
                                        3:15 p.m.
11
    Before:
12
                    HON. SHIRA A. SCHEINDLIN
13
                                          District Judge
14
                          APPEARANCES
15
    LEWIS SAUL
16       Attorney for Plaintiffs

17  WALLACE, KING, MARRARO & BRANSON
         Attorney for Defendant, CHEVRON CORPORATION, EXXON
18       CORPORATION, MOBIL OIL CORP. SHELL OIL
         PRODUCTS, TEXACO, INC.
19  RICHARD E. WALLACE, JR.

20  SEDGWICK, DETER, MORAN & ARNOLD
         Attorney for Defendant, CHEVRON, CORPORATION
21  MICHAEL H. BERNSTEIN
    SHARON DUTCH
22
    THOMPSON & KNIGHT
23       Attorney for Defendant, CITGO PETROLEUM CORP..
    ROBERT W. JONES
24
    SIDLEY & AUSTIN
25       Attorney for Defendant
    JOHN CORBETT
```

SOUTHERN DISTRICT REPORTERS 212 805-0300

2

                                                                    **"A"**

1
RIVKIN, RADLER & KREMER, LLP
2       Attorney for Defendant, GETTY PETROLEUM CORP.
CHARLOTTE A. BIBLOW
3
BEVERIDGE & DIAMOND, P.C.
4       Attorneys for Defendant, SUNOCO, INC.
SY GRUZA
5
STROOCK, STROOCK & LAVAN, LLP
6       Attorneys for Defendant, TOSCO CORPORATION
KENNETH PASQUALE
7  EMILY CULPEPPER

8                          - - - -

9           THE COURT:  Who is Mr. Saul?

10          MR. SAUL:  I am, your Honor, good afternoon.  It is

11  all of them against me.

12          THE COURT:  Mr. Gruza, Mr. Pasquale.

13          MR. PASQUALE:  Good afternoon.

14          THE COURT:  Ms. Culpepper?

15          MS. CULPEPPER:  Good afternoon.

16          THE COURT:  Ms. Dutch, Mr. Bernstein, Mr. Jones.

17          MR. JONES:  Yes, your Honor.

18          THE COURT:  Mr. Wallace?

19          MR. WALLACE:  Good afternoon, your Honor.

20          THE COURT:  That wasn't everybody.  Your name?

21          MR. CORBETT:  John Corbett.

22          THE COURT:  How about Ms. Biblow?

23          MS. BIBLOW:  Yes, your Honor.

24          THE COURT:  Then we are expecting two by phone.

25  Mr. Hink, who we are expecting?

"A"

1  litigating the issue.

2          MS. BIBLOW:  That's correct.

3          THE COURT:  Did anybody not speak?

4          MR. CORBETT:  John Corbett, Citgo Petroleum, we don't

5  take a position on this matter, your Honor.

6          THE COURT:  That's like the first speaker, really you

7  don't.

8          MR. CORBETT:  Yes.

9          MR. WALLACE:  I represent several other defendants as

10 well.

11         THE COURT:  Non-Texaco?

12         MR. WALLACE:  Yes, Shell Oil Company prefers to be in

13 federal court.  There is an issue with Chevron which has been

14 named as Chevron Corporation.  That company has not been

15 served yet, but for what it is worth without appearing, that

16 company consents to the removal.  I was authorized this

17 morning by counsel for BP Amoco, they, too, consent to the

18 removal and would prefer to be in federal court.

19         THE COURT:  Had you finished your discussion of

20 1334(c)(1) and (2)?

21         MR. JONES:  Yes, your Honor, unless the Court has

22 further questions.

23         THE COURT:  I am ready for the response.

24         MR. SAUL:  Your Honor, they say they want to be in

25 federal court and it is a core issue, but they don't want to

03h3berM

"A"

39

1   be in bankruptcy court.

2          THE COURT:  I heard.

3          MR. SAUL:  Something is rotten in the state of

4   Denmark.  If you want to know what it is, if we stay in your

5   court and you start ruling in plaintiff's favor and certify a

6   class, you know what the defendants want to do?  They want to

7   file an MDL petition and take it away from you.  That's why

8   they want to stay in the district court rather than bankruptcy

9   court, as with the Dow bankruptcy with breast implants.  There

10  are two separate matters.  MDL is one thing and in bankruptcy

11  court, they have taken control of the Dow defendants.

12         THE COURT:  Is there an MDL?

13         MR. SAUL:  No, but there are other cases pending and

14  if things go not their way -- this is one of the biggest cases

15  in nation.  If things don't go their way, they will say let's

16  file an MDL petition, we have nothing to lose, this is one of

17  our major liabilities, sorry, Judge, it is out of your hands.

18  That's what is going on here.

19         THE COURT:  Any other response you would like to give

20  on the argument on (c)(1) and (c)(2)?

21         MR. SAUL:  Number one, there is no bankruptcy at the

22  present time.

23         THE COURT:  We have covered that.  But he says there

24  is good clear case law on that.  If you get around to briefing

25  this thing -- it seems to me there has to be case law.  Just

1

"B"

```
 1 │ UNITED STATES DISTRICT COURT
   │ SOUTHERN DISTRICT OF NEW YORK
 2 │
   │ -------------------------------x
 3 │
   │ DONNA BERISHA et al.,
 4 │
   │            Plaintiffs,
 5 │
   │       v.                           00 Civ. 1898 (SAS)
 6 │
   │ AMERADA HESS, et al.,
 7 │
   │            Defendants.
 8 │
   │ -------------------------------x
 9 │
   │                                   New York, N.Y.
10 │                                   July 28, 2000
   │
11 │
   │
12 │ Before:
   │
13 │          HON.  SHIRA A. SCHEINDLIN,
   │
14 │                                   District Judge
   │
15 │
   │
16 │
   │
17 │                   APPEARANCES
   │
18 │ LEWIS SAUL & ASSOCIATES
   │      Attorneys for Plaintiffs
19 │ BY:  LEWIS J. SAUL
   │      JON HINCK
20 │
   │ HOWRY SIMON ARNOLD & WHITE
21 │      Attorneys for defendant Amerada Hess
   │ BY:  CHRISTOPHER S. COLMAN
22 │      MINDY G. DAVIS
   │
23 │ WALLACE KING MARRARO & BRANSON
   │      Attorneys for defendants Exxon, Motiva, Mobil, Shell and
24 │         Texaco
   │ BY:  RICHARD E. WALLACE, JR.
25 │      PETER C. CONDRON
```

2

**"B"**

```
 1  APPEARANCES (continued):

 2  STROOCK & STROOCK & LAVAN
         Attorneys for defendant Tosco Corporation
 3  BY:  KENNETH PASQUALE

 4  SCHNECK, WELTMAN & HASHMALL
         Attorneys for defendant United Refining Company
 5  BY:  EDWARD S. WELTMAN

 6  BAKER & BOTTS LLP
         Attorneys for defendant Valero Marketing and Supply
 7  BY:  KENNETH M. BIALO,
         STEVE LEIFER
 8
    GOODWIN PROCTOR & HOAR
 9       Attorneys for defendant Gulf Oil Limited Partnership
    BY:  MARK E. TULLY
10
    KIRKLAND & ELLIS
11       Attorneys for defendant BP Amoco, Arco
    BY:  MARK S. LILLIE
12
    SEDGWICK, DETERT, MORAN & ARNOLD
13       Attorneys for defendants Motiva, Shell and Texaco, Inc.
    BY:  SHARON M. DUTCH
14
    EIMER STAUL KLEVORN & SOLBERG
15       Attorneys for defendant Citgo Petroleum Corporation
    BY:  NATHAN P. EIMER
16       LISA S. MEYER

17  BEVERIDGE & DIAMOND
         Attorneys for Sunoco
18  BY:  JOHN S. GUTTMANN

19

20

21

22

23

24

25
```

1    MR. TULLY:  That's correct, your Honor.

2    THE COURT:  Thank you.  Does anybody else have

3  anything to add to the agenda?  No.  All right.

4    The first point in the letter is the request that

5  discovery be bifurcated, and I think that dovetails fairly

6  well with the agenda item of the class certification issue.

7    The request of the defendants is that the bifurcation

8  be as follows:  that first we focus on class certification

9  issues, and then we turn to the so-called merits discovery.

10  Then there is a subsidiary point that the merits discovery not

11  only should come after class certification discovery but

12  should be stayed more or less for two reasons:  one, pending

13  the disposition of the pending motion not yet fully submitted,

14  and two, pending the request to have the case transferred

15  pursuant to the Multidistrict Litigation petition.

16    I must say, at the outset, that I was surprised to

17  even learn there was a petition before the Multidistrict

18  Litigation Panel.  I have this memory, and it is possible that

19  I could be somewhat hallucinating, that one of the agreements

20  made here, when there was talk of a remand motion and waiving

21  of the remand motion, was that all parties were agreed that

22  the case was going to remain here and that was the *quid pro*

23  *quo* for not making the remand motion.  I realize I could be

24  wrong, but that is my memory.  So I have to say I was somewhat

25  surprised, because having discussed it, I think somebody even

1    said: And that includes MDL, right? And I thought the

2    defendants said right, the case was staying where it was. So

3    I was somewhat surprised at the motion. The fact is that a

4    petition for Multidistrict Litigation treatment is not a basis

5    to stay any discovery, so we needn't spend more time on that

6    as a ground.

7           With respect to the pending motion not yet fully

8    submitted, it is also true that that is not a ground as a

9    matter of law to stay discovery, except in actions under the

10   Private Litigation Reform Act. I wasn't a member of the

11   Congress that voted for that, but so be it. That is the only

12   law I know that stays discovery pending motion practice.

13          On the other hand, even though there is no law

14   requiring it, sometimes it might be, if the theories

15   underlying the motion practice are new and creative and

16   cutting edge, that they may or may not survive dismissal,

17   before putting everybody to a great deal of expense. So I am

18   open to further argument, at least, that some discovery should

19   be delayed pending the outcome of the motion, not because it

20   is a matter of law but because it might make sense.

21          But the real ground that might be the strongest of

22   all, should there be a focus on the class certification issue

23   at this point, is that if we focused very hard on so-called

24   class discovery, we might be able to bring on the

25   certification issue more quickly. So there might be a

1   tradeoff that plaintiffs would find somewhat favorable if I

2   were able to expedite the schedule for completing so-called

3   class discovery, scheduling a briefing, and a hearing if

4   needed, in an effort to decide it properly.   That might be a

5   fairly good tradeoff.

6          I know you may have lost credibility on tradeoffs

7   because of the move to go to the Multidistrict Panel.

8   Nonetheless, it may be a good way to proceed to get the class

9   issues brought on properly and decided properly.   If that

10  means narrowing somewhat the discovery, or, using a more

11  pleasant word, focusing the discovery somewhat, it might be

12  the wise thing to do, because with this much lawyer power on

13  the defense side, broad discovery very possibly would go on

14  for a long time with objections and rulings and who knows

15  what, privilege and all kinds of things, which really would

16  distract us from getting to the class certification issue.

17         Then again, I appreciate your argument that it is

18  going to be duplicative.   You don't want to do things twice.

19  If the merits of the class discovery to some extent are

20  absolutely overlapping, it doesn't make sense to do it twice.

21  So I need to, I think, find a middle ground here.

22         What sounds right to me -- I am not dealing yet with

23  the pending motion; I am only speaking of the class versus

24  merits -- is that maybe it would be to try to accept

25  Mr. Saul's affidavit at somewhat face value and say that, to



# Industry Blames Chemical Additives for High Gas Prices

### By MATTHEW L. WALD

WASHINGTON, June 25 — If rules to protect the environment drive prices higher, there is always the consolation that at least the extra money buys some benefit.

But that consolation may be hard to find in Chicago and Milwaukee, where gasoline prices have recently topped $2 a gallon, and the industry says the reason is partly a government requirement for additives called oxygenates. Experts say these additives may be obsolete and irrelevant, and may even cause environmental damage.

The call for oxygenates has always been driven as much by politics as it has been by science. Republican and Democratic administrations have pushed for the use of oxygenates even though advances in automotive technology have made them less useful. Elected officials of all persuasions are eager for the votes of farmers who grow corn, the main ingredient in ethanol, the oxygenate used in the Midwest, and the companies that make ethanol from corn are politically well entrenched, too.

In the next few months, the Federal Trade Commission, at President Clinton's request, will sort out whether the high prices in the Midwest are due to environmental rules, high prices for crude oil, supply disruptions or collusion. On Friday, Senator Ron Wyden, Democrat of Oregon, sent a letter to Robert Pitofsky, chairman of the F.T.C., asking for an investigation of whether mergers had driven up the price of gasoline.

Oxygenates are deservedly obscure. But in 1990 Congress passed the Clean Air Act, which called for gasoline sold in urban areas with smog problems to contain an oxygenate to reduce the production of carbon monoxide, a deadly gas. About 30 percent of the nation's gasoline supply now uses such reformulated gasoline.

Most refiners meet the requirement for oxygenates with methyl tertiary butyl ether, or MTBE, which is made from natural gas. But last July, after environmental activists had blamed MTBE for years for poisoning drinking water, the Environmental Protection Agency called for phasing out MTBE because of its effect on well water.

Ethanol does not cause water pollution. Even in the best case, however, the benefits from either MTBE or ethanol are uncertain.

Cars need a certain amount of oxygen to avoid producing carbon monoxide from gasoline. Early on, engineers incorporated some oxygen in fuel in the form of ethanol or MTBE. But that trick no longer works because cars now have fuel injection systems instead of carburetors, and the new systems include oxygen sensors to determine when the fuel-air mix is appropriate and adjust the fuel injectors accordingly.

Eric Stork, who was the head of the E.P.A.'s Mobile Source Air pollution Control Program from 1970 to 1978, said the idea of oxygenating gas to reduce carbon monoxide was brilliant 30 years ago. But in cars built in 1983 and later, oxygenates are "obsolete and pointless," he said.

Car makers generally agree, although they are not eager to dispute the issue. "In terms of emission benefits, it's mooted to a certain degree in new cars," said Gregory J. Dana, a pollution expert at the Alliance of Automobile Manufacturers.

Now ethanol is being blamed, indirectly at least, for the price spike in the Chicago and Milwaukee areas.

Ethanol tends to evaporate easily, and unburned evaporated fuel is a major ingredient of smog. So gasoline blended for mixing with ethanol must be specially prepared.

The E.P.A. estimates that the specially blended gasoline costs only about a penny more a gallon. But according to the oil industry, the blended stock has introduced a different problem, the possibility of spot shortages. The current one in the Midwest, they say, is due to a pipeline break in March, as the industry was preparing to stock up on summer-grade gasoline.

Because gasoline in the Midwest differs from gasoline elsewhere — "boutique fuel," the industry calls it — Midwestern stores cannot be replenished easily. The resulting shortage may be driving up prices.

Sam Leonard, the director of vehicular emissions policy at General Motors, said oxygenates may be of some benefit when a car is first started up, but that their importance for carbon monoxide reduction is declining as cars with carburetors are replaced by cars with fuel injection.

Besides, carbon monoxide is not the dominant form of pollution. "It doesn't hurt to keep using it in the few places that have a carbon monoxide problem, but there are not very many," said Daniel Greenbaum, the director of the Health Effects Institute, an independent scientific organization in Boston that is co-sponsored by the Environmental Protection Agency and major industries. Mr. Greenbaum was the chairman of a commission named by the E.P.A. last year to advise it on oxygenates.

In general, even environmental groups that want cleaner air or more sustainable fuel use do not support the use of ethanol. They want cars that run on electricity or hydrogen — or simply cars that go farther on a gallon of gasoline and have better emission control systems.

The E.P.A. supports the use of oxygenates because they are high in octane and could replace chemicals such as benzene, which is a carcinogen. Oil companies, however, argue that they need the flexibility to decide what chemicals should be substituted for benzene.

Robert W. Perciasepe, head of the E.P.A. air program, defended the mandate for oxygenates. "Congress made these performance standards, and mandated a requirement that would help meet them," he said. Mr. Leonard of G.M. said oxygenates displaced other ingredients of fuel that could leave deposits in engines that hurt emissions performance.

The E.P.A. emphatically rejects the idea that the current price crunch in the Midwest has anything to do with oxygenates. The specifications for reformulated gasoline got stricter on June 1 than they had been in previous years, but Mr. Perciasepe said: "They've known about this since 1994. They've had five years to get ready."

The oil industry has become a supporter of oxygenates. In a news conference here last Wednesday, Red Cavaney, the president of the American Petroleum Institute, pleaded with the E.P.A. not to lift the rule. Many refineries have spent heavily to be able to make the new fuel, he said, and "all the people who made the investment, who are in for the long haul, are going to be penalized."



## Cleaner Air in Urban Areas

The federal government requires some metropolitan areas to use cleaner-burning gasoline in an effort to improve air quality. Known as reformulated gasoline, it contains one of two special ingredients, ethanol or MTBE, that cut down on pollutants.

### Areas using reformulated gasolines

○ Ethanol formulation   ● MTBE formulation   ○ Other†

*Areas use both types
†Has stricter standards than federal mandates

### Federal standards for reformulated gasoline

**FORMULATION**

■ Must contain 2 percent by weight of an oxygenate, an additive that makes the gas burn cleaner (MBTE and ethanol are used)

■ Must contain no more than 1 percent by weight of benzene, a chemical known to cause cancer

**PERFORMANCE**

Compared with conventional gasoline, reformulated gas must:

■ Reduce emissions of volatile organic compounds by 27 percent

■ Reduce toxic emissions by 22 percent

■ Must reduce emissions of nitrogen oxides by 7 percent

Source: Environmental Protection Agency

The New York Times

"D"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DONNA BERISHA, STEVEN C. GREENE, MELANIE J. ARCURE and RON LA SUSA on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>AMERADA HESS CORPORATION; BP AMOCO CORPORATION; CHEVRON CORPORATION; CITGO PETROLEUM CORPORATION; EXXON CORPORATION; GETTY PETROLEUM CORPORATION; GULF OIL LTD. PARTNERSHIP; MOBIL OIL CORPORATION; SHELL OIL PRODUCTS COMPANY; SUNOCO, INC.; TEXACO INC.; TOSCO CORPORATION; and DOES 1 through 100, inclusive,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No: |

### NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THIS COURT:

This action, originally filed in the in the Supreme Court of the State of New York, County of New York, as Index No. 100884/00, is hereby removed to the United States District Court for the Southern District of New York by defendant Texaco Inc. ("Texaco"). In support of removal, Texaco sets forth the following:

1.     This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334 (federal question and bankruptcy jurisdiction); accordingly, removal is appropriate pursuant to 28 U.S.C. §§ 1441 and 1452.

2.      Venue of the removed action is proper in this Court, as the District Court for the district where the state court action is pending, pursuant to 28 U.S.C. § 1452(a).

## GROUND FOR REMOVAL

3.      On April 12, 1987, Texaco filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Jointly Administered Chapter 11 Case Nos. 87-B-20142, 87-B-20143, and 87-B-20144.

4.      On March 23, 1988, the United States Bankruptcy Court for the Southern District of New York confirmed Texaco's Second Amended Joint Plan of Reorganization (the "Confirmation Order"). Pursuant to the Confirmation Order, Texaco was discharged forever from any and all claims or liabilities arising before the date of the entry of the Confirmation Order, whether or not a proof of claim was filed, and whether or not the holder of such claim accepted the Plan of Reorganization.[1]  Furthermore, pursuant to Bankruptcy Code section 524(a)(2) and the Confirmation Order, any "commencement ... of any action, the employment of process, or any act to collect, recover or offset any debt discharged herein" was permanently enjoined and restrained.

5.      Notwithstanding Texaco's discharge and the Confirmation Order, on January 14, 2000, Plaintiffs filed a Complaint in the Supreme Court of the State of New York, County of New York (the "State Court Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "A." The State Court Lawsuit seeks recovery from Texaco for alleged claims arising prior to entry of Texaco's Confirmation Order. Such claims were discharged by the Confirmation Order. 11 U.S.C. §§ 1141 and 524. Plaintiffs' Complaint therefore is a collateral attack upon the Confirmation Order and it is filed in clear violation of the injunction contained in that Order. The United States Bankruptcy Court for the Southern District of New York which issued the Confirmation Order has held that the pursuit of discharged claims against Texaco

---

[1] Subject to certain exceptions contained in the Plan which are not applicable to this action.

2

**"D"**

violates the Bankruptcy Court's Confirmation Order and the discharge injunction. *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995).

6.     Removal of the State Court Lawsuit is therefore authorized by 28 U.S.C. § 1452(a) because this Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1334. Issues raised in the State Court Lawsuit are core matters under 28 U.S.C. § 157, and therefore upon removal of this case will constitute a core proceeding.

7.     In addition to the jurisdiction over the claims against Texaco, as set forth above, this Court has supplemental jurisdiction over the remainder of the State Court Lawsuit pursuant to 28 U.S.C. § 1367.

8.     The court that issued the Confirmation Order, the Bankruptcy Court for the Southern District of New York, is the most appropriate court to interpret the scope of its own order. Texaco reserves its right to seek transfer of venue of this case or any proceeding herein to the United States Bankruptcy Court for the Southern District of New York or to apply to the United States Bankruptcy Court for the Southern District of New York for an order enforcing its Confirmation Order and the Bankruptcy Code.

9.     Texaco was served with the Complaint on February 11, 2000; thus, Texaco is timely filing this Notice of Removal within thirty (30) days after service of the initial pleading setting forth any claim for relief against Texaco.

10.    Texaco will give notice of the filing of this Notice of Removal to Plaintiffs by and through their attorney of record, and will file a copy of this Notice of Removal with the clerk of the Supreme Court of the State of New York, County of New York, where the State Court Lawsuit is pending.

11.    The following documents are attached hereto:

      (a)     Plaintiffs' Complaint, attached hereto as Exhibit "A;"

      (b)     The Summons served upon Texaco, attached hereto as Exhibit "B;"

3

"D"

(c)     A "Stipulation Extending Time to Answer," filed in the State Court

         Lawsuit on March 2, 2000, which extended defendants' time to

         respond to the Complaint to May 1, 2000, attached hereto as

         Exhibit "C"; and

(d)     A list of all known counsel of record, including addresses,

         telephone numbers and parties represented, attached hereto as

         Exhibit "D".

Dated:  New York, New York
        March 10, 2000

                          Respectfully submitted,

                          SEDGWICK, DETERT, MORAN & ARNOLD

                    By:   _____

                          Sharon M. Dutch (SMD-4299)
                          Eric M. Kraus (EMK-3933)
                          125 Broad Street, 39th Floor
                          New York, New York   10004
                          (212)  422-0202


                          WALLACE KING MARRARO & BRANSON, L.L.P.
                          Richard E. Wallace, Esq.
                          Anthony F. King, Esq.
                          1050 Thomas Jefferson Street, N.W.
                          Washington, D.C. 20007
                          (202)  204-1000

                          Attorneys for the Defendant TEXACO, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Supplemental Brief of Appellee Plaintiffs in Opposition to Transfer of Actions to the District Court for the Southern District of Illinois** was served via U.S. Mail on this 15th day of September 2000 on Counsel for the following:

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FILED
CLERK'S OFFICE

SEP 18 2000

Robert Shulman
Mindy Davis
Howrey, Simon, Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*For Amerada Hess Corporation*

Stephen M. Tillery
Carr, Korein, Tillery, Kunin, Montroy & Glass
10 Executive Woods Court
Swansea, IL 62226
*For David England, Donna Azbill, james Bauer, marvin Owca, Rhea Susan McMannis and Claudia Christiansen*

James Andrew Langan
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601
*For Amoco, Amoco Oil Co., Atlantic Richfield Co., BP Amoco Corp.*

Richard E. Wallace, Jr.
Wallace, King, Marraro & Branson, PLLC
1050 Thomas Jefferson St., N.W.
Washington, D.C. 20007
*For Equilon Enterprises, LLC, Motiva Enterprises, LLC, Shell Oil Co., Shell Oil Produce Co., Texaco Refining & Marketing, Inc., Texaco, Inc.*

Nathan P. Eimer
Lisa S. Meyer
Eimer Stahl Klevorn & Solberg
122 S. Michigan Ave., Suite 1776
Chicago, Illinois 60603
*For Citgo Petroleum Corp.*

Mark G. O'Connor
Regional Counsel
Coastal Oil New York, Inc.
611 Rt. 46 West
Hasbrouck Heights, NJ 07604
*Regional Counsel for Coastal Corp.*

John S. Guttmann
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005
*For Sunoco, Inc.*

Ken Bialo, Esq.
Steven L. Leifer
Baker, Botts, LLP
599 Lexington Avenue, 28th Flr.
New York, NY 10022
*For Valero Marketing & Supply Co.*

Kenneth Pasquale
Stroock, Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038
*For Tosco Corp.*

Dan H. Ball
Thompson & Coburn, LLP
One Firstar Plaza
St. Louis, MO 63101
*For Chevron, Conoco, Inc., Exxon Corp., Exxon Mobil Corp., and Mobil Oil Corp.*

Elizabeth J. Cabraser, Esq.
Moriss A. Ratner, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
*For Plaintiffs Janet Lynn, et al.*

A. Hoyt Rowell, Esq.
Ness, Motley, Loadholt, Richardson & Poole
151 Meeting Street, Suite 600
Charleston, SC 29402

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2000 SEP 18 A 9: 19

RECEIVED
CLERK'S OFFICE

Certificate of Service
Page 2
September 15, 2000

Lyndon P. Sommer, Esq.
Sandberg, Phoenix & Von Gontard
One City Centre
15th Floor
St. Louis, MO 63101
*For Phillips Petroleum Co.*

Edward S. Weltman, Esq.
Shneck, Weltman & Hashmall, LLP
1285 Ave. S. The Americas
New York, NY 10019
*For United Refining Co.*

9/15/2000
Date

Lewis Saul & Associates, PC