**1358**

PLEADING NO. 38

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|   |   |   |
|---|---|---|
| IN RE: | : | |
| METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | : | MDL Docket No. 1358 |
|   | : | |

### EXXON MOBIL CORPORATION'S REPLY TO *YOUNG* PLAINTIFFS' RESPONSE TO CERTAIN DEFENDANTS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 1 AND CERTAIN DEFENDANTS' CONSOLIDATED RESPONSE TO ALL MOTIONS TO VACATE THE FIRST CONDITIONAL TRANSFER ORDER (CTO-1)

Defendant, Exxon Mobil Corporation ("Exxon") replies to:  a) *Young* Plaintiffs' Response to Certain Defendants' Motion to Vacate Conditional Transfer Order No. 1 ("Plaintiff's Response"); and b) Certain Defendants' Consolidated Response to All

IMAGED JAN 2 '01

**OFFICIAL FILE COPY**

Motions to Vacate The First Conditional Transfer Order (CTO-1) ("Defendants' Response").[1]

The only Defendants joining in the Defendants' Response as to *Young v. ExxonMobil Oil Corporation*, Case No. 8:00-cv-1912-T-24C ("*Young*") are Amoco Oil Company, Atlantic Richfield Company, and BP Amoco Corporation. Defendant, Amoco Oil Company, is a wholly owned subsidiary of Defendant, BP Amoco Corporation. Therefore, the remaining sixteen oil company defendants in *In Re: Methyl-Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL Docket No. 1358 ("MDL 1358"), have acquiesced in Exxon's Motion to Vacate Conditional Transfer Order. *See* Rule 7.2(c), Rules of Procedure of The Judicial Panel on Multidistrict Litigation.

## I.   IN DETERMINING WHETHER TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407, THE PANEL SHOULD CONSIDER ONLY THE CURRENT PLEADINGS AND PAPERS FILED WITH THE TRANSFEROR AND TRANSFEREE COURTS.

On December 19, 2000, in accordance with Rule 15(a), Young filed a Motion for Leave to File Second Amended Complaint in *Young* ("Motion"), along with a proposed Second Amended Complaint ("Proposed Complaint").[2] Exxon objects to the Motion and will be filing an appropriate response. The Motion appears to have been filed in an attempt to facilitate the transfer of *Young* to MDL 1358 as the Plaintiff's Response focuses on

---

[1]      Plaintiff's Response and Defendants' Response may be referred to collectively in the Reply as "Responses".

[2]      Rule 15(a) provides that "a party may amend the party's pleading once as a matter of course . . . otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." *See* Fed. R. Civ. P. 15(a). A First Amended Complaint already has been filed in *Young*. Accordingly, Young is not entitled to file the Proposed Complaint unless the Court grants her pending Motion.

purported similarities between the Master Complaint Plaintiff's counsel proposes to file in

MDL 1358 and the Proposed Complaint in *Young*.[3]  However, neither Complaint has been

accepted for filing by the subject Court.    *See e.g. Chan v. Reno*, 991 F.Supp. 266

(S.D.N.Y. 1998) (proposed complaint deemed filed only <u>after</u> leave of court granted).  The

Defendants supporting CTO-1 acknowledge that their position is premature, stating that

Exxon's arguments "<u>*may*</u> now be moot…[*if*] the district court permits the plaintiffs to

amend their complaint."  *See* Defendant's Response at page 5 (emphasis added).

In essence, the parties supporting transfer are urging this Panel to consider

pleadings that are not, and may never be, on file with the respective Courts.  Federal courts

have refused to consider proposed complaints in analogous situations. *See e.g. Hammond*

*v. Terminal R.R. Assoc. of St. Louis*, 848 F.2d 95 (7th Cir 1988); *Kruso International*

*Telephone & Telegraph* Corp., 872 F.2d 1416 (9th Cir. 1989) (refusing to consider

proposed amended complaint as a basis for removal). *Smith v. City of Picayune*, 795 F.2d

---

[3]     Proposed Amended Complaints have also been served in *Berisha* and *England*. The majority of
Defendants in *Berisha* and *England* have objected to the filing of the Proposed Master Complaint and
Proposed Amended Complaints.  The Defendants set forth their objection, in accordance with Case
Management Order No. 2, in a December 13, 2000 letter addressed to Judge Scheindlin, stating in pertinent
part as follows:

> At the November 2 hearing, plaintiffs' counsel agreed with the Court that the
> master complaint was supposed to be merely an "organizational typing tool." (Nov. 2,
> 2000 Hearing Tr. At 24.) The "Master Complaint" plaintiffs' counsel proffered would go
> much further than they represented.  If allowed to proceed with the amendments,
> plaintiffs' counsel would alter significantly the posture and fundamental nature of the
> *Berisha* and *England* cases.  They would add certain claims, including conspiracy in
> *Berisha* and public nuisance in *England*, and they would drop certain claims, including
> private nuisance, negligent misrepresentation and fraud in *Berisha*.  Perhaps most
> importantly, they would split claims for damages, purporting to drop them on behalf of the
> putative classes while retaining them on behalf of named plaintiffs.  They would also drop
> two of the remaining three class representatives in the *Berisha* case and proceed with just
> their individual claims.  These machinations seem motivated by an apparent (and
> untenable) effort to transform the appearance of the cases from actions for damages to
> actions for injunctive relief in order to evade bars against class certification under Rule
> 23(b)(3).  Whatever the explanation, it is clear that the amendments would work
> substantial changes.  Some should not be permitted at all.  Others should be allowed only
> on conditions.  All should require a proper motion for leave.

482 (5th Cir. 1986). Like the removal context, the Panel in this case is considering whether a currently pending action should be transferred to a different court. Consequently, the cited cases should be highly persuasive authority. Thus, the Complaint in *Young* as it currently exists should be the only Complaint considered by this Panel. This is particularly compelling considering the fact that Exxon has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. The pending issue of subject matter jurisdiction further aligns this action with the removal cases. *See Wamp v. Chattanooga Housing Authority*, 384 F.Supp. 251 (E.D. Tenn. 1974) (pleadings in existence at time of removal determine jurisdiction). Thus, unless the proposed complaints are accepted for filing by the respective Courts prior to the Panel's consideration of Defendant, Exxon Mobil Corporation's, Motion to Vacate Conditional Transfer Order (CTO-1) Entered in MDL 1358 – *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* ("Exxon's Motion to Vacate Conditional Transfer Order"), the Master Complaint and Proposed Complaint should have no bearing on this Panel's decision.

## II.   THERE IS NOT A SUBSTANTIAL OVERLAP BETWEEN *YOUNG* AND THE CASES THAT ARE PART OF MDL 1358.

The respondents' contention that the Panel should speculatively consider the Proposed Complaint is a concession that *Young* does not involve common questions of fact warranting transfer. In fact, the respondents halfheartedly argue commonality by referring to the allegations of the *Young* complaint that relate to a purported "conspiracy" among various oil company defendants. *See e.g.* Complaint at 22, 45. However, respondents have failed to inform the Panel that the *Young* action, filed solely against Exxon, does not

contain a count for conspiracy. Rather, the Complaint only sets forth claims for trespass and nuisance.

Claims for trespass and nuisance do not involve "fundamental questions about the propriety of the defendants' decision to use MTBE, and ...defendants' joint efforts to conceal the true effects of MTBE from plaintiffs, the public and regulations for contamination that they knew would occur." *See* Plaintiff's Response at page 5. Thus, contrary to the assertions of the respondents, the *Young* action, as currently pled, simply does not involve the necessary common nexus of facts required for transfer. In fact, the authority cited by respondents to support transfer repeatedly holds that it is the "common nexus of facts," often conceded by the parties, that warrants transfer. *See In re Washington Public Power Supply System Securities Litigation,* 568 F.Supp. 1250 (J.P.M.L. 1983) (all of the actions involved alleged violations of securities law); *In re Scientific Control Corp. Securities Litigation,* 380 F.Supp. 791 (J.P.M.L. 1974) (parties agreed that actions were "virtually identical"); *In re Nissan Motor Corp. Antitrust Litigation,* 385 F.Supp. 1253 (J.P.M.L. 1974) (defendants conceded that the complaints in all actions involved a nationwide conspiracy); *In re Refrigerant Gas Antitrust Litigation,* 334 F.Supp. 996 (J.P.M.L. 1971) (Panel found transfer appropriate where actions involved virtually identical issues of fact).

The same "common nexus" of fact is required when the actions involve differing legal theories. As stated by the Panel in *In re Plywood Antitrust Litigation,* 376 F.Supp. 1405, 1406 (J.P.M.L. 1974), although "overall legal stratagems differ somewhat, they all rest on a common nexus of facts." *See also In re General Motors Class E Stock Buyout*

*Securities Litigation,* 696 F.Supp. 1546 (J.P.M.L. 1988) (while legal theories were slightly different, the underlying factual allegations were common); *In re Stirling Homex Corp. Securities Litigation,* 442 F.Supp. 547 (J.P.M.L. 1977) (fact that actions were based on different theories of liability did not defeat transfer because there was a common factual core).

The common nexus of facts is wholly absent in this case.  Consequently, the conclusory and unsupported assertions in Plaintiff's Response that the Complaint demonstrates that a "common factual nexus" exists clearly is insufficient to refute Exxon's position that the "Young action simply does not involve the overriding factual issues, previously identified by the Panel in its Transfer Order, of whether the defendant oil companies knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public." *See* Exxon's Motion to Vacate Conditional Transfer Order at page 13-14.

Finally, the attempt to convince this Panel that *Young* is not a local action but rather involves an "alleged conspiracy among various oil company defendants to increase profits, knowing that by marketing gasoline using MTBE, they would contaminate plaintiffs' properties" is without merit.  *See* Plaintiff's Response at page 5.  Again, the continued focus on a non-existent conspiracy count is entirely misplaced.  As Exxon previously has stated, *Young* is a "local action" because it involves Exxon's alleged contamination of wells in Florida which necessarily raises uniquely local issues including state and local environmental and administrative matters that are not common with those in *Berisha* and *England.  See* Exxon's Motion to Vacate Conditional Transfer Order at page

17. It is for these reasons, and those reasons fully set forth in Exxon's Motion to Vacate Conditional Transfer Order, that transfer of the *Young* action should be denied.

## III.   EVEN IF THE PANEL CONSIDERS YOUNG'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, TRANSFER IS NOT WARRANTED.

The Proposed Complaint in *Young* adds twelve oil company defendants, dismisses the trespass claim and private nuisance claim, and adds claims for strict liability, failure to warn, negligence, and conspiracy. While the Proposed Complaint, like the Complaint on file, requests injunctive relief, it differs from the Complaint because it expressly requests compensatory relief for the named plaintiff, Rebecca E. Young ("Young"). The Proposed Complaint also differs from the Complaint because it dismisses the claim for punitive damages and request for attorney's fees.

### A.   The Proposed Complaint Should Not Be Considered Because The District Court Does Not Have Subject Matter Jurisdiction Over The *Young* Case.

On December 20, 2000, Exxon filed Exxon's Dispositive Motion to Dismiss Complaint, With Prejudice, for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law ("Motion to Dismiss"). *See* Exhibit A. In its Motion to Dismiss, Exxon states that, "Young has not pled, and cannot credibly plead in good faith, that she actually has incurred damages in excess of $75,000." *See* Exhibit A at page 5.   There is no allegation in the Complaint that any part of Plaintiff's land, or the attendant structures and improvements, have been damaged by the alleged MTBE contamination. Rather, the Plaintiff has alleged solely MTBE contamination of the groundwater.   The value of the

7

inability to use the potable water well simply cannot meet the jurisdictional threshold for

the following reasons:

1) The inability to use the potable water well has not rendered the land worthless. On the contrary, the public records on file with the Court demonstrate that not only is Young in possession of her property but makes the property her permanent residence;

2) Even if the land was rendered worthless, the public records on file with the Court demonstrate that the land value is only $24,438;

3) The public records demonstrate that the total value of the land and improvements is $84,614. The economic impact of the MTBE contamination simply cannot credibly decrease the total value to $9,614, which is the total value of the land and improvements minus the jurisdictional threshold of $75,000. This is particularly compelling considering the fact that the plaintiff has applied for and received an alternate water supply funded through Florida's Inland Protection Trust Fund.

Based on the above, and as fully set forth in Exxon's Motion to Dismiss, any

compensatory damage award would be less than the $75,000 jurisdictional threshold.[4]

Consequently, the only possible remaining basis for subject matter jurisdiction is

through the claim of injunctive relief. However, the claim for injunctive relief cannot meet

the jurisdictional threshold. The public records demonstrate that Young has already

essentially received the injunctive relief requested in the form of testing and monitoring

conducted at no cost to her pursuant to Florida's Water Supply Restoration Program. The

Program not only provided the testing and monitoring, but has also provided Young with

an alternative source of potable water. Thus, no monetary benefit can be conferred upon

Young even if injunctive relief were granted. Moreover, the necessity for additional

---

[4]     The punitive damage claim and attorney's fees would be considered pro rata with the compensatory damage claim. However, for reasons fully set forth in the Motion to Dismiss, these claims would not be sufficient to meet the jurisdictional threshold and they are not even present in the proposed Complaint.

testing and monitoring alleged by Young is simply too speculative and immeasurable to be considered for jurisdictional purposes. *See e.g. Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255 (11th Cir. 2000).

Importantly, the Proposed Complaint does not cure any of the jurisdictional defects present in the Complaint. In fact, the Proposed Complaint weakens the jurisdictional posture of the *Young* action. Young is still the named Plaintiff seeking damages for diminished property value on behalf of herself, and injunctive relief on behalf of herself and the putative class. However, the Proposed Complaint does not have <u>any</u> allegations pertaining to subject matter jurisdiction, does not seek punitive damages or attorney's fees, and does not contain any factual allegations that would permit the Court to credibly find that the "diminished value" claim could conceivably meet the jurisdictional threshold. While there has been no ruling to date on Exxon's Motion to Dismiss, the Panel should refrain from transferring a case subject to dismissal for lack of subject matter jurisdiction.

**B.     The District Court Should Not Grant Young Leave to File the Proposed Second Amended Complaint.**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires. *See* Fed. R. Civ. P. 15(a). However, leave to amend should be denied when: 1) the amendment would be prejudicial to the opposing party, 2) there has been bad faith or undue delay on the part of the moving party, or 3) the amendment would be futile. *See Forman v. Davis*, 371 U.S. 178 (1962). Exxon's

objection to the proposed amendment is based on both its prejudicial nature and its futility. By agreement of the parties, this objection is due to be filed on January 31, 2000.[5]

It is unlikely that the District Court will rule prior to the Panel's disposition of Exxon's Motion to Vacate the Conditional Transfer Order. Thus, the Panel should not consider Young's Motion [for leave to amend] or Proposed Complaint in making a ruling. However, if the Panel does consider the Motion, Exxon's meritorious objections to Young's requested amendment should militate against giving deference to the Proposed Complaint in ruling on whether transfer is appropriate.

### 1.   The amendment would be futile.

If a complaint, as it is sought to be amended, is subject to dismissal, a court should not grant leave to amend. *See Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441 (11th Cir. 1985); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999). In this circumstance, "justice and judicial economy would not be served …because the claims, as amended, would also be subject to dismissal." *See Pohto v. Leiser*, 738 F.Supp. 474, 477 (M.D. Fla. 1990). In the present case, as fully discussed above, the Proposed Complaint does not cure the jurisdictional defects present in the Complaint on file with the Court. Therefore, the amendment would be futile because the Proposed Complaint is similarly subject to dismissal for lack of subject matter jurisdiction. *See e.g. Chan v. Reno*, 916 F.Supp. 1289 (S.D.N.Y. 1996) (where proposed fourth amended complaint, like the

---

[5]    The parties have agreed to file Unopposed Motions for Extension of Time seeking an extension to file the following papers on or before January 31, 2001: 1) Exxon's Objection to Plaintiff's Motion for Leave to File Second Amended Complaint; 2) Young's Response to Exxon's Motion to Dismiss Complaint, With Prejudice, for Lack of Subject Matter Jurisdiction; and 3) Exxon's Objection to Plaintiff's Motion Seeking Ruling on Motion for Leave to Amend Prior to Ruling on Motion to Dismiss and Motion to Strike.

first amended complaint, failed to present the court with subject matter jurisdiction, amendment would be futile).

### 2.    The amendment would be prejudicial.

Leave to amend a complaint should be denied when granting the proposed amendment will result in unfairness to the party opposing the amendment. *See Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674 (M.D. Fla. 1999). Prejudice has been found to occur where the amendment brings entirely new and separate claims and where the information on which the amendment was based was previously available to the plaintiff. *See e.g. Van Harlingen v. City of Dunedin*, 1992 WL 80954 (M.D. Fla. 1992); *Senger Brothers Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674 (M.D. Fla. 1999). It is incumbent upon the movant to demonstrate that the information upon which the new claim is based was unknown or unavailable prior to filing the motion. *Id.* In *Van Harlingen*, the court refused to allow the complaint to be amended where the plaintiffs merely stated that at the time of filing the original complaint it did not believe that it was "necessary" to allege that certain ordinances were invalid. According to the court, the Plaintiff's statement was a clear indication that a decision not to include such a claim had been made, rather than a demonstration that the information was unknown or unavailable. *Van Harlingen*, 1992 WL 80954 at *1.

In the present case, a conscious decision was made to file *Young* as a single defendant action seeking injunctive relief for alleged MTBE contamination under theories of trespass and nuisance. Plaintiff's counsel, who has been involved in extensive MTBE litigation, was well aware of the other oil companies that could be named as defendants

and knew of the various causes of action that conceivably could be pled, since similar actions were already pending in other jurisdictions. However, it was not until the Panel recognized that Young might be a "tag along action" that Plaintiff's counsel first attempted to amend the Complaint to "make it more consistent with those being pursued by plaintiffs in the MDL proceeding." *See* Plaintiff's Motion for Leave to File Second Amended Complaint. Thus, like *Van Harlingen*, the Plaintiffs in this case made a conscious decision to file the *Young* action without claims for strict liability, failure to warn, conspiracy, or negligence. To allow the amendment at this stage in the litigation will prejudice Exxon by completely changing the posture of the case and injecting entirely different issues.

## IV. THE PROPOSED CLASS IN *YOUNG* DOES NOT OVERLAP WITH THE PROPOSED CLASSES IN *BERISHA* AND *ENGLAND*.

### A. The actions do not involve overlapping proposed classes.

*Young* was brought as a class action seeking injunctive relief. The Complaint seeks certification primarily pursuant to Rule 23(b)(2), which permits certification of class actions where the primary relief sought is equitable in nature. *See* Complaint at page 90, 98. *See* Fed. R. Civ. P. 23(b)(2). On the contrary, the *Berisha* and *England* actions, as currently pled, seek certification pursuant to 23(b)(3) which permits certification if the common questions predominate over individual interests.[6] *See* Fed R. Civ. P. 23(b)(3). The *Berisha* and *England* actions seek certification based on common questions of fact

---

[6] Under Rule 23, in order for a class to be certified, all requirements set forth in 23(a) must be met. However, only one of the requirements set forth in 23(b) must be met. It is, therefore, 23(b) which distinguishes *Young* from *Berisha* and *England*. The proposed Master Complaint and Proposed Amended Complaint in *Berisha* and *England* attempt to transform the actions from actions for damages to actions for injunctive relief, presumably to evade bars against class certification pursuant to Rule 23(b)(3).

which include misrepresentation, fraud, and failure to warn. None of these factual issues currently are present in *Young*, nor does *Young* seek certification on this basis. Therefore, there is no basis for respondents' position that there are overlapping proposed classes in *Young, Berisha,* and *England*.[7]

### B.   Even if overlapping proposed classes existed, transfer would still not be warranted because common questions of fact do not exist.

The existence of overlapping proposed classes is not, as contended by the plaintiffs, sufficient to meet the requirements of common questions of fact. On the contrary, while the Panel has recognized that the possibility of overlapping classes presents a highly persuasive reason for favoring transfer, the Panel has always made the initial determination that common questions of fact exist as mandated by Section 1407. *See e.g. In re Roadway Exp., Inc. Employment Practices Litigation,* 384 F.Supp. 612 (J.P.M.L. 1974). Thus, where the Panel has found that there are "extensive common issues of fact *and*...overlapping class allegations, transfer has been found to be appropriate." *See In re Refrigerant Gas Antitrust Litigation,* 334 F.Supp. 996 (J.P.M.L. 1971) (emphasis added); *See also In re Washington Public Power Supply System Securities Litigation,* 568 F.Supp. 1250 (J.P.M.L. 1983) (court first found common questions of fact existed and then noted that "overlapping class certifications have been brought in all thirteen states"). In fact, even when the parties agree that transfer is appropriate, the Panel "must still be satisfied that the requirement of Section 1407 relating to the existence of common questions of fact

---

[7]      Again, the respondents seem to focus on the similarity of the class allegations set forth in the Proposed Complaint and Master Complaint which have not yet been accepted for filing. Consequently, unless the Master Complaint and Proposed Complaint are accepted for filing by the respective Courts, any argument as to overlapping classes is baseless and must be rejected in its entirety.

is met." *In re Air Fare Litigation,* 322 F.Supp. 1013 (J.P.M.L. 1971).   Therefore, in the present case, because common questions of fact do not exist, even if this Panel were to find that there are overlapping class allegations, transfer still is not warranted.


## V.   THE FACT THAT THE *BERSIHA* AND *ENGLAND* ACTIONS ARE MORE ADVANCED THAN THE YOUNG ACTION MILITATES AGAINST TRANSFER.

Exxon recognizes that the Panel has transferred cases to an MDL proceeding that are at different stages of the discovery process. *See e.g. In re Bomb Disaster at Roseville, California, on April 28, 1973*, 399 F.Supp. 1400 (J.P.M.L. 1975).   Exxon did not contend that the more advanced stages of discovery in *Berisha* and *England* warrant a denial of transfer as suggested by respondents.   Rather, Exxon contends that encumbering the *Young* action with a myriad of issues that have no bearing on this case militates against transfers, particularly considering the fact that discovery is ongoing in the MDL proceeding and has yet to commence in *Young*.   *See* Motion to Vacate Conditional Transfer Order at page 14.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in Exxon's Motion to Vacate Conditional Transfer Order, the Panel should vacate CTO-1 as to *Young* and allow *Young* to proceed in the Middle District of Florida.

14

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**DEC 2 8 2000**

Dated:        December 28, 2000

Respectfully submitted,

FILED
CLERK'S OFFICE

David B. Weinstein
Florida Bar No.:  604410
Kimberly S. Mello, Esq.
Florida Bar No. 0002968
**BALES & WEINSTEIN, P.A.**
1715 N. Westshore Boulevard, Suite 190
Tampa, Florida  33607
Telephone:  (813) 287-8777
Telecopier: (813) 287-1507
Attorneys for Defendant,
Exxon Mobil Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the following:  Exxon Mobil

Corporation's Reply to *Young* Plaintiffs' Response to Certain Defendants' Motion to

Vacate Conditional Transfer Order No. 1 and Certain Defendants' Consolidated Response

to All Motions to Vacate the First Conditional Transfer Order (CTO-1) has been hand-

delivered to the Clerk of the Panel, and furnished to all counsel listed on the attached

PANEL SERVICE LIST by U. S. Mail, this 28th day of December, 2000.

David B. Weinstein

# PANEL SERVICE LIST
## DOCKET NO. 1358
## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE")
## PRODUCTS LIABILITY LITIGATION

Elizabeth J. Cabraser
Lieff, Cabraser Heimann
      & Bernstein, L.L.P.
275 Battery Street, Suite 3000
San Francisco, CA 94111

Mitchell A. Toups
Weller, Green, McGown & Toups, L.L.P.
2615 Calder, Suite 400
PO Box 350
Beaumont, TX 77704

Joe R. Whatley
Whatley Drake, L.L.C.
505 North 20th Street
1100 Financial Center
Birmingham, AL 35203

Dan H. Ball
Thompson & Coburn, L.L.P.
One Firstar Plaza
St. Louis, MO 63101

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
122 South Michigan Avenue, Suite 1776
Chicago, IL 60603

John E. Galvin
Sandberg, Phoenix & von Gontard
One City Center, Suite 1500
St. Louis, MO 63101

John S. Guttmann
Beveridge & Diamond, P.C.
1350 I Street, N.W., Suite 700
Washington, DC 20005

Jon Hinck
Lewis, Saul & Associates, P.C.
183 Middle Street, Suite 200
Portland, ME 04101

J. Andrew Langan
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Steven L. Leifer
Baker, Botts, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Mark G. O'Connor
Regional Counsel
Coastal Oil New York, Inc.
611 Rt. 46 West
Hasbrouck Heights, NJ 07604

Kenneth Pasquale
Stroock, Stroock & Lavan, L.L.P.
180 Maiden Lane
New York, NY 10038

Dennis C. Reich
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, TX 77027

Robert H. Shulman
Howrey, Simon, Arnold & White, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Stephen M. Tillery
Carr, Korein, et al
Gateway One Building, Suite 300
701 Market Street
St. Louis, MO 63101

Richard E. Wallace
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007

Edward S. Weltman
Schneck, Weltman & Hashmall, L.L.P.
1285 Avenue of the Americas
New York, NY 10019

David B. Weinstein
Bales & Weinstein, P.A.
1715 N. Westshore Boulevard, Suite 190
Tampa, FL 33607

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 2 8 2000

FILED
CLERK'S OFFICE

US OFFICE PRODUCTS

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL DOUGLAS YOUNG, on behalf
of himself and all others similarly situated,

        Plaintiff,

vs.                             CASE NO. 8:00-cv-1912-T-24C

EXXONMOBIL OIL CORPORATION,

        Defendant.

_____/


**EXXON'S DISPOSITIVE MOTION TO DISMISS COMPLAINT,
WITH PREJUDICE,
FOR LACK OF SUBJECT MATTER JURISDICTION
AND INCORPORATED MEMORANDUM OF LAW**


Defendant, Exxon Mobil Corporation ("Exxon"), erroneously identified in the Complaint as "ExxonMobil Oil Corporation," by counsel and pursuant to *Fed. R. Civ. P.* 12(b)(1), moves to dismiss the First Amended Complaint[1] filed by the Plaintiff[2] in this action, with prejudice, and on the grounds set forth below.

---

[1]    The original Complaint was filed by Plaintiff, Paul Douglas Young. Subsequently, the First Amended Complaint was filed, substituting Rebecca E. Young for Paul Douglas Young as the Plaintiff, and incorporating by reference "the entire original Complaint." First Amended Complaint ¶ 2. Accordingly, unless otherwise noted, references to the "Complaint" refer to the First Amended Complaint, and paragraph references refer to the numbered paragraphs in the original Complaint.

[2]    The Plaintiff will be referred to as "Young" or "Plaintiff" which means Rebecca E. Young, the substituted Plaintiff.

- 1 -


EXHIBIT
A

## BACKGROUND

On or about September 14, 2000, the original Plaintiff, Paul Douglas Young, commenced this action by filing a "Class Action Complaint for Injunctive Relief for Trespass, Nuisance and Conspiracy."[3] The Complaint purportedly is brought:

> . . .on behalf of a class of persons who own or have an interest in real property in the State of Florida who reside near an ExxonMobil (sic) gas station or other site at which there has been a reported release of gasoline, and who rely on one or more wells on such property that has been contaminated or is threatened by contamination from the gasoline oxygenate and additive known as MTBE.

*See* Complaint at ¶ 1. According to the Complaint, the "exact number of the members is unknown" but Plaintiff is informed and believes that the class consists of "thousands of members." *See* Complaint at ¶ 93.

The Plaintiff states that "money damages cannot provide the relief sought." *See* Complaint at ¶ 23. Thus, Plaintiff seeks:

> . . .mandatory injunctive relief on behalf of the class, including Court-supervised testing and monitoring, managed by Court-appointed and Court-supervised trustees to, among other things, provide information to Plaintiffs and the Plaintiff class on the extent and location of groundwater contamination by methyl tertiary-burtyl (sic) ether ("MTBE") to collect data on the flow and parameters of MTBE contamination.

*See* Complaint at ¶ 2. Importantly, Plaintiff has requested only injunctive relief in the ad damnum clause.

---

[3]     While the Complaint is titled "Class Action Complaint for Injunctive Relief for Trespass, Nuisance and Conspiracy," the only counts in the Complaint are for trespass and nuisance. Exxon has moved to strike all allegations pertaining to conspiracy since they are not pertinent to the causes of action pled. *See* Exxon Mobil Corporation's Motion to Strike and Supporting Memorandum of Law served November 30, 2000.

Based upon the claim for injunctive relief, Young contends that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332, and supplemental jurisdiction over claims of any of the non-named class members whose damages do not exceed $75,000 pursuant to 28 U.S.C. §1367. *See* Complaint at ¶ 12-13.   However, as demonstrated below, this Court lacks subject matter jurisdiction for the following reasons:

1.   Plaintiff has not pled, and cannot credibly plead in good faith, that she, or any member of the putative class, actually has incurred damages in excess of $75,000;

2.   The value of the legally cognizable relief sought by Young is less than $75,000; and

3.   Clear precedent from the United States Eleventh Circuit Court of Appeals precludes Plaintiff from aggregating her claims with those of the putative class for purposes of satisfying the amount in controversy requirement.

Accordingly, so that this Court may consider the threshold issue of subject matter jurisdiction, which Exxon respectfully submits does not exist, Exxon has filed this Motion and Incorporated Memorandum addressing, solely, this issue.[4] Thus, in the event that the Court grants this Motion to Dismiss for Lack of Subject Matter Jurisdiction, it will be unnecessary for the Court to consider Exxon's other pending motions. *Supra*, at n.4.

---

[4]      On November 30, 2000, Defendant served: i) Exxon Mobil Corporation's Motion to Dismiss First Amended Complaint and Supporting Memorandum of Law, addressing numerous grounds for the Complaint's dismissal under Rule 12(b)(6), including preemption, lack of standing, failure to join an indispensable party, abstention, and failure to state a claim upon which relief can be granted; ii) Defendant, Exxon Mobil Corporation's Motion to Strike and Supporting Memorandum of Law pursuant to Rule 12(f); and iii) Exxon Mobil Corporation's Request for the Court to Take Judicial Notice in Support of Motions to Dismiss and Supporting Memorandum of Law.

## STANDARD OF REVIEW

Federal courts have limited subject matter jurisdiction. *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260 (11th Cir. 2000). Under 28 U.S.C. §1332, a district court has subject matter jurisdiction over any civil case if the parties are "citizens of different states" and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. The party seeking to invoke the Court's jurisdiction has the burden to allege with sufficient particularity the facts creating jurisdiction. *See Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039, 1052 (5th Cir. 1982). Diversity jurisdiction in class actions must be established by demonstrating that the Plaintiff has a claim for more than $75,000. If the Plaintiff's claim does not exceed the jurisdictional requisite, the court will not have subject matter jurisdiction unless the class claims can be aggregated. Aggregation, however, is permitted only in very limited circumstances if the Plaintiff can demonstrate that the class has a unified, indivisible interest in a common fund that is the object of the litigation. *See Morrison,* 228 F. 3d at 1262.

While the Court must give due credit to the good faith claims of the Plaintiff in alleging jurisdiction "a court would be remiss in its obligations, if it accepted the claim of damages at face value, no matter how trivial the injury." *Id.* at 1052. Jurisdiction is not conferred by the stroke of a lawyer's pen. *Id.* On the contrary, the Court is obligated to assure itself that the case involves the requisite amount in controversy, and must inquire into subject matter jurisdiction whenever it appears that jurisdiction may be lacking. *See Morrison,* 228 F. 3d at 1261. To do otherwise would be contrary to the well settled

mandate that "lower federal courts are empowered to hear only those cases in which there has been a congressional grant of jurisdiction." *Morrison*, 228 F. 3d at 1261. Once a Court determines that there has been no congressional grant that covers a particular case, the Court's sole remaining act is to dismiss the case for lack of jurisdiction. *Id*.

## ARGUMENT

I.    **THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER YOUNG'S CLAIMS BECAUSE YOUNG HAS FAILED TO ESTABLISH DAMAGES IN EXCESS OF $75,000.**

A.    **Young has failed to adequately plead subject matter jurisdiction.**

Significantly, Young has not pled, and cannot credibly plead in good faith, that she actually has incurred damages in excess of $75,000.  Instead, Young merely contends that the "Plaintiffs <u>seek</u> individually <u>relief</u> worth in excess of $75,000." *See* Complaint at ¶ 12 (emphasis added).  This is clearly insufficient to satisfy her burden of pleading <u>facts</u> with "sufficient particularity" to invoke the jurisdiction of the Court.  The Court in *Morrison* stated as follows:

> In their complaint, the Plaintiffs alleged simply that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. (citation omitted).  The Complaint does not request a specific amount of damages nor does it otherwise explain the basis for the jurisdictional allegation.

*Morrison*, 228 F. 3d at 1261.[5]  Similarly, in the present case, there is no factual allegation

that conceivably supports entitlement in excess of $75,000 based on MTBE contamination

of Plaintiff's well located on the property that is the subject of this litigation.  Thus,

because there is an absence of factual allegations sufficient to support the requisite

jurisdictional amount, the Court, as a matter of law, is required to dismiss Young's

Complaint.  *See Burns v. Anderson*, 502 F.2d 970, 972 (5th Cir. 1982).

>    **B.**    **Even if permitted to amend, Young cannot in good faith allege that her
>             damages meet the jurisdictional threshold.**

In a class action lawsuit, if there is an individual class member whose claim for

compensatory damages, combined with a pro rata share of attorney's fees and the

potential claim for punitive damages, exceeds $75,000, then diversity jurisdiction exists

over that individual's claim. *Morrison*, 228 F. 3d at 1271.  However, as will be fully

discussed below, jurisdiction does not exist over the entire class unless the Court finds that

supplemental jurisdiction exists pursuant to 28 U.S.C. §1367 or that the claims of the

entire class can be aggregated.

Thus, as a threshold matter, this Court must first consider whether Young's

individual claim for relief can meet the jurisdictional threshold.  Importantly, Young has

not requested compensatory damages in her prayer for relief.  Rather, she has merely

alluded to a claim of "diminished value" based on MTBE contamination of the

groundwater within the Complaint itself.  Therefore, a contention that "diminished value"

---

[5]        According to the *Morrison* Court, not only is a "conclusory allegation that the amount in
controversy requirement is satisfied insufficient to sustain jurisdiction once the allegation is challenged," but
"such an allegation is entitled to even less consideration in the context of a class action because the named
Plaintiff's unstated basis for his jurisdictional allegation might be the erroneous position that the names of
the class members may be aggregated." *Morrison*, 228 F. 2d at 1273, n.17.

should be considered as part of the Plaintiff's attempt to meet the jurisdictional threshold

is tenuous at best.  Notwithstanding this fact, Exxon will address the "diminished value"

claim in the event that this Court finds the claim nonetheless is validly pled.

**1.    The claimed compensatory damages for diminished
property value are less than $75,000.**

The Plaintiff has alleged solely MTBE contamination of the groundwater.  There is

no allegation in the Complaint that any part of Plaintiff's land, or the attendant structures

and improvements, have been damaged by the alleged MTBE contamination.  Thus, the

Complaint, stripped of its rhetoric, essentially alleges that MTBE contamination has

interfered with one aspect of Young's use of the property i.e., the use of a well as potable

water.  The "value" of the inability to utilize a potable water well, as discussed in detail

below, simply cannot exceed the jurisdictional threshold of $75,000 under the facts of this

case.

**a.    Plaintiff's alleged inability to utilize a potable
water well has not rendered the land itself worthless.**

The inability to use the potable water well has not rendered the land itself

"worthless".  On the contrary, Young readily admits that "Plaintiff is, and at all times

relevant to this action, was the owner in fee, *in possession*, and in control of real property

located at 13309 North 53rd Street, Temple Terrace, FL  33617."  *See* Complaint at ¶ 82

(emphasis added).  In fact, the public records indisputably demonstrate that not only is

Young in "possession" of the property but makes that property her "permanent residence."

The public records further disclose that Mrs. Young, and presumably, her husband, Paul

Young, the original Plaintiff in this action, claim the property as homestead under Florida

- 7 -

law and receive a tax exemption. *See Exhibit 2.*[6]  Consequently, as readily admitted in the

Complaint, Young is not only in possession of the property but also makes the property

her permanent residence. *See* Art. VII, § 6(a) (stating that every person who has legal or

equitable title to real estate and maintains thereon the *permanent residence* of the

owner...shall be exempt from taxation ...) (emphasis added).  Therefore, the allegations

of the Complaint and public records conclusively demonstrate that the property is not

"worthless" as a result of the MTBE contamination.

> **b.     The Plaintiff could not in good faith plead that the land, even if worthless, meets the jurisdictional threshold of $75,000.**

Even if permitted to amend the Complaint, Young could not in good faith allege

that the subject land, even if worthless, meets the jurisdictional threshold of $75,000.  The

public records pertaining to the Young property evidence that the amount in controversy

in this action is less than $75,000.[7]   More specifically, the records of the Hillsborough

County Property Appraiser show that the "Land Value (Market)" of the Young property is

$24,438. *See Exhibit "2"*.  Thus, the Market Land Value is only slightly less than 1/3 of

the $75,000 jurisdictional requirement.  Stated differently, the required amount in

controversy is 307% of the total Market Land Value for the property.  Therefore, even if

the land was "worthless", it would not meet the jurisdictional requisite.

---

[6]      Exxon has separately filed a Request for the Court to Take Judicial Notice of various public records in determining both this Motion to Dismiss and the Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(B)(6).  All references to "Exhibits" in this Motion refer specifically to the Exhibits attached to Exxon's Request for the Court to Take Judicial Notice.

[7]      Young has also claimed entitlement to "stigma damages."  Assuming that these damages were recoverable under Florida law, they are simply too speculative to be included in the amount in controversy.

- 8 -

     c.     **Even if the land, structures and improvements could in good faith be pled as being "worthless", Plaintiff still could not meet the jurisdictional threshold of damages in excess of $75,000.**

In addition to not pleading that the land has been rendered worthless by MTBE contamination, the Plaintiff has not pled any impact to the structure or improvements located on the property due to the alleged MTBE contamination. In fact, such an allegation would be highly suspect as it defies common sense that MTBE contamination of groundwater could somehow negatively impact the structure and improvements located on the subject property. However, even if the Plaintiff pled that the total value of the land, including the structure and improvements thereon, were rendered worthless by the MTBE contamination, Plaintiff still could not meet the jurisdictional threshold.

The public records demonstrate that the value of the land is $24,438, the value of the structure is $53,118, and the value of improvements is $7,063. Therefore, the total value of the land and improvements is $84,614. The Plaintiff simply cannot in good faith plead that the economic impact of contaminated water decreases the property value to only $9,614, which is the total value of the land and improvements minus the jurisdictional threshold of $75,000. This is particularly compelling considering the fact that, as will be fully addressed below, the Plaintiff has already applied for and received an alternate water supply funded through Florida's Inland Protection Trust Fund. Therefore, the diminished value claimed by the Plaintiff cannot credibly meet the requisite jurisdictional threshold.

2.      **Attorney's Fees.**

a.      **Introduction.**

In class action lawsuits, entitlement to fees is typically sought based on either a common fund generated in the class action or statute authorizing recovery. *See e.g. Cohen*, 204 F. 3d at 181, n.14; *Darden v. Ford Consumer Finance Co., Inc.*, 200 F3d 753 (11th Cir. 2000); *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 183 F.3d 792 (11th Cir. 1999). The law is well settled that for the purposes of determining the amount in controversy for individual class members, the amount of attorney's fees is divided out among the total number of class members. The <u>only</u> possible exceptions to this rule occur when the fees can be attributed solely to the named Plaintiffs as provided for by statute or can be aggregated. *See Cohen v. Office Depot, Inc.*, 204 F. 3d 1069 (11th Cir. 2000) ("Cohen II"); *Morrison*, 228 F.3d at 1265-1266, 1273. Neither of the exceptions applies in the present case. The only exception addressed below is that there is no statutory basis for fees to be attributed solely to Young. The inability to aggregate the attorney's fees is discussed *supra* at II(b).

b.      **There is no legal basis for claiming that a statute authorizes recovery solely to the named Plaintiff in this action.**

When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy. *See Morrison*, 228 F. 3d at 1265. In the present case, Young has requested "attorneys fees" in the "Wherefore Clause" of the Complaint. However, Young has not pled the legal basis for entitlement, whether statutory or otherwise. Because Young has not adequately plead entitlement to attorney's

fees, Exxon has filed a Motion to Strike Young's claim for attorney's fees.  Exxon does not believe that there is any Florida statutory authority that provides for an award of fees based on claims of trespass or nuisance, let alone allows an award solely to the <u>named Plaintiff</u> for the purpose of satisfying the amount in controversy requirement.

In fact, in order for Plaintiff to validly make such an argument, there must be statutory language suggesting that the fees should be attributed only to the named Plaintiffs.  *See In re Abbot Laboratories*, 51 F.3d 524 (5th Cir. 1995) (relying on Louisiana statute that authorized an award of attorney's fees to the "representative class").  Absent such statutory language, a request to attribute the amount of attorney's fees to the named Plaintiff in a class action will be denied.  *Id. See also Morrison*, 228 F. 3d at 1274 (holding that since every member of the Policyholder Class is a named insured under Section 627.428, Florida Statutes, there is no basis for attributing the attorney's fees only to the named Plaintiffs).

Therefore, in the present case, Young cannot satisfy the amount in controversy requirement by claiming that any fees awarded will be solely attributed to her.  Rather, if entitlement exists, it must be "attributed pro rata among all of the class members." *Morrison*, 228 F. 3d at 1274-1275.  Considering the fact that the class consists of "thousands of members" the amount for jurisdictional purposes for each member would be a "relatively small sum".  *Id.* at 1275.  Thus, the attorney's fees claim when considered in conjunction with the "diminished value" claim clearly does not meet the jurisdictional threshold for Young's individual claim.

- 11 -

3.    **Punitive Damages.**

The Eleventh Circuit has expressly held that a punitive damage claim in a class action must be assigned on a pro rata basis to each class member for amount in controversy purposes. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076-1077 (11th Cir. 2000), *relying on, Lindsey v. Alabama Telephone Co.*, 576 F. 2d 593 (5th Cir. 1978). Importantly, absent an allegation requesting a specific amount of punitive damages <u>and</u> an allegation of the number of persons in the class, the punitive damage claim cannot be considered for jurisdictional purposes. *See Lindsey,* 576 F.2d at 595 (holding that case could not be removed where Plaintiff claimed $1,000,000 in punitive damages but failed to allege the number of persons in the class).

The Complaint in this action fails to specify an amount of punitive damages that Young, in good faith, believes that the class may be entitled to as a result of Exxon's conduct.[8]   Moreover, the Complaint imprecisely states that the class will consist of "thousands of members" throughout the State of Florida that reside near an Exxon gas station. *See* Complaint at ¶ 1, 93. The term "thousands of members" conceivably could be any number from 2 to 999,999. It is, therefore, impossible for Exxon, or this Court, to determine if the punitive damage claim could conceivably have any effect on the individual class member's amount in controversy requirement.   Consequently, the punitive damage claim cannot be allocated on a pro-rata basis for jurisdictional purposes.

---

[8]      Exxon has filed a separate Motion to Strike the punitive damages claim.

- 12 -

However, even if the Court were to consider a minimum class of 2,000 members, it would still take an inordinately large punitive damage award to have any significant effect as to the jurisdictional threshold. In fact, it would take a punitive damage award of $150,000,000 to satisfy the jurisdictional threshold for an individual class member if the class consisted of a minimum of 2,000 members[9]. Clearly, the facts as currently pled do not justify such an award. The Eleventh Circuit in *Morrison* recently discussed the inability of punitive damages to have an effect on the jurisdictional threshold with such a large class stating:

> In the present case, the Complaint alleges that the size of the Policyholder Class "exceeds one million" and maintains that the size of the Damaged Vehicle Subclass is also "large."
>
> As a result, even if Plaintiffs were able to amend their complaint and plead a substantial sum of punitive damages on remand, the pro rata amount of those damages for such a large class and subclass would have little effect on establishing the requisite amount in controversy. For example, with the Policyholder Class exceeding one million members, a "good faith" punitive damages claim of hundred million dollars would amount to less than a $100 for each member of the class . . .

*Morrison*, 228 F.3d at 1265-1266. The reasoning in *Morrison* is equally applicable to *Young* and requires dismissal of the Complaint.

---

[9]      It seems illogical that the class would consist of only 2,000 members considering the fact that Plaintiff is attempting to certify wells that are contaminated or threatened with contamination that are located within 2,000 feet of an Exxon station or other site. Thus, it is likely that the amount of punitive damages that would have to be awarded would be far in excess of the $150,000,000 noted above.

4.    **The value of injunctive relief sought by Young is less than $75,000.**

The value of injunctive relief is the "value of the object of the litigation" measured from the Plaintiff's perspective. *Cohen, II*, 204 F.3d at 1077. The *Cohen II* court aptly described the "value of the object of the litigation" as "the monetary value of the benefit that would flow to the Plaintiff if the injunction were granted". *Cohen II*, 204 F.3d at 1077. Consequently, a Plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is "sufficiently measurable and certain to satisfy the amount in controversy requirement." *Morrison*, 228 F.3d at 1269, *citing, Erricson*, 120 F.2d at 221. Any claim seeking injunctive relief that amounts to nothing more than "mere speculation as to whether any particular class member will benefit monetarily, and if so to what extent," cannot serve as a basis for satisfying the jurisdictional requisite. *Morrison*, 228 F3d at 1269.

a.    **Plaintiff, Young, has already received the injunctive relief requested at no cost to her. Therefore, there is no monetary benefit that could flow from the requested injunctive relief.**

In the present case, what is most telling is what the Plaintiff has not pled. Young has sought injunctive relief in the form of testing and monitoring to provide information on the extent and location of the groundwater contamination by MTBE. *See* Complaint at ¶ 2. Disturbingly, however, Young has failed to advise this Court that not only has testing and monitoring already occurred, but that Young has been provided with an alternative source of potable water pursuant to Florida's Water Supply Restoration Program. *See* §370.3072(4), Fla. Stat. The public records demonstrate the following:

- 14 -

1.  Plaintiff's well water already has been sampled and analyzed by the Health Department;

2.  Plaintiff was offered an alternative water supply by the Department of Environmental Protection;

3.  Plaintiff requested to receive the alternative water supply; and

4.  Plaintiff received a connection to the City of Tampa water system paid for by Florida's Inland Protection Trust Fund, which she currently uses.

*See Exhibits 3, 4, 5 and 6* to Exxon's Request for the Court to Take Judicial Notice in Support of Motions to Dismiss served in this action on November 30, 2000.

Thus, not only has Young's water well recently been tested by the Florida Department of Environmental Protection, but she has received, at no cost, an alternative source of potable water through the City of Tampa water supply. *See Exhibits 3, 4, 5, 6.*[10] Therefore, as in *Morrison*, there is simply no "monetary benefit" that can inure to the Plaintiff as a result of the injunctive relief requested.   Consequently, the testing and monitoring cannot satisfy the amount in controversy requirement.

### b.   The nature of injunctive relief is speculative and immeasurable.

Any additional testing and monitoring that Plaintiff may contend is necessary clearly is too speculative and immeasurable to satisfy the amount in controversy requirement.   In *Morrison*, the court found that the value of the injunctive relief, which consisted primarily of a diminished value claim, was too speculative and immeasurable to

---

[10]    In Exxon Mobil Corporation's Motion to Dismiss and Supporting Memorandum of Law, Exxon has also raised, based upon similar arguments, that Plaintiff has no standing to bring the action.

be included in determining the amount in controversy.   The *Morrison* court noted as

follows:

> One significant uncertainty in valuing the injunctive benefit is that the
> requested injunction would not prevent the defendants from changing the
> language of their policies to exclude explicitly any obligation to pay
> diminished value, thereby preventing any future payments once the current
> policies were no longer in effect.
>
> Even if the defendants did not alter the policy language, the injunction has
> no reasonably certain monetary value to any individual class member
> because it is simply impossible to know which class members will be
> involved in automobile accidents and assert claims for diminished value.
>
>        . . .
>
> Equally uncertain is the amount of those potential diminished value claims.
> An accident may be so minor as to result in virtually no diminished value
> or so severe that he vehicle is totaled.

*Morrison*, 228 F.3d at 1269; *see also Ericcson GE Mobile Communications, Inc. v.*

*Motorola Communications Elecs., Inc.*, 120 F. 3d 216 (11th Cir. 1997) (since the value of

injunctive relief would be the chance to bid on contract, which Plaintiff may or may not be

awarded, the Court found that it was not sufficiently measurable to satisfy the amount in

controversy requirement).

Similarly, in the instant action, there is no measurable and certain monetary benefit

that will inure to the Plaintiff, or the putative class, as a result of additional testing and

monitoring.   As in *Morrison*, it is simply impossible to know which class members may

need additional testing or monitoring.   Further, any claims for diminished value are

entirely speculative.   Not only has the Plaintiff received an alternate water supply at no

cost, there are no factual allegations in the Complaint that establish any diminished value

of any property on behalf of the Plaintiff or the class.   In fact, the wells have been

characterized as being contaminated or <u>threatened</u> with contamination. See Complaint ¶ 1. Without any allegation of actual contamination and resulting diminished value, these claims are entirely too speculative and immeasurable to be considered for the amount in controversy requirement.

## II.   YOUNG CANNOT AGGREGATE THE CLAIMS OF THE CLASS MEMBERS TO MEET THE JURISDICTIONAL THRESHOLD.

When no single Plaintiff's claim satisfies the requisite amount in controversy, there can be no diversity jurisdiction unless "multiple Plaintiffs have a unified, indivisible interest in some common fund that is the object of the litigation, permitting them to add together, or 'aggregate' their individual stakes to reach the amount in controversy requirement". *Morrison,* 228 F.3d at 262; *Zahn v. International Paper Co.*, 414 U.S. at 295.   It is "uncommon" for the common and undivided interest requirement to be met. *Morrison*, 228 F.3d at 262.   Typically, it is met only when the defendant "owes an obligation to the group of Plaintiffs as a group and not the individuals severally" that the claims can be aggregated to meet the jurisdictional requisites of §1332. *Id.*   There is a difference between a "common fund" permitting aggregation and the "common fund" that is usually generated in any class action. *See Gilman v. BHC Secs, Inc.*, 104 F.3d 1418 (2d Cir. 1997).   Importantly, it is the nature of the right asserted and not the relief requested that determines whether claims of multiple Plaintiffs may be aggregated. *Gilman*, 104 F.3d at 1427.

### A.      Compensatory Damages.

Class members generally may not aggregate their individual claims for compensatory damages to establish the requisite amount in controversy. In *Morrison*, the class action complaint alleged that Allstate Indemnity Company had failed to pay the members of the class for the diminished value of their damaged but repaired vehicles as required by the insurance contract and Florida law.  The Eleventh Circuit, however, held that their claims could not be aggregated:

> . . . when multiple Plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated.

> Because each member of the Policyholder Class, as well as each member of the Damaged Vehicle Subclass, seeks damages resulting from the defendants' alleged breach of individual insurance policies, the compensatory damages in this case may not be aggregated to establish diversity jurisdiction...

*Morrison*, 228 F.3d at 1265.

Similarly, in this class action, damages for "diminution in value" of real property due to either actual or threatened contamination of groundwater with MTBE is clearly separate and distinct.  Each claim is based on that class member's <u>individual</u> parcel of property and the peculiar damages purportedly sustained due to alleged MTBE contamination.  Therefore, the diminished value, and any other property damages, cannot be aggregated to meet the jurisdictional requisite.

**B.**    **Attorney's Fees.**

    **1.**    **When a statute authorizes an award of attorney's fees, the fees may not be aggregated to satisfy the amount in controversy requirement if the Plaintiffs each have a separate and distinct right to recover fees.**

The Eleventh Circuit in *Darden* held that fees may not be aggregated in a class action if: 1) "the class members have a separate and distinct right to attorney's fees under the relevant state statute; and 2) state law provides that the...fees serve to compensate the class members for their injuries". *See Darden,* 200 F. 3d at 758. *See also Cohen II,* 204 F.3d at 1081-82. The Plaintiffs in *Darden* sought to aggregate attorney's fees under the RICO statute. In recognizing that the Plaintiffs' right to attorney's fees was separate and distinct under the statute, the court stated as follows:

> After review, we hold that each Plaintiff's share of the attorney's fees recoverable under Georgia's RICO statute may not be aggregated to satisfy the amount in controversy requirement because under Georgia law each individual Plaintiff has a separate and distinct statutory right or claim to recover attorney's fees and Georgia law provides that those fees are to compensate the injured Plaintiff.

*Darden,* 200 F. 3d at 758. Most recently, the Eleventh Circuit held that the primary consideration is whether the Plaintiffs have a separate and distinct right to recover attorney's fees. *See Morrison,* 228 F.3d at 1266.

In the present case, as previously noted, Young has requested "attorneys fees" in the ad damnum of the Complaint. However, Young does not cite any Florida statute that would allow recovery of fees based on involving common law claims for trespass and nuisance. Notwithstanding this fact, it is clear that if Florida law allowed fees to be recovered for trespass and nuisance, the fee recovery would be based on each of Plaintiffs'

- 19 -

separate and distinct right to recover attorney fees. *See Morrison*, 228 F.3d at 1266 (because the purpose of Section 627.428 is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts, the claim of each insured is separate and distinct thereby prohibiting aggregation). Therefore, there is no basis for aggregation.

>        **2.    There is no basis for aggregation pursuant to a common fund.**

While not pled, even if Plaintiffs had a basis for entitlement pursuant to a common fund, the attorney's fee claim could not be aggregated to satisfy the amount in controversy requirement. The Eleventh Circuit in *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F. 3d 792 (11th Cir. 1999), held that because common fund attorney's fees do not represent a "collective interest" of the Plaintiff class, the fees are not aggregable. The court stated as follows:

> Facially, we could perhaps consider the fee as a collective debt of the Plaintiff class, incurred in the common pursuit of the Plaintiff's recovery that the defendant's discharge to the Plaintiffs' benefit. But that would not make sense in the common fund context. After all, we are not dealing with attorneys who, as Plaintiffs' agents in the common sense of the word, could be expected to seek attorney's fees from their clients. Indeed, most of the clients involved will never meet their attorneys. Rather, the lawyers are entrepreneurs who take a case in the expectation of making money from it...For these reasons we cannot deem the attorney's fees to be a collective benefit for the Plaintiffs, who have been excused from a debt at the Defendant's expense.

*Davis*, 182 F. 3d at 797.

Therefore, in the present case, attorney's fees, if awardable pursuant to a common fund, could not be aggregated to meet the amount in controversy requirement. *See also Kuhnlein v. Dept. of Revenue,* 662 So.2d 309 (Fla. 1995) (recognizing that when there is a class action that results in the creation of a common fund, there is a conflict of interest between class counsel and the interests of the class).

C.     **Injunctive Relief**

Injunctive relief may not be considered in the aggregate if the injunction protects rights that are separate and distinct.  The *Morrison* court rejected "aggregation" of the "value of injunctive relief" for the same reason that it rejected aggregation of compensatory damages – each insured was suing to enforce separate and distinct rights arising from their respective insurance policy with an insurer.  Similarly, in the present case, each landowner class member is suing to enforce its rights as pertains to its property and the respective wells.  Thus, the mere fact that multiple landowners "choose to remedy the alleged violation of their separate and distinct rights through a joint request for injunctive or declaratory relief" is insufficient to allow the claim for injunctive relief to be viewed in the aggregate. *See Morrison,* 228 F.3d at 1272.

**III.     EVEN IF YOUNG HAS ADEQUATELY PLED THE REQUISITE JURISDICTIONAL AMOUNT, THE SUPREME COURT'S DECISION IN *ZAHN* CONCLUSIVELY DEMONSTRATES THAT SUBJECT MATTER JURISDICTION IS NOT PRESENT IN THIS CLASS ACTION LAWSUIT FOR CLASS MEMBERS WHOSE DAMAGES DO NOT EXCEED $75,000.**

In the present case, the Plaintiff has alleged that this Court "has supplemental jurisdiction over the claims of any non-named class members whose damages do not exceed $75,000 pursuant to 28 U.S.C. §1367".  This allegation is contrary to the Supreme

- 21 -

Court precedent which forbids the exercise of supplemental jurisdiction over class members' state law claims that do not reach the jurisdictional amount in controversy. *See Zahn v. International Paper Co.*, 414 U.S. 291, 295 (1973). The *Zahn* court stated that any plaintiff that did not meet the "jurisdictional amount must be dismissed from the case." *Id*. at 300.

Therefore, this Court does not have subject matter jurisdiction over the entire class unless §1367 can be held to overrule *Zahn*. Section 1367 provides as follows:

(a)    Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district Courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within which such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

(b)    In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, jurisdiction under subsection (a) over claims by Plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or as Plaintiffs under Rule 19 of such rules, or seeking to intervene as Plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

Since the subsequent enactment of §1367, circuit courts and a majority of district courts have held that *Zahn* remains good law. The primary justification for upholding *Zahn* is the legislative history which states that "the organization of Section 1367 makes it clear that a distinction is to be made between a narrow approach to diversity cases, as

- 22 -

contrasted with the more expansive scope for other sources of jurisdiction, such as federal

question litigation." *Meritcare Incorporated,* 166 F.3d at 220.  Importantly, the Report

on the Subcommittee states as follows:

> The section is not intended to affect the jurisdictional requirements of 28
> U.S.C. §1332 in diversity only class actions... H.R. Rep. No. 101-734, at
> 29, reprinted in 1990 U.S.C.C.A.N. 6860, 6875.

*See Meritcare Incorporated,* 166 F.3d 214 (3d Cir. 1999), and the cases cited therein. The

Eleventh Circuit has not directly addressed this issue.  However, the Middle District of

Florida has continued to follow *Zahn* since the enactment of §1367.  *See e.g. Boca Ciega*

*Hotel, Inc. v. Bouchard Transportation, Inc.,* F. Supp. 1512 (M.D. Fla. 1994).  Therefore,

based on the authority from other circuits and this Court's adherence to *Zahn,* non-named

class members who do not meet the jurisdictional requisite should be dismissed with

prejudice.

## CONCLUSION

The Plaintiff, Young, cannot aggregate the claims of the entire class for the

purpose of meeting the amount in controversy requirement.  Therefore, the only potential

basis for invoking the jurisdiction of this Court is by Young's individual claim satisfying

the amount in controversy requirement.  However, Young simply cannot satisfy the

amount in controversy requirement as to her individual claim.  The mere allegation that

her potable water well may be contaminated with MTBE with no attendant damage to

land, structures or other improvements thereon, cannot conceivably be sufficient to satisfy

the jurisdictional threshold.  Further, the attorney's fees and punitive damages, even if considered pro-rata, would not have a significant impact on the amount in controversy requirement.  Finally, the claim for injunctive relief either results in no monetary benefit to the Plaintiff or is too speculative and immeasurable to be considered for jurisdictional purposes.

Thus, since the Plaintiff has not alleged, and cannot in good faith allege, the mandatory amount to confer subject matter jurisdiction in this case, Exxon respectfully requests this Court dismiss the instant action with prejudice.  In the alternative, Exxon respectfully requests that this Court direct further inquiry regarding the amount in controversy before allowing this case to proceed.

## RULE 3.01(g) CERTIFICATION

Exxon Mobil's counsel has contacted counsel for Young and has been advised that Young objects to Exxon's Dispositive Motion to Dismiss Complaint, with Prejudice, for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law.

Respectfully submitted,

David B. Weinstein, Esq.
Florida Bar No.:  604410
Marian B. Rush, Esq.
Florida Bar No. 373583
Kimberly S. Mello, Esq.
Florida Bar No. 0002968
**BALES & WEINSTEIN, P.A.**
1715 N. Westshore Boulevard
Suite 190
Tampa, Florida  33607
Telephone:  (813) 287-8777
Telecopier: (813) 287-1507
Attorneys for Defendant,
Exxon Mobil Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Exxon's Dispositive Motion to Dismiss Complaint, with Prejudice, for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law has been furnished to all counsel on the attached list by U. S. Mail, this 20th day of December, 2000.

David B. Weinstein

- 25 -

## SERVICE LIST

Attorneys for Plaintiff:

Richard W. Bell
2522 Valleydale Road, Suite 100
Birmingham, AL  35244
Telephone: (205) 980-4322
Telecopier: (205) 408-1226


Ernest Cory
C. Anthony Graffeo
Cory, Watson, et al.
2131 Magnolia Avenue
Birmingham, AL  35205
Telephone: (205) 328-2200


Elizabeth J.Cabraser
Morris Ratner
Scott P. Nealey
Lauri A. Andrus
Lieff, Cabraser, et al.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000

Dennis C. Reich
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 651-1771

Joe R. Whatley, Jr.
Jack Drake
Whatley Drake
505 North 20th Street
1100 Financial Center
Birmingham, AL  35203
Telephone: (205) 328-9576


Mitchell A. Toups
Weller, Green, McGown & Toups
Nations Bank Building
2615 Calder Street, Suite 400
Beaumont, TX  77701
Telephone: (409) 838-0101


A. Hoyt Rowell (
T. Christopher Tuck
Ness, Motley, et al.
28 Bridgeside Boulevard
Post Office Box 1792
Mt. Pleasant, SC  29465
Telephone: (843) 216-9200

Timothy Crowley
Crowley & Douglas
1301 McKinney, Suite 3500
Houston, TX  77010
Telephone: (713) 622-7271