JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**NOV 1 9 2001**

FILED
CLERK'S OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**VILLAGE OF EAST ALTON,**

Plaintiff,

vs.

**PREMCOR REFINING GROUP INC.,**
**f/k/a/ CLARK REFINING & MARKETING**
**INC., et al.,**

Defendants.

**FILED**

NOV 1 5 2001

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

No. 01-CV-0596-DRH

## MEMORANDUM AND ORDER

HERNDON, District Judge:

### I. Introduction and Background

This matter comes before the Court on the Village of East Alton's motion to remand (Doc. 49). Based on the reasons stated herein, the Court finds that it lacks subject matter jurisdiction and remands the case to the Madison County, Illinois Circuit Court

On July 23, 2001, the Village of East Alton ("the Village") filed a four-count Amended Complaint alleging strict liability, negligence, trespass and nuisance against Premcor Refining Group Inc., f/k/a Clark Refining & Marketing Inc.; Shell Oil Company, Shell Oil Products Company, Conoco, Inc., Amoco Oil Company; BP Amoco Chemical Company, Union Oil Company of California; Tosco Corporation; Thomas Oil Company, Inc., Piassa Motor Fuels, Inc., Thomeczek Oil Company, and DOES 1 through 600, inclusive (Doc. 3). The Village alleges that Defendants contaminated its water supplies with methyl tertiary butyl ether ("MTBE"), a gasoline additive. The

Village seeks compensatory damages needed to investigate, to remediate and to remove MTBE from drinking water supplies, to secure alternative water supplies on an interim basis, to make associated changes to its operating systems and practices and for damage to the Village's water system and rights. Further, the Village seeks punitive damages to punish Defendants and to deter future conduct.

On September 7, 2001, Shell Oil Company and Shell Oil Products Company removed the case to this judicial district based on **28 U.S.C. § 1331**, federal question jurisdiction (Doc. 1).[1] Defendants assert that federal jurisdiction exists because the Village's complaint implicates substantial questions of federal law and regulation arising under the Clean Air Act and regulations promulgated by the United States Environmental Agency. On September 26, 2001, the Village moved to remand this case based on lack of subject matter jurisdiction. The Village argues that no federal question appears on the face of its Amended Complaint and that diversity jurisdiction does not exist. Defendants Shell Oil Company, Shell Oil Products and Union Oil Company object to the motion to remand.[2] Based on the following, the Court finds that the Village's Amended Complaint does not present a substantial federal question, that there is no diversity jurisdiction and that this matter should be remanded to the Madison County, Illinois Circuit Court for disposition[3]

---

[1]    This case was assigned originally to Judge William D. Stiehl. On September 14, 2001, Judge Stiehl recused and the case was reassigned to Judge Michael J. Reagan (Doc 19). After Judge Reagan recused, the case was reassigned to the undersigned district judge on October 15, 2001 (Doc. 68)

[2]    As of this date, no other Defendants have responded to the Village's motion to remand

[3]    On October 19, 2001, the Judicial Panel on Multidistrict Litigation stayed its conditional transfer order issued in this matter to allow the parties to file briefs in opposition to the conditional transfer order. Pursuant to **Panel Rule1.5, 1999 F.R.D.425, 427 (2001)**, this Court retains jurisdiction over this matter and may issue orders until the transfer order becomes final  As of this date, the Court is not aware of a final transfer order.

## II. Analysis

Defendants may remove this case to this court only if the federal district courts would have original jurisdiction over the action  See 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Defendants do not contend that diversity jurisdiction exists  Thus, removal is appropriate only if the Court has federal question jurisdiction over the suit.

The general rule is that a plaintiff is the master of his own complaint and can avoid federal question jurisdiction by pleading exclusively state law claims. *See Caterpillar*, 482 U.S. at 392; *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 103 (1983); *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983, 986 (7th Cir. 2000)  If the plaintiff's claim arises under state law, the mere assertion of federal preemption as a defensive argument-- sometimes called "conflict preemption"--will not confer federal question jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 63-64 (1987); *Franchise Tax Bd. of Cal.*, 463 U.S. at 9-12.  "Complete preemption," on the other hand, is the doctrine which recognizes that federal law may sometimes so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Metropolitan Life*, 481 U.S. at 63-64.

The Village maintains that remand is proper because its Amended Complaint contains only state common law claims.  The Village further maintains that its claims do not require a determination of the sufficiency of the federal law establishing the standards for oxygenates which may serve as fuel additives  Defendants argue that the Village is seeking to have a court (under the guise of state law) declare illegal what has been declared legal by the federal government (Doc 58, p 4)  Specifically, Defendants argue that because the EPA has approved the use of MTBE, the Village's Amended Complaint "implicates 'substantial questions' relating to the requirements of the

3

Clean Air Act and the sufficiency of regulations promulgated by the EPA pursuant to 42 U.S.C. §
7545(k)(1)." (Doc. 58, ps.4-5).  The Court does not agree with Defendants.

The Supremacy Clause of the Constitution provides that the laws of the United
States "shall be the supreme Law of the Land, ... any Thing in the Constitution or Laws of any state
to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.; *see also Gibbons v. Ogden*, 22 U.S.
1, 211 (1824); *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819)   Although seemingly a
"relatively clear and simple mandate," determining whether Congress has preempted state action in
a particular area often leads to considerable debate  *Lorillard Tobacco Co. v. Reilly*, 121 S.Ct.
2404, 2414 (2001).

42 U.S.C. § 7545(c)(4) provides in part.

[N]o State(or political subdivision thereof) may prescribe or attempt
to enforce, for purposes of motor vehicle emission control, any
control or prohibition respecting any characteristic or component of
a fuel or fuel additive in a motor vehicle engine. . .

42 U.S.C. § 7545(c)(4)(A)

Because the Village's claims involve powers that lie at the heart of the states'
traditional police powers--the health and safety of its citizens, *see Medtronic, Inc. v. Lohr*, 518 U.S.
470, 475 (1996); *Exxon Mobil Corp. v. United States Envtl. Prot. Agency*, 217 F.3d 1246, 1255
(9th Cir. 2000), it is assumed that plaintiffs' claims " '[a]re not to be superseded by the Federal Act
unless that [is] the clear and manifest purpose of Congress.'" *Lorillard*, 121 S.Ct. at 2414 (quoting
*California Div. of Labor Standards Enforcement v. Dillingham Constr.*, N.A., Inc., 519 U.S. 316,
325 (1997); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). To determine
whether plaintiffs' claims fall within the scope of this provision, the Court must look to the

4

"[c]ongressional purpose," which is the " 'ultimate touchstone' of our inquiry." **Lorillard, 121 S.Ct. at 2414 (quoting** *Cipollone,* **505 U.S. at 516**). In addition, the scope of the preemption provision must "give effect to a reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." **Lorillard, 121 S.Ct. at 2441**.

       A review of the text of the CAA's preemption provision, as well as the CAA's purpose and legislative history, does not support defendants' position. The purpose of the CAA is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." **42 U.S.C. § 7401(b)(1)**   The RFG Program was enacted to further this purpose. **See** *Oxygenated Fuels Assoc. v. Pataki,* **No. 00-CV-1073, 2001 U.S. Dist. LEXIS 7590, at *3 (N.D.N.Y. May 18, 2001);** *see also American Petroleum Inst. v. United States Envtl. Prot. Agency,* **52 F.3d 1113, 1119 (D.C.Cir.1995) (finding that "[t]he sole purpose of the RFG Program is to reduce air pollution")**. The text of the CAA's preemption provision specifically limits its reach, stating that no State "may prescribe or enforce, for purposes of motor vehicle emission control, any control or prohibition respecting any characteristic or component of a fuel or fuel additive ..." **42 U.S.C. § 7545(c)(4) (emphasis added)**  This limitation is consistent with the purpose of the CAA and RFG Program. Here, the Village's claims are not brought for purposes of regulating motor vehicle emissions control, instead, the claims concern groundwater contamination caused by leaks and spills from gasoline delivery systems of gasoline containing MTBE, and are therefore outside the scope of the preemption provision. **See** *Oxygenated Fuels,* **2001 U.S. Dist. LEXIS 7590, at *10-*13**.

       Further, while members of Congress may have anticipated that MTBE would be used

to meet the oxygenate requirements, as correctly noted by the court in *Oxygenated Fuels*, the legislative history of the 1990 CAA amendments indicates that Congress, through the RFG Program, sought to reduce harmful vehicle emissions in the "larger context of market forces, health and environmental impacts, regional priorities, technological feasibility and other considerations." *Id.* at *18. Indeed, Congress expected that oxygenates would compete in the marketplace and "preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA . " *Id.* at * 20 n.4. Congress' intent to allow some state causes of action is also evidenced by the CAA's citizen suit savings provision, codified at 42 U.S.C. § 7604(e).[4]

The Court finds that federal question jurisdiction does not exist. The Village brought this action pursuant to Illinois state common laws concerning Defendants' contamination of its water supplies by the use of MTBE This concern is not "intertwined" with the primary concern of the CAA and the RFG Program. Further, none of the elements of the Village's claim raise any federal question The Village's claims are not motivated by air pollution concerns. Also, the legislative history of the CAA does not indicate that Congress intended 42 U.S.C. § 7545(c) to be interpreted beyond its literal meaning and that RFG Program does not mandate the use of MTBE *See*

---

[4]    While this savings provision clearly permits claims against persons who violate federal air pollution emissions standards, air permits or administrative orders issued by the EPA, or against the EPA Administrator for failing to take required actions, courts have held that this provision preserves some state common law claims as well. *See, e.g ., Gutierrez v. Mobil Oil Corp.*, 798 F.Supp. 1280, 1282-85 (W.D. Tex. 1992) (finding that the legislative history and the CAA savings provision precluded preemption of plaintiff's tort claims in an action involving a leaking UST). *Ouellette v. Int'l Paper v. Ouellette*, 479 U.S. 481, 492 (1987) (finding that the savings provision of the Clean Water Act–identical to the CAA's savings provision–"negates the inference that Congress 'left no room' for state causes of action").

*Oxygenated Fuels*, 2001 U.S. Dist. LEXIS 7590, at *20. Thus, the Court does not have federal

questions jurisdiction over the Village's common law claims in the Amended Complaint.

### III. Conclusion

Because the Court lacks subject matter jurisdiction. the Court **GRANTS** the Village

of East Alton's motion to remand (Doc. 49). The Court **REMANDS** this cause of action to the

Madison County, Illinois Circuit Court.   The Court **DENIES as moot** the remaining pending

motions (Docs. 60, 69, 71, 73, 77, 78, 85 & 92).

**IT IS SO ORDERED.**

Signed this 'Jth day of ___Nicionbe___, 2001.

**DAVID R. HERNDON**
**United States District Judge**

7