

MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 15 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL Docket No. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *City of Riverside v. Atlantic Richfield Co., et al.,* |
| | ) Case No. EDCV03-1460 RT SGLx (C.D. Cal.) |
| | ) |
| | ) *City of Roseville v. Atlantic Richfield Co., et al.,* |
| | ) Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) |
| | ) |
| **IN RE:** | ) *Silver, et al. v. Alon USA Energy, Inc., et al.,* Case |
| | ) No. 03 CV2408 J(RBB) (S.D. Cal.) |
| **METHYL TERTIARY BUTYL ETHER** | ) |
| **PRODUCTS LIABILITY LITIGATION** | ) *Orange County Water District v. Unocal* |
| | ) *Corporation, et al.,* Case No. SACV03-1742 |
| | ) JVS(ANX) (C.D. Cal.) |
| | ) |
| | ) *People of the State of California, et al. v. Atlantic* |
| | ) *Richfield Co., et al.,* Case No. CIVS-03-2653 GEB |
| | ) DAD (E.D. Cal.) |
| | ) |
| | ) *Quincy Community Services District v. Atlantic* |
| | ) *Richfield Co., et al.,* Case No. CIVS-03-2582 WBS |
| | ) DAD (E.D. Cal.) |
| | ) |
| | ) **CERTAIN DEFENDANTS' CONSOLIDATED** |
| | ) **OPPOSITION TO PLAINTIFFS' JOINT** |
| | ) **MOTION TO VACATE CONDITIONAL** |
| | ) **TRANSFER ORDER (CTO-5) AND BRIEF IN** |
| | ) **SUPPORT THEREOF** |

OFFICIAL FILE COPY

IMAGED APR 16 '04

## CERTAIN DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5) AND BRIEF IN SUPPORT THEREOF

Pursuant to Rule 7.1(b) of the Rules of Procedure Of The Panel On Multidistrict Litigation, the undersigned defendants file this Certain Defendants' Consolidated Opposition To Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) And Brief In Support Thereof on April 12, 2004 in Docket No. 1358 *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* ("Plaintiffs' Joint Motion"). This opposition pertains to the actions captioned *City of Riverside v. Atlantic Richfield Co., et al.*, Case No. EDCV03-1460 RT SGLx (C.D. Cal.) ("*Riverside*"), *City of Roseville v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) ("*Roseville*"), *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2582 WBS DAD (E.D. Cal.) ("*Quincy*"), *Orange County Water District v. Unocal Corporation, et al.*, Case No. SACV03-1742 JVS(ANX) (C.D. Cal.) ("*Orange County*"), *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2653 GEB DAD (E.D. Cal.) ("*People*"), and *Silver, et al. v. Alon USA Energy, Inc., et al.*, Case No. 03 CV2408 J(RBB) (S.D. Cal.) ("*Silver*"), which are tag-along cases in the schedule of actions subject to CTO-5, issued by the Panel on February 25, 2004.

1.     With respect to Paragraph One of Plaintiffs' Joint Motion, the undersigned defendants admit that *People* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the Sacramento County Plaintiffs (as that term is defined in Paragraph One) have filed a motion to vacate CTO-5 as it applies to the *People* action. The undersigned defendants oppose the Sacramento County Plaintiffs' motion and state that the *People* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

2.     With respect to Paragraph Two of Plaintiffs' Joint Motion, the undersigned defendants admit that *Orange County* is identified as a tag-along case in schedule of

2

actions subject to CTO-5 and that the Orange County Water District has filed a motion to vacate CTO-5 as it applies to the *Orange County* action. The undersigned defendants oppose the Orange County Water District's motion and state that the *Orange County* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

3.   With respect to Paragraph Three of Plaintiffs' Joint Motion, the undersigned defendants admit that *Riverside* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the City of Riverside has filed a motion to vacate CTO-5 as it applies to the *Riverside* action. The undersigned defendants oppose the City of Riverside's motion and state that the *Riverside* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

4.   With respect to Paragraph Four of Plaintiffs' Joint Motion, the undersigned defendants admit that *Quincy* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the Quincy Community Services District has filed a motion to vacate CTO-5 as it applies to the *Quincy* action. The undersigned defendants oppose the Quincy Community Services District's motion and state that the *Quincy* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

5.   With respect to Paragraph Five of Plaintiffs' Joint Motion, the undersigned defendants admit that *Roseville* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the City of Roseville has filed a motion to vacate CTO-5 as it applies to the *Roseville* action. The undersigned defendants oppose the City of Roseville's motion and state that the *Roseville* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

6.      With respect to Paragraph Six of Plaintiffs' Joint Motion, the undersigned defendants admit that *Silver* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the Silver Plaintiffs (as that term is defined in Paragraph Six) have filed a motion to vacate CTO-5 as it applies to the *Silver* action.  The undersigned defendants oppose the Silver Plaintiffs' motion and state that the *Silver* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

7.      With respect to Paragraph Seven of Plaintiffs' Joint Motion, the undersigned defendants deny all averments made by the Plaintiffs.  The undersigned defendants state that the *Riverside*, *Roseville*, *Quincy*, *Orange County*, *People*, and *Silver* actions are clearly tag-along case that are appropriately transferred to MDL 1358 because:  (i) *Riverside*, *Roseville*, *Quincy*, *Orange County*, *People*, and *Silver* raise the same common questions of fact as the other cases transferred to MDL 1358; (ii) transferring *Riverside*, *Roseville*, *Quincy*, *Orange County*, *People*, and *Silver* will serve the convenience of the parties and witnesses and prevent duplicative discovery; and (iii) giving effect to CTO-5 is necessary for the efficient conduct of the litigation, avoiding inconsistent pretrial rulings and judicial economy.   Moreover, the undersigned defendants state that all of the Plaintiffs' arguments in their Joint Motion and accompanying brief are without merit.

8.      With respect to Paragraph Eight of Plaintiffs' Joint Motion, the undersigned defendants admit that the Plaintiffs filed the documents it identifies.   The undersigned defendants further state that in addition to this Opposition, they have separately filed today Certain Defendants' Consolidated Response Opposing All Motions To Vacate Conditional Transfer Order (CTO-5) ("Consolidated Response").  The undersigned defendants' Consolidated Response responds to (i) Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5)

4

filed March 26, 2004, (ii) the People of the State of California's Motion To Vacate Conditional

Transfer Order filed on or after March 22, 2004, and (iii) Motion of Defendants Fuel Star, Inc.

and Blue Star Petroleum, Inc. To Vacate Conditional Transfer Order No. 5 filed on or after

March 24, 2004.  In addition, the undersigned defendants have separately filed today Certain

Defendants' Statement Of Reasons Why Oral Argument Should Be Heard Regarding All

Motions To Vacate Conditional Transfer Order (CTO-5).

WHEREFORE, certain defendants respectfully requests that the Panel:

A.      Transfer the *Riverside*, *Roseville*, *Quincy*, *Orange County*, *People*, and *Silver*

actions, along with all other actions listed in CTO-5, to the United States District Court for the

Southern District of New York for consolidated proceedings before the MDL 1358 Court

pursuant to 28 U.S.C. § 1407, the Panel's October 10, 2000 transfer order creating MDL 1350,

the Panel's CTO-5 and the MDL 1358 Court's December 23, 2003 Order.

B.      Schedule oral argument on Plaintiffs' Joint Motion.

C.      Deny Plaintiffs' request for relief in its entirety.

April 15, 2004                          Respectfully submitted,

                                        _____
                                        J. Andrew Langan
                                        Mark S. Lillie
                                        Wendy L. Bloom
                                        R. Chris Heck
                                        KIRKLAND & ELLIS LLP
                                        200 East Randolph Drive
                                        Chicago, Illinois  60601-6636
                                        312-861-2000
                                        312-861-2200 (Facsimile)

                                        Matthew T. Heartney
                                        Lawrence Allen Cox
                                        ARNOLD & PORTER LLP
                                        777 South Figueroa Street, 44th Floor

Los Angeles, CA 90017-5844
(213) 243-4000
(213) 243-4199 (Facsimile)

Attorneys for Defendants Atlantic Richfield Company
and BP Products North America Inc. (and affiliated
companies named as Defendants) (join in opposing
Motions by *Silver*, *Riverside*, *Roseville*, *Orange
County*, *People* and *Quincy* Plaintiffs)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Colleen P. Doyle
Diana Pfeffer Martin
BINGHAM McCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106
(213) 680-6400
(213) 680-6499 (Facsimile)

Attorneys for Defendants ExxonMobil  Corporation
(joins in opposing Motions of *Riverside*, *Orange
County* and *People* Plaintiffs), Mobil Corporation
(joins in opposing Motion of *Orange County*
Plaintiff), Tesoro Refining and Marketing Company
(joins in opposing Motions of *Quincy*, *Riverside*,
*Roseville* and *People* Plaintiffs), Tesoro Petroleum
Corporation (joins in opposing Motion of *Silver*
Plaintiffs), Tesoro Refining and Marketing Company,
Inc. f/k/a Tesoro West Coast Crown Central
Petroleum Corporation (joins in opposing Motion of
*Silver* Plaintiffs)

Ben M. Krowicki
Rebecca L. Bouchard
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103

(860) 240-2842
(860) 240-2818 (facsimile)

Attorneys for Defendant Crown Central Petroleum
Corp. (joins in opposing Motion by *Silver* Plaintiffs)

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600
(312) 692-1718 (Facsimile)

Attorneys for Defendant CITGO Petroleum
Corporation (joins in opposing Motions by *Silver* and
*People* Plaintiffs)

Alan J. Hoffman
Laurence S. Shtasel
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 832-5505 (Facsimile)

Attorneys for Defendants Lyondell Chemical
Company, individually and formerly known as
Lyondell Petrochemical Company and formerly
known as ARCO Chemical Company (join in
opposing Motions of *Silver*, *Riverside*, *Roseville*,
*Orange County*, *People*, and *Quincy* Plaintiffs)

Steven L. Leifer
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 639-7700
(202) 585-1040 (Facsimile)

Attorneys for Defendants Marathon Ashland
Petroleum LLC and Marathon Oil Corporation (join
in opposing Motion of *Silver* Plaintiffs)

Richard E. Wallace, Jr.

Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Chevron U.S.A., Inc. (joins
in opposing Motions of *Riverside*, *Roseville*, *Silver*,
*Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Chevron Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People), Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People) and Texaco
Inc. (joins in opposing Motion of *Silver* Plaintiffs)

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Equilon Enterprises LLC
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Motiva Enterprises
LLC (joins in opposing Motion of *Silver* Plaintiffs),
Shell Oil Company (joins in opposing Motions of
*Riverside*, *Roseville*, *Silver*, *Orange County*, *People*
and *Quincy* Plaintiffs, including Motion by People),
Shell Oil Products Company LLC (joins in opposing
Motion of *Silver* Plaintiffs), Shell Oil Products US
(joins in opposing Motion of *Silver* Plaintiffs), and
Shell Petroleum, Inc. (joins in opposing Motion of
*Silver* Plaintiffs)

Tracie J. Renfroe
BRACEWELL & PATTERSON, L.L.P.
Pennzoil South Tower
711 Louisiana, Suite 2900
Houston, TX 77002

(713) 221-1404
(713) 221-2123 (Facsimile)

Attorneys for Defendants Valero Energy Corporation
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *People*, and *Quincy* Plaintiffs); Valero
Refining Company California (joins in opposing
Motions by *Riverside*, *Orange County*, and *Quincy*
Plaintiffs); Valero Marketing and Supply Company,
Valero Refining and Marketing Company, Valero
Refining Company Louisiana, Valero Refining
Company New Jersey, Valero Refining Company
Texas, and Valero-Colorado Refining Company (join
in opposing Motion of *Silver* Plaintiffs)

Mindy G. Davis
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
(202) 783-0800
(202) 383-6610 (Facsimile)

Attorneys for Defendants El Paso Corporation and El
Paso CGP Company (join in opposing Motion of
*Silver* Plaintiffs)

John S. Guttman
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 789-6020
(202) 789-6190 (facsimile)

Attorneys for Defendants Sunoco Inc. and Sunoco
Inc. (R&M) (join in opposing Motion of *Silver*
Plaintiffs) (Sun Oil Company and Sun Refining and
Marketing, also named as defendants in *Silver*, are
historic corporate names and no longer exist as
separate entities)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER**<br><br><br>**PRODUCTS LIABILITY LITIGATION** | ) **MDL Docket No. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *Quincy Community Services District v. Atlantic*<br>) *Richfield Co., et al.*, Case No. CIVS-03-2582 WBS<br>) DAD (E.D. Cal.)<br>)<br>)<br>)<br>)<br>) **CERTAIN DEFENDANTS' CONSOLIDATED**<br>) **OPPOSITION TO DEFENDANTS FUEL**<br>) **STAR, INC. AND BLUE STAR PETROLEUM,**<br>) **INC.'S MOTION TO VACATE**<br>) **CONDITIONAL TRANSFER ORDER (CTO-5)**<br>) **AND BRIEF IN SUPPORT THEREOF**<br>) |

**CERTAIN DEFENDANTS' CONSOLIDATED OPPOSITION
TO DEFENDANTS FUEL STAR, INC. AND BLUE STAR
PETROLEUM, INC.'S MOTION TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-5) AND BRIEF IN SUPPORT THEREOF**

Pursuant to Rule 7.1(b) of the Rules of Procedure Of The Panel On Multidistrict Litigation, the undersigned defendants file this Certain Defendants' Consolidated Opposition To Defendants Fuel Star, Inc. And Blue Star Petroleum, Inc.'s Motion To Vacate Conditional Transfer Order (CTO-5) And Brief In Support Thereof on April 12, 2004 in Docket No. 1358 *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* ("Fuel Star/Blue Star's Motion"). This opposition pertains to the action captioned *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2582 WBS DAD (E.D. Cal.) ("*Quincy*"), which is a tag-along case in the schedule of actions subject to CTO-5, issued by the Panel on February 25, 2004.

1. With respect to Paragraph One of Fuel Star/Blue Star's Motion, the undersigned defendants admit that *Quincy* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the Fuel Star, Inc. and Blue Star Petroleum, Inc. (collectively, "Fuel Star/Blue Star") are defendants in the *Quincy* action.

2. With respect to Paragraph Two of Fuel Star/Blue Star's Motion, the undersigned defendants admit that Fuel Star/Blue Star has filed a motion to vacate CTO-5 as it applies to the *Quincy* action. The undersigned defendants oppose Fuel Star/Blue Star's motion and state that the *Quincy* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407. The undersigned defendants deny all other averments made in Paragraph Two of Fuel/Blue Star's Motion. The undersigned defendants state that the *Quincy* action is clearly a tag-along case that is appropriately transferred to MDL 1358 because: (i) *Quincy* raises the same common

questions of fact as the other cases transferred to MDL 1358; (ii) transferring *Quincy* will serve the convenience of the parties and witnesses and prevent duplicative discovery; and (iii) giving effect to CTO-5 is necessary for the efficient conduct of the litigation, avoiding inconsistent pretrial rulings and judicial economy.   Moreover, the undersigned defendants state that all of the arguments in Fuel Star/Blue Star's Motion and accompanying brief are without merit.

3.   With respect to Paragraph Three of Fuel Star/Blue Star's Motion, the undersigned defendants deny all averments made by Fuel Star/Blue Star.  The undersigned defendants state that the *Quincy* action is clearly a tag-along case that is appropriately transferred to MDL 1358 for the three reasons identified above in Paragraph Two.  Moreover, the undersigned defendants state that all of the arguments in Fuel Star/Blue Star's Motion and accompanying brief are without merit.

4.   With respect to Paragraph Three of Fuel Star/Blue Star's Motion, the undersigned defendants deny all averments made by Fuel Star/Blue Star.  The undersigned defendants state that the *Quincy* action is clearly a tag-along case that is appropriately transferred to MDL 1358 for the three reasons identified above in Paragraph Two.  Moreover, the undersigned defendants state that all of the arguments in Fuel Star/Blue Star's Motion and accompanying brief are without merit.

5.   With respect to Paragraph Eight of Fuel Star/Blue Star's Motion, the undersigned defendants admit that Fuel Star/Blue Star filed the documents it identifies.  The undersigned defendants further state that in addition to this Opposition, they have separately filed today Certain Defendants' Consolidated Response Opposing All Motions To Vacate Conditional Transfer

Order (CTO-5) ("Consolidated Response").   The undersigned defendants' Consolidated Response responds to (i) Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) filed March 26, 2004, (ii) the People of the State of California's Motion To Vacate Conditional Transfer Order filed on or after March 22, 2004, and (iii) Motion of Defendants Fuel Star, Inc. and Blue Star Petroleum, Inc. To Vacate Conditional Transfer Order No. 5 filed on or after March 24, 2004.   In addition, the undersigned defendants separately filed today Certain Defendants' Statement Of Reasons Why Oral Argument Should Be Heard Regarding All Motions To Vacate Conditional Transfer Order (CTO-5).

WHEREFORE, the undersigned defendants respectfully requests that the Panel:

A.    Transfer the *Quincy* action, along with all other actions listed in CTO-5, to the United States District Court for the Southern District of New York for consolidated proceedings before the MDL 1358 Court pursuant to 28 U.S.C. § 1407, the Panel's October 10, 2000 transfer order creating MDL 1350, the Panel's CTO-5 and the MDL 1358 Court's December 23, 2003 Order.

B.    Schedule oral argument on Fuel Star/Blue Star's Motion.

C.    Deny Fuel Star/Blue Star's request for relief in its entirety.

April 15, 2004                                    Respectfully submitted,


_____
J. Andrew Langan
Mark S. Lillie
Wendy L. Bloom
R. Chris Heck
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

4

312-861-2000
312-861-2200 (Facsimile)

Matthew T. Heartney
Lawrence Allen Cox
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
(213) 243-4199 (Facsimile)

Attorneys for Defendants Atlantic Richfield Company
and BP Products North America Inc. (and affiliated
companies named as Defendants)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Colleen P. Doyle
Diana Pfeffer Martin
BINGHAM McCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106
(213) 680-6400
(213) 680-6499 (Facsimile)

Attorneys for Defendant Tesoro Refining and
Marketing Company

Alan J. Hoffman
Laurence S. Shtasel
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 832-5505 (Facsimile)

Attorneys for Defendants Lyondell Chemical

Company, individually and formerly known as
Lyondell Petrochemical Company and formerly
known as ARCO Chemical Company

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Chevron U.S.A., Inc.,
Chevron Texaco Corporation and Texaco Corporation

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Equilon Enterprises LLC,
and Shell Oil Company

Tracie J. Renfroe
BRACEWELL & PATTERSON, L.L.P.
Pennzoil South Tower
711 Louisiana, Suite 2900
Houston, TX 77002
(713) 221-1404
(713) 221-2123 (Facsimile)

Attorneys for Defendants Valero Energy Corporation
and Valero Refining Company California

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL Docket No. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| **IN RE:** | ) *People of the State of California, et al. v. Atlantic* |
| | ) *Richfield Co., et al.*, Case No. CIVS-03-2653 GEB |
| **METHYL TERTIARY BUTYL ETHER** | ) DAD (E.D. Cal.) |
| **PRODUCTS LIABILITY LITIGATION** | ) |
| | ) **CERTAIN DEFENDANTS' CONSOLIDATED** |
| | ) **OPPOSITION TO THE PEOPLE OF THE** |
| | ) **STATE OF CALIFORNIA'S MOTION TO** |
| | ) **VACATE CONDITIONAL TRANSFER** |
| | ) **ORDER (CTO-5) AND BRIEF IN SUPPORT** |
| | ) **THEREOF** |

### CERTAIN DEFENDANTS' CONSOLIDATED OPPOSITION TO THE PEOPLE OF THE STATE OF CALIFORNIA'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5) AND BRIEF IN SUPPORT THEREOF

Pursuant to Rule 7.1(b) of the Rules of Procedure Of The Panel On Multidistrict

Litigation, the undersigned defendants file this Certain Defendants' Consolidated Opposition To

The People Of The State Of California's Motion To Vacate Conditional Transfer Order (CTO-5)

And Brief In Support Thereof on April 12, 2004 in Docket No. 1358 *In re Methyl Tertiary Butyl*

*Ether ("MTBE") Products Liability Litigation* ("People's Motion"). This opposition pertains to

the action captioned *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case

No. CIVS-03-2653 GEB DAD (E.D. Cal.) ("*People*"), which is a tag-along case in the schedule

of actions subject to CTO-5, issued by the Panel on February 25, 2004.

1.     With respect to Paragraph One of the People's Motion, the undersigned defendants admit that *People* is identified as a tag-along case in schedule of actions subject to CTO-5 and that the People of the State of California ("People") have filed a motion to vacate CTO-5 as its applies to the *People* action.  The undersigned defendants oppose the People of the State of California's motion and state that the *People* action satisfies the criteria for transfer pursuant to 28 U.S.C. § 1407.

2.     With respect to Paragraph Two of the People's Motion, the undersigned defendants admit that the People filed the documents it identifies.  The undersigned defendants further state that in addition to this Opposition, they have separately filed today Certain Defendants' Consolidated Response Opposing All Motions To Vacate Conditional Transfer Order (CTO-5) ("Consolidated Response").   The undersigned defendants' Consolidated Response responds to (i) Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) filed March 26, 2004, (ii) the People of the State of California's Motion To Vacate Conditional Transfer Order filed on or after March 22, 2004, and (iii) Motion of Defendants Fuel Star, Inc. and Blue Star Petroleum, Inc. To Vacate Conditional Transfer Order No. 5 filed on or after March 24, 2004.  In addition, the undersigned defendants have separately filed today Certain Defendants' Statement Of Reasons Why Oral Argument Should Be Heard Regarding All Motions To Vacate Conditional Transfer Order (CTO-5).

3.     The undersigned defendants further state that *People* is clearly a tag-along case that is appropriately transferred to the MDL 1358 Court because:  (i) the same common questions of fact are raised in *People* as are raised in the other cases transferred to the MDL 1358 Court; (ii) transferring *People* to the MDL 1358 Court will serve the convenience of the parties

2

and witnesses and prevent duplicative discovery; and (iii) giving effect to CTO-5 is necessary for the efficient conduct of the litigation, avoiding inconsistent pretrial rulings and judicial economy.

WHEREFORE, certain defendants respectfully requests that the Panel:

A.    Transfer the *People* action, along with all other actions listed in CTO-5, to the United States District Court for the Southern District of New York for consolidated proceedings before the MDL 1358 Court pursuant to 28 U.S.C. § 1407, the Panel's October 10, 2000 transfer order creating MDL 1350, the Panel's CTO-5 and the MDL 1358 Court's December 23, 2003 Order.

B.    Schedule oral argument on the People's motion.

C.    Deny the People's request for relief in its entirety.

April 15, 2004                              Respectfully submitted,

                                           _____
                                           J. Andrew Langan
                                           Mark S. Lillie
                                           Wendy L. Bloom
                                           R. Chris Heck
                                           KIRKLAND & ELLIS LLP
                                           200 East Randolph Drive
                                           Chicago, Illinois  60601-6636
                                           312-861-2000
                                           312-861-2200 (Facsimile)

                                           Matthew T. Heartney
                                           Lawrence Allen Cox
                                           ARNOLD & PORTER LLP
                                           777 South Figueroa Street, 44th Floor
                                           Los Angeles, CA 90017-5844
                                           (213) 243-4000
                                           (213) 243-4199 (Facsimile)

Attorneys for Defendants Atlantic Richfield Company
and BP Products North America Inc. (and affiliated
companies named as Defendants)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Colleen P. Doyle
Diana Pfeffer Martin
BINGHAM McCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106
(213) 680-6400
(213) 680-6499 (Facsimile)

Attorneys for Defendants ExxonMobil Corporation,
and Tesoro Refining and Marketing Company

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600
(312) 692-1718 (Facsimile)

Attorneys for Defendant CITGO Petroleum
Corporation

Alan J. Hoffman
Laurence S. Shtasel
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 832-5505 (Facsimile)

Attorneys for Defendants Lyondell Chemical
Company, individually and formerly known as
Lyondell Petrochemical Company and formerly
known as ARCO Chemical Company

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Chevron U.S.A., Inc.,
Chevron Texaco Corporation and Texaco Corporation

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Equilon Enterprises LLC
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Motiva Enterprises
LLC (joins in opposing Motion of *Silver* Plaintiffs),
Shell Oil Company (joins in opposing Motions of
*Riverside*, *Roseville*, *Silver*, *Orange County*, *People*
and *Quincy* Plaintiffs, including Motion by People),
Shell Oil Products Company LLC (joins in opposing
Motion of *Silver* Plaintiffs), Shell Oil Products US
(joins in opposing Motion of *Silver* Plaintiffs), and
Shell Petroleum, Inc. (joins in opposing Motion of
*Silver* Plaintiffs)

Tracie J. Renfroe
BRACEWELL & PATTERSON, L.L.P.
Pennzoil South Tower
711 Louisiana, Suite 2900
Houston, TX 77002
(713) 221-1404
(713) 221-2123 (Facsimile)

Attorneys for Defendant Valero Energy Corporation

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | ) **MDL Docket No. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *City of Riverside v. Atlantic Richfield Co., et al.,*<br>) Case No. EDCV03-1460 RT SGLx (C.D. Cal.)<br>)<br>) *City of Roseville v. Atlantic Richfield Co., et al.,*<br>) Case No. CIVS-03-2601 LKK GGH (E.D. Cal.)<br>)<br>) *Silver, et al. v. Alon USA Energy, Inc., et al.,* Case<br>) No. 03 CV2408 J(RBB) (S.D. Cal.)<br>)<br>) *Orange County Water District v. Unocal*<br>) *Corporation, et al.,* Case No. SACV03-1742<br>) JVS(ANX) (C.D. Cal.)<br>)<br>) *People of the State of California, et al. v. Atlantic*<br>) *Richfield Co., et al.,* Case No. CIVS-03-2653 GEB<br>) DAD (E.D. Cal.)<br>)<br>) *Quincy Community Services District v. Atlantic*<br>) *Richfield Co., et al.,* Case No. CIVS-03-2582 WBS<br>) DAD (E.D. Cal.)<br>)<br>) **CERTAIN DEFENDANTS' CONSOLIDATED**<br>) **RESPONSE OPPOSING ALL MOTIONS TO**<br>) **VACATE CONDITIONAL TRANSFER**<br>) **ORDER (CTO-5)**<br>) |

## CERTAIN DEFENDANTS' CONSOLIDATED RESPONSE OPPOSING ALL MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

The undersigned defendants support this Panel's Conditional Transfer Order (CTO-5), request that all motions to vacate any part of CTO-5 be denied, and urge that the *City of Riverside v. Atlantic Richfield Co., et al.*, Case No. EDCV03-1460 RT SGLx (C.D. Cal.) ("*Riverside*"), *City of Roseville v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) ("*Roseville*"), *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2582 WBS DAD (E.D. Cal.) ("*Quincy*"), *Orange County Water District v. Unocal Corporation, et al.*, Case No. SACV03-1742 JVS(ANX) (C.D. Cal.) ("*Orange County*"), *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2653 GEB DAD (E.D. Cal.) ("*People*"), and *Silver, et al. v. Alon USA Energy, Inc., et al.*, Case No. 03 CV2408 J(RBB) (S.D. Cal.) ("*Silver*") cases (collectively, the "Objected-To Actions") be transferred to MDL 1358.

Although the Panel already has transferred almost forty (40) MTBE actions to MDL 1358 over the past two months, the People of California ("People") and various other plaintiffs ("Plaintiffs"), as well as two affiliated defendant ("Fuel Star/Blue Star") in *Quincy*, have filed motions to vacate the transfer of the Objected-To Actions.[1] Each of these six cases raises the same common questions of fact -- e.g., what defendants knew and represented about MTBE, whether gasoline with MTBE is a defective product, and whether plaintiffs' water was contaminated by MTBE -- that led to the creation of MDL 1358 in 2000, and also to the recent transfer of almost forty MTBE cases to the MDL 1358 Court. The parties to these six MTBE

---

[1] After joining in Plaintiffs' Joint Motion To Vacate CTO-5, City of Elk Grove -- a plaintiff in the *People* case -- voluntarily dismissed its action against all defendants on March 26, 2004.

actions should receive the same benefits of convenience, justice, and efficiency resulting from centralized proceedings under a judge experienced in MTBE litigation as the parties to the forty MTBE actions already transferred to MDL 1358.

The objectors assert that they plead different legal theories in arguing for remand to state court, that common discovery is "largely completed," and that some unique issues exist in addition to the common issues. As the Panel well knows, objectors' arguments repeatedly have been rejected as a basis for denying multi-district treatment. Indeed, one of the most recent such rejections was in the very decision that established MDL 1358. Therefore, these six MTBE cases should join the other twenty-four actions listed in CTO-5 in being transferred to the Southern District of New York for consolidated proceedings.

## BACKGROUND

### I.      Creation Of MDL 1358.

The Panel created MDL 1358 on October 10, 2000 to centralize two putative class actions brought by private well owners. (*MTBE* Transfer Order, attached as Exh. A)  Plaintiffs in one of the cases, *England v. Amoco Oil Co.*, Nos. 00-370-WDS, 00-371-DRH, sought to represent well owners in eighteen states, including California where all six of the Objected-To actions originate. The Panel found that the actions involved two common questions of fact: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (*Id.*)  The Panel explained that centralization would be more convenient for parties and witnesses, promote justice and efficiency, avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. (*Id.*)

In reaching these conclusions, the Panel explicitly rejected the central argument now resurrected by the objectors here: that individual factual questions for each location weighed against Section 1407 proceedings. (*Id.* at 1-2.) Specifically, the Panel found that consolidating the cases before a single judge would have the "salutary effect" of allowing coordination of both non-common and common issues. (*Id.*) Pursuant to the Transfer Order, Judge Scheindlin of the Southern District of New York became the transferee judge for the MTBE cases.

## II.      Prior Proceedings In MTBE 1358.

Starting in 2000, Judge Scheindlin spent the next three years managing MDL 1358, becoming extensively familiar with the facts and legal theories presented in MTBE cases. The MDL 1358 Court ruled on various substantive motions, including defendants' motions to dismiss and plaintiffs' motion for class certification. Because *England* included California putative class members, the MDL 1358 Court issued opinions interpreting California law on collective liability, nuisance, and other subjects. *E.g.*, *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 620-22, 627 n.1 (S.D.N.Y. 2001). Judge Scheindlin also oversaw class certification and other discovery matters, including creation of a document depository in New York. Judge Scheindlin entered a document preservation order, oversaw electronic and paper document production, and had the parties create an MDL 1358 website. In short, the MDL 1358 Court has extensive expertise managing all aspects of MTBE cases like the Objected-To Actions.

## III.     The New Wave Of MTBE Cases, Including The Objected-To Actions.

Beginning in Fall 2003, a new round of MTBE cases was filed in state courts throughout the nation, seeking to impose conflicting state standards on refiners' use of MTBE in gasoline to satisfy federal requirements. As of today, almost sixty new cases in 15 different states have been filed since September 30, 2003. In the large majority of these cases, the

4

plaintiffs are municipalities or water authorities instead of private well owners. Though the plaintiffs have changed, the allegations and claims remain the same, and the new wave of MTBE cases involve many of the same plaintiffs' counsel as in the original MDL 1358 actions. Most of the complaints are virtually identical to each other and bear a startling resemblance to the Consolidated Master Complaint filed in MDL 1358, although the pleadings are not identical and have some differences. The thrust of each complaint is that gasoline with MTBE is a defective product, although plaintiffs also assert nuisance, trespass, negligence and other claims. All of the complaints allege that plaintiffs' water supplies have been (or are threatened with becoming) contaminated by gasoline with MTBE and that the defendants misrepresented the nature of MTBE.

Because this wave of disperse state court actions threatened to disrupt the nation's gasoline supply through a patchwork of potentially conflicting state regimes, defendants began removing the cases to federal court with the goal of having a single federal court issue uniform rulings. As a result of removing this large number of dispersed actions, MTBE cases were pending in 20 different federal district courts before this Panel began issuing CTOs. Immediately after these removals, defendants began filing tag-along notices alerting the Panel that the new actions were subject to transfer pursuant to the October 2000 Order in MDL 1358.[2] Each of the cases in this new wave of MTBE actions is in the earliest stages of litigation. The only substantive filings in each case are the complaints and remand motions. No answers or motions to dismiss have been filed, and activity has focused on removal and stays pending decision on transfer to the MDL 1358 Court. The same is true for the Objected-To Actions.

---

[2] MDL 1358 became temporarily inactive in the Southern District of New York after the Court denied the private-well-owner plaintiffs' motion for class certification on July 16, 2002.

Judge Scheindlin signaled her approval of the proposed MDL transfers at a December 19, 2003 hearing concerning the scheduling for plaintiffs' motions to remand in two MTBE cases that had been removed to the Southern District of New York and assigned directly to Judge Scheindlin. At that hearing, counsel for the vast majority of plaintiffs in the new MTBE cases stipulated to the immediate transfer of the cases they controlled to MDL 1358, and further agreed not to oppose any CTOs issued by the Panel to accomplish that goal. (12/19/03 Tr. at 26-28, attached as Exh. B) Judge Scheindlin, acting in her capacity as the MDL 1358 Court, issued an Order finding "that it is appropriate for the issues presented by these [remand] motions in these and all similar removed actions, wherever filed, to be heard and decided by this Court." (12/23/03 Order, attached as Exh. C)

Immediately after the hearing, Judge Scheindlin sent a copy of her Order to each of the federal courts where the other forty-seven MTBE matters were pending. Judge Scheindlin also contacted each of those courts to request that the MTBE actions (where were identified on a Schedule attached to the Order) be stayed pending a transfer decision by this Panel. That Schedule included each of the Objected-To Actions at issue here. (*Id.* at 2) As Plaintiffs and People acknowledge, per Judge Scheindlin's Order and request, all of the Objected-To Actions except *Silver* have been stayed by the transferor courts pending action by this Panel, with a hearing on *Silver* set for May 7, 2004. (Plaintiffs Br. at 11; People Br. at 2) For this Panel's convenience, these stay orders are attached hereto. (Exh. D, Civil Minutes for *Orange County* and *Riverside* (Feb. 23, 2004); Exh. E, *Quincy* Stay Order (Jan. 27, 2004); Exh. F, *Quincy* Reconsideration Order (Mar. 24, 2004); Exh. G, *People* Stay Order (Feb. 5, 2004))

Judge Scheindlin's Order entered on December 23, 2003 also provided for an expedited briefing schedule on remand motions in none (9) MTBE cases removed directly to the

Southern District of New York and assigned to Judge Scheindlin. (Exh. C, 12/23/03 Order at 1) The removal notices and remand motions in those 9 cases are quite similar to those filed in most of the other MTBE actions pending in federal courts throughout the nation. Indeed, Plaintiffs' counsel in the Objected-To Actions,[3] Victor Sher, has voluntarily appeared on behalf of his clients in the proceedings in Judge Scheindlin's court, submitting several lengthy letters making extensive legal arguments to Judge Scheindlin.

On February 5, 2004, this Panel issued CTO-4 covering sixteen MTBE cases. There was no objection to transferring thirteen cases, which are now on their way to the MDL 1358 Court. Plaintiffs in two cases (represented by Mr. Sher), and two defendants that are affiliated companies in a third case, objected to this conditional transfer and filed motions to vacate CTO-4. Thirty defendants filed a consolidated response opposing all three motions to vacate CTO-4, and urging that the three cases be transferred to the MDL 1358 Court along with all other actions listed on CTO-4. A few weeks later the Panel issued CTO-5 identifying thirty (30) additional MTBE actions to be transferred, twenty-four of which were not objected to and so also are headed for MDL 1358. (Exh. H, CTO-5) Thus, currently almost forty MTBE cases will have coordinated pre-trial proceedings in MDL 1358, with more on the way. The plaintiffs in most of the cases transferred to MDL 1358 without objection are represented by the Baron & Budd firm, which is co-counsel to Mr. Sher in the *Riverside*, *Roseville*, *Quincy*, *People*, and *Silver* cases.

On March 16, 2004, Judge Scheindlin denied plaintiffs' motions to remand the 9 New York cases, holding that defendants established federal officer jurisdiction supporting

---

[3] Mr. Sher does not represent the People of the State of California in the *People* action, but does represent all the other plaintiffs in the Objected-To Actions.

removal under 28 U.S.C. § 1442.  In so holding, the Court found that the defendants had presented a colorable federal defense (an element of federal officer jurisdiction) that federal regulations effectively required the use of MTBE and so preempted state law.  (3/16/04 Remand Opinion at 24-25, attached as Exh. I)  Judge Scheindlin observed that, since the Court's prior MDL 1358 holding that preemption was not a basis for dismissing the claims under FRCP 12(b)(6), "several courts have concluded that state law claims involving MTBE contamination *are* conflict preempted." (*Id.* at 24, emphasis in original)  The Court also noted that the MTBE "allegations now before me are somewhat different than the allegations that were before me in *MTBE I*," (*id.* at 25), suggesting that the Court's previous preemption decision might be reconsidered in the context of the new wave of MTBE cases.

Judge Scheindlin has promptly undertaken management of more than 40 MTBE cases now before her without objection in MDL 1358 (that is, all the MTBE cases directly removed to the Southern District of New York, as well as those cases transferred to Judge Scheindlin without objection pursuant to CTO-4 and CTO-5).  On March 23, Judge Scheindlin convened a status conference of all counsel in these MTBE matters.  (3/23/04 Tr., attached as Exhibit J)  Thereafter, on April 1, Judge Scheindlin entered a case management order that (1) appoints liaison counsel for plaintiffs and defendants, and designates lead counsel and an executive committee for plaintiffs; (2) sets a schedule for amending pleadings; (3) creates a master file for the filing and tracking of pleadings; (4) provides for electronic service of pleadings; (5) establishes a procedure for consideration of preliminary motions including motions relating to personal jurisdiction; and (6) outlines the initial bounds of discovery, pending resolution of motions directed to the pleadings and other preliminary motions.  (4/1/04 CMO, attached as Exh. K)  Ironically, per the plaintiffs' request in their proposed CMO, Judge

Scheindlin appointed Victor Sher as plaintiffs' co-lead counsel in MDL 1358. (*Id.* at 4-5) Despite being co-lead counsel for MDL 1358, Mr. Sher continues to seek to vacate the conditional transfers on behalf of the plaintiffs he represents in the Objected-To Actions. Judge Scheindlin set April 22 for the next status conference for all counsel. (Exh. J, 3/23/04 Tr. at 57-58)

## ARGUMENT

In light of the fact that CTOs have become effective for almost forty MTBE cases, and many more are on the way, there is no question that there will be a renewed MDL 1358 before Judge Scheindlin. The only question is whether the few cases where counsel have objected to conditional transfer will be excluded from the benefits of coordination, efficiency, and consistency that MDL 1358 will provide. There is no reason for splintering the Objected-To Actions off from the vast majority of MTBE actions that are being centralized before Judge Scheindlin -- each of these actions are classic tag-along cases that easily meet the standards for transfer. Indeed, plaintiffs' arguments for vacating CTO-5 are precisely the type of arguments that the Panel routinely rejects.

**I.      The Objected-To Actions Clearly Are Tag-Along Cases Appropriately Transferred To MDL 1358.**

Each of the reasons identified in the Transfer Order establishing MDL 1358 -- common questions of fact, convenience of parties and witnesses, just and efficient conduct of the litigation, avoiding duplicative discovery, avoiding inconsistent pretrial rulings, and judicial economy -- applies to the six Objected-To Actions here.

**A.      The Six Actions Raise The Same Common Questions Of Fact As The Other Cases Transferred To MDL 1358.**

Objectors do not (because they cannot) seriously dispute that the common questions of fact identified by this Panel in its original MTBE Transfer Order also form the basis

of the six actions here.  As stated by this Panel, those common questions include "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination."

The first three paragraphs of the *Riverside*, *Roseville*, *Quincy*, and *Orange County* complaints entitled "Summary of the Case" demonstrate that these four cases are entirely about the same common questions previously identified by the Panel.  All four complaints allege:[4]

- "Expanding plumes of methyl tertiary butyl ether ("MTBE") ... contaminate and threaten" the water supplies of the plaintiffs. (*Riverside* Compl. ¶ 1; *Roseville* Compl. ¶ 1; *Quincy* Compl. ¶ 1; *Orange County* Compl. ¶ 1)

- "Among other things, the Defendants knowingly and willfully promoted and marketed MTBE and TBA and gasoline containing MTBE and TBA, when they knew or reasonably should have known that these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare." (*Riverside* Compl. ¶ 2; *Roseville* Compl. ¶ 2; *Quincy* Compl. ¶ 2; *Orange County* Compl. ¶ 2).

The very similar *People* complaint also alleges the same questions of fact set forth in the MTBE Transfer Order:

- "The Defendants in this action are the manufacturers, designers, promotrs, marketers, formulators, refiner, suppliers, and retailers of the MTBE, TBA and gasoline containing MTBE and/or TBA that contaminates and threatens the Groudwaters of the County and the public drinking water supply." (*People* Compl. ¶ 37)

- "Further, among other things, the Defendants knowingly and willfully promoted and marketed gasoline containing MTBE and TBA, when they knew or reasonably should have known that, without adequate

---

[4] Certain phrases in one complaint are not included in the others, and at points the word tenses vary between the two complaints.  Thus, the quotation of the two complaints is not absolutely exact.  The *People* Complaint is attached as Exhibit 1 to Mr. Sher's Declaration, the *Orange County* Complaint is Exhibit 2, the *Riverside* Complaint is Exhibit 3, the *Roseville* Complaint is Exhibit 4, the *Quincy* Complaint is Exhibit 5, and the *Silver* Complaint is Exhibit 6.

precautions, these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare." (*People* Compl. ¶ 37)

As does the *Silver* complaint:

- "Throughout this great state, public water wells are contaminated by methyl tertiary butyl ether ('MTBE') and tert butyl alcohol ('TBA'), a degradation product of MTBE." (*Silver* Compl. ¶ 1)

- "Plaintiffs' water system has been contaminated and continue to be contaminated by MTBE and/or TBA." (*Silver* Compl. ¶ 3)

- "Despite knowing that MTBE has unique characteristics in water which allows it to contaminate water soruces never seen before its addition to gasoline, these Defendants chose to make it the second largest chemical manufactured in the United States." (*Silver* Compl. ¶ 1)

- "Despite their superior knowledge of the groundwater threat posed by MTBE, Defendants, beginning in the early 1980's, formed various formal and informal task-forces and committees for the purpose of concealin the actual threat of MTBE, facilitating the Defendants' use of MTBE without regard to its impact on Plaintiffs and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable." (*Silver* Compl. ¶ 118)

In short, these actions raise the exact same common questions of fact as the MTBE actions already transferred to MDL 1358. This is not in serious dispute.

### B.   Transferring The Cases Will Serve The Convenience Of The Parties And Witnesses And Prevent Duplicative Discovery.

The same convenience to parties and witnesses and avoidance of duplicative discovery that supported the creation of MDL 1358 applies to transfer of the Objected-To Actions. These six actions involve the same factual allegations, similar claims, and are brought against many of the same defendants as the cases already transferred to MDL 1358. Thus, these six cases will involve discovery on many of the same factual issues. Indeed, counsel for the Plaintiffs acknowledges that "some further, generally-applicable discovery on liability may be necessary." (Sher Decl. ¶ 25). If so, that discovery should proceed in a coordinated fashion in

11

the MDL 1358 Court.   Indeed, Judge Scheindlin has already managed significant MTBE discovery and established a New York depository for documents, and has entered an Order calling for discovery in the new wave of MTBE cases.  (Exh. K, 4/1/04 CMO at 6-7)  Having document production and depositions occur in a single centralized proceeding will avoid duplicative discovery and be more convenient for parties and witnesses than producing the same documents and witnesses over and over.  *See In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227 (J.P.M.L. 1979) (transferring cases under CTO to "avoid duplicative discovery and prevent waste of resources by the parties, their counsel and the courts."); *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) (transferring action brought by State of Maryland pursuant to CTO "to eliminate the potential for duplicative discovery, inconsistent pretrial rulings and waste of judicial resources."); *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (transferring cases covered by CTO "to prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial rulings").

### C.   Giving Effect To The CTOs Is Necessary For The Efficient Conduct Of The Litigation, Avoiding Inconsistent Pretrial Rulings, And Judicial Economy.

The undersigned defendants anticipate that some defendants will file motions to dismiss for lack of personal jurisdiction over certain parties and for failure to state a claim, motions for summary judgment and other motions for the Objected-To Actions that largely duplicate the motions that will be filed for the cases already transferred to MDL 1358.  Judge Scheindlin's recently entered Case Management Order establishes procedures for such motions. (Exh. K, 4/1/04 CMO at 5-6)  Filing these motions in multiple courts rather than only before Judge Scheindlin runs a high risk of conflicting rulings.  Additionally, allowing these six actions to proceed separately from MDL 1358 will likely result in conflicting discovery schedules and case management orders.

There simply is no need to consume judicial resources by having multiple courts each familiarize themselves with the issues presented by MTBE litigation and consider and rule on the same questions. This is especially true given that Judge Scheindlin is well versed in the facts and the law of the cases. *See, e.g., In re Crown Life Ins. Premium Litig.*, 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001) (noting that "judge's familiarity with this [MDL] docket furthers the expeditious resolution of the litigation taken as a whole."); *In re Sugar Indus. Antitrust Litig. (East Coast)*, 437 F. Supp. 1204, 1208 (J.P.M.L. 1977) (same). Thus, centralizing the Objected-To Actions with the other MTBE cases is appropriate. *See Data General*, 510 F. Supp. at 1227; *Armored Car*, 462 F. Supp. at 396; *"Fine Paper,"* 453 F. Supp. at 121.

Like Judge Scheindlin, several of the transferor courts for the Objected-To Actions have opined that transfer of these cases to the MDL 1358 Court is necessary as a matter of judicial economy and to avoid inconsistent pretrial rulings. Granting defendants' motion to stay *Orange County* and *Riverside*, Judge Selna opined that "the benefits of granting a stay in the interests of judicial economy and the threat of inconsistent rulings by the numerous courts that would face jurisdictional issues associated [with] the motion to remand outweighs any costs imposed on the Plaintiffs and judicial resources by the operation of the MDL process." (Exh. D, 2/23/04 Civil Minutes at 5) Likewise, Judge Karlton granted defendants' motion for a stay of *Quincy* explaining that a stay was warranted in part due to the "the potential savings of judicial resources" and "the balance hardships to the parties." (Exh. E, 1/27/04 Order at 1-2) In a subsequent order specifically addressing issues raised by plaintiffs' motion for reconsideration, Judge Karlton reaffirmed his decision to stay proceedings in *Quincy*. (Exh. F, 3/24/04 Order)

## II.   None Of The Arguments In The Motions To Vacate Merit Vacating CTO-5.

Despite the almost identical nature of the allegations between the Objected-To Actions and the cases now centralized in MDL 1358, the plaintiffs in each case (and the two

13

*Quincy* defendants that are affiliated companies) have moved to vacate CTO-5. None of the objections by the parties who have moved to vacate withstands scrutiny.

In fact, the Panel regularly rejects similar arguments. ***First***, plaintiffs in the Objected-To Actions argue that their remand motions present different remand theories than those in other MDL 1358 cases, yet the reality is that their remand arguments are similar to those just rejected by the MDL 1358 Court and differences in legal theories are irrelevant to whether a case should be transferred. ***Second***, the objectors assert that common discovery is "largely complete," which is not accurate and ignores that the MDL 1358 Court will be in the best position to coordinate use of previous discovery and additional discovery on common and individualized issues. ***Third***, the objectors claim that most common legal issues already have been resolved, which is not true, especially as to large numbers of newly named parties. ***Fourth***, the objectors claim that local issues prevail over common ones, an argument previously rejected by this Panel when it created MDL 1358.[5]

### A.   Differences In Legal Theories For Remand Are Not A Basis For Denying Transfer Of A Factually Identical Case.

The Plaintiffs and People wrongly assert that purported differences between their remand motions and the remand motions decided by Judge Scheindlin constitutes a sufficient basis for vacating the CTO. (Brief In Supp. Of Plaintiffs' Joint Mot. To Vacate Conditional Transf. Order (CTO-5) ("Plaintiffs Br.") at 22-25; Mem. Of Points And Authorities In Supp. Of

---

[5] Fuel Star and Blue Star make the additional claim that transfer "is simply an ill-conceived ploy" by defendants "to use the MDL process to find a new forum in which to avoid liability." (Fuel Star/Blue Star Mem. In Supp. Of Mot. To Vacate CTO-5 ("Fuel/Blue Star Mem.") at 5) While untrue, this assertion must be disregarded for the additional reason that "the possibility that another district judge may be more favorably disposed to a litigant's contentions" is "simply not [a] factor[] considered by the Panel in determining whether and where to transfer under Section 1407 is appropriate." *In re Beef Indus. Antitrust Litig.*, 419 F. Supp. 720, 722 (J.P.M.L. 1979); *see also In re Suess Patent Infringement Litig.*, 384 F. Supp. 1405, 1407 (J.P.M.L. 1974) (same).

Mot. To Vacate Conditional Transf. Order (CTO-5) ("People Br.") at 3-12).   This assertion

overlooks several key points.

   **First,** the Panel routinely holds that pendency of a remand motion is **not** grounds

for denying transfer. *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("the MDL Panel has jurisdiction to

transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the

transferee court") (citation omitted); *see also In re Nat'l Century Fin. Enters., Inc.*, 293 F. Supp.

2d 1375, 1377 (J.P.M.L. 2003); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F. Supp.

2d 1378, 1380 (J.P.M.L. 2003); *In re Enron Corp. Sec. Litig.*, 227 F. Supp. 2d 1389, 1391

(J.P.M.L. 2002); *In re Crown Life Ins. Co. Premium Litig.*, 178 F. Supp. 2d 1365, 1366 (J.P.M.L.

2001).[6]

   **Second**, the MDL 1358 Court itself has issued an order stating that it is the

appropriate forum for deciding whether the Objected-To Actions should stay in federal court.

(Exh. C, 12/23/03 Order)   Judge Scheindlin has already considered and ruled upon remand

motions filed in several MTBE cases removed to the Southern District of New York.   (Exh. I,

3/16/04 Remand Opinion)   The remand motions filed in the Objected-To Actions do not differ

significantly from those already rejected by Judge Scheindlin on March 16, 2004.   Indeed, the

Plaintiffs concede that the jurisdictional bases asserted by defendants in the Objected-To Actions

---

[6] The two cases cited by Plaintiffs as support for their claim that their remand motions warrant vacating CTO-5 -- neither of which are decisions by this Panel but rather involve district court decisions on whether to stay cases pending Panel action -- are inapposite. In *Board of Trustees v. Worldcom*, 244 F. Supp. 2d 900 (N.D. Ill. 2002), the court *rejected* the argument made by plaintiffs here that cases should not be transferred in light of pending remand motions, and held that having one court decide "complex jurisdictional issues obviously saves judicial resources." *Id.* at 905. As Plaintiffs' parenthetical acknowledges, the court in *Havens Protected "C" Clamps, Inc. v. Pilkington PLC*, 2000 WL 382027, at *2 (D. Kan. Mar. 28, 2000), stated only that a remand motion should be considered rather than stayed if that motion "does not necessarily implicate issues common to the other actions currently pending before the MDL Panel-designated court."

"may overlap" with those raised in other MTBE cases recently removed by defendants. (Plaintiffs Br. at 24)

*Third*, the stay orders entered in the Objected-To Actions reflect the opinions of the transferor courts that the remand arguments by Plaintiffs and People should *not* stand in the way of transfer of these MTBE actions to Judge Scheindlin. (Exh. D, 2/23/04 Civil Minutes for *Orange* and *Riverside*; Exh E; 1/27/04 *Quincy* Stay Order; Exh. F, 3/24/04 *Quincy* Reconsideration Order; Exh. G, 2/6/04 *People* Stay Order) After full briefing and a hearing, Judge Selna presiding over *Orange* and *Riverside* found that

> *[T]he jurisdiction issue is similar or identical to those likely to be presented to the MDL in other transferred cases. Having one court decide the complex jurisdictional issues obviously saves judicial resources.* ... This Court believes that the benefits of granting a stay in the interests of judicial economy and the threat of inconsistent rulings by the numerous courts that would face jurisdictional issues associated [with] the motion to remand outweighs any costs imposed on the Plaintiffs and judicial resources by the operations of the MDL process.

(Exh. D, Civil Minutes for *Orange County* and *Riverside* at 4-5, emphasis added) In opposing a stay, Plaintiffs' counsel Mr. Sher made the same argument to Judge Selna that he makes here, namely that remand issues in *Orange County* and *Riverside* are different than the remand issues before Judge Scheindlin in the other MTBE cases because the Ninth Circuit has expressly rejected preemption as a grounds for removal. (*Compare* Plaintiffs Br. at 23 *with* Exh. L, 2/23/04 Transcript of Judge Selna's hearing in *Orange County* and *Riverside*. at 10-13 & Exh. M, *Orange County* Pl.'s Opp. To Certain Defs.' Mot. To Stay at 7-8)

Judge Karlton reached a similar conclusion in denying plaintiff's motion to reconsider the court's order staying *Quincy*, concluding that "*the jurisdictional issues involved are quite complex, are likely to be common to the MTBE cases filed across the country, and are ultimately likely to be resolved in favor of a finding of federal jurisdiction.*" (Exh. F,

*Quincy* Reconsideration Order at 7, emphasis added)   In so holding, Judge Karlton rejected

plaintiff's argument, fully briefed by Mr. Sher, that the Court should rule upon plaintiff's remand

motion ***before*** deciding whether to stay the case pending MDL transfer. (Exh. N, *Quincy* Mem.

Points & Auth. In Suppt. Of Pl.'s Mot. For Reconsideration at 5)   Likewise, in granting

defendants' motion to stay *People*, Judge Burrell noted that "Plaintiffs' remand motion is

deemed withdrawn without prejudice." (Exh. G, 2/5/04 *People* Order)

      ***Fourth,*** the claims by Plaintiffs and People that their remand motions will raise

several legal arguments not previously considered by the MDL 1358 Court only highlight the

need for transfer of the Objected-To-Actions to Judge Scheindlin.   Absent transfer of the

Objected-To Actions, multiple judges will have to decide these purportedly unique legal issues

rather than a single judge.   Moreover, the presence of different or additional legal theories (in

this case relating to remand) does not support having factually similar cases proceed in different

forums. *See In re Bridgestone/Firestone, Inc.*, 2000 WL 33416573, at \*2 (J.P.M.L. Oct. 24,

2000) ("Nor is the presence of additional or differing legal theories significant when the

underlying actions still arise from a common factual core.").[7]   If the Plaintiffs believe they have

novel legal theories for remand, they can present those theories to the MDL Court.   Indeed,

counsel for the Plaintiffs already has submitted several letter briefs on remand issues to Judge

Scheindlin.

---

[7] *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F.Supp.2d 1377, 1379 (J.P.M.L. 2001) (transferring factually similar actions even though cases were based on different "legal theories of recovery" and objectors argued that their particular cases "involve unique matters not present in other actions"); *In re Continental Grain Co., Inc.*, 482 F. Supp. 330, 332 (J.P.M.L. 1979) (Cases appropriately transferred because the "presence of differing legal theories in some of the actions does not negate the existence of common questions of fact."); *In re Holiday Magic Sec. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974) ("It is not unusual for plaintiffs in multidistrict litigation to base their claims for relief on different legal theories. But it is the facts underlying those theories which we must look to in making our determination under Section 1407.").

The only supposed "difference" Plaintiffs identify regarding their remand motion as compared to the remand motions filed in the New York actions and already decided and rejected by Judge Scheindlin is the existence of two Ninth Circuit opinions rejecting arguments that the Clean Air Act preempts state law.[8]   (Plaintiffs Br. at 24)   This argument only underscores the benefits of convenience, justice and efficiency to be obtained from transferring all California actions identified as tag-along actions in CTO-4 and CTO-5 to the MDL 1358 Court, for Plaintiffs' counsel Mr. Sher made this same argument on behalf of a different plaintiff, California-American Water Co., in moving to vacate CTO-4 as it pertains to *California-American Water Co. v. Atlantic Richfield Co*, Case No. 03-5379 (N.D. Cal.) ("Cal-American") (*See* Brief In Suppt. Of Cal-Amer.'s Mot. To Vacate CTO-4 at 12)   Rather than have one court decide the relevance of these Ninth Circuit opinions as would be the case if all actions are transferred to Judge Scheindlin, *six* different courts will have to do so if transfer of the Objected-To Actions and *Cal-American* is denied.[9]

In any event, Plaintiffs' argument has no bearing on federal removal jurisdiction under 28 U.S.C. §1442, for the requirement that a removing defendant have a "colorable federal defense" is "broadly construed" such that a defense may be "colorable" even if ultimately rejected by the court. (Exh. I, Remand Opinion at 17)   Here, Judge Scheindlin has opined that

---

[8] The Plaintiffs also claim that the area at issue in *Quincy* has never been subject to the federal regulations requiring oxygenated fuels.  Judge Scheindlin has already set a schedule for briefing this issue, which was extensively discussed at a March 23, 2004 status conference in MDL 1358.  (Exh. J, 3/23/04 Hr'g Tr. at 8-24)  At the MDL 1358 hearing counsel for plaintiffs claimed that at least fourteen other actions the are part of MDL 1358 involve areas not subject to the oxygenated fuels regulations (*id.* at 9), and thus this alleged issue in *Quincy* is common to various other MDL 1358 actions.

[9] The *Riverside* and *Orange County* actions are before Judge Selna in the Central District of California.  *Silver* is before Judge Hayes in the Southern District.  With respect to the Eastern District cases, *Roseville* is before Judge Shuff, *Quincy* is before Judge Karlton, and *People* is before Judge Burrell.  *Cal-American* is before Judge White in the Northern District.

18

defendants' preemption arguments satisfy the "colorable federal defense" requirement, and Plaintiffs cannot demonstrate any reason why this ruling should not apply with equal force to their remand motions. (*Id.* at 22-25)[10]

      With respect to the *People* action, the same grounds for removal are asserted by defendants in both the *People* as in the New York actions where Judge Scheindlin denied plaintiffs' remand motions. In its motion to vacate before this Panel, the People suggest that their remand motion differs from those in the New York actions because it presents legal issues involving the Eleventh Amendment and sovereign immunities. (People Br. at 3-12) As with Plaintiffs' argument, this argument only underscores the need to transfer *People* to the MDL 1358 Court, for Mr. Sher raised a similar argument on behalf of New Hampshire in a motion to vacate CTO-4 as it pertains to *State of New Hampshire v. Amerada Hess Corp.*, Case No. 03-486 (D.N.H.), 03-0529 (D.R.I) ("*New Hampshire*"). (*See* Br. In Suppt. Of State Of N.H.'s Mot. To Vacate CTO-4 at 13) Rather than have two federal courts decide this issue wasting judicial resources and raising the possibility of conflicting opinions, having Judge Schiendlin decide this issue would promote efficiency and uniformity.

      In any event, People's assertion that the Eleventh Amendment or sovereign immunity bars removal of a suit that it brought is just an additional legal argument, and a

---

[10] Moreover, the Ninth Circuit cases cited by Plaintiffs, *Oxygenated Fuels Ass'n., Inc. v. Davis*, 331 F.3d 665 (9th Cir. 2003) and *Exxon Mobil Corp. v. United States Environmental Protection Agency*, 217 F.3d 1246 (9th Cir. 2000) are distinguishable and not dispositive of any preemption arguments made by defendants in this new wave of MTBE cases. First, the Ninth Circuit opinions address California's ban on MTBE in 2003, not the federal mandates regarding MTBE usage in the 1990's, and, thus, conflict preemption and the feasibility of using other oxygenates presented by the new round of cases were not at issue. Second, different parties are involved in this new wave of MTBE cases and arguments that will be asserted by defendants here were not raised by the parties arguing preemption in *Davis* or *Exxon Mobil*. Moreover, as Judge Scheindlin acknowledged in her recent order denying remand of New York cases, several California lower courts in more analogous MTBE cases have held that state law claims are preempted by federal law. Cal-American fails to cite these lower court opinions. (Exh. I, Remand Opinion at 23-25; *see Kubas v. Unocal Corp.*, No. BC191876, 2001 WL 1940938 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001); *Hixson v. Unocal Corp.*, No DC195295 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001) (unpublished))

meritless one at that. *See Oklahoma v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1239-40 (10th Cir. 2004) (explaining that "nearly every court to consider Eleventh Amendment immunity in the removal context has ... conclude[d] that a State cannot assert Eleventh Amendment immunity to bar the removal of a suit it has brought" and adopting that holding); *Illinois v. City of Milwaukee*, 406 U.S. 91, 101 (1972) ("where a State is suing parties who are not other States. . . those suits may now be brought in or removed to the [federal] Courts without regard to the character of the parties"). Indeed, one need only look at cases cited by People to see that the vast majority of courts have rejected People's argument that removal is improper in cases where the state is a plaintiff in an action removed to federal court by the defendant. People cite only two federal district court cases, one from California and one from Mississippi for their argument, and cite over ten cases reaching the opposite result. (People Br. at 3-5, 8-12)

*In sum*, the factual background of the remand motions in the Objected-To Actions are common with other MTBE cases, as are most of the legal theories such as federal officer jurisdiction and bankruptcy jurisdiction, and both the transferor and transferee courts have indicated that the actions are appropriately transferred to MDL 1358.

**B.     The MDL 1358 Court Can Coordinate The Use Of Prior Discovery As Well As Remaining Discovery On Both Common And Individual Issues.**

The objectors' argument that all common discovery in the Objected-To Actions is "largely completed" is both factually wrong and a legally insufficient to deny transfer. (Plaintiffs Br. at 14-20, People Br. at 16-18; Fuel/Blue Star Mem. at 7-10)  These cases are in their infancy; no responsive pleadings have been filed.  Discovery has yet to begin in any of those actions.  Though the objectors point to the discovery in MDL 1358 itself, as well as a few California state actions (*South Tahoe, CBE, Santa Monica, Dinuba, Cambria* and *Fruitridge*), common discovery remains to be done.

20

Discovery in the original private well owner actions transferred to MDL 1358 focused primarily on class certification and did not include exhaustive merits discovery. No depositions of defendants' representatives took place. (Exh. O, Heartney Decl. ¶ 7). The *Fruitridge* case is at an early stage, and no significant "common issues" discovery has taken place. (*Id*. at ¶ 9) No "common issue" discovery took place in *Santa Monica*. (*Id*. at ¶ 5) Likewise, very little such discovery occurred in *Dinuba* prior to settlement. (Exh. P, Schrader Decl. ¶ 4) In *Cambria*, Chevron U.S.A., Inc was the only refiner defendant named, so any discovery addressing "common" issues was limited to that defendant. (*Id*. at ¶ 5)

As for *South Tahoe* and *CBE*, although some overlap is involved, there are at least twenty defendants in the Objected-To Actions that were ***not*** defendants in any of the past California MTBE cases, including *South Tahoe* or *CBE*.[11]   (Exh. O, Heartney Decl. ¶ 4) Moreover, not all defendants in *South Tahoe* or *CBE* were subject to significant discovery. For example, although BP entities are named in all the Objected-To Actions and virtually every case transferred to MDL 1358, it was never a defendant in *CBE* and reached an early settlement in *South Tahoe* before more than preliminary discovery had occurred. (*Id.*)  Plaintiffs in the new MTBE cases can be expected to seek common discovery of these and other refiners that were not defendants in *South Tahoe* or *CBE*, or from which little discovery was taken, but which are defendants in the new MDL 1358 cases.

---

[11] The following defendants were ***not*** defendants in *CBE* or *South Tahoe* but are named in at least one of the Objected-To Actions:  Alon USA Energy, Inc., Alon USA LP, Amerada Hess Corporation, Circle K Stores, Coastal Eagle Point Oil Company, Coastal Mobile Refining Company, Crown Central Petroleum Corporation, El Paso CGP Corporation, El Paso Corporation, El Paso Merchant Energy-Petroleum, Gulf Oil, LP, Koch Industries, Inc., Marathon-Ashland Petroleum, LLC, Marathon Oil Corporation, Premcor Inc., The Premcor Refining Group, Inc., Sunoco, Inc., and Total Holdings USA, Inc. (Exh. O, Heartney Decl. ¶ 4)

Furthermore, discovery in *South Tahoe* and *CBE* closed more than two years ago. Since that time, much additional information has become available regarding relevant common issues, such as information about how MTBE biodegrades, the low concentrations and lack of danger posed by nearly all MTBE detections, and the existence of effective remediation techniques have all come to light. (*Id.* ¶ 6) Additional, common discovery will occur on these issues as well as others.

In light of the very large number of newly filed MTBE cases, many of which involve plaintiffs' counsel with no involvement in the past cases cited by the objectors, it seems highly unrealistic to expect that there will not be substantial additional demands for "common issue" discovery calling for the supervision of an MDL judge. As counsel for nearly all the plaintiffs in the Objected-To Actions frankly admits, "some further, generally-applicable discovery on liability may be necessary." (Sher Decl. ¶ 25). In fact, in recent MTBE cases where discovery is ongoing, and which involve some of the same plaintiffs' counsel as in the Objected-To Actions, plaintiffs have routinely asked for updated and different discovery beyond what was produced by the discrete group of defendants in the original MTBE 1358 actions and/or the California matters.[12]

The need to coordinate the use of prior discovery from MTBE cases, remaining common discovery, and discovery on issues unique to each case only confirms that these MTBE cases should be transferred to the MDL 1358 Court. As this Panel has explained previously in rejecting arguments very similar those by the objectors' here:

---

[12] For example, in more recent MTBE cases such as *Adams/Barnett* (North Carolina), plaintiffs' counsel have sought written and other discovery that goes far beyond the discovery taken in either the original MDL 1358 or in the *CBE* and *South Tahoe* cases.

> [T]ransfer under Section 1407 will have the salutary effect of
> placing fourteen actions presently pending in eight districts before
> a single judge who can formulate a pretrial program that: 1)
> enables appropriate discovery already completed in earlier actions
> to be made applicable to actions that are later filed; 2) if
> appropriate, allows discovery with respect to any unique issues to
> proceed concurrently with discovery on common issues . . .

*In re Dow Chem. Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986).[13]

The objectors' suggestion that the parties instead coordinate to exchange documents in existing document depositories hardly provides a complete solution to discovery issues likely to be raised, and would be far less efficient that the more complete supervision provided by an MDL Court. *See In re Mosaid Tech., Inc. Patent Litig.*, 283 F. Supp.2d 1359, 1360 (J.P.M.L. 2003) (rejecting objectors' proposed alternatives to Section 1407 transfer because MDL transfer provides more comprehensive mechanism for addressing discovery issues).[14]

In fact, the objectors' argument here that discovery unique to each case predominates over common discovery is simply another version of the argument rejected by the Panel in creating MDL 1358. In creating MDL 1358, the Panel overruled objections that site-

---

[13] *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transferring cases even though "most of the relevant discovery" on common issues had already been conducted and could be made available to the parties because "transfer under Section 1407 has the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions."); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issue unique to a particular action or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation).

[14] *See also In re IBP Continental Bus. Docs. Litig.*, 491 F. Supp. 1359, 1361 (J.P.M.L. 1980) (suggestion by opponents of transfer that parties informally cooperate regarding discovery rejected as inadequate); *In re Oil Spill by The "Amoco Cadiz" Off the Coast of France on March 16, 1978*, 471 F. Supp. 473, 477 (J.P.M.L. 1979) (rejecting argument by nation of France that making prior production, which amounts to hundreds of thousands of documents, available to all parties was an adequate substitute for transfer under Section 1407); *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (rejecting objectors' proposal that parties voluntarily cooperate regarding discovery; explaining that the Panel "prefers to place the actions under the control of a single judge in order to ensure that the objectives of Section 1407 are met.").

specific issues dominated common ones, answering that transfer would allow "pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." (Exh. A, MTBE Transfer Order at 1-2)[15]  Moreover, the cases cited by objectors are distinguishable.[16]

The MDL 1358 Court has significant experience in managing discovery in MTBE cases.  It already has entered a Case Management Order governing discovery for the forty-plus cases before it.  (Exh. K, 4/1/04 CMO)  Judge Scheindlin is most capable of determining what discovery remains to be done as well as creating a program for coordinating discovery among the almost sixty MTBE actions (including declaratory judgment actions) currently pending in federal court.  Thus, the objectors' discovery-based arguments are to no effect.

### C.   Serious Risk of Inconsistent Pre-Trial Rulings Exists Absent Transfer Of These Cases.

The objectors' claim that most common legal issues "already have been decided" is also wrong.  (Plaintiffs Br. at 20; People Br. at 18-19; Fuel/Blue Star Mem. at 10-11)  Indeed, the objectors' assertion that there is little risk of inconsistent rulings is belied by the fact that they seek to argue remand motions and other issues before numerous different courts rather than

---

[15] *See also In re 1980 Decennial Census Adjustment Litig.*, 506 F.Supp. 648, 651 (J.P.M.L. 1981) ("the transferee judge . . . has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular geographic area or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation"); *In re Beef Indus. Antitrust Litig.*, No. 248, 1977 WL 1559, at *2 (J.P.M.L. June 7, 1977) (rejecting argument by CTO opponents that their actions were in a "geographically concentrated market area in and around Iowa to which discovery will be restricted, whereas the [previously transferred] actions involve a national market and a nationwide discovery program" and ordering transfer).

[16] *Gasoline Lessee Dealer Antitrust Litig.*, 479 F. Supp. 578, 580-81 (J.P.M.L. 1979), involved cases pending in only two districts, all at an advanced stage with discovery substantially completed, while here the cases are scattered among twenty different districts and all are at the very beginning of proceedings with discovery yet to commence. And, in the *Grand Funk Railroad Trademark Litigation*, 371 F. Supp. 1084 (J.P.M.L. 1974), the Panel denied transfer because common questions among the actions were few and limited, *id.* at 1085, as opposed to the strong similarities among the factual allegations and theories among the MTBE actions.

before Judge Scheindlin, who is already familiar with the issues and can ensure uniformity among the almost sixty cases pending in federal court. Many of the almost sixty MTBE actions involve several defendants not previously involved in MTBE litigation in California state courts or in the earlier private well owner actions before the MDL 1358 Court. Motion practice and discovery are just beginning in the new MTBE cases before the MDL 1358 Court.

This new wave of MTBE cases will raise legal issues not previously raised with the MDL 1358 Court. The Court has just entered a Case Management Order that sets forth an orderly approach for addressing anticipated preliminary motions, which include motions to dismiss under Fed. R. Civ. P. 12(b) as well as motions to dismiss for lack of personal jurisdiction. (Exh. K, CMO at 6-7) Moreover, the objectors overlook summary judgment as a stage of pre-trial proceedings that is most appropriately handled by the MDL 1358 Court. Thus, that some courts have issued legal rulings (and inconsistent rulings at that) in MTBE actions does not warrant denying transfer.[17] *Cf. In re Molinaro/Catanzaro Patent Litig.*, 380 F. Supp. 794, 795-96 (J.P.M.L. 1974) (transferring action where transferor courts have already ruled on motion to dismiss and transferee court had already made tentative findings on key issue); *In re Peruvian Road Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974) (transferring action where transferee court had already ruled on aspects of defendants' jurisdictional motions).[18]

---

[17] The Panel decisions cited in the objectors' briefs are easily distinguishable. In *A.H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.*, 505 F. Supp 221 (J.P.M.L. 1981), by the time the Panel began denying transfer of Dalkon Shield cases, the MDL had been active for several years, the transferee court had prepared a final pre-trial order, and *all* the parties had begun agreeing that no further actions should be transferred. *Id.* at 222-23. Similarly, in *In re Western Elec. Co. Semiconductor Patent Litig.*, 436 F. Supp. 404 (J.P.M.L. 1977), all the previously transferred cases had either been, or were about to be, tried, and so all discovery and pre-trial proceedings were complete. By contrast, the new wave of MTBE cases pending in MDL 1358 are all at their earliest stages.

[18] The objectors also argue that transferor courts will be in the best position to handle issues of local state law or apply the decisions of the circuits in which the transferor courts sit, but this is a non-starter as MDL courts regularly apply the laws of numerous states and circuits. *In re Data General Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) ("It is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict
(Continued...)

Nor are objectors correct in suggesting that the MDL 1358 Court has "decided" defendants' federal preemption defense by denying an earlier motion to dismiss. To begin with, the objectors fail to cite the many decisions holding that MTBE actions based on state law claims are preempted by federal law.[19]  The MDL 1358 Court in its decision denying remand in the New York actions expressly acknowledged these decisions in finding that the defendants had raised a colorable federal defense of preemption.[20] (Exh. I, Remand Opinion at 23-25)  And, Judge Scheindlin acknowledged that the preemption defense asserted by defendants in this new wave of MTBE cases raise "somewhat different" issues than those in the prior MTBE cases brought by private well owners. (*Id.* at 25)  In finding preemption to be a colorable federal defense, the MDL Court has left open the issue of whether the new mass of MTBE complaints is preempted by federal law.  (*See id.*)  Moreover, as the objectors acknowledge, the MDL 1358 Court earlier ruled on preemption arguments only on a motion to dismiss, holding that the issue turned partly on the factual question of whether practical alternatives to MTBE were available to satisfy federal mandates.  *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d at 616.  Thus, in

---

litigation for the transferee judge to be called upon to apply the law of more than one state. Thus, all parties can be assured that the law of the transferor district, as well as any other state's law, if appropriate, will be duly applied by the transferee judge.") (citations and brackets omitted).  Indeed, Judge Scheindlin already has interpreted and applied California law in the course of ruling on various issues. *E.g., In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 620-22, 627 n.1 (S.D.N.Y. 2001).

[19] *See Kubas,* 2001 WL 1940938 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001); *Hixson,* No DC195295 (Cal. Supr. Ct., LA. Cty., Aug. 23, 2001); *Holten v. Chevron USA,* 2001 U.S. Dist. LEXIS 17599 (D.N.J. 2001); *Coppola v. Amerada Hess Corp.*, No. 2001/3995 (N.Y. Supr. Ct., Dutchess Cty., Jul. 31, 2002); *Molloy v. Amerada Hess Corp.*, No. 2001/3996 (N.Y. Supr. Ct., Dutchess Cty., Aug. 1, 2002).

[20] Thus, there have been inconsistent decisions on preemption, the very kind of harm that MDL is created to prevent.  *See, e.g., In re U-Haul Intern'l, Inc.*, 249 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (transfer necessary to "prevent inconsistent pretrial rulings"); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) (similar).  This concern is particularly acute because no court has addressed preemption in the context of an all-out assault on the interstate gasoline distribution system, which is the effect of the almost sixty MTBE actions filed by plaintiffs over the last six months.

addition to potentially filing a new motion to dismiss based on the "somewhat different" allegations and context of the new MTBE complaints, defendants may raise preemption again on summary judgment.

### D.      The Objectors' Scope Arguments Are Rejected Regularly By The Panel.

Finally, the objectors' claim that the scope of their MTBE actions somehow renders transfer inappropriate is equally baseless. (Plaintiffs Br. at 14-20; People Br. at 13-15; Fuel/Blue Star Mem. at 10)  In particular, the objectors claim that the remaining issues are location-specific rather than common.  That the objectors simply are re-hashing previously rejected arguments can be seen from their assertion that "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination" is not a common issue (Plaintiffs Br. at 19 n.7; *see also* People Br. at 1), even though this Panel explicitly found in the MTBE Transfer Order that this exact same question *is* a common issue.  (Exh. A, MTBE Transfer Order at 1) Indeed, this is the same objection that was rejected by the Panel in its October 2000 Order establishing MDL 1358, where the Panel noted that opponents of transfer argued "that the presence of individual questions of fact militate against 1407 transfer" but responded that transfer would allows "pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." (*Id.* at 1-2); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 654-55 (rejecting argument that transfer was inappropriate because some actions involved "unique or localized factual issues."); *In re Dept. of Energy Stripper Well Exemption Litig.*, 472 F. Supp. 1282, 1285-86 (J.P.M.L. 1979) (same); *1980 Decennial Census*, 506 F. Supp. at 651; *Beef Industry*, 1977 WL 1559, at *2 (same).  Any

unique issues can be handled by Judge Scheindlin or dealt with after remand to the transferor court.[21]

The Plaintiffs also claim that the California gasoline market is distinct from other markets. (Plaintiffs Br. at 18)  To being with, the federal oxygenate mandates imposed by the Clean Air Act and EPA regulations -- the key federal laws at issue in the MTBE cases -- are as applicable to California as any other State; indeed, the EPA has denied California's request to free refiners from complying with those mandates.  (Exh. O, Heartney Decl. ¶ 8 & Exh. 1 6/12/01 EPA Press Release)  Moreover, Plaintiffs' assertion in no way undermines the common questions previously found by the Panel.  What defendants knew and represented about MTBE, whether gasoline with MTBE is a defective product, and whether plaintiffs' water was contaminated by MTBE are common issues regardless of the structure of California's market. Moreover, the Panel has conditionally transferred a total of eight California cases between CTO-4 and CTO-5.  Even if the California market were different from other markets, having a single Court already well-versed in applying California law to MTBE suits is preferable to the inefficiency and inconsistency that would result from those cases proceeding separately from each other.

---

[21] Likewise, the claim by Fuel Star/Blue Star and People that transfer will be inconvenient for parties and witnesses is not a reason for denying transfer (Fuel Star/Blue Star Mem. at 11-12; People Mem. 16), for they wrongly infer that transfer of the two California actions would require much travel to New York.  *See In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506-07 (rejecting objector's claim that transfer would impose hardship, and explaining that transfer generally does not result in the need for parties or witnesses to travel to transferee district and that judicious use of liaison counsel and steering committees eliminates need for most counsel to travel to transferee district); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1228 (J.P.M.L. 1977) (similar).  Moreover, any inconvenience and expense to Fuel Star/Blue Star and People is a parochial concern at best and is outweighed by the overall cost savings to *all* parties that will be achieved by including the *People* and *Quincy* matters in the coordinated MDL 1358 proceeding.  *See In re Sugar Indus. Antitrust Litig.*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979); *In re Viatron Computer Systems*, 462 F. Supp. 382, 389 (J.P.M.L. 1978).

The People make a fundamentally similar (and similarly flawed) argument that because it is a sovereign its action differs in scope from other MTBE cases. (People Br. at 13-14)   This Panel has rejected similar attempts by States to seek special treatment.   In *In re Armored Car Antitrust Litigation*, 462 F. Supp. 394 (J.P.M.L. 1978), Maryland argued that a case should not be transferred from a Maryland court. *Id.* at 396.   Maryland claimed that the case concerned the authority of the Maryland Attorney General, involved certain kinds of state-specific defenses and there was no danger of inconsistent rulings, but this Panel was not persuaded.   The Panel found that because the Maryland actions clearly shared common factual questions with other transferred actions, giving effect to the CTO was appropriate. *Id.*; *see also* "*Amoco Cadiz,*" 471 F. Supp. at 477-78 (ordering transfer opposed by nation of France).   The same is true here -- *People* alleges the same fact questions as other MTBE cases and allowing it to proceed separately waste resources and creates serious risks of inconsistent rulings.

Once the People's claim to special treatment is stripped away, its underlying arguments on scope are the same as those commonly rejected by the Panel.   The People claim to proceed under additional legal theories that it claims are not available to other plaintiffs, but differences in legal theories do not support denying transfer. *See, e.g., PPA*, 173 F. Supp. 2d at 1379; *Bridgestone/Firestone, Inc.*, 2000 WL 33416573, at *2; *Continental Grain*, 482 F. Supp. at 332; *Holiday Magic*, 375 F. Supp. at 1402.   The Panel previously held that these geographic differences did not prevent transfer.   (Exh. A, MTBE Transfer Order at 1-2); *see also In re 1980 Decennial Census Adjustment Litig.*, 506 F. Supp. at 651; *In re Beef Indus. Antitrust Litig.*, 1977 WL 1559, at *2.   The People's arguments on this score only confirm that its action is fundamentally the same as those already pending in MDL 1358, and that it should be transferred as well.

## CONCLUSION

The need to consolidate the next wave of MTBE litigation -- currently at almost 60 cases brought in 15 different states and removed to 20 different federal courts -- is apparent. The undersigned defendants, who represent many of the defendants in the MTBE actions, have stipulated to the actions being transferred to MDL 1358. So have the plaintiffs' attorneys who control a large share of these cases. Judge Scheindlin, presiding over MDL 1358, has welcomed these cases and can be expected to bring experience and expertise to bear in guiding the MTBE actions forward, just as occurred in the Court's recent ruling on the New York remand motions. In light of the substantial economies to be saved, the justice and efficiency to be achieved, and the inconsistencies to be avoided, the few objectors who filed motions to vacate should not be permitted to fracture the new round of MTBE litigation to the detriment of the other participants. This is especially true where the only arguments the objectors can offer have been rejected time and again by this Panel. Therefore, for the reasons stated above, the undersigned defendants respectfully request that the Panel deny all pending motion to vacate any part of CTO-5 and order the transfer of *Riverside*, *Roseville*, *Quincy*, *Orange*, *People*, and *Silver* to MDL 1358 for coordinated and consolidated pretrial proceedings.

April 15, 2004                                    Respectfully submitted,

J. Andrew Langan
Mark S. Lillie
Wendy L. Bloom
R. Chris Heck
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
312-861-2000
312-861-2200 (Facsimile)

Matthew T. Heartney

30

Lawrence Allen Cox
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
(213) 243-4199 (Facsimile)

Attorneys for Defendants Atlantic Richfield Company
and BP Products North America Inc. (and affiliated
companies named as Defendants) (join in opposing
Motions by *Silver*, *Riverside*, *Roseville*, *Orange
County*, *People* and *Quincy* Plaintiffs, including
Motion by People)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Colleen P. Doyle
Diana Pfeffer Martin
BINGHAM McCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106
(213) 680-6400
(213) 680-6499 (Facsimile)

Attorneys for Defendants ExxonMobil  Corporation
(joins in opposing Motions of *Riverside*, *Orange
County* and *People* Plaintiffs, including Motion by
People), Mobil Corporation (joins in opposing Motion
of *Orange County* Plaintiff), Tesoro Refining and
Marketing Company (joins in opposing Motions of
*Quincy*, *Riverside*, *Roseville* and *People* Plaintiffs,
including Motion by People), Tesoro Petroleum
Corporation (joins in opposing Motion of *Silver*
Plaintiffs), Tesoro Refining and Marketing Company,
Inc. f/k/a Tesoro West Coast Crown Central
Petroleum Corporation (joins in opposing Motion of
*Silver* Plaintiffs)

31

Ben M. Krowicki
Rebecca L. Bouchard
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
(860) 240-2842
(860) 240-2818 (facsimile)

Attorneys for Defendant Crown Central Petroleum
Corp. (joins in opposing Motion by *Silver* Plaintiffs)

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600
(312) 692-1718 (Facsimile)

Attorneys for Defendant CITGO Petroleum
Corporation (joins in opposing Motions by *Silver* and
*People* Plaintiffs, including Motion by People)

Alan J. Hoffman
Laurence S. Shtasel
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 832-5505 (Facsimile)

Attorneys for Defendants Lyondell Chemical
Company, individually and formerly known as
Lyondell Petrochemical Company and formerly
known as ARCO Chemical Company (join in
opposing Motions of *Silver*, *Riverside*, *Roseville*,
*Orange County*, *People*, and *Quincy* Plaintiffs,
including Motion by People)

Steven L. Leifer
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 639-7700
(202) 585-1040 (Facsimile)

Attorneys for Defendants Marathon Ashland
Petroleum LLC and Marathon Oil Corporation (join
in opposing Motion of *Silver* Plaintiffs)

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Chevron U.S.A., Inc. (joins
in opposing Motions of *Riverside*, *Roseville*, *Silver*,
*Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Chevron Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People), Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People) and Texaco
Inc. (joins in opposing Motion of *Silver* Plaintiffs)

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Equilon Enterprises LLC
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Motiva Enterprises
LLC (joins in opposing Motion of *Silver* Plaintiffs),
Shell Oil Company (joins in opposing Motions of
*Riverside*, *Roseville*, *Silver*, *Orange County*, *People*
and *Quincy* Plaintiffs, including Motion by People),
Shell Oil Products Company LLC (joins in opposing
Motion of *Silver* Plaintiffs), Shell Oil Products US
(joins in opposing Motion of *Silver* Plaintiffs), and
Shell Petroleum, Inc. (joins in opposing Motion of
*Silver* Plaintiffs)

Tracie J. Renfroe
BRACEWELL & PATTERSON, L.L.P.
Pennzoil South Tower
711 Louisiana, Suite 2900
Houston, TX 77002
(713) 221-1404
(713) 221-2123 (Facsimile)

Attorneys for Defendants Valero Energy Corporation
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *People*, and *Quincy* Plaintiffs, including
Motion by People); Valero Refining Company
California (joins in opposing Motions by *Riverside*,
*Orange County*, and *Quincy* Plaintiffs); Valero
Marketing and Supply Company, Valero Refining and
Marketing Company, Valero Refining Company
Louisiana, Valero Refining Company New Jersey,
Valero Refining Company Texas, and Valero-
Colorado Refining Company (join in opposing
Motion of *Silver* Plaintiffs)

Mindy G. Davis
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
(202) 783-0800
(202) 383-6610 (Facsimile)

Attorneys for Defendants El Paso Corporation and El
Paso CGP Company (join in opposing Motion of
*Silver* Plaintiffs)

John S. Guttman
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 789-6020
(202) 789-6190 (facsimile)

Attorneys for Defendants Sunoco Inc. and Sunoco
Inc. (R&M) (join in opposing Motion of *Silver*
Plaintiffs) (Sun Oil Company and Sun Refining and
Marketing, also named as defendants in *Silver*, are
historic corporate names and no longer exist as
separate entities)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  | |  |
|---|---|---|
| | ) | **MDL Docket No. 1358** |
| | ) | |
| | ) | This Document Relates to: |
| | ) | |
| | ) | *City of Riverside v. Atlantic Richfield Co., et al.*, |
| | ) | Case No. EDCV03-1460 RT SGLx (C.D. Cal.) |
| | ) | |
| | ) | *City of Roseville v. Atlantic Richfield Co., et al.*, |
| | ) | Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) |
| | ) | |
| **IN RE:** | ) | *Silver, et al. v. Alon USA Energy, Inc., et al.*, Case |
| | ) | No. 03 CV2408 J(RBB) (S.D. Cal.) |
| **METHYL TERTIARY BUTYL ETHER** | ) | |
| **PRODUCTS LIABILITY LITIGATION** | ) | *Orange County Water District v. Unocal* |
| | ) | *Corporation, et al.*, Case No. SACV03-1742 |
| | ) | JVS(ANX) (C.D. Cal.) |
| | ) | |
| | ) | *People of the State of California, et al. v. Atlantic* |
| | ) | *Richfield Co., et al.*, Case No. CIVS-03-2653 GEB |
| | ) | DAD (E.D. Cal.) |
| | ) | |
| | ) | *Quincy Community Services District v. Atlantic* |
| | ) | *Richfield Co., et al.*, Case No. CIVS-03-2582 WBS |
| | ) | DAD (E.D. Cal.) |
| | ) | |
| | ) | **CERTAIN DEFENDANTS' STATEMENT OF** |
| | ) | **REASONS WHY ORAL ARGUMENT** |
| | ) | **SHOULD BE  HEARD REGARDING ALL** |
| | ) | **MOTIONS TO VACATE CONDITIONAL** |
| | ) | **TRANSFER ORDER (CTO-5)** |

## CERTAIN DEFENDANTS' STATEMENT OF REASONS
## WHY ORAL ARGUMENT SHOULD BE HEARD REGARDING
## ALL MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

Pursuant to Rule 16.1(b) of the Rules of Procedure Of The Panel On Multidistrict Litigation, the undersigned defendants file this Certain Defendants' Statement Of Reasons Why Oral Argument Should Be Heard Regarding All Motions To Vacate Conditional Transfer Order (CTO-5). The undersigned defendants hereby request that oral argument be heard on the following motions: (i) Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) opposing transfer of *City of Riverside v. Atlantic Richfield Co., et al.*, Case No. EDCV03-1460 RT SGLx (C.D. Cal.) ("*Riverside*"), *City of Roseville v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) ("*Roseville*"), *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2582 WBS DAD (E.D. Cal.) ("*Quincy*"), *Orange County Water District v. Unocal Corporation, et al.*, Case No. SACV03-1742 JVS(ANX) (C.D. Cal.) ("*Orange*"), *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2653 GEB DAD (E.D. Cal.) ("*People*"), and *Silver, et al. v. Alon USA Energy, Inc., et al.*, Case No. 03 CV2408 J(RBB) (S.D. Cal.) ("*Silver*") cases to the MDL 1358 Court; (ii) the People of the State of California's Motion To Vacate Conditional Transfer Order opposing transfer of the *People* case to the MDL 1358 Court; and (iii) Motion of Defendants Fuel Star, Inc. and Blue Star Petroleum, Inc. To Vacate Conditional Transfer Order No. 5 opposing transfer of the *Quincy* case to the MDL 1358 Court. The undersigned defendants respectfully request that oral argument be heard on these three motions for the following reasons:

1.    Currently more than forty MTBE cases are before Judge Scheindlin for coordinated pre-trial proceedings in MDL 1358. The *Riverside*, *Roseville*, *Quincy*, *Orange*, *People*, and *Silver* actions are clearly tag-along cases that are appropriately transferred to MDL 1358. Absent transfer of these matters to Judge Scheindlin, defendants face enormous

2

inefficiencies in litigation, the likelihood of duplicative discovery and the significant risk of inconsistent pretrial rulings.  In light of the serious consequences implicated by the Plaintiffs, People, and Fuel Star/Blue Star Motions to Vacate CTO-5, oral argument should be heard to enable all parties to be fully heard.

    2. Oral argument will facilitate the Panel's ability to rule on the three motions because all parties will be available to address any questions and comments of the Panel.

April 15, 2004      Respectfully submitted,

            _____
            J. Andrew Langan
            Mark S. Lillie
            Wendy L. Bloom
            R. Chris Heck
            KIRKLAND & ELLIS LLP
            200 East Randolph Drive
            Chicago, Illinois  60601-6636
            312-861-2000
            312-861-2200 (Facsimile)

            Matthew T. Heartney
            Lawrence Allen Cox
            ARNOLD & PORTER LLP
            777 South Figueroa Street, 44th Floor
            Los Angeles, CA 90017-5844
            (213) 243-4000
            (213) 243-4199 (Facsimile)

            Attorneys for Defendants Atlantic Richfield Company
            and BP Products North America Inc. (and affiliated
            companies named as Defendants) (join in opposing
            Motions by *Silver*, *Riverside*, *Roseville*, *Orange
            County*, *People* and *Quincy* Plaintiffs, including
            Motion by People)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Colleen P. Doyle
Diana Pfeffer Martin
BINGHAM McCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106
(213) 680-6400
(213) 680-6499 (Facsimile)

Attorneys for Defendants:  ExxonMobil  Corporation
(joins in opposing Motions of *Riverside*, *Orange
County* and *People* Plaintiffs, including Motion by
People), Mobil Corporation (joins in opposing Motion
of *Orange County* Plaintiff), Tesoro Refining and
Marketing Company (joins in opposing Motions of
*Quincy*, *Riverside*, *Roseville* and *People* Plaintiffs,
including Motion by People), Tesoro Petroleum
Corporation (joins in opposing Motion of *Silver*
Plaintiffs), Tesoro Refining and Marketing Company,
Inc. f/k/a Tesoro West Coast Crown Central
Petroleum Corporation (joins in opposing Motion of
*Silver* Plaintiffs)

Ben M. Krowicki
Rebecca L. Bouchard
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103
(860) 240-2842
(860) 240-2818 (facsimile)

Attorneys for Defendant Crown Central Petroleum
Corp. (joins in opposing Motion by *Silver* Plaintiffs)

4

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
(312) 660-7600
(312) 692-1718 (Facsimile)

Attorneys for Defendant CITGO Petroleum
Corporation (joins in opposing Motions by *Silver* and
*People* Plaintiffs, including Motion by People)

Alan J. Hoffman
Laurence S. Shtasel
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 832-5505 (Facsimile)

Attorneys for Defendants Lyondell Chemical
Company, individually and formerly known as
Lyondell Petrochemical Company and formerly
known as ARCO Chemical Company (join in
opposing Motions of *Silver*, *Riverside*, *Roseville*,
*Orange County*, *People*, and *Quincy* Plaintiffs,
including Motion by People)

Steven L. Leifer
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 639-7700
(202) 585-1040 (Facsimile)

Attorneys for Defendants Marathon Ashland
Petroleum LLC and Marathon Oil Corporation (join
in opposing Motion of *Silver* Plaintiffs)

5

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Chevron U.S.A., Inc. (joins
in opposing Motions of *Riverside*, *Roseville*, *Silver*,
*Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Chevron Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People), Texaco
Corporation (joins in opposing Motions of *Riverside*,
*Roseville*, *Silver*, *Orange County*, *People* and *Quincy*
Plaintiffs, including Motion by People) and Texaco
Inc. (joins in opposing Motion of *Silver* Plaintiffs)

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING MARRARO & BRANSON LLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000
(202) 204-1001 (Facsimile)

Attorneys for Defendants Equilon Enterprises LLC
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *Orange County*, *People* and *Quincy* Plaintiffs,
including Motion by People), Motiva Enterprises
LLC (joins in opposing Motion of *Silver* Plaintiffs),
Shell Oil Company (joins in opposing Motions of
*Riverside*, *Roseville*, *Silver*, *Orange County*, *People*
and *Quincy* Plaintiffs, including Motion by People),
Shell Oil Products Company LLC (joins in opposing
Motion of *Silver* Plaintiffs), Shell Oil Products US
(joins in opposing Motion of *Silver* Plaintiffs), and
Shell Petroleum, Inc. (joins in opposing Motion of
*Silver* Plaintiffs)

Tracie J. Renfroe
BRACEWELL & PATTERSON, L.L.P.
Pennzoil South Tower
711 Louisiana, Suite 2900
Houston, TX 77002
(713) 221-1404
(713) 221-2123 (Facsimile)

Attorneys for Defendants Valero Energy Corporation
(joins in opposing Motions of *Riverside*, *Roseville*,
*Silver*, *People*, and *Quincy* Plaintiffs, including
Motion by People); Valero Refining Company
California (joins in opposing Motions by *Riverside*,
*Orange County*, and *Quincy* Plaintiffs); Valero
Marketing and Supply Company, Valero Refining and
Marketing Company, Valero Refining Company
Louisiana, Valero Refining Company New Jersey,
Valero Refining Company Texas, and Valero-
Colorado Refining Company (join in opposing
Motion of *Silver* Plaintiffs)

Mindy G. Davis
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
(202) 783-0800
(202) 383-6610 (Facsimile)

Attorneys for Defendants El Paso Corporation and El
Paso CGP Company (join in opposing Motion of
*Silver* Plaintiffs)

7

John S. Guttman
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 789-6020
(202) 789-6190 (facsimile)

Attorneys for Defendants Sunoco Inc. and Sunoco
Inc. (R&M) (join in opposing Motion of *Silver*
Plaintiffs)  (Sun Oil Company and Sun Refining and
Marketing, also named as defendants in *Silver*, are
historic corporate names and no longer exist as
separate entities)

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 15 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE:** ) | MDL Docket No. 1358 |
| ) | |
| **METHYL TERTIARY BUTYL ETHER** ) | *City of Riverside v. Atlantic Richfield* |
| **PRODUCTS LIABILITY LITIGATION** ) | *Co., et al.*, Case No. EDCV03-1460 RT |
| ) | SGLx (C.D. Cal.) |
| ) | |
| ) | *City of Roseville v. Atlantic Richfield* |
| ) | *Co., et al.*, Case No. CIVS-03-2601 |
| ) | LKK GGH (E.D. Cal.) |
| ) | |
| ) | *Silver, et al. v. Alon USA Energy, Inc., et* |
| ) | *al.*, Case No. 03 CV2408 J(RBB) (S.D. |
| ) | Cal.) |
| ) | |
| ) | *Orange County Water District v. Unocal* |
| ) | *Corporation, et al.*, Case No. SACV03- |
| ) | 1742 JVS(ANX) (C.D. Cal.) |

*People of the State of California, et al. v.*
*Atlantic Richfield Co., et al.*, Case No.
CIVS-03-2653 GEB DAD (E.D. Cal.)

*Quincy Community Services District v.*
*Atlantic Richfield Co., et al.*, Case No.
CIVS-03-2582 WBS DAD (E.D. Cal.)
**PROOF OF SERVICE**

## CERTIFICATE OF SERVICE

STATE OF ILLINOIS          )
                           )     ss
COUNTY OF COOK             )

MDL Docket No. 1358

*City of Riverside v. Atlantic Richfield Co., et al.*, Case No. EDCV03-1460 RT SGLx (C.D. Cal.)

*City of Roseville v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2601 LKK GGH (E.D. Cal.)

*Silver, et al. v. Alon USA Energy, Inc., et al.*, Case No. 03 CV2408 J(RBB) (S.D. Cal.)

*Orange County Water District v. Unocal Corporation, et al.*, Case No. SACV03-1742 JVS(ANX) (C.D. Cal.)

*People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2653 GEB DAD (E.D. Cal.)

*Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. CIVS-03-2582 WBS DAD (E.D. Cal.)

I am employed in the County of Cook County, State of Illinois.  I am over the age of 18 and not a party to this action.  My business address is 200 East Randolph Drive, Suite 5400, Chicago, IL  60601.

On **APRIL 15, 2004**, I served the following documents described as:

1.  Certain Defendants' Consolidated Opposition To Fuel Star, Inc, and Blue Star Petroleum, Inc's Motion To Vacate Conditional Transfer Order (CTO-5) And Brief In Support Thereof.

2.  Certain Defendants' Consolidated Opposition To the People of the State of California's Motion To Vacate Conditional Transfer Order (CTO-5) And Brief In Support Thereof.

3.  .Certain Defendants' Consolidated Opposition to Plaintiffs' Joint Motion to Vacate Conditional Transfer Order (CTO-5)

4.  Certain Defendants' Consolidated Response Opposing All Motions To Vacate Conditional Transfer Order (CTO-5).

5.  Appendix To Certain Defendants' Consolidated Response Opposing All Motions To Vacate Conditional Transfer Order (CTO-5).

6. Certain Defendants' Statement of Reasons Why Oral Argument Should Be Heard Regarding All Motions to Vacate Conditional Transfer Order (CTO-5)

7. 4/2/04 Letter from Wendy Bloom to Clerk of the Panel

8. 4/5/04 Communication from MDL Panel granting defendants' extension of time to file 30 page brief in response to motions to vacate Conditional Transfer Order (CTO-5)

9. Proof of Service

[ X ]   by placing true copies thereof in sealed envelop(s) addressed as follows:

## SEE ATTACHED SERVICE LIST

[ X ]   (**BY MAIL**)  I caused such envelope to be deposited in the mail at Chicago, Illinois, with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion to party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.  Executed on **APRIL 15, 2004**, at Chicago, Illinois.

[ X ]   **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_Lesley C. Fairley_
Lesley C. Fairley

Page 1 of 2

## SCHEDULE OF ACTIONS AND PANEL SERVICE LIST (Excerpted from CTO-5)
## DOCKET NO. 1358
## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS
## LIABILITY LITIGATION

### Central District of California
*City of Riverside v. Atlantic Richfield Co., et al.*, C.A. No. 8:04-53
*Orange County Water District v. Unocal Corp., et al.*, C.A. No. 8:03-1742

### Eastern District of California
*Quincy Community Services District v. Atlantic Richfield Co., et al.*, C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.*, C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et al.*, C.A. No. 2:03-2653

### Southern District of California
Martin Silver, et al. v. Alon USA Energy, Inc., et al., C.A. No. 3:03-2408

Jon D. Anderson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Ronit C. Barrett
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Patrick E. Cafferty, Jr.
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Lawrence Allen Cox
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513

Mindy G. Davis
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Russ Detrick
Sacramento County District Attorney
Environmental Protection Division
901 G Street, Suite 700
Sacramento, CA 95814

Brendan M. Dixon
Unocal Corp.
376 S. Valencia Avenue
Brea, CA 92626

Robert P. Doty
Cox, Castle & Nicholson, LLP
555 Montgomery Street
15th Floor
San Francisco, CA 94111-2585

Colleen P. Doyle
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

Taylor M. Florence
Bullivant, Houser, Bailey, et al.
11335 Gold Express Drive
Ste 105
Goldriver, CA 95670-4491

Pamela R. Hanebutt
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Matthew T. Heartney
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Alan J. Hoffman
Blank Rome, L.L.P.
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998

Hojoon Hwang
Munger, Tolles & Olson, LLP
33 New Montgomery Street
19th Floor
San Francisco, CA 94105

Michele D. Johnson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Joseph Conrad Kearfott
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Ben M. Krowicki
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103-3178

SCHEDULE OF ACTIONS AND PANEL SERVICE LIST - MDL-1358 (CONT.)          Page 2 of 2

John J. Lyons
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626-1925

Victor M. Sher
Sher & Leff
450 Mission St.
Suite 500
San Francisco, CA 94105

Christopher J. McNevin
Pillsbury Winthrop, LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-2513

Alison N. Shue
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Catherine Noel Mitchell
Morgan Lewis & Bockius, LLP
300 S. Grand Ave
22nd Fl
Los Angeles, CA 90071-3132

Catherine M. Stites
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106

Jeffrey John Parker
Sheppard, Mullin, Richter & Hampton
333 South Hope Street
Suite 4800
Los Angeles, CA 90071-1448

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Morris A. Ratner
Lieff, Cabraser, Heimann & Bernstein.
780 Third Avenue
48th Floor
New York, NY 10017

Peter John Wilson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Lila Pankey Ray
Baker & Botts
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Christopher F. Wong
Bryan Cave, L.L.P
120 Broadway
Suite 300
Santa Monica, CA 90401

Tracie J. Renfroe
Bracewell & Patterson
South Tower Pennzoil Place
Suite 2900
711 Louisiana
Houston, TX 77002

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Edward Romero
Greenan, Peffer, Sallander & Lally, LLP
Two Annabel Lane
Suite 200
P.O. Box 10
San Ramon, CA 94583

Craig J. de Recat
Manart Phelps & Phillips
11355 W. Olympic Boulevard
Los Angeles, CA 90064-1614

David L. Schrader
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 5 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL Docket No. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *City of Riverside v. Atlantic Richfield Co., et al.,* |
| | ) Case No. EDCV03-1460 RT SGLx (C.D. Cal.) |
| | ) |
| | ) *City of Roseville v. Atlantic Richfield Co., et al.,* |
| | ) Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) |
| | ) |
| **IN RE:** | ) *Silver, et al. v. Alon USA Energy, Inc., et al.,* Case |
| | ) No. 03 CV2408 J(RBB) (S.D. Cal.) |
| **METHYL TERTIARY BUTYL ETHER** | ) |
| **PRODUCTS LIABILITY LITIGATION** | ) *Orange County Water District v. Unocal* |
| | ) *Corporation, et al.,* Case No. SACV03-1742 |
| | ) JVS(ANX) (C.D. Cal.) |
| | ) |
| | ) *People of the State of California, et al. v. Atlantic* |
| | ) *Richfield Co., et al.,* Case No. CIVS-03-2653 GEB |
| | ) DAD (E.D. Cal.) |
| | ) |
| | ) *Quincy Community Services District v. Atlantic* |
| | ) *Richfield Co., et al.,* Case No. CIVS-03-2582 WBS |
| | ) DAD (E.D. Cal.) |
| | ) |

## APPENDIX OF EXHIBITS TO
## CERTAIN DEFENDANTS' CONSOLIDATED
## RESPONSE OPPOSING ALL MOTIONS TO VACATE
## <u>CONDITIONAL TRANSFER ORDER (CTO-5)</u>

| TAB | DESCRIPTION |
|-----|-------------|
| A | 10/10/2000 MTBE Transfer Order |
| B | 12/19/2003 Hearing Transcript |
| C | 12/23/2003 Order by Judge Scheindlin |

| D | 2/23/04 Civil Minutes for *Orange County* and *Riverside* |
|---|---|
| E | 1/27/04 *Quincy* Stay Order |
| F | 3/24/04 *Quincy* Reconsideration Order |
| G | 2/5/04 *People* Stay Order |
| H | 2/25/04 CTO-5 Issued in MTBE 1358 |
| I | 3/16/04 MTBE 1358 Court Remand Opinion |
| J | 3/23/04 Transcript of hearing held by MTBE 1358 Court |
| K | 4/1/04 MTBE 1358 Case Management Order |
| L | 2/23/04 Transcript of hearing held by Judge Selna in *Orange County* and *Riverside* |
| M | 2/6/04 Plaintiff's Opposition To Certain Defendants' Motion To Stay Proceedings; Declaration Of Victor M. Sher filed in *Orange County* |
| N | 2/5/04 Memorandum Of Points And Authorities In Support Of Plaintiff's Motion For Reconsideration Of January 28, 2004 Order Granting Stay And Denying Motion For Remand; Declaration Of Victor M. Sher filed in *Quincy* |
| O | Declaration of Matthew T. Heartney |
| P | Declaration of David L. Schrader |

A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 0 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-370
David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-371
Donna Berisha, et al. v. Amerada Hess Corp., et al., S.D. New York, C.A. No. 1:00-1898

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES,[*] MOREY L. SEAR,[*] BRUCE M. SELYA[*] AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of three actions pending in the following federal districts: two actions in the Southern District of Illinois and one action in the Southern District of New York.[1] Before the Panel is a motion by five oil company defendants seeking centralization of these actions, pursuant to 28 U.S.C. §1407, in the Southern District of Illinois for coordinated or consolidated pretrial proceedings. Five additional defendants agree that centralization is appropriate, although two of these defendants prefer centralization in the Southern District of New York. The Illinois plaintiffs support centralization in the Illinois court. The New York plaintiffs along with eight defendants oppose centralization; if the Panel deems centralization appropriate, the New York plaintiffs and at least one opposing defendant favor centralization in the New York court.[2]

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact concerning i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public, and ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination. Centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Section 1407 proceedings are desirable in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

Opponents of transfer argue that the presence of individual questions of fact militate against 1407 transfer. We are unpersuaded by this argument. Indeed, we point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who

---

[*] Judges Hodges, Sear and Selya took no part in the decision of this matter.

[1] The Panel has been notified that two potentially related actions have been recently filed in the Middle and Southern Districts of Florida. These actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 192 F.R.D. 459, 468-470 (2000).

[2] In an interested party response, plaintiffs in a potentially related action – *Buddy Lynn, et al. v. Amoco Oil Company, et al.*, M.D. Alabama, C.A. No. 96-940 – suggest centralization of MDL-1358 in the Middle District of Alabama.

- 2 -

can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.  It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or an action can be remanded to their transferor district for trial in advance of completion of the other actions in the transferee district. But we are unwilling, on the basis of the record before us, to make such a determination at this time. Should the transferee judge deem remand of any claims or an action appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-472 (2000).

We are persuaded that centralization of this litigation in the Southern District of New York is appropriate.  We note that the New York action is proceeding apace before Judge Shira Ann Scheindlin and we are confident in her ability to conduct pretrial proceedings in this litigation in an expeditious manner.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned actions pending in the Southern District of Illinois be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

John F. Nangle
Chairman

B

3CJLMTBC

1

```
3CJLMTBC
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2
 2   ------------------------------x
 3   IN RE:  MTBE, et al.                00 MDL 1358 (SAS)
 3   ------------------------------x
 4   IN RE:
 5   County of Nassau, et al.,
 6           -against-                   93 CV 9543  (SAS)
 7   Ameroda Hess, et al.
 8   ------------------------------x
 8                                       New York, N.Y.
 9                                       December 19, 2003
 9                                       10:17 a.m.
10
10   Before:
11
11                    HON. SHIRA A. SCHEINDLIN,
12
12                                       District Judge
13
13                       APPEARANCES
14
14   WEIRZ & LUXEMBERG
15       Attorneys for Plaintiffs Nassau County, et al.
15·  BY:  SANDERS MCNEW
16       ROBERT GORDON
16       STANLEY ALPERT
17
17   NAPOLI, KAISER & BERN, LLP
18       Attorneys for Plaintiffs Village of Mineola, et al.
18   BY:  MARC JAY BERN
19       TOM RALEIGH
19
20   MCDERMOTT, WILL & EMERY
20       Attorneys for Defendant Exxon Mobil
21   BY:  PETER JOHN SACRIPANTI
21       JAMES PARDO
22
22   EIMER, STAHL, KLEVORN & SOLBERG
23       Attorneys for Defendant Citgo Petroleum
23   BY:  NATHAN P. EIMER
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
3CJLMTBC
 1                   APPEARANCES (cont.)
 2   J. ANDREW LANGAN
 2       Attorney for Defendants BP Products, et al.
 3
 3   WALLACE, KING, MARRARO & BRANSON
 4       Attorneys for Defendants Chevron, USA, et al.
 4   BY:  RICHARD E. WALLACE, JR.
 5
 5   PATTON, BOGGS
 6       Attorneys for Defendant Texaco, Inc.
 6   BY:  ROBERT JONES
 7
 7   BEVERIDGE & DIAMOND
```

Page 1

Exhibit 5
Page 1 of 19

3CJLMTBC

8
8    Attorneys for Defendants Sunoco, Inc., et al.
8    BY:  HEATHER FUSCO
9
9    LATHAM & WATKINS
10    Attorneys for Defendants Conoco and Getty
10    BY:  JOHN McGAHREN
11
11    GOODWIN, PROCTER, LLP
12    Attorneys for Defendant Gulf Oil Ltd. Partnership
12    BY:  CHRISTOPHER J. GARVEY
13
13    BLANK, ROME, LLP
14    Attorneys for Defendant Lyondell Chemical Company
14    BY:  MICHAEL J. ROESSNER
15
15    HOWREY, SIIMON, ARNOLD & WHITE
16    Attorneys for Defendants Ameroda Hess, et al.
16    BY:  MINDY G. DAVIS
17
17    HUNTON & WILLIAMS
18    Attorneys for Defendant Koch Industries
18    BY:  LAUREN ROSENBLATT
19
20
21
22                    * CONFERENCE *
23
24
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              3

3CJLMTBC                    Conference
1        (Case called)
2        THE COURT:  Mr. McNew?
3        MR. McNEW:  Good morning, your Honor.
4        THE COURT:  Mr. Gordon?
5        MR. GORDON:  Good morning.
6        THE COURT:  Mr. Alpert?
7        MR. ALPERT:  Good morning, your Honor.
8        MR. BERN:  Good morning, your Honor.
9        MR. RALEIGH:  Good morning, your Honor.
10       THE COURT:  Good morning, Mr. Bern, Mr. Raleigh.
11   Mr. Sacripanti?
12       MR. SACRIPANTI:  Good morning, your Honor.
13       THE COURT:  Mr. Eimer?
14       MR. EIMER:  Good morning, your Honor.
15       THE COURT:  Mr. Pardo.
16       MR. PARDO:  Good morning, your Honor.
17       THE COURT:  Mr. Langan?
18       MR. LANGAN:  Good morning, your Honor.
19       THE COURT:  Mr. Wallace?
20       MR. WALLACE:  Good morning, your Honor.
21       MR. JONES:  Good morning, your Honor.
22       THE COURT:  Mr. Jones.  And Miss Fusco?
23       MS. FUSCO:  Good morning.
24       THE COURT:  Those are the folks on the seating chart
25   but good morning to the rest of you who aren't on the seating
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              4

3CJLMTBC                    Conference
1    chart, but are here.
                            Page 2

Exhibit 5
Page 2 of 19

3CJLMTBC

2      Well, it does seem a bit like a reunion, but that's
3  not why we're here, to have our annual reunion.  We're here
4  because there have been filings, a number of remands around the
5  country, state court.  There's been removal of those cases to
6  various federal courts around the country.
7      And there are two in this district:  County of Nassau
8  versus Ameroda Hess and Western Nassau Water Authority versus
9  Ameroda Hess.  The first one, County of Nassau, 03 CV 9543.
10  And the other one, Water Authority Western Nassau, 03 CV 9544.
11  Now, I'm not even sure that these two cases have been yet
12  assigned to me.  They may have been marked as related to the
13  earlier cases pending my accepting them but it wouldn't matter
14  today because I'm also the Part 1 judge.
15      In any event, you would have been stuck with me today.
16  They are unassigned.  So whether they're here as related cases,
17  here as Part 1 cases or here as potentially MDL 1358, it
18  doesn't matter, because it's before me.
19      So the issue we're here to discuss, I think, is
20  whether this Court should stay consideration of a pending
21  motion to remand, the courtesy copy papers of which we received
22  last night.  The plaintiffs are moving to remand these two
23  cases to state court, probably moving to remand cases around
24  the country to state court.  The question is whether those
25  motions should be stayed pending the decision by the federal

5

3CJLMTBC                    Conference

1  MDL Panel as to where all removed federal cases should be
2  heard.  Should they be heard by one MDL selected judge or
3  should they remain in their many jurisdictions around the
4  country?  If these actions are not stayed pending decision of
5  the MDL Panel, of course, the risk is inconsistent rulings on
6  the remand issue.  We may have differing remand decisions from
7  federal judges all over the country.  If they were stayed
8  pending the MDL Panel's decision as to what to do with these,
9  what appears to be now maybe 40 cases, then the remand decision
10  would be made by the one judge that the MDL Panel selects, if
11  they decide to treated this as an MDL.  I think that frames the
12  issue.
13      The history this week is that I received a letter from
14  the defendants asking for a stay.  And I, too quickly, without
15  waiting to hear from the plaintiffs, endorsed it and granted
16  the stay, and then I got a letter from the plaintiffs and said,
17  No, there are good reasons not to grant a stay, and I said,
18  Well, I haven't heard from them, that's true, so I vacated the
19  stay and I invited you all to come in today and discuss this
20  with the thought that I would make a decision at the conference
21  today.  So that's where we stand.
22      My first act, I heard from the one side, I vacated
23  that.  I'd like to hear from both sides -- briefly, because I
24  have read your material -- and make a decision.  So who would
25  like to be heard?  Mr. McNew?

6

3CJLMTBC                    Conference

1      MR. McNEW:  Thank you, Judge.  And thank you for
2  hearing us on short notice.  We're grateful for that.
3      The narrow issue before you this morning, I believe,
4  is:  Does it make more sense to hear the remand proceedings in
5  these two cases now or whether it makes sense to stay them
6  pending proceedings in other courts and before the Judicial

Exhibit 5
Page 3 of 19

3CJLMTBC

7  Panel on Multidistrict Litigation. Whatever the merits of the
8  request to stay in other courts, Judge, we have a difficult
9  time understanding the logic of asking you to stay your
10 decision on these remand motions. Because unlike every other
11 court in the country, you, Judge, are the presiding judge over
12 MDL 1358. And the defendants' papers throughout the country
13 are all identical on this point. They in each case ask that
14 the Court not only remove the stay, they now move to have these
15 matters sent as tag-along actions to MDL 1358 with the
16 expectation, Judge, that these cases come to you through the
17 mechanism of the JPML for decision on a consolidated MDL basis.
18         Your Honor, while there may be some risk of
19 inconsistent rules in other jurisdictions, the notion that you
20 could enter a ruling today that would be inconsistent with your
21 ruling following a consolidation in MDL 1358 is illogical. And
22 frankly, Judge, if the goal here is to handle this with a
23 minimum of expenditure of federal judicial resources -- and
24 frankly, with a minimum of resources on the part of the parties
25 being expended -- the best thing for you to do is for you to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

7

3CJLMTBC                    Conference
1  decide these remand pages now.
2          THE COURT: That was very interesting; that was very
3  unexpected. I didn't think you were going to argue that. What
4  you're saying is you're going to assume that the MDL Panel will
5  agree to make an MDL decision for all pending cases and refer
6  them to me as part of MDL 1358. And if I knew all that, it
7  would be a fait accompli. There would be no risk of
8  inconsistent rulings around the country because the MDL panel
9  would say all 40 should be MDL, and the MDL should go to Judge
10 Scheindlin.
11         If all that were to be done today, I promise you, I'd
12 start working on the remand motion Monday. But nobody's done
13 that. I can't anticipate what the Judicial Panel of
14 Multidistrict Litigation will do because nobody invited me to
15 be on the panel and I don't get a vote. So I don't know if
16 they'll do that. Do you know if they'll do that?
17         MR. MCNEW: Well, your Honor, first, I would note, I'm
18 not sure if it's clear from the papers that have come to
19 chambers, but it is not the defense -- it's not the defendants'
20 tack to say to the JPML that they ought to consider whether
21 there should be an MDL for these cases. They've identified
22 these expressly as tag-along cases to MDL 1358. They've
23 expressly stated in their papers all around the country --
24         THE COURT: Okay, so the defendants have taken that it
25 should all come here. But what about the various and many
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

8

3CJLMTBC                    Conference
1  plaintiffs' lawyers around the country?
2          MR. MCNEW: We are the various plaintiffs lawyers
3  around the country.
4          THE COURT: You're everybody? What are you all saying
5  to the judicial panel?
6          MR. MCNEW: If the transfer -- if the JPML decides to
7  transfer them to MDL, absolutely, this is where they belong.
8  No question in my mind.
9          THE COURT: So you're okay on the second half. But if
10 they're going to be MDL, they're going to be here. What do
11 they think about MDL tree?
                            Page 4

Exhibit 5
Page 4 of 19

3CJLMTBC

12       MR. McNEW:  I think there's a decision tree here, if
13  the JPML decides that multidistrict litigation isn't warranted
14  here.
15       THE COURT:  Isn't warranted?
16       MR. McNEW:  Is not warranted here, okay, you still
17  have these two cases before you.  You have to decide.  So you
18  should decide them now.
19       THE COURT:  Well, then I would know that that's their
20  decision and lots of judges around the country are going to be
21  making these remand decisions.  I'll just be one of many.  But
22  what is the plaintiffs' position before the panel?  Are you
23  saying they should not be treated as MDL or they should be
24  treated as MDL?  Which position are the plaintiff's lawyers
25  taking?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

3CJLMTBC          Conference

1       MR. McNEW:  Our position -- I just want to make sure
2  we're on the same page -- our position is if they are in the in
3  the federal court, then they absolutely should be in the MDL
4  before your Honor.
5       THE COURT:  If they're in the federal court.
6       MR. McNEW:  If they remain in federal court, if
7  they're not remanded, then absolutely they belong in this
8  courtroom.
9       THE COURT:  Wait, wait, wait.  That is a confusing
10  position.  Surely you're seeking remand.  I understand this.
11       MR. McNEW:  We are.
12       THE COURT:  Your first position is they don't belong
13  in the federal court at all.  I do understand that.
14       MR. McNEW:  That's correct.
15       THE COURT:  But before the Judicial Panel on
16  Multidistrict Litigation are you saying, Let's quickly get them
17  MDL, for one federal judge to decide remand, so that if they
18  should go back to state court, according to that one judge,
19  they'll all go back?  If that one judge says they shouldn't go
20  back, Well, I guess we've lost that; we can appeal it but we've
21  lost it?  So do you want the remand decisions made by as many
22  federal judges as there are around the country or are you not
23  resisting the MDL process so we can get the remand decided at
24  once?
25       MR. McNEW:  We have decided, your Honor, to try and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

3CJLMTBC          Conference

1  have cases remanded before a conditional transfer order comes
2  out.  That has been our litigation strategy.  We believe that
3  the removals are so facially defective on a jurisdictional
4  ground that it would be more efficient to have them sent down
5  rather than having to go through the laborious process of going
6  through the JPML proceedings.
7       THE COURT:  My guess is you can't beat the process
8  that way, because judges work at various speeds around the
9  country.  You're not going to get all the different federal
10  judges to decide remand motions before the Judicial Panel on
11  Multidistrict Litigation gets to decide whether they should be
12  transferred to one judge as part of an MDL or whether they
13  should stay before many judges.  I don't think you can beat the
14  system that way.  The Judicial Panel on Multidistrict
15  Litigation will hear the issue and will decide.
16       And I did look quickly or briefly at my own prior

Page 5

Exhibit 5
Page 5 of 19

3CJLMTBC

```
17   decision and at your moving papers on the remand issue to get a
18   sense of it, and I can certainly say that your papers are not
19   facially frivolous.  In other words, it's a serious remand
20   motion.
21            On the other hand, nor do I think the removals are
22   facially frivolous.  There are serious, hard issues to be
23   addressed.  It's going to take some work on both sides to
24   figure out -- at least what I think.  This is not the kind of
25   motion that can be decided over the weekend.  Maybe there are
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

3CJLMTBC                    Conference
```
 1   many judges who are smarter and quicker and they'll do it --
 2            MR. MCNEW:  Perhaps on a second reading, Judge.
 3            THE COURT:  Whatever.  But I didn't get there that
 4   fast.  For me it will take some work to figure out what to do.
 5   So seeing as how I think it's a serious motion raising serious
 6   issues on both sides, I don't think it's a good idea to risk
 7   many inconsistent verdicts from around the country, and there
 8   did seem to be a case in the Second Circuit, I thought this Ivy
 9   case, 901 F2d 7, 2d Cir. 1990, the Second Circuit at least
10   seemed to take the position that it be wise to get the MDL
11   process organized first, transfer to one judge, and then the
12   Court said:
13            Once transferred, the jurisdictional objections can be
14   heard and resolved by a single court and reviewed at the
15   appellate level.  Consistence as well as economy is thus
16   served.  We hold, therefore, the MDL Panel has jurisdiction to
17   transfer a case in which a jurisdictional objection is pending.
18            And that's exactly this case procedurally.  There's a
19   real jurisdictional objection, a very important one.  You're
20   saying it should not be in the federal court, should be in the
21   state court.  There's no federal jurisdiction.  Nothing could
22   be more important.
23            Rather than have 40 federal judges over and over again
24   struggle with difficult issues of preemption and other
25   things -- not just preemption, there are other questions here
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

3CJLMTBC                    Conference
```
 1   about jurisdiction -- rather than have all that struggling
 2   going on, if the panel would make a quick decision, would
 3   decide if they want 40 judges to do it or they want one judge
 4   to do it, and if so, which one, then your motion will be
 5   reached quickly once -- to one side or the other, hopefully
 6   quickly -- and then you can get to the merits of what you
 7   eventually want to do.
 8            MR. MCNEW:  Of course, Judge, this is a decision
 9   that's committed to your discretion.  And I appreciate the
10   Second Circuit's decision, and certainly we are all guided by
11   it.  I would ask the Judge, though, to consider in this
12   particular instance there are extraordinary circumstances that
13   aren't present in the ordinary set of facts.  Because in this
14   particular instance, Judge, unlike every other one in the
15   country, by a happy coincidence, we happen to be before the MDL
16   judge.  The one judge that we all agree, if this is proper
17   subject for the MDL, we all agree that you're the judge to hear
18   it.  It's in their papers.  We're here telling you today we
19   absolutely agree with them:  You are the person to hear this
20   case.
21            THE COURT:  You are saying to the MDL Panel, While we
```

Page 6

Exhibit 5
Page 6 of 19

3CJLMTBC
22  oppose the MDL treatment, if you're going to MDL, get it to
23  Judge Scheindlin quickly?  Is what you're going to say?
24      MR. McNEW:  Absolutely.
25      THE COURT:  When are they next hearing these things?
        SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                      13
3CJLMTBC              Conference
Does anybody know what their schedule is?
1       MR. LANGAN:  Your Honor, Andy Langan.  I've been
2   handling the MDL Panel file.  The state of play is reflected in
3   our letter.
4       THE COURT:  Give us the timeline.
5       MR. LANGAN:  Traditional transfer orders have not been
6   entered yet.  It really depends on what the plaintiffs do.  If
7   the plaintiffs object to conditional transfers, once they're
8   entered, it will take awhile.  I'm gratified to hear the
9   plaintiffs say they're not apparently intending to object.
10      THE COURT:  They didn't say that.  They said if it's
11  going to be treated as an MDL, then they think it belongs in
12  this Court.  Their first position before the Court is it should
13  not be MDL, prior to decision on the remand motions around the
14  country.
15      MR. LANGAN:  The MDL Panel routinely overrules that
16  argument.  There's 50 or 60 published decisions that say that's
17  not a ground to not MDL.  Your Honor is aware of that.  There's
18  a ton of cases I think that say that.
19      But to deflect timing -- the plaintiffs are going to
20  object -- it's going to take a couple of months to sort it all
21  out.
22      THE COURT:  And if they don't object?
23      MR. LANGAN:  It's a matter of weeks, once the
24  conditional transfer orders are out.  It's an administrative
25      SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

                                                      14
3CJLMTBC              Conference
issue with the panel's office.  I can't say why they haven't
1   entered them yet.
2       MR. McNEW:  Judge, I'd like to finish my point,
3   because I think it's an important one.  In fact, I think it's
4   the key of this entire hearing.  And it's a simple point, and
5   that is that if we all agree -- we can go down the various
6   decision trees and various outcomes.  But at the end of the
7   day, any disposition of the remand issue in a federal forum, if
8   we lose on all the -- you may be right on the -- what happens
9   with the MDL and other courts' willingness to decide it before
10  the MDL.  But even in that case, we're all at the end of the
11  day back here, before you on the same papers that you have
12  before you today.  And rather than going through this process
13  of ensuring that you do not enter a decision today that is
14  going to be inconsistent with your decision when you decide
15  this in your capacity as an MDL judge --
16      THE COURT:  It's not that inconsistency that's
17  worrying me.  It's the inconsistency potentially with the many
18  other judges around the country.  Not that I can stay their
19  decision to see whether to proceed or not, but they may be
20  influenced by what I do.  You said that when I improvidently
21  signed the defendants' letter --
22      MR. McNEW:  I never used that word, Judge.
23      THE COURT:  Well, quickly, without hearing from you,
24  when I did that, you pointed out they were circulating it to
25      SOUTHERN DISTRICT REPORTERS, P.C.
                  Page 7

Exhibit 5
Page 7 of 19

3CJLMTBC
(212) 805-0300

15

3CJLMTBC                         Conference
1  all these other courts already.  Saying even "she" did this.
2          My point is, if it's going to influence their
3  decision, there's a message I need to send, I think we need to
4  wait for the MDL Panel to decide whether they think this
5  warrants MDL treatment.
6          But I don't know that what the big consequence of this
7  is -- I'm not sure what the big consequence of this is, because
8  if I were to grant this stay, so to speak, of deciding the
9  remand motion while the MDL Panel works it out -- you know, you
10 don't have a camera planted in my chambers.  You're right,
11 eventually I'm going to have to decide whether or not they give
12 MDL treatment.  If they do, I've got them all; if they don't,
13 I've got the two new New York ones.  So there's still an
14 important signal that needs to be sent that I defer to the MDL
15 Panel to make its decision because in theory they might not do
16 it at all, or they might pick a different judge for whatever
17 reason.  I have to respect that.  But if I wish to, I can start
18 working now.
19         MR. McNEW:  Let me make a suggestion, your Honor,
20 because I think there's a way to move this quickly to conserve
21 an awful lot of time and effort in a lot of different foras,
22 and I think you are the key to this because of the unusual
23 circumstance of having these individual cases come to you.
24         THE COURT:  They're only coming to me as related,
25 right?  How do I get these?  They're marked as related cases.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

16

3CJLMTBC                         Conference
1  This wasn't an accident of the wheel.
2          MR. McNEW:  It was an accident.  We filed two in
3  New York Supreme for New York County.  There's a story behind
4  that -- that's another story.
5          THE COURT:  Okay.
6          MR. McNEW:  What I'm trying to get to, Judge, is this:
7  You can -- rather than having us go through a process that will
8  frankly take months -- I have a hard time believing we'll be
9  back here in weeks -- don't stay your own decision on these two
10 cases, and I understand your concern about the message you'll
11 be sending.
12         THE COURT:  Not just the message.  In theory -- let's
13 say the MDL Panel decides on MDL treatment but says, for
14 whatever reason, it shouldn't be Judge Scheindlin, she has a
15 lot of work, a lot of other MDL's.  We'll select so-and-so?
16 Which they'll have the power to do.  Well, I'll have wasted
17 work and we'll never decide these issues.
18         I don't suspect that's going to happen, because I have
19 the original MDL, 1358, and both the defense and the plaintiffs
20 apparently think I should have it, and yet you never know what
21 a group of federal judges will do.  They surprise us every
22 morning.  Who knows what they'll do?
23         So there is a small possibility that I would never
24 have these.  If they MDL it and give it to somebody else --
25 unlikely, but it could happen.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

17

3CJLMTBC                         Conference
1          So I still think a stay according to the Second
2  Circuit is the way to go, pending the MDL's decision.  I'm not
                              Page 8

Exhibit 5
Page 8 of 19

3CJLMTBC

3  seeking to delay it.  I realize it would be a very important
4  motion to move up the list, though in front of one or two
5  important other motions I have pending.
6     MR. GORDON:  Robert Gordon, your Honor, for the
7  plaintiffs as well.  I want to first alert the Court it's not
8  just two cases.  Mr. Bern, who's the other plaintiff counsel
9  here, other than Weirz & Luxemberg, just received notice that
10  seven of his cases were removed to you.  So you now have nine.
11     THE COURT:  Because they were also in New York County?
12     MR. BERN:  Correct; your Honor.
13     MR. GORDON:  So you now have nine here to you.
14     I guess my point is:  We believe you're the MDL.  We
15  believe this is MDL 1358.  They're not opposing that.
16     THE COURT:  But you're opposing it.  I was told by
17  Mr. McNew you're going to tell the MDL Panel, We do not think
18  you should do MDL this until the judges around the country have
19  decided remand.  Procedurally, we think remand comes first.  I
20  and all these federal judges should decide their own remand
21  motion, even though we realize it could be in Arizona, somebody
22  decides to go remand, and in Connecticut, somebody's going to
23  say not remand.  Yet that's our position.  Before the MDL.
24  That's what you're saying.  You're not saying we see the wisdom
25  of getting it all MDL now so one judge could decide it.

18

3CJLMTBC                     Conference

1     MR. GORDON:  We're going to the different federal
2  judges, telling all of them there's no subject matter
3  jurisdiction.
4     THE COURT:  And to decide remand before the MDL Panel
5  acts.
6     MR. GORDON:  But if they say no, I'm going to state
7  this, we, on behalf of our firm, which controls I think
8  99 percent of the cases -- not 100 percent -- for example, the
9  attorney general of New Hampshire is not our case -- that we
10  will not oppose conditional transfer to you so that we can make
11  the -- get the motion, get the motion on for you to remand it.
12  So we're not going to contest that in the JPMDL decision.
13  We're not going to put questions in MDL that they belong --
14     THE COURT:  You're only going to do that if judges
15  start to stay it, individual judges issue stays pending the
16  decision of the MDL Panel.  Then you're going to say, Nobody's
17  going to decide this remand.  Get to the MDL Panel, you have
18  our blessing, get it to MDL, get it to Judge Scheindlin, let's
19  get somebody to decide remand.  Either way -- we'll take it to
20  an appellate court if we lose; they'll take it to an appellate
21  court if they lose.  Let's get going.  So if you could get one
22  and instead of waiting for all these judges to either decide
23  remand or stay, why don't you just forgo it?
24     MR. GORDON:  We would not necessarily be opposed to
25  agreeing, since everyone's going to be deferential to you.

19

3CJLMTBC                     Conference

1  There's about 19 other federal judges --
2     THE COURT:  Talk to my children.
3     MR. GORDON:  They are another matter.  But federal
4  judges will say, what did the MDL judge do?  The proof in the
5  pudding is there:  Immediately on your stay, it was to Judge
6  Spatt before anybody could even spell his name.  That quickly.
7  I don't want to make it look like we're going to contest that

Page 9

Exhibit 5
Page 9 of 19

3CJLMTBC

8  there's an MDL 1358.  We're not going to contest you're the
9  judge and these are tag-alongs.  But you want to decide the
10  remands first.
11        THE COURT:  That's not an issue here.
12        MR. GORDON:  No.
13        THE COURT:  Then write a letter to all the judges,
14  say, We changed our position; we now believe it should all be
15  MDL, one judge should decide remand, we're agreeing about the
16  remand, we agree with the conditional tag-along transfer, and
17  I'll go to work on it.
18        MR. GORDON:  We -- they necessarily want to have the
19  files transferred to the JPMDL to do that.
20        THE COURT:  Fine.
21        MR. GORDON:  We'll let them not rule on a stay and let
22  you rule.
23        THE COURT:  You tell them that.
24        MR. GORDON:  We would do that if your Honor would lift
25  this stay and get reply papers from them so you can decide.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

3CJLMTBC              Conference
1  Because de facto --
2        THE COURT:  I think we could work something out here.
3        MR. GORDON:  -- your decision would be controlling.
4        THE COURT:  I think we can work something out here.  I
5  think all you need to do is talk to your adversaries because
6  you could virtually do it by stipulation.  If you're not
7  pressing your individual remand motions around the country but
8  going to a transfer so we can litigate it here, then we can
9  have a briefing schedule and litigate it here.  Then it's got
10  to be litigated somewhere.  Surely, Mr. Sacripanti, you don't
11  expect it not to be litigated.
12        MR. SACRIPANTI:  No, your Honor.
13        THE COURT:  And you don't want to litigate it before
14  30 judges, do you?
15        MR. SACRIPANTI:  Your Honor, I don't, but there's one
16  problem with the analysis.
17        THE COURT:  Yes.
18        MR. SACRIPANTI:  They don't control all the cases.
19  And not to quibble with my friend Mr. Gordon, I don't think
20  it's 99 percent.
21        THE COURT:  But how about these five lawyers at the
22  front table?
23        MR. SACRIPANTI:  No, your Honor.
24        THE COURT:  Even that?
25        MR. SACRIPANTI:  There's a slew of cases throughout

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

3CJLMTBC              Conference
1  the country with other plaintiffs' firms -- California -- that
2  they don't control.
3        THE COURT:  What if they bring them into a
4  stipulation?  If they can arrange a stipulation, which is all
5  you want, you would like the remand -- Mr. Sacripanti, you
6  would like the remand motion heard in one court?
7        MR. SACRIPANTI:  Indeed, your Honor.
8        THE COURT:  Work it out.  Try to work it out.
9        MR. SACRIPANTI:  We're happy to try to do it.  If your
10  Honor would issue a stay in the interim ...
11        THE COURT:  The interim might be five or 10 minutes
12  while I'm taking a criminal case that's waiting to see me.  Why

Page 10

Exhibit 5
Page 10 of 19

3CJLMTBC

13  don't you try to talk for a few minutes.  Could you talk to
14  other for five or 10 minutes?  Leave it at five or 10, because
15  at 11:00 I have to swear in the new citizens.  I have to do
16  naturalization.
17       why don't you talk five to 10 minutes, really, while I
18  do one criminal case.  Then we'll come back and talk some more.
19  If we haven't worked something out, we'll take a break and I'll
20  come back to court and take care of you.
21       MR. GORDON:  Can we leave our stuff?
22       THE COURT:  I think so, sure.
23       (Recess)
24  (10:56 a.m.)
25       MR. SACRIPANTI:  Your Honor, we apologize, we didn't
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

3CJLMTBC                    Conference
1  mean to keep you waiting.
2       THE COURT:  That's all right.
3       MR. SACRIPANTI:  We were thinking, your Honor, if you
4  talk to your children with the robe on, they may listen.
5       THE COURT:  Never mind.  They've seen that since 1982.
6  It didn't work then.
7       MR. SACRIPANTI:  Your Honor, I think we need a little
8  time.
9       THE COURT:  You want me to go swear in the citizens?
10       MR. SACRIPANTI:  I think we do.  I think we need a
11  little time, and we're working in earnest to try and solve
12  this.
13       THE COURT:  If you don't mind, it takes about a half
14  an hour at the most to swear in the new citizens.
15       MR. GORDON:  Can we explain to your Honor what the
16  question is, because it may be that you would or would not
17  consent to or even consider one as an option.
18       THE COURT:  Sure.
19       MR. GORDON:  Our position is, for the plaintiffs, we
20  would waive -- we would agree to a stay, and indeed to your
21  Honor issuing a stay of other courts deciding, if your Honor
22  would create an expedited briefing schedule, get them to
23  reply -- we filed our papers already -- and make a decision on
24  that.  And we would support that.  In all the cases that we're
25  in, which I do believe they now agree would be somewhere around
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

3CJLMTBC                    Conference
1  90 percent of the nation's cases, I think it's more -- but they
2  have a different proposal, and I'll let them explain it to you.
3  And I need to call cocounsel in the intervening time.
4       MR. EIMER:  Nate Eimer.  I think we're very close on
5  this.  I think the issue is, one, we would request that your
6  Honor issue the order staying the other cases, which you can
7  under 1358.  We're not certain of the effect of that, but
8  that's great; it's helpful.  What we would propose is -- what
9  we understand Mr. Gordon's position to be or plaintiffs'
10  position to be is that they don't oppose transfer here and your
11  Honor deciding the remand issue.  So what we've asked is that
12  plaintiffs, in addition to this, let us advise the JPML that
13  plaintiffs do not oppose issuance of a conditional transfer
14  order and transfer to your Honor, so we get the process started
15  sweeping these cases up and bring them here.  That's the issue
16  Mr. Gordon needs to talk to Mr. Summy about, and if we get that
17  resolved, we have an understanding.
Page 11

Exhibit 5
Page 11 of 19

3CJLMTBC

18      THE COURT:  It doesn't sound so --
19      MR. GORDON:  We feel there's no subject matter
20  jurisdiction.  I hate to go to any federal judge -- I'd rather
21  have them stay it rather than agree that it should go and get
22  transferred and start to go through the federal system and
23  transfer, when I believe that once your Honor rules as the MDL
24  judge, I believe -- which we still believe you are, and no
25  one's suggesting that you're not, and these are simply
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              24

3CJLMTBC                    Conference
1   tag-alongs.
2       MR. MCNEW:  Our common desire, your Honor, is that we
3   find a way, so this doesn't become enmired in the process of
4   going through the conditional transfer order process --
5       THE COURT:  I understand.
6       MR. MCNEW:  And to the extent your Honor has thoughts
7   about how we might do that, we would be grateful for your
8   guidance.
9       THE COURT:  Okay.
10      MR. GORDON:  I can't imagine that another fellow
11  judge, if they've been stayed to wait your ruling, then you
12  rule, that they would take a contrary position; and to the
13  extent that the defendants are worried, by the way, about some
14  cases being in state court, some being in federal court, that's
15  almost inescapable.
16      THE COURT:  Yes, exactly.
17      MR. GORDON:  There are existing state cases they've
18  never sought to remove.  County of Suffolk, one of the biggest
19  in the country.  Passco, Rhode Island, never sought to remove
20  it.
21      THE COURT:  I think you're right, that's inescapable.
22  There are some cases in state court, there are.  It's up to
23  them to remove them timely or not.  Nothing to be done about
24  that.
25      But what they do want to avoid, I gather, is many,
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              25

3CJLMTBC                    Conference
1   many federal rulings which could potentially be inconsistent
2   and in different circuits and different appeal schedules and
3   all the rest of it, and everybody seems to favor a fast
4   adjudication one way or the other.
5       I'm not going to promise you a day.  I've made one
6   promise this year, that's one too many.  But there was a reason
7   in that case.
8       MR. EIMER:  Nate Eimer.  It's not an issue for any of
9   us here -- I was going to say a lot, I don't know how many,
10  defendants are who are not in these cases.
11      THE COURT:  But even they are not pressing for the
12  remand question to be decided in various courts around the
13  country.
14      MR. EIMER:  No, they're objecting, they're asking for
15  stays in each of the cases they're in.
16      THE COURT:  So in theory, they basically all want to
17  be here, too.
18      MR. EIMER:  They get to participate -- there are some
19  people who don't get to participate.  It will go decided before
20  they get here.  But I'm not concerned about that.
21      THE COURT:  I'm not either because, as you say,
22  generally speaking they're seeking stays around the country.
                           Page 12

                        Exhibit 5
                     Page 12 of 19

3CJLMTBC

23   They want it to be in the MDL process, so they've been heard,
24   so to speak, indirectly.
25              MR. GORDON:  And we're giving them the stays.  It's
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

26

3CJLMTBC                    Conference
1    the ones we're here on we want to move forward on.
2              THE COURT:  I understand.  So when I come back from my
3    naturalization, will you be here or will you go away?
4              MR. GORDON:  We'll be here.
5              THE COURT:  All right.
6              MR. SACRIPANTI:  Can we use the courtroom?
7              THE COURT:  Yes, you may.  I'll be down in the
8    ceremonial courtroom.
9              (Recess)
10   (11:55 a.m.)
11             THE COURT:  Can we get started?
12             MR. SACRIPANTI:  I think so, your Honor.
13             MR. GORDON:  Your Honor, thank you for your patience.
14   We were in touch with counsel in South Texas.  It wasn't easy.
15             MR. McNEW:  They have telephones down there.
16             THE COURT:  That's good.  Reassuring.
17             MR. GORDON:  Obviously, we don't speak for everybody
18   in the country -- neither do they -- but just for those here in
19   the courtroom and some of us that we've been able to reach have
20   agreed to, from the plaintiffs:
21             We would stipulate, first of all, Number 1:  To
22   immediate transfer of all cases which counsel control including
23   some declaratory judgment actions that the defendants have just
24   filed in federal courts to you, Shira Scheindlin, in your
25   capacity as MDL 1358 judge.  And we agree to not oppose the
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

27

3CJLMTBC                    Conference
1    issuance or finality of the panel's conditional transfer order.
2              Number 2:  We stipulate that your Honor, Judge
3    Scheindlin, use whatever judicial means at your disposal to
4    stay and cause the immediate transfer of any other cases to
5    this Court.
6              MR. SACRIPANTI:  And for that, your Honor, if I may,
7    we would refer you to the manual, and we would hope that you
8    would, you know, contact those other judges.  I know it's an
9    imposition, but....
10             THE COURT:  Well, writing is easier certainly than
11   calling them.  But if I end up with a list....
12             MR. SACRIPANTI:  We're going to provide you with a
13   list, your Honor.  Thank you.
14             MR. GORDON:  Number 3:  We, the plaintiffs, expressly
15   reserve our objections to federal jurisdiction and stipulate
16   that our agreement here is not a waiver.
17             Number 4:  We agree -- all the parties here -- to an
18   expedited briefing hearing on the motions to remand and the
19   dates that we've suggested, the defendants agreed they would
20   get their papers in by January 9th; that we would take seven
21   days to apply, which would be January 16th; and that we'd ask
22   for a hearing the following week, which would be the week of
23   the 19th, which is Martin Luther King's birthday, but then that
24   Tuesday, Wednesday or Thursday -- Wednesday the 21st, perhaps,
25   is consistent with your Honor's schedule?
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
                        Page 13

Exhibit 5
Page 13 of 19

3CJLMTBC

28

3CJLMTBC                    Conference
 1          THE COURT:  A "hearing" meaning what?
 2          MR. GORDON:  Oral argument.
 3          THE COURT:  If the Court requires one, yes.
 4          MR. GORDON:  Yes.  Number 5:  Declaratory judgment
 5     actions that were filed and just served on our clients
 6     yesterday would be stayed pending the decision on remand.
 7          And Number 6:  The plaintiff agrees to file
 8     appropriate papers staying other cases that we control pending
 9     final MDL Panel action transferring the cases.
10          Did I say that correctly?
11          MR. LANGAN:  Perfect, Rob.  Thank you.
12          MR. WALLACE:  Actually, your Honor -- this is Rick
13     Wallace for Shell, Chevron and other defendants -- a couple of
14     minor modifications:
15          I thought the proposal for Number 1 was to stay as
16     well as transfer all those cases that the plaintiffs control.
17          And on Number 3, I'd simply ask that that objection --
18     the preservation of objections to jurisdiction be reciprocal,
19     because there are some defendants that may also have objections
20     to personal jurisdiction.
21          MR. SACRIPANTI:  Your Honor, if I may?
22          THE COURT:  But it is consistent with the defendants
23     that all defendants are together in saying there is federal
24     jurisdiction; is that right?  Or is there inconsistency on the
25     defense side?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

3CJLMTBC                    Conference
 1          MR. WALLACE:  I don't anticipate any inconsistency on
 2     subject matter jurisdiction.
 3          THE COURT:  But personal jurisdiction, you want to
 4     preserve your rights.  Yes, okay.  I hear you.
 5          MR. SACRIPANTI:  Which leads me, your Honor, to a
 6     point:  we can only bind and agree to be bound the clients that
 7     we represent that are here.  There are about, by my reckoning,
 8     30 other defendants that are part of the actions that have been
 9     removed before your Honor who are not present today.  What your
10     Honor may want to do -- and I'll leave it to your Honor -- is
11     to set perhaps a date by which if anyone objects to this
12     stipulation, that they should come in, petition the Court and
13     you should have a conference on that.
14          May I suggest January 9th or 5th?
15          THE COURT:  Let me ask this question:  In terms of
16     briefing, however, would those defendants who are not present
17     anticipate folding into this briefing schedule?
18          MR. SACRIPANTI:  I would assume they would, your
19     Honor.  We're going to give notice of this to everyone.  We're
20     going to do that immediately.  I just want to preserve --
21     because frankly, I'm acting as coordinating counsel, but none
22     of us here have the power to bind anyone.
23          THE COURT:  I understand that.  It's your best
24     prediction, so to speak, that they all wish to stay their local
25     actions and wish it to be heard in one MDL proceeding.  That's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

3CJLMTBC                    Conference
 1     your best guess.
 2          MR. SACRIPANTI:  And would agree to the stipulation as
 3     set forth by Mr. Gordon.

Page 14

Exhibit 5
Page 14 of 19

3CJLMTBC

4       THE COURT:  I understand.  When we actually tell them
5  the briefing schedule, there may become some objections.  Are
6  you kidding?  How are we going to get a coordinated brief in --
7  did you say January 9th?
8       MR. GORDON:  That's correct.
9       THE COURT:  With the two holidays falling in between,
10  you've got to circulate that to how many defendants?
11       MR. MCNEW:  But, Judge --
12       THE COURT:  That's really a tight schedule.
13       MR. MCNEW:  But if you think about the context, we've
14  already served motions to remand in all these cases.
15       THE COURT:  I understand.  I have one in front of me,
16  one Memorandum of Law in Support of Motion to Remand Case
17  Number 03 CV 9543, County of Nassau.  But I assume -- tell me
18  if I'm wrong -- that that brief will relate to all of the
19  original nine cases, so to speak, that I have, and if the rest
20  are transferred, it relates to all of them, it's not
21  case-specific -- is that right?
22       MR. MCNEW:  The removal papers and the remand motions
23  are identical, case-to-case.  There's no variation.
24       THE COURT:  When was it served?
25       MR. MCNEW:  Our first remand papers were served in
              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

31

3CJLMTBC            Conference

1  Connecticut, and I believe it was December 8th.  So defense
2  counsel have had these papers for awhile.
3       THE COURT:  Well, some.  I don't know who the
4  defendants were in Connecticut.  I really don't know if all of
5  them really did receive the papers.
6       But the point is, we want a coordinated brief.  We
7  don't want different defendants coming in and saying, you know,
8  No, given that schedule, I was not able to coordinate; I have
9  no input; I have a right to make my own papers.
10       I think if we actually give another week, it's a small
11  change, but it really does at least allow the defense brief to
12  be circulated throughout the defense group.  I don't want to be
13  so unrealistic that I end up with more than one brief.  That
14  would be self-defeating.  And I really can't bind the
15  defendants who aren't here today to agree that the defendants
16  who are here today are going to write a brief for them that
17  they have no chance to even read or comment on.
18       So efficiency tells me I'd rather see it moved up a
19  week, and that's tight, but at least it could be sent around to
20  every defendant and every case around the country so that they
21  all agree on one coordinated brief.  That's to the plaintiffs'
22  benefit, too.
23       MR. SACRIPANTI:  And, Judge, I would suggest that, if
24  I may, we will send notice to all the defendants, but your
25  Honor may want to set an interim conference date, which may not
              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

32

3CJLMTBC            Conference

1  be necessary, where people who do object -- and I can't say
2  people will -- they can come and voice their objections.
3       THE COURT:  The only objection they may have
4  potentially is to the dates.  And they can say, We need time to
5  be part of this brief.  That's their only real objection that I
6  gather they'd want is to be heard once and not 40 times.
7  Everybody wants that.  So they just want enough time to read it
8  and show it to their clients and make sure they don't have a
                     Page 15

Exhibit 5
Page 15 of 19

3CJLMTBC

9    brilliant idea that somehow the seven brilliant people who are
10   here didn't have.
11            MR. SACRIPANTI:  I guarantee they will, your Honor.
12            THE COURT:  When you're working with a big,
13   coordinated group, that's for sure.  People want to read it and
14   have some input.
15            I think we should move the 9th to the 16th.
16            MR. GORDON:  The 16th.
17            THE COURT:  And what was the reply date you said
18   originally?  The 16th?
19            MR. GORDON:  But then -- we lose then the Martin
20   Luther King day.  Could we go to the following Monday, at
21   least?  The 26th?
22            THE COURT:  Sure.
23            MR. GORDON:  And then have the hearing still that same
24   week?
25            THE COURT:  No.  You can't have a hearing until I've
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              33
3CJLMTBC              Conference
1    read the briefs.  I can't have a hearing before I've read them.
2            MR. GORDON:  No, have a hearing during the week of the
3    26th.
4            THE COURT:  Oh, that same week.
5            MR. GORDON:  I'm moving everything up a week.  The
6    only thing is I want over the weekend because of the Martin
7    Luther King holiday.  In other words, the 16th for them; the
8    26th for us; and the hearing perhaps the 28th, 29th, 30th of
9    that week.  Whatever your Honor's schedule would accommodate.
10           THE COURT:  Actually, I don't usually hear oral
11   argument on motions, so I can't even predict.
12           MR. GORDON:  We can just actually leave that out.
13           THE COURT:  We could leave it out of the stipulation,
14   or we could say if necessary, there will be a hearing on -- so
15   that everybody at least can plan for it.
16           MR. GORDON:  Can I ask for the 27th rather than the
17   26th so we can actually get a work day to make up for that
18   Martin Luther King day?
19           THE COURT:  That's fine.  You have a lot of people to
20   coordinate with, too.
21           If it goes, I'm supposed to start a trial on the 26th.
22   So in terms of a hearing -- there's always that "if it goes",
23   but if it goes....
24           The best day for a hearing would probably be Friday,
25   February 13th -- not to be suspicious -- Friday the 13th at
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              34
3CJLMTBC              Conference
1    10:00 o'clock.  That's the best day I see for a hearing.  But
2    that could be moved up if the two-week trial goes away, as
3    trials tend to do.
4            MR. GORDON:  I did not mean to imply we were
5    requesting oral argument on this.  We'd be happy to waive that.
6            THE COURT:  Let's see if I think I need it.  Let's
7    also set a time on February 13th.  We'll make it at 10:00.  As
8    far as Mr. Sacripanti's suggestion of scheduling a date --
9            MR. SACRIPANTI:  I have a different suggestion now.
10   That's withdrawn.
11           THE COURT:  What's the latest one?
12           MR. SACRIPANTI:  The latest, Your Honor, is you set a
13   date, and may I suggest January 5th, that if anyone objects, to
                       Page 16

                       Exhibit 5
                     Page 16 of 19

3CJLMTBC

14    notify the Court by that date in writing.  And if they don't,
15    they don't.  I want to preserve for people who aren't here the
16    opportunity to say, Your Honor, those guys were nuts, okay?  So
17    if we can do January 5th, that would be great.
18          THE COURT:  Sounds okay with me.  What does anybody
19    else think?  If anybody objects to the stipulation who is not
20    part of the stipulation because they weren't here, they can
21    file a written objection, so to speak.  And we'll see, if we
22    get any, what to do about it.
23          MR. SACRIPANTI:  Right, exactly.
24          THE COURT:  In the meantime, everybody's committed to
25    the schedule who is here.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              35
3CJLMTBC              Conference
 1          MR. SACRIPANTI:  We're committed to the schedule.  I
 2    just want to represent those who aren't here.
 3          MR. GORDON:  Here's my concern:  We're obligating
 4    ourselves to take certain actions.
 5          THE COURT:  And they are, too.  They're going to file
 6    a brief on the 16th of January no matter what.  They want to
 7    just say to anybody who wasn't here today who has something to
 8    say, Say it by January 5th or forever hold their peace.
 9          MR. GORDON:  Court's indulgence.
10          (Off the record)
11          MR. GORDON:  Judge, I just want to -- we're going to
12    other courts and taking a certain position.  If the stipulation
13    does not happen at the end of the day because on January 5th
14    people come in and say, We actually don't agree, we have to be
15    able to then no longer be bound by this.
16          THE COURT:  I think that's right.  Or for some reason
17    the stipulation is --
18          MR. SACRIPANTI:  Reversed, held -- voided.
19          THE COURT:  Voided.  That's a good word.  Thank you
20    very much.  Then everybody will act accordingly.  But I really
21    don't anticipate -- I think it's a fail-safe for people that
22    aren't here.
23          MR. SACRIPANTI:  And we'll make the notice shorter.
24    We don't want to be voided.  So we'll make the notice --
25          THE COURT:  No, I think January 5th is the right date.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              36
3CJLMTBC              Conference
 1          MR. SACRIPANTI:  And we give people notice, and if
 2    it's voided, all bets are off.
 3          THE COURT:  I don't see why that should happen.  It's
 4    an unlikely event.  It's an unlikely event.  It's just kind of
 5    a due process.
 6          MR. EIMER:  The only problem we have with this, now,
 7    one last gap, there's some actions that need to be taken in
 8    other districts as a result of remand motions they've filed,
 9    and we're assuming we don't have to do anything, because there
10    will be a deal, we assume, but Mr. Gordon is saying he doesn't
11    want to stay those cases until after January 5th.
12          MR. GORDON:  I'm concerned about it, because I could
13    be tying my hands on the one hand while other guys hit me, is
14    my concern.
15          THE COURT:  Hit you with what?
16          MR. GORDON:  While they, in other jurisdictions,
17    they're moving for their courts to make decisions or not make
18    decisions or transfer.
                        Page 17

Exhibit 5
Page 17 of 19

3CJLMTBC

19          THE COURT: They're not. They were moving for stays
20   around the country, as you know. We have to be a little bit
21   realistic. I'll try to issue an order in the MDL cases that
22   incorporates this and sends it out everywhere. Most judges
23   aren't really anxious to work between Christmas and New Years
24   on a remand motion. It's not a high priority. Most people
25   want to buy presents and wrap them and celebrate. They're not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

37

3CJLMTBC                Conference
1   dying to decide this.
2          MR. GORDON: Although this would make a nice present.
3          THE COURT: I'll issue an order. I think they have
4   other things to do in the next 10 days.. I don't know that
5   they're rushing to decide a difficult remand motion.
6          What I need is a service list or something.
7          MR. SACRIPANTI: By close of business, we'll provide
8   you with a list of all removal issues and the judges.
9          THE COURT: And you'll coordinate with plaintiffs to
10   do your best to be sure that the list is complete?
11          MR. SACRIPANTI: Yes.
12          MR. GORDON: May I ask one question? I assume you
13   have everybody in here who was part of the DJ action, because I
14   know not all the defendants agreed to do that.
15          I know you sort of took the lead. I assume the part
16   that says that you're going to -- that you control the DJ
17   actions and you're agreeing to immediate transfer of those
18   cases, to a stay of that --
19          MR. SACRIPANTI: Marathon's not here. Marathon's not
20   here.
21          THE COURT: And you didn't try to call that party?
22          MR. LANGAN: I can't imagine it will be a problem. It
23   won't be.
24          THE COURT: There are expressions of confidence --
25          MR. GORDON: Can we get an answer to that by the end

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

3CJLMTBC                Conference
1   of business today?
2          MR. SACRIPANTI: I can tell you we'll move posthaste
3   to all of them, reach out to them. But why don't you give me
4   till Monday.
5          MS. ROSENBLATT: I think he's out of town.
6          THE COURT: Who represents Marathon? What law firm?
7          MS. ROSENBLATT: Baker, Botts.
8          THE COURT: Just coordinate it.
9          Does anybody want to propose language for the order,
10   the very short order I'm going to try to draft in the MDL
11   manner? It will have an MDL caption. I'll try to draft
12   something, but if anybody has an idea of the proposed language,
13   I'd be happy to hear you.
14          MR. SACRIPANTI: Would you like us to send you --
15   we'll try to work and have a joint --
16          THE COURT: I'd like to get it out by the end of the
17   day.
18          MR. SACRIPANTI: So would we.
19          MR. EIMER: We'll work one out this afternoon.
20          THE COURT: You're welcome to stay. Sit around the
21   table and do it. Let's see what I have next.
22          I don't have a matter in this courtroom until 2:30.
23          MR. MCNEW: Okay.

Page 18

Exhibit 5
Page 18 of 19

3CJLMTBC
24          THE COURT:  Folks, if you find yourselves here, you're
25     welcome to work here.  There's no matter in this courtroom
                SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                              39
3CJLMTBC                    Conference
 1     until 2:30.
 2          MR. SACRIPANTI:  Thank you, your Honor.
 3          THE COURT:  You're welcome to stay.  We don't have
 4     cookies or coffee, but you're welcome to stay.
 5          (Adjourned sine die)
 6                          o O o
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

Exhibit 5
Page 19 of 19

C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**ORDER**
Master File C.A. No.
1:00-1898(SAS)
MDL 1358

---

This document refers to:

*County of Nassau v. Amerada Hess Corp., et al.*, No. 03-cv-9543
*Water Authority of Western Nassau County v. Amerada Hess Corp, et al.*, No. 03-cv-9544
*Incorporated Village of Mineola, et al. v. AGIP Inc., et al.*, No. 03-cv-10051
*West Hempstead Water District v. AGIP Inc., et al.*, No. 03-cv-10052
*Carle Place Water District v. AGIP Inc., et al.*, No. 03-cv-10053
*Town of Southampton v. AGIP Inc., et al.*, No. 03-cv-10054
*Village of Hempstead v. AGIP Inc., et al.*, No. 03-cv-10055
*Town of East Hampton v. AGIP Inc., et al.*, No. 03-cv-10056
*Westbury Water District v. AGIP Inc., et al.*, No. 03-cv-10057

---

      The Court, upon hearing counsel for plaintiffs and certain defendants at a conference in the above-referenced cases in response to defendants' motions to stay proceedings in these cases and plaintiffs' motions for their remand, and upon stipulations there agreed to on the record by the parties present, finds, in the above-captioned proceeding, that it is appropriate for the issues presented by these motions in these and all similar removed actions, wherever filed, to be heard and decided by this Court.

      Accordingly, all proceedings in the cases set forth in the attached Schedule should be stayed pending transfer to this Court sitting in its capacity as the <u>MDL No. 1358</u> court. This Court respectfully requests that all courts to which the scheduled cases have been removed GRANT ALL MOTIONS TO STAY those cases pending transfer to <u>MDL No. 1358</u>.

      The parties have agreed to the following consolidated briefing schedule, which is hereby So Ordered: defendants' opposition to plaintiffs' motion to remand shall be served and filed by January 16, 2004, and plaintiffs' reply in further support of the motion to remand shall be served and filed by January 27, 2004. Defendants' motion to stay in the above-referenced cases is DENIED because this Court will consider and decide the consolidated motion to remand forthwith.

Dated: December 23, 2003

_____
Honorable Shira A. Scheindlin
United States District Judge

Exhibit 6
Page 1 of 5

## SCHEDULE

| State | Short Case Name | Date Removed | Court/Index No. | Assigned Judge |
|---|---|---|---|---|
| CA | *California-American Water Co. v. Unocal Corp., et al.* | 11/26/03 | N.D. Cal.<br>C 03-5379 JSW | Jeffrey S. White |
| CA | *City of Fresno v. Chevron U.S.A. Inc., et al.* | 11/26/03 | N.D. Cal.<br>C 03-5378 JSW | Jeffrey S. White |
| CA | *City of Riverside v. Atlantic Richfield Co., et al.* | 12/12/03 | C.D. Cal.<br>EDCV03-1460 RT SGLx | Robert J. Timlin |
| CA | *City of Roseville v. Atlantic Richfield Company, et al.* | Not yet removed | | |
| CA | *Orange County Water District v. Unocal Corp., et al. (Amended)* | 12/05/03 | C.D. Cal.<br>SACV03-1742 JVS (ANx) | James V. Selna |
| CA | *People v. Unocal Corp., et al.* | 12/10/03 | E.D. Cal.<br>CIV.S-03-2653 GEB DAD | Garland E. Burrell, Jr. |
| CA | *Quincy Community Services District v. Atlantic Richfield Co., et al.* | 12/17/03 | E.D. Cal.<br>CIV S-03-2582 WBS DAD | Hon. William B. Shubb |
| CA | *Silver, et al. v. Alon USA Energy, Inc., et al.* | 12/03/03 | S.D. Cal.<br>03 CV 2408 WQH (RBB) | William Q. Hayes |
| | | | | |
| CT | *American Distilling & Mfg. Co., Inc. v. Amerada Hess Corp., et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1926 | Hon. Stefan R. Underhill |
| CT | *Canton Bd. of Education v. Amerada Hess, et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1921 | Hon. Stefan R. Underhill |
| CT | *Childhood Memories v. Amerada Hess, et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1924 | Hon. Alvin W. Thompson |
| CT | *Columbia Bd. of Education v. Amerada Hess, et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1923 | Hon. Stefan R. Underhill |
| CT | *Our Lady of Rosary Chapel v. Amerada Hess Corp., et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1925 | Hon. Stefan R. Underhill |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | 11/10/03 | D. Conn.<br>3:03-CV-1927 | Hon Stefan R. Underhill |
| CT | *United Water Connecticut, Inc. v. Amerada Hess Corp., et al.* | 11/10/03 | D. Conn. | Hon. Stefan R. Underhill |

Exhibit 6
Page 2 of 5

| State | Short Case Name | Date Removed | Court/Index No. | Assigned Judge |
|---|---|---|---|---|
| | | | 3:03-CV-2017 | |
| | | | | |
| FL | Escambia County Utilities Auth. v. Adcock Petroleum, Inc., et al. | 11/25/03 | N.D. Fla. (Pensacola) 3:03-CV-539 | Hon. L.A. Collier Hon. M. Davis, U.S.M.J. |
| | | | | |
| IA | City of Galva, Ida Grove & Sioux City v. Amerada Hess Corp., et al. | 11/24/03 | S.D. Iowa 4:03-CV-90663 | Hon. Robert W. Pratt |
| | | | | |
| IL | City of Crystal Lake v. Amerada Hess Corp. | 12/12/03 | N.D. Ill. (Eastern Div.) 03-CV-8973 | Hon. George W. Lindberg |
| | | | | |
| IN | City of Mishawaka v. Amerada Hess Corporation, et al. | 12/12/03 | N.D. Ind. (South Bend) 3:03-CV-904 | Hon. Robert Miller, Jr. |
| IN | City of Rockport v. Amerada Hess Corp., et al. | 11/21/03 | S.D. Ind. (Evansville) 3:03-CV-201 | Hon. Richard L. Young Hon. William G. Hussmann, Jr., U.S.M.J. |
| IN | North Newton School Corporation v. Amerada Hess Corporation, e t al. | 12/12/03 | N.D. Ind. (Lafayette) 4:03-CV-013 | Hon. Allen Sharp |
| IN | City of South Bend v. Amerada Hess Corporation, et al. | 12/12/03 | N.D. Ind. (South Bend) 3:03-CV-905 | Hon. Allen Sharp |
| | | | | |
| KS | Chisholm Creek Utility Auth. v. Alon USA Energy, Inc., et al. | 12/15/03 | D. Kan. 03-CV-1457 | Hon. Wesley E. Brown |
| KS | City of Bel Aire v. Alon USA Energy, Inc., et al. | 12/15/03 | D. Kan. 03-CV-1458 | Hon. Wesley E. Brown |
| KS | City of Dodge City v. Alon USA Energy, Inc., et al. | 12/15/03 | D. Kan. 03-CV-1456 | Hon. Monti L. Belot |
| KS | City of Park City v. Alon USA Energy, Inc. | 12/15/03 | D. Kan. 03-CV-1455 | Hon. Thomas J. Marten |
| | | | | |
| MA | Brimfield Housing Auth. v. Amerada Hess Corp., et al. | 11/26/03 | D. Mass. 03-CV-12399 | Hon. Richard G. Stearns |
| | | | | |
| NH | City of Dover v. Amerada Hess Corporation, et al. | Not yet removed | | |

Exhibit 6
Page 3 of 5

| State | Short Case Name | Date Removed | Court/Index No. | Assigned Judge |
|---|---|---|---|---|
| NH | City of Portsmouth v. Amerada Hess Corporation, et al. | Not yet removed | | |
| NH | State of New Hampshire v. Amerada Hess Corp., et al. | 09/30/03 | D.R.I. 03-CV-529 | Hon. Ronald R. Lagueux |
| | | | | |
| NJ | NJ American Water Co., Inc. v. Amerada Hess Corp., et al. | 11/24/03 | D.N.J. 03-CV-5562 | Hon. William G. Bassler |
| | | | | |
| NY | Carle Place Water District v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10053 | Hon. Shira A. Scheindlin |
| NY | County of Nassau v. Amerada Hess Corp., et al. | 12/02/03 | S.D.N.Y. 03-CV-9543 | Hon. Shira A. Scheindlin |
| NY | Long Island Water Corp. v. Amerada Hess, et al. | 12/04/03 | E.D.N.Y. 03-CV-6125 | Hon. Arthur D. Spatt  Hon. Michael L. Orenstein, U.S.M.J. |
| NY | Town of East Hampton v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10056 | Hon. Shira A. Scheindlin |
| NY | Town of Southampton v. AGIP Inc, et al. | 12/18/03 | S.D.N.Y. 03-cv-10054 | Hon. Shira A. Scheindlin |
| NY | Village of Mineola; Water Dept. of Village of Mineola v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10051 | Hon. Shira A. Scheindlin |
| NY | Water Authority of Great Neck North v. Amerada Hess Corp., et al. | 10/28/03 | E.D.N.Y. 03-CV-6077 | Hon. Arthur D. Spatt  Hon. Michael L. Orenstein, U.S.M.J. |
| NY | Water Authority of Western Nassau County v. Amerada Hess, et al. | 10/01/03 | S.D.N.Y. 03-CV-9544 | Hon. Shira A. Scheindlin |
| NY | Westbury Water District v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10057 | Hon. Shira A. Scheindlin |
| NY | West Hempstead Water District v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10052 | Hon. Shira A. Scheindlin |
| NY | Village of Hempstead v. AGIP Inc., et al. | 12/18/03 | S.D.N.Y. 03-cv-10055 | Hon. Shira A. Scheindlin |
| | | | | |
| PA | Pennsylvania Suburban Water Co. v. Sunoco, Inc. | Not yet removed | | |
| | | | | |

Exhibit 6
Page 4 of 5

| State | Short Case Name | Date Removed | Court/Index No. | Assigned Judge |
|-------|-----------------|--------------|-----------------|----------------|
| VA | *Buchanan County School Board v. Amerada Hess Corporation* | Not yet removed | | |
| VA | *Greensville Co. Water & Sewer Authority v. Amerada Hess Corporation* | Not yet removed | | |
| VA | *Patrick County Sch. Board v. Amerada Hess Corp., et al.* | Not yet removed | | |
| | | | | |
| VT | *Town of Hartland, County of Windsor, Vermont Water System v. Amerada Hess Corp., et al.* | 12/11/03 | D. Vt. 2:03-CV-337 | Hon. William K. Sessions, III |

Exhibit 6

Page 5 of 5

D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SEND

### CIVIL MINUTES – GENERAL

Case No.S ✓SACV 03-01742-JVS(ANx)                    Dated: February 23, 2004
          SACV 04-00053-JVS(ANx)

Title:    ✓Orange County Water District v. Unocal Corp., et al.
          City of Riverside v. Atlantic Richfield Company, et al.

PRESENT: **HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE**

        Karla J. Tunis                          William Stephens
        Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

        Victor Sher                      Jon Anderson          DOCKETED ON CM
        Todd Robins                      Diana Pfeffer Martin
        Michael Axline                   Matthew Heartney        FEB 2 7 2004
                                         David Schrader
                                                               BY _____ 04C

PROCEEDINGS: ✓SACV 03-01742-JVS(ANx) **DEFENDANTS ATLANTIC RICHFIELD CO.,**
             **CHEVRON U.S.A. INC., CHEVRON TEXACO CORPORATION, EXXON**
             **MOBIL CORP., SHELL OIL CO.'S MOTION FOR TEMPORARY STAY**
             **PENDING TRANSFER (Fld 1-6-04)**

             SACV 04-00053-JVS(ANx)**DEFENDANTS CHEVRON U.S.A. INC. AND**
             **CHEVRON TEXACO CORPORATION'S MOTION FOR TEMPORARY**
             **STAY PENDING TRANSFER (Fld 1-9-04)**

Cause called and counsel make their appearances. The Court's tentative ruling is
issued. Counsel make their arguments. The Court GRANTS the defendants' motions for
temporary stay pending transfer and rules in accordance with the tentative ruling as follows:

### I.    Background

These lawsuits arise from two challenges to the use of certain gasoline additives.

The Orange County Water District ("the District") asserts a claim for damages under
state law for the contamination of its drinking water supplies by methyl tertiary-buter ether
("MTBE"). MTBE is an oxygenate frequently used as a motor fuel additive for the purpose
of raising the level of oxygen in a gasoline. The District originally brought their claim in the
Superior Court of California, Orange County, on May 6, 2003. Certain Defendants filed a
Notice of Removal attempting to invoke jurisdiction of the federal court and subsequently



filed a notice of related action to the Judicial Panel on Multidistrict Litigation ("JPML") in In re MTBE Products Liability Litigation, MDL Docket No. 1358. MDL 1358 has consolidated MTBE cases such as the present dispute and is pending in the Southern District of New York. The District filed a motion to remand the case which has been continued for hearing on March 29, 2004. Defendants Chevron USA, Inc., Chevron Texaco Corp., Atlantic Richfield Company, Exxon Mobil Corporation and Shell Oil Company filed the present motion requesting that the Court stay the action pending the JPML's decision.[1]

Similarly, the City of Riverside ("the City) filed its original action on October 17, 2003 in Riverside County Superior Court against the same oil and chemical industry defendants. On or about December 12, 2003, the same Defendants filed a Notice of Removal and filed a notice of related action with the JPML. The City filed its motion to remand on January 8, 2004. Defendants filed their motion to stay on or about January 9, 2004.[2]

## II.   Jurisdiction

The circumstances before the Court raise an issue of law that is not well settled in the Ninth Circuit. When competing motions to stay and remand are presented to the Court, district courts are divided as to whether to address the competing remand and stay motions together or separately, and if separately, in what order. In addition, district courts are divided as to whether to defer consolidation of the motions to the MDL Panel. See Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1047-48 (E.D. Wis. 2001) (collecting cases).

one view stems from the long established principle that a district court cannot proceed without jurisdiction. See Ex Parte McCardle, 74 U.S. 506, 514 (1868)("Without jurisdiction the court cannot proceed at all in any cause."); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-101 (1998). From this principle follows the assertion that the district court must necessarily address the motion to remand before the motion to stay. Several courts have followed this approach. See Fargas v. Bridgestone/ Firestone, Inc., 113 F. Supp. 2d 1107, 1115 n. 8 (W.D. Ky. 2000); Lloyd v. Cabell Huntington Hosp., Inc., 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999); Stern v. Mutual Life Insurance Co., 968 F. Supp. 637, 639 (S.D. Ala. 1997).

---

[1] Judge Scheindlin, acting in her capacity as the presiding judge in MDL 1358, entered an order that "it is appropriate for the issues presented by these motions in these and similar removed actions, wherever filed, to be heard and decided by this Court." Exhibit 3. The Order goes on to request that "all courts to which the scheduled cases have been removed grant all motions to stay those cases pending transfer to MDL No. 1358." Exhibit 3.

[2] The Court will refer to both the District and the City collectively as Plaintiffs.

MINUTES FORM 90                                    Initials of Deputy Clerk __kit__
CIVIL - GEN

on the other hand, several courts have found that the district court is not completely without jurisdiction. For example, the district court has jurisdiction to determine whether or not it has subject matter jurisdiction. See, e.g., Shannon v. Shannon, 965 F. 2d 542, 545 (7th Cir. 1992). These courts have taken the position that because a stay is not adjudicating the merits of a dispute, neither McCardle nor Steel Co. mandate that the court resolve jurisdictional matters before considering whether to grant or stay a motion. Meyers, 143 F. Supp. 2d at 1047; Chinn v. Belfer, 2002 U.S. Dist. LEXIS 20343 (D. Oregon 2002). However, Meyers does not determine that the district court must address the motion to stay before the motion to remand. Rather, Meyers offers a three-step methodology for dealing with competing motions to stay and remand involving pending transfer motions or conditional transfer orders in multidistrict litigation:

> A court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.

> If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in any other cases that have been or may be transferred to the MDL proceeding . . ..

> only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

Meyers, 143 F. Supp. 2d at 1049.

The Court finds the framework set forth in Meyers useful and applies it to the instant case. Under Meyers, the Court should consider the motion to stay only if the jurisdictional issue involving the motion to remand is complex and some judicial economies may be appropriated by granting a stay.

## A.   Complexity of Jurisdictional Issues

Giving preliminary scrutiny to the motion to remand, the Court finds that the jurisdictional issue is both legally and factually complex. Defendants assert three separate basis for federal jurisdiction: the bankruptcy of Texaco, Inc., a predecessor to Defendant ChevronTexaco Corp., federal preemption, and federal agency. Upon a review of each of the arguments underlying each of the Defendants' asserted basis for federal jurisdiction and the oral argument on the issues presented to Judge Scheindlin, the Court is persuaded that

resolution of the jurisdictional questions is a complicated task.[3]  The jurisdictional inquiry is not only legally difficult, as exemplified by the questions of the potential for federal jurisdiction based upon the Texaco, Inc. bankruptcy, but also factually difficult.  For example, the question of whether or not Defendants have raised a colorable federal defense pursuant to Section 1442(a)(1) necessitates an examination of whether or not Defendants had viable alternatives to MTBE.

By no means are the complexities of the legal and factual issues presented by the motion to remand limited to those examples.  However, the Court reiterates its finding that the issues are both legally and factually complex.

### B.    Economy of Judicial Resources

The Court also finds that the jurisdictional issue is similar or identical to those likely to be presented to the MDL in other transferred cases.  Having one court decide the complex jurisdictional issues obviously saves judicial resources.  Accordingly, the Court moves on to consider Defendants' motion to stay the proceedings.

## III.   Motion to Stay

The power to stay proceedings is soundly within the Court's discretion and is incidental to the "power inherent in every court to manage the schedule of cases on its docket to ensure fair and efficient adjudication."  Landis v. North American Co., 299 U.S. 248, 254-55 (1936).

Rule 18 of the Rules of the Judicial Panel on Multidistrict Litigation states:

The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

---

[3]After extensive oral argument on the bankruptcy issue, Judge Scheindlin offered the following concern: "I'm worried about the opportunity for appellate review of these very tricky issues, such as the one we just had 50 minutes of argument on and we probably barely scratched the surface of what it would take to educate me about bankruptcy law.  Instead of eight hours it would probably take eighty hours for me to really understand it all.  Tricky stuff."  Reply, Ex. 4 at p. 17.  The Court agrees with Judge Scheindlin that a preliminary assessment of the issues of the type contemplated by the Meyers methodology reveals that the jurisdictional issues are quite complicated.

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk    kit

Therefore, a district court need not necessarily grant a motion to stay upon a motion to the MDL Panel to transfer and consolidate. The purpose of such transfers is to further judicial economy and to eliminate the potential for conflicting pretrial rulings. See Good v. Prudential Insurance Co., 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (citing Weigel, The Judicial Panel on Multidistrict Litigation, 78 F.R.D. 575 (1978)).

A district court should consider three factors when considering a motion to stay: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated. Rivers v. Walt Disney Co., 980 F. Supp. 1360, 1362 (C.D. Cal. 1997).

The potential prejudice to the Plaintiffs is clear. The logistical burdens of MDL practice have been well documented. See Earle F. Kyle, IV, The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation, 175 F.R.D. 589, 590 (1998) ("the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you '100th chair' status in an already over-lawyered mass litigation."). In the instant case, Plaintiffs would have its lawsuit filed in state court in California moved to federal court in the Southern District of New York.

Defendants, on the other hand, claim the risk of conflicting rulings may be avoided by granting a stay. Motion, at 5-6. See Weinke v. Microsoft Corp., 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000). The risk is substantiated by the complexity of the legal issues involved in the jurisdictional analysis. The likelihood that multiple courts reach different conclusions is increased.

Economy of judicial resources clearly favors a stay. As discussed, the Court is persuaded that judicial economies will result from having one court rather than several decide the complex jurisdictional issues underlying Plaintiffs' motions to remand. Plaintiffs argue that the MDL process is likely to burden judicial resources because of the burdens associated with the MDL process. Opposition, at 15. This Court believes that the benefits of granting a stay in the interests of judicial economy and the threat of inconsistent rulings by the numerous courts that would face jurisdictional issues associated the motion to remand outweighs any costs imposed on the Plaintiffs and judicial resources by the operation of the MDL process. Accordingly, Defendants' motion to stay is granted.

## IV.   Conclusion

Defendants' motion to stay is granted.

MINUTES FORM 90
CIVIL - GEN                                              Initials of Deputy Clerk __kjt__

E

# FILED

JAN 28 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

QUINCY COMMUNITY SERVICES
DISTRICT,

                                        NO. CIV. S-03-2582 LKK/DAD

          Plaintiffs,

     v.                                 O R D E R

ATLANTIC RICHFIELD COMPANY,
et al.,

          Defendants.
_____/

Pending before the court are a motion to remand this action to the Superior Court and a motion to stay the action pending transfer to the U.S. District Court for the Southern District of New York in its capacity as the MDL No. 1358 court. See Judicial Panel on Multidistrict Litigation Rule 18.

In light of the MDL No. 1358 court's request in its order of December 23, 2003 that this court stay the action pending transfer, the potential savings of judicial resources that may be accomplished by doing so, and the balance of hardships to the

1

1  parties, a temporary stay of these proceedings appears appropriate.

2  See Good v. Prudential Ins. Co., 5 F.Supp.2d 804, 809 (N.D. Cal.

3  1998) ("Courts frequently grant stays pending a decision of the MDL

4  Panel regarding whether to transfer a case"); Rivers v. Walt Disney

5  Co., 980 F.Supp. 1360, 1362 (C.D. Cal. 1997) ("[A] majority of

6  courts have concluded that it is often appropriate to stay

7  preliminary pretrial proceedings while a motion to transfer and

8  consolidate is pending with the MDL Panel because of the judicial

9  resources that are conserved.").

10       Accordingly, plaintiff's motion for remand is DENIED and

11  defendants' motion for a temporary stay pending transfer is

12  GRANTED.   This action shall be STAYED pending a decision by the

13  Judicial Panel on Multidistrict Litigation regarding transfer and

14  consolidation.

15       IT IS SO ORDERED

16       DATED:  January 27, 2004.

18  LAWRENCE K. KARLTON
    SENIOR JUDGE
19  UNITED STATES DISTRICT COURT

2

pw

United States District Court
for the
Eastern District of California
January 28, 2004

* * CERTIFICATE OF SERVICE * *

2:03-cv-02582

Quincy Community Svc

v.

Atlantic Richfield

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  January 28, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

Victor M Sher                          AR/LKK
Sher and Leff
450 Mission Street
Suite 500
San Francisco, CA  94105

Matthew T Heartney
Arnold and Porter
777 South Figueroa Street
44th Floor
Los Angeles, CA  90017-2513

David L Schrader
Morgan Lewis and Bockius LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA  90017-3132

Jeffrey John Parker
Sheppard Mullin Richter and Hampton
333 South Hope Street
48th Floor
Los Angeles, CA  90071

William D Temko
NOT EDCA ADMITTED

Munger Tolles and Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560

Colleen P Doyle
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA  90071-1560

M Taylor Florence
Bullivant Houser Bailey Pendergrass and Hoffman
11335 Gold Express Drive
Suite 105
Gold River, CA  95670-4491

Edward Romero
Greenan Peffer Sallander and Lally LLP
PO Box 10
Two Annabel Lane
Suite 200
San Ramon, CA  94583-0010

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk

F



FILED

MAR 2 5 2004

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  QUINCY COMMUNITY SERVICES
    DISTRICT,
12                                    NO. CIV. S-03-2582 LKK/DAD

13          Plaintiffs,

14      v.                            O R D E R

15  ATLANTIC RICHFIELD COMPANY,
    et al.,
16
            Defendants.
17  _____/

18      This matter comes before the court on plaintiff's motion for

19  reconsideration of the court's January 28, 2004 order staying this

20  action pending transfer by the Judicial Panel on Multidistrict

21  Litigation to the Southern District of New York (Scheindlin, J.),

22  sitting as the multidistrict litigation court in In re MTBE

23  Products Liability Litigation, MDL No. 1358.  The JPML has since

24  issued a conditional transfer order in this case.  The motion for

25  reconsideration contends that, because subject matter jurisdiction

26  is a threshold question, that question must be decided before this

1

1 court may stay proceedings and before the JPML may effect transfer.

2 Plaintiff urges the court to lift the stay and rule on plaintiff's

3 motion to remand the case to state court.

4 **A.   PROCEDURAL BACKGROUND**

5     This action is one of among dozens of MTBE products liability

6 cases filed in state courts around the country by numerous

7 plaintiffs, including states, cities, municipalities and other

8 entities, seeking relief from contamination or threatened

9 contamination of groundwater.

10     Many of these actions have already been transferred to Judge

11 Scheindlin, sitting as the MDL No. 1358 court.  Judge Scheindlin's

12 order of December 23, 2003, referring to motions to remand pending

13 in the multidistrict action, stated that "it is appropriate for the

14 issues presented by these motions and *all similar removed actions,*

15 *wherever filed,* to be heard and decided by this Court . . . This

16 Court respectfully requests that all courts to which the scheduled

17 cases have been removed grant all motions to stay those cases

18 pending transfer to MDL No. 1358." <u>In re MTBE Products Liability</u>

19 <u>Litigation</u>, MDL No. 1358, Order of December 23, 2003 (emphasis

20 added).  Accordingly, on January 28, 2004, the court issued an

21 order staying this action pending transfer.[1]

22 ////

23

24     [1] A companion case filed in this district by the State of California against largely the same defendants has been assigned to Judge Burrell.  On February 6, 2004, Judge Burrell entered an

25 order staying that action pending transfer to MDL No. 1358.  <u>See</u> <u>People of the State of California v. Atlantic Richfield Company</u>,

26 No Civ. S-03-2563 GEB DAD (E.D. Cal. Feb. 6, 2004).

2

1    On February 6, 2004, the JPML transferred thirteen of the MTBE

2   cases to Judge Scheindlin's courtroom.  On February 13, 2004, Judge

3   Scheindlin held a hearing on plaintiffs' motions to remand in the

4   MTBE cases already transferred to her.  After extensive briefing

5   and two hours of oral argument, Judge Scheindlin requested

6   additional briefing and took the matter under submission.

7    On February 25, 2004, the JPML conditionally transferred

8   another thirty MTBE cases to Judge Scheindlin, including this case.

9   The conditional transfer order stated that "[i]t appears that the

10  actions on this conditional transfer order involve questions of

11  fact which are common to the actions previously transferred to the

12  Southern District of New York and assigned to Judge Scheindlin."

13  JPML Order filed February 25, 2004.   Pursuant to Rule 7.4 of the

14  Rules of Procedure of the Judicial Panel on Multidistrict

15  Litigation, 199 F.R.D. 425, 435-36 (2001), the actions to which the

16  order referred, including the instant action, were transferred

17  under 28 U.S.C. § 1407 to the Southern District of New York.  The

18  order indicates that it does not become effective until it is filed

19  in the Office of the Clerk of the Southern District of New York and

20  that transmittal of the order was to be stayed for fifteen (15)

21  days from its entry and if any party files a notice of opposition

22  within that time, the stay will be continued until further order

23  of the Panel.  Consistent with the conditional transfer order,

24  plaintiffs in this case filed a notice of opposition, thus

25  triggering the automatic stay provision of the order.

26  ////

3

1    On March 16, 2004, Judge Scheindlin issued a 28-page opinion

2 and order in MDL No. 1358 denying the plaintiffs' motions for

3 remand.   Judge Scheindlin held that the defendants in the

4 consolidated multi-district litigation had sufficiently averred

5 facts supporting removal pursuant to 28 U.S.C. § 1442(a)(1).

6 Specifically, defendants allege that (1) they added MTBE to

7 gasoline at the direction of the EPA, a federal agency, (2) they

8 have a colorable federal defense of preemption; and (3) there is

9 a causal connection between plaintiffs' claims and the acts

10 defendants undertook at the direction of the EPA.

11  **B.    MOTION FOR RECONSIDERATION**

12    The court's January 28 order reasoned that, in light of the

13 MDL No. 1358 court's request that this court stay the action

14 pending transfer, the potential savings of judicial resources that

15 may be accomplished by doing so, and the balance of hardships to

16 the parties, a temporary stay pending transfer appeared

17 appropriate. See Good v. Prudential Ins. Co., 5 F.Supp.2d 804, 809

18 (N.D. Cal. 1998) ("Courts frequently grant stays pending a decision

19 of the MDL Panel regarding whether to transfer a case"); Rivers v.

20 Walt Disney Co., 980 F.Supp. 1360, 1362 (C.D. Cal. 1997) ("[A]

21 majority of courts have concluded that it is often appropriate to

22 say preliminary pretrial proceedings while a motion to transfer and

23 consolidate is pending with the MDL Panel because of the judicial

24 resources that are conserved."). Plaintiff makes four argument in

25 support of its motion to reconsider.  I consider each one in turn.

26 ////

4

1  **1.   Opportunity to be Heard**

2  First, plaintiff argues that the January 28 order was entered

3  before plaintiff had an opportunity to be heard on the motion.

4  While plaintiff cites cases that stand for the general rule that

5  *sua sponte* decisions are disfavored, plaintiff can offer no

6  authority suggesting that a federal district court lacks the power

7  to stay proceedings *sua sponte* pending a transfer by the JPML.  In

8  any event, any prejudice to plaintiffs due to the lack of briefing

9  on the original motion to stay is cured by the extensive briefing

10  on the instant motion.

11  **2.   Jurisdiction as a Threshold Issue**

12  Second, plaintiff contends that the court's order contravenes

13  the "requirement that jurisdiction be established as a threshold

14  matter," Steel Co. v. Citizens for a Better Environment, 523 U.S.

15  83, 94 (1998), and the overwhelming authority on point, which

16  indicates that "judicial economy will best be served by addressing

17  the remand issue [as it] will facilitate litigation in the

18  appropriate forum." Villarreal v. Chrysler Corp., No. C-95-4414

19  FMS, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996).

20  Plaintiff provides scant authority to suggest a bright-line

21  rule requiring full consideration of a motion to remand prior to

22  transfer to the multidistrict litigation court.  As one district

23  court has had occasion to explain in a nearly identical procedural

24  situation, "[w]hat Steel Co. forbids is a court's assuming

25  law-declaring power by deciding the merits of a case in the absence

26  of verified subject matter jurisdiction. Scott C. Idleman, *The*

5

1 *Demise of Hypothetical Jurisdiction in the Federal Courts*, 52 Vand.

2 L.Rev. 235, 333 & n. 409 (1999) (quoting In Re Minister Papandreou,

3 139 F.3d 247, 255 (D.C.Cir. 1998)).  However, granting a stay is

4 not adjudicating the merits of a case. Neither [Ex parte] McCardle

5 nor Steel Co. requires resolving jurisdictional matters before

6 considering whether to grant a stay motion." Meyers v. Bayer AG,

7 143 F.Supp.2d 1044, 1047 (E.D. Wisc. 2001). The power to stay

8 proceedings is soundly within the court's discretion and is

9 incidental to the "power inherent in every court to manage the

10 schedule of cases on its docket to ensure fair and efficient

11 adjudication." Landis v. North American Co., 299 U.S. 248, 254-55

12 (1936).  In considering a motion to stay, the district court

13 considers three factors: (1) potential prejudice to the non-moving

14 party; (2) hardship and inequity to the moving party if the action

15 is not stayed; and (3) the judicial resources that would be saved

16 by avoiding duplicative litigation if the cases are in fact

17 consolidated." Rivers v. Walt Disney Co., 980 F.Supp. 1360 (C.D.

18 Cal. 1997).  As even the Villareal case cited by plaintiff

19 acknowledges, the decision whether to address the remand issue

20 prior to transfer by the JPML is analyzed according to these

21 factors, "judicial economy" among them.

22     The balance of the hardships here is roughly equal; plaintiff

23 would very much like to avoid having to litigate its case in a

24 multidistrict litigation setting in New York and would like to

25 return to state court, while defendants would like to avoid

26 inconsistent rulings on MTBE liability across the country.  While

6

1  judicial economy will normally favor deciding a remand motion prior

2  to a stay pending transfer, such is not the case here.   The

3  proceedings in Judge Scheindlin's courtroom and the resulting order

4  of March 16, 2004, demonstrate that the jurisdictional issues

5  involved are quite complex, are likely to be common to the MBTE

6  cases filed across the country, and are ultimately likely to be

7  resolved in favor of a finding of federal jurisdiction.

8       Indeed, Judge Selna in the Central District of California

9  recently reached the same conclusion in two MTBE cases pending in

10  that court in which motions to remand and stay pending transfer had

11  been filed.  See Orange County Water District v. Unocal Corp., CV-

12  03-01742 (C.D. Cal. Feb. 23, 2004).   Judge Selna's thoughtful

13  opinion granting the motion to stay discussed at length the

14  question of the appropriate procedure when a court is faced with

15  competing motions to stay and remand.   Judge Selna adopted the

16  three-part procedure set forth in Meyers v. Bayer AG, 143 F.Supp.2d

17  1044, 1047-48 (E.D. Wis. 2001):

18       [A] court should first give preliminary scrutiny to
         the merits of the motion to remand.   If this
19       preliminary assessment suggests that removal was
         improper, the court should promptly complete its
20       consideration and remand the case to state court.

21       If, on the other hand, the jurisdictional issue
         appears factually or legally difficult, the court's
22       second step should be to determine whether
         identical or similar jurisdictional issues have
23       been raised in any other cases that have been or
         may be transferred to the MDL proceeding.
24
         Only if the jurisdictional issue is both difficult
25       and similar or identical to those in cases
         transferred or likely to be transferred should the
26       court proceed to the third step and consider the

                                    7

1      motion to stay.

2    Meyers, 143 F.Supp.2d at 1049.

3        Applying this approach, Judge Selna concluded that

4    jurisdictional issues were both legally and factually complex.  See

5    Orange County Water District at 4 (quoting Judge Scheindlin's

6    comments at a hearing on the motions for remand in the MDL case,

7    describing the remand issues as "tricky stuff;" "I'm worried about

8    the opportunity for appellate review of these very tricky issues,

9    such as the one we've just had 50 minutes of argument on and we

10   probably barely scratched the surface.").

11       Many of the issues discussed in Judge Scheindlin's March 16

12   order are clearly applicable here and consideration of the

13   jurisdictional issues in a single court will result in national

14   uniformity on the question.  Judge Scheindlin's order concludes

15   that the defendants in the MDL action (the same defendants here)

16   have sufficiently alleged that (1) they added MTBE to gasoline at

17   the direction of the EPA, a federal agency; (2) they have a

18   colorable federal defense of preemption; and (3) there is a causal

19   connection between plaintiffs' claims and the acts defendants

20   undertook at the direction of the EPA.  These allegations, the

21   court concluded, support removal pursuant to 28 U.S.C.

22   § 1442(a)(1), and plaintiff offers no convincing rationale why the

23   same concerns would not apply to this case.

24       3.   **Binding Effect of Scheindlin Order**

25       Third, plaintiff argues that Judge Scheindlin's December 23

26   order has no binding effect on this court and does not affect

                                   8

1  cases, like this one, involving parties not represented at the

2  hearing in New York preceding the order.  The court's January 28

3  order and the decision issued today are not at all premised on an

4  erroneous understanding of Judge Scheindlin's order as binding

5  authority.  Nevertheless, this court gives appropriate deference

6  to the request of the MDL court to stay proceedings, as that court

7  has expended a larger share of judicial resources considering the

8  very jurisdictional issues involved in the instant action.

9      4.   **Denial of Motion to Remand**

10      Finally, plaintiff urges that this court rescind that portion

11  of its January 28 order denying plaintiff's remand motion, as the

12  motion was never considered on its merits.  The request is well-

13  taken.  Should the transfer order be subsequently vacated by the

14  JPML, plaintiff shall be given the opportunity to litigate in this

15  forum the jurisdictional issues presented in the motion for remand.

16      Accordingly, plaintiff's motion for reconsideration is GRANTED

17  IN PART and DENIED IN PART.  This action shall remain STAYED

18  pending a final order by the Judicial Panel on Multidistrict

19  Litigation regarding transfer and consolidation.  That portion of

20  the court's January 28, 2004, order denying

21  plaintiff's motion to remand is hereby VACATED.

22      IT IS SO ORDERED

23      DATED:  March 24, 2004.

24

25                                LAWRENCE K. KARLTON
                                  SENIOR JUDGE
26                                UNITED STATES DISTRICT COURT

9

16:01 MAR 25, 2004                                    #30872  PAGE: 12/13

                                                              seal

                    United States District Court
                             for the
                    Eastern District of California
                         March 25, 2004


              * * CERTIFICATE OF SERVICE * *


                        2:03-cv-02582


     Quincy Community Svc

         v.

     Atlantic Richfield


    _____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  March 25, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


          Victor M Sher              AR/LKK
          Sher and Leff
          450 Mission Street
          Suite 500
          San Francisco, CA  94105

          Paul Scott Summy
          PRO HAC VICE
          Baron and Budd PC
          3102 Oak Lawn Avenue
          Suite 1100
          Dallas, TX  75219-4281

          Matthew T Heartney
          Arnold and Porter LLP
          777 South Figueroa Street
          44th Floor
          Los Angeles, CA  90017-2513

          David L Schrader
          Morgan Lewis and Bockius LLP
          300 South Grand Avenue
          22nd Floor
          Los Angeles, CA  90017-3132

Jeffrey John Parker
Sheppard Mullin Richter and Hampton
333 South Hope Street
48th Floor
Los Angeles, CA  90071

William David Temko
Munger Tolles and Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560

Colleen P Doyle
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA  90071-1560

Vineet N Bhatia
PRO HAC VICE
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX  77002-5096

H Lee Godfrey
PRO HAC VICE
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX  77002-5096

Alan J Hoffman
PRO HAC VICE
Blank Rome
One Logan Square
18th and Cherry Street
Philadelphia, PA  19103-6998

M Taylor Florence
Bullivant Houser Bailey Pendergrass and Hoffman
11335 Gold Express Drive
Suite 105
Gold River, CA  95670-4491

Edward Romero
Greenan Peffer Sallander and Lally LLP
PO Box 10
Two Annabel Lane
Suite 200
San Ramon, CA  94583-0010

Jack L. Wagner, Clerk

by: Deputy Clerk

G

```
1
2                                              FILED
3
4                                         FEB - 6 2004
5
                                    CLERK, U.S. DISTRICT COURT
6                                   EASTERN DISTRICT OF CALIFORNIA
                                    BY_____
7                  IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10
    PEOPLE OF THE STATE OF CALIFORNIA, )
11  et al.,                           )    NO. CV S-03-2653 GEB DAD
                                       )
12                      Plaintiffs,    )
                                       )
13            v.                       )    ORDER
                                       )
14  ATLANTIC RICHFIELD COMPANY,        )
    et al.,                            )
15                                     )
                        Defendants.    )
16  _____  )
```

17        Pending are Plaintiffs' motion to remand, Defendants' motion

18  to stay this action, and Defendants' *ex parte* application to continue

19  the hearing on Plaintiffs' motion.  Defendants' motion to stay

20  requires consideration of a letter received on January 21, 2004, from

21  United States District Judge Shira A. Scheindlin.  Judge Scheindlin

22  indicates that Defendants' motion to stay should be granted and that a

23  stay be imposed until the Judicial Panel on Multidistrict Litigation

24  ("JPML") decides whether to transfer this action to MDL 1358.

25        This action will be stayed as indicated in Judge

26  Scheindlin's January 21 letter.  Because of the stay about to be

27  imposed, Plaintiffs' remand motion is deemed withdrawn without

28  prejudice.  Further, this will moot Defendants' *ex parte* application

1  to continue the hearing on Plaintiffs' remand motion; therefore that

2  application is denied.   This action is stayed until the JPML decides

3  whether to transfer it to MDL 1358.

4

5          IT IS SO ORDERED.

6  DATED:   February 5, 2004

7                                    GARLAND E. BURRELL, JR.
                                     UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

kdc

United States District Court
for the
Eastern District of California
February 6, 2004

* * CERTIFICATE OF SERVICE * *

2:03-cv-02658

People State of CA

v.

Atlantic Richfield

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  February 6, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or pursuant to prior
authorization by counsel, via facsimile.

Victor M Sher                          SF/GEB
Sher and Leff
450 Mission Street
Suite 500
San Francisco, CA  94105

Russ Detrick
Sacramento County District Attorney
P O Box 749
901 G Street
Sacramento, CA  95814

Matthew T Heartney
Arnold and Porter
777 South Figueroa Street
44th Floor
Los Angeles, CA  90017-2513

David L Schrader
Morgan Lewis and Bockius LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA  90017-3132

Allison Nancy Shue
Morgan Lewis and Bockius LLP

300 South Grand Avenue
22nd Floor
Los Angeles, CA  90017-3132

Ronit C Barrett
Eimer Stahl Klevorn and Solberg
224 S Michigan Avenue
Suite 1100
Chicago, IL  60604

Christopher J McNevin
Pillsbury Winthrop LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA  90017-2513

Peter John Wilson
Latham and Watkins
650 Town Center Drive
20th Floor
Costa Mesa, CA  92626

William D Temko
NOT EDCA ADMITTED
Munger Tolles and Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560

Catherine Mary Stites
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA  90071-1560

Colleen P Doyle
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA  90071-1560

M Coy Connelly
PRO HAC VICE
Bracewell and Patterson
South Tower Pennzoil Place
711 Louisiana
Suite 2900
Houston, TX  77002-2781

Tracie J Renfroe
PRO HAC VICE
Bracewell and Patterson
South Tower Pennzoil Place
711 Louisiana
Suite 2900
Houston, TX  77002-2781

J Clifford Gunter III
PRO HAC VICE
Bracewell and Patterson

South Tower Pennzoil Place
711 Louisiana
Suite 2900
Houston, TX  77002-2781

Kevin M McDonald
PRO HAC VICE
Valero Energy Corporation
PO Box 500
One Valero Place
San Antonio, TX  78292-0500

Alan J Hoffman
NOT EDCA ADMITTED
Blank Rome
One Logan Square
18th and Cherry Street
Philadelphia, PA  19103-6998

Jack L. Wagner, Clerk

BY: _____
        Deputy Clerk

H

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C.  20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

February 25, 2004

TO INVOLVED COUNSEL

Re:  MDL-1358 -- In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

(See Attached Schedule CTO-5)

Dear Counsel:

Attached is a copy of a conditional transfer order filed today by the Judicial Panel on Multidistrict Litigation involving the above matter.  The actions are transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:**   **March 11, 2004**   (4 p.m. EST)
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.  Please file one Notice of Opposition (with an attached schedule of actions, if necessary) if you are opposing the transfer of more than one action.  A consolidated Motion and Brief to Vacate the CTO, with attached schedule of actions, is acceptable and encouraged.

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By _Teresa Bishop_

Deputy Clerk

Attachments

JPML Form 39A



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 25 2004

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-5)

On October 10, 2000, the Panel transferred two civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, two additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable Shira Ann Scheindlin.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Southern District of New York and assigned to Judge Scheindlin.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of October 10, 2000, and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

# SCHEDULE CTO-5 - TAG ALONG CASES
## DOCKET NO. 1358
## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

### DISTRICT  DIV. CIVIL ACTION#

**CALIFORNIA CENTRAL**
CAC   5  03-1460  City of Riverside v. Atlantic Richfield Co., et al.
CAC   8  03-1742  Orange County Water District v. Unocal Corp.,  et al.

**CALIFORNIA EASTERN**
CAE   2  03-2582  Quincy Community Services District v. Atlantic Richfield Co., et al.
CAE   2  03-2601  City of Roseville v. Atlantic Richfield Co., et al.
CAE   2  03-2653  People of the State of California, et al. v. Atlantic Richfield Co., et al.

**CALIFORNIA SOUTHERN**
CAS   3  03-2408  Martin Silver, et al. v. Alon USA Energy, Inc., et al.

**CONNECTICUT**
CT   3  03-2252  Exxon Mobil Corp., et al. v. American Distilling & Manufacturing Co., Inc., et al.

**FLORIDA NORTHERN**
FLN   3  03-597  Exxon Mobil Corp., et al. v. Escambia County Utilities Authority

**IOWA NORTHERN**
IAN   5  03-4124  ExxonMobil Corp., et al. v. City of Galva, et al.

**ILLINOIS NORTHERN**
ILN   1  03-8973  City of Crystal Lake, et al. v. Amerada Hess Corp., et al.
ILN   1  03-9026  Exxon Mobil Corp., et al. v. City of Crystal Lake, et al.

**INDIANA NORTHERN**
INN   3  03-904  City of Mishawaka v. Amerada Hess Corp., et al.
INN   3  03-905  City of South Bend, Indiana v. Amerada Hess Corp., et al.
INN   4  03-103  North Newton School Corp. v. Amerada Hess Corp., et al.

**INDIANA SOUTHERN**
INS   3  03-223  Exxon Mobil Corp., et al. v. City of Rockport, et al.

**KANSAS**
KS   6  03-1455  City of Park City, Kansas v. Alon USA Energy Inc., et al.
KS   6  03-1456  City of Dodge City, Kansas v. Alon USA Energy Inc., et al.
KS   6  03-1457  Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al.
KS   6  03-1458  City of Bel Aire v. Alon USA Energy Inc., et al.
KS   6  04-1009  Exxon Mobil Corp., et al. v. Chisholm Creek Utility Authority, et al.

**MASSACHUSETTS**
MA   1  03-12539  Exxon Mobil Corp. v. Brimfield Housing Authority, et al.

**NEW HAMPSHIRE**
NH   1  03-518  Exxon Mobil Corp., et al. v. City of Portsmouth, New Hampshire, et al.
NH   1  03-542  City of Portsmouth, New Hampshire v. Amerada Hess Corp., et al.
NH   1  03-546  City of Dover v. Amerada Hess Corp., et al.

**NEW YORK EASTERN**
NYE   2  03-6125  Long Island Water Corp. v. Amerada Hess Corp., et al.
NYE   2  03-6274  Exxon Mobile Corp., et al. v. Long Island Water Corp., et al.

SCHEDULE CTO-5 (CONT.) MDL-1358

**DISTRICT  DIV. CIVIL ACTION#**

VIRGINIA WESTERN
    VAW    4  03-104  Patrick County School Board v. Amerada Hess Corp., et al.
    VAW    4  03-105  Exxon Mobil Corp., et al. v. Patrick County School Board, et al.

VERMONT
    VT    2  03-337   Town of Hartland v. Amerada Hess Corp., et al.
    VT    2  03-343   Exxon Mobil Corp., et al. v. Town of Hartland

INVOLVED COUNSEL LIST (CTO-5)
DOCKET NO. 1358
IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY
LITIGATION

Samuel J. Abate, Jr.
McCarter & English, L.L.P.
245 Park Avenue
New York, NY 10167

Brent H. Allen
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Carolyn G. Anderson
Zimmerman Reed
651 Nicollet Mall Ste 501
Minneapolis, MN 55402-4123

Jon D. Anderson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

James M. Armstrong
Foulston & Siefkin, LLP
700 Bank of America Center
100 North Broadway
Wichita, KS 67202

Dan H. Ball
Bryan Cave, L.L.P.
One Metropolitan Square
Suite 3600
211 N. Broadway
St. Louis, MO 63102

Deborah E. Barnard
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116

M. Scott Barrett
Barrett and Associates
520 N. Walnut
P.O. Box 5233
Bloomington, IN 47407

Ronit C. Barrett
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

William W. Barrett
Williams Hewitt & Robbins, Inc.
600 N. Emerson Avenue
Greenwood, IN 46143

Joseph G. Baton
Barnes & Thornburg
11 S. Meridian Street
Suite 1313
Indianapolis, IN 46204

Peter G. Beeson
Devine, Millimet & Branch, P.A.
111 Amherst Street
P.O. Box 719
Manchester, NH 03105-0719

Peter A. Bellacosa
Kirkland & Ellis
153 East 53rd Street
New York, NY 10022

David E. Bengtson
Stinson Morrison Hecker, LLP
600 Commerce Bank Center
150 North Main Streeet
Wichita, KS 67202

J. Stephen Bennett
Baker & Daniels
111 E. Wayne Street
Suite 800
Fort Wayne, IN 46802

Elizabeth L. Bevington
Holland & Knight LLP
315 South Calhoun Street
Suite 600
PO Box 810
Tallahassee, FL 32302-0810

Daniel C. Blaney
Blaney, Casey & Walton - Mor/IN
86 E. State Street
P.O. Box 500
Morocco, IN 47963

Stephen F. Bolton
Moore, Hill & Westmoreland
P.O. Box 1792
Pensacola, FL 32598

Anthony A. Bongiorno
McDermott, Will & Emery, P.C.
28 State Street
33rd Floor
Boston, MA 02109-1775

Anton J. Borovina
Borovina & Marullo, PLLC
425 Broadhollow Road
Melville, NY 11747

F. Wesley Bowers
Bowers Harrison, LLP
25 N.W. Riverside Drive
2nd Floor
P.O. Box 1287
Evansville, IN 47706-1287

Patrick E. Cafferty, Jr.
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Randle B. Carpenter, Jr.
McMillan Constantible, LLP
River House - Suite 2
2180 Boston Post Road
Larchmont, NY 10538

Mark Hunter Churchill
McDermott, Will & Emery
600 13th Street, NW
Washington, DC 20005-3096

David L. Cleary
Cleary Shahi Associates, P.C.
110 Merchants Row
P.O. box 6740
Rutland, VT 05702-6740

Peter C. Condron
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

M. Coy Connelly
Bracewell & Patterson
South Tower Pennzoil Place, Suite 2900
711 Louisiana Street
Houston, TX 77002

INVOLVED COUNSEL LIST (CTO-5) MDL-1358 (Cont.)

John D. Cooney
Cooney & Conway
120 North LaSalle Street
30th Floor
Chicago, IL 60602

Lawrence Allen Cox
Arnold & Porter
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513

David J. Crotta, Jr.
Mulvey, Oliver & Gould
83 Trumbull Street
New Haven, CT 06510

George A. Dagon, Jr.
Murtha Cullina LLP
Cityplace I
185 Asylum Street
Hartford, CT 06103

Harry Davis
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007

Mindy G. Davis
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Craig J. De Recat
Manatt Phelps & Phillips
11355 W. Olympic Boulevard
Los Angeles, CA 90064-1614

Michael DeMarco
Kirkpatrick & Lockhart, LLP
75 State Street
Boston, MA 02109

Jennifer M. Del Monico
Murtha Cullina, LLP
Whitney Grove Square
2 Whitney Avenue
P.O. Box 704-A
New Haven, CT 06503-0704

Russ Detrick
Sacramento County District Attorney
P.O. Box 749
901 G Street
Sacramento, CA 95814

M. Jerome Diamond
Diamond & Robinson
15 East State Street
P.O. Box 1460
Montpelier, VT 05601

Brandon Diket
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007

Brendan M. Dixon
Unocal Corp.
376 S. Valencia Avenue
Brea, CA 92626

Colleen P. Doyle
McCutchen, Doyle, Brown & Enersen
355 South Grand Avenue
Suite 440
Los Angeles, CA 90071-1560

James W. Draughn, Jr.
Kirkland & Ellis
655 Fifteenth Street, NW
12th Floor
Washington, DC 20005

John C. Duffey
Stuart & Branigin
The Life Building, Suite 800
300 Main Street
P.O. Box 1010
Lafayette, IN 47902

Mark C. Durkin
Durkin & Polera, PC
1111 Summer Street
5th Floor
Stamford, CT 06905

John V. Dwyer
Winer & Bennett
110 Concord Street
PO Box 488
Nashua, NH 03060

Jay Eaton
Nyemaster, Goode, Voigts, West
& Hansell
700 Walnut Street
Suite 1600
Des Moines, IA 50309

Joseph G. Eaton
Barnes & Thornburg
11 S. Meridian Street
Suite 1313
Indianapolis, IN 46204

Lawrence M. Edelman
Pierce Atwood
Pease International Tradeport
One New Hampshire Avenue
Suite 350
Portsmouth, NH 03801

Dale W. Eikenberry
Wooden & Mclaughlin, LLP
One Indiana Square
Suite 1800
Indianapolis, IN 46204-2019

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
122 South Michigan Avenue
Suite 1776
Chicago, IL 60603

Celeste A. Evangelisti
Barron & Budd
3102 Oaklawn Avenue
Suite 1100
Dallas, TX 75219-4281

John J. Fanning
Cullen & Dykman
177 Montague Street
Brooklyn, NY 11201

Bruce W. Felmly
McLane, Graf, Raulerson & Middleton
900 Elm Street
Manchester, NH 03105

Taylor M. Florence
Bullivant, Houser, Bailey, et al.
11335 Gold Express Drive
Ste 105
Goldriver, CA 95670-4491

Heather Fusco
Beveridge & Diamond, P.C.
477 Madison Avenue
15th Floor
New York, NY 10022

Christopher J. Garvey
Goodwin & Procter, LLP
599 Lexington Avenue
New York, NY 10022

INVOLVED COUNSEL LIST (CTO-5) MDL-1358 (Cont.)                          Page 3 of 6

Dennis L. Gillen
Depew & Gillen, L.L.C.
151 North Main Street
Suite 800
Wichita, KS 67202

Robert J. Gordon
Weitz & Lutzenberg
180 Maiden Lane
17th Floor
New York, NY 10038

Frank M. Grenard
Whitfield & Eddy, PlC
317 Sixth Avenue
Suite 1200
Des Moines, IA 50309-1474

J. Clifford Gunter, III
Bracewell & Patterson
South Tower Pennzoil Place, Suite 2900
711 Louisiana Street
Houston, TX 77002

Steven R. Gustavson
Baker & Botts
30 Rockefeller Plaza
New York, NY 10112

John S. Guttmann
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005

Pamela R. Hanebutt
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

David S. Hardy
Levett Rockwood, PC
33 Riverside Avenue
P.O. Box 5116
Westport, CT 06881

Matthew T. Heartney
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Dorit S. Heimer
Levett Rockwood, PC
33 Riverside Avenue
P.O. Box 5116
Westport, CT 06881

Mitchell L. Herren
Hinkle Elkouri Law Firm, LLC
2000 Epic Center
301 North Main Street
Wichita, KS 67202-4820

Judith L. Herrmann
Lane & Waterman
220 North Main Street
Suite 600
Davenport, IA 52801

Melissa Hinds
Bakers & Daniels
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204

Alan J. Hoffman, Jr.
Blank Rome, LLP
One Logan Square
18th  & Cherry Streets
Philadelphia, PA 19103-6998

George Hoffman, III
Jones, Hoffman & Ullrich
150 N. Main Street
P.O. Box 365
Franklin, IN 46131

Michael J. Hulka
Barnes & Thornburg
11 S. Meridian Street
Suite 1313
Indianapolis, IN 46204

Andrew W. Hutton
Hutton & Hutton
8100 East 22nd Street
North Building 1200
P.O. Box 638
Wichita, KS 67201-0638

Hojoon Hwang
Munger, Tolles & Olson, LLP
33 New Montgomery Street
19th Floor
San Francisco, CA 94105

Michele D. Johnson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Margaret M. Jones
Jones Law Office
215 S. St. Joseph Street, Suite 600
Souht Bend, IN 47407

Joseph Conrad Kearfott
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Joseph W. Kennedy
Morris, Laing, Evans, Brock
& Kennedy, Chtd.
430 Olive W. Garvey Building
200 West Douglas Avenue
Wichita, KS 67202

Frederic R. Klein
Goldberg, Kohn, Bell, Black, et al.
55 East Monroe Street
Suite 3700
Chicago, IL 60603

Kenneth M. Kliebard
Howrey Simon Arnold & White, LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610

Ben M. Krowicki
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103-3178

J. Andrew Langan
Kirkland & Ellis
200 East Randolph Drive
Suite 5400
Chicago, IL 60601

Andrew Lapayowker
Crown, Central Petroleum Corp.
One N. Charles Street (21203)
P.O. Box 1168
Baltimore, MD 21203

Steven L. Leifer
Baker, Botts, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

INVOLVED COUNSEL LIST (CTO-5) MDL-1358 (Cont.)

Charles S. Leone
Attorney for the City of South Bend, IN
1400 County City Building
South Bend, IN 46601

John J. Lyons
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626-1925

Robert W. Mann
Young, Haskins, Mann & Gregory, P.C.
60 W. Church Street
P.O. Box 72
Martinsville, VA 24112

Michael J. Marks
Tarrant, Marks & Gilles
PO Box 1440
Montpelier, VT 05601-1440

John McGahren
Kristi, Midboe, Miller, Latham & Watkins
One Newark Center
16th Floor
Newark, NJ 07101-3174

Gerald L. McMahon
Seltzer, Caplan, McMahon & Vitek
2100 Symphony Towers
750 B Street
San Diego, CA 92101-8177

Christopher J. McNevin
Pillsbury Winthrop, LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-2513

Charles S. McNew
Weitz & Lutzenberg
180 Maiden Lane
New York, NY 10038

Lisa S. Meyer
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Jeffery A. Meyers
Nelson, Kinder, Mosseau & Saturley
99 Middle Street
Manchester, NH 03101

Mark A Miller
Baker & Botts
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Catherine Noel Mitchell
Morgan Lewis & Bockius, LLP
300 S Grand Ave, 22nd Fl.
Los Angeles, CA 90071-3132

Anthony H Monioudis
Woods Rogers, PLC
PO Box 560
Danville, VA 24543-0560

Peter W. Mosseau
Nelson, Kinder, Mosseau & Saturley
99 Middle Street
Manchester, NH 03101

Howard B. Myers
Myers Associates, P.L.L.C.
240 Mechanic Street
Lebanon, NH 03766

Barry Needleman
McLane, Graf, Raulerson & Middleton
Bicentennial Square
15 North Main Street
Concord, NH 03301

Thomas J. Pappas
Wiggin & Nourie, P.A.
P.O. Box 808
Manchester, NH 03105

James A. Pardo
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020-1605

Jeffrey John Parker
Sheppard, Mullin, Richter & Hampton
333 South Hope Street
Suite 4800
Los Angeles, CA 90071-1448

Patrick M. Patterson
Emmanuel Sheppard & Condon
30 S. Spring Street
P.O. Box 1271
Pensacola, FL 32502-1271

Jeffrey D. Peier
Klenda, Mitchell, Austerman
 & Zuercher
301 North Main Street
Suite 1600
Wichita, KS 67202-4888

Gregory P. Priamos
3900 Main Street
5th Floor
Riverside, CA 92522

Morris A. Ratner
Lieff, Cabraser, Heimann & Bernstein
780 Third Avenue
48th Floor
New York, NY 10017

Lila Pankey Ray
Baker & Botts
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Paul J. Reilly
Baker & Botts
30 Rockefeller Plaza
44th Floor
New York, NY 10112

Tracie J. Renfroe
Bracewell & Patterson
South Tower Pennzoil Place
Suite 2900
711 Louisiana
Houston, TX 77002

David S. Richman
Stephan, Oringher, Richman
2029 Century Pk E.
6th Fl.
Los Angeles, CA 90067

Stephen H. Roberts
McNeill & Taylor
P.O. Box 815
Dover, NH 03820

Todd Eric Robins
Sher & Leff
450 Mission St..
Suite 500
San Francisco, CA 94105

INVOLVED COUNSEL LIST (CTO-5) MDL-1358 (Cont.)                    Page 5 of 6

Brent D. Rosenberg
Rosenberg, Stowers & Morse
505 Fifth Avenue
Suite 1010
Des Moines, IA 50309

C. Joseph Russell
Bose, McKinney & Evans
2700 First Indiana Plaza
135 N. Pennsylvania Street
Indianapolis, IN 46204

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020

A. Curtis Sawyer, Jr.
Miller & Sawyer
1651 Response Road
Second Floor
Sacramento, CA 95825-5253

David L. Schrader
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Fred E. Schulz
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Suite 3000
Chicago, IL 60606

Andrew W. Serell
Rath, Young & Pignatelli
P.O. Box 1500
Concord, NH 03302-1500

Victor M. Sher
Miller, Sher & Sawyer
100 Howe Avenue
Suite S-120
Sacramento, CA 95825

Laurence S. Shtasel
Blank, Rome, Comisky & McCauley
One Logan Square
Philadelphia, PA 19103-6998

Alison N. Shue
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

David F. Silver
Barr, Sternberg, Moss, et al.
507 Main Street
Bennington, VT 05201-2143

Elizabeth E. Skilling
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, VA 23255

Andrew M. Smith
Getty Properties Corp.
General Counsel
125 Jericho Turnpike, Suite 103
Jericho, NY 11753

Rod G. Smith
ConocoPhillips
600 North Dairy Ashford
Houston, TX 77079

Donald M. Snemis
Ice Miller
One American Square
P.O. Box 82001
Indianapolis, IN 46282

Larrry B. Spikes
Martin, Pringle, Oliver, Wallace
 & Bauer
100 N. Broadway
Suite 500
Wichita, KS 67202

Robert K. Stanley
Baker & Daniels
300 N. Merdian Street
Suite 2700
Indianapolis, IN 46204

Jeffrey G. Stark
Meyer, Suozzi, English & Klein, P.C.
1505 Kellum Place
Mineola, NY 11501

Potter Stewart, Jr.
Potter Stewart Law Offices, PC
205 Main Street
Suite 8
Brattleboro, VT 05301-0868

Catherine M. Stites
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106

Anthony J. Stoik
Klass, Stoos, Stoik, Mugan, et al.
P.O. Box 327
Sioux City, IA 51102

Scott Summy
Baron & Budd
The Centrum Building, Suite 1100
3102 Oak Lawn Avenue
Dallas, TX 75219-3605

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Stephen L. Tober
Tober Law Offices, P.A.
P.O. Box 1377
Portsmouth, NH 03801

Mark E. Tully
Goodwin Procter
Exchange Place
Second Floor
Boston, MA 02109-2881

John V. Wachtel
Klenda, Mitchell, Austerman & Zuercher
1600 Epic Center
301 North Main
Wichita, KS 67202

Richard E. Wallace, Jr.
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007

Thomas R. Watson
Watson, Bosen, Harman, Venci & Lemire
P.O. Box 469
Portsmouth, NH 03802-0469

George E. Wattendorf
City of Dover
Municipal Building
46 Locust Street
Dover, NH 03820

Craig Weatherly
Gravel & Shea
P.O. Box 369
76 St. Paul Street
Burlington, VT 05402

INVOLVED COUNSEL LIST (CTO-5) MDL-1358 (Cont.)                    **Page 6 of 6**

Gregory A Weimer
Hoff Curtis
PO Box 1124
Burlington, VT 05402-1124

Joseph P. Williams
Shipman & Goodwin, L.L.P.
One American Row
Hartford, CT 06103-2819

Peter John Wilson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Alan M. Wiseman
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Christopher F. Wong
Bryan Cave L.L.P
120 Broadway, Suite 300
Santa Monica, CA 90401

Lynn Wright
Edwards & Angell
750 Lexington Avenue
New York, NY 10022

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Craig H. Zimmerman
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606

**RULE 5.2:**   **SERVICE OF PAPERS FILED**

(a)   All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation.  Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure.  The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each.  If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address.  The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading.  The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service.  After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings.  In such instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

(b)   The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion.  The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

(c)   Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation.  Only one attorney shall be designated for each party.  Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address.  Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

(d)   In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel.  After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

(e)   If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel.  Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

## RULE 7.4:          CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)       Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)       Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)       Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)       Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)       Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)       Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

## RULE 7.5:          MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)       Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)       Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)       Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407. Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown. The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)       A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)       Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                      :

In re: Methyl Tertiary Butyl Ether     :
("MTBE") Products Liability Litigation  :

                      :       <u>OPINION AND ORDER</u>

This Document Relates To:   All Cases  :      MDL No. 1358 (SAS)

                      :

                      :
-------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

       This consolidated multi-district litigation ("MDL") initially involved

several putative class actions brought on behalf of private well-owners seeking

relief from contamination of their wells. By opinion and order dated July 16,

2002, I denied plaintiffs' motion for class certification, *see In re: Methyl Tertiary*

*Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y.

2002), and the putative class actions subsequently settled.

       In 2003, dozens of new MTBE products liability cases were filed in

state courts around the country. The new actions are brought by numerous

plaintiffs, including states, cities, municipalities and entities, seeking relief from

contamination or threatened contamination of groundwater. Defendants removed

many of the actions to federal court. Many of the cases removed to the Southern

District of New York were assigned to me as the presiding judge over MDL 1358;

others removed to this district were transferred to me as related cases. Defendants

asked that cases removed to other federal district courts be transferred to this

Court, pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict

Litigation ("JPML") and 28 U.S.C. § 1407.  On February 6, 2004, the JPML

transferred thirteen cases to this Court,[1] and an additional thirty cases were

conditionally transferred on February 25, 2004.

Plaintiffs now move to remand all of these actions to the state courts,

arguing that the federal court lacks subject matter jurisdiction.

## I.    BACKGROUND

### A.    The Allegations

The complaints, though not identical, allege essentially the same

facts.[2]  MTBE is a chemical compound that is a by-product of the gasoline refining

process.  It has enhanced solubility in water, and is chemically attracted to water

---

[1]    Originally, the February 6 transfer order conditionally transferred sixteen cases to the Southern District of New York.  Within fifteen days of the conditional transfer, parties in three of the actions filed objections.  Therefore, the transfers of those three cases is stayed pending resolution by the Panel of the objections.  No objections were filed in the remaining thirteen actions, and the transfer of those actions became effective on February 24, 2004.

[2]    The facts recited herein are mere allegations, and do *not* constitute findings of the Court.  Because the facts alleged in the various complaints are more or less identical, and any differences do not affect the jurisdictional analysis, for purposes of this motion I will describe and refer to the allegations set forth in *Water Authority of Western Nassau v. Amerada Hess Corp. et al.*, No. 03 Civ. 9544, and defendants' Notice of Removal in the same action.

molecules. Sometime after 1979, in an effort to boost the octane level in higher grades of gasoline, defendants began manufacturing, distributing and/or selling gasoline containing MTBE in concentrations averaging approximately two to four percent by weight. Since 1990, defendants have added MTBE to gasoline in concentrations of up to fifteen percent. The publicly articulated justification for adding MTBE to gasoline is that it helps fuel burn more efficiently, thereby reducing air pollution. *See* Complaint ¶¶ 68-70, 72, 74, 155, 158.

Whenever gasoline containing MTBE leaks, spills or is otherwise released into the environment, it travels rapidly and contaminates groundwater. This contamination causes water to have a foul smell, and renders it unusable and unfit for human consumption. Moreover, MTBE is a known animal carcinogen, and is linked to many potential human health problems. Water contamination occurs from normal, everyday use of gasoline containing MTBE -- *e.g.* gasoline drips from gas station pumps -- and when MTBE is stored in leaking underground tanks. MTBE is also discharged into the air as exhaust as a bi-product of car engine combustion of gasoline containing MTBE. As a result, groundwater is further contaminated because rain returns the discharged MTBE to the soil. *See id.* ¶¶ 78, 80-84, 121.

3

Plaintiffs allege that as early as 1980, defendants were aware of the risk that MTBE posed to groundwater because of well contamination in Rockaway, New Jersey. Throughout the 1980s and 90s, subsequent contamination of other wells and aquifers, as well as scientific studies and reports, confirmed the risks posed by MTBE. Although defendants publicly denied the risks, their own documents confirm that they were aware of the harm posed by their use of MTBE. *See id.* ¶¶ 97-106, 113-120.

Because adding MTBE to gasoline allowed defendants to cheaply increase the octane levels in gasoline, and provided a use for the refining process by-product, defendants conspired to convince the public and the Environmental Protection Agency ("EPA") that adding MTBE to gasoline is safe and desirable. Defendants thereafter failed to provide EPA with information it sought regarding MTBE's safety, and persuaded EPA not to undertake additional testing of MTBE *See id.* ¶¶ 122-136, 147-149. These actions constitute "Defendants' pattern of exaggerating the environmental benefits of MTBE while understating or concealing MTBE's real environmental hazards, all of which Defendants knew or should have known . . .". *Id.* ¶ 137.

Despite their knowledge of the threat posed by MTBE, defendants have continued to use MTBE as an oxygenate in gasoline and have even increased

4

the concentrations, although safer alternatives are available.  Moreover, plaintiffs claim that defendants had a duty to disclose the risk of MTBE, but failed to do so. *See id.* ¶¶ 96, 144, 145, 158, 161.

As a result of defendants' actions and their failure to warn, MTBE is the second most frequently detected chemical in groundwater in the United States, and wells throughout the country are contaminated.  The nation's drinking water is threatened by the contamination.  *See id.* ¶¶ 163-168.

Based on these facts, plaintiffs assert causes of action for (1) public nuisance, (2) strict liability for design defective and/or defective product, (3) failure to warn, (4) negligence, (5) private nuisance, (6) deceptive business acts and practices in violation of New York's General Business Law, and (7) violation of the New York Oil Spill Prevention, Control and Compensation Act.  *See id.* ¶¶ 184-233.  Plaintiffs also allege that defendants conspired to conceal the dangers of MTBE and mislead the public and the EPA.  Because MTBE released into the environment lacks identifying characteristics, it is impossible to identify the manufacturer responsible for specific groundwater contamination.  Plaintiffs therefore allege market share, concert of action and enterprise liability.  *See id.* ¶¶ 170, 174, 176, 178, 180-183.

**B.**     **Grounds for Removal**

Defendants removed the actions to federal court, asserting four grounds for federal subject matter jurisdiction: (1) federal agent jurisdiction pursuant to section 1442(a)(1) of Title 28; (2) preemption; (3) bankruptcy jurisdiction, pursuant to section 1334(b) of Title 28[3]; and (4) substantial federal question.

In support of removal, defendants allege that in 1977, Congress amended the Clean Air Act to federalize fuel content requirements. *See* 42 U.S.C. § 7545. Pursuant to the amendment, EPA has express and exclusive authority to determine what fuels and fuel additives are sold nationwide. *See* Defendants' Notice of Removal ¶¶ 13, 14. By Federal Regulations issued in 1979 and 1981, EPA allowed MTBE to be added to gasoline in amounts of up to fifteen percent by weight.[4] *See* 44 Fed. Reg. 12,242, 12,243 (Mar. 6, 1979); 46 Fed. Reg. 38,582 (July 28, 1981); Defendants' Notice of Removal ¶ 15.

---

[3]      It is undisputed that Texaco, the predecessor to defendant ChevronTexaco, filed for bankruptcy on April 12, 1987. The bankruptcy court confirmed Texaco's reorganization plan on March 23, 1988.

[4]      Notably, EPA's regulations pertaining to fuel content span more than 400 pages of the Code of Federal Regulations. Defendants' Notice of Removal ¶ 33.

6

In 1990, Congress further amended the Clean Air Act. Among other things, the amendments created two programs that require petroleum refiners to blend oxygenates into gasoline sold throughout much of the country. These programs -- the Oxygenated Fuel Program ("OFP") and the Reformulated Gasoline ("RFG") Program -- were designed to reduce emission of toxic air pollutants. According to defendants, at the time the amendments were enacted, Congress was aware that only a limited number of oxygenates could be blended with gasoline to meet the requirements, and MTBE would have to be used for at least some of the gasoline sold in areas affected by the programs. Defendants' Notive of Removal ¶¶ 16-20. Moreover, "Congress and [the] EPA fully understood that MTBE would be used in the vast majority of oxygenated gasoline sold in the United States," *id.* ¶ 19 (citing 136 Cong. Rec. S6383 (daily ed. May 16, 1990) (statement of Sen. Daschle)), and "intended that petroleum refiners use MTBE in gasoline," *id.* ¶ 23.

In 1991, pursuant to the 1990 amendment to the Clean Air Act, the EPA approved the use of seven compounds to achieve the requirements set forth in the OFP.[5] These additives are: (1) MTBE, (2) ethanol, (3) methanol, (4) tertiary

---

[5]    In 1994, EPA approved the same seven additives for use in the RFG Program. *See id.* ¶ 29.

amyl methyl ether, (5) ethyl tertiary butyl ether, (6) tertiary butyl alcohol, and (7) diisoproyl ether. *See id.* ¶ 26 (citing Proposed Guidelines for Oxygenated Gasoline Credit Programs Under Section 211(m) of the Clean Air Act as Amended, 56 Fed. Reg. 31,151, 31,154 (July 9, 1991)). According to defendants, "[l]ike Congress, the EPA understood that MTBE would be 'the most common oxygenating compound' used by refiners to comply with the CAA's new air emissions standards." *Id.* ¶ ¶ 28 (quoting Approval and Promulgation of Implementation Plan, 56 Fed. Reg. 5,458, 5,465 (Feb. 11, 1991)), 29, 31.

Finally, defendants claim that when the EPA approved MTBE for use in compliance with the OFP and RFG Program, it knew of the risk that MTBE posed to groundwater, and further knew that there was not a sufficient nationwide supply of ethanol, or even an infrastructure to create ethanol, to satisfy the program requirements. Accordingly, EPA knew that the *only* way refining companies could meet the requirements promulgated in the OFP and RFG Programs, and thereby comply with the Clean Air Act, was to use MTBE as a gasoline additive. Congress and the EPA therefore effectively directed defendants to use, manufacture and/or sell gasoline that contains MTBE. *See id.* ¶¶ 19, 23, 34.

8

## II.   APPLICABLE LAW

### A.   General Principles

A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *See Carson v. Dunham*, 121 U.S. 421, 425-26 (1887); *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Moreover, the rules for removal are strictly construed. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002). It is well-established that "[t]o determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint and ignore potential defenses: 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, --, 123 S. Ct. 2058, 2062 (2003) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1914)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id* at 2062.

There are, however, two exceptions to the general rule. *First*, a state law claim may be removed to federal court when the claim is completely preempted by federal law. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of

9

action, even if pleaded in terms of state law, is in reality based on federal law.
This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any
claim that 'arises under' federal law to be removed to federal court." *Beneficial
Nat'l Bank*, 123 S. Ct. at 2063.  The Supreme Court has found "complete
preemption" in only two types of cases:  certain causes of action under the Labor
Management Relations Act ("LMRA") and the Employee Retirement Income
Security Act ("ERISA").  *See id.*  Recently, the Second Circuit found complete
preemption in a third category of cases:  those arising under the Securities
Litigation Uniform Standards Act ("SLUSA").  See *Spielman v. Merrill Lynch,
Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 124 n. 5 (2d Cir. 2003).  In so finding,
the Court of Appeals emphasized that "the complete preemption doctrine must be
applied sparingly and with great restraint."  *Id.*

  *Second*, an action may be removed to federal court where Congress so
provides.  Thus, where a statute specifically gives federal courts jurisdiction over a
particular subject matter, and states that actions involving that subject matter may
be removed to federal court despite the absence of federal claims, removal is
proper even where the "well-pleaded complaint" rule is not satisfied.  *See, e.g.*, 42
U.S.C. § 2014 (providing federal courts with jurisdiction over tort actions arising
from nuclear accidents expressly allowing removal of such actions even when only

state law claims are asserted); *see also Beneficial Nat'l Bank*, 123 S. Ct. at 2062-
63 (discussing statutes that expressly allow removal to federal court even where
no federal cause of action is asserted on the face of the complaint).

### B.    Federal Agent Jurisdiction

#### 1.    Background

Section 1442(a) of Title 28 provides that, "[a] civil action []
commenced in a State court against [] the following persons may be removed by
them to the district court of the United States for the district and division
embracing the place wherein it is pending:  [] Any officer of the United States or
any agency thereof, or person acting under him, for any act under color of such
office . . .".  28 U.S.C. § 1442(a)(1).  This statute falls into the second of the two
exceptions to the well-pleaded complaint rule because Congress has expressly
provided that actions against persons acting under color of an office or agency of
the United States may be removed to federal court, despite the absence of any
federal cause of action.  *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)
("Suits against federal officers are exceptional in this regard.  Under the federal
officer removal statute, suits against federal officers may be removed despite the
nonfederal cast of the complaint"); 16 James Wm. Moore et al., *Moore's Federal
Practice*, ¶ 107.15[1][b] ("[T]here is no requirement that the state action [removed

11

pursuant to section 1442(a)] be one that could have been originally filed in the federal courts.").

Although section 1442(a) permits removal regardless of whether the complaint *states* a federal cause of action, the action must nonetheless *raise* an issue of federal law. *See* U.S. Const., art. III § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . ."). This requirement is met if the defense depends on federal law. "It is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes. The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 126 (1989). *See also Jefferson County*, 527 U.S. at 430-31 ("Under the federal officer removal statute . . . the federal-question element is met if the defense depends on federal law.").

The Supreme Court has explained the justification for the federal officer removal statute:

> The purpose of [the statute in its various forms throughout history] is not hard to discern. As this Court said nearly 90 years ago in *Tennessee v. Davis*, 100 U.S. 257, 263, 25 L. Ed. 648

12

(1880), the Federal Government can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,--if their protection must be left to the action of the State court,--the operations of the general government may at any time be arrested at the will of one of its members. For this very basic reason, the right of removal under s 1442(a)(1) is made absolute whenever a suit in a state court is for any act under color of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a federal interest in the matter, the very basic interest in the enforcement of federal law through federal officials.

*Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (citations and quotation marks omitted); *see also Mesa*, 489 U.S. at 126.

The Supreme Court has emphasized that the federal officer removal statute is neither narrow nor limited, and has rejected lower court interpretations that circumscribe its scope. *See Willingham*, 395 U.S. at 406 (the policies underlying section 1442(a) "should not be frustrated by a narrow, grudging interpretation"); *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981); *Reiser v. Fitzmaurice*, No. 94 Civ. 7512, 1996 WL 54326, at *3 (S.D.N.Y. Feb. 8, 1996) ("The policy of supremacy underlying section 1442(a)(1) has prompted federal courts to construe it broadly . . ."). A defendant seeking to remove pursuant to

13

section 1442(a) need only provide "candid, specific and positive" allegations that

the conduct complained of was undertaken pursuant to the directions of a federal

office or agency. *Willingham*, 395 U.S. at 409. "A plaintiff may not challenge the

factual allegations in the notice of removal, but the plaintiff may challenge their

legal sufficiency." 16 James Wm. Moore et al., *Moore's Federal Practice*, ¶

107.15[1][b][iv][B]; *see also Colorado v. Symes*, 286 U.S. 510, 518-19 (1932).

Moreover, if a case is properly removed pursuant to section

1442(a)(1), the district court has discretion to retain jurisdiction and adjudicate the

merits of the case even after the federal officer or agency aspect is dismissed. *See*

*IMFC Prof. Derv. of Florida, Inc. v. Latin America Home Health, Inc.*, 676 F.2d

152, 158-60 (5th Cir. 1982) ("[E]limination of the federal officer from a removed

case does not oust the district court of jurisdiction"); *Watkins v. Grover*, 508 F.2d

920, 921 (9th Cir. 1974) ("The modern rule (and the law of this circuit) is that a

federal court does have the power to hear claims that would not be independently

removable even after the basis for removal jurisdiction is dropped from the

proceedings."); *New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv.*

*Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989) ("If a court dismisses the federal

defendant from [] a case [removed pursuant to section 1442(a)(1)], it must use its

14

discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").

## 2.    Requirements

Under section 1442, a private party may remove a state court action if (1) it acted under the direction of a federal agency or officer; (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal direction and the conduct in question. *See Jefferson County*, 527 U.S. at 431; *Mesa*, 489 U.S. at 124-25; *In re Agent Orange Product Liab. Litig.*, No. 98 Civ. 6383, 2004 WL 231187, at *3 (E.D.N.Y. Feb. 9, 2004)[6]; 16 James Wm. Moore et al., *Moore's Federal Practice*, ¶ 107.15[1][b][ii].

---

[6]    In *In re Agent Orange*, Judge Jack B. Weinstein described the three requirements slightly differently: "First, a defendant must demonstrate that it is a 'person' within the meaning of the statute. Second, the defendant must establish that the suit is for any act under color of [federal] office, i.e., there is a causal connection between the charged conduct and asserted official authority. Causation exists if the predicate acts of the state suit were undertaken while a person was acting as or under a federal officer, and the acts were under color of the relevant federal office. Third, defendants must raise a colorable claim to a federal law defense." 2004 WL 231187 at *3 (quotation marks omitted). Nonetheless, the substance of the requirements is the same.

There is no doubt that the defendants in these actions constitute "persons" for purposes of section 1442(a) because "unless the context indicates otherwise . .. the words 'person' and 'whoever' include corporations, companies, . . . , and joint stock companies, as well as individuals. . . ." 1 U.S.C. § 1; *see also Group Health Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 890 (S.D.N.Y. 1984) (corporations are entitled to remove under section 1442(a)).

15

A defendant meets the first requirement of "acting under the direction of a federal agency or officer" by "showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 946-47 (E.D.N.Y. 1992); *see also Bakalis v. Crossland Sav. Bank*, 781 F. Supp. 140, 145 (E.D.N.Y. 1991) ("The rule that appears to emerge from the case law is one of 'regulation plus.'"). Although there is "no precise standard for the extent of control necessary to bring an individual with the 'acting under' clause," *Gurda Farms Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 844 (S.D.N.Y. 1973), "a cursory survey of the application of [section 1442(a)] reveals it has been construed broadly, and its 'persons acting under' provision particularly so," *id.* at 843.[7] *See also Agent Orange Product Liab. Litig.*,

---

[7]    The *Gurda* court undertook a thorough analysis of cases in which courts have found that defendants were "persons acting under" a federal office or agency.  These include *State of Texas ex rel. Faulkner v. National Bank of Commerce*, 290 F.2d 229 (5th Cir. 1961) (quo warranto proceeding against banks operating branch offices on military bases held removable); *State of Texas v. Heaton*, 58 F.2d 656 (N.D.Tex. 1932)  (upholding removal of a murder prosecution against federal prohibition agents and an informer working for them); *People of the State of Colorado v. Maxwell*, 125 F. Supp. 18 (D. Colo. 1954) (murder prosecution properly removed where city police chief, under the direction of an Air Force captain, arrested and shot a soldier); *Teague v. Grand River Dam Authority*, 279 F. Supp. 703 (N.D. Okl. 1968) (wrongful death action properly removed where defendant, acting under license from the Federal Power Commission and at the direction of a member of the Army Corps of Engineers,

16

2004 WL 231187, at *4 ("Courts interpret the [persons acting under color of federal office or agency] rule broadly to achieve the protective purpose of the statute.").

The second requirement for federal officer removal -- a colorable federal defense -- is also broadly construed. "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. We therefore do not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson County*, 527 U.S. at 431 (citation omitted) (quoting *Willingham*, 395 U.S. at 407). Thus, a defense may be "colorable" even if it is ultimately rejected by the court. *See id.* "[A]t the removal stage, it is not the Court's role to assess the validity of a particular defense. The Supreme Court made clear in *Willingham* that the phrase 'under color of . . .

---

opened floodgates resulting in a death); *Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532 (C.D. Cal. 1968) (upholding removal of an action for $72 from the Small Claims Court against a private insurance company which had contracted with the federal government to administer benefit provisions of Medicare); *Allen v. Allen*, 291 F. Supp. 312 (S.D. Iowa 1968) (allowing removal of a garnishment action against a doctor who treated patients under Medicare); *State of Oregon v. Cameron*, 290 F. Supp. 36 (D. Or. 1968) (upholding removal of a criminal trespass action against VISTA volunteers who entered property to render medical assistance, on the grounds that the VISTA workers were persons acting under an officer of the United States and performed work contemplated by a federal statute, 42 U.S.C. § 2991, though they were not federal employees).

office' allows removal even if, on the record then existing, it could not be said that 'the officers had a clearly sustainable defense.'" *Reiser*, 1996 WL 54326, at *3 (alteration in original); *see also Symes*, 286 U.S. at 519 (where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith.").

Finally, the "causal nexus" element of section 1442(a) requires that the defendant aver, in the removal notice, that the act complained of by the plaintiff was undertaken pursuant to the directions of a federal office or agency. The Supreme Court has explained:

> The prosecution to be removed under the [federal officer removal statute] must have been instituted on account of acts done by the defendant as a federal officer under color of his office []. There must be causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law . . .

*Maryland v. Soper*, 270 U.S. 9, 33 (1926) (quotation marks omitted). "The 'causal nexus' is [] satisfied when there is evidence of intimate government involvement in the design decisions causally related to the alleged tort. . . . [D]efendants must show that the government directed the actions on which the plaintiffs based their

18

claims." *Agent Orange Product Liab. Litig.*, 2004 WL 231187, at *5 (citing

*Arness v. Boeing North America Inc.*, 997 F. Supp. 1268, 1275 (C.D. Cal. 1998));

*see also Willingham*, 395 U.S. at 409.

## III.   DISCUSSION

### A.   Defendants Allege They "Acted Under a Federal Agency" When They Used MTBE as an Additive

In their Notice of Removal, defendants allege that the Clean Air Act,

and regulations promulgated thereunder, require them to blend oxygenates into

gasoline.  Although the EPA has identified seven additives that may be used to

meet these requirements, MTBE is the only approved oxygenate that is available

in quantities sufficient to comply with the Act and regulations.  Moreover,

defendants allege that at the time the Clean Air Act was amended and the seven

oxygenates were approved for use, both Congress and the EPA were aware that

defendants would *have to use* MTBE in order to comply with the Act's

requirements.  *See supra* Part I.B.  Thus, defendants have sufficiently alleged that

they added MTBE to gasoline at the direction of the EPA, a federal agency,

thereby meeting the first requirement of removal pursuant to section 1442(a)(1).

*See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998)

(holding that manufacturers of Agent Orange acted at the direction of a federal

19

office or agency, for purposes of the federal officer removal statute, because the federal government required defendants to produce Agent Orange to certain specifications).

This conclusion is supported by the case law and the policies underlying the federal officer removal statute. As noted above, the "persons acting under" requirement is broadly construed. *See Gurda Farms*, 358 F. Supp. at 844; *Agent Orange Product Liab. Litig.*, 2004 WL 231187, at *4. Moreover, remanding these cases to state court would pose precisely the risk that the Supreme Court warned against in *Willingham*. Specifically, defendants, having acted pursuant to directives of the federal government, would be "brought to trial in a State court, for an alleged offense against the law of the State, [and] . . . the general government [would be] powerless to interfere at once for their protection." 395 U.S. at 406. Such a prosecution has the potential to interfere with the enforcement of federal law.

Plaintiffs argue that a finding that defendants acted at the direction of a federal agency will "in effect, [] Federalize all tort litigation against manufacturers of products subject to Federal regulation -- cigarettes, automobiles, pharmaceuticals, asbestos, and many other consumer and industrial products too numerous too mention." Plaintiffs' Memorandum of Law in Support of Motion

20

To Remand ("Pl. Mem.") at 12. This argument is not persuasive. Defendants do not seek removal simply because gasoline is subject to regulation. Instead, defendants argue that the federal government *required* them to add MTBE to gasoline, the conduct upon which plaintiffs' claims are based. Thus, removal pursuant to section 1442(a)(1) is premised not on defendants' participation in a regulated industry, but rather the fact that defendants took actions at the express direction of the federal government, and those actions are the basis for the complaints. There is simply no reason to believe that this invocation of the federal officer removal statute will "[f]ederalize all tort litigation," Pl. Mem at 12, because defendants in tort litigation do not typically assert that their actions were undertaken at the direction of the federal government.[8]

---

[8]   Moreover, the cases upon which plaintiffs rely in support of their argument are unavailing. As an initial matter, *Ryan*, 781 F. Supp. 934, is no longer good law, to the extent it rejects invocation of the federal officer removal statute in the context of Agent Orange litigation. *See Agent Orange Product Liab. Litig.*, 2004 WL 231187, at *1 ("Federal jurisdiction is properly asserted under the federal officer removal statute. A prior decision of this court reached a contrary conclusion in an Agent Orange case. The *Ryan* decision is no longer persuasive. As the Court of Appeals for the Fifth Circuit pointed out in rejecting *Ryan*'s conclusion, this court recognized its decision on the point as 'close' and 'uncertain.'" (citation omitted) (citing *Winters*, 149 F.3d at 392)).

Plaintiffs' reliance on *Tremblay v. Philip Morris, Inc.*, 231 F. Supp. 2d 411 (D.N.H. 2002), and *Little Purdue Pharma L.P.*, 227 F. Supp. 2d 838 (S.D. Ohio 2002), is similarly misplaced. In *Tremblay*, plaintiffs alleged that Philip Morris designed light cigarettes and manipulated their content to produce

### B.    Defendants Allege a Colorable Federal Defense

Defendants claim that plaintiffs' state law claims are expressly

preempted.  Specifically, section 7545(c)(4)(A)(ii) of Title 42[9], a provision of the

---

misleading tar and nicotine ratings as measured by a method endorsed by the
Federal Trade Commission.  Neither plaintiffs nor defendant argued that Philip
Morris designed the cigarettes and manipulated their content *at the direction of the
FTC or any other federal agency.*  Thus, plaintiffs' claims were not based on
actions undertaken at the direction of a federal office or agency, and the district
court rejected defendant's invocation of the federal officer removal statute. 231 F.
Supp. 2d at 417-19.

Similarly, in *Little Purdue Pharma*, plaintiffs sought recovery for
injuries arising from exposure to the prescription drug OxyContin.  Defendants
removed the action to federal court pursuant to section 1442(a)(1), arguing that
because of the "highly regulated nature of the pharmaceutical industry, []
pharmaceutical manufacturers [should] be regarded as de facto federal officers."
227 F. Supp. 2d at 860.  But the *Little Purdue Pharma* defendants did *not* allege
that their actions giving rise to the complaint were undertaken at the direction of a
federal office or agency, and the district court therefore rejected their argument.
*See id.* at 861-62.

[9]    Section 7545(c)(4)(A)(ii) of the Clean Air Act states, in pertinent
part,

[N]o State (or political subdivision thereof) may prescribe or
attempt to prescribe, for purposes of motor vehicle emission
control, any control or prohibition respecting any characteristic or
component of a fuel or fuel additive in a motor vehicle engine . .
. if [EPA] has prescribed . . . a control or prohibition applicable
to such characteristic or component of a fuel additive, unless State
prohibition or control is identical to the prohibition or control
prescribed by [EPA].

42 U.S.C. § 7545(c)(4)(A)(ii).

Clean Air Act, "forbade the states to regulate the content of fuels or fuel additives." Defendants' Opposition to Plaintiffs' Motion to Remand ("Def. Opp.") at 11. According to defendants, this provision expressly preempts any state statute that interferes with federal controls and/or prohibitions on fuel and fuel additives. Defendants argue that plaintiffs' state law claims seek to penalize defendants for adding MTBE to gasoline, and to ban MTBE's future use. Therefore, say defendants, the state law claims constitute an attempt to regulate the content of fuel and fuel additives, in violation of section 7545(c)(4)(A)(ii.). *See* Def. Opp. at 11, 23-28.

Alternatively, defendants contend that the doctrine of conflict preemption bars plaintiffs' state law claims. Conflict preemption requires a finding that either (1) it would be impossible for defendants to comply with both the state law sought to be imposed and the federal requirements; or (2) the state law sought to be imposed would prove an obstacle to the achievement and execution of the full purposes and objectives of Congress. *See English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Defendants submit that because MTBE is the only approved oxygenate available in quantities necessary to meet the Clean Air Act's requirements, it would be impossible for them to adhere to the state laws sought to be imposed -- which would effectively ban MTBE -- and the federal

23

requirements. Moreover, defendants argue that "finding them liable for using MTBE, one of a limited number of federally approved oxygenates, would present an obstacle to the achievement of the federal objectives of the CAA and the RFG program." *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593, 614 (S.D.N.Y, 2001) (*"MTBE I"*).

At this stage of the litigation, there is no need to decide whether defendants will prevail on either of these defenses. The only issue is whether one or both of these defenses is colorable. *See Jefferson County*, 527 U.S. at 431; *Willingham*, 395 U.S. at 407; *Symes*, 286 U.S. at 519; *Reiser*, 1996 WL 54326, at *3. Although I previously have rejected defendants' preemption arguments, *see MTBE I*, 175 F. Supp. 2d at 611-16, defendants urge me to reconsider that ruling, and emphasize that the allegations now before the Court are different than the allegations in *MTBE I*.

The preemption defenses argued in *MTBE I* were, without doubt, colorable. Moreover, since that decision, several courts have concluded that state law claims involving MTBE contamination *are* conflict preempted. *See Molloy v. Amerada Hess Corp.*, No. 2001/396, slip op. at 5 (Dutchess Co. Aug. 1, 2002); *Coppola v. Amerada Hess Corp.*, No. 2001/3995, slip op. at 5 (Dutchess Co. July 31, 2002); *Hixon v. Unocal Corp.*, Case No. BC 195295 (Super. Ct. Los Angeles

24

County, Aug. 23, 2001); *Kubas v. Unocal*, Case No. BC 191876 (Super. Ct. Los

Angeles County, Aug. 23, 2001). Given these circumstances, I have no doubt that

the preemption defenses asserted by defendants in this litigation are colorable.

The allegations now before me are somewhat different than the allegations that

were before me in *MTBE I*. Accordingly, defendants have the right to assert these

defenses in the context of the current complaints. Because defendants need only

assert a "colorable" federal defense in support of removal pursuant to section

1442(a)(1), they have met their burden.

### C.    Defendants Allege a "Causal Nexus"

Finally, defendants clearly allege that the acts upon which plaintiffs'

claims are based -- namely, manufacturing and selling gasoline containing MTBE

-- were undertaken at the direction of the EPA, a federal agency. Not only do

defendants allege that they are participants in a highly regulated industry, they also

claim that the federal government was "intimately [] involved" in their decision to

add MTBE to gasoline. *Agent Orange Product Liab. Litig.*, 2004 WL 231187, at

*5; *see also Willingham*, 395 U.S. at 409. Therefore, defendants sufficiently aver,

in their notice of removal, the "causal nexus" required for removal pursuant to the

federal officer removal statute.

25

## IV.   Other Grounds for Removal Not Considered

Because I conclude that the actions were properly removed pursuant

to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), I need not address

defendants' other proffered grounds for jurisdiction. *See Horne v. Coughlin*, 178

F.3d 603, 606 (2d Cir. 1999) (courts should avoid issuing advisory opinions on

issues unnecessary for adjudication of the case before the court). Notably,

however, defendants' preemption argument is the "colorable federal defense"

underlying the removal pursuant to section 1442(a)(1), *see supra* Part III.B, and

therefore undoubtedly will be fully addressed in subsequent motion practice.

Additionally, I note that defendants' argument regarding jurisdiction

on the basis of a "substantial federal question" is troubling. The Supreme Court

has said that a case may arise under federal law "where the vindication of a right

under state law necessarily turned on some construction of federal law."

*Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for*

*Southern California*, 463 U.S. 1, 9 (1983). However, the Court has cautioned

against broad interpretations of *Franchise Tax Board*, saying that it,

> did not purport to disturb the long-settled understanding that the
> mere presence of a federal issue in a state cause of action does not
> automatically confer federal-question jurisdiction. . . . Far from
> creating some kind of automatic test, *Franchise Tax Board* thus
> candidly recognized the need for careful judgments about the

26

> exercise of federal judicial power in an area of uncertain jurisdiction. Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system.

*Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 813-14 (1986).  As noted above, though, I need not decide at this time whether jurisdiction based on substantial federal question would run afoul of *Merrell Dow Pharmaceuticals*.

Finally, though Texaco's 1987 bankruptcy may provide this Court with jurisdiction over ChevronTexaco, that bankruptcy certainly does not divest the state court of jurisdiction.  Because it is unclear that this litigation will implicate the bankruptcy at all, *see* Transcript of 2/13/04 oral argument, and the issue of the bankruptcy will not even arise until after a finding of liability, I would be hesitant to exercise jurisdiction over dozens of defendants in a multi-district litigation merely because a single defendant filed for bankruptcy and reorganized under Chapter 11 more than fifteen years ago.  However, I do not decide that question today.

## V.   CONCLUSION

Defendants have sufficiently averred facts supporting removal pursuant to section 1442(a)(1) of Title 28.  Specifically, defendants allege that (1) they added MTBE to gasoline at the direction of the EPA, a federal agency; (2) they have a colorable federal defense of preemption; and (3) there is a causal connection between plaintiffs' claims and the acts defendants undertook at the direction of the EPA.  For this reason, plaintiffs' motions to remand are denied. The Clerk of the Court is directed to close these motions.  A conference is scheduled for March 23, 2004 at 10:30 a.m..

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 16, 2004

28

## - Appearances -

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

J

43RTMTBEC.txt

1

```
43RTMTBEC                 Conference
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   IN RE:  METHYL TERTIARY BUTYL          MDL 1358
 3   ETHER ("MTBE") PRODUCTS LIABILITY      Master File C.A.
 4   LITIGATION,                            No. 1:00-1898 (SAS)
 4   ------------------------------x
 5
 5                                          New York, N.Y.
 6                                          March 23, 2004
 6                                          10:30 a.m.
 7
 7
 8   Before:
 8
 9                    HON. SHIRA A. SCHEINDLIN,
 9
10                                         District Judge
10
11
11                        APPEARANCES
12
12   WEITZ & LUXENBERG
13        Attorneys for Plaintiff
13   STANLEY N. ALPERT
14   C. SANDERS McNEW
14   ROBERT GORDON
15
15   BARON & BUDD
16        Attorneys for Plaintiff
16   SCOTT SUMMY
17
17   SHER, LEFF
18        Attorneys
18   VICTOR M. SHER
19
19   MILLER, AXLINE & SAWYER
20        Attorneys for Plaintff
20   BY:  DUANE MILLER
21
21   NAPOLI, KAISER & BERN
22        Attorneys for Plaintiff
22   BY:  MARC JAY BERN
23        TOM RALEIGH
23
24   McDERMOTT, WILL & EMERY
24        Attorneys for Defendant Exxon Mobil
25   BY:  PETER JOHN SACRIPANTI
25        JAMES A. PARDO
               SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

2

```
43RTMTBEC                 Conference
 1                        APPEARANCES
 2   WALLACE, KING, MARRARO & BRANSON
 2        Attorneys for Defendants Shell, Chevron, Texaco
 3   BY:  RICHARD E. WALLACE, JR.
 3
 4   EIMER STALL
 4        Attorneys for Defendant Citgo
```

Page 1

43RTMTBEC.txt

```
 5     BY:  NATHAN P. EIMER
 5
 6     KIRKLAND & ELLIS
 6          Attorneys for Defendants BP Products, Atlantic Richfield
 7     BY:  J. ANDREW LANGAN
 7
 8     BEVERIDGE & DIAMOND
 8          Attorneys for Defendant Sunoco
 9     BY:  JOHN S. GUTTMAN
 9
10     PORZIO, BROMBERG & NEWMAN
10          Attorneys for Defendant American Agip Co.
11     BY:  LISA K. AXELROD
11
12     BINGHAM McCUTCHEN
12          Attorneys for Defendant Crown Central Petroleum Corp.
13     BY:  BEN M. KROWICKI
13
14     CULLEN & DYKMAN BLEAKLEY PLATT
14          Attorneys for Defendant Getty Marketing
15     BY:  JOHN J. FANNING
15
16     MORGAN LEWIS
16          Attorneys for Defendant Chevron USA, Union Oil Co.
17     BY:  DAVID L. SCHRADER
17
18     BAKER BOTTS
18          Attorneys for Defendant Marathon Oil
19     BY:  STEVEN L. LEIFER
19
20     BLANK ROME
20          Attorneys for Defendant Lyondell Chemical
21     BY:  LAURENCE S. SHTASEL
21
22     EDWARDS & ANGELL
22          Attorneys for Defendant Union Oil Co.
23     BY:  LYNN WRIGHT
23
24     PEPE & HAZARD
24          Attorneys for Defendant Premcor
25     BY:  KAREN A. MIGNONE
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

                                                                          3
```
       43RTMTBEC                    Conference
 1                                  APPEARANCES
 2     NAPOLI, KAISER & BERN
 2          Attorneys
 3     BY:  THOMAS W. RALEIGH
 3
 4     HOWREY, SIMON, ARNOLD & WHITE
 4          Attorneys for Defendant Amerada Hess
 5     BY:  MINDY G. DAVIS
 5
 6     HUNTON & WILLIAMS
 6          Attorneys for Defendant Koch Industries
 7     BY:  JOSEPH C. KEARFOTT
 7
 8     LATHAM & WATKINS
 8          Attorneys for Defendant Conocophillips
 9     BY:  JOHN McGAHREN
 9          JOHN J. LYONS
10
```
                            Page 2

43RTMTBEC.txt

| 10 | BRACEWELL & PATTERSON |
| 11 | Attorneys |
| 11 | BY:  TRACIE J. RENFROE |
| 12 | |
| 12 | GOODWIN PROCTOR |
| 13 | Attorneys for Defendants Gulf Oil, Cumberland Farms |
| 13 | BY:  CHRISTOPHER J. GARVEY |

```
14
14
15
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

43RTMTBEC                    Conference
1           (Case called)
2           THE COURT:  All right.  Mr. Sacripanti, there were a
3   lot of counsel around the country who called and asked if they
4   could participate by phone.  We said no, because I don't think
5   logically we could have handled it well, but I think we
6   referred them to you.  So if you got those calls, you have to
7   understand why we didn't think the phone call was going to
8   work.
9           MR. SACRIPANTI:  I understand, your Honor.
10          THE COURT:  And you probably have been present when I
11  dealt with phone conversations, and it's very frustrating; the
12  person talks and you're trying to interrupt and it's a way to
13  get them very nervous.
14          MR. SACRIPANTI:  We understand, your Honor.  Thank
15  you.
16          THE COURT:  Now I have got some submissions from the
17  defense, a letter dated March 19, 2004, which I'm sure the
18  plaintiffs received, and one thing attached to it was a service
19  list appears to be for plaintiffs and for defendants.  Then
20  attached also was an idea of a questionnaire, which we'll turn
21  to, and a proposed case management order.
22          I haven't received any submissions from the
23  plaintiffs, have I, to today's conference?
24          MR. MCNEW:  Your Honor, we handed up before the
25  hearing a proposed case management order.
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

5

43RTMTBEC                    Conference
1           THE COURT:  Before the hearing, you mean before this
2   morning?
3           MR. MCNEW:  Yes.
4           THE COURT:  I see it now, but of course I haven't had
5   the chance to read it because you did it this morning.
6           MR. MCNEW:  Correct.
7           THE COURT:  Actually I think my clerk brought it to me
8   about five or ten minutes ago.
9           Well, I still haven't had a chance to read it, so
10  you'll have to kind of go step by step as we work through some
                         Page 3

43RTMTBEC.txt
11    of the suggestions in the defendant's letter which I did have
12    time to look through.
13            So on page two of Mr. Sacripanti's letter it starts
14    with suggested subjects for the March 23rd conference, and the
15    first subject that he talks about is the status of proceedings
16    before the judicial panel on multidistrict litigation.
17            Mr. Sacripanti, I don't know whether you wish to
18    address that orally or whatever you said in writing is the
19    status.
20            MR. LANGAN:  Your Honor, we are satisfied with what we
21    said.  We think it's accurate, but we're happy to address any
22    questions, assuming the objections and motions to vacate that
23    have been filed remain in play, including some by counsel for
24    the plaintiffs that are sitting here today, they have objected,
25    but they're here.  Assuming those objections continue to play
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

6

43RTMTBEC              Conference
1    out, it's going to take several months before that is all
2    resolved before the panel, but in the meantime we've come here
3    and are already here.
4            THE COURT:  Right.  I have three charts attached, an
5    A, cases transferred, or B, transferred without objection.
6            MR. SUMMY:  Yes, your Honor.
7            THE COURT:  Attachment B, cases that are subject to
8    the transfer order but there's been an objection.
9            MR. LANGAN:  Yes.
10            THE COURT:  And Chart C, additional MTBE cases in
11    federal court not yet subject to the transfer orders.  I notice
12    in fact there's a number of those in the Southern District of
13    New York.
14            MR. LANGAN:  Right.
15            THE COURT:  How does one start the process of dealing
16    with that last group?
17            MR. LANGAN:  Well, where applicable, we have filed
18    notices of tag along, and we --
19            THE COURT:  Have you done it for all the Attachment C?
20            MR. LANGAN:  I'm not sure that we have done it for
21    every last one.  We would like to get critical mass and do it
22    periodically.  I'm not sure the panel issues a CTO if the case
23    is in the Southern District.
24            THE COURT:  We should do that administratively, I
25    should reach out to the judges, which happens all the time in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

7

43RTMTBEC              Conference
1    this district, and they sort of reach out to me when they have
2    consolidated cases.
3            MR. LANGAN:  Yes.
4            THE COURT:  That isn't very many anyway, that looks
5    like three.  Do you know the judges on those three?  Do you
6    have the docket number with initials?  You list docket numbers
7    for some of the earlier cases, the Louisiana but not the three
8    in the Southern District.
9            MR. LANGAN:  I believe those were just recently
10    removed, so don't have the docket numbers in front of me, but
11    we could get that the front of you within 24 hours.
12            THE COURT:  Would you get that to my chambers in some
13    way so I can contact those judges?
14            All right.  Do the plaintiffs want to say something
15    about the status of the proceedings before the judicial panel
                            Page 4

43RTMTBEC.txt
16    before I move along to another topic?
17              MR. SHER:  Your Honor, I just want to address the
18    comment by counsel that the plaintiffs' counsels appear who
19    have objected, since I am one of those.  I'm not appearing this
20    morning on behalf of any of those clients, but I thought you
21    might have questions about the status of the proceedings and I
22    wanted to be here.
23              THE COURT:  You're welcome to be here.
24              MR. SHER:  The list of cases is accurate, so far as I
25    know.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    8
43RTMTBEC              Conference
1               THE COURT:  All right.  The second topic, as the
2     defense side stated, is general plan and schedule for
3     responsive pleadings and motions, and it goes on to say
4     defendants anticipate some preliminary Rule 12 motions, and
5     then there are details later in the proposed case management
6     order.
7               Let me start by asking the plaintiffs this:  Do the
8     plaintiffs intend to do a master complaint or are we going to
9     be dealing with 40, 50, 60 or more complaints?
10              MR. GORDON:  I'm not certain that we can do a master
11    complaint.  If this is an MDL that we had sought, perhaps we
12    would feel that way.  We feel there are differences in the
13    case, and actually one of the first orders of business we would
14    like to discuss, Mr. Summy is prepared to discuss it, with
15    regard to the fact that some of the cases are not in RFG states
16    and some are, and your Honor's order was only on cases that
17    were RFG state cases, the New York cases that were before you.
18              And let me turn it over to Mr. Summy if he could
19    explain that as well.
20              MR. SUMMY:  Your Honor, as this case comes together in
21    the MDL, there are a number of cases that are being transferred
22    and have been transferred and there's no objection to them.
23              In your ruling as of this last week you ruled that
24    there was subject matter jurisdiction based upon the federal
25    agency doctrine or federal officer doctrine.  There are a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    9
43RTMTBEC              Conference
1     number of cases where the plaintiff and the plaintiffs' wells
2     are located in non-RFG, non-oxygenated fuels program areas.
3     And in that instance there are, as a matter of law, there could
4     be no federal officer jurisdiction over those areas because
5     there was no requirement whatsoever to add oxygen, much less
6     than MTBE.
7               THE COURT:  How many cases in Exhibit A would that
8     apply to?
9               MR. SUMMY:  What I did, your Honor, is I counted there
10    are 37 cases on Exhibit A, and I counted 14 that I think I can
11    represent to the Court that are in non-RFG, non-OFP areas.
12              Now there may be additional ones, because for example
13    in Connecticut, if you look at Exhibit A there's about seven or
14    eight cases listed, I didn't count any of those as the 14
15    because I am still in the process of putting a map together
16    that will show you the RFG areas, the OFP areas and where wells
17    are located.
18              THE COURT:  And the OFP areas would have the same
19    argument, so to speak?
20              MR. SUMMY:  Yes, your Honor, the non-OFP areas and
                              Page 5

43RTMTBEC.txt
```
21   non-RFG areas.
22           For example, in Connecticut there are probably five or
23   six counties that are RFG, outside of those counties in the
24   state it's non-RFG.
25           THE COURT:  So you're saying in the same state there
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

43RTMTBEC                 Conference
```
 1   are some that would and some that wouldn't?
 2           MR. SUMMY:  Correct, your Honor.  I think that one of
 3   the misunderstandings that is labeled all the time, there are
 4   17 RFG states, but when you really look at it, in the 17
 5   reformulated gasoline states, it's not like the whole state
 6   requires oxygen, it's just certain areas of that state, but
 7   there it labeled as an RFG state.
 8           THE COURT:  So if I'm translating correctly, for a
 9   number of these 37 cases you think in fact that ruling
10   shouldn't apply and we have to go back and look at subject
11   matter jurisdiction again?
12           MR. SUMMY:  That's correct, your Honor.  I wanted to
13   make sure that I raised that early.
14           THE COURT:  You did, that's early, we've only about
15   here about eight minutes.
16           MR. GORDON:  Judge, may I approach to give you a map
17   of reformulated gasoline areas to give you a sense of how many?
18           THE COURT:  Sure.  Biggest sense I'm getting is more
19   work on subject matter jurisdiction.
20           So let me hear briefly from the defense on that.  If
21   it's an non-RFG state, Mr. Eimer, does the federal officer
22   theory hold as the basis or do I have to go back now and do
23   what I avoided doing, which is the issue on the grounds?
24           MR. EIMER:  I believe the ruling on RFG is going to
25   cover probably all of these cases, because the distribution
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

43RTMTBEC                 Conference
```
 1   system and the system of production of gasoline would require
 2   in effect gasoline to be put into the system and into play, and
 3   if a county is neighboring another county and one's an RFG
 4   county, it is impossible to segregate gasoline out that finely.
 5           THE COURT:  That may be true for adjoining counties in
 6   Connecticut, and I thought of that even as you spoke.  What
 7   about a really non-RFG state?
 8           MR. EIMER:  I think a non-RFG state there is a
 9   movement of gasoline through that state from one to another.
10   They have alleged all sorts of spills that cause these
11   contaminations.  There could be a car, according to them, that
12   drives across a state that has an accident and spills into and
13   contaminates a well that could have been filled up in St.
14   Louis, which is an RFG area, and spilled in another state, so
15   we don't know the cause is.
16           So until we get the research done to find the cause of
17   the contamination, to find the source of what that gasoline
18   was, we won't know.  So the well could good be in a non-RFG
19   area but the gasoline could have been purchased in an RFG area
20   and transported, not but the us, but by a consumer or someone
21   else.  So when sold it could have been required by us to be
22   sold as RFG, which spilled, could have been transported by
23   somebody else and spilled somewhere else.
24           So our defense would be the same.  When we sold it, it
25   was required to be sold as RFG gasoline, where it was spilled
                               Page 6
```

43RTMTBEC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

43RTMTBEC                    Conference
1   somewhere else, we don't know by whom or where or how it got
2   there, and until discovery reveals the source of that gasoline,
3   we won't know, we just won't know.
4           THE COURT:  It's a long way from Indiana to
5   California.
6           MR. EIMER:  But not from Illinois.
7           MR. SUMMY:  Your Honor, could I address that?
8           THE COURT:  No, I understand your point.  But in any
9   event, I understand your point, it's simple enough, but
10  plaintiff's point is this vast part of the country that wasn't
11  required by any federal agency to do anything, is there a basis
12  for federal jurisdiction other than federal agent jurisdiction
13  I understand why you would say federal agent would still work,
14  but they're saying maybe you better reach the second ground
15  sooner.
16          MR. EIMER:  And the second ground which the Court
17  didn't reach.
18          THE COURT:  Again namely the bankruptcy jurisdiction?
19          MR. EIMER:  No, express pre-emption and applied
20  pre-emption, federal question and bankruptcy.
21          THE COURT:  Federal question being?
22          MR. EIMER:  The federal question being whether or not
23  in saying that MTBE shouldn't be added to gasoline, they're
24  getting in the same kind of questions that the EPA weighed and
25  balanced in deciding that MTBE was an appropriate oxygenator.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

13

43RTMTBEC                    Conference
1           THE COURT:  That's the pre-emption argument all over
2   again; isn't it?
3           MR. EIMER:  In part, but the question is when you have
4   a single national distribution system, that national
5   distribution system has to avail itself not just of little
6   pockets where most of the people are, it's not little pockets,
7   it's where the metropolitan area is.  So this gasoline
8   distribution system is geared towards transporting millions and
9   millions of gasoline to those submetropolitan areas, and along
10  the way gasoline gets dropped off.  And can a distribution
11  system gear to this kind of distribution network and yet drop
12  off to little pockets outside of the metropolitan areas?  I
13  don't believe so.
14          THE COURT:  Were the companies making both gasoline
15  that had the additive and gasoline that didn't have the
16  additive at the same time?
17          MR. EIMER:  In places, but not all companies and not
18  all places.
19          THE COURT:  You're saying for 15 years now you have
20  been working on two tracks distributing some without the MTBE
21  and some with the MTBE?
22          MR. EIMER:  At times.
23          THE COURT:  Continuously all these last 15 years, or
24  were -- what I'm asking you is:  Or were there years when you
25  were only distributing with the additive?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

14

43RTMTBEC                    Conference
1           MR. EIMER:  No, I believe -- it depends on the
                        Page 7

43RTMTBEC.txt

```
 2   company, but my belief is certain companies were distributing
 3   to places without the additive and to places with the additive.
 4           THE COURT:  So all companies were doing two tracks all
 5   the times?
 6           MR. EIMER:  I don't know about all the companies, I
 7   don't think we can say that as general rule, I don't think that
 8   we could say yet.
 9           THE COURT:  Some companies have been doing only with
10   the MTBE?
11           MR. EIMER:  Correct.  And I do believe when refiners
12   manufacture RFG, it moves up from refineries to the Gulf Cost
13   to the upper Midwest or the East Coast, and along the way --
14           THE COURT:  I know, I was trying to find out very
15   briefly if you knew whether everybody was producing two
16   different kinds throughout these years continuously or were
17   some companies at some times only doing it with the additive.
18           MR. EIMER:  I don't know enough to answer that.
19           MR. SUMMY:  Your Honor, could I respond?
20           MR. BERN:  Sure.
21           MR. SUMMY:  I have been looking into this quite a bit
22   over the last few days, and his argument is completely
23   overreaching and is untrue.  There are records that the EPA
24   keeps as to what is contained in gasoline in these varies areas
25   of the country, and in many instances they would add MTBE not
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

15

43RTMTBEC                  Conference
```
 1   as an oxygenant to comply with the Clean Air Act, but what they
 2   would do is add two to five percent, somewhere in there, MTBE
 3   as an octane enhancer in these non-RFG areas; no requirement
 4   anywhere to do that, no federal statute requiring it.  They
 5   were doing it because it was a cheap filler and they wanted to
 6   add it to gasoline, but that in no way would they be acting as
 7   a federal officer, and we would certainly be willing to do
 8   discovery on that issue because they are not right on that
 9   issue.
10           THE COURT:  And you're suggesting that maybe that
11   discovery would proceed the renewed motion to remand?
12           MR. SUMMY:  If the Court would like us to do that.
13           THE COURT:  There are some fact questions I might
14   have.  I don't want to continue down the road completely, but I
15   think already the wheels were turning, if this than that, I
16   won't say more.
17           MR. SUMMY:  When I was thinking yesterday, I figured
18   the first thing they would do is stand up and say this complex
19   distribution system requires us to add it everywhere, and it is
20   simply not true, so I am willing to -- what I was going to
21   do --
22           THE COURT:  He didn't say they add it everywhere, he's
23   saying they're transporting it the places that they need to
24   transport it to.
25           MR. SUMMY:  I understand.
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

16

43RTMTBEC                  Conference
```
 1           THE COURT:  So through all the states anyway.  So I
 2   wondered whether some companies made only the EPA compliant, so
 3   to speak, type of gas, and then I would understand it better,
 4   but if there were two different kinds of -- two different
 5   distribution routes and the rest, that may play out
 6   differently.
```
                        Page 8

43RTMTBEC.txt

```
 7          MR. SUMMY:  What I was going to do when we filed our
 8    renewed motion is ask the Court to take judicial notice of a
 9    number of public records which show what was in the gasoline in
10    these various areas.  They actually tracked this.  And when you
11    look at this, we have cases coming in from Florida, Iowa,
12    Indiana, Kansas, and there is simply no reason whatsoever to be
13    adding MTBE to the gasoline in these areas, even though it's in
14    our clients' wells.  There is no requirement whatsoever, and
15    there aren't RFG areas around, there shouldn't be any reason to
16    put it in pipelines and going up that way because there was
17    nothing that requires it.
18          THE COURT:  But you still have I guess trucking.  You
19    got to move it; don't you have to move this stuff?
20          MR. SUMMY:  Yes, but what happens is they put it in a
21    pipeline and they send it up and it gets into terminals and
22    trucks pick up it, but there is no requirement in these areas
23    to adding MTBE.  At times they're adding it as an octane
24    enhancer in conventional gas, but certainly no requirements
25    under the Clean Air Act whatsoever, and that's why the federal
```

                                                                  17
43RTMTBEC              Conference
```
 1    officer jurisdiction would not apply to the wells and well
 2    owners in these areas that aren't covered.
 3          And we certainly would be willing to do discovery on
 4    that, your Honor, if that's what you would like us to do.
 5          THE COURT:  Well, no, it's not a matter what I would
 6    like.  I think that if you're comfortable making the renewed
 7    motion for those areas, not rearguing the areas for now where
 8    the RFG is a requirement, but in the non-RFG areas you're
 9    comfortable moving now, and you don't think you need discovery
10    to make the motion, that's up to you.  I don't know if they
11    think they need discovery to oppose that, because when I asked
12    Mr. Eimer some questions, he said, in candor, I don't have the
13    answers myself yet.  So they may need to gather some
14    information to oppose it, in which case they may say we want
15    discovery.
16          So you may want to confer a little, but I don't think
17    there's a rush, so long as you preserved your right to do it.
18    In other words, if there is any time on the remand it is
19    essentially made but stayed for this purpose.  So I don't think
20    you're under any time pressure, really, you have to do what is
21    best.  You may want to talk to your adversary about it.
22          MR. SUMMY:  What I would stay is that certainly for
23    the cases that are transferred and coming in and the plaintiffs
24    who are in these non-RFG, non-OFP areas, we would intend, and I
25    think that we are prepared without discovery to move for
```

                                                                  18
43RTMTBEC              Conference
```
 1    reconsideration of those cases only.
 2          Now there are certainly --
 3          THE COURT:  Would that really be technically styled a
 4    reconsideration in a sense?  It may be forming when I ruled,
 5    because maybe some non-RFG areas were and some of weren't.
 6          MR. SUMMY:  We debated it because we weren't sure if
 7    the ruling that you made was applicable to just the New York
 8    cases that came up or were they applicable to everything that
 9    was transferred.
10          THE COURT:  I meant -- I'll answer.  I had meant them
11    to be applicable to everything that was transferred without
```
                              Page 9

43RTMTBEC.txt

12  objection, but nobody was mentioning to me any oral argument
13  about RFG and non-RFG.
14          MR. SUMMY:  And that's the way that we took it after
15  the ruling.  Prior to the ruling the reason we did not put it
16  in the briefing was we thought we were briefing just the New
17  York cases, which would be an RFG area, so we didn't put it in
18  the briefing.  But after rereading the opinion and realized
19  that it looks like it applies to everything that has been
20  transferred without an objection, then this obviously came to
21  mind and we felt like we needed to raise it, and we debated on
22  what do you call that, and we decided it was a motion for
23  reconsideration.  If the Court would suggest a different --
24          THE COURT:  Well, it's semantics, it doesn't matter,
25  but make it clear that it's directed only to some of the cases.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

43RTMTBEC                    Conference
1           MR. SUMMY:  And I will also point out to the Court
2   that we represent obviously public entities kind of in 16
3   different states, and there are some entities we believe that
4   are requesting us to file a certification under 1292, so that
5   some of the clients will ask for that and you will see that
6   coming out as well.
7           THE COURT:  Okay.  Can we talk some scheduling even
8   for this issue?
9           MR. GORDON:  In our proposed case management order,
10  which we apologize --
11          THE COURT:  That's okay, I have it now.
12          MR. GORDON:  If your Honor looks at page four,
13  subsection five, the bottom, and I apologize for this being
14  late, we had to get attorneys from all over the country and we
15  have California attorneys.
16          THE COURT:  Okay.  Here we are.
17          MR. GORDON:  If you see at the bottom, there's a
18  proposal.  I should say in many respects, up until that page,
19  our order is fairly identical to the defendants.
20          THE COURT:  Is this schedule acceptable to the
21  defense?  In other words, I don't have a problem, it would be
22  within 15 days of the entry of this case management order.
23  That's not our usual time limit for reconsideration, but I'm
24  waiving that.  It doesn't make sense, because I see that it's
25  partly a brand new argument, so I don't have a problem with

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

43RTMTBEC                    Conference
1   waiving the ten day time limit, so it would be 15 days from the
2   entry of this order, not a problem.
3           But how does the defense feel about responding within
4   15 days.  Is there any reason to be on that fast a track?  They
5   can move to reserve their rights, so to speak, I'm waiving the
6   ten days anyway from the date of March.
7           MR. WALLACE:  It strikes me that if we, the
8   defendants, need to assemble information to answer the
9   questions that you pose, that is going to be rather time
10  consuming.  We will want to demonstrate information about the
11  distribution scheme.
12          THE COURT:  It may be a fact intensive motion, your
13  point about the non-RFG areas, the federal agent question.
14          MR. WALLACE:  I would add, your Honor, that we
15  anticipate additional coming to you in which the plaintiffs may
16  raise the very same issue, and it strikes me that you may want

Page 10

43RTMTBEC.txt

17    to address the issue and those various cases together, which
18    counsel is in favor of our taking time to assemble the
19    information and the Court waiting until the other cases reach
20    the Court before it scheduled the actual filing of motions and
21    the briefing.
22         MR. GORDON:  It could take months and months before
23    some of those cases that we have objected to transfer ever
24    getting here.
25         THE COURT:  I would think it would be more efficient
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

21

43RTMTBEC                    Conference
1     to start briefing the issue.  Some of the cases already here
2     squarely raise the issue.  The ruling I think would probably
3     apply across the board, either your theory makes some sense
4     about what Mr. Eimer was starting to articulate about the
5     movements, the distribution system all that, or it doesn't.
6     And I don't see why not to get started.
7          MR. LANGAN:  With respect to how long the panel is
8     going to take to act, I believe there are eight or nine cases
9     where there have been objections, eight of them are California
10    cases, one is the state of New Hampshire, and I believe the
11    state of New Hampshire is an RFG area.  I believe that all the
12    California cases are.
13         THE COURT:  Those are RFG states?
14         MR. LANGAN:  Yes.  Not the entire state, but my point
15    being that in the long haul from the panel, I don't know that
16    it is squarely relevant to the Mr. Wallace's point.  In other
17    words, I think the cases that you're going to get here, it's
18    not going to take months and months.
19         THE COURT:  You're supposed to stick together.  When
20    you disagree it gets confusing.  It doesn't matter because I
21    agree that we should get going on the motion anyway.
22         MR. GORDON:  My point with regard to that --
23         THE COURT:  But I think they may need more than 15
24    days.
25         MR. GORDON:  I agree, your Honor, but there's no
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

22

43RTMTBEC                    Conference
1     mystery here, they're not going to be presenting any different
2     questions than your Honor already asked them.  I assume the
3     research for them is gong start today on that issue.
4          THE COURT:  But I can't believe I thought of all the
5     questions, I wish I was that good.  I took two seconds and came
6     up with something, but that's not the beginning or end of this
7     inquiry, so they need time.  So what is the appropriate amount
8     of time to respond to the motion?
9          MR. EIMER:  Your Honor, I haven't had a chance to talk
10    to the group, but I could think 60 days.
11         THE COURT:  We could vote.  How many think 60 days?
12         MR. EIMER:  I would say 60 days to respond.
13         THE COURT:  You want to move within 15 days of today,
14    how does the plaintiffs feel?  That puts you at, I don't know,
15    April something or other.  Today is March 23rd, you want to
16    roughly move -- let's say you want to move, I don't know, give
17    you to the end of the week, the 9th of April, they want to take
18    until the 9th of June to respond.
19         What do you think of that, Mr. Gordon?  Probably they
20    don't respond until mid June because they're saying it's very
21    fact intensive and they're going to be putting a lot of facts
                              Page 11

43RTMTBEC.txt

22    before me.
23              MR. GORDON:   Judge, the lawyer may not know the facts,
24    their clients certainly know the national distribution a lot
25    better than we do in this regard.  One of the reasons that a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    23
43RTMTBEC              Conference
1     lot of people perhaps around the country, clients are concerned
2     about all cases all going to this monolith of the MDL is that
3     they're concerned that everything is going to be delayed, held
4     back, we're going to do all the discovery the way the
5     defendants want to do it.  The proposal, as you can see, asks
6     us to all of our discovery while they sit back and do nothing.
7              THE COURT:   You know that I would never allow that.
8              MR. GORDON:   I know that, and I have been reassuring
9     clients and counsel throughout the country that this is a Court
10    that is going to move, and on this issue they have 15 days to
11    start this before they even see our papers.  I ask they get 30
12    days, maybe 45 days.  60 days seems like a long time.
13              In addition, there are other motions as well that we
14    will be asking to be filed, which counsel indicated.  There
15    will be some states that are RFG states, whether or not they're
16    counties or not counties, who also want to either appeal or
17    move for reconsideration, whatever we're calling it.
18              THE COURT:   I think you're moving for certification
19    because I think reconsideration you couldn't meet the standard.
20    You would have to tell me what fact or law I overlooked, but I
21    doubt it.  They're basically saying we disagree, we would like
22    to go to the circuit.  You want a 1292, I don't think that you
23    want a consideration.
24              MR. GORDON:   I agree, I was referring to the
25    in-between group.  I was referring to the non-RFG state and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    24
43RTMTBEC              Conference
1     non-RFG county, that was the twilight zone between the county.
2     That was my only concern in that regard, perhaps a separate
3     response date from the defendants would be appropriate.
4              THE COURT:   Well, I'll go with the 45 just on the
5     generalized theory that everybody likes to try to move quickly
6     as much as possible.  So you want to move by April 9th.  I gave
7     you a few extra days, but there are couple of holidays in there
8     for everybody, so April 9th for the moving papers.
9              MR. ALPERT:   Your Honor --
10              THE COURT:   I guess about May 24.
11              Mr. Alpert?
12              MR. ALPERT:   Thank you, your Honor.  On behalf the
13    plaintiffs, it may be that you will also see grounds for
14    reconsideration of things that weren't fully considered in your
15    decision.
16              THE COURT:   Well, I'll be very sensitive.  Don't upset
17    me about the standard.  You got to say I overlooked, then tell
18    me what controlling case I overlooked.
19              MR. ALPERT:   Regulation.
20              THE COURT:   I don't know about that.  What controlling
21    case did I overlook?
22              MR. ALPERT:   The regulations, your Honor, not a case.
23              THE COURT:   I don't know about that.  Was that in your
24    briefs?
25              MR. ALPERT:   Yes.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            Page 12

43RTMTBEC.txt
(212) 805-0300

25

43RTMTBEC          Conference
1   THE COURT:  There's a controlling regulation in your
2  brief that I overlooked.  Then you don't have any work to do.
3  Fax the controlling regulation over this afternoon so I know
4  exactly what I overlooked.  Because I don't have time to waste,
5  I got a lot of serious motions, I doubt reconsideration is one
6  of them.  Go ahead, take that to the circuit, but fax me the
7  controlling regulation that I overlooked and copy your
8  adversary.
9            So the answer to the question about a master complaint
10 is no, there is no interest in that; is that what you said,
11 Mr. Gordon?  Even for the so-called RFG, nothing?
12           MR. GORDON:  I don't think this is going to be one of
13 those MDLs where we have 20 thousand individual cases.
14           THE COURT:  I don't know about that.  If it can't be
15 done, it can't be done.
16           MR. SUMMY:  Your Honor, I think that one of the
17 reasons that it can't be done, for example, is when you take,
18 for example, the district attorney's complaint in Sacramento,
19 the standing that gives him certain powers and authorities to
20 take action is totally different than any of the other public
21 entities, and I think it would be different and complex.
22           THE COURT:  Okay.  Let's turn to something easy then
23 for a minute to get a rest from the hard stuff.  On the easy
24 stuff you all talked about the interim measures, pretrial
25 consolidation, and you said it was pretty much the same, so
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

43RTMTBEC          Conference
1  that's fine.  The master docket and file, you had no
2  differences, so that's fine, captions and separate filing,
3  that's fine.
4            Organization, who is going to be liaison counsel?
5            MR. GORDON:  For the plaintiffs, your Honor,
6  Mr. Alpert.  As you instructed him to fax something to you
7  today, that starts the relationship nicely.
8            THE COURT:  All right.
9            MR. SACRIPANTI:  I believe we will serve as liaison
10 counsel.
11           THE COURT:  Mr. Sacripanti?
12           MR. SACRIPANTI:  Yes.
13           THE COURT:  All right.  So we don't have to wait 30
14 days for that, the order I suppose is within 30 days of this
15 order.  In fact, there's no reason not to appoint Mr. Alpert
16 today, Mr. Sacripanti today, as liaison counsel respectively.
17           And how about the duties listed, page 3?  Everybody
18 wrote the same things down, so that would be the duties.  Do
19 you agree to maintain and distribute, et cetera, coordinate, be
20 responsible, the five thing listed on page three?
21           Then those are the duties.  How about co-lead counsel
22 and executive committee?
23           MR. GORDON:  Your Honor, you had a -- MDL 1358 had a
24 prior PFC, it's really no longer applicable due to the types of
25 cases and the lack of interest of some of those attorneys in
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

43RTMTBEC          Conference
1  this litigation and some new attorneys.  You have here my firm
2  represented, Mr. Summy, Mr. Sher, Mr. Miller and Mr. Bern, with
Page 13

3    the three of us serving just internally as co-lead counsel.
4          THE COURT:  Who is the three of us?
5          MR. GORDON:  Me, Mr. Summy and Mr. Sher.  And we would
6    ask your Honor to just allow us to organize ourselves in that
7    way, and what you have there are the counsel who either have
8    cases here or who may have cases here in the near future.
9          THE COURT:  Okay.  That sounds good.  Then we're up to
10   service of documents.  Would you serve this electronically?
11   Everything served electronically?  We're talking about
12   distributing copies to other counsel and all that, aren't you
13   going to set up electronic service?
14         MR. MCNEW:  That's what I suggested in our alternate
15   form.  We took the defense counsel points B and C and conflated
16   them into a single point B which requires all parties to be
17   served by electronic mail or other means to the Court.  And
18   parties agree, we thought that some sort of internet based
19   system for posting to a simple site where everyone could
20   download the documents would make a lot of sense rather than
21   sending a bunch of e-mails back and forth.
22         THE COURT:  Right.
23         MR. MCNEW:  So we're happy to.
24         THE COURT:  Is that fine with the defense?
25         MR. SACRIPANTI:  Yes, your Honor.
              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

43RTMTBEC              Conference
1          THE COURT:  So you'll organize that?
2          MR. SACRIPANTI:  We will.
3          THE COURT:  We are doing this very successfully in the
4    IPO litigation.  I don't know if the defense firms overlap.
5    Are any of the defense firms in the IPO cases?
6          MR. LANGAN:  Kirkland Ellis.
7          THE COURT:  Talk to them.  It worked well for the
8    Court, worked well for all the parties.  We do everything
9    electronically.
10         Okay.  Now I guess we do turn to all these motions and
11   possible discovery.  The defendants have raised personal
12   jurisdiction -- sorry, yeah, personal jurisdiction, and they
13   have raised standing issues.
14         Do you want to talk about those, Mr. Sacripanti?
15         MR. SACRIPANTI:  Your Honor, Mr. Wallace is going to
16   handle the --
17         MR. WALLACE:  Yes, your Honor, and shall we start with
18   personal jurisdiction?  By our count, based on a rough internal
19   survey of the defendants, it appears that there may be
20   approaching 50 different defendants that have various
21   objections to personal jurisdiction.  We have been trying to
22   work those out with the plaintiffs in the hope that we won't
23   have to impose on the Court with any of this.
24         And our objective is to try to reach agreement with
25   the plaintiffs to drop those defendants that don't belong in
              SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

43RTMTBEC              Conference
1    the case, and we have measures that I think would protect the
2    plaintiffs and we hope induce them to reach agreement with us.
3         Thus far, however, we have made only limited success
4    in reaching that agreement.  We suggest that, in essence --
5         THE COURT:  Is that because you haven't had enough
6    time yet to play out the negotiations?
7         MR. WALLACE:  Yes.
                 Page 14

43RTMTBEC.txt
```
 8              THE COURT:  So it may yet be fruitful.
 9              MR. WALLACE:  Indeed.  And we suggest that this be
10    postponed for a period of time to allow us to continue those
11    negotiations.
12              THE COURT:  When do you think we should next address
13    potential personal jurisdiction motions?
14              MR. WALLACE:  We would commit to identifying these
15    defendants to the plaintiffs promptly.  I think it may be 60 or
16    90 days before we could provide the information they say they
17    need in order to satisfy ourselves that the defendants don't
18    belong in the case.
19              THE COURT:  Does that make sense to you or Mr. Summy?
20              MR. LANGAN:  I think my office has been handling it
21    mostly with the defendants.  That's fine with us, we just
22    request that they give us some affidavits that show those
23    parties should not be in the case.
24              THE COURT:  That's what he is going to do, he says he
25    should reconvene with the Court on that issue in about 60 days.
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              30
43RTMTBEC            Conference
```
 1              MR. SUMMY:  That's fine, your Honor.
 2              MR. MCNEW:  Your Honor, just one housekeeping matter.
 3    This point relates to points B and C in our alternate order.
 4    One of the things that we have done in our alternate order is
 5    we have a provision providing for amendment to the complaint.
 6              One of the reasons for that was to align the parties
 7    so the parties would be properly stated.  We will probably have
 8    other housekeeping measures, we are not trying amend to affect
 9    the Court's jurisdiction one way or the other, but going
10    forward in the federal forum there may be additional
11    allegations in certain ways to put it so the
12    table is properly set for what goes forward.
13              And the one thing that needed to be dealt with is
14    to get the parties properly stated so we can at least get the
15    names right in the caption.  If it's longer, we provided a 30
16    day period for amendment in ours, and we made it an amendment
17    as of right, so perhaps if we can make some language that says
18    we have a second, if we adhere to that 30 day period, we have
19    the ability to amend and to come back and fix the caption.
20    Basically a housekeeping matter to keep all these different
21    pieces in.
22              THE COURT:  So we can set the date now.  So for April
23    23rd, by April 23rd.
24              MR. MCNEW:  That would be April 23rd to amend the
25    complaint?
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              31
43RTMTBEC            Conference
```
 1              THE COURT:  Yes.
 2              MR. SACRIPANTI:  Is that the caption only by April
 3    23rd?
 4              THE COURT:  No, I gather it's more than that.  You may
 5    add something to the claims that you think that he should
 6    assert here or may want to realign parties, he has all kinds of
 7    things in mind.
 8              MR. MCNEW:  But we're mindful of the rule you can't
 9    amend the complaint to strip the Court of jurisdiction.
10              THE COURT:  Right.  April 23.
11              So we're putting this off.  Now what about B?  I
12    focused on your order, but B says any defendant who contends it
```
                              Page 15

43RTMTBEC.txt

13    was improperly named should explain it to you within ten days.
14    I assume you don't like that ten days limit.
15              MR. WALLACE:  Correct.
16              THE COURT:  Will 30 days be enough so that the
17    negotiations would end in 60 days?  In other words, if you give
18    them your materials within 30 days, they could get back within
19    the next month and I could schedule conference approximately
20    two months from now on that issue and see what is what.
21              MR. WALLACE:  We can commit to giving every defendant
22    something within 30 days.
23              THE COURT:  Okay.  April 23rd, and we will take it up
24    again in the end of May.  So by the end of May the plaintiffs
25    will be able to come back and say essentially this is the group
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    32

43RTMTBEC          Conference
1     that we didn't work out and we think we have jurisdiction and
2     they think we don't, let's reschedule the motions.
3               MR. McNEW:  Your Honor, it may make sense, rather than
4     going through two iterations of the complaint, it might make
5     sense to just provide all amendments that might be done in May,
6     rather than having an April amendment and a May amendment.
7               THE COURT:  I don't understand what you mean.  What's
8     wrong April 23rd?  Why couldn't you get all your amendments
9     done by then?
10              MR. McNEW:  I presume by the end of this process we
11    will have to add and drop parties.
12              THE COURT:  But that is nothing.  That to me, that's
13    mild stuff, just that's mild stuff.  I may not worry about
14    that.
15              MR. McNEW:  Okay.
16              THE COURT:  They may say they do on those.
17              Now you said on standing, which is what I was going to
18    turn to, standing is really not addressed in the plaintiff's
19    proposed order; right?  So let's discuss it.
20              In the defendants' letter they cite a decision I
21    issued in 2001 which I held that the plaintiffs must be able to
22    show actual contamination or imminent threat of contamination
23    to have standing.  And he's saying here that there may be some
24    plaintiffs who can't meet that standard, because some of them
25    have publicly acknowledged, you believe, that they are filing
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    33

43RTMTBEC          Conference
1     suit, using his words, merely as a place holder to avoid a
2     potential legislative bar and to preserve the possibility of
3     asserting claims that might occur.
4               In any event, to take care of the problem, the defense
5     has proposed a questionnaire, which they want the Court to
6     think is simple, but is anything but simple, but what was your
7     response to the questionnaire about the concept of having come
8     forward with some showing of standing early on?
9               MR. GORDON:  You say to cure the problem --
10              THE COURT:  I didn't say to cure the problem, I said
11    to address the point that they made in the letter, and given
12    the prior ruling there may be a lack of standing.  How would
13    you address their point?
14              MR. GORDON:  I appreciate that, I meant they said
15    there was a problem that has to be cured.
16              THE COURT:  I didn't say that at all, I said how do
17    you address the point raised in their letter that they point
                                Page 16

43RTMTBEC.txt
18   out that prior ruling of this Court that set up the standard
19   for standing.  And they want to know if you have got it for all
20   plaintiffs that are now here.
21            MR. GORDON:  We do.
22            THE COURT:  How are you going to show that to them?
23            MR. GORDON:  We think through the discovery process,
24   if at the end of day we don't have any damages in the case, if
25   there is no contamination or no imminent threat of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    34
43RTMTBEC                  Conference
1    contamination.
2             THE COURT:  But let's say there's one plaintiff in the
3    case, one plaintiff and only one plaintiff, should a defendant
4    have to do two years of expensive discovery if you say at the
5    end of the day oh, well, turns out we didn't have any damages,
6    so it's okay, goodbye.  You wouldn't say that in a one
7    plaintiff case.  You would say one of the things that I want to
8    do right in front is find out if he had standing to bring the
9    suit.  So it's not enough to say I don't have any damage at the
10   end, it's no harm done.  There is harm done because two years
11   of discovery and expensive motion practice.  So that's why they
12   want to say do you have standing or don't you.  Standing is a
13   threshold question.
14            MR. GORDON:  Getting words from my co-counsel.
15            THE COURT:  I see that.
16            MR. GORDON:  Standing is a pleading requirement.  We
17   have pled actual contamination or imminent threat.  We are well
18   aware of the Court's ruling, which was in the context, much
19   different context by way of individual well owners.
20            THE COURT:  I remember.
21            MR. GORDON:  Here we represent entities have that
22   spent money to try to deal already with the MTBE problem, with
23   the contamination and the imminent threat of contamination.  It
24   is a pleadings issue.  We have plead it in every case.  I don't
25   know why they say that there have been cases filed with
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    35
43RTMTBEC                  Conference
1    absolutely no contamination or threat of contamination.  Were
2    we concerned about a legislative bar?  Absolutely.  Were we
3    concerned about the attempt to make it retroactive?  Yes.
4             That's the reason why we filed cases and our clients
5    came to us and said we should file this case and what concerns
6    of public relations implications they had, but they all had
7    contamination or imminent threat.
8             THE COURT:  If that's your representation, and you're
9    fully aware of your Rule 11 obligations, maybe you're
10   representing for every plaintiff who is here or will be here,
11   if they can satisfy the standard that I set forth in the 2001
12   case, whether you agreed with it or not, that it seems to me I
13   suppose the law of the case now, if you think those plaintiffs
14   are satisfied I suppose that's enough.
15            MR. SUMMY:  Your Honor, I need to let the Court be
16   aware of this, that there are public agencies in certain states
17   that had statutory standing that is under a different standard
18   than what the Court has enunciated in MTB-1, but those were
19   pled properly in complaints.  They may not fall square on the
20   face of what the Court says is the standard.
21            THE COURT:  I understand, but there is some statute
22   that says that.
                              Page 17

43RTMTBEC.txt

23      MR. SUMMY:  That's correct.
24      THE COURT:  Why don't you write a letter, and it may
25 take a little while to write up, but say something like that,
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

43RTMTBEC                  Conference
1 that one group of plaintiffs, and you could list them, would
2 meet the standard you set forth in your opinion.  The next
3 group of plaintiffs meet the statutory standing test in their
4 various states, and here they are, list them by state and
5 statute, that's it, that's everybody.
6      Now we have identified every plaintiff and we have
7 identified whether it comes under the Court standard or
8 statutory standard, and there is no third, there is no third or
9 is there?  It's either a statute or meets the standard I set
10 forth in the prior opinion, everybody meets one or the other.
11      Do you want to confer, Mr. Sher?
12      MR. SHER:  Your Honor, one point about some of the
13 cases that actually may not end up here is that they involve
14 entities that are very different from the plaintiffs who
15 already are here who are all water purveyors.
16      THE COURT:  Like?
17      MR. SHER:  Well, all of the entities before you now
18 purvey safe water to the public for drinking purposes.  The
19 state of New Hampshire is not a purveyor.  Most of the agencies
20 in the Sacramento County cases, which were referred to as the
21 district attorney cases, are not water purveyors.  The Orange
22 County Water District is not a water purveyor, and so their
23 injuries, for purposes of standing are going to be very
24 different from the standard that you set out for contaminated
25 wells.
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

43RTMTBEC                  Conference
1      THE COURT:  I understand, but my question, Mr. Sher,
2 is do I have any of those cases now that wouldn't fall under
3 the two standards that I was talking about, one is the standard
4 I did set forth in my opinion of contamination or imminent
5 threat, or two, a statutory standard.  Is there a third group
6 that I don't have any of yet?
7      MR. SHER:  I don't know, your Honor.  I was just
8 responding to the notion that those two categories were
9 exclusive for all the cases that may come here.
10      THE COURT:  But what I'm asking today is do I have any
11 cases in the third category, and you don't know the answer.
12      MR. SHER:  I can't tell you.
13      THE COURT:  So I'm going to help you.  So if I have
14 any of the cases in the third group, put that in the same
15 letter too and say and yet there's a third group that has
16 standing for yet a different reason, and you only have one or
17 two of those.  Now you may have more, but that reason is, just
18 say it and be done with it.  If there is nothing more to be
19 done right now, there's nothing more to be done now.
20      MR. GORDON:  Again when I make my comments I'm taking
21 about the cases where I'm an attorney.  What the pleadings say
22 in the pleadings, what the basis for the standing is and under
23 of case law, and we have a case here I think from the First
24 Circuit, but we think is sort of obvious, but there's a case on
25 point that standing issues are to be judged on the pleadings
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

43RTMTBEC.txt

43RTMTBEC                 Conference
1   themselves and they should file the motion to dismiss if
2   they're not adequate.  But again, I don't know why they raise
3   this issue.  I think it's a straw dog.
4              THE COURT:  It may be, but I don't need any
5   unnecessary motions.  It may be satisfactory if you sort of
6   summarize the standing theory by groups, that's all.  Because
7   once I know that some of the people are here under a statutory
8   standing theory and not under an injury or threat of imminent
9   injury, they need to know that too.
10             Then they'll look at that letter and understand.
11  Hopefully there will no motion, hopefully, or they'll look at
12  it and the pleadings and the case law that says standing should
13  be judged on the basis of pleading and say we need to move.  I
14  think that I would require a premotion conference on that one.
15  I would want to hear why they think that's a valid motion if
16  it's supposed to be judged on the face of the pleading and
17  pointed to the face of the pleadings, as I asked you by these
18  three groups, that maybe that would go away for now.
19             Is any defense lawyer ready to tell me now why the
20  face of pleading is not sufficient on the standing?
21             MR. EIMER:  Yes, your Honor, the allegations in the
22  complaint are vague and unsubstantiated and the Court is not
23  obliged to accept those vague and conclusory allegations.
24             THE COURT:  That's the whole point.  What case is
25  that?  Because there are times we do absolutely accept vague
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

43RTMTBEC                 Conference
1   and conclusionary allegations.  12B6 motions we have had
2   tremendous guidance from the Supreme Court, everyone knows all
3   about Swerkowitz, we do accept it.  If it's pled, it's pled.
4              So I don't know the law in the standing area.  Do we
5   not accept it if it's -- in other words, what's the standard?
6   Is the Court required to accept it because they say so or at
7   the pleadings stage do you have to open up discovery on
8   standing motion in order to decide?
9              Now he thinks that he has a First Circuit case that
10  says clearly you do not open it up, you accept the face of the
11  pleadings.  That's nice, that may be true in the First Circuit.
12  Is there Second Circuit law or does that not matter because we
13  have everybody's law to worry about anyway?
14             So I'm not sure you're ready on this, that's why I
15  said a premotion conference may be beneficial at the
16  appropriate time.
17             MR. EIMER:  Agreed.
18             THE COURT:  So I'm asking the plaintiffs to basically
19  write a fairly simple letter grouping the claims and saying the
20  vast number are there because they pled injury or threat of
21  imminent injury, which meets your first standard.  There is a
22  group that has a special statutory standing under the local
23  statute, and there may be a third group Mr. Sher just described
24  that has yet another theory of standing.  Then you look at it,
25  you look at the law, we'll discuss it the next time.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

43RTMTBEC                 Conference
1              MR. GORDON:  We have no problem with that.  The only
2   thing I ask is that I don't think it's something that we could
3   do as a PSC but rather as a counsel for our cases.  I will
                       Page 19

43RTMTBEC.txt

```
 4    write that letter for my cases, Mr. Sher for his cases --
 5             THE COURT:  Well, he only has to do it for the cases
 6    that are here.  I don't think Mr. Sher has to do it with cases
 7    that are not here.
 8             MR. GORDON:  Mr. Bern has his cases.
 9             THE COURT:  I understand, if they're here, they're
10    here.
11             MR. GORDON:  I think each plaintiff counsel should
12    write that letter for their cases.
13             THE COURT:  But I think that as liaison counsel
14    Mr. Alpert may want to collect the letters and read them first
15    and hand them in as a group.
16             MR. MCNEW:  Your Honor, I submit at some point, I
17    propose it be sooner rather than later, we are entitled to
18    additional information on it.
19             THE COURT:  I'm only asking you to do the research
20    first.  Look at the cases on standing motions and see what you
21    have.  After I had chance to -- I don't know what the First
22    Circuit case is.  What's the name of that case?
23             MR. MCNEW:  Your Honor, it's Dubois versus United
24    States Department of Agriculture, it's 102 F.3d 1273 (First
25    Circuit 1996) and the operative language was in footnote 13,
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

41

43RTMTBEC                Conference

```
 1    which was page 1283.
 2             THE COURT:  And it says?
 3             MR. MCNEW:  It says the standing issue is raised in --
 4             THE COURT:  Slow down.
 5             MR. MCNEW:  Whereas here the defendants have not
 6    contradicted the factual allegations concerning standing that
 7    we deem adequate at the motion to dismiss stage, we will not
 8    subject these allegations to the summary judgment level
 9    scrutiny in the absence of motion for summary judgment on the
10    issue.
11             So we are at the pleading stage, your Honor and we --
12             THE COURT:  That may be right, it may be that it has
13    to come later in the discovery, but let the defense team look
14    at the issue on the law and the facts as you give them, and
15    come back and have a premotion conference if they think they
16    should be moving at the pleading stage with no factual
17    development.
18             MR. WALLACE:  If I may add a few more words to the
19    subject, my understanding is the Court is obligated to accept
20    the well pled allegations in fact in the complaint, and I dare
21    say none of these complaints have any allegations of fact about
22    the alleged threat to the wells or contamination of wells.
23             THE COURT:  I don't know that.  Mr. Gordon stood up
24    and said that they did.  He said we have alleged actual
25    contamination or threat of imminent harm.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

43RTMTBEC                Conference

```
 1             MR. WALLACE:  They allege vaguely either contaminated
 2    or threatened, and threatened is an allegation of law.
 3             THE COURT:  No, it's not.  I disagree with you.  I
 4    will make it short and sweet for now, I disagree with that.
 5    They made that allegation, in the pleading context that might
 6    be sufficient, but I'm not saying that I know the law on
 7    standing motions.  I don't know whether you treat it as you
 8    would a motion, typical motion to dismiss or you accept it all
```

43RTMTBEC.txt

```
 9   or whether you have to move to a summary judgment if you are
10   going to start putting in a lot of factual material.  If that's
11   so, then it's down the road.
12           MR. WALLACE:  Your Honor, we have undertaken some
13   research of the public record in order to develop some
14   information that I think the Court would find informative in
15   addressing the standard.
16           THE COURT:  It might be informative, but it may no
17   longer be a motion to dismiss, it may be a summary judgment
18   once you're putting in material outside the pleading.  If
19   that's the case, people need some discovery.  We don't do
20   summary judgement without discovery.
21           MR. McNEW:  Your Honor, Rule 8A --
22           THE COURT:  Please, I feel like I wrote Rule 8A.  Read
23   all my voluminous writing about Rule 8A.  I don't think anyone
24   addressed that more in the whole word.
25           MR. McNEW:  We only wanted to apologize, your Honor,
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

43

43RTMTBEC              Conference
```
 1   that our complaint as it stands is some hundred pages already.
 2           THE COURT:  Anything but short and plain.
 3           MR. McNEW:  We felt that we met the requirements.
 4           MR. WALLACE:  Our proposal called for a bit more
 5   information than simply which category the plaintiffs are in.
 6           THE COURT:  I know it did, but you really were seeking
 7   a way to get discovery.
 8           MR. WALLACE:  That's fair enough.
 9           THE COURT:  You were seeking to go way beyond the four
10   corners of the complaint and really get detailed discovery.  As
11   Mr. Gordon said earlier, if we're going into discovery, let's
12   have a schedule and everybody will start having discovery, and
13   that's right.
14           MR. SACRIPANTI:  Your Honor, may I take one try at
15   this, your Honor, and I'll sit down quickly after you listen to
16   me, but I'll read something.
17           THE COURT:  You mean after I disseminate your
18   position?
19           MR. SACRIPANTI:  Yes.  But may I read something that
20   is on a web site from one of the plaintiffs?
21           THE COURT:  If you read slowly.
22           MR. SACRIPANTI:  I will.  Long Island American Water
23   shares our customers' concerns about the reports of MTBE in
24   groundwater, and we are pleased to report that we have been
25   testing for MTBE in our well since 1998 and none has been
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

44

43RTMTBEC              Conference
```
 1   detected in any well.
 2           When we find something like that, your Honor, our
 3   inclination, and perhaps we overreached with our questionnaire,
 4   and maybe the response is to have a more simple questionnaire,
 5   and maybe it has two or three questions that says:  Are your
 6   wells contaminated?  If the answer is no, then maybe the next
 7   question --
 8           THE COURT:  That's what I suspect.  Mr. Gordon's word
 9   is on the line, because he said, and let's talk about the Long
10   Island -- what did you call it?
11           MR. WALLACE:  Long Island Water Corporation.
12           THE COURT:  I mean if he has alleged in a suit that
13   features them as a plaintiff that he has alleged actual
```
                              Page 21

43RTMTBEC.txt
14  contamination or threat of imminent harm and he meets the
15  standard that I wrote in that district court opinion long ago,
16  then his signature is on the line.  And either we accept Rule
17  11 or we don't.  Generally we do.
18       MR. SACRIPANTI:  I guess what we were trying to do,
19  your Honor, is obviate the need for motion practice on this,
20  and perhaps like we're addressing personal jurisdiction.
21       THE COURT:  I agree, but I already tried that.  I said
22  to Mr. Gordon you were aware of whatever I wrote.  He said very
23  much so.  Then Mr. Summy said there are also statutes.  Then
24  Mr. Sher said there is a third category.  Okay, but for that
25  large first category, that's not the special statutes and it's
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                45
43RTMTBEC                Conference
1   not whatever it is Mr. Sher was referring to, but it's the
2   group that Mr. Gordon says we know what you wrote and we're
3   aware of it and believe that all our plaintiffs, except for the
4   other two categories, fall in there, then he has to have a
5   basis to have said that.
6        MR. SACRIPANTI:  May I ask the question:  Will he in
7   his letter say the following plaintiffs are here because their
8   wells are contaminated here or it's under imminent threat, and
9   here is what we call an imminent threat?
10       I mean I would think that would elucidate this issue,
11  especially for premotion conference when we get before your
12  Honor and say gee, we think that we want to bring a motion for
13  standing.  And you say to us why?  We say well, here's why, on
14  the basis of the letter and perhaps some of the public record
15  information, I'm concerned if his letter is merely perfunctory
16  and just says here's the reasons why it's standing, we won't
17  have enough information at that time and won't facilitate the
18  resolution.
19       THE COURT:  I had expected that it will be
20  perfunctory.  I thought basically he would draw the allegation
21  from the various complaints and say for the Long Island Water
22  Company we alleged in paragraph 12 actual injury, or we alleged
23  in paragraph 12 the threat of imminent harm.
24       MR. SACRIPANTI:  And is he going say what that threat
25  is?
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                46
43RTMTBEC                Conference
1        THE COURT:  No.  Which one did you allege?  Do you
2   know for that particular case, or you wouldn't know as you sit
3   here?
4        MR. GORDON:  I wouldn't know as I sit here.  But I
5   would like to address some of these things.  As I sort of
6   implied before, your Honor, water authorities are extremely
7   reluctant to bring lawsuits about contamination of the water
8   when they're trying to sell that water.  I cannot control what
9   a company does on its web site.  But what is absolutely clear
10  is there are two things; number one, it's the Long Island Water
11  Corporation.  Long Island is a sole source aquifer, the aquifer
12  is contaminated with MTBE up and down Long Island from Suffolk
13  to Nassau Counties.  That's number one.  Number two, they have
14  spent money, as they indicated already in this web site, to
15  test for MTBE, money that they should not be out of pocket.
16  That's an injury that we believe as well, and there is an
17  imminent threat.
18       We will have to go through an entire trial, which is
                     Page 22

43RTMTBEC.txt
19  ultimately where we would like to get to, to get to the point
20  whether there is an injury and there is standing to bring this
21  lawsuit.  It's certainly their water in terms of standing.
22          THE COURT:  But I think I already ruled that merely
23  feeling that they ought to test wouldn't meet the standing
24  requirement.  The fact that they spent money testing, and this
25  is only one district judge's opinion, but I wrote then that
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

43RTMTBEC               Conference
1   wouldn't be enough to say that I thought I better test, I did,
2   and I found absolutely nothing, so I am pleased to report I
3   found absolutely nothing.  If that was all you had, that you
4   spent money on testing and came up completely clean, I would
5   say, and I think I have said, that that is not standing,
6   Mr. Gordon.
7           MR. GORDON:  And we may need to readdress that,
8   because it is the sort of situation where we have a private
9   person has their own well as opposed to a public water
10  authority that has many towns on a sole source aquifer that is
11  contaminated.
12          THE COURT:  But that's the key word.  If it is
13  contaminated, you got it.
14          MR. GORDON:  The aquifer is but the well may not be
15  yet or maybe it was.
16          THE COURT:  Your argument is that's an actual injury.
17          MR. GORDON:  Yes.
18          THE COURT:  I understand, that's easy.  As long as you
19  got that, tell it to Mr. Sacripanti and he'll make of it what
20  he will, but you got it.  You said there is an actual injury to
21  the aquifer that we rely on.
22          MR. SACRIPANTI:  Well, your Honor, not to debate this
23  issue right now, but just to talk about what an aquifer means,
24  does that mean that if there's a spilling of gasoline in
25  Catskill, New York or Dutchess County, New York, that someone
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

43RTMTBEC               Conference
1   in lower Westchester County who might take from the same
2   aquifer over 50 or 70 miles --
3           THE COURT:  Mr. Gordon's point is well taken, I'm not
4   worried about that single person 70 miles away, I'm worried
5   about the Long Island Water Authority, and from their
6   perspective, if they've got a contaminated aquifer, they have a
7   big problem, it means they have an actual contamination aquifer
8   or imminent threat.
9           It may be that we shouldn't be discussing this further
10  at this time, because then you find lines of transcripts to
11  quote, and that's not what I'm trying to say, but I'm saying
12  it's quite a different standard for an individual's well 70
13  miles away.  It's a different standard for this entity.  The
14  entity's injury, I already said in this conference, can't be
15  just I chose to spend money on testing and everything is great,
16  that wouldn't do it.  But if they have actually showed injury
17  to something that one can look as sort of their source, their
18  property, under their control, any words you want, they may
19  have an actual injury.  So it's quite a different issue than
20  the last time.
21          What's your name?
22          MR. LYONS:  Your Honor, I'm John Lyons, I represent
23  Conoco Phillips.  What I wanted to raise is two points, simply,
                      Page 23

43RTMTBEC.txt
24    and as you say, we don't want to do this off the cuff.  These
25    water districts do not own the aquifer water.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

43RTMTBEC               Conference
 1                 THE COURT:  But it may be their sole source of water.
 2                 MR. LYONS:  But your Honor, their rights for that
 3    water are only use of property rights.  If the aquifer is going
 4    to be contaminated but is not going to be drawn into their
 5    wellhead immediately, they have no rights to that water
 6    whatsoever and they have nothing to stand on to sue.  And that
 7    is something that we need to brief.
 8                 THE COURT:  Right.
 9                 MR. LYONS:  One other point, a practical issue that
10    you raised, in California we have litigated heavily, Mr. Miller
11    I have spent quite a bit of time, in one case their claim was
12    an imminent threat to a well, for instance.  It turns out at
13    after three years of litigation, all the sources of gasoline in
14    the area, et cetera, that what they meant by imminent threat
15    was an expert report that said 15 years from the date, if all
16    things remained equal, MTBE would reach that well.
17                 On a motion in limine --
18                 THE COURT:  Who is the plaintiff there?
19                 MR. LYONS:  South Lake Tahoe, your Honor.  And there
20    were some wells that differed, but in a motion in limine, after
21    three years of wasted expense concerning those wells, how the
22    gasoline around those wells were supplied and so forth, the
23    judge said 15 years from now is not imminent.
24                 Now the plaintiffs could say, with good faith, that
25    they had an expert who would say 15 years from now it will hit
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

43RTMTBEC               Conference
 1    that well, but at some point early on I would suggest, your
 2    Honor, we should -- we have 60 days where we could have a lot
 3    of those kinds of problems, we will be going all over the
 4    country looking at sources of gasolines for wells that aren't
 5    likely to get hit for decades.
 6                 And to be clear, these plaintiffs do not have the
 7    right to assert generalized contamination in the aquifer, the
 8    only the right they have is to draw clean water from those
 9    aquifers.  Thank you.
10                 THE COURT:  I don't understand the difference, the
11    last phrase, the right to draw clean water from that aquifer.
12    What if that right is being affected?
13                 MR. LYONS:  I'll give you a specific example.  In Long
14    Island, your Honor, that aquifer contains 90 trillion gallons
15    of water that they draw from.  On an average rain day, 500
16    million gallons of water is added to that aquifer, so to say
17    that some portion of that aquifer somewhere has contamination
18    near a gasoline site is not to say that it affects every water
19    company that draws from that 90 trillion gallon aquifer.
20    That's impossible.  And what they have to show, in my mind, is
21    something that that contamination is going to get to water that
22    they're going to draw out.
23                 THE COURT:  Let's go back to the basics before
24    Mr. Sacripanti said I want to be heard just one more time, and
25    that is when and how is the way to do this?  Is it a cleaning
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

43RTMTBEC.txt
43RTMTBEC                    Conference

1   motion?  Is it a summary judgement?  Does it have some
2   discovery both ways?  Do you have the opportunity to ask the
3   kinds of questions that you ask in this proposed questionnaire?
4   When do you have it?  When is the right time to engage in this
5   standing issue?  And that I would like you to do more research
6   on, and we've scheduled another case management conference and
7   we'll talk about it then.
8          MR. SACRIPANTI:  We'll address it then, thank you,
9   your Honor.
10         THE COURT:  So now let's talk about discovery a little
11  bit, which seems to be exactly where we're up to anyway.  I'm
12  in the defendant's proposed order page 7, number D, that's says
13  pending the resolution of motions to dismiss, discovery shall
14  be limited to subjects necessary to the resolution, such as
15  personal jurisdiction and standing, additional discovery shall
16  be deferred, and will also facilitate participation in
17  subsequent parties.
18         The plaintiffs say to be sure that all parties who may
19  be named are properly identified, the discovery relating to the
20  identification of entities that manufacture, distribute or sold
21  MTBE or TBA or gasoline containing it shall commence
22  immediately upon entry.
23         So there is a difference here as to what each side
24  anticipates, but both sides have early needs, and maybe what is
25  good for the goose is good for the gander, and if plaintiffs

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

52

43RTMTBEC                    Conference

1   want to start the discovery that they have described, trying to
2   figure out who manufactured, distributed or sold from the
3   defendants so they can properly name parties.  By the same
4   token, maybe the standing discovery should begin; not to maybe
5   the degree of the initial proposed questionnaire, but as you
6   said, Mr. Sacripanti, maybe a modified questionnaire so that
7   sides are getting started on this.
8          And as long as we're at it, years ago there was some
9   request for document preservation, and I remember signing a
10  document preservation order that I publicly stated since that I
11  regret.  I didn't have the level of knowledge that I have now.
12  I would now sign a far more refined order than I did then,
13  because I just learned so much in the last bunch of years about
14  what should be preserved and the cost of preservation.  Another
15  topic I talk about too much, but anyway, I do.
16         So you might want to begin some negotiations with one
17  another about that, because actually this time, unlike the last
18  time, there may actually be documents on both sides.  And so
19  you may want to have your own meet and confer about issues of
20  document preservation, about all issues of electronic
21  discovery, including former production.  There are many things
22  to talk about these days, we have all advanced in the last five
23  years.  So again, I don't want to get into it today, but I
24  suggest it could be high on your list of meet and confer
25  topics.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

53

43RTMTBEC                    Conference

1          In terms of planning this preliminary discovery, which
2   is really still not merits discovery, the defendants want the
3   discovery to plaintiffs to identify whether in some cases it
4   should go on lack of standing, but the plaintiffs want

Page 25

43RTMTBEC.txt

5  discovery of defendants to decide who should be named in which
6  suit and maybe there are more out there.  So each side has some
7  preliminary needs in discovery.  Why shouldn't it begin on both
8  sides?
9          MR. SACRIPANTI:  We would have no objections to that,
10  your Honor.  We would suggest perhaps giving us a period of
11  time to meet and confer on the issues to see if we agree on the
12  bounds of the reciprocal discovery.
13          THE COURT:  So I'll not schedule it at all today but
14  leave that to your first meet and confer also.
15          I think that is good.  In your meet and confer,
16  besides talking about issues of production and form and
17  electronic data and all that stuff, why don't you also talk
18  about what you sought, you the plaintiffs sought at page 6 of
19  your proposed topic E and what the defense sought at page 7,
20  topic B, and I'm going to schedule another case management
21  conference anyway in the range of 30 days or so, and whatever
22  you have haven't worked out, I will.
23          MR. SACRIPANTI:  That's fair enough.  We have no
24  objection.
25          THE COURT:  Now both sides say that we are going to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

54

43RTMTBEC                Conference
1  forego mandatory disclosures here, that's the proposal of
2  everybody.
3          MR. SACRIPANTI:  Yes, your Honor.
4          THE COURT:  All right.  Topic seven, of course the
5  Court may issue additional case management orders, that's
6  obvious.
7          MR. MCNEW:  We add a sentence at the end of that.
8          THE COURT:  30 days in which to move for remand.
9  Right.  Okay.
10          MR. MCNEW:  There was one last provision in our
11  proposed order, your Honor, it was 5D.
12          THE COURT:  Say again?
13          MR. MCNEW:  5D, which addressed answers and motions.
14  We were just trying to provide a timetable for the filing of
15  answers or motions.  I guess it's optimistic to suggest that
16  anybody is going to answer anything here.
17          THE COURT:  There's a lot of motions, obviously, still
18  to be made by both sides.  And you folks are still very
19  interested in remand, and the defense is obviously interested
20  in standing and personal jurisdiction and then making the real
21  motions to dismiss.
22          MR. MCNEW:  Correct.
23          THE COURT:  Real meaning substantive such as
24  pre-emption.
25          MR. MCNEW:  We think that the standing motions would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

55

43RTMTBEC                Conference
1  be raised.  I don't know why the defendants would need seriatim
2  dispositive motions.
3          THE COURT:  We just talked about that.  Your view is
4  that standing really can't -- they can't win a pleading motion
5  on standing, that would have to be done with some discovery on
6  something other than the pleadings.
7          MR. MCNEW:  One would assume that if they raised it
8  and lost it in a Rule 12 motion they would have to answer and
9  have their discovery.

Page 26

43RTMTBEC.txt
```
10          THE COURT:  There may be an interim way to deal with
11  it.  I appreciate the argument the gentleman made, Mr. Lyons,
12  about the Tahoe case.  It shouldn't take three years to find
13  out you never have should have been a plaintiff.  So there may
14  interposition where it's not the face of proceedings per se but
15  based on some limited discovery, sort of the way we do
16  jurisdictional discovery where we will have some standing
17  discovery and have a standing motion.
18          MR. MCNEW:  But with respect to Mr. Lyon's position,
19  understand the hydrogeology of Long Island and California are
20  vastly different.
21          THE COURT:  I'm sure that's true.
22          MR. MCNEW:  That's another day.
23          THE COURT:  I wouldn't even understand the words at
24  this point.
25          MR. MCNEW:  Under D we broke it into two pieces,
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

56

43RTMTBEC              Conference
```
 1  because one thing that we haven't discussed this morning are
 2  declaratory judgment actions, which we understood to be a
 3  another jurisdictional route to the Court that the defendants
 4  opened.  So we had a provision first, a timetable for answering
 5  and\or moving under Rule 12 for the actions that we're all here
 6  for, we have a separate paragraph to deal with declaratory
 7  judgment actions, because otherwise --
 8          THE COURT:  You want to move against the declaratory
 9  judgment action on the basis of no federal jurisdiction?  Is
10  that what you're saying?  In other words, they're the
11  plaintiffs, you want to say there's no jurisdiction?
12          MR. MCNEW:  We don't believe a declaratory judgment
13  action lies in this context where there's already -- it seems
14  have already been joined in substance of litigation.  We had
15  understood that they had filed these merely as a way to get to
16  this Court in the event that they didn't have success on the
17  removal strategy, so we would assume that if we were all here
18  that those become surplusage and gets dismissed, but we may be
19  wrong on that.
20          THE COURT:  The point is that you're continuing to
21  oppose being here.  You want reconsideration, you want to talk
22  about non-RFG states, you want certification.  There is enough
23  uncertainty at this point I would hardly think about dismissing
24  the declaratory judgment action solely on the grounds that
25  there is duplicative routes to this Court, since you're
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

57

43RTMTBEC              Conference
```
 1  fighting being here, and I respect that, but I am just saying
 2  this point I wouldn't do it.  If you had an independent ground
 3  that there is no jurisdiction over that action, then yeah.
 4          MR. GORDON:  Your Honor, we would then move to
 5  continue this stay in effect on the declaratory judgment action
 6  as a whole until we have some response either on the
 7  reconsideration, the appeal, et cetera.
 8          MR. SACRIPANTI:  I would have no objection to the
 9  existing declaratory judgment actions.
10          THE COURT:  Okay.  So that's done.  You got that.
11          All right.  I think we talked about everything except
12  for a next date.
13          MR. WALLACE:  Your Honor, we do have two other small
14  matters.
```
Page 27

43RTMTBEC.txt
15          THE COURT:  I hope they're small because you went half
16     an hour over my schedule.
17          MR. WALLACE:  One is we still don't have complaints in
18     seven of the cases that are before you.
19          THE COURT:  All right.  Mr. Alpert, you're liaison
20     counsel, make sure they get complaints.
21          MR. ALPERT:  Yes, your Honor.
22          MR. WALLACE:  And does your order provide that our
23     time to answer will be set at the next conference?
24          THE COURT:  We will put it in, the time to answer or
25     move will be set at the next conference, and the next
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

43RTMTBEC                    Conference
1     conference will be, and then you can leave, how about Thursday
2     April 22, at 10:00.  Thursday, April 22, 10:00.  Going once,
3     twice, done.
4          We'll put that in the order that the time to answer
5     will be set at the conference scheduled for April 22.
6                              o0o
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------X
                                          :
**In re: Methyl Tertiary Butyl Ether**    :
**("MTBE") Products Liability Litigation** :
                                          :        __  ____**ORDER**
                                          :
**This Document Relates To:   All Cases**  :        **MDL No. 1358 (SAS)**
                                          :
                                          :
-------------------------------------------------X

## CASE MANAGEMENT ORDER

### I.   Prior Orders; Filing; Service

      Except as otherwise noted below, this Order supersedes prior Case

Management Orders in MDL No. 1358.  Attached hereto as Appendix A is a list of

the cases that are currently consolidated in this multidistrict litigation, designated

MDL 1358, which have either been filed in this Court or transferred to this Court

pursuant to 28 U.S.C. § 1407.  A copy of this Order shall be filed in each case

listed in Appendix A.  In cases subsequently filed in, removed or transferred to

this Court as part of MDL 1358, a copy of this Order shall be provided by the

Clerk to each plaintiff at the time the case is filed in, removed or transferred to this

Court, and each Plaintiff shall promptly serve a copy of this Order on any

defendant not previously a party in MDL 1358.

## II.   <u>Interim Measures</u>

### _____A.   <u>Pre-Trial Consolidation</u>

_____The cases listed in Appendix A are consolidated for pre-trial proceedings.  This Order does not constitute a determination that these actions shall be consolidated for trial, nor does it have the effect of making any entity a party to an action in which it has not been joined or served in accordance with the Federal Rules of Civil Procedure.  All cases subsequently filed in, removed or transferred to this Court as part of MDL No. 1358, shall be similarly consolidated for pre-trial proceedings.

### B.   <u>Master Docket and File</u>

_____The Clerk will maintain a master docket and case file under the style In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358, as Master File No. 1:00-1898 (SAS).  Orders, pleadings, motions and other documents bearing a caption similar to that of this Order will, when docketed and filed in the Master File, be deemed docketed and filed in each individual case to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual cases.

### C.   <u>Captions; Separate Filing</u>

_____Orders, pleadings, motions and other documents will bear a caption

similar to that of this Order.  If generally applicable to all consolidated matters,

they shall include in the caption the notation that they relate to "all cases" and

shall be filed and docketed only in the Master File.  Documents intended to apply

only to particular cases will indicate in their caption the name(s) of the case(s) to

which they apply, and extra copies shall be provided to the Clerk to facilitate filing

and docketing both in the Master File and each of the specified individual files.

**III.**   **Party Organization; Liaison Counsel**

   **A.**   **Liaison Counsel**

_____The Court directs the parties to coordinate their actions through

Liaison Counsel. Nothing herein shall restrict the substantive rights of any party,

including the right to be represented by separate counsel or to take separate

positions from other parties.  For purposes of nominating and coordinating with

the Liaison Counsel, the parties to the declaratory judgment actions in Appendix A

shall be reversed, so that the nominal plaintiffs in those actions are aligned with

defendants in the other cases and vice-versa.  Liaison Counsel shall:

   1.   Maintain and distribute to co-counsel and to the opposing
        Liaison Counsel an up-to-date service list;

   2.   Coordinate with opposing Liaison Counsel and with the Court
        on scheduling issues;

3

3.      Be responsible for the service and filing of joint pleadings and communications with the Court to the extent practicable;

4.      Receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

5.      Maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository.

Plaintiffs designate as their liaison counsel Stanley N. Alpert, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038. Defendants designate as their liaison counsel Peter Sacripanti, McDermott, Will & Emery, 50 Rockefeller Plaza, New York, New York 10020.

**B.**     **Plaintiffs' Co-Lead Counsel  and Executive Committee**

The Court hereby incorporates Parts III.A ("Plaintiffs' Co-Lead Counsel") and III.C ("Plaintiffs' Executive Committee") from Case Management Order No. 1 filed Nov. 8, 2000.  The following attorneys shall serve as co-lead counsel pursuant to Part III.A of CMO No. 1:    Robert J. Gordon, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038; Victor M.

4

Sher, Sher Leff, 450 Mission Street, Suite 500, San Francisco, California 94105;

and Scott Summy, Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas,

Texas 71209. The Plaintiffs' Executive Committee shall consist of Co-Lead

Counsel as well as the following attorneys pursuant to Part III.C of CMO 1: Marc

Bern, Napoli Kaiser & Bern, New York, New York, and Duane Miller, Miller,

Axline and Sawyer, Sacramento, California.

## IV.   Service of Documents

### _____A.   Orders

_____A copy of each order will be provided electronically to Plaintiffs' and

Defendants' Liaison Counsel for distribution as appropriate to other counsel and

parties. Plaintiffs' Liaison Counsel shall distribute copies to other counsel for

plaintiffs; defendants' Liaison Counsel shall distribute copies to other counsel for

defendants.

### B.   Pleadings, Motions, and Other Documents

_____The parties shall serve other parties with all pleadings, motions and

other Court filings in PDF format by electronic means, either by electronic mail or

by such other method as the parties and the Court might agree. Pursuant to Fed.

R. Civ. P. 5, service on Liaison Counsel constitutes service on other attorneys and

parties for whom Liaison Counsel acts. For the purpose of computing time under

Fed. R. Civ. P. 6, 1 day shall be added to the prescribed period when effecting service by electronic means under this CMO.

## V.   **Motions; Pleadings; Discovery**

### A.   **Reconsideration; Interlocutory Appeal**

Any party who wishes to move for reconsideration or certification for interlocutory appeal of the Court's March 16, 2004, order denying remand shall do so by April 9, 2004.  In the event any party files such a motion, any party opposing the motion shall file its briefs in opposition by May 24, 2004, and movants may file reply briefs by June 7, 2004.

### B.   **Misjoinder; Personal Jurisdiction**

Any defendant who contends that it was improperly named, or that personal jurisdiction over it is lacking, shall identify itself in writing to counsel for plaintiffs, with an explanation of the grounds for that contention, by April 23, 2004.

### C.   **Amendments to Complaints**

Any plaintiff in any removed action that wishes to amend its complaint may do so as of right by April 23, 2004.

### D.   **Answers; Rule 12(b) Motions**

1. *Removed actions.*  The time for defendants to answer or move in

response to the complaints will be set at the status conference scheduled for April 22, 2004, at 10:00 a.m.

2. *Declaratory judgment actions*. The declaratory judgment actions shall be stayed pending resolution of the proposed motion for reconsideration, and/or motion seeking certification for interlocutory appeal.

**E.     Discovery Pending Resolution of Preliminary Motions**

Pending the resolution of motions to dismiss, discovery shall be limited to subjects necessary to the resolution of objections to personal jurisdiction and the standing of plaintiffs. The parties shall meet and confer in an attempt to agree on the parameters of this preliminary reciprocal discovery. If the parties are unable to agree, the Court will address this issue at the status conference scheduled for April 22, 2004, at 10:00 a.m. Additional discovery shall be deferred pending further order.

**F.     Consolidated Papers**

In all motions and briefs filed in this MDL, plaintiffs and defendants are each instructed, to the extent possible, to file consolidated papers to avoid a multiplicity of motions and briefs.

**VI.   Disclosures Pursuant to Rule 26(a)**

_____Disclosures pursuant to Rule 26(a)(1) shall not be required.

## VII.   <u>Subsequent Cases and Case Management Orders</u>

The Court may issue additional case management orders as appropriate to provide for the prompt, fair and efficient administration of this matter.  As and when additional cases may be transferred or removed to or filed in this Court as part of MDL 1358, the Court will issue orders calling for those cases to proceed in a manner consistent with the procedure set forth herein and, to the extent practicable, will require those cases to follow a schedule that is the same as or similar to the schedule herein.

## VIII.  <u>Privileges Preserved</u>

No communication among any Plaintiffs' Counsel and any Plaintiff, or among any Defendants' Counsel and any Defendant, shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 1, 2004

8

**APPENDIX A**

| State | Short Case Name | Court/Index No. |
|---|---|---|
| **CT** | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1926** |
| **CT** | *Canton Board of Education v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1921** |
| **CT** | *Childhood Memories v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1924** |
| **CT** | *Columbia Board of Education v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1923** |
| **CT** | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1925** |
| **CT** | *Town of East Hampton v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-1927** |
| **CT** | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | **D. Conn.**<br>**3:03-CV-2017** |
| **CT** | *Exxon Mobil Corp., et al. v. American Distilling & Manufacturing Co, Inc., et al.* | **D. Conn.**<br>**3:03-CV-2252** |
| **FL** | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | **N.D. Fla.**<br>**3:03-CV-539** |
| **FL** | *Exxon Mobil Corp., et al. v. Escambia County Utilities Authority* | **N.D. Fla.**<br>**3:03-CV-597** |
| **IA** | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | **S.D. Iowa**<br>**4:03-CV-90663** |
| **IA** | *Exxon Mobil Corp., et al. v. City of Galva, et al.* | **N.D. Iowa**<br>**C-03-4124** |
| **IL** | *City of Crystal Lake, et al. v. Amerada Hess Corp., et al.* | **N.D. Ill.** |

9

| State | Short Case Name | Court/Index No. |
|---|---|---|
| | | 03-CV-8973 |
| IL | *Exxon Mobil Corp., et al. v. City of Crystal Lake, et al.* | N.D. Ill. 03-CV-9026 |
| IN | *City of Mishawaka v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-904 |
| IN | *City of Rockport v. v. Amerada Hess Corp., et al.* | S.D. Ind. 3:03-CV-201 |
| IN | *City of South Bend, Indiana v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-905 |
| IN | *North Newton School Corp v. Amerada Hess Corp., et al.* | N.D. Ind. 4:03-CV-013 |
| IN | *Exxon Mobil Corp., et al. v. City of Rockport, et al.* | S.D. Ind. 3:03-CV-223 |
| KS | *Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1457 |
| KS | *City of Bel Aire v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1458 |
| KS | *City of Dodge City v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1456 |
| KS | *City of Park City, Kansas v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1455 |
| KS | *Exxon Mobil Corp., et al. v. Chisholm Creek Utility Authority, et al.* | D. Kan. 04-CV-1009 |
| MA | *Town of Duxbury, et al. v. Amerada Hess Corp., et al.* | D. Mass. 03-CV-12399 |
| MA | *Exxon Mobil Corp. v. Brimfield Housing Authority, et. al.* | D. Mass. |

10

| State | Short Case Name | Court/Index No. |
|-------|-----------------|-----------------|
|  |  | **03-CV-12539** |
| **NH** | *City of Dover v. Amerada Hess Corp., et al.* | **D.N.H.** **C-03-546** |
| **NH** | *City of Portsmouth v. Amerada Hess Corp., et al.* | **D.N.H.** **C-03-542** |
| **NH** | *Exxon Mobil Corp., et al. v. City of Portsmouth, New Hampshire, et al.* | **D.N.H.** **03-CV-518** |
| **NJ** | *New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp., et al.* | **D.N.J.** **03-CV-5562** |
| **NY** | *Carle Place Water District v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10053** |
| **NY** | *Town of East Hampton v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10056** |
| **NY** | *Village of Hempstead v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10055** |
| **NY** | *Village of Mineola v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10051** |
| **NY** | *County of Nassau v. Amerada Hess Corp., et al.* | **S.D.N.Y.** **03-CV-9543** |
| **NY** | *West Hempstead Water District v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10052** |
| **NY** | *Westbury Water District v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10057** |
| **NY** | *Town of Southhampton v. AGIP, et al.* | **S.D.N.Y.** **03-CV-10054** |

11

| State | Short Case Name | Court/Index No. |
|---|---|---|
| NY | *Water Authority of Western Nassau v. Amerada Hess, et al.* | S.D.N.Y. 03-CV-9544 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp, et al.* | E.D.N.Y. 03-CV-6125 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp, et al.* | E.D.N.Y. 03-CV-6077 |
| NY | *Exxon Mobil Corp., et al. v. Long Island Water Corp., et al.* | E.D.N.Y. 03-CV-6274 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2389 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2390 |
| VA | *Patrick County School Board v. Amerada Hess Corp., et al.* | W.D. Va. 4:03-CV-104 |
| VA | *Exxon Mobil Corp., et al. v. Patrick County School Board, et al.* | W.D. Va. 4:03-CV-105 |
| VT | *Town of Hartland v. Amerada Hess Corp., et al.* | D. Vt. 2:03-CV-337 |
| VT | *Exxon Mobil Corp., et al v. Town of Hartland* | D. Vt. 2:03-CV-343 |

## - Appearances -

**Liaison Counsel for Plaintiffs:**

Stanley N. Alpert, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

# Service List of Defendants

**American Agip Co., Inc.**

> Lisa K. Axelrod, Esq.
> Porzio, Bromberg & Newman, P.C.
> 156 West 56th Street
> New York, NY  10019-3800
> Tel:  (212) 265-6888
> Fax:  (212) 957-3983

**Amerada Hess Corporation**

> David S. Hardy
> Levett Rockwood P.C.
> 33 Riverside Avenue
> Westport, Connecticut 06881
> Tel:  (203) 222- 0885
> Fax:  (203) 226-8025

**Amerada Hess Corporation, El Paso Corporation, and Coastal Corporation:**

> Christopher S. Colman
> Deputy General Counsel - Environmental Affairs
> Amerada Hess Corporation
> One Hess Plaza
> Woodbridge, NJ 07095
> Tel:  (732) 750-6535
> Fax:  (732) 650-6944

> Robert H. Shulman
> Mindy G. Davis
> Howrey Simon Arnold & White, LLP
> 1299 Pennsylvania Avenue
> Washington, DC 20004-2402
> Tel:  (202) 783-0800
> Fax:  (202) 383-6610

**Amerada Hess Corporation and Sunoco, Inc. (R&M)**

> Peter G. Beeson
> Devine, Millimet & Branch, P.A.
> 111 Amherst Street
> Manchester, NH 03105
> Tel:  (603) 695.8517
> Fax:  (603) 695.8610

**Atlantic Richfield Company, BP America, Inc., BP Amoco Chemical Company, BP Company North America, Inc., BP Corporation North America, Inc., BP Global Special Products (America), Inc., and BP Marine Americas**

J. Andrew Langan
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601-6636
Tel:  (312) 861-2064
Fax:  (312) 861-2200

Peter Bellacosa
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
Chicago, IL 60601-6636
Tel:  (212) 446-4800
Fax:  (212) 446-4900

Potter Stewart
Barney Brannen
Potter Stewart, Jr. Law Offices, P.C.
The Merchants Bank Building
205 Main Street, 3rd Floor
Brattleboro, VT 05301
Tel:  (802) 257-7244
Fax:  (802) 257-7256

Matthew Heartney
Arnold & Porter LLP
777 South Figueroa Street
Los Angeles, CA 90017-2513
Tel:  (213) 243-4150
Fax:  (213) 243-4199

J. Alan Harrell
Steven J. Levine
Phelps Dunbar LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, LA 70802
Tel:  (225) 376-0232
Fax:  (225) 381-9197

Bill Noble
Karen K. Gase
BP America, Inc.
6 Centerpointe Drive, 5th Floor
La Palma, CA  90623
Tel: (714) 228-6734
Fax: (714) 228-6570

**Atlantic Richfield Company; BP Amoco Chemical Company; BP Products North America, Inc.; CITGO Petroleum Corporation; and CITGO Refining & Chemicals Company L.P.**

Daniel C. Summerlin
Woods Rogers, PLC
P.O. Box 14125
Roanoke, VA 24038
Tel:  (540) 983-7546
Fax:  (540) 983-7711

**Bartco Corporation**

Christopher A. Albanesse
Milber Makris Plousaids & Seiden, LLP
108 Corporate Park Drive, Suite 200
White Plains, NY 10604
Tel:  (914) 681-8700
Fax:  (914) 681-8709

**BP Products North America**

Robert W. Coykendall
Morris, Laing, Evans, Brock & Kennedy, CHTD
300 N. Mead, Suite 200
Wichita, KS 67202-2722
Tel:  (316) 262-2671
Fax:  (316) 262-6226

George A. Dagon
Murtha Cullina LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103-3469
Tel:  (860) 240-6039
Fax:  (860) 240-6150

James W. Draughn
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005-5793
Tel: (202) 879-5000
Fax: (202) 879-5200

Tracie L. Longman
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
Tel: (617) 457-4000
Fax: (617) 482-3868

David S. Osterman
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Tel: (973) 622-4444
Fax: (973) 624-7070

William P. Wooden
Wooden & McLaughlin LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204
Tel: (317) 639-5151
Fax: (317) 639-6444

**Central Florida Pipeline Corporation**

Thomas J. Smith
Galloway Johnson Tompkins Burr & Smith
One Shell Square
701 Poydras Street, Suite 4040
New Orleans, LA 70139-4004
Tel: (504) 525-6802
Fax: (504) 525-2456

**Chesapeake Terminal, Inc.**

Melvin J. Radin
Law Offices of Melvin J. Radin
500 East Plume Street, Suite 601
Norfolk, VA 23510-2304
Tel: (757) 623-1216

Fax: (757) 624-1718

**CITGO Petroleum Corporation; Chevron U.S.A., Inc., and Exxon Mobil Corporation**

F. Wesley Bowers
Bowers Harrison, LLP
25 N.W. Riverside Drive
P.O. Box 1287
Evansville, IN 47706-1287
Tel: (812) 426-1231
Fax: (812) 464-3676

**Chevron Texaco Corporation and Chevron U.S.A., Inc.**

Harry P. Davis
Associate General Counsel
P.O. Box 1706
Atlanta, GA 30301-1706
Tel: (770) 984-3067
Fax: (770) 984-3080

**Chevron Texaco Corporation, Chevron U.S.A., Inc., and Texaco, Inc.**

Paul D. Sanson
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Tel: (860)251-5127
Fax: (860)251-5600

**Chevron USA Inc.; Chevron Texaco; Chevron Environmental Services Company; Texaco, Inc.**

David L. Schrader
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
Tel: (213) 612-7370
Fax: (213) 612-2554

**ChevronTexaco Corporation, Chevron U.S.A., Inc., Texaco, Inc., Equilon Enterprises LLC, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company, Shell Oil Products Company, LLC, Shell Petroleum, Inc., Shell Trading (US) Company, and Texaco Refining & Marketing, Inc.**

William G. Jarman
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP
One American Place, 22nd Floor
Baton Rouge, LA 70825
Tel: (225) 387-0999
Fax: (225) 388-9133

Richard E. Wallace
Peter C. Condron
Harry Davis
Wallace King Marraro & Branson, PLCC
1050 Thomas Jefferson Street, NW
Suite 500
Washington, DC 20007
Tel: (202) 204-1000

**Chevron Texaco Corporation; Chevron U.S.A. Inc.; Motiva Enterprises, LLC; Shell Oil Company; and Texaco Refining & Marketing, Inc.**

Andrew W. Serell
Rath Young & Pignatelli
One Capital Plaza
P.O. Box 1500
Concord, NH 03302-1500
Tel: (603) 226-2600
Fax: (603) 226-2700/(603) 228-2294

**Chevron Texaco Global Downstream**

Kenneth L. Waggoner
Vice President and General Counsel
Chevron Texaco Global Downstream
6001 Bollinger Canyon Road
San Ramon, CA 94583
Tel: (925) 842-1514
Fax: (925) 842-5060

**CITGO Petroleum Corporation and CITGO Refining & Chemicals Company, LP (formerly CITGO Refining & Chemicals, Inc.)**

Samuel J. Abate
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, NY 10167
Tel:  (212) 609-6805
Fax:  (212) 935-1893

Douglas B. Bates
Stites & Harbison PLC
323 East Court Avenue
Jeffersonville, IN 47131-0946
Tel:  (812) 282-7566

Angelo Cuonzo
Slowinski, Atkins & Czyz, LLP
One Newark Center, 14th Floor
Newark, NJ 07102
Tel:  (973) 824-0900
Fax:  (973) 824-8009

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel:  (312) 660-7600
Fax:  (312) 692-1718

Elizabeth Erny Foote
Percy, Smith & Foote
720 Murray Street
Alexandria, LA 71309-1632
Tel:  (318) 445-4480
Fax:  (318) 487-1741

Dennis L. Gillen
Depew & Gillen, LLC
800 Centre City Plaza
151 North Main Street
Tel:  (316) 262-4000
Fax:  (316) 265-3819

Matthew F. Medeiros
Little Bulman Medeiros & Whitney PC
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 272-8195/(401) 490-6918

Anthony H. Monioudis
Woods Rogers, PLC
530 Main Street, Suite 201
Danville, VA 24543-0560
Tel: (434) 797-8200
Fax: (434) 797-8214

P. Michael Patterson
Emmanuel Sheppard & Condon
30 South Spring Street
Pensacola, Florida 32502
Tel: (850) 433-6581
Fax: (850) 434-5856

Robert Oliver
Mulvey, Oliver, Gould & Grotta
83 Trumbull Street
New Haven, CT 06511

A.J. Stoik
Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & Lapierre, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA 51106
Tel: (712) 252-1866
Fax: (712) 252-5822

Owen J. Todd
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Tel: (617) 720-2626
Fax: (617) 720-2626

**ConocoPhillips Company**

    Michael DeMarco
    Kirkpatrick & Lockhart LLP
    75 State Street
    Boston, MA 02109
    Tel: (617) 951-9111
    Fax: (617) 261-3175

    Steven L. Slagel
    ConocoPhillips
    Law Department - BOB/S258
    1400 Park Avenue
    Linden, NJ 07036
    Tel: (908) 523-5863
    Fax: (908) 523-5183

    Stephen L. Tober
    Tober Law Offices
    381 Middle Street
    Portsmouth, NH 03802
    Tel: (603) 431-1003
    Fax: (603) 431-9426

**ConocoPhillips Company; Conoco, Inc.; Phillips Petroleum Company; Phillips 66 Company; Tosco Refinng Company; Tosco Marketing Company**

    Barry Richard
    Greenberg Traurig PA
    101 East College Avenue
    P.O. Drawer 1838
    Tallahassee, FL 32302
    Tel: (850) 222-6891
    Fax: (850) 681-0207

**ConocoPhillips Company, Conoco, Inc., Phillips Petroleum Company, Phillips 66 Company, Alon USA Energy, Inc., Alon USA LP, Atofina Petrochemicals, Inc., Fina Oil & Chemical Company, Total Holdings USA, Inc., Total America, Inc., Valero Energy Corporation, Valero Marketing & Supply Company, Valero Refining & Marketing Company**

    Michele D. Johnson
    Latham & Watkins LLP
    650 Town Center Drive, Suite 2000
    Costa Mesa, CA 92626-1925
    Tel: (714) 755-8113
    Fax: (714) 755-8290

Mitchell L. Herren
Hinkle Elkouri Law Firm L.L.C.
2000 Epic Center
301 North Main Street
Wichita, KS 67202
Tel: (316) 267-2000
Fax: (316) 264-1556

**ConocoPhillips Company and Tosco Corporation**

Rod G. Smith, Senior Counsel
ConocoPhillips Company
600 North Dairy Ashford
Houston, TX 77079
Tel: (281) 293-1740
Fax: (281) 293-1954

**ConocoPhillips Company, Valero Marketing & Refining Company, Getty Realty Corporation, Getty Properties Corporation, Lee Milt's Petroleum, Inc.**

John Lyons
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 891-8320
Fax: (213) 891-8763

John McGahren
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, NJ 07101-3174
Tel: (973) 639-7270
Fax: (973) 639-7298

**Countrymark Cooperative, LLC**

Robert K. Stanley
Baker & Daniels
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Tel: (317) 237-0300
Fax: (317) 237-1000

**Crown Central Petroleum Corporation**

Andrew Lapayowker
Vice President & General Counsel
Crown Central Petroleum Corporation
1 N. Charles Street
Baltimore, MD 21201
Tel: (410) 659-4834
Fax: (410) 659-4763

**Crown Central Petroleum Corporation, Exxon Mobil Corporation, and Tesoro Petroleum Companies, Inc.**

Colleen Doyle
Bingham McCutchen LLP
355 South Grand Avenue
Los Angeles, CA 90071-3106
Tel: (213) 680-6446
Fax: (213) 680-6499

**Crown Central Petroleum Corporation and Tesoro Petroleum Companies, Inc.**

Ben Krowicki
Bingham McCutchen LLP
One State Street
Hartford, CT 06103
Tel: (860) 240-2926
Fax: (860) 240-2818

**Duke Energy Merchants LLC; Duke Energy Trading & Marketing LLC; Duke Energy Merchants California, Inc.; Northridge Petroleum Marketing U.S., Inc.**

Robert P. Doty
Cox, Castle & Nicholson LLP
555 Montgomery Street, 15th Floor
San Francisco, CA 94111-2585
Tel: (415) 262-5115
Fax: (415) 392-4250

**El Paso Corporation**

Robert Kelly
Senior Counsel, Litigation
El Paso Corporation
1001 Louisiana Street
Houston, TX 77002
Tel: (713) 420-3276
Fax: (713) 420-6060

**Exxon Mobil Corporation, ExxonMobil Oil Corporation, ExxonMobil Chemical Company, ExxonMobil Pipeline Company, ExxonMobil Refining and Supply Company and Mobil Corporation**

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

Anthony Bongiorno
McDermott, Will & Emery
28 State Street
Boston, MA 02109
Tel: (617) 535-4044
Fax: ( 617) 535-3800

Craig H. Zimmerman
McDermott, Will & Emery
227 West Monroe
Chicago, IL 60606-5096
Tel: (312) 984-6495
Fax: (312) 984-7700

Deborah E. Barnard
Holland & Knight, LLP
10 St. James Ave.
Boston, MA 02116
Tel: (617) 619-9240
Fax: (617) 523-6850

Elizabeth L. Bevington
Holland & Knight, LLP
P.O. Box 810
Tallahassee, Florida 32302-0810
Tel: (850) 425-5606
Fax: (850) 224-8832

Mark Durkin
Durkin & Polera PC
970 Summer Street
Stamford, CT 06905
Tel: (203) 327-0044
Fax: (203) 327-0088

Jeffrey J. Parker
Sheppard Mullin Richter & Hampton
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
Tel: (213) 617-5586
Fax: (213) 620-1398

C. Joseph Russel
Bose McKinney & Evans LLP
2700 First Indiana Plaza
135 N. Pennsylvania Street
Indianapolis, IN 46204
Tel: (317) 684-5229
Fax: (317) 684-5173

Robert V.P. Waterman
Lane & Waterman
220 North Main Street, Suite 600
Davenport, IA 52801
Tel: (563) 333-6618
Fax: (563) 324-1616

**Exxon Mobil Corporation; Chevron U.S.A., Inc.; and Texaco Inc.**
Mark H. Churchill
McDermott, Will & Emery
600 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 756-8058
Fax: (202) 756-8087

Larry B. Spikes
Spikes Law LLC
P.O. Box 780557
Wichita, KS 67378
Tel: (316) 315-0222
Fax: (316) 636-5996

**Exxon Mobil Corporation, Equilon Enterprises, LLC, Motive Enterprises, LLC, Shell Oil Company, Shell Oil Products Company, Shell Oil Products Company, LLC, Shell Petroleum, Inc., Shell Trading (US) Company, Texaco Refining & Marketing (East), Inc., Chevron Texaco Corporation, Chevron USA, and Texaco, Inc.**

> Gregory A. Curtis
> Hoff Curtis
> 100 Main Street
> P.O. Box 1124
> Burlington, VT 05402-1124
> Tel: (802) 864-6400

**Frontier Refining**

> Joseph F. Guida
> James D. Payne
> Guida, Slavich & Flores, PC
> 5949 Sherry Lane, Suite 1150
> Dallas, Texas 75225
> Tel: (214) 692-0009
> Fax: (214) 692-6610

**Getty Realty Corporation**

> Andrew M. Smith
> General Counsel and Corporate Secretary
> Getty Realty Corporation
> 125 Jericho Turnpike, Suite 103
> Jericho, New York 11753
> Tel: (516) 478-5451
> Fax: (516) 478-5490

**Gulf Oil Limited Partnership, The Catamount Corporation, Catamount Management Corporation, Cumberland Farms, Inc., The Global Companies, Global Petroleum Corporation**

> Christopher J. Garvey
> Goodwin Procter LLP
> 599 Lexington Avenue
> New York, NY 10022
> Tel: (212) 459-7413
> Fax: (212) 355-3333

Mark E. Tully
Goodwin Procter LLP
53 State Street
Boston, MA 02109
Tel:  (617) 570-1289
Fax:  (617) 523-1231

**Inland Fuel Terminals Inc.**

Steven M. Greenspan
Day Berry & Howard LLP
City Place I
185 Asylum Street
Hartford, CT 06103-3499
Tel:  (860) 275-0346
Fax:  (860) 275-0343

**Irving Oil Corporation and Irving Oil Limited**

Bruce W. Felmly
McLane, Graf, Raulerson & Middleton
City Hall Plaza
900 Elm Street
Manchester, NH 03105
Tel:  (603) 625-6464
Fax:  (603) 625-5650

**J.C. Baker & Son, Inc.**

John R. McGhee
Kay Casto & Chaney PLLC
1600 Bank One Center
P.O. Box 2031
Charleston, WV
Tel:  (304) 345-8900
Fax:  (304) 345-8909

**Kern Oil & Refining Company**

Brian M. Ledger
Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101-3541
Tel:  (619) 696-6700
Fax:  (619) 696-7124

**Koch Industries, Inc.**

Anton J. Borovina
Borovina & Marullo, PLLC
445 Broad Hollow Road
Melville, NY 11747
Tel: (631) 630-1101
Fax: (631) 465-8935

Richard E. Curry
McGlinchey Stafford, PLLC
One American Place, 9th Floor
Baton Rouge, LA 70825
Tel: (225) 383-9000
Fax: (225) 343-3076

Wayne F. Dennison
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel: (617) 856-8247
Fax: (617) 856-8201

Joseph G. Eaton
Barnes & Thornburg
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: (317) 231-7705
Fax: (317) 231-7433

Joseph C. Kearfott
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 Byrd Street
Richmond, Virginia 23219
Tel: (804) 788-8446
Fax: (804) 788-8218

Lauren E. Rosenblatt
Hunton & Williams LLP
200 Park Avenue, 43rd Floor
New York, NY 10166-0136
Tel: (212) 309-1023
Fax: (212) 465-8935

Stephen H. Roberts
McNeill, Taylor & Gallo, P.A.
180 Locust Street
P.O. Box 815
Dover, NH  03821
Tel:  (603) 749-4723

**Lassus Brothers Oil, Inc.**

Michael L. James
Baker & Daniels
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802
Tel:  (260) 424-1624
Fax:  (260) 460-1700

**Lyondell Chemical Company and Arco Chemical Company**

M. Elaine Beauchesne
Pierce Atwood
Pease International Tradeport
One New Hampshire Avne, Suite 350
Portsmouth, NH 03801
Tel:  (603) 433-6300

Allan J. Hoffman
Larry Shtasel
Michael Roessner
Blank Rome LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Tel:  (215) 569-5505
Fax:  (215) 832-5505

**Marathon Ashland Petroleum LLC, Marathon Oil Company and Marathon Oil Corp.**

Vincent A. Barto
Marathon Ashland Petroleum LLC
539 South Main Street
Findlay, Ohio 45840
Tel:  (419) 421-4203
Fax:  (419) 427-4193

Steven L. Leifer
Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Tel:  (202) 639-7723
Fax:  (202) 585-1040

**Parker Oil Company and Parker Holding Company, Inc.**

Elizabeth S. Skilling
Harman, Claytor, Corrigan, & Wellman
P.O. Box 70280
Richmond, VA 23255
Tel:  (804) 762-8016
Fax:  (804) 727-6085

**Premcor Inc. and Premcor Refining Group Inc.**

Dan H. Ball
Bryan Cave LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Tel:  (314) 259-2200
Fax:  (314) 259-2020

Michael Marks
Tarrant, Marks and Gillies
P.O. Box 1440
Montpelier, VT 05601
Tel:  (802) 223-112
Fax:  (802) 223-6225

Jeffrey Dill
Assistant General Counsel
Premcor, Inc.
1700 E. Putnam Avenue, Suite 400
Old Greenwich, CT  06870
Tel:  203-698-7566
Fax: 203-698-7943

**Shell Oil Company**

Joel Hubscher, Senior Attorney
Scott Delacroix
Shell Oil Company
910 Louisiana
One Shell Plaza 4840
Houston, TX 77002
Tel:  (713) 241-1346

John E. Galvin
Fox Galvin, LLC
One Memorial Drive, 8th Floor
St. Louis, MO  63102
Tel:  (314) 599-7000
Fax: (314) 588-1965

William D. Temko
Munger, Tolles, & Olson  LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Tel:  (213) 683-9266
Fax: (213) 683-5166

**Star Enterprises**

Randle B. Carpenter
McMilllan Constabile LLP
2180 Boston Post Road
Larchmont, NY 10538
E-mail:  rcarpenter@mcmcon.com
Tel:  (914) 834-3500
Fax: (914) 834-0620

**Statoil Marketing & Trading US Inc.**

Vivian M. Quinn
Nixon Peobody LLP
1600 Main Place Tower
Buffalo, New York 14202
Tel:  (716) 853-8134
Fax: (716) 853-8109

**Sunoco, Inc., Sunoco, Inc. (R&M) and Sun Refining & Marketing Company**

Heather Fusco
Beveridge & Diamond, P.C.
477 Madison Avenue, 15th Floor
New York, NY 10022
E-mail:  hfusco@bdlaw.com
Tel:  (212) 702-5411
Fax:  (221) 702-5450

John S. Guttmann
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005
Tel:  (202) 789-6010
Fax:  (202) 789-6190

Robert R. LeGros
Senior Counsel
Sunoco, Inc.
1801 Market Street, 17th Floor
Philadelphia, PA 19103
Tel: (215) 977-3011
Fax: (215) 977-6878

**Tesoro Petroleum Companies, Inc.**

Jeff Haffner
Tesoro Petroleum Companies, Inc.
300 Concord Plaza Drive
San Antonio, Texas 78216-6999
Tel:  (210) 283-2418
Fax:  (210) 283-2833

**Toms Sierra Company and Sierra Energy**

M. Taylor Florence
Bullivant Houser Bailey PC
11335 Gold Express Drive, Suite 105
Gold River, CA 95670
Tel:  (916) 858-2282
Fax:  (916) 852-5777

**Unocal Corporation**

Brendan M. Dixon
Deputy General Counsel
Unocal Corporation
276 S. Valencia Ave.
Brea, CA 92823
Tel: (714) 577-2933
Fax: (714) 577-2980

Lynn W. Wright
Edwards & Angell, LLP
750 Lexington Avenue
New York, NY 10022
Tel:  (212) 308-4411
Fax:  (212) 308-4844

**Valero Energy Corp., Valero Refining & Marketing Co., Valero Marketing & Supply Co., Diamond Shamrock Refining & Marketing Co., Valero-Colorado Refining Co, Valero Refining Co.-Louisiana, Valero Refining-Texas, L.P., and Valero Refining Co.-New Jersey**

Jon D. Anderson
Latham & Watkins LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626-1925
Tel:  (714) 755-8217
Fax:  (714) 755-8290

Coy M. Connelly
Tracy Renfroe
Bracewell & Paterson, L.L.P.
711 Louisiana Street, Suite 2900
Houston, TX  77002
Tel:  (713) 221-1404
Fax:  (713) 221-2123

Frank M. Grenard
Whitfield & Eddy, PLC
317 6th Avenue, 12th Floor
Des Moines, IA 50309
Tel:  (515) 246-5582
Fax:  (515) 246-1474

Kevin McDonald
Managing Counsel
Valero Energy Corporation
One Valero Place
San Antonio, TX  78212
Tel:  (210) 370-2208
Fax: (210) 370-2988

L

1                        UNITED STATES DISTRICT COURT

2                        CENTRAL DISTRICT OF CALIFORNIA

3                                  - - -

4              HONORABLE JAMES V. SELNA, JUDGE PRESIDING

5                                  - - -

6    ORANGE COUNTY WATER DISTRICT,          )
                                            )
7                         Plaintiff,        )
                                            )
8         vs.                               ) SA CV 03-1742-JVS
                                            )
9    UNOCAL CORPORATION, et al.,            )
                                            )
10                        Defendants.       )
     _____)
11   CITY OF RIVERSIDE,                     )
                                            )
12                        Plaintiff,        )
                                            )
13        vs.                               ) SA CV 04-00053-JVS
                                            )
14   ATLANTIC RICHFIELD COMPANY, et al.,    )
                                            )
15                        Defendants.       )
     _____)
16

17                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                        SANTA ANA, CALIFORNIA

19                     Monday, February 23, 2004

20                            1:30 p.m.

21

22

23                            William S. Stephens, CSR 10033
                              Contract Court Reporter
24                            3030 East Mariquita Street
                              Long Beach, California 90803
25                            (562) 477-5114

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE PLAINTIFFS:

 3             THE LAW OFFICES OF SHER & LEFF, LLP
               By:  Victor M. Sher
 4                  Todd E. Robins
               450 Mission Street, Suite 500
 5             San Francisco, California 94105

 6             THE LAW OFFICES OF MILLER, AXLINE & SAWYER
               By:  Michael Axline
 7             1651 Response Road, Second Floor
               Sacramento, California 95815-5253
 8
          FOR DEFENDANT CHEVRON TEXACO & CHEVRON USA:
 9
               MORGAN, LEWIS & BOCKIUS, LLP
10             BY:  David L. Schrader
               300 South Grand Avenue, Suite 2200
11             Los Angeles, California 90071-3132

12        FOR DEFENDANTS CONOCO PHILLIPS and TOSCO CORPORATION:

13             LATHAM & WATKINS, LLP
               BY:  Jon D. Anderson
14             650 Town Center Drive, 20th Floor
               Costa Mesa, California 92626-1925
15
          FOR DEFENDANT ATLANTIC RICHFIELD and BP NORTH AMERICA:
16
               ARNOLD & PORTER, LLP
17             BY:  Matthew T. Heartney
               777 South Figueroa Street, 44th Floor
18             Los Angeles, California 90017-5844

19        FOR DEFENDANTS EXXON MOBIL, MOBIL, and TESORO:

20             BINGHAM McCUTCHEN, LLP
               BY:  Diana Pfeffer Martin
21             355 South Grand Avenue, Suite 4400
               Los Angeles, California 90017-3106
22

23

24

25
```

3

1              SANTA ANA, CALIFORNIA; MONDAY, FEBRUARY 23, 2004

2

3        THE CLERK:   Items 23 and 25, SA CV 03-1742-JVS, Orange

4    County Water District versus Unocal Corporation, et al.; and SA

5    CV 04-53-JVS, City of Riverside versus Atlantic Richfield

6    Company, et al..

7        Counsel, please state your appearances.

8        MR. SHER:   Good afternoon, Your Honor.

9        Vick Cher representing the plaintiffs in both cases.

10       MR. AXLINE:   Good afternoon, Your Honor.

11       Michael Axline also representing plaintiffs.

12       MR. SCHRADER:   Good afternoon, Your Honor.

13       David Schrader.   I represent Chevron Texaco and Chevron USA

14   in both cases.

15       MR. ANDERSON:   Good afternoon.

16       Jon Anderson.   I represent Conoco Phillips and Tosco Corp-

17   oration in both cases.

18       MR. HEARTNEY:   Good afternoon, Your Honor.

19       Matt Heartney.

20       I represent Atlantic Richfield and BP North America in both

21   cases.

22       MS. MARTIN:   Good afternoon.

23       Diana Martin.   I represent Exxon Mobil in both cases and

24   Tesoro in the City of Riverside case.

25       THE COURT:   Before we take up the motion, I have a dis-

1    closure to make.  From 1989 and 1998, I represented Exxon in

2    connection with various litigations relating to the Exxon

3    Valdez.

4        From about '78 to '84-'85, I represented the owners of the

5    Trans-Alaska pipeline.

6        At that time, Exxon owned twenty percent.

7        None of the matters that I dealt with related to the re-

8    fining of gasoline additives or anything that would be subject

9    matter related to this case.

10       I want to make that disclosure, but I don't believe it's a

11   basis for recusal.

12       MR. SHER:  Thank you, Your Honor.

13       I think we will feel an obligation to disclose that to our

14   clients.

15       THE COURT:  Oh, please do.

16       If the subject matter of my representation of Exxon related

17   in any way to this matter, the subject matter area, I would re-

18   cuse myself, notwithstanding the fact that I have been on the

19   bench for more than five years and haven't done anything for

20   Exxon for more than five years; but principally because there is

21   no subject matter relationship, I don't think recusal is re-

22   quired.

23       MR. SHER:  Understood, Your Honor.

24       THE COURT:  I'll be happy to hear you on your motion or your

25   motion, defendants' motion.

1    MR. SCHRADER:  Your Honor, on defendants' motion, we've read

2    the court's tentative and I think the court has clearly reviewed

3    the cases we cited on all sides of this issue, the authorities

4    that we've cited, and we obviously think the court's tentative

5    is correct and would submit on it.

6    MR. SHER:  Your Honor, I would like to introduce my as-

7    sociate, Todd Robins; and one clarification, I hate to disagree

8    with cocounsel, but Mr. Axline only represents the Orange County

9    Water District and his firm is not part of the City of Riverside

10   case.

11       I am however going to address your rulings in both cases.

12       I have to say that we looked forward to a short tenure in

13   your courtroom, but not quite this short, Your Honor, and find

14   ourselves a little bit like a character in a Kafka, a bad Kafka

15   novel, having filed a claim in state court raising solely state

16   law issues involving contamination in local regions here in the

17   state with defendants who manufactured, sold, and distributed

18   the product, manufactured it here in state; and so, we have

19   California claims, California locations, and California defend-

20   ants.

21       And now we find ourselves unable to get a hearing on whether

22   this particular case belongs in any federal court and facing the

23   prospect of going three thousand miles away to a judge who does

24   not yet have our complaint in front of her, and in fact based on

25   a series of bootstrapping arguments from the defendants based on

1  a conclusory assertion that the cases are similar and difficult.

2       There are four brief points that I want to make.

3       I have of course read your tentative and will try not to

4  repeat things you've already addressed and considered.

5       The first one though I want to make for the record and that

6  is that we believe that the case law as every published opinion

7  in this circuit has said is that Your Honor should confront and

8  deal with the merits of the jurisdictional motion before ad-

9  dressing the stay motion.

10      And so, again, I won't belabor that, but I wanted the record

11  to be clear that that is our position on it.

12      And then the three other points, which are more substantive

13  and which I would like to spend a little bit more time on with

14  Your Honor's indulgence are first that in fact the issues are

15  neither difficult nor similar.

16      And in part they're easy because of the differences between

17  our case and the cases in New York.

18      And second, that the court has an insufficient record before

19  it on which to conclude whether the cases are similar or not and

20  therefore whether or not this is as difficult as it appears that

21  the New York cases may be.

22      And finally that there is a substantial prejudice from the

23  stay, both to our clients and to the courts.

24      Let me turn to the issue of easy disposition.

25      There was, as we all know, there was a lengthy discourse on

1    bankruptcy in front of Judge Schindlen (phonetic spelling) in

2    New York.  I'm not a bankruptcy lawyer and I won't pretend to

3    have fully followed or understood all of the rat warrens that

4    those lawyers and that judge went down, but our case is easy on

5    bankruptcy for three reasons.

6        There is no question that any bankruptcy related to this, to

7    these issues and these defendants more particularly, were re-

8    solved.  The estate was discharged and confirmed many years ago.

9        And therefore, as a matter of law in this circuit, the ninth

10   circuit has said that the action cannot affect or relate to the

11   proceedings of the estate because that estate is over.

12       As the court, the ninth circuit said in In Re Feitz (pho-

13   netic spelling), one of the cases we cited in our papers, re-

14   lated to depends on, quote, whether the outcome of the pro-

15   ceedings could conceivably have any affect on the estate being

16   administered, unquotes.

17       There is no estate being administered.

18       So, there can't be any bankruptcy jurisdiction.

19       There is a second simple reason and this is a significant

20   difference between our case and anything we know about the cases

21   in New York.  There is an exclusion in Section 1452 A for public

22   agencies.  That is, there is not removal jurisdiction for bank-

23   ruptcy purposes under Section 1452 A for civil actions brought

24   by governmental units pursuant to their police or regulatory

25   powers.

1        There is just not a bankruptcy jurisdiction in those circum-

2    stances.

3        Both of these cases involve those kinds of issues not raised

4    in New York, not part of the hearing in front of Judge Schind-

5    len, a significant difference then between those proceedings and

6    this one.

7        And then the third and perhaps most significant reason that

8    this is an easy case in our view, even on the bankruptcy issues,

9    is that there is no question that if the issue really is whether

10   there is a defense by certain defendants to some portion of our

11   claims based on a discharge of the earlier bankruptcy proceed-

12   ings, then that defense and all issues related to it can clearly

13   be addressed equally well by a state court.

14       In fact, Section 1452 B authorizes remands under Your

15   Honor's equitable discretion and the case law has listed six

16   factors to determine whether or not a remand is appropriate, all

17   of which favor a remand here.

18       First is that the effect of these lawsuits on these old

19   Texaco bankruptcies and in fact on the administration of them,

20   even if you assume that there is an impact on the administration

21   of the bankruptcy, the effects of those actions on the admin-

22   istration of the bankruptcy is at most extraordinarily remote.

23       It's a very small portion.  Granting the defendants every

24   piece of presumption on this, it's a very small piece of what

25   these cases are about.

1       Second, the state -- these case are based entirely on state

2   law causes of action.

3       Third, as the defendants are sure to argue in motions to

4   come in the case, the cases raise difficult questions of state

5   tort law, as well as complex site-specific factual issues and

6   that militates in favor of a remand to state court.

7       Fourth, as California law predominates --

8       In fact, in our view it's the only set of issues in the

9   case.

10      -- these cases are brought by subdivisions of the state and

11  involve environmental and public issues of state-wide import-

12  ance and so principles of commity (sic), the fourth factor,

13  clearly favor remand.

14      Fifth, as I've mentioned, the remoteness of these cases to

15  the Texaco bankruptcy is extreme.

16      And sixth, we have sought a jury trial and that's one of the

17  factors that 1452 B contemplates as well.

18      So, for these three reasons; first of all, the demise of the

19  administration of the estate years and years ago; second, the

20  public entity regulatory status of the plaintiffs; and third,

21  the factors in favor of equitable remand from the bankruptcy

22  issues.

23      We don't see the bankruptcy issues as complicated at all and

24  I anticipated myself a little bit by pointing out some of the

25  ways in which things were different from the issues which may

1   have been discussed in front of Judge Schindlen.

2       Turning to the preemption issues, these aren't complicated

3   either.

4       THE COURT:   But they are identical to the issues in the New

5   York; correct?

6       MR. SHER:   No, Your Honor.   They are different and they are

7   much simpler here for the simple reason that the ninth circuit

8   in Oxygenated Fuels Association v. Davis definitively rejected

9   the federal preemption argument on which Judge Schindlen was

10  concerned.

11      In New York there may be remaining factual issues.

12      The California --

13      Not California.

14      The ninth circuit held expressly that there is no preemption

15  as a matter of law because promoting smooth operation of the

16  gasoline supply system is not one of the goals of the Clean Air

17  Act.

18      The two district courts in New York, Judge Schindlen in her

19  earlier decision in In Re MTBE litigation, and Judge Mordoo

20  (phonetic spelling) in both his rulings on summary judgment and

21  later in his judgment following trial, held that the Clean Air

22  Act did contemplate a relationship between gasoline supply and

23  the Clean Air Act goals.

24      And so, made a, allowed a matter of proof on those issues;

25  but the ninth circuit has closed that door as a matter of law.

1    So, we have here on the one hand a difference in inter-

2    pretation.  In fact, Judge Mordoo expressly declined to follow

3    the ninth circuit on this issue when it was raised in front of

4    him in the district court just before the trial and he said, he

5    said that he was going to allow a trial on it.

6    And it was that factual issue that prompted a lot of Judge

7    Schindlen's angst about how to deal with the remand motion; but

8    the ninth circuit, this circuit, the law that governs Your Honor

9    and that governs these cases, is clear on it.

10    There's no room for this defense.  This has implications --

11    Actually, what the ninth circuit said specifically --

12    This is in three thirty-one F third at page six seventy-

13    three from their opinion at the end of last year.  The Clean Air

14    Act's provisions regarding oxygenated fuel additives preserves

15    state authority to adopt and enforce measures to prevent water

16    pollution even if those measures may to some degree disrupt the

17    gasoline market and cause higher prices, unquote.

18    And they go on elsewhere in the opinion, the judges go on to

19    discuss how, while Congress may have hoped that there would be a

20    smooth gasoline supply and no impact on prices, you can't say

21    that the Clean Air Act had that as a major goal.

22    This is coupled as well with what the ninth circuit also

23    emphasized in this case, that is the OFA v. Davis case, and the

24    earlier decision in Exxon Mobil versus EPA, which said that the

25    Clean Air Act has an express savings clause that preserves all

1   rights and remedies with respect to other than what is expressly

2   preempted.

3       And because there is no express preemption of these issues

4   and no implied preemption, the right and ability of a state to

5   take environmental regulations such as anning entirely MTBE,

6   which was the issue in OFA, or promotion of state tort claims,

7   as in our case, is not affected by federal preemption.

8       So, there is not a complicated federal preemption argument.

9       I mean, if, if we step back here for a second, what Your

10  Honor has with respect to what's in New York is the copy of a

11  transcript on an oral argument.

12      That's it.

13      So, you don't have any idea other than the defendants' con-

14  clusory representation about what is in those complaints and any

15  analysis of remand and jurisdiction has to start with the com-

16  plaints.

17      You have our complaint.  You have our motion for remand,

18  although it's now scheduled for March 29th.  You have no oppo-

19  sition on the merits of the remand motion and the sole response

20  on jurisdiction that the defendants have offered so far is to

21  point to the oral argument involving other complaints which

22  aren't before Your Honor, other parties before Your Honor, argu-

23  ments and positions in which we had no role and no say and no

24  participation.

25      We did submit a letter to the judge, to Judge Schindlen,

1    addressing the circumstances of those cases; but frankly, we

2    don't -- there was no mechanism set up for us to participate.

3       So, we weren't a party to the stipulation that set up Judge

4    Schindlen's procedures.  We objected to them, tried to throw in

5    some perspectives on it, but it related to the cases that were

6    in front of her, not to our case.

7       She doesn't have our complaint in front of her.

8       The other --

9       THE COURT:  Not literally, but she has written to all judges

10   who have these cases, including me, asking that the remand, the

11   proceedings be stayed to allow the workings of the judicial

12   panel, Multidistrict Judicial Panel, to take effect.

13      MR. SHER:  And with all respect to Judge Schindlen, that's

14   another Kafkaesk aspect or our situation.  She sent that letter

15   based on stipulations reached by counsel in front of her at a

16   December 23rd, December 19th, 2003, hearing in New York and that

17   transcript has been submitted to Your Honor as part of record on

18   this motion.

19      We weren't there.

20      We weren't notified of it.

21      We didn't agree to it.

22      The plaintiffs' attorneys who were there said:  Your Honor,

23   we have a large number of MTBE cases involving water suppliers

24   in various places, not including the ones in California, and we

25   stipulate to a procedure by which you will decide the remand

1    motion on the cases that are actually in front of you and move

2    onward that way.

3        We weren't part of that.  And instead, Your Honor received a

4    letter which we didn't get a copy of --

5        I still haven't seen it.

6        It wasn't served on the parties or their counsel.

7        -- asking you to do that.

8        Well, the decision about whether or not a case should be in

9    front of Judge Schindlen is obviously something for the Joint

10   Panel on Multidistrict Litigation.

11       Judge Schindlen doesn't have the authority to require that

12   and what we're suggesting is that there are good reasons why you

13   ought to do a thorough review of the jurisdictional issues, as

14   we are asking to you to do in our case.

15       Now, the JPML proceedings are going forward if and when a

16   conditional transfer order in these cases is ever offered, is

17   ever issued.

18       It hasn't been yet.

19       We will oppose it on the basis that it's not appropriate

20   because of unique facets of the public entities and the factual

21   location the, the location and convenience of the witnesses and

22   all those things.

23       We haven't had a chance yet to join in that argument.

24       THE COURT:  The cases aren't tried in front of the Multi-

25   district judge.  Only the pretrial is done there.  Then they

1   come back to the original judge.

2   MR. SHER:  But jurisdiction, Your Honor, is a threshhold

3   issue raised appropriately at any time.  In our view, that's an

4   issue here under ninth circuit law that is simple and clear that

5   ought to be decided before our clients have to deal with some-

6   thing three thousand miles away and a judge who is in a dif-

7   ferent circuit.

8   And I think that our circumstances here, particularly tied

9   with the very limited factual record you have on which to reach

10   a conclusion that the cases are similar in a material respect;

11   and I would like a chance to point out some of the differences

12   to you; is a good example of why the courts that have decided,

13   confronted the issue have either decided that they lack juris-

14   diction to make a transfer without considering jurisdiction or

15   have decided as a matter of judicial efficiency that they

16   should.

17   See, the issues are either similar to the cases in front of

18   Judge Schindlen, in which case we have already been prejudiced

19   by not having had an opportunity to participate in those pro-

20   ceedings; or they're different as we say, in which case, if we

21   are transferred we will have to raise them anew and there is no

22   gain in judicial efficiency.

23   In fact what we think the situation is is the latter.

24   With respect to federal agency, every published opinion --

25   This again is one of the points which Your Honor pointed

1    towards in your tentative as a complicated issue based on the

2    oral argument in front of Judge Schindlen and yet the truth is

3    that every published opinion in the country has rejected the

4    notion that participants even in a closely regulated industry

5    can become federal agents.

6        So, you don't even get to the issue of whether there's a

7    substantial or a colorable federal defense; which under the

8    ninth circuit's decision in Oxygenated Fuels Association v.

9    Davis there is not.  You don't even have to reach that because

10   they have to show as a matter of threshhold that they are

11   federal agents.

12       And they're not.

13       Again, it's not complicated.

14       Let me just highlight very briefly the major differences.

15       The first one is the one that I've already spent some time

16   talking about, which is the difference between the ninth cir-

17   cuit's ruling in OFA v. Davis and the treatment by Judge Schind-

18   len and Judge Mordoo in the Pawtucket case about whether or not

19   there are factual issues associated with a state's ban that

20   triggers federal preemption issues.

21       The ninth circuit said no, the ban in California is final

22   and effective.  They have said in past decisions that there

23   could be, although there is now a judgment on the merits, which

24   is past the appeal time in the Pawtucket case, that even if you

25   have that factual showing, the ban stands.

1      Second, and this is, this sprung out at me from the review

2  of the transcript.  Judge Schindlen and the lawyers before her

3  in the most recent hearing, the one on the 13th of this month,

4  addressed at length in the transcript; basically between pages

5  twenty and thirty; two allegations in the plaintiffs' complaints

6  in those cases, both of which are not part of this case.

7      The first one is the allegation by the defendants there that

8  the complaints in New York implicate regulation of air emis-

9  sions and therefore fall more directly within the scope of the

10  Clean Air Act's preemptive provisions.

11      And we have no such claim.

12      Second, the plaintiffs in that case claimed that the reform-

13  ulated gasoline program, which is one of the reasons that some

14  refiners use MTBE in their gasoline, lack any benefits, which

15  had significance for the plaintiffs' risk utility claim in those

16  cases.

17      Two points I want to make about that.

18      First, we don't make that allegation.  We don't make that

19  claim.

20      Second, in California, you need not demonstrate a risk util-

21  ity to prove a design defect.  Under the California Supreme

22  Court's rule in Barker V. Lowell, you have an alternative test

23  known as the consumer expectations test.

24      That is not an aspect of New York law.

25      So, grant the defendants --

1     We think it's wrong, but grant the defendants an argument

2     that says by raising a risk utility for purposes of design de-

3     fect, then you implicate a risk utility benefit that may

4     conflict with a federal program.

5     We think it's wrong, but I'm trying to make things simple

6     here.

7     In California, it doesn't matter because there is an al-

8     ternative test and the case law is clear in this circuit that if

9     there is an alternative theory that does not require, that does

10    not require the plaintiff to involve federal law, there is no

11    federal jurisdiction and remand is required.

12    So, what you, what you end up with --

13    I'm sorry.

14    I wanted to elaborate on my point that you lack sufficient

15    evidence on the record to make the determinations that support

16    the stay here.

17    And, and my point here is very simple.

18    The starting point for analyzing remand motions has to be

19    the complaints.  You have our complaint.  You don't have the

20    complaints from New York.  You have our motion for remand.  No

21    response or engagement on the merits on that from the defend-

22    ants.

23    All you have then from them is pointing to an oral argument

24    transcript.

25    You don't even have the briefs from that.

1    And on this basis, given that there are significant differ-
2    ences that we can glean from the transcript from New York that
3    are facially different from both the law in the ninth circuit
4    and the factual allegations of our complaint, there is just not
5    a basis for concluding that the issues are identical or even
6    similar, nor that they're difficult.
7        I want to make one final point about prejudice.
8        Your Honor acknowledged in your tentative that putting a
9    plaintiff into a multidistrict litigation at a far distance that
10   may involve hundreds of lawyers and a lot of issues that aren't
11   ours, relegating us --
12       I think the quote from the case --
13       I can't recall if Your Honor quoted it.
14       -- to the hundredth chair in a complex litigation is a bur-
15   den on a plaintiff.
16       I think that burden is magnified significantly when you,
17   when one can point to substantive differences in the governing
18   law between Your Honor on this issue and what the district
19   courts in New York may be dealing with.
20       And then on top of that, you have all of the inconvenience
21   of the parties and the witnesses and the distance and the delay;
22   but there is one other factor which several cases have mentioned
23   that I wanted to particularly underscore here.
24       That is that when, as here, it's apparent from the nature of
25   the plaintiffs and the nature of the plaintiffs' allegations, as

1   well as from the governing law that governs us in California,

2   that we will be raising issues different from those raised by

3   other plaintiffs in other cases in the New York MDL, then some-

4   body has to address those issues.

5       And so there is not a judicial efficiency to be gained from

6   a transfer because we will, if Your Honor stays the case and it

7   goes to Judge Schindlen, we will be making those arguments there

8   and she'll have to deal with them.

9       And so there is not an efficiency to be gained for the ju-

10  dicial system from such a transfer.

11      I've actually spoken longer than I intended to, Your Honor.

12      Thank you for your indulgence and I'll sit down now.

13      THE COURT:   Thank you.

14      MR. SCHRADER:   Just briefly, Your Honor.

15      The court has before it more than just a transcript from

16  Judge Schindlen.  We also have our removal papers which have

17  been filed with this court.  When you look at the two, it's

18  obvious we raise the same issues.

19      We've removed the cases on the same grounds as the other

20  cases that are presently in the MDL were removed.

21      That's also evidenced by counsel's letter to Judge Schind-

22  len, the nineteen-page, singlespaced letter which goes through

23  all the same arguments as were raised and argued before Judge

24  Schindlen.

25      Now, the argument, the start of the argument was that these

1    issues are neither difficult nor similar.

2        Mr. Heartney would be better prepared to address the diffi-

3    culty of the issues.  He's the person who has been dealing with

4    the remand aspects of this case.

5        But it is apparent to me not only from the argument before

6    Judge Schindlen and the briefs there, but the arguments just

7    heard this morning or this afternoon that these are difficult

8    issues to wrestle with.

9        And the claim, the essential claim in this case is the same

10   as all the other cases that were filed around the same time.

11   There were approximately fifty of them filed across the United

12   States by three law firms, essentially; one of them present

13   here.

14       That claim is that the presence of MTBE in gasoline renders

15   it a defective product.

16       Our position is that that claim is preempted by federal law

17   and that nothing in any ninth circuit decision has any effect on

18   that argument.

19       We've also removed on the basis of the Texaco bankruptcy.

20       I represent Chevron Texaco, its successor and we've removed

21   on that basis.  That is purely a federal question.  There is no

22   state law question involved in that issue.

23       It's a common issue to all of these cases.

24       Now, counsel argued that this case is different because we

25   are governed by the court's decision, the ninth circuit's de-

1    cision in the OFA v. Davis case.

2        It's our position that that does not apply to the basis of

3    removal here for reasons I could go into, but what I would

4    rather do is just invite the court's attention to the argument

5    before Judge Schindlen that we have submitted the transcript of

6    that hearing, which is Exhibit Four to my declaration in support

7    of the reply; and for four or five pages in that transcript they

8    argue and discuss that very ninth circuit decision and whether

9    it governs the remand issues before that court.

10       And the issue there wasn't whether it governs or doesn't

11   govern because it's a ninth circuit decision, but whether sub-

12   stantively that prohibits us from removing this case to federal

13   court.

14       And that discussion is on pages seventy-nine through eighty-

15   four of the transcript.

16       The court has a sufficient record here to determine the re-

17   moval issues in all of these cases are similar.  They should

18   best be addressed by one judge.  There are cases, published

19   opinions on both sides of that issue.

20       Some say it's appropriate to address the stay first.

21       Others say to address the remand first.

22       But Your Honor picked the cases I believe in the tentative

23   that are in the middle, which says if the remand issues are com-

24   plex and similar, then it's appropriate to stay and to allow

25   those to be decided by one judge.

1       That's the situation here and that's why we are asking this

2   court to stay this matter for purposes, if nothing else, of

3   judicial economy and consistency of rulings.

4       Again, if Your Honor has any questions about the complexity

5   of the remand, Mr. Heartney can address those.

6       THE COURT:  I think you covered it.

7       Thank you.

8       The tentative's going to be the order of the court.

9       There may be nuances of differences between the cases in

10  California and the cases in New York.  I think a number of core

11  decisions are going to have to be made.

12      They are complex in my mind and it seems to me that the

13  judicial system is better off to, right or wrong, have all the

14  cases analyzed in a similar fashion so that consistent results

15  will obtain.

16      If those decisions are correct, they'll be affirmed.

17      If they're not, they'll be reviewed and in a single context.

18      So, for all those reasons, the tentative is going to be the

19  order of the court.

20      MR. SHER:  Thank you, Your Honor.

21      ALL:  Thank you.

22      THE COURT:  Thank you.

23          (proceedings conclude)

24

25

1

2

3

4

5

6

7

8

9        I CERTIFY THAT THE FOREGOING IS A TRUE AND

10       CORRECT TRANSCRIPT FROM THE STENOGRAPHIC

11       RECORD OF PROCEEDINGS IN THE FOREGOING MATTER.

12

13

14

15

16   _____   DATED:   20 March 2004

17   WILLIAM S. STEPHENS, CSR 10033

18

19

20

21

22

23

24

25

M

Victor M. Sher, SBN 96197
Todd E. Robins, SBN 191853
Lynda M. Collins, SBN 229029
SHER & LEFF, LLP
450 Mission Street, 5th floor
San Francisco, CA 94105
Telephone: (415) 348-8300
Facsimile: (415) 348-8333

Duane C. Miller, SBN 57812
Michael D. Axline, SBN 229840
A. Curtis Sawyer, Jr., SBN 101324
MILLER, AXLINE & SAWYER
1651 Response Road, Second Floor
Sacramento, CA 95815
Telephone: (916) 927-8600
Facsimile: (916) 927-9267

Attorneys for Plaintiff: ORANGE COUNTY WATER DISTRICT

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| ORANGE COUNTY WATER DISTRICT,<br><br>    Plaintiff,<br><br>vs.<br><br>UNOCAL CORPORATION, et al.<br><br>    Defendants. | CASE No. SACV 03-1742 JVS (ANx)<br><br>**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO STAY PROCEEDINGS; DECLARATION OF VICTOR M. SHER**<br><br>Hon. James V. Selna (District Judge)<br><br>Hearing Date: February 23, 2004<br>Time: 1:30 p.m.<br>Location: Courtroom 10C<br>          411 West Fourth Street<br>          #1053<br>          Santa Ana, CA<br>          92701-4516 |

ε 2/16-04

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................1

II.   PROCEDURAL BACKGROUND...........................................3

III.  LEGAL ARGUMENT.........................................................5

    A.  THIS COURT SHOULD CONSIDER JURISDICTION FIRST, BEFORE DECIDING ON ANY POTENTIAL STAY PENDING POSSIBLE MDL TRANSFER.......................................................... 5

    B.   THIS COURT CAN AND SHOULD DECLINE JUDGE SCHEINDLIN'S REQUEST TO ENTER A STAY, AS THE SCHEINDLIN ORDER DOES NOT BIND THIS COURT, AND WAS NOT EVEN INTENDED TO AFFECT THIS CASE.......................................................... 11

    C. DEFENDANTS HAVE NOT DEMONSTRATED THE REQUISITE HARDSHIP TO JUSTIFY A STAY, WHILE PLAINTIFF WOULD BE PREJUDICED IF THE STAY IS GRANTED..........................................................15

IV.   CONCLUSION...............................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,*
    54 F. Supp. 2d 1042 (D. Kan. 1999)……………………….....……2,6

*Aikins v. Microsoft,*
    2000 WL 310391 (E.D. La. 2000)…..………….….…………...……..10

*American Seafood, Inc. v. Magnolia Processing, Inc.,*
    Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992)...…… …..9

*Arthur Magna, Inc. v. Del-Val Fin. Corp.,*
    No. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991)……………………....9

*BancOhio Corp. v. Fox,*
    516 F.2d 29 (6th Cir. 1975)…..………………………....…….……..6

*Bd. of Trs. v. Worldcom, Inc.,*
    244 F. Supp. 2d 900 (N.D. Ill. 2002)………………………...………...7

*Correa-Rodriguez v. Bridgestone/Firestone Inc.,*
    No. 00-3805-CIV-GRAHAM (S.D. Fla. Oct. 19, 2000)…………………...8

*D's Pet Supplies v. Microsoft Corp.,*
    Nos. 99-76056, 99-76086, 99-76202, 00-70481, 2000 U.S. Dist.
    LEXIS 16482 (E.D. Mich. Feb. 7, 2000)……………………….……..8

*Dix v. ICT Group, Inc.,*
    No. CS-03-0315-LRS, 2003 WL 22852135t *8 (E.D. Wash. Oct. 20,
    2003)………………………………………………………… 6

*Dumont v. Charles Schwab & Co.,*
    Nos. 99-2840, 99-2841, 2000 U.S. Dist. LEXIS 619, at *8 (E.D. La.
    Jan. 19, 2000)………………………………………...………9

*Ex parte McCardle,*
    74 U.S. 506 (1868)……………………………………….....6

PLAINTIFF'S OPPOSITION TO STAY MOTION; SHER DECL -- Case No. SACV 03-1742 JVS (ANx)

*ExxonMobil Corp. v. U.S. E.P.A.*,
  217 F.3d 1246 (9th Cir. 2000)..........................................7, 13

*Falgoust v. Microsoft*,
  2000 WL 462919, at *2 (E.D. La. 2000).............................10

*Farkas v. Bridgestone/Firestone, Inc.*,
  113 F. Supp. 2d 1107 (W.D. Ky. 2000)...............................5

*Favaloro v. S/S Golden Gate*,
  687 F. Supp. 475 (N.D. Cal. 1987)...............................2, 15

*Filtrol Corp. v. Kelleher*,
  467 F.2d 242 (9th Cir. 1972)...........................................15

*General Electric Company v. Byrne*,
  611 F.2d 670 (7th Cir. 1979)...........................................11

*Good v. Armstrong World Indus.*,
  914 F. Supp. 1125 (E.D. Pa. 1996).....................................7

*Good v. Prudential Insurance Co. of America*,
  5 F. Supp. 2d 804 (N.D. Cal 1998)......................................8

*Havens Protected "C" Clamps, Inc. v. Pilkington PLC*,
  No. 00-2035-JWL, 2000 WL 382027, at *2 (D. Kan. March 28, 2000)..........6

*In re Air Crash Disaster Near Upperville Virginia on December 1, 1974*,
  430 F. Supp. 1295 (S.D. Ind. 1977)...................................14

*In re A. H. Robins Co. Inc.*,
  505 F. Supp. 221 (JPML 1981).........................................15

*In re Bridgestone/Firestone Inc.*,
  2000 WL 33416573 (JPML Oct. 24, 2000)................................9

*In re Consolidated Fen-Phen Cases*,
  2003 WL 22682440, *3 (E.D.N.Y. Nov. 12, 2003)......................10

*In re Consolidated Welfare Fund "Erisa" Litigation*,
  1992 WL 212348 (S.D.N.Y. Aug. 21, 1992)..............................9

1  *In re Enron,*

2        296 B.R. 505 (C.D. Cal. 2003)......................................................8

3  *In re Federal Election Campaign Act Litigation,*

4        511 F. Supp. 821 (JPML 1979) ....................................................9

5  *In re Franklin National Bank Securities Litigation,*

6        393 F. Supp. 1093 (JPML 1975) .................................................9

7  *In re: MTBE,*

8        175 F. Supp. 2d 593 (S.D.N.Y. 2001)...................................3, 14

9  *In Re: MTBE,*

10        209 F.R.D. 323 (S.D.N.Y. 2002)...............................................3

11  *In re New York City Mun. Sec. Litig.,*

12        572 F.2d 49 (2d Cir. 1978)........................................................9

13  *In re Professional Hockey Antitrust Litigation,*

14        369 F. Supp. 117 (JPML 1974)...................................................9

15  *In re Wireless Telephone Federal Cost Recovery Fees Litigation,*

16        2003 WL 22720008 (JPML Nov. 13, 2003)...............................9

17  *Ivy v. Diamond Shamrock,*

18        901 F.2d 7 (2d Cir. 1990)......................................................9,10

19  *Johnson v. AMR Corporation,*

20        1996 WL 164415, at *3-4 (N.D. Ill. 1996)..............................10

21  *Karofsky v. Abbott Labs.,*

22        921 F. Supp. 18 (D. Me. 1996)..................................................6

23  *Landis v. North American Co.,*

24        299 U.S. 248 (1936).................................................................15

25  *Little v. Purdue Pharma, LP,*

26        227 F. Supp. 2d 838, (S.D. Ohio 2002)......................................7

27  *Lloyd v. Cabell Huntington Hosp., Inc.,*

28        58 F. Supp. 2d 694 (S.D. W. Va. 1999)......................................5

PLAINTIFF'S OPPOSITION TO STAY MOTION; SHER DECL -- Case No. SACV 03-1742 JVS (ANx)

*Medical Society of the State of New York v. Conn. General Corp.,*
    187 F. Supp. 2d 89 (S.D.N.Y. 2001)..................................................10

*Meyers v. Bayer AG,*
    143 F. Supp. 2d 1044 (E.D. Wis. 2001)..................................*passim*

*Namovicz v. Cooper Tire & Rubber Co.,*
    225 F. Supp. 2d 582 (D. Md. 2001).......................................9

*Newton v. Thomason*
    22 F.3d 1455 (9th Cir. 1994)....................................... 2,11

*Oxygenated Fuels Ass'n v. Davis,*
    331 F.3d 665 (9th Cir. 2003).......................................*passim*

*Oxygenated Fuels Assoc. v. Davis,*
    163 F. Supp. 2d 1182 (E.D. Cal 2001)..........................*passim*

*Portnoy v. Zenith Labs.,*
    No. 86-3512, 1987 U.S. Dist. LEXIS 16134 (D.D.C. Apr. 21, 1987)...........9

*Rivers v. Walt Disney Co.,*
    980 F. Supp. 1360, 1362 (C.D. Cal. 1997)..............................9

*Siewart-Sitzmore v. Bridgestone/Firestone, Inc.,*
    No. 00-1289 (C.D. Ill. Sept. 14, 2000)................. ..........................8

*Smith v. Mail Boxes, Etc.,*
    191 F. Supp. 2d 1155 (E.D. Cal. 2002).........................*passim*

*South Tahoe Public Utility District v. Atlantic Richfield Co.,*
    Case No. 999128 (S.F. Super. Ct. Apr. 15, 2002) .......................14

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998)..............................................1, 5

*Stern v. Mutual Life Insurance Co.,*
    968 F. Supp. 637 (N.D. Ala. 1997)...................................5

*Tench v. Jackson National Life Insurance Co.,*
    1999 WL 1044923, at *2 (N. D. Ill. 1999)............................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tortola Restaurants, L.P. v. Kimberly-Clark Corp.,*
    987 F. Supp. 1186 (N.D. Cal 1997)………. …………………..…….………6

*U.S. v. Hunter,*
    70 F.Supp.2d 1100 (C.D. Cal. 1999)…………………………….…....11

*Villarreal v. Chrysler Corp.,* No. C-95-4414 FMS,
    1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996)  ………….…..……….1, 6

*Weinke v. Microsoft*
    84, F. Supp. 2d 989 (E.D.Wis. 2000)………………………..…………….10


**Statutes**

28 U.S.C. § 1452(b)……………………………………..……8

42 U.S.C. § 7401……………………………………………..…13


**Other Authorities**

Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag-*
    *Along Orders Prior to a Determination of Remand: Procedural and*
    *Substantive Problem or Effective Judicial Public Policy?,*
    23 Memphis St. U.L.Rev. 841, 843 (1993)………………………..……….17

Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel*
    *on Multidistrict Litigation,*
    175 F.R.D. 589, 590 (1998) …………………………..……..……....15

JPML Rule of Procedure 1.5……………………..………………………16

JPML Rule of Procedure 7.4 ………………………………..………….12

PLAINTIFF'S OPPOSITION TO STAY MOTION; SHER DECL -- Case No. SACV 03-1742 JVS (ANx)

# I.   **INTRODUCTION**

The Court should deny Defendants'[1] Motion to Stay Proceedings Pending Ruling on Transfer and Consolidation by the Judicial Panel on Multidistrict Litigation ("Stay Motion").  Instead, the Court should immediately consider (and grant) Plaintiff's pending motion for remand ("Remand Motion") and issue an order remanding the case to the state court in which it was filed.

Defendants wrongfully removed this purely state-law action to federal court. Rather than have the Court address the threshold issue of whether it has jurisdiction to hear any aspect of this case, they now seek to delay indefinitely consideration of the fundamental jurisdictional issues raised in Plaintiff's Remand Motion pending some possible future action by the Judicial Panel on Multidistrict Litigation ("JPML") – a process that, if it occurs at all, may well take the better part of this year, and will, in any event, result in a denial of the request to include this case in any multidistrict litigation.

This Court should deny Defendants' Stay Motion for the following reasons:

- _First_, jurisdictional issues raised in a remand motion should be resolved _prior_ to consideration of a stay pending MDL transfer, particularly where, as here, the jurisdictional bases for removal are frivolous.  To rule otherwise would violate the long-standing "requirement that jurisdiction be established as a _threshold_ matter," _Steel Co. v. Citizens for a Better Environment_, 523 U.S. 83, 94 (1998) (jurisdiction-first rule "is inflexible and without exception").  As district courts in this Circuit have held, "jurisdiction is a preliminary issue that should be resolved at the outset," despite the possibility of an MDL transfer.  _See, e.g., Smith v. Mail Boxes, Etc._, 191

---

[1] The defendants who signed the Stay Motion – Chevron U.S.A., Inc.; ChevronTexaco Corporation; Atlantic Richfield Company; Shell Oil Company; and ExxonMobil Corporation – are collectively referred to herein as "Defendants."

F. Supp. 2d 1155, 1157 (E.D. Cal. 2002); *Villarreal v. Chrysler Corp.*, No. C-95-4414 FMS, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996) ("judicial economy will best be served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum"). The overwhelming weight of authority on this point agrees. *See, e.g. Aetna U.S. Healthcare, Inc. v. Hoescht Aktiengesellschaft,* 54 F. Supp. 2d 1042, 1048 (D. Kan. 1999) ("[i]f federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. . . . Judicial economy dictates a present ruling on the remand issue").

- *Second*, the December 23, 2003 order entered by the Hon. Shira A. Scheindlin in several unrelated cases pending in the U.S. District Court for the Southern District of New York (the "Scheindlin Order") does not support Defendants' Stay Motion. The Scheindlin Order has no binding effect on this Court, *see, e.g., Newton v. Thomason* 22 F.3d 1455, 1460 (9th Cir. 1994) (a federal court is not bound by federal court decisions outside its own circuit), and was never even intended to affect cases (like this one) involving parties not represented by counsel present at a December 19, 2003 hearing in New York that resulted in the Order. In fact, Plaintiff had no opportunity to participate in the New York hearing, was not a party to the stipulations on which the Scheindlin Order is expressly based, has not agreed to any transfer of this action to New York or a stay of this action pending any such transfer, and has strenuously objected to any such stay or prospective transfer.

- *Third*, Defendants have failed to demonstrate a clear case of hardship to justify the granting of a stay, while a stay would prejudice Plaintiff's and the public's interest in a speedy resolution of this action alleging significant groundwater pollution. *Favaloro v. S/S Golden Gate*, 687 F. Supp. 475, 481 (N.D. Cal. 1987) ("[t]he suppliant for a stay must make out a clear case of

2

hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else"); *Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001) ("[r]emoving a case to federal court has long been known to impose a burden upon plaintiffs . . . [by] requir[ing] the plaintiff to present its arguments for remand in a foreign forum").

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this action on May 6, 2003 in Orange Country Superior Court, against 18 oil and chemical industry defendants alleging purely state-law causes of action, including strict products liability, public nuisance, trespass, and negligence, as well as claims for cleanup costs under state statutes such as the Orange County Water District Act, Cal. Water Code Appendix, § 40-1 *et seq.* (the "OCWD Act").[2]

On or about December 15, 2003, certain defendants filed a Notice of Removal, removing this action to this Court. In connection with their Notice of Removal, certain defendants apparently also filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358, *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* a currently inactive MDL proceeding pending before Judge Scheindlin in the Southern District of New York, although Plaintiff has never received copies of any such notice. *See* Declaration of Victor M. Sher, ¶ 2. MDL No. 1358 involved several consolidated "actions brought on behalf of *private* well-owners seeking relief from the contamination or threatened contamination of their wells" by MTBE. *In re: MTBE,* 175 F. Supp. 2d 593, 598 (S.D.N.Y. 2001) (emphasis added). The court denied class certification in the matter (*see In Re: MTBE,* 209 F.R.D. 323 (S.D.N.Y. 2002)) and all the cases were resolved.

---

[2] The OCWD Act expressly grants Plaintiff authority to commence and maintain any action to prevent contamination of groundwater resources within its jurisdiction, and to recover the costs of cleaning up such contamination. OCWD Act §§ 2, 8(b), 9(d).

3

1   Defendants, however, contend that the proceeding is technically still pending.

2   Defendants' Memorandum of Points and Authorities/ Declaration of David Schrader

3   in Support of Stay Motion ("Ds' MPA") at 1, n.1.

4        On December 19, 2003, Judge Scheindlin held a hearing in connection with

5   several recently-filed New York MTBE cases that were removed to federal court and

6   assigned to her courtroom (the "New York Hearing"). *See* Transcript of New York

7   Hearing (attached as Exhibit 2 to Ds' MPA). At that Hearing, the parties present

8   before Judge Scheindlin (who did *not* include Plaintiff) stipulated to a transfer of their

9   cases to MDL 1358. *Id.* at 28-33. In addition, counsel for those parties further

10  stipulated to support transfer of other cases involving other parties *they represented* to

11  MDL 1358. *Id.* That stipulation resulted in Judge Scheindlin's December 23, 2003

12  order (the "Scheindlin Order") requesting that other federal courts enter stays in

13  "similar removed actions."

14       Plaintiff did not participate at the New York Hearing, has not agreed to the

15  procedures stipulated to by the parties at that Hearing, and has strenuously objected to

16  any prospective transfer of its case to the Southern District of New York. *See* Sher

17  Decl., ¶ 4; Exhibit 1. The JPML has not even issued a conditional transfer order, and

18  Plaintiff therefore has not yet had an opportunity to exercise its rights under the

19  Multidistrict Rules to object to and oppose such transfer. *Id.*, ¶ 2. On January 27,

20  2004, Plaintiff's counsel notified Judge Scheindlin by letter of Plaintiff's objections to

21  the Scheindlin Order and its intent to oppose transfer of this action to MDL 1358, *if*

22  *and when* the JPML issues a conditional transfer order. *Id.*, Exhibit 1 (as well as

23  offering its views on the remand motions pending in that court). *Id.*, Exhibit 1.

24       Meanwhile, in California, Plaintiff filed its Remand Motion in this Court

25  on January 6, 2004. Defendants filed their Stay Motion on or about January 6, 2004.

26

27

28

                                             4

## III.   **LEGAL ARGUMENT**

### A.   This Court Should Consider Jurisdiction First, Before Deciding On Any Potential Stay Pending Possible MDL Transfer.

Paramount jurisdictional concerns, judicial economy and fairness all require resolution of a motion to remand *prior* to consideration of a stay pending a possible MDL transfer. "The requirement that jurisdiction be established as a *threshold* matter . . . is inflexible and without exception." *Steel Co. v. Citizens for a Better Environment, supra,* 523 U.S. at 94. As district courts in this Circuit have held, "whether this court has jurisdiction is a preliminary issue that should be resolved at the outset," before considering a stay for potential MDL treatment. *See, e.g. Smith v. Mail Boxes, Etc., supra,* 191 F. Supp. 2d at 1157. Indeed, the overwhelming majority of cases adhere to the "jurisdiction first" principle articulated by the Supreme Court in *Steel Co.* These cases address the "threshold" question of jurisdiction raised in a remand motion prior to entertaining an MDL-related stay for at least three reasons: (1) if federal jurisdiction is lacking, then the court has no power to enter a stay and must immediately remand the case to state court; (2) judicial economy favors resolution of the jurisdictional issue prior to MDL transfer (if any); and (3) at a minimum, the court must take a "quick look" at the jurisdictional issue to determine the best forum for resolving it.

The overriding reason to consider a remand motion before granting a stay is that a federal court lacking subject matter jurisdiction over an action lacks the power to stay it. Courts faced with competing remand and stay motions have recognized this jurisdictional imperative. *See Stern v. Mutual Life Insurance Co.,* 968 F. Supp. 637, 639 (N.D. Ala. 1997) ( "[i]f the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay"); *Lloyd v. Cabell Huntington Hosp., Inc.,* 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999) ("[the court] cannot… stay proceedings in an action over which it lacks jurisdiction"); *Farkas v. Bridgestone/ Firestone, Inc.,* 113 F. Supp. 2d 1107, 1115 n.8 (W.D. Ky. 2000)  ("[t]he jurisdictional issue must be

1    resolved before deciding whether to stay or transfer the case to the MDL panel"); *see*

2    *also BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975) ("a transfer [to MDL]

3    cannot be made unless the district court properly has jurisdiction of the subject matter

4    of the case"); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("[w]ithout jurisdiction the

5    court cannot proceed *at all* in any cause...").

6        Second, even if this court had jurisdictional *power* to address the Stay Motion

7    judicial economy strongly favors resolution of jurisdictional issues prior to

8    considering issues related to MDL transfer. *See Villarreal v. Chrysler Corp., supra,*

9    1996 WL 116832, at *1 ("judicial economy will best be served by addressing the

10   remand issue [as it] will facilitate litigation in the appropriate forum"); *Tortola*

11   *Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188–89 (N.D. Cal.

12   1997) (motion to remand should be resolved prior to motion to transfer); *Dix v. ICT*

13   *Group, Inc.*, No. CS-03-0315-LRS, 2003 WL 22852135, at *8 (E.D. Wash. Oct. 20,

14   2003) ("[c]ontrary to Defendants' contention, for purposes of judicial economy, the

15   jurisdiction issue should be resolved immediately . . . before federal resources are

16   further expended," despite pending MDL transfer motion).[3]

17       Third, even if the Court is inclined to consider Defendants' Stay Motion on the

18   merits, it should at a minimum, make a preliminary assessment of the jurisdictional

19   issue before considering the Stay Motion. *See Meyers v. Bayer AG, supra,* 143 F.

20

21   ───────────────

     [3] *See also Havens Protected "C" Clamps, Inc. v. Pilkington PLC*, No. 00-2035-JWL,

22   2000 WL 382027, at *2 (D. Kan. March 28, 2000) ("in the interests of judicial

23   economy . . . court can perceive no benefit to deferring ruling" on plaintiffs' remand
     motion, notwithstanding conditional transfer order from JPML); *Karofsky v. Abbott*

24   *Labs*, 921 F. Supp. 18, 21 n.4 (D. Me. 1996) ("it is easier for me to determine the

25   impact of [state] law on this individual case and to rule on the jurisdictional issue
     [rather than to] transfer it to the [JPML], which has many other concerns"); *Aetna*

26   *U.S. Healthcare, Inc., supra,* 54 F. Supp. 2d at 1048 ("[i]f federal jurisdiction does not

27   exist, the case can be remanded before federal resources are further expended. . . .
     Judicial economy dictates a present ruling on the remand issue").

28

Supp. 2d 1044.  If the Court determines that removal was improper, it should immediately remand the case to state court. *Id.* at 1049.  *Only* if the preliminary assessment reveals that the jurisdictional question is legally or factually difficult, should the Court move to the next steps, and: (1) assess whether the jurisdictional question is similar to the issue in the other cases that may be transferred to the MDL; and (2) assess whether a stay should be granted.  *Id.; see also Bd. of Trs. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 902-03 (N.D. Ill 2002).

Application of the *Meyers* "quick look" methodology to this case will result in a denial of Defendants' Stay Motion and an immediate remand of the case to state court.  As demonstrated in the Remand Motion, even a preliminary assessment of the jurisdictional issues raised here reveals that removal was improper.[4]  Defendants' attempt to find a "federal question" under the federal Clean Air Act hidden within Plaintiff's state-law strict product liability claim is frivolous, since it hinges entirely on preemption arguments that have already been rejected by the Ninth Circuit.  *See Oxygenated Fuels Ass'n v. Davis* ("*Davis II*"), 331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California ban of MTBE in gasoline), *affirming Oxygenated Fuels Assoc. v. Davis* ("*Davis I*"), 163 F. Supp. 2d 1182, 1187 (E.D. Cal. 2001); *ExxonMobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1253 (9thCir. 2000) (upholding Nevada county regulation that effectively banned MTBE).  Further, no court has ever accepted the "federal officer" argument Defendants advance in their removal notice.[5]  Likewise,

---

[4] Even some co-defendants have expressed strong reservations about the jurisdictional bases for removal asserted by the removing Defendants. *See* Sher Decl., Ex. 2.

[5] *See, e.g., Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of law" does not support removal where defendant is "merely 'subject to complex regulations'"); *Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos).

1   Defendants' attempt to predicate federal jurisdiction on the toehold of a 1988

2   bankruptcy involving the predecessor of a single defendant has no merit, especially in

3   light of the obviously applicable remand factors under 28 U.S.C. § 1452(b). *See In re*

4   *Enron,* 296 B.R. 505 (C.D. Cal. 2003) ("[c]omity dictates that California courts

5   should have the right to adjudicate the exclusively state law claims involving

6   California-centric plaintiffs and California-centric transactions).[6]  Since removal was

7   obviously improper in this case, the Court should decline to consider the Stay Motion

8   and instead immediately remand the case to state court.

9        Defendants rely on a slew of cases that have nothing to do with the situation

10  presented here, many of which actually support Plaintiff's position that the Remand

11  Motion should be heard first.[7]  *See Smith, supra,* 191 F. Supp. 2d at 1157 (Ds' MPA

12  at 4) ("whether this court has jurisdiction is a preliminary issue that should be

13  resolved at the outset"); *Good v. Prudential Insurance Co. of America,* 5 F. Supp. 2d

14  804, 806-809 (N.D. Cal. 1998) (D's MPA at 3) (deciding plaintiff's remand motion

15

16  ─────────────────────

17  [6] Even if the Court were to find that the jurisdictional issues herein are "difficult," the
    circumstances do not favor a stay under the second "prong" of the *Meyers* analysis.
18  *See Meyers, supra*, 143 F. Supp. 2d at 1049. For example, unlike other MTBE
    contamination cases Defendants have removed to federal court, this case arises within
19  the Ninth Circuit which has definitively rejected defendants' federal preemption
    arguments. In addition, this case poses issues not common to other MTBE cases
20  around the county because (among other things) Plaintiff asserts claims pursuant to its
    unique statutory powers. Thus, the second prong of *Meyers*, which requires
21  similarity, is not satisfied in this case.
22

23  [7] Defendants cite, but did not provide courtesy copies of, several unpublished slip
24  opinions and/or orders that Plaintiff was unable to locate, including *Correa-Rodriguez
    v. Bridgestone/Firestone Inc.,* No. 00-3805-CIV-GRAHAM (S.D. Fla. Oct. 19, 2000);
25  and *Siewart-Sitzmore v. Bridgestone/Firestone, Inc.*, No. 00-1289 (C.D. Ill. Sept. 14,
    2000); *D's Pet Supplies v. Microsoft Corp.,* Nos. 99-76056, 99-76086, 99-76202, 00-
26  70481, 2000 U.S. Dist. LEXIS 16482 (E.D. Mich. Feb. 7, 2000). Accordingly, the
    Court should disregard these cases.
27

28

8

1   *before* proceeding to defendant's stay motion).[8]  Many of the cases cited by

2   Defendants purporting to show the appropriateness of a stay are simply inapposite, as

3   they do not involve a pending motion to remand on jurisdictional grounds, and thus

4   do not address the question presented here.[9]  JPML and transferee court decisions

5   cited by Defendants are likewise irrelevant since they also do not address the question

6   of whether a *transferor* court should resolve a jurisdictional remand motion prior to

7   an MDL-related stay.[10]

8

9

10   [8] *See also Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582 (D. Md.
11   2001) (Ds' MPA at 4) (granting stay only after finding removal proper and denial of
     remand warranted); *Aetna U.S. Healthcare, Inc., supra*, 48 F. Supp. 2d at 43 (Ds'
12   MPA at 4) (granting stay only after deciding remand issue); *Dumont v. Charles
     Schwab & Co.*, Nos. 99-2840, 99-2841, 2000 U.S. Dist. LEXIS 619, at *8 (E.D. La.
13   Jan. 19, 2000) (Ds' MPA at 4) (ruling on jurisdiction issues raised by motion to
14   dismiss on grounds of no Article III case or controversy prior to considering MDL-
     related stay request).
15

16   [9] *See Rivers v. Walt Disney Co.*, 980 F. Supp. 1360, 1362 (C.D. Cal. 1997) (Ds' MPA
     at 4) ( no pending remand motion, and thus no "need to resolve any basic
17   jurisdictional issues" before addressing the requested stay); *In re New York City Mun.
     Sec. Litig.*, 572 F.2d 49 (2d Cir. 1978) (Ds' MPA at 4) (no pending remand or stay
18   motion); *Arthur Magna, Inc. v. Del-Val Fin. Corp.*, No. 90-4378, 1991 WL 13725
19   (D.N.J. Feb. 1, 1991) (Ds' MPA at 4) (no pending remand motion); *American
     Seafood, Inc. v. Magnolia Processing, Inc.*, Nos. 92-1030, 92-1086, 1992 WL 102762
20   (E.D. Pa. May 7, 1992) (Ds' MPA at 4) (same); *Portnoy v. Zenith Labs.*, No. 86-3512,
21   1987 U.S. Dist. LEXIS 16134 (D.D.C. Apr. 21, 1987) (Ds' MPA at 4) (same).

22   [10] *Ivy v. Diamond Shamrock Chem. Co.*, 901 F.2d 7 (2d Cir. 1990) (Ds' MPA at 4); *In
23   re Bridgestone/Firestone Inc.*, 2000 WL 33416573 (JPML Oct. 24, 2000) (Ds' MPA
     at 5); *In re Consolidated Welfare Fund "Erisa" Litigation* 1992 WL 212348
24   (S.D.N.Y. Aug. 21, 1992) (Ds' MPA at 7);  *In re Federal Election Campaign Act
25   Litigation* 511 F. Supp. 821 (JPML 1979) (Ds' MPA at 7); *In re Franklin National
     Bank Securities Litigation* 393 F. Supp. 1093 (JPML 1975) (Ds' MPA at 7); *In re
26   Professional Hockey Antitrust Litigation*, 369 F. Supp. 117 (JPML 1974) (Ds' MPA
27   at 7); *In re Wireless Telephone Federal Cost Recovery Fees Litigation* 2003 WL
     22720008 (JPML Nov. 13, 2003) (Ds' MPA at 7).
28

9

Finally, while Defendants cite a few cases in which a stay was granted by the potential transferor court despite a pending jurisdictional objection,[11] each of these minority-view, out-of-circuit decisions is readily distinguishable. In *Tench, Johnson, Weinke, Aikins,* and *Falgoust,* the MDL transfer and consolidation process was well underway, and a final ruling by the JPML regarding transfer was imminent in each case. *Tench, supra,* 1999 WL 1044923, at *1 (JPML hearing on transfer scheduled for one week after district court decision on stay and remand motions); *Johnson, supra,* 1996 WL 164415, at *3 (conditional transfer order had been issued, motion to vacate had been filed, and JPML was expected to rule "shortly" after defendants filed their opposition); *Weinke, supra,* F. Supp. 2d at 989 (granting stay "in light of the pending MDL Panel ruling on transfer") ; *Aikins, supra,* 2000 WL 310391, at *1 (motions pending before JPML for consolidation of all cases against Microsoft); and *Falgoust, supra,* 2000 WL 462919, at *1 (motions pending before JPML for consolidation of all cases against Microsoft).[12] Here, by contrast, the JPML has not

---

[11] *Tench v. Jackson National Life Insurance Co.,* 1999 WL 1044923, at *2 (N. D. Ill. 1999) (Ds' MPA at 4); *Johnson v. AMR Corporation,* 1996 WL 164415, at *3-4 (N.D. Ill. 1996) (Ds' MPA at 7); *Weinke v. Microsoft* 84, F. Supp. 2d 989 (E.D.Wis. 2000) (Ds' MPA at 4); *Aikins v. Microsoft* 2000 WL 310391 (E.D. La.2000) (Ds' MPA at 4, 6); *Falgoust v. Microsoft* 2000 WL 462919, at *2 (E.D. La.2000) (Ds' MPA at 4, 6); *Medical Society of the State of New York v. Conn. General Corp.,* 187 F. Supp. 2d 89 (S.D.N.Y. 2001) (Ds' MPA at 4).

[12] In *Medical Society of the State of New York,* the transfer status of the case at the time of the court's decision is unclear. However, *Medical Society* is distinguishable on several other grounds. First, in accord with *Meyers v. Bayer AG, supra,* 143 F. Supp. 2d 1044, the court acknowledged that "fairly obvious" jurisdictional questions (like the ones at issue in this case) should be ruled on first. 187 F. Supp. 2d at 92. In addition, the court erroneously predicated its decision on the Second Circuit's inapposite holding in *Ivy v. Diamond Shamrock, supra,* 901 F.2d 7 (2d Cir. 1990) (JPML has authority to transfer case despite pending jurisdictional objection). In fact, in the more recent case, *In re Consolidated Fen-Phen Cases,* 2003 WL 22682440, *3, n.4 (E.D.N.Y. Nov. 12, 2003), the court specifically recognized that *Ivy* has no

---

1   issued a conditional transfer order or taken any other action with respect to this case –

2   and may never do so. *See* Sher Decl., ¶ 2. Nor is there any pending motion to

3   consolidate. Indeed, other than Defendants' vague representations regarding their

4   submission of a notice of related tag-along case, there is nothing in the record to

5   suggest any imminent action by the JPML regarding this case.[13] *Id.* Thus, given that

6   this wrongfully removed action is in the extremely early stages of an MDL transfer

7   process that is unlikely ever to come to fruition, granting an indefinite stay before

8   determining whether there is even jurisdiction would be contrary to the overwhelming

9   weight of applicable authority.

10   **B.**   **This Court Can and Should Decline Judge Scheindlin's Request to Enter a Stay, As the Scheindlin Order Does Not Bind This Court, and Was Not**

11   **Even Intended To Affect This Case.**

12       The December 23, 2003 Scheindlin Order does not alter the analysis. It is

13   elementary that the Scheindlin Order has no legally binding effect on this Court. *See*

14   *Newton v. Thomason* 22 F.3d 1455, 1460 (9th Cir. 1994) (a federal court is not bound

15   by federal court decisions outside its own circuit); *U.S. v. Hunter*, 70 F.Supp.2d 1100,

16   1108, n.8 (C.D. Cal. 1999) ("this Court is not bound by an unpublished decision of

17   another district court"); *see also General Electric Company v. Byrne* 611 F.2d 670

18   (7th Cir. 1979) ("[w]e are aware of no statute or decision which would authorize us to

19   issue a writ of mandamus directed to a district judge sitting in another circuit"). It is

20   also clear that only the JPML, rather than the putative transferee court, has the

21   authority to issue an order transferring this case to MDL 1358. *See* JPML Rule 7.4.

22   Judge Scheindlin herself expressly recognized this at the New York Hearing. *See*

23

24   bearing on the question of a potential transferor court's authority, and expressly

25   rejected the court's rationale in *Medical Society* as "unconvincing."

26   [13] Moreover, if and when the JPML ever issues a conditional transfer order in this

27   case, Plaintiff intends to strenuously object to transfer of this action, Sher Decl., ¶ 4 – and, as explained in Section III.B below, has strong grounds on which to do so.

28

1    Transcript of New York Hearing, Ds' MPA at 19 ("I can't anticipate what the

2    Judicial Panel of Multidistrict Litigation will do because nobody invited me to be on

3    the panel and I don't get a vote. So I don't know if they'll [transfer the potential tag-

4    alongs to MDL 1358]"). It is not surprising, then, that the Scheindlin Order was

5    predicated solely "upon stipulations there agreed to on the record *by the parties*

6    *present*," Scheindlin Order, ¶1 (emphasis added), and thus, was never intended to

7    affect cases (like this one) involving parties (like Plaintiff) represented by counsel

8    who were not present at the New York Hearing.[14]

9            Plaintiff, of course, had no opportunity to participate in the New York Hearing,

10   was not a party to the stipulations on which the Scheindlin Order is based, and has not

11   agreed to any transfer of this action to MDL 1358 or a stay of this action pending any

12   such transfer. Sher Decl., ¶ 4. To the contrary, Plaintiff has communicated its

13   objections to any prospective transfer of this case to the Southern District of New

14   York to Judge Scheindlin (*see* Sher Decl., Exhibit 1), and intends to pursue those

15   objections strenuously *if and when* the JPML ever issues a conditional transfer order

16   affecting this case.[15] Sher Decl., ¶ 4.

17   _____

18   [14] A review of the transcript from the New York Hearing further reveals that Judge
19   Scheindlin appears to have been under the mistaken impression that counsel for the
     plaintiffs in the New York cases before her were in a position to stipulate to stays and
20   transfers of most other MTBE-related cases pending in federal courts around the
21   country. *See* Transcript. of New York Hearing, Ds' MPA at 19, 24.

22   [15] If the JPML issues a conditional transfer order, JPML Rule of Procedure 7.4(a)
23   provides that "[t]he Clerk of the Panel shall serve this order on each party to the
     litigation but, in order to afford all parties the opportunity to oppose transfer, shall not
24   send the order to the clerk of the transferee district court for fifteen days from the
25   entry thereof." Within the 15 day period, Plaintiff intends to file a Notice of
     Opposition to transfer pursuant to Rule 7.4(c) and will subsequently file a Motion to
26   Vacate the conditional transfer order in accordance with Rule 7.4(d). At that point the
27   "Chairman of the Panel shall set the motion for the next appropriate hearing session of
     the Panel." JPML Rule 7.4(d).
28

PLAINTIFF'S OPPOSITION TO STAY MOTION; SHER DECL -- Case No. SACV 03-1742 JVS (ANx)

Defendants' confident prediction that "[t]he JPML …is likely to transfer this action," because this and other MTBE-related cases recently removed to federal court "raise common issues of fact and law" and "allege nearly identical causes of action," Ds' MPA at 5, is based on a false premise. In fact, Plaintiff's claims in the instant case raise unique legal and factual issues that are not appropriate for MDL treatment.

With respect to Plaintiff's Remand Motion, this action differs substantially from MTBE-related lawsuits filed in other regions of the country. Among other things, it arises within the Ninth Circuit, which (in affirming a decision by Judge Levi) definitively rejected the Clean Air Act preemption arguments on which Defendants base their assertion of federal jurisdiction in this case. *See Davis II, supra,* 331 F.3d 665, *affirming Davis I, supra,* 163 F. Supp. 2d 1182; *see also ExxonMobil Corp, supra,* 217 F.3d 1246.[16] This case is also different given that Plaintiff brings this action pursuant to powers contained in the OCWD Act, its enabling statute. These powers – specific to Plaintiff – provide it with unique standing, causes of action, and remedies,[17] and will likely be the subject of pre-trial

---

[16] Defendants assert primarily federal question and federal direction jurisdiction; both purported grounds rely on a finding that the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, required Defendants to use MTBE. *See* Notice of Removal, ¶¶ 38-43. The Ninth Circuit has rejected that contention. *See e.g. Davis II, supra,* 331 F.3d at 673 (California's MTBE ban not preempted because "Clean Air Act's provisions regarding oxygenate fuel additives … preserve state authority to adopt and enforce measures to prevent water pollution"). The *Davis* decisions also recognized that California enjoys powers over gasoline regulation not shared by other states. *See id.* at 668, 669; *Davis I, supra,* 163 F. Supp. 2d at 1185-1187.

[17] In particular, the OCWD Act grants it the right and duty, among other things, "to commence, maintain, intervene in, defend, and compromise . . . any and all actions and proceedings . . . to prevent interference with water or water rights used or useful to lands within the district, or diminution of the quantity or pollution or contamination of the water supply of the district, . . . or to prevent any interference with the water or water rights used or useful in the district which may endanger or damage the inhabitants, lands, or use of water in the district." OCWD Act, Section 2. Further,

1 motions. Such motions will be entirely irrelevant to the other MDL cases. In short,

2 this case contains unique legal issues, and therefore does not stand to benefit from

3 consolidation in an MDL.

4       Likewise, very few, if any, common factual issues remain that would benefit

5 from MDL treatment. The key factual background concerning the development and

6 widespread distribution of MTBE, the characteristics of MTBE, and the industry's

7 early knowledge of its risks, has already been elucidated through discovery and

8 adjudications in previous litigation. *See Davis II, supra* (addressing nature of MTBE,

9 legislative history of federal Clean Air Act oxygenate requirements, and California's

10 unique regulatory powers over gasoline content); *Davis I, supra* (same); *In re: MTBE*

11 *Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) (surveying nature of oil

12 industry's knowledge of MTBE's risks, legislative history of Clean Air Act oxygenate

13 requirements, and industry's conspiracy to mislead the public and the EPA); *South*

14 *Tahoe Public Utility District v. Atlantic Richfield Co.*, Case No. 999128 (S.F. Super.

15 Ct. Apr. 15, 2002) (special jury verdict finding MTBE and gasoline containing MTBE

16 defective products). Thus, the factual issues remaining to be litigated in this case are

17 localized and site-specific questions pertaining to matters such as local refining and

18 gasoline distribution systems, and Plaintiff's damages. An MDL court in the

19 Southern District of New York is clearly not an efficient – and certainly not the most

20 efficient – forum for resolving these localized issues.[18]

---

22 section 8(b) of the statute allows the District to recover the costs of cleaning up
23 "threatened contamination" specifically. OCWD Act, Section 2.

24 [18] At least one defendant in this case, who did not join in Defendants' Stay Motion,
25 fully agrees with Plaintiffs on this point. *See* January 5, 2004 Letter of Robert P.
Doty on behalf of Defendant 7-Eleven, Inc. (Sher Decl., Exhibit 2) (expressing 7-
26 Eleven's intent to oppose MDL transfer in this case on grounds that litigation of
ostensibly local issues in New York would be "inefficient"). *See also In re Air Crash*
27 *Disaster Near Upperville Virginia on December 1, 1974*, 430 F. Supp. 1295 (S.D.
28 Ind. 1977) (conditional transfer order vacated since, although cases shared common

Instead of producing efficiencies in this case, the MDL process is likely to be highly burdensome to Plaintiff because it will tie this local case up with other cases from around the country that share little in common with Plaintiff's action. The logistical burdens of MDL practice are well known and likely to delay significantly resolution of Plaintiff's case. *See* Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation,* 175 F.R.D. 589, 590 (1998) ("the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you to '100th chair' status in an already over-lawyered mass litigation"). Given the very poor fit between this action and the MDL process, this Court should decline Defendants' request to "tee up" the case for MDL transfer through the issuance of a stay.

C.  **Defendants Have Not Demonstrated the Requisite Hardship to Justify a Stay, While Plaintiff Would Be Prejudiced If the Stay is Granted. Defendants have not satisfied the requisites for obtaining a stay in any event.**

"The suppliant for a stay *must make out a clear case of hardship or inequity* in being required to go forward, if there is even a *fair possibility* that the stay for which he prays will work damage to some one else." *Favaloro, supra,* 687 F. Supp. at 481, citing *Landis v. North American Co.,* 299 U.S. 248, 255 (1936) (emphasis added); *see also Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244 (9th Cir. 1972) (in deciding stay motion, court should consider hardship to the moving party in being required to go forward and prejudice to the non-moving party if the stay is granted).

---

issues and MDL court had expertise, all pre-trial proceedings had been concluded, plaintiffs had access to extensive discovery materials, and only damages issues unique to each case remained); *In re A. H. Robins Co., Inc.* 505 F. Supp. 221 (JPML 1981) (conditional transfer order in product liability suit vacated where pretrial proceedings were no longer active in MDL, discovery of common issues had been completed and parties to new actions could have access to prior discovery).

Here, Defendants have failed to make out a "clear case of hardship" in the event their Stay Motion is denied. With a minimum of discussion, Defendants suggest that the "wasted effort" of having to "relitigate" unspecified issues before a potential transferee court can be avoided by a temporary stay. Ds' MPA at 8. However, in the context of Plaintiff's Remand Motion, this assertion hardly constitutes a showing of "hardship or inequity." A ruling on Plaintiff's Remand Motion by this Court now will result in a remand of this action to state court, not a deluge of "duplicative motion practice."[19] Moreover, to the extent Defendants – who are each represented by multiple law firms and possess considerable resources – face any risk of duplicative effort by having to litigate at least some similar jurisdictional issues in multiple courts, they have not made out a "clear case of hardship." Indeed, as demonstrated above, the vast majority of courts agree that immediately addressing jurisdictional issues *saves* time and resources, and outweighs any risk of duplicated effort.

Defendants also suggest that "both sides may be prejudiced by inconsistent rulings on important issues common to all of the MTBE cases," in light of the alleged congressional "imperative" regarding uniform interpretation of federal clean air regulations. Ds' MPA at 9. To the extent Defendants are referring to a federal

---

[19] Defendants' arguments about the hardship they will face if discovery and other pre-trial proceedings are not stayed is a red herring, as their real goal is to postpone a hearing on Plaintiff's Remand Motion. If the Court addresses the merits of the Remand Motion now – as it should – the case will be remanded. In the unlikely event that it is not, the case should obviously move forward notwithstanding any pending transfer decision by the JPML, pursuant to JPML Rule of Procedure 1.5 ("[t]he pendency of . . . conditional transfer order . . .does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending").

1   preemption defense they intend to raise in this case, their argument has no more merit

2   than it does as a basis for jurisdiction, since *Davis II, supra,* has shut the door on this

3   argument. In any event, with respect to removal and remand issues, the risk of

4   inconsistent rulings is remote at best, because Defendants' grounds for removal are

5   frivolous and very unlikely to be sustained in any court.

6       While Defendants will not be prejudiced by the Court denying a stay, the

7   granting of a stay will prejudice Plaintiff by thrusting it into a distant forum not of its

8   choosing.[20]  In *Meyers v. Bayer AG, supra,* 143 F. Supp. 2d at 1048, the court

9   observed that "even though a stay does not directly implicate the merits of a case, it

10  undeniably has important effects on the litigation." In particular, the court noted,

11  "[r]emoving a case to federal court has long been known to impose a burden upon

12  plaintiffs . . . [by] requir[ing] the plaintiff to present its arguments for remand in a

13  foreign forum." *Id.* "Concerns about being haled into distant courts are particularly

14  implicated by the MDL system." *Id.* These observations apply with equal force to

15  Plaintiff in this case.

16      Most importantly, granting the requested stay would prejudice Plaintiff and the

17  public by delaying progress of this important water pollution case for months, if not

18  the better part of next year. During this period of delay, Plaintiff's case will be at a

19  standstill, while the MTBE contamination caused by Defendants' wrongful conduct

20  contaminates an ever-increasing portion of Plaintiff's groundwater resources. *See*

21  First Amended Complaint, ¶¶ 48-51, 66 (MTBE, which is linked to a variety of

22

23

---

24  [20] *See* Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and*

25  *Tag-Along Orders Prior to a Determination of Remand: Procedural and Substantive*

    *Problem or Effective Judicial Public Policy?,* 23 Memphis St. U.L.Rev. 841, 843

26  (1993) (observing that a plaintiff may be "swiftly transferred from his state court to

27  his home federal district and then whisked to an unknown, unpredictable United

    States district judge").

28

17

1  potential adverse health effects and renders drinking water unpalatable even at very

2  low levels, spreads farther and faster than other groundwater contaminants).

3     This important water pollution case has been delayed long enough.  The Court

4  should immediately remand it to state court so that the action can be heard and

5  Plaintiff can get on with cleaning up its contaminated groundwater.

**IV.   <u>CONCLUSION</u>**

7     For the foregoing reasons, the Court should deny Defendants' Stay Motion.

9                    Respectfully submitted,

11  DATED:  February 6, 2004              SHER & LEFF, LLP

13                    By:  _Victor Sher_____

14                    VICTOR M. SHER

16  DATED:  February 6, 2004              MILLER, AXLINE & SAWYER

18                    By:  _Michael Axline (by permission)_

19                    MICHAEL D. AXLINE

20                    Attorneys for Plaintiff, Orange County
                       Water District

# DECLARATION OF VICTOR M. SHER

I, Victor M. Sher, declare:

     1.    I am a partner in the law firm of Sher & Leff, LLP, co-counsel of record for Plaintiff Orange County Water District ("Plaintiff") in this matter. My office is also counsel of record for plaintiffs in certain other MTBE-related cases in California that were recently removed to federal court. Unless otherwise stated, the following facts are true and based upon my own personal knowledge.

     2.    On or about December 5, 2003, certain defendants ("Defendants") filed a Notice of Removal, removing this action from the Orange County Superior Court where it was filed. In connection with their Notice of Removal, it is my understanding that Defendants apparently also filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358, *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a currently inactive MDL proceeding pending before the Hon. Shira A. Scheindlin of the U.S. District Court for the Southern District of New York, although Plaintiff has never received copies of any such notice. At the same time, to my knowledge, the JPML has not issued a conditional transfer order in this case, and Plaintiff therefore has not yet had an opportunity to exercise its rights under the Multidistrict Rules to object to and oppose such transfer. Other than Defendants' representations regarding their submission of a notice of related tag-along case, there is nothing in the record of this case that I am aware of to suggest any imminent action by the JPML regarding this case.

     3.    In support of their Motion to Stay, Defendants cite a December 23, 2003 Order issued by Judge Scheindlin (the "Scheindlin Order") related to several New York MTBE-related cases pending before her. I am informed that the Scheindlin Order is the result of certain stipulations agreed to by certain parties during a hearing before Judge Scheindlin on December 19, 2003 (the "New York Hearing").

1    4.    Plaintiff had no opportunity to participate in the New York Hearing, was

2    not a party to the stipulations on which the Scheindlin Order is based, and has not

3    agreed to any transfer of this action to Multidistrict Litigation Case No. 1358 or a stay

4    of this action pending any such transfer.  To the contrary, Plaintiff has communicated

5    its objections to any prospective transfer of this case to the Southern District of New

6    York to Judge Scheindlin, and intends to pursue those objections strenuously *if and*

7    *when* the Judicial Panel on Multidistrict Litigation ever issues a conditional transfer

8    order affecting this case.

9        5.    A true and correct copy of the January 27, 2004 letter I sent to Judge

10   Scheindlin on behalf of Plaintiff and other California plaintiffs represented by my

11   office (without attached service list) is attached hereto as Exhibit 1.

12       6.    A true and correct copy of a January 5, 2004 letter sent by Robert P.

13   Doty, Esq. to Judge Scheindlin on behalf of defendant 7-Eleven, Inc. (without

14   attached service list), a copy of which was served on and received by my office, is

15   attached hereto as Exhibit 2.

16       I declare under penalty of perjury under the laws of the United States of

17   America that the foregoing is true and correct.

18       Executed this 6th day of February, 2004 at San Francisco, California.

19

20

21                                         _____

22                                         Victor M. Sher

23

24

25

26

27

28

20

Law Offices of

# SHER & LEFF

**VICTOR M. SHER**
**ALEXANDER I. LEFF**

**TODD E. ROBINS**
**LYNDA M. COLLINS**

January 27, 2004

*Via Facsimile and Federal Express Overnight Delivery*

The Honorable Shira Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1050
New York, NY 10007-1312

Re:    *In re MTBE Products Liability Litigation* (MDL 1358); Master File C.A.
No. 1:00-1898 (SAS) / Motions for Remand

Dear Judge Scheindlin:

This firm serves as co-counsel for all of the plaintiffs in each of the following cases:

- *Orange County Water District v. Unocal, et al.*, Case No. SACV03-1742 JVS (ANx) (C.D. Ca.)

- *City of Riverside v. Atlantic Richfield Company, et al.;* Case No. EDCV03-1460 RT (SGLx) (C.D. Ca.)

- *California-American Water Company v. Atlantic Richfield Company, et al.;* Case No. C 03-5379 JSW (N.D. Ca.)

- *Quincy Community Services District v. Atlantic Richfield Company, et al.;* Case No. CIV.S-03-2582 WBS DAD (E.D. Ca.)

- *City of Roseville v. Atlantic Richfield Company, et al.;* Case No. CIV.S-03-2601 WBS GGH (E.D. Ca.)

- *Martin Silver, et al. v. Alon USA Energy, Inc., et al.;* Case No. 03-CV-2408 WQH (S.D. Ca.).

In addition, we represent as co-counsel all of the plaintiffs except the People of the State of California in *People, et al. v. Unocal, et al.* CIV S-032653 GEB/DAD (E.D. Cal.); the Sacramento County District Attorney's Office represents the People separately in that action. We understand that counsel for the People intends to join in the positions asserted in this letter.

# PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS

Each of the California actions originated in state court, asserting only state-law claims. Certain defendants removed the matters to federal district court. The removal papers state defendants' intention to have these actions transferred to MDL 1358. We are informed (but have not been served with any papers) that defendants in each case filed a Notice of Related, Tag-along Action with the Judicial Panel on Multidistrict Litigation (JPML). In any event, the JPML has yet to issue conditional transfer orders in any of these matters.

Plaintiffs in these matters have not yet had any opportunity to object to any conditional transfer orders from the JPML, although in fact plaintiffs believe that these actions are not appropriate for multi-district consolidation. All of these plaintiffs in the California actions intend to file notices of opposition to, and to move to vacate, any such conditional transfer order(s) affecting them. Meanwhile, plaintiffs have filed timely motions for remand in each of the California cases.

Your Honor's December 23, 2003, Order states that remand motions in "all similar removed actions . . . [should] be heard and decided by this Court" under the auspices of MDL 1358. The attachment to the December 23 Order listed each of these California lawsuits. Of course, our clients had no chance to participate in the hearing before Your Honor leading to the December 23 Order, and we were not consulted concerning the plaintiffs' positions in the other cases pending before Your Honor nor our position with respect to our own litigation.

As of today these cases are not before Your Honor in any capacity. The merits of the motions for remand in them have not been briefed to this Court, nor are any of those motions before Your Honor. The Court has not even seen the complaints in these actions, which differ substantially from those before the Court in the New York actions. Indeed, unlike the matters pending before Your Honor, plaintiffs in these California cases consist not solely of drinking water purveyors (although some are purveyors); rather these plaintiffs include public agencies with a spectrum of regulatory, property, usufructuary and other legal interests in protecting ground- and drinking water resources under California law.

The December 23 Order did not specify how (if at all) parties to "similar removed actions" should participate in the remand motions pending before the Court. Accordingly, we submit this letter brief to address certain issues raised by those motions. Consistent with our position that these actions are not appropriate for multi-district consolidation, however, the plaintiffs in the California actions listed above expressly reserve their rights to object to any such consolidation. They further maintain that their actions are not properly before this Court in its capacity as the court handling MDL 1358 or otherwise, and respectfully reserve their rights to assert that orders issued by this Court

Exhibit 1
Page 2 of 19

at this time have no effect in their actions. Finally, by submitting this letter in limited response to the moving and opposition papers in connection with the pending remand motion before Your Honor, none of these plaintiffs concedes that this Court has any jurisdiction over their California lawsuit.

## INTRODUCTION

None of the bases for federal subject matter jurisdiction asserted in the subject Notices of Removal and discussed in the removing defendants' ("Defendants'") opposition brief has any merit. This letter makes the following three points:

*First*, state court findings in these cases that MTBE gasoline is defective will have no impact on the federal clean air program or the gasoline distribution system. Indeed, 18 states (including New York) have *already banned* the use of MTBE in gasoline, and preemption challenges to such bans have been soundly rejected by the federal courts.[1] If a state's outright ban of MTBE does not conflict with the Clean Air Act ("CAA"), then tort claims regarding Defendants' past use of MTBE cannot possibly affect any federal interest under the CAA. Moreover, Defendants' federal question analysis hinges entirely on the very same federal preemption arguments that this Court has soundly rejected, as has every other published opinion on the subject.[2] Notwithstanding their effort to dress the emperor in new clothes, Defendants' attempt to ground federal jurisdiction over these cases on the same losing arguments should be rejected.

*Second*, Defendants' efforts to cast themselves as corporations acting under the direction of federal officers or agencies for purposes of 28 U.S.C. §1442(a)(1) are nonsense. Defendants are private, for-profit companies that produce a consumer product,

---

[1] *See Oxygenated Fuels Ass'n v. Pataki ("Pataki I"),* 158 F. Supp. 2d 248, 257 (N.D.N.Y. 2001) (rejecting preemption challenge to New York ban on MTBE on grounds that "preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA"); *Oxygenated Fuels Ass'n v. Pataki ("Pataki III"),* __ F. Supp. 2d __, 2003 WL 22845949, *9-*12 (N.D.N.Y. November 24, 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA, including a finding of fact that the predicted economic impacts of such ban are "not of a sufficient magnitude . . . to interfere with the achievement of the goals of the CAA"); *see also Oxygenated Fuels Ass'n v. Davis ("Davis II"),* 331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California's MTBE ban because, *inter alia,* there is "no support for [the] assertion that the Clean Air Act's goals – for purposes of preemption analysis – are a smoothly functioning market and cheap gasoline"), *affirming Oxygenated Fuels Assoc. v. Davis ("Davis I"),* 163 F. Supp. 2d 1185, 1187 (E.D. Cal. 2001); *Exxon Mobil Corp. v. U.S. E.P.A.,* 217 F.3d 1246, 1253 (9th Cir. 2000).

[2] *See In re MTBE Litig.,* 175 F. Supp. 2d 593, 615 (S.D.N.Y. 2001); *Pataki I, supra,* 158 F. Supp. 2d 248; *Pataki III, supra,* 2003 WL 22845949; *Davis II, supra,* 331 F.3d 665 *Davis I, supra,* 163 F. Supp. 2d 1185; *Exxon Mobil Corp. v. U.S. E.P.A.,* 217 F.3d 1246, 1253 (9th Cir. 2000); .

Exhibit 1
Page 3 of 19

and, like all manufacturing businesses in this country, are subject to both state and federal environmental regulations. Published federal decisions have uniformly rejected the argument that a consumer product manufacturer's compliance with federal regulatory requirements constitutes acting "under the direction" of a federal officer.[3]  Moreover, there is no causal connection between Defendants' federal clean air obligations and the water pollution-related conduct at issue in this lawsuit, because Defendants voluntarily chose to use MTBE from among several available options.[4]

*Finally*, Defendants' attempt to predicate federal jurisdiction over this purely state-law case on the toehold of a 1988 bankruptcy order involving a single defendant also fails, because the outcome of this action can have no effect on the "administration of" a bankruptcy that concluded 15 years ago.[5]  In addition, even if these actions were somehow "related to" the Texaco bankruptcy, the presence of exclusively state-law claims and the extreme remoteness of any possible bankruptcy issues in this case clearly warrant remand pursuant to 28 U.S.C. § 1452(b).

## DISCUSSION

A. **Defendants' "Complete Preemption" and "Substantial Federal Question" Arguments Lack Merit.**

We wish to bring to the Court's attention four issues in response to Defendants' federal question contentions.  First, Defendants' preemption-related grounds for removing these product liability actions to federal court are rendered irrelevant by the fact that New York has banned MTBE gasoline, and such ban has been definitively upheld, as both a matter of law and fact, as not in conflict with any CAA goal or requirement. *See Pataki I, supra,* 158 F. Supp. 2d 248; *Pataki III, supra,* 2003 WL 22845949.  Second, Defendants' "complete preemption" and "substantial federal question" arguments are nothing more than recycled versions of the very same preemption arguments they litigated unsuccessfully in this Court in the prior incarnation

---

[3] *See, e.g., Little v. Purdue Pharma, LP,* 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of law" does not support removal where defendant is "merely 'subject to complex regulations'").

[4] *See* 42 U.S.C. §7545(k)(2)(B) (CAA mandates *oxygen* content, not MTBE, in reformulated gasoline); *cf., e.g., Good v. Armstrong World Indus.,* 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos).

[5] *See In re Feitz,* 852 F.2d 455, 457 (9th Cir. 1988) (no jurisdiction under 28 U.S.C. §1334(b) because prior entry of confirmation order "destroyed any possible relationship between the outcome of [a subsequent] suit and the administration of the bankruptcy estate"); *In re McGhan,* 288 F.3d 1172, 1880 (9th Cir. 2002) ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

Exhibit 1
Page 4 of 19

of MDL 1358. *See In re MTBE Litig.*, 175 F. Supp. 2d 593. Third, Defendants' argument that the CAA and other federal statutes provide "exclusive remedies" for claims regarding the design of MTBE gasoline ignores the fact that each of the cited federal statutes expressly preserves state-law claims. *See* 42 U.S.C. §§ 7604(e), 6972(f); 15 U.S.C. §2617(a). Finally, Defendants' allegations of congressional and EPA intent to "occupy the field" of fuels regulation grossly distort the relevant legislative and regulatory history and ignore the case law examining such intent.

1.   **Tort litigation regarding MTBE will have no impact on the federal Clean Air program.**

The premise of Defendants' federal question analysis – *i.e.* that state court verdicts finding that MTBE gasoline is a defective product will undermine the federal regulatory scheme and disrupt the gasoline distribution system – defies all logic. New York, along with 17 other states, has already banned the use of MTBE in gasoline (effective January 1, 2004) in order to protect the state's groundwater from contamination. *See* L.2000, c. 35, §§ 2-3; *Pataki III, supra,* 2003 WL 22845949 at *2. Moreover, the New York MTBE law has survived a preemption challenge brought by the Oxygenated Fuels Association, one of Defendants' trade associations. *See Pataki I, supra,* 158 F. Supp. 2d 248; *Pataki III, supra,* 2003 WL 22845949. After a six day bench trial in that case, Judge Mordue of the Northern District of New York determined, among other things, that the predicted economic impacts of the ban are "not of a sufficient magnitude . . . to interfere with the achievement of the goals of the CAA." *Pataki III, supra,* 2003 WL 22845949 at *9. The Ninth Circuit has similarly upheld California's ban of MTBE, holding that there is "no support for [the] assertion that the Clean Air Act's goals – for purposes of preemption analysis – are a smoothly functioning market and cheap gasoline." *Davis II, supra,* 331 F.3d at 673.[6] If a state's complete ban of MTBE does not conflict with the CAA or threaten the state's supply of reasonably priced fuel, then damages claims regarding Defendants' past use of MTBE cannot possibly affect any federal interest under the CAA.

Defendants' effort to raise the specter of an "inefficient patchwork" of differing state fuel content standards (*see, e.g.* Ds' Opp. at 25) by reference to MTBE-related

---

[6] In light of the Ninth Circuit's definitive – and final – holding in *Davis II,* Defendants are precluded under the doctrine of collateral estoppel from asserting their federal preemption arguments in the California cases involving the plaintiffs we represent. *In re Cantrell* 329 F.3d 1119, 1123 (9th Cir. 2003) (issue preclusion applies where issue is identical to that decided in a former proceeding, issue was actually litigated and decided in the former proceeding, the decision in the former proceeding was final and on the merits, and the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding); *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Council* 322 F.3d 1064, 1081 (9th Cir. 2003) (privity is a flexible concept, and may exist when the parties are not identical, as long as there is "substantial identity" or "sufficient commonality of interest" between parties).

Exhibit 1
Page 5 of 19

actions filed outside of New York does nothing to assist their argument, because, as the *Pataki* and *Davis* cases demonstrate, nothing in the CAA limits state authority to regulate MTBE in order to prevent water pollution.[7] Their "patchwork" argument also confuses the standards for establishing federal subject matter jurisdiction with those for transferring and consolidating related district court actions. *See, e.g. Merrell Dow Pharmaceuticals v. Thompson, supra,* 478 U.S. at 816 (defendant's concern about uniformity of interpretation of federal statute in state-law actions is not an "aspect of federal-question jurisdiction").[8] Defendants cannot bootstrap federal jurisdiction on the alleged aggregate impact of multiple MTBE lawsuits.

   2.   **This Court, along with every other published decision addressing preemption of state regulation of MTBE, has already rejected Defendants' "complete preemption" and "substantial federal question" arguments.**

   This Court has already concluded that nothing in the CAA limits state-law tort actions against refiners to recover damages to drinking water caused by their use of MTBE, and thus has rejected the very preemption arguments on which Defendants' federal question analysis is based. *In re MTBE Litig., supra,* 175 F. Supp. 2d at 611-617, 623-625. In fact, *every* published decision addressing preemption of state regulation of MTBE – both before and since this Court's earlier decision in MDL 1358 – has rejected Defendants' preemption arguments:

   • *Davis II, supra,* 331 F.3d at 673 (California's MTBE ban not preempted because "Clean Air Act's provisions regarding oxygenate fuel additives … preserve state authority to adopt and enforce measures to prevent water pollution");

---

[7] *Pataki I, supra,* 158 F. Supp. 2d at 257 ("preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA"); *Davis II, supra,* 331 F.3d at 673 ("Clean Air Act's provisions regarding oxygenate fuel additives … preserve state authority to adopt and enforce measures to prevent water pollution").

[8] While concern about uniform judicial treatment may be pertinent in considering whether to centralize or transfer pending federal actions into a multidistrict litigation ("MDL") under 28 U.S.C. § 1407, *see, e.g., In re Mosaid Technologies Inc. Patent Litigation,* 283 F. Supp. 2d 1359, 1360 (Jud. Pan. Mult. Lit. 2003) (centralization pursuant to § 1407 necessary to "prevent inconsistent decisions," among other things), it does not constitute grounds for "federal question" jurisdiction *over these cases* in the first instance. *See also In re MTBE Litigation, supra,* 175 F.Supp.2d at 603 ("[a] transfer of a case pursuant to 28 U.S.C. § 1407 cannot be made unless the transferee court has subject matter jurisdiction"), *citing BancOhio Corp. v. Fox,* 516 F.2d 29, 32 (6th Cir.1975) ("[n]o matter how desirable respondents feel it may be to consolidate . . . all litigation in any way related to Equity Funding, . . . such a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case").

Exhibit 1
Page 6 of 19

- *Exxon Mobil Corp. v. EPA, supra,* 217 F.3d at 1253 (affirming county regulation that effectively banned MTBE because "state authority to regulate oxygenate levels [was not] limited" by the CAA);

- *Pataki I, supra,* 158 F. Supp. 2d at 257 (rejecting preemption challenge to New York ban on MTBE on grounds that "preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA");

- *Pataki III, supra,* 2003 WL 22845949 at *12 (NY MTBE law does not conflict with any aspect of CAA, even if "viewed in the larger context of market forces, health and environmental impacts, regional priorities, technological feasibility and other considerations");

- *Davis I, supra,* 163 F. Supp. 2d at 1187 (E.D. Cal. 2001) (upholding California MTBE ban against federal preemption challenge because "the Clean Air Act does not require that MTBE be made available to refiners"), *aff'd,* 331 F.3d 665, *supra.*[9]

Despite this notable losing streak, Defendants here make the very same preemption arguments again – as Yogi Berra said, "it's déjà vu all over again." Specifically, the lengthy federal question analysis in Defendants' opposition hinges entirely on two arguments: (1) that state-law design defect claims somehow seek to "disturb the delicate balance" struck by Congress and EPA in permitting refiners to use MTBE in reformulated gasoline; and (2) that the CAA expressly preempts such design defect claims. This Court, however, already rejected the identical arguments in *In re MTBE.*

Specifically, Defendants' "substantial federal question" argument is predicated on the assertion that the New York Plaintiffs' design defect claims raise risk-utility questions

---

[9] *See also Abundiz v. Explorer Pipeline Co.,* 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state law MTBE contamination case does "not conflict with the Congressional clean air objectives"). Defendants' citation of four unpublished trial court decisions regarding MTBE preemption (*see* D's Opp., p. 21, n.20) is unavailing. Each of these decisions was rendered before *Davis II* and *Pataki III.* In addition, two of them – *Coppola v. Amerada Hess,* No. 2001/3995 (N.Y. Sup. Ct., Dutchess Cty., Jul. 31, 2002) and *Molloy v. Amerada Hess,* No. 2001/3996 (same) – contained a single paragraph finding preemption with no analysis of the CAA. Two others – *Kubas v. Unocal,* No. BC191876 (Cal. Sup. Ct., L.A. Cty., Aug. 23, 2001) and *Hixon v. Unocal,* No. BC195295 (same) – incorrectly assumed that assessing tort damages was equivalent to a regulatory ban (which the Ninth Circuit in any event affirmed in *Davis II*). State court opinions giving more than cursory attention to the preemption argument have, like federal courts, rejected the argument. *See, e.g., County of Suffolk v. Amerada Hess, et al.,* No. 007-011-MOT D (Sup. Ct. Suffolk Cty., N.Y., Jan. 2, 2004); *South Tahoe Public Utility District v. ARCO et al.,* No. 999128 (Cal. Super. Ct. Jan. 15, 2002); *City of Dinuba v. Unocal et al.,* No. 305450 (Cal Super. Ct. April 1, 2003); *Plainview Water District v. Exxon Mobil Corporation et al.,* No. 9975/01, (N.Y. Sup. Ct. May 22, 2002).

Exhibit 1
Page 7 of 19

Case No. 1358    Document 146    Filed 04/15/04    Page 300 of 387

that "require a reassessment of all of the factors Congress directed EPA to consider in promulgating RFG regulations so as to 'require the greatest reduction in emissions' . . . [including] the cost of achieving such emission reductions, any non air-quality and other air-quality related health and environmental impacts and energy requirements." Ds' Opp. at 20-22.[10]  Defendants made the same argument verbatim to this Court in *In re MTBE Litig.*, and, as Defendants concede (see Ds' Opp. at 22), this Court disagreed:

> Defendants argue that any risk-utility analysis would impermissibly permit
> a reexamination of the mandatory cost-benefit analysis delegated to and
> performed by the EPA pursuant to its obligations under the CAA.  More
> specifically, defendants note that Congress, through the RFG Program,
> authorized the EPA to issue regulations to reduce air pollution while
> taking into consideration "the cost of achieving such emission reductions,
> any non air-quality and other air-quality related health and environmental
> impacts and energy requirements." 42 U.S.C § 7545(k)(1).  However, as
> discussed earlier, Congress did not mandate the use of MTBE, nor did the
> EPA's certification of gasoline containing MTBE require consideration of
> non air- quality factors. . . . Thus, while the EPA could consider the non
> air-quality impact of the use of MTBE, any such consideration was . . .
> not commensurate with a risk-utility analysis. . . . Accordingly,
> defendants' motions to dismiss these [design defect] claims are denied.

Similarly, Defendants' "complete preemption" argument in these cases consists of precisely the same express preemption argument they made and lost in *In re MTBE Litig.* in 2001.  *Compare* Ds' Opp. at 24-28 (plaintiffs' tort claims regarding MTBE contamination of groundwater preempted because they would result in a "control or prohibition respecting a[] characteristic or component of fuel" under 42 U.S.C. § 7545(c)(4)(A)), *with In re MTBE Litig.*, *supra*, 175 F. Supp. 2d at 612-614 (rejecting argument that "section 7545(c)(4) . . . preempt[s] state law claims concerning the contamination of groundwater caused by the use of MTBE").  Defendants themselves concede, as they must, that "[t]his Court and several others have previously found that § 7545(c)(4)(A) does not prevent state regulation of fuels if that regulation is designed to protect groundwater, as opposed to regulating emissions."  Ds' Opp. at 25.  Indeed, as noted above, since this Court's 2001 opinion, the Ninth Circuit has concluded as a matter of law that "California's MTBE ban ... does not 'frustrate [ ] the full effectiveness of federal law,'" *Davis II*, *supra*, 331 F.3d at 673, and the Northern District of New York

---

[10] Of course, Plaintiffs' design defect claims do not require resort to any federal law issue – substantial or otherwise.  *Eastern States*, *supra*, 11 F. Supp. 2d at 390 (substantial federal question jurisdiction requires showing that "a disputed question of federal law is a necessary element of one of the well-pleaded state claims"); *Shadie v. Aventis Pasteur*, 254 F. Supp. 2d 509, 518 (M.D. Pa. 2003) (where defendants, not plaintiffs, ask court to interpret federal law, "[t]he mere presence of a federal issue . . . does not create federal jurisdiction").

Exhibit 1
Page 8 of 19

has reached the same result for New York's ban as a matter of both fact and law in *Pataki III*.

Defendants' assertion that they have "never presented," and this Court has not rejected, the federal question arguments they raise in support of removal, *see* Ds' Opp. at 2, is simply not true. To the extent Defendants suggest that the Court's prior ruling rejecting preemption under both express and conflict preemption theories does not preclude their current complete preemption argument here, they misconstrue the narrow scope of complete preemption. "Complete preemption is rare," and only applies when the "preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *ARCO Environmental Remediation v. Montana Dept. of Health and Environmental Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987). If state tort remedies related to MTBE contamination do not expressly or impliedly conflict with any requirement, goal or objective under the CAA, such remedies cannot conceivably be "completely preempted." Indeed, as the Supreme Court has held, even a potentially valid federal preemption defense (which Defendants do not have) is not sufficient to establish removability under the complete preemption doctrine, because "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987).

Thus, Defendants cannot escape this Court's prior preemption rulings simply by dressing the same preemption arguments in new clothing.[11] As those preemption arguments are the *sine qua non* of their attempt to find a federal question hidden within these state-law tort actions, Defendants' removal pursuant to 28 U.S.C. § 1331 was improper.

3.   **Defendants fail to show that the CAA or any other federal statute contains the exclusive cause of action for Plaintiffs' claims.**

According to the U.S. Supreme Court, complete preemption has been found *only* "when the federal statutes at issue provided the exclusive cause of action for the claim

---

[11] As it would appear that "the litigation of this particular issue has reached such a stage that [there is] no really good reason for permitting it to be litigated again.," *Zdanok v. Glidden Company, Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d Cir. 1964), the combination of this Court's previous legal holdings in *In re MTBE* and the court's factual findings in *Pataki III* likely bar Defendants from relitigating their preemption arguments here. *See, e.g., Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir.1996) (underlying "matters actually litigated and determined" in prior proceeding were "identical" to those asserted in subsequent case, and therefore barred by doctrine of issue preclusion/collateral estoppel). However, the Court need not address this concern in order to grant the New York Plaintiffs' motions to remand.

Exhibit 1
Page 9 of 19

asserted and also set forth procedures and remedies governing that cause of action." *Beneficial National Bank v. Anderson*, __ U.S. __, 123 S. Ct. 2058, 2062 (2003). Of course, the CAA provides neither the exclusive cause of action for the claims asserted by the New York Plaintiffs for water-related damages, nor procedures and remedies governing those causes of action.

Defendants blithely assert that various administrative remedies under the CAA, Solid Waste Disposal Act, 42 U.S.C. § 6901 *et seq.* ("SWDA")[12] and Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* ("TSCA") provide "exclusive remedies for parties seeking to alter the design of reformulated gasoline." Ds' Opp. at 28. Defendants then contradict themselves by acknowledging (as they must) that federal law does *not* provide "the only remedy for the presence of MTBE in groundwater." Ds' Opp. at 30. Of course, under *Beneficial National Bank, supra*, 123 S.Ct. 2062, this concession alone destroys Defendants' complete preemption argument – as federal law must provide the "exclusive" remedy in order to completely preempt a state cause of action for jurisdictional purposes. Defendants' citation to *Pacific Gas & Electric Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 212 (1983), for the proposition that complete preemption can apply to an "identifiable portion" of a field is unavailing. That case, which addressed, and rejected, an occupation-of-the-field preemption defense on the merits, did not involve the complete preemption exception to the well-pleaded complaint rule, and thus is inapposite.

In any case, Defendants' argument fails to overcome an obvious point that was central to this Court's previous rejection of their preemption defense: the CAA specifically *preserves* state common law claims, expressly providing that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or *common law* to seek enforcement of any emission standard or limitation *or to seek any other relief.*" 42 U.S.C. § 7604(e) (emphasis added); *In re MTBE Litig., supra*, 175 F. Supp. 2d at 613, n.35 ("Congress' intent to allow some state causes of action is also evidenced by the CAA's citizen suit savings provision, codified at 42 U.S.C. § 7604(e)"); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492, (1987) (identical savings language in the Clean Water Act "negates the inference that Congress 'left no room' for state causes of action"). The SWDA contains a savings provision identical the CAA provision quoted above. *See* 42 U.S.C. § 6972(f). TSCA contains a similar savings clause, which provides that, except where EPA has promulgated certain rules pertaining to a toxic substance – which it has not in this case – "nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical substance, mixture, or article containing a chemical substance or mixture." 15 U.S.C. §2617(a).[13] Accordingly,

---

[12] Defendants incorrectly refer to the SWDA by its prior name, the Resource Conservation & Recovery Act.

[13] Defendants cite *Bastien v. AT&T Wireless*, 205 F.3d 983 (7th Cir. 2000), for the proposition that a savings clause does not necessarily preclude a finding of complete preemption. Ds' Opp. at

Exhibit 1
Page 10 of 19

Defendants' citations to statutory remedies for non-water related objections to CAA, SWDA and TSCA implementation do not support their "exclusive cause of action" argument.

### 4. Congress and EPA intended to preserve state flexibility, not limit it.

Citing certain statements from the legislative history of the 1990 CAA amendments, Defendants allege that Congress had "the specific knowledge and expectation that MTBE would be the principal means by which refiners met oxygenate requirements." Ds' Opp. at 13. They suggest that this somehow evinces as a congressional intent to "occupy the field" of fuels regulation to the exclusion of state action to remedy water pollution caused by MTBE.[14] This distortion of the legislative history has also been addressed, and rejected, by this Court. As the Court explained in *In re MTBE Litig., supra*:

> [W]hile members of Congress may have anticipated that MTBE would be used to meet the oxygenate requirements, . . . the legislative history of the 1990 CAA amendments indicates that Congress, through the RFG Program, sought to reduce harmful vehicle emissions in the "larger context of market forces, health and environmental impacts, regional priorities, technological feasibility and other considerations." [citation omitted.] Indeed, Congress expected that oxygenates would compete in the marketplace and 'preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA....'

175 F. Supp. 2d at 612-13.

Defendants' selective reference to out of context EPA statements regarding the agency's intent to occupy the field of fuels regulation, *see* Ds' Opp. at 16, 24-25, 28; *citing* 59 Fed. Reg. 7716, 7809 (Feb. 16, 1994), ignores the Agency's own express conclusion that nothing in the CAA fuels programs "establishes a comprehensive federal presence" with respect to MTBE. U.S. EPA, *Approval and Promulgation of*

---

30. But in *Bastien*, unlike the case here, the court found that the plaintiff's claims fell squarely within the express preemption provision of the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A), and that application of the savings clause would thus nullify the preemption provision. 205 F.3d at 987. Here, as described above, this Court, along with every other published decision addressing the question, has found that the CAA's express preemption provision does not apply to state regulation of MTBE in order to prevent water pollution.

[14] Similar attempts by the oil industry to delve into the legislative history of the CAA were rebuffed in *Davis II*, 331 F.3d at 671, where the Court stated: "We hesitate to examine the legislative history, for we find the text of the Act relatively clear."

Exhibit 1
Page 11 of 19

Implementation Plans; Nevada State Implementation Plan Revision, Clark County, 64
Fed. Reg. 29573, 29578 (Jun. 2, 1999), affirmed in ExxonMobil Corp. v. U.S. E.P.A.,
supra, 217 F.3d 1246. According to EPA, "federal regulation here is not so pervasive as
to preclude supplementation by states, nor is the federal interest in the field sufficiently
dominant to preempt state action." 64 Fed. Reg. at 29578. Instead, such programs
"explicitly preserve a role for the states in regulating fuels," and "[w]hile Congress
deliberately rejected a federal mandate that would reduce market opportunities for
various oxygenates, it did this with the goal of preserving state flexibility, not limiting it."
Id. (emphasis added). As Defendants admit, the court in Pataki I, supra, 158 F. Supp. 2d
at 255-57, squarely rejected the industry's attempt to unearth any EPA intent to occupy
this field. In short, Defendants' position has been rejected soundly both by EPA itself
and the courts.

**B.    Removal Under § 1442(a)(1) Is Improper Because Defendants Were Not
Acting Under the Direction of Any Federal Official or Agency.**

Defendants alternatively claim that they were acting under the direction of federal
officers pursuant to 28 U.S.C. §1442(a)(1).[15] The primary beneficiaries of §1442(a)(1)
are federal officers and agencies. Tremblay v. Philip Morris, supra, 231 F. Supp. 2d at
417. For a private party defendant to invoke the statute, it must: (1) assert a colorable
defense based on federal law in the notice of removal; (2) establish that it was acting
under the direction of a federal officer; and (3) show that its federally directed actions are
causally connected to the harm about which the plaintiff complains. Jefferson County v.
Acker, 527 U.S. 423, 431 (1989). Defendants fail on each of these required showings.

**1.    Defendants have no colorable federal defense.**

The only federal defense Defendants raise is conflict preemption. See Ds' Opp. at
32. As discussed above: (1) this Court has already rejected this purported defense in an
earlier phase of this MDL proceeding; and (2) such defense cannot possibly succeed on
the merits in any event, as New York has already banned MTBE and such ban has been
definitively upheld in the courts. Defendants have thus failed to raise a "colorable"
federal defense.

Defendants suggest that their preemption defense is still viable because this Court
"described the . . . issue as one which needed development as a matter of fact." Ds' Opp.
at 32. In In re MTBE Litig, supra, 175 F. Supp. 2d at 616, the Court observed that,
whether alternatives to MTBE "are 'practicable' and have been available to the
defendants for their use in the RFG Program is a question of fact that the Court cannot
address on a motion to dismiss." Subsequently, however, Defendants had the opportunity

---

[15] Section 1442(a)(1) provides, in pertinent part, that an action may be removed to federal court
by "any officer (or any person acting under that officer) of the United States or of any agency
thereof, sued in an official or individual capacity for any act under color of such office." 28
U.S.C. § 1442(a)(1).

Exhibit 1
Page 12 of 19

to prove their case regarding "practicability," and failed. In *Pataki III, supra*, 2003 WL 22845949 at \*9, the court found that Defendants' trade association failed to show that New York's MTBE ban would cause supply shortfalls "sufficient to support a finding of conflict preemption."

> **2.    As private regulated entities that voluntarily *chose* to use MTBE in gasoline despite its known hazards, Defendants never acted under the direction of any federal official.**

Defendants also cannot establish that they undertook their use of MTBE in gasoline and their failure to warn of its known hazards "under the direction" of the federal government. *See Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 945 (E.D.N.Y. 1992) ("the set of defendants who can avail themselves of § 1442(a) is smaller than the set of defendants who can make a colorable claim to a federal defense"). Their attempt to do so fails for at least three reasons: (a) Defendants, as private actors merely complying with federal regulations, fall outside the class of protected persons under § 1442(a)(1); and (b) because Defendants voluntarily chose to use MTBE from among several available options, they cannot plausibly claim that they were acting "under the direction" of EPA.

> **a.    Defendants' compliance with RFG regulations does not transform them into agents of the federal government.**

Defendants' attempt to characterize their choice of MTBE to comply with the federal RFG and OFP programs as "acting under the direction of federal officers or agencies" strains credulity. No published decision ever has held that a private sector manufacturer merely subject to complex regulations, and not acting under the operative *contractual* commands of federal officials, acts "under the direction" of the federal government. *See, e.g., Little v. Purdue Pharma, supra*, 227 F. Supp. 2d at 860-61 ("body of law" does not support position that defendant "merely 'subject to complex regulations'" is entitled to removal under §1442(a)(1)).[16]

Defendants here are not federal contractors; they are not producing products for the government; nor are they performing any other governmental function. Rather, they are private enterprises in the business of manufacturing and selling gasoline. Like virtually every other manufacturing business in the United States, they are subject to a variety of federal environmental regulations. Published federal decisions are unanimous in holding that mere participation in a regulated industry does not constitute "acting under the direction" of the federal government under § 1442(a)(1).

---

[16] *See also generally*, WRIGHT, MILLER & COOPER, *supra*, Ch. 7, § 3727, *and* 166 A.L.R. Fed. 297 (2000) (in all cited cases where corporate manufacturer defendants successfully removed state court tort actions under § 1442(a)(1), the defendants were government contractors and the products at issue were produced for the government pursuant to contractual specifications); *see also Ryan*, 781 F. Supp. at 943 (§ 1442 requires "narrow" and "restrictive" construction).

Exhibit 1
Page 13 of 19

In *Tremblay v. Philip Morris*, 231 F. Supp. 2d 411, 417 (D.N.H. 2002), a cigarette manufacturer removed the plaintiffs' state law deceptive advertising claims under § 1442(a)(1), arguing that by "merely attempting to comply with the FTC's policies … when it engaged in the conduct for which it has been sued," it was acting under the direction of the FTC. The court flatly rejected this argument, holding that "[a]lthough Philip Morris is a participant in a regulated industry, this is not enough to demonstrate that it acted under the direction of a federal officer." *Id*. at 418. The Court explained: "The mere fact that a tobacco company has complied with the requirements of a federal law cannot suffice to transform it into a federal actor any more than the compliance of a myriad of private enterprises with federal law and administrative regulations could of itself work such a transformation." *Id*., quoting *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3rd Cir. 2001).

In *Little v. Purdue Pharma, supra*, 227 F. Supp. 2d at 861, pharmaceutical corporations sued for injuries allegedly caused by the drug OxyContin argued that FDA regulation and approval of the drug made them *de facto* federal officers for purposes of § 1442(a)(1). The court rejected removal, explaining:

> Corporate defendants herein do not operate at the discretion of federal authorities. They are private, for-profit business organizations which exist independently of the federal government. Lest participants in every regulated industry be entitled to "federal officer" status, corporate Defendants need to make a much greater showing than in doing the acts giving rise to Plaintiffs' claims, they were acting pursuant to a federal directive. Acting under the watchful eye of the federal government is not enough.

*Id.*

Similarly, in *Bakalis v. Crossland Savings Bank*, 781 F. Supp. 140, 145 (E.D.N.Y. 1991), the court held that even in cases involving "pervasive regulation" a corporate defendant seeking removal under § 1442(a)(1) must show "'regulation plus'" – *i.e.* that "the corporation is so intimately involved with the government functions as to occupy essentially the position of an employee of the government." Defendants have made no such showing here, nor can they. Indeed, none of the legislative history or EPA regulations cited by Defendants even remotely suggests a federal intent to impose federal *control* over Defendants' refining operations. To the contrary, the legislative history of the 1990 CAA Amendments indicates unequivocally that the RFG program was "in no way intended to resurrect a 1970's DOE-type scheme of detailed government intervention in U.S. gasoline markets." *Pataki I*, 158 F. Supp. 2d at 256-57. Neither the use of MTBE in gasoline nor the harm it has wrought, is anyone's fault but Defendants' own. There is no jurisdiction under § 1442(a)(1).

Exhibit 1
Page 14 of 19

Defendants' sole support for their novel position to the contrary is *Watson v. Philip Morris*, No. 4:03-CV-519 GTE (E.D. Ark., Dec. 12, 2003), a recent unpublished opinion out of the Eastern District of Arkansas. As the *only* case to ever hold that a private consumer product manufacturer's mere compliance with federal rules constitutes "acting under the direction of a federal officer" for purposes of section 1442(a)(1), *Watson* is clearly an aberration, and should be ignored.[17] *Tremblay, Brown* and *Little* should control here. To hold otherwise would create a loophole in this narrow removal statute large enough to accommodate the proverbial Mack Truck.

> **b.**     **There is no causal connection between RFG program requirements and the conduct targeted by this lawsuit because refiners voluntarily chose to use MTBE from among several available options.**

The CAA mandates *oxygen* content, not MTBE. 42 U.S.C. § 7545(k)(2)(B). *Every* published decision that has addressed the issue has concluded that neither the CAA nor its implementing regulations requires refiners to use MTBE or any particular oxygenate in order to meet RFG requirements. *See, e.g., In re MTBE Litig.*, 175 F. Supp. 2d at 615 (RFG Program does not mandate the use of MTBE); *ExxonMobil, supra*, 217 F.3d at 1251-53 (CAA "does not mandate a 'recipe' or so-called government gas"); *Davis I*, 163 F. Supp. 2d at 1188 (CAA neither requires nor forbids the use of any particular oxygenate ... [i]ts 'goal' is to assure a particular oxygen content"). Defendants' use of MTBE is a matter of voluntary corporate choice, not a "necessary result" of CAA directives.

Defendants' choice to use MTBE breaks any causal connection between EPA's RFG and OFP regulations and Defendants' use of MTBE. *See Good v. Armstrong World Industries*, 914 F. Supp. at 1130 (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos); *Ryan v. Dow Chemical Co., supra*, 781 F. Supp. at 950 (no nexus between design defect claim and defendants' provision of Agent Orange to the military, because defendant was "being sued for formulating and producing a product all of whose components were developed without direct government control and all of whose methods of manufacture were determined by defendants"); *accord, Little, supra*, 227 F. Supp. 2d at 861 (because FDA was not involved in the "day-to-day drug development and manufacturing process," defendants were "operating at their own initiative"); *Arness v. Boeing North America, Inc.*, 997 F. Supp. 1268, 1275 (C.D. Cal.

---

[17] In any event, *Watson* is easily distinguishable from this case. In *Watson*, Philip Morris was sued for deceptive advertising in connection with tar and nicotine ratings derived from a testing method mandated by the FTC. Thus, the court concluded, plaintiffs' misleading advertising claim "squarely confronts the FTC's mandate." *Watson* at 23. Here, as explained below, there is no causal connection whatsoever between Defendants' federal clean air obligations and the water pollution-related conduct at issue in this lawsuit, because Defendants voluntarily chose to use MTBE from among several available options.

Exhibit 1
Page 15 of 19

1998) (target conducted in groundwater contamination case against manufacturers of government rocket engines – failing to warn and improperly disposing of trichloroethylene ("TCE") – was not "under the direction" of the government, even though the government contracts at issue had specifically required use of TCE). As the government does *not* require use of MTBE, Defendants cannot fairly argue that federal directives "caused" the conduct on which the District bases its common law and statutory claims.

**C.** **The Court Should Remand This Case Because It Is Not "Related To" The Texaco Bankruptcy, and Even If It Were, the Remand Provision Under 28 U.S.C. § 1452(b) Applies Squarely To This Case.**

This Court should also reject Defendants' alternative assertion of federal bankruptcy jurisdiction. Their contention that these state-law environmental contamination lawsuits against numerous defendants represents a purported "collateral attack" against a 15-year-old bankruptcy order pertaining to a single defendant fails because: (1) federal jurisdiction is lacking in the first instance, as this case neither arises under Title 11, arises in a case under Title 11, nor is "related to" a case under Title 11; (2) remand is obviously warranted in light of the overwhelming – indeed, exclusive – predominance of state-law issues on the one hand, and the extreme remoteness of any bankruptcy issues on the other.[18]

**1.** **Federal bankruptcy jurisdiction is lacking in the first instance, as this case is not "related to" the Texaco Bankruptcy.**

Texaco, Inc. filed for bankruptcy under Title 11 in 1987 and obtained confirmation of its reorganization plan in 1988. *In re Texaco, Inc.*, 84 B.R. 893 (S.D.N.Y. 1988). Because the 15-year-old Title 11 proceedings (the "Texaco Bankruptcy") are no longer being administered, and the rights of all creditors already have been determined in the Confirmation Order, the outcome of this case will have absolutely no effect on *the administration of* the Bankruptcy. It is, therefore, not "related to" this action, and cannot form a basis for federal jurisdiction.

Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Cases "arising under" Title 11 are those cases in which the cause of action is created by title 11, and those "arising in a case under" Title 11 are those that, while not based on any right expressly created by title 11, nevertheless "would have no existence outside of the bankruptcy." *In re Chargit Inc.*, 81 B.R. 243, 246-247 (Bankr.

---

[18] In addition, as the New York Plaintiffs' ably point out in their Reply Brief, nothing in either Defendants' removal notices or the operative complaints demonstrate that any of the Plaintiffs' claims that may pertain to Texaco "arose" prior to entry of Texaco's Confirmation Order, or are even covered by the Confirmation Order.

Exhibit 1
Page 16 of 19

S.D.N.Y. 1987). This case undoubtedly does *not* fit into either of these jurisdictional categories, as the exclusively state-law causes of action asserted in the complaints "exist independently of bankruptcy law." *See Williams v. Shell Oil Co*, 169 B.R. 684, 688 (S.D. Cal. 1994).

Defendants' contrary suggestion – that this case "invokes substantive rights created by the federal bankruptcy laws" (Ds' Opp. at 5) – has absolutely no merit. Each of the three cases they cite is easily distinguishable from this case. Neither *In re National Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997), *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 6 F.3d 1184 (7th Cir. 1993) nor *Texaco, Inc. v. Sanders (In re Texaco, Inc.)* 182 B.R. 937 (Bankr. S.D.N.Y. 1995) involved a motion to remand a state court action that had been removed to federal court by the debtor. Instead, each involved actions brought originally in federal bankruptcy court. For example, *Texaco v. Sanders* involved a motion by the debtor (Texaco) to reopen its bankruptcy proceeding and enforce its Confirmation Order against the plaintiffs in a state court case. *Id*. at 940-41. The federal bankruptcy court granted Texaco's motion on the common sense grounds that "a proceeding such as this, *to enforce and construe a confirmation order issued by this Court in this case*, constitutes a proceeding 'arising in or related to a case under title 11'" under § 1334(b). *Id*. at 944 (emphasis added). Thus, the Texaco bankruptcy court did not, and was not asked to, address the question presented here: whether a state tort suit (potentially) involving (some) pre-Confirmation Order Texaco conduct, and filed years after entry of such Order, is "related to" the Bankruptcy. The answer to this question, as explained above, is "no."[19]

Nor is this case "related to" the long-since-resolved Texaco Bankruptcy. Whether a civil proceeding is "related to" bankruptcy depends on "whether the outcome of the proceeding could conceivably have any effect on the estate *being* administered." *In re Chargit Inc., supra*, 81 B.R. at 247(emphasis added). "Although the optimist may argue that anything is 'conceivable,' any practical definition of this term of art must be tempered by a measure of reasonableness." *Id*. There is no conceivable chance that this case will affect the administration of the Texaco Bankruptcy, because it is no longer being administered.

By definitively discharging any and all claims or liabilities arising before its effective date, entry of the Texaco Confirmation Order fifteen years ago destroyed any possible relationship between the outcome of this suit and the *administration of* the Texaco Bankruptcy. *See In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988).[20] As is evident

---

[19] The string of recent, simultaneously decided cases from the Southern District of Texas cited by Defendants in favor of their bankruptcy arguments should be disregarded. Although they involved motions to remand, the court's decisions in these cases were predicated expressly on *Texaco v. Sanders*, which, as described above, has no bearing on this case.

[20] *Feitz* involved a cross-claim filed by a debtor's wife against a mortgagee in her husband's bankruptcy proceeding. The cross-claim was filed a mere four months after the bankruptcy

Exhibit 1
Page 17 of 19

from their complaints, which say nothing at all about the Texaco bankruptcy, the New York Plaintiffs surely have no interest in re-opening such Bankruptcy or "collaterally attacking" the Confirmation Order. The mere fact that allegations in the complaints may potentially cover some pre-1988 conduct of Texaco does not furnish grounds for federal "related to" jurisdiction under § 1334(b). Rather, it means only that Texaco may have a discharge defense based on the Confirmation Order as to some small portion of its liability – a defense that a state court is fully capable of adjudicating. *See In re McGhan*, *supra*, 288 F.3d at 1180 ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

> ## 2.    There are also ample grounds for the court to remand this action pursuant to § 1452(b).

Defendants acknowledge, as they must, that the District Court's jurisdiction over bankruptcy proceedings is concurrent with that of state courts. 28 U.S.C. § 1334(b); *see* Ds' Opp. at 3. Thus, even if these actions were "related to" the Texaco Bankruptcy pursuant to § 1334(b) – which they are not – the Court should remand them to state court nonetheless, pursuant to 28 U.S.C. §1452(b).[21]

Section 1452(b) provides that "the court to which [a] claim or cause of action is removed [pursuant to § 1334 jurisdiction] may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). In determining whether to exercise their equitable discretion under this statute, courts generally consider the following factors: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the

---

court's entry of a confirmation order as to the bankruptcy estate. *Id.* at 456. Like the Texaco Confirmation Order at issue here, the confirmation order in *Feitz* precluded creditors from asserting any other interest than that provided for them in the confirmed plan. *Id.* at 458. The Ninth Circuit held there was no federal "related to" jurisdiction over the cross-claim because entry of the confirmation order "*destroyed any possible relationship between the outcome of the suit and the administration of the bankruptcy estate.*" *Id.* (emphasis added).

[21] While we recognize that some cases in this Circuit have questioned whether the mandatory abstention provision in 28 U.S.C. §1334(c)(2) applies to removed cases, *see Rennaisance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 13 (S.D.N.Y. 2002), we note that conditions for mandatory abstention are met in this case. *See Allied Mechanical and Plumbing v. Dynamic Hostels Housing Dev. Fund Co.*, 62 B.R. 873, 876 (Bankr.S.D.N.Y.1986) (setting out mandatory abstention factors). The pending remand motions were filed as soon as practicable following service of the notices of removal. These lawsuits, which could not have been commenced in the District Court absent the alleged bankruptcy issue, are based exclusively on state-created rights, have been commenced in state court and are capable of timely adjudication there once remanded.

Exhibit 1
Page 18 of 19

main bankruptcy case; and (6) the existence of the right to a jury trial. *Rennaisance Cosmetics, Inc., supra,* 277 B.R. at 14.

Here, every factor favors remand: (1) the effect of these actions on the administration of the Texaco Bankruptcy is, at most, incredibly remote; (2) the actions are based entirely on state-law causes of action; (3) as Defendants are sure to argue in motions to come, the cases raise difficult questions of state tort law, as well as complex, site-specific factual issues; (4) as New York law predominates, these cases are brought by subdivisions of the state and involve environmental and public issues of statewide importance, principles of comity clearly favor remand; (5) as described above, the remoteness of these cases to the Texaco Bankruptcy is extreme; and (6) the Plaintiffs' claims are triable by a jury. In light of these factors, and the fact that the New York state courts are fully capable of resolving any potential, remote Confirmation Order defense Texaco may assert, the equities not only favor, but demand, a remand of this case to state court. As the court concluded in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 408 (S.D.N.Y. 1991), these are "state law action[s] and a state court is better able to respond to a suit involving state law."

## CONCLUSION

This Court does not have subject matter jurisdiction over these actions. Even assuming the Court has jurisdiction over the Texaco Bankruptcy, the equities obviously favor remand. Accordingly, the Court should grant the instant motions for remand.

We will serve copies of this letter on the other counsel involved in these cases and those identified in the schedule attached to the Court's December 23rd Order.

Respectfully submitted,

VICTOR M. SHER

VMS: jac
cc: All Counsel per attached Service List

Exhibit 1
Page 19 of 19

◄COX CASTLE NICHOLSON►

Cox, Castle & Nicholson LLP
555 Montgomery Street, 15th Floor
San Francisco, California 94111-2585
P 415.392.4200  F 415.392.4250

Robert P. Doty
415.262.5115
rdoty@coxcastle.com

**received**
01/05/04 email

January 5, 2004

**VIA FACSIMILE AND FEDERAL EXPRESS**

The Honorable Shira Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1050
New York, NY 10007-1312

  Re: Order dated December 23, 2003 in In re MTBE Products Liability Litigation
    (MDL 1358); Master File C.A. No. 1:00-1898 (SAS)

Dear Judge Scheindlin:

   This firm is counsel and co-counsel to certain defendants in three of the California actions addressed by the referenced Order. We were counsel to one of those entities in a prior MTBE case tried in California state court (the litigation concerning the drinking water at the south end of Lake Tahoe). We write to express our concerns with the potential for the Court's Order to implicate issues apart from the narrow question of remand.

   In the action captioned *City of Fresno v. Chevron U.S.A., Inc. et al.* C 03-5378-JSW (N.D. Cal.), we represent three entities affiliated with Duke Energy. The Duke defendants are alleged middlemen in the gasoline supply chain as it relates to the City of Fresno matter (i.e., they neither manufacture MTBE, blend it into gasoline at a refinery, nor operate underground storage tanks that may have released MTBE-containing gasoline). In the action captioned *People v. Unocal Corp., et al.* CIV S-032653 GEB/DAD (E.D. Cal.), we represent the 7-Eleven convenience store chain, a retailer alleged to be partly responsible for the alleged contamination. We are co-counsel for 7-Eleven in the action captioned *Orange County Water District v. Unocal Corp. et al.* SACV03-1742 JVS(Anx) (C.D. Cal.).

   Duke and 7-Eleven were asked some weeks ago to consent to removal of these actions. In each instance they did so (or have indicated they would do so) in a court filing expressing the following: (1) the consent was provided "[w]ithout joining in, adopting, or endorsing the contentions offered as grounds for removal" and (2) the consent was provided with "express disagree[ment] with any suggestion that may be included in the Notice Of Removal that [a particular] case should be transferred out of the . . . California [district courts]." Consistent

Exhibit 2
Page 1 of 4

The Honorable Shira Scheindlin
January 5, 2004
Page 2

with the second point, Duke and 7-Eleven are concerned that the December 23rd Order may be used to vitiate their opportunities to oppose MDL consolidation of these cases.[1]

       The first paragraph of the Order speaks in terms of the remand issue only. Duke and 7-Eleven appreciate the logic of having the propriety of federal removal jurisdiction, *vel non*, decided by a single federal court, so they have no per se objection to consolidated treatment of that issue. Indeed, other than a strong desire not to litigate these cases twice as a result of an invalid exercise of removal jurisdiction, the remand issue is not of great concern to Duke or 7-Eleven.

       If, however, the Court's consideration and resolution of the remand issue carries with it some implicit determination that MDL consolidation is appropriate for all pretrial proceedings in the California litigation, Duke and 7-Eleven would strenuously object. Both are concerned that such an implicit determination might be asserted later by other litigants, on the grounds that MDL status was effectively extended to these cases by virtue of the fact that the Southern District exercised jurisdiction over the remand issue in the California litigation. Because silence in response to the Court's Order might be asserted to constitute acceptance of such a theory or a waiver of objections to de facto MDL consolidation, or might be argued to work an estoppel against Duke or 7-Eleven, they are submitting this letter.

       Duke and 7-Eleven oppose any such implicit determination, waiver, or estoppel because they presently are planning to file objections with the MDL panel if conditional transfer orders are issued by the clerk of the MDL panel for the cases in which Duke and 7-Eleven are involved. The gist of their opposition is as follows.

       With the exception of the removal jurisdiction/remand issue, MTBE litigation is sufficiently mature at this point that MDL handling is not warranted. The potentially dispositive motions, including federal preemption, have been litigated in both state and federal courts with remarkably consistent outcomes. State laws banning MTBE have now been upheld by federal district and appellate courts in New York and California, both before and after trial. As a result, threshold legal questions seem unlikely to require significant additional judicial energy. Furthermore, a great deal if not all of the generally applicable discovery (regarding the history of and the alleged skullduggery behind the widespread use of MTBE as a fuel oxygenate) already has been completed in connection with the South Lake Tahoe matter and other matters that have

---

[1] The first caveat reflects our concern about the legal basis for federal removal jurisdiction and our desire not to litigate these cases twice, once through the federal system and then a second time should removal jurisdiction be found invalid on appeal. Our research to this point leaves us with considerable doubt as to the validity of removal jurisdiction, hence the wording of the consents. If the Court proceeds with consolidated consideration of the remand motions, Duke and 7-Eleven will address this issue in more detail in a filing submitted consistent with the deadlines in the Order.

Exhibit 2
Page 2 of 4

The Honorable Shira Scheindlin
January 5, 2004
Page 3

or are currently working their way through the state courts notwithstanding the recent flurry of removal notices.

In sum, 7-Eleven and Duke submit that is a considerable stretch to characterize MTBE litigation as a gathering storm that will produce a blizzard of motions and conflicting opinions. Duke and 7-Eleven further submit that as with other co-mingled contamination cases, the MTBE cases now revolve around location-specific issues: the extent of contamination, the available remedies, the implementation of those remedies, and the equitable apportionment of liability. With all due respect to the Court and the MDL panel, we submit that the Southern District of New York is not the most efficient forum in which to handle such issues as they relate to contaminated groundwater in Fresno, California (or Sacramento or Orange County for that matter).

For the foregoing reasons, Duke and 7-Eleven object to the arrangement proposed in the Court's Order unless the Court's consideration of the remand issue is somehow done without prejudice to 7-Eleven's and Duke's rights to oppose MDL consolidation of the cases in which Duke and 7-Eleven are involved.

The undersigned's office will serve copies of this letter by facsimile on the other counsel involved in the California cases identified above. We will work with counsel in those cases to obtain service lists for the other MTBE cases identified in the schedule attached to the Court's December 23rd Order and will serve those counsel by facsimile as promptly as possible.

We thank the Court in advance for its consideration.

Very truly yours,

Robert P. Doty

44510\38349v1
cc:    All Counsel

Exhibit 2
Page 3 of 4

The Honorable Shira Scheindlin
January 5, 2004
Page 4


bcc:    Ron Haggerty (Duke)
        Courtney Jones (for 7-Eleven)
        Dave Moore
        Rick Kranz
        Alicia Vaz
        Karleen O'Connor

Exhibit 2
Page 4 of 4

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA          )
                             )    ss
COUNTY OF SAN FRANCISCO      )

*Orange County Water District v. Unocal Corporation, et al.*
USDC Case No. 03-CV-1742 JVS (ANx)

     I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to this action. My business address is 450 Mission Street, 5th Floor, San Francisco, CA 94105.

     On FEBRUARY 6, 2004, I served the following documents described as:

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO STAY PROCEEDINGS; DECLARATION OF VICTOR M. SHER**

[ X ] by placing true copies thereof in sealed envelope(s) addressed as follows:

<strong>SEE ATTACHED SERVICE LIST</strong>

[ X ] **(BY MAIL)** I caused to such envelope to be deposited in the mail at San Francisco, California with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit. Executed on FEBRUARY 6, 2004, at San Francisco, California.

[ X ] **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Julie Choate

21

## SERVICE LIST

| | |
|---|---|
| Duane C. Miller, Esq.<br>A. Curtis Sawyer, Jr., Esq.<br>Daniel Boone, Esq.<br>MILLER & SAWYER<br>1651 Response Road, Second Floor<br>Sacramento, CA 95815<br>Tel: (916) 927-8600<br>Fax: (916) 927-9267 | Attorneys for Plaintiff:<br>Orange County Water District |
| Matthew T. Heartney, Esq.<br>Lawrence A. Cox, Esq.<br>Stephanie M. Bonnet, Esq.<br>ARNOLD & PORTER<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844<br>Tel: (213) 243-4000<br>Fax: (213) 243-4199 | Attorneys for Defendants:<br>Atlantic Richfield Company<br>BP Products North America, Inc. |
| Alan J. Hoffman, Esq.<br>BLANK ROME LLP<br>One Logan Square<br>18th and Cherry Street<br>Philadelphia, PA 19103-6998<br>Tel: (215) 569-5500<br>Fax: (215) 569-5341 | Attorneys for Defendant:<br>Lyondell Chemical Company formerly<br>known as ARCO Chemical Company |
| H. Lee Godfrey, Esq.<br>Vineet Bhatia, Esq.<br>SUSMAN GODFREY, LLP<br>1000 Louisiana Street, Ste. 5100<br>Houston, Texas 77002-5096<br>Tel: (713) 651-9366<br>Fax: (713) 654-6666 | Attorneys for Defendant:<br>Lyondell Chemical Company formerly<br>known as ARCO Chemical Company |
| Joshua M. Rodin, Esq.<br>SUSMAN GODFREY, LLP<br>1901 Avenue of the Stars, Ste. 950<br>Los Angeles, California 90067-6029<br>Tel: (310) 789-3100<br>Fax: (310) 789-3150 | Attorneys for Defendant:<br>Lyondell Chemical Company formerly<br>known as ARCO Chemical Company |
| Tracie J. Renfroe, Esq.<br>M. Coy Connelly, Esq.<br>BRACEWELL & PATTERSON, LLP<br>711 Louisiana St., Ste. 2900<br>Houston, Texas 77002<br>Tel: (713) 221-1404<br>Fax: (713) 221-2123 | Attorneys for Defendants:<br>Ultramar, Inc.<br>Valero Refining Company-California |

22

| | | |
|---|---|---|
| 1 | Jon D. Anderson, Esq. | Attorneys for Defendant: |
| | Michele D. Johnson, Esq. | ConocoPhillips Company individually |
| 2 | LATHAM & WATKINS LLP | and as successor-in-interest to Defendant |
| | 650 Town Center Drive, Ste. 2000 | Tosco Corporation |
| 3 | Costa Mesa, California 92626 | |
| | Tel: (714) 540-1235 | |
| 4 | Fax: (714) 755-8290 | |
| | | |
| 5 | William D. Temko, Esq. | Attorneys for Defendants: |
| | MUNGER, TOLLES & OLSON LLP | Shell Oil Company |
| 6 | 355 Grand Ave. Ste. 3500 | Texaco Refining & Marketing, Inc. |
| | Los Angeles, CA 90071 | Equilon Enterprises LLC |
| 7 | Tel: (213) 683-9100 | |
| | Fax: (213) 687-3702 | |
| 8 | | |
| | Hojoon Hwang, Esq. | Attorneys for Defendants: |
| 9 | MUNGER, TOLLES & OLSON, LLP | Shell Oil Company |
| | 33 New Montgomery St., 19th Floor | Texaco Refining & Marketing, Inc. |
| 10 | San Francisco, CA 94105 | Equilon Enterprises LLC |
| | Tel: (415) 512-4000 | |
| 11 | Fax: (415) 512-4077 | |
| | | |
| 12 | Brendan M. Dixon, Esq. | Attorney for Defendants: |
| | 376 South Valencia Ave. | Unocal Corporation |
| 13 | Brea, CA 92823 | Union Oil Company of California |
| | Tel: (714) 577-2933 | |
| 14 | Fax: (714) 577-2980 | |
| | | |
| 15 | David L. Schrader, Esq. | Attorneys for Defendants: |
| | Michael T. Zarro, Esq. | Chevron U.S.A. Inc. |
| 16 | Allison N. Shue, Esq. | Chevron Texaco Corporation |
| | MORGAN, LEWIS & BOCKIUS LLP | |
| 17 | 300 South Grand Ave., 22nd Floor | |
| | Los Angeles, CA 90071-3132 | |
| 18 | Tel: (213) 612-2500 | |
| | Fax: (213) 612-2501 | |
| 19 | | |
| | Colleen P. Doyle, Esq. | Attorneys for Defendants: |
| 20 | Diana Pfeffer Martin, Esq. | Exxon Mobil Corporation |
| | Catherine M. Stites, Esq. | Mobil Corporation |
| 21 | BINGHAM McCUTCHEN LLP | |
| | 355 South Grand Ave., Ste. 4400 | |
| 22 | Los Angeles, CA 90071-3106 | |
| | Tel: (213) 680-6400 | |
| 23 | Fax: (213) 680-6499 | |
| | | |
| 24 | Craig J. de Recat, Esq. | Attorney for Defendant: |
| | MANATT, PHELPS & PHILLIPS, LLP | USA Gasoline Corporation |
| 25 | 11355 W. Olympic Blvd | |
| | Los Angeles, California 90064 | |
| 26 | Tel: (310) 312-4000 | |
| | Fax: (310) 312-4224 | |
| 27 | | |
| 28 | | |

23

1   Robert P. Doty, Esq.                          Attorney for Defendant:
    COX, CASTLE, & NICHOLSON, LLP                 7-Eleven, Inc.
2   555 Montgomery St., 15th Floor
    San Francisco, California 94111-2585
3   Tel: (415) 392-4200
    Fax: (415) 392-4250
4
5   David G. Moore, Esq.                          Attorney for Defendant:
    REID & HELLYER                                7-Eleven, Inc.
    PO Box 1300
6   Riverside, CA 92502-1300

7   Michael Gray                                  Agent for Service of Process:
    16868 A Street                                G & M Oil Company
8   Huntington Beach, CA 92647

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO STAY MOTION; SHER DECL -- Case No. SACV 03-1742 JVS (ANx)

N

1   Victor M. Sher, SBN 96197                          [Exempt from Filing and
    Todd E. Robins SBN 191853                     Motion Fees- Govt. Code § 6103]
2   Lynda M. Collins, SBN 229029
    SHER & LEFF, LLP
3   450 Mission Street, 5th floor
    San Francisco, CA 94105
4   Telephone: (415) 348-8300
    Facsimile: (415) 348-8333
5
    Scott Summy, *Admitted in Texas*
6   Celeste A. Evangelisti, SBN 225232
    BARON & BUDD, P.C.
7   3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219-4281
8   Telephone: (214) 523-6267
    Facsimile: (214) 520-1181
9
10  Attorneys for Plaintiff: QUINCY COMMUNITY SERVICES DISTRICT

11            IN THE UNITED STATES DISTRICT COURT

12        FOR THE EASTERN DISTRICT OF CALIFORNIA

13  QUINCY COMMUNITY SERVICES          )   Case No. CIVS-03-2582 LKK/DAD
    DISTRICT,                          )
14                                     )   Hon. Lawrence K. Karlton
                                       )   (Senior District Judge)
15                                     )
                                       )   MEMORANDUM OF POINTS AND
16            Plaintiff,               )   AUTHORITIES IN SUPPORT OF
                                       )   PLAINTIFF'S MOTION FOR
17      vs.                            )   RECONSIDERATION OF JANUARY
                                       )   28, 2004 ORDER GRANTING
18                                     )   MOTION FOR STAY AND DENYING
                                       )   MOTION FOR REMAND;
19  ATLANTIC RICHFIELD COMPANY, et al.,)   DECLARATION OF VICTOR M.
                                       )   SHER IN SUPPORT THEREOF
20                                     )
                                       )   Hearing Date:  March 8, 2004
21                                     )   Time: 10:00 a.m.
                                       )   Department: Courtroom 4
22            Defendants.              )            501 I Street, Suite 4-200
                                       )            Sacramento, CA  95814
23                                     )
24
25
26
27
28

# I.   **INTRODUCTION**

Plaintiff Quincy Community Services District ("Plaintiff") respectfully asks the Court to reconsider its January 28, 2004 Order ("January 28 Order") granting certain defendants'[1] Motion to Stay ("Stay Motion") and denying Plaintiff's Motion to Remand ("Remand Motion"). The Court should reconsider, and rescind, the January 28 Order for the following reasons:

1.  The January 28 Order was entered before Plaintiff had an opportunity to be heard on the Stay Motion – a motion which Plaintiff intended to, and does, vigorously oppose.[2] *See, e.g., Heinz v. Commissioner of Internal Revenue*, 770 F.2d 874, 875-876 (9th Cir. 1985) (error not to assure parties have "a full and fair opportunity to ventilate the issues involved in the motion" before ruling); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (upholding district court's rescission of order entered before opposing party submitted opposition brief);

2.  The Court's ruling contravenes the "requirement that jurisdiction be established as a *threshold* matter," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (jurisdiction-first rule "is inflexible and without exception"), and is contrary to the recent decision by Judge Shubb of this Court that "jurisdiction is a preliminary issue that should be resolved at the outset," despite the possibility of an MDL transfer, *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002), as well as the overwhelming weight of authority on this point, *see, e.g., Villarreal v. Chrysler Corp.*, No. C-95-4414 FMS, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996) ("judicial economy will best be served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum");

---

[1] The defendants that have moved for a stay are Chevron U.S.A., Inc., ChevronTexaco Corp., Atlantic Richfield Company, Tesoro Refining and Marketing Company, Shell Oil Company and Shell Oil Products U.S. (collectively, "Defendants").

[2] Pursuant to the simultaneous hearing and briefing schedules agreed to by the parties for the Remand and Stay Motions, Plaintiff's Opposition to the Stay Motion was not due until February 20, 2004. A copy of a [Proposed] Opposition, which Plaintiff intends to file if this Motion is granted, is submitted herewith as Exhibit 1 to the attached Declaration of Victor M. Sher.

3.  The December 23, 2003 order entered by the Hon. Shira A. Scheindlin in several unrelated cases pending in the U.S. District Court for the Southern District of New York ("Scheindlin Order"), on which the January 28 Order relies, has no binding effect on this Court, *see, e.g., Newton v. Thomason* 22 F.3d 1455, 1460 (9th Cir. 1994) (a federal court is not bound by federal court decisions outside its own circuit).  Nor was the Scheindlin Order even intended to affect cases (like this one) involving parties not represented by counsel present at the December 19, 2003 hearing in New York that resulted in the Order. In fact, Plaintiff had no opportunity to participate in the New York hearing, was not a party to the stipulations on which that Order is expressly based, and has not agreed to any transfer of this action to MDL 1358 or a stay of this action pending any such transfer.  To the contrary, Plaintiff has strenuously objected to any such stay or prospective transfer; and

4.  At a very minimum, the Court should rescind that portion of the January 28 Order denying Plaintiff's Remand Motion, as no opposition to such Motion has been filed in this case, the Court has had no chance to consider the Motion on its merits, and neither Defendants' Stay Motion, the Scheindlin Order, nor any of the authorities cited in the January 28 Order contemplates denial of Plaintiff's remand motion in these circumstances.

## II.    PROCEDURAL BACKGROUND

On or about December 15, 2003, certain defendants filed a Notice of Removal, removing this action from the Sacramento County Superior Court where it was filed.  In connection with their Notice of Removal, certain defendants apparently also filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358, *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a currently inactive MDL proceeding pending before Judge Scheindlin in the Southern District of New York, although Plaintiff has never received copies of any such notice. *See* Declaration of Victor M. Sher, ¶ 2. MDL No. 1358 involved several consolidated "actions brought on behalf of *private* well-owners seeking relief from the contamination or threatened contamination of their wells" by MTBE." *In re: MTBE*, 175 F. Supp. 2d 593, 598 (S.D.N.Y. 2001) (emphasis added). The court denied class certification in the matter (*see In Re: MTBE*, 209 F.R.D. 323 (S.D.N.Y. 2002)) and all the cases were resolved.  However, Defendants contend that the proceeding is technically still

1   pending.  Defendants' Memorandum of Points and Authorities/ Declaration of David Schrader in

2   Support of Stay Motion ("Ds' MPA") at 2, n.1.

3           On December 19, 2003, Judge Scheindlin held a hearing in connection with several recently-

4   filed New York MTBE cases that were removed to federal court and assigned to her courtroom (the

5   "New York Hearing").  *See* Transcript of New York Hearing (attached as Exhibit 2 to Ds' MPA).  At

6   that Hearing, the parties present before Judge Scheindlin (who did *not* include Plaintiff) stipulated to a

7   transfer of *their* cases to MDL 1358.  *Id.* at 28-33.  In addition, counsel for those parties further

8   stipulated to support transfer of other cases involving other parties *they represented* to MDL 1358.  *Id.*

9   That stipulation resulted in Judge Scheindlin's December 23, 2003 order (the "Scheindlin Order")

10  requesting that other federal courts enter stays in "similar removed actions."

11          Plaintiff had no chance to participate at the New York Hearing, has not agreed to the

12  procedures stipulated to by the parties at that Hearing, and has strenuously objected to any prospective

13  transfer of its case to the Southern District of New York.  *See* Sher Decl., ¶ 6; Exhibits 2-3.  At the

14  same time, the JPML has not yet even issued a conditional transfer order, and Plaintiff therefore has

15  not yet had an opportunity to exercise its rights under the Multidistrict Rules to object to and oppose

16  such transfer.  *Id.*, ¶ 2.  On January 5, 2004, Plaintiff's counsel notified Judge Scheindlin by letter of

17  Plaintiff's objections to the Scheindlin Order and its intent to oppose transfer of this action to MDL

18  1358, *if and when* the JPML issues a conditional transfer order.  *Id.*, Exhibit 2.  On January 27, 2004

19  Plaintiff's counsel sent a second letter to Judge Scheindlin reiterating its position (and offering its

20  views on the remand motions pending in that court).  *Id.*, Exhibit 3.

21          Meanwhile, in California, Plaintiff filed its Motion for Remand in this Court on December 22,

22  2003, which was originally scheduled for hearing on February 23, 2004.  Defendants filed their Motion

23  to Stay on or about December 13, 2003, which was originally scheduled for hearing on February 9,

24  2004.  However, hearing dates for the Remand and Stay Motions were later vacated by the Court due

25  to reassignment of the case.  The parties subsequently re-noticed their respective Remand and Stay

26  Motions for March 8, 2004, pursuant to an agreement between counsel to coordinate briefing and

27  hearing schedules for the dueling Remand and Stay motions in this and other MTBE-related cases in

28  California.  *See* Sher Decl. ¶ 3.  Pursuant to the Federal Rules of Civil Procedure, related local rules

1   and the parties' agreement, Plaintiff's opposition to Defendants' Stay Motion and Defendants'

2   opposition to Plaintiff's Remand motion were both supposed to be due on February 20, 2004. *Id.*

3   However, on January 28, 2004, prior to the filing of any opposition to either of the pending Motions,

4   the Court entered its January 28 Order.

## III.   LEGAL ARGUMENT

6   The Court should reconsider and rescind the January 28 Order for at least three reasons.[3] First,

7   the Court granted Defendants' Stay Motion without the benefit of Plaintiff's brief in opposition to

8   such Motion.  Second, the January 28 Order is contrary to the overwhelming weight of authority,

9   including a recent decision from Judge Shubb of this Court, which holds that paramount jurisdictional

10   concerns, judicial economy and fairness all favor resolution of jurisdictional questions on a motion to

11   remand *prior* to consideration of a stay pending MDL transfer.  Finally, it appears that the Court

12   predicated the January 28 Order on two substantive misimpressions: (1) that Judge Scheindlin

13   intended to affect cases involving parties not represented by counsel before her; and/or (2) that

14   Plaintiff has consented to the procedures or provisions set forth in the Scheindlin Order.  Plaintiff

15   (until now) has not had an opportunity to correct or clarify these incorrect facts and circumstances.

**A.   Reconsideration of the January 28 Order Is Warranted Because Plaintiff Never Briefed
the Issues On Which It Is Based.**

17   The first, and most obvious, reason the Court should reconsider its January 28 Order is that the

18   Court granted Defendants' Stay Motion without first hearing from Plaintiff.  As the Ninth Circuit has

---

[3]  This Court clearly has discretion to reconsider and vacate a prior order.  *See City of Los Angeles v. Santa Monica Baykeeper, supra,* 254 F.3d at 885 (a district court has "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen fit by it to be sufficient"); Federal Rule of Civil Procedure ("FRCP") Rule 54(b) (interlocutory orders are "subject to revision at any time before the entry of judgment"); *see also Motorola, Inc. v. JB Rodgers Mechanical Contractors,* 215 F.R.D. 581 (D. Arizona 2003) ("[w]hile the common law and [FRCP] Rule 54(b) may provide distinct sources for this Court's authority to reconsider its rulings, it appears that the approach should be the same under both"), *citing Souza v. Ashcroft,* 2001 WL 823816, *3 n. 2, 2001 U.S. Dist. LEXIS 10219, *9 n. 2 (N.D. Cal. 2001).  Under Local Rule 78-230(k), a party seeking reconsideration of an order granting or denying a motion must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  LR 78-230(k)(3).  If new or different facts or circumstances are presented, the moving party must show "why the facts or circumstances were not shown at the time of the prior motion."  LR 78-230(k)(4).

emphasized repeatedly, courts should give parties "a full and fair opportunity to ventilate the issues

involved in the motion" before ruling *sua sponte*. *Heinz v. Commissioner of Internal Revenue*, 770

F.2d 874, 875-876 (9th Cir. 1985) (district court commits error when it *sua sponte* grants a motion

"never briefed" by the opposing party); *accord, e.g., Baykeeper, supra*, 254 F.3d 882 (upholding

district court's decision to rescind its own prior order entered before opposing party submitted

opposition brief).  Fundamental fairness requires at least granting Plaintiff a "full and fair" opportunity

to be heard before staying its action.

**B.**    **This Court Should Consider Jurisdiction First, Before Deciding On Any Potential Stay Pending Possible MDL Transfer.**

In addition, the January 28 Order is, with all due respect, contrary to applicable law.  As such,

it is properly subject to reconsideration by the Court.  *See, e.g., Rodriguez v. Bowen*, 678 F. Supp.

1456, 1457-1458 (E.D. Cal. 1988) (noting that errors of law may be corrected by the district court on a

motion for reconsideration, even under the more limited standard in FRCP Rule 60(b)), *citing Liberty*

*Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).

"The requirement that jurisdiction be established as a *threshold* matter . . . is inflexible and

without exception." *Steel Co. v. Citizens for a Better Environment, supra,* 523 U.S. at 94.  As Judge

Shubb of this District recently held, "whether this court has jurisdiction is a preliminary issue that

should be resolved at the outset," before considering a stay for potential MDL treatment.  *Smith v. Mail*

*Boxes, Etc., supra,* 191 F. Supp. 2d at 1157; *cf. Rodriguez, supra,* 678 F. Supp. at 1458 (wherein this

Court reversed its prior ruling on grounds that another judge in this District "whose opinion I greatly

value, has resolved the issue in a contrary manner").  Indeed, as explained more thoroughly in

Plaintiff's [Proposed] Opposition to Defendants' Stay Motion, the overwhelming weight of authority

favors consideration of jurisdiction before ruling on a stay request for at least three overlapping

reasons:  (1) if federal jurisdiction is lacking, then the court has no power to enter a stay and must

immediately remand the case to state court; [4] (2) judicial economy favors resolution of the

---

[4] *See Stern v. Mutual Life Insurance Co.*, 968 F. Supp. 637, 639 (N.D. Ala. 1997) ( "[i]f the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay."); *Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999), ("[the court] cannot... stay proceedings in an action over which it lacks jurisdiction"); *Farkas v. Bridgestone/Firestone, Inc.*,

1  jurisdictional issue prior to MDL transfer;[5] and (3) at a minimum, the court must take a "quick look" at

2  the jurisdictional issue to determine the best forum for resolving it.[6] Each of these approaches

3  addresses the "threshold" question of jurisdiction raised in a remand motion prior to entertaining an

4  MDL-related stay, which is consistent with, and indeed compelled, by the "jurisdiction first" principle

5  articulated by the Supreme Court in *Steel Co.*, *supra*, 523 U.S. at 94. Thus, fundamental jurisdictional

6  concerns, judicial economy and fairness all favor resolution of a motion to remand *prior* to

7  consideration of a stay pending MDL transfer.

8          Nothing in the authorities cited by the Court in the January 28 Order is to the contrary. For

9  example, JPML Rule 1.5 (formerly known as JPML Rule 18) provides that a pending conditional

10  transfer order (which has not even been issued in this case) "*does not affect or suspend orders and*

11  *pretrial proceedings in the district court in which the action is pending.*" JPML Rule 1.5 (emphasis

12  added). Similarly, neither *Good v. Prudential Insurance Co. of America*, 5 F. Supp. 2d 804, 809 (N.D.

13  Cal. 1998), nor *Rivers v. Walt Disney Co.*, 980 F. Supp. 1360, 1362 (C.D. Cal. 1997), supports the

14

15  113 F. Supp. 2d 1107, 1115 n.8 (W.D. Ky. 2000) ("[t]he jurisdictional issue must be resolved before

16  deciding whether to stay or transfer the case to the MDL panel"); *see also BancOhio Corp. v. Fox*, 516
    F.2d 29, 32 (6th Cir. 1975) ("a transfer [to MDL] cannot be made unless the district court properly has

17  jurisdiction of the subject matter of the case").

18  [5] *See Villarreal v. Chrysler Corp.*, *supra*, 1996 WL 116832, at *1 ("judicial economy will best be
    served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum");

19  *Tortola Rests., L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188–89 (N.D. Cal. 1997) (motion to

20  remand should be resolved prior to motion to transfer); *Dix v. ICT Group, Inc.*, No. CS-03-0315-LRS,
    2003 WL 22852135, at *8 (E.D. Wash. Oct. 20, 2003) ("[c]ontrary to Defendants' contention, for

21  purposes of judicial economy, the jurisdiction issue should be resolved immediately . . . before federal
    resources are further expended," despite pending MDL transfer motion); *Havens Protected "C"*

22  *Clamps, Inc. v. Pilkington PLC*, No. 00-2035-JWL, 2000 WL 382027, at *2 (D. Kan. March 28, 2000)
    ("in the interests of judicial economy . . . court can perceive no benefit to deferring ruling" on

23  plaintiffs' remand motion, notwithstanding conditional transfer order from JPML); *Karofsky v. Abbott*

24  *Labs.*, *supra*, 921 F. Supp. 18, 21 n.4 (D. Me. 1996) ("it is easier for me to determine the impact of
    [state] law on this individual case [rather than to] transfer it to the [JPML], which has many other concerns"); *Aetna U.S. Healthcare, Inc. v. Hoescht Aktiengesellschaft*,

25  54 F. Supp. 2d 1042, 1048 (D. Kan. 1999), ("[i]f federal jurisdiction does not exist, the case can be

26  remanded before federal resources are further expended. . . . Judicial economy dictates a present ruling

27  on the remand issue").

28  [6] *See Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001); *Bd. of Trs. v. Worldcom, Inc.*, 244
    F. Supp. 2d 900, 902-03 (N.D. Ill. 2002).

1   Court's ruling.  In *Good*, although the court ultimately denied plaintiff's remand motion and granted

2   defendant's motion for stay, the court adhered to the jurisdiction-first rule and considered plaintiff's

3   remand motion on the merits *before* proceeding to defendant's stay motion.  *Good, supra*, 5 F. Supp.

4   2d at 806-809.  In *Rivers*, there was no pending remand motion at issue, and thus, the court observed,

5   no "need to resolve any basic jurisdictional issues" before addressing the requested stay.  *Rivers,*

6   *supra*, 980 F. Supp. at 1362.  In short, *Rivers* and *Good* actually support Plaintiff's position that the

7   Court should hear and resolve the pending remand motion before turning to any potential stay for

8   MDL purposes.

9          The Court's observation that the balance of hardships to the parties favors a temporary stay also

10  merits reconsideration.  "The suppliant for a stay *must make out a clear case of hardship or inequity* in

11  being required to go forward, if there is even a *fair possibility* that the stay for which he prays will

12  work damage to some one else." *Favaloro v. S/S Golden Gate*, 687 F. Supp. 475, 481 (N.D. Cal. 1987)

13  (emphasis added).  Of course, the Court has still not heard Plaintiff's side of this.  Moreover, nothing

14  in the January 28 Order, or in Defendants' Stay Motion for that matter, suggests that Defendants have

15  made out a clear case of hardship or inequity.  Meanwhile, the stay entered by the Court will

16  undoubtedly prejudice Plaintiff's and the public's interest in a speedy resolution of this action alleging

17  significant groundwater pollution.  In *Meyers v. Bayer AG, supra*, 143 F. Supp. 2d at 1048, the court

18  observed that "even though a stay does not directly implicate the merits of a case, it undeniably has

19  important effects on the litigation."  In particular, the court noted, "[r]emoving a case to federal court

20  has long been known to impose a burden upon plaintiffs . . . [by] requir[ing] the plaintiff to present its

21  arguments for remand in a foreign forum."  *Id*.  "Concerns about being haled into distant courts are

22  particularly implicated by the MDL system."  *Id*.  These observations directly apply to Plaintiff in this

23  case, and furnish an additional basis for vacating the January 28 Order.[7]

24

25  [7] The MDL process will also prejudice the locally-based defendants in this case who did not consent to removal, have not joined in Defendants' Stay Motion, and some of whom have affirmatively opposed

26  transfer of this action to New York.  *See* January 5, 2004 Letter of Karl R. Morthole, Esq. on behalf of Defendant Washoe Fuel, Inc. (Sher Decl., Exhibit 4) (communicating objections to MDL transfer of

27  this case to Judge Scheindlin on grounds that (a) the facts of the case are "related to the local situation," and (b) litigation "across the United States . . . will be exceedingly more expensive and

28  inconvenient for my client").

1    **C.    Plaintiff Neither Participated In, Nor Consented To, Any Aspect of the Scheindlin Order.**

2          A third ground for reconsidering and rescinding the January 28 Order is that it appears to have

3    been based on one or more incorrect conclusions regarding the applicability of the Scheindlin Order

4    and/or Plaintiff's consent (or lack thereof) to the procedures established therein. *See, e.g. Maron v.*

5    *Foster Wheeler Corp.*, 2002 WL 102605, *2 (N.D. Cal. 2002) (granting motion for reconsideration

6    where extrinsic evidence revealed that court had misapprehended applicability of a court decision

7    cited in its prior ruling).

8          It is elementary that the Scheindlin Order has no legally binding effect on this Court. *See*

9    *Newton v. Thomason* 22 F.3d 1455, 1460 (9th Cir. 1994) (a federal court is not bound by federal court

10   decisions outside its own circuit); *U.S. v. Hunter*, 70 F.Supp.2d 1100, 1108, n.8 (C.D. Cal. 1999)

11   ("this Court is not bound by an unpublished decision of another district court"); *see also General*

12   *Electric Company v. Byrne* 611 F. 2d 670 (7th Cir. 1979) ("[w]e are aware of no statute or decision

13   which would authorize us to issue a writ of mandamus directed to a district judge sitting in another

14   circuit"). It is also clear that only the JPML, rather than the putative transferee court, has the authority

15   to issue an order transferring this case to MDL 1358.[8] *See* JPML Rule 7.4. Judge Scheindlin herself

16   expressly recognized this at the New York Hearing. *See* Transcript of New York Hearing, Ds' MPA

17   at 19. It is not surprising, then, that the Scheindlin Order was predicated solely "upon stipulations

18   there agreed to on the record *by the parties present*," Scheindlin Order, ¶1 (emphasis added), and thus,

19   was never intended to affect cases (like this one) involving parties (like Plaintiff) represented by

20   counsel who were not present at the New York Hearing.[9]

21         Accordingly, this Court's reference to the Scheindlin Order as one (if not the primary) basis for

22   granting Defendants' Stay Motion suggests that the Court may have acted under the misapprehension

23

24   [8] Notably, no such conditional transfer order has been issued by the JPML in this case. Sher Decl., ¶ 2.

25   [9] A review of the transcript from the New York Hearing further reveals that Judge Scheindlin appears

26   to have been under the mistaken impression that counsel for the plaintiffs in the New York cases
     before her were in a position to stipulate to stays and transfers of most other MTBE-related cases

27   pending in federal courts around the country. *See* Transcript of New York Hearing, Ds' MPA at 19,

28   24.

1   that Plaintiff (or its counsel) had agreed to a stay of this action and/or acquiesced in a potential transfer

2   to the Southern District of New York as part of MDL 1358. In fact, however, Plaintiff had no

3   opportunity to participate in the New York Hearing, was not a party to the stipulations on which the

4   Scheindlin Order is based, and has not agreed to any transfer of this action to MDL 1358 or a stay of

5   this action pending any such transfer. Sher Decl., ¶ 6. To the contrary, Plaintiff has communicated its

6   objections to any prospective transfer of this case to the Southern District of New York to Judge

7   Scheindlin (*see* Sher Decl., Exhibits 2-3), and intends to pursue those objections strenuously *if and*

8   *when* the JPML ever issues a conditional transfer order affecting this case.[10] Sher Decl., ¶ 6.

9   However, the Court had none of this information before it when it entered the January 28 Order.

10  **D.     Plaintiff's Remand Motion Was Improvidently Denied.**

11        Finally, the Court should reconsider and rescind the January 28 Order to the extent it states that

12  Plaintiff's Remand Motion is "denied." Obviously, the Court neither considered nor denied the

13  Remand Motion on the merits. Indeed, (1) Defendants had not filed an opposition to the Remand

14  Motion at the time the Order was issued (and have not yet filed one); and (2) neither Defendants' Stay

15  Motion nor the Scheindlin Order even contemplate an outright denial of the Motion prior to a hearing

16  on the merits. At most, Defendants seek (and Judge Scheindlin requested) a stay of the Motion (and

17  other pretrial proceedings) pending possible MDL transfer. Denial of the Remand Motion was thus

18  beyond the scope of relief sought by any party. As such, this aspect of the January 28 Order appears to

19  be a mistake. Plaintiff therefore requests that, at a very minimum, the Court amend its Order to clarify

20  that the Remand Motion has not, in fact, been denied, but is still pending before the Court.

21

22  [10] Plaintiff has strong grounds on which to do so. As described in Plaintiff's letter to Judge Scheindlin
    (Sher Decl., Exh. 2), this action differs substantially from the New York cases affected by the

23  Scheindlin Order for at least three reasons, each of which illustrates why it is inappropriate for MDL
    treatment: (1) the case arises in the Ninth Circuit, which has definitively rejected the preemption

24  arguments on which Defendants' removal is based, *see Oxygenated Fuels Ass'n v. Davis* ("*Davis II*"),

25  331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California ban of MTBE in gasoline), *affirming*
    *Oxygenated Fuels Assoc. v. Davis* ("*Davis I*"), 163 F. Supp. 2d 1182, 1187 (E.D. Cal. 2001); *Exxon*

26  *Mobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1253 (9thCir. 2000) (upholding Nevada county regulation
    that effectively banned MTBE); (2) it is brought pursuant to unique statutory, regulatory, usufructuary

27  and other legal interests in protecting ground- and drinking water resources; and (3) it raises few, if
    any, common factual issues with other cases that may be included in MDL 1358.

28

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court reconsider and vacate the January 28

Order and proceed to a hearing on the merits of Plaintiff's pending Motion for Remand and

Defendants' Motion for Stay.

Respectfully submitted,

DATED:  February 5, 2004

SHER & LEFF, LLP

By:    _Victor Sher_

VICTOR M. SHER

BARON & BUDD, P.C.
SCOTT SUMMY
CELESTE A. EVANGELISTI

Attorneys for Plaintiff: Quincy Community
Services District

## DECLARATION OF VICTOR M. SHER

I, Victor M. Sher, declare:

 1. I am a principal in the law firm of Sher & Leff, LLP, counsel of record for Plaintiff Quincy Community Services District ("Plaintiff") in this matter.  My office is also counsel of record for plaintiffs in certain other MTBE-related cases in California that were recently removed to federal court.  Unless otherwise stated, the following facts are true and based upon my own personal knowledge.

 2. On or about December 15, 2003, certain defendants filed a Notice of Removal, removing this action from the Sacramento County Superior Court where it was filed.  In connection with their Notice of Removal, it is my understanding that certain defendants apparently also filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358, *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a currently inactive MDL proceeding pending before the Hon. Shira A. Scheindlin of the U.S. District Court for the Southern District of New York, although Plaintiff has never received copies of any such notice.  At the same time, to my knowledge, the JPML has not issued a conditional transfer order in this case, and Plaintiff therefore has not yet had an opportunity to exercise its rights under the Multidistrict Rules to object to and oppose such transfer.

 3. Plaintiff filed its Motion for Remand in this Court on December 22, 2003, which was originally scheduled for hearing on February 23, 2004.  It is my understanding that Defendants filed their Motion to Stay on or about December 13, 2003, which was originally scheduled for hearing on February 9, 2004.  The parties subsequently re-noticed their respective Remand and Stay Motions for March 8, 2004 pursuant to an agreement between counsel to coordinate briefing and hearing schedules for the dueling Remand and Stay motions in this and other MTBE-related cases in California.  Pursuant to the Federal Rules of Civil Procedure, related local rules and the parties' agreement, Plaintiff's opposition to Defendants' Stay Motion and Defendants' opposition to Plaintiff's Remand motion were both supposed to be due on February 20, 2004.

 4. A true and correct copy of Plaintiff's [Proposed] Opposition to Defendants' Motion to Stay in this matter, which Plaintiff intends to file if the Court vacates its January 28, 2004 Order (the

1   "January 28 Order"), is attached hereto as Exhibit 1.

2          5.      One the bases for the Court's ruling in its January 28 Order is a December 23, 2003

3   Order issued by Judge Scheindlin (the "Scheindlin Order") related to several New York MTBE-related

4   cases pending before her.  I am informed that the Scheindlin Order is the result of certain stipulations

5   agreed to by certain parties during a hearing before Judge Scheindlin on December 19, 2003 (the "New

6   York Hearing").

7          6.      Plaintiff had no opportunity to participate in the New York Hearing, was not a party to

8   the stipulations on which the Scheindlin Order is based, and has not agreed to any transfer of this

9   action to Multidistrict Litigation Case No. 1358 or a stay of this action pending any such transfer.  To

10  the contrary, Plaintiff has communicated its objections to any prospective transfer of this case to the

11  Southern District of New York to Judge Scheindlin, and intends to pursue those objections strenuously

12  *if and when* the Judicial Panel on Multidistrict Litigation ever issues a conditional transfer order

13  affecting this case.

14         7.      A true and correct copy of the January 5, 2004 letter I sent to Judge Scheindlin on

15  behalf of Plaintiff and other California plaintiffs represented by my office (without attached service

16  list) is attached hereto as Exhibit 2.

17         8.      A true and correct copy of the January 27, 2004 letter I sent to Judge Scheindlin on

18  behalf of Plaintiff and other California plaintiffs represented by my office (without attached service

19  list) is attached hereto as Exhibit 3.

20         9.      A true and correct copy of a January 5, 2004 letter sent by Karl R. Morthole, Esq. to

21  Judge Scheindlin on behalf of defendant Washoe Fuel, Inc. (without attached service list), a copy of

22  which was served on and received by my office, is attached hereto as Exhibit 4.

23         I declare under penalty of perjury under the laws of the United States of America that the

24  foregoing is true and correct.

25         Executed this 5th day of February, 2004 at San Francisco, California.

26

27         _____
                       Victor M. Sher

28

1    Victor M. Sher, SBN 96197
     Todd E. Robins SBN 191853
2    Lynda M. Collins, SBN 229029
     SHER & LEFF, LLP
3    450 Mission Street, 5th floor
     San Francisco, CA 94105
4    Telephone: (415) 348-8300
     Facsimile: (415) 348-8333
5
     Scott Summy, *Admitted in Texas*
6    Celeste A. Evangelisti, SBN 225232
     BARON & BUDD, P.C.
7    3102 Oak Lawn Avenue, Suite 1100
     Dallas, TX 75219-4281
8    Telephone: (214) 523-6267
     Facsimile: (214) 520-1181
9
     Attorneys for Plaintiff: QUINCY COMMUNITY SERVICES DISTRICT

10                    IN THE UNITED STATES DISTRICT COURT

11               FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13   QUINCY COMMUNITY SERVICES          )   Case No. CIVS-03-2582 LKK/DAD
     DISTRICT,                          )
14                                      )   Hon. Lawrence K. Karlton
                                        )   (Senior District Judge)
15              Plaintiff,              )
                                        )   PLAINTIFF'S [PROPOSED]
16        vs.                           )   OPPOSITION TO DEFENDANTS'
                                        )   MOTION TO STAY PROCEEDINGS;
17                                      )   DECLARATION OF VICTOR M.
     ATLANTIC RICHFIELD COMPANY, et al.,)   SHER IN SUPPORT THEREOF
18                                      )
                                        )   Hearing Date:
19              Defendants.             )   Time:
                                        )   Department:
20                                      )
                                        )
21

22

23

24

25

26

27                          Exhibit 1                        13
28                          Page 1 of 18

[Exempt from Filing and
Motion Fees- Govt. Code § 6103]

## I.   **INTRODUCTION**

The Court should deny Defendants[1] Motion to Stay Proceedings Pending Ruling on Transfer and Consolidation by the Judicial Panel on Multidistrict Litigation ("Stay Motion"). Instead, the Court should immediately consider (and grant) Plaintiff's pending motion for remand ("Remand Motion") and issue an order remanding the case to the state court in which it was filed.

Defendants wrongfully removed this purely state-law action to federal court. Rather than have the Court address the threshold issue of whether it has jurisdiction to hear any aspect of this case, they now seek to delay indefinitely consideration of the fundamental jurisdictional issues raised in Plaintiff's Remand Motion pending some possible future action by the Judicial Panel on Multidistrict Litigation ("JPML") – a process that, if it ever occurs at all, may well take the better part of this year, and will, in any event, most likely result in a denial of their request to include this case in any multidistrict litigation.

This Court should deny Defendants' Stay Motion for the following reasons:

- *First*, jurisdictional issues raised in a remand motion should be resolved *prior* to consideration of a stay pending MDL transfer. To rule otherwise would violate the long-standing "requirement that jurisdiction be established as a *threshold* matter," *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) (jurisdiction-first rule "is inflexible and without exception"). As Judge Shubb of this Court recently explained, "jurisdiction is a preliminary issue that should be resolved at the outset," despite the possibility of an MDL transfer. *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002). The overwhelming weight of authority on this point agrees. *See, e.g., Villarreal v. Chrysler Corp.*, No. C-95-4414 FMS, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996) ("judicial economy will best be served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum").

Exhibit 1
Page 2 of 18

---

[1] The defendants who signed the Stay Motion – Chevron U.S.A., Inc.; ChevronTexaco Corporation; Atlantic Richfield Company; Tesoro Refining and Marketing Company; Shell Oil Company; Shell Oil Products U.S.; and ExxonMobil Corporation – are collectively referred to herein as "Defendants."

- *Second*, the December 23, 2003 order entered by the Hon. Shira A. Scheindlin in several unrelated cases pending in the U.S. District Court for the Southern District of New York (the "Scheindlin Order") does not support Defendants' Stay Motion. The Scheindlin Order has no binding effect on this Court, *see, e.g., Newton v. Thomason* 22 F.3d 1455, 1460 (9th Cir. 1994) (a federal court is not bound by federal court decisions outside its own circuit), and was never even intended to affect cases (like this one) involving parties not represented by counsel present at a December 19, 2003 hearing in New York that resulted in the Order. In fact, Plaintiff had no opportunity to participate in the New York hearing, was not a party to the stipulations on which the Scheindlin Order is expressly based, has not agreed to any transfer of this action to New York or a stay of this action pending any such transfer, and has strenuously objected to any such stay or prospective transfer.

- *Third*, Defendants are not entitled to a stay because they have failed to demonstrate a clear case of hardship to justify the granting of a stay, while a stay would prejudice Plaintiff's and the public's interest in a speedy resolution of this action alleging significant groundwater pollution. *Favaloro v. S/S Golden Gate*, 687 F. Supp. 475, 481 (N.D. Cal. 1987) ("[t]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else"); *Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001) ("even though a stay does not directly implicate the merits of a case, it undeniably has important effects on the litigation . . . [i.e.] [r]emoving a case to federal court has long been known to impose a burden upon plaintiffs . . . [by] requir[ing] the plaintiff to present its arguments for remand in a foreign forum").

Exhibit 1
Page 3 of 18

## II.   PROCEDURAL BACKGROUND

Plaintiff filed this action in Sacramento Superior Court on November 7, 2003, against 17 oil and chemical industry defendants alleging purely state-law causes of action, including strict products liability, public nuisance, trespass, and negligence, as well as claims for cleanup costs under state statutes. On or about December 15, 2003, certain defendants filed a Notice of Removal, removing this action to this Court. In connection with their Notice of Removal, certain defendants apparently also

PLAINTIFF'S [PROPOSED] OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS; SHER DECL. – CIV

15

1  filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358,

2  *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a currently inactive MDL

3  proceeding pending before Judge Scheindlin in the Southern District of New York, although Plaintiff

4  has never received copies of any such notice. *See* Declaration of Victor M. Sher, ¶ 2.  MDL No. 1358

5  involved several consolidated "actions brought on behalf of *private* well-owners seeking relief from

6  the contamination or threatened contamination of their wells" by MTBE." *In re: MTBE*, 175 F. Supp.

7  2d 593, 598 (S.D.N.Y. 2001) (emphasis added).  The court denied class certification in the matter (*see*

8  *In Re: MTBE*, 209 F.R.D. 323 (S.D.N.Y. 2002)) and all the cases were resolved.  However, Defendants

9  contend that the proceeding is technically still pending.  Defendants' Memorandum of Points and

10  Authorities/ Declaration of David Schrader in Support of Stay Motion ("Ds' MPA") at 2, n.1.

11        On December 19, 2003, Judge Scheindlin held a hearing in connection with several recently-

12  filed New York MTBE cases that were removed to federal court and assigned to her courtroom (the

13  "New York Hearing").  *See* Transcript of New York Hearing (attached as Exhibit 2 to Ds' MPA).  At

14  that Hearing, the parties present before Judge Scheindlin (who did *not* include Plaintiff) stipulated to a

15  transfer of their cases to MDL 1358.  *Id*. at 28-33.  In addition, counsel for those parties further

16  stipulated to support transfer of other cases involving other parties *they represented* to MDL 1358.  *Id*.

17  That stipulation resulted in Judge Scheindlin's December 23, 2003 order (the "Scheindlin Order")

18  requesting that other federal courts enter stays in "similar removed actions."

19        Plaintiff did not participate at the New York Hearing, has not agreed to the procedures

20  stipulated to by the parties at that Hearing, and has strenuously objected to any prospective transfer of

21  its case to the Southern District of New York.  *See* Sher Decl., ¶ 4; Exhibits 1-2.  At the same time, the

22  JPML has not yet even issued a conditional transfer order, and Plaintiff therefore has not yet had an

23  opportunity to exercise its rights under the Multidistrict Rules to object to and oppose such transfer.

24  *Id*., ¶ 2.  On January 5, 2004, Plaintiff's counsel notified Judge Scheindlin by letter of Plaintiff's

25  objections to the Scheindlin Order and its intent to oppose transfer of this action to MDL 1358, *if and*

26  *when* the JPML issues a conditional transfer order.  *Id*., Exhibit 1.  On January 27, 2004 Plaintiff's

27  counsel sent a second letter to Judge Scheindlin reiterating its position (and offering its views on the

28  remand motions pending in that court).  *Id*., Exhibit 2.

Exhibit 1                    16
Page 4 of 18

1    Meanwhile, in California, Plaintiff filed its Remand Motion in this Court on December

2  22, 2003. Defendants filed their Stay Motion on or about December 13, 2003.

3                                **III.   LEGAL ARGUMENT**

4  **A.   This Court Should Consider Jurisdiction First, Before Deciding On Any Potential Stay**

5  **Pending Possible MDL Transfer.**

6    Paramount jurisdictional concerns, judicial economy and fairness all require resolution of a

7  motion to remand *prior* to consideration of a stay pending a possible MDL transfer. "The requirement

8  that jurisdiction be established as a *threshold* matter . . . is inflexible and without exception." *Steel Co.*

9  *v. Citizens for a Better Environment, supra,* 523 U.S. at 94. As Judge Shubb of this District recently

10  held, "whether this court has jurisdiction is a preliminary issue that should be resolved at the outset,"

11  before considering a stay for potential MDL treatment. *Smith v. Mail Boxes, Etc., supra,* 191 F. Supp.

12  2d at 1157. Indeed, the overwhelming majority of cases adhere to the "jurisdiction first" principle

13  articulated by the Supreme Court in *Steel Co.* and followed by Judge Shubb in *Smith.* These cases

14  address the "threshold" question of jurisdiction raised in a remand motion prior to entertaining an

15  MDL-related stay for at least three overlapping reasons: (1) if federal jurisdiction is lacking, then the

16  court has no power to enter a stay and must immediately remand the case to state court; (2) judicial

17  economy favors resolution of the jurisdictional issue prior to MDL transfer (if any); and (3) at a

18  minimum, the court must take a "quick look" at the jurisdictional issue to determine the best forum for

19  resolving it.

Exhibit 1
Page 5 of 18

20    The overriding reason to consider a remand motion before granting a stay is that a federal court

21  lacking subject matter jurisdiction over an action simply lacks the power to stay it. Courts faced with

22  competing remand and stay motions have recognized this jurisdictional imperative. *See Stern v.*

23  *Mutual Life Insurance Co.,* 968 F. Supp. 637, 639 (N.D. Ala. 1997) ( "[i]f the court lacks jurisdiction

24  over the action *ab initio,* it is without jurisdiction to enter such a stay"); *Lloyd v. Cabell Huntington*

25  *Hosp., Inc.,* 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999), ("[the court] cannot... stay proceedings in an

26  action over which it lacks jurisdiction"); *Farkas v. Bridgestone/Firestone, Inc.,* 113 F. Supp. 2d 1107,

27  1115 n.8 (W.D. Ky. 2000) ("[t]he jurisdictional issue must be resolved before deciding whether to stay

28  or transfer the case to the MDL panel"); *see also BancOhio Corp. v. Fox,* 516 F.2d 29, 32 (6th Cir.

- 4 -

17

1  1975) ("a transfer [to MDL] cannot be made unless the district court properly has jurisdiction of the

2  subject matter of the case"); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("[w]ithout jurisdiction the

3  court cannot proceed *at all* in any cause…").

4        Second, even if this court had jurisdictional *power* to address the Stay Motion (which, as

5  explained above, it does not) judicial economy strongly favors resolution of jurisdictional issues prior

6  to considering issues related to MDL transfer. *See Villarreal v. Chrysler Corp., supra,* 1996 WL

7  116832, at *1 ("judicial economy will best be served by addressing the remand issue [as it] will

8  facilitate litigation in the appropriate forum"); *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.,* 987

9  F. Supp. 1186, 1188–89 (N.D. Cal. 1997) (motion to remand should be resolved prior to motion to

10  transfer); *Dix v. ICT Group, Inc.,* No. CS-03-0315-LRS, 2003 WL 22852135, at *8 (E.D. Wash. Oct.

11  20, 2003) ("[c]ontrary to Defendants' contention, for purposes of judicial economy, the jurisdiction

12  issue should be resolved immediately . . . before federal resources are further expended," despite

13  pending MDL transfer motion).[2]

14        Third, even if the Court is inclined to consider Defendants' Stay Motion on the merits, it should

15  at a minimum, make a preliminary assessment of the jurisdictional issue before considering the Stay

16  Motion. *See Meyers v. Bayer AG, supra,* 143 F. Supp. 2d 1044. If the Court determines that removal

17  was improper, it should immediately remand the case to state court. *Id.* at 1049. *Only* if the

18  preliminary assessment reveals that the jurisdictional question is legally or factually difficult, should

19  move to the next steps, and: (1) assess whether the jurisdictional question is similar to the issue in the

20  other cases that may be transferred to the MDL; and (2) assess whether a stay should be granted. *Id.;*

21  *see also Bd. of Trs. v. Worldcom, Inc.,* 244 F. Supp. 900, 902-03 (N.D. Ill. 2002). Application of

---

[2] *See also Havens Protected "C" Clamps, Inc. v. Pilkington PLC,* No. 00-2035-JWL, 2000 WL 382027, at *2 (D. Kan. March 28, 2000) ("in the interests of judicial economy . . . court can perceive no benefit to deferring ruling" on plaintiffs' remand motion, notwithstanding conditional transfer order from JPML); *Karofsky v. Abbott Labs., supra,* 921 F. Supp. 18, 21 n.4 (D. Me. 1996) ("it is easier for me to determine the impact of [state] law on this individual case and to rule on the jurisdictional issue [rather than to] transfer it to the [JPML], which has many other concerns"); *Aetna U.S. Healthcare, Inc. v. Hoescht Aktiengesellschaft,* 54 F. Supp. 2d 1042, 1048 (D. Kan. 1999), ("[i]f federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. . . . Judicial economy dictates a present ruling on the remand issue").

Exhibit 1
Page 6 of 18

18

- 5 -

1  the *Meyers* "quick look" methodology to this case leads unambiguously to a denial of Defendants'

2  Stay Motion and an immediate remand of the case to state court.  As demonstrated in the Remand

3  Motion, even a preliminary assessment of the jurisdictional issues raised here reveals that removal was

4  improper.  Defendants' attempt to find a "federal question" under the federal Clean Air Act hidden

5  within Plaintiff's state-law strict product liability claim is frivolous, since it hinges entirely on

6  preemption arguments that have already been squarely and soundly rejected by Judge Levi of this

7  Court and the Ninth Circuit.  *See Oxygenated Fuels Ass'n v. Davis ("Davis II")*, 331 F.3d 665, 670,

8  673 (9th Cir. 2003) (upholding California ban of MTBE in gasoline), *affirming Oxygenated Fuels*

9  *Assoc. v. Davis ("Davis I")*, 163 F. Supp. 2d 1182, 1187 (E.D. Cal. 2001); *ExxonMobil Corp. v. U.S.*

10  *E.P.A.*, 217 F.3d 1246, 1253 (9th Cir. 2000) (upholding Nevada county regulation that effectively

11  banned MTBE).  Further, no court has ever accepted the "federal officer" argument Defendants

12  advance in their removal notice.[3]  Likewise, Defendants' attempt to predicate federal jurisdiction on

13  the toehold of a 1988 bankruptcy involving the predecessor of a single defendant also has no merit,

14  especially in light of the obviously applicable remand factors under 28 U.S.C. § 1452(b).  *See In re*

15  *Enron*, 296 B.R. 505 (C.D. Cal. 2003) ("[c]omity dictates that California courts should have the right

16  to adjudicate the exclusively state law claims involving California-centric plaintiffs and California-

17  centric transactions").[4]  Since removal was obviously improper in this case, the Court should decline to

18  consider the Stay Motion and instead immediately remand the case to state court.

19

20

---

21  [3]  *See, e.g., Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of

22  law" does not support removal where defendant is "merely 'subject to complex regulations'"); *Good v.*
*Armstrong World Indus.*, 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy

23  procurement contract for turbines and state complaint regarding asbestos exposure where contract did

24  not require manufacturer to use asbestos).

25  [4]  Even if the Court were to find that the jurisdictional issues herein are "difficult," the circumstances
do not favor a stay under the second "prong" of the *Meyers* analysis.  *See Meyers, supra*, 143 F. Supp.

26  2d at 1049.  For example, unlike other MTBE contamination cases Defendants have removed to
federal court, this case arises within the Ninth Circuit which has definitively rejected defendants'

27  federal preemption arguments.  Thus, the second prong of *Meyers*, which requires similarity, is not

28  satisfied in this case.

Exhibit 1
Page 7 of 18

19

- 6 -

1   Defendants rely on a slew of cases that have nothing to do with the situation presented here,

2   many of which actually support Plaintiff's position that the Remand Motion should be heard first.[5]  See

3   Smith, supra, 191 F. Supp. 2d at 1157 (Ds' MPA at 5) ("whether this court has jurisdiction is a

4   preliminary issue that should be resolved at the outset"); Good v. Prudential Insurance Co. of America,

5   5 F. Supp. 2d 804, 806-809 (N.D. Cal. 1998) (D's MPA at 4) (deciding plaintiff's remand motion

6   before proceeding to defendant's stay motion).[6]  Many of the cases cited by Defendants purporting to

7   show the appropriateness of a stay are simply inapposite, as they do not involve a pending motion to

8   remand on jurisdictional grounds, and thus do not address the question presented here.[7]  JPML and

9   transferee court decisions cited by Defendants are likewise irrelevant since they also do not address the

10  question of whether a transferor court should resolve a jurisdictional remand motion prior to an MDL-

11  related stay.[8]

12

_____

13  [5] Defendants cite, but did not provide courtesy copies of, several unpublished slip opinions and/or
    orders that Plaintiff was unable to locate, including Correa-Rodriguez v. Bridgestone/Firestone Inc.,
14  No. 00-3805-CIV-GRAHAM (S.D. Fla. Oct. 19, 2000); and Siewart-Sitzmore v.
    Bridgestone/Firestone, Inc., No. 00-1289 (C.D. Ill. Sept. 14, 2000); and D's Pet Supplies v. Microsoft
15  Corp., Nos. 99-76056, 99-76086, 99-76202, 00-70481, 2000 U.S. Dist. LEXIS 16482 (E.D. Mich. Feb.
    7, 2000).  Accordingly, the Court should disregard these cases.
16

17  [6] See also Namovicz v. Cooper Tire & Rubber Co., 225 F. Supp. 2d 582 (D. Md. 2001) (Ds' MPA at 5)
    (granting stay only after finding removal proper and denial of remand warranted); Aetna U.S.
18  Healthcare, Inc., supra, 48 F. Supp. 2d at 43 (Ds' MPA at 5) (granting stay only after deciding remand
    issue); Dumont v. Charles Schwab & Co., Nos. 99-2840, 99-2841, 2000 U.S. Dist. LEXIS 619, at *8
19  (E.D. La. Jan. 19, 2000) (Ds' MPA at 5) (ruling on jurisdiction issues raised by motion to dismiss on
    grounds of no Article III case or controversy prior to considering MDL-related stay request).
20

21  [7] See Rivers v. Walt Disney Co., 980 F. Supp. 1360, 1362 (C.D. Cal. 1997) (Ds' MPA at 4) ( no
    pending remand motion, and thus no "need to resolve any basic jurisdictional issues" before addressing
22  the requested stay); In re New York City Mun. Sec. Litig., 572 F.2d 49 (2d Cir. 1978) (Ds' MPA at 4)
    (no pending remand or stay motion); Arthur Magna, Inc. v. Del-Val Fin. Corp., No. 90-4378, 1991 WL
23  13725 (D.N.J. Feb. 1, 1991) (Ds' MPA at 4) (no pending remand motion); American Seafood, Inc. v.
    Magnolia Processing, Inc., Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992) (Ds'
24  MPA at 5) (same); Portnoy v. Zenith Labs., No. 86-3512, 1987 U.S. Dist. LEXIS 16134 (D.D.C. Apr.
25  21, 1987) (Ds' MPA at 5) (same).

26  [8] Ivy v. Diamond Shamrock Chem. Co., 901 F.2d 7 (2d Cir. 1990) (Ds' MPA at 4); In re
    Bridgestone/Firestone Inc., 2000 WL 33416573 (JPML, Oct. 24, 2000) (Ds' MPA at 6); In re
27  Consolidated Welfare Fund "Erisa" Litigation 1992 WL 212348 (S.D.N.Y. Aug. 21, 1992) (Ds' MPA
    at 7);  In re Federal Election Campaign Act Litigation 511 F. Supp. 821 (JPML, 1979) (Ds' MPA at
28  7); In re Franklin National Bank Securities Litigation 393 F. Supp. 1093 (JPML, 1975) (Ds' MPA at

1    Finally, while Defendants cite a few cases from a small handful of district courts in which a

2    stay was granted by the potential transferor court despite a pending jurisdictional objection,[9] each of

3    these minority-view, out-of-circuit decisions is readily distinguishable.  In *Tench, Johnson, Weinke,*

4    *Aikins,* and *Falgoust,* the MDL transfer and consolidation process was well underway, and a final

5    ruling by the JPML regarding transfer was imminent in each case.  *Tench, supra,* 1999 WL 1044923,

6    at *1  (JPML hearing on transfer scheduled for one week after district court decision on stay and

7    remand motions); *Johnson, supra,* 1996 WL 164415, at *3  (conditional transfer order had been issued,

8    motion to vacate had been filed, and JPML was expected to rule "shortly" after defendants filed their

9    opposition); *Weinke, supra,* F. Supp. 2d at 989  (granting stay "in light of the pending MDL Panel

10    ruling on transfer") ; *Aikins, supra,* 2000 WL 310391, at *1  (motions pending before JPML for

11    consolidation of all cases against Microsoft); and *Falgoust, supra,*  2000 WL 462919, at *1 (motions

12    pending before JPML for consolidation of all cases against Microsoft).[10]  Here, by contrast, the JPML

13    has not issued a conditional transfer order or taken any other action with respect to this case – and may

14    never do so.  *See* Sher Decl., ¶ 2.  Nor is there any pending motion to consolidate.  Indeed, other than

---

7); *In re Professional Hockey Antitrust Litigation,* 369 F. Supp. 117 (JPML, 1974) (Ds' MPA at 7); *In re Wireless Telephone Federal Cost Recovery Fees Litigation* 2003 WL 22720008 (JPML Nov. 13, 2003) (Ds' MPA at 7).

[9] *Tench v. Jackson National Life Insurance Co.,* 1999 WL 1044923, at *2 (N. D. Ill. 1999) (Ds' MPA at 7); *Johnson v. AMR Corporation,* 1996 WL 164415, at *3-4 (N.D. Ill. 1996) (Ds' MPA at 6); *Weinke v. Microsoft* 84, F. Supp. 2d 989 (E.D.Wis., 2000) (Ds' MPA at 5); *Aikins v. Microsoft* 2000 WL 310391 (E.D. La.) (Ds' MPA at 3, 8); *Falgoust v. Microsoft* 2000 WL 462919, at *2 (E.D. La.) (Ds' MPA at 5); *Medical Society of the State of New York v. Conn. General Corp.,* 187 F. Supp. 2d 89 (S.D.N.Y. 2001) (Ds' MPA at 5).

[10] In *Medical Society of the State of New York,* the transfer status of the case at the time of the court's decision is unclear.  However, *Medical Society* is distinguishable on several other grounds.  First, in accord with *Meyers v. Bayer AG, supra,* 143 F. Supp. 2d 1044, the court acknowledged that "fairly obvious" jurisdictional questions (like the ones at issue in this case) should be ruled on first.  187 F. Supp. 2d at 92.  In addition, the court erroneously predicated its decision on the Second Circuit's inapposite holding in *Ivy v. Diamond Shamrock, supra,* 901 F.2d 7 (JPML has authority to transfer case despite pending jurisdictional objection).  In fact, in the more recent case, *In re Consolidated Fen-Phen Cases,* 2003 WL 22682440, *3, n.4 (E.D.N.Y. Nov. 12, 2003), the court specifically recognized that *Ivy* has no bearing on the question of a potential transferor court's authority, and expressly rejected the court's rationale in *Medical Society* as "unconvincing."

1    Defendants' vague representations regarding their submission of a notice of related tag-along case,

2    there is nothing in the record to suggest any imminent action by the JPML regarding this case.[11] *Id.*

3    Thus, given that this wrongfully removed action is in the extremely early stages of an MDL transfer

4    process that is unlikely ever to come to fruition, granting an indefinite stay before resolving Plaintiff's

5    jurisdictional objections would be improvident, as well as contrary to the overwhelming weight of

6    applicable authority.

7    **B.    This Court Can and Should Decline Judge Scheindlin's Request to Enter a Stay, As the**
        **Scheindlin Order Does Not Bind This Court, and Was Not Even Intended To Affect This**

8    **Case.**

9        The December 23, 2003 Scheindlin Order does not alter the analysis.  It is elementary that the

10   Scheindlin Order has no legally binding effect on this Court. *See Newton v. Thomason* 22 F.3d 1455,

11   1460 (9th Cir. 1994) (a federal court is not bound by federal court decisions outside its own circuit);

12   *U.S. v. Hunter*, 70 F.Supp.2d 1100, 1108, n.8 (C.D. Cal. 1999) ("this Court is not bound by an

13   unpublished decision of another district court"); *see also General Electric Company v. Byrne* 611 F.

14   2d 670 (7th Cir. 1979) ("[w]e are aware of no statute or decision which would authorize us to issue a

15   writ of mandamus directed to a district judge sitting in another circuit").  It is also clear that only the

16   JPML, rather than the putative transferee court, has the authority to issue an order transferring this

17   case to MDL 1358. *See* JPML Rule 7.4.  Judge Scheindlin herself expressly recognized this at the

18   New York Hearing. *See* Transcript of New York Hearing, Ds' MPA at 19 ("I can't anticipate what the

19   Judicial Panel of Multidistrict Litigation will do because nobody invited me to be on the panel and I

20   don't get a vote.  So I don't know if they'll [transfer the potential tag-alongs to MDL 1358").  It is not

21   surprising, then, that the Scheindlin Order was predicated solely "upon stipulations there agreed to on

22   the record *by the parties present*," Scheindlin Order, ¶1 (emphasis added), and thus, was never

23

24

25

26

---

27   [11] Moreover, if and when the JPML ever issues a conditional transfer order in this case, Plaintiff
     intends to strenuously object to transfer of this action, Sher Decl., ¶ 4 – and, as explained in Section

28   III.B below, has strong grounds on which to do so.

1  intended to affect cases (like this one) involving parties (like Plaintiff) represented by counsel who

2  were not present at the New York Hearing.[12]

3      Plaintiff, of course, had no opportunity to participate in the New York Hearing, was not a party

4  to the stipulations on which the Scheindlin Order is based, and has not agreed to any transfer of this

5  action to MDL 1358 or a stay of this action pending any such transfer. Sher Decl., ¶ 4. To the

6  contrary, Plaintiff has communicated its objections to any prospective transfer of this case to the

7  Southern District of New York to Judge Scheindlin (see Sher Decl., Exhibits 1-2), and intends to

8  pursue those objections strenuously *if and when* the JPML ever issues a conditional transfer order

9  affecting this case.[13] Sher Decl., ¶ 4.

10      Defendants' confident prediction that "[t]he JPML ...is likely to transfer this action," because

11  this and other MTBE-related cases recently removed to federal court "raise common issues of fact and

12  law" and "allege nearly identical causes of action," Ds' MPA at 6, is based on a false premise. In fact,

13  this action raises unique legal and factual issues that are not appropriate for MDL treatment.

14      With respect to Plaintiff's Remand Motion, this action differs substantially from MTBE-related

15  lawsuits filed in other regions of the country. Among other things, it arises within the Ninth Circuit,

16  which (in affirming a decision by Judge Levi) definitively rejected the Clean Air Act preemption

17  arguments on which Defendants base their assertion of federal jurisdiction in this case. *See Davis II*,

18  *supra*, 331 F.3d 665, *affirming Davis I, supra,* 163 F. Supp. 2d 1182; *see also ExxonMobil Corp,*

19

20

---

21  [12] A review of the transcript from the New York Hearing further reveals that Judge Scheindlin appears to have been under the mistaken impression that counsel for the plaintiffs in the New York cases

22  before her were in a position to stipulate to stays and transfers of most other MTBE-related cases pending in federal courts around the country. *See* Transcript. of New York Hearing, Ds' MPA at 19,

23  24.

24  [13] If the JPML issues a conditional transfer order, JPML Rule of Procedure 7.4(a) provides that "[t]he

25  Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court

26  for fifteen days from the entry thereof." Within the 15 day period, Plaintiff intends to file a Notice of Opposition to transfer pursuant to Rule 7.4(c) and will subsequently file a Motion to Vacate the

27  conditional transfer order in accordance with Rule 7.4(d). At that point the "Chairman of the Panel

28  shall set the motion for the next appropriate hearing session of the Panel." JPML Rule 7.4(d).

Exhibit 1    23
Page 11 of 18

1   *supra*, 143 F. Supp. 2d at 1048, the court observed that "even though a stay does not directly implicate

2   the merits of a case, it undeniably has important effects on the litigation." In particular, the court

3   noted, "[r]emoving a case to federal court has long been known to impose a burden upon plaintiffs . . .

4   [by] requir[ing] the plaintiff to present its arguments for remand in a foreign forum." *Id.* "Concerns

5   about being haled into distant courts are particularly implicated by the MDL system." *Id.* These

6   observations apply with equal force to Plaintiff in this case.

7           Most importantly, granting the requested stay would prejudice Plaintiff and the public by

8   delaying progress of this important water pollution case for months, if not the better part of next year.

9   During this period of delay, Plaintiff's case will be at a standstill, while the MTBE contamination

10  caused by Defendants' wrongful conduct contaminates an ever-increasing portion of Plaintiff's

11  groundwater resources. *See* Complaint, ¶¶ 48-51, 66 (MTBE, which is linked to a variety of potential

12  adverse health effects and renders drinking water unpalatable even at very low levels, spreads farther

13  and faster than other groundwater contaminants).

14          This important water pollution case has been delayed long enough. The Court should

15  immediately remand it to state court so that the action can be heard and Plaintiff can get on with

16  cleaning up its contaminated groundwater.

17                          IV.    **CONCLUSION**

18          For the foregoing reasons, the Court should deny Defendants' Stay Motion.

19

20                                          Respectfully submitted,

21  DATED: February ___, 2004              SHER & LEFF, LLP

22

23                          By:     _____

24                                  VICTOR M. SHER

25                                  (Additional counsel listed on next page)

26

27  *Policy?*, 23 Memphis St. U.L.Rev. 841, 843 (1993) (observing that a plaintiff may be "swiftly
28  transferred from his state court to his home federal district and then whisked to an unknown,
    unpredictable United States district judge").

                                    - 14 -
PLAINTIFF'S [PROPOSED] OPPOSITION TO DEFENDANTS' MOTION TO

Exhibit 1
Page 15 of 18

27

1

2

BARON & BUDD, P.C.
SCOTT SUMMY
CELESTE A. EVANGELISTI

3

4

Attorneys for Plaintiff: Quincy Community
Services District

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1
Page 16 of 18

28

**DECLARATON OF VICTOR M. SHER**
**IN SUPPORT OF PLAINTIFF"S OPPOSITION TO STAY**

I, Victor M. Sher, declare:

1.      I am a principal in the law firm of Sher & Leff, LLP, counsel of record for Plaintiff Quincy Community Services District ("Plaintiff") in this matter.  My office is also counsel of record for plaintiffs in certain other MTBE-related cases in California that were recently removed to federal court.  Unless otherwise stated, the following facts are true and based upon my own personal knowledge.

2.      On or about December 15, 2003, certain defendants ("Defendants") filed a Notice of Removal, removing this action from the Sacramento County Superior Court where it was filed.  In connection with their Notice of Removal, it is my understanding that Defendants apparently also filed with the Judicial Panel on Multidistrict Litigation ("JPML") a notice of relatedness to MDL 1358, *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a currently inactive MDL proceeding pending before the Hon. Shira A. Scheindlin of the U.S. District Court for the Southern District of New York, although Plaintiff has never received copies of any such notice.  At the same time, to my knowledge, the JPML has not issued a conditional transfer order in this case, and Plaintiff therefore has not yet had an opportunity to exercise its rights under the Multidistrict Rules to object to and oppose such transfer.  Other than Defendants' representations regarding their submission of a notice of related tag-along case, there is nothing in the record of this case that I am aware of to suggest any imminent action by the JPML regarding this case.

3.      In support of their Motion to Stay, Defendants cite a December 23, 2003 Order issued by Judge Scheindlin (the "Scheindlin Order") related to several New York MTBE-related cases pending before her.  I am informed that the Scheindlin Order is the result of certain stipulations agreed to by certain parties during a hearing before Judge Scheindlin on December 19, 2003 (the "New York Hearing").

4.      Plaintiff had no opportunity to participate in the New York Hearing, was not a party to the stipulations on which the Scheindlin Order is based, and has not agreed to any transfer of this action to Multidistrict Litigation Case No. 1358 or a stay of this action pending any such transfer.  To the contrary, Plaintiff has communicated its objections to any prospective transfer of this case to the

1  Southern District of New York to Judge Scheindlin, and intends to pursue those objections strenuously

2  *if and when* the Judicial Panel on Multidistrict Litigation ever issues a conditional transfer order

3  affecting this case.

4       5.    A true and correct copy of the January 5, 2004 letter I sent to Judge Scheindlin on

5  behalf of Plaintiff and other California plaintiffs represented by my office (without attached service

6  list) is attached hereto as Exhibit 1.

7       6.    A true and correct copy of the January 27, 2004 letter I sent to Judge Scheindlin on

8  behalf of Plaintiff and other California plaintiffs represented by my office (without attached service

9  list) is attached hereto as Exhibit 2.

10       7.    A true and correct copy of a January 5, 2004 letter sent by Karl R. Morthole, Esq. to

11  Judge Scheindlin on behalf of defendant Washoe Fuel, Inc. (without attached service list), a copy of

12  which was served on and received by my office, is attached hereto as Exhibit 3.

13       I declare under penalty of perjury under the laws of the United States of America that the

14  foregoing is true and correct.

15       Executed this _____ day of February, 2004 at San Francisco, California.

16

17

18                              _____

19                               Victor M. Sher

20

21

22

23

24

25

26

27                              Exhibit 1

                           Page 18 of 18              30

28

PLAINTIFF'S [PROPOSED] OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS; SHER DECL. – CIVS-03-2582 LKK/DAD

Law Offices of

# SHER & LEFF

**VICTOR M. SHER**
**ALEXANDER I. LEFF**

**TODD E. ROBINS**
**LYNDA M. COLLINS**

January 5, 2004

*Via Facsimile and Federal Express Overnight Delivery*
The Honorable Shira Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1050
New York, NY  10007-1312

> Re:   Order dated December 23, 2003 in In re MTBE Products Liability
> Litigation (MDL 1358); Master File C.A. No. 1:00-1898 (SAS)

Dear Judge Scheindlin:

This firm is co-counsel for plaintiffs in each of the following cases, all of which are listed in the attachment to the Court's December 23, 2003, Order:

- *California-American Water Company v. Atlantic Richfield Company, et al.*; Case No.  C 03-5379 JSW (N.D. Ca.)

- *Quincy Community Services District v. Atlantic Richfield Company, et al.*; Case No. CIV.S-03-2582 WBS DAD (E.D. Ca.)

- *City of Riverside v. Atlantic Richfield Company, et al.*; Case No. EDCV03-1460 RT SGLx (C.D. Ca.)

- *City of Roseville v. Atlantic Richfield Company, et al.*; Case No. CIV.S-03-2601 WBS GGH (E.D. Ca.)

- *Martin Silver, et al. v. Alon USA Energy, Inc., et al.*; Case No. 03-CV-2408 WQH (S.D. Ca.)

Plaintiffs in these actions respectfully object to the stay and/or transfer of these actions, either for purposes of determining remand motions or for any other pretrial purpose.

At the outset we note that we only today obtained a copy of Your Honor's final form of Order.  We had no chance to participate in the hearing before Your Honor on this motion, we were not consulted concerning the plaintiffs' positions in the other cases pending before Your Honor nor our position with respect to our own litigation, nor as of today have we even been served with a copy of the referenced Order.  We have however

**450 Mission Street, 5th Floor, San Francisco, CA 94105**
**Phone: (415) 348-8300   Fax: (415) 348-8333**
Exhibit 2
Page 1 of 3

31

The Honorable Shira Scheindlin
January 5, 2004
Page 2 of 3

managed to obtain a copy of the Order as well as of the transcript of the hearing on this matter.

We have already filed or are in the process of filing motions for remand in each of these cases with the local District Courts in the pending actions in California. We submit there is no basis for rewarding defendants' efforts to delay the proceedings in our case on the purported invocation of either federal jurisdiction that does not exist or MDL procedures for a matter that does not warrant them.

With respect to removal for purposes of determining the remand issues, the matters should more properly be resolved by the transferor courts before an MDL transfer or even consideration of a stay motion. *See, e.g., Karofsky v. Abbott Labs.*, 921 F. Supp. 18, 21 n.4 (D. Me. 1996) (granting plaintiff's remand motion because "it is easier . . . to rule on the jurisdictional issue [rather than to] transfer it to the Multidistrict Panel, which has many other concerns"); *Aetna U.S. Healthcare, Inc. v. Hoescht Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1048 (D. Kan. 1999) ("[f]or purposes of judicial economy, the jurisdictional issue should be resolved immediately. . . Judicial economy dictates a present ruling on the remand issue"); *see also* JPML Rules of Procedure, Rule 1.5 ("[t]he pendency of a motion . . . before the Panel . . .does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending). Indeed, a number of courts have held that the preliminary federal jurisdictional question "*must* be resolved before deciding whether to stay or transfer the case to the MDL panel." *Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1115 n.8 (W.D. Ky. 2000) (emphasis added); *accord, e.g., Stern v. Mutual Life Insurance Co.*, 968 F. Supp. 637, 639 (N.D. Ala. 1997) ("[i]f the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay"); *Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999) ("[t]his Court cannot . . . stay proceedings in an action over which it lacks jurisdiction").

Nor is there any proper basis for treating these matters as appropriate for an MDL for purposes other than the pending remand motions. This is not the first generation of MTBE litigation. Numerous dispositive motions – including most notably motions based on purported federal preemption of state tort damages claims – have been litigated in state and federal courtrooms, in California and elsewhere. The results, both in Your Honor's courtroom and around the Nation, have consistently rejected any federal preemption of the kinds of claims at issue in this case. Notably, the Ninth Circuit (the federal appellate Circuit in which all of these California cases are currently pending) has twice expressly rejected federal preemption of state laws limiting (or banning) MTBE because of environmental concerns. *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665, 670-73 (9th Cir. 2003); *Exxon Mobil Corp. v. U.S. Environmental Protection Agency*, 217 F.3d 1246, 1253 (9th Cir. 2000). Moreover, extensive discovery has already occurred in several lawsuits on the liability of most (if not all) of the defendant refiners and MTBE manufacturers. Consequently, it is unlikely that threshold legal questions common to all

Exhibit 2
Page 2 of 3

32

MTBE cases would require significant additional judicial energy by Your Honor or any other MDL judge.

The truth is that the primary focus of the current generation of MTBE cases will be on site specific issues: matters of variations in state law; local gasoline supply and distribution systems; and damages claims based on site-specific circumstances. We respectfully submit that neither the Southern District of New York nor any other out-of-state MDL jurisdiction represents an efficient – and certainly not the most efficient – forum in which to handle these issues as they relate to gasoline refined in California refineries and contaminating groundwater in that State.

In short, for the foregoing reasons plaintiffs in these cases object to the arrangement proposed in the Court's December 23, 2003, Order for transfer for remand or any other MDL purposes. We further expressly reserve these parties' rights to assert in any appropriate additional manner before Your Honor and/or the MDL Panel our opposition to MDL consolidation of these matters.

We will serve copies of this letter by facsimile on the other counsel involved in these cases, and will work with defense counsel to obtain service lists for the other MTBE cases identified in the schedule attached to the Court's December 23rd Order and will serve those counsel by facsimile as well as promptly as possible.

Respectfully submitted,

SHER & LEFF, LLP

Victor M. Sher

VMS:jac
cc: All Counsel

P:\Cal-American\Correspondence\Scheindlin-001.doc

Exhibit 2
Page 3 of 3

33

Law Offices of
# SHER & LEFF

**VICTOR M. SHER**
**ALEXANDER I. LEFF**

**TODD E. ROBINS**
**LYNDA M. COLLINS**

January 27, 2004

*Via Facsimile and Federal Express Overnight Delivery*

The Honorable Shira Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1050
New York, NY 10007-1312

> Re:    *In re MTBE Products Liability Litigation* (MDL 1358); Master File C.A.
> No. 1:00-1898 (SAS) / Motions for Remand

Dear Judge Scheindlin:

This firm serves as co-counsel for all of the plaintiffs in each of the following cases:

- *Orange County Water District v. Unocal, et al.*, Case No. SACV03-1742 JVS (ANx) (C.D. Ca.)

- *City of Riverside v. Atlantic Richfield Company, et al.*; Case No. EDCV03-1460 RT (SGLx) (C.D. Ca.)

- *California-American Water Company v. Atlantic Richfield Company, et al.*; Case No. C 03-5379 JSW (N.D. Ca.)

- *Quincy Community Services District v. Atlantic Richfield Company, et al.*; Case No. CIV.S-03-2582 WBS DAD (E.D. Ca.)

- *City of Roseville v. Atlantic Richfield Company, et al.*; Case No. CIV.S-03-2601 WBS GGH (E.D. Ca.)

- *Martin Silver, et al. v. Alon USA Energy, Inc., et al.*; Case No. 03-CV-2408 WQH (S.D. Ca.).

In addition, we represent as co-counsel all of the plaintiffs except the People of the State of California in *People, et al. v. Unocal, et al.* CIV S-032653 GEB/DAD (E.D. Cal.); the Sacramento County District Attorney's Office represents the People separately in that action. We understand that counsel for the People intends to join in the positions asserted in this letter.

Exhibit 3
Page 1 of 19

34

450 Mission Street, 5th Floor, San Francisco, CA 94105

The Honorable Shira Scheindlin
January 27, 2004
Page 2 of 19

## PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS

Each of the California actions originated in state court, asserting only state-law claims. Certain defendants removed the matters to federal district court. The removal papers state defendants' intention to have these actions transferred to MDL 1358. We are informed (but have not been served with any papers) that defendants in each case filed a Notice of Related, Tag-along Action with the Judicial Panel on Multidistrict Litigation (JPML). In any event, the JPML has yet to issue conditional transfer orders in any of these matters.

Plaintiffs in these matters have not yet had any opportunity to object to any conditional transfer orders from the JPML, although in fact plaintiffs believe that these actions are not appropriate for multi-district consolidation. All of these plaintiffs in the California actions intend to file notices of opposition to, and to move to vacate, any such conditional transfer order(s) affecting them. Meanwhile, plaintiffs have filed timely motions for remand in each of the California cases.

Your Honor's December 23, 2003, Order states that remand motions in "all similar removed actions . . . [should] be heard and decided by this Court" under the auspices of MDL 1358. The attachment to the December 23 Order listed each of these California lawsuits. Of course, our clients had no chance to participate in the hearing before Your Honor leading to the December 23 Order, and we were not consulted concerning the plaintiffs' positions in the other cases pending before Your Honor nor our position with respect to our own litigation.

As of today these cases are not before Your Honor in any capacity. The merits of the motions for remand in them have not been briefed to this Court, nor are any of those motions before Your Honor. The Court has not even seen the complaints in these actions, which differ substantially from those before the Court in the New York actions. Indeed, unlike the matters pending before Your Honor, plaintiffs in these California cases consist not solely of drinking water purveyors (although some are purveyors); rather these plaintiffs include public agencies with a spectrum of regulatory, property, usufructuary and other legal interests in protecting ground- and drinking water resources under California law.

The December 23 Order did not specify how (if at all) parties to "similar removed actions" should participate in the remand motions pending before the Court. Accordingly, we submit this letter brief to address certain issues raised by those motions. Consistent with our position that these actions are not appropriate for multi-district consolidation, however, the plaintiffs in the California actions listed above expressly reserve their rights to object to any such consolidation. They further maintain that their actions are not properly before this Court in its capacity as the court handling MDL 1358 or otherwise, and respectfully reserve their rights to assert that orders issued by this Court

Exhibit 3
Page 2 of 19

35

The Honorable Shira Scheindlin
January 27, 2004
Page 3 of 19

at this time have no effect in their actions. Finally, by submitting this letter in limited response to the moving and opposition papers in connection with the pending remand motion before Your Honor, none of these plaintiffs concedes that this Court has any jurisdiction over their California lawsuit.

## INTRODUCTION

None of the bases for federal subject matter jurisdiction asserted in the subject Notices of Removal and discussed in the removing defendants' ("Defendants'") opposition brief has any merit. This letter makes the following three points:

*First*, state court findings in these cases that MTBE gasoline is defective will have no impact on the federal clean air program or the gasoline distribution system. Indeed, 18 states (including New York) have *already banned* the use of MTBE in gasoline, and preemption challenges to such bans have been soundly rejected by the federal courts.[1] If a state's outright ban of MTBE does not conflict with the Clean Air Act ("CAA"), then tort claims regarding Defendants' past use of MTBE cannot possibly affect any federal interest under the CAA. Moreover, Defendants' federal question analysis hinges entirely on the very same federal preemption arguments that this Court has soundly rejected, as has every other published opinion on the subject.[2] Notwithstanding their effort to dress the emperor in new clothes, Defendants' attempt to ground federal jurisdiction over these cases on the same losing arguments should be rejected.

*Second,* Defendants' efforts to cast themselves as corporations acting under the direction of federal officers or agencies for purposes of 28 U.S.C. §1442(a)(1) are nonsense. Defendants are private, for-profit companies that produce a consumer product,

---

[1] *See Oxygenated Fuels Ass'n v. Pataki ("Pataki I")*, 158 F. Supp. 2d 248, 257 (N.D.N.Y. 2001) (rejecting preemption challenge to New York ban on MTBE on grounds that "preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA"); *Oxygenated Fuels Ass'n v. Pataki ("Pataki III")*, __ F. Supp. 2d __, 2003 WL 22845949, *9-*12 (N.D.N.Y. November 24, 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA, including a finding of fact that the predicted economic impacts of such ban are "not of a sufficient magnitude . . . to interfere with the achievement of the goals of the CAA"); *see also Oxygenated Fuels Ass'n v. Davis ("Davis II")*, 331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California's MTBE ban because, *inter alia*, there is "no support for [the] assertion that the Clean Air Act's goals – for purposes of preemption analysis – are a smoothly functioning market and cheap gasoline"), *affirming Oxygenated Fuels Assoc. v. Davis ("Davis I")*, 163 F. Supp. 2d 1185, 1187 (E.D. Cal. 2001); *Exxon Mobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1253 (9th Cir. 2000).

[2] *See In re MTBE Litig.*, 175 F. Supp. 2d 593, 615 (S.D.N.Y. 2001); *Pataki I, supra,* 158 F. Supp. 2d 248; *Pataki III, supra,* 2003 WL 22845949; *Davis II, supra,* 331 F.3d 665 *Davis I, supra,* 163 F. Supp. 2d 1185; *Exxon Mobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1253 (9th Cir. 2000); .

Exhibit 3                    36
Page 3 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 4 of 19

and, like all manufacturing businesses in this country, are subject to both state and federal environmental regulations. Published federal decisions have uniformly rejected the argument that a consumer product manufacturer's compliance with federal regulatory requirements constitutes acting "under the direction" of a federal officer.[3]  Moreover, there is no causal connection between Defendants' federal clean air obligations and the water pollution-related conduct at issue in this lawsuit, because Defendants voluntarily chose to use MTBE from among several available options.[4]

*Finally*, Defendants' attempt to predicate federal jurisdiction over this purely state-law case on the toehold of a 1988 bankruptcy order involving a single defendant also fails, because the outcome of this action can have no effect on the "administration of" a bankruptcy that concluded 15 years ago.[5]  In addition, even if these actions were somehow "related to" the Texaco bankruptcy, the presence of exclusively state-law claims and the extreme remoteness of any possible bankruptcy issues in this case clearly warrant remand pursuant to 28 U.S.C. § 1452(b).

## DISCUSSION

A.   Defendants' "Complete Preemption" and "Substantial Federal Question" Arguments Lack Merit.

We wish to bring to the Court's attention four issues in response to Defendants' federal question contentions. First, Defendants' preemption-related grounds for removing these product liability actions to federal court are rendered irrelevant by the fact that New York has banned MTBE gasoline, and such ban has been definitively upheld, as both a matter of law and fact, as not in conflict with any CAA goal or requirement. *See Pataki I, supra,* 158 F. Supp. 2d 248; *Pataki III, supra,* 2003 WL 22845949. Second, Defendants' "complete preemption" and "substantial federal question" arguments are nothing more than recycled versions of the very same preemption arguments they litigated unsuccessfully in this Court in the prior incarnation

[3] *See, e.g., Little v. Purdue Pharma, LP,* 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of law" does not support removal where defendant is "merely 'subject to complex regulations'").

[4] *See* 42 U.S.C. §7545(k)(2)(B) (CAA mandates *oxygen* content, not MTBE, in reformulated gasoline); *cf., e.g., Good v. Armstrong World Indus.,* 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos).

[5] *See In re Feitz,* 852 F.2d 455, 457 (9th Cir. 1988) (no jurisdiction under 28 U.S.C. §1334(b) because prior entry of confirmation order "destroyed any possible relationship between the outcome of [a subsequent] suit and the administration of the bankruptcy estate"); *In re McGhan,* 288 F.3d 1172, 1880 (9th Cir. 2002) ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

Exhibit 3
Page 4 of 19                                                                                      37

The Honorable Shira Scheindlin
January 27, 2004
Page 5 of 19

of MDL 1358. *See In re MTBE Litig.*, 175 F. Supp. 2d 593. Third, Defendants'
argument that the CAA and other federal statutes provide "exclusive remedies" for claims
regarding the design of MTBE gasoline ignores the fact that each of the cited federal
statutes expressly preserves state-law claims. *See* 42 U.S.C. §§ 7604(e), 6972(f); 15
U.S.C. §2617(a). Finally, Defendants' allegations of congressional and EPA intent to
"occupy the field" of fuels regulation grossly distort the relevant legislative and
regulatory history and ignore the case law examining such intent.

>    1.    Tort litigation regarding MTBE will have no impact on the
>          federal Clean Air program.

The premise of Defendants' federal question analysis – *i.e.* that state court
verdicts finding that MTBE gasoline is a defective product will undermine the federal
regulatory scheme and disrupt the gasoline distribution system – defies all logic. New
York, along with 17 other states, has already banned the use of MTBE in gasoline
(effective January 1, 2004) in order to protect the state's groundwater from
contamination. *See* L.2000, c. 35, §§ 2-3; *Pataki III, supra*, 2003 WL 22845949 at \*2.
Moreover, the New York MTBE law has survived a preemption challenge brought by the
Oxygenated Fuels Association, one of Defendants' trade associations. *See Pataki I,
supra*, 158 F. Supp. 2d 248; *Pataki III, supra*, 2003 WL 22845949. After a six day bench
trial in that case, Judge Mordue of the Northern District of New York determined, among
other things, that the predicted economic impacts of the ban are "not of a sufficient
magnitude . . . to interfere with the achievement of the goals of the CAA." *Pataki III,
supra*, 2003 WL 22845949 at \*9. The Ninth Circuit has similarly upheld California's ban
of MTBE, holding that there is "no support for [the] assertion that the Clean Air Act's
goals – for purposes of preemption analysis – are a smoothly functioning market and
cheap gasoline." *Davis II, supra*, 331 F.3d at 673.[6] If a state's complete ban of MTBE
does not conflict with the CAA or threaten the state's supply of reasonably priced fuel,
then damages claims regarding Defendants' past use of MTBE cannot possibly affect any
federal interest under the CAA.

Defendants' effort to raise the specter of an "inefficient patchwork" of differing
state fuel content standards (*see, e.g.* Ds' Opp. at 25) by reference to MTBE-related

---

[6] In light of the Ninth Circuit's definitive – and final – holding in *Davis II*, Defendants are
precluded under the doctrine of collateral estoppel from asserting their federal preemption
arguments in the California cases involving the plaintiffs we represent. *In re Cantrell* 329 F.3d
1119, 1123 (9th Cir. 2003) (issue preclusion applies where issue is identical to that decided in a
former proceeding, issue was actually litigated and decided in the former proceeding, the decision
in the former proceeding was final and on the merits, and the party against whom preclusion is
sought is the same as, or in privity with, the party to the former proceeding); *Tahoe Sierra
Preservation Council, Inc. v. Tahoe Regional Planning Council* 322 F.3d 1064, 1081 (9th Cir.
2003) (privity is a flexible concept, and may exist when the parties are not identical, as long as
there is "substantial identity" or "sufficient commonality of interest" between parties).

Exhibit 3                                          38
Page 5 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 6 of 19

actions filed outside of New York does nothing to assist their argument, because, as the
*Pataki* and *Davis* cases demonstrate, nothing in the CAA limits state authority to regulate
MTBE in order to prevent water pollution.[7] Their "patchwork" argument also confuses
the standards for establishing federal subject matter jurisdiction with those for
transferring and consolidating related district court actions. *See, e.g. Merrell Dow
Pharmaceuticals v. Thompson, supra*, 478 U.S. at 816 (defendant's concern about
uniformity of interpretation of federal statute in state-law actions is not an "aspect of
federal-question jurisdiction").[8] Defendants cannot bootstrap federal jurisdiction on the
alleged aggregate impact of multiple MTBE lawsuits.

2. **This Court, along with every other published decision addressing
preemption of state regulation of MTBE, has already rejected
Defendants' "complete preemption" and "substantial federal
question" arguments.**

This Court has already concluded that nothing in the CAA limits state-law tort
actions against refiners to recover damages to drinking water caused by their use of
MTBE, and thus has rejected the very preemption arguments on which Defendants'
federal question analysis is based. *In re MTBE Litig., supra*, 175 F. Supp. 2d at 611-617,
623-625. In fact, *every* published decision addressing preemption of state regulation of
MTBE – both before and since this Court's earlier decision in MDL 1358 – has rejected
Defendants' preemption arguments:

- *Davis II, supra*, 331 F.3d at 673 (California's MTBE ban not preempted
  because "Clean Air Act's provisions regarding oxygenate fuel additives …
  preserve state authority to adopt and enforce measures to prevent water
  pollution");

---

[7] *Pataki I, supra*, 158 F. Supp. 2d at 257 ("preventing a state from [regulating] an oxygenate
which it believes threatens its groundwater appears more likely to defeat rather than advance the
goals of Congress and [the] EPA"); *Davis II, supra*, 331 F.3d at 673 ("Clean Air Act's provisions
regarding oxygenate fuel additives … preserve state authority to adopt and enforce measures to
prevent water pollution").

[8] While concern about uniform judicial treatment may be pertinent in considering whether to
centralize or transfer pending federal actions into a multidistrict litigation ("MDL") under 28
U.S.C. § 1407, *see, e.g., In re Mosaid Technologies Inc. Patent Litigation*, 283 F. Supp. 2d 1359,
1360 (Jud. Pan. Mult. Lit. 2003) (centralization pursuant to § 1407 necessary to "prevent
inconsistent decisions," among other things), it does not constitute grounds for "federal question"
jurisdiction *over these cases* in the first instance. *See also In re MTBE Litigation, supra*, 175
F.Supp.2d at 603 ("[a] transfer of a case pursuant to 28 U.S.C. § 1407 cannot be made unless the
transferee court has subject matter jurisdiction"), *citing BancOhio Corp. v. Fox*, 516 F.2d 29, 32
(6th Cir.1975) ("[n]o matter how desirable respondents feel it may be to consolidate . . . all
litigation in any way related to Equity Funding, . . . such a transfer cannot be made unless the
district court properly has jurisdiction of the subject matter of the case").

Exhibit 3
Page 6 of 19

39

The Honorable Shira Scheindlin
January 27, 2004
Page 7 of 19

- *Exxon Mobil Corp. v. EPA, supra*, 217 F.3d at 1253 (affirming county regulation that effectively banned MTBE because "state authority to regulate oxygenate levels [was not] limited" by the CAA);

- *Pataki I, supra*, 158 F. Supp. 2d at 257 (rejecting preemption challenge to New York ban on MTBE on grounds that "preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA");

- *Pataki III, supra*, 2003 WL 22845949 at *12 (NY MTBE law does not conflict with any aspect of CAA, even if "viewed in the larger context of market forces, health and environmental impacts, regional priorities, technological feasibility and other considerations");

- *Davis I, supra*, 163 F. Supp. 2d at 1187 (E.D. Cal. 2001) (upholding California MTBE ban against federal preemption challenge because "the Clean Air Act does not require that MTBE be made available to refiners"), *aff'd*, 331 F.3d 665, *supra*.[9]

Despite this notable losing streak, Defendants here make the very same preemption arguments again – as Yogi Berra said, "it's déjà vu all over again." Specifically, the lengthy federal question analysis in Defendants' opposition hinges entirely on two arguments: (1) that state-law design defect claims somehow seek to "disturb the delicate balance" struck by Congress and EPA in permitting refiners to use MTBE in reformulated gasoline; and (2) that the CAA expressly preempts such design defect claims. This Court, however, already rejected the identical arguments in *In re MTBE*.

Specifically, Defendants' "substantial federal question" argument is predicated on the assertion that the New York Plaintiffs' design defect claims raise risk-utility questions

---

[9] *See also Abundiz v. Explorer Pipeline Co.*, 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state law MTBE contamination case does "not conflict with the Congressional clean air objectives"). Defendants' citation of four unpublished trial court decisions regarding MTBE preemption (*see* D's Opp., p. 21, n.20) is unavailing. Each of these decisions was rendered before *Davis II* and *Pataki III*. In addition, two of them – *Coppola v. Amerada Hess*, No. 2001/3995 (N.Y. Sup. Ct., Dutchess Cty., Jul. 31, 2002) and *Molloy v. Amerada Hess*, No. 2001/3996 (same) – contained a single paragraph finding preemption with no analysis of the CAA. Two others – *Kubas v. Unocal*, No. BC191876 (Cal. Sup. Ct., L.A. Cty., Aug. 23, 2001) and *Hixon v. Unocal*, No. BC195295 (same) – incorrectly assumed that assessing tort damages was equivalent to a regulatory ban (which the Ninth Circuit in any event affirmed in *Davis II*). State court opinions giving more than cursory attention to the preemption argument have, like federal courts, rejected the argument. *See, e.g., County of Suffolk v. Amerada Hess, et al.*, No. 007-011-MOT D (Sup. Ct. Suffolk Cty., N.Y., Jan. 2, 2004); *South Tahoe Public Utility District v. ARCO et al.*, No. 999128 (Cal. Super. Ct. Jan. 15, 2002); *City of Dinuba v. Unocal et al.*, No. 305450 (Cal Super. Ct. April 1, 2003); *Plainview Water District v. Exxon Mobil Corporation et al.*, No. 9975/01, (N.Y. Sup. Ct. May 22, 2002).

Exhibit 3
Page 7 of 19

40

The Honorable Shira Scheindlin
January 27, 2004
Page 8 of 19

that "require a reassessment of all of the factors Congress-directed EPA to consider in promulgating RFG regulations so as to 'require the greatest reduction in emissions' . . . [including] the cost of achieving such emission reductions, any non air-quality and other air-quality related health and environmental impacts and energy requirements." Ds' Opp. at 20-22.[10]  Defendants made the same argument verbatim to this Court in *In re MTBE Litig.*, and, as Defendants concede (see Ds' Opp. at 22), this Court disagreed:

> Defendants argue that any risk-utility analysis would impermissibly permit a reexamination of the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the CAA.  More specifically, defendants note that Congress, through the RFG Program, authorized the EPA to issue regulations to reduce air pollution while taking into consideration "the cost of achieving such emission reductions, any non air-quality and other air-quality related health and environmental impacts and energy requirements." 42 U.S.C § 7545(k)(1).  However, as discussed earlier, Congress did not mandate the use of MTBE, nor did the EPA's certification of gasoline containing MTBE require consideration of non air- quality factors. . . . Thus, while the EPA could consider the non air-quality impact of the use of MTBE, any such consideration was . . . not commensurate with a risk-utility analysis. . . . Accordingly, defendants' motions to dismiss these [design defect] claims are denied.

Similarly, Defendants' "complete preemption" argument in these cases consists of precisely the same express preemption argument they made and lost in *In re MTBE Litig.* in 2001.  *Compare* Ds' Opp. at 24-28 (plaintiffs' tort claims regarding MTBE contamination of groundwater preempted because they would result in a "control or prohibition respecting a[] characteristic or component of fuel" under 42 U.S.C. § 7545(c)(4)(A)), *with In re MTBE Litig.*, *supra*, 175 F. Supp. 2d at 612-614 (rejecting argument that "section 7545(c)(4) . . . preempt[s] state law claims concerning the contamination of groundwater caused by the use of MTBE").  Defendants themselves concede, as they must, that "[t]his Court and several others have previously found that § 7545(c)(4)(A) does not prevent state regulation of fuels if that regulation is designed to protect groundwater, as opposed to regulating emissions." Ds' Opp. at 25.  Indeed, as noted above, since this Court's 2001 opinion, the Ninth Circuit has concluded as a matter of law that "California's MTBE ban ... does not 'frustrate [ ] the full effectiveness of federal law,'" *Davis II, supra,* 331 F.3d at 673, and the Northern District of New York

---

[10] Of course, Plaintiffs' design defect claims do not require resort to any federal law issue – substantial or otherwise. *Eastern States, supra,* 11 F. Supp. 2d at 390 (substantial federal question jurisdiction requires showing that "a disputed question of federal law is a necessary element of one of the well-pleaded state claims"); *Shadie v. Aventis Pasteur,* 254 F. Supp. 2d 509, 518 (M.D. Pa. 2003) (where defendants, not plaintiffs, ask court to interpret federal law, "[t]he mere presence of a federal issue . . . does not create federal jurisdiction").

Exhibit 3
Page 8 of 19

41

has reached the same result for New York's ban as a matter of both fact and law in *Pataki III*.

Defendants' assertion that they have "never presented," and this Court has not rejected, the federal question arguments they raise in support of removal, *see* Ds' Opp. at 2, is simply not true. To the extent Defendants suggest that the Court's prior ruling rejecting preemption under both express and conflict preemption theories does not preclude their current complete preemption argument here, they misconstrue the narrow scope of complete preemption. "Complete preemption is rare," and only applies when the "preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *ARCO Environmental Remediation v. Montana Dept. of Health and Environmental Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987). If state tort remedies related to MTBE contamination do not expressly or impliedly conflict with any requirement, goal or objective under the CAA, such remedies cannot conceivably be "completely preempted." Indeed, as the Supreme Court has held, even a potentially valid federal preemption defense (which Defendants do not have) is not sufficient to establish removability under the complete preemption doctrine, because "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-399 (1987).

Thus, Defendants cannot escape this Court's prior preemption rulings simply by dressing the same preemption arguments in new clothing.[11] As those preemption arguments are the *sine qua non* of their attempt to find a federal question hidden within these state-law tort actions, Defendants' removal pursuant to 28 U.S.C. § 1331 was improper.

3.   **Defendants fail to show that the CAA or any other federal statute contains the exclusive cause of action for Plaintiffs' claims.**

According to the U.S. Supreme Court, complete preemption has been found *only* "when the federal statutes at issue provided the exclusive cause of action for the claim

---

[11] As it would appear that "the litigation of this particular issue has reached such a stage that [there is] no really good reason for permitting it to be litigated again," *Zdanok v. Glidden Company, Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d Cir. 1964), the combination of this Court's previous legal holdings in *In re MTBE* and the court's factual findings in *Pataki III* likely bar Defendants from relitigating their preemption arguments here. *See, e.g., Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir.1996) (underlying "matters actually litigated and determined" in prior proceeding were "identical" to those asserted in subsequent case, and therefore barred by doctrine of issue preclusion/collateral estoppel). However, the Court need not address this concern in order to grant the New York Plaintiffs' motions to remand.

Exhibit 3
Page 9 of 19

42

The Honorable Shira Scheindlin
January 27, 2004
Page 10 of 19

asserted and also set forth procedures and remedies governing that cause of action."
*Beneficial National Bank v. Anderson*, __ U.S. __, 123 S. Ct. 2058, 2062 (2003). Of
course, the CAA provides neither the exclusive cause of action for the claims asserted by
the New York Plaintiffs for water-related damages, nor procedures and remedies
governing those causes of action.

Defendants blithely assert that various administrative remedies under the CAA,
Solid Waste Disposal Act, 42 U.S.C. § 6901 *et seq.* ("SWDA")[12] and Toxic Substances
Control Act, 15 U.S.C. § 2601 *et seq.* ("TSCA") provide "exclusive remedies for parties
seeking to alter the design of reformulated gasoline." Ds' Opp. at 28. Defendants then
contradict themselves by acknowledging (as they must) that federal law does *not* provide
"the only remedy for the presence of MTBE in groundwater." Ds' Opp. at 30. Of
course, under *Beneficial National Bank, supra*, 123 S.Ct. 2062, this concession alone
destroys Defendants' complete preemption argument – as federal law must provide the
"exclusive" remedy in order to completely preempt a state cause of action for
jurisdictional purposes. Defendants' citation to *Pacific Gas & Electric Co. v. State
Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 212 (1983), for the proposition that
complete preemption can apply to an "identifiable portion" of a field is unavailing. That
case, which addressed, and rejected, an occupation-of-the-field preemption defense on
the merits, did not involve the complete preemption exception to the well-pleaded
complaint rule, and thus is inapposite.

In any case, Defendants' argument fails to overcome an obvious point that was
central to this Court's previous rejection of their preemption defense: the CAA
specifically *preserves* state common law claims, expressly providing that "[n]othing in
this section shall restrict any right which any person (or class of persons) may have under
any statute or *common law* to seek enforcement of any emission standard or limitation *or
to seek any other relief*." 42 U.S.C. § 7604(e) (emphasis added); *In re MTBE Litig.,
supra*, 175 F. Supp. 2d at 613, n.35 ("Congress' intent to allow some state causes of
action is also evidenced by the CAA's citizen suit savings provision, codified at 42
U.S.C. § 7604(e)"); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492, (1987)
(identical savings language in the Clean Water Act "negates the inference that Congress
'left no room' for state causes of action"). The SWDA contains a savings provision
identical the CAA provision quoted above. *See* 42 U.S.C. § 6972(f). TSCA contains a
similar savings clause, which provides that, except where EPA has promulgated certain
rules pertaining to a toxic substance – which it has not in this case – "nothing in this
chapter shall affect the authority of any State or political subdivision of a State to
establish or continue in effect regulation of any chemical substance, mixture, or article
containing a chemical substance or mixture." 15 U.S.C. §2617(a).[13] Accordingly,

---

[12] Defendants incorrectly refer to the SWDA by its prior name, the Resource Conservation &
Recovery Act.

[13] Defendants cite *Bastien v. AT&T Wireless*, 205 F.3d 983 (7th Cir. 2000), for the proposition
that a savings clause does not necessarily preclude a finding of complete preemption. Ds' Opp. at

Exhibit 3                43
Page 10 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 11 of 19

Defendants' citations to statutory remedies for non-water related objections to CAA, SWDA and TSCA implementation do not support their "exclusive cause of action" argument.

   4.   **Congress and EPA intended to preserve state flexibility, not limit it.**

   Citing certain statements from the legislative history of the 1990 CAA amendments, Defendants allege that Congress had "the specific knowledge and expectation that MTBE would be the principal means by which refiners met oxygenate requirements." Ds' Opp. at 13. They suggest that this somehow evinces as a congressional intent to "occupy the field" of fuels regulation to the exclusion of state action to remedy water pollution caused by MTBE.[14] This distortion of the legislative history has also been addressed, and rejected, by this Court. As the Court explained in *In re MTBE Litig., supra*:

> [W]hile members of Congress may have anticipated that MTBE would be used to meet the oxygenate requirements, . . . the legislative history of the 1990 CAA amendments indicates that Congress, through the RFG Program, sought to reduce harmful vehicle emissions in the "larger context of market forces, health and environmental impacts, regional priorities, technological feasibility and other considerations." [citation omitted.] Indeed, Congress expected that oxygenates would compete in the marketplace and 'preventing a state from [regulating] an oxygenate which it believes threatens its groundwater appears more likely to defeat rather than advance the goals of Congress and [the] EPA....'

175 F. Supp. 2d at 612-13.

   Defendants' selective reference to out of context EPA statements regarding the agency's intent to occupy the field of fuels regulation, *see* Ds' Opp. at 16, 24-25, 28; *citing* 59 Fed. Reg. 7716, 7809 (Feb. 16, 1994), ignores the Agency's own express conclusion that nothing in the CAA fuels programs "establishes a comprehensive federal presence" with respect to MTBE. U.S. EPA, *Approval and Promulgation of*

---

30. But in *Bastien*, unlike the case here, the court found that the plaintiff's claims fell squarely within the express preemption provision of the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A), and that application of the savings clause would thus nullify the preemption provision. 205 F.3d at 987. Here, as described above, this Court, along with every other published decision addressing the question, has found that the CAA's express preemption provision does not apply to state regulation of MTBE in order to prevent water pollution.

[14] Similar attempts by the oil industry to delve into the legislative history of the CAA were rebuffed in *Davis II*, 331 F.3d at 671, where the Court stated: "We hesitate to examine the legislative history, for we find the text of the Act relatively clear."

Exhibit 3
Page 11 of 19

44

*Implementation Plans; Nevada State Implementation Plan Revision, Clark County*, 64 Fed. Reg. 29573, 29578 (Jun. 2, 1999), *affirmed in ExxonMobil Corp. v. U.S. E.P.A., supra*, 217 F.3d 1246. According to EPA, "federal regulation here is not so pervasive as to preclude supplementation by states, nor is the federal interest in the field sufficiently dominant to preempt state action." 64 Fed. Reg. at 29578. Instead, such programs "explicitly preserve a role for the states in regulating fuels," and "[w]hile Congress deliberately rejected a federal mandate that would reduce market opportunities for various oxygenates, *it did this with the goal of preserving state flexibility, not limiting it*." *Id.* (emphasis added). As Defendants admit, the court in *Pataki I, supra*, 158 F. Supp. 2d at 255-57, squarely rejected the industry's attempt to unearth any EPA intent to occupy this field. In short, Defendants' position has been rejected soundly both by EPA itself and the courts.

**B.    Removal Under § 1442(a)(1) Is Improper Because Defendants Were Not Acting Under the Direction of Any Federal Official or Agency.**

Defendants alternatively claim that they were acting under the direction of federal officers pursuant to 28 U.S.C. § 1442(a)(1).[15] The primary beneficiaries of § 1442(a)(1) are federal officers and agencies. *Tremblay v. Philip Morris, supra*, 231 F. Supp. 2d at 417. For a *private* party defendant to invoke the statute, it must: (1) assert a colorable defense based on federal law in the notice of removal; (2) establish that it was acting under the direction of a federal officer; and (3) show that its federally directed actions are causally connected to the harm about which the plaintiff complains. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1989). Defendants fail on each of these required showings.

1.    **Defendants have no colorable federal defense.**

The only federal defense Defendants raise is conflict preemption. *See* Ds' Opp. at 32. As discussed above: (1) this Court has already rejected this purported defense in an earlier phase of this MDL proceeding; and (2) such defense cannot possibly succeed on the merits in any event, as New York has already banned MTBE and such ban has been definitively upheld in the courts. Defendants have thus failed to raise a "colorable" federal defense.

Defendants suggest that their preemption defense is still viable because this Court "described the . . . issue as one which needed development as a matter of fact." Ds' Opp. at 32. In *In re MTBE Litig, supra*, 175 F. Supp. 2d at 616, the Court observed that, whether alternatives to MTBE "are 'practicable' and have been available to the defendants for their use in the RFG Program is a question of fact that the Court cannot address on a motion to dismiss." Subsequently, however, Defendants had the opportunity

---

[15] Section 1442(a)(1) provides, in pertinent part, that an action may be removed to federal court by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

Exhibit 3                    45
Page 12 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 13 of 19

to prove their case regarding "practicability," and failed. In *Pataki III, supra*, 2003 WL 22845949 at *9, the court found that Defendants' trade association failed to show that New York's MTBE ban would cause supply shortfalls "sufficient to support a finding of conflict preemption."

> 2.   As private regulated entities that voluntarily *chose* to use MTBE in gasoline despite its known hazards, Defendants never acted under the direction of any federal official.

Defendants also cannot establish that they undertook their use of MTBE in gasoline and their failure to warn of its known hazards "under the direction" of the federal government. *See Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 945 (E.D.N.Y. 1992) ("the set of defendants who can avail themselves of § 1442(a) is smaller than the set of defendants who can make a colorable claim to a federal defense"). Their attempt to do so fails for at least three reasons: (a) Defendants, as private actors merely complying with federal regulations, fall outside the class of protected persons under § 1442(a)(1); and (b) because Defendants voluntarily chose to use MTBE from among several available options, they cannot plausibly claim that they were acting "under the direction" of EPA.

> a.   Defendants' compliance with RFG regulations does not transform them into agents of the federal government.

Defendants' attempt to characterize their choice of MTBE to comply with the federal RFG and OFP programs as "acting under the direction of federal officers or agencies" strains credulity. No published decision ever has held that a private sector manufacturer merely subject to complex regulations, and not acting under the operative *contractual* commands of federal officials, acts "under the direction" of the federal government. *See, e.g., Little v. Purdue Pharma, supra*, 227 F. Supp. 2d at 860-61 ("body of law" does not support position that defendant "merely 'subject to complex regulations'" is entitled to removal under §1442(a)(1)).[16]

Defendants here are not federal contractors; they are not producing products for the government; nor are they performing any other governmental function. Rather, they are private enterprises in the business of manufacturing and selling gasoline. Like virtually every other manufacturing business in the United States, they are subject to a variety of federal environmental regulations. Published federal decisions are unanimous in holding that mere participation in a regulated industry does not constitute "acting under the direction" of the federal government under § 1442(a)(1).

---

[16] *See also generally*, WRIGHT, MILLER & COOPER, *supra*, Ch. 7, § 3727, *and* 166 A.L.R. Fed. 297 (2000) (in all cited cases where corporate manufacturer defendants successfully removed state court tort actions under § 1442(a)(1), the defendants were government contractors and the products at issue were produced for the government pursuant to contractual specifications); *see also Ryan*, 781 F. Supp. at 943 (§ 1442 requires "narrow" and "restrictive" construction).

Exhibit 3
Page 13 of 19

46

The Honorable Shira Scheindlin
January 27, 2004
Page 14 of 19

In *Tremblay v. Philip Morris,* 231 F. Supp. 2d 411, 417 (D.N.H. 2002), a cigarette manufacturer removed the plaintiffs' state law deceptive advertising claims under § 1442(a)(1), arguing that by "merely attempting to comply with the FTC's policies … when it engaged in the conduct for which it has been sued," it was acting under the direction of the FTC. The court flatly rejected this argument, holding that "[a]lthough Philip Morris is a participant in a regulated industry, this is not enough to demonstrate that it acted under the direction of a federal officer." *Id.* at 418. The Court explained: "The mere fact that a tobacco company has complied with the requirements of a federal law cannot suffice to transform it into a federal actor any more than the compliance of a myriad of private enterprises with federal law and administrative regulations could of itself work such a transformation." *Id., quoting Brown v. Philip Morris, Inc.,* 250 F.3d 789, 801 (3rd Cir. 2001).

In *Little v. Purdue Pharma, supra,* 227 F. Supp. 2d at 861, pharmaceutical corporations sued for injuries allegedly caused by the drug OxyContin argued that FDA regulation and approval of the drug made them *de facto* federal officers for purposes of § 1442(a)(1). The court rejected removal, explaining:

> Corporate defendants herein do not operate at the discretion of federal authorities. They are private, for-profit business organizations which exist independently of the federal government. Lest participants in every regulated industry be entitled to "federal officer" status, corporate Defendants need to make a much greater showing than in doing the acts giving rise to Plaintiffs' claims, they were acting pursuant to a federal directive. Acting under the watchful eye of the federal government is not enough.

*Id.*

Similarly, in *Bakalis v. Crossland Savings Bank,* 781 F. Supp. 140, 145 (E.D.N.Y. 1991), the court held that even in cases involving "pervasive regulation" a corporate defendant seeking removal under § 1442(a)(1) must show "'regulation plus'" – *i.e.* that "the corporation is so intimately involved with the government functions as to occupy essentially the position of an employee of the government." Defendants have made no such showing here, nor can they. Indeed, none of the legislative history or EPA regulations cited by Defendants even remotely suggests a federal intent to impose federal *control* over Defendants' refining operations. To the contrary, the legislative history of the 1990 CAA Amendments indicates unequivocally that the RFG program was "in no way intended to resurrect a 1970's DOE-type scheme of detailed government intervention in U.S. gasoline markets." *Pataki I,* 158 F. Supp. 2d at 256-57. Neither the use of MTBE in gasoline nor the harm it has wrought, is anyone's fault but Defendants' own. There is no jurisdiction under § 1442(a)(1).

Exhibit 3
Page 14 of 19                                                                47

The Honorable Shira Scheindlin
January 27, 2004
Page 15 of 19

Defendants' sole support for their novel position to the contrary is *Watson v. Philip Morris*, No. 4:03-CV-519 GTE (E.D. Ark., Dec. 12, 2003), a recent unpublished opinion out of the Eastern District of Arkansas. As the *only* case to ever hold that a private consumer product manufacturer's mere compliance with federal rules constitutes "acting under the direction of a federal officer" for purposes of section 1442(a)(1), *Watson* is clearly an aberration, and should be ignored.[17] *Tremblay, Brown* and *Little* should control here. To hold otherwise would create a loophole in this narrow removal statute large enough to accommodate the proverbial Mack Truck.

> **b.   There is no causal connection between RFG program requirements and the conduct targeted by this lawsuit because refiners voluntarily chose to use MTBE from among several available options.**

The CAA mandates *oxygen* content, not MTBE.  42 U.S.C. § 7545(k)(2)(B). *Every* published decision that has addressed the issue has concluded that neither the CAA nor its implementing regulations requires refiners to use MTBE or any particular oxygenate in order to meet RFG requirements. *See, e.g., In re MTBE Litig.*, 175 F. Supp. 2d at 615 (RFG Program does not mandate the use of MTBE); *ExxonMobil, supra*, 217 F.3d at 1251-53 (CAA "does not mandate a 'recipe' or so-called government gas"); *Davis I*, 163 F. Supp. 2d at 1188 (CAA neither requires nor forbids the use of any particular oxygenate ... [i]ts 'goal' is to assure a particular oxygen content").  Defendants' use of MTBE is a matter of voluntary corporate choice, not a "necessary result" of CAA directives.

Defendants' choice to use MTBE breaks any causal connection between EPA's RFG and OFP regulations and Defendants' use of MTBE. *See Good v. Armstrong World Industries*, 914 F. Supp. at 1130 (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos); *Ryan v. Dow Chemical Co., supra*, 781 F. Supp. at 950 (no nexus between design defect claim and defendants' provision of Agent Orange to the military, because defendant was "being sued for formulating and producing a product all of whose components were developed without direct government control and all of whose methods of manufacture were determined by defendants"); *accord, Little, supra*, 227 F. Supp. 2d at 861 (because FDA was not involved in the "day-to-day drug development and manufacturing process," defendants were "operating at their own initiative"); *Arness v. Boeing North America, Inc.*, 997 F. Supp. 1268, 1275 (C.D. Cal.

---

[17] In any event, *Watson* is easily distinguishable from this case. In *Watson*, Philip Morris was sued for deceptive advertising in connection with tar and nicotine ratings derived from a testing method mandated by the FTC. Thus, the court concluded, plaintiffs' misleading advertising claim "squarely confronts the FTC's mandate." *Watson* at 23. Here, as explained below, there is no causal connection whatsoever between Defendants' federal clean air obligations and the water pollution-related conduct at issue in this lawsuit, because Defendants voluntarily chose to use MTBE from among several available options.

Exhibit 3                                48
Page 15 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 16 of 19

1998) (target conducted in groundwater contamination case against manufacturers of government rocket engines – failing to warn and improperly disposing of trichloroethylene ("TCE") – was not "under the direction" of the government, even though the government contracts at issue had specifically required use of TCE).   As the government does *not* require use of MTBE, Defendants cannot fairly argue that federal directives "caused" the conduct on which the District bases its common law and statutory claims.

C.   <u>The Court Should Remand This Case Because It Is Not "Related To"  The Texaco Bankruptcy, and Even If It Were, the Remand Provision Under 28 U.S.C. § 1452(b) Applies Squarely To This Case.</u>

This Court should also reject Defendants' alternative assertion of federal bankruptcy jurisdiction.   Their contention that these state-law environmental contamination lawsuits against numerous defendants represents a purported "collateral attack" against a 15-year-old bankruptcy order pertaining to a single defendant fails because: (1) federal jurisdiction is lacking in the first instance, as this case neither arises under Title 11, arises in a case under Title 11, nor is "related to" a case under Title 11; (2) remand is obviously warranted in light of the overwhelming – indeed, exclusive – predominance of state-law issues on the one hand, and the extreme remoteness of any bankruptcy issues on the other.[18]

1.   **Federal bankruptcy jurisdiction is lacking in the first instance, as this case is not "related to" the Texaco Bankruptcy.**

Texaco, Inc. filed for bankruptcy under Title 11 in 1987 and obtained confirmation of its reorganization plan in 1988.   *In re Texaco, Inc.*, 84 B.R. 893 (S.D.N.Y. 1988).   Because the 15-year-old Title 11 proceedings (the "Texaco Bankruptcy") are no longer being administered, and the rights of all creditors already have been determined in the Confirmation Order, the outcome of this case will have absolutely no effect on *the administration of* the Bankruptcy.   It is, therefore, not "related to" this action, and cannot form a basis for federal jurisdiction.

Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."   Cases "arising under" Title 11 are those cases in which the cause of action is created by title 11, and those "arising in a case under" Title 11 are those that, while not based on any right expressly created by title 11, nevertheless "would have no existence outside of the bankruptcy."   *In re Chargit Inc.*, 81 B.R. 243, 246-247 (Bankr.

---

[18] In addition, as the New York Plaintiffs' ably point out in their Reply Brief, nothing in either Defendants' removal notices or the operative complaints demonstrate that any of the Plaintiffs' claims that may pertain to Texaco "arose" prior to entry of Texaco's Confirmation Order, or are even covered by the Confirmation Order.

Exhibit 3
Page 16 of 19
49

S.D.N.Y. 1987). This case undoubtedly does *not* fit into either of these jurisdictional categories, as the exclusively state-law causes of action asserted in the complaints "exist independently of bankruptcy law." *See Williams v. Shell Oil Co*, 169 B.R. 684, 688 (S.D. Cal. 1994).

Defendants' contrary suggestion – that this case "invokes substantive rights created by the federal bankruptcy laws" (Ds' Opp. at 5) – has absolutely no merit. Each of the three cases they cite is easily distinguishable from this case. Neither *In re National Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997), *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 6 F.3d 1184 (7th Cir. 1993) nor *Texaco, Inc. v. Sanders (In re Texaco, Inc.)* 182 B.R. 937 (Bankr. S.D.N.Y. 1995) involved a motion to remand a state court action that had been removed to federal court by the debtor. Instead, each involved actions brought originally in federal bankruptcy court. For example, *Texaco v. Sanders* involved a motion by the debtor (Texaco) to reopen its bankruptcy proceeding and enforce its Confirmation Order against the plaintiffs in a state court case. *Id.* at 940-41. The federal bankruptcy court granted Texaco's motion on the common sense grounds that "a proceeding such as this, *to enforce and construe a confirmation order issued by this Court in this case*, constitutes a proceeding 'arising in or related to a case under title 11'" under § 1334(b). *Id.* at 944 (emphasis added). Thus, the Texaco bankruptcy court did not, and was not asked to, address the question presented here: whether a state tort suit (potentially) involving (some) pre-Confirmation Order Texaco conduct, and filed years after entry of such Order, is "related to" the Bankruptcy. The answer to this question, as explained above, is "no."[19]

Nor is this case "related to" the long-since-resolved Texaco Bankruptcy. Whether a civil proceeding is "related to" bankruptcy depends on "whether the outcome of the proceeding could conceivably have any effect on the estate *being* administered." *In re Chargit Inc., supra*, 81 B.R. at 247(emphasis added). "Although the optimist may argue that anything is 'conceivable,' any practical definition of this term of art must be tempered by a measure of reasonableness." *Id.* There is no conceivable chance that this case will affect the administration of the Texaco Bankruptcy, because it is no longer being administered.

By definitively discharging any and all claims or liabilities arising before its effective date, entry of the Texaco Confirmation Order fifteen years ago destroyed any possible relationship between the outcome of this suit and the *administration of* the Texaco Bankruptcy. *See In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988).[20] As is evident

---

[19] The string of recent, simultaneously decided cases from the Southern District of Texas cited by Defendants in favor of their bankruptcy arguments should be disregarded. Although they involved motions to remand, the court's decisions in these cases were predicated expressly on *Texaco v. Sanders*, which, as described above, has no bearing on this case.

[20] *Feitz* involved a cross-claim filed by a debtor's wife against a mortgagee in her husband's bankruptcy proceeding. The cross-claim was filed a mere four months after the bankruptcy

Exhibit 3                    50
Page 17 of 19

The Honorable Shira Scheindlin
January 27, 2004
Page 18 of 19

from their complaints, which say nothing at all about the Texaco bankruptcy, the New York Plaintiffs surely have no interest in re-opening such Bankruptcy or "collaterally attacking" the Confirmation Order. The mere fact that allegations in the complaints may potentially cover some pre-1988 conduct of Texaco does not furnish grounds for federal "related to" jurisdiction under § 1334(b). Rather, it means only that Texaco may have a discharge defense based on the Confirmation Order as to some small portion of its liability – a defense that a state court is fully capable of adjudicating. *See In re McGhan, supra,* 288 F.3d at 1180 ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

2.    **There are also ample grounds for the court to remand this action pursuant to § 1452(b).**

Defendants acknowledge, as they must, that the District Court's jurisdiction over bankruptcy proceedings is concurrent with that of state courts. 28 U.S.C. § 1334(b); *see* Ds' Opp. at 3. Thus, even if these actions were "related to" the Texaco Bankruptcy pursuant to § 1334(b) – which they are not – the Court should remand them to state court nonetheless, pursuant to 28 U.S.C. §1452(b).[21]

Section 1452(b) provides that "the court to which [a] claim or cause of action is removed [pursuant to § 1334 jurisdiction] may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). In determining whether to exercise their equitable discretion under this statute, courts generally consider the following factors: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the

---

court's entry of a confirmation order as to the bankruptcy estate. *Id.* at 456. Like the Texaco Confirmation Order at issue here, the confirmation order in *Feitz* precluded creditors from asserting any other interest than that provided for them in the confirmed plan. *Id.* at 458. The Ninth Circuit held there was no federal "related to" jurisdiction over the cross-claim because entry of the confirmation order "*destroyed any possible relationship between the outcome of the suit and the administration of the bankruptcy estate.*" *Id.* (emphasis added).

[21] While we recognize that some cases in this Circuit have questioned whether the mandatory abstention provision in 28 U.S.C. §1334(c)(2) applies to removed cases, *see Rennaisance Cosmetics, Inc. v. Dev. Specialists Inc.,* 277 B.R. 5, 13 (S.D.N.Y. 2002), we note that conditions for mandatory abstention are met in this case. *See Allied Mechanical and Plumbing v. Dynamic Hostels Housing Dev. Fund Co.,* 62 B.R. 873, 876 (Bankr.S.D.N.Y.1986) (setting out mandatory abstention factors). The pending remand motions were filed as soon as practicable following service of the notices of removal. These lawsuits, which could not have been commenced in the District Court absent the alleged bankruptcy issue, are based exclusively on state-created rights, have been commenced in state court and are capable of timely adjudication there once remanded.

Exhibit 3
Page 18 of 19                                                    51

The Honorable Shira Scheindlin
January 27, 2004
Page 19 of 19

main bankruptcy case; and (6) the existence of the right to a jury trial. *Rennaisance Cosmetics, Inc., supra,* 277 B.R. at 14.

Here, every factor favors remand: (1) the effect of these actions on the administration of the Texaco Bankruptcy is, at most, incredibly remote; (2) the actions are based entirely on state-law causes of action; (3) as Defendants are sure to argue in motions to come, the cases raise difficult questions of state tort law, as well as complex, site-specific factual issues; (4) as New York law predominates, these cases are brought by subdivisions of the state and involve environmental and public issues of statewide importance, principles of comity clearly favor remand; (5) as described above, the remoteness of these cases to the Texaco Bankruptcy is extreme; and (6) the Plaintiffs' claims are triable by a jury. In light of these factors, and the fact that the New York state courts are fully capable of resolving any potential, remote Confirmation Order defense Texaco may assert, the equities not only favor, but demand, a remand of this case to state court. As the court concluded in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 408 (S.D.N.Y. 1991), these are "state law action[s] and a state court is better able to respond to a suit involving state law."

## CONCLUSION

This Court does not have subject matter jurisdiction over these actions. Even assuming the Court has jurisdiction over the Texaco Bankruptcy, the equities obviously favor remand. Accordingly, the Court should grant the instant motions for remand.

We will serve copies of this letter on the other counsel involved in these cases and those identified in the schedule attached to the Court's December 23rd Order.

Respectfully submitted,

VICTOR M. SHER

VMS: jac
cc: All Counsel per attached Service List

Exhibit 3
Page 19 of 19

52

## LAW OFFICES of KARL R. MORTHOLE
### 57 POST STREET
### SUITE 801
### SAN FRANCISCO, CA 94104

TELEPHONE (415) 986-0227                                                      FAX (415) 986-1734

January 5, 2004

SENT BY FAX (212) 805-7920

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court for the Southern
  District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1050
New York, NY 10007-1312

Re: *Quincy Community Services District v. Atlantic Richfield Company et al.*,
    Case No. CIVS-03-2582 WBS DAD, Eastern District of California

Dear Judge Scheindlin:

I represent Washoe Fuel, Inc., a defendant in the above action, one of the many actions around the country alleging groundwater contamination by the fuel chemical MTBE. My client is named as a so-called "owner/operator" defendant in the case. I am filing this letter brief in this matter because I only recently learned of the deadline today for this case.

On behalf of my client, I want to respectfully object to the idea of transferring the case against my client to New York. My client is a small firm with its headquarters in Reno, Nevada, and a small fueling facility in Quincy, California. The issues involving my client are ones which will likely center, almost entirely, if not entirely, on facts related to the local situation in Quincy. It will be exceedingly more expensive and inconvenient for my client, and other companies similarly situated, to litigate this matter across the United States. The likelihood of a fair and just resolution of the matter is much less likely, if the issues that relate to my client are to be decided in New York, together with scores or more other cases, with hundreds of different defendants. While this may be more convenient for certain other defendants, it will not be for mine.

I trust this perspective will be considered in the process of deciding the questions relating to transfer of this case.

Very truly yours,

*Karl R. Morthole*

Karl R. Morthole                                                                53

Exhibit 4
Page 1 of 3

LAW OFFICES OF KARL R. MORTHOLE

Hon. Shira A. Scheindlin
January 5, 2003
Page 2


cc:      (Sent by FAX)
         Mr. Jon Madsen, Washoe Fuel, Inc.
         Linda Bowman, Esq.

         (Sent by regular mail)
         Victor M. Sher, Esq., Counsel for the Plaintiff

         (Sent by e-mail)
         Defendants' counsel listed on the attached e-mail transmittal

Exhibit 4
Page 2 of 3

54

## Karl Morthole

**From:**      "Linda Bowman" <atty@bowrob.reno.nv.us>
**To:**         "Karl Morthole" <karl@mortholelaw.com>
**Sent:**       Monday, January 05, 2004 1:11 PM
**Subject:**    Fw: Action by MDL 1358 Judge re Stays and Remand Motion

From: "Vaz, Alicia" <AVaz@coxcastle.com>
To: <Matthew_Heartney@aporter.com>; <dschrader@morganlewis.com>;
<mzarro@morganlewis.com>; <ashue@morganlewis.com>;
<colleen.doyle@bingham.com>; <diana.martin@bingham.com>;
<brandon.diket@shell.com>; <catherine.stites@bingham.com>;
<jparker@sheppardmullin.com>; <losmundsen@sheppardmullin.com>;
<temkowd@mto.com>; <john.lyons@lw.com>; <JON.ANDERSON@lw.com>;
<michele.johnson@lw.com>; <kevin.mcdonald@valero.com>;
<trenfroe@bracepatt.com>; <Coy.Connelly@bracepatt.com>; <hwanghx@mto.com>;
<Rod.G.Smith@conocophillips.com>; <bmdixon@unocal.com>;
<jhaffner@tesoropetroleum.com>; <davism@howrey.com>;
<phanebutt@EimerStahl.com>; <lmeyer@EimerStahl.com>;
<neimer@EimerStahl.com>; <alapavowker@crowncentral.com>;
<cgarvey@goodwinprocter.com>; <mtully@goodwinprocter.com>;
<sraphael@hunton.com>; <sleifer@bakerbotts.com>; <psacripanti@mwe.com>;
<jpardo@mwe.com>; <sriccardulli@mwe.com>; <pcondron@wallaceking.com>;
<HAPD@chevrontexaco.com>; <rwallace@wallaceking.com>;
<dhball@bryancave.com>; <jwrogers@bryancave.com>;
<Randle@Carpenters-law.com>; <jguttmann@bdlaw.com>; <hfusco@bdlaw.com>;
<mcmahon@scmv.com>; <hoffman@blankrome.com>; <mseltzer@susmangodfrey.com>;
<Drichman@sortlaw.com>; <rperrino@gordonrees.com>; <bledger@gordonrees.com>;
"Doty, Robert P." <RDoty@coxcastle.com>; <skidmore@asilaw.org>;
<pduchesneau@manatt.com>; <cderecat@manatt.com>; <ERomero@GPSLLP.com>;
<malysiaklaw@msn.com>; <jfillerup@LUCE.com>; <Rinelaw@aol.com>;
<Sean.Hungerford@bulliavant.com>; <dmoore@rhlaw.com>;
<atty@bowrob.reno.nv.us>; <mjgray@gmoc.com>
Cc: <Lawrence_Cox@aporter.com>; <Stephanie_Bonnett@aporter.com>; "Langan, J.
Andrew" <Andrew_Langan@chicago.kirkland.com>; <jpardo@mwe.com>; "Hanebutt,
Pamela" <phanebutt@EimerStahl.com>; "O'Connor, Karleen M."
<KOCONNOR@coxcastle.com>
Sent: Monday, January 05, 2004 12:17 PM
Subject: RE: Action by MDL 1358 Judge re Stays and Remand Motion

55

Exhibit 4
Page 3 of 3

1/5/2004

O

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
|  | ) **MDL Docket No. 1358** |
|  | ) |
|  | ) This Document Relates to: |
|  | ) |
|  | ) *City of Riverside v. Atlantic Richfield Co., et al.,* |
|  | ) Case No. EDCV03-1460 RT SGLx (C.D. Cal.) |
|  | ) |
|  | ) *City of Roseville v. Atlantic Richfield Co., et al.,* |
|  | ) Case No. CIVS-03-2601 LKK GGH (E.D. Cal.) |
| **IN RE:** | ) |
|  | ) *Silver, et al. v. Alon USA Energy, Inc., et al.,* Case |
|  | ) No. 03 CV2408 J(RBB) (S.D. Cal.) |
| **METHYL TERTIARY BUTYL ETHER** | ) |
| **PRODUCTS LIABILITY LITIGATION** | ) *Orange County Water District v. Unocal* |
|  | ) *Corporation, et al.,* Case No. SACV03-1742 |
|  | ) JVS(ANX) (C.D. Cal.) |
|  | ) |
|  | ) *People of the State of California, et al. v. Atlantic* |
|  | ) *Richfield Co., et al.,* Case No. CIVS-03-2653 GEB |
|  | ) DAD (E.D. Cal.) |
|  | ) |
|  | ) *Quincy Community Services District v. Atlantic* |
|  | ) *Richfield Co., et al.,* Case No. CIVS-03-2582 WBS |
|  | ) DAD (E.D. Cal.) |
|  | ) |
|  | ) **DECLARATION OF MATTHEW T.** |
|  | ) **HEARTNEY IN SUPPORT OF CERTAIN** |
|  | ) **DEFENDANTS' CONSOLIDATED** |
|  | ) **RESPONSE OPPOSING ALL MOTIONS TO** |
|  | ) **VACATE CONDITIONAL TRANSFER** |
|  | ) **ORDER (CTO-5)** |

I, MATTHEW T. HEARTNEY, declare:

1.      I am a member of the bar of the State of California and am admitted to practice before the United States District Courts for the Central, Eastern, Northern and Southern Districts of California.  I am a partner in Arnold & Porter LLP and am counsel of record for Atlantic Richfield Company ("Atlantic Richfield") and BP Products North America Inc. ("BP") in each of the six cases that are the subject of Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) ("Motion").

2.      I have read the declaration of Victor Sher submitted in support of the Motion ("Sher Decl.").  I note that, in his declaration, Mr. Sher contends that, based principally upon four prior cases involving MTBE in the California state courts, discovery on "common" issues of fact relating to MTBE is already "substantially mature" so that little, in any, additional discovery on such issues is likely to be needed.  Sher Decl., ¶¶ 24-25.  The prior California cases cited by Mr. Sher are *South Lake Tahoe Public Utility District v. Atlantic Richfield*, No. 999128 (Cal. Super. Ct.) ("*South Tahoe*"), *Communities for a Better Environment v. Unocal Corp.*, No. 997013 (Cal. Super. Ct.) ("*CBE*"), *City of Santa Monica v. Shell Oil Co.*, Nos. 01CC04311, 02CC11407 (Cal. Super. Ct.) ("*Santa Monica*"), and *City of Dinuba v. Unocal Corp.*, No. 305450 (Cal. Super. Ct.) ("*Dinuba*").  Mr. Sher's conclusion is unwarranted, as I explain below.

3.      In *South Tahoe*, I served as lead counsel for Atlantic Richfield and, after BP Amoco p.l.c.'s acquisition of Atlantic Richfield in 2000, for BP as well.  In *Santa Monica,* I also served as lead counsel for Atlantic Richfield.  In addition, my partner, Lawrence Cox, served as lead counsel for Atlantic Richfield in *CBE* and, due to the need to coordinate our activities, I became thoroughly familiar with the proceedings in that case.   Neither of our clients was a

2

defendant in *Dinuba*, but that case is addressed in the declaration submitted by David Schrader, counsel for ChevronTexaco Corporation.

4.      The discovery taken in these prior California cases falls far short of supporting Mr. Sher's conclusion that discovery on "common question of fact" relating to MTBE is already "mature" or "largely completed." (Sher Decl., ¶ 24; *see* Brief In Support Of Plaintiffs' Joint Motion, at 16-17.) For example, although BP is named a defendant in each of the six cases addressed in this Motion (as well as in virtually all of the many cases already being transferred without objection to MDL 1358), BP was never a defendant in *CBE*, reached an early settlement in *South Tahoe* before more than preliminary discovery was taken, and was named in *Santa Monica* only as a cross-defendant and dismissed before any discovery was taken. More broadly, plaintiffs in *Silver v. Alon USA Energy, Inc.*, No. 03-2408 WQH (S.D. Cal.), who join in the Motion, name as defendants some 17 parties not involved in any of the past California cases but which are defendants in many of the cases now being transferred without objection to MDL 1358. These defendants include Alon USA Energy, Inc., Alon USA LP, Amerada Hess Corporation, Coastal Eagle Point Oil Company, Coastal Mobile Refining Company, Crown Central Petroleum Corporation, El Paso CGP Corporation, El Paso Corporation, El Paso Merchant Energy-Petroleum, Gulf Oil, LP, Koch Industries, Inc., Marathon-Ashland Petroleum, LLC, Marathon Oil Corporation, Premcor Inc., The Premcor Refining Group, Inc., Sunoco, Inc., and Total Holdings USA, Inc. Similarly, plaintiffs in *City of Riverside v. Atlantic Richfield Company*, No. 04-53 (Anx) (C.D. Cal.) and *City of Roseville v. Atlantic Richfield Company*, No. 03-2601 MCE GGH (E.D. Cal.), who also join this Motion, have named as a defendant Circle K Stores, Inc., a party not involved in any of the past California cases.

5.      Virtually all of the "common issue" discovery relating to MTBE taken in the past California cases occurred in the *South Tahoe* and *CBE*, as part of a coordinated effort between the two cases.  No "common issue" discovery took place in *Santa Monica*, at first due to ongoing motion practice needed to determine venue, and then due to a discovery stay imposed by the trial judge.  And, as noted in the accompanying declaration of Mr. Schrader, little or no such discovery took place in *Dinuba.*

6.      Although a substantial amount of discovery did take place in *South Tahoe* and *CBE*, nearly all of this occurred between 1999 and the spring 2001.  Thus, the *South Tahoe* trial began (as Mr. Sher notes) in September 2001, while in *CBE* the defendants submitted their case-in-chief in July 2001.  This discovery was conducted at a time when the available state of knowledge concerning MTBE was substantially less complete than it is today.  Notably, since that time, much additional information has become available regarding such important topics as the biodegradability of MTBE and its tendency to disappear from the environment through natural attenuation (*see, e.g.*, Wilson, R.D., D.M. Mackay, and K.M. Scow, (2002), *In situ MTBE biodegradability supported by diffusive oxygen release*, Environmental Science & Technology 36, no. 2: 190-199), the generally low concentrations and lack of danger to public health posed by nearly all MTBE detections (*see, e.g.*, Statement of Robert Hirsch, Associate Director For Water, U.S. Geological Survey, Before United States House Of Representative, Committee On Energy and Commerce, November 1, 2001), and the existence of effective remediation techniques (of which there is now a large literature).  Discovery concerning the "common issues" raised by the current round of MTBE cases, including the six cases addressed by this Motion, will certainly need to take this additional information into account.  In addition, in light of the very large number of newly-filed cases, together with the fact that many of the plaintiff counsel

involved in these cases had no involvement in the past cases in which the discovery cited by Mr. Sher was taken, it seems highly unrealistic to expect that there will not be substantial additional demands for "common issue" discovery calling for the supervision of an MDL judge.

7.      Mr. Sher also mentions the past discovery taken in what he calls the "Original MDL 1358" proceedings.  That discovery was primarily directed towards class certification proceedings, and involved only partial discovery on the merits.  Merits discovery was by no means completed in MDL 1358.  For example, plaintiffs took no depositions of representatives of defendants.

8.      I further note that the Motion suggests that gasoline sold in California is "unique" due to the "special requirements" that are imposed by the California Air Resources Board ("CARB").  Joint Brief, at 18.  While it is true that CARB can, and has, imposed additional requirements as to some aspects of gasoline sold in California, it is clear that the requirements of overwhelming importance to MTBE lawsuits such as the six cases at issue here are the federal oxygenate mandates imposed by the Clean Air Act and EPA regulations.  These apply equally in California as elsewhere.  Notably, in June 2001, the federal EPA flatly rejected the State of California's request for a waiver of the federal oxygenate mandates, which the State had requested as a means of freeing California refiners from the need to comply with these regulations.  A copy of the EPA's June 12, 2001 press release announcing this decision, entitled "EPA Issues Decision On California Waiver Request," is attached as Exhibit A.

9.      I also have read the Motion To Vacate Condition Transfer Order No. 5 submitted by two of the defendants in the *Quincy* case, Fuel Star, Inc. and Blue Star Petroleum, Inc. (hereafter, "Fuel Star and Blue Star").  That motion refers to two additional California MTBE cases.  In one, *D.J. Nelson Trust (Fruitridge Vista Water Co.) v. Atlantic Richfield,* No.

02AS00535  (Cal. Super. Ct.) ("*Fruitridge*"), my partner Lawrence Cox serves as lead counsel for Atlantic Richfield.  Again, due to the need to coordinate activities, I am familiar with proceedings in that case.  In *Fruitridge*, discovery is at an early stage, and the discovery that has been ongoing focuses almost entirely on facts relating to plaintiff's well-field, the particular MTBE releases allegedly affecting the well-field, and the service stations from which such releases allegedly took place.  No significant "common issues" discovery has taken place in *Fruitridge*.  The second case cited by Fuel Star and Blue Star is *Cambria Community Services District v. Chevron U.S.A. Inc.,* No. CV 010889 (Cal. Super. Ct.).  Neither of my clients was a party to that case, and to my best knowledge the only refiner defendant named there was Chevron.

10.    In sum, it cannot fairly be said that past discovery regarding the "common issues" relating to MTBE is so "substantially mature" that "the risk of duplicative discovery is minimal, and there is not need for MDL consolidation."  (Plaintiffs' Joint Brief, at 16.)  Instead, very considerable efficiencies can be expected by transferring the six cases at issue to MDL-1358.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed under penalty of perjury in Chicago, Illinois on April 13, 2004.

Matthew T. Heartney

A

## U.S. Environmental Protection Agency

# National News

Contact Us | Print Version
EPA > National News >

Press Releases By Date

Press Releases By Title

Comunicados en Español

Archived Press Releases

News Around The Nation

Help

### EPA ISSUES DECISION ON CALIFORNIA WAIVER REQUEST

# Environmental News

## FOR RELEASE: TUESDAY, JUNE 12, 2001

### EPA ISSUES DECISION ON CALIFORNIA WAIVER REQUEST

**Contact: Cathy Milbourn 202-564-7824;
milbourn.cathy@epa.gov**

Given the legal constraints within the Clean Air Act, EPA cannot approve the State of California's request to waive the federal oxygen content requirement for reformulated gasoline (RFG), Administrator Christie Whitman announced today.
After an extensive analysis, the Agency concluded that there is significant uncertainty over the change in emissions that would result from a waiver. California has not clearly demonstrated what the impact on smog would be from a waiver of the oxygen mandate. "We cannot grant a waiver for California since there is no clear evidence that a waiver will help California to reduce harmful levels of air pollutants," said Whitman.

In April 1999, California Governor Gray Davis requested a waiver from the oxygen requirement, contending that the oxygen mandate impeded California's ability to further reduce smog-forming nitrogen oxides. Governor Davis' request for a waiver closely followed his announcement that the state would ban the use of the oxygenate methyl tertiary butyl ether (MTBE) starting in 2003.

The Clean Air Act requires that RFG contain oxygen to reduce harmful emissions of ozone, a major component of smog. RFG is a cleaner-burning gasoline required by federal law to be used in certain major metropolitan areas of the United States with the worst ozone air pollution problems. MTBE is an additive in gasoline used by many refiners to meet oxygen level requirements.

Whitman added, "The Administration is concerned about the risks of MTBE in drinking water in California and other states. Clean air and clean water are equally important. We do not want to pursue one at the expense of the other. As it currently stands, the Clean Air Act provisions limit the Agency's ability to address these concerns. We are exploring all options and currently assessing the health risks of MTBE."

EPA is committed to working with Congress to address concerns about MTBE, while maintaining the air quality and other benefits of the RFG program.

**R-088 ###**

Release date:06/12/2001 Receive our News Releases Automatically by Email

EPA Home | Privacy and Security Notice | Contact Us

URL: http://yosemite.epa.gov/opa/admpress.nsf/0/8983010ce5b00d5285256a69004e90c1?OpenDocument
Last Revised: 06/12/2001

P

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER**<br>**PRODUCTS LIABILITY LITIGATION** | ) **MDL Docket No. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *City of Riverside v. Atlantic Richfield Co., et al.,*<br>) Case No. EDCV03-1460 RT SGLx (C.D. Cal.)<br>) .<br>) *City of Roseville v. Atlantic Richfield Co., et al.,*<br>) Case No. CIVS-03-2601 LKK GGH (E.D. Cal.)<br>)<br>) *Silver, et al. v. Alon USA Energy, Inc., et al.,* Case<br>) No. 03 CV2408 J(RBB) (S.D. Cal.)<br>)<br>) *Orange County Water District v. Unocal*<br>) *Corporation, et al.,* Case No. SACV03-1742<br>) JVS(ANX) (C.D. Cal.)<br>)<br>) *People of the State of California, et al. v. Atlantic*<br>) *Richfield Co., et al.,* Case No. CIVS-03-2653 GEB<br>) DAD (E.D. Cal.)<br>)<br>) *Quincy Community Services District v. Atlantic*<br>) *Richfield Co., et al.,* Case No. CIVS-03-2582 WBS<br>) DAD (E.D. Cal.)<br>)<br>) **DECLARATION OF DAVID L. SCHRADER**<br>) **IN SUPPORT OF CERTAIN DEFENDANTS'**<br>) **CONSOLIDATED RESPONSE OPPOSING**<br>) **ALL MOTIONS TO VACATE CONDITIONAL**<br>) **TRANSFER ORDER (CTO-5)** |

I, DAVID L. SCHRADER, declare:

1.     I am a member of the bar of the State of California and am admitted to practice before the United States District Courts for the Central, Eastern, Northern and Southern Districts of California.  I am a partner in Morgan, Lewis & Bockius LLP; we are counsel of record for ChevronTexaco Corporation ("CVX"), Chevron U.S.A. Inc. ("CUSA"), Unocal Corporation, and Union Oil Company of California in the six cases that are the subject of Plaintiffs' Joint Motion To Vacate Conditional Transfer Order (CTO-5) ("Motion").

2.     I read the papers submitted in support of plaintiffs' Motion, as well as the Motion To Vacate Conditional Transfer Order No. 5 submitted by two of the defendants in the *Quincy* case, Fuel Star, Inc. and Blue Star Petroleum, Inc.  I make this declaration to provide information concerning two of the MTBE cases in the California state courts referred to in these motion papers – *City of Dinuba v. Unocal Corp.*, No. 305450 (Cal. Super. Ct.) ("*Dinuba*") and *Cambria Community Services District v. Chevron U.S.A. Inc.*, No. CV010889 (Cal. Super. Ct.) ("*Cambria*").

3.     My law firm represented CVX and CUSA in the *Cambria* action, and Unocal Corporation in the *Dinuba* case.  I am familiar with the proceedings in both cases.

4.     In *Dinuba*, which settled in the fall 2003, discovery focused on such local issues as the contamination allegedly affecting the plaintiff's wells, the bulk facility and service stations allegedly responsible for MTBE releases affecting those wells, the identification of which refiners and distributors supplied fuel to the service stations involved, and plaintiff's damages. Prior to the settlement, no Unocal depositions were taken.  Also, very little discovery was taken concerning potentially "common" issues of fact relating to other refiner defendants, as presented

1-LA/767165.1

in the six cases involved in the pending motions to vacate CTO-5 or, more broadly, in the more than 60 MTBE cases filed nationwide beginning on September 30, 2003.

5.      In *Cambria*, CUSA was the only refiner defendant named.  Therefore, there was no discovery addressing "common" issues relating to MTBE as to any of the other defendants named in the six cases involved in the pending motions to vacate CTO-5.  In addition, Cambria settled before the summary judgment motion raising potentially "common" legal issues (e.g., federal preemption) was heard.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed under penalty of perjury in Los Angeles on April 12, 2004.

_____

David L. Schrader