MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 2 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL Docket No. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *People of the State of California, et al.* |
| | ) *v. Atlantic Richfield Co., et. al.*, 03- |
| | ) 2653 GEB DAD (E.D.Cal.); |
| | ) |
| | ) *Orange County Water District v.* |
| | ) *Unocal, et al.*, 03-1742 JVS (ANx) |
| | ) (C.D. Cal.); |
| ✓ RE: | ) |
| | ) *City of Riverside v. Atlantic Richfield* |
| **(ETHYL TERTIARY BUTYL ETHER** | ) *Co., et al.*, 04-53 JVS (ANx) (C.D. |
| **RODUCTS LIABILITY LITIGATION** | ) Cal.); |
| | ) |
| | ) *Quincy Comm. Serv. Dist. v. Atlantic* |
| | ) *Richfield Co., et al.*, 03-2582 LKK |
| | ) DAD (E.D. Cal.); |
| | ) |
| | ) *City of Roseville v. Atlantic Richfield* |
| | ) *Co., et al.*, 03-2601 MCE GGH (E.D. |
| | ) Cal.); |
| | ) |
| | ) *Martin Silver, et al. v. Alon USA* |
| | ) *Energy, Inc., et al.*, 03-2408 WQH |
| | ) (S.D. Cal.) |
| | ) |
| | ) **PLAINTIFFS' REPLY BRIEF IN** |
| | ) **SUPPORT OF JOINT MOTION TO** |
| | ) **VACATE CONDITIONAL** |
| | ) **TRANSFER ORDER (CTO-5)** |

Transferring the California Actions to MDL 1358 will serve neither convenience, justice

nor efficiency. Unlike each of the cases voluntarily transferred to MDL 1358, the California

Actions involve local contamination caused by a product manufactured, sold and distributed

OFFICIAL FILE COPY

IMAGED APR 26 '04

entirely to uniquely California specifications. In light of the distinctly local and state-specific factual and legal issues on which they are focused, the California Actions are substantially different from all non-California actions subject to CTO-5 (and CTO-4). Whatever may be appropriate for other recently removed MTBE cases, it is not appropriate to transfer these California cases to the Southern District of New York.

What Defendants describe as the "new wave" of MTBE litigation does not arise in a vacuum. MTBE litigation is well-advanced in both the Transferee Court and state courts around the country. Several MTBE cases have gone to trial and numerous others are currently proceeding toward trial. If the California Actions are left to proceed on their own: (1) the risk of duplicative discovery is minimal, because common-issue discovery is largely completed and available; and (2) there is little risk of inconsistent legal rulings, because the Transferee Court, as well as numerous other federal and state courts, already have issued rulings on most common legal issues. The Panel consistently has held that, in mature litigation like this, transfer of later-filed actions is unnecessary and inappropriate.

Defendants' Response alleges that Plaintiffs are "factually wrong" in asserting that common-issue discovery is largely complete. Even if common discovery were complete, Defendants argue, it would not be "legally sufficient" to justify vacating the CTO. Yet, they submit nothing to contradict Plaintiffs' evidence, which shows that: (a) millions of common-issue discovery documents pertaining to the vast majority of defendants already have been produced in MDL 1358 and other cases; and (b) such discovery is available – including the MDL 1358 document depository, which is available to parties in MTBE cases whether they are transferred to the MDL or not. Defendants also seek to mischaracterize Plaintiffs' position as proposing mere "informal cooperation" as an alternative to transfer, when, in fact, formal

mechanisms are available to both courts and parties to permit use of discovery on common issues from prior related cases, as the Panel has routinely recognized.

Finally, despite their dire prediction that separate prosecution of the California Actions may lead to a "patchwork of potentially conflicting state regimes" that threatens "to disrupt the nation's gasoline supply," Defendants admit (as they must) that California (along with seventeen other states) has already banned MTBE. These bans had no significant economic impact and survived federal preemption challenges. If a state's complete ban of MTBE does not threaten a state's supply of reasonably priced fuel, then damages claims arising out of Defendants' past use of MTBE will similarly have no impact on the nation's gasoline supply. Defendants also disregard the fact that transfer will do nothing to reduce the risk of inconsistent rulings, because at least *eighteen* MTBE cases that Defendants never sought to remove to federal court, and now cannot, are currently proceeding in state courts around the country. Accordingly, Plaintiffs' Motion should be granted.

## A.    Separate Prosecution Of The California Actions Will Not Increase The Risk Of Duplicative Discovery.

If the California Actions are left to proceed on their own, the risk of duplicative discovery is minimal. Plaintiffs in their moving papers: (1) provided a detailed analysis of the specific questions of fact raised in each California Action; (2) submitted evidence establishing that virtually all the discovery regarding the few questions of fact shared with other MTBE cases already has been completed and is available to all parties; (3) presented authority – including findings by the Transferee Court in MDL 1358 – demonstrating that the remaining questions are localized and case-specific; and (4) cited a long line of Panel decisions holding that, in mature litigation such as this, transfer of later-filed actions is unnecessary and inappropriate.

Defendants' response only reinforces these points.  Defendants identify only three allegedly "common" questions of fact.  Two of these questions – (i) what defendants knew and represented about MTBE and (ii) whether gasoline with MTBE is a defective product – are the same two "common" questions of fact identified by Plaintiffs as issues already covered substantially by discovery completed in prior cases.  Defendants' Consolidated Response at 2; Plaintiffs' Joint Motion to Vacate at 16.

The third "common" question Defendants allege is "whether plaintiffs' water was contaminated by MTBE."  Ds' Resp. at 2, 27.  Defendants cite the Panel's October 2000 order transferring certain private well-owner cases into MDL 1358, but ignore the fact that Judge Scheindlin, after transfer, specifically determined that questions regarding contamination present "a factually unique set of circumstances," because there are "differences in the level of contamination . . . and the nature of relief that each will require."  *In re MTBE Prods. Liab. Litig.,* 209 F.R.D. 323, 337, 344 (S.D.N.Y. 2002).[1]  As the Transferee Court has already acknowledged, questions about the extent of contamination, available remedies, and implementation and cost of those remedies in the California Actions will be location and site-specific; discovery in these areas, therefore, will not duplicate other cases.[2]

---

[1] In *In re Decennial Census Adjustment Litig.,* 506 F. Supp. 648, 651 (JPML 1981), a case cited by Defendants (Ds' Response at 24, n. 15; 27), the Panel emphasized that the transferee judge is "in the best position" to determine whether factual issues are purely local in nature.  Under this rule, the Panel should defer to Judge Scheindlin's determination that factual issues regarding contamination are unique in each case.

[2] The cases Defendants cite involving "localized factual issues" miss the mark, as none of them involve the question presented here: *i.e.,* whether transfer is inappropriate when discovery on common issues is complete, and only unique or localized factual issues remain.  *See In re Cuisinart Food Processor Antitrust Litig.,* 506 F. Supp. 651, 654-655 (JPML 1981) (Ds' Resp. at 27) (cases transferred because discovery on common allegations of national conspiracy remained); *In re Dept. of Energy Stripper Well Exemption Litig.,* 472 F. Supp. 1282, 1285-1286 (JPML 1979) (Ds' Resp. at 27) (no contention by objecting parties that only individual, localized issues remained); *In re Beef Industry Antitrust Litig.,* 1977 WL 1559, at *2 (JPML 1977) (Ds' Resp. at 24, n. 15; 27) (cases transferred because discovery on common questions remained).

Defendants do not deny that the remaining major factual issues in the California Actions – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to MTBE – are not "common questions of fact" with MTBE cases outside California. These factual issues will require location-specific product-identification discovery, as well as discovery into the particulars of California's gasoline infrastructure, all of which will be completely irrelevant to parties in MTBE cases outside California, because the regulatory regime, refining centers and distribution systems in California are distinct and/or isolated from those in other gasoline markets in the United States. *See, e.g., Oxygenated Fuels Ass'n v. Pataki*, No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (gasoline infrastructures in California and New York "could not be more divergent").[3] Discovery regarding gasoline formulation, refining and distribution in the California Actions thus will be "of no interest" to non-California plaintiffs. *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (JPML 1979) (denying transfer where discovery in one action would be "of no interest" to parties in another).[4]

---

[3] *See also Oxygenated Fuels Ass'n v. Davis* ("*Davis I*"), 163 F. Supp. 2d 1182, 1885-1187 (E.D. Cal. 2001) (as the only "state that regulated automotive emissions before Congress entered the field," California is the only state with authority to regulate fuels without EPA approval); *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 838 (2001) (gasoline used in California is "unique" and state's gasoline market is "isolated" in light of CARB fuel content regulations); Declaration of Victor M. Sher, Exhibit 16 at 1 (approximately 90 percent of California gasoline is refined in-state) (submitted with Plaintiffs' Joint Motion to Vacate Conditional Transfer Order (CTO-5). Defendants suggest, nonetheless, that the California gasoline market is not unique, citing a 2001 EPA press release announcing the agency's denial of California's request for an exemption from federal RFG requirements. Ds' Resp. at 28. However, Defendants conveniently ignore *Davis v. U.S. Envtl. Protection Agency*, 348 F.3d 772 (9th Cir. 2003), where the Ninth Circuit found that EPA's denial was an abuse of discretion.

[4] Defendants attempt to distinguish *In re Gasoline Lessee Dealer Antitrust Litigation* based on the advanced status of the pending actions in that case. Ds' Resp. at 24, n. 16. This argument fails, because the status of the involved actions had no bearing on the Panel's conclusion that transfer is unwarranted when there are "critical legal and factual disparities" between cases. 479 F. Supp. at 580.

Defendants next contend that Plaintiffs are "factually wrong" in asserting that common-issue discovery (*i.e.* notice and knowledge and defective product discovery) is largely complete because "discovery in MDL 1358 focused primarily on class certification," and "did not include exhaustive merits discovery" or depositions. Ds' Resp. at 20-21. Defendants submit no evidence to contradict Plaintiffs' evidence. Rather, Defendants acknowledge "overlap" with the discovery in *South Tahoe* and *CBE*, and ignore the evidence submitted by Plaintiffs, which shows that millions of documents were produced in *South Tahoe, CBE,* and MDL 1358 relating to the very issues Defendants identify as "common" issues.[5] Defendants' argument that the prior MDL 1358 cases did not produce extensive common issue discovery does, however, contradict their own (correct) statement that the Transferee Court "has already managed significant MTBE discovery and established a . . . depository for documents." Ds's Resp. at 12. Defendants cannot have it both ways.

Defendants also fail to identify any significant area of common discovery that remains incomplete. Instead, they list eighteen companies[6] – seventeen oil companies (half of whom are affiliated with one another) and one retail chain (Circle K) – that were not defendants in *South Tahoe* or *CBE* and from whom Plaintiffs allegedly "can be expected to seek common discovery." Ds' Response at 21, n. 11. However, except for Circle K (which is not a refiner and therefore does not pose common discovery issues), *none* of these companies is named in the *Sacramento*

---

[5] *See* Sher Decl., ¶¶ 15, 18, 20 (documents produced in MDL 1358, *South Tahoe* and *CBE* "cover, among other things, the following topics: i) fate and transport of MTBE in the subsurface (including mobility and non-biodegradability); ii) documented releases of MTBE to groundwater; iii) toxicity of MTBE; iv) taste and odor thresholds for MTBE; v) alternatives to MTBE; vi) treatment technologies for MTBE water contamination; vii) economics of MTBE; viii) the oil companies' and manufacturers' early notice and knowledge of the risks of MTBE to groundwater; ix) the oil companies' and manufacturers' promotion and marketing of MTBE; x) the problem of (and defendants' knowledge of) leaking underground storage tanks; and xi) the production, sale and distribution of MTBE and gasoline containing MTBE" in various markets").

[6] Defendants state that "there are at least twenty defendants," but list only eighteen. Ds' Resp. at 21.

County, Orange County, Quincy, Riverside or Roseville Actions; and therefore none of the "new"

defendants affects these actions in any way or supports transfer of them to New York.  Nor,

given the unique circumstances of the California gasoline refining and distribution system and

the local nature of California contamination, does the mere presence of additional defendants in

the Silver Action warrant transferring that action.  Thus, Defendants' suggestion that common-

issue discovery will need to begin at square one for multiple defendants in the California Actions

is as disingenuous as it is incorrect.[7]

Defendants also contend that "much additional information" regarding common scientific

issues has become available since the close of discovery in South Tahoe and CBE.  Ds' Resp. at

22.  Defendants acknowledge, however, that the discovery produced in South Tahoe and CBE

has been "updated" and expanded in more recent MTBE cases currently proceeding in various

state courts, including California.  Id.  Obviously this discovery could also be made available to

the parties in the instant cases.[8]

While apparently conceding that the millions of common-issue discovery documents are

indeed available to the parties, Defendants conclude without explanation that informal

"coordination" regarding the use of such documents "hardly provides a complete solution to

discovery issues likely to be raised" and "would be far less efficient that [sic] the more complete

---

[7] Defendants also assert that BP – a defendant in the California Actions – was not subject to common discovery in CBE and South Tahoe.  Ds' Resp. at 21.  Of course, Defendants ignore the fact that BP was a defendant in the prior MDL 1358 cases and produced enough generally applicable (and available) liability documents to fill a 121-page, single-spaced index.  (Reply Declaration of Victor M. Sher, Exh. A, submitted herewith.)

[8] One such case is the Fruitridge Vista action currently pending in Sacramento Superior Court.  In their consolidated response to the motions to vacate CTO-4 (at 17, n. 8), Defendants claimed that discovery in Fruitridge Vista "goes far beyond the discovery taken in either MDL 1358 or in the CBE and South Tahoe cases."  Inexplicably, Defendants now assert in their response to this Motion that "no significant 'common issues' discovery has taken place" in Fruitridge Vista (Ds' Resp. at 21).

supervision provided by an MDL Court." Ds' Resp. at 23.  This is incorrect for at least two reasons.

First, it misconstrues Plaintiffs' position.  Plaintiffs have not proposed that mere informal cooperation is a sufficient alternative to transfer under section 1407.  Rather, as the Panel has routinely recognized, formal mechanisms are available to both courts and parties to permit use of discovery on common issues from prior related cases, such as orders to show cause.  *See, e.g. In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (JPML 2002) (citing *Manual for Complex Litigation, Third*, § 31.14 (1995)); *In re McDonalds Franchise Antitrust Litig.*, 472 F. Supp. 111, 115 (JPML 1979) ("should [voluntary efforts] fail to eliminate potential discovery problems, any party could seek orders from the involved district courts directing the parties to harmonize their remaining pretrial efforts").[9]  Second, Defendants' unsupported conclusion that use of existing discovery would be inefficient without Transferee Court supervision ignores the fact that the Transferee Court itself established the existing document depository for (among other things) the specific purpose of making prior common-issue discovery available to parties in other MTBE cases – whether they are transferred to MDL 1358 or not.  *See* Declaration of Victor M. Sher ("Sher Decl."), Exhibit 9 at 4-5 (§ II.D.b).

---

[9] *See also In re Indian Motorcycle Bankr. And Receivership Litig.*, 206 F. Supp. 2d 1365, 1365 (JPML 2002); *In re Richardson-Merrell, Inc.*, 582 F. Supp. 890, 891 (JPML 1984); *In re Air Crash Disaster Near Upperville, Virginia On December 1, 1974*, 430 F. Supp. 1295, 1297 (JPML 1977); *In re W. Elec. Co., Inc. Semiconductor Patent Litig.*, 436 F. Supp. 404, 406 (JPML 1977); *In re Petroleum Prods. Antitrust Litig.*, 476 F. Supp. 455, 458 (JPML 1979); *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (JPML 2002); *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (JPML 1980); *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (JPML 1980); *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813-14 (JPML 1980); *In re Penitentiary Postal Procedure Litig.*, 465 F. Supp. 1293, 1294-95 (JPML 1979); *In re Oklahoma Ins. Holding Co. Act Litig.*, 464 F. Supp. 961, 966 (JPML 1979); *In re Allen Compound Bow Patent Litig.*, 446 F. Supp. 248, 250 (JPML 1978); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (JPML 1978); *In re Fotomat Franchisee Litig.*, 394 F. Supp. 798, 799 (JPML 1975).

Finally, although Defendants argue that the advanced stage and availability of common-issue discovery from past and existing non-MDL MTBE cases is "legally insufficient to deny transfer" (Ds' Resp. at 20), they fail to distinguish any of the Panel decisions that expressly hold to the contrary. Indeed, of the ten cases Plaintiffs cited in their moving papers[10] Defendants mentioned only two – *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation* and *In re Western Electric Co., Inc. Semiconductor Patent Litigation*. Ds' Resp. at 25, n.17. Defendants claim that these two cases are "distinguishable" because in each the pre-trial proceedings (including common issue discovery) in the transferee court were nearly complete, while the "new wave of MTBE cases pending in MDL 1358 are all at their earliest stages." *Id.* Defendants' argument misses the point. It is not the status of cases recently transferred to MDL 1358 that matters, but the status of discovery in the *prior* incarnation of MDL 1358 and other "first wave" MTBE cases such as *South Tahoe* and *CBE*. As in *AH Robins* and *Western Electric*, discovery (and other pre-trial proceedings) on common issues was largely completed in these earlier cases, making transfer of newly-filed actions unnecessary.

Unlike *AH Robins* and *Western Electric*, the cases Defendants cite on this point are easily distinguishable. Most of Defendants' cases are inapplicable because they do not involve proposals by parties in later-filed cases to use already-completed common-issue discovery obtained in earlier litigation.[11] In Defendants' remaining cases, the Panel rejected informal/voluntary cooperation on discovery as an alternative to transfer – something Plaintiffs

---

[10] *See* Plaintiffs' Joint Motion to Vacate at 15-16, n. 5.

[11] *See In re Mosaid Technologies, Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1360 (JPML 2003) (Ds' Resp. at 23); *In re IBP Continental Bus. Docs. Litig.*, 491 F. Supp. 1359, 1361 (JPML 1980) (Ds' Resp. at 23, n. 14); *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (JPML 1976) (Ds' Resp. at 23, n.14); *In re Cuisinart Food Processor Antitrust Litig., supra*, 506 F. Supp. at 655 (Ds' Resp. at 23, n. 13).

do not propose here.[12] Thus, just as Defendants have failed to identify a single significant "common" question of fact on which discovery is not already completed and available, they have also failed to undermine the legal basis of Plaintiffs' position.

**B.     Separate Prosecution Of The California Actions Will Not Increase The Risk Of Inconsistent Pre-trial Legal Rulings.**

If the California Actions proceed on their own, the risk of inconsistent pretrial legal rulings is also minimal. As Defendants acknowledge, the California Actions are by no means the first cases seeking damages for water pollution caused by MTBE. Thus, as described in detail in Plaintiffs' moving papers, most pretrial legal issues shared in common between these Actions and other MTBE cases already have been decided by the Transferee Court (and by other federal and state courts), and such prior decisions "can serve as an aid in . . . preventing inconsistent pretrial rulings." *See In re AH Robins Co. Inc. "Dalkon Shield" IUD Prods. Liab. Litig., supra,* 505 F. Supp at 223.[13]

Defendants nevertheless maintain that there is a "serious risk" of inconsistent legal rulings absent transfer of the California Actions to a single judge "already well-versed in applying California law to MTBE suits." Ds' Resp. at 24, 28. This argument fails for two reasons. First, transferring these Actions to MDL 1358 will do nothing to prevent inconsistent

---

[12] *See In re Mosaid Technologies, Inc. Patent Litig., supra; In re IBP Continental Bus. Docs. Litig., supra; In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig., supra; In re Dow Chem. Co. Sarabond Prods. Liab. Litig.,* 650 F. Supp. 187, 189 (JPML 1986) (Ds' Resp. at 23); *In re Cygnus Telecomms. Techn., LLC, Patent Litig.,* 177 F. Supp. 2d 1375, 1376 (JPML 2001) (Ds' Resp. at 23, n. 13); *In re Oil Spill by The "Amoco Cadiz" Off the Coast of France on March 16, 1978, supra,* 417 F. Supp. at 477 (Ds' Resp. at 23, n. 14).

[13] According to Defendants, "that some courts have issued legal rulings . . . in MTBE actions does not warrant denying transfer." Ds' Resp. at 25. But the cases they cite in support of this assertion are inapposite. *See In re Molinaro/Catanzaro Patent Litig.,* 380 F. Supp. 794 (JPML 1974) (Ds' Resp. at 25) (party opposing transfer never argued, and the Panel never addressed, whether transferee court's prior legal rulings in mature litigation can guide other courts in later-filed cases and reduce risk of inconsistent rulings); *In re Peruvian Road Litig.,* 380 F. Supp. 796, 798 (JPML 1974) (Ds' Resp. at 25) (same).

rulings because at least *eighteen* other MTBE cases are currently proceeding in state courts around the country that Defendants never sought to remove to federal court, and now cannot.[14] *See* 28 U.S.C. § 1446(b).  Thus, even if the California Actions were transferred, transfer would not have the "salutary effect" of consolidating all MTBE cases before a single judge.  Moreover, even if these six California Actions share certain legal and factual issues unique to cases in California, consistency and efficiency can be accomplished without transferring the Actions to an MDL proceeding 3,000 miles across the country containing forty-odd non-California cases. Indeed, the Panel has consistently recognized that alternatives to transfer exist in these circumstances.[15]

Second, Defendants' suggestion that a court in New York is better suited than courts in California to apply California law in these exclusively state-law Actions is also unavailing. While one of Judge Scheindlin's published opinions does cite some California law – enough to resolve motions to dismiss – it is not clear that she has sufficient familiarity with the substantial body of California statutory and common law applicable in these Actions to warrant transferring them away from California judges who: (a) routinely apply California law (via supplemental jurisdiction) and (b) already have demonstrated their intention to utilize Judge Scheindlin's

---

[14] *See* Sher Decl. Exhibit 17.

[15] *See e.g. In re Unitrin, Inc. Ins. Sales Practices Litig.*, 217 F.Supp.2d 1371, 1372 (JPML 2002) (denying transfer and noting that alternatives to transfer include "cooperative management of these actions by the involved judges, that can minimize whatever possibilities there might be of duplicative discovery, inconsistent pretrial rulings, or both"); *In re Am. Gen. Fin., Inc. Credit Ins. Litig.*, 217 F.Supp.2d 1374 (JPML 2002) (same); *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F.Supp. 242 (JPML 1976) (noting that in deciding on transfer, one consideration is "the possibility of cooperation among the judges to whom the constituted actions are assigned" and finding that "consultation and coordination between the two concerned courts coupled with cooperation of the parties will suffice"); *see also Manual for Complex Litigation, Third*, § 31.14 (1995).

rulings "as an aid in . . . preventing inconsistent pretrial rulings."[16]  *See In re AH Robins Co. Inc.,*
*supra*, 505 F. Supp at 223.  Accordingly, Defendants have failed to show that transfer of the
California Actions to a court in New York will meaningfully advance judicial economy.

In any event, Defendants also fail to demonstrate that any significant common legal
issues remain undecided.  Except for federal preemption (*see* below), Defendants do not appear
to take issue with either (a) Plaintiffs' comprehensive categorization of common and unique
legal issues likely to arise in the Action or (b) Plaintiffs' description of prior rulings on the
common issues.  Instead, Defendants cite two additional legal issues likely to be presented in
upcoming defense motions – personal jurisdiction and standing – which they allege are both
"common" to all MTBE cases and "not previously raised."  *Id*.  Neither characterization is
correct.

Personal jurisdiction is not a "common" legal issue that will benefit from consolidated
treatment, even if raised by multiple defendants in multiple MTBE cases.  The inquiry in any
personal jurisdiction case is whether the defendant had sufficient minimum contacts with the
forum state.  *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  Any personal
jurisdiction analysis in the California Actions will depend entirely on the objecting defendant's
contacts with California, and therefore will differ materially from the analysis in cases filed in
other states.[17]

---

[16] Defendants' contention that the district court orders granting stays in several of the California Actions
lend support to their position on transfer is without merit.  As Defendants themselves are quick to point
out, "district court decisions on whether to stay cases pending Panel action . . . are inapposite" here.  Ds'
Resp. at 15, n. 6.  Additionally, to the extent Judges Karlton, Burrell and Selna opined that the remand
motions pending in certain California Actions are "identical" to those that were (at the time) pending
before Judge Scheindlin, they did so without any supporting factual record.

[17] In addition, Defendants' suggestion that personal jurisdiction will be the subject of "anticipated
preliminary motions" that will require significant judicial energy is, at best, an exaggeration.  At the
March 23, 2004 status conference in MDL 1358, defense counsel represented that the parties are "trying

Defendants' argument that standing is a common issue that will benefit from MDL treatment is also flawed, because the standing of each Plaintiff party to this Motion is (in whole or in part) based on unique California statutory provisions authorizing particular water agencies to protect groundwater resources and/or to seek recovery of MTBE-related costs.[18]  Moreover, even if there are "common" standing issues (which there are not), such issues *have* been previously raised and addressed by the Transferee Court (at least as they pertain to private well owners), as Defendants are well aware.  *See In re MTBE*, 175 F. Supp. 2d 593, 606-611 (S.D.N.Y. 2001) (setting out standard for establishing standing in a private-well MTBE case).[19] Thus, to the extent there are common standing issues, the Transferee Court's prior ruling provides sufficient guidance to other courts and mitigates the risk of inconsistent rulings.

Defendants contend that the Transferee Court did not "decide" the federal preemption defense by denying an earlier motion to dismiss.  Ds' Resp. at 26.  This contention is beside the point for cases arising in the Ninth Circuit, where the Court of Appeals has twice definitively

---

to work out" the personal jurisdiction issues and "hope that we won't have to impose on the Court with any of this."  *See* Reporter's Transcript of March 23, 2004 Hearing (attached as Exhibit B to Plaintiff California-American Water Company's Reply Brief In Support Of Motion to Vacate Conditional Transfer Order (CTO-4)) at 14.

[18] *See, e.g.,* Cal. Water Code Appendix, § 40-1 *et seq.* (granting Plaintiff Orange County Water District authority to manage and protect the groundwater resource in much of Orange County, California); Cal. Water Code §§ 31081, 22654  (granting Plaintiffs Rio Linda Elverta Community Water District, Del Paso Manor Water District, Sacramento Suburban Water District, Citrus Heights Water District, and Fair Oaks Water District authority to "commence . . . any action or proceeding involving or affecting the . . . use of waters . . . within the district used or useful for any purpose of the district"); Cal. Water Code App. § 66-3.3 66-4 (granting Sacramento County Water Agency "the power . . . to do any and every lawful act necessary to be done, that sufficient water may be available for any present or future beneficial use or uses of the lands or inhabitants within the agency...");  Cal. Health & Safety Code §116366, Cal. Water Code §§ 13285 and 13304 (authorizing public water suppliers to recover MTBE-related costs).

[19] In the recent proposed Case Management Order Defendants submitted to Judge Scheindlin, Defendants noted that "Your Honor has previously ruled that plaintiffs that cannot show actual contamination or an imminent threat of contamination do not have standing to pursue claims such as those asserted in these cases," citing *In re MTBE, supra.*

rejected federal preemption claims. *Oxygenated Fuels Ass'n v. Davis* ("*Davis II*"), 331 F.3d 665

(9th Cir. 2003) (upholding California MTBE ban); *ExxonMobil Corp. v. U.S. E.P.A.*, 217 F.3d

1246 (9th Cir. 2000) (upholding Nevada county regulation that effectively banned MTBE).

Defendants suggest that these Ninth Circuit holdings are not "dispositive of any preemption

arguments made in this new wave of MTBE cases," because they only addressed prospective

regulatory bans and did not address the economic feasibility of alternatives to MTBE in the

1990's. Ds' Resp. at 19, n. 10. This is a distinction without a difference. In *Davis II*, the court

expressly held *as a matter of law* that there is "no support for [Defendants'] assertion that the

Clean Air Act's goals – for purposes of preemption analysis – are a smoothly functioning market

and cheap gasoline." *Davis II*, *supra*, 331 F.3d at 673. Thus, the economic feasibility of

alternative oxygenates is irrelevant to the preemption analysis in the Ninth Circuit, no matter

when the conduct occurred.[20]

Even if a factual dispute on preemption regarding the feasibility of alternative oxygenates

were possible in the California Actions, this would still leave a location-specific inquiry that

depends on the gasoline market and infrastructure in the relevant locality. *See, e.g., Pataki*,

*supra*, No. 1:00-CV-1073 at 5-6 (accepting industry's argument that gasoline infrastructures in

different states "could not be more divergent"). This is not the kind of question on which

coordinated discovery or motion practice will yield any efficiencies – especially for cases in

California, where 90 percent of gasoline is refined in-state and distributed by means of a

---

[20] Defendants also suggest that the preemption landscape in the Ninth Circuit is somehow altered by two unpublished state trial court decisions decided *prior* to *Davis II*: *Kubas v. Unocal*, No. BC191876 (Cal. Sup. Ct., L.A. Cty., Aug. 23, 2001) and *Hixon v. Unocal*, No. BC195295 (same). Ds' Resp. at 14, n. 6. Ironically, in these allegedly "more analogous" MTBE cases, the court assumed that assessing tort damages was *equivalent* to a regulatory ban. Thus, *Davis II* undoubtedly renders *Kubas* and *Hixon* bad law.

pipeline, terminal and distribution system that is separate and distinct from the gasoline infrastructure serving other regions of the country. *See* Sher Decl., Exh. 16 at 1.

Defendants' reliance on the Transferee Court's March 16, 2004 jurisdictional ruling is also unavailing. Judge Scheindlin's determination that Defendants' preemption defense is "colorable" for purposes of 28 U.S.C. § 1442(a)(1) says little about the ultimate validity of their defense and in no way constitutes a reversal of her prior ruling. Sher Decl., Exh. 15 at 17 ("[a]t the removal stage, it is not the Court's role to assess the validity of a particular defense"); *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (defense may be "colorable" even if ultimately rejected).[21] Nor is the Court's reference to several aberrant, unpublished preemption rulings of any consequence here.[22] *Every* published decision addressing preemption of state regulation (including tort duties) of MTBE has concluded that nothing in the Clean Air Act

---

[21] Just as Defendants are wrong in suggesting that Judge Scheindlin's recent jurisdictional ruling somehow reinvigorates the merits of their preemption defense, they are also wrong in claiming that *Davis II* "has no bearing" on Plaintiffs' pending remand motions. *See* Ds' Resp. at 18. To the contrary, Judge Scheindlin's ruling regarding Defendants' "federal officer" argument has no bearing on Plaintiffs' remand motions, because, as described in the text above, Defendants have no "colorable" preemption defense in the Ninth Circuit. *See State v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990) ("colorable" federal defense must have some possible chance of success). Moreover, because district courts in the Ninth Circuit are bound by the holdings in *Davis II* and *ExxonMobil*, transferring the California Actions to New York in order to "have one court decide the relevance of these Ninth Circuit decisions," as Defendants suggest (Ds' Resp. at 18), is entirely unnecessary. *Yong v. INS*, 208 F.3d 1116, 1119, n.2. (9th Cir. 2000) ("once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority" to do otherwise).

[22] In addition to *Kubas* and *Hixon*, *supra*, Defendants reference three other unpublished cases. Two – *Coppola v. Amerada Hess*, No. 2001/3995 (N.Y. Sup. Ct., Dutchess Cty., Jul. 31, 2002) and *Molloy v. Amerada Hess*, No. 2001/3996 (same) – contained a single paragraph finding preemption with no analysis. The third, *Holten v. Chevron U.S.A.*, No. 00-4703 (D.N.J. Jul. 10, 2001), did not concern preemption at all, but instead erroneously found that MTBE gasoline could not be defectively designed because Congress had approved its use. MTBE has never been approved by Congress or EPA. *See* 40 C.F.R. §79.21(g) (EPA registration of fuel additives does not "constitute[] endorsement, certification, or approval by any agency of the United States").

limits a state's authority to protect its drinking water,[23] as have the overwhelming majority of unpublished opinions conveniently ignored by Defendants.[24]

Defendants' Response thus fails to identify a single "common" legal issue raised in the California Actions that would benefit from MDL treatment and/or create a risk of inconsistent rulings if addressed in Plaintiffs' home districts.

## C.    The Panel Should Ignore Defendants' Superfluous Allegations About The Actions Of Plaintiffs' Outside Counsel.

Defendants present a potentially misleading description of the actions of Plaintiffs' outside counsel in an apparent effort to question the vigor of Plaintiffs' opposition to transfer. In particular, Defendants allege that Plaintiffs' counsel has "voluntarily appeared on behalf of his clients in the proceedings in Judge Scheindlin's court." Ds' Resp., at 7. None of the Plaintiffs party to this Motion, however, has ever appeared in a proceeding before Judge Scheindlin, argued the merits of its Remand Motion to Judge Scheindlin, or consented to transfer of its Action to MDL 1358. Sher Decl., ¶¶ 23, 26. The actions of counsel to which Defendants refer constitute nothing more than an attorney's reasonable and on-going efforts to protect his clients' interests in a complex and changing situation.

---

[23] See In re MTBE, supra, 175 F. Supp. 2d at 611-616; Davis II, supra, 331 F.3d 665, affirming Davis I, supra, 163 F. Supp. 2d 1182; ExxonMobil Corp., supra., 217 F.3d 1246; Oxygenated Fuels Ass'n v. Pataki (N.D.N.Y. 2001) 158 F.Supp.2d 248 (upholding New York ban of MTBE); Oxygenated Fuels Ass'n v. Pataki, 293 F. Supp. 2d 170 (N.D.N.Y. 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the Clean Air Act).

[24] See, e.g., County of Suffolk v. Amerada Hess, et al., No. 22305-2202, at 6 (N.Y. Sup. Ct. Jan. 2, 2004) (denying defendants' motion to dismiss on preemption grounds); City of Dinuba v. Unocal et al., No. 305450, at 5 (Cal Super. Ct. April 1, 2003) (order denying defendants' motion for summary adjudication on federal preemption grounds); Plainview Water District v. Exxon Mobil Corporation et al., No. 9975/01, at 6 (N.Y. Sup. Ct. May 22, 2002) (order denying defendant's motion to dismiss on federal preemption grounds); Abundiz v. Explorer Pipeline Co., 2002 W.L. 1592604, at *5 (N.D. Tex. 2002) (order denying defendant's motion to dismiss on preemption grounds); South Tahoe Public Utility District v. ARCO et al., No. 999128, at 3 (Cal. Super. Ct. Jan. 15, 2002) (order denying defendants' motion for nonsuit on issue of federal preemption).

In particular, counsel's attendance at the March 23, 2004 status conference in MDL 1358 is irrelevant to this Motion.  Counsel did not enter an appearance on behalf of Plaintiffs (or any other party) at the conference.  *See* Reporter's Transcript of March 23, 2003 Hearing (attached as Exhibit B to Plaintiff California-American Water Company's Reply Brief In Support Of Motion to Vacate Conditional Transfer Order (CTO-4)) at 5.  Rather, he appeared at the conference for the sole purpose of answering the Court's "questions about the status of the [present] proceedings" before the Panel; and Judge Scheindlin stated that counsel was "welcome to be here" for that purpose.  *Id.*  Moreover, counsel's designated role as co-lead counsel in MDL 1358 reflects an assessment of the common benefit to be obtained in the MDL as a whole from his participation.  Finally, it makes perfect sense that Plaintiffs' counsel would want to monitor and influence key decisions in a remote forum that could affect his clients' cases.

## D.    Conclusion.

In light of the significant differences between the California Actions and non-California MTBE cases, transfer will undermine, rather than contribute to, the efficient conduct of the litigation.  Given the maturity of MTBE litigation, availability of common-issue discovery and guidance of prior rulings, separate prosecution of the California Actions poses little risk of duplicative discovery or inconsistent rulings.  Defendants fail to rebut Plaintiffs' evidence and fail to distinguish Plaintiffs' supporting case law.  The Panel should therefore grant Plaintiffs' Joint Motion to Vacate.

Respectfully submitted,

Dated:  April 21, 2004

*Victor Sher /MCW*

SHER LEFF LLP
Victor M. Sher
Todd E. Robins
450 Mission Street, Suite 500

San Francisco, CA  94105
Tel: (415) 348-8300
Fax: (415) 348-8333

Counsel for Orange County Water District, City of Riverside,
Quincy Community Services District, City of Roseville,
Sacramento County Water Agency, Sacramento Groundwater
Authority, Citrus Heights Water District, Del Paso Manor Water
District, Fair Oaks Water District, Florin Resource Conservation
District, Rio Linda Elverta Community Water District, Sacramento
Suburban Water District, San Juan Water District, California-
American Water Company, City of Sacramento, Martin Silver,
Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso,
Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso

BARON & BUDD, P.C.
Scott Summy
Celeste A. Evangelisti
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 523-6267
Facsimile: (214) 520-1181

Counsel for City of Riverside, Quincy Community Services
District, City of Roseville, Sacramento County Water Agency,
Sacramento Groundwater Authority, Citrus Heights Water District,
Del Paso Manor Water District, Fair Oaks Water District, Florin
Resource Conservation District, Rio Linda Elverta Community
Water District, Sacramento Suburban Water District, San Juan
Water District, California-American Water Company, City of
Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T.
Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and
Adrian Kruso

MILLER, AXLINE & SAWYER
Duane A. Miller
Michael D. Axline
1050 Fulton Avenue, Ste. 100
Sacramento, CA 95825
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288

Counsel for Orange County Water District

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 2 2004

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | ) MDL Docket No. 1358<br>)<br>) This Document Relates to:<br>)<br>) *People of the State of California, et al.*<br>) *v. Atlantic Richfield Co., et. al.*, 03-<br>) 2653 GEB DAD (E.D.Cal.);<br>)<br>) *Orange County Water District v.*<br>) *Unocal, et al.*, 03-1742 JVS (ANx)<br>) (C.D. Cal.);<br>)<br>) *City of Riverside v. Atlantic Richfield*<br>) *Co., et al.*, 04-53 JVS (ANx) (C.D.<br>) Cal.);<br>)<br>) *Quincy Comm. Serv. Dist. v. Atlantic*<br>) *Richfield Co., et al.*, 03-2582 LKK<br>) DAD (E.D. Cal.);<br>)<br>) *City of Roseville v. Atlantic Richfield*<br>) *Co., et al.*, 03-2601 MCE GGH (E.D.<br>) Cal.);<br>)<br>) *Martin Silver, et al. v. Alon USA*<br>) *Energy, Inc., et al.*, 03-2408 WQH<br>) (S.D. Cal.)<br>)<br>) **REPLY DECLARATION OF**<br>) **VICTOR M. SHER IN SUPPORT**<br>) **OF PLAINTIFFS' JOINT MOTION**<br>) **TO VACATE CONDITIONAL**<br>) **TRANSFER ORDER (CTO-5)**<br>) |

**REPLY DECLARATION OF VICTOR M. SHER IN SUPPORT OF PLAINTIFFS'**
**JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)**

I, VICTOR M. SHER, DECLARE:

1.      I am an attorney licensed to practice law since 1980 in the State of California, a founding principal of the law firm of Sher Leff, LLP (since January 1, 2003), and one of the attorneys for Orange County Water District, City of Riverside, Quincy Community Services District, City of Roseville, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-American Water Company, City of Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso, the moving parties herein.   Unless otherwise stated, I make this declaration from personal knowledge and, if called to do so, could and would testify competently to the matters set forth below.

2.      Our co-counsel in the California Actions, Baron & Budd, were counsel in the original MDL 1358 litigation.  I am informed and believe that in that capacity, they had access to the discovery depository created in accordance with the Case Management Order in that case. My office received from them electronic copies of three indices of the production of documents to the discovery depository in MDL 1358 by BP Corporation North America, Inc. and Amoco Oil Co. (currently known as BP Products North America, Inc.), each of which is among the defendants here.  In the interest of minimizing the volume of paper produced in connection with this motion, attached are true and correct copies of the first and last page of each of the three indices. (Exhibit A).  In the format used for hard-copy reproduction here, there are 34 pages

2

between the first and last page of the first index, 53 pages between the first and last page of the second index, and 28 pages between the first and last page of the third index.  Upon the Panel's request, I can provide a complete copy of all three indices to the Panel.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed this 19th day of April, 2004, at San Francisco, California.

VICTOR M. SHER

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 2 2004

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **IN RE:** | ) MDL Docket No. 1358<br>)<br>) This Document Relates to:<br>) **MDL Docket No. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *People of the State of California, et al.*<br>) *v. Atlantic Richfield Co., et. al.*, 03-<br>) 2653 GEB DAD (E.D.Cal.);<br>) |
| **METHYL TERTIARY BUTYL ETHER<br>PRODUCTS LIABILITY LITIGATION** | ) *Orange County Water District v.*<br>) *Unocal, et al.*, 03-1742 JVS (ANx)<br>) (C.D. Cal.);<br>) |
|  | ) *City of Riverside v. Atlantic Richfield*<br>) *Co., et al.*, 04-53 JVS (ANx) (C.D.<br>) Cal.);<br>) |
|  | ) *Quincy Comm. Serv. Dist. v. Atlantic*<br>) *Richfield Co., et al.*, 03-2582 LKK<br>) DAD (E.D. Cal.);<br>) |
|  | ) *City of Roseville v. Atlantic Richfield*<br>) *Co., et al.*, 03-2601 MCE GGH (E.D.<br>) Cal.);<br>) |
|  | ) *Martin Silver, et al. v. Alon USA*<br>) *Energy, Inc., et al.*, 03-2408 WQH<br>) (S.D. Cal.)<br>)<br>) **PROOF OF SERVICE** |

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA          )
                             )          ss
COUNTY OF SAN FRANCISCO      )

*People of the State of California, et al. v. Atlantic Richfield Co., et. al.*, 03-2653 GEB DAD (E.D.Cal.);

*Orange County Water District v. Unocal, et al.*, 03-1742 JVS (ANx) (C.D. Cal.);

*City of Riverside v. Atlantic Richfield Co., et al.*, 04-53 JVS (ANx) (C.D. Cal.);

*Quincy Comm. Serv. Dist. v. Atlantic Richfield Co., et al.*, 03-2582 LKK DAD (E.D. Cal.);

*City of Roseville v. Atlantic Richfield Co., et al.*, 03-2601 MCE GGH (E.D. Cal.);

*Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, 03-2408 WQH (S.D. Cal.)

     I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to this action.  My business address is 450 Mission Street, Suite 500, San Francisco, CA 94105.

     On **April 21, 2004**, I served the following documents described as:

1.     PLAINTIFFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)
2.     REPLY DECLARATION OF VICTOR M. SHER IN SUPPORT OF PLAINTIFF'S JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

[ X ]   by placing true copies thereof in sealed envelope(s) addressed as follows:

### SEE ATTACHED SERVICE LIST

[ X ]   **(BY MAIL)**  I caused to such envelope to be deposited in the mail at San Francisco, California with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.  Executed on **April 20, 2004**, at San Francisco, California.

[ X ]   **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.



_____
Julie Choate

{1015-001 / 00007221.DOC;1}

SCHEDULE OF ACTIONS AND PANEL SERVICE LIST (Excerpted from CTO-5)
Docket No. 1358
IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

Central District of California
*City of Riverside v. Atlantic Richfield Co., et al.,* C.A. No. 8:04-53
*Orange County Water District v. Unocal, et al.,* C.A. No. 8:03-1742

Eastern District of California
*Quincy Community Services District v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et. al.,* C.A. No. 2:03-2653

Southern District of California
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.,* C.A. No. 3:03-2408

Jon D. Anderson
Latham & Watkins
650 Tower Center Drive, Suite 2000
Costa Mesa, CA 92626

Brendan M. Dixon
Unocal Corporation
376 S. Valencia Avenue
Brea, CA 92626

Matthew T. Heartney
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Ronit C. Barrett
Eimer, Stahl, Klevorn & Solberg LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Robert P. Doty
Cox, Castle & Nicholson LLP
555 Montgomery Street
15th Floor
San Francisco, CA 94111-2585

Alan J. Hoffman, Jr.
Blank Rome LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998

Patrick E. Caffety, Jr.
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Colleen P. Doyle
Bingham & McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071

Hojoon Hwang
Munger, Tolles & Olson LLP
33 New Montgomery Street, 19th Floor
San Francisco, CA 94105

Lawrence Allen Cox
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
224 Michigan Avenue, Suite 1100
Chicago, IL 60604

Michele D. Johnson
Latham & Watkins
650 Tower Center Drive, Suite 2000
Costa Mesa, CA 92626

Mindy G. Davis
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Taylor M. Florence
Bullivant, Houser, Bailey, et al.
11335 Gold Express Drive
Suite 105
Goldriver, CA 95670-4491

Joseph Conrad Kearfott
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Russ Detrick
Sacramento County District Attorney
Environmental Protection Division
901 G Street, Suite 700
Sacramento, CA 95814

Pamela R. Hanebutt
Eimer, Stahl, Klevorn & Solberg
224 Michigan Avenue, Suite 1100
Chicago, IL 60604

Ben M. Krowicki
Bingham & McCutchen LLP
One State Street
Hartford, CT 06103-3178

J. Andrew Langan
Mark S. Lillie
Wendy L. Bloom
R. Chris Heck
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601-6636
Christopher J. McNevin
Pillsbury Winthrop LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-2513

Catherine Noel Mitchell
Morgan Lewis & Bockius LLP
300 S. Grand Avenue
22nd Floor
Los Angeles, CA 900071-3132

Jeffrey John Parker
Sheppard, Mullin, Richter &
Hampton
333 South Hope Street
Suite 4800
Los Angeles, CA 90071-1448

Morris A. Ratner
Lieff, Cabraser, Heimann &
Bernstein LLP
780 Third Avenue
48th Floor
New York, NY 10017

Lila Pankey Ray
Baker & Botts
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Tracie J. Renfroe, Esq.
M. Coy Connelly, Esq.
Bracewell & Patterson LLP
711 Louisiana St., Ste. 2900
Houston, Texas 77002

Edward Romero
Greenan, Peffer, Sallander &
Lally LLP
Two Annabel Lane
Suite 200
PO Box 10
San Ramon, CA 94583

John J. Lyons
Latham & Watkins
650 Tower Center Drive, Suite
2000
Costa Mesa, CA 92626

Alison N. Shue
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Catherine M. Stites
Bingham & McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071

Peter John Wilson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Christopher F. Wong
Bryan Cave LLP
120 Broadway
Suite 300
Santa Monica, CA 90401

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Craig J. de Recat
Manatt Phelps & Phillips
11355 W. Olympic Boulevard
Los Angeles, CA 90064-1614

Bruce W. Felmly
McLane, Graf, Raulerson &
Middleton
900 Elm Street
PO Box 326
Manchester, NH  03105-0326

Thomas J. Pappas
Wiggin & Nourie PA
PO Box 808
Manchester, NH 03105-0808

Elizabeth E. Skilling
Harman, Claytor, Corrigan and
Wellman
PO Box 70280
Richmond, VA 23255

Mark L. Tripp
Bradshaw Law Firm
800 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004

Mark E. Tully
Goodwin Procter, LLP
Exchange Place, 2nd Floor
Boston, MA 02109

John Val Wachtel
Klenda, Mitchell, Austerman &
Zuercher LLC
1600 Epic Center, 301 N. Main
Wichita, KS 67202

David L Schrader
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

SENT BY COURIER TO BE FILED IN THE FOLLOWING COURTS:

Central District of California
*City of Riverside v. Atlantic Richfield Co., et al.,* C.A. No. 8:04-53
*Orange County Water District v. Unocal, et al.,* C.A. No. 8:03-1742
United States District Court for the Central District of California
Santa Ana Division
Ronald Reagan Federal Building, U.S. Courthouse
411 W. Fourth Street, Suite I-053
Santa Ana, CA 92701-4516

Eastern District of California
*Quincy Community Services District v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et. al.,* C.A. No. 2:03-2653
United States District Court for the Eastern District of California
Sacramento Division
501 "I" Street, Room 4-200
Sacramento, CA 95814

Southern District of California
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.,* C.A. No. 3:03-2408
United States District Court for the Southern District of California
U.S. Courthouse
880 Front Street, Suite 4290
San Diego, CA 92101-5600

**SCHEDULE OF ACTIONS AND PANEL SERVICE LIST (Excerpted from CTO-5)**
**DOCKET NO. 1358**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS**
**LIABILITY LITIGATION**

Central District of California
*City of Riverside v. Atlantic Richfield Co., et al.,* C.A. No. 8:04-53
*Orange County Water District v. Unocal Corp., et al.,* C.A. No. 8:03-1742

Eastern District of California
*Quincy Community Services District v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et al.,* C.A. No. 2:03-2653

Southern District of California
Martin Silver, et al. v. Alon USA Energy, Inc., et al., C.A. No. 3:03-2408

Jon D. Anderson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Ronit C. Barrett
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Patrick E. Cafferty, Jr.
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Lawrence Allen Cox
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513

Mindy G. Davis
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Russ Detrick
Sacramento County District Attorney
Environmental Protection Division
901 G Street, Suite 700
Sacramento, CA 95814

Brendan M. Dixon
Unocal Corp.
376 S. Valencia Avenue
Brea, CA 92626

Robert P. Doty
Cox, Castle & Nicholson, LLP
555 Montgomery Street
15th Floor
San Francisco, CA 94111-2585

Colleen P. Doyle
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

Taylor M. Florence
Bullivant, Houser, Bailey, et al.
11335 Gold Express Drive
Ste 105
Goldriver, CA 95670-4491

Pamela R. Hanebutt
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604

Matthew T. Heartney
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Alan J. Hoffman
Blank Rome, L.L.P.
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998

Hojoon Hwang
Munger, Tolles & Olson, LLP
33 New Montgomery Street
19th Floor
San Francisco, CA 94105

Michele D. Johnson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Joseph Conrad Kearfott
Hunton & Williams
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Ben M. Krowicki
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103-3178

SCHEDULE OF ACTIONS AND PANEL SERVICE LIST - MDL-1358 (CONT.)           Page 2 of 2

John J. Lyons
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626-1925

Victor M. Sher
Sher & Leff
450 Mission St.
Suite 500
San Francisco, CA 94105

Christopher J. McNevin
Pillsbury Winthrop, LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-2513

Alison N. Shue
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Catherine Noel Mitchell
Morgan Lewis & Bockius, LLP
300 S. Grand Ave
22nd Fl
Los Angeles, CA 90071-3132

Catherine M. Stites
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106

Jeffrey John Parker
Sheppard, Mullin, Richter & Hampton
333 South Hope Street
Suite 4800
Los Angeles, CA 90071-1448

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Morris A. Ratner
Lieff, Cabraser, Heimann & Bernstein.
780 Third Avenue
48th Floor
New York, NY 10017

Peter John Wilson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

Lila Pankey Ray
Baker & Botts
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Christopher F. Wong
Bryan Cave, L.L.P
120 Broadway
Suite 300
Santa Monica, CA 90401

Tracie J. Renfroe
Bracewell & Patterson
South Tower Pennzoil Place
Suite 2900
711 Louisiana
Houston, TX 77002

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Edward Romero
Greenan, Peffer, Sallander & Lally, LLP
Two Annabel Lane
Suite 200
P.O. Box 10
San Ramon, CA 94583

Craig J. de Recat
Manatt Phelps & Phillips
11355 W. Olympic Boulevard
Los Angeles, CA 90064-1614

David L. Schrader
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

# Exhibit A

# Index 1

| BATES START | BATES END | DOC DATE | CONFIDENTIAL DESCRIPTION |
|---|---|---|---|
| BPA00301892 | BPA00301898 | 19950717 | Email regarding Louisville RVP / RFG Public Meetings |
| BPA00301893 | BPA00301893 | 19950714 | Louisville RVP / RFG Public Meeting |
| BPA00301894 | BPA00301898 | 19950713 | Louisville RVP / RFG Public Meeting |
| BPA00301899 | BPA00301905 | 19950717 | Email regarding Louisville RVP / RFG Public Meeting |
| BPA00301900 | BPA00301901 | 19950716 | Louisville RVP / RFG Public Meeting |
| BPA00301902 | BPA00301905 | 19950713 | Louisville RVP / RFG Public Meeting |
| BPA00301906 | BPA00301908 | 19950713 | Email regarding Louisville RVP / RFG Public Meeting |
| BPA00301907 | BPA00301908 | 19950713 | Louisville RVP / RFG Public Meeting |
| BPA00301909 | BPA00301912 | 19950713 | Email regarding Louisville RVP / RFG Public Meetings |
| BPA00301925 | BPA00301925 | 19950705 | Letter regarding concern of possibility that Louisville will Opt-Out of RFG Program |
| BPA00301926 | BPA00301928 | 19950710 | Fax regarding Kentucky's Potential Opt-Out of the RFG Program and impact on industry |
| BPA00301929 | BPA00301930 | 19950620 | Letter regarding concern of possibility that Louisville's RFG program will be opted out |
| BPA00302122 | BPA00302124 | 19950628 | Letter regarding Clean Fuels / RFG Update |
| BPA00302127 | BPA00302128 | 19950612 | Email regarding Louisville RFG Update |
| BPA00302129 | BPA00302131 | 19950612 | Email regarding Kentucky |
| BPA00302131 | BPA00302131 | 19950608 | Kentucky |
| BPA00302147 | BPA00302148 | 19950608 | Email regarding Kentucky |
| BPA00302149 | BPA00302149 | 19950608 | Email regarding Kentucky |
| BPA00302150 | BPA00302150 | 19950608 | Email regarding Kentucky RFG |
| BPA00302153 | BPA00302153 | 19950608 | Email regarding Northern KY Opt - Out |
| BPA00302155 | BPA00302155 | 19950530 | Letter regarding Reformulated Gasoline |
| BPA00302158 | BPA00302163 | 19950602 | Draft Letters regarding RFG |
| BPA00302173 | BPA00302174 | 19950602 | Email regarding Kentucky Jobbers Against RFG |
| BPA00302175 | BPA00302182 | 19950602 | Email regarding Kentucky Jobbers Against RFG |
| BPA00302176 | BPA00302177 | 19950601 | Kentucky Jobbers Against RFG |
| BPA00302178 | BPA00302178 | 19950509 | Kentucky Jobbers Against RFG |
| BPA00302179 | BPA00302179 | 19950526 | Kentucky Jobbers Against RFG |
| BPA00302180 | BPA00302181 | 19950526 | Kentucky Jobbers Against RFG |
| BPA00302182 | BPA00302182 | 19950526 | Kentucky Jobbers Against RFG |
| BPA00302183 | BPA00302191 | 19950602 | Email regarding Kentucky Jobbers Against RFG |
| BPA00302184 | BPA00302184 | 19950602 | Kentucky Jobbers Against RFG |
| BPA00302185 | BPA00302186 | 19950601 | Kentucky  Jobbers Against RFG |
| BPA00302187 | BPA00302187 | 19950529 | Kentucky Jobbers Against RFG |
| BPA00302188 | BPA00302188 | 19950526 | Kentucky Jobbers Against RFG |
| BPA00302189 | BPA00302191 | 19950526 | Kentucky Jobbers Against RFG |

| | | |
|---|---|---|
| BPA00561453 | BPA00561454 | 19910617 | Project Notes regarding MTBE Projects - Weekly Status Meeting - 6/10/9, Job No. PS237 |
| BPA00561455 | BPA00561464 | 19910531 | Letter regarding revised Process Flow Description for MTBE Units at Refineries |
| BPA00562261 | BPA00562403 | 0 | Table of Contents with Attached Report regarding MTBE |
| BPA00563182 | BPA00563182 | 19930902 | Letter regarding Confirmation of Recent Discussions regarding MTBE Contract Volumes |
| BPA00563188 | BPA00563188 | 19930709 | Fax cover sheet attaching information regarding signed copy of Exchanges Agreement |
| BPA00567866 | BPA00567870 | 19960510 | Sales Agreement of May 10, 1996 - BP Contract #80582 |
| BPA00568105 | BPA00568110 | 19960513 | Purchase Contract of May 13, 1996 - BP Contract #80556 |
| BPA00568242 | BPA00568249 | 19960701 | Purchase Contract of July 1, 1996 - BP Contract #80595 |
| BPA00568432 | BPA00568441 | 19960723 | Sales Agreement of July 23 1996 - BP Contract #80605 |
| BPA00568711 | BPA00568715 | 19960508 | Sales Agreement of May 8 1996 - BP Contract #80545 |
| BPA00569125 | BPA00569132 | 19960610 | Purchase Contract of June 10 1996 - BP Contract #80574 |
| BPA00569233 | BPA00569238 | 19960613 | Sales Agreement of June 13 1996 - BP Copntract #80582 |
| BPA00569262 | BPA00569272 | 19960620 | Purchase Contract Of June 20 1996 - BP Contract #80584 |
| BPA00569287 | BPA00569290 | 19960624 | Purchase Contract Of June 24 1996 - BP Contract #80586 |
| BPA00569312 | BPA00569317 | 19960627 | Sales Agreement Of June 27 1996 - BP Contract #80588 |
| BPA00569475 | BPA00569481 | 19960806 | Sales Agreement Of August 6 1996 - BP Contract #80611 |
| BPA00569552 | BPA00569560 | 19960807 | Sales Agreement of August 7, 1996 - BP Contract #80612 |
| BPA00569634 | BPA00569640 | 19960812 | Sales Agreement Of August 12 1996 - BP Contract #80615 |
| BPA00582238 | BPA00582314 | 0 | Report regarding Global Methanol Business 1982-1995 |

# Index 2

| BATESSTART | BATESLAST | DOCDATE | CONFIDENTIAL | DESCRIPTION |
|---|---|---|---|---|
| BPA00200001 | BPA00200003 | 19930311 | | API report on MTBE |
| BPA00200004 | BPA00200008 | 19930311 | | EPA'S MTBE Background Document |
| BPA00200009 | BPA00200010 | 19930311 | | EPA'S MTBE Study on Acute Health Effects |
| BPA00200011 | BPA00200012 | 19930212 | | Memo attaching article on oxygenated fuel in Alaska |
| BPA00200012 | BPA00200012 | 19930212 | | Two Agencies Cite Oxy - Fuel Problems |
| BPA00200015 | BPA00200018 | 19930304 | | Report on Gas Additive Could Be A Tank Full Of Trouble |
| BPA00200019 | BPA00200021 | 19930226 | | Memo requesting response to shareholder comments regarding use of oxygenated fuel |
| BPA00200022 | BPA00200025 | 19930126 | | Sun Refinery product safety information revision |
| BPA00200026 | BPA00200026 | 19930629 | | Memo regarding API Gasoline Skin Irritation Testing |
| BPA00200027 | BPA00200027 | 19930624 | | Faxed excerpt from Petrol-Vapour Poisoning article |
| BPA00200028 | BPA00200028 | 19930624 | | Faxed excerpt from Petrol-Vapour Poisoning article |
| BPA00200027 | BPA00200027 | 19600521 | | Petroleum - Vapour Poisoning |
| BPA00200029 | BPA00200029 | 19930624 | | Faxed excerpt from Gasoline Contact Burns report |
| BPA00200030 | BPA00200030 | 19930623 | | Faxed excerpt from Chemical Burns of the Skin After Contact with Petrol article |
| BPA00200031 | BPA00200031 | 19930624 | | UBTL report regarding Primary Dermal Irritation Study in Rabbits |
| BPA00200051 | BPA00200053 | 19930601 | | Memo regarding incident at T&D terminal |
| BPA00200052 | BPA00200053 | 19930106 | | Employee Chemical Exposure - MTBE |
| BPA00200054 | BPA00200054 | 19930601 | | Memo regarding incident at T&D terminal |
| BPA00200075 | BPA00200089 | 19930503 | | Letter enclosing the 1993 SOT Poster U.S. EPA Reference Concentration (RFC) for the Gasoline Additive Methyl t-Butyl Ether (MTBE) |
| BPA00200076 | BPA00200089 | 0 | | Abstract |
| BPA00200122 | BPA00200124 | 19930803 | | Memo regarding MTBE Conference |
| BPA00200128 | BPA00200128 | 19930802 | | Memo regarding Gasoline - Severe Skin Irritant - UBTL Study |
| BPA00200150 | BPA00200156 | 19930428 | | MSDS |
| BPA00200157 | BPA00200163 | 19930428 | | MSDS |
| BPA00200397 | BPA00200407 | 19930804 | | Memo regarding API summary of the MTBE/Oxygenated Fuels Workshop |
| BPA00200398 | BPA00200407 | 19930804 | | Summary of the MTBE / Oxygenates Workshop |
| BPA00200409 | BPA00200419 | 19931117 | | Memo attaching revised MSDS and Label Recommendation |
| BPA00200420 | BPA00200421 | 19931109 | | Memo regarding Toxicology MSDS revision and approval form |
| BPA00200422 | BPA00200428 | 19931109 | | Memo regarding MSDS Revision and Approval Form |
| BPA00200421 | BPA00200427 | 19930428 | | MSDS |
| BPA00200428 | BPA00200428 | 19931117 | | Memo regarding revised MSDS/Label Recommendation |
| BPA00200440 | BPA00200446 | 19950417 | | MSDS |
| BPA00200447 | BPA00200449 | 19950417 | | Recommended Label Data |
| BPA00200494 | BPA00200499 | 19930923 | | Sun Company product safety information form |

| | | | | |
|---|---|---|---|---|
| BPA00292859 | BPA00292862 | 19920603 | | Issue paper regarding opting in to reformulated gasoline |
| BPA00295058 | BPA00295084 | 19960500 | | Q&A on RFG |
| BPA00316462 | BPA00316465 | 19990830 | Yes | Issues regarding MTBE and remediation |
| BPA00316518 | BPA00316519 | 19990329 | | Emails regarding MTBE and remediation |
| BPA00316583 | BPA00316584 | 19990820 | Yes | Emails regarding budget reserves relating to environmental charges |
| BPA00316586 | BPA00316587 | 19990820 | Yes | Emails regarding budget reserves relating to environmental charges |
| BPA00316592 | BPA00316592 | 0 | Yes | MTBE Strategy & Advocacy Team Update |
| BPA00316594 | BPA00316594 | 19990813 | | Email regarding MTBE spikes |
| BPA00316732 | BPA00316733 | 20000229 | | Fax excerpt regarding Tank/Line information from TANKS database |
| BPA00316744 | BPA00316746 | 0 | | RDM process |
| BPA00316960 | BPA00317075 | 20000200 | | API Strategies for Characterizing Subsurface Releases of Gasoline Containing MTBE |
| BPA00317086 | BPA00317087 | 20000210 | | Email regarding MTBE monitoring by state contractors and UST associates |
| BPA00317088 | BPA00317089 | 20000310 | | Email regarding Q&As |
| BPA00317090 | BPA00317090 | 0 | | Continuation of email regarding MTBE monitoring by state contractors and UST associates |
| BPA00317253 | BPA00317254 | 20000106 | | Draft letter regarding toxicology and health information on toluene, xylene and MTBE |
| BPA00317785 | BPA00317799 | 20000200 | Yes | Draft presentation relating to position BP Amoco for MTBE removal |
| BPA00431339 | BPA00431398 | 19841100 | | API Monograph Series relating to tert-Butyl methyl ether |
| BPA00431399 | BPA00431409 | 19980000 | | ARCO Chemical MTBE Octane Enhancer |

# Index 3

| BATES START | BATES LAST | DOC DATE | CONFIDENTIAL | DESCRIPTION |
|---|---|---|---|---|
| BPA0000677 | BPA0000677 | 19940222 | Confidential | Email regarding Meeting Details |
| BPA0000678 | BPA0000679 | 19940118 | Confidential | Letter regarding LPC #167125129 - Sangamon County Springfield/Amoco Oil (#5410) |
| BPA0000680 | BPA0000680 | 0 | Confidential | Regulatory Issues Outline |
| BPA0000681 | BPA0000681 | 19940222 | Confidential | Email regarding Meeting Details |
| BPA0000682 | BPA0000682 | 0 | Confidential | Handwritten notes regarding IL |
| BPA0002891 | BPA0002892 | 0 | Confidential | Memo regarding 4 Potential Options to Prepare for a World Without MTBE Availability |
| BPA0002893 | BPA0002903 | 19980720 | Confidential | Memo regarding Oxygenate Supply/Demand Balance in the Event of an MTBE Ban |
| BPA0002904 | BPA0002907 | 19990500 | Confidential | Report regarding WSPA Position on MTBE for WSPA States Other Than California - May 1999 |
| BPA0002908 | BPA0002919 | 0 | Confidential | Report regarding MTBE |
| BPA0005732 | BPA0005736 | 19981109 | Confidential | Report draft of UST Team 2 - MTBE Site Hits |
| BPA0005974 | BPA0005975 | 19990222 | Confidential | Report regarding California SWRCB UST Panel Report: Summary of Key Findings and Recommendations |
| BPA0005976 | BPA0005986 | 19980721 | Confidential | Request for Proposal: Modeling Ground Water Impacts from MTBE Vadose Zone Transport |
| BPA0005987 | BPA0005991 | 19990831 | Confidential | Report regarding MTBE Dissolution Research Progress Update for Period 4/1/99 - 8/31/99 |
| BPA0005992 | BPA0005997 | 19990903 | Confidential | Memo attaching progress report for MTBE Dissolution Research |
| BPA0005998 | BPA0006016 | 19990903 | Confidential | Memo regarding Submission of Site Data for a Case Study at an Upcoming MTBE Short Course |
| BPA0006324 | BPA0006366 | 19990504 | Confidential | Presentation regarding Remediation & Treatment Alternatives for MTBE Impacted Sites |
| BPA0006669 | BPA0006675 | 0 | Confidential | Articles regarding MTBE: - Regulatory Threat, Plume Scare, and Remedial Answers |
| BPA0006975 | BPA0006985 | 19930000 | Confidential | Article regarding Preliminary Assessment of the Occurrence and Possible Sources of MTBE In Groundwater in the United States, 1993-1994 |
| BPA0007325 | BPA0007352 | 19980515 | Confidential | Memo regarding Guidance on Analytical Methods for Oxygenates and Additives at Gasoline UST Sites |
| BPA0007353 | BPA0007382 | 19981200 | Confidential | Executive Summary regarding Treatment Technologies for Removal of MTBE from Drinking Water |
| BPA0007383 | BPA0007436 | 19980615 | Confidential | Memo attaching report for Environmental Impact of MTBE |
| BPA0007437 | BPA0007456 | 19980716 | Confidential | Website regarding Assessing Impacts of MTBE on California Groundwater |
| BPA0007722 | BPA0007722 | 19980806 | Confidential | Memo regarding Review of MTBE Remediation Report |
| BPA0007723 | BPA0007726 | 19980803 | Confidential | Memo regarding Second Draft of MTBE Remediation Report |
| BPA0007727 | BPA0007953 | 19980730 | Confidential | MTBE Remediation: An Evaluation of Technologies, Field Experience, and Case Studies |
| BPA0008301 | BPA0008318 | 0 | Confidential | Presentation regarding 9th annual UST Assessment and Remediation Conference: Evaluation of MTBE within the RBCA Framework |
| BPA0008385 | BPA0008387 | 19971100 | Confidential | Article regarding MTBE: Wild Card in Groundwater Cleanup |
| BPA0008439 | BPA0008445 | 19971104 | Confidential | Draft fact sheets regarding Remediation of MTBE Contaminated Soil and Groundwater |
| BPA0008562 | | | | |

| Bates | Bates | Date | Confidentiality | Description |
| --- | --- | --- | --- | --- |
| BPA0158563 | BPA0158562 | 19870408 | Confidential | Letter regarding Policy Statement on Ethanol |
| BPA0158564 | BPA0158563 | 19870430 | Confidential | Report regarding Mandated Use of Oxygenated Fuels |
| BPA0158565 | BPA0158564 | 0 | Confidential | File folder label: "Coalition for Competitive Fuels" |
| BPA0158567 | BPA0158566 | 0 | Confidential | Report regarding Quality Fuels Coalition |
| BPA0158569 | BPA0158568 | 0 | Confidential | Report regarding Blended Fuels Campaign |
| BPA0158572 | BPA0158571 | 19870512 | Confidential | Letter regarding Amoco's Concern About Attempts at both Federal and State Levels to Mandate the Use of Ethanol Blended Fuels |
| BPA0158578 | BPA0158577 | 19871124 | Confidential | Meeting Minutes regarding Coalition to Oppose Gasohol Mandates on 11/16/87 |
| BPA0158581 | BPA0158580 | 19871207 | Confidential | Alcohol Fuels Group Structure |
| BPA0158584 | BPA0158583 | 19871210 | Confidential | Letter regarding Attached Revised Coalition and Draft Outline of Organization for the "Competitive Fuels Coalition" Documents Reviewed Yesterday in Washington |
| BPA0158586 | BPA0158585 | 0 | Confidential | Information regarding Quality Fuels Coalition |
| BPA0158587 | BPA0158586 | 19880108 | Confidential | Agenda: Competitive Fuels Coalition 1/8/88 |
| BPA0158593 | BPA0158592 | 19880129 | Confidential | Memo regarding Organizing Committee Meeting on January 27, 1988 |
| BPA0158595 | BPA0158594 | 19880400 | Confidential | If-Asked Statement:  Consumers for Competitive Fuels |
| BPA0158598 | BPA0158597 | 19880405 | Confidential | Fax regarding Consumers for Competitive Fuels: Alcohol Fuels Coalition |
| BPA0158601 | BPA0158600 | 19880405 | Confidential | Letter regarding organizations opposed to efforts mandating the use of alcohol fuel blends |
| BPA0158602 | BPA0158601 | 19880411 | Confidential | Agenda: Consumers for Competitive Fuels - 11 April 1988 |
| BPA0158606 | BPA0158605 | 19880503 | Confidential | Letter regarding the conference call relating to Consumers for Competitive Fuels discussion of state trends regarding the utilization of oxygenated fuels |
| BPA0381058 | BPA0158608 | 19880526 | Confidential | Memo attaching the purpose of the Consumers for Competitive Fuels Group |
| BPA0382070 | BPA0381075 | 0 | Confidential | Copy of Business Card for James E. Rich, Jr. |
|  | BPA0382284 | 19990914 | Confidential | Draft regarding MTBE Strategy for various states |