MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 2 5 2005

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| * | |
| * | |
| * | |
| * | |
| * | **MDL Docket No.: 1358** |
| * | |
| IN RE: | This Document Relates to: |
| * | |
| METHYL TERTIARY | *Hope Koch, et al. v. John R. Hicks, et al.*, |
| BUTYL ETHER PRODUCTS | 04-3345 (D.Md.) |
| LIABILITY LITIGATION | |
| * | |
| * | |
| * | |
| * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF KOCHS' MOTION TO VACATE
## CONDITIONAL TRANSFER ORDER ("CTO") 11;
## AND REQUEST FOR ORAL ARGUMENT

1. Hope Koch and Frank Koch are plaintiffs in the action *Hope Koch, et al. v. John R. Hicks, et al.*, Case No. 04-3345 (D. Md.), which is identified as a tag-along action in the schedule of district court cases subject to CTO-11, issued by the Panel on February 22, 2005. The Koch Plaintiffs hereby move the Panel to vacate the above-referenced conditional transfer order as it applies to the *Koch* action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

2. This Motion is based on the attached Memorandum of Law in support thereof; the files, pleadings, and documents on file with the Panel; and upon such further documentary and oral evidence as may be presented in the hearing on this matter.

WHEREFORE, Plaintiffs respectfully request that the Panel:

    A.    Vacate the CTO-11 as it applies to the Koch action;

    B.    Schedule oral argument on this Motion; and

2005 MAR 24 A 10: 08
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
MOTION
RECEIVED
CLERK'S OFFICE

IMAGED MAR 2 5 2005
23729
OFFICIAL FILE COPY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 2 5 2005

FILED
CLERK'S OFFICE

C.      Grant such other relief as deemed just and appropriate.

Respectfully submitted,

Dated: March 23, 2005

*Marshall M. Perkins*

Charles J. Piven (Md. Federal Bar No. 00967)
Marshall N. Perkins (Md. Federal Bar No. 25514)
**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

Lon Engel (Md. Federal Bar No. 02470)
**ENGEL & ENGEL, P.A.**
11 E. Lexington Street, Suite 200
Baltimore, MD 21202
(410) 727-5095

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2005, copies of Plaintiff Kochs'

Motion To Vacate Conditional Transfer Order ("CTO") 11; And Request For Oral Argument and

Memorandum Of Law In Support Of Koch Plaintiffs' Motion To Vacate CTO-11 were served *via*

postage prepaid, first-class U. S. mail, upon:

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY 10038

Lon C. Engel
Engel & Engel, P.A.
11 E. Lexington Street
Suite 200
Baltimore, MD 21204

Susan Mae Euteneuer
Hodes, Ulman, Pessin, & Katz
901 Dulaney Valley Road
Baltimore, MD 21204

Andrew Gendron
Venable, LLP
1800 Mercantile Bank & Trust
Building
2 Hopkins Plaza
Baltimore, MD 21201

RECEIVED CLERK'S OFFICE
2005 MAR 24 A 10: 08
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Paul W. Ishak
Law Office Of Paul Ishak
30 Office Street
Bel Air, MD 21014

Michael E. Leaf
Hodes, Ulman, Pessin & Katz, P.A.
112 S. Main Street
Suite 102
Bel Air, MD 21014

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020

Marshall N. Perkins

**PANEL SERVICE LIST (Excerpted from CTO-11)**
**DOCKET NO. 1358**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY**
**LITIGATION**

*Hope Koch, et al. v. John R. Hicks, et al.*, D. Maryland, C.A. No. 1:04-3345

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY 10038

Lon C. Engel
Engel & Engel, PA
11 E. Lexington Street
Suite 200
Baltimore, MD 21202

Susan Mae Euteneuer
Hodes, Ulman, Pessin & Katz
901 Dulaney Valley Road
Suite 400
Baltimore, MD 21204

Andrew Gendron
Venable, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

Paul W. Ishak
Law Office Of Paul Ishak
30 Office Street
Bel Air, MD 21014

Michael E. Leaf
Hodes, Ulman, Pessin & Katz, P.A.
112 S. Main Street
Suite 102
Bel Air, MD 21014

Marshall N. Perkins
Law Offices of Charles J Piven, P.A.
The World Trade Center
Suite 2525
401 East Pratt Street
Baltimore, MD 21202

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockerfeller Plaza
New York, NY 10020

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 2 5 2005

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| | * |
| | * |
| | * |
| | * |
| **IN RE:** | * |
| | * |
| **METHYL TERTIARY** | * |
| **BUTYL ETHER PRODUCTS** | * |
| **LIABILITY LITIGATION** | * |
| | * |
| | * |
| | * |
| | * |

**MDL Docket No.: 1358**
This Document Relates to:

*Hope Koch, et al. v. John R. Hicks, et al.,*
04-3345 (D. Md.)

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OF LAW IN SUPPORT OF KOCH PLAINTIFFS' MOTION TO VACATE CTO-11

Plaintiffs Hope Koch and Frank Koch by and through undersigned counsel respectfully move that the honorable Judicial Panel on Multidistrict Litigation ("JPML") vacate its conditional transfer order, CTO-11, as it applies to the *Koch* action for the reasons set forth below.

### I. FACTUAL BACKGROUND

Plaintiffs and Proposed Class Representatives are property owners and citizens of Harford County, State of Maryland, and currently reside in the communities of Fallston and Baldwin, Maryland. Their water supply is contaminated and/or threatened by contamination with gasoline constituents, particularly methyl tertiary-butyl ether, herein referred to as "MTBE."

Hope Koch and Frank Koch, Plaintiffs and Proposed Class Representatives, are citizens and residents of Maryland, who own and occupy a single-family dwelling unit located at 2310 Franklin's Chance Court in Fallston, Maryland 21047. Their water is

23730

supplied by a well located on their property, which has tested positive for gasoline constituents.

Defendant ExxonMobil Corporation, f/k/a Exxon Corporation and f/k/a Mobil Corporation (collectively referred to as "ExxonMobil") is a New Jersey corporation with its principal place of business in Irving, Texas.  ExxonMobil is the owner of the Upper Crossroads Exxon (hereinafter "Upper Crossroads Exxon"), located at 2800 Fallston Road, Fallston, MD 21047.

Defendant John R. Hicks d/b/a Crossroads Exxon, resides at 1040 Alexandria Way, Bel Air, Harford County, Maryland 21014, the same county where this contamination occurred.  Defendant Hicks operates the Upper Crossroads Exxon at 2800 Fallston Road, Fallston, MD 21047, through a licensing, franchise, and/or other agreement with Defendant ExxonMobil Oil Corporation.

The Upper Crossroads Exxon has been in operation since 1987 and currently operates four active underground storage tank ("USTs").  There are three gasoline USTs (one 12,000 gallon and two 10,000 gallon) and one 10,000 gallon diesel UST.  Two additional tanks – one 1,000 gallon heating oil UST and one 1,000 gallon used oil UST – were removed in April and June of 1997, respectively.

In October 1991, unbeknownst to Plaintiffs and the proposed two sub-classes (referred to collectively as the "Class"), the Harford County Health Department tested the supply wells for the restaurants in close proximity to the Upper Crossroads Exxon and found high levels of MTBE.  In response the Maryland Department of the Environment ("MDE") required Defendants to conduct an investigation of the Upper Crossroads Exxon.  The investigation included the installation of three shallow monitoring wells and

the collection of surface water and groundwater samples.  The analytical results from the investigation revealed the presence of MTBE in the Upper Crossroads Exxon's drinking water supply well at 9.5 parts per billion ("ppb").  The MDE closed the case at that time.

In December of 1998, routine Harford County drinking water sampling of commercial establishments in close proximity to the Crossroads Exxon revealed elevated concentrations of MTBE in the groundwater.  The highest concentration was 126 ppb, which was found at a local eating establishment.  The MDE directed the Defendants to install a carbon filtration system at that eating establishment and to sample additional drinking water wells in the immediate vicinity of the Upper Crossroads Exxon.

In June 2002, annual groundwater sampling identified a second commercial property at the intersection of Routes 152 and 165 in Fallston, Maryland testing positive for MTBE at 42.9 ppb.  This commercial property was also in close proximity to the Defendant.

In August 2003, the MDE approved the Defendants' work plans to install four monitoring wells at the Upper Crossroads Exxon.  Sampling of those monitoring wells confirmed the presence of MTBE in the groundwater at levels as high as 26,000 ppb.

In October 2003, the Defendants submitted an environmental subsurface investigation report.  Based on the results of that investigation, the MDE required the Defendants to expand its groundwater monitoring program for offsite wells to include several additional commercial and residential properties within the immediate vicinity of the Upper Crossroads Exxon.

The drinking water sampling in May of 2004 confirmed additional MTBE contamination in off-site wells with some more than a half mile from the Upper Crossroads Exxon.

In June of 2004, Plaintiffs first learned of the contamination of their wells and/or wells on neighboring properties, with MTBE. As a result of Defendants failing to inform the Plaintiffs of the MTBE-contamination, Plaintiffs have been drinking, cleaning, bathing, cooking and living with MTBE-contaminated water for years – a fact that was unknown to the plaintiffs and should have been known by the Defendants.

Since June of 2004 and under the direction of the MDE, the Defendant ExxonMobil has been conducting an environmental investigation of the contamination; providing bottled water to all residents within a half-mile radius of the Upper Crossroads Exxon; and installing granular activated carbon ("GAC") systems in homes.

As of October 2004, over 70 private wells in the Fallston/Baldwin area had some level of MTBE. There have been even more detections of MTBE in private wells since that time, and it is unlikely that this contamination will resolve in the near future without substantial remediation of the aquifer.

## II. PROCEDURAL HISTORY

On June 30, 2004, Plaintiffs filed a Class Action Complaint in the Circuit Court for Harford County, Maryland. The complaint specified several state causes of action and relief; specifically, public and private nuisance, trespass, violation of state environmental laws, negligence, and medical monitoring.

The complaint was served on the Defendants on or about June 30, 2004.

On September 23, 2004, the Circuit Court for Harford County, Maryland *sua sponte* consolidated *Koch* pursuant to Maryland Rule 2-503(a) with another case[1] that had been filed after the Kochs filed suit.

The Defendants removed *Koch* from the Circuit Court for Harford County to the United States District Court for the District of Maryland, Northern Division on October 15, 2004, which amounts to more than 100 days after service of the *Koch* complaint on Defendants.

The *Koch* plaintiffs filed in the United States District Court for the District of Maryland two motions to remand: the first on October 21, 2004 and the second on October 25, 2004. The Defendants filed their opposition to the Plaintiffs' motions to remand on November 8, 2004, and the Plaintiffs filed their reply on November 19, 2004. Defendant ExxonMobil filed for leave to file a surreply with the surreply attached on December 1, 2004. As of March 21, 2005, the district court has not ruled on the motions to remand.

On January 5, 2005, the Defendant filed a Notice of Relatedness advising the JPML and this Court that this matter is a potential "tag-along action" subject to transfer for consolidation with cases currently pending under *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL-1358 (hereinafter "MDL-1358").

On January 10, 2005, the Defendant filed ExxonMobil Corporation's Motion to Stay Proceedings and Memorandum of Law in Support ("Exxon's Stay Motion") in federal district court. In response, Plaintiffs filed an Opposition to Defendant Exxon's

---

[1] The case is *Stephen J. Wagner, et al. v. John R. Hicks, et al.*, Case No. 12-C-04-2448 (filed Sept. 1, 2004). The *Wagner* plaintiffs have since dismissed their complaint without prejudice, leaving only the *Koch* action.

Stay Motion on January 27, 2005.  On February 11, 2005 Defendant ExxonMobil filed a reply.  No hearing has been scheduled and the district court has not yet ruled on the motions to stay.

On February 22, 2005, this honorable Panel filed CTO-11.  Plaintiffs filed a Notice of Opposition to CTO-11 on March 8, 2005, via facsimile transmission.  Plaintiffs respectfully request that the Panel vacate CTO-11 as to the *Koch* case for reasons set forth herein.

### III. ARGUMENT

#### A.  Transfer of *Koch* does not meet the standard for transfer pursuant to 28 U.S.C. § 1407(a).

On the surface, the *Koch* case may appear to involve the same issues of fact as the cases in MDL-1358 before the Honorable Shira Scheindlin.  However, a closer inspection of the facts reveals there are very few common issues of fact between *Koch* and the cases in MDL-1358.  *Koch* is a case about a single gas station that is a known source of MTBE contamination of a local aquifer, upon which residents in the area rely for their water supply.  *Koch* is not a case about what the EPA may have required the oil industry to do or about contamination of municipal water sources or about a speculative claim of future contamination.  The only commonality between *Koch* and the MDL-1358 cases is the fact that MTBE is the primary contaminant of concern.  This single common fact is not sufficient to meet the standard for transfer to MDL-1358, because transfer will not serve the convenience of the parties or witnesses or promote efficiency.

1. *There are few common questions of fact between Koch and the cases in the transferee court*.  The first requirement that must be met for transfer is the existence of common questions of fact between the cases under consideration for transfer and the

cases already before the transferee court. Title 28, section 1407(a) of the United States Code states, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions *may* be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a) (emphasis added). This Panel has repeatedly recognized this principal. *See In re Janus Mutual Funds Inv. Litig.*, 310 F.Supp.2d 1359, 1361 (J.P.M.L. 2004) (concluding that all cases involve common question of fact concerning allegations of market timing); *In re Worldcom, Inc. Sec. & ERISA Litig.*, 226 F.Supp.2d 1352, 1354 (J.P.M.L. 2002) (transferring schedule A actions because they share factual questions arising out of alleged omissions or misrepresentations concerning WorldCom's financial condition and accounting practices, but vacating the CTO for schedule B actions because the factual and legal issues were largely distinct from those currently before the MDL court); *In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F.Supp. 969, 974 (J.P.M.L. 1979) (finding substantial common factual issues regarding the overall design of multi-piece rims, the state of knowledge within the industry, and the alleged failure of defendants to warn); *but see In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 244 (J.P.M.L. 1978) (denying transfer where common questions of fact are not sufficiently complex and the associated discovery is not greatly time consuming).

The *Koch* action, however, does not share substantial common issues of fact with the cases in MDL -1358. To begin, most of the plaintiffs before Judge Scheindlin are states, municipalities, public and private water companies, and water districts.[2] *See*

---

[2] Examples include *The State of New Hampshire v. Amerada Hess Corp., et al.*, No. 04-4976; *City of Riverside v. Atlantic Richfield Co., et al.*, No. 04-4969; *City of Fresno v. Chevron USA Inc., et al.*, No. 04-4973; *California-American Water Co. v. Atlantic Richfield Co., et al.*, No. 04-4974; *Orange County Water District v. Unocal Corp. et al.*, No. 04-4968.

Exhibit 1 herein (Judicial Panel on Multidistrict Litigation Case Listing Report). Those plaintiffs in the MDL who are private well owners raised products liability claims against numerous manufacturers and sought to represent entire classes in their respective states of private well owners with or without detections of MTBE in their wells. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 175 F.Supp.2d 593, 603-05 (S.D.N.Y. 2001) (describing private well owner actions before MDL-1358) (referred hereinafter as *In re: MTBE*).[3] In other words, the core issue of fact common to the MDL-1358 cases is whether the industry decision to add MTBE to gasoline is a design defect.

In contrast, the *Koch* plaintiffs have not raised a strict liability claim and have focused solely upon the Defendants' failure to contain the gasoline at this single location, not upon any role the Defendant ExxonMobil may have played in the decision to include MTBE in the gasoline. Thus, the core issue of fact in the *Koch* case is whether the Defendants are responsible for the contamination of the bedrock aquifer in the Fallston, Maryland area. The MDL-1358 court has not addressed nor is it likely to address this issue in any of the cases before it.

This honorable Panel has already recognized the distinction between cases like *Koch* and those in MDL-1358. In the case of *Theodore Holten, et al. v. Chevron U.S.A.,*

---

[3] The *Young, England, Berisha*, and *Berrian* cases described by Judge Scheindlin have been settled. *See* Exhibit 1. The CTO for *Holten, et al. v. Chevron USA, Inc., et al.*, was vacated. *Id.* To Koch Plaintiffs' best knowledge, the only active cases in MDL-1358 that involve private well owners are *Silver, et al., v. Alon USA Energy, Inc., et al.*, No. 04-4975, and *Tonneson, et al., v. Sunoco, Inc. et al.*, No. 03-8248. Like the other private well cases in MDL-1358, these complaints raise a strict liability count and emphasize facts related primarily to a products liability case. *See, e.g.,* Exhibit 2 hereto: *Tonneson* Complaint (filed October 17, 2003). Additionally, *Tonneson* was originally filed in federal court in the Southern District of New York, because the case involved contamination a New York aquifer; thus, it was never subject to section 1407 transfer. *Silver* is also distinguishable from *Koch* in that the plaintiffs own and operate a private drinking water system for their mobile home park. Thus, they are more analogous to a water utility than to a single residential well owner.

*et al.*, No. 3:00-4703 (D.N.J.), this Panel vacated its CTO-2 as it applied to *Holten* after determining that transfer of this case to MDL-1358 was not warranted. Order Vacating Conditional Transfer Order, MDL-1358, *Holten, et al. v. Chevron U.S.A., et al.,* No. 3:00-4703 (D.N.J.) (Apr. 18, 2001). *Holten* involved over 50 residents and former residents of Bayville, New Jersey, whose wells were contaminated by one local gas station's USTs and dispensing systems. This honorable Panel found that the "MDL-1358 actions, on the other hand, are purported class actions which focus on claims by persons or entities whose well water has not yet tested positive for the presence of MTBE." The facts in *Holten* are analogous to those in *Koch*.

2. *Transfer will not serve the convenience of the parties or promote the just and efficient conduct of the litigation.* Even if *Koch* shares a common question of fact with the MDL-1358 cases, transfer is not warranted here. Common questions of fact alone are not a sufficient reason for transfer. *See In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F.Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J. concurring) (stating, "neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso facto*, by transfer just because there are common questions of fact"). The Panel must also conclude that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see also In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975) (explaining that the proposed transfer must meet the statutory standard, otherwise it is not warranted). Thus, the Panel must decline to transfer the case if "'significant economy and efficiency in judicial administration [could not] be

23730                                        9

obtained.'"  *In re: Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (quoting H.R. Rep. No. 1130, 90[th]

Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900).

Answering this question – whether transfer would promote convenience and

efficiency – involves consideration of several factors.  *See In re Asbestos and Asbestos*

*Insulation Material Prod. Liab. Litig.*, 431 F.Supp. 906, 909-10 (J.P.M.L. 1977)

(discussing arguments against transfer).  One important factor is whether individualized

and unique questions of fact and law predominate over common questions of fact.  *See*

*Id.* at 910 (denying transfer because the many factual questions unique to each action

clearly predominated over the common factual questions); *In re Asbestos School Prod.*

*Liab. Litig.,* 606 F.Supp. 713, 714 (J.P.M.L. 1985) (holding that transfer would neither

serve the convenience of the parties and witnesses nor further the just and efficient

conduct of the litigation where common questions of fact did not predominate over

individual questions of fact present in each action).  Moreover, this Panel has found

transfer for consolidated pre-trial proceedings to be of no benefit where discovery "will

focus on localized factual issues." *In re Grand Funk R.R. Trademark Litig.*, 371 F.Supp.

1084, 1085 (J.P.M.L. 1974).

The MDL-1358 court has already recognized the numerous individualized issues

in the cases of private wells: "[t]here are … differences in the level of contamination that

the named plaintiffs allege, the source of the contamination, how the contamination

affects each plaintiff, and the nature of relief that each will require." *In re MTBE Prod.*

*Liab. Litig.*, 209 F.R.D. 323, 344 (S.D.N.Y. 2002).  Thus, even if the common thread in

the MDL-1358 actions and *Koch* may be contamination of groundwater with MTBE, the

circumstances of the contamination in *Koch* are unique. *In re Asbestos and Asbestos*

*Insulation Material Prod. Liab. Litig.*, 431 F.Supp. at 909. These differences from other MDL-1538 actions include the geology of the contaminated aquifer; the geographic extent of the contamination; the levels of contamination; the source of contamination; the presence of other potential sources of MTBE in the area and their relative responsibility for the contamination; the type of release, *e.g.*, liquid spills versus vapor leaks; the storage device for the product containing MTBE, *e.g.*, UST versus pipeline; the local real estate values; and the local economy.   In short, the core issue of fact in *Koch* – the contamination of a discrete aquifer[4] located completely in Maryland – predominates over any questions of the Defendants' knowledge of MTBE's properties and dangers.

To address this core issue, discovery in *Koch* will necessitate depositions of, among others, officials from the local health department and the MDE; former and current employees of the Upper Crossroads Exxon; local environmental scientists and engineers who have performed environmental investigations on behalf of the Defendants, other businesses in the area or residents; local real estate appraisers and agents; and residents of the Fallston area who have been affected by the contamination.   The depositions of the necessary witnesses in the *Koch* case have not occurred nor are they expected to occur in the MDL-1358 cases.   Currently, discovery in MDL-1358 is only being served on the defendants in four focus cases: *Orange County Water District v. Unocal Corp. et al.*, No. 04-4968; *County of Suffolk v. Amerada Hess Corp., et al.*, 04-5424; *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04-2389; and the *City of New York v. Amerada Hess Corp., et al.*, No. 04-3417. *See 4 MTBE Suits Designated 'Focus Cases' in MDL*, 18 MEALEY'S POLLUTION LIABILITY REPORT, November 2004, at

---

[4] The regional bedrock aquifer in the area of the Upper Crossroads Exxon station lies in the Wissahickon Formation.  Site Assessment Report Exxon Service Station, #2-8329 at 5-6 (October 8, 2004).

28.  None of this discovery would touch in any way upon the actual factual issues that will be decided in *Koch*.

Another consideration is whether the discovery common to the actions can be accomplished outside of MDL consolidation. *See, e.g., In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F.Supp.2d 1377, 1378 (J.P.M.L. 2002) (denying transfer where alternative existed that would minimize duplicative discovery).  To the extent that Defendant ExxonMobil's knowledge of the nature of MTBE is relevant to the *Koch* case, there are already documents in the public record that show the Defendant ExxonMobil's awareness of the danger and its duty to store and handle the product with a higher degree of care. *See, e.g., In re: MTBE Prod. Liab. Litig.*, 175 F.Supp.2d at 601-02 (discussing various reports on MTBE by environmental agencies and the industry in the 1980's and early 1990's).  Indeed, most of this type discovery has already been conducted in other MTBE cases.  For example, *South Lake Tahoe Public Util. District v. Atlantic Richfield Co., et al.*, No. 999128 (Cal. Super. Ct., filed Nov. 10, 1998), proceeded to trial in 2002 on the issue of whether MTBE-containing gasoline is a defective product and resulted in a verdict finding oil companies liable.  Furthermore, the MDL-1358 court maintains a document depository that can be accessed by attorneys in any MTBE action. *See In re: MTBE Prod. Liab. Litig.*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001).  Given these resources, discovery of these materials for *Koch* will not be so burdensome as to require consolidation with cases now in MDL-1358.

A final consideration is whether there is a significant possibility of inconsistent pretrial rulings if the actions under consideration are not transferred. *In re TMJ Implants*

*Prod. Liab. Litig.*, 844 F.Supp. 1553, 1554 (J.P.M.L. 1994). Here, there is no such danger. If a class were certified in *Koch*, it could be limited easily to residents of the area surrounding the Upper Crossroads Exxon, and thus, would not conflict with class certification determinations in other MDL-1358 actions. *See In re MTBE Prod. Liab. Litig.*, 209 F.R.D. at 329 (denying class certification for all private well owners with detections of MTBE in New York, Florida, California, and Illinois). Indeed, the MDL-1358 court's multiple decisions on common legal issues can provide guidance to other courts hearing MTBE cases. *See In re AH Robins Co. Inc. "Dalkon Shield" IUD Prod. Liab. Litig.*, 505 F.Supp. 221, 223 (J.P.M.L. 1981) (a transferee court's prior decisions "can serve as an aid in avoiding duplication of discovery and preventing inconsistent pretrial rulings"); *In re Western Elec. Co., Inc. Semiconductor Patent Litig.*, 436 F.Supp. 404, 406 (J.P.M.L. 1977) (denying transfer where the transferee court's conclusions on key legal issues are well documented).

As for jurisdictional issues, there are material differences between the *Koch* remand motions and the remand motions before the MDL-1358 court. For instance, the *Koch* Plaintiffs maintain that the removal was improper, because it was not done within the statutory mandated 30 days from service of the complaint on the Defendants.[5] The main issues in deciding remand in the MDL-1358 cases were federal officer status and bankruptcy. *In re: MTBE Prod. Liab. Litig.*, MDL-1358, 341 F.Supp.2d 386, 416

---

[5] Defendant ExxonMobil asserts that an order by a state court to consolidate *Koch* with another case qualifies as an "order ... from which it may first be ascertained that the case is one which is or has become removable" pursuant to 28 U.S.C. § 1446(b). However, they gave no caselaw supporting this proposition. Plaintiffs contend that the consolidation by the state court *sua sponte* does not constitute a new trigger for removal purposes, and that the *Koch* action never was removable nor became removable upon consolidation in state court with another case. To the extent that this is a real legal issue, it involves interpretation of Maryland Rule 2-503(a), as well as 28 U.S.C. § 1446(b).

(S.D.N.Y. 2004). However, because there is no product liability count in *Koch*, there is no federal officer basis for jurisdiction pursuant to 28 U.S.C. § 1442, and because ExxonMobil has not declared bankruptcy under Title 11 of the United States Code, there is no bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334.

Given these concerns, transferring the *Koch* action to the Southern District of New York will not necessarily conserve the resources of the parties; reduce duplicative efforts; or prevent conflicting rulings. By virtue of the geographic distance and the fact that witnesses will be deposed in Maryland regardless of which court oversees discovery, the Southern District of New York simply offers no increased convenience for the majority of witnesses and parties or efficiency in the *Koch* case.

### B. The *Koch* action involves unresolved questions of Maryland law.

While the test for deciding whether to transfer an action to an MDL focuses on factual commonalities between actions to be consolidated, questions of law may also be relevant. *See In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F.Supp. 1405, 1407 (J.P.M.L. 1976) (finding questions of law to be preponderant in actions being considered for transfer and denying transfer under Section 1407). The *Koch* action presents unresolved questions of Maryland law that would be more appropriately decided by the United States District Court for the District of Maryland, which has more experience and familiarity with Maryland law than the MDL-1358 court.

It is axiomatic that federal district courts situated in a state are better able to interpret the law of that state. *See Karofsky v. Abbot Lab.*, 921 F.Supp. 18, 21 n.4 (D. Me. 1996) (explaining that the district court in Maine was better equipped to interpret Maine law than the MDL court). One issue of law that likely will be addressed by a judge in pre-trial proceedings in *Koch* is whether a class should be certified for medical

monitoring.  This will require determining whether medical monitoring is a cognizable cause of action or form of relief in Maryland.  The Court of Appeals of Maryland has not resolved this issue. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 782, 752 A.2d 200, 251 (Md. 2000). A court in Maryland is better suited to deciding this question of Maryland law than a court in New York.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff Koch's motion to vacate CTO-11 should be granted.

Respectfully submitted,

Dated: March 23, 2005

Charles J. Piven (Md. Federal Bar No. 00967)
Marshall N. Perkins (Md. Federal Bar No. 25514)
**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

Lon Engel (Md. Federal Bar No. 02470)
**ENGEL & ENGEL, P.A.**
11 E. Lexington Street
Suite 200
Baltimore, MD 21202
(410) 727-5095

*Counsel for Plaintiffs*

Judicial Panel on Multidistrict Litigation – Case Listing Report

Docket: 1358 - In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Status: Transferred on 10/10/2000

Transferee District: NYS   Judge: Scheindlin, Shira Ann

Report is Ordered by District and Case #

Printed on 03/15/2005

Page 1

| Civil Action | Short Caption | Judge | CTO | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination | - Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA CENTRAL** | | | | | | | | | | |
| 8-03-1742 | Orange County Water District v. Unocal Corp., et al. | Selna | 5 | CTO Filed | 02/25/2004 | 2004-4968 | Transfer | 06/16/2004 | | |
| 8-04-53 | City of Riverside v. Atlantic Richfield Co., et al. | Selna | 5 | CTO Filed | 02/25/2004 | 2004-4969 | Transfer | 06/16/2004 | | |
| **CALIFORNIA EASTERN** | | | | | | | | | | |
| 2-03-2582 | Quincy Community Services District v. Atlantic Richfield Co., et al. | Karlton | 5 | CTO Filed | 02/25/2004 | 2004-4970 | Transfer | 06/16/2004 | | |
| 2-03-2601 | City of Roseville v. Atlantic Richfield Co., et al. | England | 5 | CTO Filed | 02/25/2004 | 2004-4971 | Transfer | 06/16/2004 | | |
| 2-03-2653 | People of the State of California, et al. v. Atlantic Richfield Co., et al. | Burrell | 5 | CTO Filed | 02/25/2004 | 2004-4972 | Transfer | 06/16/2004 | | |
| **CALIFORNIA NORTHERN** | | | | | | | | | | |
| 3-03-5378 | City of Fresno v. Chevron U.S.A., Inc., et al. | White | 4 | CTO Filed | 02/06/2004 | 2004-4973 | Transfer | 06/16/2004 | | |
| 3-03-5379 | California-American Water Co v. Atlantic Richfield Co., et al. | White | 4 | CTO Filed | 02/06/2004 | 2004-4974 | Transfer | 06/16/2004 | | |
| 3-04-5179 | Shannon v. Taylor Investments, LLC, et al. | Breyer | 10 | CTO Filed | 01/11/2005 | | CTO Final | 01/27/2005 | | |
| 3-04-5180 | Quinn, et al. v Shell Oil, Inc., et al. | White | 11 | CTO Filed | 02/22/2005 | | CTO Opposed | 03/07/2005 | | |
| 3-05-192 | California Water Service Co. v. Atlantic Richfield Co., et al. | Chen | 11 | CTO Filed | 02/22/2005 | | CTO Final | 03/10/2005 | | |
| **CALIFORNIA SOUTHERN** | | | | | | | | | | |
| 3-03-2408 | Silver, et al. v. Alon USA Energy, Inc., et al. | Hayes | 5 | CTO Filed | 02/25/2004 | 2004-4975 | Transfer | 06/16/2004 | | |
| **CONNECTICUT** | | | | | | | | | | |
| 3-03-1921 | Canton Board of Education v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1715 | CTO Final | 02/24/2004 | | |
| 3-03-1923 | Columbia Board of Education v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1716 | CTO Final | 02/24/2004 | Closed | 06/03/2004 |
| 3-03-1924 | Childhood Memories v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1717 | CTO Final | 02/24/2004 | Closed | 06/03/2004 |
| 3-03-1925 | Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1718 | CTO Final | 02/24/2004 | | |
| 3-03-1926 | American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1719 | CTO Final | 02/24/2004 | | |
| 3-03-1927 | Town of East Hampton v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1720 | CTO Final | 02/24/2004 | | |
| 3-03-2017 | United Water CT, Inc. v. Amerada Hess Corp., et al. | Underhill | 4 | CTO Filed | 02/06/2004 | 2004-1721 | CTO Final | 02/24/2004 | | |
| 3-03-2252 | Exxon Mobil Corp., et al v. American Distilling & Manufacturing Co., Inc., et al. | Chatigny | 5 | CTO Filed | 02/25/2004 | 2004-2050 | CTO Final | 03/12/2004 | | |
| **FLORIDA MIDDLE** | | | | | | | | | | |
| 8-00-1912 | Young v. Exxon Mobil Oil Corp. | Bucklew | 1 | CTO Filed | 10/30/2000 | 2001-704 | Transfer | 01/24/2001 | Closed | 02/25/2003 |
| **FLORIDA NORTHERN** | | | | | | | | | | |
| 3-03-539 | Escambia C... v. Adcock Petroleum, Inc., et al. | Collier | 4 | CTO Filed | 02/06/2004 | 2004-1722 | CTO Final | 02/24/2004 | | |
| 3-03-597 | Exxon Mobil ...a County Utilities Authority | Rodgers | 5 | CTO Filed | 02/25/2004 | 2004-2051 | CTO Final | 03/12/2004 | | |

EXHIBIT 1

Page 2

| Civil Action | Short Caption | Judge | CTO | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination | - Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | | | | | | | | | |
| 1-00-3544 | Sutton Farms (USA), Inc. v. Amerada Hess Corp., et al. | Moreno | 1 | CTO Filed | 10/30/2000 | 2001-705 | Transfer | 01/24/2001 | Closed | 03/20/2001 |
| **IOWA NORTHERN** | | | | | | | | | | |
| 5-03-4124 | ExxonMobil Corp., et al. v. City of Galva, et al. | O'Brien | 5 | CTO Filed | 02/25/2004 | 2004-2052 | CTO Final | 03/12/2004 | | |
| **IOWA SOUTHERN** | | | | | | | | | | |
| 4-03-90663 | City of Sioux City, Iowa, et al., v. Amerada Hess Corp., et al. | Pratt | 4 | CTO Filed | 02/06/2004 | 2004-1723 | CTO Final | 02/24/2004 | | |
| **ILLINOIS NORTHERN** | | | | | | | | | | |
| 1-03-8973 | City of Crystal Lake, et al. v. Amerada Hess Corp., et al. | Moran | 5 | CTO Filed | 02/25/2004 | 2004-2053 | CTO Final | 03/12/2004 | | |
| 1-03-9026 | Exxon Mobil Corp., et al. v. City of Crystal Lake, et al. | Castillo | 5 | CTO Filed | 02/25/2004 | 2004-2054 | CTO Final | 03/12/2004 | | |
| **ILLINOIS SOUTHERN** | | | | | | | | | | |
| 3-00-370 | England, et al v. Atlantic Richfield Co., et al. | Herndon | | Motion | 06/06/2000 | 2000-7729 | Transfer | 10/10/2000 | Closed | 02/21/2003 |
| 3-00-371 | England, et al. v. Atlantic Richfield Co., et al. | Herndon | | Motion | 06/06/2000 | 2000-7730 | Transfer | 10/10/2000 | Closed | 06/29/2001 |
| 3-01-596 | Village of East Alton v. Premcor Refining, et al. | Herndon | 3 | CTO Filed | 10/05/2001 | | CTO Vacated | 11/19/2001 | State Court | 11/15/2001 |
| **INDIANA NORTHERN** | | | | | | | | | | |
| 3-03-904 | City of Mishawaka v. Amerada Hess Corp., et al. | Miller | 5 | CTO Filed | 02/25/2004 | 2004-2055 | CTO Final | 03/12/2004 | | |
| 3-03-905 | City of South Bend, Indiana v. Amerada Hess Corp., et al. | Sharp | 5 | CTO Filed | 02/25/2004 | 2004-2056 | CTO Final | 03/12/2004 | | |
| 4-03-103 | North Newton School Corp. v. Amerada Hess Corp., et al. | Sharp | 5 | CTO Filed | 02/25/2004 | 2004-2057 | CTO Final | 03/12/2004 | | |
| **INDIANA SOUTHERN** | | | | | | | | | | |
| 3-03-201 | City of Rockport v. Amerada Hess Corp., et al. | Young | 4 | CTO Filed | 02/06/2004 | 2004-1724 | CTO Final | 02/24/2004 | | |
| 3-03-223 | Exxon Mobil Corp., et al v. City of Rockport, et al. | Young | 5 | CTO Filed | 02/25/2004 | 2004-2058 | CTO Final | 03/12/2004 | | |
| 4-04-67 | Town of Campbellsburg, Indiana v. Amerada Hess Corp., et al. | Hamilton | 7 | CTO Filed | 05/21/2004 | 2004-4990 | CTO Final | 06/08/2004 | | |
| **KANSAS** | | | | | | | | | | |
| 6-03-1455 | City of Park City, Kansas v. Alon USA Energy Inc., et al. | Marten | 5 | CTO Filed | 02/25/2004 | 2004-2059 | CTO Final | 03/12/2004 | | |
| 6-03-1456 | City of Dodge City, Kansas v. Alon USA Energy Inc., et al. | Belot | 5 | CTO Filed | 02/25/2004 | 2004-2060 | CTO Final | 03/12/2004 | | |
| 6-03-1457 | Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al. | Brown | 5 | CTO Filed | 02/25/2004 | 2004-2061 | CTO Final | 03/12/2004 | | |
| 6-03-1458 | City of Bel Aire v. Alon USA Energy Inc., et al. | Brown | 5 | CTO Filed | 02/25/2004 | 2004-2062 | CTO Final | 03/12/2004 | | |
| 6-04-1009 | Exxon Mobil Corp., et al. v. Chisholm Creek Utility Authority, et al. | Brown | 5 | CTO Filed | 02/25/2004 | 2004-2063 | CTO Final | 03/12/2004 | | |
| **LOUISIANA WESTERN** | | | | | | | | | | |
| 1-04-367 | City of Marksville v. Alon USA, LP, et al. | Drell | 6 | CTO Filed | 04/07/2004 | 2004-3412 | CTO Final | 04/23/2004 | | |
| 3-04-474 | Town of Rayville v. Alon USA Energy, Inc., et al. | James | 6 | CTO Filed | 04/07/2004 | 2004-3413 | CTO Final | 04/23/2004 | | |
| **MASSACHUSETTS** | | | | | | | | | | |
| 1-03-12399 | Town of Duxbury, et al. v. Amerada Hess Corp., et al. | Stearns | 4 | CTO Filed | 02/06/2004 | 2004-1725 | CTO Final | 02/24/2004 | | |
| 1-03-12539 | Exxon Mobil Corp. v. Brimfield Housing Authority, et al. | Stearns | 5 | CTO Filed | 02/25/2004 | 2004-2064 | CTO Final | 03/12/2004 | | |
| 1-05-10175 | City of Lowell, Massachusetts v Amerada Hess Corp., et al. | Wolf | 12 | Suspense | 03/02/2005 | | | | | |
| 4-01-10019 | Town of Sturbridge v. Mobil Corp., et al. | Gorton | | No Action Taken | 04/13/2001 | | No Action Taken | 04/13/2001 | No Action Taken | 04/13/2001 |
| **MARYLAND** | | | | | | | | | | |
| 1-04-3345 | Koch, et al. v. John R. Hicks, et al. | Garbis | 11 | CTO Filed | 02/22/2005 | | CTO Opposed | 03/09/2005 | | |

| Civil Action | Short Caption | Judge | CTO | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination | - Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW HAMPSHIRE** | | | | | | | | | | |
| 1-03-486 | State of New Hampshire v. Amerada Hess Corp., et al. | DiClerico | 4 | CTO Filed | 02/06/2004 | 2004-4976 | Transfer | 06/16/2004 | | |
| 1-03-518 | Exxon Mobil Corp., et al. v. City of Portsmouth, New Hampshire, et al. | Barbadoro | 5 | CTO Filed | 02/25/2004 | 2004-2065 | CTO Final | 03/12/2004 | | |
| 1-03-542 | City of Portsmouth, New Hampshire v. Amerada Hess Corp., et al. | Barbadoro | 5 | CTO Filed | 02/25/2004 | 2004-2066 | CTO Final | 03/12/2004 | | |
| 1-03-546 | City of Dover v. Amerada Hess Corp., et al. | Torres | 5 | CTO Filed | 02/25/2004 | 2004-2067 | CTO Final | 03/12/2004 | | |
| **NEW JERSEY** | | | | | | | | | | |
| 1-03-5562 | New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp., et al. | Bassler | 4 | CTO Filed | 02/06/2004 | 2004-1726 | CTO Final | 02/24/2004 | | |
| 2-03-6096 | ExxonMobil Oil Corp., et al. v. New Jersey American Water Co., Inc., et al. | Bassler | 6 | CTO Filed | 04/07/2004 | 2004-3414 | CTO Final | 04/23/2004 | | |
| 3-00-4703 | Holten, et al. v. Chevron U.S.A., Inc., et al. | Thompson | 2 | CTO Filed | 12/21/2000 | | CTO Vacated | 04/18/2001 | Denied | 04/18/2001 |
| **NEW YORK EASTERN** | | | | | | | | | | |
| 2-03-6077 | Water Authority of Great Neck North v. Amerada Hess Corp., et al. | Spatt | 4 | CTO Filed | 02/06/2004 | 2004-1727 | CTO Final | 02/24/2004 | | |
| 2-03-6125 | Long Island Water Corp. v. Amerada Hess Corp., et al. | Spatt | 5 | CTO Filed | 02/25/2004 | 2004-2068 | CTO Final | 03/12/2004 | | |
| 2-03-6274 | Exxon Mobile Corp., et al v. Long Island Water Corp., et al. | Spatt | 5 | CTO Filed | 02/25/2004 | 2004-2069 | CTO Final | 03/12/2004 | | |
| 2-04-381 | Port Washington Water District v. Amerada Hess Corp., et al. | Spatt | 6 | CTO Filed | 04/07/2004 | 2004-3415 | CTO Final | 04/23/2004 | | |
| 2-04-785 | Incorporated Village of Sands Point v. Amerada Hess Corp., et al. | Spatt | 6 | CTO Filed | 04/07/2004 | 2004-3416 | CTO Final | 04/23/2004 | | |
| 2-04-860 | The City of New York v. Amerada Hess Corp., et al. | Spatt | 6 | CTO Filed | 04/07/2004 | 2004-3417 | CTO Final | 04/23/2004 | | |
| 2-04-1278 | Hicksville Water District v. Amerada Hess Corp., et al | Spatt | 8 | CTO Filed | 06/16/2004 | 2004-5421 | CTO Final | 07/02/2004 | | |
| 2-04-1280 | Roslyn Water District v. Amerada Hess Corp., et al. | Spatt | 8 | CTO Filed | 06/16/2004 | 2004-5422 | CTO Final | 07/02/2004 | | |
| 2-04-1281 | Franklin Square Water District v. Amerada Hess Corp., et al. | Spatt | 8 | CTO Filed | 06/16/2004 | 2004-5423 | CTO Final | 07/02/2004 | | |
| 2-04-1321 | County of Suffolk, et al v. Amerada Hess Corp., et al. | Spatt | 8 | CTO Filed | 06/16/2004 | 2004-5424 | CTO Final | 07/02/2004 | | |
| **NEW YORK SOUTHERN** | | | | | | | | | | |
| 1-00-1898 | Berisha, et al. v. Amerada Hess Corp., et al. | Scheindlin | | Motion | 06/06/2000 | | NTN | 10/10/2000 | Closed | 02/25/2003 |
| 1-01-1076 | Berrian, et al. v. Amerada Hess Corp., et al. | Scheindlin | | XYZ Case | 02/28/2001 | | NTN | 02/28/2001 | Closed | 02/25/2003 |
| 1-03-9543 | County of Nassau v. Amerada Hess Corp., et al. | UNASSIGNED | | XYZ Case | 01/05/2004 | | NTN | 01/05/2004 | | |
| 1-03-9544 | Water Authority of Western Nassau v. Amerada Hess Corp., et al | UNASSIGNED | | XYZ Case | 12/24/2003 | | NTN | 12/24/2003 | | |
| 1-03-9927 | Exxon Mobil Corp., et al. v. Carle Place Water District, et al. | Scheindlin | | XYZ Case | 01/16/2004 | | NTN | 01/16/2004 | | |
| 1-03-10051 | Incorporated Village of Mineola, et al. v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-03-10052 | West Hempstead Water District v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-03-10053 | Carle Place Water District v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-03-10054 | Town of South Hampton, et al v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-03-10056 | Town of East Hampton v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-03-10057 | Westbury Water District v. AGIP Inc., et al. | UNASSIGNED | | XYZ Case | 02/05/2004 | | NTN | 02/05/2004 | | |
| 1-04-2388 | Town of Wappinger v. Amerada Hess Corp., et al. | Scheindlin | | XYZ Case | 04/21/2004 | | NTN | 04/21/2004 | | |
| 1-04-2389 | United Water New York, Inc. v. Amerada Hess Corp., et al. | Scheindlin | | XYZ Case | 04/21/2004 | | NTN | 04/21/2004 | | |
| 1-04-2390 | Village of Pawling v. Amerada Hess Corp., et al | Scheindlin | | XYZ Case | 04/21/2004 | | NTN | 04/21/2004 | | |

| Civil Action | Short Caption | Judge | CTO | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination | - Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **PENNSYLVANIA EASTERN** | | | | | | | | | | |
| 2-04-1781 | Northampton, Bucks County Municipal Authority v. Amerada Hess Corp., et al. | Shapiro | 9 | CTO Filed | 08/05/2004 | | CTO Final | 08/23/2004 | | |
| **VIRGINIA EASTERN** | | | | | | | | | | |
| 3-04-854 | Greensville County Water & Sewer Authority, County of Greensville v. Amerada Hess Corp., et al. | Spencer | 10 | CTO Filed | 01/11/2005 | | CTO Final | 01/27/2005 | | |
| **VIRGINIA WESTERN** | | | | | | | | | | |
| 1-04-8 | Buchanan County School Board v. Amerada Hess Corp., et al. | Williams | 6 | CTO Filed | 04/07/2004 | 2004-3418 | CTO Final | 04/23/2004 | | |
| 4-03-104 | Patrick County School Board v. Amerada Hess Corp., et al. | Wilson | 5 | CTO Filed | 02/25/2004 | 2004-2070 | CTO Final | 03/12/2004 | | |
| 4-03-105 | Exxon Mobil Corp., et al. v. Patrick County School Board, et al | Wilson | 5 | CTO Filed | 02/25/2004 | 2004-2071 | CTO Final | 03/12/2004 | | |
| **VERMONT** | | | | | | | | | | |
| 2-03-337 | Hartland v. Amerada Hess Corp., et al. | Sessions | 5 | CTO Filed | 02/25/2004 | 2004-2072 | CTO Final | 03/12/2004 | | |
| 2-03-343 | Exxon Mobil Corp., et al. v. Town of Hartland | Sessions | 5 | CTO Filed | 02/25/2004 | 2004-2073 | CTO Final | 03/12/2004 | | |
| 2-04-33 | Craftsbury Fire District #2 v. Amerada Hess Corp., et al. | Sessions | 6 | CTO Filed | 04/07/2004 | 2004-3419 | CTO Final | 04/23/2004 | | |
| **WEST VIRGINIA SOUTHERN** | | | | | | | | | | |
| 1-04-165 | Town of Matoaka, West Virginia, Matoaka Water System v. Amerada Hess Corp., et al. | Faber | 6 | CTO Filed | 04/07/2004 | 2004-3420 | CTO Final | 04/23/2004 | | |

**REPORT SUMMARY and FILTERS**

Docket: 1358 - Methyl Tertiary Butyl Ether ("MTBE")
PL
For All Cases

There are 88 Cases on this Report.

| | |
|---|---|
| 14 XYZ Actions | 68 Transferred Actions |
| 1 Suspense Actions | 9 Terminated Actions |

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

Southern _____ DISTRICT OF __New York__

DAVE TONNESON;
HUDSON HIGHLANDS REALTY RESTORATIONS, LTD;
DONNA BOYCE; ANNA T. BURLEY; ROBERT GEE;
EDWINA GEE; DENISE GINEY; PAT HANNIGAN;
CHARLES HANNIGAN; IAN HAY; JUNE HAY;
WILLIAM J. HUBENY; ANNA L. HUBENY;
THERESA STANLEY;
JOHN ZERVAS and JOANNE ZERVAS,

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

v.

SUNOCO, INC., SUNOCO (R&M)
f/k/a SUN COMPANY, INC. (R&M),
MOBIL CORPORATION; and
EXXONMOBIL CORPORATION
f/k/a EXXON CORPORATION,

## 03 CIV. 8248

## JUDGE CONNER

TO: (Name and address of defendant)

Sunoco, INC., AND Sunoco (R&M) f/k/a Sun Company, INC.
1801 Market Street
Philadelphia, PA 19103.

Mobil Corporation AND Exxon Mobil Corporation f/k/a Exxon Corporation
5959 Las Colinas Boulevard
Irving, Texas 75039-2298

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

1) The Sarcone Law Firm, PLLC
   222 Bloomingdale Road, Suite 302
   White Plains, New York 10605

2) Miller & Sawyer, P.C.
   Trial Counsel to The Sarcone Law Firm, PLLC
   1651 Response Road, 2nd Floor
   Sacramento, California 95815-5253

an answer to the complaint which is herewith served upon you, within ____20____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

J. MICHAEL McMAHON,      Clerk                          OCT 17 2003

CLERK                                                   DATE

## PATRICK MORAN

(BY) DEPUTY CLERK

EXHIBIT
2

JOHN A. SARCONE, III (JAS 3595)
The Sarcone Law Firm, PLLC
222 Bloomingdale Road, Suite 302
White Plains, New York 10605-1511
Phone: (914) 686-8200
Fax:    (914) 686-8988

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
DAVE TONNESON;
HUDSON HIGHLANDS REALITY RESTORATIONS, LTD;
DONNA BOYCE; ANNA T. BURLEY; ROBERT GEE;
EDWINA GEE; DENISE GIBNEY; PAT HANNIGAN;
CHARLES HANNIGAN; IAN HAY; JUNE HAY;
WILLIAM J. HUBENY; ANNA L. HUBENY;
THERESA STANLEY;
JOHN ZERVAS; and JOANNE ZERVAS,

Plaintiffs,

Civ. No.

COMPLAINT WITH JURY DEMAND

- V -





SUNOCO, INC., SUNOCO (R&M)
f/k/a SUN COMPANY, INC. (R&M),
MOBIL CORPORATION; and
EXXONMOBIL CORPORATION
f/k/a EXXON CORPORATION,

Defendants.
--------------------------------------------------------------

JURY DEMAND

Plaintiffs request and demand a jury trial with respect to all issues and claims brought herein properly triable before a jury.

I. STATEMENT OF THE CASE

1.      This is a diversity action seeking money damages and declaratory and equitable

relief for personal injury and property damage.  The claims arise from defendants' manufacture and distribution of gasoline

containing Methyl Tertiary Butyl Ether (MTBE) and from defendants' contamination of plaintiffs' wells and property located in

Orange County, New York, with MTBE.

II. JURISDICTION AND VENUE

2.      Jurisdiction over this action is conferred by 28 U.S.C. § 1332(a) (diversity

jurisdiction).  The matter in controversy is between citizens of different states, and the amount in controversy for each plaintiff

exceeds the sum of $75,000.

controversy for each plaintiff exceeds the sum of $75,000.

      3.     A substantial part of the actions giving rise to this Complaint took place in this District, and the property affected by defendants' actions are located in this District. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391(a)(2).

### III. PARTIES

      4.     Plaintiffs are citizens of New York who currently own, lease, rent and otherwise are entitled to the exclusive use and possession of residential, commercial and other property in the State of New York, County of Orange, Town of Highlands, Hamlet of Fort Montgomery. Plaintiffs presently have the exclusive right to appropriate and use groundwater produced by wells on their property.

      5.     Defendants' actions, as described below, adversely affect plaintiffs' use and enjoyment of their property and groundwater, harm plaintiffs' health and well being, and cause financial harm by reducing property values and forcing plaintiffs to seek alternative water sources.

      6.     Plaintiff Dave Tonneson is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York. Mr. Tonneson, both as an individual and as a principal in Hudson Highlands Realty Restorations, Ltd., which is a domestic corporation organized, operating and existing as a citizen under the laws of the state of New York and also a plaintiff herein, owns investment property at 1000 and 2481 U.S. Route 9W, within the Hamlet of Fort Montgomery. These properties rely on wells for their water supply needs. Water samples taken from these wells have shown MTBE contamination. There is no other water supply that could be used or that is available to be used except for bottled water.

2

7.     Plaintiff Donna Boyce is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and has an interest in property on which she resides at 6 Garrison Road. The plaintiff Donna Boyce relies for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

8.     Plaintiff Anna T. Burley is an adult citizen and a resident of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and has an interest in property on which she resides at 13 Highland Avenue. The plaintiff Anna Burley relies for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property. Water samples taken from her well have shown that her water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

9.     Plaintiffs Robert and Edwina Gee are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which they reside at 60 Montgomery Road, and an investment property on the same block, at 48 Montgomery Road. The plaintiffs Robert and Edwina Gee rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on their property. Water samples taken from wells at their residential and investment properties have shown that their water is contaminated with MTBE. There is no other water supply that could be used or that is available to be used except for bottled water.

10.     Plaintiff Denise Gibney is an adult citizen and a resident of the Town of

3

Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and has an interest

in property on which she resides at 96 Firefighters Memorial Drive.  The plaintiff Denise Gibney

relies for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on

water from a well on the property.  Water samples taken from her well have shown that her

water is contaminated with MTBE.  There is no other water supply that could be used or that is

available to be used except for bottled water.

11.     Plaintiffs Pat and Charles Hannigan are adult citizens and residents of the Town

of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an

interest in property on which they reside at 69 Canterbury Road.  The plaintiffs Charles and Pat

Hannigan rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic

purposes on water from a well on the property.  Water samples taken from their well have shown

that their water is contaminated with MTBE.  There is no other water supply that could be used

or that is available to be used except for bottled water.

12.     Plaintiffs Ian and June Hay are adult citizens and residents of the Town of

Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an

interest in property on which they reside at 21 Cherry Street.  The plaintiffs Ian and June Hay

rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on

water from a well on the property.  Water samples taken from their well have shown that their

water is contaminated with MTBE.  There is no other water supply that could be used or that is

available to be used except for bottled water.

13.     Plaintiff Theresa Stanley is an adult citizen and resident of the Town of

Newburgh, County of Orange, State of New York, and owns investment property at 124

Firefighters Memorial Drive, Town of Highlands within the Hamlet of Fort Montgomery.  This

4

property relies on a well to supply all water supply needs.  Water samples taken from this well have shown MTBE contamination.  There is no other water supply that could be used or that is available to be used except for bottled water.

14.     Plaintiffs John and Joanne Zervas are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which they reside at 144 Canterbury Road.  The plaintiffs John and Joanne Zervas rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property.  Water samples taken from their well have shown that their water is contaminated with MTBE.  There is no other water supply that could be used or that is available to be used except for bottled water.

15.     Plaintiffs William J. Hubeny and Anna L. Hubeny are adult citizens and residents of the Town of Highlands, Hamlet of Fort Montgomery, Orange County, State of New York, and have an interest in property on which they reside at 16 Murphy Road.  The plaintiffs William J. Hubeny and Anna L. Hubeny rely for drinking, bathing, cooking, cleaning, and all other ordinary and domestic purposes on water from a well on the property.  Water samples taken from their well have shown that their water is contaminated with MTBE.  There is no other water supply that could be used or that is available to be used except for bottled water.

16.     Defendants Sunoco, Inc., and Sunoco (R&M) f/k/a Sun Company, Inc. (R&M) (Sunoco) are citizens of Pennsylvania and Delaware.  Both are foreign corporations organized under the laws of Pennsylvania, with their principal places of business in Philadelphia, Pennsylvania, and their principal executive offices located in Wilmington Delaware.  Both regularly conduct business in the State of New York.

17.     Defendant Mobil Corporation is a citizen of Texas.  Mobil Corporation is a

foreign corporation organized under the laws of the state of Texas with its principal place of business in Irving, Texas.  Mobil Corporation regularly conducts business in the State of New York.

18.     Defendant ExxonMobil Corporation f/k/a Exxon Corporation is a citizen of Texas.  ExxonMobil Corporation f/k/a Exxon Corporation is a foreign corporation organized under the laws of the state of Texas, with its principal place of business in Irving, Texas.  ExxonMobil regularly conducts business in the State of New York.

19.     Defendants manufactured, formulated, distributed, transported, packaged, sold, spilled, and/or released gasoline containing MTBE in the state of New York and were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint.

## IV.  FACTS

### A.  The Contaminants:  MTBE and TBA.

20.     MTBE is an additive to gasoline.  As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE as well as the following oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

21.     TBA is present in some gasoline.  TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE.

22.     MTBE and TBA contaminate the environment through leaks and spills from gasoline delivery systems.  Once released to the environment, MTBE and TBA have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene,

6

toluene, ethyl benzene, and xylene).

23.     Once released into the subsurface, MTBE and TBA separate from other gasoline constituents in the presence of moisture. In contrast to the BTEX compounds, MTBE and TBA have a strong affinity for water. If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.

24.     MTBE and TBA spread farther and faster than other components of gasoline, resist biodegradation, and are difficult and costly to remove from groundwater and drinking water supplies.

25.     No federal or state agency has approved either MTBE or TBA as an additive to drinking water. No federal or state agency has approved releasing MTBE or TBA to groundwater.

26.     Along with its other properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption. Individuals can smell and taste MTBE in water at levels below one part per billion (1 ppb).

27.     MTBE does not occur naturally, but is produced in large amounts from isobutylene, a by-product of the gasoline refining process. Isobutylene was previously considered a waste product that had to be disposed of, but now is used profitably by defendants. Various chemical companies also produce MTBE from tertiary-butyl alcohol. MTBE is a member of a class of chemical compounds (ethers), whose unique properties include enhanced solubility in water and chemical attraction to water molecules. MTBE constitutes approximately

7

eleven percent (11%) by volume of the finished products ultimately sold at gasoline pumps.

28.     Unlike gasoline, which does not mix with water, MTBE mixes so well with water that it spreads faster and farther than other chemical components contained in gasoline.  It does not attach readily to soil particles and is therefore not readily susceptible to natural bio-degradation.  In technical terms, MTBE has a low octanol water partition coefficient and high solubility in water, particularly as compared to the other major constituents of gasoline.  Moreover, MTBE exacerbates pollution by other constituents of gasoline.

### B. Defendants' Promotion of MTBE and TBA.

29.     Defendants have promoted the use of gasoline containing MTBE and/or TBA for its purported environmental benefits, while they knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound.  Such harm includes (among other things): widespread pollution of groundwater with MTBE and/or TBA, contamination of drinking water by these compounds, rendering drinking water supplies unfit and unusable for consumption, public health threats, and increased costs to water users.

30.     Despite knowing that MTBE and/or TBA pollution was inevitable, and despite the availability of reasonable alternatives (including but not limited to adequate warnings) defendants chose not to warn customers, retailers, public officials, or plaintiffs.  As production and sales of these compounds, and gasoline containing them increased, defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE and/or TBA safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product.  Despite knowing the risk of harm posed by MTBE and/or TBA, defendants also failed to warn purchasers, the public, regulators, and/or plaintiffs that without such precautions more

and more MTBE and/or TBA would be released into the environment and cause, among other significant adverse effects, long term groundwater contamination and pollution of water supplies, including plaintiffs' water supplies.

31.     Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing MTBE and/or TBA to gasoline stations without appropriate warnings and without taking other precautions adequate to prevent releases of MTBE and/or TBA to the subsurface, knowing that release to the environment of this compound would be inevitable because gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, including by placing the gasoline in inadequate and leaking gasoline delivery systems, and without taking reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE and/or TBA to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

32.     At all times, defendants have represented to purchasers of MTBE, TBA and/or gasoline containing MTBE and/or TBA, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.  Indeed, defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

33.     Defendants had a duty (which they breached) to test MTBE and TBA thoroughly to determine their environmental fate and transport characteristics, and potential human health impacts before they sold MTBE, TBA and/or gasoline containing MTBE and/or TBA. Defendants had a further duty (which they also breached) to take precautions necessary to assure

9

that gasoline containing MTBE and/or TBA was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks.  Defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing MTBE and/or TBA, and, among other things, failed to abate groundwater contamination caused by MTBE and/or TBA.

34.     The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the time that defendants began adding MTBE and TBA to the gasoline.  At least as early as the mid-1960's, these defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

35     Before introducing MTBE and/or TBA into gasoline delivery systems that defendants knew to be faulty, the defendants knew, or reasonably should have known, that MTBE and/or TBA released into the environment would mix easily with groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from drinking water supplies, and otherwise threaten public and individual health and welfare.  Defendants knew, or they reasonably should have known, that gasoline facilities, including those in Fort Montgomery, commonly lacked adequate storage facilities for gasoline containing MTBE and/or TBA, and that the operators of these facilities were unaware of either the special hazards of MTBE and/or TBA or the steps necessary to eliminate or mitigate those hazards.

36.     At all times relevant to this action the defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE and/or TBA, and/or gasoline containing MTBE and/or TBA, to retail gasoline stations and/or other gasoline

10

delivery systems within or near Fort Montgomery. MTBE and TBA take time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. MTBE and TBA have over time migrated in the subsurface from dispersed release points at or near the surface at retail gasoline facilities within or near Fort Montgomery, causing pollution, contamination, and substantial damage to the groundwater beneath plaintiffs' properties and Fort Montgomery, and damaging plaintiffs at such times and in amounts to be proved at trial.

## V. NATURE OF THE CASE

37.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 36 as though set forth fully here.

38.     One or more plumes of defendants' MTBE has contaminated each of the plaintiffs' wells located on their respective real properties located in the Town of Highlands, in the Hamlet of Fort Montgomery, County of Orange, State of New York (the Town).  The wells of Donna Boyce and Anna T. Burley are contaminated with MTBE from the ExxonMobil station located at 1086 Route 9W in the Town of Highlands, Hamlet of Fort Montgomery, said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 12, Lot 1, Block 2.  The well of Denise Gibney is contaminated with MTBE from the Sunoco station located at located at 805 Route 9W in the Town of Highlands, Hamlet of Fort Montgomery, said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 16, Lot 2, Block 1.2.  The wells of the remaining plaintiffs are, on information and belief, contaminated with MTBE from both stations.

39.     The plaintiffs' respective wells (except for the Town of Highlands which has a claim for a future interest in a well in the Town, and Plaintiff Drew Road Association and its

11

members who have two wells, one contaminated, which members had used, and another that has not shown signs of contamination thus far) are plaintiffs' only source of water.

40.     At extremely low concentrations (less than one part per billion "ppb" in one industry sponsored study), MTBE can change the taste and odor or groundwater into a foul smelling liquid with a chemical odor and taste which renders the water unfit for human consumption. MTBE is known to cause cancer in animals and is linked to a wide variety of threats to human health.

41.     Defendants have contaminated plaintiffs' wells forever, thus destroying their only water supply.

42.     Defendants marketed MTBE-gasoline in Fort Montgomery, when they knew (or reasonably should have known) that MTBE would reach groundwater, pollute drinking water supplies, and threaten the public health. In particular defendants have known for at least three decades that UST systems leak and cause extensive contamination that cannot be removed from ground water or well water.

43.     The problems of leaking gasoline systems have been well documented for decades. Historically, the industry took few, if any, measures to protect the public and the environment against leaks from the UST systems. By some estimates, fifty percent of these UST systems leak.

44.     Defendants failed to test MTBE adequately for environmental fate, human health risks, and potential for contaminating groundwater. Defendants failed to take adequate steps to assure that MTBE would not reach groundwater, pollute the environment, and ruin drinking water supplies, and failed to warn purchasers, regulatory officials, the public, and plaintiffs in this case of the dangers of MTBE.

12

45.     In approximately 1980, defendants began using MTBE as a gasoline additive to boost octane in the State of New York.  Despite the defendants' knowledge of the dangerous characteristics of MTBE and its propensity to contaminate groundwater, defendants formed joint task forces and committees that misrepresented to the government and the public the true characteristics of MTBE in order to pave the way for MTBE to become one of the most widely used products in the United States.

46.     As a result of the introduction of MTBE-laden gasoline and the subsequent increase in the concentrations and distribution of the gasoline additive, MTBE has become the second most widespread organic pollutant in the State of New York's groundwater.

47.     MTBE has caused a statistically significant increase in the incidence of cancer in scientific studies conducted on at least two species of laboratory animals by multiple routes of exposure.  The independent scientific community generally classifies any chemical with these characteristics as probable human carcinogen.  In these studies, exposure to MTBE was associated with leukemia, lymphomas, testicular tumors, kidney cancer and liver cancer.  Two metabolic by-products of MTBE (formaldehyde and tertiary butyl alcohol "TBA" have also caused cancer in scientific experiments.

48.     Defendants promoted the use of MTBE for its purported environmental benefits at the same time that they knew or should have known of the terrible downside of the proliferating use of the compound: widespread pollution of groundwater, contamination of drinking water, and threats to public health.

49.     Despite knowing that MTBE pollution was inevitable, defendants chose not to warn customers, retailers, or owners of drinking water wells, including plaintiffs, until it was too late.  As MTBE production and sales soared to record heights, defendants failed to warn that

13

unless special precautions were taken, and prompt efforts were made to prevent, detect and clean up spills and leaks, more and more MTBE would be released into the environment and cause long term groundwater and well water contamination.

50. Defendants further exacerbated the situation by indiscriminately selling gasoline containing MTBE to gas stations without appropriate warnings and precautions: (1) knowing that gasoline stations would store gasoline containing MTBE in leaking UST systems; (2) knowing that gasoline stations possessed antiquated, rusted, and compromised gasoline systems which had not been upgraded or replaced; (3) knowing that gasoline station owners/operators and environmental consultants would not test samples at release sites for the presence of MTBE (a necessary part of any remedial program) unless warnings were given; and (4) in the case of Fort Montgomery, knowing or being charged with knowledge of the fact that due to the contours and makeup of the area where the UST systems were placed, the UST systems would ultimately leak.

51. MTBE was discharged from UST systems located at gasoline stations at 805 Route 9W in the Town (Sunoco station), said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 16, Lot 2, Block 1.2, and at 1086 Route 9W in the Town (ExxonMobil station), said property identified in the records of the Town and the Orange County Clerk, State of New York as Section 12, Lot 1, Block 2. These stations were owned and/or operated and/or controlled and/or supplied with MTBE laden gasoline by the defendants in wanton, reckless and negligent disregard for the health and safety of the plaintiffs.

52. Profit was the motivating factor behind the defendants wanton, reckless, and negligent use of MTBE in gasoline sold at the above-mentioned locations. Defendants had a choice to use cleaner additives other than MTBE to boost octane burn more cleanly, but chose not to use their additive.

14

53.     Plaintiffs seek a mandatory injunction to compel defendants, jointly and severally, to pay for plaintiffs' environmental and other consultants and/or a court supervised program of continuous and frequent sampling and analysis of plaintiffs' respective well water to test and monitor the levels of MTBE and other contaminants that have contaminated the plaintiffs' wells as a result of defendants' wanton, reckless and negligent acts.  Plaintiffs also seek an order directing defendants to provide bottled water until a replacement water system is installed to provide each plaintiff with water that is uncontaminated by MTBE.   This would require an independent water source other than well water in the Town, and the building of a municipal water and sewer system that draws clean and safe uncontaminated water suitable for all the needs of the plaintiffs.

54.     Plaintiffs also seek compensatory damages to recover for the capping of their wells, the loss in value of their homes and properties, lost income from investment and commercial properties and businesses, temporary replacement water, stigma damages, personal injury damages for and including but not limited to reckless and negligent infliction of emotional distress, to be protected from any claims and future claims brought against plaintiffs from guests of their homes, renters, customers of businesses, lessors or any others who have been exposed to the MTBE contaminated water on plaintiffs' respective properties, and for future medical expenses caused by the reckless, negligent and wanton acts of the defendants, and all other costs associated thereto.

55.     Plaintiffs also seek punitive damages in an amount great enough to punish these defendants.  The harm suffered by plaintiffs was and is as a result of the defendants' acts and omissions, and such acts and omissions were actuated by actual malice or accompanied by a wanton or willful disregard for the safety of plaintiffs, who foreseeably were harmed by the

exposure to and contamination of their property by MTBE.  Defendants owed a duty to plaintiffs

to safeguard and inform plaintiffs regarding the risks of MTBE.  Defendants breached this duty,

and engaged in intentional wrongdoing motivated by greed and profit, with the knowledge that

UST systems would leak gasoline containing high levels of MTBE into the ground and

groundwater, and eventually find its way into plaintiffs' wells and real property.   Defendants

were aware of scientific evidence showing that MTBE will persist in groundwater for decades.

The defendants failed to immediately notify the plaintiffs of the dangers and potential dangers

and to remediate the contaminated wells and real property, and still have not remediated the

plaintiffs' wells or real property.  Defendants permitted MTBE to spread to plaintiffs' real

property and wells without timely and adequate warning and without concern for the health and

safety of plaintiffs, in order to avoid the heavy burden and costs to themselves and or their

shareholders.  Defendants placed gasoline containing MTBE into UST systems knowing that the

chemical possessed special dangers and once it reaches water, there is no way to remediate it

therefrom and did indeed deliberately act or negligently act or failed to act with knowledge of a

high degree of probability of harm to plaintiffs and with reckless, wanton and negligent

disregard of the consequences of such actions or omissions upon the safety and rights of others.

## AS AND FOR THE FIRST CAUSE OF ACTION

### (Strict Liability)

56.    Paragraphs 1 through 55 are incorporated by this reference as though set forth in

full.

57.  The defendants designed, formulated, compounded, manufactured, packaged,

merchandised, advertised, promoted, distributed, and/or sold gasoline containing MTBE and/or

TBA.  Defendants' design and manufacture of these products was defective, and defendants

16

failed to adequately warn against the dangers of these products.

58.     The defendants represented, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

59.     Defendants knew that said product(s) were to be purchased and used without inspection for defects.

60.     MTBE and/or TBA, and gasoline containing MTBE and/or TBA, are defective products because, among other things:

(a)     The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment;

(b)     MTBE and/or TBA, and gasoline containing MTBE and/or TBA cause extensive groundwater contamination even when used in their foreseeable and intended manner;

(c)     Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders water unfit for drinking;

(d)     MTBE and TBA pose significant threats to the public health and welfare;

(e)     The defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA, including but not limited to groundwater contamination with MTBE and/or TBA;

(f)     The defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of

17

MTBE and/or TBA; and

 (g) Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

 61. MTBE and/or TBA and/or gasoline containing MTBE and/or TBA were used in a manner in which they were foreseeably intended to be used, and as a proximate result of the defects previously described, MTBE and/or TBA directly and proximately caused plaintiffs to sustain the injuries and damages set forth in this Complaint.

 62. Defendants knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of water supplies and property damage.  These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's rights.

 63. Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property.  Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon plaintiffs.

 64. For the reasons alleged in paragraphs 20 through 63, plaintiffs are entitled to an award of exemplary and punitive damages against defendants in an amount sufficient to punish defendants and to deter such conduct in the future.

**AS AND FOR A SECOND CAUSE OF ACTION**

**(Negligence)**

 65. Paragraphs 1 through 64 are incorporated by this reference as though set forth in

18

full.

66.     Defendants had a duty to use due care in the design, formulation, manufacture, handling, control, disposal, sale, testing, labeling, use, and instructions for use of gasoline containing MTBE and/or TBA and gasoline delivery systems.

67.     The defendants so negligently, carelessly, and/or recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack thereof), failed to warn, released, spilled, and/or sold MTBE and/or TBA, and/or so negligently, carelessly and recklessly dispensed, spilled, and released gasoline containing MTBE and/or TBA and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, operated and/or maintained  gasoline pipelines and/or gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties and directly and proximately caused MTBE and/or TBA to contaminate and pollute the plaintiffs' groundwater as alleged in this complaint.

68.     Defendants undertook to retain consultants to conduct environmental investigations and cleanups, thereby affirmatively undertaking the duty to detect and remediate releases of MTBE and/or TBA from gasoline delivery systems, but defendants negligently failed to properly discharge these duties.

69.     The defendants knew, or should have known, that gasoline delivery systems using defendants' products were leaking or prone to leak, but nonetheless negligently supplied, sold, and/or entrusted gasoline containing MTBE and/or TBA to these owner/operators, knowing that MTBE and/or TBA would leak into the soil and contaminate groundwater.

70      As a direct and proximate result of the act and omissions of the defendants

19

alleged

herein, plaintiffs have sustained the costs and injuries set forth in this Complaint.

71      For the reasons alleged in paragraphs 20 through 70 plaintiffs are entitled to an

award of exemplary and punitive damages against defendants.

### AS AND FOR A THIRD CAUSE OF ACTION

**(Trespass)**

72.     Paragraphs 1 through 71, are incorporated by this reference as though set forth in

full.

73.     Plaintiffs are owners and/or actual possessors of property rights and interests in

Fort Montgomery, Town of Highlands, including the right to appropriate and use groundwater

and to protect that groundwater from contamination and pollution.  Defendants, their agents and

employees, knew or in the exercise of reasonable care should have known, that MTBE and/or

TBA is extremely hazardous to and would invade groundwater and water supplies, including the

property and other rights of plaintiffs.

74.     The defendants so negligently, recklessly and/or intentionally released, spilled,

and/or failed to properly warn, control, handle, store, contain, and use gasoline containing

MTBE and/or TBA, and/or clean up spills and leaks of MTBE and/or TBA, that they directly

and proximately caused MTBE and/or TBA to contaminate plaintiffs' property as follows:

(a)     The defendants participated in the use, storage, and release of MTBE and/or TBA

by owning, controlling, regulating, designing, installing, operating, monitoring,

inspecting and testing, or by failing to do so, the pipelines and/or gasoline

delivery systems and thereby proximately caused gasoline containing MTBE

and/or TBA to be released into groundwater;

20

(b)     Defendants negligently, recklessly, and/or intentionally provided inadequate instructions and/or warnings concerning MTBE and/or TBA, knowing that there was a substantial danger that if inadequate instructions and/or warnings were followed, gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems and pipelines would escape into the environment and contaminate groundwater;

(c)     Defendants negligently, recklessly, and/or intentionally sold and/or delivered (directly or indirectly) gasoline containing MTBE and/or TBA to gasoline delivery systems which they knew, or should have known, were inadequate, old, leaking, and/or defective, and thereby created a substantial known danger that MTBE and/or TBA would be released into the environment and contaminate groundwater; and negligently, recklessly, and/or intentionally provided instructions and/or warnings concerning MTBE and/or TBA, knowing that there was a substantial danger that if inadequate instructions and/or warnings were followed, gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems would escape into the environment and contaminate groundwater;

(d)     Defendants retained consultants and negligently, recklessly, and/or intentionally controlled and/or directed their cleanup and remediation activities (or the lack thereof) at gasoline station sites and pipelines, thereby causing and permitting MTBE and/or TBA to contaminate and pollute the plaintiffs' property, and defendants failed to warn the appropriate entities and individuals, including plaintiffs, of known risks, spills, releases and/or leaks, and/or failed to undertake

21

reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

(e)     When defendants learned, or reasonably should have learned, that MTBE and/or TBA was a persistent, significant and/or widespread source of groundwater contamination, or threatened to become so, defendants failed to warn the appropriate entities and individuals, including plaintiffs, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

75.     The MTBE and/or TBA contamination of the groundwater in the area of Fort Montgomery has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment.  Plaintiffs have been exposed to MTBE and have been forced to obtain replacement water supplies and otherwise attempt to mitigate the damage caused by defendants, and have thereby sustained the damages alleged herein.

76.     As a direct and proximate result of the defendants' trespass as alleged herein, plaintiffs have sustained the costs and injuries set forth in this Complaint.

77.     For the reasons alleged in paragraphs 20 through 76, the plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Nuisance)

78.     Paragraphs 1 through 77 are  incorporated by this reference as though set forth in full.

79.     The negligent, reckless, intentional, and ultra hazardous activity of the defendants

22

alleged herein has resulted in the contamination and pollution of the plaintiffs' groundwater as alleged herein and constitutes both a public and a private nuisance.

80.     Plaintiffs are specially and adversely affected by the nuisance created by the defendants.

81.     The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed the plaintiffs' use and enjoyment of their property, and their rights to a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination.

82.     Plaintiffs own and hold property rights and interests damaged by the nuisance. Plaintiffs' injuries are separate and distinct from that of the public.

83.     Plaintiffs have not consented to this nuisance.  Defendants knew or should have known that plaintiffs would not consent to this nuisance.

84.     As a direct and proximate result of the nuisance, plaintiffs have sustained the costs and injuries set forth in this Complaint, and are entitled to such appropriate relief as plaintiffs may elect at trial, including, but not limited to, equitable relief in the form of an order requiring defendants to abate the nuisance.

85.     For the reasons alleged in paragraphs 20 through 84, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Declaratory Relief)

86.     Paragraphs 1 through 85, are incorporated by this reference as though set forth in full.

87.     Defendants knew, or should have known, that gasoline containing MTBE and/or TBA, used in a foreseeable and intended manner, is dangerous and creates an unreasonable and

23

excessive risk of harm to human health and the environment.

88.     The defendants intentionally, willfully, deliberately and/or negligently failed to properly design, manufacture, distribute, design, control, test, and/or sell MTBE and/or TBA and/or gasoline delivery systems and warn users of the substantial and unreasonable threats to human health and safety and the environment which results from the foreseeable and intended use and storage of MTBE and/or TBA.

89.     Among other things, plaintiffs must take costly remedial action to secure alternative water supplies, which will result in substantial costs, expenses and damages.

90.     An actual controversy exists concerning liability arising out of actual or threatened pollution or contamination of the plaintiffs' groundwater and water supplies.

91.     For the reasons set forth in paragraph 20 through 90 in order to resolve this controversy, plaintiffs seek an adjudication of the respective rights and obligations of the parties, in conjunction with an award of damages, to the extent necessary to provide full relief to the plaintiffs.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Intentional Interference With Right to Appropriate)

92.     Paragraphs 1 through 91 are incorporated by this reference as though set forth in full.

93.     In the State of New York, the right to appropriate water from the ground or other water sources constitutes an interest in real property.  The negligent, reckless, intentional, and ultra hazardous activity of the defendants, and each of them, alleged herein has invaded plaintiffs' usufructuary right to utilize wells and draw water from the local aquifer.

94. As a direct and proximate result of the interference with plaintiffs' right to

24

appropriate water as alleged in this complaint, plaintiffs have sustained the costs and injuries set forth in this Complaint.

95.     For reasons alleged in Paragraphs 20 to 94 of this complaint, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (New York General Business Law § 349) (Unfair Competition)

96.     Paragraphs 1 through 95 are incorporated by this reference as though set forth in full.

97.     The defendants' conduct described above constitutes unlawful, unfair, and fraudulent business practices, and unfair, deceptive, untrue and/or misleading advertising in violation of New York General Business Law  § 349.

98.     New York General Business Law § 349 allows "any person who has been injured by reason of a violation of this section to bring any action" to recover damages.

99.     New York General Business Law § 349 further provides that the court may Aincrease the award of damages to an amount not to exceed three times the actual damages.

100.     By committing the acts alleged in this complaint, defendants have engaged in, and continue to engage, in unlawful, unfair or fraudulent business practices within the meaning of New York General Business Law § 349.

101.     Defendants have been in violation of, and continue to violate, New York's General Business Law § 349 by, in the course of their business, falsely representing MTBE as environmentally safe and by acting and/or failing to act as described in this complaint.

102.     As a direct and proximate result of defendants' deceptive and misleading conduct as alleged in this Complaint, plaintiffs have sustained the costs and injuries set forth in the

25

Complaint.

103.    For the reasons alleged in Paragraphs 20 through 102 of this complaint, plaintiffs

are entitled to an award of exemplary and punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Outrageous Conduct Causing The Infliction of Emotional Distress)

104.    Paragraphs 1 through 103 are incorporated  by this reference as though set forth in

full.

105.    Defendants' actions as set forth above were reckless and outrageous, exceeding

all reasonable bounds of decency.

106.    Defendants' actions constitute outrageous conduct causing emotional distress

and/or reckless infliction of emotional distress.

107.    Plaintiffs are entitled to recover damages for outrageous conduct

causing emotional distress and/or reckless infliction of emotional distress.

108.    For the reasons alleged in Paragraphs 20 through 107 of this complaint, plaintiffs

are entitled to an award of exemplary and punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

### (For Violation of Article 12 of the New York State Navigation Law--Strict Liability)

109.    Paragraphs 1 through 112 are incorporated by this reference as though set forth in

full.

110.    Navigation Law §181 provides that any person who has discharged petroleum of

any kind and in any form, is strictly liable, without regard to fault, for all cleanup and removal

costs and all direct and indirect damages, no matter by whom sustained.

111.    In accordance with Navigation Law § 181, defendants are strictly liable for all

26

damages to plaintiffs' person and property caused by the leakage, escape, release and/or discharge of petroleum and/or its related products, specifically MTBE, by defendants, as set forth in this Complaint.

112.    Plaintiffs are entitled to recover damages for violation of the Navigation Law on the basis of strict liability.

113.    For the reasons alleged in Paragraphs 20 through 112 of this complaint, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

### (For Violation of Article 12 of the New York State Navigation Law - Negligence)

114.    Paragraphs 1 through 113 are incorporated by this reference as though set forth in full.

115.    Defendants knew or should have known that petroleum and its related products, specifically MTBE, would escape or be released into the groundwater from which plaintiffs obtain their water supply.

116.    Defendants had a duty of care to plaintiffs with regard to contamination of water supplies with MTBE.

117.    Defendants acted unreasonably and negligently in failing to warn of or prevent the leakage, escape, discharge and/or release of petroleum and related products, specifically MTBE and TBA.

118.    Defendants failed to take reasonable precautions to warn of or prevent the leakage, escape, discharge and/or release of these petroleum and related products.

119.    In accordance with Navigation Law § 181, defendants are strictly liable for all damages to plaintiffs' person and property caused by the defendants conduct as alleged in this

27

120.    Plaintiffs are entitled to recover for damages for violation of the Navigation Law on the basis of Defendants' negligence.

121.    For the reasons alleged in Paragraphs 20 through 120 of this complaint, plaintiffs are entitled to an award of exemplary and punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### (For Violation of Article 12 of the New York State Navigation Law -Nuisance)

122.    Paragraphs 1 through 121 are incorporated by this reference as though set forth in full.

123.    Defendants by their acts and omissions, or the acts and omissions of their agents or employees, have unreasonably and substantially interfered with plaintiffs' use of their property, including the groundwater and atmosphere of plaintiffs' property.

124.    In accordance with Navigation Law § 181, and as a result of this nuisance, defendants are strictly liable for damages to plaintiffs' person and property.

125.    Plaintiffs are entitled to recover for damages for violation of the Navigation Law on the basis of defendants creating this nuisance.

126.    For the reasons alleged in Paragraphs 20 through 125 of this complaint, plaintiffs are entitled to an award of exemplary and punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and each of them, request judgment against defendants, and each of them, for:

1.    Compensatory damages in excess of $75,000 for each plaintiff such amount to be determined at trial by a jury;

2.    Exemplary and punitive damages in an amount sufficient to punish defendants and

28

to deter those defendants from ever committing the same or similar acts, such amount to be

determined at trial by a jury;

    3.     For an order (1) declaring that defendants are liable for the full cost of all remedial and

other actions necessary to abate MTBE that contaminates or threatens plaintiffs' wells, and ordering

that defendants continue to pay for and conduct testing and monitoring of the plaintiffs' wells, using

plaintiffs' consultants, and to provide bottled water until a new clean, uncontaminated source of water

is provided through a municipal water and sewer system;

    4.     For the costs incurred herein in prosecuting this action, and prejudgment interest to the

full extent permitted by law.

    5.     For such other and further relief as may be deemed necessary, just and proper by this

Court.

Dated:     White Plains, New York
           October 17, 2003

                     THE SARCONE LAW FIRM, PLLC

                     By:

                       JOHN A. SARCONE, III (JAS 3595)
                       Attorneys for Plaintiff
                       222 Bloomingdale Road, Suite 302
                       White Plains, New York 10605-1511
                       (914) 686-8200

DUANE C. MILLER
MILLER& SAWYER, P.C.
(TRIAL COUNSEL TO THE SARCONE LAW FIRM, PLLC)
Attorneys for Plaintiffs
1651 RESPONSE ROAD, 2ND FLOOR
SACRAMENTO, CA 95815-5253
Phone:  (916)-927-8600