

MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2005

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**



|  |  |
|---|---|
| IN RE:<br><br>METHYL-TERTIARY BUTYL ETHER<br>PRODUCTS LIABILITY LITIGATION | ) **MDL DOCKET NO. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *James Quinn, et al. v. Shell Oil, Inc., et al.,*<br>) Case No. 3:04-5180 (N.D. Cal.)<br>)<br>) *Hope Koch, et al. v. John R. Hicks, et al.,*<br>) Case No. 1:04-3345 (D. Md.)<br>)<br>) **CERTAIN DEFENDANTS'**<br>) **CONSOLIDATED RESPONSE**<br>) **OPPOSING ALL MOTIONS TO**<br>) **VACATE CONDITIONAL TRANSFER**<br>) **ORDER (CTO-11)**<br>) |

RECEIVED
CLERK'S OFFICE
2005 APR 12 P 3: 52
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

IMAGED APR 1 3 2005        OFFICIAL FILE COPY

## INTRODUCTION

The undersigned defendants support this Panel's Conditional Transfer Order (CTO-11), request that all motions to vacate any part of CTO-11 be denied, and urge that the *James Quinn, et al. v. Shell Oil, Inc., et al.*, Case No. 3:04-5180 (N.D. Cal.) ("*Quinn*") and *Hope Koch, et al. v. John R. Hicks, et al.*, Case No. 1:04-3345 (D. Md.) ("*Koch*") cases (collectively, the "Objected-To Actions") be transferred to MDL 1358.

Although the Panel has already transferred over sixty MTBE actions to MDL 1358 since February 2004, the plaintiffs in *Quinn* and the plaintiffs in *Koch* have filed motions to vacate the transfer of these two MTBE cases.[1]  Both of these cases raise the same common questions of fact -- e.g., what defendants knew and represented about MTBE, whether gasoline with MTBE is a defective product, and whether plaintiffs' water was contaminated by MTBE -- that has led to the transfer of over sixty MTBE actions to MDL 1358.  The parties to these actions should receive the benefits of convenience, justice, and efficiency resulting from centralized proceedings under a judge experienced in MTBE litigation.

The *Quinn* and *Koch* plaintiffs principally assert well-worn objections that these two MTBE actions concern local facts regarding alleged contamination.  As the Panel well knows, objectors' arguments repeatedly have been rejected as a basis for denying multi-district treatment.  Indeed, they were rejected in the very decisions that established MDL 1358 and denied motions to vacate parts of CTO-4 and CTO-5.  Therefore, these two MTBE cases should join the other seventy-plus actions that have been transferred to the Southern District of New York for consolidated proceedings.

---

[1]  Two affiliated defendants in *Quinn*, Irvin S. Taylor and Taylor Investments, LLC filed a Notice of Opposition to CTO-11 but did not file a motion to vacate or supporting brief and thus their Notice of Opposition is considered withdrawn. Rule of Procedure of the JPML 7.4(d).

## BACKGROUND

### I.  CREATION OF MDL 1358.

The Panel created MDL 1358 on October 10, 2000 to centralize two putative class actions brought by private well owners.  (MTBE Transfer Order, Ex. A)  The Panel found that the actions involved two common questions of fact: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (*Id.*)  The Panel explained that centralization would be more convenient for parties and witnesses, promote justice and efficiency, avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.  (*Id.*)

In reaching these conclusions, the Panel explicitly rejected the central argument made by the objectors here: that individual factual questions for each location weighed against Section 1407 proceedings.  (*Id.* at 1-2.)  The Panel found that putting the cases before a single judge would have the "salutary effect" of allowing the coordination of both non-common and common issues.  (*Id.*)  Pursuant to the Transfer Order, Judge Scheindlin of the Southern District of New York became the transferee judge for the MTBE cases.

### II.  PROCEEDINGS IN MDL 1358.

Starting in 2000, Judge Scheindlin has spent several years managing MDL 1358, becoming extensively familiar with the facts and legal theories presented by MTBE cases.  The MDL 1358 Court ruled on various substantive motions, including defendants' motions to dismiss and plaintiffs' motion for class certification.  Judge Scheindlin also oversaw class certification and other discovery, including creation of a document depository in New York.  Judge

Scheindlin entered a document preservation order, oversaw electronic and paper document production, and had the parties create an MDL 1358 website.

Beginning in Fall 2003, a new round of MTBE cases was filed in state courts throughout the nation, seeking to impose conflicting state standards on refiners' use of MTBE in gasoline to satisfy federal requirements. In many of these cases, the plaintiffs are municipalities or water authorities but some still are brought by private well owners. The allegations and claims remain the same as in the original MDL 1358 actions. The complaints assert product liability, nuisance, trespass, negligence and other claims. All of the complaints allege that plaintiffs' water supplies have been (or are threatened with becoming) contaminated by gasoline with MTBE and that the defendants misrepresented the nature of MTBE.

In response to this mass of MTBE cases, defendants began removing the cases to federal court with the goal of having a single court issue uniform rulings. Immediately after removal, the defendants began filing tag-along notices alerting the Panel that the new actions were subject to transfer pursuant to the October 2000 Order in MDL 1358. This Panel began issuing CTOs in February 2004 and has continued through the present day, with eleven CTOs being issued so far. Over seventy cases have been transferred to Judge Scheindlin as presiding judge of MDL 1358 based on the Panel's finding that the MTBE cases involve common questions of fact with actions previously transferred.

Since receiving this new wave of MTBE actions, Judge Scheindlin has promptly undertaken the management of the cases.[2] Judge Scheindlin has held several status conferences, issued rulings denying the various plaintiffs motion for remand, entered several Case Management Orders ("CMO"), considered motions to dismiss based on personal jurisdiction,

---

[2]  MDL 1358 became temporarily inactive in the Southern District of New York after the Court denied the private-well-owner plaintiffs' motion for class certification on July 16, 2002.

appointed a Special Master to manage discovery, and selected four "focus cases" to help guide the resolution of the scores of other pending cases. In short, the MDL 1358 Court has extensive expertise in managing all aspects of MTBE cases like the Objected-To Actions.

## III.   THE PANEL'S DENIAL OF MOTIONS TO VACATE PARTS OF CTO-4 AND CTO-5

The *Quinn* and *Koch* plaintiffs' motions to vacate CTO-11 are not the first time the Panel has adjudicated efforts to prevent the efficient coordination of MTBE cases. In early 2004, plaintiffs including the State of New Hampshire, the People of California, various California counties or municipalities, and two California defendants (Duke Energy and Fuel/Blue Star) all filed motions to vacate portions of CTO-4 and CTO-5 to prevent their cases from being transferred to MDL 1358. Among other assertions, these objectors claimed that all common discovery involving MTBE had been completed either in the earlier phase of MDL 1358 or in various California state actions, including *South Tahoe*.[3] They also argued that most common legal issues related to MTBE had already been decided and thus there was no risk of inconsistent rulings.[4] Finally, they claimed that the issues remaining in MTBE actions involved location-specific rather than common issues.[5] The Panel rejected all of these arguments in a Transfer Order entered on June 16, 2004, and ordered that these various cases be transferred to Judge Scheindlin. (Transfer Order, Ex. B)

---

[3] Br. in Support of State of N.H.'s Motion to Vacate CTO-4 ("N.H. Br.") at 17-21, attached as Ex. C; Cal-Amer.'s Mot. to Vacate CTO-4 ("Cal-Am. Br.") at 17, attached as Ex. D; Duke Energy Mem. in Support of Mot. to Vacate CTO-4 ("Duke Energy Mem.") at 7-10, attached as Ex. E; Br. in Support of Plaintiffs' Motion to Vacate CTO-5 ("Cal. Pls. Br.") at 14-20, attached as Ex. F); Fuel/Blue Star Mem. in Support of Mot. to Vacate CTO-5 ("Fuel/Blue Star. Mem") at 7-10, attached at Ex. G.

[4] N.H. Br. at 21-23; Cal-Am. Br. at 16-18; Cal. Pls. Br. at 20; Fuel/Blue Star Mem. at 10-11; Br. of People of the State of California in Support of Mot. to Vacate CTO-5 ("People Br.") at 18-19, attached as Ex. H.

[5] N.H. Br. at 14-16; Cal-Am. Br. at 13-16; Duke Energy Mem. at 6-7; Cal. Pls.' Br. at 14-20; People Br. at 13-15; Fuel/Blue Start Mem. at 10.

## ARGUMENT

Counting the cases removed to the Southern District of New York, approximately seventy MTBE cases have now been consolidated in MDL 1358 before Judge Scheindlin. There is no reason to exclude the Objected-To Actions from the benefits of coordination, efficiency, and consistency that MDL 1358 is providing. Both of these actions are classic tag-along cases that easily meet the standards for transfer. The arguments offered for the motions to vacate are just the type the Panel routinely rejects.

## I.   THE OBJECTED-TO ACTIONS ARE CLEARLY TAG-ALONG CASES THAT ARE APPROPRIATELY TRANSFERRED TO MDL 1358.

Each of the reasons identified in the Transfer Order establishing MDL 1358 -- common questions of fact, convenience of parties and witnesses, just and efficient conduct of the litigation, avoiding duplicative discovery, avoiding inconsistent pretrial rulings, and judicial economy -- apply to both Objected-To Actions here.

### A.   Both Actions Raise The Same Common Questions Of Fact As The Other Cases Transferred To MDL 1358.

Both common questions of fact found by the Panel in the MTBE Transfer Order are clearly at issue in the two Objected-To Actions. As stated by the Panel, those common questions include "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (MTBE Transfer Order, Ex. A; see also Transfer Order, Ex. B). The *Quinn* complaint alleges that:

> • "At all times mentioned herein defendants ... did negligently and carelessly cause and/or allow the aforementioned chemical contaminants [including MTBE], among others, to permeate the well water, soil and air in and around the Redwood Mobile Home Park ... ." (*Quinn* Compl. ¶ 105; *see also id.* ¶¶ 100-02)

5

- "At the time said gasoline products were … provided, said defendants knew that such products were defective, as such products contained chemical contaminants [including MTBE] that were known to said defendants to pose a serious threat to drinking water sources … and further, that such contaminants would pose serious threats to the physical safety of persons, such as plaintiffs.  Defendants were aware of the dangerous nature of such chemical contaminants [including MTBE] as far back as and before 1986, however, defendants did nothing to either inform the public, including plaintiffs, of this dangerous character of their product, nor to inform the appropriate Government Regulatory Agencies." (*Quinn* Compl. ¶¶ 125-26)

Importantly, the *Quinn* case alleges similar facts and legal theories as *Douglas Shannon v. Taylor Investments, LCC, et al.*, Case No. CV044959 (N.D. Cal) (*Shannon* Complaint, Ex. I), which was transferred without opposition by CTO 10.  Indeed, both *Shannon* and *Quinn* arise out of alleged contamination of a water well in the Redwood Mobile Home Park in Marin County, California, and both contain identical allegations of purported misrepresentations regarding MTBE (*Shannon* Compl. ¶¶ 35-36; *Quinn* Compl. ¶¶ 125-126).

Similarly, the *Koch* plaintiffs acknowledge that "the *Koch* case may appear to involve the same issues of fact as the cases in MDL-1358," (Mem. of Law in Support of Koch Pls.' Mot. to Vacate ("Koch Pls. Mem.") at 6) and an examination of the complaint confirms that the factual issues are the same as those set forth in the MTBE Transfer Order:

- "Defendants' storage of MTBE at the Upper Crossroads Exxon has produced an underground 'plume' (or other leakage) of MTBE that has contaminated nearby properties … ." (*Koch* Compl. ¶ 15)

- "Defendants were also aware of scientific studies describing the danger posed to groundwater by MTBE no later than 1986. … Nonetheless, Defendants intentionally, knowingly, and deliberately withheld from all non-oil-industry parties information … including … health dangers posed to humans by MTBE contamination … .  Indeed, in 1986-87, Defendants took … public positions [regarding MTBE] which Defendants knew to be false (or misleading); this false information being put forth by Defendants exclusively for their own benefit." (*Koch* Compl. ¶¶ 18-19).

In short, these actions raise the exact same common questions of fact as the MTBE actions already transferred to MDL 1358.

**B.      Transferring The Cases Will Serve The Convenience Of The Parties And Witnesses And Prevent Duplicative Discovery.**

The same convenience to parties and witnesses and avoidance of duplicative discovery that supported the creation of MDL 1358 applies to the transfer of the Objected-To Actions.  Both actions involve the same factual allegations, similar claims, and are brought against some of the same defendants as the cases already transferred to MDL 1358.  Thus, these two cases will involve discovery on many of the same factual issues.  That discovery should proceed in a coordinated fashion in the MDL 1358 Court.  Indeed, Judge Scheindlin already is managing significant MTBE discovery.  Having document production and depositions occur in a single centralized proceeding will avoid duplicative discovery and be more convenient for parties and witnesses than producing the same documents and witnesses over and over.  *In re Data General Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227 (J.P.M.L. 1979) (transferring cases under CTO to "avoid duplicative discovery and prevent waste of resources by the parties, their counsel and the courts."); *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) (transferring action brought by State of Maryland pursuant to CTO "to eliminate the potential for duplicative discovery, inconsistent pretrial rulings and waste of judicial resources."); *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (transferring cases covered by CTO "to prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial rulings").

**C.      Giving Effect To The CTOs Is Necessary For The Efficient Conduct Of The Litigation, Avoiding Inconsistent Pretrial Rulings, And Judicial Economy.**

The MDL 1358 Court already has considered motions to remand MTBE cases for lack of subject matter jurisdiction and motions to dismiss for lack of personal jurisdiction over

certain parties and for failure to state a claim.  The undersigned defendants anticipate that some

defendants will file motions for summary judgment and other motions for the Objected-To

Actions that largely duplicate the motions that will be filed for the cases already transferred to

MDL 1358.  Judge Scheindlin's Case Management Orders establish procedure for such motions

as well as for other summary judgment motions.  (see Judge Scheindlin CMOs, collectively

attached as Ex. J)   Filing these motions in multiple courts rather than only before Judge

Scheindlin runs a high risk of producing conflicting rulings.  Additionally, allowing these two

actions to proceed separately from MDL 1358 will likely result in conflicting discovery

schedules and case management orders.

There simply is no need to consume judicial resources by having multiple courts

each familiarize themselves with the issues presented by MTBE litigation and consider and rule

on the same questions.  This is especially true given that Judge Scheindlin is well versed in the

facts and the law of the cases.  *E.g., In re Crown Life Ins. Co., Premium Litig.*, 178 F. Supp. 2d

1365, 1366 (J.P.M.L. 2001) (noting that "judge's familiarity with this [MDL] docket furthers the

expeditious resolution of the litigation taken as a whole."); *In re Sugar Indus. Antitrust Litig.*

*(East Coast)*, 437 F. Supp. 1204, 1208 (J.P.M.L. 1977) (same).  Thus, centralizing the Objected-

To Actions with the other MTBE cases is appropriate.  *See Data General*, 510 F. Supp. at 1227;

*Armored Car*, 462 F. Supp. at 396; *"Fine Paper,"* 453 F. Supp. at 121.

## II.     NONE OF THE ARGUMENTS IN THE MOTIONS TO VACATE MERIT VACATING CTO-11.

Despite the almost identical nature of the allegations in the Objected-To Actions

and the cases now centralized in MDL 1358, the plaintiffs in *Quinn* and *Koch* have moved to

vacate CTO-11.  None of the objections by the parties who have moved to vacate withstands

scrutiny -- in fact, the Panel regularly rejects similar arguments.  First, the objectors claim that

8

local issues prevail over common ones, an argument previously rejected by this Panel when it created MDL 1358 and again when it denied the motions to vacate CTO-4 and CTO-5.  Second, the objectors erroneously argue that there is little risk of inconsistent rulings.  Third, the objectors argue that there is no need for common discovery; this is incorrect and ignores that the MDL Court is in the best position to coordinate the use of past MTBE discovery with additional discovery.  Fourth, both objectors rely on their remand motions as a basis to defeat transfer, despite clear authority to the contrary.

A.     **The Presence Of Common Issues Makes Transfer Appropriate Despite The Objectors' Allegations of Local Issues.**

Both objectors argue that location-specific issues predominate in their cases and render transfer inappropriate, even though the Panel has rejected this argument repeatedly. (*Koch* Pls. Mem. at 8-15; *Quinn* Pls.; Mem. of Points and Authorities ("*Quinn* Pls. Mem.") at 3, 5) Indeed, although the *Koch* plaintiffs cite the MDL 1358 decision denying class certification because of various differences among private well owners (*Koch* Pls. Mem. at 10), this misses the point that the cases were appropriately transferred despite these differences.  Every MTBE case involves questions objectors raise here, such as where the contamination occurred and the extent of damages, and yet over seventy cases have been transferred to MDL 1358.

Thus, the Panel already rejected the objectors' arguments in its October 2000 Order establishing MDL 1358, where the Panel noted that opponents of transfer argued "that the presence of individual questions of fact militate against 1407 transfer" but responded that transfer would allow "pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." (MTBE Transfer Order at 1-2) Likewise, the various objectors to CTO-4 and CTO-5 argued this issue at length in motions to

vacate, which the Panel denied. *Id.* The Panel specifically addressed whether local questions of

fact should prevent transfer:

> Opponents argue that the presence of individual and/or local
> questions of fact as well as differing legal theories in these actions
> should militate against inclusion of these actions in Section 1407
> proceedings. We are unpersuaded by these arguments. Indeed, we
> point out that the inclusion of these actions in Section 1407
> proceedings has the salutary effect of placing all the related actions
> before a single judge who can formulate a pretrial program that: 1)
> prevents repetition of previously considered matters; 2) allows
> pretrial proceedings with respect to any non-common issues to
> proceed concurrently with pretrial proceedings on common issues,
> *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp.
> 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings
> will be conducted in a manner leading to the just and expeditious
> resolution of all actions to the overall benefit of the parties.

(MTBE Transfer Order at 2).

Both of these decisions were grounded in well-established precedent. *See In re*

*Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 654-55 (J.P.M.L. 1981)(rejecting

argument that transfer was inappropriate because some actions involved "unique or localized

factual issues."); *In re Dep't of Energy Stripper Well Exemption Litig.*, 472 F. Supp. 1282, 1285-

86 (J.P.M.L. 1979) (same); *In re 1980 Decennial Census Adjustment Litig.*, 506 F.Supp. 648,

651 (J.P.M.L. 1981); *In re Beef Indus. Antitrust Litig.*, No. 248, 1977 WL 1559, at *2 (J.P.M.L.

June 7, 1977). Any allegedly unique issues can be handled by Judge Scheindlin or dealt with

after remand to the transferor court.

This overriding principle, that cases involving common issues should be

transferred even if some localized issues are involved, disposes of the objectors' sub-argument as

well. That the cases will involve some localized discovery (as indeed every MTBE case will) is

not a reason for denying transfer. Judge Scheindlin can structure the common and local

discovery to maximize efficiency among the dozens of MTBE actions. *1980 Decennial Census*,

506 F. Supp. at 651 ("the transferee judge . . . has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular geographic area or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation"); *Beef Indus.*, 1977 WL 1559, at *2 (rejecting argument by CTO opponents that their actions were in a "geographically concentrated market area in and around Iowa to which discovery will be restricted, whereas the [previously transferred] actions involve a national market and a nationwide discovery program" and ordering transfer). Likewise, depositions and discovery of California or Maryland witnesses can occur locally instead of in New York. *See In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506-07 (J.P.M.L. 1976); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1228 (J.P.M.L. 1977). Any inconvenience and expense to the objectors is a parochial concern at best and is outweighed by the overall cost savings *all* parties will achieve by including their matters in the coordinated MDL 1358 proceeding. *See In re Sugar Indus. Antitrust Litig.*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979); *In re Viatron Computer Systems*, 462 F. Supp. 382, 389 (J.P.M.L. 1978).

Plaintiffs also claim that their legal theories are different from those of other MTBE cases because they are focusing on local issues. To begin with, the *Koch* plaintiffs allege the theories of negligence, nuisance, and trespass, which are present in virtually every MTBE action transferred to MDL 1358, and likewise the *Quinn* plaintiffs' allegations of negligence and product liability are the same as in previously coordinated actions. (*Koch* Compl. ¶¶ 32-49; *Quinn* Compl. ¶¶ 103-07, ¶¶ 123-29) Furthermore, the presence of different or additional legal theories does not support having factually similar cases proceed in different forums. *See In re Bridgestone/Firestone, Inc.*, Case No. 1373, 2000 WL 33416573, at *2 (J.P.M.L. Oct. 24, 2000)

("Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core.").[6]  The *Koch* plaintiffs make a further argument that their action involves unresolved questions of Maryland law (*Koch* Pls. Mem at 14-15),[7] similar to the California Plaintiffs who objected to CTO-5 arguing that California had a special authority to regulate gasoline different from other states.  (Cal Pls. Br. at 18-19) "[I]t is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 407 F. Supp. 244, 246-47 (J.P.M.L. 1976); *see also In re Data General Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) (same).  The MDL 1358 Court currently has cases brought under the laws of 17 different states, and there is no reason to believe that Judge Scheindlin cannot apply the law of Maryland as well.

Finally, the *Koch* plaintiffs seek support in the Panel's order vacating the CTO in *Theodore Holten, et al. v. Chevron U.S.A., Inc., et al.*, Case No. 3:00-4703 (D.N.J.) ("*Holten* CTO Order") (Ex. K) in the earlier phase of MDL 1358, but omit or misinterpret key portions of that order.  First, the Panel explained that the cases that had been consolidated in MDL 1358

---

[6]  *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F .Supp. 2d 1377, 1379 (J.P.M.L. 2001) (transferring factually similar actions even though cases were based on different "legal theories of recovery" and objectors argued that their particular cases "involve unique matters not present in other actions"); *In re Continental Grain Co., Inc.*, 482 F. Supp. 330, 332 (J.P.M.L. 1979) (Cases appropriately transferred because the "presence of differing legal theories in some of the actions does not negate the existence of common questions of fact."); *In re Holiday Magic Sec. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974) ("It is not unusual for plaintiffs in multidistrict litigation to base their claims for relief on different legal theories. But it is the facts underlying those theories which we must look to in making our determination under Section 1407.").

[7]  The *Koch* plaintiffs' reliance on *In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405 (J.P.M.L. 1976) is misplaced for two reasons.  First, the primary rationale of the JPML in not granting transfer was that the litigation was "dominated by appellate activity" and "the disposition of those appeals could have a substantial if not dispositive effect on all the actions" except one.  *Id.* at 1407.  No appeals on the law applying to liability for MTBE are at issue here.  Second, in *U.S. Navy* the Panel found that the primary questions were legal instead of factual in nature; so, there was a lack of common factual questions.  *Id.*  Nothing in *U.S. Navy* suggests that, where common factual questions exist, the simple fact that different states' laws apply should defeat transfer.

were class actions on behalf of those whose wells were not contaminated, while *Holten* was an individual action where contamination had already occurred. In contrast to *Holten*, *Koch* is a putative class action like the cases originally consolidated by the MTBE Transfer Order. Moreover, many of the current plaintiffs in MDL 1358 cases allege that their water has already been contaminated with MTBE, a common factual allegation shared with *Koch*. Finally, the Panel in *Holten* relied on "all *Holten* parties along with several MDL-1358 oil company defendants" opposing *Holten's* transfer. (*Holten* CTO Order at 1) Of course, in *Koch* both defendants consented to transfer by not moving to vacate the CTO, and indeed not a single defendant or plaintiff in any other MDL 1358 case has opposed transferring *Koch*.

**B.      Serious Risk of Inconsistent Pre-Trial Rulings Exist Absent Transfer Of The Objected-To Cases.**

The Objected-To Actions raise the same legal questions as those already decided and yet to be decided in MDL 1358, creating the threat of inconsistent rulings. Both actions seek to impose liability for MTBE under state law arguing that the defendants put MTBE into gasoline despite the alleged health risks. These claims are virtually identical to the actions already pending in MDL 1358. In fact, the *Quinn* action contains the same MTBE products liability claim as litigation already transferred to Judge Scheindlin. (*Quinn* Compl. ¶¶ 123-129; *Shannon* Compl. ¶¶ 33-37). Thus, whatever Court hears these actions will have to decide issues such as whether plaintiffs' state law claims are pre-empted and what health risks, if any, there are from MTBE -- the same questions being considered by the MDL 1358 Court. Similarly, as an action purportedly involving upwards of eighty plaintiffs, *Quinn* raises questions of individual causation and lack of commonality similar to those that were previously considered in earlier phases of MDL 1358. Judge Scheindlin is already well-versed in MTBE litigation and

consolidating these cases before the MDL 1358 Court will promote consistency rather than forcing defendants to attempt to comply with a hodgepodge of different rulings.

### C.     The MDL 1358 Court Can Coordinate The Use Of Prior Discovery As Well As Remaining Discovery On Both Common And Individual Issues.

The objectors' argument that all common discovery in the Objected-To Actions is complete is both factually wrong and legally insufficient to deny transfer. (*Koch* Pls. Mem. at 12; *Quinn* Pls. Mem. at 4). The *Koch* plaintiffs point to the discovery in MDL 1358 itself as well as a California state actions, *South Tahoe*, and proceeds to make the exact same arguments as the unsuccessful objectors to CTO-4 and CTO-5. The earlier discovery in MDL 1358 focused on class certification and did not include exhaustive merits discovery. As for *South Tahoe*, discovery in that case closed more than three years ago. Since that time, much additional information about how MTBE biodegrades, the low concentrations and lack of danger posed by nearly all MTBE detections, and the existence of effective remediation techniques has all come to light. (Declaration of Matt Heartney ¶ 2, Ex. L). Additionally, common discovery can be expected to occur on these issues as well as others.

The *Quinn* plaintiffs make the additional argument that "pretrial activities are nearly completed" and discovery "is well advanced" (*Quinn* Pls. Mem. at 4). In fact, there have been no pretrial activities in *Quinn*, nor has discovery in *Quinn* even begun (Declaration of Matthew Heartney ¶ 3). Instead, the *Quinn* plaintiffs appear to be arguing that they can rely on discovery in a recently settled case, *DeFrancesco*. Of course, *Quinn* has not been settled and may proceed to a more advanced stage than *DeFrancesco*, necessitating additional discovery.

The need to coordinate the use of prior discovery from MTBE cases, remaining common discovery, and discovery on issues unique to each case only confirms that these MTBE

cases should be transferred to the MDL 1358 Court.  As this Panel has explained previously in

rejecting arguments very similar to those made by the objectors' here:

> [T]ransfer under Section 1407 will have the salutary effect of placing fourteen actions presently pending in eight districts before a single judge who can formulate a pretrial program that: 1) enables appropriate discovery already completed in earlier actions to be made applicable to actions that are later filed; 2) if appropriate, allows discovery with respect to any unique issues to proceed concurrently with discovery on common issues . . .

*In re Dow Chem. Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986).[8]

The objectors' suggestion that the parties may rely on existing document depositories and

discovery in other cases hardly provides a complete solution to discovery issues likely to be

raised, and would be far less efficient that the more complete supervision provided by an MDL

Court.[9]  *See In re Mosaid Tech., Inc. Patent Litig.*, 283 F. Supp.2d 1359, 1360 (J.P.M.L. 2003)

(rejecting objectors' proposed alternatives to Section 1407 transfer because MDL transfer

provides more comprehensive mechanism for addressing discovery issues).[10]

---

[8]  *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transferring cases even though "most of the relevant discovery" on common issues had already been conducted and could be made available to the parties because "transfer under Section 1407 has the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions."); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issue unique to a particular action or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation).

[9]  *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377 (J.P.M.L. 2002), cited by the *Koch* plaintiffs, is easily distinguishable.  Litigation in those cases had been going on for thirteen years with motions to dismiss, certify classes, and for summary judgment already decided.  Moreover, "a nationwide class action settlement agreement has been reached with each of the five telecommunications companies named as defendants in the actions before the Panel.  That settlement, if ultimately approved, would finally resolve the vast majority of the litigation sought to be transferred." *Id.* at 1378.  Given that the litigation was about to end, the Panel thought that any remaining discovery did not need to be resolved by an MDL Court. *Id.*

[10]  *See also In re IBP Confidential Bus. Documents. Litig.*, 491 F. Supp. 1359, 1361 (J.P.M.L. 1980) (suggestion by opponents of transfer that parties informally cooperate regarding discovery rejected as inadequate); *In re Oil Spill by The "Amoco Cadiz" Off the Coast of France on March 16, 1978*, 471 F. Supp. 473, 477 (J.P.M.L. 1979) (rejecting argument by nation of France that making prior production, which amounts to hundreds of thousands of documents, available to all parties was an adequate substitute for transfer under Section 1407); *In re Bristol Bay, Alaska Salmon*

In fact, the objectors' argument here, that discovery unique to each case predominates over common discovery, is simply another version of the argument rejected by the Panel in creating MDL 1358. In creating MDL 1358, the Panel overruled objections that site-specific issues dominated common ones, answering that transfer would allow "pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." (MTBE Transfer Order at 1-2) The MDL 1358 Court has significant experience in managing discovery in MTBE cases. That Court is most capable of determining what discovery remains to be done as well as creating a program for coordinating discovery among all the MTBE actions currently pending in federal court.

### D.   Pending Remand Motions Are Not a Basis for Denying Transfer.

Although both the *Quinn* and *Koch* plaintiffs cite their remand motions in their briefs, the Panel routinely holds that pendency of a remand motion is not grounds for denying transfer. *In re Ivy,* 901 F.2d 7, 9 (2d Cir. 1990) ("the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the transferee court") (citation omitted); *see also In re National Century Fin. Enters., Inc.*, 293 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 227 F. Supp. 2d 1389, 1391 (J.P.M.L. 2002); *In re Crown Life Ins. Co. Premium Litig.*, 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001). If the plaintiffs believe they have different legal theories for remand, they can present those theories to the MDL Court. As explained before, however, the presence of different or additional legal theories (in this case relating to remand) does not support having

---

*Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (rejecting objectors' proposal that parties voluntarily cooperate regarding discovery; explaining that the Panel "prefers to place the actions under the control of a single judge in order to ensure that the objectives of Section 1407 are met.").

factually similar cases proceed in different forums. *See, e.g., PPA*, 173 F. Supp. 2d at 1379; *Bridgestone/Firestone, Inc.*, 2000 WL 33416573, at *2; *Continental Grain*, 482 F. Supp. at 332; *Holiday Magic*, 375 F. Supp. at 1402. In any case, defendants likely will oppose these motions relying on Judge Scheindlin's previous remand decisions, and thus the MDL 1358 Court is in the best position to decide whether to remand these cases.

## CONCLUSION

Well over seventy MTBE cases already have been transferred to MDL 1358 for pre-trial coordination. Judge Scheindlin, presiding over MDL 1358, has welcomed these cases and can be expected to bring experience and expertise to bear in guiding the MTBE actions forward. In light of the substantial economies to be achieved, the justice and efficiency to be achieved, and the inconsistencies to be avoided, the objectors should not be permitted to splinter off the Objected-To Actions to the detriment of the other participants. This is especially true where the only arguments the objectors can offer have been rejected time and again by this Panel. Therefore, for the reasons stated above, the undersigned defendants respectfully request that the Panel deny all pending motions to vacate any part of CTO-11 and order the transfer of *Koch* and *Quinn* to MDL 1358 for coordinated and consolidated pretrial proceedings.

April 12, 2005

Respectfully submitted,

_J. Andrew Langan_   /BJW

J. Andrew Langan
Mark S. Lillie
Wendy L. Bloom
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
312-861-2000
312-861-2200 (Facsimile)

Matthew T. Heartney
Lawrence Allen Cox
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
(213) 243-4199 (Facsimile)

Attorneys for Defendants Atlantic Richfield Company
and BP Products North America Inc.

Andrew Gendron
Michael J. De Vinne
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201
(410) 244-7439
(410) 244-7742 (Facsimile)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Attorneys for Defendant Exxon Mobil Corporation

18

Peter C. Condron
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson Street, N.W.
Suite 500
Washington, D.C. 20007
(202) 204-3707
(202) 204-1001 (Facsimile)

Attorneys for Shell Oil Company

Elizabeth M. Weaver
HOWREY SIMON ARNOLD & WHITE, LLP
550 S. Hope Street
Los Angeles, CA  90071
213-892-1800

Attorneys for Defendant Union Oil of California

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2005

FILED
CLERK'S OFFICE

---------------------------------------------------------X    **MDL No. 1358**

**In Re:**                                                **This Document Relates to:**

**Methyl Tertiary Butyl Ether**
**("MTBE") Products Liability Litigation**                *James Quinn, et al. v. Shell Oil, Inc.,*
                                                          *et al.,*
                                                          Case No. 3:04-5180 (N.D. Cal.)

                                                          *Hope Koch, et al. v. John R. Hicks, et*
                                                          *al.,* Case No. 1:04-3345 (D. Md.)

                                                          **PROOF OF SERVICE**

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2005 APR 12  P 3: 53

RECEIVED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

STATE OF ILLINOIS   )
          ) ss
COUNTY OF COOK   )

MDL Docket No. 1358

*James Quinn, et al. v. Shell Oil, Inc., et al.,*
Case No. 3:04-5180 (N.D. Cal.)

*Hope Koch, et al. v. John R. Hicks, et al.,*
 Case No. 1:04-3345 (D. Md.)

   I am employed in the County of Cook County, State of Illinois.  I am over the age of 18 and not a party to this action.  My business address is 200 East Randolph Drive, Suite 5400, Chicago, IL  60601.

   On April 12, 2005, I served the following documents described as:

1.  Certain Defendants' Consolidated Response Opposing All Motions to Vacate Conditional Transfer Order (CTO-11); and

2.  Appendix of Exhibits to Certain Defendants' Consolidated Response Opposing All Motions to Vacate Conditional Transfer Order (CTO-11).

   ☒  By placing true copies thereof in sealed envelope(s) addressed as follows:

### SEE ATTACHED SERVICE LIST

   ☒  **[Federal Express]**  By placing the documents listed above in a sealed overnight courier enveloped as set forth herein and routing the envelope for pick up within Kirkland & Ellis by Federal Express to the plaintiffs' attorneys:  Stanley N. Alpert, Lon C. Engel, Celeste A. Evangelisti, A. Catherine Lagarde, and Marshall N. Perkins:

   ☒  **[Regular Mail]**  I caused such envelope to be deposited in the mail at Chicago, Illinois, with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion to party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit, as follows on the attached service list. Executed on April 12, 2005 at Chicago, Illinois.

   ☒  **[Federal]**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

           *Sabrina West*        /BJW
           Sabrina West

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 13 2005

FILED
CLERK'S OFFICE

**INVOLVED COUNSEL LIST (CTO-11)**
**DOCKET NO. 1358**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILTIY**
**LITIGATION**

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane, 17th Floor
New York, NY 10038

Ronit C. Barrett
Eimer, Stahl, Klevorn & Solberg, LLP
224 S. Michigan Avenue, Suite 1100
Chicago, IL 60604

M. Coy Connelly
Bracewell & Patterson
South Tower Pennzoil Place, Suite 2900
711 Louisiana Street
Houston, TX 77002-2781

Lawrence Allen Cox
Arnold & Porter, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-2513

Colleen P. Doyle
Bingham McCutchen, LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106

Lon C. Engel
Engel & Engel, PA
11 E. Lexington Street, Suite 200
Baltimore, MD 21202

Susan Mae Euteneuer
Hodes, Ulman, Pessin & Katz
901 Dulaney Valley Road, Suite 400
Baltimore, MD 21204

Celeste A. Evangelisti
Barron & Budd
3102 Oaklawn Avenue, Suite 1100
Dallas, TX 75219-4281

Andrew Gendron
Venable, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

H. Lee Godfrey
Susman Godfrey, LLP
1000 Louisiana, Suite 5100
Houston, TX 77002-5096

Alan J. Hoffman
Blank Rome, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998

Paul W. Ishak
Law Office Of Paul Ishak
30 Office Street
Bel Air, MD 21014

Michele D. Johnson
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626

A. Catherine Lagarde
Law Offices Of Charles A. Bonner
180 Harbor Drive, Suite 227
Sausalito, CA 94965

Michael E. Leaf
Hodes, Ulman, Pessin & Katz, P.A.
112 S. Main Street, Suite 102
Bel Air, MD 21014

Brian M. Ledger
Gordon & Rees, LLP
101 West Broadway, Suite 1600
San Diego, CA 92101-3541

Christopher J. McNevin
Pillsbury Winthrop, LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-5406

Jeffrey John Parker
Sheppard, Mullin, Richter
& Hampton, LLP
333 South Hope Street, Suite 4800
Los Angeles, CA 90071-1448

Marshall N. Perkins
Law Offices of Charles J. Piven, P.A.
The World Trade Center
Suite 2525
401 East Pratt Street
Baltimore, MD 21202

Todd Eric Robins
Sher & Leff
450 Mission St., Suite 500
San Francisco, CA 94105

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020

Juliana J. Salfiti
Elliott & Elliott
225 W. Santa Clara Street
Suite 950
San Jose, CA 95113

Marc M. Seltzer
Susman Godfrey, LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067-6029

Carl B. Shapiro
Shapiro & Shapiro
404 Anselmo Avenue
San Anselmo, CA 94960

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071

Erika K. Woods
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angelos, CA 90017-2513

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

## PANEL SERVICE LIST (Excerpted from CTO-11)
### DOCKET NO. 1358
### IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Hope Koch, et al. v. John R. Hicks, et al.*, D. Maryland, C.A. No. 1:04-3345

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY 10038

Lon C. Engel
Engel & Engel, PA
11 E. Lexington Street
Suite 200
Baltimore, MD 21202

Susan Mae Buteneuer
Hodes, Ulman, Pessin & Katz
901 Dulaney Valley Road
Suite 400
Baltimore, MD 21204

Andrew Gendron
Venable, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

Paul W. Ishak
Law Office Of Paul Ishak
30 Office Street
Bel Air, MD 21014

Michael B. Leaf
Hodes, Ulman, Pessin & Katz, P.A.
112 S. Main Street
Suite 102
Bel Air, MD 21014

Marshall N. Perkins
Law Offices of Charles J. Piven, P.A.
The World Trade Center
Suite 2525
401 East Pratt Street
Baltimore, MD 21202

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020

**PANEL SERVICE LIST (Excerpted from CTO-11)**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY**
**LITIGATION**
**DOCKET NO. 1358**

*James Quinn, et al. v. Shell Oil, Inc., et al.,* N.D. California, C.A. No. 3:04-5180

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY 10038

John W. Elliott
Elliott & Elliott
225 W. Santa Clara Street
Suite 950
San Jose, CA 95113

A. Catherine Lagarde
Law Offices Of Charles A. Bonner
180 Harbor Drive
Suite 227
Sausalito, CA 94965

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockerfeller Plaza
New York, NY 10020

Carl B. Shapiro
Shapiro & Shapiro
404 Anselmo Avenue
San Anselmo, CA 94960

Erika K. Woods
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-2513

Michael T. Zarro
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** APR 1 3 2005

FILED
CLERK'S OFFICE

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| | ) | |
| **METHYL-TERTIARY BUTYL ETHER** | ) | **MDL DOCKET NO. 1358** |
| **PRODUCTS LIABILITY LITIGATION** | ) | |
| | ) | |
| | ) | |
| | ) | |

**APPENDIX OF EXHIBITS TO**
**CERTAIN DEFENDANTS' CONSOLIDATED**
**RESPONSE OPPOSING ALL MOTIONS TO VACATE**
**CONDITIONAL TRANSFER ORDER (CTO-11)**

| TAB | DESCRIPTION |
|---|---|
| A | 10/10/2000 MTBE Transfer Order |
| B | 06/16/2004 MTBE Transfer Order |
| C | 03/04/2004 Plaintiff State of New Hampshire's Motion to Vacate Conditional Transfer Order (CTO-4) |
| D | 03/04/2004 Plaintiff California-American Water Company's Motion to Vacate Conditional Transfer Order (CTO-4) |
| E | 03/08/2004 Memorandum In Support of Motion to Vacate Conditional Transfer Order (CTO-4) ("Duke Energy") |
| F | 03/24/2004 Plaintiff' Joint Motion to Vacate Conditional Transfer Order (CTO-5) |
| G | 03/24/2004 Notice of Motion and Motion of Defendants Fuel Star, Inc. and Blue Star Petroleum, Inc. To Vacate Conditional Transfer Order No. 5 |
| H | 03/22/2004 Memorandum of Points and Authorities in Support of Motion to Vacate Conditional Transfer Order (CTO-5) |
| I | *Douglas Shannon v. Taylor Investments, LLC, et al.* Complaint |
| J | Case Management Orders |
| K | 04/18/2001 Order Vacating Conditional Transfer Order ("Holten CTO Order") |
| L | Declaration of Matthew T. Heartney |

A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 0 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-370
David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-371
Donna Berisha, et al. v. Amerada Hess Corp., et al., S.D. New York, C.A. No. 1:00-1898

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES,* MOREY L. SEAR,* BRUCE M. SELYA* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

## TRANSFER ORDER

This litigation presently consists of three actions pending in the following federal districts: two actions in the Southern District of Illinois and one action in the Southern District of New York.[1] Before the Panel is a motion by five oil company defendants seeking centralization of these actions, pursuant to 28 U.S.C. §1407, in the Southern District of Illinois for coordinated or consolidated pretrial proceedings. Five additional defendants agree that centralization is appropriate, although two of these defendants prefer centralization in the Southern District of New York. The Illinois plaintiffs support centralization in the Illinois court. The New York plaintiffs along with eight defendants oppose centralization; if the Panel deems centralization appropriate, the New York plaintiffs and at least one opposing defendant favor centralization in the New York court.[2]

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact concerning i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public, and ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination. Centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Section 1407 proceedings are desirable in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

Opponents of transfer argue that the presence of individual questions of fact militate against 1407 transfer. We are unpersuaded by this argument. Indeed, we point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who

---

* Judges Hodges, Sear and Selya took no part in the decision of this matter.

[1] The Panel has been notified that two potentially related actions have been recently filed in the Middle and Southern Districts of Florida. These actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 192 F.R.D. 459, 468-470 (2000).

[2] In an interested party response, plaintiffs in a potentially related action – *Buddy Lynn, et al. v. Amoco Oil Company, et al.,* M.D. Alabama, C.A. No. 96-940 – suggest centralization of MDL-1358 in the Middle District of Alabama.

- 2 -

can formulate a pretrial program that:  1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.  It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or an action can be remanded to their transferor district for trial in advance of completion of the other actions in the transferee district.  But we are unwilling, on the basis of the record before us, to make such a determination at this time.  Should the transferee judge deem remand of any claims or an action appropriate, procedures are available whereby this may be accomplished with a minimum of delay.  *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-472 (2000).

We are persuaded that centralization of this litigation in the Southern District of New York is appropriate.  We note that the New York action is proceeding apace before Judge Shira Ann Scheindlin and we are confident in her ability to conduct pretrial proceedings in this litigation in an expeditious manner.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned actions pending in the Southern District of Illinois be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

John F. Nangle
Chairman

B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 16 2004

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Orange County Water District v. Unocal Corp., et al.*, C.D. California, C.A. No. 8:03-1742
*City of Riverside v. Atlantic Richfield Co., et al.*, C.D. California, C.A. No. 8:04-53
*Quincy Community Services District v. Atlantic Richfield Co., et al.*, E.D. California,
   C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.*, E.D. California, C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et al.*, E.D. California,
   C.A. No. 2:03-2653
*City of Fresno v. Chevron U.S.A., Inc., et al.*, N.D. California, C.A. No. 3:03-5378
*California-American Water Co. v. Atlantic Richfield Co., et al.*, N.D. California, C.A. No. 3:03-5379
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, S.D. California, C.A. No. 3:03-2408
*State of New Hampshire v. Amerada Hess Corp., et al.*, D. New Hampshire, C.A. No. 1:03-486
   (Also Pending as D. Rhode Island, C.A. No. 1:03-529)

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,[*] D. LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR., AND KATHRYN H. VRATIL, JUDGES OF THE PANEL

## TRANSFER ORDER

Presently before the Panel are motions by plaintiffs[1] and some defendants[2] in these nine actions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's orders conditionally transferring the actions to the Southern District of New York for inclusion in the Section

---

[*] Judges Selya and Motz did not participate in the decision of this matter.

[1] Orange County Water District; City of Riverside; Quincy Community Services District; City of Roseville; *People of the State of California* plaintiffs – the State of California and eleven municipalities, local water districts or water companies (Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-America Water Company, and City of Sacramento); California-American Water Company; the eight individuals who are plaintiffs in the Southern California *Silver* action; and State of New Hampshire.

[2] *City of Fresno*: Duke Energy Merchants, LLC; Duke Energy Trading and Marketing, LLC; Duke Energy Merchants California, Inc.; and Northridge Petroleum Marketing U.S., Inc. *Quincy*: Fuel Star, Inc., and Blue Star Petroleum, Inc.

- 2 -

1407 proceedings occurring there in this docket. A defendant[3] in two California actions joins in the motion to vacate the conditional transfer order in these actions. All other responding defendants[4] favor inclusion of all nine actions in MDL-1358 proceedings.

On the basis of the papers filed and hearing session held, the Panel finds that these nine actions share questions of fact with actions in this litigation previously transferred to the Southern District of New York arising out of allegations that defendants knew about and misrepresented the nature of MTBE resulting in drinking water contamination. Transfer of these actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. We note that any pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001). The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations relating to MTBE contamination. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000).

Opponents argue that the presence of individual and/or local questions of fact as well as differing legal theories in these actions should militate against inclusion of these actions in Section 1407 proceedings. We are unpersuaded by these arguments. Indeed, we point out that inclusion of these actions in Section 1407 proceedings has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

---

[3] 7-Eleven, Inc.

[4] Atlantic Richfield Company and BP Products North America Inc.; ExxonMobil Corporation, ExxonMobil Chemical Company Inc., ExxonMobil Corporation, ExxonMobil Oil Corporation, ExxonMobil Pipe Line Company, ExxonMobil Refining and Supply Company, and Mobil Corporation; Chevron U.S.A., Inc., Chevron Chemical Company, Chevron Texaco Corporation, Equilon Services LLC, Equilon Enterprises LLC, Equiva Enterprises LLC, Gulf Oil Corp., Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Oil Products US, Shell Trading (US) Company, Shell Petroleum, Inc., Star Enterprises, Texaco Corporation, Texaco Inc., Texaco Refining and Marketing Inc., Texaco Refining and Marketing (East) Inc., and TRMI Holding; Valero Energy Corporation, Valero Refining Company California, Valero Marketing and Supply Company, Valero Refining and Marketing Company, Valero Refining Company Louisiana, Valero Refining Company New Jersey, Valero Refining Company Texas, and Valero-Colorado Refining Company; Crown Central Petroleum Corp.; Tesoro Refining & Marketing Co., Tesoro Petroleum Corporation, and Tesoro West Coast Crown Central Petroleum Corporation; Westport Petroleum, Inc.; ConocoPhillips Company; CITGO Petroleum Corporation; Sunoco Inc. and Sunoco Inc. (R&M); Lyondell Chemical Company f/k/a ARCO Chemical Company; Marathon Ashland Petroleum LLC and Marathon Oil Corporation; and El Paso Corporation and El Paso CGP Company.

- 3 -

*See In re StarLink Corn Products Liability Litigation*, 157 F.Supp.2d 1378 (J.P.M.L. 2001). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L.,199 F.R.D. at 436-38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these nine actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

C

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MDL Docket No. 1358

This Document Relates to:
*State of New Hampshire v. Amerada Hess Corp. et al.*, D.N.H. Case No. 03-CV-486, D.R.I. Case No. 03-0529L

**PLAINTIFF STATE OF NEW HAMPSHIRE'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4); BRIEF IN SUPPORT THEREOF**

### PLAINTIFF STATE OF NEW HAMPSHIRE'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

1.   The State of New Hampshire ("State") is plaintiff in the action *State of New Hampshire v. Amerada Hess Corp., et al.*, Case No. 03-486 (D.N.H.), 03-0529 (D.R.I.) (the "*State Action*" or "Action"), which is identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-4, issued by the Judicial Panel on Multidistrict Litigation ("Panel") on February 6, 2004.

2.   The State hereby moves the Panel to vacate the above-referenced conditional transfer order as it applies to the *State* Action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

3.   Specifically, resolution of the State's pending Remand Motion by the Transferee Court will result in no significant savings of judicial resources, because the jurisdictional issues

1

MAR 0 9 2004

J.A.L.

raised therein differ materially from those raised by the plaintiffs currently before the Transferee Court. Second, even if the *State* Action is not remanded to state court, the likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a) unique questions of law and localized questions of fact overwhelmingly predominate in the Action; (b) discovery regarding the few questions of fact shared with other case involving methyl tertiary butyl ether ("MTBE") already has largely been completed in the prior proceedings and can be made available to all parties; and (c) the Transferee Court, as well as numerous other federal and state courts, already have issued remarkably consistent rulings on most, if not all, common legal issues.

    4.    This Motion is based on the attached Brief in support thereof, along with the Declaration of Victor M. Sher, the Statement of Reasons Why Oral Argument Should Be Heard, the files, pleadings, and documents on file with the Panel, and upon such further documentary and oral evidence as may be presented in the hearing on this matter.

    WHEREFORE, the State respectfully requests that the Panel:

    A.    Vacate the Conditional Transfer Order as it applies to the *State* Action;

    B.    Schedule oral argument on this Motion; and

    C.    Grant such other relief deemed just and appropriate.

    Respectfully submitted,

THE STATE OF NEW HAMPSHIRE
PETER W. HEED, ATTORNEY GENERAL

Dated: March 4, 2004

Maureen D. Smith, NH Bar # 4857
Senior Assistant Attorney General
Environmental Protection Bureau
33 Capitol Street
Concord, NH  03301-6397

2

Tel: (603) 271-3679
Fax: (603) 223-6270


SHER LEFF, LLP
Victor M. Sher (Admitted *pro hac vice*)
Todd E. Robins (Admitted *pro hac vice*)
450 Mission Street, Suite 500
San Francisco, CA  94105
Tel: (415) 348-8300
Fax: (415) 348-8333

LAW OFFICES OF MATTHEW F. PAWA, P.C.
Matthew F. Pawa (Admitted *pro hac vice*)
1280 Centre Street, Suite 230
Newton Center, MA  02459
Tel: (617) 641-9550
Fax: (617) 641-9551

ORR & RENO, P.A.
Martha Van Oot, NH Bar # 963
One Eagle Square, P.O. Box 3550
Concord, NH  03302
Tel: (603) 224-2381
Fax: (603) 224-2318

Counsel for Plaintiff State of New
Hampshire (*State of New Hampshire v.
Amerada Hess Corp., et al.*, Case No. 03-
486 (D.N.H.), 03-0529 (D.R.I.))

## BRIEF IN SUPPORT OF STATE OF NEW HAMPSHIRE'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

### I.      INTRODUCTION

The Panel should vacate the Conditional Transfer Order as it applies to the *State* Action because the State's case is fundamentally different from every other MTBE-related lawsuit. Unlike any other MTBE case before the Panel, the *State* Action is not brought by a single drinking water purveyor or well owner, but by a sovereign State, with its unique common law, statutory and constitutionally-based interests in protecting all waters and all citizens of the State. The *State* Action, therefore is uniquely based upon the State's ability to seek statewide relief, a factor that calls for separate adjudication. *See In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5, 9 (D.D.C. 1999) (denying 28 U.S.C. § 1407 transfer of governmental action "based on sections of United States Code that permit only the United States to seek relief," because case presented "entirely different, perhaps crucial, legal issues").

In addition to the broader set of interests involved, there is a substantial difference in scope between the *State* Action and other MTBE-related cases.  The *State* Action involves the damage caused by MTBE to *all* State waters, which presents a host of issues related to breadth of liability and remedies that are exclusive to this case.  *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (JPML 1979) (transfer denied where "tremendous, overriding difference in scope" between cases resulted in "critical factual and legal disparities").  As the potential breadth of the *State* Action dwarfs the other MTBE cases, consolidation poses the risk of overwhelming the transferee court.  *In re Motion Picture Licensing Antitrust Litig.*, 479 F. Supp. 581, 592 (JPML 1979) (Panel "vitally concerned" that MDL proceedings "remain manageable;" inclusion of action with "unique legal and factual nuances would serve only to add further layers of complexity . . . without providing any overriding benefit").

4

The State's pending motion to remand vividly illustrates the critical differences between the *State* Action and other MTBE cases removed to federal court. The State's remand motion raises unique – and dispositive – jurisdictional issues related to state sovereignty and governmental police power not present in the remand motions currently before the presiding judge in MDL No. 1358 (the "Transferee Court"). Accordingly, no efficiencies will be gained by transferring the State's Action to MDL No. 1358 (or any other MDL) for consolidated treatment of remand motions.

Moreover, even if the Action were somehow to remain in federal court, there are few, if any, common questions of fact between the *State* Action and other MTBE cases on which discovery is not already largely completed. A great deal of the generally applicable liability discovery (including discovery on what the oil industry knew, or reasonably should have known, regarding MTBE's risks to the environment, and when) already has been completed in connection with the prior incarnation of MDL No. 1358 and other MTBE cases that were not consolidated, and this discovery is or can be made available to the parties in this Action. The discovery that remains – the bulk of the case —revolves primarily around New Hampshire-specific issues, such as the particulars of New Hampshire's gasoline market and infrastructure, the extent of MTBE contamination in State waters, who is responsible for the contamination in those waters, and what it will cost to remediate and treat.

Furthermore, potentially dispositive motions involving the State, including federal preemption, have been litigated in MDL No. 1358 and other cases with remarkably consistent outcomes. The Transferee Court published a lengthy opinion that provides useful guidance to any court applying common law tort doctrines in the MTBE context. *See In Re MTBE Products Liability Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001). As a result, many of the threshold legal

questions that would normally justify MDL treatment already have been resolved and are extremely unlikely either to produce inconsistent outcomes or to require significant additional judicial energy.

In sum, MTBE litigation is sufficiently mature at this point that MDL handling is unwarranted. There is no "gathering storm" that will produce a blizzard of motions and conflicting opinions, notwithstanding the recent flurry of removal notices filed by defendants. Transfer of the *State* Action to the Southern District of New York, therefore, will not create efficiencies. Instead it will create delay and inconvenience by forcing the State to litigate this important lawsuit in a distant forum that has no particular expertise on the localized issues that overwhelmingly predominate in the case.

## II.   BACKGROUND

### A.   The State Action.

MTBE is a chemical used by some refiners in some gasoline products in some parts of the country. Writ of Summons and Declaration ("Complaint"), ¶ 26.[1] Contamination of New Hampshire's ground and surface waters with MTBE is widespread and involves thousands of drinking water sources. *Id.*, ¶¶ 68-71. Because defendants' choice to use MTBE in gasoline has created an unprecedented threat to the water resources of New Hampshire, the State of New Hampshire Attorney General filed the *State* Action in the Superior Court of Merrimack County, New Hampshire on September 30, 2003 against 22 major oil and chemical companies that manufacture MTBE, refine gasoline containing MTBE, and/or supply gasoline containing MTBE to retail gasoline stations in New Hampshire.

---

[1] The State's Complaint is attached as Exhibit 1 to the Declaration of Victor M. Sher ("Sher Decl.") submitted herewith.

This is the only MTBE-related action brought by a sovereign state. The State seeks, among other things, to ensure that the costs of responding to MTBE contamination in the State's waters are borne by the companies that chose to make and use it, knowing of its risks and yet failing to take the steps (including warnings) necessary to avoid or mitigate them. Complaint, ¶ 76, pp. 51-53. The State asserts damages claims under state common law theories (including strict products liability, public nuisance, trespass, and negligence), as well as claims for cleanup costs and civil penalties under state statutes (including strict liability for environmental cleanup costs under N.H. Revised Statutes Annotated ("RSA") 146-A:3-a and penalties for violations of the State's consumer protection statute, RSA 358-A:2). The Attorney General is uniquely situated to bring these claims on behalf of all citizens of the State to obtain statewide relief for a statewide problem.

### B.    Procedural History.

On November 10, 2003, certain defendants removed the *State* Action to the U.S. District Court for the District of New Hampshire, citing two bases for federal subject matter jurisdiction: (1) that, pursuant to 28 U.S.C. § 1442(a)(1), they were acting "under the direction" of federal officers when they chose to add MTBE to gasoline; and (2) that the Action somehow implicates a 1988 federal bankruptcy order pertaining to the predecessor of a single defendant. On November 19, 2003, the State timely filed a motion to remand the Action to state court (the "Remand Motion") on the grounds that no federal subject matter jurisdiction exists over this matter.[2]  Soon thereafter, due to recusal by each of the district judges in the District of New

---

[2] Neither of the bases for federal jurisdiction asserted by defendants has merit. First, no court has ever accepted the "federal officer" argument defendants advance in their removal notice. *See, e.g., Tremblay v. Philip Morris, Inc.*, 231 F. Supp. 2d 411, 418 (D.N.H. 2002) (defendant's mere "participa[tion] in a regulated industry ... is not enough to demonstrate that it acted under the direction of a federal officer"); *Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of law" does not support removal where defendant is "merely 'subject to complex regulations'"); *Good v. Armstrong*

Hampshire, the Action was referred to the Hon. Ronald R. Lagueux of the District of Rhode Island pursuant to a reciprocity agreement between District Courts of New Hampshire and Rhode Island.[3]  On or about December 1, 2003, certain defendants filed a motion to stay the hearing on the State's Remand Motion (and all other pretrial proceedings) pending possible transfer of the Action to MDL No. 1358.  On December 18, 2003, the court granted defendants' stay motion.

Meanwhile, on November 12, 2003, certain defendants filed with the Panel (but never served the State with) a Notice of Related, Tag-Along Actions alleging that certain recently filed actions, including the *State* Action, involve common questions of fact with actions previously transferred to MDL No. 1358.  MDL No. 1358 was an inactive MDL proceeding before the Hon. Shira A. Scheindlin in the U.S. District Court for the Southern District of New York that previously involved several consolidated "actions brought on behalf of private well-owners seeking relief from the contamination or threatened contamination of their wells" by MTBE.  *In Re MTBE Products Liability Litig., supra*, 175 F. Supp. 2d at 598.[4]

On December 19, 2003, Judge Scheindlin held a hearing in connection with several MTBE cases filed by New York water purveyors that were removed to federal court and

---

*World Indus.*, 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos).  Second, civil actions brought by governmental units pursuant to their police or regulatory powers, such this one, are exempt from removal on grounds of bankruptcy jurisdiction. 28 U.S.C. § 1452(a); *see In re Forster*, 146 B.R. 383 (Bkrtcy. N.D. Ohio 1992) (state action to enforce environmental legislation and recover cleanup costs could not be removed under §1452(a)).

[3] Pursuant to the Local Rules of District of New Hampshire, a complaint may be referred to the District of Rhode Island (or the District of Maine) due to recusal of the judges of the New Hampshire District. D.N.H. Local Rule 77.5.  When such a referral occurs, the New Hampshire local rules continue to apply to the referred action, all pleadings are filed in both districts, and conferences, hearings and pretrials may be held in either district.  *Id.*

[4] Judge Scheindlin later denied class certification in the matter, *see In Re: MTBE*, 209 F.R.D. 323 (S.D.N.Y. 2002), and all the cases were resolved.

assigned to her (the "December 19 Hearing"). *See* Transcript of December 19 Hearing (attached

as Exhibit 5 to Sher Decl.). At the December 19 Hearing, the parties present before Judge

Scheindlin (which did *not* include the State, *see* Sher Decl., ¶ 21) stipulated to a transfer of their

cases to MDL No. 1358 in order that the plaintiffs' motions to remand those cases to state court

be heard and decided by that court. *Id.*, Exhibit 5 at 13-18. In addition, counsel for those parties

further stipulated to support transfer of other cases involving other parties *they represented* to

MDL No. 1358 for the same purposes. *Id.* That stipulation resulted in an order entered by Judge

Scheindlin on December 23, 2003 stating that remand motions "in these and all similar removed

actions, wherever filed," should be heard as part of MDL No. 1358. *Id.*, Exhibit 6. The State

had no opportunity to participate in the December 19 Hearing or address the procedures

stipulated by the parties at the Hearing, and subsequently notified Judge Scheindlin of its intent

to object to any transfer of its case to the Southern District of New York. *Id.*, ¶23, Exhibit 8.[5]

On February 13, 2004, Judge Scheindlin held oral argument on the remand motions before her,

which remain pending at this time. *Id.*, Exhibit 9.

On February 6, 2004, the Panel issued CTO-4. On February 18, 2004, the State filed

with the Panel a Notice of Opposition to the CTO. The State now moves to vacate.

**C.     Previous MTBE Litigation.**

The *State* Action and other MTBE-related cases recently removed to federal courts in

various parts of the country are preceded by a significant number of cases filed in federal and

state courts regarding MTBE, some of which have produced universally-applicable discovery on

---

[5] Upon first learning of the December 19 Hearing in New York, the State initially anticipated that it may
not object to transfer of this Action to the Southern District of New York, because it appeared that the
procedures contemplated at that Hearing would have allowed the State's Remand Motion to be argued
and resolved expeditiously in that court. Sher Decl., ¶ 24. However, no such procedure for transfer and
prompt hearing of the State's Remand Motion came to pass, and other parties' remand motions have now
proceeded in the Transferee Court without the State's participation. *Id.*

common questions of fact and consistent rulings on common legal questions.  Sher Decl., ¶¶ 3-

20.  In at least three major cases – the prior proceedings in MDL No. 1358, *South Tahoe Public*

*Utility District v. Atlantic Richfield Co.*, Cal. Super. Ct., S.F. Cty. Case No. 999128 ("*South*

*Tahoe*"), and *Communities for a Better Environment v. Unocal Corp.*, Cal. Super. Ct., S.F. Cty.

Case No. 997013 ("*CBE*") – the parties completed detailed, extensive and coordinated discovery

on generally applicable issues related to defendant liability.  Sher Decl., ¶¶ 7-10, 12-13, 14-16.

The *South Tahoe* action went to trial on the issues of refiner/manufacturer liability, product

defect and malice, and, after a four-month trial, resulted in a plaintiff's verdict on each of these

issues.  *Id.*, ¶¶ 7, 9.  All of the discovery and testimony from these cases exists and can be made

available to the parties in the *State* Action.  *Id.*, ¶¶ 11, 13, 17-18, Exhibit 4.

### III.   **LEGAL ARGUMENT**

Regardless of how other MTBE cases are treated, the conditional transfer of the *State*

Action to MDL No. 1358 (or any other MDL) should be vacated because transfer would neither

further the just and efficient conduct of the litigation on common questions of fact or law, nor

serve the convenience of the parties and witnesses. The statutory factors considered by the Panel

in deciding whether to uphold the conditional transfer of an alleged tag-along action are: (1)

whether there are common questions of fact between the alleged tag-along action and existing

MDL cases; (2) whether transfer would serve the convenience of parties and witnesses; and (3)

whether transfer would serve the just and efficient conduct of the actions.  28 U.S.C. § 1407;

JPML Rule 1.1; *In re Managed Care Litig.*, 246 F. Supp 2d 1363, 1364 (JPML 2003); *In re*

*Enron Corp.*, 227 F.Supp.2d 1389, 1391 (JPML 2002).  The Panel has held that all three criteria

must be met to justify transfer, *In re Highway Acc. Near Rockville, Connecticut, on December*

*30, 1972,* 388 F. Supp. 574, 575 (JPML 1975), and that the third criterion is the "most

10

important." *In re Tobacco/ Governmental Health Care Costs Litig., supra*, 76 F. Supp. 2d at 8,

*citing* 15 C. Wright, A Miller & E. Cooper, Federal Practice And Procedure, § 3863 at 535

(1986). In analyzing whether transfer would serve the just and efficient conduct of actions under

§ 1407, the Panel considers primarily whether transfer and consolidation will avoid duplicative

discovery and inconsistent pretrial rulings. *See, e.g., In re TMJ Implants Products Liability*

*Litig.*, 844 F. Supp. 1553, 1554 (JPML 1994).

The *State* Action is singularly inappropriate for MDL treatment for two reasons. First,

resolution of the State's Remand Motion – the first, and likely only, substantive motion to be

considered by a federal court in this Action – by an MDL court will not conserve judicial

resources, because jurisdictional issues raised therein differ materially from those raised by the

plaintiffs currently before the Transferee Court. Second, even if the Action is not remanded to

state court, the likelihood of inconsistent pretrial rulings and duplicative discovery is minimal,

because: (a) as the only case brought by a sovereign state to address MTBE contamination of

natural resources on a statewide basis, unique questions of law and localized questions of fact

overwhelmingly predominate in the Action; (b) discovery regarding the few questions of fact

shared with other MTBE-related cases already has been completed in large part and is or can be

made available to all parties; and (c) the Transferee Court, as well as numerous other federal and

state courts, already have issued remarkably consistent rulings on most, if not all, common legal

issues. Thus, the District of New Hampshire is in a position to rule expeditiously on the Remand

Motion, as well as on other pretrial motions, and to preside over the remaining New Hampshire-

specific discovery. For these reasons, the *State* Action will "proceed more expeditiously if left

alone." *See In re Sears, Roebuck & Co. Employment Practices Litig.*, 487 F. Supp. 1362, 1363

(JPML 1980).

**A.**   **No Savings Of Judicial Resources Will Be Gained From Consolidated Treatment Of the State's Remand Motion.**

Because Judge Scheindlin did not have a copy of the complaint, removal notice, or Remand Motion filed in the *State* Action before her, the determination in her December 23, 2003 Order that the remand issues raised in various "similar removed" cases around the country are "appropriate" for MDL treatment should not apply to the *State* Action. *See* Sher Decl., ¶¶ 23, 26. The *State* Action is the only MTBE-related case filed by a sovereign state on behalf of all of its citizens, and, therefore, certain of the State's grounds for seeking remand of its case to state court are not raised in the remand motions currently pending before Judge Scheindlin. This militates against MDL transfer, notwithstanding the presence of some common issues. *See also In re 'East of the Rockies' Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254 (JPML 1969) (Weigel, J., conc.) ("neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, ipso facto, by transfer just because there are common questions").

The State's Remand Motion differs from the remand motions before Judge Scheindlin in several important respects. First, unlike any other MTBE case, the *State* Action is brought by a state entity, whose Eleventh Amendment and sovereign immunities bar removal of this Action to federal court.[6] Second, the State is a "governmental unit" that (among other things) seeks cost recovery pursuant to its police and regulatory powers. Under 28 U.S.C. § 1452(a), such governmental civil actions are exempt from removal on grounds of bankruptcy jurisdiction. The State's status as sovereign thus raises unique – and dispositive – issues not addressed by the remand motions pending in the Transferee Court. *See, e.g., In re Harmony Loan Company, Inc.*

---

[6] *See, e.g., People of State of Cal. v. Steelcase Inc.*, 792 F. Supp. 84, 86 (C.D. Cal. 1992) ("since the immunity granted by the Eleventh Amendment is an immunity from being made an involuntary party to an action in federal court, it should apply equally to the case where the state is a plaintiff in an action commenced in state court and the action is removed to federal court by the defendant"); *Moore ex rel. State of Mississippi v. Abbott Laboratories, Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995) (same); *contra, In re Rezulin Products Liability Litig.*, 133 F. Supp. 2d 272, 297 (S.D.N.Y. 2001).

12

*Securities Litigation*, 372 F. Supp. 1405, 1407 (JPML 1974) (denying motion to transfer where case contained issues not common to other cases, including sovereign immunity); *In re Tobacco/Governmental Health Care Costs Litig.*, *supra*, 76 F. Supp. 2d at 9 (rejecting transfer because federal government's action "is based on sections of United States Code that permit only the United States to seek relief, thus presenting entirely different, perhaps crucial, legal issues").[7]

Because the State's Remand Motion raises additional issues not raised in those pending before Judge Scheindlin, it cannot necessarily be resolved based on what Judge Scheindlin decides in those cases. Thus, the risk of inconsistent rulings absent transfer, as well as any perceived judicial economy, is illusory. As the court held in *Board of Trustees v. Worldcom*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002):

> When remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of judicial resources. The threat of inconsistent judgments in either case is de minimis.

*See also Havens Protected "C" Clamps, Inc.*, *supra*, 2000 WL 382027, at *2 (holding that where "resolution of the motion to remand does not necessarily implicate issues common to the other actions currently pending before the MDL Panel-designated court," remand motion should be considered by transferor court). Consequently, there is nothing but delay to be gained from transferring this action to the Southern District of New York, when the District of New Hampshire is at least as capable of deciding the unique issues raised in the State's Remand Motion in an expeditious manner.

---

[7] In addition, a review of the transcript from the February 13, 2004 hearing on the remand motions before the Transferee Court reveals that, in those cases, defendants' jurisdictional arguments hinge largely (if not entirely) on specific allegations from the complaints in those cases, *see* Sher Decl., Exhibit 9 at 10-12, 20-22, 25-28 – not a single one of which appears in the State's Complaint.

**B.**   **Even If the *State* Action Is Not Remanded to State Court, The Likelihood Of Inconsistent Pretrial Rulings And Duplicative Discovery Is Minimal.**

Even if the *State* Action were somehow to remain in federal court, pretrial consolidation would serve neither the convenience of the parties and witnesses nor the just and efficient conduct of the litigation because this Action differs materially in nature and scope from other recently removed MTBE cases.  Moreover, to the extent the *State* Action shares common questions of fact or law with other pending cases, discovery on common factual questions is largely completed and available and most common legal issues already have been addressed by the Transferee Court and other courts.

**1.**   **There Is A "Tremendous Overriding Difference in Scope" Between The *State* Action And Other MTBE-Related Cases.**

The *State* Action is a fundamentally different kind of lawsuit than any other MTBE case currently pending in the federal (or state) courts.  While virtually every other MTBE damages case is brought by an individual public or private purveyor of drinking water in connection with contamination of a particular well or water supply, this Action is brought by a sovereign state and seeks to address injury to statewide water resources caused by MTBE.  For purposes of § 1407 consolidation, both the unique sovereign status of the State and the overriding difference in the scope of the litigation constitute critical distinctions that militate against consolidation.

*In re Tobacco/Governmental Health Care Costs Litig., supra*, 76 F. Supp. 2d 5, should control here.  In that case, the U.S. District Court for the District of Columbia denied a motion to transfer the United States' health care costs recovery action against the tobacco industry to an MDL proceeding involving foreign government tobacco cases that was pending in the same district.  Applying § 1407, the court concluded that transfer would not serve the just and efficient conduct of the litigation on the following grounds:

14

> The United States' action is based on sections of the United States Code that permit only the United States to seek relief, thus presenting entirely different, perhaps crucial, legal issues from those implicated by the foreign government actions. The Court therefore concluded that most of the legal questions to be decided before trial are unique to the lawsuit filed by the United States, eliminating any increase in efficiency or justice to be gained by consolidation of the U.S. and foreign government actions.

*Id.* at 9.

The same is true here. Unlike other MTBE cases brought by water suppliers and well-owners pursuant to their usufructuary and other property interests, the State's Action is expressly based on specific state statutes and recognized legal doctrines unique to the State – such as the State's status as trustee of the resource and the *parens patriae* doctrine – that permit only the State to seek relief. Each and every claim asserted by the State is brought pursuant to sovereign, quasi-sovereign, public trust, police power, regulatory, property, and other legal interests in protecting ground and drinking water resources that are exclusively held by the State. *See* Complaint, ¶¶ 8-11. For example, the State's statutory claims for environmental remediation costs under RSA 146-A:3-a and civil penalties for violations of the State's consumer protection statute, RSA 358-A:2, may be brought only by the Attorney General on behalf of the State. *See* RSA 146-A:9; RSA 358-A:4; *see also Mesiti v. Microdot, Inc.*, 739 F. Supp. 57, 63 (D.N.H. 1990) (only the State may bring an action pursuant section 146-A:3-a in order "to hold those who discharge oil into surface or ground waters strictly liable for relevant [cleanup] costs").

The State's claims for statewide damages under various common law theories of recovery (products liability, nuisance, trespass), while superficially similar to those asserted in other MTBE cases, are also claims that only the State can assert in its capacity as *parens patriae* and public trustee of the waters of New Hampshire. *See* RSA 21-M:10, II (Attorney General authorized to enforce statutes pertaining to environmental protection, exercise common law

powers to protect the environment, and to bring public nuisance and other actions in the name of the State); *Coakley v. Maine Building and Casualty Co.,* 136 N.H. 402, 413 (1992) (groundwater is a "unique and irreplaceable government resource"); *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607 (1982) ("[i]n order to maintain [a *parens patriae*] action, the State must articulate an interest apart from the interests of particular private parties, . . . [t]he State must express a quasi-sovereign interest"); *Maine v. M/V Tamano,* 357 F. Supp. 1097 (D.Me. 1973) (holding that under its *parens patriae* power state could pursue damages claim for injuries to natural resources caused by oil spill); *Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 848 (9th Cir. 1985) (municipalities may not sue as *parens patriae* "because their power is derivative and not sovereign"). The *State* Action, therefore, is distinct from other MTBE cases. In light of these significant and crucial differences from the typical drinking water purveyor case, the Panel should find, as the court did in *In re Tobacco,* that there is no efficiency or justice to be gained by consolidation.

The *State* Action is also much broader in scope than other pending MTBE cases. In *In re Gasoline Lessee Dealers Antitrust Litig., supra,* 479 F. Supp. 578, a case involving two groups of antitrust actions brought by service station lessees against major oil companies, the Panel denied a motion to transfer and consolidate the actions, finding that individual rather than common factual issues predominated. Noting that one set of actions alleged violations affecting "a relatively limited geographic area," while the other set alleged a broad, nationwide conspiracy, the Panel determined that there were "critical factual and legal disparities between those actions" because of this "tremendous, overriding difference in scope." *Id.* at 580. Similarly, in *In re Sears, Roebuck & Co. Employment Practices Litig., supra,* 487 F. Supp. at 1363, the Panel found that the "distinctive elements" in pending employment discrimination

16

cases against Sears "overwhelmingly predominate[d]," because the cases ranged from those involving allegations of discrimination at "no more than three facilities" to those "involving across-the-board allegations of sex discrimination at 3,000 facilities."

These distinctions apply with equal force here.  First, unlike other MTBE cases from around the nation also designated as tag-alongs, this case involves MTBE contamination *only* in New Hampshire.  Second, also unlike other MTBE cases (which generally seek the costs of treating a limited number of particular contaminated wells), the *State* Action seeks a broad, statewide remedy that will involve, among other things, the investigation, monitoring and treatment of potentially tens of thousands of publicly and privately owned drinking water supplies as well as restoration of waters held in trust for the public.  *See* Complaint, pp. 51-53. As the court observed in *In re Gasoline Lessee Dealers*, *supra*, 479 F. Supp at 580, discovery and pretrial proceedings concerning common factual questions will "clearly be dwarfed" by the scope of individual factual issues presented by this case.  Likewise, in light of the potential breadth of the *State* Action, consolidation with other MTBE cases poses a risk of overwhelming the resources of the Transferee Court.  *In re Motion Picture Licensing Antitrust Litig.*, *supra*, 479 F. Supp. at 592 (Panel "vitally concerned" that MDL proceedings "remain manageable;" inclusion of action with "unique legal and factual nuances would serve only to add further layers of complexity," with no "overriding benefit").  As such, the *State* Action is simply in another league and will not benefit from MDL treatment.

> 2. **There Are Relatively Few Common Questions Of Fact Between The *State* Action And Other MTBE Cases On Which Available Discovery Is Not Already Largely Completed.**

The Panel consistently has held that MDL transfer of later-filed actions is neither necessary nor appropriate when discovery relating to common issues already has been completed in the transferee court and/or can be made available to the parties in actions before the Panel

without recourse to § 1407.[8]  In this instance, discovery pertaining to the few common factual

questions shared between the *State* Action and other allegedly related MTBE cases is also largely

completed and available to all parties.  Accordingly, the risk of duplicative discovery is minimal,

and there is no need for MDL consolidation.

In their Notice of Related, Tag-Along Actions, defendants identify the following alleged

"common question of fact" arising in this and the other listed actions: "whether defendants knew

about and misrepresented the nature of MTBE and conspired to market MTBE without

disclosing its risks to downstream users, the federal government or the public."  Notice of

Related Tag-Along Actions, filed Nov. 12, 2003, ¶2.  To the extent this constitutes a question of

fact shared by the *State* Action and other alleged tag-along actions, discovery on this question as

to many of the defendants named in the *State* Action was largely completed in the prior

---

[8] *See, e.g., In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d
1377, 1378 (JPML 2002) (transfer denied where litigation was mature, discovery nearly completed in
some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of
duplicative discovery); *In re Indian Motorcycle Bankruptcy and Receivership Litig.*, 206 F. Supp. 2d
1365 (JPML 2002) (same);  *In Re Air Crash Disaster Near Upperville, Virginia*, 430 F. Supp 1295, 1297
(JPML 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all
parties in the new actions before the Panel have access to all discovery obtained in the transferee district);
*In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp 221, 223
(JPML 1981) (CTO vacated where discovery of common issues has been completed in the transferee
district and could be made available to the parties in the actions before the Panel without recourse to
section 1407); *In Re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 582 F Supp 890,
891 (JPML 1984) (same); *In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 436 F. Supp.
404, 406 (JPML 1977) (transfer denied where discovery on common issues in transferee court "virtually
completed"); *In re Eli Lilly & Co. "Oraflex" Products Liability Litig.*, 578 F. Supp. 422, 423 (JPML
1984) (transfer denied because possibility of duplicative discovery "eliminated" by availability of
extensive discovery in areas of common factual inquiry from already concluded and well-advanced
related actions); *In re Dow Chemical Co. "Polystyrene Foam" Products Liability Litig.*, 429 F. Supp.
1035, 1036 (JPML 1977) (need for transfer "obviated" because discovery on common questions of fact
regarding defendants' knowledge and product's defectiveness had been completed and parties had agreed
that such discovery would be applicable in all actions); *In re McDonald's Franchise Antitrust Litigation*,
472 F. Supp. 111, 114-115 (JPML 1979) (transfer denied where discovery on common questions was
largely completed in some cases and available for use in less advanced cases).

incarnation of MDL No. 1358, as well as in the *South Tahoe* and *CBE* cases.[9] Sher Decl., ¶¶ 7-10, 12-13, 14-16, 19-20.  The same is true with respect to expert discovery on the related question of whether MTBE and/or MTBE gasoline is a defective product.  *Id.*, ¶¶ 10, 13, 15, 19-20.  Overall, literally millions of liability-related documents have been produced and hundreds of witnesses have been deposed, including percipient witnesses at the defendant companies and at trade associations like the American Petroleum Institute and Oxygenated Fuels Association, and numerous expert witnesses.  *Id.*, ¶¶ 8, 13, 15-16.

Moreover, all of this discovery is, or could easily be made, readily available to the parties in the *State* Action.  *Id.*, ¶¶ 11, 13, 17-18.  For example, the document depository in the Transferee Court, which still exists, was established with the specific purpose of making those documents available to parties in other cases.  *Id.*, ¶ 17-18, Exhibit 4 (*In re MTBE Products Liability Litig.*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001) (providing that attorneys in any MTBE action may make use of documents produced in the litigation subject to the requirements of the order)).  The documents, depositions and trial testimony from the *South Tahoe* and *CBE* cases also can be made available to the parties in the *State* Action.  Sher Decl., ¶¶ 11, 13.  Indeed, as the Panel has routinely recognized, procedures other than MDL consolidation are available to both courts and parties to permit use of discovery on common issues from prior related cases, such as stipulations and orders to show cause.  *See, e.g. In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, *supra*, 199 F. Supp. 2d at 1378, citing Manual for Complex Litigation, Third, § 31.14 (1995).

In contrast, few, if any, of the remaining major factual issues in the *State* Action – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to

---

[9] This "notice and knowledge" discovery is relevant to each of the State's common law claims against the refiner defendants, as well as its deceptive business practice claim under the State's consumer protection statute.  *See* Complaint, ¶¶ 80, 96, 105, 124, 135-136, 147.

MTBE, the extent of contamination, the available remedies, the cost of those remedies, and liability for those damages – can be considered "common questions of fact," as they revolve primarily, if not exclusively, around New Hampshire-specific issues.  For example, the questions of causation and product identification (*i.e.* whose MTBE and/or gasoline containing MTBE is in New Hampshire's waters), warnings, and the feasibility of alternatives will require extensive discovery regarding the gasoline infrastructure in New Hampshire and the way gasoline is supplied to the State from out-of-state refineries – discovery that will be "of no interest" to other MTBE plaintiffs in other parts of the country.  *In re Gasoline Lessee Dealers, supra*, 479 F. Supp at 580 (denying transfer where discovery in one action would be "of no interest" to parties in another); *see also Oxygenated Fuels Ass'n v. Pataki*, No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (economic effect of MTBE ban influenced by gasoline infrastructure, which varies from state to state); *In re MTBE Products Liability Litig.*, 209 F.R.D. 323, 347 (S.D.N.Y. 2002) (issues regarding warnings given to intermediate vendees and UST owners and operators are "individual").

Similarly, questions regarding the extent of contamination, available remedies, and implementation and cost of those remedies will also be New Hampshire-specific.  In fact, in denying class certification in the original MDL No. 1358 cases, the Transferee Court itself concluded that questions regarding contamination of any particular well present "a factually unique set of circumstances," because there are "differences in the level of contamination . . . and the nature of relief that each will require."  *In re MTBE Products Liability Litig., supra*, 209 F.R.D. at 337, 344; *see also In re Grand Funk Railroad Trademark Litig.*, 371 F. Supp. 1084, 1085 (JPML 1974) (no benefit from transfer where discovery "will focus localized factual issues"); *In re Air Crash at Pago Pago, Am. Samoa*, 394 F. Supp. 799, 800 (JPML 1975) (noting

that in tort litigation, common questions may pertain to liability, whereas the issue of damages is unique).

In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery is largely complete and available to all parties. The discovery that remains will focus primarily on New Hampshire-specific issues, which can be better handled by the District of New Hampshire.

### 3. The Transferee Court And Other Courts Already Have Resolved Most Common Legal Issues.

Just as discovery on any common factual issues is already well-advanced in the Transferee Court (and elsewhere), common pretrial legal issues already have been decided by the Transferee Court, and by other federal and state courts. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in . . . preventing inconsistent pretrial rulings." *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation, supra*, 505 F. Supp at 223; *see also In re Western Electric Co., Inc. Semiconductor Patent Litigation, supra*, 436 F. Supp. at 406 (transfer unwarranted where transferee court's views on key legal issues are well documented, and will put home-court judge "closer to the shoes of the transferee judge").

In her landmark ruling on defendants' motions to dismiss in the original set of cases transferred to MDL No. 1358, Judge Scheindlin, in a lengthy and thorough opinion, set forth a roadmap for the many of the key common legal issues in these cases that other judges can easily follow. *See In re MTBE Products Liability Litig., supra*, 175 F. Supp. 2d 593. First, the Court

rejected defendants' federal preemption defense, *id.* at 611-616,[10] as has every other published

opinion addressing the question.[11]  The Transferee Court also rejected defendants' primary

jurisdiction argument, as well as their related argument that defective product claims concerning

MTBE require an impermissible reexamination of EPA's cost-benefit analysis regarding MTBE.

*In re MTBE Products Liability Litig., supra,* 175 F. Supp. 2d at 616-618, 623-625.  The court

further upheld the sufficiency of each of the common law tort claims asserted in the *State* Action,

including claims alleging refiner liability under theories of strict products liability, negligence,

nuisance and trespass.  *Id.* at 623-629.[12]

    With this extensive guidance already in place, the risk of inconsistent pretrial rulings on

these common legal questions in the *State* Action, if left to proceed in its home district, is

minimal.  At the same time, the pretrial legal questions raised in the *State* Action that have not

yet been resolved by the Transferee Court or other courts in the context of MTBE litigation –

such as the State's standing and authority to pursue damages claims on behalf of its residents, the

scope and applicability of the state statutory claims asserted in the case, the applicability of any

---

[10] Although Judge Scheindlin left open the factual question of whether there were practicable alternatives to MTBE available for defendants' use under the federal Clean Air Act, *id.* at 616, this question, as described in section III.B.2., *supra,* depends on the gasoline market and infrastructure in the relevant locality, and thus is not the kind of question on which coordinated discovery will yield any efficiencies.

[11] *See Oxygenated Fuels Ass'n v. Davis* ("*Davis II*"), 331 F.3d 665 (9th Cir. 2003) (upholding California ban of MTBE in gasoline), *affirming Oxygenated Fuels Ass'n v. Davis* ("*Davis I*"), 163 F. Supp. 2d 1182 (E.D. Cal. 2001); *ExxonMobil Corp. v. U.S. E.P.A.,* 217 F.3d 1246 (9thCir. 2000) (upholding Nevada county regulation that effectively banned MTBE); *Oxygenated Fuels Ass'n v. Pataki* (N.D.N.Y. 2001) 158 F.Supp.2d 248 (upholding New York ban of MTBE); *Oxygenated Fuels Ass'n v. Pataki* ("*Pataki III*"), 293 F. Supp. 2d 170 (N.D.N.Y. 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA); *see also Abundiz v. Explorer Pipeline Co.,* 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state MTBE contamination case does "not conflict with the Congressional clean air objectives").

[12] In evaluating the sufficiency of the plaintiffs' common law claims, the Transferee Court applied California, New York, Illinois and Florida law – not New Hampshire law.  To the extent there are any nuances in New Hampshire law that would affect any of the otherwise "common" legal questions in the *State* Action, the transferor court is equally, if not better, suited to address them.

statute of limitations or other defenses – are not shared with other MTBE cases.  These questions

are best addressed by a court with more experience and familiarity with New Hampshire law.

Thus, the benefits of permitting this case to proceed on its own in its home district outweigh the

benefits (if any) of transfer.  *See In re Grand Funk Railroad, supra*, 371 F. Supp. at 1085 ("Panel

must weigh any benefit that transfer would provide in the way of eliminating the possibility of

inconsistent pretrial decisions against the efficient administration of the litigation as a whole").

Accordingly, the Conditional Transfer Order (CTO-4) as it applies to the *State* Action should be

vacated.

## IV.   CONCLUSION

For the foregoing reasons the State's Motion to Vacate Conditional Transfer Order

(CTO-4) as it applies to the *State* Action should be granted.

Respectfully submitted,

THE STATE OF NEW HAMPSHIRE
PETER W. HEED, ATTORNEY GENERAL

Dated:  March 4, 2004

Maureen D. Smith, NH Bar #4857
Senior Assistant Attorney General
Environmental Protection Bureau
33 Capitol Street
Concord, NH  03301-6397
Tel: (603) 271-3679
Fax: (603) 223-6270

SHER LEFF, LLP
Victor M. Sher (Admitted *pro hac vice*)
Todd E. Robins (Admitted *pro hac vice*)
450 Mission Street, Suite 500
San Francisco, CA  94105
Tel: (415) 348-8300
Fax: (415) 348-8333

23

LAW OFFICES OF MATTHEW F. PAWA, P.C.
Matthew F. Pawa (Admitted *pro hac vice*)
1280 Centre Street, Suite 230
Newton Center, MA  02459
Tel: (617) 641-9550
Fax: (617) 641-9551

ORR & RENO, P.A.
Martha Van Oot, NH Bar # 963
One Eagle Square, P.O. Box 3550
Concord, NH  03302
Tel: (603) 224-2381
Fax: (603) 224-2318

Counsel for Plaintiff State of New
Hampshire

D

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE:<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | ) MDL Docket No. 1358<br>)<br>) **This Document Relates to:**<br>) *California-American Water Company*<br>) *v. Atlantic Richfield Co., et al.*, Case<br>) No. 03-5379 JSW (N.D. Cal.)<br>)<br>) **PLAINTIFF CALIFORNIA-**<br>) **AMERICAN WATER COMPANY'S**<br>) **MOTION TO VACATE**<br>) **CONDITIONAL TRANSFER**<br>) **ORDER (CTO-4); BRIEF IN**<br>) **SUPPORT THEREOF**<br>)<br>) |

## PLAINTIFF CALIFORNIA-AMERICAN WATER COMPANY'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

1.     California-American Water Company ("Cal-American") is plaintiff in the action

*California-American Water Co. v. Atlantic Richfield Co., et al.*, Case No. 03-5379 (N.D. Cal.) (the

"*Cal-American* Action" or "Action"), which is identified as a "tag-along case" in the schedule of

district court civil actions subject to CTO-4, issued by the Judicial Panel on Multidistrict Litigation

("Panel") on February 6, 2004.

2.     Cal-American hereby moves the Panel to vacate the above-referenced conditional

transfer order as it applies to the *Cal-American* Action on the grounds that such action does not meet

the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

3.     Specifically, resolution of Cal-American's pending Remand Motion by the

Transferee Court will result in no significant savings of judicial resources, because the

1

jurisdictional arguments raised therein differ materially from those raised by the plaintiffs currently before the Transferee Court. Second, even if the *Cal-American* Action is not remanded to state court, the likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a) discovery regarding the few questions of fact shared with other cases involving methyl tertiary butyl ether ("MTBE") already has largely been completed in the prior proceedings and can be made available to all parties; and (b) the Transferee Court, as well as numerous other federal and state courts, already have issued remarkably consistent rulings on most, if not all, common legal issues.

    4.    This Motion is based on the attached Brief in support thereof, along with the Declaration of Victor M. Sher, the Statement of Reasons Why Oral Argument Should Be Heard, the files, pleadings, and documents on file with the Panel, and upon such further documentary and oral evidence as may be presented in the hearing on this matter.

    WHEREFORE, Cal-American respectfully requests that the Panel:

    A.    Vacate the Conditional Transfer Order as it applies to the *Cal-American* Action;

    B.    Schedule oral argument on this Motion; and

    C.    Grant such other relief deemed just and appropriate.

    Respectfully submitted,

Dated: March 4, 2004

SHER LEFF, LLP
Victor M. Sher, SBN 96197
Todd E. Robins, SBN 191853
450 Mission Street, Suite 500
San Francisco, CA 94105
Tel: (415) 348-8300
Fax: (415) 348-8333

2

BARON & BUDD, P.C.
Scott Summy (Admitted *Pro Hac Vice*)
Celeste A. Evangelisti, SBN 225232
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 523-6267
Facsimile: (214) 520-1181

Counsel for Plaintiff California-American Water Company

## BRIEF IN SUPPORT OF CALIFORNIA-AMERICAN WATER COMPANY'S
## MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

### I.     INTRODUCTION

The Panel should vacate the Conditional Transfer Order as it applies to the *Cal-American* Action because transfer of this exclusively state-law case, regarding local contamination caused by a product manufactured, sold and distributed entirely in-state, to an already over-burdened district court 3,000 miles away will benefit neither the parties nor the judicial system.

Cal-American's pending motion to remand its Action to state court vividly illustrates that there is neither convenience nor savings of judicial resources to be gained by transferring this case to the Southern District of New York.  Cal-American's remand motion raises unique – and dispositive – jurisdictional arguments related to federal preemption not applicable to the remand motions currently before the presiding judge in MDL No. 1358 (the "Transferee Court").  As these unique issues ultimately will have to be addressed by whatever court decides Cal-American's remand motion, no efficiencies will be gained by transferring the *Cal-American* Action to MDL No. 1358 (or any other MDL) for consolidated treatment of remand motions.

Moreover, even if the Action somehow remains in federal court, there are few, if any, common questions of fact between the *Cal-American* Action and other MTBE cases on which discovery is not already largely completed.  A great deal of the generally applicable liability discovery (including discovery on what the oil industry knew, or reasonably should have known, regarding MTBE's risks to the environment, and when, as well as discovery on the gasoline infrastructure in California) was conducted in connection with the prior incarnation of MDL No. 1358 and other MTBE cases that were not consolidated, and this discovery is or can be made available to the parties in the *Cal-American* Action.  The discovery that remains – the bulk of the

4

case – revolves primarily around location-specific issues, such as the sources and extent of contamination and what it will cost to remediate and treat

Furthermore, potentially dispositive motions involving Cal-American already have been resolved in prior MTBE litigation with remarkably consistent outcomes. For example, both the Ninth Circuit and the Transferee Court have definitively rejected defendants' federal preemption defense. *See Oxygenated Fuels Ass'n v. Davis,* 331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California ban of MTBE in gasoline); *ExxonMobil Corp. v. U.S. E.P.A.,* 217 F.3d 1246, 1253 (9thCir. 2000) (upholding Nevada county regulation that effectively banned MTBE); *In Re MTBE Products Liability Litig., supra,* 175 F. Supp. 2d 593 (S.D.N.Y. 2001). In fact, the Transferee Court published a lengthy opinion that provides useful guidance to any court applying common law tort doctrines in the MTBE context. *In re MTBE, supra.* As a result, many of the threshold legal questions that would normally create the need for MDL treatment already have been litigated and are extremely unlikely to produce inconsistent outcomes or to require significant additional judicial energy.

In sum, MTBE litigation is sufficiently mature at this point that MDL handling of the *Cal-American* Action is unwarranted. There is no "gathering storm" that will produce a blizzard of motions and conflicting opinions, notwithstanding the recent flurry of removal notices filed by defendants. Transfer of the *Cal-American* Action to the Southern District of New York, therefore, will not create efficiencies. Instead it will create delay and inconvenience by forcing Cal-American to litigate this important lawsuit in a distant forum that has no particular expertise on the localized issues that overwhelmingly predominate in the case.

## II.   BACKGROUND

### A.   The Cal-American Action.

Cal-American is an investor-owned water utility that owns and operates public drinking water systems in various locations throughout California, including but not limited to Monterey County. First Amended Complaint ("Complaint"), ¶ 4 (Attached as Exhibit 1 to the Declaration of Victor M. Sher ("Sher Decl.")). MTBE is a chemical used by some refiners in some gasoline products in some parts of the country. Complaint, ¶ 41. Expanding plumes of MTBE are contaminating and threatening Cal-American's groundwater supplies in dispersed locations throughout California. *Id.*, ¶¶ 1, 59. Accordingly, Cal-American filed the *Cal-American* Action in the Superior Court of Monterey County, California on September 30, 2003 against 17 major oil and chemical companies that manufacture MTBE, refine gasoline containing MTBE, and/or supply gasoline containing MTBE in California.

Cal-American seeks, among other things, to ensure that the costs of responding to MTBE contamination in groundwaters affecting Cal-American's water supply are borne by the companies that chose to make and use it, knowing of its risks and yet failing to take the steps (including warnings) necessary to avoid or mitigate them. Complaint, ¶ 3. Cal-American asserts damages claims under state common law theories (including strict products liability, public nuisance, trespass, and negligence), as well as claims for cleanup costs under state statutes (Cal. Health & Safety Code §116366 and Cal. Water Code § 13285) and a statutory claim for treble damages for utility tampering (Cal. Civil Code § 1882).

### B.   Procedural History.

On November 25, 2003, certain defendants removed the *Cal-American* Action to the U.S. District Court for the Northern District of California, citing four bases for federal subject matter

jurisdiction: (1) that Cal-American's claims are "completely preempted" by the federal Clean Air Act; (2) that "a substantial federal question" is a necessary element of Cal-American's defective product claim; (3) that, pursuant to 28 U.S.C. § 1442(a)(1), defendants were acting "under the direction" of federal officers when they chose to add MTBE to gasoline; and (4) that the Action somehow implicates a 1988 federal bankruptcy order pertaining to the predecessor of a single defendant. On December 9, 2003, Cal-American timely filed a motion to remand the Action to state court (the "Remand Motion") on the grounds that no federal subject matter jurisdiction exists over this matter.[1] On or about December 5, 2003, certain defendants filed a motion to stay the hearing on Cal-American's Remand Motion (and all other pretrial proceedings) pending possible transfer of the Action to MDL No. 1358. A hearing on both motions is scheduled before the Hon. Jeffrey S. White for April 16, 2004.

Meanwhile, on December 5, 2003, certain defendants filed with the Panel (but never served Cal-American with) a Notice of Related, Tag-Along Actions alleging that certain recently filed actions, including the *Cal-American* Action, involve common questions of fact with actions

---

[1] None of the bases for federal jurisdiction asserted by defendants has merit. *First,* defendants' "substantial federal question" and "complete preemption" arguments both hinge entirely on preemption arguments that already have been soundly rejected by the Ninth Circuit. *See Oxygenated Fuels Ass'n v. Davis II,* 331 F.3d 665; *ExxonMobil, supra,* 217 F.3d 1246. *Second,* no court has ever accepted the "federal officer" argument defendants advance in their removal notice. *See, e.g., Tremblay v. Philip Morris, Inc.,* 231 F. Supp. 2d 411, 418 (D.N.H. 2002) (defendant's mere "participa[tion] in a regulated industry … is not enough to demonstrate that it acted under the direction of a federal officer"); *Little v. Purdue Pharma, LP,* 227 F. Supp. 2d 838, 860-61 (S.D. Ohio 2002) ("body of law" does not support removal where defendant is "merely 'subject to complex regulations'"); *Good v. Armstrong World Indus.,* 914 F. Supp. 1125, 1129 (E.D. Pa. 1996) (no nexus between Navy procurement contract for turbines and state complaint regarding asbestos exposure where contract did not require manufacturer to use asbestos). *Third,* Defendants' attempt to predicate federal jurisdiction on the toehold of 1988 bankruptcy order has no merit, especially in light of the obviously applicable remand factors under 28 U.S.C. § 1452(b). *See In re Feitz,* 852 F.2d 455, 457 (9th Cir. 1988) (no bankruptcy jurisdiction because prior entry of confirmation order "destroyed any possible relationship between the outcome of [a subsequent] suit and the administration of the bankruptcy estate"); *In re McGhan,* 288 F.3d 1172 (9th Cir. 2002) ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

previously transferred to MDL No. 1358. MDL No. 1358 was an inactive MDL proceeding

before the Hon. Shira A. Scheindlin in the U.S. District Court for the Southern District of New

York that previously involved several consolidated "actions brought on behalf of private well-

owners seeking relief from the contamination or threatened contamination of their wells" by

MTBE. *In Re MTBE Products Liability Litig., supra,* 175 F. Supp. 2d at 598.[2]

On December 19, 2003, Judge Scheindlin held a hearing in connection with several

MTBE cases filed by New York water purveyors that were removed to federal court and

assigned to her (the "December 19 Hearing"). *See* Transcript of December 19 (attached as

Exhibit 5 to Sher Decl.). At the December 19 Hearing, the parties present before Judge

Scheindlin (which did *not* include Cal-American, *see* Sher Decl., ¶ 21) stipulated to a transfer of

their cases to MDL No. 1358 in order that the plaintiffs' motions to remand those cases to state

court be heard and decided by that court. *Id.,* Exhibit 5 at 13-18. In addition, counsel for those

parties further stipulated to support transfer of other cases involving other parties *they*

*represented* to MDL No. 1358 for the same purposes. *Id.* That stipulation resulted in an order

entered by Judge Scheindlin on December 23, 2003 stating that remand motions "in these and all

similar removed actions, wherever filed," should be heard as part of MDL No. 1358. *Id.,* Exhibit

6. Cal-American had no opportunity to participate in the December 19 Hearing or address the

procedures stipulated by the parties at the Hearing, and, subsequently notified Judge Scheindlin

of its intent to object to any transfer of its case to the Southern District of New York. *Id.,* ¶23,

Exhibit 7-8. On February 13, 2004, Judge Scheindlin held oral argument on the remand motions

before her, which remain pending at this time. *Id.,* Exhibit 9.

---

[2] Judge Scheindlin denied class certification in the matter, *see In Re: MTBE,* 209 F.R.D. 323 (S.D.N.Y.
2002), and all the cases were resolved.

On February 6, 2004, the Panel issued CTO-4.  On February 18, 2004, Cal-American filed with the Panel a Notice of Opposition to the CTO.  Cal-American now moves to vacate.

## C.    Previous MTBE Litigation.

The *Cal-American* Action and other MTBE-related cases recently removed to federal courts in various parts of the country are preceded by a significant number of cases filed in federal and state courts regarding MTBE, some of which have produced universally-applicable discovery on common questions of fact and consistent rulings on common legal questions.  Sher Decl., ¶¶ 3-20.  In at least three major cases – the prior proceedings in MDL No. 1358, *South Tahoe Public Utility District v. Atlantic Richfield Co.,* Cal. Super. Ct., S.F. Cty. Case No. 999128 ("*South Tahoe*"), and *Communities for a Better Environment v. Unocal Corp.,* Cal. Super. Ct., S.F. Cty. Case No. 997013 ("*CBE*") – the parties completed detailed, extensive and coordinated discovery on generally applicable issues related to defendant liability.  Sher Decl., ¶¶ 7-10, 12-13, 14-16.  The *South Tahoe* action went to trial on the issues of refiner/manufacturer liability, product defect and malice, and, after a four-month trial, resulted in a plaintiff's verdict on each of these issues.  *Id.,* ¶¶ 7, 9.  All of the discovery and testimony from these cases exists and can be made available to the parties in the *Cal-American* Action.  *Id.,* ¶¶ 11, 13, 17-18, Exhibit 4.

## III.    LEGAL ARGUMENT

Regardless of how other MTBE cases are treated, the conditional transfer of the *Cal-American* Action to MDL No. 1358 (or any other MDL) should be vacated because transfer would neither further the just and efficient conduct of the litigation on common questions of fact or law, nor serve the convenience of the parties and witnesses. The statutory factors considered by the Panel in deciding whether to uphold the conditional transfer of a an alleged tag-along action are: (1) whether there are common questions of fact between the alleged tag-along action

9

and existing MDL cases; (2) whether transfer would serve the convenience of parties and witnesses; and (3) whether transfer would serve the just and efficient conduct of the actions.  28 U.S.C. § 1407; JPML Rule 1.1; *In re Managed Care Litig.*, 246 F. Supp 2d 1363, 1364 (JPML 2003); *In re Enron Corp.*, 227 F.Supp.2d 1389, 1391 (JPML 2002).  The Panel has held that all three criteria must be met to justify transfer, *In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972,* 388 F. Supp. 574, 575 (JPML 1975), and that the third criterion is the "most important." *In re Tobacco/ Governmental Health Care Costs Litig., supra,* 76 F. Supp. 2d at 8, *citing* 15 C. Wright, A. Miller & E. Cooper, Federal Practice And Procedure, § 3863 at 535 (1986).  In analyzing whether transfer would serve the just and efficient conduct of actions under section 1407, the Panel primarily considers whether transfer and consolidation will avoid duplicative discovery and inconsistent pretrial rulings. *See, e.g., In re TMJ Implants Products Liability Litig.,* 844 F. Supp. 1553, 1554 (JPML 1994).

The *Cal-American* Action is inappropriate for MDL treatment for two reasons.  First, resolution of Cal-American's Remand Motion – the first, and likely only, substantive motion to be considered by a federal court in this Action – by an MDL court will not conserve judicial resources, because jurisdictional arguments raised therein differ materially from those raised by the plaintiffs currently before the Transferee Court.  Second, even if the Action somehow remains in federal court, the likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a) discovery regarding the few questions of fact shared with other MTBE-related cases already has largely been completed and is or can be made available to all parties; and (b) the Transferee Court, as well as numerous other federal and state courts, already have

issued remarkably consistent rulings on most, if not all, common legal issues. Thus, the

Northern District of California is in a position to rule expeditiously on the Remand Motion, as

well as on other pretrial motions, and to preside over the remaining localized and site-specific

discovery. For these reasons, the *Cal-American* Action will "proceed more expeditiously if left

alone." *See In re Sears, Roebuck & Co. Employment Practices Litig.,* 487 F. Supp. 1362, 1363

(JPML 1980).

## A.   No Savings Of Judicial Resources Will Be Gained From Consolidated Treatment Of Cal-American's Remand Motion.

Because Judge Scheindlin did not have a copy of the complaint, removal notice, or

Remand Motion filed in the *Cal-American* Action before her, the determination in her December

23, 2003 Order that the remand issues raised in various "similar removed" cases around the

country are "appropriate" for MDL treatment should not apply to the *Cal-American* Action. *See*

Sher Decl., ¶¶ 23, 26. In fact, Cal-American's Remand Motion differs from, and, is significantly

less complex than, the remand motions pending before Judge Scheindlin. This militates against

transfer.

Unlike the MTBE cases in the Transferee Court, the *Cal-American* Action arises in the

Ninth Circuit, which has *twice* definitively rejected as a matter of law the Clean Air Act

preemption arguments on which defendants base their assertion of federal jurisdiction. *Davis II,*

*supra,* 331 F.3d at 670, 673; *ExxonMobil, supra,* 217 F.3d at 1253.[4] Thus, although the

jurisdictional bases asserted by the defendants in this Action may overlap with those raised by oil

company defendants in other recently removed MTBE cases, Cal-American's Remand Motion

cannot necessarily be resolved based on what Judge Scheindlin decides in the cases before her.

---

[4] In addition, a review of the transcript from the February 13, 2004 hearing on the remand motions before the Transferee Court reveals that, in those cases, defendants' jurisdictional arguments hinge largely (if not entirely) on specific allegations from the complaints in those cases, *see* Sher Decl., Exhibit 9 at 10-12, 20-22, 25-28 – not a single one of which appears in Cal-American's Complaint.

See In re 'East of the Rockies' Concrete Pipe Antitrust Cases, 302 F. Supp. 244, 254 (JPML 1969) (Weigel, J., conc.) ("neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, ipso facto, by transfer just because there are common questions") As the underlying legal arguments raised in Cal-American's Remand Motion are different, the risk of inconsistent rulings absent transfer, as well as any perceived judicial economy, is illusory. As the court held in Board of Trustees v. Worldcom, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002):

> When remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of judicial resources. The threat of inconsistent judgments in either case is de minimis.

See also Havens Protected "C" Clamps, Inc., supra, 2000 WL 382027, at *2 (holding that where "resolution of the motion to remand does not necessarily implicate issues common to the other actions currently pending before the MDL Panel-designated court," remand motion should be considered by transferor court). Consequently, there is nothing but delay to be gained from transferring this action to the Southern District of New York, when the Northern District of California is at least as capable of deciding the unique issues raised in Cal-American's Remand Motion in an expeditious manner.

**B.    Even If the *Cal-American* Action Is Not Remanded to State Court, The Likelihood Of Inconsistent Pretrial Rulings And Duplicative Discovery Is Minimal.**

Even if the *Cal-American* Action were somehow to remain in federal court, pretrial consolidation would serve neither the convenience of the parties and witnesses nor the just and efficient conduct of the litigation because: (1) to the extent that the Action shares common questions of fact or law with other pending cases, discovery on common factual questions is

largely completed and available; and (2) most common legal issues already have been addressed by the Transferee Court and other courts.

### 1. There Are Relatively Few Common Questions Of Fact Between The *Cal-American* Action And Other MTBE Cases On Which Available Discovery Is Not Already Largely Completed.

The Panel consistently has held that MDL transfer of later-filed actions is neither necessary nor appropriate when discovery relating to common issues already has been completed in the transferee court and/or can be made available to the parties in actions before the Panel without recourse to § 1407.[5]  In this instance, discovery pertaining to the few common factual questions shared between the *Cal-American* Action and other allegedly related MTBE cases is also largely completed and available to all parties.  Accordingly, the risk of duplicative discovery is minimal, and there is no need for MDL consolidation.

In their Notice of Related, Tag-Along Actions, defendants identify the following alleged "common question of fact" arising in this and the other listed actions: "whether defendants knew

---

[5] *See, e.g., In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (JPML 2002) (transfer denied where litigation was mature, discovery nearly completed in some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of duplicative discovery); *In re Indian Motorcycle Bankruptcy and Receivership Litig.*, 206 F. Supp. 2d 1365 (JPML 2002) (same);  *In Re Air Crash Disaster Near Upperville, Virginia*, 430 F. Supp 1295, 1297 (JPML 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all parties in the new actions before the Panel have access to all discovery obtained in the transferee district); *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp 221, 223 (JPML 1981) (CTO vacated where discovery of common issues has been completed in the transferee district and could be made available to the parties in the actions before the Panel without recourse to section 1407); *In Re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 582 F Supp 890, 891 (JPML 1984) (same); *In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 436 F. Supp. 404, 406 (JPML 1977) (transfer denied where discovery on common issues in transferee court "virtually completed"); *In re Eli Lilly & Co. "Oraflex" Products Liability Litig.*, 578 F. Supp. 422, 423 (JPML 1984) (transfer denied because possibility of duplicative discovery "eliminated" by availability of extensive discovery in areas of common factual inquiry from already concluded and well-advanced related actions); *In re Dow Chemical Co. "Polystyrene Foam" Products Liability Litig.*, 429 F. Supp. 1035, 1036 (JPML 1977) (need for transfer "obviated" because discovery on common questions of fact regarding defendants' knowledge and product's defectiveness had been completed and parties had agreed that such discovery would be applicable in all actions); *In re McDonald's Franchise Antitrust Litigation*, 472 F. Supp. 111, 114-115 (JPML 1979) (transfer denied where discovery on common questions was largely completed in some cases and available for use in less advanced cases).

about and misrepresented the nature of MTBE and conspired to market MTBE without

disclosing its risks to downstream users, the federal government or the public."  Notice of

Related Tag-Along Actions, filed Dec. 5, 2003, ¶2.  To the extent this constitutes a question of

fact shared by the *Cal-American* Action and other alleged tag-along actions, discovery on this

question as to many, if not all, of the defendants named in the *Cal-American* Action was largely

completed in the prior incarnation of MDL No. 1358, as well as in the *South Tahoe* and *CBE*

cases.[6]  Sher Decl., ¶¶ 7-10, 12-13, 14-16, 19-20.  The same is true with respect to expert

discovery on the related question of whether MTBE and/or MTBE gasoline is a defective

product.  *Id.*, ¶¶ 10, 13, 15, 19-20.  Overall, literally millions of liability-related documents have

been produced and hundreds of witnesses have been deposed, including percipient witnesses at

the defendant companies and at trade associations like the American Petroleum Institute and

Oxygenated Fuels Association, and numerous expert witnesses.  *Id.*, ¶¶ 8, 13, 15-16.

Moreover, all of this discovery is, or could easily be made, readily available to the parties

in the *Cal-American* Action.  *Id.*, ¶¶ 11, 13, 17-18.  For example, the document depository in the

Transferee Court, which still exists, was established with the specific purpose of making those

documents available to parties in other cases.  *Id.*, ¶ 17-18, Exhibit 4 (*In re MTBE Products*

*Liability Litig.*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001) (providing that

attorneys in any MTBE action may make use of documents produced in the litigation subject to

the requirements of the order)).  The documents, depositions and trial testimony from the *South*

*Tahoe* and *CBE* cases also can be made available to the parties in the *Cal-American* Action.

Sher Decl., ¶¶ 11, 13.  Indeed, as the Panel has routinely recognized, procedures other than MDL

consolidation are available to both courts and parties to permit use of discovery on common

---

[6] This "notice and knowledge" discovery is relevant to each of Cal-American's common law claims
against the refiner defendants,  *See* Complaint,  ¶¶ 64, 81, 91, 100, and 109.

issues from prior related cases, such as stipulations and orders to show cause. *See, e.g. In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, *supra*, 199 F. Supp. 2d at 1378, citing Manual for Complex Litigation, Third, § 31.14 (1995).

In contrast, few, if any, of the remaining major factual issues in the *Cal-American* Action – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to MTBE, the extent of contamination, the available remedies, the cost of those remedies, and liability for those damages – can be considered "common questions of fact," as they revolve primarily, if not exclusively, around localized and site-specific issues. For example, the questions of causation, warnings, and the feasibility of alternatives will require extensive discovery regarding the gasoline infrastructure in California generally and in the area of specific product identification (*i.e.* whose MTBE and/or gasoline containing MTBE was delivered to release sites affecting California-American's water supply) – discovery that will be "of no interest" to other MTBE plaintiffs. *In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (JPML 1979) (denying transfer where discovery in one action would be "of no interest" to parties in another; *see also Oxygenated Fuels Ass'n v. Pataki*, No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (economic effect of MTBE ban influenced by gasoline infrastructure, which varies from state to state); *In re MTBE Products Liability Litig.*, 209 F.R.D. 323, 344, 347 (S.D.N.Y. 2002) (denying class certification because there are differences in the source of contamination for each well owner and issues regarding warnings given to intermediate vendees and UST owners and operators are "individual").

Similarly, questions regarding the extent of contamination, available remedies, and implementation and cost of those remedies will also be location and site-specific. In fact, in denying class certification in the original MDL No. 1358 cases, the Transferee Court itself

concluded that questions regarding contamination of any particular well present "a factually unique set of circumstances," because there are "differences in the level of contamination . . . and the nature of relief that each will require." *In re MTBE Products Liability Litig., supra*, 209 F.R.D. at 337, 344; *see also In re Grand Funk Railroad Trademark Litig.*, 371 F. Supp. 1084, 1085 (JPML 1974) (no benefit from transfer where discovery "will focus localized factual issues"); *In re Air Crash at Pago Pago, Am. Samoa*, 394 F. Supp. 799, 800 (JPML 1975) (noting that in tort litigation, common questions may pertain to liability, whereas the issue of damages is unique).

In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery is largely complete and available to all parties. The discovery that remains will focus primarily on California and site-specific issues, which can be better handled by the Northern District of California.

### 3.    The Transferee Court And Other Courts Already Have Resolved Most Common Legal Issues.

Just as discovery on any common factual issues is already well-advanced in the Transferee Court (and elsewhere), common pretrial legal issues already have been decided by the Transferee Court, and by other federal and state courts. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in . . . preventing inconsistent pretrial rulings." *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation, supra*, 505 F. Supp at 223; *see also In re Western Electric Co., Inc. Semiconductor Patent Litigation, supra*, 436 F. Supp. at 406 (transfer unwarranted where transferee court's views on key legal issues are well documented, and will put home-court judge "closer to the shoes of the transferee judge").

16

In her landmark ruling on defendants' motions to dismiss in the original set of cases transferred to MDL No. 1358, Judge Scheindlin, in a lengthy and thorough opinion, set forth a roadmap for the many of the key common legal issues in these cases that other judges can easily follow. *See In re MTBE Products Liability Litig., supra*, 175 F. Supp. 2d 593. First, the Court rejected defendants' federal preemption defense, *id.* at 611-616,[7] as has the Ninth Circuit and every other published opinion addressing the question.[8] The Transferee Court also rejected defendants' primary jurisdiction argument, as well as their related argument that defective product claims concerning MTBE require an impermissible reexamination of EPA's cost-benefit analysis regarding MTBE. *In re MTBE Products Liability Litig., supra*, 175 F. Supp. 2d at 616-618, 623-625. The court further upheld the sufficiency of each of the common law tort claims asserted in the *Cal-American* Action, including claims alleging refiner liability under theories of strict products liability, negligence, nuisance and trespass. *Id.* at 623-629.[9] In addition, at least one California jury has found that MTBE gasoline is a defective product. Sher. Decl., Exhibit 3.

With this extensive guidance already in place, the risk of inconsistent pretrial rulings on these common legal questions in the *Cal-American* Action, if left to proceed in its home district,

---

[7] Although Judge Scheindlin left open the factual question of whether there were practicable alternatives to MTBE available for defendants' use under the federal Clean Air Act, *id.* at 616, the Ninth Circuit has closed the door on this question by holding as a matter of law that a smoothly functioning gasoline market and inexpensive gasoline are not goals of the Clean Air Act. *Davis II, supra*, 331 F.3d at 673. In any case, as described in section III.B.1., *supra*, the question of feasibility of alternatives depends on the gasoline market and infrastructure in the relevant locality, and thus is not the kind of question on which coordinated discovery will yield any efficiencies.

[8] *See Davis II*, 331 F.3d 665, *affirming Oxygenated Fuels Ass'n v. Davis* ("*Davis I*"), 163 F. Supp. 2d 1182 (E.D. Cal. 2001); *ExxonMobil, supra*, 217 F.3d 1246; *Oxygenated Fuels Ass'n v. Pataki* (N.D.N.Y. 2001) 158 F.Supp.2d 248 (upholding New York ban of MTBE); *Oxygenated Fuels Ass'n v. Pataki* ("*Pataki III*"), 293 F. Supp. 2d 170 (N.D.N.Y. 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA); *see also Abundiz v. Explorer Pipeline Co.*, 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state MTBE contamination case does "not conflict with the Congressional clean air objectives").

[9] In evaluating the sufficiency of the plaintiffs' common law claims, the Transferee Court specifically applied California law.

is minimal.  At the same time, the pretrial legal questions raised in the *Cal-American* Action that

have not yet been resolved by the Transferee Court or other courts in the context of MTBE

litigation – such as the scope and applicability of the state statutory claims asserted in the case

and the applicability of any statute of limitations or other equitable defenses, to name a few – are

not shared with other MTBE cases.  These questions are best addressed by a court with more

experience and familiarity with California law.  Thus, the benefits of permitting this case to

proceed on its own in its home district outweigh the benefits (if any) of transfer.  *See In re Grand*

*Funk Railroad, supra*, 371 F. Supp. at 1085 ("Panel must weigh any benefit that transfer would

provide in the way of eliminating the possibility of inconsistent pretrial decisions against the

efficient administration of the litigation as a whole").  Accordingly, the Conditional Transfer

Order (CTO-4) as it applies to the *State* Action should be vacated.

## IV.    CONCLUSION

For the foregoing reasons the State's Motion to Vacate Conditional Transfer Order

(CTO-4) as it applies to the *State* Action should be granted.

Respectfully submitted,

Dated:  March 4, 2004

SHER LEFF, LLP
Victor M. Sher, SBN 96197
Todd E. Robins, SBN 191853
450 Mission Street, Suite 500
San Francisco, CA  94105
Tel: (415) 348-8300
Fax: (415) 348-8333

BARON & BUDD, P.C.
Scott Summy (Admitted *Pro Hac Vice*)
Celeste A. Evangelisti, SBN 225232
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 523-6267
Facsimile: (214) 520-1181

Counsel for Plaintiff California-American Water Company

E

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| IN RE:<br><br>**METHYL-TERTIARY BUTYL ETHER<br>("MTBE") PRODUCTS LIABILITY<br>LITIGATION** | **MDL Docket No. 1358** |

## MEMORANDUM IN SUPPORT OF MOTION TO

## VACATE CONDITIONAL TRANSFER ORDER

### INTRODUCTION

By this motion pursuant to Rule 7.4(d) of the Rules Of Procedure Of The Judicial

Panel On Multidistrict Litigation Under 28 U.S.C. § 1407 ("JPML"), defendants Duke Energy

Merchants, LLC, Duke Energy Trading and Marketing, LLC, Duke Energy Merchants

California, Inc. and Northridge Petroleum Marketing, U.S. Inc. (collectively, "Duke Energy")

urge the Panel to vacate Conditional Transfer Order (CTO-4) filed February 6, 2004, in Docket

44510\39382v3

No. 1358 (*In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*) as it relates *City of Fresno v. Chevron U.S.A., Inc. et al.*, CV 03-5378-JSW (N.D. Cal.).

Duke Energy is a middleman in the gasoline supply chain in certain markets in California. Like other middlemen and various gasoline retailers, Duke finds itself caught up in a battle royal between, on the one hand, the major oil refining companies and the manufactures of the gasoline additive MTBE, and on the other hand, plaintiffs allegedly injured by MTBE contamination in groundwater. Duke Energy opposes transfer of the *City of Fresno* case because MDL consolidation will not promote the just and efficient conduct of that action. Nor is MDL consolidation of that action likely to serve the convenience of the parties, many of whom are likely to be small-scale gas station operators (literally moms and pops) and modest-sized distributors.

Moreover, in light of the history of the other California MTBE cases, it would appear that MDL consolidation is being pursued primarily for potential tactical advantage to a small but well-heeled group of defendants. MTBE litigation in California began in the late 1990s. Since then, several MTBE cases have been litigated through discovery and pretrial motions. One case proceeded to jury verdict. The results in these cases have not been particularly kind to the major oil companies and the vendors of MTBE who now seek MDL consolidation. Their settlement commitments in just three cases exceed $150 million. So the desire of these defendants to shake up the playing field, and to use MDL consolidation to find greener pastures in which to litigate California MTBE cases, is surely understandable. Placating that desire will not, however, serve the purposes stated in 28 U.S.C. § 1407.

Nor is MDL consolidation in any sense necessary to achieve efficient use in the *City of Fresno* case of discovery and pretrial rulings from prior MTBE cases. Mechanisms

utilized by the Panel in other circumstances in which conditional transfer orders have been vacated are sufficient to ensure that discovery and pretrial motion practice proceed efficiently and with the benefit of work devoted to those topics in prior cases.

In the final analysis, the primary result of MDL consolidation will be to force parties of modest means and limited exposure to accommodate a court three time zones and thousands of miles away. Duke Energy accordingly submits that the *City of Fresno* case should remain in California.

## STATEMENT OF FACTS

A.      **The Major California MTBE Cases To Date**

1.      **The South Lake Tahoe Litigation**

In 1998, the South Tahoe Public Utility District filed suit against various manufacturers of MTBE, oil refiners that added MTBE to their gasoline, and others involved in the supply chain for gasoline sold in and around the south end of Lake Tahoe (which straddles the California-Nevada border). The action was filed in the Superior Court for the County of San Francisco, and it was titled *South Tahoe Public Utility District v. Atlantic Richfield Company, et al.* (No. 999128). Duke Energy was not a party to that suit, but the undersigned counsel represented a retailer defendant in that action. The plaintiff alleged products liability and other common law causes of action.

Vigorous discovery and pretrial motion practice occurred from 1998 until late 2001. The index to the undersigned's pleading binders reached its 1000th entry in early 2000, long before the trial in the fall of 2001. The discovery focused on local issues (e.g., the nature, extent, and specific sources of the contamination) as well as industry-wide issues (the history of MTBE's introduction into gasoline, its use as a oxygenate during the 1990s, and the refining

companies' alleged knowledge of MTBE's potential to damage groundwater).

Some defendants settled along the way (including the undersigned's client in that matter), but others did not.  Trial began in late 2001 and continued until April 2002, at which time the jury determined that gasoline containing MTBE was a defective product.  Shortly thereafter, the remaining defendants agreed to pay approximately $60 million to settle the case.

### 2.      The Santa Monica Litigation

The City of Santa Monica, California, filed similar litigation (*City of Santa Monica v. Shell Oil Company, et al.,* Orange Co. Sup. Ct. No. 01-CC-04331) against a similar array of defendants in the late 1990s.  Santa Monica's litigation was proceeding in the trial court until a settlement was reached in late 2003.  The undersigned did not participate in that case but has recently obtained a copy of the settlement agreement.  Based on press reports and our brief review of the settlement agreement, it appears that the settling defendants agreed to make payments in excess of $90 million and to help fund the operation of a groundwater treatment system.

### 3.      The Cambria Litigation

In 2000, the Cambria Community Services District ("CCSD"), which serves a community along California's Central Coast, filed suit in San Luis Obispo County Superior Court asserting nuisance, trespass and product liability claims against Chevron and others (*Cambria Community Services District v. Chevron U.S.A., Inc., et al.).*  Plaintiff sought damages for MTBE and gasoline contamination of the community's groundwater resources.  The case proceeded in state court until a settlement was reach in late 2003.  According to reports in the legal press, the settlement calls for payments in excess of $9 million dollars.

### 4.    The Fruitridge Vista Water Company Litigation

The Fruitridge Vista Water Company, which provides drinking water to a portion of the Sacramento, California metropolitan area, filed a lawsuit in March 2001 concerning MTBE contamination in its wells (*D.J. Nelson Trust, dba Fruitridge Vista Water Company v. ARCO, et al.*, Case No. 02AS00535 Sacramento Co. Sup. Ct.). The defendants include the manufacturers of MTBE, the oil refiners that supply gasoline to the Sacramento aea, various middlemen (including Duke Energy), and numerous owners and operators of the underground tanks that are alleged to have released MTBE-containing gasoline that allegedly has impacted plaintiff's wells. Discovery is currently proceeding. Numerous document production requests and document subpoenas have been served, and a considerable volume of documentation has been produced. Depositions of percipient witnesses including local station operators, local environmental consultants, and local regulators are proceeding.

### B.    The MDL 1358 Litigation

Between October 2000 and March 2001, the Panel consolidated six actions brought by well owners against oil companies that alleged that MTBE contaminated their wells. The cases were transferred to the Southern District of New York and were handled by the Honorable Shira Ann Scheindlin under MDL Docket No. 1358. In August 2001, Judge Scheindlin issued an opinion addressing several pretrial issues, including issues of express and conflict preemption, standing, and jurisdiction. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001). Judge Scheindlin also denied the plaintiffs' motion for class certification. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002). At the time of the

filing of the Tag-Along Notice for the *City of Fresno* case there were no cases pending in MDL

Docket No. 1358.

## C.   The Fresno Litigation Now Before The Panel

The City of Fresno filed its complaint on October 22, 2003, alleging that plumes

of MTBE and tertiary butyl alcohol ("TBA") have contaminated the water system in Fresno.

The complaint includes causes of action for products liability, negligence, trespass, and nuisance.

The defendants include numerous manufacturers of MTBE/TBA, several distributors like Duke,

and two hundred service station owner/operators named as "Doe" defendants.

On December 5, 2003, several defendants filed a Notice of Related, Tag-Along

Actions with the Panel, arguing that the *City of Fresno* case involves "common questions of fact

with actions previously transferred under Section 1407" to MDL No. 1358.   The Clerk of the

Panel issued CTO-4 on February 6, 2004, and therein set February 23, 2004 as the deadline for

parties to object to the transfer.  Duke filed its Notice of Objection on February 20, 2004.

## ARGUMENT

## A.   Transfer Will Not Promote Just Or Efficient Litigation And Is Inconvenient To The Parties and The Witnesses

Consolidation of multiple actions before a single court is appropriate where the

MDL Panel finds that such transfer will serve "the convenience of parties and witnesses and will

promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  However, where

the common issues have already been litigated and resolved, the MDL Panel has held

consolidation is not appropriate for newly filed "tag along" actions, because the courts and

parties involved in the later actions can obtain the benefits of consolidation by sharing discovery

and implementing previous pretrial rulings without resorting to transfer.  *See, e.g., In re: A.H.*

*Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221, 223 (D. Kansas 1981).

In evaluating a proposed transfer, the Panel has typically focused on the potential to avoid duplicative discovery, to prevent inconsistent pretrial rulings, and to conserve time and efforts of the parties and witnesses. *See In re Petroleum Products Antitrust Litigation*, 476 F.Supp. 455, 457 (N.D. Cal. 1979).

Duke submits that although the circumstances favoring MDL consolidation of MTBE cases may have existed years ago, they do not exist today. MTBE litigation is now well developed. Through earlier litigation in California, the parties have completed much if not all of the discovery common to MTBE cases. As a result, consolidation and transfer now would amount to closing the barn door after the horses are gone. Furthermore, because the issues that remain are largely location specific, consolidation would likely produce inefficiency. A court three time zones away cannot supervise discovery in Fresno, California, as efficiently as a court in California. Transfer will only hinder local discovery and the resolution of pretrial issues. Little benefit exists to consolidating a California case in the Southern District of New York.

### 1.   The Specter of Duplicative Discovery Does Not Exist

As noted above, MTBE litigation is not new. Causes of action for MTBE contamination have been litigated for several years, and voluminous discovery was completed in the *Tahoe* litigation. Discovery in that case included national issues (e.g., the actions of the MTBE manufacturers and the oil companies that caused MTBE to be added to gasoline). In instances such as this, the MDL Panel has created alternatives to transfer that accomplish the goals of multidistrict litigation under 28 U.S.C. § 1407.

For example, in *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 460 F.Supp. 540 (J.P.M.L. 1975), the MDL Panel transferred multiple product liability actions for defective Dalkon Shield IUDs to the District of Kansas. After the parties completed discovery in the transferee district, additional plaintiffs brought actions against the defendant A.H. Robins. The clerk of the MDL Panel conditionally transferred the newly filed actions to the District of Kansas for inclusion in the centralized pretrial proceedings. *See In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation.* 505 F. Supp. 221, 223 (D. Kansas 1981). Upon motion to vacate the conditional transfer order, the MDL Panel held that transfer was not appropriate. *Id.* The MDL Panel stated that

> [a]lthough we recognize that these actions share questions of fact with actions previously transferred in this litigation, we are not persuaded that transfer under Section 1407 remains appropriate for newly filed actions in this docket. This litigation has been pending for over five years and discovery of common issues have been completed in the transferee district. This completed discovery can be made available to the parties in the actions before the Panel without recourse to Section 1407.

*Id.* at 223.

*In re: Petroleum Products Antitrust Litigation*, 419 F. Supp 712 (J.P.M.L. 1976), stands for the same proposition. There, the MDL Panel consolidated various antitrust actions in the Central District of California. The transferee judge actively controlled the course of discovery and other pretrial proceedings. Subsequently, additional plaintiffs brought new antitrust actions and sought to have them transferred for inclusion in the consolidated cases. *See In re: Petroleum Products Antitrust Litigation*, 476 F.Supp. 455 (C.D. Cal. 1979). Rather than transfer the new cases for inclusion in a process that was substantially completed, the MDL Panel vacated the conditional transfer order. *Id.* at 458. The MDL Panel held that the benefits of consolidation could be achieved by alternatives means. *Id.* For instance, discovery already

completed in the transferee district and relevant to the new action could be made applicable to the new action. *Id.* Additionally, the parties could stipulate that discovery relevant to all of the actions could be used in all of those actions. *Id.* The court also suggested that notices for particular depositions could be filed in all relevant actions, thereby making the deposition applicable in each action. *Id.* Thus, the parties could avoid duplicative discovery and garner the benefits of the already-completed discovery.

In the context of MTBE litigation, the discovery pertaining to national issues has been completed. The outstanding issues are predominantly location specific (the extent of the contamination, the availability and feasibility of remediation alternatives, and the allocation of responsibility). As a result, the Panel should leave the Fresno case in California and employ alternatives to transfer so that discovery can be focused where it belongs – on the outstanding location–specific issues.

### 2.   Alternatives To Transfer Can Also Avoid Inconsistent Pretrial Rulings

As with the potential for duplicative discovery, the MDL Panel has created alternatives to transfer and consolidation that alleviate the threat of inconsistent pretrial rulings. The MDL Panel has vacated conditional transfer orders on the principle that like discovery, courts can coordinate pretrial orders and rulings to "secure the benefits of section 1407 transfer while avoiding the frustration of local consolidation [in the transferee court] which transfer . . . would generate." *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp. at 223. The MDL Panel also has vacated conditional transfer orders on the principle that "consultation and cooperation among the . . . district courts, if viewed appropriately by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings." *In re: Petroleum Products Antitrust Litigation*, 476 F.

Supp. at 458.

In the context of MTBE litigation, many pretrial issues including standing and jurisdiction have already been decided by Judge Scheindlin during the previous transfer of MTBE cases to the Southern District of New York. These issues are thus not likely candidates for relitigation in the Fresno case. The MDL Panel has noted that such previous pretrial decisions "can provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in avoiding duplication of discovery and preventing inconsistent pretrial rulings." *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. at 23.

The issue recently briefed in various courts concerning the extent to which state common law causes of action may be preempted by federal law, particularly the Clean Air Act and its regulations, does not warrant consolidated treatment of the various MTBE cases. The Panel should understand that multiple published federal court decisions and state court decisions have consistently resolved this issue unfavorably for the moving defendants. *E.g., Oxygenated Fuels Ass'n v. Pataki*, 158 F. Supp. 2d 248 (N.D.N.Y 2001); *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665 (9th Cir. 2003); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 593 (S.D.N.Y. 2001); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1284 (W.D. Tex. 1992); *South Tahoe Public Utility District v. Atlantic Richfield Co.*, No 999128 (Cal. Super. Ct., San Francisco County, Jan. 15, 2002).

Because the threshold legal questions have been addressed and therefore will not require significant additional judicial energy, transfer simply is not warranted and can be avoided. The courts can eliminate the threat of inconsistent decisions by applying previous pre-trial rulings to the current MTBE cases.

### 3.   Transfer Will Not Result In Just And Efficient Resolution

As previously noted, issues of national significance or applicability have largely been resolved in previous MTBE litigation.  Consequently, what remains is predominantly location specific.  Litigation of these local issues in the Southern District of New York would not be just or efficient for operators of service stations and regional businesses.  Those defendants are based in California and are Duke Energy's knowledgeable business people.  To require these defendants, with local counsel and site-specific factual disputes, to litigate their discovery issues three thousand miles away in the Southern District of New York simply because a handful of major oil companies want that would not be just or efficient.

An examination of the case, *D.J. Nelson Trust, dba Fruitridge Vista Water Company v. ARCO, et al*, currently being litigated in the Sacramento County Superior Court, illustrates this point.  The *Fruitridge* parties are currently involved in deposing the individual service station owners who live and work in California's central valley.  Their depositions concern the practices and procedures specific to their local service station.  Further, the parties are seeking discovery on the document retention policies of the local water agency and deposing the local geologists and hydrogeologists that work for the plaintiff and the local regulatory agencies.  The notion that these California-based entities will be better served by having in the Southern District of New York supervise the discovery process is simply dubious.  Transfer of this case to the Southern District of New York will do nothing to facilitate the parties' discovery of the location-specific factual issues that remain.

### CONCLUSION

MTBE litigation is not as a gathering storm will likely to produce a blizzard of motions and conflicting opinions, thus warranting MDL consolidation.  Rather, it is a mature field

that now revolves around location-specific issues:  the extent of contamination, the available remedies, the implementation of those remedies, and the equitable apportionment of liability. With all due respect, Duke Energy submits that the Southern District of New York is not the most efficient forum in which to handle such issues as they relate to contaminated groundwater in Fresno, California.  The Panel should vacate the Conditional Transfer Order as it relates to the City of Fresno case.

Dated: March 8, 2004                    Respectfully submitted,

                                        By: _____
                                            Robert P. Doty, Bar No. 148069
                                            Karleen M. O'Connor, Bar No. 229531
                                            **COX, CASTLE & NICHOLSON LLP**
                                            555 Montgomery Street, 15th Floor
                                            San Francisco, CA  94111-2585
                                            (415) 392-4200
                                            (415) 392-4250 (Facsimile)

                                        Attorneys for Defendants
                                        Duke Energy Merchants, LLC; Duke Energy
                                        Trading and Marketing, LLC; Duke Energy
                                        Merchants California, Inc.; and Northridge
                                        Petroleum Marketing U.S., Inc.

F

RECEIVED

MAR 2 9 2004

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL Docket No. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *People of the State of California, et al. v.* |
| | ) *Atlantic Richfield Co., et. al.,* 03-2653 |
| | ) GEB DAD (E.D.Cal.); |
| | ) |
| | ) *Orange County Water District v. Unocal,* |
| | ) *et al.,* 03-1742 JVS (ANx) (C.D. Cal.); |
| | ) |
| | ) *City of Riverside v. Atlantic Richfield* |
| **IN RE:** | ) *Co., et al.,* 04-53 JVS (ANx) (C.D. Cal.); |
| | ) |
| | ) *Quincy Comm. Serv. Dist. v. Atlantic* |
| **METHYL TERTIARY BUTYL ETHER** | ) *Richfield Co., et al.,* 03-2582 LKK DAD |
| **PRODUCTS LIABILITY LITIGATION** | ) (E.D. Cal.); |
| | ) |
| | ) *City of Roseville v. Atlantic Richfield Co.,* |
| | ) *et al.,* 03-2601 MCE GGH (E.D. Cal.); |
| | ) |
| | ) *Martin Silver, et al. v. Alon USA Energy,* |
| | ) *Inc., et al.,* 03-2408 WQH (S.D. Cal.) |
| | ) |
| | ) **PLAINTIFFS' JOINT MOTION TO** |
| | ) **VACATE CONDITIONAL** |
| | ) **TRANSFER ORDER (CTO-5); BRIEF** |
| | ) **IN SUPPORT THEREOF** |

## PLAINTIFFS' JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

1.     City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater

Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water

District, Florin Resource Conservation District, Rio Linda Elverta Community Water District,

Sacramento Suburban Water District, San Juan Water District, California-American Water

Company and City of Sacramento ("Sacramento County Plaintiffs") are plaintiffs in the action

*People of the State of California, et al. v. Atlantic Richfield Co., et. al.*, Case No. 03-2653 GEB

DAD (E.D.Cal.) ("*Sacramento County* Action"),[1] which is identified as a "tag-along case" in the

schedule of district court civil actions subject to CTO-5, issued by the Panel on February 25,

2004.  The Sacramento County Plaintiffs hereby move the Panel to vacate the above-referenced

conditional transfer order as it applies to the *Sacramento County* Action on the grounds that such

action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. §

1407.

    2.     Orange County Water District is the plaintiff in the action *Orange County Water*

*District v. Unocal, et al.*, Case No. 03-1742 JVS (ANx) (C.D. Cal.) ("*Orange County* Action"),

which is identified as a "tag-along case" in the schedule of district court civil actions subject to

CTO-5, issued by the Panel on February 25, 2004.  Orange County Water District hereby moves

the Panel to vacate the above-referenced conditional transfer order as it applies to the *Orange*

*County* Action on the grounds that such action does not meet the required criteria for transfer and

consolidation set forth in 28 U.S.C. § 1407.

    3.     City of Riverside is the plaintiff in the action *City of Riverside v. Atlantic*

*Richfield Co., et al.*, Case No. 04-53 JVS (ANx) (C.D. Cal.) ("*Riverside* Action"), which is

identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-5,

issued by the Panel on February 25, 2004.  The City of Riverside hereby moves the Panel to

vacate the above-referenced conditional transfer order as it applies to the *Riverside* Action on the

---

[1] The Sacramento County Plaintiffs identified in Paragraph 1 of this Motion to Vacate comprise all plaintiffs in the *Sacramento County* Action except the People of the State of California.  It is the understanding of undersigned counsel that the People are filing a separate motion to vacate CTO-5.

grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

4.      Quincy Community Services District is the plaintiff in the action *Quincy Community Services District v. Atlantic Richfield Co., et al.,* Case No. 03-2582 LKK DAD (E.D. Cal.) ("*Quincy* Action"), which is identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-5, issued by the Panel on February 25, 2004.  Quincy Community Services District hereby moves the Panel to vacate the above-referenced conditional transfer order as it applies to the *Quincy* Action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

5.      City of Roseville is the plaintiff in the action *City of Roseville v. Atlantic Richfield Co., et al.,* Case No. 03-2601 MCE GGH (E.D. Cal.) ("*Roseville* Action"), which is identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-5, issued by the Panel on February 25, 2004.  City of Roseville hereby moves the Panel to vacate the above-referenced conditional transfer order as it applies to the *Roseville* Action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

6.      Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso ("Silver Plaintiffs") are the plaintiffs in the action *Martin Silver, et al. v. Alon USA Energy, Inc., et al.,* Case No. 03-2408 WQH (S.D. Cal.) ("*Silver* Action"), which is identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-5, issued by the Panel on February 25, 2004.  The Silver Plaintiffs hereby move the Panel to vacate the above-referenced conditional transfer order as it applies to

the *Silver* Action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

7.    The Sacramento County Plaintiffs, Orange County Water District, City of Riverside, Quincy Community Services District, City of Roseville and the Silver Plaintiffs (collectively, "Plaintiffs") file this joint Motion to Vacate on the following specific grounds: First, assuming *arguendo* that Plaintiffs' respective actions remain in federal court, the likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a) discovery regarding the few questions of fact shared with other cases involving methyl tertiary butyl ether ("MTBE") already has largely been completed in the prior proceedings and can be made available to all parties; and (b) the Transferee Court, as well as numerous other federal and state courts, already have issued remarkably consistent rulings on most, if not all, common legal issues. Second, resolution by the Transferee Court of Plaintiffs' respective pending motions to remand will result in no significant savings of judicial resources, because the jurisdictional arguments raised therein differ materially from those raised by the plaintiffs currently before the Transferee Court.

8.    This Motion is based on the attached Brief in support thereof, along with the Declaration of Victor M. Sher, the Statement of Reasons Why Oral Argument Should Be Heard, the files, pleadings, and documents on file with the Panel, and upon such further documentary and oral evidence as may be presented in the hearing on this matter.

WHEREFORE, Plaintiffs respectfully request that the Panel:

A.    Vacate the Conditional Transfer Order (CTO-5) as it applies to the *Sacramento County, Orange County, Riverside, Quincy, Roseville* and *Silver* Actions;

B.    Schedule oral argument on this Motion; and

C.    Grant such other relief deemed just and appropriate.

Respectfully submitted,

Dated: March 24, 2004

SHER LEFF, LLP
Victor M. Sher
Todd E. Robins
450 Mission Street, Suite 500
San Francisco, CA 94105
Tel: (415) 348-8300
Fax: (415) 348-8333

Counsel for Orange County Water District, City of Riverside, Quincy Community Services District, City of Roseville, City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-American Water Company, City of Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso

BARON & BUDD, P.C.
Scott Summy
Celeste A. Evangelisti
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 523-6267
Facsimile: (214) 520-1181

Counsel for City of Riverside, Quincy Community Services District, City of Roseville, City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-American Water Company, City of Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso

MILLER, AXLINE & SAWYER
Duane A. Miller
Michael D. Axline
1050 Fulton Avenue, Ste. 100
Sacramento, CA 95825
Telephone: (916) 488-6688
Facsimile: (916) 488-4288

Counsel for Orange County Water District

**BRIEF IN SUPPORT OF PLAINTIFFS' JOINT
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)**

## I.   INTRODUCTION

The Panel should vacate the Conditional Transfer Order as it applies to the *Sacramento County*, *Orange County*, *Riverside*, *Quincy*, *Roseville* and *Silver* Actions (collectively, the "California Actions") because transfer of these exclusively state-law cases, each regarding local contamination caused by a product manufactured, sold and distributed entirely to uniquely California specifications, to an already over-burdened district court 3,000 miles away will benefit neither the parties nor the judicial system.  In light of the distinctly local and state-specific factual and legal issues on which they are focused, the California Actions are substantially different from the other actions subject to CTO-5, as well as virtually all of the actions subject to CTO-4.[1]  Whatever may be appropriate for other recently removed MTBE-related cases, it is not appropriate to transfer these California Actions to the Southern District of New York.

If the California Actions somehow remain in federal court (which the California Parties believe they should not), the Actions share with other MTBE cases few, if any, common questions of fact on which discovery is not already largely completed.  A great deal of the generally applicable liability discovery (including discovery on what the oil industry knew, or reasonably should have known, regarding MTBE's risks to the environment, and when) was conducted in connection with the prior incarnation of MDL No. 1358 and/or other MTBE cases that were not consolidated, and this discovery is or can be made available to the parties in the California Actions.  Indeed, this discovery has been pursued in exceptional depth with respect to

---

[1] Two similarly situated California cases subject to CTO-4 (*California-American Water Company v. Atlantic Richfield Co., et al.*, 03-5379 (N.D. Cal.) and *City of Fresno v. Chevron U.S.A., Inc., et al.*, 03-5378 (N.D. Cal.)) and the State of New Hampshire's unique statewide MTBE suit (*State of New Hampshire v. Amerada Hess Corp. et al.*, 03-486 (D.N.H.), 03-0529 (D.R.I)) are the only other cases with parties resisting transfer to MDL No. 1358.

California-related defendants. The discovery that remains – the bulk of these cases – revolves almost exclusively around local and state-specific issues, such as the unique and isolated gasoline refining and distribution system in California, the sources and extent of contamination affecting each Plaintiff, and what it will cost to remediate and treat it.

Nor is the legal landscape for these cases novel or challenging. Potentially dispositive motions already have been resolved in prior MTBE litigation with remarkably consistent outcomes. For example, both the Ninth Circuit and the Transferee Court have definitively rejected defendants' federal preemption defense. *See Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665, 670, 673 (9th Cir. 2003) (upholding California ban of MTBE in gasoline); *ExxonMobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1253 (9thCir. 2000) (upholding Nevada county regulation that effectively banned MTBE); *In re MTBE Products Liability Litig.* ("*In re MTBE*"), 175 F. Supp. 2d 593, 611-616 (S.D.N.Y. 2001) (rejecting federal preemption of state tort claims). In fact, the Transferee Court published a lengthy opinion that provides useful guidance to any court applying common law tort doctrines in the MTBE context. *In re MTBE, supra* at 606-635. As a result, many of the threshold legal questions that would normally justify MDL treatment already have been litigated and are unlikely to produce inconsistent outcomes or to require significant additional judicial energy.

Even Plaintiffs' respective motions to remand these California Actions to state court illustrate that there is neither convenience nor savings of judicial resources to be gained by transferring these cases to MDL No. 1358. Plaintiffs' remand motions raise unique – and dispositive – jurisdictional arguments related to federal preemption not applicable to the remand motions recently ruled upon by the presiding judge in MDL No. 1358 (the "Transferee Court"). As these unique issues ultimately will have to be addressed by whatever court decides Plaintiffs'

remand motions, no efficiencies will be gained by transferring the California Actions to MDL No. 1358 for consolidated treatment.

In sum, MTBE litigation is sufficiently mature at this point that MDL handling of the California Actions is unwarranted. There is no "gathering storm" that will produce a blizzard of motions and conflicting opinions, notwithstanding the recent flurry of removal notices filed by defendants. Transfer of the California Actions to the Southern District of New York, therefore, will not create efficiencies. Instead it will create delay and inconvenience by forcing Plaintiffs to litigate these important lawsuits in a distant forum that has no particular expertise on the localized issues that overwhelmingly predominate in these cases.

## II.   BACKGROUND

### A.   The California Actions.

The Sacramento County Plaintiffs include two cities that own and operate public drinking water systems, one investor-owned water utility, and nine public agencies charged with managing and/or purveying water resources in Sacramento County, California. *See* First Amended Complaint in *Sacramento County* Action ("Sacramento County Complaint"), ¶¶ 11-33 (attached as Exhibit 1 to the Declaration of Victor M. Sher ("Sher Decl.")).[2]

Orange County Water District is a special water agency formed pursuant to the Orange County Water District Act ("OCWDA"), Cal. Water Code Appendix, § 40-1 *et seq.*, to manage and protect the groundwater resource in much of Orange County, California. *See* First Amended Complaint in *Orange County* Action ("Orange County Complaint"), ¶ 4 (Sher Decl., Exhibit 2).

The City of Riverside and City of Roseville are California cities that own and operate public drinking water systems. *See* First Amended Complaint in *Riverside* Action ("Riverside

---

[2] Carmichael Water District is named as a plaintiff in the Sacramento County Complaint, but has since withdrawn from the case.

Complaint"), ¶ 4 (Sher Decl., Exhibit 3); First Amended Complaint in *Roseville* Action

("Roseville Complaint"), ¶¶ 4-5 (Sher Decl., Exhibit 4).

Quincy Community Services District is a community services district, formed pursuant to

Cal. Government Code § 61000 *et seq.*, that owns and operates a public drinking water system in

Quincy, California. *See* Complaint in *Quincy* Action ("Quincy Complaint"), ¶ 4 (Sher Decl.,

Exhibit 5).

The Silver Plaintiffs are owners of Alpine Mobile Home Estates, a mobile home park

located in Alpine, California, in connection with which they own and operate a public drinking

water system. *See* First Amended Complaint in *Silver* Action ("Silver Complaint"), ¶ 2 (Sher

Decl., Exhibit 6).

MTBE is a chemical used by some refiners in some gasoline products in some parts of

the country.[3]  Expanding plumes of MTBE are contaminating and threatening Plaintiffs' drinking

water supplies and groundwater resources.  Beginning in May, 2003, Plaintiffs filed their

respective lawsuits in California state court against the major oil and chemical companies that

manufacture MTBE, refine gasoline containing MTBE, and/or supply gasoline containing MTBE

in California, as well as the local gasoline distributors and retailers allegedly responsible for

releasing MTBE to the subsurface in areas affecting Plaintiffs' drinking water supplies and

groundwater resources.

---

[3] Originally introduced as an octane enhancer in some gasoline, MTBE came into widespread use in the mid-1990s, when some refiners chose it to meet the requirements of the Reformulated Gasoline ("RFG") and Oxygenated Fuels programs under the federal Clean Air Act, *see* 42 U.S.C. §§ 7545(k) and (m), for gasoline in some areas of the country. *See* 40 C.F.R. § 80.70 (listing areas covered by RFG program); 40 C.F.R. §81.305 (listing carbon monoxide nonattainment areas).  The MTBE contamination at issue in the *Quincy* Action occurred in an area never subject to RFG or Oxygenated Fuels program requirements. *Id.*

| Action | Date Filed | State Court |
|---|---|---|
| *Orange County* Action | May 6, 2003 | Orange County Superior Court |
| *Sacramento* Action | September 30, 2003 | Sacramento County Superior Court |
| *Silver* Action | September 30, 2003 | San Diego County Superior Court |
| *Roseville* Action | October 16, 2003 | Placer County Superior Court |
| *Riverside* Action | October 17, 2003 | Riverside County Superior Court |
| *Quincy* Action | November 7, 2003 | Sacramento County Superior Court |

Plaintiffs each seek, among other things, to ensure that the costs of responding to MTBE

contamination are borne by the companies that chose to make and use it, while knowing of its

risks and yet failing to take the steps (including warnings) necessary to avoid or mitigate them.

Plaintiffs each assert damages claims under state common law theories (including strict products

liability, public nuisance, trespass, and negligence).  Orange County Water District asserts a

statutory claim for clean up costs under the OCWDA.  Certain Sacramento County Plaintiffs,

City of Riverside, City of Roseville and Quincy Community Services District also assert claims

for cleanup costs under state statutes (Cal. Health & Safety Code §116366 and Cal. Water Code

§§ 13285 and 13304) and statutory claims for treble damages for utility tampering (Cal. Civil

Code § 1882).

**B.    Procedural History.**

In December 2003, certain oil company defendants removed each of the California

Actions to federal district court, citing four bases for federal subject matter jurisdiction in each

case: (1) that Plaintiffs' claims are "completely preempted" by the federal Clean Air Act; (2) that

"a substantial federal question" is a necessary element of Plaintiffs' state-law defective product

claims; (3) that, pursuant to 28 U.S.C. § 1442(a)(1), defendants were acting "under the direction"

of federal officers when they chose to add MTBE to gasoline; and (4) that the Actions somehow

implicate long-since-concluded bankruptcy proceedings pertaining to one or two defendants

(depending on the Action).  Plaintiffs immediately filed motions to remand their respective

Actions to state court (the "Remand Motions") on the grounds that no federal subject matter

jurisdiction exists over these cases.  At or around the same time, the removing defendants filed

motions to stay the hearings on Plaintiffs' respective Remand Motions (and all other pretrial

proceedings in the Actions) pending possible transfer to MDL No. 1358.

| Action | Removal | Federal District Court | Remand Motion filed | Stay Motion filed |
|--------|---------|------------------------|---------------------|-------------------|
| *Orange County* Action | Dec. 1, 2003 | C.D. Cal. | Jan. 6, 2004 | Jan. 6, 2004 |
| *Silver* Action | Dec. 3, 2003 | S.D. Cal. | Dec. 18, 2003 | Dec. 16, 2003 |
| *Sacramento County* Action | Dec. 8, 2003 | E.D. Cal. | Dec. 15, 2003 | Dec. 19, 2003 |
| *Riverside* Action | Dec. 12, 2003 | C.D. Cal. | Jan. 8, 2004 | Jan. 9, 2004 |
| *Quincy* Action | Dec. 15, 2003 | E.D. Cal. | Dec. 22, 2003 | Dec. 31, 2003 |
| *Roseville* Action | Dec. 18, 2003 | E.D. Cal. | Dec. 23, 2003 | Dec. 31, 2003 |

Stays have been granted in the *Sacramento County*, *Orange County*, *Riverside*, *Roseville* and

*Quincy* Actions, although Quincy Community Services District has moved for reconsideration of

the order granting the stay in the *Quincy* Action.  The Remand and stay motions in the *Silver*

Action are currently set for hearing on April 16, 2004.

Meanwhile, certain defendants filed with the Panel Notices of Related, Tag-Along

Actions alleging that certain recently filed actions, including the California Actions, involve

common questions of fact with actions previously transferred to MDL No. 1358.  MDL No. 1358

was an inactive MDL proceeding before the Hon. Shira A. Scheindlin in the U.S. District Court

for the Southern District of New York that previously involved several consolidated "actions

brought on behalf of private well-owners seeking relief from the contamination or threatened

contamination of their wells" by MTBE.  *In re MTBE, supra,* 175 F. Supp. 2d at 598.[4]

On December 19, 2003, Judge Scheindlin held a hearing in connection with several

MTBE cases filed by New York water purveyors that were removed to federal court and

---

[4] Judge Scheindlin denied class certification in the matter, *see In re MTBE,* 209 F.R.D. 323 (S.D.N.Y. 2002), and all the cases were resolved.

assigned to her (the "December 19 Hearing"). *See* Transcript of December 19 Hearing (Sher Decl., Exhibit 10). At the December 19 Hearing, the parties present before Judge Scheindlin (which did *not* include Plaintiffs here, *see* Sher Decl., ¶ 26) stipulated to a transfer of their cases to MDL No. 1358 in order that the plaintiffs' motions to remand those cases to state court be heard and decided by that court. *Id.*, Exhibit 10 at 13-18. In addition, counsel for those parties further stipulated to support transfer of other cases involving other parties *they represented* to MDL No. 1358 for the same purposes. *Id.* That stipulation resulted in an order entered by Judge Scheindlin on December 23, 2003 stating that remand motions "in these and all similar removed actions, wherever filed," should be heard as part of MDL No. 1358. *Id.*, Exhibit 11. Plaintiffs had no opportunity to participate in the December 19 Hearing or address the procedures stipulated by the parties at the Hearing, and, subsequently notified Judge Scheindlin of their intent to object to any transfer of their cases to the Southern District of New York. *Id.*, ¶28, Exhibits 12-13. On February 13, 2004, Judge Scheindlin held oral argument on the remand motions before her. *Id.*, Exhibit 14.

On February 25, 2004, the Panel issued CTO-5. On March 11, 2004, Plaintiffs filed with the Panel a Notice of Opposition to CTO-5. On March 16, 2004, Judge Scheindlin issued an opinion and order denying the remand motions before her. *Id.*, Exhibit 15. Plaintiffs now move to vacate CTO-5 as it applies to them.

## C.    Previous MTBE Litigation.

The California Actions and other MTBE-related cases recently removed to federal courts in various parts of the country are preceded by a significant number of cases filed in federal and state courts regarding MTBE, some of which have produced universally-applicable discovery on common questions of fact and consistent rulings on common legal questions. Sher Decl., ¶¶ 8-

25. In at least three major cases – the prior proceedings in MDL No. 1358, *South Lake Tahoe Public Utility District v. Atlantic Richfield Co., et al.*, No. 999128 (Cal. Super. Ct. filed Nov. 10, 1998) ("*South Tahoe*"), and *Communities for a Better Environment v. Unocal Corp., et al.*, No. 997013 (Cal. Super. Ct. filed August 6, 1998) ("*CBE*") – the parties completed detailed, extensive and coordinated discovery on generally applicable issues related to defendant liability. Sher Decl., ¶¶ 12-15, 17-18, 19-21. The *South Tahoe* action went to trial on the issues of refiner/manufacturer liability, product defect and malice, and, after a four-month trial, resulted in a plaintiff's verdict on each of these issues. *Id.*, ¶¶ 12, 14. All of the discovery and testimony from these cases exists and can be made available to the parties in the California Actions. *Id.*, ¶¶ 16, 18, 22-23, Exhibit 9.

Moreover, a significant number of pending MTBE cases are currently proceeding in state courts around the country. Sher Decl., ¶ 9, Exhibit 17. Defendants never sought to remove these cases to federal court, and now cannot. *See* 28 U.S.C. § 1446(b). Accordingly, no matter what happens with respect to the cases now before the Panel, MDL treatment will not result in consolidation of all MTBE cases before a single judge.

## III.   LEGAL ARGUMENT

Regardless of how other MTBE cases are treated, the conditional transfer of the California Actions to MDL No. 1358 (or any other MDL) should be vacated because transfer would neither further the just and efficient conduct of the litigation on common questions of fact or law, nor serve the convenience of the parties and witnesses. The statutory factors considered by the Panel in deciding whether to uphold the conditional transfer of an alleged tag-along action are: (1) whether there are common questions of fact between the alleged tag-along action and existing MDL cases; (2) whether transfer would serve the convenience of parties and witnesses;

13

and (3) whether transfer would serve the just and efficient conduct of the actions. 28 U.S.C. §

1407; JPML Rule 1.1; *In re Managed Care Litig.*, 246 F. Supp 2d 1363, 1364 (JPML 2003); *In*

*re Enron Corp.*, 227 F.Supp.2d 1389, 1391 (JPML 2002). The Panel has held that all three

criteria must be met to justify transfer, *In re Highway Acc. Near Rockville, Connecticut, on*

*December 30, 1972,* 388 F. Supp. 574, 575 (JPML 1975), and that the third criterion is the "most

important." *In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5, 8 (D.D.C.

1999) *citing* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3863 at 535

(1986). In analyzing whether transfer would serve the just and efficient conduct of actions under

section 1407, the Panel primarily considers whether transfer and consolidation will avoid

duplicative discovery and inconsistent pretrial rulings. *See, e.g., In re TMJ Implants Products*

*Liability Litig.,* 844 F. Supp. 1553, 1554 (JPML 1994).

The California Actions are inappropriate for MDL treatment for at least two fundamental

reasons. First, even assuming *arguendo* that the California Actions remain in federal court, the

likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a)

discovery regarding the few questions of fact shared with other MTBE-related cases already has

largely been completed and is or can be made available to all parties; and (b) the Transferee

Court, as well as numerous other federal and state courts, already have issued remarkably

consistent rulings on most, if not all, common legal issues. Second, resolution of Plaintiffs'

Remand Motions – the first, and likely only, substantive motions to be considered by a federal

court in these Actions – by the Transferee Court will not conserve judicial resources, because

jurisdictional arguments raised therein differ materially from those raised in remand motions

recently ruled upon by the Transferee Court. Thus, the California district courts where the

California Actions are currently pending are in a position to rule expeditiously on the Remand

Motions, as well as on other pretrial motions, and to preside over the remaining localized and

site-specific discovery.  For these reasons, the California Actions will "proceed more

expeditiously if left alone."  *See In re Sears, Roebuck & Co. Employment Practices Litig.*, 487 F.

Supp. 1362, 1363 (JPML 1980).

A.   **If The California Actions Remain in Federal Court, The Likelihood Of Inconsistent Pretrial Rulings And Duplicative Discovery Is Minimal.**

Even if the California Actions were somehow to remain in federal court, pretrial transfer

to MDL No. 1358 would serve neither the convenience of the parties and witnesses nor the just

and efficient conduct of the litigation.  To the extent that the Actions share common questions of

fact or law with other pending cases, (1) discovery on common factual questions is largely

completed and available, and (2) most common legal issues already have been addressed by the

Transferee Court and other courts.

1.   **There Are Relatively Few Common Questions Of Fact Shared By The California Actions And Other MTBE Cases On Which Available Discovery Is Not Already Largely Completed.**

The Panel consistently has held that MDL transfer of later-filed actions is neither

necessary nor appropriate when discovery relating to common issues already has been completed

in the transferee court and/or can be made available to the parties in actions before the Panel

without recourse to § 1407.[5]  In this instance, discovery pertaining to the few common factual

---

[5] *See, e.g., In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (JPML 2002) (transfer denied where litigation was mature, discovery nearly completed in some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of duplicative discovery); *In re Indian Motorcycle Bankruptcy and Receivership Litig.*, 206 F. Supp. 2d 1365 (JPML 2002) (same);  *In Re Air Crash Disaster Near Upperville, Virginia*, 430 F. Supp 1295, 1297 (JPML 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all parties in the new actions before the Panel have access to all discovery obtained in the transferee district); *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp 221, 223 (JPML 1981) (CTO vacated where discovery of common issues has been completed in the transferee district and could be made available to the parties in the actions before the Panel without recourse to section 1407); *In re Petroleum Products Antitrust Litigation*, 476 F. Supp. 455, 458 (JPML 1979) (conditional transfer order vacated because common-question discovery already completed in transferee

questions shared between the California Actions and other allegedly related MTBE cases is also largely completed and available to all parties.  Accordingly, the risk of duplicative discovery is minimal, and there is no need for MDL consolidation.

In their Notices of Related, Tag-Along Actions, defendants identify the following alleged "common question of fact" arising in this and the other listed actions: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public."  Notices of Related Tag-Along Actions, filed December 12, 2003, December 19, 2003, and December 31, 2003, ¶ 2.  To the extent this constitutes a question of fact shared by the California Actions and other alleged tag-along actions, discovery on this question as to many, if not all, of the defendants named in the California Actions was largely completed in the prior incarnation of MDL No. 1358, and was pursued in exceptional depth in the *South Tahoe* and *CBE* cases with respect to the California-related defendants named in the California Actions.  Sher Decl., ¶¶ 12-15, 17-18, 19-21, 24-25.[6]  The same is true with respect to expert discovery on the related question of whether MTBE and/or MTBE gasoline is a defective product.  *Id.*, ¶¶ 15, 18, 20, 24-

---

court and "unique discovery" in new cases "would disrupt and substantially delay the orderly progress of pretrial proceedings in the transferee district"); *In re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 582 F Supp 890, 891 (JPML 1984) (same); *In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 436 F. Supp. 404, 406 (JPML 1977) (transfer denied where discovery on common issues in transferee court "virtually completed"); *In re Eli Lilly & Co. "Oraflex" Products Liability Litig.*, 578 F. Supp. 422, 423 (JPML 1984) (transfer denied because possibility of duplicative discovery "eliminated" by availability of extensive discovery in areas of common factual inquiry from already concluded and well-advanced related actions); *In re Dow Chemical Co. "Polystyrene Foam" Products Liability Litig.*, 429 F. Supp. 1035, 1036 (JPML 1977) (need for transfer "obviated" because discovery on common questions of fact regarding defendants' knowledge and product's defectiveness had been completed and parties had agreed that such discovery would be applicable in all actions); *In re McDonald's Franchise Antitrust Litigation*, 472 F. Supp. 111, 114-115 (JPML 1979) (transfer denied where discovery on common questions was largely completed in some cases and available for use in less advanced cases).

[6] This "notice and knowledge" discovery is relevant, among other things, to each of Plaintiffs' common law claims against the refiner defendants. *See* Sher Decl., Exhibits 1-6.

25. Overall, literally millions of liability-related documents have been produced and hundreds of witnesses have been deposed, including percipient witnesses at the defendant companies and at trade associations like the American Petroleum Institute and Oxygenated Fuels Association, and numerous expert witnesses. *Id.*, ¶¶ 13, 18, 20-21.

Moreover, all of this discovery is, or could easily be made, readily available to the parties in the California Actions. *Id.*, ¶¶ 16, 18, 22-23. For example, the document depository in the Transferee Court, which still exists, was established with the specific purpose of making those documents available to parties in other cases. *Id.*, ¶ 22-23, Exhibit 9 (*In re MTBE*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001) (providing that attorneys in any MTBE action may make use of documents produced in the litigation subject to the requirements of the order)). The documents, depositions and trial testimony from the *South Tahoe* and *CBE* cases also can be made available to the parties in the California Actions. Sher Decl., ¶¶ 16, 18. Indeed, as the Panel has routinely recognized, procedures other than MDL consolidation are available to both courts and parties to permit use of discovery on common issues from prior related cases, such as stipulations and orders to show cause. *See, e.g. In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, *supra*, 199 F. Supp. 2d at 1378, *citing* Manual for Complex Litigation, Third, § 31.14 (1995).

In contrast, few, if any, of the remaining major factual issues in the California Actions – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to MTBE, the extent of contamination, the available remedies, the cost of those remedies, and liability for those damages – can be considered "common questions of fact" with other MTBE cases, as they revolve primarily, if not exclusively, around localized and site-specific issues. For example, the questions of causation and warnings in each California Action

will require extensive, site-specific product identification discovery (*i.e.* discovery of whose

MTBE and/or gasoline containing MTBE was delivered to release sites affecting Plaintiffs'

respective water supplies and/or groundwater resources) that will be unique to each Action. *See*

*In re MTBE*, 209 F.R.D. 323, 344, 347 (S.D.N.Y. 2002) (denying class certification because (1)

there are differences in the source of contamination for each well owner and (2) issues regarding

warnings given to intermediate vendees and UST owners and operators are "individual").

Questions related to causation, warnings and the feasibility of alternatives will also

require discovery into the particulars of California's gasoline infrastructure. Such discovery will

be completely irrelevant to parties in MTBE cases outside California, because the regulatory

regime, refining centers and distribution systems in California are distinct and/or isolated from

those in other gasoline markets in the United States. *See, e.g., Oxygenated Fuels Ass'n v. Pataki,*

No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (gasoline infrastructures in California and

New York "could not be more divergent"). As the only "state that regulated automotive

emissions before Congress entered the field," California is the only state with authority to

regulate fuels without EPA approval. *Oxygenated Fuels Ass'n v. Davis* ("*Davis I*"), 163 F. Supp.

2d 1182, 1885-1187 (E.D. Cal. 2001) (observing that, under the Clean Air Act, 42 U.S.C. §

7545(c)(4)(B), California has broad authority in the field of fuels regulation). Pursuant to this

authority, California Air Resources Board ("CARB") regulations impose special requirements on

gasoline sold in the state. *See* Cal. Code of Regulations, Title 13, §§ 2250 *et seq.* As a result,

gasoline sold in California is formulated differently than gasoline in the rest of the country. *See,*

*e.g., Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 838 (2001) (gasoline used in California is

"unique" and state's gasoline market is "isolated" in light of CARB fuel content regulations).

To serve this unique market, approximately 90 percent of California gasoline is refined in-state and distributed by means of a pipeline, terminal and distribution system that is separate and distinct from the gasoline infrastructure serving other regions of the country. *See California Energy Commission, Question & Answers: California Gasoline Price Increases*, March 5, 2004 (Sher Decl., Exhibit 16 at 1). According to the California Energy Commission,

> California is . . . isolated from other refining centers in the United States. Our gasoline must meet stringent air quality requirements to burn cleanly to protect public health and the environment. [Therefore,] our gasoline is different from others made in the U.S.

*Id.* Discovery regarding gasoline formulation, refining and distribution in the California Actions thus will be "of no interest" to non-California plaintiffs. *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (JPML 1979) (denying transfer where discovery in one action would be "of no interest" to parties in another).

Similarly, questions regarding the extent of contamination, available remedies, and implementation and cost of those remedies will also be location and site-specific.[7] In denying class certification in the original MDL No. 1358 cases, the Transferee Court itself concluded that questions regarding contamination of any particular well present "a factually unique set of circumstances," because there are "differences in the level of contamination . . . and the nature of relief that each will require." *In re MTBE, supra*, 209 F.R.D. at 337, 344; *see also In re Grand Funk Railroad Trademark Litig.*, 371 F. Supp. 1084, 1085 (JPML 1974) (no benefit from transfer where discovery "will focus localized factual issues"); *In re Air Crash at Pago Pago, Am. Samoa,* 394 F. Supp. 799, 800 (JPML 1975) (noting that in tort litigation, common questions may pertain to liability, whereas the issue of damages is unique).

---

[7] Defendants allege in their Notices of Related, Tag-Along Actions that "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination" is a "common question of fact" in these cases. *See* Notices of Related Tag-Along Actions, filed December 12, 2003, December 19, 2003, and December 31, 2003, ¶ 2. As set forth in the text, this is obviously not the case.

19

Finally (on this point), transferring the instant actions to MDL 1358 will not reduce the risk of inconsistent discovery rulings (if any), as there are a significant number of other MTBE cases proceeding in different state courts around the country that have not been, and cannot be, removed to federal court and transferred to MDL No. 1358. *See* Sher Decl., ¶ 9, Exhibit 17; *In re Tobacco/ Governmental Health Care Costs Litig., supra*, 76 F. Supp. 2d at 9 (denying transfer in part because the defendants "will be faced with rulings by two different judges on discovery requests made of [them] regardless of whether the consolidation motion is granted or denied").

In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery is largely complete and available to all parties. The discovery that remains will focus almost exclusively on California and site-specific issues, which can be better handled by the local district courts where the California Actions are pending.

### 2. The Transferee Court And Other Courts Already Have Resolved Most Common Legal Issues.

Just as discovery on any common factual issues is already well-advanced in the Transferee Court (and elsewhere), common pretrial legal issues already have been decided by the Transferee Court, and by other federal and state courts. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in . . . preventing inconsistent pretrial rulings." *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation, supra*, 505 F. Supp. at 223; *see also In re Western Electric Co., Inc. Semiconductor Patent Litigation, supra*, 436 F. Supp. at 406 (transfer unwarranted where transferee court's views on key legal issues are well documented, and will put home-court judge "closer to the shoes of the transferee judge").

20

In her landmark ruling on defendants' motions to dismiss in the original set of cases transferred to MDL No. 1358, Judge Scheindlin, in a lengthy and thorough opinion, set forth a roadmap for many of the key common legal issues in these cases that other judges can easily follow. *See In re MTBE, supra,* 175 F. Supp. 2d at 606-635. First, the Court rejected defendants' federal preemption defense, *id.* at 611-616,[8] as has the Ninth Circuit and every other published opinion addressing the question.[9] The Transferee Court also rejected defendants' primary jurisdiction argument, as well as their related argument that defective product claims concerning MTBE require an impermissible reexamination of EPA's cost-benefit analysis regarding MTBE. *In re MTBE, supra,* 175 F. Supp. 2d at 616-618, 623-625. The court further upheld the sufficiency of each of the common law tort claims which are also asserted in the California Actions, including claims alleging refiner liability under theories of strict products liability, negligence, nuisance and trespass. *Id.* at 623-629.[10] In addition, at least one California jury has found that MTBE gasoline is a defective product. Sher Decl., Exhibit 8.

With this extensive guidance already in place, the risk of inconsistent pretrial rulings on these common legal questions in the California Actions, if left to proceed in their home districts,

---

[8] Although Judge Scheindlin left open the factual question of whether there were practicable alternatives to MTBE available for defendants' use under the federal Clean Air Act, *id.* at 616, the Ninth Circuit has closed the door on this question by holding as a matter of law that a smoothly functioning gasoline market and inexpensive gasoline are not goals of the Clean Air Act. *Davis II, supra,* 331 F.3d at 673. In any case, as described in section III.A.1., *supra,* the question of feasibility of alternatives depends on the gasoline market and infrastructure in the relevant locality, and thus is not the kind of question on which coordinated discovery will yield any efficiencies.

[9] *See Davis II,* 331 F.3d 665, *affirming Davis I,* 163 F. Supp. 2d 1182; *ExxonMobil, supra,* 217 F.3d 1246; *Oxygenated Fuels Ass'n v. Pataki* (N.D.N.Y. 2001) 158 F.Supp.2d 248 (upholding New York ban of MTBE); *Oxygenated Fuels Ass'n v. Pataki* ("*Pataki III*"), 293 F. Supp. 2d 170 (N.D.N.Y. 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA); *see also Abundiz v. Explorer Pipeline Co.,* 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state MTBE contamination case does "not conflict with the Congressional clean air objectives").

[10] In evaluating the sufficiency of the plaintiffs' common law claims, the Transferee Court specifically applied California law. *See id.* at 620-623, 625, 627-628, 632-633.

is minimal. At the same time, the pretrial legal questions raised in the California Actions that have not yet been resolved by the Transferee Court or other courts in the context of MTBE litigation – such as the scope and applicability of the state-specific and even plaintiff-specific (e.g., the OCWDA) statutory claims asserted in these Actions and the applicability of any statute of limitations or other defenses, to name a few – are not shared with other MTBE cases. These questions are best addressed by a court with more experience and familiarity with California law. Thus, the benefits of permitting these cases to proceed on their own in their home districts outweigh the benefits (if any) of transfer to the Southern District of New York. *See In re Grand Funk Railroad, supra*, 371 F. Supp. at 1085 ("Panel must weigh any benefit that transfer would provide in the way of eliminating the possibility of inconsistent pretrial decisions against the efficient administration of the litigation as a whole").[11] Accordingly, the Conditional Transfer Order (CTO-5) as it applies to the California Actions should be vacated.

**B.      No Savings Of Judicial Resources Will Be Gained From Consolidated Treatment Of Plaintiffs' Remand Motions.**

Because Judge Scheindlin did not have copies of the complaints, removal notices, or Remand Motions filed in any of the California Actions before her, the determination in her December 23, 2003 Order that the remand issues raised in various "similar removed" cases around the country are "appropriate" for MDL treatment should not apply to the California Actions. *See* Sher Decl., ¶¶ 28, 31. In fact, Plaintiffs' Remand Motions differ from, and, are significantly less complex than, the remand motions recently ruled upon by Judge Scheindlin. This also militates against transfer.

In her March 16, 2004 opinion and order denying the remand motions before her, Judge Scheindlin ruled that, based on the allegations in the defendants' removal notices, defendants

---

[11] The significant number of pending MTBE cases in various state courts (*see* Sher Decl., ¶ 9, Exhibit 17) also illustrates the lack of efficacy that would result from transferring these actions to MDL 1358.

were acting "under the direction" of the federal government for purposes of 42 U.S.C. §

1442(a)(1) when they added MTBE to gasoline in order to comply with Clean Air Act

regulations. *See* Sher Decl., Exhibit 15.   A necessary element of this ruling was Judge

Scheindlin's finding that, in the cases before her, defendants' preemption arguments constitute a

"colorable federal defense." *Id.*; *see also Jefferson County v. Acker*, 527 U.S. 423, 431 (removal

under § 1442(a)(1) proper only where defendant alleges a "colorable federal defense").

The California Actions present an entirely different set of circumstances.   Unlike the

MTBE cases in the Transferee Court, the California Actions arise in the Ninth Circuit, which has

*twice* definitively rejected *as a matter of law* the Clean Air Act preemption arguments on which

defendants base their assertion of "federal officer" jurisdiction. *Davis II, supra*, 331 F.3d at 670,

673; *ExxonMobil, supra*, 217 F.3d at 1253.   As defendants have no "colorable" preemption

defense in the Ninth Circuit, Judge Scheindlin's March 16 ruling regarding defendants' "federal

officer" argument has no bearing on the Remand Motions in the California Actions.[12]

Additionally, the conduct at issue in the *Quincy* Action occurred in an area that has never

been subject to the requirements of the federal RFG or Oxygenated Fuels programs. *See* 40

C.F.R. §§ 80.70, 81.305.   As such, the *sine qua non* of defendants' federal officer basis for

---

[12] None of the other bases for federal jurisdiction asserted by defendants has merit. As with defendants' "federal officer" assertions, their "substantial federal question" and "complete preemption" arguments depend entirely on preemption arguments that already have been soundly rejected by the Ninth Circuit as a matter of law. *See Oxygenated Fuels Ass'n v. Davis II*, 331 F.3d 665; *ExxonMobil, supra*, 217 F.3d 1246. Second, Defendants' attempt to predicate federal jurisdiction on the toehold of remote bankruptcy orders has no merit, as these Actions can have no conceivable effect on the administration of already-concluded bankruptcy proceedings. *See In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988) (no bankruptcy jurisdiction because prior entry of confirmation order "destroyed any possible relationship between the outcome of [a subsequent] suit and the administration of the bankruptcy estate"). Even if there were bankruptcy jurisdiction, it is non-exclusive, *see In re McGhan*, 288 F.3d 1172 (9th Cir. 2002) ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court"), and remand is warranted in light of the obviously applicable remand factors under 28 U.S.C. § 1452(b).

removal – that they were required by federal law to use MTBE – has no possible basis in fact in the *Quincy* Action.[13]

Consequently, although the jurisdictional bases asserted by the defendants in the California Actions may overlap with those raised by oil company defendants in other recently removed MTBE cases, Plaintiffs' Remand Motions cannot be resolved based on Judge Scheindlin's March 16 opinion and order. *See In re 'East of the Rockies' Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254 (JPML 1969) (Weigel, J., conc.) ("neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, ipso facto, by transfer just because there are common questions"). The underlying legal arguments and factual circumstances raised in Plaintiffs' Remand Motions are different, and the risk of inconsistent rulings absent transfer, as well as any perceived judicial economy, is therefore illusory. As the court held in *Board of Trustees v. Worldcom*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002):

> When remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of judicial resources. The threat of inconsistent judgments in either case is de minimis.

*See also Havens Protected "C" Clamps, Inc. v. Pilkington PLC*, No. 00-2035-JWL, 2000 WL 382027, at *2 (D. Kan. March 28, 2000) (holding that where "resolution of the motion to remand does not necessarily implicate issues common to the other actions currently pending

---

[13] Plaintiffs in the California Actions also raise unique arguments with respect to bankruptcy jurisdiction – an issue not decided in Judge Scheindlin's March 16 ruling. Orange County Water District, City of Riverside, City of Roseville, Quincy Community Services District and all but one of the twelve Sacramento County Plaintiffs are "governmental units" that (among other things) seek cost recovery pursuant to regulatory powers established by specific state statutes. *See* Sher Decl., Exhibit 1 (Fourteenth-Seventeenth Causes of Action); Exhibit 2 (Fifth Cause of Action); Exhibit 3 (Sixth-Ninth Causes of Action); Exhibit 4 (Sixth-Ninth Causes of Acton); Exhibit 5 (Sixth-Ninth Causes of Action). Under 28 U.S.C. §1452(a), such civil actions are exempt from removal on grounds of bankruptcy jurisdiction. This argument was not addressed by the remand motions recently decided Judge Scheindlin.

before the MDL Panel-designated court," remand motion should be considered by transferor court). There is, therefore, nothing but delay to be gained from transferring the California Actions to the Southern District of New York, when the local district courts where these Actions are pending are at least as capable of deciding the unique issues raised in Plaintiffs' Remand Motions in an expeditious manner.

## IV.   CONCLUSION

The Panel should grant Plaintiffs' Joint Motion to Vacate Conditional Transfer Order (CTO-5) as it applies to the California Actions.

Respectfully submitted,

Dated:  March 24, 2004

SHER LEFF, LLP
Victor M. Sher
Todd E. Robins
450 Mission Street, Suite 500
San Francisco, CA  94105
Tel: (415) 348-8300
Fax: (415) 348-8333

Counsel for Orange County Water District, City of Riverside, Quincy Community Services District, City of Roseville, City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-American Water Company, City of Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso

BARON & BUDD, P.C.
Scott Summy
Celeste A. Evangelisti
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 523-6267
Facsimile: (214) 520-1181

Counsel for City of Riverside, Quincy Community Services District, City of Roseville, City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-American Water Company, City of Sacramento, Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso

MILLER, AXLINE & SAWYER
Duane A. Miller
Michael D. Axline
1050 Fulton Avenue, Ste. 100
Sacramento, CA 95825
Telephone: (916) 488-6688
Facsimile: (916) 488-4288

Counsel for Orange County Water District

G

RECEIVED

MAR 2 9 2004

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:

**METHYL-TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

**MDL Docket No. 1358**

This Document Relates to *Quincy Community Services District v. Atlantic Richfield Company et al.,* Case No. 2:03-2582 LKK (E.D. Cal).

**NOTICE OF MOTION AND MOTION OF DEFENDANTS FUEL STAR, INC. AND BLUE STAR PETROLEUM, INC. TO VACATE CONDITIONAL TRANSFER ORDER NO. 5 (CTO-5); MEMORANDUM IN SUPPORT THEREOF**

## NOTICE OF MOTION AND MOTION OF DEFENDANTS FUEL STAR, INC. AND BLUE STAR PETROLEUM, INC. TO VACATE CONDITIONAL TRANSFER ORDER NO. 5

Fuel Star, Inc. ("Fuel Star") and Blue Star Petroleum, Inc. ("Blue Star) are defendants in

the action captioned *Quincy Community Services District v. Atlantic Richfield Company et al.,*

Case No. 2:03-2582 (E.D. Cal.) (the "*Quincy* action"), which is identified in the schedule of

district court civil actions subject to Conditional Transfer Order No. 5 ("CTO-5"), issued by the

Judicial Panel on Multidistrict Litigation (the "Panel") on February 25, 2004 in Docket No. 1358

(*In Re Methyl Tertiary Butyl Ether ("MTBE") Liability Litigation*).

Fuel Star and Blue Star move to vacate CTO-5 as it applies to the *Quincy* action on the

grounds that transfer and consolidation of this matter does not meet the criteria set forth in 28

U.S.C. section 1407. Specifically, litigation involving the contamination of public drinking

water wells with MTBE is sufficiently mature both in California and throughout the federal

district courts such that the likelihood of redundant discovery is remote. Discovery regarding

industry-wide aspects of MTBE has already been conducted in a number of cases venued in

California. Similar discovery has also occurred in MDL Docket No. 1358 where a document

depository has been created. These materials can easily be made available to the parties in the

*Quincy* action and access to such materials will allow the parties to avoid engaging in redundant

discovery.

The likelihood of inconsistent pretrial rulings is equally remote. A number of cases

involving MTBE are currently being litigated in California and elsewhere. Moreover, courts in

which MTBE matters are pending have already made a number of pretrial rulings which are

remarkably consistent with respect to common questions of law. Accordingly, transfer of the

*Quincy* action from the Eastern District of California to the Southern District of New York will

not promote just and efficient litigation as is required by 28 U.S.C. section 1407.

Fuel Star and Blue Star further move to vacate CTO-5 on the grounds that transfer of the

*Quincy* action will not serve the convenience of the parties and witnesses, most of whom are

located in Northern California. Plaintiff in the *Quincy* action is alleged to be a community

services district in Quincy, California whose drinking water supplies are purportedly

contaminated with MTBE from, *inter alia*, gasoline service stations and suppliers surrounding plaintiff's wells.  To require gasoline service-station defendants such as Fuel Star and Blue Star, and the myriad of other small and mid-sized parties who are also named as defendants, to litigate discovery issues a continent away from where they reside and where the site in question is located is neither just nor convenient.  Consolidation and transfer of the *Quincy* action will therefore not enhance the convenience of either the parties or potential witnesses.  Accordingly, Fuel Star and Blue Star move to vacate CTO-5 as it applies to the *Quincy* action.

This Notice of Motion and Motion is based on the Memorandum In Support of Motion To Vacate Conditional Transfer Order No. 5, which is attached hereto; the Declaration of Edward Romero In Support of Motion To Vacate Conditional Transfer Order No. 5; the files, pleadings and documents on file with the Panel and in the *Quincy* action; and such further documentary and oral evidence as may be presented in the hearing on this motion.

Dated: March 24, 2004

Respectfully submitted,

By: Edward Romero

Kevin D. Lally (SBN 095374)
Edward Romero (SBN 148495)
Greenan Peffer, Sallander & Lally LLP
Two Annabel Lane,
Suite 200
San Ramon, California 94518
(925) 866-1000 (telephone)
(925) 830-8787 (facsimile)

Attorneys for Defendants
Fuel Star, Inc. and Blue Star Petroleum, Inc.

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE CTO-5

### INTRODUCTION

Pursuant to Rule 7.4(d) of the Rules of Procedure of The Judicial Panel On Multidistrict Litigation, defendants Fuel Star, Inc. ("Fuel Star") and Blue Star Petroleum, Inc. ("Blue Star") respectfully request that the Panel vacate Conditional Transfer Order No.5 ("CTO-5") filed in Docket No. 1358 (*In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*) as it relates to *Quincy Community Services District v. Atlantic Richfield Company*, No. 2:03-2582 LKK DAD (E.D. Cal.)(the "*Quincy* action").

Fuel Star and Blue Star move to vacate CTO-5 because transfer of the *Quincy* action to the United States District Court for the Southern District of New York will not promote just and efficient litigation.  Civil actions involving the contamination of drinking water with MTBE first arose in California in or about the late 1990's.  Since then, several MTBE-related cases have been litigated through discovery and pretrial motions and at least one case has proceeded to verdict.  As a consequence, extensive discovery of issues common to MTBE-related cases have occurred and can be made available to the parties in the *Quincy* action.  Moreover, the extensive discovery that has occurred to date in MDL Docket No. 1358, coupled with the document depository established in that proceeding, eliminates any concern for redundant discovery of issues common to MTBE actions generally.  Such discovery can also easily be made available to the parties in the *Quincy* action.  Those discovery issues that remain in the *Quincy* action are therefore likely to be unique to the case.  As a consequence, a court sitting in the Southern District of New York is unlikely to be able to supervise discovery in the *Quincy* action as efficiently as a court in California.  Transfer of the *Quincy* action will therefore only hinder discovery and the just and efficient resolution of pretrial issues.

Transfer and consolidation of the *Quincy* action is further unwarranted because it will not serve the convenience of the parties and witnesses, most of whom are located in Northern California. Plaintiff in the *Quincy* action is alleged to be a community services water district which owns and operates a public water system. Among other things, plaintiff contends that its wells are contaminated with MTBE and its byproduct, *tertiary butyl alcohol* ("TBA") and that such contamination arises from gasoline storage and delivery facilities surrounding plaintiff's groundwater supplies which are located in Quincy, California. Fuel Star and Blue Star are two of several gasoline service stations which are alleged to be the source of MTBE contamination. To require these gasoline service-station defendants, and the myriad of other small and mid-sized gasoline suppliers who are also named as defendants, to litigate discovery issues a continent away from where witnesses and the site in question are located is neither just nor convenient. Accordingly, transfer and consolidation of the *Quincy* action is unwarranted.

The attempt to transfer the *Quincy* action to the Southern District of New York is simply an ill-conceived ploy by well-funded manufacturers of MTBE who have removed the *Quincy* action to federal court on questionable grounds and which now seek to use the MDL process to find a new forum in which to avoid liability for producing a product which has allegedly contaminated the drinking water supplies of numerous California communities. Such tactics do not constitute a proper basis for consolidating and transferring the *Quincy* action to the Southern District of New York. Accordingly, Fuel Star and Blue Star respectfully request that CTO-5 be vacated as it applies to the *Quincy* action.

## STATEMENT OF FACTS

1.     The *Quincy* Action.

The *Quincy* action was filed in the California Superior Court for the County of

Sacramento in November 2003 and was removed to the United States District Court for the

Eastern District of California in December 2003.  Among other things, plaintiff alleges that it is a

community services district which owns and operates a public drinking water system that

supplies water to residential and business users within its service area.  *See* Complaint, ¶4.

Plaintiff further alleges that "expanding plumes of . . . MTBE and . . . TBA are contaminating

and threatening [its] groundwater supplies."  Complaint, ¶1.  A copy of the complaint in the

*Quincy* action is attached as Exhibit A to the Declaration of Edward Romero In Support of

Motion To Vacate CTO-5 (the "Romero Decl.") filed herewith.

Plaintiff further asserts that Fuel Star and Blue Star are two of a group of "owner and

operator defendants" which "owned, operated, controlled and/or were otherwise responsible for

gasoline storage and delivery facilities . . . located in areas affecting [plaintiff's] groundwater

supplies."  Complaint, ¶¶ 30-37.  As a result, plaintiff asserts eight causes of action against at

least twenty-four named defendants.  Each cause of action is based on the laws of the State of

California.  Plaintiff seeks compensatory and treble damages, cost of clean up and attorney's fees

based on defendants' alleged violation of such laws.  *See* Exhibit A to the Romero Decl.

2.     The Removal of the *Quincy* Action.

The *Quincy* action was removed to the United States District Court for the Eastern

District of California on or about December 17, 2003 pursuant to a Notice of Removal filed by a

group of refiners and/or suppliers of MTBE.  A copy of the Notice of Removal is attached as

Exhibit B to the Romero Decl.

In the Notice of Removal, certain refiner/supplier defendants assert that state law claims premised on gasoline being a defective product are preempted by the Clean Air Act, as amended by 42 U.S.C. section 7545. *See* Exhibit B to the Romero Decl. at ¶¶ 11 –14 and 43. The defendants who removed the *Quincy* action further contend that they were acting under the direction of federal officers or agencies when they elected to add MTBE to gasoline and that such conduct further warrants removal. *Id.* at ¶ 48. Finally, the removing defendants assert federal subject matter jurisdiction based on a 1988 federal bankruptcy order in the Chapter 11 bankruptcy of defendant Texaco, Inc., a predecessor-in-interest to defendant Chevron Texaco Corporation. *See* Romero Decl., Exhibit B at ¶¶ 48-56.

3.      **Other MTBE-Related Cases In California.**

The *Quincy* action and the other MTBE-related cases which have recently been removed to federal court throughout the country are preceded by a significant number of cases filed in California which have resulted in extensive discovery of common questions of fact and consistent rulings on common questions of law.

Specifically, in *South Tahoe Public Utility District v. Atlantic Richfield Company et al.,* which was venued in the California Superior Court for the County of San Francisco, a public utility district brought suit against manufacturers of MTBE, oil refiners that added MTBE to their gasoline, and other defendants involved in the sale of gasoline in and around the southern end of Lake Tahoe, a mountain community which straddles the California-Nevada border.

It is believed that discovery in *South Tahoe Public Utility District* was extensive and focused on both industry-wide issues, such as the history of MTBE, its use as an oxygenate in gasoline and the purported knowledge by certain manufacturers and refiners of the harm caused to groundwater by MTBE; and on local issues such as the nature, extent and sources of

contamination of plaintiff's water supplies. The case went to trial and resulted in a verdict for plaintiff.

Similarly, in the late 1990's, the City of Santa Monica, California filed an MTBE-related action captioned *City of Santa Monica v. Shell Oil Company, et al.* The matter was venued in the California Superior Court for the County of Orange and was brought against an array of defendants, including the manufacturers and refiners of gasoline containing MTBE. It is believed that following extensive discovery, a settlement was reached in late 2003.

Likewise, in 2000 the Cambria Community Services District, which serves a community along California's Central Coast, filed suit in the California Superior Court for the County of San Luis Obispo asserting nuisance, trespass and product liability claims against Chevron Corporation and other defendants in an action captioned *Cambria Community Services District v. Chevron U.S.A., Inc., et al.* Plaintiff in that action sought damages for the alleged contamination of the community's groundwater supply with MTBE. It is believed that the case proceeded in state court until a settlement was reach in late 2003.

Additionally, in 2001 the Fruitridge Vista Water Company filed a lawsuit in the California Superior Court for the County of Sacramento captioned *D.J. Nelson Trust, doing business as Fruitridge Vista Water Company v. Atlantic Richfield Company et al.* Plaintiff in that action contends that its groundwater supply is contaminated with MTBE. The defendants include the manufacturers of MTBE, the oil refiners that supply gasoline to the Sacramento area, various middlemen and numerous owners and operators of the underground tanks that are alleged to have released gasoline containing MTBE. Discovery in that action is proceeding. Numerous document production requests and document subpoenas have been served, and a considerable volume of documentation has been produced. Depositions of percipient witnesses

including local station operators, local environmental consultants, and local regulators are proceeding.

4.   **The Litigation In MDL Docket No. 1358.**

Between October 2000 and March 2001, the Panel consolidated six actions which alleged the contamination of groundwater supplies located in the Northeast with MTBE.   These cases were transferred to the Southern District of New York and were handled by the Honorable Shira Ann Scheindlin under MDL Docket No. 1358.  It is believed that a depository was established in that proceeding.

In or about August 2001, Judge Scheindlin issued an opinion addressing several pretrial issues, including issues of preemption, standing, and jurisdiction. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001).  Judge Scheindlin also denied the plaintiffs' motion for class certification. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002).

## POINTS AND AUTHORITIES

1.   **Consolidation And Transfer Will Not Promote Just Or Efficient Litigation.**

The conditional transfer of the *Quincy* action should be vacated because transfer would not further the just and efficient conduct of the litigation.  Consolidation of multiple actions before a single court is appropriate where the Panel determines that such transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. section 1407(a).  Where common issues have already been litigated and resolved, the Panel has held that consolidation is not appropriate for newly filed "tag along" actions, because the courts and parties involved in the later actions can obtain the benefits of consolidation by sharing discovery and implementing

previous pretrial rulings without resorting to transfer. *See, e.g., In re: A.H. Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation,* 505 F.Supp. 221, 223 (D. Kansas 1981).

In evaluating a proposed transfer, the Panel has typically focused on the potential to avoid duplicative discovery, to prevent inconsistent pretrial rulings, and to conserve time and efforts of the parties and witnesses. *See In re Petroleum Products Antitrust Litigation,* 476 F.Supp. 455, 457 (N.D. Cal. 1979).

Litigation involving the contamination of drinking water supplies with MTBE is now well developed. As a consequence, the parties to previous MTBE-related matters in California have completed much, if not all, of the discovery common to MTBE cases and this material can easily be made available to the parties in the *Quincy* action. Moreover, it is believed that a depository was established in MDL Docket No. 1358 and the discovery from that proceeding can also be made available to the parties in *Quincy*. As a result, consolidation and transfer would not offer any degree of efficiency because the discovery that remains in the *Quincy* action is likely to be unique to the case. As such, a court located in California would likely be the most efficient means of litigating discovery in the *Quincy* action rather than a court located a continent and three time zones away. Accordingly, transfer and consolidation of the *Quincy* action is not warranted.

## 2.   Alternatives To Transfer Can Prevent Inconsistent Pretrial Rulings.

As with the potential for redundant discovery, the Panel has created alternatives to transfer and consolidation that alleviate the threat of inconsistent pretrial rulings. The Panel has vacated conditional transfer orders on the principle that a court can coordinate pretrial orders and rulings to "secure the benefits of section 1407 transfer while avoiding the frustration of the local consolidation [in the transferee court] which transfer . . . would generate." *In re: A.H. Robins*

*Co., Inc. "Dalkon Shield" IUD Products Liability Litigation, supra,* 505 F. Supp. at 223. The Panel has also vacated conditional transfer orders on the principle that "consultation and cooperation among the . . . district courts, if viewed appropriate[ly] by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings." *In re: Petroleum Products Antitrust Litigation, supra,* 476 F. Supp. at 458.

The issue recently briefed in various courts concerning the extent to which state common law causes of action may be preempted by federal law, particularly the Clean Air Act and its regulations, does not warrant consolidated treatment of the various MTBE cases. Numerous published federal and state court decisions have already determined the absence of such preemption. *See, e.g., Oxygenated Fuels Ass'n v. Pataki,* 158 F. Supp. 2d 248 (N.D.N.Y 2001); *Oxygenated Fuels Ass'n v. Davis,* 331 F.3d 665 (9th Cir. 2003); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 175 F. Supp. 593 (S.D.N.Y. 2001); *Gutierrez v. Mobil Oil Corp.,* 798 F. Supp. 1280, 1284 (W.D. Tex. 1992); *South Tahoe Public Utility District v. Atlantic Richfield Co.,* No 999128 (Cal. Super. Ct., San Francisco County, Jan. 15, 2002).

Threshold legal questions have already been addressed in previous MTBE-related action. As a consequence, significant judicial resources will not likely be needed to resolve issues peculiar to the *Quincy* action and transfer is therefore unwarranted. Accordingly, Fuel Star and Blue Star respectfully request that CTO-5, as it applies to the *Quincy* action, be vacated.

## 3.    Transfer Will Not Result In Convenience For The Parties And Witnesses.

As noted above, discovery concerning industry-wide matters or applicability have largely been resolved in previous MTBE litigation. Consequently, the discovery likely to occur in the *Quincy* action will most likely be unique to that proceeding. Litigation of such issues in the Southern District of New York would therefore not be just or convenient for the small and mid-

sized defendants that comprise the bulk of the parties and witnesses in the *Quincy* action. To require these parties and witnesses to litigate discovery issues in the Southern District of New York would be a waste of their time and resources. Accordingly, transfer of the *Quincy* action is further unwarranted. Fuel Star and Blue Star therefore request that CTO-5 be vacated.

## CONCLUSION

MTBE litigation is not a gathering storm likely to produce a blizzard of motions and conflicting opinions, warranting consolidation. Rather, it is a mature field that now revolves around factual issues unique to each case. As such, the Southern District of New York is not the most efficient forum in which to handle such issues as they relate to the contamination of groundwater in Quincy, California. Accordingly, Fuel Star and Blue Star respectfully request that the Panel vacate the Conditional Transfer Order No. 5 as it relates to the Quincy action.

Dated: March 24, 2004

Respectfully submitted,

By: _Edward Romero_

Kevin D. Lally (SBN 095374)
Edward Romero (SBN 148495)
Greenan Peffer, Sallander & Lally LLP
Two Annabel Lane,
Suite 200
San Ramon, California 94518
(925) 866-1000 (telephone)
(925) 830-8787 (facsimile)

Attorneys for Defendants
Fuel Star, Inc. and Blue Star Petroleum, Inc.

## PROOF OF SERVICE

I, SIMONE THOMAS, hereby declare:

I am employed in the County of Contra Costa, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of 18 and not a party to the within action. My business address is: Greenan, Peffer, Sallander & Lally, LLP, Two Annabel Lane, Suite 200, P.O. Box 10, San Ramon, California 94583.

I am personally and readily familiar with the business practice of Greenan, Peffer, Sallander & Lally, LLP, for collection and processing of correspondence for mailing with the United States Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, postage prepaid, with the United States Postal Service.

On this date, I served

1.   NOTICE OF MOTION AND MOTION OF DEFENDANTS FUEL STAR, INC. AND BLUE STAR PETROLEUM, INC. TO VACATE CONDITIONAL TRANSFER ORDER NO. 5 (CTO-5); MEMORANDUM IN SUPPORT THEREOF

on the following:

### SEE ATTACHED PANEL SERVICE LIST

[X]   **(BY MAIL)** By placing a true copy thereof enclosed in a sealed envelope for collection and processing in accordance with the above-described business practice.

[]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[]   **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

[]   **[BY FEDERAL EXPRESS]** I caused such envelope(s) to be handed to a federal express representative on _____ , at the offices of Greenan, Peffer, Sallander & Lally, LLP, 2 Annabel Lane, Ste. 200, San Ramon, CA 94583.

[]   **(BY PERSONAL SERVICE)** I caused each document to be delivered by hand this date to the addressee(s) listed above.

[]   **(FACSIMILE)** By facsimile transmission pursuant to Rule 2009 of the California Rules of Court.

Addressee:
Facsimile No.:                     Date:       Time:

Executed on March 25, 2004 at San Ramon, California.


_____
SIMONE THOMAS

PANEL SERVICE LIST (Excerpted from CTO-5)
DOCKET NO. 1358
IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

*Quincy Community Services District v. Atlantic Richfield Co., et al.,*
E.D. California, C.A. No. 2:03-2582

Colleen P. Doyle
Bingham McCutchen, LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071

Nathan P. Eimer
Eimer, Stahl, Klevorn & Solberg
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604

Taylor M. Florence
Bullivant, Houser, Bailey, et al.
11335 Gold Express Drive
Ste. 105
Goldriver, CA 95670-4491

Matthew T. Heartney
Arnold & Porter, LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017

Alan J. Hoffman
Blank Rome, L.L.P.
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6998

John J. Lyons
Latham & Watkins
650 Town Center Drive
Suite 2000
Costa Mesa, CA 92626-1925

Jeffrey John Parker
Sheppard, Mullin, Richter & Hampton, LLP
333 South Hope Street
Suite 4800
Los Angeles, CA 90071-1448

Morris A. Ratner
Lieff, Cabraser, Heimann & Bernstein, L.L.P.
780 Third Avenue
48th Floor
New York, NY 10017

Tracie J. Renfroe
Bracewell & Patterson
South Tower Pennzoil Place
Suite 2900
711 Louisiana
Houston, TX 77002

Edward Romero
Greenan, Peffer, Sallander & Lally, LLP
Two Annabel Lane
Suite 200
P.O. Box 10
San Ramon, CA 94583

David L. Schrader
Morgan, Lewis & Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

Victor M. Sher
Sher & Leff
450 Mission St.
Suite 500
San Francisco, CA 94105

William D. Temko
Munger, Tolles & Olson
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

H

1
2
3
4
5
6
7
8
9
10

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE:<br><br>METHYL BUTYL TERTIARY ETHER ("MTBE")<br>PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1358<br><br>This Document Relates to *The People of the State of California, et al., v. Atlantic Richfield Co., et al.,* Case No. 03-2653 (E.D. Cal.)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5) |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................ii

TABLE OF AUTHORITIES ..............................................................................................iii

    CASES ........................................................................................................................iii

    STATUTES .................................................................................................................v

    PERIODICALS ..........................................................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
VACATE CONDITIONAL TRANSFER ORDER (CTO-5)............................................1

I.       STATEMENT OF THE CASE ............................................................................1

II.      ARGUMENT .......................................................................................................2

    A.    Because the People of the State of California are Sovereign and Immune
          From Process, the JPML Lacks Jurisdiction to Issue a Transfer Order in
          this Case, and Must in Consequence Vacate the Conditional Transfer
          Order Already Issued ..............................................................................3

          1.    Decisions by U.S. District Courts in the *Steelcase* and *Moore* Cases
                Recognize that a State Cannot Be Removed to Federal Court
                Against Its Will, Even Where the State is a Plaintiff in an Action
                Filed in State Court ........................................................................3

          2.    The Decisions in *Steelcase* and *Moore,* Based on the Eleventh
                Amendment, are Consistent with Federal Precedent on the Broader
                Basis of Sovereign Immunity .........................................................5

          3.    The Decisions of Other Federal Courts, Failing to Follow *Steelcase*
                and *Moore*, are Incorrect as they Limit the Scope of Sovereign
                Immunity to the "Mere Letter" of the Eleventh Amendment .........8

    B.    Even Assuming that the JPML has Jurisdiction, Transfer is Inappropriate
          Because the Moving Parties Have Failed to Meet Their Burden Pursuant to
          28 U.S.C. § 1407(a) ..............................................................................12

          1.    The Moving Parties Have Failed to Establish Sufficient
                Commonality of Facts .................................................................13

                a.    This Case is Unique Given that a Sovereign is Involved ..13

                b.    Individual Rather Than Common Facts Predominate .......14

          2.    The Moving Parties Have Failed to Establish that Transfer Would
                Best Serve the Convenience of Parties and Witnesses .................15

          3.    The Moving Parties Have Failed to Establish that Transfer Would
                Promote the Just and Efficient Conduct of the Action .................16

                a.    The Risk of Duplicative Discovery is Minimal ...............16

b.      The Risk of Inconsistent Rulings is Minimal ..................18

III.    CONCLUSION ...................................................................................20

### TABLE OF AUTHORITIES

### CASES

*Abundiz v. Explorer Pipeline Co.*, 2002 W.L. 1592604 (N.D. Tex. 2002) ...................19

*Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed. 2d 1114 (1978) .....................4

*Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed. 2d 636 (1999) ........................3, 7, 8, 12

*Ames v. Kansas*, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884) .......................................9, 10, 11

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed. 2d 171 (1985) ....7

*Banco y Agencia de Fianciamiento de la Vivienda e Puerto Rico v. Urbanizadora Villalba*, 681 F.Supp. 981 (D. P.R. 1988) ........................................................................8

*Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed. 2d 686 (1991) ........................................................................7

*California v. Acme Fill Corp.*, 1997 U.S. Dist. LEXIS 16847 (N.D. Cal. 1997) .........................11

*California v. Steelcase, Inc.*, 792 F.Supp. 84 (C.D. Cal. 1992) .....................3, 4, 5, 7, 8, 9, 11, 12

*Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793) .........................................5, 6

*Communities for a Better Environment v. Unocal Corp.*, Cal. Super. Ct., S.F. Cty. Case No. 997013 ........................................................................17

*Cornyn v. Real Parties in Interest*, 110 F.Supp. 2d 514 (E.D. Tex. 2000) ...................................11

*Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 2d 662 (1974) .....................................4

*Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) .........................................6

*ExxonMobil Corp. v. United States Environmental Protection Agency*, 217 F.3d 1246 (9th Cir. 2000) ........................................................................19

*Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed. 2d 962 (2002) ........................................................................7

*Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) .....................5, 6, 8, 10, 11, 12

*Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed. 2d 712 (1972) ..........9, 10, 11

*In re AH Robbins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221 (JPML 1981) ........................................................................18

*In re Air Crash at Pago Pago, American Samoa on January 30, 1974*, 394 F.Supp. 799 (JPML 1975) ........................................................................14

*In re Gasoline Lessee Dealers Antitrust Litigation*, 479 F.Supp. 578 (JPML 1979) ...................15

*In re Grand Funk Railroad Trademark Litigation*, 371 F.Supp. 1084 (JPML 1974) .............15, 19

*In re Harmony Loan Company, Inc., Securities Litigation*, 372 F.Supp. 1406 (JPML 1974) ......14

*In re Highway Accident Near Rockville, Connecticut, on December 30, 1972*, 388 F.Supp. 574 (JPML 1975) ........................................................................................................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F.Supp. 2d 593 (S.D. N.Y. 2001) .........................................................................................................................19

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D. N.Y. 2002) ...................................................................................................................................18

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL 1358, Master File C.A. No. 1:00-1898 (SAS) (S.D. N.Y. Stay Order Dec. 23, 2003) ................................2, 17

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2004 U.S. Dist. LEXIS 4068 (S.D. N.Y. March 16, 2004) ...........................................................................19

*In re Mirtazapine Patent Litigation*, 199 F.Supp.2d 1380 (JPML 2002) .......................12, 15, 16

*In re National Student Marketing Litigation*, 368 F.Supp. 1311 (JPML 1973) .............................15

*In re Pacific Gas & Electric Company*, 281 B.R. 1, 2002 Bankr. LEXIS 1400 (Bankr. N.D. Cal. 2002) ........................................................................................................................................11

*In re Rezulin Products Liability Litigation*, 133 F.Supp. 2d 272 (S.D. N.Y. 2001) ....................11

*In re Sears, Roebuck & Co. Employment Practices Litigation*, 487 F.Supp. 1362 (JPML 1980) ..................................................................................................................................................15

*In re State of New York v. Citibank, N.A.*, 537 F.Supp. 1192 (S.D. N.Y. 1982) .....................9, 10

*In re Tobacco/Governmental Health Care Costs Litigation*, 76 F.Supp. 2d 5 (D. D.C. 1999) .............................................................................................................................12, 13, 14, 16

*In re Truck Accident Near Alamargordo, New Mexico, on June 18, 1969*, 387 F.Supp. 732 (JPML 1975) ...................................................................................................................16

*In re Western Electric Co. Semiconductor Patent Litigation*, 436 F.Supp. 404, 406 (JPML 1977) ..................................................................................................................................................18

*Kansas v. Home Cable Inc.*, 35 F.Supp. 2d 783 (D. Kan. 1998) ...................................11

*Medtronic, Inc., v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed. 2d 700 (1996) .......................5

*Missouri v. Coeur D'Alene Tribe*, 1997 U.S. Dist. LEXIS 14980 (W.D. Mo. 1997), *vacated by* 164 F.3d 1102 (8th Cir. 1999) ...........................................................................................11

*Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) ...............................6, 7

*Moore ex rel. Mississippi v. Abbott Laboratories, Inc.*, 900 F.Supp. 26 (S.D. Miss. 1995) ............ ...............................................................................................3, 4, 5, 7, 8, 11, 12

*New Hampshire v. Amerada Hess Corp.*, D. N.H. Case No. 03-CV-386, D. R.I. Case No. 03-0529L ..................................................................................................................................13, 14

*New York ex rel. Lefkowitz v. Transcience Corp.*, 362 F.Supp. 922 (S.D. N.Y. 1973) ................10

*Oklahoma ex rel. Edmondson v. Magnolia Marine Transport Co.*, 2004 U.S. App. LEXIS 3432 (10th Cir. February 24, 2004) ...............................................................................................11, 12

*Oregon v. City of Rajneeshpuram*, 1984 U.S. Dist LEXIS 14903 (D. Ore. 1984) ........................8

*Oxygenated Fuels Association v. Davis ("Davis II")*, 331 F.3d 665 (9th Cir. 2003), *affirming Oxygenated Fuels Association v. Davis ("Davis I")*, 163 F.Supp. 2d 1182 (E.D. Cal. 2001) .....19

*Oxygenated Fuels Association v. Pataki*, 158 F.Supp. 2d 248 (N.D. N.Y. 2001) .........................19

*Oxygenated Fuels Assocation v. Pataki*, 293 F.Supp. 2d 170 (N.D. N.Y. 2003) .........................19

*Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ........................................................................................................................................7

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed. 2d 605 (1993) ..........................................................................................................16

*Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997) ........11

*Regents of the University of Minnesota v. Glaxo Wellcome, Inc.*, 58 F.Supp.2d 1036 (D. Minn. 1999) ..........................................................................................................................................11

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed: 2d 252 (1996) ....... .............................................................................................................................................7, 8

*Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) .........................................6

*South Dakota State Cement Plant Commission v. Wausau Underwriters Insurance Company*, 778 F.Supp. 1515 (D. S.D. 1991) .......................................................................................................8

*South Tahoe Public Utility District v. Atlantic Richfield Co.*, Cal. Super. Ct., S.F. Cty. Case No. 999128 ...................................................................................................................................16, 17

*State Engineer of Nevada v. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada*, 66 F.Supp. 2d 1163 (D. Nev. 1999), *aff'd* 339 F.3d 804 .......................................11

*Terrebonne Parish School Board v. Mobil Oil Corporation*, 1989 U.S. Dist. LEXIS 13703 (E.D. La. 1989) ......................................................................................................................................8

*Vermont v. Oncor Communications, Inc.*, 166 F.R.D. 313 (D. Vt. 1996) ................8, 9, 10, 11, 12

## STATUTES

U.S. CONST. Art I, § 10 ..................................................................................................................5

U.S. CONST. Amend. XI ....................................................................3, 4, 5, 6, 7, 8, 9, 10, 11

28 U.S.C. § 1407 ..............................................................................................2, 12, 13, 15, 16 20

28 U.S.C. § 1441 ................................................................................................10

Cal. Bus. & Prof. Code § 17200 et seq. ...........................................................1, 4

Cal. Bus. & Prof. Code § 17500 et seq. .................................................................1

Cal. Bus. & Prof. Code § 17580.5 ........................................................................1

Cal. Civil Code § 3479 .........................................................................................1

Cal. Civil Code § 3480 .........................................................................................1

Cal. Fish & Game Code § 5650 ............................................................................1

Cal. Health & Safety Code § 25189(d) ................................................................1

Cal. Health & Safety Code § 25189.2(c) ..............................................................1

## **PERIODICALS**

Alfred Hill, *In Defense of Our Law of Sovereign Immunity*, 42 B.C.L. Rev. 485 (2001) ..............3

# I.  STATEMENT OF THE CASE

Plaintiffs are the People of the State of California, two cities, one investor-owned water utility, and nine public agencies charged with managing and/or purveying water resources in Sacramento County. Plaintiffs filed this action in Sacramento County Superior Court on September 30, 2003, and filed a First Amended Complaint ("FAC") on October 31, 2003.[1]  The FAC names as defendants 16 major oil and chemical companies that manufacture methyl tertiary butyl ether ("MTBE"), refine gasoline containing MTBE, and/or supply gasoline containing MTBE to retail gasoline stations in Sacramento County, as well as the owner/operators of certain gasoline stations in the County. FAC, ¶¶ 37-63. Defendants' choice to use MTBE in gasoline and/or their discharge of such gasoline to the subsurface has resulted in the contamination of groundwater resources in Sacramento County - resources on which hundreds of thousands of people ultimately depend for their drinking water. FAC, ¶¶ 1, 37.  The People and the other plaintiffs have jointly sued for public nuisance (Cal. Civil Code §§ 3479, 3480) and jointly seek declaratory relief. The People alone, in the exercise of their police powers, have sued for the unauthorized disposal of hazardous waste under both strict liability (Cal. Health & Safety Code § 25189.2(c)) and negligence (Cal. Health & Safety Code § 25189(d)) theories, for water pollution (Cal. Fish & Game Code § 5650), for false advertising and false environmental advertising (Cal. Bus. & Prof. Code §§ 17500 et seq., 17580.5), for unfair business practices (Cal. Bus. & Prof. Code § 17200 et seq.) and for civil conspiracy.  The remaining plaintiffs have brought suit in an additional six causes of action under tort and other theories.

On or about December 8, 2003, certain defendants removed this action to the Eastern District of California.[2]  A week later, on December 15, 2003, the plaintiffs filed a Motion to Remand the case to state court.[3]  The defendants filed no substantive response to the plaintiffs' motion, instead requesting on December 18, 2003[4]  and then again *ex parte* on January 29, 2004[5]

---

1. A true and correct copy of the FAC is attached as Exhibit 1
2. A true and correct copy of which is attached as Exhibit 2.
3. A true and correct copy of which is attached as Exhibit 3.
4. A true and correct copy of which is attached as Exhibit 4.
5. A true and correct copy of which is attached as Exhibit 5.

1

1   that a hearing on the matter be stayed pending a decision by the Judicial Panel on Multidistrict

2   Litigation ("JPML," or "the Panel") to transfer this case to the Southern District of New York.[6]

3   Plaintiffs opposed this request for a stay in briefs filed on January 30th [7] and February 6, 2004,[8]

4   to no avail; without conducting a hearing the Hon. Garland E. Burrell issued an indefinite stay on

5   February 6th and deemed the plaintiffs' Motion to Remand to be withdrawn without prejudice.[9]

6          On February 25, 2004, the JPML issued Conditional Transfer Order Number Five

7   ("CTO-5"), transferring this case to the Southern District of New York.  On March 11, 2004, the

8   plaintiffs filed a joint Notice of Opposition to this transfer. Because of the unique issues arising

9   from the fact that the People of the State of California are sovereign, we are filing this motion

10  with its accompanying points and authorities separately from the other plaintiffs.

11                            **II.   ARGUMENT**

12         Plaintiff moves to vacate CTO-5 on two bases: first, on the ground that the federal courts

13  lack jurisdiction in this matter given that the People of the State of California object to removal

14  and transfer pursuant to the doctrine of sovereign immunity, and second, even assuming for the

15  sake of argument that this Court has jurisdiction to issue a Transfer Order, it should not do so as

16  the moving parties have failed to meet their burden of proof pursuant to 28 U.S.C. § 1407(a).

17

18

19       6.  Parallel to these proceedings the defendants also filed with the JPML a Notice of Related, Tag-Along
     Actions to *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL No. 1358, Master File
     C.A. No. 1:00-1898 (SAS) (S.D. N.Y. stay order Dec. 23, 2003) (a true and correct copy of which is attached as
20   Exhibit 6), which was at the time an inactive MDL proceeding pending before the Hon. Shira A. Scheindlin of the
     Southern District Court of New York.  On December 19, 2003, Judge Scheindlin conducted a hearing concerning
21   two new cases removed to her district that had pending remand and stay motions (see Reporter's Transcript ("RT") of
     the Proceedings of December 19, 2003, a true and correct copy of which is attached as Exhibit 7). Counsel for the
22   plaintiffs present ultimately stipulated with defense counsel to the conditional transfer of a number of cases to Judge
     Scheidlin's court to join the proceedings pending before her. The plaintiffs in this action were not present and did not
23   consent to the stipulation.  Nonetheless, this case was included in a list of cases submitted to Judge Scheindlin by the
     parties as a potential tag-along action (see the attachment to the Order of December 23, 2003, a true and correct copy
24   of which is attached as Exhibit 8).  On December 23, 2003, Judge Scheindlin issued an order "respectfully
     request[ing]" the district courts in any case on the list to stay proceedings pending transfer to her court (see the Order
25   of December 23, 2003, a true and correct copy of which is attached as Exhibit 8).  The plaintiffs in this action
     objected to any proposed transfer by letters directed to Judge Scheindlin dated January 5, 2004 (a true and correct
26   copy of which is attached as Exhibit 9 to this Motion) and January 27, 2004 (a true and correct copy of which is
     attached as Exhibit 10 to this Motion).  Counsel for one of the defendants in this action also objected to transfer by
27   letter to Judge Scheindlin dated January 5, 2004 (a true and correct copy of which is attached as Exhibit 11).
         7. True and correct copies of which are attached as Exhibits 12 and 13.
28       8. A true and correct copy of which is attached as Exhibit 14.
         9. A true and correct copy of which is attached as Exhibit 15.

1  A.  **Because the People of the State of California are Sovereign and Immune From Process, the JPML Lacks Jurisdiction to Issue a Transfer Order in this Case, and**
2  **Must in Consequence Vacate the Conditional Transfer Order Already Issued**

3  The People of the State of California object to the jurisdiction of this or any other federal

4  court on the ground that, as a separate sovereign, we cannot be compelled to attend this court

5  absent our consent - and we do not consent. The People submit that our rights as sovereign must

6  prevail over any statute authorizing the removal of this action to federal court, or the transfer of

7  this action from one federal court to another.

8  At the outset it needs to be made clear that the People are not relying solely upon the

9  plain wording of the Eleventh Amendment[10] to the U.S. Constitution in asserting this immunity,

10  but upon their broader sovereign rights.[11]   The distinction is important, but often overlooked.  As

11  the Supreme Court recently explained:

12  We have ... sometimes referred to the States' immunity from suit
as "Eleventh Amendment immunity." The phrase is convenient
13  shorthand but something of a misnomer, *for the sovereign
immunity of the States neither derives from nor is limited by the*
14  *terms of the Eleventh Amendment.* Rather, as the Constitution's
structure, and its history, and the authoritative interpretations by
15  this Court make clear, *the States' immunity from suit is a
fundamental aspect of the sovereignty which the States enjoyed*
16  *before the ratification of the Constitution, and which they retain
today* ... except as altered by the plan of the Convention or certain
17  constitutional Amendments.

18  *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed. 2d 636 (1999) (emphasis added).

19  1.  **Decisions by U.S. District Courts in the *Steelcase* and *Moore* Cases Recognize that a State Cannot Be Removed to Federal Court Against Its Will, Even**
20  **Where the State is a Plaintiff in an Action Filed in State Court**

21  Two District Courts have sustained Eleventh Amendment challenges to the jurisdiction of

22  federal courts in cases very similar to ours. In *California v. Steelcase, Inc.*, 792 F.Supp. 84

23  (C.D.Cal. 1992) the District Attorney of Los Angeles brought a civil enforcement action for

24

25

26  _____

27  10. The Eleventh Amendment, adopted in 1798, provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

28  11. For a history of the law of sovereign immunity see Alfred Hill, *In Defense of Our Law of Sovereign Immunity*, 42 B.C.L. Rev. 485 (2001).

3

1   violation of the state antitrust and unfair competition statutes[12] in state court. The defendant

2   removed the action to federal court on the grounds of diversity of citizenship. The federal court

3   remanded the action back to state court on the grounds that a) citizenship was not in fact diverse

4   insofar as at least one cause of action was concerned[13] and b) the Eleventh Amendment

5   prohibited removal.  Insofar as this second ground was concerned the Court found that it lacked

6   jurisdiction because the Eleventh Amendment "is in 'the nature of a jurisdictional bar.'" *Steelcase*,

7   792 F. Supp. at 86, citing *Alabama v. Pugh*, 438 U.S. 781, 782 n.1, 98 S.Ct. 3057, 57 L.Ed. 2d

8   1114, (1978) (per curiam), which in turn quoted from *Edelman v. Jordan*, 415 U.S. 651, 678, 94

9   S.Ct. 1347, 39 L.Ed. 2d 662, (1974).  The court noted the defendant's argument that a literal

10  reading of the Eleventh Amendment provides immunity to states as defendants, not as plaintiffs,

11  but found this of no moment, stating at page 86 that:

12          since *the immunity* granted by the Eleventh Amendment is an
            immunity from being made an involuntary party to an action in
13          federal court, it *should apply* equally to the case *where the state is
            a plaintiff* in an action commenced in state court and the action is
14          *removed* to federal court by the defendant. (emphasis added).

15      *Steelcase* was subsequently followed in the case of *Moore ex rel. Mississippi v. Abbott*

16  *Laboratories, Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995). In *Moore* the state Attorney General sued

17  corporations in state court on the same general grounds as in *Steelcase* - namely, violation of the

18  state antitrust statute and state consumer protection act.  The defendants removed the case to

19  federal court on diversity and federal question grounds, and the state moved to remand to state

20  court.  The district court discussed the language found in *Steelcase* and then said, at page 30,

21  that:

22          The Court finds the reasoning of the *Steelcase* court to be sound.
            By removing this matter to federal court, Defendants have
23          involuntarily subjected the State of Mississippi to the jurisdiction
            of this Court. Because the State does not consent to this removal,
24          the Court finds that it lacks subject matter jurisdiction over this
            action due to the Eleventh Amendment proscription ....
25

26  _____

27      12. Cal. Bus. & Prof. Code section 17200 et seq.  The People have brought this identical charge against the
    defendants in the instant case; see FAC Cause of Action Number Eight.

        13. Because the unfair competition statute expressly allows prosecutions by District Attorneys in the name of
28  the People of the State of California, and a state is not a citizen for diversity purposes, at least the second cause of
    action could not be removed pursuant to diversity jurisdiction. *Steelcase,* 792 F. Supp. at 85-86.

                                         4

1      Our case is indistinguishable from *Steelcase* and *Moore*. In this case, as in *Steelcase* and

2  *Moore*, the sovereign is not just suing corporate defendants in state court - it is doing so in the

3  exercise of its police powers.[14]  In this case, as in *Steelcase* and *Moore*, the defendant

4  corporations have removed the action to federal court without the consent of that sovereign.  And

5  in this case, as in *Steelcase* and *Moore*, this Court must defer to the wishes of a sovereign people

6  who desire to litigate their police action in their own courts.

7       2.     **The Decisions in *Steelcase* and *Moore*, Based on the Eleventh Amendment, are Consistent with Federal Precedent on the Broader Basis of Sovereign**

8             **Immunity**

9      While neither the *Steelcase* nor *Moore* courts cited it, their reading of the scope of

10  sovereign immunity is consistent with the ruling in the seminal Eleventh Amendment case, *Hans*

11  *v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  In *Hans* the defendant was a citizen

12  of the state he was suing, and brought action pursuant to the Contracts Clause of the U.S.

13  Constitution.[15]  The Eleventh Amendment recognizes the immunity enjoyed by states from suits

14  in federal court brought by citizens of other states and countries, but is silent on the subject of

15  suits brought against a state by its own citizens. The U.S. Supreme Court recognized that if it was

16  bound by the "mere letter" of the Eleventh Amendment suit might be had, but after an extensive

17  discussion of the history of the subject[16] it concluded that any attempt to limit sovereign

18

---

19    14. The People submit that the protections afforded by sovereign immunity are absolute, and that it does not matter in what context a state is forced into federal court where its immunity is not waived, but it is appropriate to

20  emphasize how particularly important that immunity is where the exercise of the state's inherent police powers are concerned. "Throughout our history the several States have exercised their police powers to protect the health and

21  safety of their citizens. Because these are 'primarily, ... matter[s] of local concern,' the 'States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet

22  of all persons." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed. 2d 700 (1996) (internal citations omitted).

23    15. It was alleged that the State of Louisiana was reneging on its obligation to pay bonds it had previously issued, in contravention of Article I, Section 10 of the Constitution.

24    16. In summary, the Court noted that the Eleventh Amendment was enacted in response to *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), where the Supreme Court, utilizing a literal interpretation, found

25  that the Constitution permitted a state to be sued by the citizens of another state.  While there had been rumblings during the debates over the enactment of the Constitution from opponents that a literal interpretation of the document

26  would lead to just such a result, supporters such as James Madison ("It is not in the power of individuals to call any state into court ...," *Hans*,134 U.S. at 14), John Marshall ("I hope that no gentleman will think that a State will be

27  called at bar of the federal court. . . . It is not rational to suppose that the sovereign power should be dragged before a court," *id.*) and Alexander Hamilton ("It is inherent in the nature of sovereignty not to be amenable to the suit of an

28  individual without its consent. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union," *Hans*,134 U.S.

1   immunity to the "mere letter" of that amendment "is an attempt to strain the Constitution and the

2   law to a construction never imagined or dreamed of." *Hans*, 134 U.S. at 14 and 15. In spite of the

3   fact that the case fell outside the literal wording of the Eleventh Amendment the Supreme Court

4   dismissed the suit on the grounds that the doctrine of sovereign immunity was broader than the

5   Amendment, and that doctrine - if not the Eleventh Amendment per se - protected the state from

6   suits it did not agree to entertain.

7        There have been a number of cases since *Hans* in which the Supreme Court has sustained

8   state claims of sovereign immunity from suit - even though the language of the Eleventh

9   Amendment did not specifically immunize the state. See *Smith v. Reeves*, 178 U.S. 436, 445-448,

10   20 S.Ct. 919, 44 L.Ed. 1140 (1900) (claim of state sovereign immunity from suit sustained, even

11   though suit was brought by a federal corporation, which was not a citizen by the terms of the

12   Eleventh Amendment), *Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921)

13   (claim of state sovereign immunity from suit sustained, even though the terms of the Eleventh

14   Amendment said nothing of suits brought in admiralty; "[t]hat a State may not be sued without its

15   consent is a fundamental rule of jurisprudence ... [T]he entire judicial power granted by the

16   Constitution does not embrace authority to entertain a suit brought by private parties against a

17   State without consent given ... because of the fundamental rule of which the Amendment is but

18   an exemplification," p. 497), *Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282

19   (1934) (claim of state sovereign immunity from suit sustained, even though the Eleventh

20   Amendment did not specifically mention state immunity from suits brought by foreign states;

21   "Behind the words of the constitutional provisions are postulates which limit and control. There

22

---

23   at 13), denied it. When the Supreme Court opted for just such a literal interpretation in *Chisholm* the decision
    "created such a shock of surprise throughout the country that, at the first meeting of Congress thereafter, the Eleventh

24   Amendment was almost unanimously proposed, and was in due course adopted by the legislatures of the States."
    *Hans*, 134 U.S. at 11. As the *Hans* court summarized it at p. 12:

25

26        Looking back from our present standpoint at the decision in *Chisholm v.*
          *Georgia*, we do not greatly wonder at the effect which it had upon the country.

27        Any such power as that of authorizing the federal judiciary to entertain suits by
          individuals against the States, had been expressly disclaimed, and even resented,

28        by the great defenders of the Constitution whilst it was on its trial before the
          American people.

6

1   is the essential postulate that the controversies ... shall be found to be of a justiciable character.

2   There is also the postulate that States of the Union, still possessing attributes of sovereignty, shall

3   be immune from suits, without their consent ...," p. 322), *Blatchford v. Native Village of Noatak*

4   *and Circle Village*, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed. 2d 686 (1991) (immunity from suit

5   by Indian tribes; "we have understood the Eleventh Amendment to stand not so much for what it

6   says, but for the presupposition ... which it confirms," at 779), *Alden*, 527 U.S. at 730 (claim of

7   sovereign immunity sustained where Congress permitted suit in state court, even though the

8   terms of the Eleventh Amendment only addresses limits on the federal judicial branch), and

9   *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 753, 122

10  S.Ct. 1864, 152 L.Ed. 2d 962 (2002) (immunity from administrative actions; "the Eleventh

11  Amendment does not define the scope of the States' sovereign immunity; it is but one particular

12  exemplification of that immunity"). In case after case, for over a century, the Supreme Court has

13  continued to reaffirm the principles, reasoning and ruling of *Hans*.

14      *Steelcase* and *Moore* are also consistent with caselaw holding that state consent to be

15  sued in its own courts does not amount to consent that it be sued in federal court. See *Pennhurst*

16  *State School and Hospital v. Halderman*, 465 U.S. 89, 100 n. 9, 104 S.Ct. 900, 79 L.Ed. 2d 67

17  (1984) ("the Court consistently has held that a State's waiver of sovereign immunity in its own

18  courts is not a waiver of the Eleventh Amendment immunity in the federal courts"). Not only

19  does a state have the right to decide whether it shall waive immunity from suit - it has the right to

20  determine the forum in which immunity shall be waived. *Pennhurst*, 465 U.S. at 100 ("A State's

21  constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it

22  may be sued"). Any waiver of sovereign immunity must be unequivocably expressed.

23  *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239-240, 105 S.Ct. 3142, 87 L.Ed. 2d 171

24  (1985) ("we have held that a State will be deemed to have waived its immunity only where stated

25  by the most express language or by such over-whelming implications from the text as [will] leave

26  no room for any other reasonable construction" (internal quotes and citations omitted)). And

27  immunity is not limited to those situations where a party is seeking a monetary judgment against

28  a State - it serves as well to avoid "the indignity of subjecting a State to the coercive process of

1   judicial tribunals at the instance of private parties," *Seminole Tribe of Florida v. Florida*, 517

2   U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed. 2d 252 (1996) (internal quotation marks and citation

3   omitted). From all these decisions it is apparent that the *Steelcase* and *Moore* cases were

4   correctly decided - a defendant cannot remove a sovereign plaintiff to federal court without that

5   plaintiff's consent, let alone to a federal court 3,000 miles away.

6       **3.    The Decisions of Other Federal Courts, Failing to Follow *Steelcase* and**
        **_Moore_, Are Incorrect as They Limit the Scope of Sovereign Immunity to the**
7       **"Mere Letter" of the Eleventh Amendment**

8       Other federal districts have reviewed *Steelcase* and *Moore* and have refused to follow

9   them. The People submit, however, that these cases are in error given that they uniformly limit

10  themselves to a discussion of the "mere letter" of the Eleventh Amendment without reference to

11  the broader concept of sovereign immunity underlying it.[17]

12      It appears that the earliest dissenting voice to the *Steelcase/Moore* decisions can be found

13  in *Vermont v. Oncor Communications, Inc.*, 166 F.R.D. 313 (Vt. 1996).[18] In *Oncor*

14  *Communications* the state sued a telecommunications company on the grounds that its practices

15

---

16      17. In fairness to these courts it must be said that their analyses were not aided by the fact that the *Steelcase*
    and *Moore* courts did not discuss the broader concept of sovereign immunity either, limiting their discussion to the
17  Eleventh Amendment proper. It would have been better for all of these courts if they had broadened the scope of
    their analyses, but as the quote from *Alden* above makes clear, courts have routinely resorted to the shorthand of
18  having the Eleventh Amendment apply to both concepts - even if the result is a distortion of the analysis.
        18. There are decisions earlier than *Steelcase* and *Moore*, but they are not particularly helpful. In *Oregon v.*
19  *City of Rajneeshpuram*, 1984 U.S.Dist.LEXIS 14903 (D. Ore. 1984), the federal district court denied the state's
    Eleventh Amendment claims in a remand motion - without any citation to authority - on the summarily stated
20  grounds that a federal question was raised. In *Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico v.*
    *Urbanizadora Villalba*, 681 F.Supp. 981 (D. P.R. 1988) the court denied the Commonwealth's Eleventh Amendment
21  claims in a remand motion on the ground that the Eleventh Amendment protects the states as defendants but says
    nothing about states as plaintiffs. In *Terrebonne Parish School Board v. Mobil Oil Corporation*, 1989 U.S. Dist.
22  LEXIS 13703 (E.D. La. 1989) a school board sued an oil company over royalties due to it pursuant to a leasehold.
    The federal court denied the motion to remand because the Eleventh Amendment was unavailable for two reasons:
23  first because "[w]e are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a
    state as a plaintiff," and second because it could not be said that the school board was litigating as the state's alter
24  ego. And in *South Dakota State Cement Plant Commission v. Wausau Underwriters Insurance Company*, 778
    F.Supp. 1515 (D. S.D. 1991) the federal court remanded to state court on the ground that diversity jurisdiction was
25  lacking. It made passing reference to the Eleventh Amendment, noting at page 1522 that "[i]n this case, the State is
    the plaintiff, not the defendant," but declined to rule on the claim - a ruling that would have been pointless in any
26  event given that federal jurisdiction was lacking on diversity grounds. In none of these cases, however, is there a
    discussion of the broader concept of sovereign immunity underlying the Eleventh Amendment. As *Hans* made clear,
27  and as *Alden* reiterated only five years ago, the concept of sovereign immunity is broader than the "mere letter" of
    the Eleventh Amendment, and a determination that a suit does not fit within the parameters of the Eleventh
28  Amendment should only be the first step in a two-step analysis to determine whether sovereign immunity applies. In
    none of these pre *Steelcase* and *Moore* cases was that second step taken.

1   violated state consumer fraud laws and FCC guidelines. The case was removed to federal court.

2   The state moved to remand, arguing (among other things) Eleventh Amendment immunity and

3   citing the *Steelcase* decision.  The court disagreed. Its reasoning in its entirety, found at page 321,

4   is as follows:

> It has long been the case that suits brought by a state against parties
> who are not other states may "be brought in or removed to the
> [District Courts] ..." *Illinois v. City of Milwaukee*, 406 U.S. 91,
> 101, 31 L.Ed. 2d 712, 92 S.Ct. 1385 (1972), quoting *Ames v.
> Kansas*, 111 U.S. 449, 470, 28 L.Ed. 482, 4 S.Ct. 437 (1884). See
> also *[In re] State of New York v. CitiBank, N.A.*, 537 F.Supp. 1192,
> 1197 (S.D.N.Y. 1982). The Eleventh Amendment does not bar
> removal of an action involving a federal question in which a state
> is the plaintiff.

10   The People submit that the authorities relied upon by *Oncor Communications* are

11   distinguishable and in consequence do not stand for the proposition stated.  *City of Milwaukee*

12   involved a suit by Illinois against Wisconsin public entities to abate a public nuisance. Illinois

13   sought leave to file the complaint with the U.S. Supreme Court - skipping over the federal district

14   and circuit courts - on the ground that the Supreme Court had original jurisdiction under the

15   Constitution where one state was suing another. The Supreme Court found, however, that in this

16   instance Wisconsin was not a mandatory party even if certain of its subdivisions might be.  Given

17   that, federal district courts also had jurisdiction, and the Court denied Illinois' request.  The issue

18   in *City of Milwaukee* was therefore not whether a state consented to suit in federal court - it

19   *wanted* to be in federal court - the issue was *which* federal court had subject matter jurisdiction.

20   The Eleventh Amendment, and the broader subject of the sovereign immunity underlying it, was

21   not at issue.

22   *Ames* was cited by *City of Milwaukee* because it, too, dealt with *which* federal court had

23   subject matter jurisdiction.  In *Ames* the state of Kansas challenged a proposed corporate merger

24   in state court. Because federal rights were allegedly involved the defendants sought to remove the

25   matter to federal Circuit Court. The state objected - not on the grounds of immunity, but on the

26   grounds that the Constitution vested exclusive jurisdiction over cases in which a state was a party

27   in the Supreme Court rather than some lesser federal court created by statute.  The Supreme

28   Court disagreed, finding that while the "judicial power of the United States exists under the

9

1  Constitution," Congress has the ability "to distribute that power among courts." *Ames*, 111 U.S.

2  at 472. Again, neither the Eleventh Amendment nor the principle of sovereign immunity factored

3  into the decision.

4  　　　*Citibank* did not involve the Eleventh Amendment or sovereign immunity either.  In

5  *Citibank* the Attorney General of New York sued the defendant in state court over fraudulent use

6  of ATMs.  While the causes of action were state claims they were based exclusively upon

7  allegations of illegality under federal law - namely, the Electronic Fund Transfers Act (EFTA).

8  The defendant removed the case to federal court and the Attorney General moved to remand it

9  back to state court.  The Attorney General does not appear to have demanded remand as a matter

10  of right pursuant to sovereign immunity, but rather as a matter of discretion pursuant to federal

11  principles of comity.[19]  The federal district court declined to defer on the grounds that

12  construction of the EFTA was essential to the resolution of the state claims, adding that "[i]t is

13  clear that an action can be removed *notwithstanding the fact that a state is the plaintiff. Ames v.*

14  *Kansas*, 111 U.S. 449, 463, 4 S.Ct. 437, 443, 28 L.Ed. 482 ...." *Citibank*, 537 F.Supp. at 1197

15  (emphasis added). This language in *Citibank* appears to come closest to supporting the

16  proposition found in *Oncor Communcations*, but like *City of Milwaukee* it relies upon *Ames* for

17  this proposition, and again *Ames* does not deal with the Eleventh Amendment or sovereign

18  immunity issues at all.[20]

19  　　　In short, none of the three cases relied upon by the *Oncor Communications* court dealt

20  with the issue posed here, and the *Oncor Communications* court's attempt to distinguish

21

22  　　19. See *Citibank*, 537 F. Supp at 1197: "The Attorney General insists that he should be permitted to pursue
the relief he seeks in the state courts, as the state legislature intended. He is the people's representative by state law,

23  and claims he should be allowed to proceed in the forum designated for the purpose by the legislation, and to seek
the remedies specified. He notes specifically the valid observation in *New York ex rel. Lefkowitz v. Transcience*

24  *Corp.*, 362 F. Supp. 922, 928 (S.D.N.Y. 1973), a section 63(12) proceeding, that a state forum for cases brought by
the Attorney General is desirable to give 'free scope to the police power of the States' in consumer protection cases."

25  　　20. The *Citibank* court did cite to a different page in the *Ames* opinion than the *City of Milwaukee* court -
namely, 111 U.S. at page 463.  At that page the *Ames* court dealt with the authority to remove an action to federal

26  court pursuant to the 1875 statute in place at the time. This forerunner of 28 U.S.C. section 1441(a) permitted either
party to remove an action to federal court (the current version, of course, permits only defendants to do so), and the

27  *Ames* court noted that it made no distinction between suits with ordinary parties and those in which a State was a
party.  This discussion of the scope of the statute, however, included no mention of the concept of sovereign

28  immunity or the Eleventh Amendment, which would trump any mere statute.  This is perhaps not surprising, given
that *Ames* preceded *Hans* by some six years.

1  *Steelcase* and *Moore* on their authority must fail. This did not, unfortunately, occur to a number

2  of subsequent federal district courts, which opted with little or no independent analysis to follow

3  *Oncor Communications* rather than *Steelcase* and *Moore* based on these same cases. See

4  *Missouri v. Coeur D'Alene Tribe*, 1997 U.S. Dist. LEXIS 14980, *7-8 (W.D. Mo. 1997), *vacated*

5  *by* 164 F.3d 1102 (8th Cir. 1999), *California v. Acme Fill Corp.*, 1997 U.S. Dist. LEXIS 16847,

6  *3-4 (N.D. Cal. 1997),[21] *Kansas v. Home Cable Inc.*, 35 F.Supp.2d 783, 789 (D. Kan. 1998),

7  *Regents of the University of Minnesota v. Glaxo Wellcome, Inc.*, 58 F.Supp. 2d 1036, 1039 (D.

8  Minn. 1999), *In re Rezulin Products Liability Litigation*, 133 F.Supp. 272, 297 (S.D. N.Y. 2001),

9  and *In re Pacific Gas & Electric Company*, 281 B.R. 1, 2002 Bankr. LEXIS 1400 (Bankr. N.D.

10  Cal. 2002).[22] Recently the Tenth Circuit weighed in on the issue in *Oklahoma ex rel. Edmondson*

11  *v. Magnolia Marine Transport Co.*, 2004 U.S. App. LEXIS 3432 (10th Cir. February 24, 2004).[23]

12  Unfortunately it, too, failed to discuss the broader concept of sovereign immunity. It did at least

13  acknowledge - as no other court had done - that *City of Milwaukee* and *Ames* did not involve

14  Eleventh Amendment issues, but said that because "nearly every court to consider" the issue "has

15  relied on the unconditional holding of those cases, in conjunction with the pointed and specific

16  language used in the constitutional text itself" to bar Eleventh Amendment claims, it would do so

17

---

18      21. Interestingly, the court in *Acme Fill* not only mentioned *Hans* but noted that pursuant to it the "Supreme Court has extended the Amendment's protection beyond its literal meaning to cover suits brought against a state by

19  its own citizens," *Acme Fill*, 1997 U.S. Dist. LEXIS 168947 at *3. It failed to discuss why the *Hans* court provided that extension, however, or explain how it was that the *Hans* extension would affect the question before it.

20      22. Other cases criticized *Steelcase* without relying specifically on the authorities cited by *Oncor Communications*, but are distinguishable for other reasons. In *State Engineer of Nevada v. South Fork Band of the*

21  *Te-Moak Tribe of Western Shoshone Indians of Nevada*, 66 F.Supp. 2d 1163, 1170 (D. Nev. 1999), *aff'd* 339 F.3d 804, the court found that *Steelcase* was not controlling because *Steelcase* was a diversity of citizenship case rather

22  than a federal question case. The distinction is of no moment - *Hans* involved a federal question rather than diversity too, which had no bearing whatsoever on the sovereign immunity issue - but perhaps more to the point, given that the

23  state was suing the United States (among others), and the Eleventh Amendment clearly does not extend to suits between those two sovereigns, there was no need to discuss let alone try to distinguish *Steelcase* at all. *Cornyn v.*

24  *Real Parties in Interest*, 110 F.Supp. 2d 514 (E.D. Tex. 2000) involved an action brought by the State of Texas in state court against certain private attorneys it had retained to help in litigation against the tobacco industry after that

25  litigation was settled. The case was removed and the state tried to remand it. The court refused, declining to follow *Steelcase* and *Moore* and citing *Oncor Communications* and its progeny instead. But it did not need to discuss these

26  cases at all. Given that the state of Texas had originally brought the tobacco litigation in *federal* court, the Court ruled that it had waived its sovereign immunity anyway.

27      23. Among the cases relied upon by *Edmondson* is *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997). In *Regents*, however, the plaintiff university originally filed the case in

28  *federal* court - it later complained when it was transferred to another district. That case is obviously very different from this one.

11

1    too. *Edmondson*, *7.  The People submit that this is not a particularly helpful analysis.  An error -

2    no matter how often repeated - remains an error.  These cases all fail because they ultimately

3    relied upon authority having nothing to do with sovereign immunity or the Eleventh Amendment

4    - merely repeating the error in *Oncor Communications* - and because they all neglected to

5    discuss, let alone appreciate, the distinction drawn by the *Hans* court and later reiterated by the

6    *Alden* court between the "mere letter" of the Eleventh Amendment and the much broader concept

7    of sovereign immunity underlying it.

8         In the final analysis *Steelcase* and *Moore* got it right.  A sovereign state cannot be hauled

9    in front of a federal court without its consent, and the mere decision to file suit in state court to

10    validate a police action does not constitute such consent.  Attempts to dismiss these cases while

11    ignoring the lessons taught by *Hans* and recently reiterated by *Alden* are neither persuasive nor

12    correct.  *Steelcase* and *Moore* should be followed by this Court.  This sovereign's immunity

13    should be recognized.  In light of the fact that this immunity exists, this Court by definition lacks

14    jurisdiction to issue a Transfer Order, and it should in consequence vacate the Conditional

15    Transfer Order already issued.

16    **B.    Even Assuming that the JPML has Jurisdiction, Transfer is Inappropriate Because**
17    **the Moving Parties Have Failed to Meet Their Burden Pursuant to 28 U.S.C. §1407(a)**

18         In evaluating a request for transfer made pursuant to 28 U.S.C. § 1407(a) the JPML must

19    evaluate three often interconnected factors: 1) whether the actions raise common questions of

20    fact; 2) whether transfer and consolidation would best serve the convenience of the parties and

21    witnesses; and 3) whether transfer and consolidation would promote the just and efficient

22    conduct of the litigation. *In re Tobacco/Governmental Health Care Costs Litigation*, 76

23    F.Supp.2d 5, 8 (D. D.C. 1999).  Or, to put it another way, is transfer "necessary in order to

24    eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources

25    of the parties, their counsel and the judiciary." *In re Mirtazapine Patent Litigation*, 199

26    F.Supp.2d 1380, 1381 (JPML 2002).  All three of these factors need to be met, *In re Highway*

27    *Accident Near Rockville, Connecticut, on December 30, 1972*, 388 F.Supp. 574, 575 (JPML

28    1975), and the burden is upon the moving party to establish that these criteria have been met, *In*

12

1   *re Tobacco/Governmental Health Care Costs Litigation*, 76 F.Supp. 2d at 7-8.  The People of the

2   State of California submit that, even if the Panel has jurisdiction over this matter, the moving

3   parties have failed to meet their burden of proving any one of these three factors. In consequence

4   their motion to transfer should be denied, and CTO-5 vacated.

5        1.   <u>The Moving Parties Have Failed to Establish Sufficient Commonality of Facts</u>

6        In their Notice of Related, Tag-Along Actions ("Notice"), the moving parties have alleged

7   two common questions of fact between this case and others: "whether defendants knew about and

8   misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks

9   to downstream users, the federal government or the public" and "whether plaintiffs sustained

10  drinking water contamination as a result of MTBE contamination." Notice at p. 2, quoting from

11  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* Transfer Order at p. 1

12  (October 10, 2000). While the People agree that there is commonality insofar as the first of these

13  factors is concerned, the People submit that the second factor concerns site-specific information

14  that is uncommon rather than common among the parties.  In addition, neither of these listed

15  factors takes into account the differences inherent in the fact that this plaintiff is a sovereign.

16        a.   <u>This Case is Unique Given that a Sovereign is Involved</u>

17        Perhaps the greatest dissimilarity between this case and others currently consolidated is

18  that a sovereign is bringing the action under causes of action uniquely related to its police

19  powers.[24]  A similar situation arose in the case of *In re Tobacco/Government Health Care Costs*

20  *Litigation*, where a number of unions and foreign governments sued the tobacco industry.  They

21  wound up before separate judges in the same district.  The United States filed relatively late in

22  the litigation, and was placed in the same courtroom as the unions.  The defendants sought to

23  consolidate the U.S. case with the cases for the plaintiff foreign governments. Applying the

24  factors found in § 1407 the district court declined to do so, finding that consolidation would not

25  serve the just and efficient conduct of the litigation because:

26

27

28  24. The only other sovereign who is a party to the MTBE actions and tag-along actions that the People are aware of is the State of New Hampshire, plaintiff in *New Hampshire v. Amerada Hess Corp.*, D. N.H. Case No. 03-CV-386, D. R.I. Case No. 03-0529L, transferred pursuant to CTO-4.

13

1
2
3
4
5

> The United States' action is based on sections of the United States Code that permit only the United States to seek relief, thus presenting entirely different, perhaps crucial, legal issues from those implicated by the foreign government actions. The Court therefore concludes that most of the legal questions to be decided before trial are unique to the lawsuit filed by the United States, eliminating any increase in efficiency or justice to be gained by the consolidation of the U.S. and foreign actions.

6    *Id.*, at 9. Our case is analogous. While the People and the other plaintiffs in this case

7    have jointly sued under a public nuisance cause of action, and both seek declaratory relief, the

8    People have brought six other causes of action in which they are the only plaintiff. The People

9    are not aware of any other plaintiffs in any other case that have alleged the same causes of

10   action.[25]  The legal issues regarding these causes of action brought solely by a sovereign in the

11   valid exercise of its police power are therefore unique, and there is no reason to include them in

12   the raft of tort-related claims that are to be litigated in New York by private parties. See also *In*

13   *re Harmony Loan Company, Inc., Securities Litigation*, 372 F.Supp. 1406, 1407 (JPML 1974)

14   (claim of sovereign immunity was a factor in denial of transfer).

15          b.      <u>Individual Rather Than Common Facts Predominate</u>

16          At one level - the level concerning the liability of the oil industry for the decisions it made

17   relative to the promotion, production and distribution of MTBE - there are common facts

18   between the actions the moving parties seek to have consolidated. At another level, however, - at

19   the level concerning the damages done to individual plaintiffs as a result of the defendants'

20   collective decisions - there is little in common between the parties. This can be a distinction of

21   import when weighing the first criterion; see, e.g., *In re Air Crash at Pago Pago, American*

22   *Samoa on January 30, 1974*, 394 F.Supp. 799, 800 (JPML 1975) (noting that in tort litigation,

23   common questions may pertain to liability, but the issue of damages will be unique). As will be

24   discussed further below, discovery for the facts common to these actions has been largely

25   completed. What remains is discovery about the site-specific and community-specific damage -

26   discovery that will only be of interest to those parties involved in those site and

27

28

---

25. Similar charges may have been brought by New Hampshire, but of course under New Hampshire law.

14

1   community-specific cases.  When the balance between the common facts and individual facts

2   reach a certain level, the courts have found that the benefits of transfer and consolidation are

3   outweighed by the burdens.  In *In re Gasoline Lessee Dealers Antitrust Litigation*, 479 F.Supp.

4   578, 580 (JPML 1979), for example, the Panel found that even though the actions pending before

5   it "share some questions of fact," the "individual rather than common factual questions

6   predominate," and given that "discovery and other pretrial proceedings concerning the common

7   factual questions would clearly be dwarfed by matters" of little or no interest to certain of the

8   parties, transfer was inappropriate. And in the case of *In re Sears, Roebuck & Co. Employment*

9   *Practices Litigation*, 487 F.Supp. 1362, 1364 (JPML 1980), the Panel refused to consolidate and

10  transfer after finding that "whatever common questions of fact ... may be involved in

11  determining these motions are simply insufficient, in our view, to overcome the overall

12  predominance of individual factual questions ...."[26] So, too, here.  While there are facts in

13  common, they do not outweigh those that are independent of one another.  The moving parties

14  have failed to establish that there is sufficient commonality to justify herding all of this litigation

15  into one courtroom.

16      **2.**    **The Moving Parties Have Failed to Establish that Transfer Would Best Serve**

17              **the Convenience of Parties and Witnesses**

18        The second criterion focuses on whether transfer and consolidation will "conserve the

19  resources of the parties, their counsel and the judiciary." *In re Mirtazapine Patent Litigation*, 199

20  F.Supp.2d at 1381.  Stated more bluntly, "[t]he basic purpose underlying the enactment of 28

21  U.S.C. § 1407 was to secure, in multi-district civil litigation as in all other civil litigation, the 'just,

22  speedy and inexpensive determination of every action.' [citation]" *In re National Student*

23  *Marketing Litigation*, 368 F.Supp. 1311, 1316 (JPML 1973).

24        The moving parties made no attempt in their Notice to establish how transfer would best

25  serve the convenience of the parties and witnesses in this case, other than to apparently assume

26  that because of the "substantially similar nature of the allegations involved" convenience would be

27  _____

28      26. See also *In re Grand Funk Railroad Trademark Litigation*, 371 F.Supp. 1084, 1085 (JPML 1974) (no
benefit where "discovery will focus on localized factual issues.")

1   a given.  Notice at pages 2-3.  Obviously the People disagree that there is sufficient commonality

2   for the reasons stated above, but even if the moving parties had met their burden of proof on the

3   first criterion, "a mere showing that common questions of fact exist amongst the actions for which

4   Section 1407 treatment is proposed is not sufficient, in and of itself, to warrant transfer by the

5   Panel.  The other criteria of the statute must also be satisfied." *In re Truck Accident Near*

6   *Alamagordo, New Mexico, on June 18, 1969*, 387 F.Supp. 732, 733 (JPML 1975).

7        Litigating this matter in New York may well serve the convenience of the moving parties,

8   but these same moving parties elected to enter the market in California.  Transfer of this action

9   across the country is neither convenient nor agreeable to the People of the State of California, a

10   sovereign whose dignitary interests are entitled to respect.  *Puerto Rico Aqueduct and Sewer*

11   *Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed. 2d 605 (1993).

12       **3.**   **The Moving Parties Have Failed to Establish that Transfer Would Promote the**

13              **Just and Efficient Conduct of the Action**

14        The third criterion is the "most important." *In re Tobacco/Governmental Health Care*

15   *Costs Litigation*, 76 F.Supp.2d at 8.  In analyzing whether transfer would promote the just and

16   efficient conduct of actions, the JPML considers primarily whether transfer and consolidation will

17   avoid duplicative discovery and prevent inconsistent pretrial rulings. See, e.g., *In re Mirtazapine*

18   *Patent Litigation*, 199 F.Supp.2d at 1381.

19        The moving parties in their Notice again made no effort to establish that this criterion has

20   been met, other than to apparently assume that because the actions share common facts transfer

21   and consolidation would of necessity serve to promote the just and efficient conduct of the action.

22   For the reasons set forth below, they are wrong.

23         **a.**   **The Risk of Duplicative Discovery is Minimal**

24        The moving parties have identified as the first common fact "whether defendants knew

25   about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing

26   its risks to downstream users, the federal government or the public." Notice at p. 2.  Discovery on

27   this question as to many, if not all, of the defendants in this action was largely completed in the

28   prior incarnation of MDL No. 1358, as well as in *South Tahoe Public Utility District v. Atlantic*

1    *Richfield Co.*, Cal. Super. Ct., S.F. Cty. Case No. 999128 and *Communities for a Better*

2    *Environment v. Unocal Corp.*, Cal. Super. Ct., S.F. Cty. Case No. 997013. See Declaration of

3    Victor M. Sher ("Sher Decl.") attached to Plaintiff California-American Water Company's Motion

4    to Vacate CTO-4, filed March 4, 2004, at ¶¶ 7-10, 12-13, 14-16, 19-20.[27] The same is true with

5    respect to expert discovery on the related question of whether MTBE is a defective product. *Id.*,

6    ¶¶ 10, 13, 15, 19-20. Overall, millions of pages of discovery have been produced and hundreds of

7    witnesses deposed. *Id.*, ¶¶ 8, 13, 15-16.

8         Moreover all of this discovery is, or could easily be made, readily available to all of the

9    parties. *Id.*, ¶¶ 11, 13, 17-18. For example, the document depository in the Transferee Court,

10   which still exists, was established with the specific purpose of making those documents available

11   to parties in other cases. *Id.*, ¶¶ 17-18, *In re MTBE Products Liability Litigation*, Confidentiality

12   Agreement & Order (S.D.N.Y. June 1, 2001).[28] The documents, depositions and trial testimony

13   from the *South Tahoe* and *CBE* cases can also be made available to the parties. Sher Decl., ¶¶ 11,

14   13.

15         In contrast the remaining "common fact" cited by the moving parties - "whether plaintiffs

16   sustained drinking water contamination as a result of MTBE contamination" - will revolve

17   primarily around localized and site-specific issues.  A number of examples come to mind.

18   Determining where releases of MTBE have been detected will require examination of records

19   maintained in Sacramento by the County Environmental Management Department and the

20   Regional Water Quality Control Board, among others, and the number of these sites - and their

21   corresponding files - may be in the hundreds.  Determining the damage done or threatened by

22   these releases and the potential remedies and costs of those remedies will require experts to

23   evaluate and model groundwater aquifers with their attendant flow rates and flow directions.

24   Determining the sources of the MTBE found at these sites will require document productions

25   from and depositions of station owners and operators in the county, along with the truckers and

26   terminals who supplied them, the pipeline owners and operators who supplied the terminals, and

27

28   _____

     27. A true and correct copy of which is attached as Exhibit 16.
     28. A true and correct copy of which is attached as Exhibit 17.

1 ultimately the refineries proper - in short, there will be extensive discovery regarding the gasoline

2 infrastructure in northern California generally and Sacramento in particular.  While the discovery

3 will be carried out locally, all of the litigation about the propriety and scope of that discovery will

4 - if the moving parties have their way - take place 3,000 miles away.  The People fail to see the

5 efficiency. Certainly the moving parties have not shown it. In fact, in denying class certification in

6 the original MDL No. 1358 cases, the Transferee Court itself concluded that questions regarding

7 contamination of any particular well present "a factually unique set of circumstances," because

8 there are "differences in the level of contamination ... and the nature of relief that each will

9 require." *In re MTBE Products Liability Litigation*, 209 F.R.D. 323, 337, 344 (S.D. N.Y. 2002).

10        In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery

11 is largely complete and available. The discovery that remains will focus primarily on issues

12 specific to Sacramento County - issues which can be better handled in California.

13                b.    The Risk of Inconsistent Rulings is Minimal

14        Another potential reason for transfer and consolidation is that it would reduce the risk of

15 inconsistent rulings.  The People submit that there is little risk of that in this case. First, it should

16 go without saying that where cases are dissimilar the rulings in one will likely be irrelevant to

17 another.  For the reasons set forth in section "B1" above, the People submit that this case is so

18 different from the others consolidated in MDL No. 1358 that the decisions made in this case will

19 have little bearing on the decisions in other cases - and vice versa.

20        In addition, just as discovery on common factual issues is already well advanced,

21 published opinions from a number of courts provide clear precedent that any district court can

22 adopt. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the

23 conclusions of the transferee judge which have been reached through [her] familiarity with the

24 litigation, and can serve as an aid in ... preventing inconsistent rulings." *In re AH Robins Co. Inc.*

25 *"Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221, 223 (JPML 1981); see also

26 *In re Western Electric Co. Inc. Semiconductor Patent Litigation*, 436 F.Supp. 404, 406 (JPML

27 1977) (transfer unwarranted where transferee court's views on key legal issues were well

28 documented, and would put the other judge "closer to the shoes of the transferee judge").

1        In her ruling on defendants'·motions to dismiss in the original set of cases transferred to

2    MDL No. 1358, Judge Scheindlin set forth a roadmap for handling these cases which other judges

3    can easily follow.  See *In re MTBE Products Liability Litigation*, 175 F.Supp. 2d 593 (S.D. N.Y.

4    2001). First, the Court rejected the defendants' federal preemption defense, *id.*, at 611-616,[29] as

5    has the Ninth Circuit and every other published opinion addressing this question.[30]  The

6    Transferee Court also rejected defendants' primary jurisdiction argument, as well as their related

7    argument that defective product claims concerning MTBE require an impermissible

8    reexamination of EPA's cost-benefit analysis regarding MTBE. *Id.*, at 616-618, 623-625. The

9    Court further upheld the sufficiency of each of the common law tort claims asserted, including

10   claims alleging refiner liability under a theory of public nuisance. *Id.*, at 627-629.

11       With this extensive guidance already in place, the risk of inconsistent pretrial rulings on

12   these common legal questions is minimal. At the same time, any pretrial legal questions raised by

13   virtue of the People's sovereign status and the exercise of our police power are not shared by the

14   vast majority of the other plaintiffs. These questions are best addressed by a court with more

15   experience and familiarity with California law. Thus, the benefits of permitting this case to

16   proceed in California outweigh the benefits (if any) of transfer. See *In re Grand Funk Railroad*

17   *Trademark Litigation*, 371 F.Supp. at 1085 ("the Panel must weigh any benefit that transfer would

18   provide in the way of eliminating the possibility of inconsistent pretrial decisions against the

19   efficient administration of the litigation as a whole"). Accordingly, CTO-5 should be vacated.

20

21

22

---

23       29.  Judge Scheindlin recently determined that a "colorable" claim of preemption was raised by defendants
in the context of a motion to remand in her court in *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability*
24   *Litigation*, 2004 U.S. Dist. LEXIS 4068, *29-30 (S.D. N.Y. March 16, 2004). Given the lower burden of proof
involved at the remand level·the People do not anticipate that this ruling will much affect her ultimate ruling on
25   whether the defense is viable.
    30. ·See *Oxygenated Fuels Association v. Davis ("Davis II")*, 331 F.3d 665 (9th Cir. 2003), *affirming*
26   *Oxygenated Fuels Association v. Davis ("Davis I")*, 163 F.Supp.2d 1182 (E.D. Cal. 2001), *ExxonMobil Corp. v.*
*United States Environmental Protection Agency*, 217 F.3d 1246 (9th Cir. 2000), *Oxygenated Fuels Association v.*
27   *Pataki*, 158 F.Supp. 2d 248 (N.D. N.Y. 2001), *Oxygenated Fuels Association v. Pataki*, 293 F.Supp. 2d 170 (N.D.
N.Y. 2003), see also *Abundiz v. Explorer Pipeline Co.*, 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002).
28

1

### III. CONCLUSION

2    For the reasons stated above the People of the State of California submit that this Court

3  lacks jurisdiction to issue a Transfer Order in this case, and in consequence should vacate CTO-5

4  on the grounds of lack of jurisdiction.  Alternatively, the People submit that the parties moving to

5  transfer this matter to New York have failed to meet their burden pursuant to 28 U.S.C. § 1407(a),

6  and in consequence CTO-5 should be vacated on the merits.

7

8  DATED: 3/22        , 2004              Respectfully submitted,

9                                        JAN SCULLY, DISTRICT ATTORNEY
                                         ALBERT LOCHER,
10                                       Assistant Chief Deputy District Attorney

11
                                 By:
12                                       RUSS DETRICK
                                         Supervising Deputy District Attorney
13                                       Consumer & Environmental
                                         Protection Division, Sacramento Office
14                                       of the District Attorney
                                         906 G Street, Suite 700
15                                       Sacramento, CA 95814
                                         Telephone: (916) 874-6174
16                                       Facsimile: (916) 874-7660
                                         Attorney for Plaintiff
17                                       The People of the State of California

18

19

20

21

22

23

24

25

26

27

28

1 CLAYTON W. KENT, ESQ., S.B. #123164
DAVID PAI, ESQ., S.B. #227058
2 BRAYTON✦PURCELL
ATTORNEYS AT LAW
3 222 Rush Landing Road
Novato, California 94945
4 (415) 898-1555

5 Attorneys for Plaintiffs

6

7

FILED

NOV 10 2004

JOHN P. MONTGOMERY,
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
BY: N. JOHNSON, DEPUTY

8            SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF MARIN

10

11 DOUGLAS SHANNON,                    )  No.  CV044959
                                      )
12          Plaintiff,                )  COMPLAINT FOR DAMAGES
                                      )  1) NEGLIGENCE;
13 vs.                                )  2) FRAUD;
                                      )  3) INTENTIONAL INFLICTION OF
14 TAYLOR INVESTMENTS, LLC; SHELL     )  EMOTIONAL DISTRESS;
OIL, INC; UNOCAL, INC; BRITISH        )  4) PRODUCT LIABILITY
15 PERTROLEUM; A&A GAS; AHMAD         )
AVASH; ALI SALKHI; and DOES 1         )
16 through 100,                       )
                                      )
17          Defendants.               )
                                      )
18

19        COMES NOW plaintiff above-named, and for himself alone, and complains and alleges

20 as against defendants, and each of them, as follows:

21                          **INTRODUCTION**

22        This action arises out of conduct occurring over a period of years effecting the ground

23 water supply to the Redwood Mobile Home Park, in the County of Marin.  During the years in

24 issue, the plaintiff was a resident of said mobile home park, and was exposed to numerous

25 contaminants contained within the well water, the ground soil and/or airborne contaminants.

26 All of said contaminants to which plaintiff was exposed for a period of time were the direct

27 result of a course of conduct of defendants, and each of them.

28 ///

K:\Medmal\9356\Comp.pld.wpd                    1
**COMPLAINT**

SUMMONS ISSUED

BRAYTON✦PURCELL
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
NOVATO, CALIFORNIA 94945
415-898-1555

### PLAINTIFF

1. Plaintiff DOUGLAS SHANNON, is, and at all times relevant herein was an individual who was a resident, tenant of the Redwood Mobile Home Park, located in the City of Novato, County of Marin, State of California.

### DEFENDANTS

2. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times relevant herein, defendant TAYLOR INVESTMENTS, LLC was a limited liability corporation, duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business located within the City and County of San Francisco, State of California. At all times relevant herein, said defendant was the record owner of that certain real property and business conducted thereon commonly described as the Redwood Mobile Home Park.

3. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times relevant herein, defendant SHELL OIL, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of California, with a principal place of business and/or which conducted business located within the City and County of San Francisco, State of California.

4. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times relevant herein, defendant UNOCAL, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of California, with a principal place of business and/or which conducted business located within the City and County of San Francisco, State of California.

5. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times relevant herein, defendant BRITISH PETROLEUM was a corporation duly organized and existing under and by virtue of the laws of the State of California, with a principal place of business and/or which conducted business located within the City and County of San Francisco, State of California.

6. Plaintiff is informed and believes, and upon such information and belief alleges,

1   that at all times relevant herein, defendant A & A GAS was a business entity, form unknown,

2   duly organized and existing under and by virtue of the laws of the State of California, with a

3   principal place of business located within the County of Marin, State of California.

4        7.    Plaintiff is informed and believes, and upon such information and belief alleges,

5   that at all times relevant herein, defendant AHMAD AVASH was an individual, with his

6   principal place of residence located within the County of Marin, State of California.  Plaintiffs

7   are further informed and believe, and upon such information and belief allege that said

8   individual defendant was an owner, either in whole or in part, of defendant A & A GAS.

9        8.    Plaintiff is informed and believes, and upon such information and belief alleges,

10  that at all times relevant herein, defendant ALI SALKHI was an individual, with his principal

11  place of residence located within the County of Marin, State of California.  Plaintiffs are further

12  informed and believe, and upon such information and belief allege that said individual

13  defendant was an owner, either in whole or in part, of defendant A & A GAS.

14       9.    Plaintiff is unaware of the names and/or capacities of the defendants sued

15  fictitiously herein as DOES 1 through 100, and, therefore, sues said defendants by such

16  fictitious names.  Plaintiff is informed and believes, and upon such information and belief

17  alleges that each of the fictitiously named defendants is negligently responsible, vicariously

18  responsible, is strictly liable and otherwise legally responsible in some manner for the events

19  and happenings herein referred to and thereby proximately causing injury and damage to

20  plaintiff as herein alleged.  Plaintiff will seek leave of court to amend this complaint to assert

21  the proper names and/or capacities of said fictitious defendants when the same have been

22  ascertained.

23       10.   Plaintiff is informed and believes, and upon such information and belief alleges

24  that at all times relevant herein defendants, and each of them, were the agents, servants,

25  employees, joint venturers, and/or co-conspirators of their co-defendants and were, as such,

26  acting within the scope, course and authority of said agency, employment, joint venture and/or

27  conspiracy, and that each and every defendant, as aforesaid, when acting as a principal, was

28  negligent in the selection and hiring of each and every other defendant as an agent, servant,

K:\Medina\93561\Comp.pld.wpd

3

**COMPLAINT**

1   employee and/or joint venturer and ratified their acts as alleged herein.

2   **FACTUAL ALLEGATIONS**

3       11.    The Redwood Mobile Home Park, of which plaintiff was a resident, and prior to

4   October 23, 2000, obtained its water supply from an underground well located on said property.

5   Such water supplied the entire source of water for the residents, tenants, guests and/or visitors,

6   including plaintiff, for purposes of drinking, cooking, bathing, irrigating, and cooling.

7       12.    Over a period of years, the precise duration of which is currently unknown to

8   plaintiff, and continuously up to October 23, 2000, defendants, and each of them, engaged in

9   the practice of allowing chemical contaminants, including but not limited to

10  Tetrachloroethylene (PCE), Methyl Tertiary-Butyl Ether (MTBE), Trichloroethylene (TCE),

11  Benzene, toluene and other Volatile Organic Chemicals to seep into the well water.  In addition,

12  defendants engaged in the practice of allowing other chemical contaminants to seep into the soil

13  and permeate the air of said mobile home park.  Despite defendants' knowledge, none of the

14  defendants took any steps to prevent the contamination of the soil and air and/or to prevent

15  injury and damage to plaintiff herein.

16      13.    Plaintiff did not know, nor through the use of reasonable diligence, could he

17  have known, of the aforementioned practices and conduct of defendants until on or about when

18  he was made aware through his physician that he suffered injuries attributed to exposure to such

19  contaminants.

20      14.    As a result of the defendants' acts and misconduct, plaintiff was continually

21  exposed to various chemical contaminants, in the water, in the soil and in the air.  Such

22  exposure has caused plaintiff to suffer great physical injury, including, but not limited to,

23  breathing disorders, headaches, nausea, coughs, irritation of the eyes, nose and throat, dizziness

24  and/or disorientation.  In addition, plaintiff has been placed in fear of, suffering greater illness

25  and disease, including kidney problems and cancer.  The aforementioned conduct of defendants

26  has caused plaintiff to suffer worry, anxiety and other emotional upset, and will continue to do

27  so in the future.

28  ///

K:\Medina\9350\Comp.pld.wpd          4
**COMPLAINT**

## FIRST CAUSE OF ACTION

### ( For Negligence as against all defendants)

15.   Plaintiff repleads and realleges the allegations contained within paragraphs 1 through 14 above, and incorporates the same herein by reference as if set forth in full and verbatim.

16.   At all times relevant herein, defendants, and each of them, owed plaintiff a general duty to refrain from engaging in any conduct that would cause injury or damage to plaintiff.

17.   At all times mentioned herein defendants, and each of them, breached said duty and did negligently and carelessly cause and/or allow the aforementioned chemical contaminants, among others, to permeate the well water, soil and air in and around the Redwood Mobile Home Park, of which plaintiff was a resident.  Plaintiff used said well water for cooking, bathing, irrigating and cooling, and walked in and around said premises, all to his detriment.

18.   All of said defendants knew, or reasonably should have known of the aforementioned chemical contamination, and/or the high probability of the same, and did nothing to warn plaintiff and/or to prevent further contamination and/or injury and damage to plaintiff herein.

19.   By reason of the premises, and as a result of defendants' conduct, plaintiff has suffered pain, discomfort, anxiety, worry, physical injury and emotional distress, and has incurred general and special damages, and will continue to suffer such damages in the future. Plaintiff is presently unaware of the extent and amount of such damages, and prays leave to insert such amount when the same has been ascertained.

WHEREFORE, plaintiff prays for judgment as set forth below.

///
///
///
///

## SECOND CAUSE OF ACTION

### (For Fraud against all defendants)

20.    As and for a third cause of action, plaintiff repleads and realleges the allegations set forth in paragraphs 1 through 19 above, and incorporate the same herein by reference as if set forth in full and verbatim.

21.    At all times mentioned herein, plaintiff placed his reliance on defendants, and each of them, to provide him truthful information and full disclosure concerning the quality of the water, soil and air that plaintiff was exposed to as a resident of the Redwood Mobile Home Park.

22.    At all times mentioned herein, said defendants intentionally and fraudulently misrepresented and concealed material facts concerning the well water, soil and air which plaintiff was exposed, including, but not limited to, the fact that the surrounding gas storage tanks were known to be leaking chemical contaminants, including, but not limited to MTBE, into the well water, the fact that MTBE was known to cause illness and disease to humans, that leaking tanks containing MTBE was problematic and dangerous to humans, that other contaminants were seeping and/or leaching onto the premises of the Redwood Mobile Home Park from surrounding defendant businesses, and that airborne contaminants were being released into the air breathed by plaintiff.

23.    Said misrepresentations and concealments include, but are not limited to, as follows:

　　　　a.    Defendant IRVIN S. TAYLOR, both individually and through his property managers and employees Rob Fitzgerald, and Anthony Burns, among others, represented to the plaintiff that the water was safe for use and consumption, despite knowledge to the contrary;

　　　　b.    Defendants A & A GAS, AHMAD AVASH, AND ALI SALKHI knew of the contamination of the surrounding ground water, and knew that the underground storage tanks were leaking, yet failed to disclose to plaintiff the dangers that were readily apparent from the resulting leakage;

c. Defendants SHELL OIL INC., UNOCAL INC., and BRITISH PETROLEUM, by and through their officers, agents and directors, represented to plaintiff, and the public at large, that the use of M.T.B.E. as an additive in gasoline was safe, when in fact, defendants knew that M.T.B.E. was, in fact, likely to be unsafe and would pose a serious health risk to plaintiff.

24. Said intentional misrepresentation and fraudulent concealment was intended by said defendants to induce reliance by plaintiff in order for him to continue to reside on said premises and not to contact various governmental agencies to prevent such conduct, all to the detriment to plaintiff and the financial advantage of defendants.

25. Said conduct was malicious, oppressive and fraudulent, and done for the sole purpose of monetary gain over and above the health and safety of plaintiff, such that plaintiff is entitled to an award of punitive damages as against said defendants, and each of them.

WHEREFORE, plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**

**(For Intentional Infliction of Emotional Distress as against all defendants)**

26. As and for a fourth cause of action, plaintiff repleads and realleges the allegations set forth in paragraphs 1 through 25 above, and incorporates the same herein by reference as if set forth in full and verbatim.

27. At all times relevant herein, defendants, and each of them, purposefully and intentionally engaged in a course of conduct which they knew was likely to cause harm and injury to the plaintiff herein. Said defendants in an effort to create a financial benefit for themselves or for some other improper motive, developed a plan or scheme to secret the dangers and existence of chemical contaminants entering onto the property upon which plaintiff resided including the contamination of the well water, soil and air.

28. Defendants knew that plaintiff would consume, cook in, ingest, absorb or otherwise be exposed to said chemical contaminants, and, further, that such contaminants could likely result in physical injury to plaintiff. Had defendants informed plaintiff of this contamination, plaintiff would likely have informed others, including the appropriate

1   government agencies, of the existence of such contaminants, and defendants would have been

2   forced to expend monies to eliminate and/or clean up such contamination.  Additionally, as to

3   defendants TAYLOR INVESTMENTS, LLC, said defendant would not have received rental

4   income from plaintiff, as such property would have been rendered untenantable under

5   California law.

6          29.    The result of such plan or scheme was that defendants continued to receive

7   profits from plaintiff and others, while plaintiff was exposed to serious physical and mental

8   injury, and extreme emotional distress.  Knowing of said circumstances, said defendants

9   intentionally engaged in the conduct described herein causing injury and damages to said

10  plaintiff.

11         30.    At the times referenced to herein, plaintiff was a foreseeable victim of such

12  intentional conduct.  Said conduct was engaged in by defendants with the knowledge that it was

13  highly likely to result in the plaintiff being susceptible to severe disease while being falsely

14  lulled into a belief that his living environment was safe.  Defendants knew that at such time as

15  plaintiff became aware of this outrageous conduct by defendants, he would suffer severe worry,

16  anxiety, shock and other emotional distress and plaintiff did suffer such injuries when the nature

17  of defendants' conduct was discovered.  The conduct of defendants was outrageous, atrocious

18  and goes beyond the bounds of decent conduct.

19         31.    Plaintiff did in fact suffer severe emotional distress in that plaintiff actually

20  suffered physical illness or is in fear of suffering said physical illness, including but not limited

21  to, breathing disorders, headaches, nausea, coughs, irritation of the eyes, nose and throat,

22  dizziness, and/or disorientation.  Such physical injuries have caused plaintiff to continuously

23  suffer emotional distress, including, but not limited to, the ongoing and enduring worry,

24  anxiety, shock, and other emotional distress that plaintiff would continue to suffer the

25  aforementioned physical injuries, and, further, that plaintiff will likely suffer additional and

26  more serious physical injuries in the future, including cancer and death, all as a result of

27  defendants' conduct.  Absent the conduct of defendants as alleged herein, plaintiff would not

28  have suffered said emotional distress.

32.     Said conduct was malicious, oppressive and fraudulent, and done for the sole purpose of monetary gain over and above the health and safety of plaintiff, such that plaintiff is entitled to an award of punitive damages as against said defendants, and each of them.

WHEREFORE, plaintiff prays for judgement as set forth below.

## FOURTH CAUSE OF ACTION

**(For Products Liability as against defendants SHELL OIL INC., UNOCAL INC., BRITISH PETROLEUM, A & A GAS, AHMAD AVASH, ALI SALKHI, and DOES 1 to 100)**

33.     As and for a fifth cause of action, plaintiff repleads and realleges the allegations set forth in paragraphs 1 through 32 above, and incorporates the same herein by reference as if set forth in full and verbatim.

34.     At all times herein mentioned, defendants SHELL OIL INC., UNOCAL INC., BRITISH PETROLEUM, A & A GAS, AHMAD AVASH, ALI SALKHI, and DOES 1 to 100, inclusive, compounded, manufactured, sold, packaged, marketed, distributed and otherwise provided certain gasoline products which contained, among other chemical contaminants, MTBE.

35.     At the time said gasoline products were compounded, manufactured, sold, packaged, marketed, distributed and otherwise provided, said defendants knew that such products were defective, as such products contained chemical contaminants that were known to said defendants to pose a serious threat to drinking water sources, including the well water used by plaintiff herein, and further, that such contaminants would pose serious threats to the physical safety of persons, such as plaintiff.

36.     Defendants were aware of the dangerous nature of such chemical contaminants as far back as 1986, however, did nothing to either inform the public, including plaintiff, of this dangerous character of their product, nor to inform the appropriate Government Regulatory Agencies.  Defendants further were aware of the state of disrepair and danger of exposure and/or leakage from underground gasoline storage tanks, which would increase the danger from the chemical contaminants and their ability to seep into ground water supplies, including wells.

///

37.   As a direct result of the acts and conduct of defendants, plaintiff ingested, absorbed and was otherwise exposed to dangerous chemical contaminants, and did suffer, and continues to suffer physical and mental injuries, including emotional distress, as alleged herein.

WHEREFORE, plaintiff prays for damages against defendants, and each of them, as follows:

1.   On the First Cause of Action:

    a.  For general damages according to proof;

    b.  For special damages according to proof;

    c.  For costs of suit incurred herein; and

    d.  For such further and other relief as this Court deems just and proper.

2.   On the Second Cause of Action:

    a.  For general damages according to proof;

    b.  For special damages according to proof;

    c.  For punitive damages as allowed by law and according to proof;

    d.  For costs of suit incurred herein; and

    e.  For such further and other relief as this Court deems just and proper.

3.   On the Third Cause of Action:

    a.  For general damages according to proof;

    b.  For special damages according to proof;

    c.  For punitive damages as allowed by law and according to proof;

    d.  For costs of suit incurred herein; and

    e.  For such further and other relief as this Court deems just and proper.

///
///
///
///
///
///

4.   On the Fourth Cause of Action:

   a.  For general damages according to proof;

   b.  For special damages according to proof;

   c.  For costs of suit incurred herein; and

   d.  For such further and other relief as this Court deems just and proper.

Dated: _November 9 2004_

                     BRAYTON❖PURCELL

                     By: _____
                         Clayton W. Kent
                         Attorneys for Plaintiffs

J



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | MDL No. 1358 |
| | Master File C.A. No. 1:00-1898 (SAS) • |
| This Document Relates To:  All Cases | |

## CASE MANAGEMENT ORDER NO. 1

It appearing that the cases listed on Attachment A, which have been filed in or transferred to this Court pursuant to 28 U.S.C. § 1407, merit special attention as complex litigation,

IT IS HEREBY **ORDERED** as follows:

**I.    Filing; Service**

A copy of this Order shall be filed in each case listed in Attachment A.  In cases subsequently filed, removed or transferred as part of MDL No. 1358, a copy of this Order will be provided by the Clerk to each plaintiff at the time of filing the complaint and will be served with the complaint on any defendant not previously a party in these cases.  In cases subsequently removed or transferred to this Court, a copy will be provided by the Clerk to each new party upon removal or transfer.

**II.    Interim Measures**

Unless otherwise ordered by the Court:

**A.    Pre-Trial Consolidation.**

The cases listed on Attachment A are consolidated for pre-trial proceedings.  This Order does not constitute a determination that these actions shall be consolidated for trial; nor

does it have the effect of making any entity a party to an action in which it has not been joined and served in accordance with the Federal Rules of Civil Procedure. All cases subsequently filed, removed or transferred, as part of MDL No. 1358, shall be similarly consolidated.

**B.**     **Master Docket And File.**

The Clerk will maintain a master docket and case file under the style <u>In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation</u> (MDL No. 1358), as Master File C.A. No. 1:00-1898 (SAS). Orders, pleadings, motions and other documents bearing a caption similar to that of this Order will, when docketed and filed in the master file, be deemed docketed and filed in each individual case to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual cases.

**C.**     **Captions; Separate Filing.**

Orders, pleadings, motions and other documents will bear a caption similar to that of this Order. If generally applicable to all consolidated actions, they shall include in the caption the notation that they relate to "all cases" and shall be filed and docketed only in the master file. Documents intended to apply only to particular cases will indicate in their caption the number of the cases to which they apply, and extra copies shall be provided to the Clerk to facilitate filing and docketing both in the master case file and in each of the specified individual case files.

**III.**   **Organization of Plaintiffs' Counsel**

**A.**     **Plaintiffs' Co-Lead Counsel.**

The following counsel shall serve as Co-Lead Counsel:

Lewis J. Saul
LEWIS J. SAUL & ASSOC.
5301 Wisconsin Avenue,
Suite 550
Washington, DC  20015-2030
Telephone: (202) 364-9700;
(800) 747-5342

Robert J. Gordon
WEITZ & LUXENBERG
180 Maiden Lane
New York, NY  10038
Telephone: 212-558-5500
Facsimile: 212-558-5506
Email: robbieg@aol.com

Stephen M. Tillery
CARR, KOREIN,
  TILLERY, et al.
#10 Executive Woods Court
Belleville, IL  62226
Telephone: (618) 274-0434
Facsimile: (618) 274-8369

033.mtb

Facsimile: (202) 364-9701                    Email: stillery@legal-matters.com
Email: lsaul@lewissaul.com

Plaintiffs' Co-Lead Counsel shall be responsible for coordinating the activities of plaintiffs during pre-trial proceedings and shall:

a.    determine (after such consultation with other members of plaintiffs' Executive Committee or plaintiffs' counsel as may be appropriate) and present to the Court and opposing parties the position of the plaintiffs on matters arising during pre-trial proceedings;

b.    coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26;

c.    conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except as may be authorized by the Court;

d.    create sub-committees and delegate specific tasks to other counsel in a manner to ensure that pre-trial preparation for the plaintiffs is conducted effectively, efficiently, and economically;

e.    enter into stipulations, with opposing counsel, necessary for the conduct of the litigation;

f.    monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

g.    perform such other duties as may be incidental to proper coordination of plaintiffs' pre-trial activities or authorized by further order of the Court; and

h.    participate as members of Executive Committee.

No discovery or other action or work in this litigation shall be undertaken on behalf of any plaintiff except at the direction or with the permission of the Co-Lead Counsel

provided however that any attorney aggrieved by any refusal of permission may seek review of such refusal by the Court.  Decisions of the Co-Lead Counsel will be made by majority vote.

**B.**    **Plaintiffs' Liaison Counsel.**

Plaintiffs' Liaison Counsel shall be:

Morris A. Ratner
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500 (x. 6602)
Facsimile:  (212) 355-9592
Email:  mratner@lchb.com

Liaison Counsel shall:

a.    maintain and distribute to co-counsel and defendants' liaison counsel an up-to-date service list;

b.    coordinate with defense liaison counsel and with the Court on scheduling issues;

c.    be responsible for the service and filing of all pleadings and communications with the Court, except as otherwise directed by the Co-Lead Counsel;

d.    receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel;

e.    maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository; and

f.    participate on the Executive Committee.

**C.**    **Executive Committee.**

Plaintiffs' Co-Lead Counsel and Plaintiffs' Liaison Counsel, identified above,

serve on Plaintiffs' Executive Committee. In addition, the following counsel serve on the

Executive Committee:

A. Hoyt Rowell
NESS, MOTLEY, LOADHOLT,
RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9200
Facsimile: (843) 216-9440
Email: hrowell@nmlrp.com

Scott Summy
COOPER & SCULLY, P.C.
Founders Square
900 Jackson Street, Suite 100]
Dallas, TX 75202
Telephone: (214) 712-9500
Facsimile: (214) 712-9540
E-mail: ssummy@cooperscully.com

Joe R. Whatley, Jr.
WHATLEY DRAKE, LLC
1100 Financial Center
505 North 20th Street
Birmingham, AL 35203-2605
Telephone: (205) 328-9576
Facsimile: (205) 328-9669
E-mail: jwhatley@whatleydrake.com

Plaintiffs' Executive Committee Members shall:

    a.    Convene by telephone or in person on a regular basis for the

purpose of conferring with Co-Lead Counsel to establish and implement case strategies, and to

address issues relating to the coordinated prosecution of the litigation.

    b.    Consult with Co-Lead Counsel on regular basis regarding all other

major developments in the litigation, including settlement discussions, discovery, and the

establishment of committees and the work of members of various committees.

Decisions of the Executive Committee are to be made by a two-thirds majority.

**D.**    **Record Keeping.**

Counsel who anticipate seeking an award of attorneys' fees and reimbursement of

expenditures from the Court shall comply with the directives contained in the Federal Judicial

Center's <u>Manual for Complex Litigation</u> (3d ed. 1995) § 41.32, regarding the maintenance of

contemporaneous records reflecting the services performed and the expenses incurred.

IV.    **Privileges Preserved**

No communication among Plaintiffs' Counsel and Plaintiffs or among

Defendants' Counsel and Defendants shall be taken as a waiver of any privilege or protection to

which they would otherwise be entitled.

Nov. 2, 2000

_____
HON. SHIRA A. SCHEINDLIN
United States District Court Judge
Southern District of New York

## SCHEDULE A

*David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-370
*David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-371
*Donna Berisha, et al. v. Amerada Hess Corp., et al.*, S.D. New York, C.A. No. 1:00-1898

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X
                                     :
In re: Methyl Tertiary Butyl Ether   :    MDL No. 1358
("MTBE") Products Liability Litigation :
                                     :    Master File
                                     :  C.A. No. 1:00-1898(SAS)
This Document Relates To: All Cases  :
                                     :
-------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

ORDER MODIFYING
CASE MANAGEMENT ORDER NO. 1

          Upon plaintiffs' unopposed motion to appoint additional
members to Plaintiffs' Executive Committee, and based upon that
submission and the record in this case, it is hereby ORDERED:
Case Management Order No. 1, § III.C., is hereby modified to add
the following counsel as members of the Executive Committee:

Dennis Reich
REICH & BINSTOCK
4265 San Felipe, Ste. 1000
Houston, TX  77027
Telephone:  (713) 622-7271
Fax:  (713) 623-8724
E-mail:  dreich@mail.reichandbeinstock.com


Timothy Crowley
CROWLEY & DOUGLAS, LLP
1301 McKinney, Suite 3500
Houston, TX  77010
Telephone:  (713) 651-1771
Fax:  (713) 651-1775
E-mail:  tcrowley@bpcd.com

1

DATED this 27 day of April, 2001

SHIRA A. SCHEINDLIN
U.S.D.J.

2

244

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation** | **MDL No. 1358** |
| | Master File C.A. No. 1:00-1898 (SAS) |
| This Document Relates To: All Cases | **CERTIFICATE OF SERVICE** |

I hereby certify that twenty-two (22) true and correct copies of the following documents:

1.    Order Modifying Case Management Order No. 1; and

2.    Certificate of Service.

have been served on

Peter Sacripanti, Esq. (for defendants)
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY  10020-1605
Tel:  212-547-5400
Fax  212-547-5444
psacripanti@mwe.com

via Hand Delivery postage prepaid  this 3rd day of May, 2001.

Carla D. Osterhof

HAND4NY.MTB

11/9/00
45

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------X
                                   :
In re: Methyl Tertiary Butyl Ether :    MDL No. 1358
("MTBE") Products Liability Litigation:
                                   :    Master File
                                   :    C.A. No. 1:00-1898(SAS)
This Document Relates To: All Cases :
                                   :
-----------------------------------X
```

## PRACTICE AND PROCEDURE ORDER UPON TRANSFER
## PURSUANT TO 28 U.S.C. § 1407(a)

1.  This Order shall govern the practice and procedure in those
    actions transferred to this Court by the Judicial Panel on
    Multidistrict Litigation pursuant to their Order of October
    10, 2000, as well as all related actions originally filed in
    this Court or transferred or removed to this Court.  These
    actions are listed in Appendix A, attached hereto.  This
    Order shall also govern the practice and procedure (1) in
    any tag-along actions transferred to this Court by the
    Judicial Panel on Multidistrict Litigation pursuant to Rule
    12 of the Rules of Procedure of that Panel subsequent to the
    filing of the final transfer order by the Clerk of this
    Court; and (2) in any related actions subsequently filed in
    this Court or otherwise transferred or removed to this
    Court.

2.  The actions described in paragraph 1 of this Order are

-1-



RECEIVED
NOV 2 0 2000
J. A. L.

consolidated for pretrial purposes.

3.  A signed original and one copy of any pleading or paper shall be filed.  All papers filed in these actions shall bear the identification "MDL NO. 1358", and when such paper relates to all of these actions, the MDL docket number shall be followed only by the notation "ALL CASES."  If such paper does not relate to all of these actions, the individual docket numbers assigned by the Clerk of this Court (as listed in Appendix A hereto) to which the paper relates shall also be listed.

4.  Any paper which is to be filed in any of these actions shall be filed with the Clerk of this Court and not with the transferor district court.

5.  Counsel who appeared in the transferor district court prior to the transfer need not enter a separate appearance before this Court.

6.  Service of all papers shall be made on each of the attorneys on the Panel Attorney Service List ("PASL"), attached hereto as Appendix B.  Any attorney who wishes to have his or her name added to or deleted from the PASL may do so upon request to the Clerk of this Court with notice to all other persons on the PASL.  Service shall be deemed sufficient if made upon all attorneys who appear on the PASL.  Not more than three attorneys for each party separately represented

shall be included on the list. Only those attorneys on the
PASL will be permitted to appear in Court.

7.  Morris A. Ratner, Esq., has been appointed Liaison Counsel
    for the plaintiffs pursuant to Case Management Order No. 1,
    dated November 3, 2000. Liaison Counsel for defendants
    shall be appointed by December 1, 2000. Nathan P. Eimer,
    Esq., will act as Temporary Defendants' Liaison Counsel.
    Liaison Counsel shall be authorized to receive orders and
    notices from the Court on behalf of all parties within their
    liaison group and shall be responsible for the preparation
    and transmittal of copies of such orders and notices to the
    parties in their liaison group. Liaison Counsel shall be
    required to maintain complete files with copies of all
    documents served upon them and shall make such files
    available to parties within their liaison group upon
    request. Liaison Counsel are also authorized to receive
    orders and notices from the Judicial Panel on Multidistrict
    Litigation pursuant to Rule 8(e) of the Panel's Rules of
    Procedure on behalf of all parties within their liaison
    group and shall be responsible for the preparation and
    transmittal of copies of such orders and notices to the
    parties in their liaison group.

8.  No parties to any of these actions shall be required to
    obtain local counsel in this district and the requirements

-3-

of Rule 1.3 of the Local Rules of the Southern District of New York are waived as to any attorney appearing in these actions who is duly admitted to practice before any United States Court.

9.  Hearings shall not be held on any motions filed except by Order of this Court and upon such notice as the Court may direct.

10. Any paper filed in any of these actions which is substantially identical to any other paper filed in another of these actions shall be sufficient if it incorporates by reference the paper to which it is substantially identical. Where counsel for more than one party plan to file substantially identical papers, they shall join in the submission of such papers and file only one paper on behalf of all so joined.

11. Any orders including protective orders previously entered by any transferor district court shall remain in full force and effect unless modified by this Court upon application.

12. The Court will be guided by the <u>Manual for Complex Litigation</u>, (3d ed. 1995), approved by the Judicial Conference of the United States; counsel are directed to familiarize themselves with that publication.  Additionally, counsel are directed to familiarize themselves with the Local Rules of the Southern District of New York and the

-4-

Individual Rules of this Court.  These Local and Individual
Rules are applicable unless modified by this Court herein or
otherwise.  Any attempt by the parties to modify response
times, answer times, etc. unless approved by this Court
shall be disregarded.

13.   Pursuant to Federal Rule of Civil Procedure 5 to take effect
on December 1, 2000, discovery documents shall not be filed
with the Clerk of this Court.  Further, no written discovery
motions may be filed, unless expressly permitted by this
Court.  The Court anticipates scheduling regular monthly
conferences to monitor the pre-trial progression of these
actions.  Any and all discovery problems will be discussed
at these conferences.  You are instructed to give opposing
counsel and the Court advance notice of any discovery
disputes anticipated prior to each conference.  In the event
of an emergency discovery dispute, that is a discovery
dispute which needs resolution prior to the next scheduled
conference, the parties should notify the Court of their
need for an immediate conference.

14.   It is the general practice of this Court to refer all
litigants before it to mediation.  However, the question of
when and how to mediate these cases will be discussed at a
regularly scheduled pre-trial conference.

15.   Pre-trial conferences will be scheduled every month.  A

schedule of upcoming conferences will be distributed at the
next pre-trial conference.  Counsel must submit proposed
agenda items to the Court in writing within seventy-two (72)
hours of each scheduled conference.  The next pre-trial
conference is scheduled for December 8, 2000 at 10:00 a.m.
Counsel shall furnish written suggestions of items to be
included on the agenda for this Conference to the Court, and
to both Liaison Counsel, on or before December 5, 2000 at
5:00 p.m.

So Ordered:

_____
Shira A. Scheindlin
United States District Judge

Dated: New York, New York
       November 9 , 2000

**APPENDIX A**

| CASE | TRANSFEROR COURT | DOCKET NO. | OUR CIVIL ACTION NO. |
|------|------------------|------------|----------------------|
| Donna Berisha, et al. v. Amerada Hess Corp, et al. | ---------- | ------------------- | 00 Civ. 1898 |
| David England, et al. v. Atlantic Richfield Co., et al. | S.D. Ill. | C.A. No. 3:00-370 C.A. No. 3:00-371 | 00 Civ. 7729 00 Civ. 7730 |
| * Sutton Farms (USA) Inc. v. Amerada Hess, et al. | S.D. Fla. | C.A. No. 1:00-3544 | ------------- |
| * Young v. ExxonMobil Oil Corp. | M.D. Fla. | C.A. No. 8:00-1912 | ------------- |

* - A Conditional Transfer Order ("CTO-1") transferring these two cases to the Southern District of New York was filed with the Judicial Panel on Multidistrict Litigation on October 30, 2000.  The conditional transfer order is not yet a final order.

### APPENDIX B

### PANEL ATTORNEY SERVICE LIST
### ("PASL")

**Attorneys for Plaintiffs**

**Berisha**
Lewis J. Saul, Esq.
LEWIS SAUL & ASSOCIATES, P.C.
501 Wisconsin Avenue, N.W., Suite 550
Washington, D.C.   20015
Tel: 202-364-9700
Tel: 800-747-5342
Fax: 202-364-9701
lsaul@lewissaul.com

Jon Hinck, Esq.
LEWIS SAUL & ASSOCIATES, P.C.
183 Middle Street, Suite 200
Portland, ME   04101
Tel: 207-874-7407
Tel: 888-747-5342
Fax: 207-874-4930
jhinck@lewissaul.com

Mitchell M. Breit, Esq.
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY   10083
Tel: 212-558-5500
Fax: 212-344-5461
mbreit@weitzlux.com

**Young**
Elizabeth J. Cabraser, Esq.
Morris A. Ratner, Esq.
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
780 Third Avenue
48th Floor
New York, NY   10017-2024
Tel: 212-355-9500
Fax: 212-355-9592
ecabraser@lchb.com
mratner@lchb.com

Joe R. Whatley, Jr., Esq.
WHATLEY DRAKE, L.L.C.
1100 Financial Center
505 North 20th Street
Birmingham, AL  35203-2605
Tel: 205-328-9576
Fax: 205-328-9669
jwhatley@whatleydrake.com

**England**

Stephen M. Tillery, Esq.
Steven A. Katz, Esq.
CARR, KOREIN, TILLERY, et al.
#10 Executive Woods Court
Belleville, IL  62226
Tel: 618-277-1180
Fax: 618-277-9840
stillery@legal-matters.com
katzman001@worldnet.att.net

Scott Summy, Esq.
COOPER & SCULLY, PC
900 Jackson Street, Suite 100
Dallas, TX  75202
Tel: 214-712-9300
Fax: 214-712-9540
ssummy@coopersculy.com
cevangel@cooperscully.com

**Sutton Farms**

D. Michael Campbell, Esq.
Gregory L. Denes, Esq.
Scott D. McKay, Esq.
CAMPBELL & DENES
6100 Southwest 76th Street
Miami, FL  33143-5002
Tel: 305-666-3820
Fax: 305-666-8430
mcampbell@campbelllaw.com
gdenes@campbelllaw.com
smckay@campbelllaw.com

**Attorneys for Defendants**

| | |
|---|---|
| **Amerada Hess Corporation** | Robert H. Shulman, Esq.<br>Mindy G. Davis, Esq.<br>HOWREY SIMON ARNOLD & WHITE<br>1299 Pennsylvania Avenue, N.W.<br>Washington, D.C.   20006<br>Tel: 202-783-0800<br>Fax: 202-383-6610<br>shulmanr@howrey.com<br>davism@howrey.com |

Christopher S. Colman, Esq.
Associate General Counsel
AMERADA HESS CORPORATION
One Hess Plaza
Woodbridge, NJ 07095
Tel: 732-750-6535
Fax: 732-750-6944
ccolman@hess.com

**BP Amoco Corporation**

Richard C. Godfrey, Esq.
J. Andrew Langan, Esq.
Mark S. Lillie, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, IL  60602
Tel: 312-861-2000
Fax: 312-861-2200
richard_godfrey@chicago.kirkland.com
andrew_langan@chicago.kirkland.com
mark_lillie@chicago.kirkland.com

**Chevron USA, Inc.**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
pcondron@walaceking.com

Dan H. Ball, Esq.
THOMPSON COBURN LLP
One Firstar Plaza
Suite 3300
St. Louis, MO 63101
Tel: 314-552-6000
Fax: 314-552-7000
dball@thompsoncoburn.com
rwuller@thompsoncoburn.com


**CITGO Petroleum Corporation**       Nathan P. Eimer, Esq.
Pamela R. Hanebutt, Esq.
Lisa S. Meyer, Esq.
EIMER STAHL KLEVORN & SOLBERG
122 South Michigan Avenue
Suite 1776
Chicago, IL 60603
Tel: 312-660-7600
Fax: 312-692-1718
neimer@eimerstahl.com
phanebutt@eimerstahl.com
lmeyer@eimerstahl.com


**Coastal Corporation**       Robert H. Shulman, Esq.
Mindy G. Davis, Esq.
HOWREY SIMON ARNOLD & WHITE
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: 202-783-0800
Fax: 202-383-6610
shulmanr@howrey.com
davism@howrey.com


**Coastal Oil New York, Inc.**       Mark O'Connor, Esq.
COASTAL OIL NEW YORK, INC.
P.O. Box 818
611 Route 46 West
Tel: 201-393-4918
Fax: 201-393-4565

Mindy G. Davis, Esq.
Brent H. Allen, Esq.
HOWREY SIMON ARNOLD & WHITE
1299 Pennsylvania Avenue, N.W.
Washington, D.C.    20006
Tel: 202-783-0800
Fax: 202-383-6610
davism@howrey.com
allenb@howrey.com


**Conoco, Inc.**                    Dan H. Ball, Esq.
Edward Cohen, Esq.
Roman Wuller, Esq.
THOMPSON COBURN LLP
One Firstar Plaza, Suite 3300
St. Louis, MO   63101
Tel: 314-552-6000
Fax: 314-552-7000
dball@thompsoncoburn.com
ecohen@thompsoncoburn.com
rwuller@thompsoncoburn.com


**Equilon Enterprises, LLC**        Richard E. Wallace, Jr., Esq.
Anthony F. King, Esq.
Peter C. Condron, Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.   20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
aking@wallaceking.com
pcondron@wallaceking.com


**Exxon Corporation**               Richard E. Wallace Jr., Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.   20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com

Peter Sacripanti, Esq.
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY  10020-1605
Tel: 212-547-5400
Fax: 212-547-5444
psacripanti@mwe.com

**Mobil Oil Corporation**

Richard E. Wallace, Jr., Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.  20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
pcondron@wallaceking.com

Peter Sacripanti, Esq.
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY  10020-1605
Tel: 212-547-5400
Fax: 212-547-5444
psacripanti@mwe.com

**Motiva Enterprises, LLC**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.  20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
pcondron@wallaceking.com

Peter Sacripanti, Esq.
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY  10020-1605
Tel: 212-547-5400
Fax: 212-547-5444
psacripanti@mwe.com

- 13 -

**Phillips Petroleum Company**

John E. Galvin, Esq.
Lyndon Sommer, Esq.
SANDBERG, PHOENIX & VON GONTARD
One City Centre
15th Floor
515 North Sixth Street
St. Louis, MO  63101-1880
Tel: 314-231-3332
Fax: 314-241-7604
jeg@spvg.com

**Shell Oil Products Company**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.  20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
pcondron@wallaceking.com


John E. Galvin, Esq.
SANDBERG, PHOENIX & VON GONTARD
One City Center, 15th Floor
515 North Sixth Street
St. Louis, MO  63101-1880
Tel: 314-231-3332
Fax: 314-241-7604
jeg@spvg.com

**Sunoco Inc.**

John S. Guttmann, Esq.
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W.
Suite 700
Washington, D.C.  20005
Tel: 202-789-6020
Fax: 202-789-6190
jguttmann@bdlaw.com

- 14 -

Sy Gruza, Esq.
Heather Andrade, Esq.
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue
15th Floor
New York, NY  10022-5802
Tel: 212-702-5400
Fax: 212-702-5450
sgruza@bdlaw.com
handrade@bdlaw.com

**Texaco Inc.**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
WALLACE KING MARRARO & BRANSON
1050 Thomas Jefferson Street, N.W.
Washington, D.C.  20007
Tel: 202-204-1000
Fax: 202-204-1001
rwallace@wallaceking.com
pcondron@wallaceking.com


Sharon Dutch, Esq.
SEDGWICK DETERT MORAN & ARNOLD
125 Broad Street, 39th Floor
New York, NY  10004-2400
Tel: 212-422-0202
Fax: 212-422-0925

**Tosco Corporation**

Melvin A. Brosterman, Esq.
Kenneth Pasquale, Esq.
Christine Fitzgerald, Esq.
STROOCK, STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
Tel: 212-806-5400
Fax: 212-806-6006
mbrosterman@stroock.com
kpasquale@stroock.com
cfitzgerald@stroock.com

**United Refining Corp.**

Edward S. Weltman, Esq.
Jonathan Price, Esq.
Christopher J. Garvey, Esq.
SCHNECK WELTMAN & HASHMALL
1285 Avenue of the Americas
New York, NY  10019
Tel: 212-956-1500
Fax: 212-956-3252
eweltman@swhllp.com
jprice@swhllp.com
cgarvey@swhllp.com

**Valero Marketing and Supply Co.**

Kenneth M. Bialo, Esq.
Matthew McCoy, Esq.
BAKER BOTTS LLP
599 Lexington Avenue
New York, NY  10022-6030
Tel: 212-705-5025
Fax: 212-705-5125
kbialo@bakerbotts.com
sconti@bakerbotts.com

Steven L. Leifer, Esq.
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
Tel: 202-639-7723
Fax: 202-585-1040
sleifer@bakerbotts.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------X
                                      :
In re: Methyl Tertiary Butyl Ether    :     MDL No. 1358
("MTBE") Products Liability Litigation:
                                      :      Master File
                                      :     C.A. No. 1:00-1898(SAS)
This Document Relates To: All Cases   :
                                      :
--------------------------------------X
```

<u>Case Management Order No. 2</u>

**1.  Service of Documents**

    **a.  Orders**

        A copy of each order will be provided to Morris A. Ratner, Esq., Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel [temporary or permanent], for appropriate distribution to other counsel and parties.

    **b.  Pleadings, Motions, and Other Documents**

        Plaintiffs' Liaison Counsel shall be provided with twelve (12) copies of each pleading, motion, or other document filed by any party; Defendants' Liaison Counsel [temporary or permanent] shall be provided with twenty (20) copies of each such document. Pursuant to Federal Rule of Civil Procedure 5, service on Liaison Counsel constitutes service on other attorneys and parties for whom Liaison Counsel is acting, such

-1-



RECEIVED NOV 20 2000

J. A. L.

service being deemed effective three (3) days after
service on Liaison Counsel.

c.   **Electronic Service**

To the extent practicable, when serving other parties
with pleadings, motions and other Court filings through
Liaison Counsel, the parties shall attempt to serve the
papers by electronic mail using standard electronic
formats.  Permissible formats include Word, WordPerfect
and PDF files.  Except as otherwise ordered, whenever
service on Liaison Counsel is effected through
electronic mail using standard formats, and whenever
such service requires parties to respond in a
particular time to the matter so served, an additional
one (1) day shall be added to the ordinary time
prescribed for such response to allow for the delay
occasioned by the service through Liaison Counsel.
This additional time is less than the three (3) days
allowed for service by ordinary paper copies.

2.   **Pleadings**

a.   **Consolidated "Master" Complaint**

Plaintiffs shall serve a Consolidated "Master"
Complaint ("Master Complaint") by no later than
November 30, 2000.  Each plaintiff shall also serve a
pleading which identifies those allegations of the

Master Complaint that will be adopted as the Complaint in each of the consolidated actions.  These pleadings shall be identified as "The Proposed Amended Complaints".  If defendants object to the filing of the Proposed Amended Complaints, in any case, they must state their objections in writing by December 10, 2000. If no such objection is made, the Proposed Amended Complaints may be filed together with the Master Complaint.  If objections are made, the plaintiffs may respond in writing by December 20, 2000, and the objections will be heard at a Special Case Management Conference scheduled for December 27, 2000 at 4:30 p.m.

b.   **Responsive Pleadings**

1.   All previously filed Motions to Dismiss are hereby withdrawn with leave to refile in response to the Amended Complaints.  Time to respond to all pending Complaints or any Amended Complaints filed subsequent to this date is hereby extended to and including December 29, 2000.

2.   If the Proposed Amended Complaints are filed without objection, defendants shall file motions to dismiss, if any, by no later than December 29, 2000.  Where the Defendants' arguments overlap or address common subject matters, such arguments

-3-

shall be addressed in a single "joint" motion to
dismiss, not to exceed forty (40) pages in length.
Individual defendants may file supplemental briefs
addressing issues unique to them.   Supplemental
pleadings shall not exceed ten (10) pages in
length.   Plaintiffs' response to any motions to
dismiss are due on January 29, 2001.   This
response, which should be submitted in a single
consolidated brief addressing all issues, shall
not exceed fifty (50) pages in length.
Defendants' reply memorandum is due on or before
February 15, 2001.   One joint reply memorandum
shall be submitted on behalf of all defendants.
This reply memorandum shall not exceed twenty-five
(25) pages in length.   If any defendant decides
not to move to dismiss, its answer must be filed
no later than December 29, 2000.

3.   If any objection is made to the filing of the
Amended Complaints then motions to dismiss are to
be filed thirty (30) days after the Court rules on
whether the Amended Complaints may be filed.   The
time in which plaintiffs must respond to such
motions and defendants must reply shall be
calculated in accordance with paragraph 2, above.

If any defendant decides not to move to dismiss, its answer must be filed within thirty (30) days of the Court's decision on whether the Amended Complaints may be filed.

3. **Class Certification**

Plaintiffs may move for class certification sixty (60) days from this Court's ruling on any Motions to Dismiss. Defendants must respond to any class certification motion within forty-five (45) days and plaintiffs must reply within fifteen (15) days of defendants' response. The moving and response briefs shall not exceed forty (40) pages, and the reply shall not exceed fifteen (15) pages.

4. **General Discovery Issues**

a. **Berisha** Action

Defendants' written responses and objections to the pending interrogatories, as previously modified by the Court, must be served by November 29, 2000. Responsive documents must be produced on a rolling basis, but such production must be completed by December 29, 2000. The form of production will be addressed at paragraph 5, below.

b. **England** Action

Previously served interrogatories and document requests are modified in accordance with the previous rulings in

the Berisha action.  All other discovery demands are
hereby withdrawn.  Defendants' written responses and
objections to the modified interrogatories must be
served by January 31, 2001.  Responsive documents shall
be produced on a rolling basis, but such production
must be completed by February 28, 2001.  The parties
shall endeavor to agree on a schedule for completing
the depositions of the named plaintiffs.  The parties
shall also endeavor to agree on a schedule and
procedure for allowing defendants access to the
properties of the named plaintiffs for purposes of
inspection and testing.

c.   **Additional Discovery**

Plaintiffs in any action may not serve additional
discovery demands until November 29, 2000.  Objections
to such additional requests must be made by December
29, 2000.  The parties shall meet and confer with
respect to such demands throughout January, 2001.  The
Court will address any objections that cannot be
resolved by the parties at a Case Management Conference
scheduled for January 30, 2001 at 10 a.m.

d.   **Subsequent Filings**

Discovery is hereby stayed in any action transferred to
this Court by Order of the MDL Panel, until such time

as the parties submit a proposed order governing the timing of discovery, or the Court convenes a special Case Management Conference for that purpose.

**5.   Document Discovery**

**a.   Preservation**

Mitchell M. Breit, Esq., is hereby appointed as custodian of the Document Depository, to be described below. Mr. Breit is hereby enjoined from destroying or removing any document from the Depository until further order of this Court.

**b.   Numbering System**

Counsel shall develop an identification system using unique numbers or symbols to identify each document produced or referred to during the course of this litigation. All copies of the same document should ordinarily be assigned the same identification number or symbol. Documents produced by each party shall bear an alphabetic symbol assigned to that party, followed by the pagination of each document in numerical sequence ("Bates stamped"). Unless otherwise ordered by this Court, original documents shall be maintained by the producing party in such a manner so as to allow access to such originals upon reasonable notice.

c.    **Avoiding Multiple Requests**

Counsel shall, to the extent possible, coordinate and
consolidate their requests for production and
examination of documents to eliminate duplicative
requests from the same party.  No party shall request
documents available to it at a Document Depository or
from its own Liaison Counsel.

d.    **Establishment of Document Depository**

A Document Depository shall be established at a
location to be determined.  This Depository shall
contain equipment for producing copies and separately
counting the copies that are made for each party.  All
counsel in these actions shall have access to all
documents produced in these actions, subject to the
provisions of any applicable protective order.  All
parties shall submit copies of any documents obtained
from a non-party, pursuant to a subpoena or other
formal request issued by a party in these actions, to
the Document Depository for access by all counsel.
Before being placed in the Depository, every document
must be given an identification number.  The parties
shall meet and confer to reach an agreement upon the
allocation of the cost of maintaining the Depository.
If the parties cannot agree, the issue of cost

allocation shall be submitted to the Court.  Any
confidential documents or other information subject to
a protective order shall be maintained in a separate,
protected location so that access thereto is strictly
limited to the specific terms of any applicable
protective order.

**e.    Production of Documents**

**1.    Defendants**

Each defendant must produce its documents for
inspection and designation for copying at a single
location or by forwarding copies to Plaintiffs'
Liaison Counsel either in hard copy or electronic
format.  Once plaintiffs have designated documents
for copying, defendant, at its expense, must
produce those documents, either in hard copy or in
an electronic format, at the Document Depository
described above.  Documents must be produced
either as kept in the ordinary course of business,
or organized in response to the document requests.
Documents not selected for copying must be
maintained by the producing counsel in the
location in which they were produced so that
further inspections can occur as needed.  At the
conclusion of <u>all</u> law suits that are or will be

part of MDL 1358, this Court will entertain a
motion for the return of documents to the
producing party.

**2.   Plaintiffs**

Plaintiffs at their expense must produce a single
copy of all documents sought by any defendant, at
a single location designated by Defendants'
Liaison Counsel.  Documents may be produced either
in hard copy or electronic format.

**f.   Filing System**

The filing party shall place the documents in the
Depository in sequential order according to the
document numbers, and the documents shall be organized
in groups in accordance with the document
identification prefixes (by party).  Parties are
encouraged to use computerization of discovery
material.

**g.   Access, Copying, Log**

Counsel appearing for any party in this litigation and
the staffs of their respective law firms working on
these cases shall have reasonable access during
business hours to each document in such Depository
and may copy or obtain copies at the inspecting
parties' expense.  Such inspection shall not be subject

to monitoring by any party.  A log will be kept of all persons who enter and leave the Depository, and only duplicate copies of documents may be removed from the Depository except by leave of court.  Access to, and copying of, confidential documents is subject to the limitations and requirements of any applicable order protecting against unauthorized disclosure of such documents.

h.    **Production to the Depository**

1.    Any party desiring to place documents in the Depository will contact the Depository to obtain a range of numbers for use on that party's documents.

2.    All documents placed in the Depository shall arrive pre-marked with "MDL 1358" and the assigned MDL depository number.  The documents must be legible.  Confidential documents must be so marked.  It is the responsibility of the party claiming the confidentiality of a document to mark the documents prior to producing it to a requesting party, or prior to placing the document in the Depository, as the case may be.

3.    All documents forwarded to the Depository must be accompanied by an electronic index.  The index

-11-

will be supplied in a comma-delimited ASCII

format, unless otherwise arranged in advance with

the Depository and shall contain the following

fields, in this order, and no others:

      Beginning MDL Document Number
      Ending MDL Document Number
      Previous Document Number, if any
      Document Date, if any
      Date Produced to the Depository
      Producing Party
      A <u>Brief</u> General Description of the Document
      Designation of "Confidential" if applicable.

Documents clearly related to each other may be

grouped for indexing purposes.  For example,

documents kept in a single file in the regular

course of business may be indexed together.

4.    The MDL 1358 Depository shall prepare and maintain

a compilation of indexes provided in accordance

with paragraph 3 above, using Summation 5.1

software (the "Depository Index"), and these

indices shall be posted at http://www.mdl1358.com

(see paragraph 5(j) below) and updated

periodically as new documents are received.  The

Depository Index shall contain the following

fields:

      Beginning MDL Document Number
      Ending MDL Document Number
      Number of Pages
      Previous Document Number, if any
      Document Date, if any

Date Produced to the Depository
Producing Party
A <u>Brief</u> General Description of the Document
Confidential Y/N
CD Volume Number

5.    The Depository Index made available on the MDL
1358 website (see paragraph (j) below) will be
forwarded on CD-ROM to any firm upon written
request.   In the event the Depository Index does
not accurately reflect documents placed in the
Depository by a party, that party shall timely
notify Liaison Counsel so that an accurate index
can be prepared.

6.    Prior to placing any document in the Depository,
each party should review the Depository Index and
make an effort to determine whether the document
is already in the Depository.   The Depository
staff should also review incoming documents for
duplicates.   Duplicates shall be returned to the
sender.   All parties shall endeavor to minimize
the number of duplicate documents in the
Depository.

7.    Documents may also be placed in the Depository on
DVD or CD-ROM.   The resolution for scanned images
must be no less than 300 dpi.   Additionally the
".dii" file must be included on the CD or DVD,

providing the beginning and ending MDL document
number and corresponding ".tiff" image.  Parties
may purchase copies of the DVD or CD-ROM from the
Depository for the cost of copying by a copy
service.

8.   All documents in the Depository may be scanned by
any party at that party's expense by using an
outside contractor selected by the requesting
party and approved in advance by the office of
Mr. Breit.  Only one outside contractor may be in
the Depository at any given time.

9.   The Depository shall also maintain a separate
index of deposition and hearing transcripts.
This index shall contain the following fields, and
no others:

> Date of hearing or deposition
> Abbreviated Style of Case
> Deponent or Subject of Hearing
> Confidential Designation, if any

No actual transcripts shall be posted on the
website.  Excerpts from transcripts shall be
treated as any other document.  When an ASCII disk
is available, the disk shall be produced at the
Depository, rather than a paper copy of the
transcript.  The disks will remain in the
Depository and may be copied without charge.

**i.    Subsequent Filings**

After the initial deposit of documents in the Depository, notice shall be given to both Liaison Counsel of all subsequent deposits.

**j.    Depository Website**

1.    Liaison Counsel shall prepare and maintain a website to be used by the parties to this case to transfer indexes contained in the document Depository.  The website shall also be used to post filings with the Court and notices and orders issued by the Court.  The URL of that website shall be http://www.mdl1358.com.

2.    Only authorized persons shall have access to the website.  Authorized persons shall include (i) Judge Shira A. Scheindlin, (ii) other judges presiding over similar cases, (iii) attorneys representing any party in the MDL, (iv) associates, clerks and support staff of the above, and (v) parties to this action.  To gain access to this website, each person shall provide to the Liaison Counsel the following information:

        Name
        Firm Name
        Party Represented
        Email Address
        Contact Person

Voice Telephone Number
Fax Telephone Number

Once this information has been received by the Liaison Counsel, a user ID and Password necessary to access the website will be e-mailed to the address provided.

3.  An e-mail notice of any newly posted materials on the website shall be forwarded to each person who has authorized access to the Depository.

4.  Notices and Orders from the Court shall be scanned into a ".pdf" format and posted immediately upon receipt by Liaison Counsel.  Adobe Acrobat Reader 3.0 will be available for download on the website without cost.

5.  All parties filing documents with the Court shall serve on Liaison Counsel, in addition to any written copies served upon Liaison Counsel, a "text-only" version of the filing via e-mail or on "3 1/4" disk in either (i) Microsoft Word 6.0 (or higher), (ii) Word Perfect 5.1 (or higher) or (iii) ASCII format.  Exhibits not a part of the actual document shall be scanned by Liaison Counsel and posted separately.  A ".pdf." version of each filing will be made available on the website for downloading.

-16-

6.     Nothing contained in this Order shall be interpreted to permit posting on the website of any information designated as confidential pursuant to any protective order.

6.   **Interrogatories**

Counsel shall, to the extent possible, combine their interrogatories to any party into a single set of questions. No question shall be asked that has already been answered in response to interrogatories filed by another party unless there is reason to believe that a different answer will be given.  Without leave of Court, interrogatories shall not include more than fifty (50) separate questions, including subparts.

7.   **Depositions**

a.   **Cooperation**

Counsel are expected to cooperate with, and be courteous to, each other and deponents.

b.   **Stipulations**

Unless contrary to an order of the Court, the parties (and when appropriate, a nonparty witness) may stipulate in any suitable writing to alter, amend, or modify any practice relating to noticing or conducting a deposition.  Stipulations for the extension of discovery cutoffs set by the Court are not valid,

-17-

however, until approved by the Court.   Pursuant to
Federal Rule of Civil Procedure 5(d) to take
effect on December 1, 2000, no deposition transcripts
are to be filed with the Court.

c.    **Scheduling**

Absent extraordinary circumstances, counsel shall
consult in advance with opposing counsel and
unrepresented proposed deponents in an effort to
schedule depositions at mutually convenient times and
places.   The fact that some counsel may be unavailable
shall not, however, in view of the number of attorneys
involved in this litigation, be grounds for deferring
or postponing a deposition if another attorney from the
same firm or who represents a party with similar
interests is able to attend.

d.    **Attendance**

1.    **Who May Be Present**

Unless otherwise ordered under Federal Rule of
Civil Procedure 26(c), depositions may be attended
by counsel of record, members and employees of
their firms, attorneys specially engaged by a
party for purposes of the deposition, the parties
or the representative of a party, counsel for the
deponent, and potential expert witnesses.   While a

-18-

deponent is being examined about any stamped confidential document or the confidential information contained therein, persons to whom disclosure is not authorized under an applicable confidentiality order shall be excluded.

2.   **Unnecessary Attendance**

Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to the Court.  Counsel who have only marginal interest in a proposed deposition or who expect their interests to be adequately represented by other counsel may elect not to attend. Supplemental interrogation of the deponent will be allowed should a review of the deposition transcript reveal the need for such examination.

e.   **Conduct**

1.   **Examination**

Each side should designate one attorney to conduct the principal examination of the deponent, and examination by other attorneys should be limited to matters not previously covered.  Counsel should cooperate in the allocation of time to ensure that all time limits are complied with.  All depositions are to be completed within seven (7)

-19-

hours, exclusive of recesses, as required by Federal Rule of Civil Procedure 30(d)(2) to take effect on December 1, 2000, unless otherwise agreed by the parties or ordered by the Court.   In addition, expert depositions must be completed in two (2) business days, unless otherwise agreed by the parties or ordered by the Court.

2.    **Objections and Directions Not to Answer**

Counsel shall comply with Federal Rule of Civil Procedure 30(d)(1) to take effect on December 1, 2000.  When a privilege is claimed, the witness should nevertheless answer questions relevant to the existence, extent, or waiver of the privilege, such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement, unless such information is itself privileged.

3.    **Private Consultation**

Private conferences between deponents and their attorneys in the course of interrogation are improper except for the purpose of determining whether a privilege should be asserted.

### 4.   Continuation of a Deposition

If a deposition is not finished on Friday of a deposition week, it will continue on the following Monday, subject to the availability of the witness.  If the witness is unavailable, it will resume on a newly noticed date.

## f.   Documents

### 1.   Production of Documents

Witnesses subpoenaed to produce documents should ordinarily be served at least thirty (30) days before the scheduled deposition.  Arrangements should be made to permit inspection of the documents no later than seventy-two (72) hours before the interrogation commences.

### 2.   Confidentiality Order

A copy of any confidentiality order shall be provided to the deponent before the deposition commences if the deponent is to produce or may be asked about documents that may contain confidential information.  Counsel shall comply with the provisions of any confidentiality order when examining a deponent about confidential information.

-21-

### 3.    Copies

Extra copies of documents about which counsel expect to examine the deponent should ordinarily be provided to opposing counsel and the deponent. Deponents should be shown a document before being examined about it except when counsel seeks to impeach or test the deponent's recollection.

### 4.    Marking of Deposition Exhibits

Documents shall be referred to by the Bates-stamp number assigned by the Document Depository.

## g.    Depositions of Witnesses Who Have No Knowledge of the Facts

An officer, director, or managing agent of a corporation or a government official served with a notice of a deposition or subpoena regarding a matter about which such person has no knowledge, may submit to the noticing party within a reasonable time before the date noticed, an affidavit so stating and identifying a person within the corporation or government entity believed to have such knowledge.  Notwithstanding such affidavit, the noticing party may proceed with the deposition, subject to the right of the witness to seek a protective order.  Any entity served with a Rule 30(b)(6) notice of deposition with specified areas of questions has a duty to produce representatives

-22-

responsive to each area specified in the notice.  Thus,
an entity may be required to produce more than one
representative in response to a single 30(b)(6)
request.

**h.**    **Recording Depositions by Nonstenographic Means**

    **1.**    **Tape-Recorded Depositions**

By so indicating in its notice of a deposition, a
party may record the deposition by tape recording
in lieu of stenographic recording pursuant to
Federal Rules of Civil Procedure 30(b)(2) and (3).
Other parties may, at their own expense, arrange
for stenographic recording of the deposition,
obtain a copy of the tape and transcript upon
payment of a pro rata share of the noticing
party's actual costs, and may prepare and file
their own version of the transcript of the tape
recording.

    **2.**    **Videotaped Depositions**

By so indicating in its notice of deposition, a
party may record the deposition by videotape
pursuant to Federal Rules of Civil Procedure
30(b)(2) and (3).

    **(a)**    **Rules for Videotaped Recording**

        **(1)**    **Video Operator**

-23-

The operator(s) of the video recording equipment shall be subject to the provisions of Federal Rule of Civil Procedure 28(c).  At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

**(2)   Attendance**

Each witness, attorney, and other person attending the deposition shall be identified on camera at the commencement of the deposition.  Thereafter, only the deponent (and demonstrative materials used during the deposition) will be videotaped.

**(3)   Standards**

The deposition shall be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at a trial.  Unless physically incapacitated, the deponent shall be seated at a table or in a witness box except when reviewing or presenting demonstrative materials for which a

-24-

change in position is needed.  To the
extent practicable, the deposition shall
be conducted in a neutral setting,
against a solid background, with only
such lighting as is required for
accurate video recording.  Lighting,
camera angle, lens setting, and field of
view will be changed only to the extent
necessary to record accurately the
natural body movements of the deponent
or to portray exhibits and materials
used during the deposition.  Sound
levels shall be altered only to the
extent necessary to record
satisfactorily the voices of counsel and
the deponent.  Eating and smoking by
deponents or counsel during the
deposition will not be permitted.

**(4)   Interruptions**

The videotape shall run continuously
throughout the active conduct of the
deposition.

**(5)   Index**

The videotape operator shall use a

-25-

counter on the recording equipment and
after completion of the deposition shall
prepare a log, cross-referenced to
counter numbers, that identifies the
positions on the tape at which
examination by different counsel begins
and ends, the time at which objections
are made and examination resumes, the
time at which exhibits are identified,
and the time at which any interruption
of continuous tape recording occurs,
whether for recesses, "off the record"
discussions, mechanical failure, etc.

**(6)   Filing**

The operator shall preserve custody
of the original videotape in its
original condition until further order
of the Court.  No part of a videotaped
deposition shall be released or made
available to any member of the public
unless authorized by the Court.

**(7)   Objections**

Requests for pretrial rulings on the
admissibility of evidence obtained

-26-

during a videotaped deposition shall be accompanied by appropriate pages of the written transcript.  If needed for an informed ruling, a copy of the videotape and equipment for viewing the tape shall also be provided to the Court.

**(8)   Use at Trial; Purged Tapes**

A party desiring to offer a videotaped deposition at trial shall be responsible for providing the appropriate playback equipment and a trained operator.  After the designation by all parties of the portions of a videotape to be used at trial, an edited copy of the tape, purged of unnecessary portions (and any portions to which objections have been sustained), shall be prepared by the offering party to facilitate continuous playback; but a copy of the edited tape shall be made available to other parties at least twenty (20) days before it is to be used, and the unedited original version of the tape shall also be available at the trial.

-27-

**i.    Telephonic Depositions**

By indicating in its notice of a deposition that it
wishes to conduct the deposition by telephone, a party
shall be deemed to have moved for such an order under
Federal Rule of Civil Procedure 30(b)(7).  Unless an
objection is filed and served within five (5) business
days after such notice is received, the Court shall be
deemed to have granted the motion.  Other parties may
examine the deponent telephonically or in person.
However, all persons present with the deponent shall be
identified in the deposition and shall not by word,
sign, or otherwise coach or suggest answers to the
deponent.

**j.    Waiver of Transcription**

The parties and deponents are authorized and encouraged
to waive transcription of depositions that prove to be
of little or no usefulness in the litigation, or to
agree to defer transcription until the need for using
the deposition arises.

**k.    Use; Supplemental Depositions**

**1.    Use**

Depositions may, under the conditions prescribed
in Federal Rules of Civil Procedure 32(a)(1)-(4)
or as otherwise permitted by the Federal Rules of

Evidence, be used against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation):

(a)   who was present or represented at the deposition;

(b)   who had reasonable notice thereof; or

(c)   who, within thirty (30) days of the completion of the deposition (or, if later, within sixty (60) days after becoming a party in this Court in any action that is a part of this litigation), fails to show just cause why such deposition should not be usable against such party.

2.   **Supplemental Depositions**

Each party not present or represented at a deposition (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court) may, within thirty (30) days after the completion of the deposition (or, if later, within sixty (60) days after becoming a party in this Court in any action that is a part of this litigation), request permission to conduct a supplemental deposition of

-29-

the deponent.  Such request includes the right to take such deposition telephonically and/or by nonstenographic means.  If permitted, the deposition shall be treated as the resumption of the deposition originally noticed; and each deponent shall, at the conclusion of the initial deposition, be advised of the opportunity of nonattending parties to request a resumption of such deposition, subject to the right of the deponent to seek a protective order.  Such subsequent examination, however, shall not be repetitive of the prior interrogation.

1.  **Rulings**

  1.  **Immediate Presentation**

  During depositions, disputes arising that cannot be resolved by agreement and if not resolved immediately will significantly disrupt the discovery schedule or require a rescheduling of the deposition, may be presented by telephone to the Court.  The presentation of the issue and the Court's ruling will be recorded as part of the deposition.

  2.  **Extraterritorial Jurisdiction**

  The undersigned will exercise by telephone the

-30-

authority granted under 28 U.S.C. § 1407(b) to act as district judge in the district in which the deposition is taken.

**8.   Later Filed Cases**

The terms of this Order shall apply automatically to actions later instituted in, removed to, or transferred to this Court (including cases transferred for pretrial purposes under 28 U.S.C. § 1407).  Objections to any term of this Order shall promptly be filed, with copies served on Liaison Counsel for plaintiffs and defendants.

**9.   Electronic Bulletin Board**

Lead, Liaison and Steering Committee Counsel for Plaintiffs and Defendants are directed to meet and confer for the purpose of establishing an informational electronic bulletin board capable of being accessed by computers.  Parties shall use the bulletin board to obtain notices and announcements relating to proceedings and events in this litigation, as well as electronic versions of transcripts of status conferences, orders, cases, opinions, schedules of depositions, and some or all of the materials filed with the Document Depository.  Counsel may recommend, by motion, that a portion of the bulletin board be accessible only to counsel for plaintiffs, counsel for defendants, or both. Any limitations, however, should be restricted to (1)

matters that represent the work product of attorneys for plaintiffs or defendants and are not otherwise available to other persons, and (2) matters that are deemed confidential pursuant to an applicable protective order.  The bulletin board should be established so that it is compatible with most communications software, with a view towards making it publicly available.  Counsel using computers to prepare documents sent to the clerk or to the judge's chambers are asked to retain computer-readable text files of these documents.  The Court contemplates that procedures will be established for maintaining an electronic library and bulletin board of these files for quick and inexpensive access by other litigants and interested members of the public.

So Ordered:

Shira A. Scheindlin
United States District Judge

Dated: New York, New York
       November 13 , 2000

-32-

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

#79

In re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

RECEIVED
12-26-00

This Document Relates To:   *Berisha*
                             *England*

U.S. DISTRICT COURT
DEC 27 2000
A.F
S. D. OF N.Y.

MDL No. 1358

Master File C.A. No. 1:00-1898 (SAS)

## CASE MANAGEMENT ORDER NO. 3

1.    This Case Management Order No. 3 sets forth the Court's schedule for the disclosure of expert witnesses who may offer expert opinions as a part of plaintiffs' motion for class certification.

2.    This order supercedes all prior orders relating to expert witnesses in this matter.

3.    Plaintiffs shall disclose all expert witnesses who may offer expert opinions as a part of the class certification phase by no later than February 15, 2001. Such disclosures shall comply fully with Federal Rule 26, including the provision of an expert report signed by each expert witness.

MICROFILM
DEC 27 2000
-3:00 PM

NYK 676799-1.059486 0011

4.      Defendants shall disclose all expert witnesses who may offer expert opinions as a part of the class certification phase by no later than March 15, 2001. Such disclosures shall comply fully with Federal Rule 26, including the provision of an expert report signed by each expert witness.

5.      For experts identified in accordance with the schedule set by paragraph 3, plaintiffs may submit rebuttal expert reports no later than March 29, 2001. Furthermore, if plaintiffs seek to add additional experts not previously identified for purposes of rebuttal, they shall seek leave to do so no later than March 29, 2001, in accordance with the standard for such new experts set forth by the Court on December 8, 2000.

6.      The parties may depose the other sides' expert witnesses between March 30, 2001 and April 30, 2001, if they so choose.

Dated:          December 26, 2000          SO ORDERED

Honorable Shira A. Scheindlin
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------X
                             :

**In re: Methyl Tertiary Butyl Ether**   :
**("MTBE") Products Liability Litigation**  :

                             :     ___     **ORDER**
                             :

**This Document Relates To:   All Cases**  :     **MDL No. 1358 (SAS)**
                             :

                             :
----------------------------------------------X

## CASE MANAGEMENT ORDER

**I.**    **Prior Orders; Filing; Service**

         Except as otherwise noted below, this Order supersedes prior Case

Management Orders in MDL No. 1358.  Attached hereto as Appendix A is a list of

the cases that are currently consolidated in this multidistrict litigation, designated

MDL 1358, which have either been filed in this Court or transferred to this Court

pursuant to 28 U.S.C. § 1407.  A copy of this Order shall be filed in each case

listed in Appendix A.  In cases subsequently filed in, removed or transferred to

this Court as part of MDL 1358, a copy of this Order shall be provided by the

Clerk to each plaintiff at the time the case is filed in, removed or transferred to this

Court, and each Plaintiff shall promptly serve a copy of this Order on any

defendant not previously a party in MDL 1358.

## II.   Interim Measures

### _____A.   Pre-Trial Consolidation

_____The cases listed in Appendix A are consolidated for pre-trial proceedings.  This Order does not constitute a determination that these actions shall be consolidated for trial, nor does it have the effect of making any entity a party to an action in which it has not been joined or served in accordance with the Federal Rules of Civil Procedure.  All cases subsequently filed in, removed or transferred to this Court as part of MDL No. 1358, shall be similarly consolidated for pre-trial proceedings.

### B.   Master Docket and File

_____The Clerk will maintain a master docket and case file under the style In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358, as Master File No. 1:00-1898 (SAS).  Orders, pleadings, motions and other documents bearing a caption similar to that of this Order will, when docketed and filed in the Master File, be deemed docketed and filed in each individual case to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual cases.

### C.   Captions; Separate Filing

_____Orders, pleadings, motions and other documents will bear a caption

2

similar to that of this Order.  If generally applicable to all consolidated matters,

they shall include in the caption the notation that they relate to "all cases" and

shall be filed and docketed only in the Master File.  Documents intended to apply

only to particular cases will indicate in their caption the name(s) of the case(s) to

which they apply, and extra copies shall be provided to the Clerk to facilitate filing

and docketing both in the Master File and each of the specified individual files.

**III.   Party Organization; Liaison Counsel**

> **A.   Liaison Counsel**

_____The Court directs the parties to coordinate their actions through

Liaison Counsel. Nothing herein shall restrict the substantive rights of any party,

including the right to be represented by separate counsel or to take separate

positions from other parties.  For purposes of nominating and coordinating with

the Liaison Counsel, the parties to the declaratory judgment actions in Appendix A

shall be reversed, so that the nominal plaintiffs in those actions are aligned with

defendants in the other cases and vice-versa.  Liaison Counsel shall:

> 1.   Maintain and distribute to co-counsel and to the opposing
>      Liaison Counsel an up-to-date service list;
>
> 2.   Coordinate with opposing Liaison Counsel and with the Court
>      on scheduling issues;

3

3.     Be responsible for the service and filing of joint pleadings and communications with the Court to the extent practicable;

4.     Receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

5.     Maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository.

Plaintiffs designate as their liaison counsel Stanley N. Alpert, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038. Defendants designate as their liaison counsel Peter Sacripanti, McDermott, Will & Emery, 50 Rockefeller Plaza, New York, New York 10020.

**B.     <u>Plaintiffs' Co-Lead Counsel  and Executive Committee</u>**

The Court hereby incorporates Parts III.A ("Plaintiffs' Co-Lead Counsel") and III.C ("Plaintiffs' Executive Committee") from Case Management Order No. 1 filed Nov. 8, 2000.  The following attorneys shall serve as co-lead counsel pursuant to Part III.A of CMO No. 1:   Robert J. Gordon, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038; Victor M.

4

Sher, Sher Leff, 450 Mission Street, Suite 500, San Francisco, California 94105;

and Scott Summy, Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas,

Texas 71209. The Plaintiffs' Executive Committee shall consist of Co-Lead

Counsel as well as the following attorneys pursuant to Part III.C of CMO 1: Marc

Bern, Napoli Kaiser & Bern, New York, New York, and Duane Miller, Miller,

Axline and Sawyer, Sacramento, California.

**IV.   Service of Documents**

_____**A.   Orders**

_____A copy of each order will be provided electronically to Plaintiffs' and

Defendants' Liaison Counsel for distribution as appropriate to other counsel and

parties. Plaintiffs' Liaison Counsel shall distribute copies to other counsel for

plaintiffs; defendants' Liaison Counsel shall distribute copies to other counsel for

defendants.

**B.   Pleadings, Motions, and Other Documents**

_____The parties shall serve other parties with all pleadings, motions and

other Court filings in PDF format by electronic means, either by electronic mail or

by such other method as the parties and the Court might agree. Pursuant to Fed.

R. Civ. P. 5, service on Liaison Counsel constitutes service on other attorneys and

parties for whom Liaison Counsel acts. For the purpose of computing time under

5

Fed. R. Civ. P. 6, 1 day shall be added to the prescribed period when effecting service by electronic means under this CMO.

## V.    Motions; Pleadings; Discovery

### A.    Reconsideration; Interlocutory Appeal

Any party who wishes to move for reconsideration or certification for interlocutory appeal of the Court's March 16, 2004, order denying remand shall do so by April 9, 2004.  In the event any party files such a motion, any party opposing the motion shall file its briefs in opposition by May 24, 2004, and movants may file reply briefs by June 7, 2004.

### B.    Misjoinder; Personal Jurisdiction

Any defendant who contends that it was improperly named, or that personal jurisdiction over it is lacking, shall identify itself in writing to counsel for plaintiffs, with an explanation of the grounds for that contention, by April 23, 2004.

### C.    Amendments to Complaints

Any plaintiff in any removed action that wishes to amend its complaint may do so as of right by April 23, 2004.

### D.    Answers; Rule 12(b) Motions

1.  *Removed actions.*  The time for defendants to answer or move in

6

response to the complaints will be set at the status conference scheduled for April 22, 2004, at 10:00 a.m.

2. *Declaratory judgment actions*.  The declaratory judgment actions shall be stayed pending resolution of the proposed motion for reconsideration, and/or motion seeking certification for interlocutory appeal.

### E.   Discovery Pending Resolution of Preliminary Motions

Pending the resolution of motions to dismiss, discovery shall be limited to subjects necessary to the resolution of objections to personal jurisdiction and the standing of plaintiffs.  The parties shall meet and confer in an attempt to agree on the parameters of this preliminary reciprocal discovery.  If the parties are unable to agree, the Court will address this issue at the status conference scheduled for April 22, 2004, at 10:00 a.m.  Additional discovery shall be deferred pending further order.

### F.   Consolidated Papers

In all motions and briefs filed in this MDL, plaintiffs and defendants are each instructed, to the extent possible, to file consolidated papers to avoid a multiplicity of motions and briefs.

## VI.   Disclosures Pursuant to Rule 26(a)

_____Disclosures pursuant to Rule 26(a)(1) shall not be required.

7

## VII.   Subsequent Cases and Case Management Orders

The Court may issue additional case management orders as appropriate to provide for the prompt, fair and efficient administration of this matter.  As and when additional cases may be transferred or removed to or filed in this Court as part of MDL 1358, the Court will issue orders calling for those cases to proceed in a manner consistent with the procedure set forth herein and, to the extent practicable, will require those cases to follow a schedule that is the same as or similar to the schedule herein.

## VIII.  Privileges Preserved

\_\_\_\_\_        No communication among any Plaintiffs' Counsel and any Plaintiff, or among any Defendants' Counsel and any Defendant, shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 1, 2004

8

**APPENDIX A**

| State | Short Case Name | Court/Index No. |
|---|---|---|
| CT | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1926 |
| CT | *Canton Board of Education v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1921 |
| CT | *Childhood Memories v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1924 |
| CT | *Columbia Board of Education v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1923 |
| CT | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1925 |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-1927 |
| CT | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | D. Conn. 3:03-CV-2017 |
| CT | *Exxon Mobil Corp., et al. v. American Distilling & Manufacturing Co, Inc., et al.* | D. Conn. 3:03-CV-2252 |
| FL | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | N.D. Fla. 3:03-CV-539 |
| FL | *Exxon Mobil Corp., et al. v. Escambia County Utilities Authority* | N.D. Fla. 3:03-CV-597 |
| IA | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | S.D. Iowa 4:03-CV-90663 |
| IA | *Exxon Mobil Corp., et al. v. City of Galva, et al.* | N.D. Iowa C-03-4124 |
| IL | *City of Crystal Lake, et al. v. Amerada Hess Corp., et al.* | N.D. Ill. |

9

| State | Short Case Name | Court/Index. No. |
|---|---|---|
| | | 03-CV-8973 |
| IL | *Exxon Mobil Corp., et al. v. City of Crystal Lake, et al.* | N.D. Ill. 03-CV-9026 |
| IN | *City of Mishawaka v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-904 |
| IN | *City of Rockport v.  v. Amerada Hess Corp., et al.* | S.D. Ind. 3:03-CV-201 |
| IN | *City of South Bend, Indiana v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-905 |
| IN | *North Newton School Corp v. Amerada Hess Corp., et al.* | N.D. Ind. 4:03-CV-013 |
| IN | *Exxon Mobil Corp., et al. v. City of Rockport, et al.* | S.D. Ind. 3:03-CV-223 |
| KS | *Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1457 |
| KS | *City of Bel Aire v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1458 |
| KS | *City of Dodge City v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1456 |
| KS | *City of Park City, Kansas v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1455 |
| KS | *Exxon Mobil Corp., et al. v. Chisholm Creek Utility Authority, et al.* | D. Kan. 04-CV-1009 |
| MA | *Town of Duxbury, et al. v. Amerada Hess Corp., et al.* | D. Mass. 03-CV-12399 |
| MA | *Exxon Mobil Corp. v. Brimfield Housing Authority, et. al.* | D. Mass. |

| State | Short Case Name | Court/Index No. |
|---|---|---|
| | | 03-CV-12539 |
| NH | *City of Dover v. Amerada Hess Corp., et al.* | D.N.H. C-03-546 |
| NH | *City of Portsmouth v. Amerada Hess Corp., et al.* | D.N.H. C-03-542 |
| NH | *Exxon Mobil Corp., et al. v. City of Portsmouth, New Hampshire, et al.* | D.N.H. 03-CV-518 |
| NJ | *New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp., et al.* | D.N.J. 03-CV-5562 |
| NY | *Carle Place Water District v. AGIP, et al.* | S.D.N.Y. 03-CV-10053 |
| NY | *Town of East Hampton v. AGIP, et al.* | S.D.N.Y. 03-CV-10056 |
| NY | *Village of Hempstead v. AGIP, et al.* | S.D.N.Y. 03-CV-10055 |
| NY | *Village of Mineola v. AGIP, et al.* | S.D.N.Y. 03-CV-10051 |
| NY | *County of Nassau v. Amerada Hess Corp., et al.* | S.D.N.Y. 03-CV-9543 |
| NY | *West Hempstead Water District v. AGIP, et al.* | S.D.N.Y. 03-CV-10052 |
| NY | *Westbury Water District v. AGIP, et al.* | S.D.N.Y. 03-CV-10057 |
| NY | *Town of Southhampton v. AGIP, et al.* | S.D.N.Y. 03-CV-10054 |

11

| State | Short Case Name | Court/Index No. |
|-------|-----------------|-----------------|
| NY | *Water Authority of Western Nassau v. Amerada Hess, et al.* | S.D.N.Y. 03-CV-9544 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp, et al.* | E.D.N.Y. 03-CV-6125 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp, et al.* | E.D.N.Y. 03-CV-6077 |
| NY | *Exxon Mobil Corp., et al. v. Long Island Water Corp., et al.* | E.D.N.Y. 03-CV-6274 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2389 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2390 |
| VA | *Patrick County School Board v. Amerada Hess Corp., et al.* | W.D. Va. 4:03-CV-104 |
| VA | *Exxon Mobil Corp., et al. v. Patrick County School Board, et al.* | W.D. Va. 4:03-CV-105 |
| VT | *Town of Hartland v. Amerada Hess Corp., et al.* | D. Vt. 2:03-CV-337 |
| VT | *Exxon Mobil Corp., et al v. Town of Hartland* | D. Vt. 2:03-CV-343 |

12

## - Appearances -

**Liaison Counsel for Plaintiffs:**

Stanley N. Alpert, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

PAGE 2/25 * RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] * SVR:FBI * DNIS:500 * CSID: * DURATION (mm-ss):07-34

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————X
                           :

In re: Methyl Tertiary Butyl Ether  :
("MTBE") Products Liability Litigation  :

                          :      **ORDER**

                          :

This Document Relates To:   All Cases  :      Master File No. 1:00-1898

                          :

                          :      **MDL 1358 (SAS)**
                          :      **No. M21-88**

                          :
————————————————————X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## CASE MANAGEMENT ORDER #4

### I.   Prior Order: Filing: Service

        All case management orders requiring production of documents or

other information, previously made by the Court, shall remain in full force and

effect.  Attached hereto as Appendix A is a list of cases that are currently

consolidated in this multi-district litigation, designated MDL 1358, which have

either been filed in this Court or transferred to this Court pursuant to 28 U.S.C. §

1407.  A copy of this Order shall be filed in each case listed in Appendix A.  In

cases subsequently filed in, removed to, or transferred to this Court as part of

MDL 1358, a copy of this Order shall be provided by the Clerk to each Plaintiff at

the time the case is filed in, removed, or transferred to this Court, and each

1

plaintiff shall promptly serve a copy of this Order on any defendant not previously

a party in one or more of the cases listed in Appendix A.

## II.    Focus Cases

A.    For purposes of this Order, the following cases are focus cases:

*County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, 04 Civ. 5424; *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968; *City of New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417; and *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389.

B.    For purposes of this Order, all cases not listed in subsection II(A) are non-focus cases at this time.

C.    For purposes of this Order, the term "Relevant Geographic Area" shall mean the following:

1.    *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, 04 Civ. 5424:  Suffolk County, New York;

2.    *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968:  the Orange County Water District service area;

3.    *City of New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417: physical area comprising United States of America zip code numbers 11001, 11003, 11004, 11355, 11364, 11365, 11366, 11367, 11368, 11374, 11375, 11385,

2

11411, 11412, 11413, 11414, 11415, 11416, 11417, 11418, 11419, 11420, 11421, 11422, 11423, 11426, 11427, 11428, 11429, 11430, 11432, 11433, 11434, 11435, 11436, 11451, 11580; and

4.      *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389: Rockland County, New York.

The definition of "Relevant Geographic Area" for any focus case may be modified by the parties upon both plaintiffs' and defendants' consent.

**III.   Discovery**

A.   Plaintiffs: Liability Discovery in Focus Cases

1.   Written Discovery and Production of Documents

Upon entry of this Order, as to those defendants in focus cases who were not parties to *South Tahoe Public Utilities District v. Atlantic Richfield Co., et al.*, No. 999128, Superior Court of the State of California for the County of San Francisco; or *Communities for a Better Environment v. Unocal Corp., et al.*, No. 997013, Superior Court of the State of California for the County of San Francisco or MDL 1358 I (the "Prior MTBE Litigations"), Plaintiffs may engage in written discovery on the following issues:

(i)   MTBE's characteristics in groundwater and containment systems;

3

PAGE 5/25 * RCVD AT 10/22/2004 10:21:24 AM [Eastern Daylight Time] * SVR:EFH1 * DNIS:500 * CSID: * DURATION (mm-ss):07-34

    (ii)    taste and odor of MTBE;

    (iii)   alternatives, including the availability of ethanol;

    (iv)   knowledge of MTBE's characteristics and industry releases;

    (v)    the formation of and participation in industry groups or committees relating to MTBE;

    (vi)   contacts and communications by both refiners and those industry groups with governmental regulators and officials and the substance of those communications relating to MTBE;

    (vii)  decisions to select an oxygenate for use in gasoline, including the decision to use MTBE, and the decision to use or not to use ethanol;

    (viii) the decision to use MTBE to boost octane;

    (ix)   the decision to use MTBE in conventional gasoline;

    (x)    the decision to use MTBE in Non-Reformulated Gasoline/Non-Oxy-Fuel areas;

    (xi)   the foreseeability of contamination, including

4

knowledge of historical problems associated with

underground storage tank systems;

(xii)   programs by defendants, their subsidiaries or their

affiliates, to identify, prioritize and/or remediate

MTBE/TBA contamination within the Relevant

Geographic Area of each focus case;

(xiii)  warnings relating to gasoline containing MTBE;

(xiv)  the decision to discontinue using MTBE in

gasoline;

(xv)   surveys of the defendants that show the extent of

contamination by MTBE;

(xvi)  vulnerability studies which describe potential

impacts on public drinking water supplies and/or

wells in the Relevant Geographic Areas, and/or

any programs to require additional and/or different

remedial work to prevent MTBE and/or TBA from

entering public drinking water supplies and/or

wells in the Relevant Geographic Areas; and

(xvii) topics (i)–(xvi) as they relate to TBA.

**2.   Depositions**

On or after March 1, 2005, as to those defendant in focus cases who were not parties in *South Tahoe Public Utilities District v. Atlantic Richfield Co., et al.*, No. 999128, Superior Court of the State of California for the County of San Francisco; or *Communities for a Better Environment v. Unocal Corp., et al.*, No. 997013, Superior Court of the State of California for the County of San Francisco, plaintiffs may take deposition on topics (i) through (xvii) above. Nothing in this Section otherwise limits a party's right to request the production of documents on topics (i) through (xvii) in connection with a deposition so far as permitted by the Federal Rules of Civil Procedure.

   **3.   Liability Discovery from Parties in Prior MTBE Litigation**

In accordance with the Court's Order, dated October 18, 2004 ("Oct. 18 Order"), the Special Master shall determine whether documents produced but not copied in prior MTBE cases other than MDL 1358 shall be made available to all parties.

   **4.   Any discovery of the type described in subsections III(A)(1) and III(A)(2) above shall be applicable to and for use in non-focus cases as well, and parties in non-focus cases will be given notice and the opportunity to participate in this discovery.**

6

B.   Plaintiffs:  Other Discovery in Focus Cases

1.   Production of MTBE/TBA Release Information

(a)   On or before November 1, 2004, each defendant in

*Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968, and *City of*

*New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417, shall produce one

representative site remediation file, which representative file shall be related to

gasoline or MTBE or TBA releases of any kind within the Relevant Geographic

Area and relevant time periods applicable to these focus cases.

(b)   Each defendant in *County of Suffolk and Suffolk County*

*Water Authority v. Amerada Hess Corp., et al.*, 04 Civ. 5424, and *United Water of*

*New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389, shall produce the

following:

(i)   On or before November 30, 2004, each defendant

shall produce all site remediation files in its

possession, custody or control for each gasoline

station, terminal and bulk storage facility where

there has been any release or spill of gasoline,

since 1979, within the Relevant Geographic Area

covered by these focus cases;

7

PAGE 9/25 * RCVD AT 10/21/2004 10:21:14 AM [Eastern Daylight Time] * SVR:36/1 * DNS:308 * CSID: * DURATION (mm-ss):07-34

      (ii)    Subject to all foundational requirements in, and in the format required by, subsection III(B)(2)(a) below, on or before November 30, 2004, each defendant shall identify the address of all gasoline stations that they either own or have owned, operate or have operated, lease or have leased, or are or have been subject to a retail supply contract, and such dates of ownership, operation, lease or retail supply contract, since 1979, within the Relevant Geographic Area covered by these focus cases.

    (c)    Each Defendant in *City of New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417 (from 1979 to present) and *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968 (from 1986 to present), shall produce the following:

      (i)    On or before December 31, 2004, each defendant shall produce all site remediation files in its possession, custody or control for each gasoline station, terminal and bulk storage facility where there has been any release or

8

PAGE 10/25 * RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] * SVR:RF/1 * DNIS:300 * CSID: * DURATION (mm-ss):07-34

spill of gasoline within the Relevant Geographical Area covered by these focus cases;

(ii)    Subject to all foundational requirements in, and in the format required by, subsection III(B)(2)(a) below, on or before December 31, 2004, each defendant shall identify the address of all gasoline stations that they either owned or have owned, operate or have operated, lease or have leased, or are or have been subject to a retail supply contract, and such dates of ownership, operation, lease or retail supply contract, within the Relevant Geographic Area covered by these focus cases.

(iii)    On or before March 15, 2005, the parties shall meet and confer to discuss what additional information is needed to conduct further discovery on this topic.

2.    <u>Declarations</u>

(a)    On or before December 31, 2004, each defendant, to the extent it is named as a defendant in one or more of the focus cases shall provide declarations, applicable to *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp, et al.*, 04 Civ. 5424 (from 1979-present); *Orange County*

9

*Water District v. Unocal Corp., et al.,* 04 Civ. 4968 (from 1986-present); and *City of New York v. Amerada Hess Corp., et al.,* 04 Civ. 3417 (from 1979-present), based upon all non-privileged information, including documents, within the possession, custody or control of a defendant and retrievable through reasonable effort. The declarations shall identify databases and categories of documents that were used to gather the information contained in the declarations. The declarations shall contain the following information:

(i)     defendants in each focus case will identify jobbers supplied by them that provide gasoline containing MTBE to the Relevant Geographic Area;

(ii)    manufacturers of neat MTBE and/or TBA will disclose how and where it is made;

(iii)   manufacturers of neat MTBE and/or TBA will identify each refiner to whom it has sold or delivered neat MTBE and/or TBA, during the relevant time period for each focus case listed in subparagraph (a) above, that may have been added to gasoline for delivery in the Relevant Geographic Area of each focus case;

10

PAGE 12/25 * RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] * SVR:/FH * DNIS:300 * CSID: * DURATION (mm-ss):07-30

(iv)    each refiner will provide a history of ownership,

during the relevant time period for each focus case

listed in subparagraph (a) above, including

changes in corporate structure, of each refinery it

owns or has owned that serve the Relevant

Geographical Area in each focus case;

(v)    each refiner will disclose the date it first blended

MTBE and/or TBA into gasoline for deliveries to

terminals that supplied the Relevant Geographical

Area of each focus case.

(vi)    each refiner shall describe the records, which

include the name, contents and location of records,

including electronically stored records, that record

the batch number for batches of gasoline delivered

from defendants' refineries to terminals in the

Relevant Geographical Areas;

(vii)    for each petroleum product containing MTBE

refined and/or marketed by the defendant into the

Relevant Geographical Area of each focus case,

11

PAGE 13/25 * RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] * SVR:RF/1 * DNIS:500 * CSID: * DURATION (mm-ss):02-34

the defendant shall disclose the name and grade (if

applicable) of the product, the product and product

code;

(viii)   each refiner will disclose the date it last blended

MTBE and/or TBA into gasoline for deliveries

into the Relevant Geographical Area of each focus

case; and

(ix)    each defendant will respond to the seven

categories identified by Judge Scheindlin in her

Order to Marathon Ashland Petroleum, LLC,

dated June 22, 2004, as that information pertains

to the Relevant Geographic Area at issue in each

focus cases.

Each defendant will designate, as to each sub-topic, the person(s)

most qualified to testify on defendant's behalf based on defendant's investigation.

(b)    On or before January 15, 2005, the parties shall meet and

confer to arrange a schedule for providing a declaration including the information

listed in subsections (a)(i) through (ix) above applicable to *United Water New*

*York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389.

12

3.     Declaration Depositions

In accordance with the Oct. 18 Order, the Special Master shall

determine whether plaintiffs may serve document subpoenas in connection with

their "person most knowledgeable" depositions, in accordance with Fed. R. Civ. P.

30(b)(6).

C.     Defendants:  Motion Discovery in Focus Cases

1.     Written Discovery and Production of Documents

(a)     Upon entry of this Order, defendants may engage in

written discovery as to each plaintiff in the focus cases on the following issues:

(i)     pumping data for each well that is impacted by

MTBE and/or TBA, including any documents that

relate to distribution of water from these wells,

and special testing, treatment, or handling of water

from those wells;

(ii)     the construction or maintenance of each of

plaintiffs' wells, including "as built" construction

data for each of plaintiffs' wells, including

monitoring and potable wells, that are impacted by

MTBE and/or TBA

13

PAGE 15/25 * RCVD AT 10/21/2004 10:21:14 AM [Eastern Daylight Time] * SVR:RF/1 * DNIS:500 * CSID: * DURATION (mm-ss):07-34

(iii)   any contact with governmental and/or other
regulatory authorities in addressing releases and
remediation activities relating to MTBE and/or
TBA releases that have impacted plaintiffs' wells
and/or any aquifer supplying water to their wells;

(iv)   any releases of petroleum products, including
MTBE and/or TBA, from sites owned, controlled
and/or operated by plaintiff and any investigative
and/or remedial response activities related to such
release; and

(v)   any complaints from customers and/or purveyors
within any plaintiffs' service area or jurisdiction
relating to the taste, odor or quality of potable
water served in said area or jurisdiction;

(vi)   any Wellhead Protection studies or computer
modeling of Wellhead Protection Areas, source
water assessments, vulnerability studies, or
computer modeling of well or aquifer vulnerability
and/or § 208 Water Management or Water Basin

14

PAGE 16/25 * RCVD AT 10/21/2004 10:27:24 AM [Eastern Daylight Time] * SVR:RF/1 * DNIS:500 * CSID: * DURATION (mm-ss):07-34

studies performed by and/or on behalf of each

focus case plaintiff, or that relate to the

groundwater or aquifer system located within the

Relevant Geographic Area.

In accordance with the Oct. 18 Order, the Special Master shall

determine whether defendants may take discovery about contaminants in

plaintiffs' wells other than MTBE or TBA, and how plaintiffs have responded to

the presence of those contaminants.

       2.   <u>Depositions</u>

       (a)   After March 1, 2005, defendants may depose

representatives of the plaintiffs in the focus cases concerning any of the topics (i)

through (vi) above.  Nothing in this Section otherwise limits a party's right to

request the production of documents on topics (i) through (vi) in connection with a

deposition so far as permitted by the Federal Rules of Civil Procedure.

   D.   <u>Preemption Discovery</u>

       In accordance with the Oct. 18 Order, the Special Master shall

determine a schedule for conducting discovery related to defendants' preemption

motions and the scope of any such discovery.

   E.   <u>Non-Party Discovery</u>

15

1.     Upon entry of this Order, the parties may engage in full

discovery with respect to non-parties.

2.     Upon entry of this Order, the parties shall promptly meet and

confer regarding procedures to assure that non-party discovery proceeds in an

efficient manner.

F.     Non-Focus Cases

1.     All discovery previously ordered by the Court shall proceed in

non-focus cases.

2.     As set forth in subsection III(A)(4) above, the parties in

non-focus cases will be given notice and opportunity to participate in liability

discovery.

3.     No other discovery shall proceed in non-focus cases except as

set forth herein or upon further Order of the Court.

G.     Preservation Order

1.     On or before November 1, 2004, the parties shall submit a

document preservation order to the Court applicable to focus and non-focus cases.

H.     Prior Depositions

In accordance with the Oct. 18 Order, the Special Master shall

determine whether prior depositions taken in Prior MTBE Litigations shall be

PAGE 18/25 · RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] · SVR:EFY1 · DNIS:500 · CSID: · DURATION (mm-ss):02-34

applicable to all defendants.

I.    Reservation of Rights

Notwithstanding the forgoing, nothing in this Order shall preclude a party from being permitted to object to a discovery request on the grounds that said request is overly broad, unduly burdensome, not designed to lead to the discovery of relevant or admissible evidence, or otherwise not permitted under the applicable Federal Rules of Civil Procedure.

IV.   Summary Judgment Motions

A.    Preemption

Upon consideration of the parties' submissions, the Court will establish a schedule for filing preemption motions.

B.    Statutes of Limitations

1.    On or before November 15, 2004, the parties shall meet and confer regarding a stipulation as to recent releases within the *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968, target area, during an agreed-upon time frame, solely for purposes of defendants' motion.

2.    On or before January 15, 2005, the parties shall meet and confer to identify focus issues for defendants' statutes of limitations motions applicable to *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968.



3.     After March 31, 2005, Defendants may file statutes of

limitations motions applicable to the focus cases.

C.     <u>Justiciability/No Impact/Lack of Imminent Threat</u>

Upon consideration of the parties' submissions, the Court will

establish a schedule for filing any justiciability/no impact/lack of imminent threat

motions applicable to the focus cases.

D.     <u>Primary Jurisdiction</u>

Defendants may submit this motion on or after February 15, 2005.

E.     <u>Lack of Cognizable Legal Interest</u>

On or before January 15, 2005, the parties shall meet and confer

regarding discovery related to this motion.

F.    All Other Motions

All other motions, other than those subject to an existing scheduling order from the Court, shall be brought only after a pre-motion conference and subsequent Order of the Court.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
          October 19, 2004

19



PAGE 21/25 * RCVD AT 10/21/2004 10:21:24 AM Eastern Daylight Time] * SVR:RF/1 * DNIS:300 * CSID: * DURATION (mm-ss):02-30

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

20

PAGE 22/25 * RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] * SVR:EFW * DNIS:500 * CSID: * DURATION (mm-ss):02-04

## Exhibit A

| States | Related Case Caption | Docket Number |
|---|---|---|
| CA | *California-American Water Co. v. Atlantic Richfield Co., et al.* | 04 Civ. 4974 |
| CA | *City of Fresno v. Chevron U.S.A. Inc., et al.* | 04 Civ. 4973 |
| CA | *City of Riverside v. Atlantic Richfield Co., et al.* | 04 Civ. 4969 |
| CA | *City of Roseville v. Atlantic Richfield Co., et al.* | 04 Civ. 4971 |
| CA | *Orange County Water District v. Unocal Corp., et al.* | 04 Civ. 4968 |
| CA | *People of the State of California, et al. v. Atlantic Richfield Co., et al.* | 04 Civ. 4972 |
| CA | *Quincy Community Services District v. Atlantic Richfield Co., et al.* | 04 Civ. 4970 |
| CA | *Martin Silver, et al. v. Alon USA Energy, Inc., et al.* | 04 Civ. 4975 |
| CT | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | 04 Civ. 1719 |
| CT | *Columbia Board of Education v. Amerada Hess Corp., et al.* | 04 Civ. 1716 |
| CT | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | 04 Civ. 1718 |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | 04 Civ. 1720 |
| CT | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | 04 Civ. 1721 |
| FL | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | 04 Civ. 1722 |
| IA | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | 04 Civ. 1723 |
| IL | *City of Island Lake v. Amerada Hess Corp., et al. (f/k/a Crystal Lake, et al. v. Amerada Hess Corp., et al.)* | 04 Civ. 2053 |
| IN | *Town of Campbellsburg v. Amerada Hess Corp., et al.* | 04 Civ. 4990 |

PAGE 23/25 * RCVD AT 10/21/2004 10:21:34 AM [Eastern Daylight Time] * SVR:RF1/1 * DNIS:500 * CSID: * DURATION (mm-ss):07-34

| State | Short Case Name | Docket Index No. |
|---|---|---|
| IN | City of Mishawaka v. Amerada Hess Corp., et al. | 04 Civ. 2055 |
| IN | City of Rockport v.  v. Amerada Hess Corp., et al. | 04 Civ. 1724 |
| IN | City of South Bend, Indiana v. Amerada Hess Corp., et al. | 04 Civ. 2056 |
| IN | North Newton School Corp v. Amerada Hess Corp., et al. | 04 Civ. 2057 |
| KS | Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al. | 04 Civ. 2061 |
| KS | City of Bel Aire v. Alon USA Energy Inc., et al. | 04 Civ. 2062 |
| KS | City of Dodge City v. Alon USA Energy Inc., et al. | 04 Civ. 2060 |
| KS | City of Park City, Kansas v. Alon USA Energy Inc., et al. | 04 Civ. 2059 |
| LA | City of Marksville v. Alon USA Energy, Inc., et al. | 04 Civ. 3412 |
| LA | Town of Rayville v. Alon USA Energy, Inc., et al. | 04 Civ. 3413 |
| MA | Town of Duxbury, et al. v. Amerada Hess Corp., et al. | 04 Civ. 1725 |
| NH | City of Dover v. Amerada Hess Corp., et al. | 04 Civ. 2067 |
| NH | City of Portsmouth v. Amerada Hess Corp., et al. | 04 Civ. 2066 |
| NH | State of New Hampshire v. Amerada Hess. Corp. | 04 Civ. 4976 |
| NJ | New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp., et al. | 04 Civ. 1726 |
| NY | Basso, et al. v. Sunoco, Inc., et al. | 03 Civ. 9050 |
| NY | Carle Place Water District v. AGIP, et al. | 03 Civ. 10053 |
| NY | County of Suffolk v. Amerada Hess Corp., et al. | 04 Civ. 5424 |

2

OCT-22-2003  08:53

★ PAGE 24/25 ; RCVD AT 10/21/2004 10:21:24 AM [Eastern Daylight Time] ; SVR:RF/1 ; DNIS:300 ; CSID ; DURATION (mm-ss):07-36 ★

| Name | Short Case Name | Civil Action No. |
|------|-----------------|------------------|
| NY | *City of New York v. Amerada Hess Corp., et al.* | 04 Civ. 3417 |
| NY | *County of Nassau v. Amerada Hess Corp., et al.* | 03 Civ. 9543 |
| NY | *Franklin Square Water District v. Amerada Hess Corp., et al.* | 04 Civ. 5423 |
| NY | *Hicksville Water District v. Amerada Hess Corp., et al.* | 04 Civ. 5421 |
| NY | *Incorporated Village of Sands Point v. Amerada Hess Corp., et al.* | 04 Civ. 3416 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp, et al.* | 04 Civ. 2068 |
| NY | *Port Washington Water District v. Amerada Hess Corp., et al.* | 04 Civ. 3415 |
| NY | *Roslyn Water District v. Amerada Hess Corp., et al.* | 04 Civ. 5422 |
| NY | *Tonneson, et al. v. Exxon Mobil Corp., et al.* | 03 Civ. 8248 |
| NY | *Town of East Hampton v. AGIP, et al.* | 03 Civ. 10056 |
| NY | *Town of Southampton v. AGIP, et al.* | 03 Civ. 10054 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | 04 Civ. 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp, et al.* | 04 Civ. 2389 |
| NY | *Village of Hempstead v. AGIP, et al.* | 03 Civ. 10055 |
| NY | *Village of Mineola v. AGIP, et al.* | 03 Civ. 10051 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | 04 Civ. 2390 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp, et al.* | 04 Civ. 1727 |
| NY | *Water Authority of Western Nassau v. Amerada Hess Corp., et al.* | 03 Civ. 9544 |
| NY | *West Hempstead Water District v. AGIP, et al.* | 03 Civ. 10052 |
| NY | *Westbury Water District v. AGIP, et al.* | 03 Civ. 10057 |
| PA | *Northampton, Bucks County Municipal Authority v. Amerada Hess Corp., et al.* | 04 Civ. 6993 |

3



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------X
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

In re: Methyl Tertiary Butyl Ether⠀⠀⠀:
("MTBE") Products Liability Litigation⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀⠀**ORDER**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
This Document Relates To:⠀⠀All Cases⠀:⠀⠀⠀Master File No. 00 Civ. 1898
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀⠀MDL No. 1358 (SAS)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
-------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## CASE MANAGEMENT ORDER #5

⠀⠀⠀⠀⠀On October 29 and November 5, 2004, plaintiffs filed amended

complaints in the majority of cases in this multi-district litigation.  Among other

things, the amended complaints added new defendants who are not bound by the

Court's previously-set deadlines.  Plaintiffs are in the process of serving these

amended complaints on both the previously-named and the new defendants.  In

order to avoid a multiplicity of responsive pleadings on varying deadlines, the

schedule must be amended to allow new defendants to "catch up" and coordinate

with the other parties.

⠀⠀⠀⠀⠀IT IS HEREBY ORDERED that the following schedule shall apply:



1.   <u>New Hampshire Cases</u>
     (*City of Dover v. Amerada Hess Corp., et al.*, No. 04 Civ. 2067; *City of
     Portsmouth v. Amerada Hess Corp., et al.*, No. 04 Civ. 2066)

   • January 4, 2005          Plaintiffs file response briefs on pending
                              12(b)(6) motions

   • January 18, 2005         Defendants file reply briefs on pending
                              12(b)(6) motions or other responsive
                              pleadings

2.   <u>California and Pennsylvania Cases</u> (Listed in Exhibit A)

   • January 18, 2005         Defendants file Rule 12 motions or other
                              responsive pleadings

   • February 18, 2005        Plaintiffs file responses to Rule 12 motions
                              or to other responsive pleadings

   • March 4, 2005            Defendants file replies on Rule 12 motions
                              or other responsive pleadings

3.   <u>Other Cases</u> (Listed in Exhibit B[1])

   • January 18, 2005         Defendants file Rule 12 motions or other
                              responsive pleadings (*e.g.*, joinder in
                              pending motions, stand-alone Rule 12
                              motions, answers, etc.)

   • February 18, 2005        Plaintiffs file responses to Rule 12 motions
                              or to other responsive pleadings

   • March 4, 2005            Defendants file replies on Rule 12 motions
                              or other responsive pleadings

   ───────────────

   [1]   The cases listed in Exhibit B have motions to dismiss pending.

4. <u>State Plaintiffs' Cases</u>
(*State of New Hampshire v. Amerada Hess Corp., et al.*, No. 04 Civ. 4976; *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, No. 04 Civ. 4972)

The parties shall meet and confer to discuss whether and/or to what extent State Plaintiffs' appeals divest the Court of jurisdiction over these matters while said appeals remain pending.  No responsive pleading is required to be filed before the schedule set forth above for the cases listed in Exhibits A and B.

5. <u>Notices of Appearance</u>

All newly named parties (and any other party who has not previously done so) shall file a Notice of Appearance within thirty (30) days of service of an amended complaint.

6. <u>Waivers of Service</u>

By letter dated November 23, 2004, as to each of the cases referenced herein, each newly named defendant that is corporally related to, and which shares common counsel with, an entity previously named as a defendant in these cases, has waived service of process for each summons and amended complaint to which said defendant has been added as a party.  In lieu of formal service of process, the amended complaints shall be delivered to such defendants via email to their common counsel.  Defendants' waiver of service shall not apply to any amended complaint filed in a Virginia action, and formal service of process must be completed for any such case(s).  Furthermore, a defendant's waiver of service shall not constitute a waiver

3

by that defendant of any defenses or jurisdictional objections, including objections to personal jurisdiction.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 29, 2005

4

**Exhibit A**

| | | |
|---|---|---|
| CA | California-American Water Co. v. Atlantic Richfield Co., et al. | S.D.N.Y. 04 Civ. 4974 |
| CA | City of Fresno v. Chevron U.S.A. Inc., et al. | S.D.N.Y. 04 Civ. 4973 |
| CA | City of Riverside v. Atlantic Richfield Co., et al. | S.D.N.Y. 04 Civ. 4969 |
| CA | City of Roseville v. Atlantic Richfield Co., et al. | S.D.N.Y. 04 Civ. 4971 |
| CA | Orange County Water District v. Unocal Corp., et al. | S.D.N.Y. 04 Civ. 4968 |
| CA | People of the State of California, et al. v. Atlantic Richfield Co., et al. | S.D.N.Y. 04 Civ. 4972 |
| CA | Quincy Community Services District v. Atlantic Richfield Co., et al. | S.D.N.Y. 04 Civ. 4970 |
| CA | Martin Silver, et al. v. Alon USA Energy, Inc., et al. | S.D.N.Y. 04 Civ. 4975 |
| PA | Northampton, Bucks County Municipal Authority v. Amerada Hess Corp., et al. | S.D.N.Y. 04 Civ. 6993 |
| | | |

**Exhibit B**

| | | |
|---|---|---|
| CT | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1719 |
| CT | *Columbia Board of Education v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1716 |
| CT | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1718 |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1720 |
| CT | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1721 |
| FL | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | S.D.N.Y. 04 Civ. 1722 |
| IA | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1723 |
| IL | *City of Island Lake v. Amerada Hess Corp., et al. (f/k/a Crystal Lake, et al. v. Amerada Hess Corp., et al.)* | S.D.N.Y. 04 Civ. 2053 |
| IN | *Town of Campbellsburg v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 4990 |
| IN | *City of Mishawaka v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2055 |
| IN | *City of Rockport v.  v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1724 |
| IN | *City of South Bend, Indiana v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2056 |
| IN | *North Newton School Corp v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2057 |

| | Title & Short Case Name | |
|---|---|---|
| KS | Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al. | S.D.N.Y.<br>04 Civ. 2061 |
| KS | City of Bel Aire v. Alon USA Energy Inc., et al. | S.D.N.Y.<br>04 Civ. 2062 |
| KS | City of Dodge City v. Alon USA Energy Inc., et al. | S.D.N.Y.<br>04 Civ. 2060 |
| KS | City of Park City, Kansas v. Alon USA Energy Inc., et al. | S.D.N.Y.<br>04 Civ. 2059 |
| LA | City of Marksville v. Alon USA Energy, Inc., et al. | S.D.N.Y.<br>04 Civ. 3412 |
| LA | Town of Rayville v. Alon USA Energy, Inc., et al. | S.D.N.Y.<br>04 Civ. 03413 |
| MA | Town of Duxbury, et al. v. Amerada Hess Corp., et al. | S.D.N.Y.<br>04 Civ. 01725 |
| NJ | New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp, et al. | S.D.N.Y.<br>04 Civ. 1726 |
| NY | Basso, et al. v. Sunoco, Inc., et al. | S.D.N.Y.<br>03 Civ. 9050 |
| NY | Carle Place Water District v. AGIP, et al. | S.D.N.Y.<br>03 Civ. 10053 |
| NY | County of Suffolk v. Amerada Hess Corp., et al. | S.D.N.Y.<br>04 Civ. 5424 |
| NY | City of New York v. Amerada Hess Corp., et al. | S.D.N.Y.<br>04 Civ. 3417 |
| NY | County of Nassau v. Amerada Hess Corp., et al. | S.D.N.Y.<br>03 Civ. 9543 |

| State | Simplified Cause | Court |
|-------|------------------|-------|
| NY | *Franklin Square Water District v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 5423 |
| NY | *Hicksville Water District v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 5421 |
| NY | *Incorporated Village of Sands Point v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3416 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp, et al.* | S.D.N.Y.<br>04 Civ. 2068 |
| NY | *Port Washington Water District v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3415 |
| NY | *Roslyn Water District v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 5422 |
| NY | *Tonneson, et al. v. Exxon Mobil Corp., et al.* | S.D.N.Y.<br>03 Civ. 8248 |
| NY | *Town of East Hampton v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10056 |
| NY | *Town of Southampton v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10054 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp, et al.* | S.D.N.Y.<br>04 Civ. 2389 |
| NY | *Village of Hempstead v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10055 |
| NY | *Village of Mineola v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10051 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2390 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 1727 |

| | | |
|---|---|---|
| NY | *Water Authority of Western Nassau v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>03 Civ. 9544 |
| NY | *West Hempstead Water District v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10052 |
| NY | *Westbury Water District v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10057 |
| VA | *Buchanan County School Board v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3418 |
| VA | *Patrick County School Board v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2070 |
| VT | *Craftsbury Fire District #2 v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3419 |
| VT | *Town of Hartland v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2072 |
| W.Va | *Town of Matoaka v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 03420 |

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------X
                                                    :
**In re: Methyl Tertiary Butyl Ether**              :
**("MTBE") Products Liability Litigation**          :
                                                    :   ___  **ORDER**
                                                    :
**This Document Relates To:   All Cases**           :       **Master File No. 1:00-1898**
                                                    :       **MDL 1358 (SAS)**
                                                    :       **M21-88**
                                                    :
----------------------------------------------------X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## CASE MANAGEMENT ORDER #6

All case management orders requiring the production of documents or
other information, previously made by the Court, shall remain in full force and
effect.  A copy of this Order shall be filed in each case listed in Appendix A of
Case Management Order #4 ("CMO #4").  In cases subsequently filed in, removed
to, or transferred to this Court as part of MDL 1358, the Clerk shall provide a copy
of this Order to each plaintiff at the time the case is filed in, removed, or
transferred to this Court, and each plaintiff shall promptly serve a copy of this
Order on any defendant not previously a party in one or more of the cases listed in
Appendix A of CMO #4.

1

I.     **Addendum to Case Management Order #4**

This Court issued CMO #4 on October 19, 2004, to govern the course of discovery in this multi-district litigation. The Court referred five discovery disputes to the Special Master, which he resolved on November 12, 2004, through Pre-Trial Order #2 (later modified by Pre-Trial Order #3). Since that time, the parties have asked the Court to amend CMO #4 to incorporate certain agreed upon language and the findings of the Special Master. There is no reason to deny the request. Accordingly, CMO #4 is modified to the extent that follows:

1.     On or before February 15, 2005, the parties shall meet and confer to discuss what additional information is needed to conduct further discovery in *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, No. 04 Civ. 5424, and *United Water of New York, Inc. v. Amerada Hess Corp., et al.*, No. 04 Civ. 2389.[1]

2.     Prior to bringing a dispute to the Special Master for resolution, the parties must meet and confer in good faith to resolve the issues in dispute.

3.     On or before November 15, 2004, the parties shall meet and confer to arrange a schedule for conducting discovery related to defendants'

---

[1]     The Court granted, by letter endorsement, the parties' request to add this language to CMO 4 on December 9, 2004. I have added it again here so that the parties may refer to one document for modifications to CMO 4.

2

conflict preemption motions, it being anticipated that no further discovery is needed with respect to defendants' express preemption motions. Notwithstanding the foregoing, discovery related to preemption issues by the parties may occur prior to November 15, 2004, insofar as such discovery is part of discovery already occurring within that period pursuant to CMO #4. Any disputes with respect to the foregoing shall be brought to the Special Master for resolution.[2]

4.     Defendants are on notice that plaintiffs intend to offer all depositions taken in Prior MTBE Litigations (as defined in CMO #4) against all defendants herein. Therefore, depositions of persons already deposed in Prior MTBE Litigations may be opened for the purpose of supplementing the prior questioning of a deponent, if a party needs to do so. However, the repetition of prior questioning of a deponent is not permitted, and prior depositions shall not be opened for that purpose. Plaintiffs shall promptly supply defendants with the identity – by date, person deposed and litigation in which conducted – of the depositions plaintiffs intend to so offer, so that those depositions will be clearly and specifically known to all parties.

5.     A party wishing to open a deposition in a Prior MTBE

---

[2]     Because plaintiffs requested that *all* of the Special Master's rulings be incorporated into an addendum, I have included those that required action before the date of this Order.

Litigation to supplement the testimony therein shall include, in its deposition notice, a general statement of the nature of the supplementing testimony sought. Any dispute as to whether a need exists to supplement deposition questioning in a particular instance, or whether a deposing party is merely repeating what had already been asked in the prior deposition, shall be brought to the Special Master for resolution.

6.      As a consequence of the above, the parties may not object to depositions taken in a Prior MTBE Litigation being used against them in this litigation simply because they were not parties to the Prior MTBE Litigation, or because the deposition was taken in another litigation.  However, any other objections to the use of such depositions, or any parts thereof, that are permitted under law shall remain available.

7.      Written discovery and production of documents pursuant to CMO #4, Section III.C(1) shall not include, at this time, discovery by defendants about contaminants in plaintiffs' wells other than MTBE or TBA or about how plaintiffs have responded to the presence of those contaminants; provided, however, to the extent that responsive documents kept in the normal course of business by plaintiffs include both MTBE/TBA contaminant information *and* information about other contaminants, the full documents shall be produced

without redaction. This ruling is without prejudice to the right of defendants, at a later time and not in connection with or in anticipation of dispositive motions, and pursuant to any subsequent order from the Court or the Special Master, to obtain discovery regarding other contaminants.

8.      In addition to the issues listed in CMO #4 Sections III.C(1)(a)(i)-(vi), defendants may engage in written discovery as to each plaintiff in the focus cases on the following issues:

a.      Water sampling and laboratory testing results for MTBE and/or TBA for potable water treated and distributed in each plaintiff's water system that is impacted by MTBE and/or TBA for the relevant time period for each of these focus cases;

b.      Well sampling and laboratory testing results for MTBE and/or TBA for each of plaintiffs' wells or water resources, including monitoring wells and potable wells, that are impacted by MTBE and/or TBA; and

c.      Plaintiffs' past and present knowledge of the characteristics of MTBE and/or TBA; the behavior of MTBE and/or TBA in the environment; taste and odor

5

issues relating to MTBE and/or TBA, and any studies

relating to analysis or testing of taste or odor problems

associated with water containing detectable levels of

MTBE and/or TBA; historical policies regarding testing

for MTBE and/or TBA; early knowledge of releases of

MTBE and/or TBA to the water or aquifer system that

supplies plaintiffs' wells; and plaintiffs' knowledge

regarding the alleged dangers posed to their water

systems by gasoline underground storage tanks, and

historical policies and/or practices concerning the sale or

delivery to its customers of water with MTBE and/or

TBA below MCL's.

9.      As to those defendants in focus cases who were parties to the

Prior MTBE Litigations listed in CMO #4, Section III.A(1), plaintiffs may take

discovery on topics (i) through (xvii) thereunder only to fill gaps in the discovery

taken in those Litigations on the same schedule set forth in CMO #4, Section

III.A(2). Documents produced but not copied by plaintiffs in Prior MTBE

Litigations need not be made available (*i.e.*, produced again) to all parties as a

matter of right; provided, however, if plaintiffs so request, the parties shall meet

and confer in good faith to discuss making such documents available in the present proceeding.  In that regard, plaintiffs shall identify the particular categories or collections of documents falling within the topics listed in CMO #4, Section III.A(1) that were produced, but not copied by plaintiffs, in the Prior MTBE Litigations and that plaintiffs are requesting.  Disputes shall be brought to the Special Master for resolution and shall be determined based upon good cause being shown for the requested production.

10. After March 1, 2005, plaintiffs may depose the person(s) most knowledgeable for each defendant in order to obtain clarifications and specific explanations regarding all aspects of each defendant's declaration, which declarations will have been provided in compliance with CMO #4, Section III.B(2).  Plaintiffs may subpoena documents, in accordance with Federal Rule of Civil Procedure 30(b)(6), to aid in obtaining those clarifications and specific explanations, such as representative or exemplar documents or other documents reasonably appropriate for that purpose.  However, plaintiffs may not use the foregoing subpoenas to embark on product tracing at this time.  Any disputes regarding the scope of subpoenaed documents shall be brought to the Special Master for resolution.

11. On or before July 1, 2005, the parties shall meet and confer

to establish, for each focus case, a date by which plaintiffs will specify which wells in their respective systems have been impacted by MTBE and/or TBA and/or which wells are imminently threatened by MTBE and/or TBA so as to cause injury-in-fact to plaintiffs, and to identify such additional discovery by the parties as is needed to specify such threatened and/or impacted wells and to ascertain the factual basis for plaintiffs' designation of such wells.

12.    In the case of *Orange County Water Dist. v. Unocal Corp.*, No. 04 Civ. 4968, plaintiffs shall specify what water resources have been impacted by MTBE and/or TBA or that are imminently threatened by MTBE and/or TBA so as to cause injury-in-fact to the District, and the parties shall identify such additional discovery as is needed to specify such threatened and/or impacted water resources.  Notwithstanding the foregoing, and relying on the good faith of plaintiffs, to whatever extent plaintiffs have a reasonable amount of impact/threat identification information ready for disclosure prior to the meet and confer, they shall disclose same to defendants without waiting for the meet and confer.

13.    The dates chosen for plaintiffs' disclosures of impacted/ threatened wells in each focus case shall be staggered in accordance with the progress of discovery and the particular circumstances of each case; provided, however, that presumptively, albeit without prejudice to change upon application

to the Special Master, the date for *United Water New York, Inc. v. Amerada Hess Corp., et al.*, No. 04 Civ. 2389, shall come first, followed by *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, No. 04 Civ. 5424. Moreover, to the extent that a simultaneous two track disclosure process is feasible without compromising the foregoing, the date for *City of New York v. Amerada Hess Corp., et al.*, No. 04 Civ. 3417, shall come first, followed by *Orange County Water Dist. v. Unocal Corp., et al.*, No. 04 Civ. 4968, on the other track.

## II.    Addendum to Case Management Order #5

Case Management Order #5 ("CMO #5") requires newly added defendants to file Rule 12 motions or other responsive pleadings by January 18, 2005. However, that date does not give the parties enough time to meet and confer regarding potential Rule 12(b)(2) motions. Previous discussions between plaintiffs and the original defendants resulted in a number of voluntary dismissals. Because discussions could result in additional dismissals and avoid some motion practice, CMO #5 is modified to the extent that follows:

1.    The date by which newly added defendants shall file a motion under Rule 12(b)(2) challenging personal jurisdiction is extended to February 18, 2005. The newly added defendants shall file other Rule 12 motions or responsive

pleadings by January 18, 2005. No newly added defendant shall waive or otherwise prejudice its right to file personal jurisdiction motions under Rule 12(b)(2) by filing other Rule 12 motions or responses, responding to discovery authorized by the Court or otherwise participating in MDL 1358 proceedings.

2.     Any newly added defendant which contends that it was improperly named or that personal jurisdiction over it is lacking shall provide to counsel for plaintiffs the factual basis for its contentions by January 18, 2005. The parties thereafter shall meet and confer in an effort to resolve as many disputes as possible.

3.     For personal jurisdiction disputes that are not resolved, the following schedule shall apply:

> a.     February 18, 2005: Defendants shall file their motions and supporting briefs, affidavits, and exhibits.
>
> b.     March 18, 2005: Plaintiffs shall file their responses.
>
> c.     April 4, 2005: Defendants shall file their replies.

4.     The page limitations and the methodology for filing briefs established by this Court for personal jurisdiction motions at the May 11, 2004 status conference shall apply.

5.     In the case of *Orange County Water Dist. v. Unocal Corp., et*

*al.*, No. 04 Civ. 4968, Rule 12 motions are now due on February 1, 2005.

Plaintiffs shall file responses by March 4, 2005, and defendants shall file replies

by March 18, 2005.


## III.   Miscellaneous

1.   The limits set forth in Rules 30 and 33 of the Federal Rules of

Civil Procedure shall not apply in this MDL.  Any Disputes regarding the number

of interrogatories or the number of depositions shall be decided on a case by case

basis by the Special Master.

2.   Defendants may respond to the common allegations of the

complaints in a Master Answer in accordance with Section 40.52(6)(b) of the

Manual for Complex Litigation (Fourth).  However, they must also address case-

specific allegations to the extent they exist.  Newly added defendants that intend to

join in the filing of a Master Answer are not bound by the previously set deadline

for responsive pleadings.  The Master Answer is due thirty (30) days after the

Court's ruling on the pending 12(b)(6) motions to dismiss.[3]

---

[3]    Pending before the Court are fourteen (14) motions to dismiss
pursuant to Rule 12(b)(6).  The motions were made and briefed by state:
Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts,
New Hampshire, New Jersey, New York, Vermont, Virginia, and West Virginia.
These motions will be resolved in an omnibus opinion and order.

3.     Defendants are not precluded from arguing, at the appropriate time, both prongs of their conflict preemption defense – to wit:  (1) it would be impossible for defendants to comply with both the state law sought to be imposed and the federal requirements (impossibility); or (2) the state law sought to be imposed would prove an obstacle to the achievement and execution of the full purposes and objectives of Congress (frustration of purpose).

4.     The parties are permitted to take discovery regarding the quantity of oxygenates available to implement the Reformulated Gasoline Program.  This discovery is aimed at preparing (and defending against) defendants' potential motion for summary judgment based on the impossibility of complying with both state and federal requirements.  At this time, they are not permitted to take discovery regarding frustration of purpose.

5.     To the extent there are no genuine issues of material fact, defendants may bring a summary judgment motion based on the impossibility prong of conflict preemption.  They may argue frustration of purpose only to the extent it is based on the same factual predicate as the impossibility argument.

6.     The parties shall meet and confer regarding the preservation of "current" back-up tapes ( *i.e.*, back-up tapes that are being routinely recycled in the ordinary course of business).  They should use Section A of the Court's

12

Proposed Document Retention Questionnaire ("Questionnaire") as a starting point for discussions.

7.      Defendants shall submit responses to Sections B and C of the Questionnaire to the Court and plaintiffs by February 3, 2005.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 14, 2005

13

**-Appearances-**

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

14

S Alperi

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------X
          :

In re: Methyl Tertiary Butyl Ether     :
("MTBE") Products Liability Litigation   :
          :      **ORDER**
          :
This Document Relates To:   All Cases   :    **Master File No. 1:00-1898**
          :
          :      **MDL 1358 (SAS)**
          :      **No. M21-88**
----------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## CASE MANAGEMENT ORDER #7

The parties having "met and conferred" pursuant to the requirement set forth in CMO #4

Sec.III.B.2.(b), and, having reached agreement on a date for defendants' production for certain

declarations in *United Water New York, Inc v. Amerada Hess Corp., et al.*, 04 Civ. 2389,

pursuant to that Section:

IT IS HEREBY ORDERED that on or before March 31, 2005, each defendant, to the

extent it is named as a defendant in *United Water New York, Inc v. Amerada Hess Corp., et al.*,

04 Civ. 2389, shall provide a declaration pursuant to the requirements set forth in CMO#4 Sec.

III.B.2.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
         March 7, 2005

**-Appearances-**

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

K

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 8 2001

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Theodore Holten, et al. v. Chevron U.S.A., Inc., et al., D. New Jersey, C.A. No. 3:00-4703*

## BEFORE WM. TERRELL HODGES, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, MOREY L. SEAR,[*] BRUCE M. SELYA,[*] JULIA SMITH GIBBONS AND D. LOWELL JENSEN, JUDGES OF THE PANEL

## ORDER VACATING CONDITIONAL TRANSFER ORDER

Presently before the Panel is a motion by certain defendants,[1] pursuant to Rule 7.4, R.P.J.P.M.L., 192 F.R.D. 459, 468-69 (2000), to vacate the Panel's order conditionally transferring this action (*Holten*) to the Southern District of New York for inclusion in the Section 1407 proceedings occurring there in this docket. The *Holten* plaintiffs also oppose inclusion of *Holten* in MDL-1358 pretrial proceedings.

On the basis of the papers filed and the hearing held, the Panel is persuaded that inclusion of *Holten* in MDL-1358 pretrial proceedings is not warranted. *Holten* is an individual action brought by more than 50 families who are residents or former residents of Bayville, New Jersey, seeking compensatory damages and other relief for MTBE and/or benzene toluene ethybenzene and xylene (BTEX) well water contamination emanating from one local gas station's underground storage tanks and piping and dispensing systems. Most MDL-1358 actions, on the other hand, are purported class actions which focus on claims by persons or entities whose well water has not yet tested positive for the presence of MTBE, i.e., an uncontaminated well class. The Panel also notes that all *Holten* parties along with several MDL-1358 oil company defendants oppose inclusion of *Holten* in Section 1407 proceedings. Suitable alternatives to inclusion of *Holten* in Section 1407 proceedings are available as a means of minimizing the possibility of duplicative discovery and/or conflicting pretrial rulings on any common issues relating to MTBE. *See, e.g., In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (J.P.M.L. 1978).

---

[*] Judges Sear and Selya took no part in the decision of this matter.

[1] Defendants in *Holten*: Chevron U.S.A., Inc.; Gulf Oil Corp.; and Cumberland Farms, Inc. Defendants in previously centralized MDL-1358 actions: Equilon Enterprises LLC; Motiva Enterprises LLC; Shell Oil Company; Shell Oil Products Company; Texaco Inc.; and Texaco Refining and Marketing Inc.

- 2 -

IT IS THEREFORE ORDERED that the Panel's conditional transfer order entered with respect to the action entitled *Theodore Holten, et al. v. Chevron U.S.A., Inc., et al.*, D. New Jersey, C.A. No. 3:00-4703, is hereby VACATED.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

L

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | **MDL DOCKET NO. 1358** |
| | ) | |
| | ) | This Document Relates to: |
| | ) | |
| | ) | *James Quinn, et al. v. Shell Oil, Inc., et al.* |
| | ) | Case No. 3:04-5180 (N.D. Cal.) |
| **IN RE:** | ) | |
| | ) | *Hope Koch, et al. v. John R. Hicks, et al.* |
| **METHYL-TERTIARY BUTYL ETHER** | ) | Case No. 1:04-3345 (D. Md.) |
| **PRODUCTS LIABILITY LITIGATION** | ) | |
| | ) | **DECLARATION OF MATTHEW T.** |
| | ) | **HEARTNEY SUPPORTING** |
| | ) | **CERTAIN DEFENDANTS'** |
| | ) | **CONSOLIDATED RESPONSE** |
| | ) | **OPPOSING ALL MOTIONS TO** |
| | ) | **VACATE CONDITIONAL** |
| | ) | **TRANSFER ORDER (CTO-11)** |

I, Matthew T. Heartney, declare and state:

1.    I am a member of Arnold & Porter LLP ("A&P"). A&P was counsel for defendant Atlantic Richfield in *South Tahoe Public Utility District v. Atlantic Richfield Company, et al.* (Superior Court of the State of California, County of San Francisco Case No. 999128) ("*South Tahoe*"), and is counsel for defendant BP Products North America Inc. in *James Quinn, et al. v. Shell Oil, Inc., et al.* (U.S. District Court for the Northern District of California Case No. C 04 5180 ("*Quinn*") and *Douglas Shannon v. Taylor Investments, LLC et al.* (U.S. District Court for the Northern District of California Case No. C 04 5179) ("*Shannon*"). I have personal and firsthand knowledge of the facts hereinafter set forth, and if called as a witness I could and would competently testify to the following.

2.    Discovery in the *South Tahoe* litigation was completed more than three years ago. Since that time much additional information has become available regarding such important topics as the biodegradability of MTBE and its tendency to disappear from the environment through natural attenuation (*see, e.g.,* Wilson, R.D., D.M. Mackay, and K.M. Scow, (2002), *In situ MTBE biodegradability supported by diffusive oxygen release*, Environmental Science & Technology 36, no. 2: 190-199), the generally low concentrations and lack of danger to public health posed by nearly all MTBE detections (*see, e.g.*, Statement of Robert Hirsch, Associate Director For Water, U.S. Geological Survey, Before United States House Of Representatives, Committee On Energy and Commerce, November 1, 2001), and the existence of effective remediation techniques (of which there is now a large literature). For these, among other, reasons additional

discovery beyond that conducted in *South Tahoe* will be required to litigate cases that have been transferred to MDL 1358, including *Shannon* and *Quinn*.

3.     To date there have been no pretrial activities in *Quinn*, nor has discovery in *Quinn* commenced. While another matter involving the Redwood Mobile Home Park in Marin County, California (*Mike DeFrancesco, et al. v. Taylor Investments, LLC, et al.* (Superior Court for the State of California, County of Marin Case No. CV 023466)) ("*DeFrancesco*") recently settled, none of the *Quinn* plaintiffs were parties to *DeFrancesco*. Additional discovery in *Quinn* will necessarily have to be conducted with respect to the specific claims of these plaintiffs on a host of issues, including the extent to which they might have consumed drinking water from the Redwood Mobile Home Park well, the existence of any alleged injuries related to such consumption, and the purported basis for avoiding a statute of limitations bar to their recently filed claims.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of April, 2005 at Los Angeles, California.

MATTHEW T. HEARTNEY

355450

- 3 -