MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 31 2005

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | **MDL Docket No. 1358** |

| | |
|---|---|
| EDITH QUICK, et al., | ) United States District Court, |
| | ) Central District of Illinois, Urbana Division, |
| Plaintiffs, | ) C.A. No. 2:05-2072 |
| v. | ) (Judge Michael P. McCuskey) |
| | ) |
| SHELL OIL COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SHELL OIL COMPANY'S OPPOSITION TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-13)**

Defendant Shell Oil Company submits this opposition to plaintiffs' motion to vacate

Conditional Transfer Order 13 ("CTO-13"). Shell urges the Panel to transfer *Edith Quick, et al.,*

*v. Shell Oil Company, et al.*, Case No. 2:05-2072 (C.D. Ill.) to the Southern District of New York

for coordinated pretrial proceedings as part of MDL 1358 to receive the benefits of convenience,

justice, and efficiency resulting from centralized proceedings under a judge experienced with the

ongoing MTBE litigation. Shell also asks the Panel to deny plaintiffs' attempt to defeat transfer

through their alternative request to stay CTO-13 to allow the transferor district court to rule upon

plaintiffs' pending motion for remand.

**OFFICIAL FILE COPY**

IMAGED JUN 1 2005

1

## INTRODUCTION

The Panel already has transferred over sixty MTBE actions to MDL 1358 since February 2004 based on statutory criteria found at 28 U.S.C. § 1407(a) that squarely apply to *Quick v. Shell*. *Quick* raises the same common questions of fact—what defendant knew and represented about MTBE, whether gasoline containing MTBE is a defective product, and whether plaintiffs' water was contaminated by MTBE—as the existing MDL 1358 cases. Moreover, transfer of *Quick* would eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. Indeed, by issuing CTO-13, the Panel has already preliminarily determined that transferring this "tag-along" action to MDL 1358 in the United States District Court for the Southern District of New York will serve "the convenience of the parties and witnesses and will promote just and efficient conduct" of this litigation. *See* 28 U.S.C. § 1407(a).

It is therefore significant that plaintiffs' motion to vacate CTO-13 does not seriously address the Section 1407(a) criteria for issuing transfer orders. Instead, plaintiffs make two arguments that are simply misplaced. First, plaintiffs ask the panel, in effect, to find that the case should be remanded to state court—a motion not before the Panel, and an issue irrelevant to the merits of transfer under Section 1407(a) in any event. Second, plaintiffs seek a stay from the Panel so that the transferor court may rule on their pending (and meritless) remand motion, which is, of course, just another way of asking this court to improperly place the remand cart before the transfer horse.

Plaintiffs' extended discussion of their motion to remand is irrelevant to this motion to vacate CTO-13. The remand motion (which is based on a flat misstatements of fact) will be decided in due course by the transferee court. The Panel has repeatedly held, however, that the pendency of a remand motion has no effect on whether transfer should be granted. Indeed, the Panel has repeatedly held that a motion to remand can be presented to and decided by the transferee judge. In fact, such has been the case with MDL 1358, where the transferor judge, Judge Scheindlin, has regularly ruled on the propriety of subject matter jurisdiction in the MTBE

2

litigation and, in fact, is the only district court judge nationwide to address the main jurisdictional issues presented by plaintiffs' allegations in the *Quick* case

Plaintiffs' brief offers no cogent reason to deny or delay transfer. The motion to vacate CTO- 13 should be denied.

## BACKGROUND

### I.   CREATION OF MDL 1358

The Panel created MDL 1358 on October 10, 2000 to centralize two putative class actions brought by private well owners. (MTBE Transfer Order, Ex. A). The Panel found that the actions involved two common questions of fact: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." *Id.* The Panel explained that centralization would be more convenient for the parties and witnesses, promote justice and efficiency, avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. *Id.*

In reaching these conclusions, the Panel explicitly found that individual questions for each location did not weigh against Section 1407 proceedings. *Id.* at 1-2. Rather, the Panel found that putting the cases before a single judge would have the "salutary effect" of allowing the coordination of both non-common and common issues. *Id.* Pursuant to the Transfer Order, Judge Shira Scheindlin of the Southern District of New York became the transferee judge for the MTBE cases.

### II.   PROCEEDINGS IN MDL 1358

Starting in 2000, Judge Scheindlin has spent several years managing MDL 1358, becoming extensively familiar with the facts and legal theories presented by MTBE cases. The MDL 1358 Court ruled on various substantive motions, including defendants' motions to dismiss and plaintiffs' motion for class certification. Judge Scheindlin also oversaw class certification and other discovery, including the creation of a document depository in New York. Judge

Scheindlin entered a document preservation order, oversaw electronic and paper document production, and had the parties create an MDL 1358 website.

Beginning in Fall 2003, a new round of MTBE cases was filed in state courts around the nation, seeking to impose conflicting state standards on refiners' use of MTBE in gasoline to satisfy federal requirements. In many of these cases, the plaintiffs are municipalities or water authorities but some still are brought by private well owners. The allegations and claims remain the same as in the original MDL 1358 actions. The complaints assert product liability, nuisance, trespass, negligence and other claims. All of the complaints allege that defendants misrepresented the nature of MTBE and that as a result plaintiffs' water supplies have been (or are threatened with becoming) contaminated by gasoline with MTBE.

In response to this mass of MTBE cases, defendants began removing the cases to federal court with the goal of having a single court issue uniform rulings. Immediately after removal, the defendants began filing tag-along notices alerting the Panel that the new actions were subject to transfer pursuant to the October 2000 Order in MDL 1358. This Panel began issuing CTOs in February 2004 and has continued through the present day, with thirteen CTOs being issued thus far. Over sixty cases have been transferred to Judge Scheindlin as presiding judge of MDL 1358 based on the Panel's finding that the MTBE cases involve common questions of fact with actions previously transferred.

Since receiving this new wave of MTBE actions, Judge Scheindlin has promptly undertaken the management of these cases. Judge Scheindlin has held several status conferences, issued rulings on various plaintiffs' motions for remand, entered several Case Management Orders, considered motions to dismiss on personal jurisdiction, appointed a Special Master to manage discovery, and selected four "focus cases" to help guide the resolution of the scores of other pending cases. In short, the MDL 1358 Court has extensive expertise in managing all aspects of MTBE cases such as *Quick v. Shell*.

## ARGUMENT

**I.    *QUICK v. SHELL* CLEARLY IS A TAG-ALONG ACTION THAT SHOULD BE TRANSFERRED TO MDL 1358**

Section 1407 provides that "civil actions involving one or more common questions of fact...pending in different districts...may be transferred to a district for coordinated or consolidated pretrial proceedings...by the judicial Panel upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions" 28 U.S.C. §1407(a).  The issues in *Quick v. Shell* fit squarely within the parameters of MDL 1358, and transfer will serve the convenience of the parties, prevent extensive duplicative discovery, avoid inconsistent pretrial rulings, and promote judicial economy.

> **A.    *Quick v. Shell* Presents The Same Common Questions Of Fact As The Other Cases That Encompass MDL 1358**

Section 1407 states that actions with "one or more common questions of fact" may be consolidated for MDL proceedings, and the Panel has confirmed that this requirement should not be construed to require a showing of strict identity of all issues and parties in different cases. *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F.Supp. 565 (J.P.M.L. 1975) (transfer warranted where two actions presented "(c)omplex common questions of fact"), *citing In re Gypsum Wallboard*, 388 F.Supp. 565, 511 (J.P.M.L. 1975); *In re Zyprexa Prods. Liability Litig.*, 314 F.Supp.2d 1380, 1381 (J.P.M.L. 2004).

The common questions of fact identified by the Panel in the MTBE Transfer Order are presented in plaintiffs' Third Amended Complaint in *Quick v. Shell*.  As stated by the Panel, those common questions include "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (MTBE Transfer Order, Exhibit A).

Plaintiffs' Third Amended Complaint alleges that Shell is liable due to its design, manufacture, and formulation of gasoline containing MTBE. Several allegations in the plaintiffs' strict liability count clearly demonstrate the breadth of the scope of the new factual issues that arise out of plaintiffs' newly pled attack on Shell's decision to put MTBE into gasoline; specifically:

## COUNT XXXIX: STRICT LIABILITY

246.   Defendant Shell Oil designed, formulated, compounded, manufactured, packaged, merchandised, advertised, promoted, distributed, and/or sold MTBE and/or TBA which is polluting groundwater in the area of the above-described pipeline leak(s) and spill(s).

247.   Shell Oil represented, asserted, claimed and warranted that gasoline containing MTBE could be used and distributed in the same manner as gasoline not containing MTBE and/or TBA, and that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

248.   MTBE and/or TBA, and gasoline containing MTBE and/or TBA, are defective products because, among other things:

(a)   The design and manufacture of these products was defective

(b)   The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment;

(c)   MTBE and/or TBA cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

(d)   Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders drinking water unfit for drinking water;

(e)   MTBE and TBA pose significant threats to the public health and welfare

(f)   Shell Oil failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA, including but not limited to the risks of groundwater contamination;

(g)    Shell Oil failed to conduct reasonable, appropriate or adequate studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA; and

(h)    Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

(See Plaintiffs' Third Amended Complaint, at ¶¶246-48, attached as Exhibit A to Shell Oil Company's Notice Of Related, Tag-Along Action). Further, plaintiffs allege that they were damaged by this conduct because MTBE-containing gasoline has been released from the North Line pipeline in Limestone Township, Illinois from November 1988 to the present. (See *Id.* at ¶¶10, 46, 47, and 245). Therefore, there is no doubt that *Quick v. Shell* presents an array of substantial common questions of fact with the actions already pending in MDL 1358.[1]

### B.    Transfer Of *Quick v. Shell* Will Serve The Convenience Of The Parties And Witnesses And Prevent Duplicative Discovery

Actions that raise substantial questions of fact that overlap with the scope of an existing MDL should be transferred for coordinated proceedings for the convenience of the parties and witnesses and to avoid duplicative discovery. *In re Data Gen. Corp. Antitrust Litig.*, 510 F.Supp. 1220, 1227 (J.P.M.L. 1979) (transferring cases under CTO to "avoid duplicative discovery and prevent waste of resources by the parties, their counsel and the courts."); *In re Armored Car Antitrust Litig.*, 462 F.Supp. 394, 396 (J.P.M.L. 1978) (transferring action pursuant to CTO to eliminate the potential for duplicative discovery arising out of common factual questions related to the existence, scope and effect of an alleged conspiracy); *In re "Fine Paper" Antitrust Litig.*, 453 F.Supp. 118, 121 (J.P.M.L. 1978) (transferring cases covered by CTO was necessary to avoid duplicative discovery related to "numerous substantial questions of fact").

---

[1]  Slight factual differences are an insufficient basis to deny transfer because transferee judges are empowered to determine whether such differences warrant accommodation when coordinating pretrial proceedings. *See, e.g., In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, 303 F.Supp.2d 1377, 1379 (J.P.M.L. 2004); *In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 299 F.Supp. 1403, 1406 (J.P.M.L. 1969). In addition, the Panel has noted on several occasions that discovery with respect to any case-specific issues can proceed concurrently with discovery on common issues. *See In re Zyprexa Products Liab. Litig.*, 314 F.Supp.2d 1380, 1382 (J.P.M.L. 2004); *In re Ephedra Prods. Liab., Litig.*, 314 F.Supp.2d 1373, 1375 (J.P.M.L. 2004); *In re Smith Patent Litig.*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976). Here, of course, plaintiffs' specific allegations that Shell manufactured and sold gasoline with MTBE without disclosing risks to the public places *Quick* squarely within MDL 1358.

The same convenience to parties and witnesses and avoidance of duplicative discovery that supported the creation of MDL 1358 applies to the transfer of *Quick v. Shell*. There has been almost no discovery to date in *Quick* on plaintiffs' new products liability theory. Shell Oil Company is a defendant in an array of cases that already have been transferred to MDL 1358 on this theory, and is thus faced with substantial overlapping discovery on many factual issues that are triggered in plaintiffs' Third Amended Complaint in *Quick*. All such discovery should proceed in a coordinated fashion in the MDL 1358 Court. Indeed, Judge Scheindlin already is managing significant MTBE discovery. Having document production and depositions occur in a single centralized proceeding will avoid duplicative discovery and be more convenient for parties and witnesses than producing the same documents and witnesses over and over.

### C.  Transfer Of *Quick v. Shell* Is Necessary For The Efficient Conduct Of The Litigation, Avoiding Inconsistent Pretrial Rulings, And Judicial Economy

There is no need to consume judicial resources by having multiple courts each familiarize themselves with the common issues presented in cases that could be transferred pursuant to Section 1407, especially where one judge already is well versed in the facts and law of the cases and is thus positioned to ensure consistent pretrial rulings on reoccurring disputes amongst the parties. *See, e.g., In re Crown Life Ins. Co. Premium Litig.*, 178 F.Supp.2d 1365, 1366 (J.P.M.L. 2001)(noting that "judge's familiarity with this [MDL] docket furthers the expeditious resolution of the litigation taken as a whole"); *In re Sugar Indus. Antitrust Litig. (East Coast)*, 437 F.Supp. 1204, 1208 (J.P.M.L. 1977) (transferee judge who had become "thoroughly familiar with all the issues in this complex litigation" was in the best position to fully consider ramifications of resolution of particular issues upon entirety of MDL proceedings).

Judge Scheindlin is well versed in the facts and law of the cases that have been transferred to MDL 1358, and already has considered motions to remand MTBE cases for lack of subject matter jurisdiction and motions to dismiss for lack of personal jurisdiction over certain parties and for failure to state a claim. Shell anticipates the need to file motions for summary judgment and other motions for *Quick* that largely will duplicate motions that will be filed for the

cases already transferred to MDL 1358. Judge Scheindlin's Case Management Orders establish procedure for such motions as well as for other summary judgment motions. Filing these motions in multiple courts rather than only before Judge Scheindlin creates a high and unnecessary risk of producing conflicting rulings. Moreover, allowing *Quick v. Shell* to proceed separately from MDL 1358 likely will result in conflicting discovery schedules and case management orders. Transfer of *Quick v. Shell* is necessary to efficiently conduct the litigation, to avoid inconstant pretrial rulings, and to promote judicial economy.

## II.   NONE OF THE ARGUMENTS RAISED IN PLAINTIFFS' MOTION TO VACATE CTO-13 WEIGH IN FAVOR OF DENYING OR DELAYING TRANSFER OF *QUICK v. SHELL* TO MDL 1358

Plaintiffs' motion to vacate CTO-13 provides no arguments that bear upon whether *Quick v. Shell* should be transferred to MDL 1358. The vast majority of the motion is merely a copy of plaintiffs' motion for remand of *Quick v. Shell* from the Central District Court of Illinois back to Kankakee County, Illinois, where it pended prior to plaintiffs' addition of the MTBE strict liability allegations. However, this Panel will pass only upon the issue of transfer of *Quick* to MDL 1358, not remand, and the Panel has ruled that the pendency of a motion for remand does not weigh in favor of vacating a conditional transfer order. In fact, the Panel applied this uncontroversial point of law in connection with MDL 1358 in its refusal to vacate CTO-4 and CTO-5 on June 16, 2004.

The remainder of plaintiffs' motion to vacate asks the Panel to stay any ruling on transfer in order to allow the Central District of Illinois to rule upon plaintiffs' pending motion for remand. But the Rules of Procedure of The Judicial Panel of Multidistrict Litigation clearly provide that the Central District of Illinois, as a transferor court, currently has and will retain jurisdiction over *Quick v. Shell* unless (and until) it is transferred. Moreover, plaintiffs' motion for remand raises a vast array of questions of fact and law that are common to the underpinnings of Judge Scheindlin's comprehensive series of jurisdictional rulings in MDL 1358, and thus only reaffirms that *Quick v. Shell* should be transferred to MDL 1358.

### A.    Transfer Should Not Be Affected By Plaintiffs' Motion To Remand

Plaintiffs should not be allowed to shift discussion away from the only question properly before the Panel—whether transfer is appropriate under Section 1407(a)—to the merits of plaintiffs' remand motion, which is not before the Panel.  As the Panel has repeatedly stated, the pendency of a remand motion has no bearing on whether transfer should be ordered.  A transferee judge following a Section 1407 transfer may make any order that could have been made by the transferor judge in the absence of transfer. *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 495 (J.P.M.L. 1968).  A remand motion can be decided by a transferee judge, and thus the Panel for decades consistently has rejected attempts, like plaintiffs', to defeat or delay transfer on the basis of pending remand motions.

In *In re Antibiotic Drugs*, 299 F.Supp. 1403, 1405 (J.P.M.L. 1969), the Panel explained that the pendency of a motion to remand to state court "has no bearing on a motion to transfer." *Id., quoting Chicago, R. I. & P.R. Co. v. Igoe*, 212 F.2d 378, 382 (7th Cir. 1954).  "The real question," the Panel held, "is whether this action lacks commonality of factual questions which permeate other cases." *Id.* at 1405-06.  Since that case, like this one, did not lack such commonality, the Panel transferred it notwithstanding the pending remand motion.  Similarly, in *In re Prof'l Hockey Antitrust Litig.*, 369 F.Supp. 1117, 1117 (J.P.M.L. 1974), the action had been removed from a Texas state court to federal court, and the plaintiff opposed "transfer on the ground that the remand motion should be decided by the Texas federal court."  The Panel rejected this argument, holding that "[i]nasmuch as the transferee judge has the power to rule on the question of remand, we perceive no reason to delay transfer." *Id.; see also In re Crown Life Ins. Co. Premium Litig.*, 178 F.Supp.2d 1365, 1366 (J.P.M.L. 2001) (granting transfer and holding "any anticipated motion to remand this action to Alabama state court can be presented to and decided by the transferee judge"); *In re Franklin Nat'l Bank Sec. Litig.*, 393 F.Supp. 1093, 1095 (J.P.M.L. 1975) ("We see no reason for delaying transfer of [the action] because it certainly

shares a commonality with the other actions in this litigation and the transferee judge can easily resolve the remand issue.")

The Second Circuit Court of Appeals has engaged in perhaps the most extensive discussion of this issue. In *Ivy v. Diamond Shamrock Chems. Co.*, 901 F.2d 7 (2d Cir. 1990), the plaintiffs filed their lawsuit in Texas state court claiming harm from exposure to Agent Orange used during the Vietnam War. Although their complaint expressly disavowed any federal-law basis for the suit, the defendants removed the case to the Eastern District of Texas and asked the MDL Panel to transfer the case to the Eastern District of New York, where MDL 388 was pending, for coordinated pretrial proceedings. The Panel issued a conditional transfer order to this effect. *Id.* at 8. Plaintiffs moved to vacate the conditional transfer order and also moved in the Eastern District of Texas to remand the action to state court. The Panel denied the plaintiffs' motion to vacate and transferred the case to the Eastern District of New York, finding that plaintiffs' motion to remand could be heard and decided by the transferee judge. *Id.* at 9.

Plaintiffs appealed this decision to the Second Circuit Court of Appeals, which upheld the Panel's transfer order. The Court held: "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of the case, including issues relating to a motion to remand." *Id.* at 9, *citing In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F.Supp. 812, 813 n. 1 (J.P.M.L. 1973)(per curiam), *and* 28 U.S.C. § 1407. It further held:

> The jurisdictional issue is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years. Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the transferee court.

*Id.* (internal citations omitted).

Significantly, plaintiffs' motion to vacate CTO-13 is not the first time that the Panel has adjudicated efforts to prevent the efficient coordination of MTBE cases.  On June 16, 2004, the Panel recognized that CTO-4 and CTO-5 for MDL 1358 should not be vacated due to the pendency of jurisdictional objections, stating:

> We note that any pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. Oct. 10, 2000).

(See Exhibit B, MTBE Transfer Order, at p.2).

Similarly here, the merits of plaintiffs' pending motion for remand of *Quick* back to state court may be heard by the transferee judge for MDL 1358.  Moreover, even a brief review of plaintiffs' motion for remand and Shell Oil Company's opposition brief (See Exhibit C, Shell Oil Company's Opposition To Plaintiffs' Motion For Remand) demonstrates that the remand issue is replete with questions of fact and law that were addressed in Judge Scheindlin's prior jurisdictional rulings in connection with MDL 1358.[2]  Indeed, transfer to the Southern District of New York is even more appropriate given the pendency of plaintiffs' motion for remand and Judge Scheindlin's familiarity with the federal officer removal statute and the jurisdictional issues surrounding the use of MTBE in gasoline.  Plaintiffs' motion for remand does not raise any unique jurisdictional issues.  Rather, the issues raised in the motion are virtually identical, and the facts relied upon common, to Judge Scheindlin's previous jurisdictional rulings in MDL 1358. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 34 F.Supp.2d 147 (S.D.N.Y. 2004) ("MTBE III") and *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 34 F.Supp.2d 386 (S.D.N.Y. 2004) ("MTBE V").  Plaintiffs' jurisdictional objections can be heard and resolved by Judge Scheindlin and may be reviewed at the appellate level in due

---

[2] Without dwelling on the arguments that confirm that federal subject matter jurisdiction exists for *Quick v. Shell*, it is worth noting that plaintiffs' primary objection to removal is premised upon a blatant misrepresentation of the scope of the allegations set forth in plaintiffs' Third Amended Complaint in *Quick v. Shell*; specifically, plaintiffs repeatedly and inexplicably refuse to acknowledge that their MTBE strict product liability allegations are not limited merely to 1988, but rather span from 1988 to present as stated in Paragraphs 10, 46, and 47 of the Third Amended Complaint.

course if necessary, and consistency as well as economy will thus be served.  As in *Ivy*, the common jurisdictional issues weigh only further in favor of transfer of *Quick* to MDL 1358. *Accord, Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F.Supp.2d 1378, 1380 (J.P.M.L. 2003)(Section 1407 transfer of multiple actions with pending jurisdiction objections to MDL provided "…the additional advantage of streamlining treatment of the remand issue.")

### B.   Plaintiffs' Motion To Stay CTO-13 To Allow The Central District Of Illinois To Rule On Remand Should Be Denied

Plaintiffs' motion to stay CTO-13 until the transferor court rules upon remand (Motion to Vacate, at pp.18-20) should similarly be rejected.  Plaintiffs make plain that they seek this stay because they want the remand issue to be decided before the transfer issue; thus, it should be rejected for all the reasons stated above.  Put simply, decades of practice and procedure before this Panel, including in this very case, make plain that the pendency of a remand motion has no bearing on whether transfer should be ordered.

The three cases cited by plaintiffs to support their motion for a stay are inapposite at best. *Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F. Supp. 2d 694 (S.D. W.Va. 1999) and *General Elec. Co. v. Byrne*, 611 F.2d 670 (7th Cir. 1979) say only that the transferor court is free to act on a motion for remand in the absence of a stay.  That does not at all mean that the transferor court must do so; to the contrary, Shell has filed a motion to stay with that court that is now pending along with the remand motion.

*Tramonte v. Chrysler Corp.*, No. Civ.A. 95-2109, 1999 WL 440456  (E.D.La. June 28, 1999) is truly the exception that proves the rule; there, the case had been pending in federal court for four years with a "tortured procedural history" that included a protracted appeal predicted upon a district court judge's allegedly improper refusal to recuse herself, *see Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998) but, for unexplained reasons, had avoided any determination of whether federal jurisdiction existed for those four years. *Tramonte v. Chrysler Corp.*, No. Civ.A. 95-2109, 1999 WL 440456 at *8.  Under those unique circumstances, the Panel advised the transferor court of its preference that the motion for remand be ruled upon

prior to the argument date scheduled for the transfer motion. *Id*.  In stark contrast, *Quick* was never in federal court until plaintiffs received leave to file their Third Amended Complaint which for the first time introduced MTBE product liability allegations, and now has pended only for a matter of weeks in federal court. (See Notice of Removal, at ¶¶1-6, attached as Exhibit A to Shell Oil Company's Notice Of Related, Tag-Along Action). Furthermore, as stated above, plaintiffs' motion for remand contains no unique jurisdictional issues, but rather falls within the scope of the jurisdictional rulings already issued in MDL 1358 by Judge Scheindlin.

## **CONCLUSION**

*Quick v. Shell* fits squarely within the parameters of MDL 1358, and transfer will serve the convenience of the parties, prevent extensive duplicative discovery, avoid inconsistent pretrial rulings, and promote judicial economy.  For these reasons, Shell Oil Company requests that the Panel enter an order denying plaintiffs' motion to vacate CTO-13 and alternative request for an extension of the existing stay of CTO-13 to allow the transferor district court to rule upon plaintiffs' pending motion for remand, and transferring *Quick v. Shell* to MDL 1358.

Respectfully Submitted,

Counsel for Defendant, Shell Oil Company,

By: _____

Anthony F. King
John W. Kampman
Michael L. Williams
WALLACE KING DOMIKE &
     BRANSON, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007
(202) 204-3715
(202) 204-1001 (Fax)


John E. Galvin
Michael P. Downey
Richard B. Korn
FOX GALVIN, LLC
One Memorial Drive, Eighth Floor
St. Louis, MO 63102
(314) 588-7000
(314) 588-1965 (Fax)

Christopher W. Bohlen
BARMANN, KRAMER & BOHLEN, P.C.
200 East Court Street, Suite 502
P. O. Box 1787
Kankakee, IL 60901
(815) 939-1133
(815) 939-0994 (Fax)

EXHIBIT A

*1410/00*

# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John F. Nangle
United States District Court
Southern District of Georgia

**MEMBERS:**
Judge Louis C. Bechtle
United States District Court
Eastern District of Pennsylvania

Judge John F. Keenan
United States District Court
Southern District of New York

Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

Judge Morey L. Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States District Court
Western District of Tennessee

**DIRECT REPLY TO:**
Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

> RECEIVED
> OCT 13 2000
> WALLACE, KING, MARRARO
> BRANSON, PLLC

October 10, 2000

TO INVOLVED COUNSEL

Re:  MDL-1358 -- In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

> *David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-370
> *David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-371
> *Donna Berisha, et al. v. Amerada Hess Corp., et al.*, S.D. New York, C.A. No. 1:00-1898

Dear Counsel:

I am enclosing a copy of a Panel order filed today in the above-referenced matter.

The <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 192 F.R.D. 459 (2000), and specifically, Rules 1.1, 7.4 and 7.5, refer to "tag-along" actions. Please familiarize yourself with these <u>Rules</u> for your future reference. With regard to Rule 7.5, you need only provide this office with a copy of the complaint which you feel qualifies as a "tag-along" action and informally request that our "tag-along" procedures be utilized in transferring the action to the transferee district. If you have any questions regarding procedures used by the Panel, please telephone this office.

Very truly,

Michael J. Beck
Clerk of the Panel

By *Jacinta L. Shore*
Deputy Clerk

Enclosure

JPML Form 35

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 0 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-370
*David England, et al. v. Atlantic Richfield Co., et al.*, S.D. Illinois, C.A. No. 3:00-371
*Donna Berisha, et al. v. Amerada Hess Corp., et al.*, S.D. New York, C.A. No. 1:00-1898

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES,* MOREY L. SEAR,* BRUCE M. SELYA* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of three actions pending in the following federal districts: two actions in the Southern District of Illinois and one action in the Southern District of New York.[1] Before the Panel is a motion by five oil company defendants seeking centralization of these actions, pursuant to 28 U.S.C. §1407, in the Southern District of Illinois for coordinated or consolidated pretrial proceedings. Five additional defendants agree that centralization is appropriate, although two of these defendants prefer centralization in the Southern District of New York. The Illinois plaintiffs support centralization in the Illinois court. The New York plaintiffs along with eight defendants oppose centralization; if the Panel deems centralization appropriate, the New York plaintiffs and at least one opposing defendant favor centralization in the New York court.[2]

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact concerning i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public, and ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination. Centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Section 1407 proceedings are desirable in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

Opponents of transfer argue that the presence of individual questions of fact militate against 1407 transfer. We are unpersuaded by this argument. Indeed, we point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who

---

\* Judges Hodges, Sear and Selya took no part in the decision of this matter.

[1] The Panel has been notified that two potentially related actions have been recently filed in the Middle and Southern Districts of Florida. These actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 192 F.R.D. 459, 468-470 (2000).

[2] In an interested party response, plaintiffs in a potentially related action – *Buddy Lynn, et al. v. Amoco Oil Company, et al.*, M.D. Alabama, C.A. No. 96-940 – suggest centralization of MDL-1358 in the Middle District of Alabama.

- 2 -

can formulate a pretrial program that:  1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation,* 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.  It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or an action can be remanded to their transferor district for trial in advance of completion of the other actions in the transferee district. But we are unwilling, on the basis of the record before us, to make such a determination at this time. Should the transferee judge deem remand of any claims or an action appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-472 (2000).

We are persuaded that centralization of this litigation in the Southern District of New York is appropriate.  We note that the New York action is proceeding apace before Judge Shira Ann Scheindlin and we are confident in her ability to conduct pretrial proceedings in this litigation in an expeditious manner.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned actions pending in the Southern District of Illinois be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

John F. Nangle
Chairman

EXHIBIT B

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:            [202] 502-2888

http://www.jpml.uscourts.gov

June 16, 2004

TO INVOLVED COUNSEL

Re: MDL-1358 -- In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

(See Attached Transfer Order)

Dear Counsel:

For your information, I am enclosing a copy of an order filed today by the Judicial Panel on Multidistrict Litigation involving this matter.

Very truly,

Michael J. Beck
Clerk of the Panel

By _~Teresa Bishop~_
        Deputy Clerk

Enclosure

JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 16 2004

FILED
CLERK'S OFFICE

## DOCKET NO. 1358

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Orange County Water District v. Unocal Corp., et al.*, C.D. California, C.A. No. 8:03-1742
*City of Riverside v. Atlantic Richfield Co., et al.*, C.D. California, C.A. No. 8:04-53
*Quincy Community Services District v. Atlantic Richfield Co., et al.*, E.D. California, C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.*, E.D. California, C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et al.*, E.D. California, C.A. No. 2:03-2653
*City of Fresno v. Chevron U.S.A., Inc., et al.*, N.D. California, C.A. No. 3:03-5378
*California-American Water Co. v. Atlantic Richfield Co., et al.*, N.D. California, C.A. No. 3:03-5379
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, S.D. California, C.A. No. 3:03-2408
*State of New Hampshire v. Amerada Hess Corp., et al.*, D. New Hampshire, C.A. No. 1:03-486
(Also Pending as D. Rhode Island, C.A. No. 1:03-529)

# BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,[*] D. LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR., AND KATHRYN H. VRATIL, JUDGES OF THE PANEL

## TRANSFER ORDER

Presently before the Panel are motions by plaintiffs[1] and some defendants[2] in these nine actions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's orders conditionally transferring the actions to the Southern District of New York for inclusion in the Section

---

[*] Judges Selya and Motz did not participate in the decision of this matter.

[1] Orange County Water District; City of Riverside; Quincy Community Services District; City of Roseville; *People of the State of California* plaintiffs – the State of California and eleven municipalities, local water districts or water companies (Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-America Water Company, and City of Sacramento); California-American Water Company; the eight individuals who are plaintiffs in the Southern California *Silver* action; and State of New Hampshire.

[2] *City of Fresno*: Duke Energy Merchants, LLC; Duke Energy Trading and Marketing, LLC; Duke Energy Merchants California, Inc.; and Northridge Petroleum Marketing U.S., Inc. *Quincy*: Fuel Star, Inc., and Blue Star Petroleum, Inc.

- 2 -

1407 proceedings occurring there in this docket. A defendant[3] in two California actions joins in the motion to vacate the conditional transfer order in these actions. All other responding defendants[4] favor inclusion of all nine actions in MDL-1358 proceedings.

On the basis of the papers filed and hearing session held, the Panel finds that these nine actions share questions of fact with actions in this litigation previously transferred to the Southern District of New York arising out of allegations that defendants knew about and misrepresented the nature of MTBE resulting in drinking water contamination. Transfer of these actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. We note that any pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001). The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations relating to MTBE contamination. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000).

Opponents argue that the presence of individual and/or local questions of fact as well as differing legal theories in these actions should militate against inclusion of these actions in Section 1407 proceedings. We are unpersuaded by these arguments. Indeed, we point out that inclusion of these actions in Section 1407 proceedings has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

---

[3] 7-Eleven, Inc.

[4] Atlantic Richfield Company and BP Products North America Inc.; ExxonMobil Corporation, ExxonMobil Chemical Company Inc., ExxonMobil Corporation, ExxonMobil Oil Corporation, ExxonMobil Pipe Line Company, ExxonMobil Refining and Supply Company, and Mobil Corporation; Chevron U.S.A., Inc., Chevron Chemical Company, Chevron Texaco Corporation, Equilon Services LLC, Equilon Enterprises LLC, Equiva Enterprises LLC, Gulf Oil Corp., Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Oil Products US, Shell Trading (US) Company, Shell Petroleum, Inc., Star Enterprises, Texaco Corporation, Texaco Inc., Texaco Refining and Marketing Inc., Texaco Refining and Marketing (East) Inc., and TRMI Holding; Valero Energy Corporation, Valero Refining Company California, Valero Marketing and Supply Company, Valero Refining and Marketing Company, Valero Refining Company Louisiana, Valero Refining Company New Jersey, Valero Refining Company Texas, and Valero-Colorado Refining Company; Crown Central Petroleum Corp.; Tesoro Refining & Marketing Co., Tesoro Petroleum Corporation, and Tesoro West Coast Crown Central Petroleum Corporation; Westport Petroleum, Inc.; ConocoPhillips Company; CITGO Petroleum Corporation; Sunoco Inc. and Sunoco Inc. (R&M); Lyondell Chemical Company f/k/a ARCO Chemical Company; Marathon Ashland Petroleum LLC and Marathon Oil Corporation; and El Paso Corporation and El Paso CGP Company.

- 3 -

*See In re StarLink Corn Products Liability Litigation*, 157 F.Supp.2d 1378 (J.P.M.L. 2001). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L.,199 F.R.D. at 436-38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these nine actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

**EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

EDITH QUICK, et al.,                    )
                                        )
              Plaintiffs,               )
                                        )
v.                                      )        Cause No.  05-2072
                                        )
SHELL OIL COMPANY, et al.,              )        JURY TRIAL DEMANDED
                                        )
              Defendants.               )

### SHELL OIL COMPANY'S

### OPPOSITION TO

### PLAINTIFFS' MOTION FOR REMAND

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction........................................................................................................................ 1

Argument ........................................................................................................................... 3

    I.    Shell's Removal to Federal Court was Timely Pursuant to 28 U.S.C. § 1446(b) .............. 3

    II.   Removal Was Proper Under The Federal Officer Removal Statute,
        28 U.S.C. § 1442(a)...........................................................................................5

      A.    Shell Acted Under The Direction of A Federal Agency or Officer........................6

      B.    Shell Has A Colorable Federal Defense ................................................... 10

      C.    Shell Adequately Alleges A Casual Nexus Between The Federal Direction And The
            Conduct in Question.......................................................................................12

    III.  Removal Was Proper Because This Court Has Substantial Federal Question
        Jurisdiction...................................................................................................17

    IV.  Removal Was Proper Because Federal Regulation Completely Preempts The Narrow
        Oxygenated Fuel Formulas ................................................................... 16

      A.    Federal Law Occupies The Field Of Oxygenated Fuel Regulation............................... 17

      B.    Remedies Exist Under Federal Law ........................................................ 19

Conclusion ........................................................................................................... 20

Certificate of Compliance with Type Volume Limitation............................................23

i

# TABLE OF AUTHORITIES

### Cases

*Arizona v. Manypenny*, 451 U.S. 232 (1981).............................................................. 6

*Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983 (7th Cir. 2000) ........................... 20

*Beneficial Nat'l Bk. v. Anderson*, 123 S.Ct. 2058, 2063 (2003) ........................... 16, 19

*Blue v. Environmental Eng'g, Inc.*, 345 Ill.App.3d 445, 803 N.E.2d 187 (1st Dist. 2003)........15

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) ........................................ 18

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)..........18

*Cippolone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ................................................ 17

*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156 (1997) ............................. 14

*Coppola v. Amerada Hess Corp.*, No. 2001/3995 (Dutchess Co. July 31, 3003)........................ 11

*Cruz v. Fernandez Martinez*, 551 F.Supp. 794 (D.P.R. 1982)...........................................5

*Deakins v. Monoghan*, 484 U.S. 193 (1988)................................................................ 14

*English v. General Elec. Co.*, 496 U.S. 72 (1990).................................................. 16, 17

*Fidelity Fed. S&L Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ................................. 16, 18

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) ...................................................... 17

*Hillsborough Co. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985)........................................ 19

*Hixon v. Unocal Corp.*, Case No. BC 195295 (Super. Ct. Los Angeles County
   August 23, 2001)................................................................................... 11, 12

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 34 F.Supp.2d 147
   (S.D.N.Y. 2004) ("MTBE III") ................................................................ passim

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 34 F.Supp.2d 386
   (S.D.N.Y. 2004) ("MTBE V") ................................................................ 2, 3, 6, 12

*Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ............................................... 5, 10

*Little v. Purdue Pharma L.P.*, 227 F.Supp.2d 838 (S.D. Ohio 2002)................................................. 9

*Merrill Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986) .................................................... 15

*Mesa v. California*, 489 U.S. 121 (1989)............................................................................. 12

*Miller v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962 (7th Cir. 1982)........5

*Molloy v. Amerada Hess Corp.*, No. 2001/396 (Dutchess Co. August 1, 2002) .......................... 11

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Devel. Comm'n,* 461 U.S. 190 (1983)................................................................................................ 20

*Ryan v. Dow Chemical*, 781 F.Supp. 934 (E.D.N.Y. 1992) .......................................................... 9

*Sullivan v. Conway,* 157 F.3d 1092 (7th Cir. 1998)...................................................................4

*Tremblay v. Phillip Morris, Inc.*, 231 F.Supp.2d 411 (D.N.H. 2002)........................................... 9

*Washington v. GMC*, 406 U.S. 109 (1972) ..................................................................... 17

*Watson v. Phillip Morris Companies*, No. 4:03-CV-519, 2003 WL 23272484 (E.D. Ark. December 12, 2003) .......................................................................................... 10

*Whitman v. American Trucking Ass'n*, 531 U.S. 457 (2001)....................................................... 16

*Willingham v. Morgan*, 395 U.S. 402 (1969) .................................................................. 6, 7, 12

## Statutes and Regulations

15 U.S.C. §§ 2620................................................................................................... 19

28 U.S.C. § 1442....................................................................... 2, 5, 6, 8, 10, 11, 12

28 U.S.C. § 1446......................................................................................... 3, 4, 5

42 U.S.C. § 7545 ................................................................................. 15, 16, 17, 18, 19

42 U.S.C. § 7607................................................................................................ 18, 19

40 C.F.R. § 80.1 ....................................................................................................... 17

40 C.F.R. § 80.78.................................................................................................... 17

59 Fed. Reg. 7716 (Feb. 16, 1994) ....................................................................... 17, 18

Defendant Shell Oil Company ("Shell"), by its counsel, Fox Galvin, LLC, submits the following in opposition to plaintiffs' Motion for Remand:

## INTRODUCTION

More than 60 cases representing over 145 plaintiffs have been filed alleging Shell and other oil refiners are liable under product liability theories for including MTBE in gasoline. These 60 cases have been consolidated in a single proceeding, *In re MTBE Products Liability Litigation,* MDL-1358. The Judge presiding over MDL-1358 has ruled on a number of Motions to Remand in those cases and, <u>in every instance</u>, has found federal jurisdiction. One of the bases for the MDL Court's rulings is the same Federal Officer basis raised in this case. Significantly, <u>no</u> District Court in any of those 60 cases has done what plaintiffs ask this Court to do; issue a ruling contrary to the rulings in MDL-1358 rather than refrain from ruling so that the single Judge to whom the cases have been transferred can decide the jurisdictional issue.

Plaintiffs attempt to distinguish this case from the 60+ other cases claiming that, "...the case involves a pipeline rupture that occurred in 1988, prior to adoption of the CAA amendments upon which Shell relies for its 'federal jurisdiction' argument... ." (Plaintiffs' Opposition to Motion for Stay, pp. 3-4; Plaintiffs' Motion for Remand and Objections to Removal, pp. 2-3; Plaintiffs' Supplement to Motion for Remand, letters from Duane Miller and Michael Axline). This representation, made to two federal district courts in four separate submissions, is false.

In their Third Amended Complaint, plaintiffs allege groundwater contamination has resulted *not only* from the November 1988 pipeline release, but also from continuous and/or additional releases of MTBE-containing gasoline from the portion of the North Line pipeline located in Limestone Township, Illinois occurring *to the present*. Specifically, plaintiffs allege:

10.  Gasoline and gasoline constituents, *including MTBE*, continue to persist in surface water and groundwater in the general vicinity of the release indicating that an additional subsurface Pipe Line leak or spill has occurred or, alternatively, that leakage from the original...release location was never permanently sealed off...

46.  Plaintiffs aver, on information and belief, that in addition to the 1988 release, a release at another location on the Pipe Line, or from the original Pipe Line release which was never permanently sealed off, continues to cause water pollution in the vicinity of the release, and such pollution has occurred within two (2) years prior to the filing of the complaint in this matter, and is still occurring.

47.  From at least November 9, 1988, up to and continuing through the filing of this Complaint, Shell Oil has maintained and controlled a continuing source of contamination into the waters of the State of Illinois, and gasoline and other products released by Shell Oil have penetrated in, under, and upon lands owned or occupied by plaintiffs, including wells used for drinking water purposes.

*See* Third Am. Comp., ¶¶ 10, 46, 47, 245 (emphasis added).

This case fits squarely within Federal Officer Jurisdiction recognized by the Court in MDL-1358. This Court should either refrain from ruling on plaintiffs' Motion to Remand to allow the Judge in MDL-1358 to issue an Order consistent with her rulings in all the other cases before her, or should deny plaintiffs' Motion, consistent with all the authority on the same question in this litigation, for the following reasons.

*First*, Shell has properly invoked federal officer removal under 28 U.S.C. § 1442(a). Shell was acting at the direction of Congress and the EPA when it made reformulated gasoline with MTBE. Plaintiffs' claim that Shell's reliance on § 1442(a) is "spurious" and "absurd" is simply wrong. The only federal district court in the country which has directly ruled on this issue held that § 1442(a) was a valid basis for removal. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 34 F.Supp.2d 147 (S.D.N.Y. 2004) ("MTBE III") and *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 34 F.Supp.2d 386 (S.D.N.Y. 2004) ("MTBE V").

*Second*, plaintiffs' claims raise substantial federal questions.  As plaintiffs plead in their product defect claim, they must prove that the "benefits of using MTBE-containing gasoline were greatly outweighed by the associated costs and negative impacts on society, consumers and the environment." *See* Third Am. Comp., Count XXXIX.  The federal balancing of air-quality effects, water quality impacts, and the economic consequences for gasoline supply and prices is at the very heart of this claim.

*Third*, the federal government has completely occupied the field of reformulated gasoline, remitting even state regulation of fuels to EPA control.  Indeed, federal regulation of fuels is even more pervasive than that of clean air generally, and the regulatory structure demonstrates that plaintiffs may not, under the guise of state tort law, seek to control carefully structured federal fuel formulas.

## ARGUMENT

I.   **SHELL'S REMOVAL TO FEDERAL COURT WAS TIMELY PURSUANT TO 28 U.S.C. §1446(b)**

The timeliness of Shell's removal of plaintiffs' Third Amended Complaint is controlled by 28 U.S.C. §1446(b), which provides:

> …If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable….

28 U.S.C. § 1446(b).

As thoroughly explained in Sections II-IV below, each of the grounds for removal is predicated on plaintiffs' allegation that Shell is liable to plaintiffs not merely for releasing gasoline containing MTBE, but for its design, manufacture and formulation of gasoline containing MTBE.  That allegation appeared for the first time on March 11, 2005 when the state

3

court granted plaintiffs' Motion for Leave to File a Third Amended Complaint over defendants'

objection:

## COUNT XXXIX: STRICT LIABILITY

246.   Defendant Shell Oil designed, formulated, compounded, manufactured, packaged, merchandised, advertised, promoted, distributed, and/or sold MTBE and/or TBA which is polluting groundwater in the area of the above-described pipeline leak(s) and spill(s).

247.   Shell Oil represented, asserted, claimed and warranted that gasoline containing MTBE could be used and distributed in the same manner as gasoline not containing MTBE and/or TBA, and that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

248.   MTBE and/or TBA, and gasoline containing MTBE and/or TBA, are defective products because, among other things:

(a)   The design and manufacture of these products was defective

(b)   The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment;

(c)   MTBE and/or TBA cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

(d)   Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders drinking water unfit for drinking water;

(e)   MTBE and TBA pose significant threats to the public health and welfare

(f)   Shell Oil failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA, including but not limited to the risks of groundwater contamination;

(g)   Shell Oil failed to conduct reasonable, appropriate or adequate studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA; and

(h)   Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

(Third Amended Complaint, at ¶¶ 246-48.)

Because the notice of removal was filed on March 16, just five days later, it clearly was

timely under 28 U.S.C. § 1446(b).  *See, e.g., Sullivan v. Conway*, 157 F.3d 1092, 1094-95 (7th

Cir. 1998) (addition of allegations in an amended pleading regarding firing of counsel triggered

federal labor statutes and rendered case removable within 30 days of the state court's grant of leave to file the new pleading); *Cruz v. Fernandez Martinez*, 551 F.Supp. 794, 798 (D.P.R. 1982) (addition of United States as defendant in case that pended in state court for 30 years allowed removal under 28 U.S.C. §1442).

Rather than addressing 28 U.S.C. § 1446(b) head-on, plaintiffs engage in a protracted and wholly irrelevant discussion regarding the standards that govern a situation where a party had a right to remove a case, allowed that right to expire, and then the plaintiff amended the case to add federal claims. *See* Motion For Remand, at p.1 and pp.4-7, and *citing Miller v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 964 (7th Cir. 1982). But that is simply not the situation here. This case was not removable at the outset; it became removable when plaintiffs added their strict liability claim, and Shell removed within 30 days. This case presents a straightforward application of 28 U.S.C. § 1446(b).

## II.   REMOVAL WAS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)

Section 1442(a) of Title 28 provides that a civil action commenced in a State court against any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office, may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending. *See* 28 U.S.C. § 1442(a)(1). This statute is an exception to the well-pleaded complaint rule because Congress has expressly provided that actions against persons acting under color of an office or agency of the United States may be removed to federal court, despite the absence of a federal claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

The Supreme Court has emphasized that the federal officer removal statute is neither narrow nor limited, and has rejected lower court interpretations that circumscribe its scope. *See*

5

*Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981).  A defendant seeking to remove pursuant to § 1442(a) need only provide "candid, specific and positive" allegations that the conduct complained of was undertaken pursuant to the direction of a federal officer or agency. *Willingham*, 395 U.S. at 409.

Under § 1442, a private party may remove a state court action if (1) it acted under the direction of a federal agency or officer; (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal direction and the conduct in question. *See MTBE III*, 342 F.Supp.2d at 154. Judge Shira Scheindlin of the United States District Court for the Southern District of New York in two recent opinions determined that all three of these elements were satisfied in MTBE product liability actions, *see MTBE III* and *MTBE V, supra.*, and each element is equally established with respect to the MTBE product liability claim set forth in plaintiffs' Third Amended Complaint in the instant case.

## A.   SHELL ACTED UNDER THE DIRECTION OF A FEDERAL AGENCY OR OFFICER

Plaintiffs allege in the Third Amended Complaint that Shell is liable for its design, manufacture and formulation of gasoline containing MTBE that was released from the portion of the North Line pipeline that is located in Limestone Township, Illinois.  This MTBE product liability claim encompasses a period of time when gasoline that was transported through the North Line pipeline contained MTBE pursuant to the mandate of the Reformulated ("RFG") Program of the Clean Air Act.

As stated in Shell's Notice of Removal, the North Line pipeline originates at a refinery in Wood River, Illinois and terminates at terminal delivery points in the Chicago, Illinois area. (Notice of Removal at ¶ 4.)  The Notice alleges that, from a time period from some time prior to January 1, 1995 until approximately June 1995, gasoline that was transported from the refinery

6

in Wood River, Illinois through the portion of the North Line pipeline located in Limestone

Township, Illinois, to terminal delivery points in the Chicago, Illinois area contained MTBE

pursuant to a federal mandate embodied in the RFG Program:

5.    Plaintiffs' newly alleged MTBE strict product liability claim which alleges that
      gasoline containing MTBE is a "defective product," encompasses a time period
      from some time prior to January 1, 1995 until approximately June 1995, when
      gasoline that was transported from the refinery in Wood River, Illinois through
      the portion of the North Line pipeline located in Limestone Township, Illinois, to
      terminal delivery points in the Chicago, Illinois area contained MTBE pursuant a
      federal mandate embodied in the Reformulated Gasoline ("RFG") Program of the
      Clean Air Act....

23.   The Chicago, Illinois area is governed by RFG requirements.  Specifically, Cook,
      DuPage, Grundy, Kane, Kendall, Lake, McHenry and Will Counties are all
      governed by the RFG program.

24.   From January 1, 1995 until approximately June 1995, Defendant complied with
      RFG requirements for gasoline supplied to the Chicago, Illinois, area by
      supplying MTBE-containing gasoline.

25.   The North Line pipeline originates at a refinery in Wood River, Illinois and
      terminates at terminal delivery points in the Chicago, Illinois area.

26.   From January 1, 1995 until approximately June 1995, gasoline that was
      transported from the refinery in Wood River, Illinois in the North Line pipeline,
      through the portion of the North Line pipeline that is located in Limestone
      Township, Illinois, to terminal delivery points in the Chicago, Illinois area
      contained MTBE pursuant a federal mandate embodied in the RFG Program of
      the Clean Air Act.

(Notice of Removal at ¶¶5, 23-26.)  These "candid, specific and positive" allegations sufficiently

demonstrate that Shell acted under the direction of a federal agency or officer at the time of the

conduct upon which plaintiffs complain.  *Willingham*, 395 U.S. at 409.

In *MTBE III*, Judge Scheindlin addressed this same issue and held that allegations that the

removing defendant added MTBE to gasoline pursuant to a federal mandate were sufficient to

meet the requirement that the defendant acted under the direction of a federal agency or officer:

7

In their Notice of Removal, defendants allege that the Clean Air Act, and regulations promulgated thereunder, require them to blend oxygenates into gasoline. Although the EPA has identified seven additives that may be used to meet these requirements, MTBE is the only approved oxygenate that is available in quantities sufficient to comply with the Act and regulations. Moreover, defendants allege that the time the Clear Air Act was amended and the seven oxygenates were approved for use, Congress and the EPA were aware that defendants would *have to use* MTBE in order to comply with the Act's requirements. Thus, defendants have sufficiently alleged that they added MTBE to gasoline at the direction of the EPA, a federal agency, thereby meeting the first requirement of removal pursuant to § 1442(a)(1).

This conclusion is supported by case law and the policies underlying the federal officer removal statute...

342 F.Supp.2d at 156 (emphasis in original) (internal citations omitted).

Plaintiffs' attempts to avoid the conclusion that Shell acted under the direction of a federal agency are unavailing. First, and most oddly, plaintiffs simply deny that they ever alleged that any additional or continuous releases occurred from the North Line pipeline after 1988. (E.g., Motion to Remand at 2) ("The pipeline rupture that is the basis of the complaint occurred in 1988...The statutory and regulatory provisions Shell relies on were not adopted until 1990 and 1995, years *after* the conduct complained of in the complaint.") But that is just untrue. Plaintiffs clearly and repeatedly have alleged that additional or continuous releases of MTBE-containing gasoline from the North Line have occurred in Limestone Township from 1988 to the present; specifically:

10.    Gasoline and gasoline components, including MTBE, continue to persist in surface water and groundwater in the general vicinity of the release, indicating that an additional subsurface Pipe Line leak or spill has occurred or, alternatively, that leakage from the original Pipe Line release location was never permanently sealed off....

46.    Plaintiffs aver, on information and belief, that in addition to the 1988 release, a release at another location on the Pipe Line, or from the original Pipe Line release which was never permanently sealed off, continues to cause water pollution in the vicinity of the release, and such pollution has occurred within two (2) years prior to the filing of the complaint in this matter, and is still occurring.

8

47.     From at least November 9, 1988, up to and continuing through the filing of this Complaint, Shell Oil has maintained and controlled a continuing source of contamination into the waters of the State of Illinois, and gasoline and other products released by Shell Oil have penetrated in, under, and upon lands owned or occupied by plaintiffs, including wells used for drinking water purposes.

(Third Amended Complaint at ¶¶10, 46, 47 and 245).

Plaintiffs then argue very briefly in their Motion to Remand that even if they did allege that additional releases occurred, they did not intend to allege that such releases contained MTBE. *See* Motion to Remand, at p.3, FN2. However, this argument also is flatly contradicted by the allegations contain in Paragraph 10 that specifically refer to additional leaks, spills or leakage of "(g)asoline and gasoline components, including MTBE..." and is also contraindicated by the factual allegations in the Notice of Removal.

Plaintiffs' other arguments fare no better. Plaintiffs rely on *Ryan v. Dow Chemical*, 781 F.Supp. 934 (E.D.N.Y. 1992), *Tremblay v. Phillip Morris, Inc.*, 231 F.Supp.2d 411 (D.N.H. 2002) and *Little v. Purdue Pharma L.P.*, 227 F.Supp.2d 838 (S.D. Ohio 2002) in arguing that Shell did not act at the direction of a federal agency. (Motion to Remand at pp.10-14.) First, *Ryan* is no longer good law to the extent it rejects invocation of the federal officer removal statute in the context of Agent Orange Litigation. *See MTBE III*, 342 F.Supp.2d at 157, FN8. Similarly, in *Tremblay*, neither plaintiffs nor defendant argued that defendant designed cigarettes and manipulated their content at the direction of the FTC or any other federal agency, thus plaintiffs' claims were *not* based on actions undertaken at the direction of a federal office or agency. *Id.* In *Little*, a case where the plaintiffs claimed injuries arising from OxyContin exposure, the defendants did *not* allege that their actions were undertaken at the direction of a federal office or agency. *Id.* These cases are therefore easily distinguishable from the instant case since Shell has alleged, at the direction of the EPA, it added MTBE to gasoline for a period

9

of time in 1995 when plaintiffs claim a leak in the pipeline caused the damages for which they seek recovery.

Plaintiffs then claim that, other than the *MDL* Court, other courts around the country have "unanimously rejected" arguments that federal regulations requiring defendants to engage in conduct for which they are sued in state court provides a basis for jurisdiction under § 1442(a). *See* Motion for Remand at p. 13.  That is false.  The United States District Court for the Eastern District of Arkansas recently upheld removal under § 1442(a), concluding that Philip Morris acted under the direction of a federal officer within the meaning of § 1442(a)(1) when it cited the tar and nicotine values derived from the FTC Method in its Marlboro Light and Cambridge Light advertisements. *See Watson v. Phillip Morris Companies*, No. 4:03-CV-519, 2003 WL 23272484, *15-16 (E.D. Ark. December 12, 2003).

In summary, Judge Scheindlin is the only federal judge to address the propriety of removal under § 1442(a) in cases where plaintiffs allege product liability claims arising out of groundwater contamination caused by MTBE-containing gasoline.  As noted above, Judge Scheindlin concluded that defendants did act at the direction of a federal officer or agency when adding MTBE to gasoline.  In line with her opinions on this issue, Shell has satisfied the first requirement of removal under the federal officer removal statute.

## B.     SHELL HAS A COLORABLE FEDERAL DEFENSE

When assessing the second element of a § 1442(a) removal, the court need not decide whether a defendant will prevail on its federal defense, but need only ascertain if the defense is colorable. MTBE III, 342 F.Supp. at 158, *citing Jefferson County v. Acker*, 527 U.S. 431 (1999). As stated in the Notice of Removal, defendant has a legitimate colorable federal defense: Plaintiffs' claims are preempted by federal law.  Gasoline containing MTBE cannot be

considered defective when the EPA mandated RFG and approved and effectively required

MTBE as an oxygenate in RFG. (Notice of Removal at ¶ 58.) The *MTBE III* court held that this

same preemption defense was "no doubt" colorable for purposes of removal under § 1442(a):

> Although I previously have rejected defendants' preemption arguments, *see MTBE I*, 175 F.Supp.2d at 611-16, defendants urge me to reconsider that ruling, and emphasize that the allegations now before the Court are different than the allegations contained in *MTBE I*.
>
> The preemption defenses argued in *MTBE I* were, without doubt, colorable. Moreover, since that decision several courts have concluded that state law claims involving MTBE contamination *are* conflict preempted. *See Molloy v. Amerada Hess Corp.*, No. 2001/396, slip op. at 5 (Dutchess Co. August 1, 2002); *Coppola v. Amerada Hess Corp.*, No. 2001/3995, slip op. at 5 (Dutchess Co. July 31, 3003); *Hixon v. Unocal Corp.*, Case No. BC 195295 (Super. Ct. Los Angeles County August 23, 2001). Given these circumstances, I have no doubt that the preemption defenses asserted by defendants in this litigation are colorable...Because defendants need only assert a "colorable" federal defense in support of removal pursuant to § 1442(a)(1), they have met their burden.

*Id.* at 158.

Plaintiffs' argument at pages 10 and 19-20 of their Motion that Shell has not made this

showing based on Judge Scheindlin's rejection of the preemption defense in *MTBE I* is simply

misplaced. The decision in *MTBE I* had nothing to do with removal under § 1442(a); rather, it

was a ruling on a motion to dismiss. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products

Liability Litigation*, MDL No. 1358, Master File No. 00 Civ. 1898 (SAS), 175 F. Supp. 2d 593

(S.D. N.Y. 2001). As Judge Scheindlin herself recognized in *MTBE III*, the inquiry in *MTBE III*

was limited to whether the defense was *colorable*, not whether the defendant would prevail, and

there was "no doubt" the defense was colorable. 342 F.Supp.2d at 158  Moreover, again as

Judge Scheindlin noted, since *MTBE III* several courts had considered the same issue and had

concluded that state law claims such as those brought by these plaintiffs were preempted. *Id.*,

*citing Molloy v. Amerada Hess Corp.*, No. 2001/396, slip op. at 5 (Dutchess Co. August 1,

2002); *Coppola v. Amerada Hess Corp.*, No. 2001/3995, slip op. at 5 (Dutchess Co. July 31,

3003); *Hixon v. Unocal Corp.*, Case No. BC 195295 (Super. Ct. Los Angeles County August 23, 2001).

Next, relying on *Mesa v. California*, 489 U.S. 121 (1989), plaintiffs suggest that immunity is the only type of "colorable defense" a defendant may raise under § 1442(a) and that since Shell cannot rely on immunity it fails to satisfy the second requirement of the federal officer removal statute. (*See* Motion for Remand at pp. 10, 16-17.) In *MTBE V*, the Court rejected this very argument, noting that the policies underlying § 1442(a) "should not be frustrated by a narrow, grudging interpretation" of the statute. 2004 WL 2454053 at *3 (quoting *Willingham v. Morgan*, 395 U.S. at 406 (1969)). The Court stated:

> It is true that the Supreme Court has spoken of the importance of having the immunity defense considered in federal court, as a basis for removal. This is not surprising given that immunity often arises in cases where the removing party is a government employee. In that situation, the asserted federal defense arises out of the official's employment duties. However, when the party is an entity that has acted under the direction of a federal officer, it is logical to recognize other federal defenses because the situation may not fit the historical model. Accordingly, courts have recognized removable defenses other than immunity—for instance, the government contractor defense, self-defense, federal regulations and CERCLA, and preemption.

*Id.* at *4. With the above analysis, the *MTBE V* Court concluded that "preemption is a colorable federal defense for purposes of the federal removal statute" and that "this holding comports with the policy underlying § 1442(a)." *Id.*[1] Shell has raised the preemption defense and has thus satisfied the second requirement for removal under 28 U.S.C. § 1442(a).

### C.   SHELL ADEQUATELY ALLEGES A CAUSAL NEXUS BETWEEN THE FEDERAL DIRECTION AND THE CONDUCT IN QUESTION

The Notice of Removal could not be clearer in asserting a causal nexus between the federal direction and the conduct in question:

---

[1] Notably, plaintiffs' counsel in the *Quick* case is the first-listed plaintiffs' counsel in *MTBE V*.

59.     There is a strong causal nexus between the EPA's oxygenate mandate and the conduct about which Plaintiffs complain.  The gasoline industry's use of MTBE in gasoline was a necessary, known, and expected result of congressional legislation and EPA regulations regarding the use of oxygenates in gasoline. Defendant has alleged that it is a participant in a highly regulated industry and that the federal government was "intimately involved in its decision to add MTBE to gasoline" sufficiently alleging the causal nexus required for removal under the federal officer removal statute. MTBE III Opinion at 158, attached as Exhibit D.

60.     Pursuant to the CAA and its implementing regulations, Defendant is required to use oxygenates in gasoline.  Further, as explained more fully above, see ¶¶ 29-54, supra, both Congress and the EPA fully understood and expected MTBE to be used in the vast majority of oxygenated gasoline sold in the United States.

(Notice of Removal at ¶¶ 59-60.)

In *MTBE III*, Judge Scheindlin determined that "defendants clearly allege the acts upon which plaintiffs' claims are based—namely, manufacturing and selling gasoline containing MTBE—were undertaken at the *direction* of the EPA, a federal agency.  Not only do defendants allege they are participants in a highly regulated industry, they also claim that the federal government was 'intimately involved' in their decision to add MTBE to gasoline.  Therefore, defendants sufficiently aver…the causal nexus required for removal pursuant to the federal officer removal statute." 342 F.Supp.2d at 158 (internal citations omitted).

As in *MTBE III*, Shell specifically alleges that its design, manufacture and sale of gasoline containing MTBE was undertaken at the direction of the EPA.  Likewise, as in *MTBE III*, Shell claims the federal government was intimately involved in its decision to add MTBE to gasoline. *See* Notice of Removal at ¶¶ 8, 26, 57-60.  For these reasons there can be no doubt that a "causal nexus" exists between the federal direction and the conduct in question in this case—*i.e.,* designing, manufacturing and selling gasoline containing MTBE.

Plaintiffs' only response is to assert that "there is simply no way that the regulation requirements of the CAA are 'causally connected' to the plaintiffs' injuries (groundwater

contamination) in this case," and to cite cases that stand for the uncontroversial proposition that the Court should closely examine the alleged nexus between the federal direction and the conduct in question. (See Motion for Remand, at p.16). Shell has provided the Court with an unequivocally clear nexus between a federal direction and Shell's allegedly improper conduct. Plaintiffs' product liability claim alleges that Shell wrongfully designed, manufactured and sold gasoline containing MTBE, and Shell has identified a multitude of specific references in its Notice of Removal that clearly assert that this conduct was undertaken at the direction of the EPA.

For the foregoing reasons, Shell has satisfied all three of the requirements of the federal officer removal statute.

## III.   REMOVAL WAS PROPER BECAUSE THIS COURT HAS SUBSTANTIAL FEDERAL QUESTION JURISDICTION

Removal was proper and federal jurisdiction exists because plaintiffs' state law claims require the determination of substantial questions of federal law. "[E]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997).

Indeed, given the overwhelming federal control over gasoline content, and the undeniable federal interest in ensuring a reliable supply of reasonably priced gasoline, this is precisely the type of case in which a federal court should respect its "virtually unflagging obligation to exercise its jurisdiction." *Deakins v. Monoghan*, 484 U.S. 193, 203 (1988). Removal in this area depends upon "an evaluation of the nature of the federal interest at stake," for which there is no

"kind of automatic test," but which ensures that the "substantial" questions are resolved in federal court. *Merrill Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 & n. 12 (1986).

Both of these elements are met here: plaintiffs' clams present issues of federal law and interest and these federal matters are substantial and vital. *First*, plaintiffs' design defect claims require the fact-finder to weigh the utility of the product against the risk of its use. *See Blue v. Environmental Eng'g, Inc.*, 345 Ill.App.3d 445, 467, 803 N.E.2d 187, 197 (1st Dist. 2003). Such an analysis requires consideration of: (a) the gravity of the danger posed by the challenged design, (b) the likelihood that such danger would occur, (c) the feasibility of a safer alternative design, and (d) the adverse consequences to the product and to the consumer that would result from an alternative design. *Id.*

Resolving these risk-utility questions necessarily requires interpretation of federal law. Plaintiffs' theory is that refiners should have used an oxygenate (*e.g.,* ethanol) other than MTBE. Under this theory, plaintiffs must demonstrate that the EPA would have approved an ethanol-only RFG program, as the EPA based the size and scope of the Oxy-Fuel and RFG programs on the total available supply of oxygenated fuels, including MTBE. The total supply of oxygenates determined such important decisions as the relevant fuel characteristics, which states could opt in to the RFG program, and months of the year that Oxy-Fuel would be required. If only ethanol were available, the EPA could not have expanded the oxygenated fuels programs in this way.

Plaintiffs' claims, which challenge the environmental benefits of MTBE and call for an overall balancing of costs and benefits, require a reassessment of the factors Congress directed the EPA to consider in promulgating the RFG regulations so as to "require the greatest reduction in emissions." *See* 42 U.S.C. § 7545(k)(1). These factors include, per Congress's directive, not just MTBE's characteristics in groundwater, but the "cost of achieving such emission reductions,

15

any non-air quality and other air-quality health and environmental impacts and energy requirements." *Id.* Moreover, this balance is struck against the congressionally-expressed national interest in ensuring the adequate supply of reasonably priced gasoline and limiting the impacts on the gasoline refining industry.

*Second*, these federal questions and interests are substantial and, indeed, can only be resolved in federal court. As explained in Shell's Notice of Removal, Congress expressed the need for national uniformity in the oxygenated fuels program, by limiting the proliferation of fuel standards. *See* Notice of Removal at ¶¶ 29-54. Additionally, as the Supreme Court noted in *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 466 (2001), Congress intentionally adopted a structure requiring the clean air benefits of RFG to be weighed against federal interests in maintaining adequate supplies of reasonably priced gasoline. Plaintiffs' claims pose the very threat of price increases, product shortages, and fuel balkanization that Congress sought to avoid in passing the 1990 amendments.

## IV. REMOVAL WAS PROPER BECAUSE FEDERAL REGULATION COMPLETELY PREEMPTS THE NARROW FIELD OF OXYGENATED FUEL FORMULAS

"[S]tate law is preempted where it regulates conduct in a field that Congress intended the federal government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Despite a plaintiff's attempt to invoke only state law, "a state claim may be removed to federal court...when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bk. v. Anderson*, 123 S.Ct. 2058, 2063 (2003). Either federal statutes or regulations may expressly preempt state law. *Fidelity Fed. S&L Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Or, "[s]uch an intent may be inferred from a scheme of

16

federal regulation…so pervasive as to make reasonable the inference the Congress left no room for the State to supplement it." *English*, 496 U.S. at 79.

## A.  FEDERAL LAW OCCUPIES THE FIELD OF OXYGENATED FUEL REGULATION

"To be sure, Congress has largely preempted the field with regard to 'emissions from new motor vehicles,' and motor vehicle fuels and additives." *Washington v. GMC*, 406 U.S. 109, 114 (1972).  The CAA states that "no State (or political subdivision thereof) may prescribe or attempt to enforce, for purposes of motor vehicle emission control, any control or prohibition respecting any characteristic or component of a fuel or fuel additive" if EPA "has prescribed…a control or prohibition applicable to such characteristic or component of a fuel or fuel additive, unless State prohibition or control is identical to the prohibition or control prescribed by [EPA]." 42 U.S.C. § 7545(c)(4)(A).  Plaintiffs' tort claims would create a duty not to use MTBE and hence, would be a "control or prohibition respecting a characteristic or component of a fuel" that is not "identical to the prohibition or control prescribed by [EPA]."  These legal claims are preempted just as state regulations would be. *See Cippolone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000).

The EPA has clearly adopted a "control or prohibition" with respect to oxygenated fuels. *See* 40 C.F.R. § 80.78 ("Controls and prohibitions on reformulated gasoline").  In adopting its RFG rules, the EPA unambiguously expressed the view that state law cannot be allowed to regulate fuel formulas. *See* 40 C.F.R. § 80.1(b) (states may only regulate a "fuel or additive in motor vehicles or motor vehicle engines which is not explicitly regulated by [Part 80]." *See also* 59 Fed. Reg. 7716, 7809 (Feb. 16, 1994) ("The national scope of gasoline production and

distribution suggests that federal rules should preempt State action to avoid an inefficient patchwork of potentially conflicting regulations.  Indeed, Congress provided in the 1977 Amendments to the [CAA] that federal fuels regulations preempt non-identical State controls except under certain specified circumstances.  EPA believes the same approach to federal preemption is desirable for the reformulated gasoline and anti-dumping programs.").  Permitting each state to decide which oxygenates may be used within its borders will cause exactly the "inefficient patchwork" that the EPA sought to prevent.  The EPA's interpretation of the preemptive effect of its own regulations is controlling unless plainly erroneous, *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), and in any event, cannot be collaterally attacked other than in the D.C. Circuit, as required in the CAA. 42 U.S.C. § 7607(b)(1).

Since the EPA has prescribed rules, plaintiffs' claims are preempted both by § 7545(c)(4)(A) and by the EPA's rules themselves under § 7545(k)(1).  The EPA's authority to preempt state law also arises from its general power to set rules for the RFG program, § 7545(k)(1). *See de la Cuesta*, 458 U.S. at 154 (a "preemptive regulation's force does not depend on express congressional authorization to displace state law," but rather on whether "the [relevant agency] meant to preempt [state] law under its delegated authority.").  Of course, even if § 7545 has some ambiguity, the Court should defer to the EPA's interpretation.  Even on direct review, "[c]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  Here, the EPA, emphasizing the "national scope of gasoline production and distribution," concluded that "federal rules should preempt State action to avoid an inefficient patchwork of potentially conflicting regulations." 59 Fed. Reg. 7716, 7809 (1994).

**B.      REMEDIES EXIST UNDER FEDERAL LAW**

By contrast to preemption that merely "provide[s] a complete federal defense," complete preemption that allows removal arises when federal law provides "the exclusive cause of action" for plaintiffs' claims. *Beneficial Nat'l Bk.*, 123 S.Ct. at 2063.  Here, federal law provides the exclusive remedies for parties seeking to alter the design of reformulated gasoline.  In fact, plaintiffs have multiple remedies.

Plaintiffs have recourse through federal administrative procedure to protect their asserted interests in fuel regulation.  The EPA's inclusion of MTBE as an approved fuel additive under the RFG program was conducted through public notice and comment rulemaking and could now be reopened.  Both are subject to judicial review. 42 U.S.C. §§ 7607 (b), (d)(7)(B).  More importantly, if (and only if) the EPA approves, a state may include a prohibition on a fuel or fuel additive in its State Implementation Plan. § 7545(c)(4)(C).  Similarly, the Toxic Substances Control Act ("TSCA") provides the EPA authority to ban MTBE, and private parties may seek EPA action under TSCA by petition and judicial review of EPA action. *See* 15 U.S.C. §§ 2620(a) and (b)(4).  Additionally, state law provides remedies for claims of negligence, trespass, *etc.* directly related to leaking tanks, spills or other releases of MTBE into groundwater.

That plaintiffs have several other remedies, under both state and federal law, to address MTBE in groundwater- and, in particular, remedies against those who spill or leak MTBE gasoline- means this Court need not be concerned that federal preemption interferes with the States historical role in protecting health and safety. *See Hillsborough Co. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985).  Rather, because clean air and a national supply of reasonably priced gasoline were overriding federal concerns, Congress and the EPA preempted

19

only in the narrow area of fuel design, while preserving participation in the federal administrative process and state remedies against those who spill gasoline.

In addition, complete preemption can apply to "an identifiable portion" of a field. *See Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Devel. Comm'n*, 461 U.S. 190, 212 (1983). Shell does not maintain that federal law provides the only remedy for the presence of MTBE in groundwater; rather, federal law occupies the field to the extent such remedy is directed at Shell's formulation of gasoline to comply with federal requirements. In this regard, the scheme of federal regulation is like the Federal Communications Act, under which courts have routinely held that state common law actions are completely preempted by federal law's empowering the FCC to determine the reasonableness of communications carriers' actions. In *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983 (7th Cir. 2000), the plaintiff's state law claims were premised on a carrier's failure to adequately develop its network. The Seventh Circuit held such claims were properly removed—despite a savings clause—because they implicitly attacked the FCC's authority over "entry of or rates charged by any commercial mobile service... The statute specifically insulates these FCC decisions from state court review." *Id.* at 988-89. Here, plaintiffs could have sought federal relief based on their concerns about the environmental impact of MTBE by seeking judicial review of the EPA's decision to approve its use in RFG, by seeking reconsideration of the EPA's decision based on new evidence, by asking the EPA to approve a revised SIP that requires other oxygenates, or by seeking EPA review of MTBE under TSCA.

## CONCLUSION

For the reasons stated above and in its Notice of Removal, Shell Oil Company requests that this Court deny plaintiffs' motion for remand.

FOX GALVIN, LLC


By:    /s/ Richard B. Korn
       Richard B. Korn, #06229621
       Michael P. Downey, #06257380
       John E. Galvin, #06205935 (of counsel)
       One Memorial Drive, Eighth Floor
       St. Louis, MO 63102
       (314) 588-7000
       (314) 588-1965 (Fax)
       E-mail: mdowney@foxgalvin.com

       Christopher W. Bohlen, #00244945 (of counsel)
       BARMANN, BOHLEN & WOODRUFF, P.C.
       200 East Court Street, Suite 502
       P. O. Box 1787
       Kankakee, IL 60901
       (815) 939-1133
       (815) 939-0994 (Fax)

       Anthony F. King (of counsel)
       John W. Kampman (of counsel)
       Michael L. Williams (of counsel)
       WALLACE KING DOMIKE &
           BRANSON, PLLC
       1050 Thomas Jefferson Street, N.W.
       Washington, DC 20007
       (202) 204-3715
       (202) 204-1001 (Fax)

       Attorneys for Defendants Shell Oil Company,
       Shell Pipe Line Corporation, Equilon Pipeline
       Company LLC, Parsons Engineering Science, Inc.,
       Richard M. Frendt and Sasa Jazic

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 4th day of April, 2005, the foregoing *Shell Oil Company's Opposition to Plaintiffs' Motion for Remand* was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

| | |
|---|---|
| Christopher Bolen | bohlen@bbwlaw.net, Michele@bbwlaw.net |
| Michael P. Downey | mdowney@foxgalvin.com, scrawford@foxgalvin.com; rkorn@foxgalvin.com |
| Joseph R. Yurgine | joeyurgine@yahoo.com |

**Notice will be delivered by U.S. Mail to:**

Mr. John Bernard Cashion
Three First National Plaza
70 West Madison Street, Suite 2100
Chicago, IL 60602

Mr. Duane C. Miller
Mr. Michael Axline
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4272

**ATTORNEYS FOR PLAINTIFFS**

Mr. Larry J. Chilton
Chilton, Yambert, Porter & Coghlan
150 South Wacker Drive, Suite 2400
Chicago, IL 60606

Mr. Lawrence P. Riff
Steptoe & Johnson LLP
633 West Fifth Street, Suite 700
Los Angeles, CA 90071

**ATTORNEYS FOR PARSONS ENGINEERING SCIENCE, INC., RICHARD M. FRENDT and SASA JAZIC**

*/s/ Richard B. Korn*

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

As required by the Rules of the United States District Court for the Central District of Illinois, Rule 7.1(B)(4)(b)(1), counsel submitting this memorandum hereby certifies that the memorandum complies with the "type and volume limitation" described in the rule.  In reliance on the word count on the word processing system used to prepare the documents, the memorandum contains 6,589 words, and 41,854 characters, both of which are less than the limits of 7,000 words or 45,000 characters set forth in the rule.

Dated:  April 4, 2005

/s/ Richard B. Korn

**Responses and Replies**
<u>2:05-cv-02072-MPM-DGB Quick et al v. Shell Oil Company et al</u>

### U.S. District Court

### Central District of Illinois

Notice of Electronic Filing

The following transaction was received from Korn, Richard entered on 4/4/2005 at 4:33 PM CDT and filed on 4/4/200

| | |
|---|---|
| **Case Name:** | Quick et al v. Shell Oil Company et al |
| **Case Number:** | <u>2:05-cv-2072</u> |
| **Filer:** | Shell Oil Company |
| **Document Number:** | <u>15</u> |

**Docket Text:**
MEMORANDUM in Opposition re [9] MOTION to Remand filed by Defendant Shell Oil Company. (Korn, Richard)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/4/2005] [FileNumber=126867-0]
[60c3a5c456b901bf7320473721626b1568c5b4e0e853796fe4872c6e5952cb7cfe8bf
dac31aa805dea6c645dfa9b468854777cc593282f6ab1488c95e6ad7ed8]]

**2:05-cv-2072 Notice will be electronically mailed to:**

Michael D Axline    maxline@toxictorts.org, toxictorts@toxictorts.org

Christopher Bohlen    bohlen@bbwlaw.net, michele@bbwlaw.net

Michael P Downey    mdowney@foxgalvin.com, scrawford@foxgalvin.com;rkorn@foxgalvin.com

John E Galvin    jgalvin@foxgalvin.com, lcoco@foxgalvin.com

Richard Benjamin Korn    rkorn@foxgalvin.com,
scrawford@foxgalvin.com;jgalvin@foxgalvin.com;lcoco@foxgalvin.com

Joseph R Yurgine    joeyurgine@yahoo.com,

**2:05-cv-2072 Notice will be delivered by other means to:**

John Bernard Cashion
LAW OFFICE OF JOHN BERNARD CASHION
Suite 2500
33 North LaSalle St
Chicago, IL 60602

John W Kampman
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson St NW
Washington, DC 20007

Anthony F King
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson St NW
Washington, DC 20007

Duane C Miller
MILLER AXLINE & SAWYER
Suite 100
1050 Fulton Ave
Sacramento, CA 95825

Michael Williams
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson St NW
Washington, DC 20007

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 3 1 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Methyl Tertiary Butyl Ether ("MTBE")          **MDL Docket No. 1358**
Products Liability Litigation

| | | |
|---|---|---|
| EDITH QUICK, et al., | ) | United States District Court, |
| | ) | Central District of Illinois, Urbana Division, |
| Plaintiffs, | ) | C.A. No. 2:05-2072 |
| v. | ) | (Judge Michael P. McCuskey) |
| | ) | |
| SHELL OIL COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PROOF OF SERVICE

Please take notice that on May 31, 2005 Defendant, Shell Oil Company, filed an original

and four copies of **DEFENDANT SHELL OIL COMPANY'S OPPOSITION TO**

**PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-13)**

in connection with the above-referenced matter in the offices of the Judicial Panel on

Multidistrict Litigation, Thurgood Marshall Federal Building, One Columbus Circle, N.E., Room

G-255, North Lobby, Washington, DC  20002-8004, along with a 3½ inch floppy disk containing

said document in WordPerfect for Windows format.

The undersigned, an attorney, certifies that a true and correct copy of **DEFENDANT SHELL OIL COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-13)** was served upon each recipient identified on the attached Panel Service List, pursuant Judicial Panel of Multidistrict Litigation Rule of Procedure 5.2(a), via United States Mail Service, postage prepaid, from the offices of Wallace King Domike & Branson, PLLC, 1050 Thomas Jefferson Street, N.W., Suite 500, Washington, DC  20007, on May 31, 2005, and upon the clerk of the United States District Court, Central District of Illinois, Urbana Division, 218 U.S. Courthouse, 201 S. Vine Street, Urbana, Illinois 61802, pursuant to Judicial Panel of Multidistrict Litigation Rule of Procedure 5.2(b), via electronic filing service, as required by local rules applicable to filings in the Central District of Illinois, on May 31, 2005.

Respectfully Submitted,

Counsel for Defendant, Shell Oil Company,

By: _____

Anthony F. King
John W. Kampman
Michael L. Williams
**WALLACE KING DOMIKE &
BRANSON, PLLC**

Anthony F. King
John W. Kampman
Michael L. Williams
**WALLACE KING DOMIKE & BRANSON, PLLC**
1050 Thomas Jefferson Street, N.W.
Washington, DC 20007
Phone: 202-204-1000
Fax: 202-204-1001

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 3 1 2005

FILED
CLERK'S OFFICE

**PANEL SERVICE LIST**

**DOCKET NO. 1358**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE")**
**PRODUCTS LIABILITY LITIGATION**

*Edith Quick, et al. v. Shell Oil Co., et al., C.D. Illinois, C.A. No. 2:05-2072*

Michael D. Axline
Miller, Axline & Sawyer
1050 Fulton Avenue
Suite 100
Sacramento, CA  95825-4272

Stanley N. Alpert
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY  10038

Christopher Bohlen
Barmann, Bohlen & Woodruff, PC
200 E. Court Street
Suite 602
Kankakee, IL  60901

John B. Cashion
Three First National Plaza
70 West Madison Street
Suite 2100
Chicago, IL  60602

John E. Galvin
Fox Galvin, LLC
One Memorial Drive – 8th Floor
St. Louis, MO  63102

Peter J. Sacipanti
McDermott, Will & Emory
50 Rockefeller Plaza
New York, NY  10020

Joseph R. Yurgine
Law Office Of Joseph R. Yurgine
One Dearborn Square
Suite 500
Kankakee, IL  60901

Lawrence P. Riff
Steptoe & Johnson, LLP
633 West 5th Street
Suite 700
Los Angeles, CA  90071