**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 1 4 2005

FILED
CLERK'S OFFICE

PLEADING NO. 192

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Methyl Tertiary Butyl Ether ("MTBE")          **MDL Docket No. 1358**
Products Liability Litigation

| | |
|---|---|
| CITY OF MERCED, | ) United States District Court, |
| | ) Eastern District of California, |
| Plaintiff, | ) C.A. No. 1:05-662 |
| | ) (Judge Robert E. Coyle) |
| v. | ) |
| | ) |
| CHEVRON U.S.A., INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MOTION TO VACATE

## CONDITIONAL TRANSFER ORDER

**OFFICIAL FILE COPY**

IMAGED JUL 1 5 2005



**Table of Contents**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    ExxonMobil's Removal Notice Does Not Satisfy Any of the Elements of the Test for
      Removal Pursuant to the "Acting Under" Provision of § 1442(a) . . . . . . . . . . . . . . . . . . 2

      A.    ExxonMobil Was Not "Acting Under" the Direction of a Federal Officer
            When it Failed to Warn of the Propensity of MTBE to Contaminate
            Groundwater  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    ExxonMobil Has No Colorable Federal Defense. . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Adjudication of Plaintiff's Claims in State Court in No Way Threatens the
            Enforcement of Federal Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   ExxonMobil's Attempt to Use its "Preemption" Defense to Invoke 28 U.S.C. § 1441
      Ignores the Well-pled Complaint Rule  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

**Table of Authorities**

**Cases**

Abundiz v. Explorer Pipeline Co., 2002 WL 1592604 (N.D. Tex. 2002) . . . . . . . . . . . . . . . . 9-10

Ammons v. Great Lakes Chemical Corp., 1986 WL 10743 (W.D. Wash. July 23, 1986) . . . . 6, 8

Bakalis v. Crossland Savings Bank, 781 F.Supp. 140 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . 6

Brown v. Philip Morris, Inc., 250 F.3d 789 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ExxonMobil Corp. v. EPA, 217 F.3d 1246 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Goepel v. Nat'l. Postal Mail Handler's Union, 36 F.3d 306 (3d. Cir. 1996) . . . . . . . . . . . . . . . 7

Guckin v. Nagle, 259 F.Supp.2d 406 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

Gutierrez v. Mobil Oil Corp., 798 F. Supp. 1280 (W.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . 10

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,
    175 F.Supp.2d 593 (S.D.N.Y. 2001) (In re MTBE I) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,
    342 F.Supp.2d 147 (S.D.N.Y. 2004) (In re MTBE II) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Jamison v. Purdue Pharma Co., 251 F.Supp.2d 1315 (S.D. Miss. 2003) . . . . . . . . . . . . . . . . . 6

Little v. Purdue Pharma L.P., 227 F.Supp.2d 838 (S.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . . 6

Lowe v. Norfolk and Western Railway Co., 529 F.Supp. 491 (S.D. Ill. 1982) . . . . . . . . . . . . . . 6

Northern Colorado Water District v. Board of County Commissioners,
    482 F.Supp. 1115 (D. Colo. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Oxygenated Fuels Assoc., Inc., v. Pataki, 158 F.Supp.2d 248 (N.D.N.Y. 2001) . . . . . . . . . . . . 9

Railway Labor Executives Ass'n. v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936
    (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rains v. Criterion Systems, Inc., 80 F.3d 339 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 2, 4, 8, 9

Ryan v. Dow Chemical Co., 781 F.Supp. 934 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tremblay v. Philip Morris, Inc., 231 F.Supp.2d 411 (D.N.H. 2002) . . . . . . . . . . . . . . . . . . . . . 2, 6

**Statutes**

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 8, 9

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 6, 7

42 U.S.C. §§ 7401-7671q . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

42 U.S.C. § 7604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 7607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Court Rules**

Panel Rule 7.4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Panel Rule 7.4(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **Introduction**

On June 29, 2005, pursuant to Rule 7.4(c) of the Panel's Rules, plaintiff filed a Notice of Opposition to the proposed transfer of this case.[1]  Pursuant to Rule 7.4(d) of the Panel's Rules, plaintiff now moves to vacate the conditional transfer order entered on June 14, 2005.

The conditional transfer order should be vacated because there is no federal jurisdiction in the case, and defendant ExxonMobil Corporation et al.'s (ExxonMobil's) removal to federal court was improper.  Because the Panel does not have the power to remand the case to state court, plaintiff respectfully requests that the Panel deny defendants' requested transfer into MDL 1358, to allow Judge Coyle to determine plaintiff's Motion for Remand.

This is a tort case based on state common law causes of action for (1) failure to warn, (2) negligence, (3) trespass, and (4) nuisance, arising from MTBE contamination of Merced's water system.  See ExxonMobil's Notice of Removal, Ex. 1 (state complaint).

ExxonMobil's removal is without substantive merit.  ExxonMobil argues that plaintiff's claims are "preempted" by the Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671q, and therefore invoke 28 U.S.C. § 1441 (the "federal question" removal statute).  There are several fundamental problems with ExxonMobil's arguments.

First, ExxonMobil's "federal officer" argument is substantively wrong and internally inconsistent.  See Part I, infra.

---

[1] Plaintiff's Notice of Opposition noted that plaintiff's Motion for Remand was set for hearing before Judge Robert E. Coyle on July 25, 2005.  The Notice of Opposition requested that the Panel take no action on the Conditional Transfer Order until Judge Coyle ruled on the pending Motion for Remand.  On July 12, 2005, Judge Coyle granted defendants' motion to stay proceedings pending a ruling by the Panel.  Thus, plaintiff is not requesting a stay from the Panel.

1

Second, 28 U.S.C. § 1441 does not allow removal based upon a "preemption" defense. See Rains v. Criterion Systems, Inc., 80 F.3d 339, 344 (9th Cir. 1996) ("The artful pleading doctrine does not permit defendants to achieve what they are trying to achieve here:  to rewrite a plaintiff's properly pleaded complaint in order to remove it to federal court.")  ExxonMobil's "preemption" argument in any event has no merit, and has been rejected in every published opinion to address the argument.  See Part II, infra.

The Panel should vacate its conditional transfer order, and reject ExxonMobil's groundless attempt to have this state law case transferred into MDL 1358.

**I.      ExxonMobil's Removal Notice Does Not Satisfy Any of the Elements of the Test for Removal Pursuant to the "Acting Under" Provision of § 1442(a).**

ExxonMobil's first cited basis for federal jurisdiction in this case is 28 U.S.C. § 1442(a)(1), the "federal officer" removal statute.  Notice of Removal at 2, ¶ 2.  To invoke § 1442(a), ExxonMobil must:  (1) establish that it was acting under the direction of a federal officer and that its federally directed actions are causally connected to the harm about which the plaintiff complains;  (2) assert a colorable defense based on federal law in the notice of removal; and (3) demonstrate that adjudication of the plaintiff's claims in state court sufficiently threaten the enforcement of federal policy to warrant removal.  Tremblay v. Philip Morris, Inc., 231 F.Supp.2d 411, 417 (D.N.H. 2002).

ExxonMobil cannot satisfy any of these elements, much less all of them.

2

A.    **ExxonMobil Was Not "Acting Under" the Direction of a Federal Officer When it Failed to Warn of the Propensity of MTBE to Contaminate Groundwater.**

The "federal officer" removal statute, 28 U.S.C. § 1442(a)(1), provides for removal of state actions against "the United States or any agency thereof or an officer (or any person acting under that officer) of the United States or of any agency thereof . . . ." ExxonMobil argues that, although it is not an "officer of the United States," the oxygenate provisions of the Clean Air Act (42 U.S.C. §§ 7401-7671q) (CAA) "directed" ExxonMobil to put MTBE in its gasoline, and this "directive" "caused the conduct about which Plaintiff complains . . . ," thus triggering the "acting under" provisions of § 1442(a)(1). Notice of Removal at 16, ¶ 49.

This is simply wrong. Congress did not "direct" ExxonMobil not to warn of MTBE's propensity to leak, contaminate groundwater, and cause widespread disruption of public drinking water supplies. Congress also did not "direct" ExxonMobil to engage in any of the other acts alleged as a basis of liability in the complaint in this case. ExxonMobil may not claim "federal officer" status based upon actions that it took (or decided not to take) independent of any federal "directive." See, e.g., Tellez v. Dole Food Company, Inc., No. CV 04-03216 PA (CTx) (C.D. Cal. June 18, 2004) (slip op. attached as Ex. 1) (rejecting argument that EPA labeling requirements for pesticides products "directed" conduct for which defendants were sued).

ExxonMobil cites In re Methyl Tertiary Butyl Ether Products Liability Litigation, 342 F.Supp.2d 147 (S.D.N.Y. 2004) (In re MTBE II) (slip op. attached as Ex. 2 to Notice of Removal) for the proposition that Congress "directed" ExxonMobil to put MTBE in gasoline. Notice of Removal at 5, ¶ 12. But the City is not suing ExxonMobil for putting MTBE in gasoline. The City is suing ExxonMobil et al. for failing to warn about the propensity of MTBE

3

to contaminate groundwater, and for not taking reasonable measures to prevent MTBE from escaping the gasoline distribution system that ExxonMobil et al operated.  In other words, ExxonMobil's "federal officer" argument simply does not apply to the complaint actually filed by the City.

The factual predicate ExxonMobil asserts for removal (that the complaint contains a "product defect" cause of action) is refuted by the complaint itself.  See Etcheverry v. Tri-Ag Service, Inc., 22 Cal.4th 316, 377-78 (2000) (distinguishing between failure to warn claims, which are preempted by FIFRA [7 U.S.C. §§ 136-136y], and strict liability and negligence claims, which are not preempted).  Plaintiffs are entitled to choose which causes of action to pursue, and defendants are not allowed to recast those causes of action in an attempt to remove to federal court.  See Rains v. Criterion Systems, Inc., supra, 80 F.3d at 344 ("The artful pleading doctrine does not permit defendants to achieve what they are trying to achieve here:  to rewrite a plaintiff's properly pleaded complaint in order to remove it to federal court.")

The complaints involved in In re MTBE II, unlike the complaint in the instant case, alleged that gasoline containing MTBE was a "defective product."  The In re MTBE II court found defendants had a "colorable" argument that the CAA oxygenate provisions "in effect" forced defendants to place MTBE in gasoline for certain areas of the country, and the court therefore allowed defendants to argue they were "federal officers" for purposes of 28 U.S.C. § 1442(a)(1).  See In re MTBE II, supra, 342 F.Supp.2d at 150.

In the instant case, the City of Merced does not argue that gasoline containing MTBE is a "defective product."  Rather, the City is suing ExxonMobil et al. for negligently operating the gasoline delivery systems from which MTBE leaked, and for failing to warn about the

4

propensities of MTBE to cause groundwater contamination. The complaint, for example, alleges (at 6, ¶ 25): "Defendants had actual control over leaking gasoline delivery systems and/or were vicariously liable for the acts, omissions, and conduct of the owners and operators of Merced gasoline stations and pipelines which released MTBE into the environment."[2] The complaint also alleges: "Defendants, and each of them, falsely represented, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, did not require any different or special handling or precautions, and/or was environmentally beneficial." Complaint at 7, ¶ 31.

The very allegations quoted by ExxonMobil in its removal notice – that defendants had a "duty to use due care in the sale, labeling, warnings, use, and instructions for use of MTBE" – disprove ExxonMobil's claim that the City is suing ExxonMobil for putting MTBE into gasoline. The City can hardly be suing ExxonMobil et al. for manufacturing MTBE when the word "manufacture" does not even appear in the City's complaint.

It is telling that ExxonMobil's removal notice cites only the complaints in In re MTBE II, and not the City of Merced's complaint, when referring to "defective product" claims. See, e.g., Notice of Removal at 6, ¶ 14 ("Plaintiffs in MDL 1358 assert products liability . . . ."). ExxonMobil argues: "Plaintiff's omission of a products liability claim in this case cannot mask the fundamental similarity with the MDL action." Id. ExxonMobil does not explain, however,

---

[2] The In re MTBE II opinion also noted, without deciding, that "Texaco's 1987 bankruptcy may provide this Court with jurisdiction over Chevron Texaco." In re MTBE II, supra, 342 F.Supp.2d at 159. ExxonMobil's removal notice does not attempt to invoke bankruptcy jurisdiction here, but plaintiff notes that the MTBE spills in Merced occurred years after the Texaco bankruptcy reorganization. See Complaint at 3, ¶ 12. Because the acts complained of were clearly post-bankruptcy, federal bankruptcy jurisdiction would not provide a basis for ExxonMobil's removal, even if ExxonMobil had asserted it.

how Congress in any way directed the actual conduct for which the City of Merced is suing

ExxonMobil et al.  Unless ExxonMobil demonstrates that Congress (or some "federal officer")

"directed" the conduct for which the City is actually suing ExxonMobil et al., ExxonMobil

cannot meet its burden of establishing "federal officer" jurisdiction.

Private sector manufacturers subject to federal regulations, but not acting pursuant to a

federal contract or direct federal instructions, are not acting "under the direction" of federal

officers within the meaning of § 1442(a)(1).  See Tremblay v. Philip Morris, supra: ("The mere

fact that a . . . company has complied with the requirements of a federal law cannot suffice to

transform it into a federal actor . . . .")  231 F.Supp.2d at 417 (quoting Brown v. Philip Morris,

Inc., 250 F.3d 789, 801 (3d Cir. 2001)).  The profit motive, not EPA or the CAA, "directed"

ExxonMobil's actions in this case.[3]

---

[3] See also, Bakalis v. Crossland Savings Bank, supra, 781 F.Supp. at 145 (regulation
requiring submission of report for which removing defendants were sued did not mean
defendants were "acting under" a federal agency);  Little v. Purdue Pharma L.P., 227 F.Supp.2d
838 (S.D. Ohio 2002) (drug manufacturers' "acts must conform to federal regulations," but
manufacturers "are under no duty, or direction, to act");  Northern Colorado Water District v.
Board of County Commissioners, 482 F.Supp. 1115 (D. Colo. 1980) (requirements of Clean
Water Act did not mean local governments were "acting under" direction of federal officer);
Lowe v. Norfolk and Western Railway Co., 529 F.Supp. 491, 495 (S.D. Ill. 1982) ("The acts
undertaken were not pursuant to federal law, but were pursuant to a private contract, subject to
the overriding requirements of federal regulation.");  Jamison v. Purdue Pharma Co., 251
F.Supp.2d 1315, 1326 (S.D. Miss. 2003) (defendants, while subject to federal regulation, "are
for-profit corporations that do not derive their primary income from federal funding.  They are
not government contractors, delivering either a product or a service to the United States, or to
beneficiaries designated by the government.");  Guckin v. Nagle, 259 F.Supp.2d 406, 416-17
(E.D. Pa. 2003) (private, for-profit corporation not "acting under" federal officer or agency,
despite the fact that its products were subject to "exceedingly complex regulations, guidelines
and evaluation schemes.");  Ammons v. Great Lakes Chemical Corp., 1986 WL 10743 at *5
(W.D. Wash. July 23, 1986) ("Great Lakes also argues that this action [for damages caused by
pesticides] is removable under 28 U.S.C. § 1442(a)(1) . . . Great Lakes is not an agent of EPA
and does not act under EPA in the distribution of pesticides.").

**B.    ExxonMobil Has No Colorable Federal Defense.**

ExxonMobil also cannot satisfy the second element of the test for "acting under" removal, because it does not have a colorable federal defense.  The "preemption" defense that ExxonMobil seeks to raise is not a defense that Congress intended to be resolved exclusively by federal courts.  As explained in Part II, infra, even if a preemption defense could provide a basis for removal under 28 U.S.C. § 1441, the factual predicate for ExxonMobil's "preemption" defense has been rejected by every published opinion to have addressed the defense.

**C.    Adjudication of Plaintiff's Claims in State Court in No Way Threatens the Enforcement of Federal Policy.**

ExxonMobil also cannot satisfy the third required element for "acting under" jurisdiction, because ExxonMobil cannot show that adjudication of plaintiff's claims in state court would threaten the enforcement of federal policy.  In fact, ExxonMobil makes no attempt at such a showing.  Even if ExxonMobil were able to show that plaintiff's common law claims posed a "threat" to federal policies expressed in the CAA, ExxonMobil can hardly claim that the "threat" arises from those claims being heard in state court, rather than federal court.[4]

---

[4] The fact that Congress expected preemption defenses to be heard in state court is reinforced by the "complete preemption" exception to the "well-pled complaint" rule. That exception allows removal of preemption defenses under § 1441 only if the defendant is able to meet two conditions.  First, the state law claims must fall within the scope of the allegedly preemptive statute's civil enforcement provisions.  Goepel v. Nat'l. Postal Mail Handler's Union, 36 F.3d 306, 311 (3d. Cir. 1996).  Second, the allegedly preemptive statute must contain "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."  Id.  The CAA's "civil enforcement" provisions, 42 U.S.C. §§ 7604, 7607, have nothing to do with groundwater contamination.  ExxonMobil also should not be allowed to bootstrap itself around the second element necessary for "preemption" to form a basis for removal by using § 1442(a)(1) as a substitute for the "specific Congressional intention to permit removal" otherwise required by § 1441 as a precondition to removal.

Preemption defenses are routinely decided in state court, and federal courts routinely hold that "preemption" defenses do not satisfy the "arising under federal law" requirement for removal under 28 U.S.C. § 1441. <u>Ammons v. Great Lakes Chemical Corp.</u>, <u>supra</u>, 1986 WL 10743, at *5 (W.D. Wash. July 23, 1986) ("the conduct of EPA is relevant, if at all, only to a possible defense for Great Lakes.  Therefore, this action does not arise under federal law for jurisdictional purposes"); <u>Ryan v. Dow Chemical Co.</u>, 781 F.Supp. 934, 945 (E.D.N.Y. 1992) ("defendants asserting federal preemption defenses are ordinarily not entitled to removal.").  <u>See also</u> <u>Railway Labor Executives Ass'n. v. Pittsburgh & Lake Erie R.R. Co.</u>, 858 F.2d 936, 942 (3d Cir. 1988) ("State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.").

ExxonMobil's "preemption" argument in any event is without merit, and has been rejected in every published opinion to have considered the argument, including the court to which ExxonMobil ultimately wishes to steer this case.

## II.   ExxonMobil's Attempt to Use its "Preemption" Defense to Invoke 28 U.S.C. § 1441 Ignores the Well-pled Complaint Rule.

ExxonMobil invokes 28 U.S.C. § 1441 as an alternative basis for removal, arguing that there is a removeable "federal question" as to whether the City's claims are "preempted" by the CAA.  (Notice of Removal at 2-3, ¶ 3.)  Federal defenses, however, do not provide "federal question" jurisdiction under 28 U.S.C. § 1441.  <u>See</u> <u>Rains v. Criterion Systems, Inc.</u>, <u>supra</u>, 80 F.3d at 344 ("The artful pleading doctrine does not permit defendants to achieve what they are trying to achieve here: to rewrite a plaintiff's properly pleaded complaint in order to remove it to

8

federal court."); Guckin v. Nagle, supra, 259 F.Supp.2d at 408 ("preemption . . . does not have jurisdictional significance for purposes of determining the propriety of remand.")

28 U.S.C. § 1441(a) allows removal only when "a federal question is presented on the face of the plaintiff's properly plead complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Preemption defenses, although they involve federal law, do not provide a basis for removal. Id. at 393. Under the "well-pled complaint" rule, defendants may not invoke 28 U.S.C. § 1441 by arguing, as ExxonMobil argues with respect to preemption, that plaintiff's complaint "in effect" raises a federal question. See Rains v. Criterion Systems, Inc., supra, 80 F.3d at 344.

As noted above, preemption defenses are routinely decided in state court, and federal courts routinely hold that "preemption" defenses do not satisfy the "arising under federal law" requirement for removal under 28 U.S.C. § 1441. As also noted above, ExxonMobil's "preemption" argument has been rejected in every published opinion to have considered the argument, including the Ninth Circuit. See e.g., Oxygenated Fuels Assoc. v. Davis, 331 F.3d 665, 669-73 (9th Cir. 2003) (California's ban on MTBE not preempted by the Clean Air Act); ExxonMobil Corp. v. EPA, 217 F.3d 1246, 1254-56 (9th Cir. 2000) (rejecting preemption claim); Oxygenated Fuels Assoc., Inc., v. Pataki, 158 F.Supp.2d 248 (N.D.N.Y. 2001) (New York law banning sale and use of MTBE not preempted by the CAA); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 175 F.Supp.2d 593, 616 (S.D.N.Y. 2001) (In re MTBE I) ("the RFG [Reformulated Gasoline] Program does not deliberately seek to employ various 'means-related' objectives, such as maintaining a mix of oxygenates . . . in order to further its goal in reducing air pollution" – rejecting preemption argument); Abundiz v. Explorer Pipeline Co., No. CIV.3:00-CV-2029-H, 2002 WL 1592604, at *3-*5 (N.D. Tex. July

9

17, 2002) ("[T]his Court finds that Geier [v. American Honda Motor Co., Inc., 529 U.S. 861 (2000)] does not dictate preemption in this matter and permitting this state lawsuit to proceed would not conflict with the Congressional clean air objectives"); Gutierrez v. Mobil Oil Corp., 798 F. Supp. 1280, 1284 (W.D. Tex. 1982) ("To hold that the Clean Air Act preempts purely private state law causes of action for damages would preclude relief for any person who can prove the elements of the common law claims. Such a result is clearly not intended under, and would not further the goals of, the Clean Air Act.")

**Conclusion**

The City's complaint in this case does not implicate federal jurisdiction in any way. For the above reasons, plaintiff respectfully requests that the Panel vacate its conditional transfer order.

Respectfully submitted,

Dated:  July 13, 2005

**MILLER, AXLINE & SAWYER**
A Professional Corporation

By:  *Michael Axline*

MICHAEL AXLINE
Attorneys for Plaintiff
Miller, Axline & Sawyer
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825
Telephone:  (916) 488-6688

10

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 1 4 2005

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re Methyl Tertiary Butyl Ether ("MTBE")          **MDL Docket No. 1358**
Products Liability Litigation

| | |
|---|---|
| CITY OF MERCED, | ) United States District Court, |
| | ) Eastern District of California, |
| Plaintiffs, | ) C.A. No. 1:05-662 |
| | ) (Judge Robert E. Coyle) |
| v. | ) |
| | ) |
| CHEVRON U.S.A., INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of **PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER** and **PLAINTIFF'S SCHEDULE OF ACTION** were served on the following counsel of record via United States Mail, postage pre-paid, on this 13th day of July, 2005:

| | |
|---|---|
| Gregory G. Diaz, Esq.<br>City of Merced<br>678 West 18th Street<br>Merced, CA  95340 | Attorneys for plaintiff<br>City of Merced |
| David L. Schrader, Esq.<br>Morgan, Lewis & Bockius LLP<br>300 South Grand Avenue, 22nd Floor<br>Los Angeles, CA  90071-3132 | Attorneys for defendant<br>Chevron U.S.A., Inc. |
| William D. Temko, Esq.<br>Munger, Tolles & Olson, LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA  90071-1560 | Attorneys for defendant<br>Shell Oil Company |
| Jeffrey J. Parker, Esq.<br>Whitney D. Jones, Esq.<br>Sheppard, Mullin, Richter & Hampton, LLP<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA  90071-1448 | Attorneys for defendant<br>ExxonMobil Corporation |
| Robin L. Greenwald, Esq.<br>Weitz & Luxenberg, PC.<br>180 Maiden Lane, 17th Floor<br>New York, NY  10038<br>(Also served via e-mail to:  rgreenwald@weitzlux.com) | Plaintiffs' Liaison Counsel for<br>MDL 1358 |
| Peter J. Sacripanti, Esq.<br>McDermott, Will & Emery<br>50 Rockefeller Plaza<br>New York, NY  10020<br>(Also served via e-mail to:  psacripanti@mwe.com) | Defendants' Liaison Counsel for<br>MDL 1358 |

Dated:  July 13, 2005

CHRISTINA LISE

**EXHIBIT 1**

JUL 1 4 2005

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 8 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK'S OFFICE

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE ADOLFO TELLEZ, et al.

    Plaintiffs,

    v.

DOLE FOOD COMPANY, INC., et al.

    Defendants.

No. CV 04-03216 PA (CTx)

ORDER REMANDING ACTION



ENTERED
JUN 1 8 2004
BY          072

The Court has before it defendant The Dow Chemical Company's ("Dow") Notice of Removal, filed May 6, 2004. This action was originally filed in the Superior Court of the State of California for the County of Los Angeles on March 26, 2004, and served on Dow on April 9, 2004. Federal courts have subject matter jurisdiction only over matters authorized by the Constitution and Congress. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986).

The underlying complaint, filed by a group of Nicaraguan citizens, seeks compensatory and other relief from a group of chemical and fruit company defendants for personal injuries (sterility and other reproductive injuries) stemming from their work on banana farms in Nicaragua. They allege that their exposure to the organobromine pesticide 1,2-dibromo-3-chloropropane ("DBCP"), a soil fumigant exported by the chemical companies, and used as a nematicide by the fruit companies on their banana crops, is the cause of these injuries.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

23

1    Dow claims that removal is proper in this instance because its actions were

2  undertaken at the direction of a federal officer or agency of the United States.  Congress has

3  provided that:

4           (a) A civil action or criminal prosecution commenced in a State
            court against any of the following may be removed by them to
5           the district court of the United States for the district and division
            embracing the place wherein it is pending:

6                  (1) The United States or any agency thereof or any
7                  officer (or any person acting under that officer) of
                   the United States or of any agency thereof, sued in
8                  an official or individual capacity for any act under
                   color of such office or on account of any right, title
9                  or authority claimed under any Act of Congress for
                   the apprehension or punishment of criminals or the
10                 collection of the revenue.

11  28 U.S.C.A. § 1442.

12    Congress first established a provision for removal by a federal officer in response to

13  New England's opposition to the federal trade embargo initiated during the War of 1812.

14  The statute allowed customs officials authority to board vessels in order to collect duties; in

15  order to protect these officials from New England's opposition to the embargo, the statute

16  permitted removal of state court civil suits or prosecutions against the officials "for any

    thing done by virtue of this act or under colour thereof."  See Act of Feb. 4, 1815, § 8, 3
17
    Stat. 195, 198; see generally Willingham v. Morgan, 395 U.S. 402, 405, 89 S. Ct. 1813,
18
    1815, 23 L. Ed. 2d 396 (1969) (providing a detailed history of the statute).  This provision
19
    was nullified at the end of the war, but a similar, and permanent, provision was enacted in
20
    1833, as part of the "Force Bill", in response to South Carolina's Nullification Act, which
21
    made enforcement of the federal customs provisions a state crime.  See Act of March 2,
22
    1833, § 3, 4 Stat. 633.  This bill was expanded in the 1860s, and codified with a group of
23
    removal statutes following the Civil War.  See Rev. Stat. § 643 (1874); Judicial Code of
24
    1911, § 33, 36 Stat. 1097; Willingham, 395 U.S. at 405, 89 S. Ct. at 1815.  The current
25
    version, covering all federal officers, was authorized by Congress in the Judicial Code of
26  1948, and is contained in 28 U.S.C. § 1442(a)(1).

27    The purpose of the federal officer removal mechanism is quite clear:

28           the Federal Government 'can act only through its officers and
            agents, and they must act within the States.  If, when thus acting,
            and within the scope of their authority, those officers can be

-2-

1   arrested and brought to trial in a State court, for an alleged
    offense against the law of the State, yet warranted by the Federal
2   authority they possess, and if the general government is
    powerless to interfere at once for their protection, – if their
3   protection must be left to the action of the State court, – the
    operations of the general government may at any time be
4   arrested at the will of one of its members.'

5   Willingham, 395 U.S. at 406, 89 S. Ct. at 1815 (quoting Tennessee v. Davis, 100 U.S. 257,

6   263, 25 L. Ed. 648 (1880)). Dow believes itself to fall within the scope of these enactments.

7   Its argues that the Plaintiffs to this action, in seeking relief on causes of strict liability,

8   negligence, and fraudulent concealment, are basing their claims, inter alia, on a failure to

9   warn theory. DBCP is a pesticide regulated by the United States Environmental Protection

10  Agency ("EPA") under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or

    the "Act").[1] Dow contends that by selling DBCP in conformity with FIFRA (i.e., including
11
    the governmentally-approved labels on its product), it qualifies as a person acting under an
12
    officer or agency of the United States.

13       This Court disagrees. It is universally recognized that the federal officer removal

14  provision "was meant to ensure a federal forum in any case where a federal official is

15  entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S.

16  232, 241, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981); see also Willingham, 395 U.S. at

17  405, 89 S. Ct. at 1815 ("the removal statute is an incident of federal supremacy, and that one

18  of its purposes was to provide a federal forum for cases where federal officials must raise

19

20  _____
    [1]      Congress enacted FIFRA in 1947, primarily as a licensing and labeling statute. See
21  Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 601, 111 S. Ct. 2476, 2479, 115 L. Ed.
    2d 532 (1991). The Act was completely revised by the Federal Environmental Pesticide
22  Control Act of 1972, 7 U.S.C. §§ 136, et seq., as amended. The revisions broadened the
    scope of the regulations, and "insured that FIFRA 'regulated the use, as well as the sale and
23  labeling, of pesticides; regulated pesticides produced and sold in both intrastate and
    interstate commerce; [and] provided for review, cancellation, and suspension of
24  registration.'" Id. at 601, 111 S. Ct. at 2479-80 (quoting Ruckelshaus v. Monsanto Co., 467
    U.S. 986, 991-92, 104 S. Ct. 2862, 2867, 81 L. Ed. 2d 815 (1984)). FIFRA requires, inter
25  alia, that manufacturers register their pesticide with the EPA prior to sale or distribution. 7
26  U.S.C. § 136a. As part of this registration process, manufacturers must submit a proposed
27  label for approval, along with sufficient data to allow the Administrator to assess the
    beneficial and adverse health risks to man and the environment. Ibid.
28

1  defenses arising from their official duties.").[2/]  It is clear to this Court that Dow does not fall

2  within the historical scope of the removal provision, or the intention of Congress in enacting

3  it.

4       Dow, however, counters with two arguments: first, Dow asserts that the EPA

5  mandated that additional language be added to the DBCP labels it proposed, and second,

6  Dow argues that recent case law indicates that the courts have broadened the scope of

7  section 1442 to include this type of regulation.  In 1977, the EPA, after receiving

8  information showing that male chemical plant workers exposed to small quantities of the

9  pesticide had become sterile, determined that DBCP use in accordance with the current

10  labeling restrictions posed a cancer risk, risk of sterility, and other severe reproductive

11  effects to applicators of the pesticide.  Accordingly, the EPA initiated an intensive

12  investigation, and required those desiring to continue to distribute the pesticide to amend

13

14

15  [2/]   In addition, see e.g., Kolibash v. Comm. on Legal Ethics of W. Va. Bar, 872 F.2d

16  571, 573 (4th Cir. 1989) ("The federal officer removal statute is the culmination of a long

17  history of removal provisions designed to protect federal officers in the performance of their federal duties"); Peterson v. Blue Cross/Blue Shield of Tex., 508 F.2d 55, 58 (5th Cir. 1975)

18  ("The purpose of the removal statute is to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal

19  employment."); Wisconsin v. Schaffer, 565 F.2d 961, 964 (7th Cir. 1977) ("The purpose of the removal statute is to insure a federal forum for cases where federal officials must raise

20  defenses arising out of their official duties."); Charges of Unprofessional Conduct Against 99-37 v. Stuart, 249 F.3d 821, 824 (8th Cir. 2001) ("The purpose of 28 U.S.C. § 1442( a)(1)

21  is to protect federal officials from civil or criminal liability for the performance of their official duties"); California v. Mesa, 813 F.2d 960, 964 (9th Cir. 1987) ("the right to remove

22  generally came as part and parcel of a larger package of federal substantive law expected to encounter hostility in the state courts."); Becenti v. Vigil, 902 F.2d 777, 779 (10th Cir. 1990)

23  ("'[T]he central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum.'"

24  (quoting North Carolina v. Carr, 386 F.2d 129, 131 (4th Cir. 1967))); Florida v. Cohen, 887

25  F.2d 1451, 1453 (11th Cir. 1989) ("This statute is an incident of federal supremacy . . . in which to raise defenses arising from their official duties."); Brown & Williamson Tobacco

26  Corp. v. Williams, 62 F.3d 408, 413 (D.C. Cir. 1995) ("By its terms, then, the statute confers

27  removal jurisdiction over either a state court 'civil action' or 'criminal prosecution' brought 'against' a federal official – as long as the 'action' for which he is being questioned was

28  undertaken 'under color' of the federal office.").

1    their registration to include an additional warning in the interim.[3/]   Further investigation

2    subsequently led the EPA to suspend registrations for the use of DBCP on 23 food crops,

3    effectively banning the pesticide's production and use in the U.S., except as to pineapples.

4    See 42 Fed. Reg. 40,911 (Sept. 13, 1978).  Its use on pineapples was subsequently banned in

5    1985.  See 50 Fed. Reg. 1022 (Jan. 1, 1985); 50 Fed. Reg. 46512 (Nov. 8, 1985).  With U.S.

6    sales banned, the chemical companies turned to foreign markets.  Dow contends that by

7    labeling its foreign sales so as to comply with the EPA's September 8, 1977 conditional

8    suspension, it acted at the direction of the EPA.  Section 1442, however, does not stretch this

9    far.  Dow, seeking to sell DBCP to the public, submitted empirical laboratory data on

10   DBCP's physical and chemical properties, beneficial uses, and environmental and health

11   risks, along with a proposed warning label to EPA.  Dow's application was approved, and it

12   abided with the provisions of FIFRA by applying this label to its product.  When the EPA

13   learned the extent of the dangers DBCP presented, it required a provisional warning of the

14   suspected dangers until full tests could be run.  Dow, seeking to continue to sell its pesticide

15   in the interim, included this warning on its containers.  Once banned in the U.S., Dow

16   continued to offer its product for sale abroad, using the same warning.

17        How, then, did Dow operate under an officer of the United States or any of its

18   agencies?  Dow certainly does not assert that it sold DBCP to plaintiffs at the direction of

---

19   [3/]   This warning label needed to identify the specific hazards discovered by the EPA.
      Although not required, the following language, if contained in an amended label, was
20   deemed sufficient:

21                                    WARNING
                               KEEP OUT OF REACH OF CHILDREN
22        Harmful liquid and vapor. Wear a respirator jointly approved by the Mining
23   Enforcement and Safety Administration and National Institute of Occupational Safety and
      Health. Wear impermeable protective fullbody clothing to avoid any skin or eye contact.
24   May be fatal if swallowed, inhaled or absorbed through skin. May cause functional
      infertility. Combustible mixture causes skin irritation and blisters upon prolonged contact.
25   Causes irritation of eyes, nose and throat. May be absorbed though skin. Do not allow
26   material to remain on skin. If clothing or shoes become contaminated, remove them
      promptly and do not wear again until completely free of material.
27
28   See 42 Fed. Reg. 48,920 (Sept. 26, 1977).

1   the EPA. On the contrary, it contends that it acted pursuant to FIFRA's directives. But

2   Dow's theory of removal jurisdiction – that it merely complied with FIFRA's labeling laws

3   – would conceivably provide every defendant subject to labeling requirements with a federal

4   forum. This is simply too broad, and in this Court's opinion, beyond the Congressional

5   mandate of 28 U.S.C. § 1442(a)(1). Dow is not an officer or agency of the United States,

6   nor was Dow's sale of DBCP made pursuant to the direction of such an officer or agency;

7   Dow did nothing more than use an EPA-approved sticker on the containers of DBCP it

8   shipped off to the Nicaraguan banana farms. True, this sticker contained warnings

9   concerning infertility as required by the EPA upon finding that Dow's initially-approved

10  labels inadequately disclosed these dangers. But Dow acted no more at the direction of a

11  federal agency in including these warnings than it did in receiving approval of its own initial

12  registration. When Dow's initial labels were approved, it was because they were reasonable

13  in light of the risks suggested by the tests. As additional risks were identified, the EPA

14  required these risks to also be disclosed. This Court cannot conclude that the EPA dictated

    the conduct of the chemical companies by revising its approval of a risk warning in light of

    new scientific knowledge.

15          While the Court agrees with Dow that FIFRA provides a preemptive federal regime

16  for the regulation of pesticides, and may provide Dow with a credible defense to a claim

17  sounding in failure to warn, Dow's successful registration of DBCP with the EPA and

18  subsequent compliance with FIFRA does not elevate Dow to the status of an person acting

19  under the EPA, and does not present the federal supremacy concerns that the federal officer

20  removal provisions were intended to address. Congress could no more have intended to

21  transform the federal judiciary into a special tort court for those complying with federal

22  labeling requirements, than it had to create a special traffic court for federal employees. See

23  People of State of Cal. v. Mesa, 813 F.2d 960, 967 (9th Cir. 1987) (declining to extend a

24  federal forum to postal workers charged with traffic infractions and driving misdemeanors

25  while driving their mail trucks on duty), aff'd, 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d

    99 (1989).

26          Dow's citation to a recent decision from the United States District Court for the

27  Southern District of New York to support its argument that section 1442(a) "has been

28  construed broadly, and its 'persons acting under' provision particularly so," does not sway

1   this Court otherwise. In re: Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., No.

2   M21-88, MDL No. 1358(SAS), 2004 WL 515535, at *6 (S.D.N.Y. Mar. 16, 2004) (quoting

3   Gurda Farms Inc. v. Monroe County Legal Assistance Corp., 358 F. Supp. 841, 844

4   (S.D.N.Y. 1973)). After reviewing the series of cases examined by the Gurda Farms Court,

5   this Court finds that none of them provide support that section 1442 should be extended to

6   cover a case like the one Dow presents. The survey performed by the Gurda Farms Court

7   included such examples of persons acting at the direction of a federal officer or agency as:

8   federal prohibition agents and the informer working under their authority; a police chief

9   working at the direction of an Air Force caption; a defendant operating a dam under a fifty

10   year license from the Federal Power Commission at the direction of the Army Corps of

11   Engineers; banks operating branches on military bases under the direction of the Secretary of

12   the Treasury; and a private insurance company administering Medicare provisions under

    contract with the federal government.

13       In re MTBE, is distinguishable. There the facts demonstrated that Congress amended

14   the Clean Air Act to allow petroleum refiners to blend oxygenates (MTBE is an oxygenate)

15   into gasoline to reduce toxic emissions. In authorizing these amendments, Congress and the

16   EPA fully understood that MTBE would be used in the vast majority of oxygenated gasoline

17   sold in the United States. See 136 Cong. Rec. S6383 (daily ed. May 16, 1990) (statement of

18   Sen. Daschle). The record before the Court further demonstrated that the EPA knew the risk

19   MTBE posed to groundwater resources at the time. In re MTBE, 2004 WL 515535, at *3.

20   Thus, the Court concluded, "EPA knew that the only way refining companies could meet the

21   requirements promulgated in the [amendments], and thereby comply with the Clean Air Act,

22   was to use MTBE as a gasoline additive. Congress and the EPA therefore effectively

23   directed defendants to use, manufacture and/or sell gasoline that contains MTBE." Ibid.

    (emphasis in original).

24       In re "Agent Orange" Prod. Liab. Litig. (Removal), 304 F. Supp. 2d 442 (E.D.N.Y.

25   2004 (hereinafter "In re Agent Orange Removal"), also cited by Dow for the proposition that

26   intimate involvement of a federal agency in a private party's conduct raises the relationship

27   to a level where it appropriately is equated to "operating under" the agency's direction, sets a

28   consistent standard. Agent Orange was produced and delivered to the government pursuant

    to contracts setting forth detailed specifications as to its manufacture and inspection. See In

re "Agent Orange" Prod. Lib. Litig., 304 F. Supp. 2d 404, 424 (E.D.N.Y. 2004) (hereinafter

"Judgment in Agent Orange III") (setting forth factual record and incorporated by reference

into In re Agent Orange Removal).  As the Court noted, this was not simply a case of

complying with governmental regulations:

> Effectively, the United States commandeered the Newark Plant
> pursuant to the Defense Production Act for use in the national
> defense effort.  The government mandated that the Newark Plant
> produce 2,4,5-T exclusively for use in the production of Agent
> Orange, prohibited the sale of 2,4,5-T to private customers,
> closely monitored production activity, required Diamond to
> account for production and inventory levels, controlled access to
> the crucial starting ingredient, TCB, permitted TCB deliveries
> only for use in making Agent Orange, ordered Diamond to
> accelerate deliveries of Agent Orange, and acted to increase the
> Newark Plant's production capacity by helping to obtain, and
> assigning a priority rating to, material and equipment needed for
> the Plant expansion.  It closely supervised production and tested
> the Agent Orange delivered to ensure that it complied with
> specifications.

Judgment in Agent Orange III, 304 F. Supp 2d at 426.[4/]  Additionally, the record, much as in

the In re MTBE action, demonstrates knowledge on the part of the government as to the

risks posed by Agent Orange:

> At the time it developed its specifications for Agent Orange, the
> United States knew that 2,3,7,8-tetradichlorodibenzo-p-dioxin
> ("dioxin") was at the time formed as a by-product during the
> manufacture of TCP, the intermediate used to produce 2,4,5-T,
> and that dioxin was also present in 2,4,5-T.  It also knew that
> dioxin was believed to be toxic.

Id. at 427.

Dow's claim poses little similarity: there is no claim that the government required

Dow's nematicide to employ DBCP as an active ingredient, or had undertaken any

regulatory action that made it exceedingly likely that DBCP would be employed.  Nor is

there any evidence that the EPA was aware of the dangers it posed to applicators when

approving its use or set aside this concern in favor of furthering other governmental

---

[4/]      Agent Orange is a 50/50 mixture of two herbicides: 2,4-dichlorophenoxyacetic acid
("2,4-T") and 2,4,5-trichlorophenoxyacetic acid ("2,4,5-T"). In addressing the factual
allegations concerning Diamond Shamrock Corporation's manufacture of 2,4,5-T, the Court
noted that the facts establishing a government contractor defense were the same for all the
defendants.

1  interests.  As the Third Circuit has explained, "[t]he mere fact that [the defendant] has

2  complied with the requirements of a federal law cannot suffice to transform it into a federal

3  actor any more than the compliance of a myriad of private enterprises with federal law and

4  administrative regulations could of itself work such a transformation."  Brown v. Philip

5  Morris Inc., 250 F.3d 789, 801 (3d Cir. 2001).

6        Having reviewed the record, Dow does not qualify as a federal officer or agency (or

7  an entity acting pursuant to the directives of a federal officer or agency), and therefore

8  cannot avail itself of the removal provisions of 28 U.S.C. § 1442(a)(1).  Accordingly, the

9  Court remands the action to the Superior Court of the State of California for the County of

10  Los Angeles for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

11        IT IS SO ORDERED.

12  DATED: June 17, 2004

13

14                                                Percy Anderson
                                         UNITED STATES DISTRICT JUDGE

-9-

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 1 4 2005

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**MDL Docket No. 1358**

| | |
|---|---|
| CITY OF MERCED, | ) United States District Court, |
| | ) Eastern District of California, |
| Plaintiff, | ) C.A. No. 1:05-662 |
| | ) (Judge Robert E. Coyle) |
| v. | ) |
| | ) |
| CHEVRON U.S.A., INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S SCHEDULE OF ACTION

1

Plaintiff hereby submits the following Schedule of Action pursuant to Rule 7.2(a)(ii) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.

A.    The short title of this action is City of Merced v. Chevron U.S.A., Inc., et al.[1]

Plaintiff is:  City of Merced.  Defendants are:  Chevron U.S.A., Inc.;  Shell Oil Company;  ExxonMobil Corporation;  Exxon Corporation;  Kinder Morgan Energy Partners L.P.;  Equilon Enterprises LLC;  SFPP, L.P.;  and Does 1 through 200, inclusive.

B.    The district court and division in which this action is pending is the United States District Court, Eastern District of California, Fresno Division.

C.    The civil action number is 1:05-662.

D.    The judge assigned to this action is the Honorable Robert E. Coyle.

Respectfully submitted,

Dated:  July 13, 2005

**MILLER, AXLINE & SAWYER**
A Professional Corporation

By: _Michael Axline_

MICHAEL AXLINE
Attorneys for Plaintiff
Miller, Axline & Sawyer
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825
Telephone:  (916) 488-6688

---

[1] Plaintiff notes that the Conditional Transfer Order has styled the case City of Merced v. Exxon Mobil Corp., et al., but the defendant named first in the Complaint is Chevron U.S.A., Inc.

2