JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 1358**

SEP 30 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL DOCKET NO. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *Anthony Sanguino, et al. v. Bain's* |
| | ) *Automotive, Inc., et al.* |
| **IN RE:** | ) |
| | ) **EXXON MOBIL CORPORATION'S** |
| **METHYL-TERTIARY BUTYL ETHER** | ) **RESPONSE TO PLAINTIFFS' MOTION** |
| **PRODUCTS LIABILITY LITIGATION** | ) **TO VACATE CONDITIONAL** |
| | ) **TRANSFER ORDER (CTO-15)** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Defendant, Exxon Mobil Corporation ("ExxonMobil"), pursuant to Rule 7.1(b) of the

Rules of Procedure of the Judicial Panel for Multidistrict Litigation, submits the following in

Response to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-15).

1.      Admitted.

2.      Denied as stated.  The cases that have been joined to MDL 1358 share products

liability claims made by states, counties, municipalities, water districts, corporations and

individuals based upon the actual or threatened contamination of groundwater by MTBE and/or

TBA.  The complaints in these cases also allege various other claims – failure to warn, nuisance,

negligence – all arising from the defendants' production, manufacture, sale and/or use of

gasoline containing MTBE and/or TBA.

3.      Denied as stated.  The cases pending in MDL 1358 are brought against refiners,

distributors and marketers of gasoline.  The complaints in these cases contain allegations

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2005 SEP 29  P 15

RECEIVED
CLERK'S OFFICE

**PLEADING NO. 203**

regarding defendants' knowledge of and representations about MTBE and 2) of MTBE contamination of groundwater. In addition, various cases in MDL 1358 are only against one or a small number of refiners, distributors and/or marketer defendants. The complaints in these cases similarly contain allegations 1) regarding defendants' knowledge of and representations about MTBE and 2) of MTBE contamination of groundwater.

4.    Admitted.

5.    Admitted.

6.    Admitted.

7.    Denied. The averments in Paragraph 7 of Plaintiffs' Motion to Vacate contain legal conclusions to which no response is required. To the extent a response is required to these legal conclusions, ExxonMobil incorporates its Brief in Response to Plaintiffs' Motion. To the extent that Paragraph 7 contains factual allegations for which a response is required, ExxonMobil acknowledges the following: that Plaintiffs and Bain's Automotive, Inc. are not named in any of the cases consolidated in MDL 1358; that ExxonMobil and Bain's Automotive, Inc. are the only named defendants in this action to date, however, Plaintiffs have named several fictitious defendants; that Plaintiffs are individuals; and, that the MDL cases and the *Sanguino* matter both involve allegations of contamination to groundwater. It is specifically denied that all plaintiffs in the MDL are all states, towns and municipalities. The cases that have been joined to MDL 1358 share products liability claims made by states, counties, municipalities, water districts, corporations and individuals.

For the foregoing reasons and those stated in the accompanying memorandum, Defendant ExxonMobil respectfully requests that the Panel deny Plaintiffs' Motion to Vacate the Conditional Transfer Order (CTO-15).

Respectfully submitted,

*Stephen J. Riccardulli /SEH*

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

Marc A. Rollo
Daniel J. Bitonti
ARCHER & GREINER
One Centennial Square
Haddonfield, New Jersey 08033
(856) 795-2121
(856) 795-0574
Attorneys for Defendant Exxon Mobil Corporation

Dated: September 29, 2005

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 30 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| | ) | **MDL DOCKET NO. 1358** |
| | ) | |
| | ) | This Document Relates to: |
| | ) | |
| | ) | *Anthony Sanguino, et al. v. Bain's* |
| | ) | *Automotive, Inc., et al.* |
| **IN RE:** | ) | |
| | ) | **EXXON MOBIL CORPORATION'S** |
| **METHYL-TERTIARY BUTYL ETHER** | ) | **BRIEF IN OPPOSITION TO** |
| **PRODUCTS LIABILITY LITIGATION** | ) | **PLAINTIFFS' MOTION TO VACATE** |
| | ) | **CONDITIONAL TRANSFER ORDER** |
| | ) | **(CTO-15)** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2005 SEP 29  P 4: 15

RECEIVED
CLERK'S OFFICE

## TABLE OF CONTENTS

Page

BACKGROUND...................................................................................1

I.      CREATION OF MDL 1358............................................................1

II.     PROCEEDINGS IN MDL 1358. ....................................................2

III.    THE PANEL'S DENIAL OF MOTIONS TO VACATE PARTS OF CTO-4 AND CTO-54

ARGUMENT......................................................................................5
I.      THE OBJECTED-TO ACTION IS CLEARLY A TAG-ALONG CASE THAT IS APPROPRIATELY TRANSFERRED TO MDL 1358.............................................5

        A.      The Actions Raise The Same Common Questions Of Fact As The Other Cases Transferred To MDL 1358......................................................5

        B.      Transferring The Case Will Serve The Convenience Of The Parties And Witnesses And Prevent Duplicative Discovery. ...............................6

        C.      Giving Effect To The CTO Is Necessary For The Efficient Conduct Of The Litigation, Avoiding Inconsistent Pretrial Rulings, And Judicial Economy...............7

II.     NONE OF THE ARGUMENTS IN THE MOTION TO VACATE MERIT VACATING CTO-15. ....................................................................8

        A.      Plaintiffs' Complaint Raises the Same "Common Questions" as Cases Previously Transferred to MDL 1358.............................................8

        B.      The Presence of Common Questions of Predominate over Individual Questions of Fact and Consolidation would Serve the Convenience of the Parties and Witnesses....................................................10

        C.      The Presence Of Common Issues Makes Transfer Appropriate Despite The Objectors' Allegations of Local Issues.........................................14

        D.      The Lack of Commonality Amongst the Parties is Not a Basis in the Determination of Transfer..........................................................15

# TABLE OF AUTHORITIES

## CASES

Hope Koch, et al. v. John R. Hicks
    C.A. No. 1:04-3345 (D. Md.)………………………………………………...4

James Quinn, et al. v. Shell Oil, Inc., et al.,
    C.A. No. 3:04-5180 (N.D. Cal.)……………………………………………....4

In re Armored Car Antitrust Litig.,
    462 F. Supp. 394 (J.P.M.L. 1978)……………………………………………7,8

In re Asbestos and Asbestos Material Products Liab. Litig.,
    771 F. Supp. 415 (J.P.M.L. 1991)…………………………………………...15

In re Beef Indus. Antitrust Litig.,
    No. 248, 1977 WL 1559 (J.P.M.L. 1977)…………………………………11, 14

In re Bridgestone/Firestone, Inc.,
    2000 WL 33416573 (J.P.M.L Oct. 24, 2000)………………………………….9

In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.,
    424 F. Supp.504 (J.P.M.L. 1976)..............................................................12, 13

In re Continental Grain Co., Inc.,
    482 F. Supp. 330 (J.P.M.L. 1979).................................................................9

In re Crown Life Ins. Premium Litig.,
    178 F. Supp. 2d 1365 (J.P.M.L. 2001)………………………………………..7

In re Cuisinart Food Processor Antitrust Litig.,
    506 F. Supp. 651 (J.P.M.L. 1981).......................................................11, 13, 14

In re Cygnus Telecomms. Tech., LLC, Patent Litig.,
    177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001)……………………………….13

In re Data General Corp. Antitrust Litig.,
    510 F. Supp. 1220 (J.P.M.L. 1979)…………………………………………...7,8

In re Dep't of Energy Stripper Well Exemption Litig.,
    472 F. Supp. 1282 (J.P.M.L. 1979)………………………………………11, 14

In re Down Chem. Co. Sarabond Prods. Liab. Litig.,
    650 F. Supp. 187 (J.P.M.L. 1986)………………………………………….12

In re Falstaff Brewing Corp. Antitrust Litig.,
    434 F. Supp. 1225 (J.P.M.L. 1977)……………………………………………………12

In re "Fine Paper" Antitrust Litig.,
    453 F. Supp. 118 (J.P.M.L. 1978)…………………………………………………….7,8

In re Holiday Magic Sec. & Antitrust Litig.,
    375 F. Supp. 1400 (J.P.M.L. 1974)……………………………………………………..9

In re Methyl Tert Butyl Ether Products Liab. Litigation,
    342 F. Supp. 2d 147 (S.D.N.Y. 2004)…………………………………………………..9

In re Mosaid Tech., Inc. Patent Litig.,
    283 F. Supp.2d 1359 (J.P.M.L. 2003)………………………………………………...12

In re Multi-Piece Rim Products Liab. Litig.,
    464 F. Supp. 969 (J.P.M.L. 1979)……………………………………………………..11

In re 1980 Decennial Census Adjustment Litig.,
    506 F. Supp. 648 (J.P.M.L. 1977)…………………………………………………11, 14

In re Oil Spill by The "Amoco Cadiz" Off the Coast of France on March 16, 1978
    471 F. Supp. 473, 477 (J.P.M.L. 1979)………………………………………………..13

In re Phenylpropanolamine (PPA) Prods. Liabl. Litig.,
    173 F. Supp. 2d 1377 (J.P.M.L. 2001)…………………………………………………9

In re Sugar Indus. Antitrust Litig.,
    437 F. Supp. 1204 (J.P.M.L. 1977)…………………………………………………8, 12

In re Viatron Computer Systems,
    462 F. Supp. 382 (J.P.M.L. 1978)……………………………………………………..12

## INTRODUCTION

The undersigned defendant supports this Panel's Conditional Transfer Order (CTO-15), requests that Plaintiffs' motion to vacate any part of CTO-15 be denied, and urges that the *Anthony Sanguino, et al. v. Bain's Automotive, Inc.* case be transferred to MDL 1358.

Although the Panel has already transferred over seventy MTBE actions to MDL 1358 since February 2004, the plaintiffs have filed a motion to vacate the transfer of this MTBE case. This case raises the same common questions of fact -- e.g., what defendants knew and represented about MTBE, whether gasoline with MTBE is a defective product, and whether plaintiffs' water was contaminated by MTBE -- that have led to the transfer of over seventy MTBE actions to MDL 1358. The parties to these actions should receive the benefits of convenience, justice, and efficiency resulting from centralized proceedings under a judge experienced in MTBE litigation.

The Plaintiffs principally assert well-worn objections that this MTBE action concerns local facts regarding alleged contamination. However, as the Panel well knows, these arguments repeatedly have been rejected as a basis for denying multi-district treatment. Indeed, they were rejected in the very decisions that established MDL 1358 and denied motions to vacate parts of CTO-4 and CTO-5, as well as CTO-11. Therefore, this MTBE case should join the other seventy-plus actions that have been transferred to the Southern District of New York for consolidated proceedings.

## BACKGROUND

### I.   CREATION OF MDL 1358.

The Panel created MDL 1358 on October 10, 2000 to centralize two putative class actions brought by private well owners. (MTBE Transfer Order, Ex. A). The Panel found that

1

the actions involved two common questions of fact: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (*Id.*) The Panel explained that centralization would be more convenient for parties and witnesses, promote justice and efficiency, avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. (*Id.*)

In reaching these conclusions, the Panel explicitly rejected the central argument made by the objector here: that individual factual questions for each location weighed against Section 1407 proceedings. (*Id.* at 1-2.) The Panel found that putting the cases before a single judge would have the "salutary effect" of allowing the coordination of both non-common and common issues. (*Id.*) Pursuant to the Transfer Order, Judge Scheindlin of the Southern District of New York became the transferee judge for the MTBE cases.

## II.  PROCEEDINGS IN MDL 1358.

Starting in 2000, Judge Scheindlin has spent several years managing MDL 1358, becoming extensively familiar with the facts and legal theories presented by MTBE cases. The MDL 1358 Court ruled on various substantive motions, including defendants' motions to dismiss and plaintiffs' motion for class certification. Judge Scheindlin also oversaw class certification and other discovery, including creation of a document depository in New York. Judge Scheindlin entered a document preservation order, oversaw electronic and paper document production, and had the parties create an MDL 1358 website.

Beginning in Fall 2003, a new round of MTBE cases were filed in state courts throughout the nation, seeking to impose conflicting state standards on refiners' use of MTBE in gasoline to satisfy federal requirements. In many of these cases, the plaintiffs are municipalities or water

authorities but some still are brought by private well owners. The allegations and claims remain the same as in the original MDL 1358 actions. The complaints assert product liability, nuisance, trespass, negligence and other claims. All of the complaints allege that plaintiffs' water supplies have been (or are threatened with becoming) contaminated by gasoline with MTBE and that the defendants misrepresented the nature of MTBE.

In response to this mass of MTBE cases, defendants began removing the cases to federal court with the goal of having a single court issue uniform rulings. Immediately after removal, the defendants began filing tag-along notices alerting the Panel that the new actions were subject to transfer pursuant to the October 2000 Order in MDL 1358. This Panel began issuing CTOs in February 2004 and has continued through the present day, with thirteen CTOs being issued so far. Over seventy cases have been transferred to Judge Scheindlin as presiding judge of MDL 1358 based on the Panel's finding that the MTBE cases involve common questions of fact with actions previously transferred.

Since receiving this new wave of MTBE actions, Judge Scheindlin has promptly undertaken the management of the cases.[1] Judge Scheindlin has held several status conferences, issued rulings denying the various plaintiffs motion for remand, entered several Case Management Orders ("CMO"), considered motions to dismiss based on personal jurisdiction, appointed a Special Master to manage discovery, and selected four "focus cases" to help guide the resolution of the scores of other pending cases. In short, the MDL 1358 Court has extensive expertise in managing all aspects of MTBE cases like the Objected-To Action.

---

[1] MDL 1358 became temporarily inactive in the Southern District of New York after the Court denied the private-well-owner plaintiffs' motion for class certification on July 16, 2002.

## III.   THE PANEL'S DENIAL OF MOTIONS TO VACATE PARTS OF CTO-4 AND CTO-5

The Plaintiffs' motion to vacate CTO-15 is not the first time the Panel has adjudicated efforts to prevent the efficient coordination of MTBE cases.  In early 2004, plaintiffs including the State of New Hampshire, the People of California, various California counties or municipalities, and two California defendants (Duke Energy and Fuel/Blue Star) all filed motions to vacate portions of CTO-4 and CTO-5 to prevent their cases from being transferred to MDL 1358.  Among other assertions, these objectors claimed that all common discovery involving MTBE had been completed either in the earlier phase of MDL 1358 or in various California state actions, including *South Tahoe*.[2]  They also argued that most common legal issues related to MTBE had already been decided and thus there was no risk of inconsistent rulings.[3]  Finally, they claimed that the issues remaining in MTBE actions involved location-specific rather than common issues.[4]  The Panel rejected all of these arguments in a Transfer Order entered on June 16, 2004, and ordered that these various cases be transferred to Judge Scheindlin.  (Transfer Order, Ex. H).

Most recently, the Panel rejected similar arguments in transferring *James Quinn, et al. v. Shell Oil, Inc., et al.*, N.D. California, C.A. No. 3:04-5180 and *Hope Koch, et al. v. John R. Hicks*, et al., D. Maryland, C.A. No. 1:04-3345 to MDL 1358.   (Transfer Order, Ex. I).

---

[2]  Br. in Support of State of N.H.'s Motion to Vacate CTO-4 ("N.H. Br.") at 17-21, attached as Ex. B; Cal-Amer.'s Mot. to Vacate CTO-4 ("Cal-Am. Br.") at 17, attached as Ex. C; Duke Energy Mem. in Support of Mot. to Vacate CTO-4 ("Duke Energy Mem.") at 7-10, attached as Ex. D; Br. in Support of Plaintiffs' Motion to Vacate CTO-5 ("Cal. Pls. Br.") at 14-20, attached as Ex. E); Fuel/Blue Star Mem. in Support of Mot. to Vacate CTO-5 ("Fuel/Blue Star. Mem") at 7-10, attached at Ex. F.

[3]  N.H. Br. at 21-23; Cal-Am. Br. at 16-18; Cal. Pls. Br. at 20; Fuel/Blue Star Mem. at 10-11; Br. of People of the State of California in Support of Mot. to Vacate CTO-5 ("People Br.") at 18-19, attached as Ex. G.

# ARGUMENT

Counting the cases removed to the Southern District of New York, approximately seventy MTBE cases have now been consolidated in MDL 1358 before Judge Scheindlin. There is no reason for excluding the Objected-To Action from the benefits of coordination, efficiency, and consistency that MDL 1358 is providing. This action is a classic tag-along case that easily meet the standards for transfer. Conversely, the arguments offered for the motions to vacate are just the type that the Panel routinely rejects.

## I. THE OBJECTED-TO ACTION IS CLEARLY A TAG-ALONG CASE THAT IS APPROPRIATELY TRANSFERRED TO MDL 1358.

Each of the reasons identified in the Transfer Order establishing MDL 1358 -- common questions of fact, convenience of parties and witnesses, just and efficient conduct of the litigation, avoiding duplicative discovery, avoiding inconsistent pretrial rulings, and judicial economy -- apply to the Objected-To Action here.

### A. The Actions Raise The Same Common Questions Of Fact As The Other Cases Transferred To MDL 1358.

Both common questions of fact found by the Panel in the MTBE Transfer Order are clearly at issue in the Objected-To Action. As stated by the Panel, those common questions include "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public" and "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination." (MTBE Transfer Order, Ex. A; see also Transfer Order, Ex. I). The complaint alleges that:

---

4  N.H. Br. at 14-16; Cal-Am. Br. at 13-16; Duke Energy Mem. at 6-7; Cal. Pls.' Br. at 14-20; People Br. at 13-15; Fuel/Blue Start Mem. at 10.

- "Despite Exxon's past and current knowledge of MTBE's negative characteristics, Exxon has placed, and continues to place MTBE laced gasoline into the stream of commerce without taking any special precautions to prevent MTBE discharges to people's drinking water... Exxon should have properly educated and warned the appropriate government agencies, gasoline station owners and operators, and the public of MTBE's negative environmental characteristics." (Compl. ¶¶ 30-31)

- "Defendants failed to warn appropriate government agencies, gasoline station operators and potentially impacted public that MTBE had the propensity to contaminate water, including Plaintiffs' drinking water." (Compl. ¶ 56)

- "All defendants placed MTBE, a defective product, into the stream of commerce." (Compl. ¶ 53)

- "Exxon and Bain's intentionally, negligently and/or recklessly placed MTBE-laced gasoline into the stream of commerce without warning of its dangers." (Compl. ¶ 15)

- "Plaintiffs discovered that they had MTBE and/or lead TBA and/or BTEX in their drinking water." (Compl. ¶ 18)

In short, the *Sanguino* action raises identical common questions of fact as the MTBE actions already transferred to MDL 1358. In addition, the *Sanguino* Complaint alleges similar causes of action seeking identical relief as other cases in MDL 1358 such as strict products liability, nuisance, negligence and trespass. (Compl. ¶¶ 27-50, 51-60, 76-80, 81-88).

## B.   Transferring The Case Will Serve The Convenience Of The Parties And Witnesses And Prevent Duplicative Discovery.

The same convenience to parties and witnesses and avoidance of duplicative discovery that supported the creation of MDL 1358 warrants transfer of the Objected-To Action. The action involves the same factual allegations, similar claims, and, at this time, is brought against at least one of the same defendant as the cases already transferred to MDL 1358. Thus, this case will involve discovery on many of the same factual issues. That discovery should proceed in a coordinated fashion in the MDL 1358 Court. Indeed, Judge Scheindlin already is managing

significant MTBE discovery.  Having document production and depositions occur in a single

centralized proceeding will avoid duplicative discovery and be more convenient for parties and

witnesses than producing the same documents and witnesses over and over.  *In re Data General*

*Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227 (J.P.M.L. 1979) (transferring cases under CTO to

"avoid duplicative discovery and prevent waste of resources by the parties, their counsel and the

courts."); *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) (transferring

action brought by State of Maryland pursuant to CTO "to eliminate the potential for duplicative

discovery, inconsistent pretrial rulings and waste of judicial resources."); *In re "Fine Paper"*

*Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (transferring cases covered by CTO "to

prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial

rulings").

      **C.**     **Giving Effect To The CTO Is Necessary For The Efficient Conduct Of The Litigation, Avoiding Inconsistent Pretrial Rulings, And Judicial Economy.**

The MDL 1358 Court already has considered motions to remand MTBE cases for lack of

subject matter jurisdiction and motions to dismiss for lack of personal jurisdiction over certain

parties and for failure to state a claim.  The undersigned defendant anticipates that it will file

motions for summary judgment and other motions for the Objected-To Action that largely

duplicate the motions that will be filed for the cases already transferred to MDL 1358.  Judge

Scheindlin's Case Management Orders establish procedure for such motions as well as for other

summary judgment motions.  (see Judge Scheindlin CMOs, collectively attached as Ex. K).

Filing these motions in multiple courts rather than only before Judge Scheindlin runs a high risk

of conflicting rulings.  Additionally, allowing this action to proceed separately from MDL 1358

will likely result in conflicting discovery schedules and case management orders.

There simply is no need to consume judicial resources by having multiple courts each familiarize themselves with the issues presented by MTBE litigation and consider and rule on the same questions. This is especially true given that Judge Scheindlin is well versed in the facts and the law of the cases. *E.g., In re Crown Life Ins. Premium Litig.*, 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001) (noting that "judge's familiarity with this [MDL] docket furthers the expeditious resolution of the litigation taken as a whole."); *In re Sugar Indus. Antitrust Litig. (East Coast)*, 437 F. Supp. 1204, 1208 (J.P.M.L. 1977) (same). Thus, centralizing the Objected-To Action with the other MTBE cases is appropriate. *See In re Data General*, 510 F. Supp. at 1227; *In re Armored Car*, 462 F. Supp. at 396; *In re "Fine Paper,"* 453 F. Supp. at 121.

## II.    NONE OF THE ARGUMENTS IN THE MOTION TO VACATE MERIT VACATING CTO-15.

Despite the almost identical nature of the allegations between the Objected-To Action and the cases now centralized in MDL 1358, the Plaintiffs have moved to vacate CTO-15. None of the objections by the parties who have moved to vacate withstands scrutiny -- in fact, the Panel regularly rejects similar arguments. First, Plaintiffs rely on the arguments in their remand motion as basis to defeat transfer, despite clear authority to the contrary. Second, the Plaintiffs erroneously argue that common questions of fact do not predominate over individual. Third, the Plaintiffs claim that local issues prevail over common ones, an argument previously rejected by this Panel when it created MDL 1358 and again when it denied the motions to vacate CTO-4 and CTO-5. Finally, Plaintiffs argue that there is a lack of commonality amongst the parties.

### A.    Plaintiffs' Complaint Raises the Same "Common Questions" as Cases Previously Transferred to MDL 1358.

Plaintiffs argue that CTO-15 should be vacated because the "common question" presented in MDL 1358 is different than the legal basis alleged in the *Sanguino* matter. Plaintiffs continue that because its case alleges only "failure to warn" with respect to MTBE, transfer to

MDL 1358 is inappropriate because federal jurisdiction is lacking in "failure to warn" cases. Plaintiffs' argument is factually inaccurate and ignores the realities of this case.

The Plaintiffs argue that its lawsuit is different than the cases in MDL 1358 because the "crux of Plaintiffs' case against Exxon is that Exxon failed to warn Plaintiffs of MTBE's carcinogenic qualities and its propensity to contaminate water." Plaintiffs' Brief at 3. Plaintiffs' argument is flawed for two reasons. First, Plaintiffs ignore the fact that allegations they have raised against ExxonMobil are not limited to a "failure to warn" claim. Rather, Plaintiffs allege that MTBE itself is a defective product. Complaint ¶ 52. Thus, Plaintiffs' Complaint does not only raise "failure to warn" allegations.

Second, Plaintiffs ignore the fact that its theories of failure to warn, negligence, trespass, and nuisance are present in virtually every MTBE action transferred to MDL 1358. Complaint ¶ 27-50, 51-60, 76-80,81-88; *In re Methyl Tert Butyl Ether Products Liab. Litigation*, 342 F. Supp. 2d 147, 150 (S.D.N.Y. 2004)(complaints in MDL 1358 include causes of action for negligence, failure to warn and nuisance).

Moreover, Plaintiffs ignore legal authorities holding that the presence of different or additional legal theories does not support having factually similar cases proceed in different forums. *See In re Bridgestone/Firestone, Inc.* 2000 WL 33416573, at *2 ("Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core").

Finally, if the plaintiffs believe they have different legal theories for remand, they can present those theories to the MDL Court. As explained before, however, the presence of different or additional legal theories (in this case relating to remand) does not support having factually similar cases proceed in different forums. *See, e.g., In re Phenylpropanoline (PPA)*

*Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001); *In re Bridgestone/Firestone, Inc.*, 2000 WL 33416573, at *2; *In re Continental Grain Co.*, 482 F. Supp. 330, 332 (J.P.M.L. 1979); *In re Holiday Magic Sec. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974). The Plaintiffs seek to prove that its claims fall within an exception to previous decisions; ExxonMobil contends just the opposite, and the MDL 1358 Court is in the best position to decide whether to remand the matter.

**B.      The Presence of Common Questions of Predominate over Individual Questions of Fact and Consolidation would Serve the Convenience of the Parties and Witnesses**

Despite Plaintiffs' arguments to the contrary, the same common questions of fact found by the Panel in the MTBE transfer order are clearly at issue here.  Furthermore, these common questions - whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public and whether plaintiffs sustained drinking water contamination as a result of MTBE contamination – predominate over individual questions of fact as they do in other cases transferred to MDL 1358 by the Panel.

Plaintiffs argue that these common questions are overshadowed by the individual questions of fact because this action involves a single property owner and a single service station.  This argument has been repeatedly rejected by the Panel.  For example, the Panel rejected the Plaintiffs' arguments in its October 2000 Order establishing MDL 1358, where the Panel noted that opponents of transfer argued "that the presence of individual questions of fact militate against 1407 transfer" but responded that transfer would allow "pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." (MTBE Transfer Order at 1-2).

Likewise, the various objectors to CTO-4 and CTO-5 argued this issue at length in the

motions to vacate, which the Panel denied.  *Supra* at page 2.  The Panel specifically addressed

whether local questions of fact should prevent transfer:

> Opponents argue that the presence of individual and/or local
> questions of fact as well as differing legal theories in these actions
> should militate against inclusion of these actions in Section 1407
> proceedings.  We are unpersuaded by these arguments.  Indeed, we
> point out that the inclusion of these actions in Section 1407
> proceedings has the salutary effect of placing all the related actions
> before a single judge who can formulate a pretrial program that: 1)
> prevents repetition of previously considered matters; 2) allows
> pretrial proceedings with respect to any non-common issues to
> proceed concurrently with pretrial proceedings on common issues,
> *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp.
> 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings
> will be conducted in a manner leading to the just and expeditions
> resolution of all actions to the overall benefit of the parties.

(MTBE Transfer Order at 2); *See also* Exs. H and I, (6/14/04 and 6/17/05 Transfer
Orders)("Panel unpersuaded by Plaintifs' argument that the presence of individual and/or local
questions of fact as well as differing legal theories should militate against inclusion of these
actions in Section 1407 proceedings").

These decisions were grounded in well-established precedent.  *See In re Cuisinart Food*

*Processor Antitrust Litig.*, 506 F. Supp. 651, 654-55 (J.P.M.L. 1981)(rejecting argument that

transfer was inappropriate because some actions involved "unique or localized factual issues.");

*In re Dep't of Energy Stripper Well Exemption Litig.*, 472 F. Supp. 1282, 1285-86 (J.P.M.L.

1979) (same); *In re 1980 Decennial Census Adjustment Litig.*, 506 F.Supp. 648, 651 (J.P.M.L.

1981); *In re Beef Indus. Antitrust Litig.*,  No. 248, 1977 WL 1559, at *2 (J.P.M.L. June 7, 1977).

Any allegedly unique issues can be handled by Judge Scheindlin or dealt with after remand to the

transferor court.

The overriding principle here is that cases involving common issues should be transferred even if some localized issues are involved. That the cases will involve some localized discovery (as indeed every MTBE case will) is not a reason for denying transfer. Judge Scheindlin can structure the common and local discovery to maximize efficiency among the dozens of MTBE actions. *In re 1980 Decennial Census*, 506 F.Supp. 648, 651 (J.P.M.L. 1981) ("the transferee judge . . . has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular geographic area or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation"); *In re Beef Indus.*, 1977 WL 1559, at *2 (rejecting argument by CTO opponents that their actions were in a "geographically concentrated market area in and around Iowa to which discovery will be restricted, whereas the [previously transferred] actions involve a national market and a nationwide discovery program" and ordering transfer). Likewise, depositions and discovery of New Jersey witnesses can occur locally instead of in New York. *See In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506-07 (J.P.M.L. 1976); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1228 (J.P.M.L. 1977). Moreover, any inconvenience and expense to the objectors is a parochial concern at best and is outweighed by the overall cost savings to ***all*** parties that will be achieved by including their matters in the coordinated MDL 1358 proceeding. *See In re Sugar Indus. Antitrust Litig.*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979); *In re Viatron Computer Systems*, 462 F. Supp. 382, 389 (J.P.M.L. 1978).

The need to coordinate the use of prior discovery from MTBE cases, remaining common discovery, and discovery on issues unique to each case only confirms that MTBE cases like the *Sanguino* matter should be transferred to the MDL 1358 Court. As this Panel has explained previously in rejecting arguments very similar those by the objectors' here:

> [T]ransfer under Section 1407 will have the salutary effect of
> placing fourteen actions presently pending in eight districts before
> a single judge who can formulate a pretrial program that: 1)
> enables appropriate discovery already completed in earlier actions
> to be made applicable to actions that are later filed; 2) if
> appropriate, allows discovery with respect to any unique issues to
> proceed concurrently with discovery on common issues . . .

*In re Dow Chem. Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L.

1986).[5]   *See In re Mosaid Tech., Inc. Patent Litig.*, 283 F. Supp.2d 1359, 1360 (J.P.M.L. 2003)

(rejecting objectors' proposed alternatives to Section 1407 transfer because MDL transfer

provides more comprehensive mechanism for addressing discovery issues).[6]

In fact, the objectors' argument here that discovery unique to each case predominates

over common discovery is simply another version of the argument rejected by the Panel in

creating MDL 1358.  In creating MDL 1358, the Panel overruled objections that site-specific

issues dominated common ones, answering that transfer would allow "pretrial proceedings with

respect to any non-common issues to proceed concurrently with pretrial proceedings on common

issues." (MTBE Transfer Order at 1-2)  The MDL 1358 Court has significant experience in

managing discovery in MTBE cases.  That Court is most capable of determining what discovery

---

[5]  *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transferring cases even though "most of the relevant discovery" on common issues had already been conducted and could be made available to the parties because "transfer under Section 1407 has the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions."); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 655 ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issue unique to a particular action or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation).

[6]  *See also In re IBP Continental Bus. Docs. Litig.*, 491 F. Supp. 1359, 1361 (J.P.M.L. 1980) (suggestion by opponents of transfer that parties informally cooperate regarding discovery rejected as inadequate); *In re Oil Spill by The "Amoco Cadiz" Off the Coast of France on March 16, 1978*, 471 F. Supp. 473, 477 (J.P.M.L. 1979) (rejecting argument by nation of France that making prior production, which amounts to hundreds of thousands of documents, available to all parties was an adequate substitute for transfer under Section 1407); *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506 (J.P.M.L. 1976) (rejecting objectors' proposal that parties voluntarily cooperate regarding discovery; explaining that the Panel "prefers to place the actions under the control of a single judge in order to ensure that the objectives of Section 1407 are met.").

remains to be done as well as creating a program for coordinating discovery among all the

MTBE actions currently pending in federal court.

Finally, Plaintiffs argue, without citing to any supporting legal authority, that CTO-15

should be vacated because "the other cases in the MDL do not require the type of urgent judicial

action that is needed in the instant matter." Plaintiffs' Brief at 6. The basis of this argument is

that Plaintiffs are private homeowners who allege that MTBE is in the ambient air in their home.

This argument is without merit as Judge Scheindlin can structure the common and local

discovery to maximize efficiency among the dozens of MTBE actions. *See In re 1980 Decennial*

*Census*, 506 F.Supp. at 651 ("the transferee judge . . . has the authority to schedule discovery and

other pretrial proceedings on any issues unique to a particular geographic area or party to

proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing

the efficient conduct of all aspects of this litigation").

### C.    The Presence Of Common Issues Makes Transfer Appropriate Despite The Objectors' Allegations of Local Issues.

The Plaintiffs re-state their argument that location-specific issues predominate in their

cases and render transfer inappropriate, even though the Panel has rejected this argument

repeatedly. Every MTBE case involve questions Plaintiffs raise here of where the contamination

occurred and the extent of damages, and yet over seventy cases have been transferred to MDL

1358.

As explained more fully above, the Panel already rejected the Plaintiffs' arguments in its

October 2000 Order establishing MDL 1358. In rejecting the argument of transfer opponents

"that the presence of individual questions of fact militate against 1407 transfer," the Panel but

responded that transfer would allow "pretrial proceedings with respect to any non-common

14

issues to proceed concurrently with pretrial proceedings on common issues." (MTBE Transfer Order at 1-2); *See also* Exs. H and I (6/14/04 and 6/17/05 Transfer Orders). *See In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 654-55 (rejecting argument that transfer was inappropriate because some actions involved "unique or localized factual issues."); *In re Dep't of Energy Stripper Well Exemption Litig.*, 472 F. Supp. at 1285-86 (same); *In re 1980 Decennial Census Adjustment Litig.*, 506 F.Supp. at 651; *In re Beef Indus. Antitrust Litig.*, No. 248, 1977 WL 1559, at *2. Any allegedly unique issues can be handled by Judge Scheindlin or dealt with after remand to the transferor court.

### D. The Lack of Commonality Amongst the Parties is Not a Basis in the Determination of Transfer

Plaintiffs argue that a lack of commonality amongst the Parties in this matter warrants the granting of their Motion to Vacate CTO-15. This argument, too, is without merit. Commonality among the parties is not a factor in determining whether cases are transferred to an MDL. Plaintiffs candidly point out that the case cited in support of this proposition, *In re Asbestos and Asbestos Material Products Liability Litigation*, 431 F. Supp. 906 (J.P.M.L. 1977) is not considered good law. *See In re Asbestos and Asbestos Material Products Liability Litigation*, 771 F. Supp. 415 (J.P.M.L. 1991).

Furthermore, assuming arguendo, that commonality among the parties is a factor in making such determination, such commonality exists here as ExxonMobil is a party to all cases in MDL 1358.

### CONCLUSION

Well over seventy MTBE cases already have been transferred to MDL 1358 for pre-trial coordination. Judge Scheindlin, presiding over MDL 1358, has welcomed these cases and can

be expected to bring experience and expertise to bear in guiding the MTBE actions forward.  In light of the substantial economies to be saved, the justice and efficiency to be achieved, and the inconsistencies to be avoided, the objectors who filed motions to vacate should not be permitted to splinter off the Objected-To Action to the detriment of the other participants.  This is especially true where the only arguments the objectors can offer have been rejected time and again by this Panel.  Therefore, for the reasons stated above, the undersigned defendants respectfully request that the Panel deny all pending motion to vacate any part of CTO-15 and order the transfer of *Sanguino* to MDL 1358 for coordinated and consolidated pretrial proceedings.

September 29, 2005

Respectfully submitted,

*Stephen J. Riccardulli / SEB*

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, NY 10020-1605
(212) 547-5400
(212) 547-5444 (Facsimile)

and

Marc A. Rollo
Daniel J. Bitonti
ARCHER & GREINER
One Centennial Square
Haddonfield, New Jersey 08033
(856) 795-2121
(856)795-0574
Attorneys for Defendant Exxon Mobil Corporation

2007473v1

16

JUDICIAL PANEL ON
DISTRICT LITIGATION

SEP 30 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| | ) **MDL DOCKET NO. 1358** |
| | ) |
| | ) This Document Relates to: |
| | ) |
| | ) *Anthony Sanguino, et al. v. Bain's* |
| | ) *Automotive, Inc., et al.* |
| **IN RE:** | ) |
| | ) **CERTIFICATION OF SERVICE** |
| **METHYL-TERTIARY BUTYL ETHER** | ) |
| **PRODUCTS LIABILITY LITIGATION** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

### RULE 5.2 CERTIFICATION

I hereby certify that I have this 29th day of September, 2005, caused to be served by

electronic means and by overnight mail upon the following counsel, a true and correct copy of

the Exxon Mobil Corporation's Response to Plaintiffs' Motion to Vacate Conditional Transfer

Order No. 15, Exxon Mobil Corporation's Brief in Opposition to Plaintiffs' Motion to Vacate

Conditional Transfer Order No. 15, and Exhibits in Support of Exxon Mobil Corporation's

Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 15:

Stuart J. Lieberman, Esq                          Attorneys for Plaintiffs
Lieberman & Blecher, P.C.
10 Jefferson Plaza, Suite 100
Princeton, New Jersey 08540

Robin Greenwald, Esq.                             Plaintiffs Liaison Counsel
Weitz & Luxenberg, P.C.
180 Maiden Lane
17th Floor
New York, NY 10038

David J. Montag, Esq.
Peter Seiden, Esq.
Milber Makris Plousadis & Seiden
411 Hackensack Avenue
Suite 303
Hackensack, New Jersey 07601

Attorneys for Defendant
Bain's Automotive, Inc.

SEP 30 2005

**BEFORE THE JUDICIAL PANEL OF MULTIDISTRICT LITIGATION**

| IN RE:<br>METHYL-TERTIARY BUTYL ETHER<br>PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1358 (SAS)<br><br>Master File No. 1:00-1898 |
|---|---|
| This Document Relates Only To:<br>    Anthony Sanguino and Maria Sanguino v.<br>    Bain's Automotive, Inc., et al.<br>    Case No. 2:05-CV-3743 (JAG-MCA) (D.N.J.) | |

### APPENDIX OF EXHIBITS TO
### CERTAIN DEFENDANTS' OPPOSITION TO
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 14

| Tab | Description |
|---|---|
| A | 10/10/00 MTBE Transfer Order |
| B | 03/04/04 Plaintiff State of New Hampshire's Motion to Vacate Conditional Transfer Order (CTO-4) |
| C | 03/04/04 Plaintiff Cal-American Water Company's Motion to Vacate Conditional Transfer Order (CTO-4) |
| D | Duke Energy Memorandum in Support of Motion to Vacate Conditional Transfer Order (CTO-4) |
| E | Brief in Support of Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-5) |
| F | Fuel/Blue Star Memorandum in Support of Motion to Vacate Conditional Transfer Order (CTO-5) |
| G | Brief in Support of Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-5) |
| H | 6/16/04 Transfer Order |
| I | 6/17/05 Transfer Order |
| J | Complaint, Anthony Sanguino & Maria Sanguino v. Bain's Automotive, et al. |
| K | Case Management Orders issued in MDL 1358 |

2017903v1

NATIONAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 30 2005

FILED
CLERK'S OFFICE

# Exhibit A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 10 2000

FILED
CLERK'S OFFICE

### DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-370*
*David England, et al. v. Atlantic Richfield Co., et al., S.D. Illinois, C.A. No. 3:00-371*
*Donna Berisha, et al. v. Amerada Hess Corp., et al., S.D. New York, C.A. No. 1:00-1898*

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES,[*] MOREY L. SEAR,[*] BRUCE M. SELYA[*] AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of three actions pending in the following federal districts: two actions in the Southern District of Illinois and one action in the Southern District of New York.[1] Before the Panel is a motion by five oil company defendants seeking centralization of these actions, pursuant to 28 U.S.C. §1407, in the Southern District of Illinois for coordinated or consolidated pretrial proceedings. Five additional defendants agree that centralization is appropriate, although two of these defendants prefer centralization in the Southern District of New York. The Illinois plaintiffs support centralization in the Illinois court. The New York plaintiffs along with eight defendants oppose centralization; if the Panel deems centralization appropriate, the New York plaintiffs and at least one opposing defendant favor centralization in the New York court.[2]

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact concerning i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public, and ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination. Centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Section 1407 proceedings are desirable in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

Opponents of transfer argue that the presence of individual questions of fact militate against 1407 transfer. We are unpersuaded by this argument. Indeed, we point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who

---

[*] Judges Hodges, Sear and Selya took no part in the decision of this matter.

[1] The Panel has been notified that two potentially related actions have been recently filed in the Middle and Southern Districts of Florida. These actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 192 F.R.D. 459, 468-470 (2000).

[2] In an interested party response, plaintiffs in a potentially related action – *Buddy Lynn, et al. v. Amoco Oil Company, et al.*, M.D. Alabama, C.A. No. 96-940 – suggest centralization of MDL-1358 in the Middle District of Alabama.

IMAGED   OCT 12 '00

NO. 5312   P. 3

- 2 -

can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or an action can be remanded to their transferor district for trial in advance of completion of the other actions in the transferee district. But we are unwilling, on the basis of the record before us, to make such a determination at this time. Should the transferee judge deem remand of any claims or an action appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-472 (2000).

We are persuaded that centralization of this litigation in the Southern District of New York is appropriate. We note that the New York action is proceeding apace before Judge Shira Ann Scheindlin and we are confident in her ability to conduct pretrial proceedings in this litigation in an expeditious manner.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned actions pending in the Southern District of Illinois be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for coordinated or consolidated pretrial proceedings with the action pending there.

FOR THE PANEL:

John F. Nangle
Chairman

# Exhibit B

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE:<br><br>METHYL TERTIARY BUTYL ETHER<br>PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. 1358<br><br>This Document Relates to:<br>*State of New Hampshire v. Amerada<br>Hess Corp. et al.*, D.N.H. Case No. 03-<br>CV-486, D.R.I. Case No. 03-0529L<br><br>**PLAINTIFF STATE OF NEW<br>HAMPSHIRE'S MOTION TO<br>VACATE CONDITIONAL<br>TRANSFER ORDER (CTO-4);<br>BRIEF IN SUPPORT THEREOF** |

### PLAINTIFF STATE OF NEW HAMPSHIRE'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

1.      The State of New Hampshire ("State") is plaintiff in the action *State of New Hampshire v. Amerada Hess Corp., et al.*, Case No. 03-486 (D.N.H.), 03-0529 (D.R.I.) (the "*State* Action" or "Action"), which is identified as a "tag-along case" in the schedule of district court civil actions subject to CTO-4, issued by the Judicial Panel on Multidistrict Litigation ("Panel") on February 6, 2004.

2.      The State hereby moves the Panel to vacate the above-referenced conditional transfer order as it applies to the *State* Action on the grounds that such action does not meet the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

3.      Specifically, resolution of the State's pending Remand Motion by the Transferee Court will result in no significant savings of judicial resources, because the jurisdictional issues

1

cases against Sears "overwhelmingly predominate[d]," because the cases ranged from those involving allegations of discrimination at "no more than three facilities" to those "involving across-the-board allegations of sex discrimination at 3,000 facilities."

These distinctions apply with equal force here. First, unlike other MTBE cases from around the nation also designated as tag-alongs, this case involves MTBE contamination *only* in New Hampshire. Second, also unlike other MTBE cases (which generally seek the costs of treating a limited number of particular contaminated wells), the *State* Action seeks a broad, statewide remedy that will involve, among other things, the investigation, monitoring and treatment of potentially tens of thousands of publicly and privately owned drinking water supplies as well as restoration of waters held in trust for the public. *See* Complaint, pp. 51-53. As the court observed in *In re Gasoline Lessee Dealers, supra,* 479 F. Supp at 580, discovery and pretrial proceedings concerning common factual questions will "clearly be dwarfed" by the scope of individual factual issues presented by this case. Likewise, in light of the potential breadth of the *State* Action, consolidation with other MTBE cases poses a risk of overwhelming the resources of the Transferee Court. *In re Motion Picture Licensing Antitrust Litig., supra,* 479 F. Supp. at 592 (Panel "vitally concerned" that MDL proceedings "remain manageable;" inclusion of action with "unique legal and factual nuances would serve only to add further layers of complexity," with no "overriding benefit"). As such, the *State* Action is simply in another league and will not benefit from MDL treatment.

      2.      **There Are Relatively Few Common Questions Of Fact Between The *State* Action And Other MTBE Cases On Which Available Discovery Is Not Already Largely Completed.**

The Panel consistently has held that MDL transfer of later-filed actions is neither necessary nor appropriate when discovery relating to common issues already has been completed in the transferee court and/or can be made available to the parties in actions before the Panel

without recourse to § 1407.[8]  In this instance, discovery pertaining to the few common factual questions shared between the *State* Action and other allegedly related MTBE cases is also largely completed and available to all parties.  Accordingly, the risk of duplicative discovery is minimal, and there is no need for MDL consolidation.

In their Notice of Related, Tag-Along Actions, defendants identify the following alleged "common question of fact" arising in this and the other listed actions: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public."  Notice of Related Tag-Along Actions, filed Nov. 12, 2003, ¶2.  To the extent this constitutes a question of fact shared by the *State* Action and other alleged tag-along actions, discovery on this question as to many of the defendants named in the *State* Action was largely completed in the prior

---

[8] *See, e.g., In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (JPML 2002) (transfer denied where litigation was mature, discovery nearly completed in some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of duplicative discovery); *In re Indian Motorcycle Bankruptcy and Receivership Litig.*, 206 F. Supp. 2d 1365 (JPML 2002) (same); *In Re Air Crash Disaster Near Upperville, Virginia*, 430 F. Supp 1295, 1297 (JPML 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all parties in the new actions before the Panel have access to all discovery obtained in the transferee district); *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp 221, 223 (JPML 1981) (CTO vacated where discovery of common issues has been completed in the transferee district and could be made available to the parties in the actions before the Panel without recourse to section 1407); *In re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 582 F Supp 890, 891 (JPML 1984) (same); *In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 436 F. Supp. 404, 406 (JPML 1977) (transfer denied where discovery on common issues in transferee court "virtually completed"); *In re Eli Lilly & Co. "Oraflex" Products Liability Litig.*, 578 F. Supp. 422, 423 (JPML 1984) (transfer denied because possibility of duplicative discovery "eliminated" by availability of extensive discovery in areas of common factual inquiry from already concluded and well-advanced related actions); *In re Dow Chemical Co. "Polystyrene Foam" Products Liability Litig.*, 429 F. Supp. 1035, 1036 (JPML 1977) (need for transfer "obviated" because discovery on common questions of fact regarding defendants' knowledge and product's defectiveness had been completed and parties had agreed that such discovery would be applicable in all actions); *In re McDonald's Franchise Antitrust Litigation*, 472 F. Supp. 111, 114-115 (JPML 1979) (transfer denied where discovery on common questions was largely completed in some cases and available for use in less advanced cases).

18

incarnation of MDL No. 1358, as well as in the *South Tahoe* and *CBE* cases.[9] Sher Decl., ¶¶ 7-10, 12-13, 14-16, 19-20. The same is true with respect to expert discovery on the related question of whether MTBE and/or MTBE gasoline is a defective product. *Id.*, ¶¶ 10, 13, 15, 19-20. Overall, literally millions of liability-related documents have been produced and hundreds of witnesses have been deposed, including percipient witnesses at the defendant companies and at trade associations like the American Petroleum Institute and Oxygenated Fuels Association, and numerous expert witnesses. *Id.*, ¶¶ 8, 13, 15-16.

Moreover, all of this discovery is, or could easily be made, readily available to the parties in the *State Action*. *Id.*, ¶¶ 11, 13, 17-18. For example, the document depository in the Transferee Court, which still exists, was established with the specific purpose of making those documents available to parties in other cases. *Id.*, ¶ 17-18, Exhibit 4 (*In re MTBE Products Liability Litig.*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001) (providing that attorneys in any MTBE action may make use of documents produced in the litigation subject to the requirements of the order)). The documents, depositions and trial testimony from the *South Tahoe* and *CBE* cases also can be made available to the parties in the *State* Action. Sher Decl., ¶¶ 11, 13. Indeed, as the Panel has routinely recognized, procedures other than MDL consolidation are available to both courts and parties to permit use of discovery on common issues from prior related cases, such as stipulations and orders to show cause. *See, e.g. In re Telecommunication Providers' Fiber Optic Cable Installation Litig., supra*, 199 F. Supp. 2d at 1378, citing Manual for Complex Litigation, Third, § 31.14 (1995).

In contrast, few, if any, of the remaining major factual issues in the *State* Action – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to

---

[9] This "notice and knowledge" discovery is relevant to each of the State's common law claims against the refiner defendants, as well as its deceptive business practice claim under the State's consumer protection statute. *See* Complaint, ¶¶ 80, 96, 105, 124, 135-136, 147.

19

MTBE, the extent of contamination, the available remedies, the cost of those remedies, and liability for those damages – can be considered "common questions of fact," as they revolve primarily, if not exclusively, around New Hampshire-specific issues. For example, the questions of causation and product identification (*i.e.* whose MTBE and/or gasoline containing MTBE is in New Hampshire's waters), warnings, and the feasibility of alternatives will require extensive discovery regarding the gasoline infrastructure in New Hampshire and the way gasoline is supplied to the State from out-of-state refineries – discovery that will be "of no interest" to other MTBE plaintiffs in other parts of the country. *In re Gasoline Lessee Dealers*, *supra*, 479 F. Supp at 580 (denying transfer where discovery in one action would be "of no interest" to parties in another); *see also Oxygenated Fuels Ass'n v. Pataki*, No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (economic effect of MTBE ban influenced by gasoline infrastructure, which varies from state to state); *In re MTBE Products Liability Litig.*, 209 F.R.D. 323, 347 (S.D.N.Y. 2002) (issues regarding warnings given to intermediate vendees and UST owners and operators are "individual").

Similarly, questions regarding the extent of contamination, available remedies, and implementation and cost of those remedies will also be New Hampshire-specific. In fact, in denying class certification in the original MDL No. 1358 cases, the Transferee Court itself concluded that questions regarding contamination of any particular well present "a factually unique set of circumstances," because there are "differences in the level of contamination . . . and the nature of relief that each will require." *In re MTBE Products Liability Litig.*, *supra*, 209 F.R.D. at 337, 344; *see also In re Grand Funk Railroad Trademark Litig.*, 371 F. Supp. 1084, 1085 (JPML 1974) (no benefit from transfer where discovery "will focus localized factual issues"); *In re Air Crash at Pago Pago, Am. Samoa*, 394 F. Supp. 799, 800 (JPML 1975) (noting

20

that in tort litigation, common questions may pertain to liability, whereas the issue of damages is unique).

In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery is largely complete and available to all parties. The discovery that remains will focus primarily on New Hampshire-specific issues, which can be better handled by the District of New Hampshire.

### 3. The Transferee Court And Other Courts Already Have Resolved Most Common Legal Issues.

Just as discovery on any common factual issues is already well-advanced in the Transferee Court (and elsewhere), common pretrial legal issues already have been decided by the Transferee Court, and by other federal and state courts. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in . . . preventing inconsistent pretrial rulings." *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation, supra*, 505 F. Supp at 223; *see also In re Western Electric Co., Inc. Semiconductor Patent Litigation, supra*, 436 F. Supp. at 406 (transfer unwarranted where transferee court's views on key legal issues are well documented, and will put home-court judge "closer to the shoes of the transferee judge").

In her landmark ruling on defendants' motions to dismiss in the original set of cases transferred to MDL No. 1358, Judge Scheindlin, in a lengthy and thorough opinion, set forth a roadmap for the many of the key common legal issues in these cases that other judges can easily follow. *See In re MTBE Products Liability Litig., supra*, 175 F. Supp. 2d 593. First, the Court

21

# Exhibit C

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| **IN RE:**<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. 1358<br><br>This Document Relates to:<br>*California-American Water Company*<br>*v. Atlantic Richfield Co., et al.*, Case<br>No. 03-5379 JSW (N.D. Cal.)<br><br>**PLAINTIFF CALIFORNIA-**<br>**AMERICAN WATER COMPANY'S**<br>**MOTION TO VACATE**<br>**CONDITIONAL TRANSFER**<br>**ORDER (CTO-4); BRIEF IN**<br>**SUPPORT THEREOF** |

## PLAINTIFF CALIFORNIA-AMERICAN WATER COMPANY'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

      1.     California-American Water Company ("Cal-American") is plaintiff in the action

*California-American Water Co. v. Atlantic Richfield Co., et al.*, Case No. 03-5379 (N.D. Cal.) (the

"*Cal-American* Action" or "Action"), which is identified as a "tag-along case" in the schedule of

district court civil actions subject to CTO-4, issued by the Judicial Panel on Multidistrict Litigation

("Panel") on February 6, 2004.

      2.     Cal-American hereby moves the Panel to vacate the above-referenced conditional

transfer order as it applies to the *Cal-American* Action on the grounds that such action does not meet

the required criteria for transfer and consolidation set forth in 28 U.S.C. § 1407.

      3.     Specifically, resolution of Cal-American's pending Remand Motion by the

Transferee Court will result in no significant savings of judicial resources, because the

1

In her landmark ruling on defendants' motions to dismiss in the original set of cases transferred to MDL No. 1358, Judge Scheindlin, in a lengthy and thorough opinion, set forth a roadmap for the many of the key common legal issues in these cases that other judges can easily follow. *See In re MTBE Products Liability Litig., supra,* 175 F. Supp. 2d 593. First, the Court rejected defendants' federal preemption defense, *id.* at 611-616,[7] as has the Ninth Circuit and every other published opinion addressing the question.[8] The Transferee Court also rejected defendants' primary jurisdiction argument, as well as their related argument that defective product claims concerning MTBE require an impermissible reexamination of EPA's cost-benefit analysis regarding MTBE. *In re MTBE Products Liability Litig., supra,* 175 F. Supp. 2d at 616-618, 623-625. The court further upheld the sufficiency of each of the common law tort claims asserted in the *Cal-American* Action, including claims alleging refiner liability under theories of strict products liability, negligence, nuisance and trespass. *Id.* at 623-629.[9] In addition, at least one California jury has found that MTBE gasoline is a defective product. Sher. Decl., Exhibit 3.

With this extensive guidance already in place, the risk of inconsistent pretrial rulings on these common legal questions in the *Cal-American* Action, if left to proceed in its home district,

---

[7] Although Judge Scheindlin left open the factual question of whether there were practicable alternatives to MTBE available for defendants' use under the federal Clean Air Act, *id.* at 616, the Ninth Circuit has closed the door on this question by holding as a matter of law that a smoothly functioning gasoline market and inexpensive gasoline are not goals of the Clean Air Act. *Davis II, supra,* 331 F.3d at 673. In any case, as described in section III.B.1., *supra,* the question of feasibility of alternatives depends on the gasoline market and infrastructure in the relevant locality, and thus is not the kind of question on which coordinated discovery will yield any efficiencies.

[8] *See Davis II,* 331 F.3d 665, *affirming Oxygenated Fuels Ass'n v. Davis ("Davis I"),* 163 F. Supp. 2d 1182 (E.D. Cal. 2001); *ExxonMobil, supra,* 217 F.3d 1246; *Oxygenated Fuels Ass'n v. Pataki* (N.D.N.Y. 2001) 158 F.Supp.2d 248 (upholding New York ban of MTBE); *Oxygenated Fuels Ass'n v. Pataki ("Pataki III"),* 293 F. Supp. 2d 170 (N.D.N.Y. 2003) (concluding after a bench trial that New York MTBE ban does not conflict with any aspect of the CAA); *see also Abundiz v. Explorer Pipeline Co.,* 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002) (state MTBE contamination case does "not conflict with the Congressional clean air objectives").

[9] In evaluating the sufficiency of the plaintiffs' common law claims, the Transferee Court specifically applied California law.

# Exhibit D



## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:

**METHYL-TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

MDL Docket No. 1358

## MOTION TO VACATE CONDITIONAL TRANSFER ORDER

Pursuant to Rule 7.4(d) of the Rules Of Procedure Of The Judicial Panel On Multidistrict Litigation, Duke Energy Merchants, LLC, Duke Energy Trading and Marketing, LLC, Duke Energy Merchants California, Inc. and Northridge Petroleum Marketing, U.S. Inc. (collectively, "Duke Energy") file this Motion to Vacate Conditional Transfer Order (CTO-4) filed February 6, 2004, in Docket No. 1358 *In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*. This Motion pertains to the action captioned *City of Fresno v.*

*Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221, 223 (D. Kansas 1981).

In evaluating a proposed transfer, the Panel has typically focused on the potential to avoid duplicative discovery, to prevent inconsistent pretrial rulings, and to conserve time and efforts of the parties and witnesses. *See In re Petroleum Products Antitrust Litigation*, 476 F.Supp. 455, 457 (N.D. Cal. 1979).

Duke submits that although the circumstances favoring MDL consolidation of MTBE cases may have existed years ago, they do not exist today. MTBE litigation is now well developed. Through earlier litigation in California, the parties have completed much if not all of the discovery common to MTBE cases. As a result, consolidation and transfer now would amount to closing the barn door after the horses are gone. Furthermore, because the issues that remain are largely location specific, consolidation would likely produce inefficiency. A court three time zones away cannot supervise discovery in Fresno, California, as efficiently as a court in California. Transfer will only hinder local discovery and the resolution of pretrial issues. Little benefit exists to consolidating a California case in the Southern District of New York.

1.      **The Specter of Duplicative Discovery Does Not Exist**

As noted above, MTBE litigation is not new. Causes of action for MTBE contamination have been litigated for several years, and voluminous discovery was completed in the *Tahoe* litigation. Discovery in that case included national issues (e.g., the actions of the MTBE manufacturers and the oil companies that caused MTBE to be added to gasoline). In instances such as this, the MDL Panel has created alternatives to transfer that accomplish the goals of multidistrict litigation under 28 U.S.C. § 1407.

For example, in *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 460 F.Supp. 540 (J.P.M.L. 1975), the MDL Panel transferred multiple product liability actions for defective Dalkon Shield IUDs to the District of Kansas. After the parties completed discovery in the transferee district, additional plaintiffs brought actions against the defendant A.H. Robins. The clerk of the MDL Panel conditionally transferred the newly filed actions to the District of Kansas for inclusion in the centralized pretrial proceedings. *See In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp. 221, 223 (D. Kansas 1981). Upon motion to vacate the conditional transfer order, the MDL Panel held that transfer was not appropriate. *Id.* The MDL Panel stated that

> [a]lthough we recognize that these actions share questions of fact with actions previously transferred in this litigation, we are not persuaded that transfer under Section 1407 remains appropriate for newly filed actions in this docket. This litigation has been pending for over five years and discovery of common issues have been completed in the transferee district. This completed discovery can be made available to the parties in the actions before the Panel without recourse to Section 1407.

*Id.* at 223.

*In re: Petroleum Products Antitrust Litigation*, 419 F. Supp 712 (J.P.M.L. 1976), stands for the same proposition. There, the MDL Panel consolidated various antitrust actions in the Central District of California. The transferee judge actively controlled the course of discovery and other pretrial proceedings. Subsequently, additional plaintiffs brought new antitrust actions and sought to have them transferred for inclusion in the consolidated cases. *See In re: Petroleum Products Antitrust Litigation*, 476 F.Supp. 455 (C.D. Cal. 1979). Rather than transfer the new cases for inclusion in a process that was substantially completed, the MDL Panel vacated the conditional transfer order. *Id.* at 458. The MDL Panel held that the benefits of consolidation could be achieved by alternatives means. *Id.* For instance, discovery already

completed in the transferee district and relevant to the new action could be made applicable to the new action. *Id.* Additionally, the parties could stipulate that discovery relevant to all of the actions could be used in all of those actions. *Id.* The court also suggested that notices for particular depositions could be filed in all relevant actions, thereby making the deposition applicable in each action. *Id.* Thus, the parties could avoid duplicative discovery and garner the benefits of the already-completed discovery.

In the context of MTBE litigation, the discovery pertaining to national issues has been completed. The outstanding issues are predominantly location specific (the extent of the contamination, the availability and feasibility of remediation alternatives, and the allocation of responsibility). As a result, the Panel should leave the Fresno case in California and employ alternatives to transfer so that discovery can be focused where it belongs – on the outstanding location–specific issues.

**2.    Alternatives To Transfer Can Also Avoid Inconsistent Pretrial Rulings**

As with the potential for duplicative discovery, the MDL Panel has created alternatives to transfer and consolidation that alleviate the threat of inconsistent pretrial rulings. The MDL Panel has vacated conditional transfer orders on the principle that like discovery, courts can coordinate pretrial orders and rulings to "secure the benefits of section 1407 transfer while avoiding the frustration of local consolidation [in the transferee court] which transfer . . . would generate." *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp. at 223. The MDL Panel also has vacated conditional transfer orders on the principle that "consultation and cooperation among the . . . district courts, if viewed appropriately by those courts, coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings." *In re: Petroleum Products Antitrust Litigation*, 476 F.

Supp. at 458.

In the context of MTBE litigation, many pretrial issues including standing and jurisdiction have already been decided by Judge Scheindlin during the previous transfer of MTBE cases to the Southern District of New York. These issues are thus not likely candidates for relitigation in the Fresno case. The MDL Panel has noted that such previous pretrial decisions "can provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in avoiding duplication of discovery and preventing inconsistent pretrial rulings." *In re: A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. at 23.

The issue recently briefed in various courts concerning the extent to which state common law causes of action may be preempted by federal law, particularly the Clean Air Act and its regulations, does not warrant consolidated treatment of the various MTBE cases. The Panel should understand that multiple published federal court decisions and state court decisions have consistently resolved this issue unfavorably for the moving defendants. *E.g., Oxygenated Fuels Ass'n v. Pataki*, 158 F. Supp. 2d 248 (N.D.N.Y 2001); *Oxygenated Fuels Ass'n v. Davis*, 331 F.3d 665 (9th Cir. 2003); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 593 (S.D.N.Y. 2001); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1284 (W.D. Tex. 1992); *South Tahoe Public Utility District v. Atlantic Richfield Co.*, No 999128 (Cal. Super. Ct., San Francisco County, Jan. 15, 2002).

Because the threshold legal questions have been addressed and therefore will not require significant additional judicial energy, transfer simply is not warranted and can be avoided. The courts can eliminate the threat of inconsistent decisions by applying previous pretrial rulings to the current MTBE cases.

44510\39382v3                                    -10-

# Exhibit E

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE:<br><br>**METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION** | ) **MDL Docket No. 1358**<br>)<br>) This Document Relates to:<br>)<br>) *People of the State of California, et al. v.*<br>) *Atlantic Richfield Co., et. al.,* 03-2653<br>) GEB DAD (E.D.Cal.);<br>)<br>) *Orange County Water District v. Unocal,*<br>) *et al.,* 03-1742 JVS (ANx) (C.D. Cal.);<br>)<br>) *City of Riverside v. Atlantic Richfield*<br>) *Co., et al.,* 04-53 JVS (ANx) (C.D. Cal.);<br>)<br>) *Quincy Comm. Serv. Dist. v. Atlantic*<br>) *Richfield Co., et al.,* 03-2582 LKK DAD<br>) (E.D. Cal.);<br>)<br>) *City of Roseville v. Atlantic Richfield Co.,*<br>) *et al.,* 03-2601 MCE GGH (E.D. Cal.);<br>)<br>) *Martin Silver, et al. v. Alon USA Energy,*<br>) *Inc., et al.,* 03-2408 WQH (S.D. Cal.)<br>)<br>) **PLAINTIFFS' JOINT MOTION TO**<br>) **VACATE CONDITIONAL**<br>) **TRANSFER ORDER (CTO-5); BRIEF**<br>) **IN SUPPORT THEREOF** |

## PLAINTIFFS' JOINT MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-5)

1.      City of Elk Grove, Sacramento County Water Agency, Sacramento Groundwater

Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water

and (3) whether transfer would serve the just and efficient conduct of the actions. 28 U.S.C. §

1407; JPML Rule 1.1; *In re Managed Care Litig.*, 246 F. Supp 2d 1363, 1364 (JPML 2003); *In*

*re Enron Corp.*, 227 F.Supp.2d 1389, 1391 (JPML 2002). The Panel has held that all three

criteria must be met to justify transfer, *In re Highway Acc. Near Rockville, Connecticut, on*

*December 30, 1972*, 388 F. Supp. 574, 575 (JPML 1975), and that the third criterion is the "most

important." *In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5, 8 (D.D.C.

1999) *citing* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3863 at 535

(1986).   In analyzing whether transfer would serve the just and efficient conduct of actions under

section 1407, the Panel primarily considers whether transfer and consolidation will avoid

duplicative discovery and inconsistent pretrial rulings. *See, e.g., In re TMJ Implants Products*

*Liability Litig.*, 844 F. Supp. 1553, 1554 (JPML 1994).

  The California Actions are inappropriate for MDL treatment for at least two fundamental

reasons.  First, even assuming *arguendo* that the California Actions remain in federal court, the

likelihood of inconsistent pretrial rulings and duplicative discovery is minimal, because: (a)

discovery regarding the few questions of fact shared with other MTBE-related cases already has

largely been completed and is or can be made available to all parties; and (b) the Transferee

Court, as well as numerous other federal and state courts, already have issued remarkably

consistent rulings on most, if not all, common legal issues.  Second, resolution of Plaintiffs'

Remand Motions -- the first, and likely only, substantive motions to be considered by a federal

court in these Actions -- by the Transferee Court will not conserve judicial resources, because

jurisdictional arguments raised therein differ materially from those raised in remand motions

recently ruled upon by the Transferee Court.  Thus, the California district courts where the

California Actions are currently pending are in a position to rule expeditiously on the Remand

Motions, as well as on other pretrial motions, and to preside over the remaining localized and site-specific discovery. For these reasons, the California Actions will "proceed more expeditiously if left alone." *See In re Sears, Roebuck & Co. Employment Practices Litig.*, 487 F. Supp. 1362, 1363 (JPML 1980).

**A.    If The California Actions Remain in Federal Court, The Likelihood Of Inconsistent Pretrial Rulings And Duplicative Discovery Is Minimal.**

Even if the California Actions were somehow to remain in federal court, pretrial transfer to MDL No. 1358 would serve neither the convenience of the parties and witnesses nor the just and efficient conduct of the litigation. To the extent that the Actions share common questions of fact or law with other pending cases, (1) discovery on common factual questions is largely completed and available, and (2) most common legal issues already have been addressed by the Transferee Court and other courts.

**1.    There Are Relatively Few Common Questions Of Fact Shared By The California Actions And Other MTBE Cases On Which Available Discovery Is Not Already Largely Completed.**

The Panel consistently has held that MDL transfer of later-filed actions is neither necessary nor appropriate when discovery relating to common issues already has been completed in the transferee court and/or can be made available to the parties in actions before the Panel without recourse to § 1407.[5] In this instance, discovery pertaining to the few common factual

---

[5] *See, e.g., In re Telecommunication Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (JPML 2002) (transfer denied where litigation was mature, discovery nearly completed in some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of duplicative discovery); *In re Indian Motorcycle Bankruptcy and Receivership Litig.*, 206 F. Supp. 2d 1365 (JPML 2002) (same); *In Re Air Crash Disaster Near Upperville, Virginia*, 430 F. Supp 1295, 1297 (JPML 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all parties in the new actions before the Panel have access to all discovery obtained in the transferee district); *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F. Supp 221, 223 (JPML 1981) (CTO vacated where discovery of common issues has been completed in the transferee district and could be made available to the parties in the actions before the Panel without recourse to section 1407); *In re Petroleum Products Antitrust Litigation*, 476 F. Supp. 455, 458 (JPML 1979) (conditional transfer order vacated because common-question discovery already completed in transferee

questions shared between the California Actions and other allegedly related MTBE cases is also largely completed and available to all parties. Accordingly, the risk of duplicative discovery is minimal, and there is no need for MDL consolidation.

In their Notices of Related, Tag-Along Actions, defendants identify the following alleged "common question of fact" arising in this and the other listed actions: "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government or the public." Notices of Related Tag-Along Actions, filed December 12, 2003, December 19, 2003, and December 31, 2003, ¶ 2. To the extent this constitutes a question of fact shared by the California Actions and other alleged tag-along actions, discovery on this question as to many, if not all, of the defendants named in the California Actions was largely completed in the prior incarnation of MDL No. 1358, and was pursued in exceptional depth in the *South Tahoe* and *CBE* cases with respect to the California-related defendants named in the California Actions. Sher Decl., ¶¶ 12-15, 17-18, 19-21, 24-25.[6] The same is true with respect to expert discovery on the related question of whether MTBE and/or MTBE gasoline is a defective product. *Id.*, ¶¶ 15, 18, 20, 24-

---

court and "unique discovery" in new cases "would disrupt and substantially delay the orderly progress of pretrial proceedings in the transferee district"); *In re Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 582 F Supp 890, 891 (JPML 1984) (same); *In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 436 F. Supp. 404, 406 (JPML 1977) (transfer denied where discovery on common issues in transferee court "virtually completed"); *In re Eli Lilly & Co. "Oraflex" Products Liability Litig.*, 578 F. Supp. 422, 423 (JPML 1984) (transfer denied because possibility of duplicative discovery "eliminated" by availability of extensive discovery in areas of common factual inquiry from already concluded and well-advanced related actions); *In re Dow Chemical Co. "Polystyrene Foam" Products Liability Litig.*, 429 F. Supp. 1035, 1036 (JPML 1977) (need for transfer "obviated" because discovery on common questions of fact regarding defendants' knowledge and product's defectiveness had been completed and parties had agreed that such discovery would be applicable in all actions); *In re McDonald's Franchise Antitrust Litigation*, 472 F. Supp. 111, 114-115 (JPML 1979) (transfer denied where discovery on common questions was largely completed in some cases and available for use in less advanced cases).

[6] This "notice and knowledge" discovery is relevant, among other things, to each of Plaintiffs' common law claims against the refiner defendants. *See* Sher Decl., Exhibits 1-6.

25. Overall, literally millions of liability-related documents have been produced and hundreds of witnesses have been deposed, including percipient witnesses at the defendant companies and at trade associations like the American Petroleum Institute and Oxygenated Fuels Association, and numerous expert witnesses. *Id.*, ¶¶ 13, 18, 20-21.

Moreover, all of this discovery is, or could easily be made, readily available to the parties in the California Actions. *Id.*, ¶¶ 16, 18, 22-23. For example, the document depository in the Transferee Court, which still exists, was established with the specific purpose of making those documents available to parties in other cases. *Id.*, ¶ 22-23, Exhibit 9 (*In re MTBE*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001) (providing that attorneys in any MTBE action may make use of documents produced in the litigation subject to the requirements of the order)). The documents, depositions and trial testimony from the *South Tahoe* and *CBE* cases also can be made available to the parties in the California Actions. Sher Decl., ¶¶ 16, 18. Indeed, as the Panel has routinely recognized, procedures other than MDL consolidation are available to both courts and parties to permit use of discovery on common issues from prior related cases, such as stipulations and orders to show cause. *See, e.g. In re Telecommunication Providers' Fiber Optic Cable Installation Litig., supra*, 199 F. Supp. 2d at 1378, *citing* Manual for Complex Litigation, Third, § 31.14 (1995).

In contrast, few, if any, of the remaining major factual issues in the California Actions – such as causation, the nature of warnings given to particular vendees, the feasibility of alternatives to MTBE, the extent of contamination, the available remedies, the cost of those remedies, and liability for those damages – can be considered "common questions of fact" with other MTBE cases, as they revolve primarily, if not exclusively, around localized and site-specific issues. For example, the questions of causation and warnings in each California Action

17

will require extensive, site-specific product identification discovery (*i.e.* discovery of whose MTBE and/or gasoline containing MTBE was delivered to release sites affecting Plaintiffs' respective water supplies and/or groundwater resources) that will be unique to each Action. *See In re MTBE*, 209 F.R.D. 323, 344, 347 (S.D.N.Y. 2002) (denying class certification because (1) there are differences in the source of contamination for each well owner and (2) issues regarding warnings given to intermediate vendees and UST owners and operators are "individual").

Questions related to causation, warnings and the feasibility of alternatives will also require discovery into the particulars of California's gasoline infrastructure. Such discovery will be completely irrelevant to parties in MTBE cases outside California, because the regulatory regime, refining centers and distribution systems in California are distinct and/or isolated from those in other gasoline markets in the United States. *See, e.g., Oxygenated Fuels Ass'n v. Pataki,*. No. 1:00-CV-1073 at 5-6 (N.D.N.Y. Oct. 3, 2003) (gasoline infrastructures in California and New York "could not be more divergent"). As the only "state that regulated automotive emissions before Congress entered the field," California is the only state with authority to regulate fuels without EPA approval. *Oxygenated Fuels Ass'n v. Davis ("Davis I"),* 163 F. Supp. 2d 1182, 1885-1187 (E.D. Cal. 2001) (observing that, under the Clean Air Act, 42 U.S.C. § 7545(c)(4)(B), California has broad authority in the field of fuels regulation). Pursuant to this authority, California Air Resources Board ("CARB") regulations impose special requirements on gasoline sold in the state. *See* Cal. Code of Regulations, Title 13, §§ 2250 *et seq.* As a result, gasoline sold in California is formulated differently than gasoline in the rest of the country. *See, e.g., Aguilar v. Atlantic Richfield Co.,* 25 Cal.4th 826, 838 (2001) (gasoline used in California is "unique" and state's gasoline market is "isolated" in light of CARB fuel content regulations).

To serve this unique market, approximately 90 percent of California gasoline is refined

in-state and distributed by means of a pipeline, terminal and distribution system that is separate

and distinct from the gasoline infrastructure serving other regions of the country. *See* California

Energy Commission, *Question & Answers: California Gasoline Price Increases*, March 5, 2004

(Sher Decl., Exhibit 16 at 1). According to the California Energy Commission,

> California is . . . isolated from other refining centers in the United
> States. Our gasoline must meet stringent air quality requirements
> to burn cleanly to protect public health and the environment.
> [Therefore,] our gasoline is different from others made in the U.S.

*Id.* Discovery regarding gasoline formulation, refining and distribution in the California Actions

thus will be "of no interest" to non-California plaintiffs. *See In re Gasoline Lessee Dealers*

*Antitrust Litig.*, 479 F. Supp. 578, 580 (JPML 1979) (denying transfer where discovery in one

action would be "of no interest" to parties in another).

Similarly, questions regarding the extent of contamination, available remedies, and

implementation and cost of those remedies will also be location and site-specific.[7]  In denying

class certification in the original MDL No. 1358 cases, the Transferee Court itself concluded that

questions regarding contamination of any particular well present "a factually unique set of

circumstances," because there are "differences in the level of contamination . . . and the nature of

relief that each will require." *In re MTBE*, *supra*, 209 F.R.D. at 337, 344; *see also In re Grand*

*Funk Railroad Trademark Litig.*, 371 F. Supp. 1084, 1085 (JPML 1974) (no benefit from

transfer where discovery "will focus localized factual issues"); *In re Air Crash at Pago Pago*,

*Am. Samoa*, 394 F. Supp. 799, 800 (JPML 1975) (noting that in tort litigation, common questions

may pertain to liability, whereas the issue of damages is unique).

---

[7] Defendants allege in their Notices of Related, Tag-Along Actions that "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination" is a "common question of fact" in these cases. *See* Notices of Related Tag-Along Actions, filed December 12, 2003, December 19, 2003, and December 31, 2003, ¶ 2.  As set forth in the text, this is obviously not the case.

19

Finally (on this point), transferring the instant actions to MDL 1358 will not reduce the risk of inconsistent discovery rulings (if any), as there are a significant number of other MTBE cases proceeding in different state courts around the country that have not been, and cannot be, removed to federal court and transferred to MDL No. 1358. *See* Sher Decl., ¶ 9, Exhibit 17; *In re Tobacco/ Governmental Health Care Costs Litig., supra,* 76 F. Supp. 2d at 9 (denying transfer in part because the defendants "will be faced with rulings by two different judges on discovery requests made of [them] regardless of whether the consolidation motion is granted or denied").

In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery is largely complete and available to all parties. The discovery that remains will focus almost exclusively on California and site-specific issues, which can be better handled by the local district courts where the California Actions are pending.

### 2. The Transferee Court And Other Courts Already Have Resolved Most Common Legal Issues.

Just as discovery on any common factual issues is already well-advanced in the Transferee Court (and elsewhere), common pretrial legal issues already have been decided by the Transferee Court, and by other federal and state courts. Indeed, the Transferee Court's prior rulings "provide a convenient expression of the conclusions of the transferee judge which have been reached through [her] familiarity with the litigation, and can serve as an aid in . . . preventing inconsistent pretrial rulings." *In re AH Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation, supra,* 505 F. Supp at 223; *see also In re Western Electric Co., Inc. Semiconductor Patent Litigation, supra,* 436 F. Supp. at 406 (transfer unwarranted where transferee court's views on key legal issues are well documented, and will put home-court judge "closer to the shoes of the transferee judge").

20

# Exhibit F

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE:**<br><br>**METHYL-TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION** | **MDL Docket No. 1358**<br><br>This Document Relates to *Quincy Community Services District v. Atlantic Richfield Company et al.,* Case No. 2:03-2582 LKK (E.D. Cal).<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS FUEL STAR, INC. AND BLUE STAR PETROLEUM, INC. TO VACATE CONDITIONAL TRANSFER ORDER NO. 5 (CTO-5); MEMORANDUM IN SUPPORT THEREOF** |

### NOTICE OF MOTION AND MOTION OF DEFENDANTS FUEL STAR, INC. AND BLUE STAR PETROLEUM, INC. TO VACATE CONDITIONAL TRANSFER ORDER NO. 5

Fuel Star, Inc. ("Fuel Star") and Blue Star Petroleum, Inc. ("Blue Star) are defendants in

the action captioned *Quincy Community Services District v. Atlantic Richfield Company et al.,*

Case No. 2:03-2582 (E.D. Cal.) (the "*Quincy* action"), which is identified in the schedule of

In the Notice of Removal, certain refiner/supplier defendants assert that state law claims premised on gasoline being a defective product are preempted by the Clean Air Act, as amended by 42 U.S.C. section 7545.  *See* Exhibit B to the Romero Decl. at ¶¶ 11 –14 and 43.  The defendants who removed the *Quincy* action further contend that they were acting under the direction of federal officers or agencies when they elected to add MTBE to gasoline and that such conduct further warrants removal.  *Id.* at ¶ 48.  Finally, the removing defendants assert federal subject matter jurisdiction based on a 1988 federal bankruptcy order in the Chapter 11 bankruptcy of defendant Texaco, Inc., a predecessor-in-interest to defendant Chevron Texaco Corporation.  *See* Romero Decl., Exhibit B at ¶¶ 48-56.

3.    **Other MTBE-Related Cases In California.**

The *Quincy* action and the other MTBE-related cases which have recently been removed to federal court throughout the country are preceded by a significant number of cases filed in California which have resulted in extensive discovery of common questions of fact and consistent rulings on common questions of law.

Specifically, in *South Tahoe Public Utility District v. Atlantic Richfield Company et al.,* which was venued in the California Superior Court for the County of San Francisco, a public utility district brought suit against manufacturers of MTBE, oil refiners that added MTBE to their gasoline, and other defendants involved in the sale of gasoline in and around the southern end of Lake Tahoe, a mountain community which straddles the California-Nevada border.

It is believed that discovery in *South Tahoe Public Utility District* was extensive and focused on both industry-wide issues, such as the history of MTBE, its use as an oxygenate in gasoline and the purported knowledge by certain manufacturers and refiners of the harm caused to groundwater by MTBE; and on local issues such as the nature, extent and sources of

contamination of plaintiff's water supplies. The case went to trial and resulted in a verdict for plaintiff.

Similarly, in the late 1990's, the City of Santa Monica, California filed an MTBE-related action captioned *City of Santa Monica v. Shell Oil Company, et al.* The matter was venued in the California Superior Court for the County of Orange and was brought against an array of defendants, including the manufacturers and refiners of gasoline containing MTBE. It is believed that following extensive discovery, a settlement was reached in late 2003.

Likewise, in 2000 the Cambria Community Services District, which serves a community along California's Central Coast, filed suit in the California Superior Court for the County of San Luis Obispo asserting nuisance, trespass and product liability claims against Chevron Corporation and other defendants in an action captioned *Cambria Community Services District v. Chevron U.S.A., Inc., et al.* Plaintiff in that action sought damages for the alleged contamination of the community's groundwater supply with MTBE. It is believed that the case proceeded in state court until a settlement was reach in late 2003.

Additionally, in 2001 the Fruitridge Vista Water Company filed a lawsuit in the California Superior Court for the County of Sacramento captioned *D.J. Nelson Trust, doing business as Fruitridge Vista Water Company v. Atlantic Richfield Company et al.* Plaintiff in that action contends that its groundwater supply is contaminated with MTBE. The defendants include the manufacturers of MTBE, the oil refiners that supply gasoline to the Sacramento area, various middlemen and numerous owners and operators of the underground tanks that are alleged to have released gasoline containing MTBE. Discovery in that action is proceeding. Numerous document production requests and document subpoenas have been served, and a considerable volume of documentation has been produced. Depositions of percipient witnesses

including local station operators, local environmental consultants, and local regulators are proceeding.

### 4. The Litigation In MDL Docket No. 1358.

Between October 2000 and March 2001, the Panel consolidated six actions which alleged the contamination of groundwater supplies located in the Northeast with MTBE. These cases were transferred to the Southern District of New York and were handled by the Honorable Shira Ann Scheindlin under MDL Docket No. 1358. It is believed that a depository was established in that proceeding.

In or about August 2001, Judge Scheindlin issued an opinion addressing several pretrial issues, including issues of preemption, standing, and jurisdiction. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001). Judge Scheindlin also denied the plaintiffs' motion for class certification. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y. 2002).

### POINTS AND AUTHORITIES

### 1. Consolidation And Transfer Will Not Promote Just Or Efficient Litigation.

The conditional transfer of the *Quincy* action should be vacated because transfer would not further the just and efficient conduct of the litigation. Consolidation of multiple actions before a single court is appropriate where the Panel determines that such transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. section 1407(a). Where common issues have already been litigated and resolved, the Panel has held that consolidation is not appropriate for newly filed "tag along" actions, because the courts and parties involved in the later actions can obtain the benefits of consolidation by sharing discovery and implementing

-9-

previous pretrial rulings without resorting to transfer. *See, e.g., In re: A.H. Robins Co. Inc. "Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221, 223 (D. Kansas 1981).

In evaluating a proposed transfer, the Panel has typically focused on the potential to avoid duplicative discovery, to prevent inconsistent pretrial rulings, and to conserve time and efforts of the parties and witnesses. *See In re Petroleum Products Antitrust Litigation*, 476 F.Supp. 455, 457 (N.D. Cal. 1979).

Litigation involving the contamination of drinking water supplies with MTBE is now well developed. As a consequence, the parties to previous MTBE-related matters in California have completed much, if not all, of the discovery common to MTBE cases and this material can easily be made available to the parties in the *Quincy* action. Moreover, it is believed that a depository was established in MDL Docket No. 1358 and the discovery from that proceeding can also be made available to the parties in *Quincy*. As a result, consolidation and transfer would not offer any degree of efficiency because the discovery that remains in the *Quincy* action is likely to be unique to the case. As such, a court located in California would likely be the most efficient means of litigating discovery in the *Quincy* action rather than a court located a continent and three time zones away. Accordingly, transfer and consolidation of the *Quincy* action is not warranted.

## 2.   Alternatives To Transfer Can Prevent Inconsistent Pretrial Rulings.

As with the potential for redundant discovery, the Panel has created alternatives to transfer and consolidation that alleviate the threat of inconsistent pretrial rulings. The Panel has vacated conditional transfer orders on the principle that a court can coordinate pretrial orders and rulings to "secure the benefits of section 1407 transfer while avoiding the frustration of the local consolidation [in the transferee court] which transfer . . . would generate." *In re: A.H. Robins*

# Exhibit G

1
2
3
4
5
6
7
8
9
10

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

11

| | |
|---|---|
| IN RE:<br><br>METHYL BUTYL TERTIARY ETHER ("MTBE")<br>PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1358<br><br>This Document Relates to *The People of the State of California, et al., v. Atlantic Richfield Co., et al.,* Case No. 03-2653 (E.D. Cal.)<br><br>MOTION TO VACATE<br>CONDITIONAL TRANSFER<br>ORDER (CTO-5) |

12
13
14
15
16
17

18    **MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

19    TO ALL PARTIES AND THEIR COUNSEL OF RECORD: Please take notice that the

20    People of the State of California, a plaintiff in the action entitled *The People of the State of*

21    *California, et al., v. Atlantic Richfield Co., et al.,* Case No. 03-2653 (E.D. Cal.), hereby moves

22    that the Judicial Panel on Multidistrict Litigation ("the Panel") vacate Conditional Transfer Order

23    Number Five ("CTO-5"), which has transferred this action to the Southern District of New York.

24    Filed herewith and incorporated by reference herein is a Memorandum of Points and

25    Authorities in support of this Motion, a Declaration of Russ Detrick With Attached Exhibits, and

26    a Statement of Reasons Why Oral Argument Should be Heard.

27
28

1

1    ultimately the refineries proper - in short, there will be extensive discovery regarding the gasoline

2    infrastructure in northern California generally and Sacramento in particular.  While the discovery

3    will be carried out locally, all of the litigation about the propriety and scope of that discovery will

4    - if the moving parties have their way - take place 3,000 miles away.  The People fail to see the

5    efficiency. Certainly the moving parties have not shown it. In fact, in denying class certification in

6    the original MDL No. 1358 cases, the Transferee Court itself concluded that questions regarding

7    contamination of any particular well present "a factually unique set of circumstances," because

8    there are "differences in the level of contamination ... and the nature of relief that each will

9    require." *In re MTBE Products Liability Litigation*, 209 F.R.D. 323, 337, 344 (S.D. N.Y. 2002).

10       In sum, MTBE litigation is sufficiently mature at this point that common-issue discovery

11   is largely complete and available. The discovery that remains will focus primarily on issues

12   specific to Sacramento County - issues which can be better handled in California.

13       **b.    The Risk of Inconsistent Rulings is Minimal**

14       Another potential reason for transfer and consolidation is that it would reduce the risk of

15   inconsistent rulings.  The People submit that there is little risk of that in this case. First, it should

16   go without saying that where cases are dissimilar the rulings in one will likely be irrelevant to

17   another.  For the reasons set forth in section "B1" above, the People submit that this case is so

18   different from the others consolidated in MDL No. 1358 that the decisions made in this case will

19   have little bearing on the decisions in other cases - and vice versa.

20       In addition, just as discovery on common factual issues is already well advanced,

21   published opinions from a number of courts provide clear precedent that any district court can

22   adopt.  Indeed, the Transferee Court's prior rulings "provide a convenient expression of the

23   conclusions of the transferee judge which have been reached through [her] familiarity with the

24   litigation, and can serve as an aid in ... preventing inconsistent rulings." *In re AH Robins Co. Inc.*

25   *"Dalkon Shield" IUD Products Liability Litigation*, 505 F.Supp. 221, 223 (JPML 1981); see also

26   *In re Western Electric Co. Inc. Semiconductor Patent Litigation*, 436 F.Supp. 404, 406 (JPML

27   1977) (transfer unwarranted where transferee court's views on key legal issues were well

28   documented, and would put the other judge "closer to the shoes of the transferee judge").

18

C                                    C

1         In her ruling on defendants' motions to dismiss in the original set of cases transferred to

2    MDL No. 1358, Judge Scheindlin set forth a roadmap for handling these cases which other judges

3    can easily follow. See *In re MTBE Products Liability Litigation*, 175 F.Supp. 2d 593 (S.D. N.Y.

4    2001). First, the Court rejected the defendants' federal preemption defense, *id.*, at 611-616,[28] as

5    has the Ninth Circuit and every other published opinion addressing this question.[29] The

6    Transferee Court also rejected defendants' primary jurisdiction argument, as well as their related

7    argument that defective product claims concerning MTBE require an impermissible

8    reexamination of EPA's cost-benefit analysis regarding MTBE. *Id.*, at 616-618, 623-625. The

9    Court further upheld the sufficiency of each of the common law tort claims asserted, including

10   claims alleging refiner liability under a theory of public nuisance. *Id.*, at 627-629.

11        With this extensive guidance already in place, the risk of inconsistent pretrial rulings on

12   these common legal questions is minimal. At the same time, any pretrial legal questions raised by

13   virtue of the People's sovereign status and the exercise of our police power are not shared by the

14   vast majority of the other plaintiffs. These questions are best addressed by a court with more

15   experience and familiarity with California law. Thus, the benefits of permitting this case to

16   proceed in California outweigh the benefits (if any) of transfer. See *In re Grand Funk Railroad*

17   *Trademark Litigation*, 371 F.Supp. at 1085 ("the Panel must weigh any benefit that transfer would

18   provide in the way of eliminating the possibility of inconsistent pretrial decisions against the

19   efficient administration of the litigation as a whole"). Accordingly, CTO-5 should be vacated.

20

21

22

---

23       29.  Judge Scheindlin recently determined that a "colorable" claim of preemption was raised by defendants

24   in the context of a motion to remand in her court in *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2004 U.S. Dist. LEXIS 4068, *29-30 (S.D. N.Y. March 16, 2004). Given the lower burden of proof

25   involved at the remand level the People do not anticipate that this ruling will much affect her ultimate ruling on whether the defense is viable.

26       30.  See *Oxygenated Fuels Association v. Davis ("Davis II")*, 331 F.3d 665 (9th Cir. 2003), *affirming*

27   *Oxygenated Fuels Association v. Davis ("Davis I")*, 163 F.Supp.2d 1182 (E.D. Cal. 2001), *ExxonMobil Corp. v. United States Environmental Protection Agency*, 217 F.3d 1246 (9th Cir. 2000), *Oxygenated Fuels Association v. Pataki*, 158 F.Supp. 2d 248 (N.D. N.Y. 2001), *Oxygenated Fuels Association v. Pataki*, 293 F.Supp. 2d 170 (N.D.

28   N.Y. 2003), see also *Abundis v. Explorer Pipeline Co.*, 2002 W.L. 1592604, *3-5 (N.D. Tex. 2002).

# Exhibit H

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

June 16, 2004

TO INVOLVED COUNSEL

Re:  MDL-1358 -- In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

(See Attached Transfer Order)

Dear Counsel:

    For your information, I am enclosing a copy of an order filed today by the Judicial Panel on Multidistrict Litigation involving this matter.

       Very truly,

    Michael J. Beck
    Clerk of the Panel

By _Teresa Bishop_
      Deputy Clerk

Enclosure

JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 16 2004

FILED
CLERK'S OFFICE

### DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Orange County Water District v. Unocal Corp., et al.*, C.D. California, C.A. No. 8:03-1742
*City of Riverside v. Atlantic Richfield Co., et al.*, C.D. California, C.A. No. 8:04-53
*Quincy Community Services District v. Atlantic Richfield Co., et al.*, E.D. California,
   C.A. No. 2:03-2582
*City of Roseville v. Atlantic Richfield Co., et al.*, E.D. California, C.A. No. 2:03-2601
*People of the State of California, et al. v. Atlantic Richfield Co., et al.*, E.D. California,
   C.A. No. 2:03-2653
*City of Fresno v. Chevron U.S.A., Inc., et al.*, N.D. California, C.A. No. 3:03-5378
*California-American Water Co. v. Atlantic Richfield Co., et al.*, N.D. California, C.A. No. 3:03-5379
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, S.D. California, C.A. No. 3:03-2408
*State of New Hampshire v. Amerada Hess Corp., et al.*, D. New Hampshire, C.A. No. 1:03-486
   (Also Pending as D. Rhode Island, C.A. No. 1:03-529)

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA,[*] D. LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR., AND KATHRYN H. VRATIL, JUDGES OF THE PANEL

### TRANSFER ORDER

Presently before the Panel are motions by plaintiffs[1] and some defendants[2] in these nine actions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's orders conditionally transferring the actions to the Southern District of New York for inclusion in the Section

---

[*] Judges Selya and Motz did not participate in the decision of this matter.

[1] Orange County Water District; City of Riverside; Quincy Community Services District; City of Roseville; *People of the State of California* plaintiffs – the State of California and eleven municipalities, local water districts or water companies (Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, California-America Water Company, and City of Sacramento); California-American Water Company; the eight individuals who are plaintiffs in the Southern California *Silver* action; and State of New Hampshire.

[2] *City of Fresno*: Duke Energy Merchants, LLC; Duke Energy Trading and Marketing, LLC; Duke Energy Merchants California, Inc.; and Northridge Petroleum Marketing U.S., Inc. *Quincy*: Fuel Star, Inc., and Blue Star Petroleum, Inc.

- 2 -

1407 proceedings occurring there in this docket. A defendant[3] in two California actions joins in the motion to vacate the conditional transfer order in these actions. All other responding defendants[4] favor inclusion of all nine actions in MDL-1358 proceedings.

On the basis of the papers filed and hearing session held, the Panel finds that these nine actions share questions of fact with actions in this litigation previously transferred to the Southern District of New York arising out of allegations that defendants knew about and misrepresented the nature of MTBE resulting in drinking water contamination. Transfer of these actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. We note that any pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy,* 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001). The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations relating to MTBE contamination. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000).

Opponents argue that the presence of individual and/or local questions of fact as well as differing legal theories in these actions should militate against inclusion of these actions in Section 1407 proceedings. We are unpersuaded by these arguments. Indeed, we point out that inclusion of these actions in Section 1407 proceedings has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation,* 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

---

[3] 7-Eleven, Inc.

[4] Atlantic Richfield Company and BP Products North America Inc.; ExxonMobil Corporation, ExxonMobil Chemical Company Inc., ExxonMobil Corporation, ExxonMobil Oil Corporation, ExxonMobil Pipe Line Company, ExxonMobil Refining and Supply Company, and Mobil Corporation; Chevron U.S.A., Inc., Chevron Chemical Company, Chevron Texaco Corporation, Equilon Services LLC, Equilon Enterprises LLC, Equiva Enterprises LLC, Gulf Oil Corp., Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Oil Products US, Shell Trading (US) Company, Shell Petroleum, Inc., Star Enterprises, Texaco Corporation, Texaco Inc., Texaco Refining and Marketing Inc., Texaco Refining and Marketing (East) Inc., and TRMI Holding; Valero Energy Corporation, Valero Refining Company California, Valero Marketing and Supply Company, Valero Refining and Marketing Company, Valero Refining Company Louisiana, Valero Refining Company New Jersey, Valero Refining Company Texas, and Valero-Colorado Refining Company; Crown Central Petroleum Corp.; Tesoro Refining & Marketing Co., Tesoro Petroleum Corporation, and Tesoro West Coast Crown Central Petroleum Corporation; Westport Petroleum, Inc.; ConocoPhillips Company; CITGO Petroleum Corporation; Sunoco Inc. and Sunoco Inc. (R&M); Lyondell Chemical Company f/k/a ARCO Chemical Company; Marathon Ashland Petroleum LLC and Marathon Oil Corporation; and El Paso Corporation and El Paso CGP Company.

- 3 -

*See In re StarLink Corn Products Liability Litigation*, 157 F.Supp.2d 1378 (J.P.M.L. 2001). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. at 436-38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these nine actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# Exhibit I

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:         [202] 502-2888

http://www.jpml.uscourts.gov

June 17, 2005

TO INVOLVED COUNSEL

Re: MDL-1358 -- In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

   *James Quinn, et al. v. Shell Oil, Inc., et al.*, N.D. California, C.A. No. 3:04-5180
   *Hope Koch, et al. v. John R. Hicks, et al.*, D. Maryland, C.A. No. 1:04-3345

Dear Counsel:

   For your information, I am enclosing a copy of an order filed today by the Panel in the above-captioned matter.

                              Very truly,

                              Michael J. Beck
                              Clerk of the Panel

                              By Denise Morgan
                                  Deputy Clerk

Enclosure

                                                            JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 7 2005

FILED
CLERK'S OFFICE

## *DOCKET NO. 1358*

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION*

*James Quinn, et al. v. Shell Oil, Inc., et al., N.D. California, C.A. No. 3:04-5180*
*Hope Koch, et al. v. John R. Hicks, et al., D. Maryland, C.A. No. 1:04-3345*

## *BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,\* ROBERT L. MILLER, JR., KATHRYN H. VRATIL\* AND DAVID R. HANSEN, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

Presently before the Panel are motions by plaintiffs in these two actions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's order conditionally transferring the actions to the Southern District of New York for inclusion in the Section 1407 proceedings occurring there in this docket. The oil company defendants[1] favor inclusion of these actions in MDL-1358 proceedings.

On the basis of the papers filed and hearing session held, the Panel finds that these actions share questions of fact with actions in this litigation previously transferred to the Southern District of New York arising out of allegations that defendants knew about and misrepresented the nature of MTBE resulting in drinking water contamination. Transfer of these actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001). The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. In that order, the Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations relating to MTBE contamination. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000).

---

\* Judge Motz took no part in the decision of this matter as it relates to the Maryland *Koch* action. Judge Vratil took no part in the decision of both actions.

[1] In *Quinn*: Shell Oil Company, Atlantic Richfield Company, BP Products North America Inc., and Union Oil of California; and in *Koch*: ExxonMobil Corporation.

- 2 -

Opponents argue that the presence of individual and/or local questions of fact as well as differing legal theories in these actions should militate against inclusion of these actions in Section 1407 proceedings. We are unpersuaded by these arguments. Indeed, inclusion of these actions in Section 1407 proceedings has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. *See In re StarLink Corn Products Liability Litigation*, 152 F.Supp.2d 1378 (J.P.M.L. 2001). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L.,199 F.R.D. at 436-38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# Exhibit J

**LIEBERMAN & BLECHER, P.C.**
10 Jefferson Plaza, Suite 100
Princeton, N.J. 08540
Tel.: (732) 355-1311
**Attorneys for Plaintiffs**

| | |
|---|---|
| ANTHONY SANGUINO, MARIA SANGUINO | ) SUPERIOR COURT OF NEW JERSEY |
| | ) MORRIS COUNTY |
| Plaintiffs, | ) LAW DIVISION |
| vs. | ) |
| | ) |
| BAIN'S AUTOMOTIVE, INC., D/B/D BAIN'S EXXON QWIK MART, EXXONMOBIL CORPORATION, JANE DOES 1-100, JON DOES, INC. 1-100 | ) DOCKET NO.: L-1672-05 |
| | ) |
| | ) *COMPLAINT* |
| Defendants. | ) |

Plaintiffs, by way of this Complaint, say:

## INTRODUCTION

1. This case is about the reckless contamination and poisoning of Plaintiffs' private well located at the Plaintiffs' residence, 5 West Street, Succasunna Township, County of Morris, New Jersey. The Defendants in this action destroyed and contaminated the Plaintiffs' drinking water supply by placing gasoline containing methyl tertiary butyl ether ("MTBE"), a gasoline additive; and tertiary butyl alcohol ("TBA), a metabolite of MTBE and a gasoline additive; lead; and Benzene Toluene Ethylbenzene and Xylene ("BTEX"), common gasoline chemical components; into leaking underground storage tanks, piping and dispensing systems (hereinafter referred to collectively as "UST systems") and in negligently and intentionally placing MTBE into the stream of commerce without taking proper precautions and without warning of MTBE's propensity to contaminate drinking water.

2. MTBE is toxic in that it is a known carcinogen in rats. In fact, MTBE is more carcinogenic in laboratory test animals than the majority of currently regulated chemical carcinogens.

3. MTBE is a colorless liquid that may cause water to contain foul taste and odor. While it has often been said that oil does not mix with water, MTBE mixes perfectly with water. It mixes so well with water that it spreads its toxic plumes faster and farther than other chemical

1    components contained in gasoline.  Moreover, because MTBE takes more time to decompose,

2    once discharged, it stays in the environment longer and wreaks much more havoc than other

3    gasoline chemical components.

4         4.  MTBE does not occur naturally but is produced in very large amounts from

5    isobutylene, a by-product in the refining process.  MTBE is a member of a class of chemical

6    compounds, ethers, whose unique properties are enhanced solubility in water and chemical

7    attraction to water molecules.  MTBE does not readily attach to soil particles and is not

8    susceptible to natural degradation.

9         5.  Benzene and Toluene are colorless liquids that are known to cause cancer in

10   human beings.

11        6.  Tertiary   butyl   alcohol   ("TBA")   has   similar   negative   environmental

12   characteristics as MTBE and may be even more toxic.  TBA is also a "break down"

13   chemical of MTBE.  Certain amounts of MTBE will break down into TBA when left in the

14   environment for a long period of time.

15        7.  Plaintiffs are Succasunna community members, and owners of property in

16   Succasunna, whom have had their drinking water and air contaminated with MTBE and/or TBA

17   and/or BTEX and/or other chemicals found in gasoline.

18        8.  Records from the New Jersey Department of Environmental Protection ("DEP")

19   reflect that the Agency considers the Bain's Automotive/Exxon Quick Mart service station to be

20   the exclusive or primary source of both the drinking water and air contamination in the

21   community.  That station is located at 65 Route 10 East, Succasunna, New Jersey. (hereinafter

22   referred to as the "site")

23        9.  Bain's Automotive and Exxon Quick Mart (hereinafter referred to as

24   "Defendants") intentionally, negligently and/or recklessly placed MTBE laced gasoline into the

25   stream of commerce without warning of its dangers.  The MTBE laced gasoline was sold and/or

26   delivered to the site and was placed into underground storage tanks located at the site.

27        10. On Information and belief, ExxonMobil conducted business at 65 Route 10 East

28   during the time period relevant hereto.

2

11. Defendant [Exxon Mobil Company] is a New Jersey corporation (hereinafter referred to as "Exxon") doing business in New Jersey.

12. Defendant [Bain's Automotive] is a New Jersey corporation (hereinafter referred to as "Bain's") doing business in New Jersey.

13. Upon information and belief, Jane Does 1-100 were and/or are individuals, or partnerships who own or owned properties nearby the Plaintiffs' residence, located at 5 West Street, Succasunna Township; and which may have contributed to the contamination at issue in this case.

14. Upon information and belief, Jon Does, Inc. 1-100 were and/or are individuals, partnerships, and corporations who operated commercial or industrial facilities nearby the Plaintiffs' residence, located at 5 West Street, Succasunna Township, New Jersey; and which may have contributed to the contamination at issue in this case.

15. Exxon and Bain's intentionally, negligently and/or recklessly placed MTBE laced gasoline into the stream of commerce without warning of its dangers. The MTBE laced gasoline was sold and/or delivered to the site and was placed into underground storage tanks located at the site.

16. On information and belief, the MTBE, TBA and BTEX chemicals were discharged from an underground storage tank at the site.

17. Plaintiffs were alarmed to learn that they had been drinking, cleaning and cooking with MTBE, TBA and/or BTEX contaminated water.

18. From the DEP reports, the Plaintiffs discovered that they had MTBE and/or lead TBA and/or BTEX in their drinking water. As a result of the high levels of groundwater contamination on the Plaintiffs' property, the DEP determined that indoor air contaminant levels must be tested. Air sample results from testing done in August 2003 revealed levels for MTBE which exceeded the state screening limits in the dining room and the basement.

19. As of this date, the site is still contaminated by MTBE, TBA and/or BTEX. The contamination has not been cleaned up.

20.   Because of this increased risk of suffering future health problems, the Plaintiffs reasonably require medical surveillance.

21. In addition, Plaintiffs' property value has plummeted.   Plaintiffs have had to use bottled water to cook and drink, and have generally had the quality of their lives disrupted as a result of the MTBE, TBA and/or BTEX contamination.

22. The harm suffered by the Plaintiffs was a result of the Defendants' acts and omissions, and such acts and omissions where actuated by actual malice or accompanied by a wanton or willful disregard of the safety of product users, consumers, and others who foreseeably might be harmed by the MTBE, including the Plaintiffs.  The Defendants engaged in intentional wrongdoing, in the sense of evil minded acts, by allowing MTBE, to be placed into an UST system that they knew would leak chemicals into the ground, air and into the groundwater where it would contaminate people's drinking water and air they breathe.

23. Moreover, Exxon placed MTBE into the stream of commerce knowing that the chemical possesses special dangers in that it has the propensity to contaminate even more water than BTEX.  Exxon knew full well of the probable hazards and ill effects that could be realized by unknowing individuals such as the Plaintiffs.  Exxon also deliberately acted or failed to act with knowledge of a high degree of probability of harm to unknown persons such as the Plaintiffs and with reckless disregard of the consequences of such actions or omissions.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over all causes of action asserted herein.

25. This Court has jurisdiction over Defendants because they are New Jersey corporations, corporations authorized to do business in New Jersey and/or registered with the New Jersey Secretary of State, reside in New Jersey, do sufficient business with sufficient minimum contacts in New Jersey, or otherwise intentionally avail themselves of the New Jersey market through the sale, manufacturing, and/or processing of petroleum-related products in New

1  Jersey to render the exercise of jurisdiction over Defendants by the New Jersey courts consistent

2  with traditional notions of fair play and substantial justice.

3  　　　26. Venue is proper in this Court because the actions of Defendants give rise to

4  transitory causes of action because and at least one of these Defendants resides and or does

5  business in Morris County, New Jersey.  Furthermore, all of the Plaintiffs reside or did reside in

6  Morris County, New Jersey.

7

8  <center>COUNT I<br>NEGLIGENCE AGAINST EXXONMOBIL</center>

9  　　　27. Plaintiffs reallege and incorporate by reference as if fully set forth herein

10  Paragraphs 1 through 27 inclusive.

11  　　　28. This lawsuit involves a Defendant, Exxon, who mixes, sells and/or transports

12  MTBE laced gasoline.  Exxon's MTBE laced gasoline was delivered to the site.

13  　　　29. MTBE's propensity to contaminate water is so menacing that even if gasoline

14  storage tanks and pipelines were completely impenetrable, which they are not, the mixing of

15  MTBE in gasoline would still pose a significant threat to groundwater.

16  　　　30. However, despite Exxon's past and current knowledge of MTBE's negative

17  characteristics, Exxon has placed, and continues to place MTBE laced gasoline into the

18  Country's stream of commerce without taking any special precautions to prevent MTBE

19  discharges to people's drinking water.

20  　　　31. MTBE should have never been mass-produced and distributed to a place like

21  Succasunna without proper education and warning of MTBE's propensity to contaminate water.

22  Moreover, Exxon should have also properly educated and warned the appropriate government

23  agencies, gasoline station owners and operators, and the public of MTBE's negative environmental

24  characteristics.

25  　　　32. Prior to placing MTBE into the stream of commerce, Exxon knew or should have

26  known that in the event MTBE was released into soil, it would easily mix with groundwater and

27  spread its toxic plume over great distances without biodegradation or bioremediation.

28  　　　33. Exxon further knew, or should have known, that when MTBE was placed into

<center>5</center>

1   Bain's Automotive's gasoline system there was a strong probability that it would escape into the

2   surrounding environment and contaminate Plaintiffs' soil, air and well water.

3   ## PRE-SALE DUTY TO PREVENT AND TO WARN

4   A.      DUTY TO PREVENT

5          34. The Defendants breached their duty to make sure that their product was safe

6   before putting it into the stream of commerce.  Specifically, the Defendants failed to take

7   appropriate precautions to protect public and private drinking water supplies, including the water

8   supplies and air vapors in the Plaintiffs' residence, from being contaminated with MTBE.  In

9   failing to take adequate steps to prevent MTBE water and air contamination, the Defendants also

10  breached their duty to protect the public from unwittingly ingesting MTBE contaminated water

11  and contaminated air vapors.

12

13         35. The Defendants further breached their duty to prevent gasoline from being

14  discharged and released from the UST system into the soil, air and groundwater.

15         36. In fact, even after a substantial amount of gasoline leaked into the ground, the

16  Defendants failed to prevent the continued migration of chemicals from the soil to groundwater.

17  The Defendants knew, or should have known, that the petroleum contaminated soil acted as a

18  continuous source of groundwater contamination that poisoned the Plaintiffs' private well for

19  years.  The Defendants were the only ones who were in a position to stop this contamination

20  from spreading and yet they did nothing.

21

22  ## POST-SALE DUTY TO WARN AND REMEDIATE

23         37. Plaintiffs are informed and believe and thereon allege that the Defendants placed

24  MTBE laced gasoline into the stream of commerce.  The Defendants' MTBE laced gasoline was

25  delivered to the gasoline system located at the Bain's Automotive site without warning the

26  proper governmental authorities, or the operators of the site, of MTBE's dangers and defects.

27

28

1  The Defendants' MTBE laced gasoline was placed into the site's gasoline system thereby

2  causing Plaintiffs' water, air and soil to be contaminated with MTBE.

3     38. The Defendants further knew that TBA and BTEX chemicals were being

4  discharged into the soil, air and groundwater from the site and did nothing to prevent this

5  contamination from spreading into Plaintiffs' air and drinking water in their residence.

6     39. Moreover, the Defendants knew or should have known that, at the time the

7  contamination was released, Plaintiffs' were defenseless to protect themselves because they had

8  no knowledge of MTBE, carcinogenicity or of its negative impacts in the air and on soil and

9  drinking water.

10    40. Also, once it became known that their air and drinking water had been

11  contaminated, the Defendants should have warned the Plaintiffs of the problem and immediately

12  remediated the contamination that their business activities had caused.

13  **A.  DUTY TO WARN**

14    41. After realizing that the Plaintiffs' soil, air and water had been contaminated as a result

15  of the Defendants' actions, the Defendants failed to adequately warn the Plaintiffs that they

16  needed to obtain medical surveillance.

17  **B.  DUTY TO REMEDIATE**

18    42. Once the contamination became publicly known, the Defendants failed to control the

19  contamination plume from continually expanding into Plaintiffs' soil, air and water wells.

20    43. Once the contamination became publicly known, the Defendants failed to remediate

21  the MTBE, TBA and BTEX contamination.  The Defendants' improper use and placement of

22  MTBE laced gasoline into the stream of commerce has interfered with Plaintiffs' use and

23  enjoyment of their property, and quality of life, and has diminished the value of their real

24  property.

25    44. The Defendants' improper use and placement of MTBE laced gasoline into the stream

26  of commerce caused Plaintiffs' need for medical surveillance.

27    45. Plaintiffs' are troubled by the fact that they have bathed in MTBE, TBA and/or

28  BTEX contaminated water and have consumed this water and breathed in contaminated air.

7

46. Plaintiffs' are also troubled by the fact that they have unwittingly bathed their relatives in MTBE, TBA and/or BTEX contaminated water and given them this same water to drink and their children have had to ingest air particles contaminated with MTBE.

47. As a direct and proximate result of the Defendants' breach of their duties, as outlined above, Plaintiffs have suffered extensive damages in an amount to be proven at time of trial.

48. The Defendants' actions, placing MTBE into the stream of commerce while knowing that it would surely contaminate drinking water, is wholly inappropriate.

49. Moreover, the Defendants willfully and intentionally breached their duty of care and acted with conscious disregard of Plaintiffs' safety with malice and oppression for which punitive and exemplary damages should be imposed.

50. Plaintiffs have suffered great harm from the Defendants' conduct and are entitled to recover punitive or exemplary damages.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

    a.  A declaration by the Court that the Defendants, and each of them, have been and continue to be in violation of each of the above statutes, regulations, standards and legal duties.

    b.  Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

    c.  Preliminary and permanent injunctions to pay money into a fund sufficient to clean, remediate and prevent future occurrences the contamination that these Defendants' caused to be discharged into Plaintiffs' well water, air and property.

    d.  Compensatory damages in an amount determined to be just and equitable by this Court.

    e.  For special, exemplary and/or punitive damages according to proof.

    f.  An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

1        g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of

2  Court.

3        h.  For such other relief as this Court deems appropriate and just.

4  <div align="center"><strong>COUNT II</strong></div>

5  <div align="center"><strong>STRICT PRODUCTS LIABILITY AGAINST ALL DEFENDANTS</strong></div>

6      51. Plaintiffs reallege and incorporate by reference as if fully set forth herein Paragraphs

7  1 thru 51 inclusive.

8      52. All Defendants placed MTBE, a defective product, into the stream of commerce.

9      53. All Defendants mixed MTBE with gasoline thereby using it as an oxygenated

10  additive.

11      54. All Defendants sold MTBE laced gasoline, thereby placing it into the stream of

12  commerce.  Said MTBE laced gasoline was then delivered to the site.

13      55. Plaintiffs are informed and believe and thereon allege that MTBE is a particularly

14  hazardous chemical in that it has a propensity to contaminate drinking water and may cause

15  serious disease and health problems.

16      56. All Defendants failed to warn appropriate governmental agencies, gasoline station

17  operators and the potentially impacted public that MTBE had the propensity to contaminate

18  water, including Plaintiffs' drinking water.  Therefore, the MTBE placed into the stream of

19  commerce by Defendant was defective because Defendant neither warned the appropriate

20  governmental agencies nor the community of Succasunna, including the Plaintiffs, of MTBE's

21  propensity to contaminate surrounding water resources when it is discharged into the

22  environment.

23      57. Thus, not only does the MTBE additive contain a design defect due to its inherent

24  dangerous characteristics, it is also defective because Defendant failed to properly warn relevant

25  regulatory agencies, distributors and consumers of MTBE's inherent dangerous characteristics.

26      58. Defendants' actions, placing an inherently dangerous chemical into the stream of

27  commerce while knowing that it would surely contaminate drinking water, is wholly

28  inappropriate.

59. Moreover, Defendants willfully and intentionally breached their duty of care and acted with conscious disregard of Plaintiffs' safety with malice and oppression for which punitive and exemplary damages should be imposed.

60.  Plaintiffs have suffered great harm from Defendants' conduct and are entitled to recover punitive or exemplary damages.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a.  A declaration by the Court that Exxon has been and continues to be in violation of each of the above statutes, regulations, standards and legal duties.

b.  Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

c.  Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that Exxon caused to be discharged into Plaintiffs' well water and property.

d.  Compensatory damages in an amount determined to be just and equitable by this Court.

e.  For special, exemplary and/or punitive damages according to proof.

f.  An order mandating that Exxon, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h.  For such other relief as this Court deems appropriate and just.

## COUNT III
## NEGLIGENT INFLICTION OF
## EMOTIONAL DISTRESS AND
## FEAR OF FUTURE INJURY ALL DEFENDANTS

61. Plaintiffs reallege and incorporate by reference as if fully set forth herein Paragraphs 1 through 61 inclusive.

62. With conscious disregard for the safety of the Succasunna residents, including Plaintiffs, all Defendants negligently placed MTBE laced gasoline into the stream of commerce. all Defendants' MTBE laden gasoline was eventually delivered to the site.

63. In placing MTBE into the stream of commerce, All Defendants knew or should have known that MTBE was certain to invade Plaintiffs' home, air, groundwater and property.

64. All Defendants' failure to properly warn governmental agencies, MTBE distributors, dispensers and sellers of MTBE's negative characteristics or otherwise take appropriate precautions in preventing the wide-spread contamination caused by MTBE led to the contamination of Plaintiffs' home, air, groundwater and property.

65. All Defendants' failure to warn or take appropriate safety measures when placing this dangerous chemical into the stream of commerce constitutes outrageous acts that exceed all bounds of decency tolerated by our society.

66. All Defendants exhibited a reckless disregard for the probability of causing Plaintiffs severe emotional distress by contaminating Plaintiffs' property, air, water supply, soil and environment, and by failing to take any steps to warn or otherwise remedy the likely impacts of their actions.

67. All Defendants negligently failed to take any steps to stop the contamination or to warn Plaintiffs of the MTBE, TBA and/or BTEX contamination and its consequences.

68. As a proximate cause of All Defendant's acts, Plaintiffs are severely emotionally distressed due to their reasonable fear that MTBE, TBA and/or BTEX laced gasoline will continue to contaminate their drinking water, air and property, the drinking water, air and property of their neighbors, and cause more damage to their community.

69. As a proximate cause of All Defendant's acts, Plaintiffs are severely emotionally

1  distressed because Plaintiffs are now aware of the potential repercussions of exposure to MTBE

2  TBA and/or BTEX laced gasoline.  Plaintiffs suffer and will continue to suffer severe emotiona

3  distress due to the reasonable belief that the MTBE, TBA and/or BTEX contaminated water tha

4  they ingested, or were otherwise exposed to, will likely cause future medical health problems o

5  complications.  Moreover, Plaintiffs are reasonably distressed at the prospect of their childre:

6  and other family members suffering future medical health problems or complications as a resul

7  of the MTBE, TBA and/or BTEX exposure.

8       70. All Defendants' actions, placing dangerous chemicals into the stream of commerce

9  while knowing that they would surely contaminate drinking water, are wholly inappropriate.

10      71. Moreover, All Defendants willfully and intentionally breached their duty of care and

11  acted with fraud, malice and oppression for which punitive and exemplary damages should be

12  imposed.

13      72. Plaintiffs have suffered great harm from All Defendants' conduct and are entitled to

14  recover punitive or exemplary damages.

15  WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

16      a.  A declaration by the Court that All Defendants has been and continues to be in

17          violation of each of the above statutes, regulations, standards and legal duties.

18      b.  Medical surveillance for each of the Plaintiffs exposed to the petroleum

19          contamination.

20      c.  Preliminary and permanent injunctions to pay money into a fund sufficient

21          to clean and remediate the contamination that All Defendants caused to be

22          discharged into Plaintiffs' well water and property.

23      d.  Compensatory damages in an amount determined to be just and equitable by

24          this Court

25      e.  For special, exemplary and/or punitive damages according to proof.

26      f.  An order mandating that All Defendants and their successors and assigns, take

27          every action necessary to assure that all relief requested herein is obtained and

28          fully funded.

g. Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h. For such other relief as this Court deems appropriate and just.

## COUNT IV
## QUALITY OF LIFE DAMAGE AGAINST ALL DEFENDANTS

73. Plaintiffs reallege and incorporate by reference as if fully set forth herein Paragraphs 1 through 73 inclusive.

74. Plaintiffs' quality of life has deteriorated tremendously as a result of the MTBE, TBA and/or BTEX contamination in the Succasunna area drinking water and air.

75. Plaintiffs have been unable to drink their water, bathe in their water, invite guests to their homes for fear that they too may be injured as a result of ingesting or coming into contact with the MTBE, TBA and/or BTEX laden water and air, or wash their cars.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. A declaration by the Court that the Defendants, and each of them, have been and continue to be in violation of each of the above statutes, regulations, standards and legal duties.

b. Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

c. Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that these the Defendants' caused to be discharged into Plaintiffs' well water, air and property.

d. Compensatory damages in an amount determined to be just and equitable by this Court.

e. For special, exemplary and/or punitive damages according to proof.

f. An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

13

g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h.  For such other relief as this Court deems appropriate and just.

## COUNT V
## PRIVATE NUISANCE AGAINST ALL DEFENDANTS

76. Plaintiffs reallege and incorporate by reference as if fully set forth herein Paragraphs 1 through 76 inclusive.  At all times material hereto, Plaintiffs were in lawful possession of their land.  The Defendants' use, occupation and operation of the site has resulted in an intrusion and the continued intrusion upon Plaintiffs' property, significantly and negatively impacting upon the Plaintiffs' rights to use and enjoy their own property.

77.  Specifically, the Defendants' unreasonable emission, disposal and release of toxic and hazardous substances into the Plaintiffs' water and air supply were substantially offensive, discomforting, and annoying to persons of ordinary sensibilities, tastes, and habits drinking and bathing in the water supply and breathing in the air.

78.  The Defendants' interference with Plaintiffs' rights was so unusual and excessive that it necessarily caused injury, damage, harm and inconvenience to Plaintiffs, and it substantially, materially and unusually interfered with their comfort, and with the proper use and enjoyment of their property.  Such invasion of Plaintiffs' rights was unreasonable.

79.  Defendants' use, occupation and operation of its service station has resulted in an entry and intrusion, and the continued entry and intrusion onto the property of the Plaintiffs without privilege, permission, invitation or justification.  The Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual or increased harm to their property and economic interests and an increased risk of future illness.  Plaintiffs are entitled to recover damages for such injuries.

14

80.  All injuries and damages to Plaintiffs are substantial.  Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude.  The amount of damages for some of the injuries will be established at the time of trial.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a.  A declaration by the Court that the Defendants, and each of them, have been and continue to be in violation of each of the above statutes, regulations, standards and legal duties.

b.  Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

c.  Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that the Defendants' caused to be discharged into Plaintiffs' well water and property.

d.  Compensatory damages in an amount determined to be just and equitable by this Court.

e.  For special, exemplary and/or punitive damages according to proof.

f.  An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of the Court.

h.  For such other relief as this Court deems appropriate and just.

**COUNT VI**

15

## TRESPASS AGAINST ALL DEFENDANTS

81. Plaintiffs reallege and incorporate by reference as if fully set forth herein Paragraphs 1 through 81 inclusive.

82. Plaintiffs were at all relevant times in possession of land they owned and/or occupied.

83. Upon information and belief, the Defendants' discharge of contaminants have migrated onto Plaintiffs' land and air and into their homes.

84. Upon information and belief, this discharge was a trespass.

85. Upon information and belief, Plaintiffs' real property, residences and personal property continues to be exposed to and contaminated by hazardous chemicals and materials emanating from the site.

86. The Defendants' use, occupation, ownership and operation of its Service Station at the site has resulted in an entry and intrusion into the homes and onto the properties owned and/or occupied by the Plaintiffs without privilege, permission, invitation or justification.

87. The Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their person. Plaintiffs are entitled to recover damages for such injuries.

88. All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

    a. A declaration by the Court that the Defendants have committed a trespass.

    b. Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

    c. Preliminary and permanent injunctions to pay money into a fund sufficient

to clean and remediate the contamination that these Defendants caused to be discharged into Plaintiffs' well water and property.

d. Compensatory damages in an amount determined to be just and equitable by this Court.

e. For special, exemplary and/or punitive damages according to proof.

f. An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

g. Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h. For such other relief as this Court deems appropriate and just.

## COUNT VIII

## NEGLIGENCE AGAINST DEFENDANT BAINS AUTOMOTIVE INC.

89. Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 89 inclusive.

90. Defendant Bain's Automotive, on information and belief, engaged in negligent action or actions tat resulted in the discharge of hazardous substances that caused harm to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. A declaration by the Court that the Defendants have committed a trespass.

b. Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

c. Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that these Defendants caused to be discharged into Plaintiffs' well water and property.

d. Compensatory damages in an amount determined to be just and equitable by this Court.

e. For special, exemplary and/or punitive damages according to proof.

f. An order mandating that the Defendants, and each of them, and their

17

1    successors and assigns, take every action necessary to assure that all relief

2    requested herein is obtained and fully funded.

3    g.  Plaintiffs'·fees and costs, as authorized by Statute and the applicable Rules of

4    Court.

5    h.  For such other relief as this Court deems appropriate and just.

6

7    <u>**COUNT VIIII**</u>

8    **NEGLIGENT SITE REMEDIATION AGAINST DEFENDANT BAINS AUTOMOTIVE**

9    **INC.**

10    91. Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs

11    1 through 91 inclusive.

12    92. Once contamination was discovered, Defendant Bain's Automotive Inc., was under a

13    legal obligation to immediately commence site remediation activities.  In so far as it was

14    reasonably foreseeable that Plaintiffs would be harmed if this Defendant did not undertake the

15    most prompt and efficient site remediation possible, it was incumbent upon this Defendant to

16    take all necessary actions to accomplish the fastest site remediation possible.

17    93. Bain's Automotive Inc. owed Plaintiffs a duty of care in the manner in which site

18    remediation activities were conducted.

19    94. A review of the Department of Environmental Protection's records reflects that the

20    most efficient method of site remediation likely to succeed was not immediately implemented by

21    this Defendant.  Instead, methods which were less costly and less likely to resolve the problem

22    were undertaken only to ultimately have to be replicated by appropriate remediation procedures.

23    95. The actions by Defendant Bain's Automotive Inc. constitute negligent remediation of

24    the subject property which was the direct and proximate cause of damages that was suffered by

25    the Plaintiffs.

26    WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief.

27    a.  A declaration by the Court that the Defendants have committed a trespass.

28

b. Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

c. Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that these Defendants caused to be discharged into Plaintiffs' well water and property.

d. Compensatory damages in an amount determined to be just and equitable by this Court.

e. For special, exemplary and/or punitive damages according to proof.

f. An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

g. Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h. For such other relief as this Court deems appropriate and just.

## COUNT IX

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT BAINS AUTOMOTIVE

96. Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 96 inclusive.

97. Once the Defendant decided to engage in site remediation activity, Bain's recognized that it would need access onto the Plaintiffs' property. Furthermore, Bain's knew that this access would be at least for some duration of time.

98. Recognizing that the Plaintiffs did not have an attorney, Bain's, through its attorney, prepared an access agreement and asked the Plaintiffs to sign it. The access agreement was one-sided and unfair, and overreaching. By way of example, even though the access agreement was for a long-term physical occupation, it provided no compensation or remuneration for rent. Furthermore, the access agreement provided no guarantee that any cleanup information in terms

19

1  of data or reports submitted to the DEP would be contemporaneously provided to the Plaintiffs.

2  In addition, the access agreement provided no termination date and made no guarantees with

3  regard to the kind of site remediation that would be pursued or that in fact even one would be

4  pursued to fruition.

5      99. Absent legal counsel, and without recognizing that they had alternatives, the

6  Plaintiffs signed the deficient access agreement.  Meanwhile, while work was being performed

7  by the remediation contractors employed by Defendant Bain's, Bain's began to understand that

8.  there were extensive levels of vapor contamination that were literally gassing the Plaintiffs out of

9  their house.  Good faith and fair dealing would have required that the Plaintiffs be provided with

10  this information on an ongoing basis.  In fact, even though the Defendant had this information

11  and understood that this was important information that was necessary to protect the health and

12  well-being of the Plaintiffs, they kept the Plaintiffs in the dark and never once provided them

13  with this important information.  Indeed, until the Plaintiffs retained their own lawyer, they did

14  not even know that results were being submitted to the Department of Environmental Protection

15  reflecting high levels of vapors in the Plaintiffs home.

16      100.  Moreover, the unmatched cooperation by the Plaintiffs in signing this access

17  agreement was done to ensure that the defendant Bain's Automotive would suffer from no legal

18  impediment which would preclude it from promptly and efficiently remediating the

19  contamination that was discharged from the gas station site onto and under the Plaintiffs

20  property.  Notwithstanding this obligation to fulfill the duty of good faith and fair dealing,

21  Defendant Bain's Automotive elected to take a slower, more cost-saving route and embarked on

22  a remediation campaign that unnecessarily exposed the Plaintiffs to vapor inhalation for a longer

23  period than necessary.  This conduct is inconsistent with the duty of good faith and fair dealing

24  that this Defendant owed to the Plaintiffs by virtue of the access agreement.

25      WHEREFORE, Plaintiffs respectfully request that this Court grant the following

26  relief:

27      a.  A declaration by the Court that the Defendants have committed a trespass.

28

    b.  Medical surveillance for each of the Plaintiffs exposed to the petroleum contamination.

    c.  Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that these Defendants caused to be discharged into Plaintiffs' well water and property.

    d.  Compensatory damages in an amount determined to be just and equitable by this Court.

    e.  For special, exemplary and/or punitive damages according to proof.

    f.  An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

    g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

    h.  For such other relief as this Court deems appropriate and just.

## COUNT X

### SPILL ACT CONTRIBUTION LIABILITY AGAINST DEFENDANT BAINS AUTOMOTIVE.

101.   Plaintiffs allege and incorporate by reference as if fully set forth herein paragraphs 1 through 101 inclusive.

102.   The New Jersey Spill Compensation and Control Act provides for the right of statutory contribution against parties to have liability under the New Jersey Spill Compensation and Control Act.

103.   Defendant Bain's automotive is in any way responsible for the discharge of a hazardous substances and in this manner is liable under the New Jersey Spill Act.

104.   The discharge and release of hazardous substances from the Bain's Automotive site has migrated onto and underneath the Plaintiffs' home for which site remediation is now required.

105.   Under the contribution provisions of the New Jersey Spill Act, Plaintiffs may commence this contribution action against Defendant Bain's Automotive and seek a full site remediation in accordance with the Technical Regulations adopted by the Department of Environmental Protection.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a.  A declaration by the Court that the Defendants have committed a trespass.

. Medical surveillance for each of the Plaintiffs exposed petroleum contamination.

c.  Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that these Defendants caused to be discharged into Plaintiffs' well water and property.

d.  Compensatory damages in an amount determined to be just and equitable by this Court.

e.  For special, exemplary and/or punitive damages according to proof.

f.  An order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded.

g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of Court.

h.  For such other relief as this Court deems appropriate and just.

## COUNT XI

### BATTERY AGAINST DEFENDANT BAINS AUTOMOTIVE

106.   Plaintiffs' reallege and incorporate by reference as if fully set forth herein paragraphs 1 through 106 inclusive.

107.   Throughout the remediation process, Defendant Bain's Automotive was aware that hazardous substances and vapors were directly injuring the Plaintiffs by migrating under and onto their property and into the air that they breathed.  Despite this knowledge, they allowed this

1 ongoing physical invasion upon the Plaintiffs persons to continue, placing them at greater risk of

2 physical harm and injury each day that this condition progressed.

3     108.    Insofar as Defendant Bain's Automotive was exclusively in custody and

4 possession of this information as it related to the ever present exposure and injury being visited

5 upon the Plaintiffs, and insofar as Bain's Automotive never offered to relocate the Plaintiffs, or

6 take them out of harm's way, but instead consciously elected to continue to expose them to

7 ongoing injury and assault and conceal the truth, this conduct is actionable as a battery.

8     WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

9     a.  A declaration by the Court that the Defendants have committed a trespass.

10       Medical surveillance for each of the Plaintiffs exposed to the petroleum

11       contamination.

12     c.  Preliminary and permanent injunctions to pay money into a fund sufficient

13       to clean and remediate the contamination that these Defendants caused to be

14       discharged into Plaintiffs' well water and property.

15     d.  Compensatory damages in an amount determined to be just and equitable by

16       this Court.

17     e.  For special, exemplary and/or punitive damages according to proof.

18     f.  An order mandating that the Defendants, and each of them, and their

19       successors and assigns, take every action necessary to assure that all relief

20       requested herein is obtained and fully funded.

21     g.  Plaintiffs' fees and costs, as authorized by Statute and the applicable Rules of

22       Court.

23     h.  For such other relief as this Court deems appropriate and just.

24

25 DATED: 0 /8/05           LIEBERMAN & BLECHER, P.C.

26         By:       Stuart J. Lieberman, Esq.

27                Lieberman & Blecher, P.C.

                 Attorneys for Plaintiffs

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATION

I Certify that there are no other lawsuits or actions relating to the subject of this litigation of which I am aware.

STUART J. LIEBERMAN

## DEMAND FOR INSURANCE COVERAGE INFORMATION

Pursuant to the New Jersey Rules of Court, please provide all required information relating to any insurance carriers who may provide coverage in this matter.

STUART J. LIEBERMAN

24

# Exhibit K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

4-08-04

-------------------------------------------------X
                              :

In re: Methyl Tertiary Butyl Ether    :
("MTBE") Products Liability Litigation   :
                              :           **ORDER**
                              :

This Document Relates To:    All Cases    :     **MDL No. 1358 (SAS)**
                              :
                              :
-------------------------------------------------X

## CASE MANAGEMENT ORDER

**I.**     **Prior Orders; Filing; Service**

       Except as otherwise noted below, this Order supersedes prior Case

Management Orders in MDL No. 1358. Attached hereto as Appendix A is a list of

the cases that are currently consolidated in this multidistrict litigation, designated

MDL 1358, which have either been filed in this Court or transferred to this Court

pursuant to 28 U.S.C. § 1407. A copy of this Order shall be filed in each case

listed in Appendix A. In cases subsequently filed in, removed or transferred to

this Court as part of MDL 1358, a copy of this Order shall be provided by the

Clerk to each plaintiff at the time the case is filed in, removed or transferred to this

Court, and each Plaintiff shall promptly serve a copy of this Order on any

defendant not previously a party in MDL 1358.

FILE

## II.   <u>Interim Measures</u>

### A.   <u>Pre-Trial Consolidation</u>

The cases listed in Appendix A are consolidated for pre-trial proceedings. This Order does not constitute a determination that these actions shall be consolidated for trial, nor does it have the effect of making any entity a party to an action in which it has not been joined or served in accordance with the Federal Rules of Civil Procedure. All cases subsequently filed in, removed or transferred to this Court as part of MDL No. 1358, shall be similarly consolidated for pre-trial proceedings.

### B.   <u>Master Docket and File</u>

The Clerk will maintain a master docket and case file under the style In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358, as Master File No. 1:00-1898 (SAS). Orders, pleadings, motions and other documents bearing a caption similar to that of this Order will, when docketed and filed in the Master File, be deemed docketed and filed in each individual case to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual cases.

### C.   <u>Captions; Separate Filing</u>

Orders, pleadings, motions and other documents will bear a caption

2

similar to that of this Order. If generally applicable to all consolidated matters,

they shall include in the caption the notation that they relate to "all cases" and

shall be filed and docketed only in the Master File. Documents intended to apply

only to particular cases will indicate in their caption the name(s) of the case(s) to

which they apply, and extra copies shall be provided to the Clerk to facilitate filing

and docketing both in the Master File and each of the specified individual files.

### III.   Party Organization: Liaison Counsel

#### A.   Liaison Counsel

The Court directs the parties to coordinate their actions through

Liaison Counsel. Nothing herein shall restrict the substantive rights of any party,

including the right to be represented by separate counsel or to take separate

positions from other parties. For purposes of nominating and coordinating with

the Liaison Counsel, the parties to the declaratory judgment actions in Appendix A

shall be reversed, so that the nominal plaintiffs in those actions are aligned with

defendants in the other cases and vice-versa. Liaison Counsel shall:

1.   Maintain and distribute to co-counsel and to the opposing
     Liaison Counsel an up-to-date service list;

2.   Coordinate with opposing Liaison Counsel and with the Court
     on scheduling issues;

3

3.   Be responsible for the service and filing of joint pleadings and communications with the Court to the extent practicable;

4.   Receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

5.   Maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository.

Plaintiffs designate as their liaison counsel Stanley N. Alpert, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038. Defendants designate as their liaison counsel Peter Sacripanti, McDermott, Will & Emery, 50 Rockefeller Plaza, New York, New York 10020.

**B.**   **Plaintiffs' Co-Lead Counsel and Executive Committee**

The Court hereby incorporates Parts III.A ("Plaintiffs' Co-Lead Counsel") and III.C ("Plaintiffs' Executive Committee") from Case Management Order No. 1 filed Nov. 8, 2000. The following attorneys shall serve as co-lead counsel pursuant to Part III.A of CMO No. 1:   Robert J. Gordon, Weitz & Luxenberg, 180 Maiden Lane, 17th Floor, New York, New York 10038; Victor M.

4

Sher, Sher Leff, 450 Mission Street, Suite 500, San Francisco, California 94105;

and Scott Summy, Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas,

Texas 71209. The Plaintiffs' Executive Committee shall consist of Co-Lead

Counsel as well as the following attorneys pursuant to Part III.C of CMO 1: Marc

Bern, Napoli Kaiser & Bern, New York, New York, and Duane Miller, Miller,

Axline and Sawyer, Sacramento, California.

IV.   <u>Service of Documents</u>

    A.   <u>Orders</u>

       A copy of each order will be provided electronically to Plaintiffs' and

Defendants' Liaison Counsel for distribution as appropriate to other counsel and

parties. Plaintiffs' Liaison Counsel shall distribute copies to other counsel for

plaintiffs; defendants' Liaison Counsel shall distribute copies to other counsel for

defendants.

    B.   <u>Pleadings, Motions, and Other Documents</u>

       The parties shall serve other parties with all pleadings, motions and

other Court filings in PDF format by electronic means, either by electronic mail or

by such other method as the parties and the Court might agree. Pursuant to Fed.

R. Civ. P. 5, service on Liaison Counsel constitutes service on other attorneys and

parties for whom Liaison Counsel acts. For the purpose of computing time under

5

Fed. R. Civ. P. 6, 1 day shall be added to the prescribed period when effecting service by electronic means under this CMO.

## V.   Motions; Pleadings; Discovery

### A.   Reconsideration; Interlocutory Appeal

Any party who wishes to move for reconsideration or certification for interlocutory appeal of the Court's March 16, 2004, order denying remand shall do so by April 9, 2004.  In the event any party files such a motion, any party opposing the motion shall file its briefs in opposition by May 24, 2004, and movants may file reply briefs by June 7, 2004.

### B.   Misjoinder; Personal Jurisdiction

Any defendant who contends that it was improperly named, or that personal jurisdiction over it is lacking, shall identify itself in writing to counsel for plaintiffs, with an explanation of the grounds for that contention, by April 23, 2004.

### C.   Amendments to Complaints

Any plaintiff in any removed action that wishes to amend its complaint may do so as of right by April 23, 2004.

### D.   Answers; Rule 12(b) Motions

1. *Removed actions.*  The time for defendants to answer or move in

6

response to the complaints will be set at the status conference scheduled for April

22, 2004, at 10:00 a.m.

2. *Declaratory judgment actions*. The declaratory judgment actions

shall be stayed pending resolution of the proposed motion for reconsideration,

and/or motion seeking certification for interlocutory appeal.

E.   **Discovery Pending Resolution of Preliminary Motions**

Pending the resolution of motions to dismiss, discovery shall be

limited to subjects necessary to the resolution of objections to personal jurisdiction

and the standing of plaintiffs. The parties shall meet and confer in an attempt to

agree on the parameters of this preliminary reciprocal discovery. If the parties are

unable to agree, the Court will address this issue at the status conference

scheduled for April 22, 2004, at 10:00 a.m. Additional discovery shall be deferred

pending further order.

F.   **Consolidated Papers**

In all motions and briefs filed in this MDL, plaintiffs and defendants

are each instructed, to the extent possible, to file consolidated papers to avoid a

multiplicity of motions and briefs.

VI.   **Disclosures Pursuant to Rule 26(a)**

Disclosures pursuant to Rule 26(a)(1) shall not be required.

7

## VII.  Subsequent Cases and Case Management Orders

The Court may issue additional case management orders as appropriate to provide for the prompt, fair and efficient administration of this matter.  As and when additional cases may be transferred or removed to or filed in this Court as part of MDL 1358, the Court will issue orders calling for those cases to proceed in a manner consistent with the procedure set forth herein and, to the extent practicable, will require those cases to follow a schedule that is the same as or similar to the schedule herein.

## VIII. Privileges Preserved

No communication among any Plaintiffs' Counsel and any Plaintiff, or among any Defendants' Counsel and any Defendant, shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
         April 1, 2004

8

**APPENDIX A**

| State | Caption or Name | Civil Index No. |
|---|---|---|
| CT | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1926 |
| CT | *Canton Board of Education v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1921 |
| CT | *Childhood Memories v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1924 |
| CT | *Columbia Board of Education v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1923 |
| CT | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1925 |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-1927 |
| CT | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | D. Conn.<br>3:03-CV-2017 |
| CT | *Exxon Mobil Corp., et al. v. American Distilling & Manufacturing Co, Inc., et al.* | D. Conn.<br>3:03-CV-2252 |
| FL | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | N.D. Fla.<br>3:03-CV-539 |
| FL | *Exxon Mobil Corp., et al. v. Escambia County Utilities Authority* | N.D. Fla.<br>3:03-CV-597 |
| IA | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | S.D. Iowa<br>4:03-CV-90663 |
| IA | *Exxon Mobil Corp., et al. v. City of Galva, et al.* | N.D. Iowa<br>C-03-4124 |
| IL | *City of Crystal Lake, et al. v. Amerada Hess Corp., et al.* | N.D. Ill. |

9

| State | Short Cause Name | Court/Index No. |
|---|---|---|
| | | 03-CV-8973 |
| IL | *Exxon Mobil Corp., et al. v. City of Crystal Lake, et al.* | N.D. Ill. 03-CV-9026 |
| IN | *City of Mishawaka v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-904 |
| IN | *City of Rockport v. v. Amerada Hess Corp., et al.* | S.D. Ind. 3:03-CV-201 |
| IN | *City of South Bend, Indiana v. Amerada Hess Corp., et al.* | N.D. Ind. 3:03-CV-905 |
| IN | *North Newton School Corp v. Amerada Hess Corp., et al.* | N.D. Ind. 4:03-CV-013 |
| IN | *Exxon Mobil Corp., et al. v. City of Rockport, et al.* | S.D. Ind. 3:03-CV-223 |
| KS | *Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1457 |
| KS | *City of Bel Aire v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1458 |
| KS | *City of Dodge City v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1456 |
| KS | *City of Park City, Kansas v. Alon USA Energy Inc., et al.* | D. Kan. 03-CV-1455 |
| KS | *Exxon Mobil Corp., et al. v. Chisholm Creek Utility Authority, et al.* | D. Kan. 04-CV-1009 |
| MA | *Town of Duxbury, et al. v. Amerada Hess Corp., et al.* | D. Mass. 03-CV-12399 |
| MA | *Exxon Mobil Corp. v. Brimfield Housing Authority, et. al.* | D. Mass. |

10

| State | Short Case Name | Civil Action No. |
|---|---|---|
| | | 03-CV-12539 |
| NH | *City of Dover v. Amerada Hess Corp., et al.* | D.N.H.<br>C-03-546 |
| NH | *City of Portsmouth v. Amerada Hess Corp., et al.* | D.N.H.<br>C-03-542 |
| NH | *Exxon Mobil Corp., et al. v. City of Portsmouth, New Hampshire, et al.* | D.N.H.<br>03-CV-518 |
| NJ | *New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp., et al.* | D.N.J.<br>03-CV-5562 |
| NY | *Carle Place Water District v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10053 |
| NY | *Town of East Hampton v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10056 |
| NY | *Village of Hempstead v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10055 |
| NY | *Village of Mineola v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10051 |
| NY | *County of Nassau v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>03-CV-9543 |
| NY | *West Hempstead Water District v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10052 |
| NY | *Westbury Water District v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10057 |
| NY | *Town of Southhampton v. AGIP, et al.* | S.D.N.Y.<br>03-CV-10054 |

11

| State | Short Case Name | Court/Civil # (if any) |
|---|---|---|
| NY | *Water Authority of Western Nassau v. Amerada Hess, et al.* | S.D.N.Y. 03-CV-9544 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp., et al.* | E.D.N.Y. 03-CV-6125 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp., et al.* | E.D.N.Y. 03-CV-6077 |
| NY | *Exxon Mobil Corp., et al. v. Long Island Water Corp., et al.* | E.D.N.Y. 03-CV-6274 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2389 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 CV 2390 |
| VA | *Patrick County School Board v. Amerada Hess Corp., et al.* | W.D. Va. 4:03-CV-104 |
| VA | *Exxon Mobil Corp., et al. v. Patrick County School Board, et al.* | W.D. Va. 4:03-CV-105 |
| VT | *Town of Hartland v. Amerada Hess Corp., et al.* | D. Vt. 2:03-CV-337 |
| VT | *Exxon Mobil Corp., et al v. Town of Hartland* | D. Vt. 2:03-CV-343 |

- Appearances -

**Liaison Counsel for Plaintiffs:**

Stanley N. Alpert, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

PAGE 3/6 * RCVD AT 7/27/2004 2:33:37 PM [Eastern Daylight Time] * SVR:25/1 * DNIS:340 * CSID: * DURATION (mm-ss):01-50

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                        :
In re: Methyl Tertiary Butyl Ether      :
("MTBE") Products Liability Litigation   :
                                        :     **ORDER**
                                        :
This Document Relates To:   All Cases    :     Master File No. 00 Civ. 1898
                                        :
                                        :     MDL No. 1358 (SAS)
                                        :
------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## CASE MANAGEMENT ORDER #2

On July 23, 2004, in advance of a status conference, the parties

submitted a joint proposed agenda and letters outlining the issues to be addressed

with the Court.  Because certain issues do not require further argument, IT IS

HEREBY ORDERED:

    1.    Procedures for Status Conferences:

    Plaintiffs and Defendants are each to submit one letter through their

liaison counsel five (5) business days prior to the scheduled

conference.  Each letter shall not exceed five (5) single space pages.

Plaintiffs and Defendants may each submit one reply letter, two (2)

business days prior to the scheduled conference.  The reply letters

1

PAGE 4/5 * RCVD AT 7/27/2004 2:39:37 PM [Eastern Daylight Time] * SVR:DEF/4 * DNIS:300 * CSID: * DURATION [mm-ss]:01-49

may not exceed three (3) single space pages.  The parties shall submit

a joint proposed agenda, indicating topics of agreement and

disagreement two (2) business days prior to the scheduled conference.

The parties must meet and confer before a dispute is submitted to

either the Court or the Special Master.

2.    The parties shall continue to work towards establishing an electronic

service mechanism.

3.    The Sacramento district attorney may participate in MDL 1358

without waiving any jurisdictional arguments.  Participation includes,

without limitation, involvement in discovery and motion practice.

4.    The Sacramento district attorney is granted leave to file a Second

Amended Complaint in *The People of the State of California, et al. v.*

*Atlantic Richfield Co., et al.*, 04 Civ. 4972, immediately, separate and

apart from establishment of a coordinated schedule for integrating

newly-transferred cases.

5.    The parties shall meet and confer regarding the issue of future

discovery and shall submit a joint proposed discovery plan seven (7)

days in advance of the next status conference.

6.    The Special Master, Kenneth E. Warner, shall hear those matters

2

referred to him by this Court.

7.    All discovery matters are referred to the Special Master, with the exception of resolving issues relating to the overall order and schedule of discovery in these consolidated actions.

8.    The Special Master is to make an order with respect to all non-dispositive matters. By definition, this includes all discovery-related matters. As set forth in the June 18, 2004 Order, a party may file an objection to any order issued by the Special Master. *See* June 18 Order ¶ 4. There is no need to make a report or recommendation with respect to a discovery dispute.

5.    The dispute regarding the Confidentiality Order is specifically referred to the Special Master. He should make whatever order he deems appropriate. Any party wishing to object should follow the procedures set forth in the June 18 Order.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
         July 27, 2004

3

PAGE 6/6 * RCVD AT 10/27/2004 2:33:27 PM [Eastern Daylight Time] * SVR:RF/1 * DNIS:590 * CSID:* DURATION (mm-ss):01-50

TITLE   P. 06

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

This Document Relates To:   All Cases

-----------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

MCDERMOTT WILL & EMERY LLP

DATE   8-02-04

PETER JOHN SACRIPANTI

ORDER

Master File No. 00 Civ. 1898

MDL No. 1358 (SAS)

## CASE MANAGEMENT ORDER #3

On April 1, 2004, this Court issued a case management order

("CMO I") setting forth procedures governing all cases then pending before the

Court.  Since the entry of CMO I, the Judicial Panel on Multidistrict Litigation has

transferred additional related cases to this Court, including, but not limited to,

cases filed by the State of New Hampshire, the People of California, and non-state

plaintiffs from five additional states.[1]  These newly-transferred cases are therefore

---

[1] The newly-transferred cases include: (1) *Orange County Water Dist. v. Unocal, et al.*, 04 Civ. 4968; (2) *City of Riverside v. Atlantic Richfield Co., et al.*, 04 Civ. 4969; (3) *Quincy Community Servs. Dist. v. Atlantic Richfield Co., et al.*, 04 Civ. 4970; (4) *City of Roseville v. Atlantic Richfield Co., et al.*, 04 Civ. 4971; (5) *City of Fresno v. Chevron USA, Inc., et al.*, 04 Civ. 4973; (6) *California-American Water Co. v. Atlantic Richfield Co., et al.*, 04 Civ. 4974; (7) *Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, 04 Civ. 4975; (8) *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, 04 Civ. 4972; (9) *State of New*

1



not bound by the deadlines set pursuant to CMO 1. In order to advance all cases in

MDL 1358 in the most efficient manner, newly transferred cases must be "caught

up" to and coordinated with the previously pending cases. This Order

memorializes certain deadlines established by the Court at a status conference on

July 28, 2004.

IT IS HEREBY ORDERED that the following schedule shall apply:

1.   **ALL CASES**

Motions for § 1292(b) Certification

- Deadline for any plaintiff who                    August 31, 2004
  wishes to join in pending
  1292(b) motion by the California plaintiffs[2]

---

*Hampshire v. Amerada Hess Corp., et al.,* 04 Civ. 4976; (10) *County of Suffolk, et al. v. Amerada Hess Corp., et al.,* 04 Civ. 5424; (11) *Franklin Square Water Dist. v. Amerada Hess Corp., et al.,* 04 Civ. 5423; (12) *Roslyn Water Dist. v. Amerada Hess Corp., et al.,* 04 Civ. 5422; (13) *Hicksville Water Dist. v. Amerada Hess Corp., et al.,* 04 Civ. 5421; (14) *Town of Campbellsburg, Indiana v. Amerada Hess Corp., et al.,* 04 Civ. 4990; (15) *City of Marksville v. Alon Usa, LP, et al.,* 04 Civ. 3412; (16) *Town of Raysville v. Alon USA Energy, Inc., et al.,* 04 Civ. 3413; (17) *Exxon Mobil Oil Corp., et al. v. New Jersey Am. Water Co., Inc., et al.,* 04 Civ. 3414; (18) *Port Washington Water Dist. v. Amerada Hess Corp., et al.,* 04 Civ. 3415; (19) *Incorporated Village of Sands Point v. Amerada Hess Corp., et al.,* 04 Civ. 3416; (20) *The City of New York v. Amerada Hess Corp., et al.,* 04 Civ. 3417; (21) *Buchanan County School Bd. v. Amerada Hess Corp., et al.,* 04 Civ. 3418; (22) *Craftsbury Fire Dist. #2 v. Amerada Hess Corp., et al.,* 04 Civ. 3419; (23) *Town of Matoaka, West Virginia, et al. v. Amerada Hess Corp., et al.,* 04 Civ. 3420.

[2] *See supra* note 1, cases numbered (1)–(7).

2



|   |   |
|---|---|
| Defendants' opposition | Ten (10) days after Court's decision on all remaining remand related motions[3] |
| • Plaintiffs' replies | Ten (10) days after opposition served |

**2.    NEWLY-TRANSFERRED CASES**

<u>Defendants identify possible defendants</u>

| | | |
|---|---|---|
| • | CA/NH cases[4] | August 30, 2004 |
| • | Other cases | September 21, 2004 |

<u>Plaintiffs file amended complaints and describe standing</u>

| | | |
|---|---|---|
| • | CA/NH cases | September 29, 2004 |
| • | Other cases | October 29, 2004 |

<u>Defendants serve limited interrogatories</u>

| | | |
|---|---|---|
| • | CA/NH cases | October 13, 2004 |
| • | Other cases | October 12, 2004 |

<u>Plaintiffs respond to defendants' interrogatories</u>

| | | |
|---|---|---|
| • | CA/NH cases | November 12, 2004 |
| • | Other cases | November 12, 2004 |

---

[3] Pending before this Court are three motions to remand by plaintiffs in cases numbered (1)–(9), and a motion for clarification, which was joined by plaintiffs in cases numbered (14)–(16) and (21)–(23).

[4] *See supra* note 1, cases numbered (1)–(9).

3

Defendants' Rule 12 motions

- CA/NH cases                    October 29, 2004
- Other cases                    November 29, 2004

Plaintiffs' responses to Rule 12 motions

- CA/NH cases                    November 29, 2004
- Other cases                    December 31, 2004

Defendants' replies to Rule 12 motions

- CA/NH cases                    December 13, 2004
- Other cases                    January 14, 2005

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, N.Y.
            July 29, 2004

4



**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

PAGE 2/25 * RCVD AT 10/22/2003 10:21:34 AM [Eastern Daylight Time] * SVR:RPT * DNIS:200 * CSID: * DURATION (mm-ss):03-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
:
In re: Methyl Tertiary Butyl Ether          :
("MTBE") Products Liability Litigation       :
:                    ORDER
:
This Document Relates To:    All Cases       :
:                    Master File No. 1:00-1898
:
:                    MDL 1358 (SAS)
:                    No. M21-88
:
------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## CASE MANAGEMENT ORDER #4

### I.   Prior Order: Filing; Service

All case management orders requiring production of documents or

other information, previously made by the Court, shall remain in full force and

effect.  Attached hereto as Appendix A is a list of cases that are currently

consolidated in this multi-district litigation, designated MDL 1358, which have

either been filed in this Court or transferred to this Court pursuant to 28 U.S.C. §

1407.  A copy of this Order shall be filed in each case listed in Appendix A.  In

cases subsequently filed in, removed to, or transferred to this Court as part of

MDL 1358, a copy of this Order shall be provided by the Clerk to each Plaintiff at

the time the case is filed in, removed, or transferred to this Court, and each

1

OCT-22-2003  08:47                                          P.02/25

plaintiff shall promptly serve a copy of this Order on any defendant not previously

a party in one or more of the cases listed in Appendix A.

**II.    Focus Cases**

A.    For purposes of this Order, the following cases are focus cases:

*County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.,* 04 Civ. 5424; *Orange County Water District v. Unocal Corp., et al.,* 04 Civ. 4968; *City of New York v. Amerada Hess Corp., et al.,* 04 Civ. 3417; and *United Water New York, Inc. v. Amerada Hess Corp., et al.,* 04 Civ. 2389.

B.    For purposes of this Order, all cases not listed in subsection II(A) are non-focus cases at this time.

C.    For purposes of this Order, the term "Relevant Geographic Area" shall mean the following:

1.    *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.,* 04 Civ. 5424:  Suffolk County, New York;

2.    *Orange County Water District v. Unocal Corp., et al.,* 04 Civ. 4968:  the Orange County Water District service area;

3.    *City of New York v. Amerada Hess Corp., et al.,* 04 Civ. 3417: physical area comprising United States of America zip code numbers 11001, 11003, 11004, 11355, 11364, 11365, 11366, 11367, 11368, 11374, 11375, 11385,

2

11411, 11412, 11413, 11414, 11415, 11416, 11417, 11418, 11419, 11420, 11421, 11422, 11423, 11426, 11427, 11428, 11429, 11430, 11432, 11433, 11434, 11435, 11436, 11451, 11580; and

4.   *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389: Rockland County, New York.

The definition of "Relevant Geographic Area" for any focus case may be modified by the parties upon both plaintiffs' and defendants' consent.

**III.   Discovery**

A.   Plaintiffs: Liability Discovery in Focus Cases

1.   Written Discovery and Production of Documents

Upon entry of this Order, as to those defendants in focus cases who were not parties to *South Tahoe Public Utilities District v. Atlantic Richfield Co., et al.*, No. 999128, Superior Court of the State of California for the County of San Francisco; or *Communities for a Better Environment v. Unocal Corp., et al.*, No. 997013, Superior Court of the State of California for the County of San Francisco or MDL 1358 I (the "Prior MTBE Litigations"), Plaintiffs may engage in written discovery on the following issues:

(i)   MTBE's characteristics in groundwater and containment systems;

3

(ii)   taste and odor of MTBE;

(iii)   alternatives, including the availability of ethanol;

(iv)   knowledge of MTBE's characteristics and industry releases;

(v)   the formation of and participation in industry groups or committees relating to MTBE;

(vi)   contacts and communications by both refiners and those industry groups with governmental regulators and officials and the substance of those communications relating to MTBE;

(vii)   decisions to select an oxygenate for use in gasoline, including the decision to use MTBE, and the decision to use or not to use ethanol;

(viii)   the decision to use MTBE to boost octane;

(ix)   the decision to use MTBE in conventional gasoline;

(x)   the decision to use MTBE in Non-Reformulated Gasoline/Non-Oxy-Fuel areas;

(xi)   the foreseeability of contamination, including

4

PAGE 6/25 * RCVD AT 10/21/2004 10:31:24 AM [Eastern Daylight Time] * SVR:RF1 * DNIS:909 * CSID: * DURATION (mm-ss):01-

knowledge of historical problems associated with

underground storage tank systems;

(xii)   programs by defendants, their subsidiaries or their

affiliates, to identify, prioritize and/or remediate

MTBE/TBA contamination within the Relevant

Geographic Area of each focus case;

(xiii)  warnings relating to gasoline containing MTBE;

(xiv)   the decision to discontinue using MTBE in

gasoline;

(xv)    surveys of the defendants that show the extent of

contamination by MTBE;

(xvi)   vulnerability studies which describe potential

impacts on public drinking water supplies and/or

wells in the Relevant Geographic Areas, and/or

any programs to require additional and/or different

remedial work to prevent MTBE and/or TBA from

entering public drinking water supplies and/or

wells in the Relevant Geographic Areas; and

(xvii)  topics (i)–(xvi) as they relate to TBA.

5

### 2. Depositions

On or after March 1, 2005, as to those defendant in focus cases who were not parties in *South Tahoe Public Utilities District v. Atlantic Richfield Co., et al.*, No. 999128, Superior Court of the State of California for the County of San Francisco; or *Communities for a Better Environment v. Unocal Corp., et al.*, No. 997013, Superior Court of the State of California for the County of San Francisco, plaintiffs may take deposition on topics (i) through (xvii) above. Nothing in this Section otherwise limits a party's right to request the production of documents on topics (i) through (xvii) in connection with a deposition so far as permitted by the Federal Rules of Civil Procedure.

### 3. Liability Discovery from Parties in Prior MTBE Litigation

In accordance with the Court's Order, dated October 18, 2004 ("Oct. 18 Order"), the Special Master shall determine whether documents produced but not copied in prior MTBE cases other than MDL 1358 shall be made available to all parties.

4. Any discovery of the type described in subsections III(A)(1) and III(A)(2) above shall be applicable to and for use in non-focus cases as well, and parties in non-focus cases will be given notice and the opportunity to participate in this discovery.

6

B.   Plaintiffs: Other Discovery in Focus Cases

1.   Production of MTBE/TBA Release Information

(a)   On or before November 1, 2004, each defendant in

*Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968, and *City of*

*New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417, shall produce one

representative site remediation file, which representative file shall be related to

gasoline or MTBE or TBA releases of any kind within the Relevant Geographic

Area and relevant time periods applicable to these focus cases.

(b)   Each defendant in *County of Suffolk and Suffolk County*

*Water Authority v. Amerada Hess Corp., et al.*, 04 Civ. 5424, and *United Water of*

*New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389, shall produce the

following:

(i)   On or before November 30, 2004, each defendant

shall produce all site remediation files in its

possession, custody or control for each gasoline

station, terminal and bulk storage facility where

there has been any release or spill of gasoline,

since 1979, within the Relevant Geographic Area

covered by these focus cases;

7

      (ii)    Subject to all foundational requirements in, and in

the format required by, subsection III(B)(2)(a)

below, on or before November 30, 2004, each

defendant shall identify the address of all gasoline

stations that they either own or have owned,

operate or have operated, lease or have leased, or

are or have been subject to a retail supply contract,

and such dates of ownership, operation, lease or

retail supply contract, since 1979, within the

Relevant Geographic Area covered by these focus

cases.

    (c)    Each Defendant in *City of New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417 (from 1979 to present) and *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968 (from 1986 to present), shall produce the following:

      (i)    On or before December 31, 2004, each defendant shall

produce all site remediation files in its possession,

custody or control for each gasoline station, terminal and

bulk storage facility where there has been any release or

8

spill of gasoline within the Relevant Geographical Area covered by these focus cases;

    (ii)    Subject to all foundational requirements in, and in the format required by, subsection III(B)(2)(a) below, on or before December 31, 2004, each defendant shall identify the address of all gasoline stations that they either owned or have owned, operate or have operated, lease or have leased, or are or have been subject to a retail supply contract, and such dates of ownership, operation, lease or retail supply contract, within the Relevant Geographic Area covered by these focus cases.

    (iii)    On or before March 15, 2005, the parties shall meet and confer to discuss what additional information is needed to conduct further discovery on this topic.

2.    <u>Declarations</u>

    (a)    On or before December 31, 2004, each defendant, to the extent it is named as a defendant in one or more of the focus cases shall provide declarations, applicable to *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp, et al.,* 04 Civ. 5424 (from 1979-present); *Orange County*

9

*Water District v. Unocal Corp., et al.,* 04 Civ. 4968 (from 1986-present); and *City of New York v. Amerada Hess Corp., et al.,* 04 Civ. 3417 (from 1979-present), based upon all non-privileged information, including documents, within the possession, custody or control of a defendant and retrievable through reasonable effort. The declarations shall identify databases and categories of documents that were used to gather the information contained in the declarations. The declarations shall contain the following information:

(i)    defendants in each focus case will identify jobbers supplied by them that provide gasoline containing MTBE to the Relevant Geographic Area;

(ii)   manufacturers of neat MTBE and/or TBA will disclose how and where it is made;

(iii)  manufacturers of neat MTBE and/or TBA will identify each refiner to whom it has sold or delivered neat MTBE and/or TBA, during the relevant time period for each focus case listed in subparagraph (a) above, that may have been added to gasoline for delivery in the Relevant Geographic Area of each focus case;

10

(iv) each refiner will provide a history of ownership, during the relevant time period for each focus case listed in subparagraph (a) above, including changes in corporate structure, of each refinery it owns or has owned that serve the Relevant Geographical Area in each focus case;

(v) each refiner will disclose the date it first blended MTBE and/or TBA into gasoline for deliveries to terminals that supplied the Relevant Geographical Area of each focus case.

(vi) each refiner shall describe the records, which include the name, contents and location of records, including electronically stored records, that record the batch number for batches of gasoline delivered from defendants' refineries to terminals in the Relevant Geographical Areas;

(vii) for each petroleum product containing MTBE refined and/or marketed by the defendant into the Relevant Geographical Area of each focus case,

11

the defendant shall disclose the name and grade (if applicable) of the product, the product and product code;

(viii)   each refiner will disclose the date it last blended MTBE and/or TBA into gasoline for deliveries into the Relevant Geographical Area of each focus case; and

(ix)   each defendant will respond to the seven categories identified by Judge Scheindlin in her Order to Marathon Ashland Petroleum, LLC, dated June 22, 2004, as that information pertains to the Relevant Geographic Area at issue in each focus cases.

Each defendant will designate, as to each sub-topic, the person(s) most qualified to testify on defendant's behalf based on defendant's investigation.

(b)   On or before January 15, 2005, the parties shall meet and confer to arrange a schedule for providing a declaration including the information listed in subsections (a)(i) through (ix) above applicable to *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04 Civ. 2389.

12

3.      Declaration Depositions

In accordance with the Oct. 18 Order, the Special Master shall

determine whether plaintiffs may serve document subpoenas in connection with

their "person most knowledgeable" depositions, in accordance with Fed. R. Civ. P.

30(b)(6).

C.      Defendants: Motion Discovery in Focus Cases

1.      Written Discovery and Production of Documents

(a)     Upon entry of this Order, defendants may engage in

written discovery as to each plaintiff in the focus cases on the following issues:

(i)     pumping data for each well that is impacted by

MTBE and/or TBA, including any documents that

relate to distribution of water from these wells,

and special testing, treatment, or handling of water

from those wells;

(ii)    the construction or maintenance of each of

plaintiffs' wells, including "as built" construction

data for each of plaintiffs' wells, including

monitoring and potable wells, that are impacted by

MTBE and/or TBA

13

(iii)   any contact with governmental and/or other

regulatory authorities in addressing releases and

remediation activities relating to MTBE and/or

TBA releases that have impacted plaintiffs' wells

and/or any aquifer supplying water to their wells;

(iv)   any releases of petroleum products, including

MTBE and/or TBA, from sites owned, controlled

and/or operated by plaintiff and any investigative

and/or remedial response activities related to such

release; and

(v)   any complaints from customers and/or purveyors

within any plaintiffs' service area or jurisdiction

relating to the taste, odor or quality of potable

water served in said area or jurisdiction;

(vi)   any Wellhead Protection studies or computer

modeling of Wellhead Protection Areas, source

water assessments, vulnerability studies, or

computer modeling of well or aquifer vulnerability

and/or § 208 Water Management or Water Basin

14

studies performed by and/or on behalf of each

focus case plaintiff, or that relate to the

groundwater or aquifer system located within the

Relevant Geographic Area.

In accordance with the Oct. 18 Order, the Special Master shall

determine whether defendants may take discovery about contaminants in

plaintiffs' wells other than MTBE or TBA, and how plaintiffs have responded to

the presence of those contaminants.

     2.   <u>Depositions</u>

     (a)   After March 1, 2005, defendants may depose

representatives of the plaintiffs in the focus cases concerning any of the topics (i)

through (vi) above.  Nothing in this Section otherwise limits a party's right to

request the production of documents on topics (i) through (vi) in connection with a

deposition so far as permitted by the Federal Rules of Civil Procedure.

   D.   <u>Preemption Discovery</u>

In accordance with the Oct. 18 Order, the Special Master shall

determine a schedule for conducting discovery related to defendants' preemption

motions and the scope of any such discovery.

   E.   <u>Non-Party Discovery</u>

15

1.    Upon entry of this Order, the parties may engage in full

discovery with respect to non-parties.

2.    Upon entry of this Order, the parties shall promptly meet and

confer regarding procedures to assure that non-party discovery proceeds in an

efficient manner.

F.    Non-Focus Cases

1.    All discovery previously ordered by the Court shall proceed in

non-focus cases.

2.    As set forth in subsection III(A)(4) above, the parties in

non-focus cases will be given notice and opportunity to participate in liability

discovery.

3.    No other discovery shall proceed in non-focus cases except as

set forth herein or upon further Order of the Court.

G.    Preservation Order

1.    On or before November 1, 2004, the parties shall submit a

document preservation order to the Court applicable to focus and non-focus cases.

H.    Prior Depositions

In accordance with the Oct. 18 Order, the Special Master shall

determine whether prior depositions taken in Prior MTBE Litigations shall be

16

PAGE 18/25 * RCVD AT 10/22/2003 10:21:24 AM [Eastern Daylight Time] * SVR:RF1 * DNIS:500 * CSID: * DURATION (mm-ss):04-58

applicable to all defendants.

    I.    <u>Reservation of Rights</u>

        Notwithstanding the forgoing, nothing in this Order shall preclude a party from being permitted to object to a discovery request on the grounds that said request is overly broad, unduly burdensome, not designed to lead to the discovery of relevant or admissible evidence, or otherwise not permitted under the applicable Federal Rules of Civil Procedure.

IV.    <u>Summary Judgment Motions</u>

    A.    <u>Preemption</u>

        Upon consideration of the parties' submissions, the Court will establish a schedule for filing preemption motions.

    B.    <u>Statutes of Limitations</u>

        1.    On or before November 15, 2004, the parties shall meet and confer regarding a stipulation as to recent releases within the *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968, target area, during an agreed-upon time frame, solely for purposes of defendants' motion.

        2.    On or before January 15, 2005, the parties shall meet and confer to identify focus issues for defendants' statutes of limitations motions applicable to *Orange County Water District v. Unocal Corp., et al.*, 04 Civ. 4968.

17

*** PAGE 19/25 * RCVD AT 10/22/2004 10:21:34 AM [Eastern Daylight Time] * SVR:R/1 * DNIS:300 * CSID: * DURATION (mm-ss):04:36

3.    After March 31, 2005, Defendants may file statutes of limitations motions applicable to the focus cases.

C.    Justiciability/No Impact/Lack of Imminent Threat

Upon consideration of the parties' submissions, the Court will establish a schedule for filing any justiciability/no impact/lack of imminent threat motions applicable to the focus cases.

D.    Primary Jurisdiction

Defendants may submit this motion on or after February 15, 2005.

E.    Lack of Cognizable Legal Interest

On or before January 15, 2005, the parties shall meet and confer regarding discovery related to this motion.

18

**F.   All Other Motions**

All other motions, other than those subject to an existing scheduling

order from the Court, shall be brought only after a pre-motion conference and

subsequent Order of the Court.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
      October 19, 2004



-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444



## Exhibit A

| CA | California-American Water Co. v. Atlantic Richfield Co., et al. | 04 Civ. 4974 |
|----|----|----|
| CA | City of Fresno v. Chevron U.S.A. Inc., et al. | 04 Civ. 4973 |
| CA | City of Riverside v. Atlantic Richfield Co., et al. | 04 Civ. 4969 |
| CA | City of Roseville v. Atlantic Richfield Co., et al. | 04 Civ. 4971 |
| CA | Orange County Water District v. Unocal Corp., et al. | 04 Civ. 4968 |
| CA | People of the State of California, et al. v. Atlantic Richfield Co., et al. | 04 Civ. 4972 |
| CA | Quincy Community Services District v. Atlantic Richfield Co., et al. | 04 Civ. 4970 |
| CA | Martin Silver, et al. v. Alon USA Energy, Inc., et al. | 04 Civ. 4975 |
| | | |
| CT | American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al. | 04 Civ. 1719 |
| CT | Columbia Board of Education v. Amerada Hess Corp., et al. | 04 Civ. 1716 |
| CT | Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al. | 04 Civ. 1718 |
| CT | Town of East Hampton v. Amerada Hess Corp., et al. | 04 Civ. 1720 |
| CT | United Water CT, Inc. v. Amerada Hess Corp., et al. | 04 Civ. 1721 |
| | | |
| FL | Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al. | 04 Civ. 1722 |
| | | |
| IA | City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al. | 04 Civ. 1723 |
| | | |
| IL | City of Island Lake v. Amerada Hess Corp., et al. (f/k/a Crystal Lake, et al. v. Amerada Hess Corp., et al.) | 04 Civ. 2053 |
| | | |
| IN | Town of Campbellsburg v. Amerada Hess Corp., et al. | 04 Civ. 4990 |

PAGE 23/25 * RCVD AT 10/21/2004 10:21:34 AM [Eastern Daylight Time] * SVR:RF1 * DNIS:100 * CSID: * DURATION (mm-ss):04-45

| IN | City of Mishawaka v. Amerada Hess Corp., et al. | 04 Civ. 2055 |
|----|------|------|
| IN | City of Rockport v.  v. Amerada Hess Corp., et al. | 04 Civ. 1724 |
| IN | City of South Bend, Indiana v. Amerada Hess Corp., et al. | 04 Civ. 2056 |
| IN | North Newton School Corp v. Amerada Hess Corp., et al. | 04 Civ. 2057 |
| KS | Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al. | 04 Civ. 2061 |
| KS | City of Bel Aire v. Alon USA Energy Inc., et al. | 04 Civ. 2062 |
| KS | City of Dodge City v. Alon USA Energy Inc., et al. | 04 Civ. 2060 |
| KS | City of Park City, Kansas v. Alon USA Energy Inc., et al. | 04 Civ. 2059 |
| LA | City of Marksville v. Alon USA Energy, Inc., et al. | 04 Civ. 3412 |
| LA | Town of Rayville v. Alon USA Energy, Inc., et al. | 04 Civ. 3413 |
| MA | Town of Duxbury, et al. v. Amerada Hess Corp., et al. | 04 Civ. 1725 |
| NH | City of Dover v. Amerada Hess Corp., et al. | 04 Civ. 2067 |
| NH | City of Portsmouth v. Amerada Hess Corp., et al. | 04 Civ. 2066 |
| NH | State of New Hampshire v. Amerada Hess. Corp. | 04 Civ. 4976 |
| NJ | New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp. et al. | 04 Civ. 1726 |
| NY | Basso, et al. v. Sunoco, Inc., et al. | 03 Civ. 9050 |
| NY | Carle Place Water District v. AGIP, et al. | 03 Civ. 10053 |
| NY | County of Suffolk v. Amerada Hess Corp., et al. | 04 Civ. 5424 |

2

PAGE 24/25 * RCVD AT 10/22/2004 10:21:24 AM [Eastern Daylight Time] * SVR:RF11 * DNIS:501 * CSID: * DURATION (mm-ss):01:26

| | | |
|---|---|---|
| NY | City of New York v. Amerada Hess Corp., et al. | 04 Civ. 3417 |
| NY | County of Nassau v. Amerada Hess Corp., et al. | 03 Civ. 9543 |
| NY | Franklin Square Water District v. Amerada Hess Corp., et al. | 04 Civ. 5423 |
| NY | Hicksville Water District v. Amerada Hess Corp., et al. | 04 Civ. 5421 |
| NY | Incorporated Village of Sands Point v. Amerada Hess Corp., et al. | 04 Civ. 3416 |
| NY | Long Island Water Corp. v. Amerada Hess Corp, et al. | 04 Civ. 2068 |
| NY | Port Washington Water District v. Amerada Hess Corp., et al. | 04 Civ. 3415 |
| NY | Roslyn Water District v. Amerada Hess Corp., et al. | 04 Civ. 5422 |
| NY | Tonneson, et al. v. Exxon Mobil Corp., et al. | 03 Civ. 8248 |
| NY | Town of East Hampton v. AGIP, et al. | 03 Civ. 10056 |
| NY | Town of Southampton v. AGIP, et al. | 03 Civ. 10054 |
| NY | Town of Wappinger v. Amerada Hess Corp., et al. | 04 Civ. 2388 |
| NY | United Water New York Inc. v. Amerada Hess Corp, et al. | 04 Civ. 2389 |
| NY | Village of Hempstead v. AGIP, et al. | 03 Civ. 10055 |
| NY | Village of Mineola v. AGIP, et al. | 03 Civ. 10051 |
| NY | Village of Pawling v. Amerada Hess Corp., et al. | 04 Civ. 2390 |
| NY | Water Authority of Great Neck North v. Amerada Hess Corp, et al. | 04 Civ. 1727 |
| NY | Water Authority of Western Nassau v. Amerada Hess Corp., et al. | 03 Civ. 9544 |
| NY | West Hempstead Water District v. AGIP, et al. | 03 Civ. 10052 |
| NY | Westbury Water District v. AGIP, et al. | 03 Civ. 10057 |
| PA | Northampton, Bucks County Municipal Authority v. Amerada Hess Corp., et al. | 04 Civ. 6993 |

3

OCT-22-2003 08:53

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
                                                :
In re: Methyl Tertiary Butyl Ether              :
("MTBE") Products Liability Litigation          :
                                                :      **ORDER**
                                                :
This Document Relates To:    All Cases          :      Master File No. 00 Civ. 1898
                                                :
                                                :      MDL No. 1358 (SAS)
                                                :
------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

<u>CASE MANAGEMENT ORDER #5</u>

On October 29 and November 5, 2004, plaintiffs filed amended

complaints in the majority of cases in this multi-district litigation.  Among other

things, the amended complaints added new defendants who are not bound by the

Court's previously-set deadlines.  Plaintiffs are in the process of serving these

amended complaints on both the previously-named and the new defendants.  In

order to avoid a multiplicity of responsive pleadings on varying deadlines, the

schedule must be amended to allow new defendants to "catch up" and coordinate

with the other parties.

IT IS HEREBY ORDERED that the following schedule shall apply:

1

1.  New Hampshire Cases
    (*City of Dover v. Amerada Hess Corp., et al.*, No. 04 Civ. 2067; *City of Portsmouth v. Amerada Hess Corp., et al.*, No. 04 Civ. 2066)

    - January 4, 2005     Plaintiffs file response briefs on pending 12(b)(6) motions

    - January 18, 2005     Defendants file reply briefs on pending 12(b)(6) motions or other responsive pleadings

2.  California and Pennsylvania Cases (Listed in Exhibit A)

    - January 18, 2005     Defendants file Rule 12 motions or other responsive pleadings

    - February 18, 2005     Plaintiffs file responses to Rule 12 motions or to other responsive pleadings

    - March 4, 2005     Defendants file replies on Rule 12 motions or other responsive pleadings

3.  Other Cases (Listed in Exhibit B[1])

    - January 18, 2005     Defendants file Rule 12 motions or other responsive pleadings (*e.g.,* joinder in pending motions, stand-alone Rule 12 motions, answers, etc.)

    - February 18, 2005     Plaintiffs file responses to Rule 12 motions or to other responsive pleadings

    - March 4, 2005     Defendants file replies on Rule 12 motions or other responsive pleadings

---

[1]   The cases listed in Exhibit B have motions to dismiss pending.

2

4.      State Plaintiffs' Cases
(*State of New Hampshire v. Amerada Hes*
*People of the State of California, et al. v.*
04 Civ. 4972)

The parties shall meet and confer to discu:
State Plaintiffs' appeals divest the Court o
while said appeals remain pending. No re
be filed before the schedule set forth abov
and B.

*[handwritten: 4. State Plaintiffs' Cases — dates.]*

5.      Notices of Appearance

All newly named parties (and any other party who has not previously done
so) shall file a Notice of Appearance within thirty (30) days of service of an
amended complaint.

6.      Waivers of Service

By letter dated November 23, 2004, as to each of the cases referenced
herein, each newly named defendant that is corporally related to, and which
shares common counsel with, an entity previously named as a defendant in
these cases, has waived service of process for each summons and amended
complaint to which said defendant has been added as a party. In lieu of
formal service of process, the amended complaints shall be delivered to
such defendants via email to their common counsel. Defendants' waiver of
service shall not apply to any amended complaint filed in a Virginia action,
and formal service of process must be completed for any such case(s)
Furthermore, a defendant's waiver of service shall not constitute a waiver

3

by that defendant of any defenses or jurisdictional objections, including
objections to personal jurisdiction.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              November 29, 2005

4

## Exhibit A

| | | |
|---|---|---|
| CA | *California-American Water Co. v. Atlantic Richfield Co., et al.* | S.D.N.Y. 04 Civ. 4974 |
| CA | *City of Fresno v. Chevron U.S.A. Inc., et al.* | S.D.N.Y. 04 Civ. 4973 |
| CA | *City of Riverside v. Atlantic Richfield Co., et al.* | S.D.N.Y. 04 Civ. 4969 |
| CA | *City of Roseville v. Atlantic Richfield Co., et al.* | S.D.N.Y. 04 Civ. 4971 |
| CA | *Orange County Water District v. Unocal Corp., et al.* | S.D.N.Y. 04 Civ. 4968 |
| CA | *People of the State of California, et al. v. Atlantic Richfield Co., et al.* | S.D.N.Y. 04 Civ. 4972 |
| CA | *Quincy Community Services District v. Atlantic Richfield Co., et al.* | S.D.N.Y. 04 Civ. 4970 |
| CA | *Martin Silver, et al. v. Alon USA Energy, Inc., et al.* | S.D.N.Y. 04 Civ. 4975 |
| PA | *Northampton, Bucks County Municipal Authority v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 6993 |

-1-

**Exhibit B**

| | | |
|---|---|---|
| CT | *American Distilling & Manufacturing Co., Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1719 |
| CT | *Columbia Board of Education v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1716 |
| CT | *Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1718 |
| CT | *Town of East Hampton v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1720 |
| CT | *United Water CT, Inc. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1721 |
| FL | *Escambia County Utilities Authority v. Adcock Petroleum, Inc, et al.* | S.D.N.Y. 04 Civ. 1722 |
| IA | *City of Sioux City, Iowa, et al. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1723 |
| IL | *City of Island Lake v. Amerada Hess Corp., et al. (f/k/a Crystal Lake, et al. v. Amerada Hess Corp., et al.)* | S.D.N.Y. 04 Civ. 2053 |
| IN | *Town of Campbellsburg v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 4990 |
| IN | *City of Mishawaka v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2055 |
| IN | *City of Rockport v. v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 1724 |
| IN | *City of South Bend, Indiana v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2056 |
| IN | *North Newton School Corp v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2057 |

-1-

| | | |
|---|---|---|
| KS | *Chisholm Creek Utility Authority v. Alon USA Energy Inc., et al.* | S.D.N.Y.<br>04 Civ. 2061 |
| KS | *City of Bel Aire v. Alon USA Energy Inc., et al.* | S.D.N.Y.<br>04 Civ. 2062 |
| KS | *City of Dodge City v. Alon USA Energy Inc., et al.* | S.D.N.Y.<br>04 Civ. 2060 |
| KS | *City of Park City, Kansas v. Alon USA Energy Inc., et al.* | S.D.N.Y.<br>04 Civ. 2059 |
| LA | *City of Marksville v. Alon USA Energy, Inc., et al.* | S.D.N.Y.<br>04 Civ. 3412 |
| LA | *Town of Rayville v. Alon USA Energy, Inc., et al.* | S.D.N.Y.<br>04 Civ. 03413 |
| MA | *Town of Duxbury, et al. v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 01725 |
| NJ | *New Jersey American Water Co., Inc., et al. v. Amerada Hess Corp, et al.* | S.D.N.Y.<br>04 Civ. 1726 |
| NY | *Basso, et al. v. Sunoco, Inc., et al.* | S.D.N.Y.<br>03 Civ. 9050 |
| NY | *Carle Place Water District v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10053 |
| NY | *County of Suffolk v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 5424 |
| NY | *City of New York v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3417 |
| NY | *County of Nassau v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>03 Civ. 9543 |

| State | Short Case Name | Case Number |
|---|---|---|
| NY | *Franklin Square Water District v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 5423 |
| NY | *Hicksville Water District v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 5421 |
| NY | *Incorporated Village of Sands Point v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 3416 |
| NY | *Long Island Water Corp. v. Amerada Hess Corp, et al.* | S.D.N.Y. 04 Civ. 2068 |
| NY | *Port Washington Water District v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 3415 |
| NY | *Roslyn Water District v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 5422 |
| NY | *Tonnesen, et al. v. Exxon Mobil Corp., et al.* | S.D.N.Y. 03 Civ. 8248 |
| NY | *Town of East Hampton v. AGIP, et al.* | S.D.N.Y. 03 Civ. 10056 |
| NY | *Town of Southampton v. AGIP, et al.* | S.D.N.Y. 03 Civ. 10054 |
| NY | *Town of Wappinger v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2388 |
| NY | *United Water New York Inc. v. Amerada Hess Corp, et al.* | S.D.N.Y. 04 Civ. 2389 |
| NY | *Village of Hempstead v. AGIP, et al.* | S.D.N.Y. 03 Civ. 10055 |
| NY | *Village of Mineola v. AGIP, et al.* | S.D.N.Y. 03 Civ. 10051 |
| NY | *Village of Pawling v. Amerada Hess Corp., et al.* | S.D.N.Y. 04 Civ. 2390 |
| NY | *Water Authority of Great Neck North v. Amerada Hess Corp, et al.* | S.D.N.Y. 04 Civ. 1727 |

| | Short Caption | |
|---|---|---|
| NY | *Water Authority of Western Nassau v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>03 Civ. 9544 |
| NY | *West Hempstead Water District v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10052 |
| NY | *Westbury Water District v. AGIP, et al.* | S.D.N.Y.<br>03 Civ. 10057 |
| VA | *Buchanan County School Board v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3418 |
| VA | *Patrick County School Board v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2070 |
| VT | *Craftsbury Fire District #2 v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 3419 |
| VT | *Town of Hartland v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 2072 |
| W.Va | *Town of Matoaka v. Amerada Hess Corp., et al.* | S.D.N.Y.<br>04 Civ. 03420 |

-4-

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------X
: 
In re: Methyl Tertiary Butyl Ether  :
("MTBE") Products Liability Litigation  :
:          **ORDER**
:
This Document Relates To:  All Cases  :          **Master File No. 1:00-1898**
:          **MDL 1358 (SAS)**
:          **M21-88**
:
------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

<u>**CASE MANAGEMENT ORDER #6**</u>

         All case management orders requiring the production of documents or

other information, previously made by the Court, shall remain in full force and

effect.  A copy of this Order shall be filed in each case listed in Appendix A of

Case Management Order #4 ("CMO #4").  In cases subsequently filed in, removed

to, or transferred to this Court as part of MDL 1358, the Clerk shall provide a copy

of this Order to each plaintiff at the time the case is filed in, removed, or

transferred to this Court, and each plaintiff shall promptly serve a copy of this

Order on any defendant not previously a party in one or more of the cases listed in

Appendix A of CMO #4.

1

## I.   Addendum to Case Management Order #4

This Court issued CMO #4 on October 19, 2004, to govern the course of discovery in this multi-district litigation. The Court referred five discovery disputes to the Special Master, which he resolved on November 12, 2004, through Pre-Trial Order #2 (later modified by Pre-Trial Order #3). Since that time, the parties have asked the Court to amend CMO #4 to incorporate certain agreed upon language and the findings of the Special Master. There is no reason to deny the request. Accordingly, CMO #4 is modified to the extent that follows:

1.     On or before February 15, 2005, the parties shall meet and confer to discuss what additional information is needed to conduct further discovery in *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, No. 04 Civ. 5424, and *United Water of New York, Inc. v. Amerada Hess Corp., et al.*, No. 04 Civ. 2389.[1]

2.     Prior to bringing a dispute to the Special Master for resolution, the parties must meet and confer in good faith to resolve the issues in dispute.

3.     On or before November 15, 2004, the parties shall meet and confer to arrange a schedule for conducting discovery related to defendants'

---

[1]     The Court granted, by letter endorsement, the parties' request to add this language to CMO 4 on December 9, 2004. I have added it again here so that the parties may refer to one document for modifications to CMO 4.

2

conflict preemption motions, it being anticipated that no further discovery is needed with respect to defendants' express preemption motions. Notwithstanding the foregoing, discovery related to preemption issues by the parties may occur prior to November 15, 2004, insofar as such discovery is part of discovery already occurring within that period pursuant to CMO #4. Any disputes with respect to the foregoing shall be brought to the Special Master for resolution.[2]

    4.    Defendants are on notice that plaintiffs intend to offer all depositions taken in Prior MTBE Litigations (as defined in CMO #4) against all defendants herein. Therefore, depositions of persons already deposed in Prior MTBE Litigations may be opened for the purpose of supplementing the prior questioning of a deponent, if a party needs to do so. However, the repetition of prior questioning of a deponent is not permitted, and prior depositions shall not be opened for that purpose. Plaintiffs shall promptly supply defendants with the identity – by date, person deposed and litigation in which conducted – of the depositions plaintiffs intend to so offer, so that those depositions will be clearly and specifically known to all parties.

    5.    A party wishing to open a deposition in a Prior MTBE

---

    [2]    Because plaintiffs requested that *all* of the Special Master's rulings be incorporated into an addendum, I have included those that required action before the date of this Order.

Litigation to supplement the testimony therein shall include, in its deposition notice, a general statement of the nature of the supplementing testimony sought. Any dispute as to whether a need exists to supplement deposition questioning in a particular instance, or whether a deposing party is merely repeating what had already been asked in the prior deposition, shall be brought to the Special Master for resolution.

6.     As a consequence of the above, the parties may not object to depositions taken in a Prior MTBE Litigation being used against them in this litigation simply because they were not parties to the Prior MTBE Litigation, or because the deposition was taken in another litigation.  However, any other objections to the use of such depositions, or any parts thereof, that are permitted under law shall remain available.

7.     Written discovery and production of documents pursuant to CMO #4, Section III.C(1) shall not include, at this time, discovery by defendants about contaminants in plaintiffs' wells other than MTBE or TBA or about how plaintiffs have responded to the presence of those contaminants; provided, however, to the extent that responsive documents kept in the normal course of business by plaintiffs include both MTBE/TBA contaminant information *and* information about other contaminants, the full documents shall be produced

4

without redaction. This ruling is without prejudice to the right of defendants, at a later time and not in connection with or in anticipation of dispositive motions, and pursuant to any subsequent order from the Court or the Special Master, to obtain discovery regarding other contaminants.

8.      In addition to the issues listed in CMO #4 Sections III.C(1)(a)(i)-(vi), defendants may engage in written discovery as to each plaintiff in the focus cases on the following issues:

a.      Water sampling and laboratory testing results for MTBE and/or TBA for potable water treated and distributed in each plaintiff's water system that is impacted by MTBE and/or TBA for the relevant time period for each of these focus cases;

b.      Well sampling and laboratory testing results for MTBE and/or TBA for each of plaintiffs' wells or water resources, including monitoring wells and potable wells, that are impacted by MTBE and/or TBA; and

c.      Plaintiffs' past and present knowledge of the characteristics of MTBE and/or TBA; the behavior of MTBE and/or TBA in the environment; taste and odor

5

issues relating to MTBE and/or TBA, and any studies relating to analysis or testing of taste or odor problems associated with water containing detectable levels of MTBE and/or TBA; historical policies regarding testing for MTBE and/or TBA; early knowledge of releases of MTBE and/or TBA to the water or aquifer system that supplies plaintiffs' wells; and plaintiffs' knowledge regarding the alleged dangers posed to their water systems by gasoline underground storage tanks, and historical policies and/or practices concerning the sale or delivery to its customers of water with MTBE and/or TBA below MCL's.

9.     As to those defendants in focus cases who were parties to the Prior MTBE Litigations listed in CMO #4, Section III.A(1), plaintiffs may take discovery on topics (i) through (xvii) thereunder only to fill gaps in the discovery taken in those Litigations on the same schedule set forth in CMO #4, Section III.A(2).  Documents produced but not copied by plaintiffs in Prior MTBE Litigations need not be made available (*i.e.*, produced again) to all parties as a matter of right; provided, however, if plaintiffs so request, the parties shall meet

6

and confer in good faith to discuss making such documents available in the present proceeding. In that regard, plaintiffs shall identify the particular categories or collections of documents falling within the topics listed in CMO #4, Section III.A(1) that were produced, but not copied by plaintiffs, in the Prior MTBE Litigations and that plaintiffs are requesting. Disputes shall be brought to the Special Master for resolution and shall be determined based upon good cause being shown for the requested production.

10.     After March 1, 2005, plaintiffs may depose the person(s) most knowledgeable for each defendant in order to obtain clarifications and specific explanations regarding all aspects of each defendant's declaration, which declarations will have been provided in compliance with CMO #4, Section III.B(2). Plaintiffs may subpoena documents, in accordance with Federal Rule of Civil Procedure 30(b)(6), to aid in obtaining those clarifications and specific explanations, such as representative or exemplar documents or other documents reasonably appropriate for that purpose. However, plaintiffs may not use the foregoing subpoenas to embark on product tracing at this time. Any disputes regarding the scope of subpoenaed documents shall be brought to the Special Master for resolution.

11.     On or before July 1, 2005, the parties shall meet and confer

7

to establish, for each focus case, a date by which plaintiffs will specify which wells in their respective systems have been impacted by MTBE and/or TBA and/or which wells are imminently threatened by MTBE and/or TBA so as to cause injury-in-fact to plaintiffs, and to identify such additional discovery by the parties as is needed to specify such threatened and/or impacted wells and to ascertain the factual basis for plaintiffs' designation of such wells.

12.   In the case of *Orange County Water Dist. v. Unocal Corp.*, No. 04 Civ. 4968, plaintiffs shall specify what water resources have been impacted by MTBE and/or TBA or that are imminently threatened by MTBE and/or TBA so as to cause injury-in-fact to the District, and the parties shall identify such additional discovery as is needed to specify such threatened and/or impacted water resources. Notwithstanding the foregoing, and relying on the good faith of plaintiffs, to whatever extent plaintiffs have a reasonable amount of impact/threat identification information ready for disclosure prior to the meet and confer, they shall disclose same to defendants without waiting for the meet and confer.

13.   The dates chosen for plaintiffs' disclosures of impacted/ threatened wells in each focus case shall be staggered in accordance with the progress of discovery and the particular circumstances of each case; provided, however, that presumptively, albeit without prejudice to change upon application

8

to the Special Master, the date for *United Water New York, Inc. v. Amerada Hess Corp., et al.*, No. 04 Civ. 2389, shall come first, followed by *County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.*, No. 04 Civ. 5424. Moreover, to the extent that a simultaneous two track disclosure process is feasible without compromising the foregoing, the date for *City of New York v. Amerada Hess Corp., et al.*, No. 04 Civ. 3417, shall come first, followed by *Orange County Water Dist. v. Unocal Corp., et al.*, No. 04 Civ. 4968, on the other track.

## II.    Addendum to Case Management Order #5

Case Management Order #5 ("CMO #5") requires newly added defendants to file Rule 12 motions or other responsive pleadings by January 18, 2005. However, that date does not give the parties enough time to meet and confer regarding potential Rule 12(b)(2) motions. Previous discussions between plaintiffs and the original defendants resulted in a number of voluntary dismissals. Because discussions could result in additional dismissals and avoid some motion practice, CMO #5 is modified to the extent that follows:

1.    The date by which newly added defendants shall file a motion under Rule 12(b)(2) challenging personal jurisdiction is extended to February 18, 2005. The newly added defendants shall file other Rule 12 motions or responsive

9

pleadings by January 18, 2005. No newly added defendant shall waive or otherwise prejudice its right to file personal jurisdiction motions under Rule 12(b)(2) by filing other Rule 12 motions or responses, responding to discovery authorized by the Court or otherwise participating in MDL 1358 proceedings.

2.    Any newly added defendant which contends that it was improperly named or that personal jurisdiction over it is lacking shall provide to counsel for plaintiffs the factual basis for its contentions by January 18, 2005. The parties thereafter shall meet and confer in an effort to resolve as many disputes as possible.

3.    For personal jurisdiction disputes that are not resolved, the following schedule shall apply:

        a.    February 18, 2005: Defendants shall file their motions and supporting briefs, affidavits, and exhibits.

        b.    March 18, 2005: Plaintiffs shall file their responses.

        c.    April 4, 2005: Defendants shall file their replies.

4.    The page limitations and the methodology for filing briefs established by this Court for personal jurisdiction motions at the May 11, 2004 status conference shall apply.

5.    In the case of *Orange County Water Dist. v. Unocal Corp., et*

10

*al.*, No. 04 Civ. 4968, Rule 12 motions are now due on February 1, 2005.

Plaintiffs shall file responses by March 4, 2005, and defendants shall file replies

by March 18, 2005.

### III.   Miscellaneous

      1.    The limits set forth in Rules 30 and 33 of the Federal Rules of

Civil Procedure shall not apply in this MDL.  Any Disputes regarding the number

of interrogatories or the number of depositions shall be decided on a case by case

basis by the Special Master.

      2.    Defendants may respond to the common allegations of the

complaints in a Master Answer in accordance with Section 40.52(6)(b) of the

Manual for Complex Litigation (Fourth).  However, they must also address case-

specific allegations to the extent they exist.  Newly added defendants that intend to

join in the filing of a Master Answer are not bound by the previously set deadline

for responsive pleadings.  The Master Answer is due thirty (30) days after the

Court's ruling on the pending 12(b)(6) motions to dismiss.[3]

---

[3]    Pending before the Court are fourteen (14) motions to dismiss
pursuant to Rule 12(b)(6).  The motions were made and briefed by state:
Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts,
New Hampshire, New Jersey, New York, Vermont, Virginia, and West Virginia.
These motions will be resolved in an omnibus opinion and order.

11

3.     Defendants are not precluded from arguing, at the appropriate time, both prongs of their conflict preemption defense – to wit:  (1) it would be impossible for defendants to comply with both the state law sought to be imposed and the federal requirements (impossibility); or (2) the state law sought to be imposed would prove an obstacle to the achievement and execution of the full purposes and objectives of Congress (frustration of purpose).

4.     The parties are permitted to take discovery regarding the quantity of oxygenates available to implement the Reformulated Gasoline Program.  This discovery is aimed at preparing (and defending against) defendants' potential motion for summary judgment based on the impossibility of complying with both state and federal requirements.  At this time, they are not permitted to take discovery regarding frustration of purpose.

5.     To the extent there are no genuine issues of material fact, defendants may bring a summary judgment motion based on the impossibility prong of conflict preemption.  They may argue frustration of purpose only to the extent it is based on the same factual predicate as the impossibility argument.

6.     The parties shall meet and confer regarding the preservation of "current" back-up tapes ( *i.e.*, back-up tapes that are being routinely recycled in the ordinary course of business).  They should use Section A of the Court's

12

Proposed Document Retention Questionnaire ("Questionnaire") as a starting point for discussions.

   7.  Defendants shall submit responses to Sections B and C of the Questionnaire to the Court and plaintiffs by February 3, 2005.

            SO ORDERED:

            _____
            Shira A. Scheindlin
            U.S.D.J.

Dated:   New York, New York
       January 14, 2005

13

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel:  (212) 558-5500
Fax:  (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel:  (212) 547-5583
Fax:  (212) 547-5444

14

S Alpris

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
                                    :
In re: Methyl Tertiary Butyl Ether  :
("MTBE") Products Liability Litigation :
                                    :      **ORDER**
                                    :
This Document Relates To:   All Cases :      Master File No. 1:00-1898
                                    :
                                    :      MDL 1358 (SAS)
                                    :      No. M21-88
------------------------------------X
SHIRA A. SCHEINDLIN, U.S.D.J.:

### CASE MANAGEMENT ORDER #7

   The parties having "met and conferred" pursuant to the requirement set forth in CMO #4

Sec.III.B.2.(b), and, having reached agreement on a date for defendants' production for certain

declarations in *United Water New York, Inc v. Amerada Hess Corp., et al.*, 04 Civ. 2389,

pursuant to that Section:

   IT IS HEREBY ORDERED that on or before March 31, 2005, each defendant, to the

extent it is named as a defendant in *United Water New York, Inc v. Amerada Hess Corp., et al.*,

04 Civ. 2389, shall provide a declaration pursuant to the requirements set forth in CMO#4 Sec.

III.B.2.

                                   SO ORDERED:

                                   Shira A. Scheindlin
                                   U.S.D.J.

Dated:      New York, New York
            March 7, 2005

                              1

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
In re: Methyl Tertiary Butyl Ether                     :        ORDER
("MTBE") Products Liability Litigation                 :
                                                       :        Master File No. 1:00–1898
This Document Relates To:  All Cases                   :        MDL 1358 (SAS)
                                                       :        M21-88
-------------------------------------------------------X

## CASE MANAGEMENT ORDER #8

This Order supersedes sections II.B and II.C of the Case Management

Order dated April 1, 2004.

     1.    All orders, pleadings, motions and other documents

(collectively, "Documents") shall bear a caption similar to that of this Order,

including the master file number (1:00–1898), MDL number (1358), and MDL

docket number (M21-88).

     2.    If generally applicable to all consolidated matters, Documents

shall include in the caption the notation that they relate to "all cases." If only

applicable to particular cases, Documents shall include in the caption the name(s)

of the case(s) to which they apply, along with the corresponding civil docket

number(s) from the Southern District of New York. As an example, see Appendix

A.

1

3. Any party filing a Document relating to "all cases" shall provide the original plus one copy to the Clerk. Any party filing a Document relating to particular cases shall provide the original, one copy for each case indicated in the caption, plus one additional copy to the Clerk.

4. The Clerk shall maintain under the style In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation both (i) a master docket and case file under Master File No. 1:00-1898 and (ii) an MDL docket and case file under M21-88.

5. The Clerk shall file and docket all original Documents under Master File No. 1:00-1898. For Documents relating to "all cases," the Clerk shall file and docket copies under M21-88. For Documents relating to particular cases, the Clerk shall file and docket copies under M21-88, as well as each case indicated in the caption. If a filing party has failed to provide the relevant number of copies, the Clerk may require the filing party to provide such copies before the

2

Document(s) will be filed and docketed, or the Clerk may make a notation in M21-88 and the individual case dockets referring to the original Document(s) in Master File No. 1:00-1898.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
     April 18, 2005

3

## APPENDIX A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | : |
| This document relates to: | : Master File No. 1:00–1898 |
| Columbia Board of Education v. Amerada Hess Corp., et al., No. 04 Civ. 1716 | : MDL 1358 (SAS) : M21-88 |
| Our Lady of the Rosary Chapel v. Amerada Hess Corp., et al., No. 04 Civ. 1718 | : |
| American Distilling and Manufacturing Co., Inc. v. Amerada Hess Corp., et al., No. 04 Civ. 1719 | : |
| Town of East Hampton v. Amerada Hess Corp., et al., No. 04 Civ. 1720 | : |
| United Water Connecticut, Inc. v. Amerada Hess Corp., et al., No. 04 Civ. 1721 | : |
| Escambia County Utilities Authority v. Amerada Hess Corp., et al., No. 04 Civ. 1722 | : |

4

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
:
In re: Methyl Tertiary Butyl Ether        :
("MTBE") Products Liability Litigation    :          ORDER
:
:          Master File No. 1:00-1898
This Document Relates To:   All Cases     :          MDL 1358 (SAS)
:          M21-88
-------------------------------------------------------X
SHIRA A. SCHEINDLIN, U.S.D.J.:



## CASE MANAGEMENT ORDER #9

Upon Plaintiffs' request,  CMO #1 is amended so that effective June 1, 2005

Plaintiffs' Liaison Counsel shall be Robin Greenwald, Esq., Weitz & Luxenberg, 180

Maiden Lane, 17th Floor, New York, New York 10038.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 2, 2005

1

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
C. Sanders McNew, Esq.
Stanley N. Alpert, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**ORDER**

Master File No. 1:00-1898

This Document Relates To: All Cases

MDL 1358 (SAS)
No. M21-88

SHIRA A. SCHEINDLIN, U.S.D.J.:

## CASE MANAGEMENT ORDER NO. 10

On April 1, 2004, this Court issued a case management order ("CMO-1") setting forth procedures governing all cases then pending before the Court. On July 29, 2004, this Court issued a third case management order ("CMO-3") setting forth procedures and deadlines for additional cases that had been transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") subsequent to the entry of CMO-1. Since the entry of CMO-3, the JPML has transferred additional related cases to this Court.[1] These newly-transferred cases are therefore not bound by the deadlines pursuant to CMO-1 and CMO-3. In order to advance all cases in MDL 1358 in the most efficient manner, these newly-transferred cases must be "caught up" to and coordinated with the previously pending cases. In addition, cases so transferred in the future will have to be "caught up" to and coordinated with the previously pending cases. Therefore, this Order sets out deadlines for those newly-transferred cases named herein as well as any related cases transferred to this Court in the future.

---

[1] The newly-transferred cases include: (1) *California Water Service Co. v. Atlantic Richfield Co., et al.,* 05 Civ. 3292; (2) *City of Lowell v. Amerada Hess Corp., et al.,* 05 Civ. 0401E; (3) *Greenville County Water and Sewer Authority, County of Greenville v. Amerada Hess Corp., et al.,* 05 Civ. 1310; and (4) *Skamania v. [ ] Improvements, LLC, et al.,* 05 Civ. 1309.

IT IS HEREBY ORDERED that the following schedule shall immediately apply to the newly-transferred cases named herein and to all related cases transferred to this Court in the future upon entry of any final transfer order by the JPML:

1. **Notices of Appearance**

   Within twenty (20) days, all newly named defendants (and any other defendant who has not done so) shall file a Notice of Appearance.

2. **Compliance with Order for Preservation of Documents**

   Within sixty-five (65) days, all newly named defendants (and any other defendant who has not done so) shall provide information required by section 2(c) of the Order for Preservation of Documents.

3. **Personal Jurisdiction**

   Within twenty (20) days, any defendant who contends that it was improperly named, or that personal jurisdiction over it is lacking, shall identify itself in writing to counsel for plaintiffs, with an explanation of the grounds for that contention. The parties shall promptly meet-and-confer to resolve the issue. Should the parties fail to resolve the issue, defendants' 12(b)(2) motions will be due within sixty (60) days. Plaintiffs' opposition to said motions will be due thirty (30) days thereafter. Defendants' reply briefs will be due ten (10) days after service of plaintiffs' opposition.

4. **Standing Interrogatories**

   Within fifteen (15) days, defendants will serve their limited standing interrogatories. Plaintiffs shall file responses within thirty (30) days.

Rule 12(b)(6) Motions or Responsive Pleadings.

Within thirty (30) days, defendants will file Rule 12(b)(6) motions or other responsive pleadings (e.g. joinder in pending motions, stand-alone Rule 12 motions, answers, etc.).[2]  Plaintiffs' opposition to any Rule 12 motions will be due within thirty (30) days.  Defendants' reply briefs will be due ten (10) days after service of plaintiffs' opposition.

Answers.

Where court denies the Rule 12 motions or other responsive pleadings or postpones their resolution pending trial on the merits, Answers shall be due within thirty (30) days after notice of the Court's ruling.  If the Court grants a motion for a more definite statement, Answers are due within thirty (30) days after the service of the more definite statement.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        June, 2005

4

JUL-18-2004  16:48                                                           P.04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
In re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

RECEIVED
CHAMBERS OF

JUL - 6 2005

ORDER SHEINDLIN

Master File No.
1:00-1898

This Document Relates To:   All Cases
----------------------------------------------------X
SHIRA A. SCHEINDLIN, U.S.D.J.:

MDL 1358 (SAS)
No. M21-88

## CASE MANAGEMENT ORDER # 11

The parties having "met and conferred" and having reached agreement on modifying the procedures for submitting pre-conference letters:

IT IS HEREBY ORDERED that pre-conference letters shall be submitted pursuant to the following schedule:

The parties shall reach agreement on a joint agenda eight (8) business days prior to the status conference.

The parties shall file with the Court initial pre-conference letters and the agenda six (6) business days prior to the status conference.

Any party wishing to file a reply letter shall do so three (3) business days prior to the status conference.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 18, 2005

RECEIVED TIME  JUL. 18.   5:11PM

TOTAL P.04

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                                         :
In re: Methyl Tertiary Butyl Ether          :      ORDER
("MTBE") Products Liability Litigation      :
                                                         :      Master File No. 1:00–1898
This Document Relates To:                   :      MDL 1358 (SAS)
All Cases In MDL 1358                        :      M21-88
-----------------------------------------------------------X
Shira A. Scheindlin, U.S.D.J.:

<u>CASE MANAGEMENT ORDER #12</u>
(Procedures for Discovery Disputes)

This Order supersedes prior Case Management Orders and Pre-Trial Order

Nos. 1, 4 and 7 relating to discovery disputes. It is hereby ordered, beginning July 18,

2005, that all discovery disputes, except as otherwise provided herein, shall be filed

with the Court in accordance with the following procedures:

I.      **Discovery Conferences**

        A.      The Court shall hold in-person discovery conferences during the 2005

calendar year according to the following schedule: July 28, 2:30 p.m.; August 12,

4:00 p.m.; August 26, 4:00 p.m.; September 9, 4:00 p.m.; October 7, 4:00 p.m.;

November 18, 4:00 p.m.; December 2, 4:00 p.m.; and December 30, 4:00 p.m. If the

parties agree that a scheduled discovery conference is not necessary, the parties shall

inform the Court , by email to the Court MTBE clerk, of their desire to cancel the

1

conference as soon as practicable, but in no event later than three (3) days before the scheduled conference.

B.     Any party wishing to raise a discovery dispute with the Court at a scheduled conference shall serve a letter brief setting forth that dispute no later than ten (10) days before the scheduled conference. However, the parties are encouraged to submit disputes as they arise, rather than waiting until ten (10) days prior to conference. Any party wishing to respond must serve its opposition letter brief no later than five (5) days before the conference. Any party wishing to reply shall serve its reply letter brief no later than two (2) days before the conference.

C.     Discovery disputes noticed in accordance with the procedures set forth in Paragraph I(B) may be heard at the Conference for which they are noticed.

D.     Whenever a motion is made by any party pursuant to this Order, the moving party, together with its Reply or other final submission on the motion, shall certify to the Court that the motion has been fully submitted and is ready for decision. Together with that certification, the moving party shall identify all submissions made on the motion, including the name of the party who made the submission and the date and nature thereof. Copies of the certification shall be sent to all parties identified as having made submissions, as well as Liaison Counsel for both sides and the Court MTBE clerk.

2

E.     The Court may elect to refer certain written discovery disputes to the Special Master.  In such circumstances, the procedures for conferences on such referred motions shall be governed by the procedures for motions submitted to the Court, subject to the modifications to such procedures set forth in Section X below.

F.     Prior to submission of a written discovery dispute, the parties may agree that the dispute should be heard by the Special Master rather than by the Court. Under such circumstances, the motion should be filed directly with the Special Master, with a copy to the Court's MTBE clerk, and shall be governed by the procedures for motions submitted to the Court, subject to the modifications to such procedures set forth in Section X below

II.    **Interim Conferences**

A.     In the event that any discovery dispute needs resolution, in good faith, prior to the next in-person conference, any party may submit a letter brief to the Court at any time raising a dispute and asking that it be heard prior to the next scheduled conference.  Any party wishing to respond must serve its opposition letter brief no later than five (5) days following service of the letter application.  Any party wishing to reply shall serve its reply letter brief no later than two (2) days after service of the opposition letter brief.

B.     This briefing schedule may be modified by the Court upon application

3

of any party.

III.   **Page Limits and Compliance with Local Civil Rule 37.1**

A.   Letter briefs permitted by these procedures shall be limited to ten (10) pages, double spaced for moving and opposition letter briefs, unless the Court permits otherwise.  Reply letter briefs shall not exceed five (5) pages, double-spaced, unless the Court permits otherwise.  This page limit does not apply to attachments or exhibits.  Counsel should avoid submitting voluminous attachments and exhibits, where possible.

B.   Any submission to the Court comprising twenty-five (25) or more pages, inclusive of exhibits, shall be submitted in a three-hole punch binder with side tabs. The party making the submission shall also provide an electronic copy of the documents, whether by computer disk or e-mail, to the Court and to the MTBE clerk.

C.   Local Civil Rule 37.1, requiring verbatim quotation of interrogatories, requests for admissions and objections and exceptions, shall not apply to the procedures before the Court.

IV.   **Communications with and Submissions to the Court**

A.   Any party communicating with the Court via e-mail shall forward the e-mail to the Court's MTBE clerk and shall copy (*i.e., cc:*) all liaison counsel. The subject line of such e-mail communications shall always begin with the designation

4

"MTBE".

    B.    The Court will not conduct telephonic discovery conferences.

V.    **Obligations to Meet-and-Confer**

    A.    The parties shall meet and confer on all discovery disputes. The time frame for the meet and confer process is limited to 30 days, the time period commencing on the date of the first written communication of the party raising the discovery objection. Any party wishing to bring a discovery dispute to the Court must first meet and confer with the appropriate plaintiff(s) and defendant(s).

    B.    Each party submitting a letter brief must certify in that letter brief that the relevant parties previously have conferred in a good faith effort to resolve the dispute being put before the Court.

VI.    **Service and Notice**

    A.    All service required by these procedures will be by electronic mail, except for the additional hard copies to be provided to the Court.

    B.    Service shall be effect no later than 6:00 p.m., Eastern Standard Time.

    C.    Letter briefs shall be served to the Court and to both parties' Liaison Counsel. If a discovery dispute involves individual plaintiffs or defendants, the parties shall serve via mail copies of relevant letter brief(s) directly to counsel for said plaintiffs and defendants, in addition to serving both Liaison Counsel.

5

D.    All written communications from the Court shall be sent directly to counsel for the parties in dispute as well as to plaintiffs' liaison counsel and to defendants' liaison counsel. The latter shall be responsible for promptly forwarding same to all of the plaintiffs and defendants, respectively, in this proceeding.

VII.  **Orders**

The Court will send its orders to the parties to any dispute, as well as to liaison counsel for plaintiffs and liaison counsel for defendants, who will be responsible for prompt service of same on all plaintiffs and defendants, respectively.

VIII. **Days**

All references to "days" for any time period that is less than eleven (11) days means business days. All references to "days" for any time period that is eleven (11) days or more, shall refer to calendar days. Where the last day of a briefing period falls on a Saturday, Sunday or legal holiday, the period shall run until the next day that is not one of the aforementioned days.

IX.   **Disputes Arising During Depositions**

A.    The Special Master shall hear all disputes arising during depositions.

B.    All disputes arising at depositions shall be resolved in accordance with the telephonic conference procedures of Local Civil Rule 37.3(b) (Eastern District rule).

6

C.   To the extent that the Special Master is not available to resolve the dispute by telephone during the deposition, the procedures in Local Civil Rule 37.3(c) (Eastern District rule) shall apply, allowing letter briefing not to exceed three (3) pages.

D.   The reconsideration procedures set forth in Local Civil Rule 37.3(d) (Eastern District rule) for deposition rulings shall also apply.

X.   **Procedures Governing Written Discovery Disputes Referred to the Special Master by the Court or on Agreement of the Parties**

A.   When the Court refers a written discovery dispute to the Special Master or when the parties agree that a written discovery dispute should be filed directly with the Special Master, all procedures set forth in this Order apply, subject to the following additions and modifications:

1.   At the sole discretion of the Special Master, any discovery dispute noticed in accordance with the procedures set forth herein may be heard at a telephonic session, may be ruled upon without oral argument, may be heard at a specially scheduled in-person conference or may be deferred to the next in-person conference. If the conferences are in-person conferences, the Special Master shall try to hold the conferences in conjunction with the Court's

7

scheduled discovery conferences set forth in Section I(A) or with each scheduled Court status conference in MDL 1358.

2.   Any party communicating with the Special Master via telephone will first have the adversary on the line as well, so that *ex parte* communications are avoided.

3.   The parties shall agree on court reporting services, and such court reporting service shall transcribe all conferences unless the Special Master directs otherwise.

4.   For in-person conferences, the parties shall have alternating responsibility for securing the services of an agreed upon court reporting service, and the parties shall share the cost of the reporting services equally.

5.   For Interim Conferences, the party filing an application or seeking the services of the Special Master shall be responsible for securing the services of an agreed upon court reporting service and for paying the costs of such services, subject to paragraph 6 below.  This will include telephonic conferences, which shall always be transcribed unless otherwise ordered by the Special Master.

8

6.   Each party shall be responsible for procuring its own copy of the transcript.

7.   The party that arranged for the court reporter shall provide a hard copy of the minuscript version and disk of the transcript to the Special Master and to the MTBE clerk.

8.   The Special Master will send his orders to the parties to any dispute, as well as to liaison counsel for plaintiffs and liaison counsel for defendants, who will be responsible for prompt service of same on all plaintiffs and defendants, respectively. The Special Master will also file a copy of his orders with the Court, as required by paragraph 3 of the Court's June 18, 2004 Order.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
         July ___, 2005

9

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robert Gordon, Esq.
Robin Greenwald, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

10