**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 2 4 2005

FILED
CLERK'S OFFICE

PLEADING NO. 210

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| **In re:** | * | **MDL Docket No.: 1358** |
|  | * |  |
| **METHYL TERTIARY BUTYL ETHER** | * | This Document Relates to: |
| **("MTBE") PRODUCTS LIABILITY** | * | *Carl G. Morgan, et al. v. Exxon Mobil* |
| **LITIGATION** | * | *Corporation*, |
|  | * | D. Maryland, C.A. No. 1:05-108 |
|  | * | (the "*Morgan* Action") |

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## EXXON MOBIL CORPORATION'S OPPOSITION TO
## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-16)

Defendant Exxon Mobil Corporation ("ExxonMobil"), by its undersigned

counsel, submits this opposition to the Motion to Vacate CTO-16 filed by Plaintiffs Carl G.

Morgan and others (the "*Morgan* Plaintiffs").

### ARGUMENT

Transfer of the *Morgan* Action for consolidated or coordinated pretrial

proceedings to MDL-1358 is appropriate if: (1) the *Morgan* Action shares one or more common

questions of fact with actions previously transferred; (2) the transfer is for the convenience of the

parties and witnesses; and (3) the transfer promotes the just and efficient conduct of the actions.

28 U.S.C. 1407(a). Because these requirements are satisfied, this Panel should deny Plaintiffs'

Motion to Vacate CTO-16.

**OFFICIAL FILE COPY** IMAGED OCT 2 5 2005

1.    **Whither Goes the Set, So Too Must Go the Subset.**

This Panel transferred the original actions to MDL-1358 because they involved

common questions of fact concerning "whether defendants knew about and misrepresented the

nature of MTBE and conspired to market MTBE without disclosing its risks to downstream

users, the federal government or the public," and "whether plaintiffs sustained drinking water

contamination as a result of MTBE contamination." (*In re Methyl Tertiary Butyl Ether*

*("MTBE") Prods. Liab. Litig.* Transfer Order of 10/10/2000, at 1.) On June 17, 2005, this Panel

transferred the putative class action *Hope Koch, et al. v. John R. Hicks, et al.*, D. Maryland, C.A.

No. 1:04-3345 (the "*Koch* Action") to MDL-1358 because it shared common questions of fact

with the actions previously transferred. (*In re Methyl Tertiary Butyl Ether ("MTBE") Prods.*

*Liab. Litig.* Transfer Order of 6/17/05, at 1, attached hereto as Exhibit 1.)

The *Morgan* Action includes fourteen Plaintiffs. The *Morgan* Plaintiffs make no

mention of the *Koch* Action or this Panel's June 17, 2005 Transfer Order. In some sense, all of

the *Morgan* Plaintiffs (excepting, perhaps, Don-Bar, Inc., *see infra*) – and their claims against

ExxonMobil – are already before the Honorable Shira A. Scheindlin in MDL-1358 as members

of the putative class defined in the *Koch* Action. When this Panel transferred the *Koch* Action to

MDL-1358, all (or all but one) of the *Morgan* Plaintiffs, as represented by Hope Koch and Frank

Koch (the "Kochs"), putatively went with it. The *Morgan* Plaintiffs are, in short, nothing other

than a subset of the putative class in the *Koch* Action.

In fact, their argument to vacate CTO-16 reproduces, often verbatim, the Kochs'

argument to vacate CTO-11. (*See* Mem. in Support of Kochs' Mot. to Vacate, attached hereto as

Exhibit 2.) A comparison of the Kochs' memorandum and the *Morgan* Plaintiffs' Brief reveals

the startling extent of the replication.  Thus, section A.1 of the Kochs' memorandum, addressing

common questions of fact, begins, on page 6:

> The first requirement that must be met for transfer is the existence
> of common questions of fact between the cases under consideration
> for transfer and the cases already before the transferee court.  Title
> 28, section 1407(a) of the United States Code states . . . .

It concludes, on page 9:

> This honorable Panel found that the "MDL-1358 actions, on the
> other hand, are purported class actions which focus on claims by
> persons or entities whose well water has not yet tested positive for
> the presence of MTBE."  The facts in *Holten* are analogous to
> those in *Koch*.

Section A.1 of the *Morgan* Plaintiffs' Brief, also addressing common questions of fact, begins,

on page 5:

> The first requirement that must be met for transfer is the existence
> of common questions of fact between the cases under consideration
> for transfer and the cases already before the transferee court.  Title
> 28, section 1407(a) of the United States Code states . . . .

It concludes, on page 8:

> This honorable Panel found that the "MDL-1358 actions, on the
> other hand, are purported class actions which focus on claims by
> persons or entities whose well water has not yet tested positive for
> the presence of MTBE."  The facts in *Holten* are analogous to
> those in this case.

In between, the sentences, words, punctuation, and citations of the *Morgan* Plaintiffs' Brief

match, almost to a T, the sentences, words, punctuation, and citations of the Kochs'

memorandum – other than substitutions of "this case," "this action," or "the instant action" for

"*Koch*" or "the *Koch* action."  So too do the sentences, words, punctuation, and citations in

sections A.2 of both documents, addressing the convenience of the parties and the just and

3

efficient conduct of the litigation. (*Compare* Mem. in Support of Kochs' Mot. to Vacate 9-13, *with* Br. in Support of Mot. to Vacate 8-11.)

The very fact that the *Morgan* Plaintiffs can submit to this Panel a near-xerograph of the Kochs' memorandum demonstrates, beyond peradventure, that the *Morgan* Action duplicates (at least in part) the *Koch* Action. As the Kochs' argument failed the first time to persuade this Panel to remand the *Koch* Action to the District of Maryland for independent pretrial proceedings, it should fail this time too. Indeed, it can only be inconvenient, unjust, and inefficient to have the MDL-1358 court regulate discovery and other pre-trial matters in the *Koch* Action but have a different court regulate those same matters in the *Morgan* Plaintiffs' subset. This Panel has already transferred the set. Whither goes the set, so too must go the subset.

**2.   Substantial Common Questions of Fact Abound:  The *Morgan* Plaintiffs Are Members of the Putative Class in the Previously Transferred *Koch* Action.**

The Kochs claim to represent a class of

> [a]ll persons (and/or entities) owning real property in the vicinity of the Upper Crossroads Exxon who have suffered legal injury due to MTBE contamination, including those whose property has suffered diminution in value (and/or who have otherwise suffered economic damage) as a result of MTBE contamination emanating from (and/or involving) the Upper Crossroads Exxon.

(*Koch* Compl. ¶ 24, attached hereto as Exhibit 3.) ExxonMobil allegedly owns the Upper Crossroads Exxon, a retail gasoline station in Fallston, Maryland.[1] (*Koch* Compl. ¶ 5.) The *Koch* Action alleges principally that ExxonMobil contaminated class members' drinking water through "the unlawful and wrongful storage of MTBE," thereby "causing substantial property damage and materially increas[ing] … health risks." (*Koch* Compl. ¶ 1.) The *Koch* Action seeks

---

[1] Since the briefing of the Kochs' Motion to Vacate CTO-11, ExxonMobil closed the Upper Crossroads Exxon.

redress against ExxonMobil under several legal theories, including nuisance, trespass, and negligence. (*Koch* Compl. ¶¶ 38-49, 53-56.)

All but one of the *Morgan* Plaintiffs allegedly own real property in the vicinity of the Upper Crossroads Exxon. (*See Morgan* Compl. ¶¶ 1-9, 13.)  Plaintiff Don-Bar, Inc. is the alleged lessee of real property in the vicinity of the Upper Crossroads Exxon owned by co-plaintiff Fallston Properties, LLC. (*Morgan* Compl. ¶¶ 4-5.)  The *Morgan* Plaintiffs all claim to have suffered legal injury due to MTBE contamination, including diminution of the value of their properties (or other economic damage) as a result of MTBE contamination emanating from (or involving) the Upper Crossroads Exxon.  In their own words, they claim:

> The gasoline and/or petroleum products, including MTBE, that escaped from the underground storage tanks and/or related equipment owned and maintained by Exxon at the Upper Crossroads Exxon, permeated and saturated the subterranean ground on the properties owned by the Plaintiffs and polluted and contaminated the groundwater system underlying the properties of the Plaintiffs ....

(*Morgan* Compl. ¶ 17.)

The alleged MTBE contamination, they claim, has caused "diminution of the value of their propert[ies]" (*Morgan* Compl. ¶¶ 20, 31, 35, 46, 50, 61, 65, 76, 80, 91, 95, 106, 110, 121, 125, 136, 140, 151, 167, 178, 182, 193, 197, 208, 212, 223, 227, 238, 242, 253), "impair[ed] the value" of their properties (*Morgan* Compl. ¶¶ 23, 26, 38, 41, 53, 56, 68, 71, 83, 86, 98, 101, 113, 116, 128, 131, 143, 146, 170, 173, 185, 188, 200, 203, 215, 218, 230, 233, 245, 248), and resulted in other economic losses.  Don-Bar, Inc. claims that the alleged MTBE contamination has caused a "decrease" or "diminution in the value of its business" and other economic losses. (*Morgan* Compl. ¶¶ 155, 158, 163.)  The *Morgan* Action seeks redress against

ExxonMobil under legal theories of strict liability (abnormally dangerous activity), nuisance, trespass, and negligence.

There can be no doubt but that the *Koch* Action, if certified as a class action, would include at least thirteen of the fourteen *Morgan* Plaintiffs as class members. (Because Don-Bar, Inc. is not alleged to own any real property, it may fall outside the proposed class definition.) Putative class representatives in the *Koch* Action are seeking certification under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). (*See Koch* Compl. ¶¶ 27, 29, 30.) If the *Koch* Action is certified under Rule 23(b)(2), the included *Morgan* Plaintiffs could not opt out. If the *Koch* Action is certified under Rule 23(b)(3), some (or all) of the *Morgan* Plaintiffs could opt out; some (or all), however, might choose instead to withdraw from the *Morgan* Action and have their claims against ExxonMobil pressed solely through the *Koch* Action.

Regardless, "[d]uring the pendency of the … [class] determination," the *Morgan* Plaintiffs remain at least "passive beneficiaries of the [*Koch*] action brought in their behalf." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974). "Rule 23 is not designed to afford class action representation only to those who are active participants in the suit prior to the order that the suit shall or shall not proceed as a class action." *Id.* As members of the putative *Koch* class, all (or all but one) of the *Morgan* Plaintiffs and their claims have already been transferred to MDL-1358.

Although the *Morgan* Plaintiffs assert that ExxonMobil's decision to add MTBE to its gasoline has no relevance to their causes of action (an assertion that ExxonMobil disputes), they concede – as they must – that "the core issue of fact in this case is whether the Defendant is responsible for the contamination of the aquifer in the Fallston, Maryland area." (Br. in Support of Mot. to Vacate 7.) The only alleged contaminant they identify is MTBE. (*See* Br. in Support

6

of Mot. to Vacate 1 ("The Plaintiffs' wells have been contaminated and/or threatened with

contamination with gasoline constituents, ***particularly*** methyl tertiary butyl ether.") (emphasis

added); *id.* at 2-4 (detailing alleged results of groundwater testing strictly in terms of parts per

billion of MTBE).)

      Contamination of drinking water by MTBE is one of the two ***general*** core issues

of fact that prompted this Panel to create MDL-1358. (*In re Methyl Tertiary Butyl Ether*

*("MTBE") Prods. Liab. Litig.* Transfer Order of 10/10/2000, at 1.) Such general commonality

alone would suffice to warrant transfer of the *Morgan* Action for consolidated or coordinated

pretrial proceedings (provided transfer would also serve the convenience of the parties and

witnesses and promote the just and efficient conduct of the actions).

      The *Morgan* Plaintiffs nevertheless attempt to catalog several purported factual

"differences" between the *Morgan* Action and others previously transferred to MDL-1358,

including

> the geology of the contaminated aquifer; the geographic extent of
> the contamination; the levels of contamination; the source of
> contamination; the presence of other potential sources of MTBE
> in the area and their relative responsibility for the contamination;
> the type of release …; the storage device for the product
> containing MTBE …; the local real estate values; and the local
> economy.

(Br. in Support of Mot. to Vacate 9.) The same catalog appears word-for-word in the Kochs'

memorandum in support of their unsuccessful motion to vacate CTO-11. (*See* Mem. in Support

of Kochs' Mot. to Vacate 11.) This Panel rejected the significance of these differences when it

transferred the *Koch* Action to MDL-1358. (*See In re Methyl Tertiary Butyl Ether ("MTBE")*

*Prods. Liab. Litig.* Transfer Order of 6/17/05, at 2 ("Opponents argue that the presence of

individual and/or local questions of fact … in these actions should militate against inclusion of

these actions in Section 1407 proceedings.  We are unpersuaded by these arguments.").)  With

the pendency of the *Koch* Action in the MDL-1358 court, these differences have even less

significance now (if indeed they ever had any).

   The ***specific*** "core issue of fact" conceded by the *Morgan* Plaintiffs – whether

ExxonMobil is responsible for the contamination of the aquifer in the Fallston, Maryland area –

is identical to the specific core issue of fact in the *Koch* Action.  (*See* Mem. in Support of Kochs'

Mot. to Vacate 11 ("[T]he core issue of fact in *Koch* [is] the contamination of a discrete aquifer

located completely in Maryland ....") (footnote omitted).)  Both cases concern ***the same***

***"discrete aquifer."***

   Not only, then, do the *Morgan* and *Koch* Actions share a specific "core issue" of

fact; they share a ***host*** of specific core ***issues*** of fact.  Though the *Morgan* Plaintiffs assert that

"the circumstances of the contamination in this case are unique" (Br. in Support of Mot. to

Vacate 9), their ipse dixit cannot make it so.  In fact, the "Factual Background" of the *Morgan*

Plaintiffs' Brief – which alleges far more than their laconic Complaint (*compare* Br. in Support

of Mot. to Vacate 1-4, *with Morgan* Compl. ¶¶ 10-17) – belies their assertion.

   The circumstances of the contamination alleged in the Brief's "Factual

Background" match the circumstances of contamination alleged in the "Factual Background" of

the Kochs' memorandum in support of their motion to vacate CTO-11.  Indeed, the text of the

two "Factual Backgrounds" (just as the text of the Kochs' and *Morgan* Plaintiffs' legal

arguments) is essentially the same.  (*Compare* Mem. in Support of Kochs' Mot. to Vacate 1-4,

*with* Br. in Support of Mot. to Vacate 1-4.)  So common, therefore, are the questions of fact

between the *Morgan* and *Koch* Actions that a single "Factual Background" suffices to describe

both.

**3.   Transfer Cannot But Serve the Overall Convenience of the Parties and Promote the Just and Efficient Conduct of the Actions.**

In the context of multidistrict litigation, the convenience of the parties and witnesses must be viewed from a comprehensive group perspective rather than from the perspective of any one party or witness. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 333 F. Supp. 299, 304 (S.D.N.Y. 1971) (construing 12 U.S.C. § 1404(a), which uses the same language as the multidistrict litigation statute, and stating that "instead of looking to the individual convenience of *each* party and *each* witness, the court must look to the overall convenience of all parties and witnesses"). This Panel "must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law." *In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1317 (J.P.M.L. 1973) (internal quotation marks omitted).

The requirement that transfer "promote the just and efficient conduct" of the actions implements the prime objective of the multidistrict litigation statute, which Congress enacted "as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litig.*, 73 F.3d 528, 531-32 (4th Cir. 1996); *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("It is expected that such transfer is to be ordered only where significant economy and efficiency in judicial administration may be obtained.") (quoting H.R. Rep. No. 1130 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900) (internal quotation marks omitted).

The *Morgan* Plaintiffs argue that transfer will not serve the goals of convenience, justice, and efficiency for three reasons:  first, because discovery common to all of the actions can be achieved through access to "documents in the public record" or in the "document

9

depository" maintained by the MDL-1358 court; second, because local discovery in the *Morgan*

Action will predominate over common discovery and will necessitate depositions of numerous

Maryland witnesses; and third, because inconsistent pretrial rulings by the MDL-1358 court and

the District of Maryland are unlikely. (*See* Br. in Support of Mot. to Vacate 10-11.)

      None of these reasons withstands scrutiny. Reliance on public documents and

document depositories can hardly be expected to meet all of the parties' legitimate discovery

needs. The MDL-1358 court can see that those needs are met fairly and efficiently. *See In re*

*MOSAID Techs., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1360 (J.P.M.L. 2003) (rejecting

proposed alternatives to consolidation and coordination of pretrial proceedings because MDL

transfer provides a more comprehensive mechanism for addressing common discovery issues).

      Even if local Maryland discovery may predominate over common discovery, the

*Koch* Action – which subsumes the *Morgan* Action, *see supra* parts 1-2 – will require almost

exactly the same local discovery. Accordingly, unless the *Morgan* and *Koch* Actions are under

the control of a single court, the risk of conflicting rulings regarding Maryland-based discovery

and duplicative depositions of Maryland-based witnesses is acute. *See In re Res. Exploration,*

*Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) (finding "additional justification for

transfer" when "most of the actions … [are] brought on behalf of similar or overlapping classes"

of plaintiffs). Judge Scheindlin, moreover, can direct both the Kochs and the *Morgan* Plaintiffs

to conduct local Maryland discovery in a manner that best serves the interests of all parties –

whether concurrently with discovery regarding common issues or otherwise.

      In sum, as this Panel concluded when it transferred the *Koch* Action to MDL-

1358:

> [I]nclusion of th[is] action[] in Section 1407 proceedings has the
> salutary effect of placing all the related actions before a single

judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F. Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

(*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.* Transfer Order of 6/17/05, at 2.)

By advancing the same assertions of fact and legal arguments once before rejected by this Panel,

the *Morgan* Plaintiffs have provided the most eloquent argument that the result should, in this

instance, be identical.

## CONCLUSION

For the foregoing reasons, ExxonMobil asks that the Panel deny Plaintiffs'

Motion to Vacate CTO-16.

Dated:    October 24, 2005

Respectfully submitted,

Andrew Gendron (Md. Fed. Bar No. 5111)
Michael J. De Vinne (Md. Fed. Bar No. 26812)
VENABLE LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland  21201
410-244-7439  (telephone)
410-244-7742  (facsimile)

Of counsel:
ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey  08033-0968
856-795-2121  (telephone)

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
McDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, New York  10020-1605

*Attorneys for Defendant Exxon Mobil Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 2 4 2005

**CERTIFICATE OF SERVICE**

FILED
CLERK'S OFFICE

I hereby certify that on this 24th day of October 2005, copies of Exxon Mobil

Corporation's Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-16)

were sent by first-class mail, postage prepaid, to:

Daniel J. Hanley
HANLEY & HANLEY
206 Washington Avenue
Towson, Maryland  21204

Robert L. Hanley, Jr.
NOLAN, PLUMHOFF & WILLIAMS, CHTD.
Nottingham Center
502 Washington Avenue, Suite 700
Towson, Maryland  21204

*Attorneys for Plaintiffs*

Robin Greenwald
WEITZ & LUXENBERG
180 Maiden Lane, 17th Floor
New York, New York  10038

*Plaintiffs' Liaison Counsel for MDL 1358*

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
MCDERMOTT, WILL & EMERY
50 Rockefeller Plaza
New York, New York  10020

*Defendant's Liaison Counsel for MDL 1358*

Michael J. De Vinne

RECEIVED
CLERK'S OFFICE
2005 OCT 24 P 12: 19
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

BA2/279428.v1

12

**PANEL SERVICE LIST (CTO-16)**
**DOCKET NO. 1358**
**IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

*Carl G. Morgan, et al. v. ExxonMobil Corp.,* D. Maryland, C.A. No. 1:05-108  (Judge Marvin J. Garbis)

Andrew Gendron
Venable, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

Robin Greenwald
Weitz & Luxenberg
180 Maiden Lane, 17th Floor
New York, NY 10038

Daniel J. Hanley
Hanley & Hanley
206 Washington Avenue
Towson, MD 21204

Robert L. Hanley, Jr.
Nolan, Plumhoff & Williams, Chtd.
Nottingham Center
502 Washington Avenue, Suite 700
Towson, MD 21204

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 2 4 2005

FILED
CLERK'S OFFICE

Exhibit 1

Case 1:04-cv-03345-MJG    Document 57    Filed 06/24/2005    Page 1 of 2

A CERTIFIED TRUE COPY

JUN 17 2005

ATTEST _____
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SCHEINDLIN

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 17 2005

FILED
CLERK'S OFFICE

## 05 CV 5

### DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*James Quinn, et al. v. Shell Oil, Inc., et al.*, N.D. California, C.A. No. 3:04-5180
*Hope Koch, et al. v. John R. Hicks, et al.*, D. Maryland, C.A. No. 1:04-3345

ENTERED

CLERK
DIST

DIST COURT
MARYLAND
DEP'T

### BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR., KATHRYN H. VRATIL[*] AND DAVID R. HANSEN, JUDGES OF THE PANEL

### TRANSFER ORDER

Presently before the Panel are motions by plaintiffs in these two actions, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), to vacate the Panel's order conditionally transferring the actions to the Southern District of New York for inclusion in the Section 1407 proceedings occurring there in this docket. The oil company defendants[1] favor inclusion of these actions in MDL-1358 proceedings.

On the basis of the papers filed and hearing session held, the Panel finds that these actions share questions of fact with actions in this litigation previously transferred to the Southern District of New York arising out of allegations that defendants knew about and misrepresented the nature of MTBE resulting in drinking water contamination. Transfer of these actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Pending motions to remand to state court can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001). The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. In that order, the Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations relating to MTBE contamination. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000).

A CERTIFIED COPY
J. MICHAEL McMAHON,            CLERK

BY _____

---

[*] Judge Motz took no part in the decision of this matter as it relates to the Maryland action, and Judge Vratil took no part in the decision of both actions.

[1] In *Quinn*: Shell Oil Company, Atlantic Richfield Company, BP Products North America Inc., and Union Oil of California; and in *Koch*: ExxonMobil Corporation.

- 2 -

Opponents argue that the presence of individual and/or local questions of fact as well as differing legal theories in these actions should militate against inclusion of these actions in Section 1407 proceedings. We are unpersuaded by these arguments. Indeed, inclusion of these actions in Section 1407 proceedings has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) prevents repetition of previously considered matters; 2) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 3) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. *See In re StarLink Corn Products Liability Litigation*, 152 F.Supp.2d 1378 (J.P.M.L. 2001). It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L.,199 F.R.D. at 436-38.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Shira Ann Scheindlin for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

Exhibit 2

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| | * | |
| | * | |
| **IN RE:** | * | **MDL Docket No.: 1358** |
| | * | This Document Relates to: |
| **METHYL TERTIARY** | * | |
| **BUTYL ETHER PRODUCTS** | * | *Hope Koch, et al. v. John R. Hicks, et al.,* |
| **LIABILITY LITIGATION** | * | 04-3345 (D. Md.) |
| | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF KOCH PLAINTIFFS' MOTION TO VACATE CTO-11

Plaintiffs Hope Koch and Frank Koch by and through undersigned counsel respectfully move that the honorable Judicial Panel on Multidistrict Litigation ("JPML") vacate its conditional transfer order, CTO-11, as it applies to the *Koch* action for the reasons set forth below.

### I. FACTUAL BACKGROUND

Plaintiffs and Proposed Class Representatives are property owners and citizens of Harford County, State of Maryland, and currently reside in the communities of Fallston and Baldwin, Maryland. Their water supply is contaminated and/or threatened by contamination with gasoline constituents, particularly methyl tertiary-butyl ether, herein referred to as "MTBE."

Hope Koch and Frank Koch, Plaintiffs and Proposed Class Representatives, are citizens and residents of Maryland, who own and occupy a single-family dwelling unit located at 2310 Franklin's Chance Court in Fallston, Maryland 21047. Their water is

23730

supplied by a well located on their property, which has tested positive for gasoline constituents.

Defendant ExxonMobil Corporation, f/k/a Exxon Corporation and f/k/a Mobil Corporation (collectively referred to as "ExxonMobil") is a New Jersey corporation with its principal place of business in Irving, Texas.  ExxonMobil is the owner of the Upper Crossroads Exxon (hereinafter "Upper Crossroads Exxon"), located at 2800 Fallston Road, Fallston, MD 21047.

Defendant John R. Hicks d/b/a Crossroads Exxon, resides at 1040 Alexandria Way, Bel Air, Harford County, Maryland 21014, the same county where this contamination occurred.  Defendant Hicks operates the Upper Crossroads Exxon at 2800 Fallston Road, Fallston, MD 21047, through a licensing, franchise, and/or other agreement with Defendant ExxonMobil Oil Corporation.

The Upper Crossroads Exxon has been in operation since 1987 and currently operates four active underground storage tank ("USTs").  There are three gasoline USTs (one 12,000 gallon and two 10,000 gallon) and one 10,000 gallon diesel UST.  Two additional tanks – one 1,000 gallon heating oil UST and one 1,000 gallon used oil UST – were removed in April and June of 1997, respectively.

In October 1991, unbeknownst to Plaintiffs and the proposed two sub-classes (referred to collectively as the "Class"), the Harford County Health Department tested the supply wells for the restaurants in close proximity to the Upper Crossroads Exxon and found high levels of MTBE.  In response the Maryland Department of the Environment ("MDE") required Defendants to conduct an investigation of the Upper Crossroads Exxon.  The investigation included the installation of three shallow monitoring wells and

the collection of surface water and groundwater samples. The analytical results from the investigation revealed the presence of MTBE in the Upper Crossroads Exxon's drinking water supply well at 9.5 parts per billion ("ppb"). The MDE closed the case at that time.

In December of 1998, routine Harford County drinking water sampling of commercial establishments in close proximity to the Crossroads Exxon revealed elevated concentrations of MTBE in the groundwater. The highest concentration was 126 ppb, which was found at a local eating establishment. The MDE directed the Defendants to install a carbon filtration system at that eating establishment and to sample additional drinking water wells in the immediate vicinity of the Upper Crossroads Exxon.

In June 2002, annual groundwater sampling identified a second commercial property at the intersection of Routes 152 and 165 in Fallston, Maryland testing positive for MTBE at 42.9 ppb. This commercial property was also in close proximity to the Defendant.

In August 2003, the MDE approved the Defendants' work plans to install four monitoring wells at the Upper Crossroads Exxon. Sampling of those monitoring wells confirmed the presence of MTBE in the groundwater at levels as high as 26,000 ppb.

In October 2003, the Defendants submitted an environmental subsurface investigation report. Based on the results of that investigation, the MDE required the Defendants to expand its groundwater monitoring program for offsite wells to include several additional commercial and residential properties within the immediate vicinity of the Upper Crossroads Exxon.

The drinking water sampling in May of 2004 confirmed additional MTBE contamination in off-site wells with some more than a half mile from the Upper Crossroads Exxon.

In June of 2004, Plaintiffs first learned of the contamination of their wells and/or wells on neighboring properties, with MTBE. As a result of Defendants failing to inform the Plaintiffs of the MTBE-contamination, Plaintiffs have been drinking, cleaning, bathing, cooking and living with MTBE-contaminated water for years – a fact that was unknown to the plaintiffs and should have been known by the Defendants.

Since June of 2004 and under the direction of the MDE, the Defendant ExxonMobil has been conducting an environmental investigation of the contamination; providing bottled water to all residents within a half-mile radius of the Upper Crossroads Exxon; and installing granular activated carbon ("GAC") systems in homes.

As of October 2004, over 70 private wells in the Fallston/Baldwin area had some level of MTBE. There have been even more detections of MTBE in private wells since that time, and it is unlikely that this contamination will resolve in the near future without substantial remediation of the aquifer.

## II. PROCEDURAL HISTORY

On June 30, 2004, Plaintiffs filed a Class Action Complaint in the Circuit Court for Harford County, Maryland. The complaint specified several state causes of action and relief; specifically, public and private nuisance, trespass, violation of state environmental laws, negligence, and medical monitoring.

The complaint was served on the Defendants on or about June 30, 2004.

On September 23, 2004, the Circuit Court for Harford County, Maryland *sua sponte* consolidated *Koch* pursuant to Maryland Rule 2-503(a) with another case[1] that had been filed after the Kochs filed suit.

The Defendants removed *Koch* from the Circuit Court for Harford County to the United States District Court for the District of Maryland, Northern Division on October 15, 2004, which amounts to more than 100 days after service of the *Koch* complaint on Defendants.

The *Koch* plaintiffs filed in the United States District Court for the District of Maryland two motions to remand: the first on October 21, 2004 and the second on October 25, 2004. The Defendants filed their opposition to the Plaintiffs' motions to remand on November 8, 2004, and the Plaintiffs filed their reply on November 19, 2004. Defendant ExxonMobil filed for leave to file a surreply with the surreply attached on December 1, 2004. As of March 21, 2005, the district court has not ruled on the motions to remand.

On January 5, 2005, the Defendant filed a Notice of Relatedness advising the JPML and this Court that this matter is a potential "tag-along action" subject to transfer for consolidation with cases currently pending under *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL-1358 (hereinafter "MDL-1358").

On January 10, 2005, the Defendant filed ExxonMobil Corporation's Motion to Stay Proceedings and Memorandum of Law in Support ("Exxon's Stay Motion") in federal district court. In response, Plaintiffs filed an Opposition to Defendant Exxon's

---

[1] The case is *Stephen J. Wagner, et al. v. John R. Hicks, et al.*, Case No. 12-C-04-2448 (filed Sept. 1, 2004). The *Wagner* plaintiffs have since dismissed their complaint without prejudice, leaving only the *Koch* action.

Stay Motion on January 27, 2005.  On February 11, 2005 Defendant ExxonMobil filed a reply.  No hearing has been scheduled and the district court has not yet ruled on the motions to stay.

On February 22, 2005, this honorable Panel filed CTO-11.  Plaintiffs filed a Notice of Opposition to CTO-11 on March 8, 2005, via facsimile transmission.  Plaintiffs respectfully request that the Panel vacate CTO-11 as to the *Koch* case for reasons set forth herein.

### III. ARGUMENT

#### A. Transfer of *Koch* does not meet the standard for transfer pursuant to 28 U.S.C. § 1407(a).

On the surface, the *Koch* case may appear to involve the same issues of fact as the cases in MDL-1358 before the Honorable Shira Scheindlin. However, a closer inspection of the facts reveals there are very few common issues of fact between *Koch* and the cases in MDL-1358. *Koch* is a case about a single gas station that is a known source of MTBE contamination of a local aquifer, upon which residents in the area rely for their water supply. *Koch* is not a case about what the EPA may have required the oil industry to do or about contamination of municipal water sources or about a speculative claim of future contamination. The only commonality between *Koch* and the MDL-1358 cases is the fact that MTBE is the primary contaminant of concern.  This single common fact is not sufficient to meet the standard for transfer to MDL-1358, because transfer will not serve the convenience of the parties or witnesses or promote efficiency.

1.  *There are few common questions of fact between Koch and the cases in the transferee court.*  The first requirement that must be met for transfer is the existence of common questions of fact between the cases under consideration for transfer and the

cases already before the transferee court.  Title 28, section 1407(a) of the United States Code states, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions *may* be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a) (emphasis added). This Panel has repeatedly recognized this principal.  *See In re Janus Mutual Funds Inv. Litig.*, 310 F.Supp.2d 1359, 1361 (J.P.M.L. 2004) (concluding that all cases involve common question of fact concerning allegations of market timing); *In re Worldcom, Inc. Sec. & ERISA Litig.*, 226 F.Supp.2d 1352, 1354 (J.P.M.L. 2002) (transferring schedule A actions because they share factual questions arising out of alleged omissions or misrepresentations concerning WorldCom's financial condition and accounting practices, but vacating the CTO for schedule B actions because the factual and legal issues were largely distinct from those currently before the MDL court); *In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F.Supp. 969, 974 (J.P.M.L. 1979) (finding substantial common factual issues regarding the overall design of multi-piece rims, the state of knowledge within the industry, and the alleged failure of defendants to warn); *but see In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 244 (J.P.M.L. 1978) (denying transfer where common questions of fact are not sufficiently complex and the associated discovery is not greatly time consuming).

The *Koch* action, however, does not share substantial common issues of fact with the cases in MDL -1358.  To begin, most of the plaintiffs before Judge Scheindlin are states, municipalities, public and private water companies, and water districts.[2]  *See*

---

[2] Examples include *The State of New Hampshire v. Amerada Hess Corp., et al.*, No. 04-4976; *City of Riverside v. Atlantic Richfield Co., et al.*, No. 04-4969; *City of Fresno v. Chevron USA Inc., et al.*, No. 04-4973; *California-American Water Co. v. Atlantic Richfield Co., et al.*, No. 04-4974; *Orange County Water District v. Unocal Corp. et al.*, No. 04-4968.

Exhibit 1 herein (Judicial Panel on Multidistrict Litigation Case Listing Report). Those plaintiffs in the MDL who are private well owners raised products liability claims against numerous manufacturers and sought to represent entire classes in their respective states of private well owners with or without detections of MTBE in their wells. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 175 F.Supp.2d 593, 603-05 (S.D.N.Y. 2001) (describing private well owner actions before MDL-1358) (referred hereinafter as *In re: MTBE*).[3] In other words, the core issue of fact common to the MDL-1358 cases is whether the industry decision to add MTBE to gasoline is a design defect.

In contrast, the *Koch* plaintiffs have not raised a strict liability claim and have focused solely upon the Defendants' failure to contain the gasoline at this single location, not upon any role the Defendant ExxonMobil may have played in the decision to include MTBE in the gasoline. Thus, the core issue of fact in the *Koch* case is whether the Defendants are responsible for the contamination of the bedrock aquifer in the Fallston, Maryland area. The MDL-1358 court has not addressed nor is it likely to address this issue in any of the cases before it.

This honorable Panel has already recognized the distinction between cases like *Koch* and those in MDL-1358. In the case of *Theodore Holten, et al. v. Chevron U.S.A.,*

---

[3] The *Young, England, Berisha,* and *Berrian* cases described by Judge Scheindlin have been settled. *See* Exhibit 1. The CTO for *Holten, et al. v. Chevron USA, Inc., et al.,* was vacated. *Id.* To Koch Plaintiffs' best knowledge, the only active cases in MDL-1358 that involve private well owners are *Silver, et al., v. Alon USA Energy, Inc., et al.,* No. 04-4975, and *Tonneson, et al., v. Sunoco, Inc. et al.,* No. 03-8248. Like the other private well cases in MDL-1358, these complaints raise a strict liability count and emphasize facts related primarily to a products liability case. *See, e.g.,* Exhibit 2 hereto: *Tonneson* Complaint (filed October 17, 2003). Additionally, *Tonneson* was originally filed in federal court in the Southern District of New York, because the case involved contamination a New York aquifer; thus, it was never subject to section 1407 transfer. *Silver* is also distinguishable from *Koch* in that the plaintiffs own and operate a private drinking water system for their mobile home park. Thus, they are more analogous to a water utility than to a single residential well owner.

*et al.*, No. 3:00-4703 (D.N.J.), this Panel vacated its CTO-2 as it applied to *Holten* after determining that transfer of this case to MDL-1358 was not warranted. Order Vacating Conditional Transfer Order, MDL-1358, *Holten, et al. v. Chevron U.S.A., et al.*, No. 3:00-4703 (D.N.J.) (Apr. 18, 2001).   *Holten* involved over 50 residents and former residents of Bayville, New Jersey, whose wells were contaminated by one local gas station's USTs and dispensing systems. This honorable Panel found that the "MDL-1358 actions, on the other hand, are purported class actions which focus on claims by persons or entities whose well water has not yet tested positive for the presence of MTBE." The facts in *Holten* are analogous to those in *Koch*.

2. *Transfer will not serve the convenience of the parties or promote the just and efficient conduct of the litigation.* Even if *Koch* shares a common question of fact with the MDL-1358 cases, transfer is not warranted here. Common questions of fact alone are not a sufficient reason for transfer. *See In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F.Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J. concurring) (stating, "neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso facto*, by transfer just because there are common questions of fact"). The Panel must also conclude that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see also In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975) (explaining that the proposed transfer must meet the statutory standard, otherwise it is not warranted). Thus, the Panel must decline to transfer the case if "'significant economy and efficiency in judicial administration [could not] be

obtained.'" *In re: Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (quoting H.R. Rep. No. 1130, 90[th] Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900).

Answering this question – whether transfer would promote convenience and efficiency – involves consideration of several factors. *See In re Asbestos and Asbestos Insulation Material Prod. Liab. Litig.*, 431 F.Supp. 906, 909-10 (J.P.M.L. 1977) (discussing arguments against transfer). One important factor is whether individualized and unique questions of fact and law predominate over common questions of fact. *See Id.* at 910 (denying transfer because the many factual questions unique to each action clearly predominated over the common factual questions); *In re Asbestos School Prod. Liab. Litig.*, 606 F.Supp. 713, 714 (J.P.M.L. 1985) (holding that transfer would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of the litigation where common questions of fact did not predominate over individual questions of fact present in each action). Moreover, this Panel has found transfer for consolidated pre-trial proceedings to be of no benefit where discovery "will focus on localized factual issues." *In re Grand Funk R.R. Trademark Litig.*, 371 F.Supp. 1084, 1085 (J.P.M.L. 1974).

The MDL-1358 court has already recognized the numerous individualized issues in the cases of private wells: "[t]here are ... differences in the level of contamination that the named plaintiffs allege, the source of the contamination, how the contamination affects each plaintiff, and the nature of relief that each will require." *In re MTBE Prod. Liab. Litig.*, 209 F.R.D. 323, 344 (S.D.N.Y. 2002). Thus, even if the common thread in the MDL-1358 actions and *Koch* may be contamination of groundwater with MTBE, the circumstances of the contamination in *Koch* are unique. *In re Asbestos and Asbestos*

*Insulation Material Prod. Liab. Litig.*, 431 F.Supp. at 909. These differences from other MDL-1538 actions include the geology of the contaminated aquifer; the geographic extent of the contamination; the levels of contamination; the source of contamination; the presence of other potential sources of MTBE in the area and their relative responsibility for the contamination; the type of release, *e.g.*, liquid spills versus vapor leaks; the storage device for the product containing MTBE, *e.g.*, UST versus pipeline; the local real estate values; and the local economy.  In short, the core issue of fact in *Koch* – the contamination of a discrete aquifer[4] located completely in Maryland – predominates over any questions of the Defendants' knowledge of MTBE's properties and dangers.

To address this core issue, discovery in *Koch* will necessitate depositions of, among others, officials from the local health department and the MDE; former and current employees of the Upper Crossroads Exxon; local environmental scientists and engineers who have performed environmental investigations on behalf of the Defendants, other businesses in the area or residents; local real estate appraisers and agents; and residents of the Fallston area who have been affected by the contamination.   The depositions of the necessary witnesses in the *Koch* case have not occurred nor are they expected to occur in the MDL-1358 cases.  Currently, discovery in MDL-1358 is only being served on the defendants in four focus cases: *Orange County Water District v. Unocal Corp. et al.*, No. 04-4968; *County of Suffolk v. Amerada Hess Corp., et al.*, 04-5424; *United Water New York, Inc. v. Amerada Hess Corp., et al.*, 04-2389; and the *City of New York v. Amerada Hess Corp., et al.*, No. 04-3417. *See 4 MTBE Suits Designated 'Focus Cases' in MDL*, 18 MEALEY'S POLLUTION LIABILITY REPORT, November 2004, at

---

[4] The regional bedrock aquifer in the area of the Upper Crossroads Exxon station lies in the Wissahickon Formation.  Site Assessment Report Exxon Service Station, #2-8329 at 5-6 (October 8, 2004).

28. None of this discovery would touch in any way upon the actual factual issues that will be decided in *Koch*.

Another consideration is whether the discovery common to the actions can be accomplished outside of MDL consolidation. *See, e.g., In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F.Supp.2d 1377, 1378 (J.P.M.L. 2002) (denying transfer where alternative existed that would minimize duplicative discovery). To the extent that Defendant ExxonMobil's knowledge of the nature of MTBE is relevant to the *Koch* case, there are already documents in the public record that show the Defendant ExxonMobil's awareness of the danger and its duty to store and handle the product with a higher degree of care. *See, e.g., In re: MTBE Prod. Liab. Litig.*, 175 F.Supp.2d at 601-02 (discussing various reports on MTBE by environmental agencies and the industry in the 1980's and early 1990's). Indeed, most of this type discovery has already been conducted in other MTBE cases. For example, *South Lake Tahoe Public Util. District v. Atlantic Richfield Co., et al.*, No. 999128 (Cal. Super. Ct., filed Nov. 10, 1998), proceeded to trial in 2002 on the issue of whether MTBE-containing gasoline is a defective product and resulted in a verdict finding oil companies liable. Furthermore, the MDL-1358 court maintains a document depository that can be accessed by attorneys in any MTBE action. *See In re: MTBE Prod. Liab. Litig.*, Confidentiality Agreement & Order (S.D.N.Y. June 1, 2001). Given these resources, discovery of these materials for *Koch* will not be so burdensome as to require consolidation with cases now in MDL-1358.

A final consideration is whether there is a significant possibility of inconsistent pretrial rulings if the actions under consideration are not transferred. *In re TMJ Implants*

*Prod. Liab. Litig.*, 844 F.Supp. 1553, 1554 (J.P.M.L. 1994). Here, there is no such danger. If a class were certified in *Koch*, it could be limited easily to residents of the area surrounding the Upper Crossroads Exxon, and thus, would not conflict with class certification determinations in other MDL-1358 actions. *See In re MTBE Prod. Liab. Litig.*, 209 F.R.D. at 329 (denying class certification for all private well owners with detections of MTBE in New York, Florida, California, and Illinois). Indeed, the MDL-1358 court's multiple decisions on common legal issues can provide guidance to other courts hearing MTBE cases. *See In re AH Robins Co. Inc. "Dalkon Shield" IUD Prod. Liab. Litig.*, 505 F.Supp. 221, 223 (J.P.M.L. 1981) (a transferee court's prior decisions "can serve as an aid in avoiding duplication of discovery and preventing inconsistent pretrial rulings"); *In re Western Elec. Co., Inc. Semiconductor Patent Litig.*, 436 F.Supp. 404, 406 (J.P.M.L. 1977) (denying transfer where the transferee court's conclusions on key legal issues are well documented).

As for jurisdictional issues, there are material differences between the *Koch* remand motions and the remand motions before the MDL-1358 court. For instance, the *Koch* Plaintiffs maintain that the removal was improper, because it was not done within the statutory mandated 30 days from service of the complaint on the Defendants.[5] The main issues in deciding remand in the MDL-1358 cases were federal officer status and bankruptcy. *In re: MTBE Prod. Liab. Litig.*, MDL-1358, 341 F.Supp.2d 386, 416

---

[5] Defendant ExxonMobil asserts that an order by a state court to consolidate *Koch* with another case qualifies as an "order ... from which it may first be ascertained that the case is one which is or has become removable" pursuant to 28 U.S.C. § 1446(b). However, they gave no caselaw supporting this proposition. Plaintiffs contend that the consolidation by the state court *sua sponte* does not constitute a new trigger for removal purposes, and that the *Koch* action never was removable nor became removable upon consolidation in state court with another case. To the extent that this is a real legal issue, it involves interpretation of Maryland Rule 2-503(a), as well as 28 U.S.C. § 1446(b).

(S.D.N.Y. 2004). However, because there is no product liability count in *Koch*, there is no federal officer basis for jurisdiction pursuant to 28 U.S.C. § 1442, and because ExxonMobil has not declared bankruptcy under Title 11 of the United States Code, there is no bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334.

Given these concerns, transferring the *Koch* action to the Southern District of New York will not necessarily conserve the resources of the parties; reduce duplicative efforts; or prevent conflicting rulings. By virtue of the geographic distance and the fact that witnesses will be deposed in Maryland regardless of which court oversees discovery, the Southern District of New York simply offers no increased convenience for the majority of witnesses and parties or efficiency in the *Koch* case.

### B. The *Koch* action involves unresolved questions of Maryland law.

While the test for deciding whether to transfer an action to an MDL focuses on factual commonalities between actions to be consolidated, questions of law may also be relevant. *See In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F.Supp. 1405, 1407 (J.P.M.L. 1976) (finding questions of law to be preponderant in actions being considered for transfer and denying transfer under Section 1407). The *Koch* action presents unresolved questions of Maryland law that would be more appropriately decided by the United States District Court for the District of Maryland, which has more experience and familiarity with Maryland law than the MDL-1358 court.

It is axiomatic that federal district courts situated in a state are better able to interpret the law of that state. *See Karofsky v. Abbot Lab.*, 921 F.Supp. 18, 21 n.4 (D. Me. 1996) (explaining that the district court in Maine was better equipped to interpret Maine law than the MDL court). One issue of law that likely will be addressed by a judge in pre-trial proceedings in *Koch* is whether a class should be certified for medical

23730                                    14

monitoring. This will require determining whether medical monitoring is a cognizable cause of action or form of relief in Maryland. The Court of Appeals of Maryland has not resolved this issue. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 782, 752 A.2d 200, 251 (Md. 2000). A court in Maryland is better suited to deciding this question of Maryland law than a court in New York.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff Koch's motion to vacate CTO-11 should be granted.

Respectfully submitted,

Dated: March 23, 2005

Charles J. Piven (Md. Federal Bar No. 00967)
Marshall N. Perkins (Md. Federal Bar No. 25514)
**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

Lon Engel (Md. Federal Bar No. 02470)
**ENGEL & ENGEL, P.A.**
11 E. Lexington Street
Suite 200
Baltimore, MD 21202
(410) 727-5095

*Counsel for Plaintiffs*

23730

Exhibit 3

| | |
|---|---|
| HOPE KOCH | * IN THE |
| FRANK KOCH | |
| 2310 Franklin's Chance Court | * CIRCUIT COURT |
| Fallston, Maryland 21047, | |
| | * FOR |
| Plaintiffs, | |
| | * HARFORD COUNTY |
| —versus— | |
| | * |
| JOHN R. HICKS (d/b/a Crossroads Exxon) | |
| 2800 Fallston Road | * Case No. 12-C-04-1834 |
| Fallston, Maryland 21047, | |
| | * |
| SERVE ON: | |
| John R. Hicks | * CLASS ACTION COMPLAINT |
| 1040 Alexandria Way | |
| Bel Air, Maryland 21014, | * |
| | |
| —and— | * JURY TRIAL DEMANDED |
| | |
| EXXONMOBIL OIL CORPORATION | * |
| (d/b/a Exxon Corporation) | |
| 5959 Las Colinas Boulevard | * |
| Irving, Texas 75039, | |
| | * |
| SERVE ON: | |
| CSC-Lawyers Incorporating Serv. Co. | * |
| 11 East Chase Street | |
| Baltimore, Maryland 21202, | * |
| | |
| Defendants. | * |
| * * * * * * * * * | * |

Case: C-04-1834
CIVIL
APPEARANCE FE      20.00
CV CLERK FEE-      80.00
MD. LEGAL SER      25.00
* TOTAL *         125.00
Rec# HA01    Rcpt # 78106
JJR    KDH    Blk # 1483
Jun 30, 2004    08:36 am

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs, Hope and Frank Koch, by and through undersigned

counsel, to allege and to seek relief from the honorable Court against Defendants, as

follows:

### INTRODUCTION

1.    This action involves the unlawful and wrongful storage of MTBE, such

tortious activity causing substantial property damage and materially increased health risks

23082

to homeowners and/or residents of properties in the vicinity of the Crossroads Exxon (a/k/a Upper Crossroads Exxon) located at 2800 Fallston Road, Fallston, Maryland.

2.     As detailed further herein, this action is a proposed class action filed pursuant to Maryland Rule 2-231.  Plaintiffs and one proposed sub-class seek medical monitoring relief, as requested herein (the "Monitoring Sub-Class").   Additionally, Plaintiffs and one proposed sub-class seek redress for economic and other damage (including property damages) suffered as a proximate result of Defendants' tortious conduct (the "Homeowners' Sub-Class").

**PARTIES**

3.     Plaintiffs Hope Koch and Frank Koch (a/k/a Franklin Koch) own, and reside at, the real property known as 2310 Franklin's Chance Court, Fallston, Maryland, 21047.  Plaintiffs' Franklin's Chance Court property has been contaminated with MTBE as a result of Defendants' wrongful conduct, as further alleged herein.  Plaintiffs have suffered substantial injuries and damages as a proximate result of Defendants' wrongful conduct, including economic damage, increased risk of significant adverse health problems, and/or other material non-economic damages (including increased anxiety and mental anguish).

4.     Defendant John R. Hicks, d/b/a Crossroads Exxon, resides at 1040 Alexandria Way, Bel Air, Harford County, Maryland, 21014.  Defendant Hicks operates Crossroads Exxon (hereinafter, "Upper Crossroads Exxon"), including through a licensing, franchise, and/or other agreement with Defendant ExxonMobil Oil Corporation.  Regarding matters complained of herein, both Defendants have acted in

23082

2

concert throughout the relevant period; hence, any allegation involving Defendant ExxonMobil Oil Corporation applies equally to Defendant Hicks.

5.      Defendant ExxonMobil Oil Corporation, d/b/a Exxon Corporation ("ExxonMobil"), owns the real property known as 2800 Fallston Road, Fallston, Maryland.  In addition, upon information and belief, Defendant ExxonMobil exercises legal authority over (and/or otherwise controls with Defendant Hicks) the Upper Crossroads Exxon located at 2800 Fallston Road, Fallston, Maryland.[1]

## VENUE

6.      Venue is proper in this jurisdiction pursuant to Maryland Code (1974, 2002 Repl.Vol.), § 6-201, *et seq.*, of the Courts & Judicial Proceedings Article:  either this jurisdiction is a venue applicable to all Defendants; or, if there is no single venue applicable to all Defendants, one (or more) of them may be sued in this venue.

7.      Each Defendant carries on a regular business, is employed, and/or habitually engages in a vocation in this jurisdiction.  *See* § 6-201(a), Courts & Judicial Proceedings Article.

## SUBJECT MATTER JURISDICTION

8.      Because the amount in controversy exceeds $10,000.00, jurisdiction is proper in this Court.  Jurisdiction is also proper in this Court because of the injunctive and/or declaratory relief sought by Plaintiffs.

---

[1]  The entity ExxonMobil was formed as a result of a merger on November 30, 1999 between Exxon Corporation and Mobil Corporation.  Herein, any reference to ExxonMobil is a corresponding reference to its predecessor entities (or entity, as the case may be) Exxon Corporation and/or Mobil Corporation.

23082                                    3

### PERSONAL JURISDICTION

9.     This Court has personal jurisdiction over each Defendant because each Defendant resides, carries on a regular business, is employed, habitually engages in a vocation, and/or maintains principal offices in the State of Maryland.

10.     Alternately, each Defendant has sufficient minimum contacts with the State of Maryland such that this Court may properly exercise personal jurisdiction over each Defendant.   Each Defendant transacted business in the State of Maryland; contracted to supply goods, services, or manufactured products in the State; caused tortious injury in the State by an act or omission in the State; (alternately,) caused tortious injury in the State by an act or omission outside the State, yet regularly did or solicited business, engaged in other persistent courses of conduct, and/or derived substantial revenue from goods, services, or manufactured products used in the State; had an interest in, used, or possessed real property in the State; and/or acted as a surety in the State of Maryland.

### RESPONDEAT SUPERIOR

11.     Hereinafter, whenever it is alleged that any Defendant acted, or failed to act, that allegation applies equally to that respective Defendant's affiliates, representatives, servants, employees, and/or agents (whether actual, apparent, or otherwise).

### FACTUAL BACKGROUND

12.     Methyl tertiary butyl ether ("MTBE") is a chemical compound designed to increase the oxygen content of gasoline.   It is produced from methanol and isobutylene, a by-product of the gasoline-refining process.   MTBE is highly soluble and travels faster

23082                                         4

and farther in water than other gasoline components. As a result, whenever MTBE is released into the environment it has the ability to infiltrate underground water reservoirs and contaminate wells drawing from underground aquifers. At a certain point of contamination, MTBE's foul taste and odor render water unusable and unfit for human consumption. The chemical make-up of MTBE also allows it to persist in underground aquifers for decades at a time. MTBE is a known animal carcinogen that has been linked to many potential human health problems. The United States Environmental Protection Agency has classified MTBE as a possible human carcinogen.

13.     Every year over nine million gallons of gasoline with MTBE escape into the environment in the United States, including from storage of MTBE. Thousands of gallons also enter the ground from gas stations, including from underground storage tanks.

14.     The United States Geological Survey has reported that MTBE is the second most frequently detected chemical in groundwater in the United States. According to a report by a special EPA Blue Ribbon Panel, MTBE is a "threat to the nation's drinking water resources," has "caused widespread and serious contamination" of the nation's groundwater, and has been found in 21% of ambient groundwater tested in non-attainment areas where MTBE is used.

15.     Defendants' storage of MTBE at the Upper Crossroads Exxon has produced an underground "plume" (or other leakage) of MTBE that has contaminated nearby properties (including Plaintiffs' Franklin's Chance Court property). Such MTBE contamination has occurred with Defendants' knowledge, and at the direction and/or control of Defendants. Such contamination poses known, material health risks to nearby

23082                                           5

residents due to contamination of the water supply. Such contamination has also had an immediate, material adverse impact upon the real property of nearby property owners (including the value of said property). Such MTBE leakage includes into the soil, into ground wells, and/or into the groundwater of affected properties.

16.    Testing has detected MTBE in the wells of 77 homes in the Upper Crossroads area, near the Upper Crossroads Exxon.

17.    Tests have revealed extremely high levels (up to 26,000 parts per billion) in the groundwater at and/or near the Upper Crossroads Exxon. Defendant ExxonMobil (per correspondence of 6/10/04) has acknowledged the appropriate standard for MTBE to be no more than 20 parts per billion.

18.    Defendants have been aware of specific incidents of MTBE groundwater contamination as early as 1980 (and no later than 1984). Defendants were also aware of scientific studies describing the danger posed to groundwater by MTBE no later than 1986. One report by a State of Maine agency recommended that MTBE be stored in double-contained facilities. In 1987, Defendants prepared internal memoranda that echoed these concerns (and/or other related concerns) involving the storage of MTBE and/or consequences of the failure to safely store MTBE.

19.    Nonetheless, Defendants intentionally, knowingly, and deliberately withheld from all non-oil-industry parties information identified in the preceding paragraph, including information known to Defendants related to: specific incidents of groundwater contamination; health dangers posed to humans by MTBE contamination (including those resulting from the failure to store MTBE properly); and/or other adverse consequences resulting from the failure to safely store MTBE. Indeed, in 1986-87,

23082

6

Defendants took the public positions that (*i*) further medical testing related to the health effects of MTBE exposure was unnecessary; (*ii*) MTBE was only slightly soluble in water; (*iii*) potential environmental exposure to MTBE was low; and (*iv*) MTBE had excellent degradation characteristics— all public positions which Defendants knew to be false (or misleading); this false information being put forth by Defendants exclusively for their own benefit.

20.     Defendants' conduct, as alleged in the preceding two paragraphs, continued, and continues, through the present time— including Defendants' present stated position that the MTBE contamination in the vicinity around the Upper Crossroads Exxon did *not* emanate from the Upper Crossroads Exxon; when, in fact, Defendants know with near certainty that such contamination arose (in whole or in part) from the Upper Crossroads Exxon.

21.     Particularly, an ExxonMobil spokesperson has stated that ExxonMobil has no evidence that the Upper Crossroads Exxon is the source of the MTBE contamination complained of herein.  In fact, Defendants know that statement to be false.

22.     In and before 1991 (including 1990, 1989, and before), unbeknownst to Plaintiffs and the proposed two sub-classes (collectively, the "Class"), properties in and around the Upper Crossroads Exxon were contaminated with MTBE as a result of Defendants' conduct complained of herein.  For instance, a test by the Harford County Health Department in October of 1991 revealed high levels of MTBE contamination at and/or around the Upper Crossroads Exxon, facts known to, but intentionally concealed by, Defendants.

23082

7

23.     Neither Plaintiffs nor any member of the Class had knowledge of the primary matters complained of herein until June of 2004.   In addition, Defendants' fraudulent conduct, as alleged herein, tolls any applicable time-bar (including statute of limitations, laches, *etc.*).

## CLASS ALLEGATIONS

24.     Plaintiffs seek to represent the Homeowners' Sub-Class, defined as follows:

> All persons (and/or entities) owning real property in the vicinity of the Upper Crossroads Exxon who have suffered legal injury due to MTBE contamination, including those whose property has suffered diminution in value (and/or who have otherwise suffered economic damage) as a result of MTBE contamination emanating from (and/or involving) the Upper Crossroads Exxon.

25.     Plaintiffs also seek to represent the Monitoring Sub-Class, defined as follows:

> All persons residing within a 1½-mile radius of the Upper Crossroads Exxon (2800 Fallston Road, Fallston, Maryland) from 1989 until the present (inclusive) who consumed groundwater on more than one occasion drawn from any property that has tested positive for MTBE.

26.     Each sub-class is composed of numerous persons (and/or entities), primarily in Maryland.   The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.   Upon information and belief, Plaintiffs aver that the Class is composed of at least one hundred, and possibly hundreds, of members.

23082                                                         8

27.     Plaintiffs are asserting claims typical of the claims of the Class. Defendants, pursuant to a common scheme and plan, have illegally contaminated groundwater in the area of the Upper Crossroads Exxon and have intentionally concealed information related thereto. In sum, Defendants have treated Plaintiffs and all members of the Class in a uniform, illegal manner. Plaintiffs have no interests that conflict with, or are antagonistic to, the interests of Class members. Plaintiffs have retained counsel competent and experienced in class actions.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation may well make it impracticable for Class members, individually, to seek redress for the wrongful conduct alleged herein.

29.     Common questions of law and/or fact exist as to all members of the Class (including each sub-class) and predominate over any questions that may affect individual members. Among the questions of law and/or fact common to the Class are the following:

    a.     Whether Defendants leaked MTBE, including into the ground and/or into the groundwater (including from the Upper Crossroads Exxon), in violation of law;

    b.     Whether MTBE reached the soil and/or groundwater beneath the homes comprising the Homeowners' Sub-Class;

    c.     If practicable, determining the damages sustained by each member of the Homeowners' Sub-Class as a proximate result of the foregoing; and

    d.     Whether medical monitoring is appropriate for each member of the Monitoring Sub-Class; and, if so, the extent and duration of same.

23082

9

30.     Plaintiffs and the Monitoring Sub-Class bring this action for equitable, injunctive, and/or declaratory relief pursuant to Maryland Rule 2-231(b)(2) and/or (b)(3) to create Court-supervised relief (including any necessary funds) to provide medical monitoring as further requested, *infra*, to assure that members of the Monitoring Sub-Class receive prompt and proper diagnosis and treatment of MTBE-induced (or MTBE-related) health problems.  Class certification is appropriate pursuant to Maryland Rule 2-231(b)(2) because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable or other relief in the form of the monitoring requested herein.  Alternately, the Monitoring Sub-Class is properly certified per Rule 2-231(b)(1) because of the risks of inconsistent adjudications of similar issues.

31.     The names and addresses of Class members are readily available, whether from public records (including land records) or otherwise.  From such records, individual notice can be provided to Plaintiffs and the Class by mail or by other appropriate means; alternately, published notice and/or notice posted on the internet can also provide adequate notice.

## Count 1

## Public Nuisance

32.     The allegations set forth in paragraphs 1 through 31 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

33.     The conduct complained of herein unreasonably interferes with the rights of the community at large.

23082                                      10

34.   The conduct complained of herein includes greater harm suffered by Plaintiffs and the Class than by the community at large (*e.g.*, economic loss, consumption of tainted groundwater, *etc.*).

35.   The conduct complained of herein has proximately caused damages to Plaintiffs and the Class.

36.   The public nuisance complained of herein is ongoing in nature, and must be abated by injunctive (or other) order of this Court as the only reasonable means to abate the nuisance.  No adequate remedy at law exists for Plaintiffs and the Class, who would be forced to institute a multiplicity of lawsuits to recover for the continuing harm caused by the nuisance.  The public interest is served by granting the requested injunctive relief.

37.   The intentional, knowingly wrongful, conduct of Defendants constitutes actual malice under Maryland law.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

A.   Entering judgment in favor of Plaintiffs and the Class for the full amount of compensatory and punitive damages permitted by law as determined by the trier of fact;

B.   Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

C.   Granting injunctive medical monitoring relief, as further requested herein;

23082

11

D.      Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.      Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

## Count 2

### Private Nuisance

38.      The allegations set forth in paragraphs 1 through 37 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

39.      The conduct complained of herein constitutes an invasion of Plaintiffs' interest (and the Class' interest) in the private use and enjoyment of land.

40.      Defendants' conduct is a legal cause of the invasion of (and/or interference with) Plaintiffs' (and the Class') interest in the use and enjoyment of Plaintiffs' property; and the interference is either:   (*i*) intentional and unreasonable; and/or (*ii*) otherwise actionable under the rules controlling liability for reckless or other conduct.

41.      The conduct complained of herein constitutes unreasonable and/or intentional conduct that has caused, and continues to cause, substantial and unreasonable injury or interference with Plaintiffs' (and the Class') use and enjoyment of property.

42.      The conduct complained of herein is of such a nature as to diminish materially the value of the property and/or seriously interfere with the ordinary comfort and enjoyment of the property.

23082

43.     The conduct complained of herein is unreasonable in nature, and imposes immediate, substantial, and irreparable injury upon Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

A.     Entering judgment in favor of Plaintiffs and the Class for the full amount of compensatory and punitive damages permitted by law as determined by the trier of fact;

B.     Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

C.     Granting injunctive medical monitoring relief, as further requested herein;

D.     Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.     Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

## Count 3

### Trespass to Property

44.     The allegations set forth in paragraphs 1 through 43 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

23082

13

45.   Defendants entered (or infringed) upon, and/or continue to enter (or infringe) upon, property (including real property) owned (or controlled) by Plaintiffs and the Class in an unlawful manner.

46.   Plaintiffs and the Class are (and/or were) in legal, equitable, and/or other beneficial possession of such property (and/or such property interest).

47.   Neither Plaintiffs nor the Class consented to, or gave legally effective permission for Defendants' trespassory conduct, as alleged herein.  Defendants have neither authority, privilege, nor permission to legally authorize their trespassory conduct (including constructive trespassory conduct), as alleged herein.

48.   Defendants' conduct, as alleged herein, interferes with the possession and/or use of the property owned (and/or controlled) by Plaintiffs and the Class, amounting to an (intentional, reckless, negligent, and/or other) intrusion upon the possessory interest of another.  Defendants— through their storage of MTBE and their failure to safely store MTBE as alleged herein— have engaged in abnormally dangerous activity.

49.   Plaintiffs and the Class have suffered actual damages as a proximate result of Defendants' trespassory conduct, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

A.   Entering judgment in favor of Plaintiffs and the Class for the full amount of compensatory and punitive damages permitted by law, determined by the trier of fact;

23082                                          14

B.      Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

C.      Granting injunctive medical monitoring relief, as further requested herein;

D.      Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.      Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

## Count 4

### Violation of § 4-409, Environment Article

50.      The allegations set forth in paragraphs 1 through 49 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

51.      As further stated herein, Defendants have violated § 4-409 of Maryland's Environment Article by being responsible for "oil spillage" as defined under the statute, thereby proximately damaging the property (including real property) of Plaintiffs and the Class.

52.      Defendants are "responsible" persons, as well as persons "responsible for the discharge," as defined under the statute.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

23082

A.      Entering judgment in favor of Plaintiffs and the Class for the full amount of compensatory and punitive damages permitted by law as determined by the trier of fact;

B.      Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

C.      Granting injunctive medical monitoring relief, as further requested herein;

D.      Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.      Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

## Count 5

### Negligence

53.     The allegations set forth in paragraphs 1 through 52 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

54.     Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care and judgment, including the duty to use the care, skill, and/or diligence that a reasonable person in the circumstances of each Defendant would have so exercised.

55.     As further detailed herein, Defendants breached one or more duties owed to Plaintiffs and the Class.

56.     As a direct and proximate result of Defendants' negligence, and/or as a direct and proximate result of Defendants' breach of one or more duties owed to Plaintiffs

23082

and the Class, Plaintiffs and the Class suffered the injuries and damages complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

A.      Entering judgment in favor of Plaintiffs and the Class for the full amount of compensatory and punitive damages permitted by law as determined by the trier of fact;

B.      Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

C.      Granting injunctive medical monitoring relief, as further requested herein;

D.      Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.      Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

## Count 6

### Medical Monitoring

57.     The allegations set forth in paragraphs 1 through 56 and all other allegations herein, except as inconsistent with the allegations of this count, are adopted by reference as if set forth fully herein.

58.     Plaintiff Hope Koch has suffered from migraine headaches, sinus infections, and fatigue since moving to her Fallston residence.  Prior to moving to her

23082

Franklin's Chance Court residence, Plaintiff Hope Koch did not suffer such symptoms in the degree to which she has suffered from them while residing at the Franklin's Chance Court property. Defendants' conduct, as alleged herein, has caused Plaintiff Hope Koch to be exposed to MTBE and (upon information and belief) has caused (in whole or in part) the migraine headaches, sinus infections, and/or fatigue from which she suffers.

59.     The foregoing unlawful and other wrongful acts, omissions, and/or other conduct by Defendants constitutes actionable conduct (including negligence) under Maryland law, including the common law.

60.     Defendants' negligent and other wrongful acts are a proximate cause of Plaintiffs and the Monitoring Sub-Class suffering an increased risk of serious injury and disease, which they will continue to suffer. Plaintiffs and the Monitoring Sub-Class have been exposed to a hazardous product (including MTBE) and suffer a significantly increased risk of contracting serious injury or latent disease, including cancer. This increased risk makes periodic diagnostic and medical examinations reasonable and necessary. The United States Environmental Protection Agency classifies MTBE as a potential human carcinogen.

61.     Early detection and diagnosis of increased potential health risks to Plaintiffs and the Monitoring Sub-Class is clinically invaluable because it can prevent, reduce, and/or delay resulting symptoms, suffering, and/or death.

62.     Cost-effective monitoring and testing procedures can be administered to Plaintiffs and the Monitoring Sub-Class that will make the early detection and treatment of such potential injuries or disease likely or possible.

23082                                                          18



63.     The recommended testing procedures will be subject to expert testimony at the time of trial, or as otherwise directed by the Court.

64.     Court-ordered medical monitoring may be especially essential to the extent that one or more members of the Monitoring Sub-Class can *not* afford to have testing and/or monitoring performed absent such requested relief.

65.     The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs and the Monitoring Sub-Class proximately resulting from prolonged, significant exposure to MTBE can be addressed effectively only by the creation of a comprehensive medical monitoring program:

> a.     Notifying members of the Monitoring Sub-Class of potential health risks and available treatment;
>
> b.     Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of the Monitoring Sub-Class exposed to MTBE;
>
> c.     Providing for periodic medical examinations for all members of the Monitoring Sub-Class;
>
> d.     Providing for accumulation and analysis of relevant medical and demographic information from members of the Monitoring Sub-Class; and
>
> e.     Providing any other appropriate treatment, care, and/or information as ordered by the Court.[2]

---

[2]  As alleged herein, Plaintiffs and the Class (1) have experienced exposure greater than normal background levels (2) to a proven hazardous substance— MTBE— (3) caused by Defendants' negligence and/or other tortious conduct; (4) as a proximate result of the exposure, Plaintiffs and the Class have an increased risk of contracting a serious latent injury or disease (including

23082

19

66.     Plaintiffs and the Monitoring Sub-Class have no adequate remedy at law, including because monetary damages alone do not compensate for the continuing nature of harm to them.  A monitoring program will enable members of the Monitoring Sub-Class to ascertain the presence of injury and/or disease which are presently asymptomatic or only slightly symptomatic.

67.     Defendants have acknowledged the health dangers of MTBE contamination by repeatedly advising residents in the vicinity of the Upper Crossroads Exxon *not* to drink the groundwater and *not* to cook with the groundwater.

68.     Defendants have admitted to installing equipment to pump and treat MTBE-contaminated groundwater beneath the Upper Crossroads Exxon.  If Defendants are taking steps to monitor and treat contaminated groundwater, no lesser degree of care should be given to humans contaminated by prolonged, repeated exposure to MTBE.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray that this Court enter judgment against the Defendants, jointly and severally, as follows:

A.      Granting permanent injunctive relief ordering appropriate abatement and/or other remediation of MTBE contamination;

B.      Granting injunctive medical monitoring relief, as further requested herein and/or as further ordered by the Court;

---

cancer); (5) monitoring procedures exist that make the early detection of one or more health concerns possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary based upon contemporary healthcare principles.

23082

20

C.      Ordering Defendants to establish a fund for the monitoring relief to be directed by the Court (and/or ordering ancillary relief related thereto), *cf. Day v. NLO, Inc.*, 144 F.R.D. 330, 336 (S.D. Ohio 1992);

D.      Entering judgment in favor of Plaintiffs and the Class for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorneys' fees recoverable by law; and

E.      Issuing such other and further relief as the nature of Plaintiffs' and the Class' cause may require.

Respectfully submitted,

LAW OFFICES OF CHARLES J. PIVEN, P.A.

Charles J. Piven
Marshall N. Perkins
The World Trade Center—Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

Lon Engel, Esquire
ENGEL & ENGEL, P.A.
Suite 200
11 East Lexington Street
Baltimore, Maryland 21202
(410) 727-5095

*Counsel for Plaintiffs and the proposed Class*

## JURY DEMAND

Plaintiffs and the proposed class hereby demand a trial by jury of all issues so triable.

Marshall N. Perkins

23082                                   22