**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| ) | |
| ) | |
| ) | MDL No. 1358 |
| IN RE: Methyl Tertiary Butyl Ether ) | |
| ("MTBE") Products Liability Litigation ) | **CONSOLIDATED MOTION AND** |
| ) | **BRIEF TO VACATE THE** |
| ) | **CONDITIONAL TRANSFER** |
| ) | **ORDER** |
| ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| ) | |

This document relates to: *Howard Graham and Rhea McMannis, individually and on behalf of all others similarly situated, vs. Shell Oil Company and Mobil Corporation,* S.D. Ill. Case No. 05-703-MJR

1.      This case was filed on September 20, 2001 but was not removed until September 28, 2005.

2.      Section 1446(b) of Title 28 requires that a Notice of Removal be filed with 30 days of the defendant's receipt of the *initial* pleading setting forth a removable claim but in any case no later than one-year past its initial filing.

3.      Defendants removed the action maintaining that the filing of the fifth amended complaint, which actually limited the scope of the action, "started a new case in all material respects", and thus it is the date of the filing of the fifth amended complaint from which §1446(b)'s deadline should be measured.

4.      However, the case law interpreting § 1446(b) is perfectly clear: the addition or substitution of plaintiffs; the addition or substitution of defendants; the addition or substitution of legal theories and the passage of new laws granting additional basis for jurisdiction do not re-start a case for purposes of § 1446(b).  Accordingly, 28 U.S.C. § 1447(c) requires that this action be remanded.

**OFFICIAL FILE COPY**

1

5.      Moreover, the determination that this case requires remand does not turn on factual or legal issues pending before the transferee court and accordingly transfer does not promote the just and efficient resolution of *Graham* or the consolidated actions.

I.      INTRODUCTION

Although Defendants were perfectly content in litigating this action in state court for almost four years, they now argue that it will be so burdensome to continue to litigate this Illinois contamination claim in Illinois that justice requires consolidation with MDL 1358 pending in the Southern District of New York.

Simply put, the consolidation of *Graham* is not warranted because it raises limited questions of fact common to the consolidated actions. *See In re Air Crash Disaster Near Silver Plume, Colorado, on October 2, 1970*, 368 F.Supp.810 (JPML 1973). In fact, the only issue that needs to be determined in *Graham* is whether Defendants' failed to satisfy the timelessness requirements of 1446(b) in *Graham*. Thus, consolidation of *Graham* does not serve to promote the just and efficient resolution of it or the consolidated actions.

II.     CONSOLIDATION DOES NOT SERVE TO PROMOTE THE JUST AND
        EFFICIENT RESOLUTION OF *GRAHAM* OR THE CONSOLIDATED
        ACTIONS

As noted above, *Graham* presents a very unique procedural posture. This case was filed in 2001 on behalf of behalf of well owners in 16 states whose wells had been potentially contaminated with MTBE. (Exhibits 1 & 2). This complaint stated claims for negligence, strict liability and conspiracy. (*Id.*). Over the course of the litigation, the complaint was amended on five different occasions. (*Id.*). At its greatest, the action sought to impose liability for MTBE contamination on 55 defendants on behalf of a nationwide class of well owners. (*Id.*). Defendants chose not to remove this action and instead defended the case on its merits. This strategy may

have proved to be a good gamble, however, as the scope of this action was later reduced when the Fourth Amended Complaint dismissed 43 defendants and limited the scope of the proposed class to well owners in the state of Illinois whether or not the well had suffered MTBE contamination. (*Id.*).

Finally, on September 14, 2005 the Complaint was amended to its present form. (*Id.*). This amendment, although it substituted two new named plaintiffs, further reduced the scope of the action by dismissing five more defendants, dropping a count for conspiracy, and recasting a strict liability count as one for nuisance, all while further limiting the proposed class to include only those Illinois well owners who were within 3000 feet of service stations owned or operated by defendants. (*Id.*). Defendants removed this action on September 28, 2005 – 3 years, 9 months, and 27 days past the deadline enumerated in 28 U.S.C. § 1446(b).

Because of these facts, this case presents precisely the situation where considerations of judicial economy support denial of the motion to stay and resolution of the motion to remand. When a motion to remand raises questions of fact or law that would not otherwise arise in the MDL, the interest of judicial economy is best served by denying the motion to stay and adjudicating the motion to remand in the court in which the action is pending. *See, e.g., Greene v. Wyeth*, 344 F.Supp.2d 674, 678-79 (D.Nev.2004); *In re Massachusetts Diet Drug Litig.*, 338 F.Supp.2d 198, 201 (D.Mass.2004); *Edsall v. Merck & Co., Inc.*, 2005 WL 1867730 (N.D.Cal. 2005); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1054 (N.D.Cal. 2004). "In particular, where case-specific issues of fact or law are raised by a motion to remand and a defendant has clearly failed to meet the substantive or procedural requirements for removing a state court action, the court should promptly complete its consideration and remand the case to state court." *Edsall v. Merck & Co., Inc.*, 2005 WL 1867730 (N.D.Cal. 2005) *citing Conroy*, 325

F.Supp.2d at 1053.  This case presents exactly such an instance.  Because of this, consolidation will only serve to prejudice the *Graham* plaintiffs through delay and forced coordination with counsel.

Plaintiffs have timely moved for Remand of this action and the issues will be fully briefed before this matter is heard before the panel.  This panel has recognized that the Panel's rules allow for Plaintiffs to avail themselves of the objection process to allow the district court adequate time in which to address such motions.  *See In re Prudential Ins. Co. of Am. Sales Pract. Litig.*, 170 F.Supp.2d 1346 (JPML 2001).  While the *Graham* plaintiffs believe that the issues raised by their complaint are sufficiently unique to prevent transfer, affording Judge Regan the opportunity in which to rule on federal subject matter jurisdiction is appropriate especially as here where Defendants' removal and consolidation are sought only to hamper *Graham*'s effective prosecution.

III.     CONCLUSION

For all the reasons stated above, transfer of *Graham* to MDL 1358 will not serve the purposes of 28 U.S.C. Section 1407 and should be vacated.

Dated: November 21, 2005

KOREIN TILLERY, LLC

BY: _____

AARON M. ZIGLER
Gateway One on the Mall
701 Market St., Suite 300
St. Louis, MO  63101
Phone:  314/241-4844
Fax:  314/241-3525

***Attorneys for Howard Graham
and Rhea McMannis.***

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | MDL No. 1358 |
| IN RE: Methyl Tertiary Butyl Ether | ) | |
| ("MTBE") Products Liability Litigation | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| | ) | |
| | ) | |

I, Aaron M. Zigler, certify that on November 21, 2005, I caused copies of the foregoing

to be served by U.S. Mail upon the parties identified on the attached Involved Counsel List

(CTO-18) as well as the Court appointed Liaison Counsel noted below in accordance with Rule

5.2(e).

KOREIN TILLERY, LLC

BY: _____
AARON M. ZIGLER
Gateway One on the Mall
701 Market St., Suite 300
St. Louis, MO 63101
Phone: 314/241-4844
Fax: 314/241-3525

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2005

FILED
CLERK'S OFFICE

**INVOLVED COUNSEL LIST (CTO-18)**
**DOCKET NO. 1358**

**IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY**
**LITIGATION**

Edward Abrahm Cohen
Thompson & Coburn, LLP
One US Bank Plaza
St. Louis, MO  63101-1611

Celeste A. Evangelisti
Barron & Budd
3102 Oaklawn Avenue
Suite 1100
Dallas, TX  75219-4281

John E. Galvin
Fox Galvin, LLC
One Memorial Drive
Eighth Floor
St. Louis, MO  63102

Robin Greenwald
Weitz & Luxenberg
180 Maiden Lane
17th Floor
New York, NY  10038

Peter J. Sacripanti
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY  10020

Stephen M. Tillery
Korein Tillery, LLC
10 Executive Woods Court
Belleville, IL  62226-2030

Aaron M. Zigler
Korein Tillery, LLC
701 Market Street, Suite 300
St. Louis, MO  63101

Craig H. Zimmerman
McDermott, Will & Emery
227 West Monroe Street
Suite 4400
Chicago, IL  60606-5096

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 2 2005

FILED
CLERK'S OFFICE

1

Case MDL No. 1358 Document 213 Filed 11/22/05 Page 8 of 57

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| HOWARD GRAHAM and RHEA McMANNIS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05-703-MJR |
| SHELL OIL COMPANY and EXXON MOBIL CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

---

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF REMAND

---

This four year-old class action arises from defendants' failure to prevent MTBE from contaminating private water supplies. Defendants maintain that such suits are removable under, among other things, federal agent and federal question jurisdiction. (Doc. 1 at ¶ ¶ 69-72; *see also* Doc. 6-1 at 2-3). However, defendants did not remove the action when this complaint was filed, choosing instead to answer and defend the case on the merits.

Over the course of this litigation, Plaintiffs amended their complaint five times. Each time plaintiffs modified their claims or changed their class definition. Yet, even the fifth amended complaint, now limited to an Illinois-only class, was still brought under the same basic legal theory – that defendants are liable for MTBE contamination. Following years of litigation and the filing of the fifth amended complaint, defendants finally decided it was time to remove.

However, a suit must be removed within thirty days of a defendant's receipt of the *initial* pleading setting forth a removable claim. 28 U.S.C. §1446(b). Thus, a case removable from the

beginning must be removed within thirty days of the filing of the initial complaint to be timely.

Defendants missed this deadline and as such have waived federal jurisdiction in this matter.

Defendants maintain, however, that the filing of the fifth amended complaint, which

actually limited the scope of the action, "started a new case in all material respects" (Doc 1. at ¶

19), and thus it is the date of the filing of the fifth amended complaint from which §1446(b)'s

deadline should be measured. Nonetheless, the case law interpreting § 1446(b) is perfectly clear:

the addition or substitution of plaintiffs; the addition or substitution of defendants; the addition or

substitution of legal theories and the passage of new laws granting additional basis for

jurisdiction do not re-start a case for purposes of § 1446(b).[1]

## FACTS

Methyl tertiary butyl ether ("MTBE") is a gasoline additive whose chemical properties

include enhanced solubility in water and chemical attraction to water. (Doc. 2 at ¶ 10). In fact,

---

[1] *See, e.g.*, *Clarson v. Southern General Life Ins. Co.*, 694 F.Supp. 847 (M.D.Fla.1987) (finding substitution of plaintiffs, addition of two new causes of action and change in law did not allow for removal); *Fyre v. General Finance Corp.*, 35 B.R. 742 (N.D.Ill. 1983) (finding addition of 36 named plaintiffs and three defendants while asserting violations of the federal Truth in Lending Act and state consumer finance and insurance law statutes did not allow for removal.); *Sehl v. Safari Motor Coaches, Inc.*, 2001 WL 940846 (N.D.Cal. August 13, 2001) (finding addition of libel count to Magnuson-Moss action did allow for removal); *Adams v. Western Steel Buildings, Inc.*, 296 F.Supp. 759 (D.C.Colo. 1969) (finding addition of negligence claim to breach of warranty suit did not allow for removal.); *Pearson v. Gerber Products Co.*, 788 F.Supp. 410 (W.D.Ark.1992) (addition of bad-faith claim to ERISA action did not allow for removal); *McKenna v. Brassard*, 704 F.Supp. 309 (D.Mass.1989) (finding addition of wrongful death claim to negligence action did not allow for removal); *Miller v. Martin*, 1987 WL 46753 (M.D.N.C. July 20, 1987) (finding addition of First Amendment claim to case with Fair Labor Standards Act claim did not allow for removal); *Rubstello, Inc. v. Transportation Ins. Co.*, 2005 WL 1503924 (E.D.Cal. 2005) (finding dismissal of sole declaratory relief claim and substituting claims for breach of insurance contract and breach of the implied covenant of good faith and fair dealing did not allow for removal.); *Jeffrey M. Goldberg & Associates v. Collins, Tuttle & Co., Inc.*, 739 F.Supp. 426 (N.D.Ill. 1990) (finding addition of $5 million punitive damage claim did not allow for removal); *Samura v. Kaiser Foundation Health Plan, Inc.*, 715 F.Supp. 970, 972 (N.D.Cal.1989) (addition of new defendant and new cause of action and new asserted basis for removal did not allow for removal); *Demco, Inc. v. Employers Casualty Co.*, 792 F.2d 478 (5th Cir. 1986) (finding newly added defendant could not remove case to federal court absent evidence of bad faith.); *Noble v. Bradford Marine, Inc.*, 789 F.Supp. 395 (D.C.Fla. 1992) (finding addition of new defendant did not allow for removal.); *La. Farm Bureau Cas. Ins. Co. v. Michelin Tire Corp.*, 207 F.Supp.2d 524 (D.C. La. 2002) (finding addition of new plaintiff did not allow for removal.); *Camino Camper of San Jose, Inc. v. Winnebago Indus., Inc.*, 715 F.Supp. 964 (D.C.Cal. 1989) (finding passage of new statute giving rise to jurisdiction did not allow for removal.); *Korzinski v. Jackson*, 326 F.Supp.2d 704 (E.D.N.C. 2004) (finding refilling of voluntarily dismissed action did not allow for removal.); *In re NORPLANT Contraceptive Products Liability Litigation*, 878 F.Supp. 972, (E.D.Tex.,1995) (finding addition of U.S. Constitutional claims and removal of $50,000 limitation on damages did not allow for removal.).

MTBE mixes so well with water that it spreads its toxic plumes faster and farther than any other component of gasoline. Moreover, MTBE does not attach readily to soil particles and is therefore not readily susceptible to natural biodegradation. (*Id*.). Thus, once MTBE is released into the environment and permitted to contaminate groundwater, its foul taste and odor may render the water virtually unusable and unfit for human consumption and costly and difficult to remediate. (*Id*.). Plaintiffs in this action seek to impose significant liability on defendants for breach of their duty to ensure that MTBE would not pose an unreasonable risk to groundwater. (*Id*. at 15-19).

This case was filed in 2001 on behalf of behalf of well owners in 16 states whose wells had been potentially contaminated with MTBE. (Doc. 1-5 at ¶ 2 ("Plaintiffs … bring this case … on behalf of all persons who own real property in [16 states] who … would like to have their water supply well tested for MTBE."). This complaint stated claims for negligence, strict liability and conspiracy. (*Id*. at 17-30).

Over the course of the litigation, the complaint was amended on five different occasions. (Doc. 1-6, 1-7, 1-12, 1-13, Doc. 2). At its greatest, the action sought to impose liability for MTBE contamination on 55 defendants on behalf of a nationwide class of well owners. (Doc. 1-13 at ¶ 2). Defendants chose not to remove this action and instead defended the case on its merits. This strategy may have proved to be a good gamble, however, as the scope of this action was later reduced when the Fourth Amended Complaint dismissed 43 defendants and limited the scope of the proposed class to well owners in the state of Illinois whether or not the well had suffered MTBE contamination. (Doc. 1-13 at ¶ 64).

Finally, on September 14, 2005 the Complaint was amended to its present form. (Doc. 2). This amendment, although it substituted two new named plaintiffs, further ***reduced*** the scope of

the action by dismissing five more defendants, dropping a count for conspiracy, and recasting a strict liability count as one for nuisance, all while further limiting the proposed class to include only those Illinois well owners who were within 3000 feet of service stations owned or operated by defendants. (*Id.* See also, Exhibit 1 to this memorandum: "redline" comparison of Fourth and Fifth Amended Complaints). This is still the same case based on the same legal theory. Defendants removed this action on September 28, 2005 – 3 years, 9 months, and 27 days past the deadline enumerated in 28 U.S.C. § 1446(b).

## ARGUMENT

In 1982, the Seventh Circuit reviewed a decision of Central District of Illinois Judge Robert Morgan denying remand in an action that was removed six months after it was filed. *Wilson v. Intercollegiate (Big Ten) Conf. Athletic Assoc.*, 668 F.2d 962, 965 (7th Cir.) *cert den.* 459 U.S. 831 (1982). In *Wilson*, the plaintiff, a University of Illinois football player, sued the Big Ten conference for violation of his equal protection and due process rights in Illinois state court. *Id.* at 964. The defendants didn't remove the case and began defending on the merits. *Id.* Six months later, the plaintiff amended his complaint to add additional claims predicated on violations of the Illinois Antitrust Act, several federal civil rights statutes (§§ 1981, 1983 and 1985), the First Amendment and the Full Faith and Credit Clause to the U.S. Constitution. *Id.* Following this amendment, defendants removed the action alleging that the amended complaint revived their right to remove. *Id.* at 965.

In reviewing the district court's denial of the plaintiff's motion to remand, the Seventh Circuit discussed the thirty-day deadline in §1446 and described its two-fold purpose: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court

system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court. *Id.* at 965.

However, the Court acknowledged the existence of a judicially created "revival exception" under which the plain text of §1446(b) may be ignored. *Id.* The court stated that this revival exception may revive a party's removal rights in two types of cases: where a plaintiff deliberately misleads a defendant about the true nature of the case until the thirty day removal limit expires or when an amended complaint is filed which "fundamentally alter[s]" the complexion of the case to such a degree that the amended complaint creates "an essentially new lawsuit." *Id.* at 965-66.

Turning to the claims before it, the Seventh Circuit found that the plaintiff had tendered his fundamental claim at the very outset: violation of his constitutional rights. *Id.* at 965. Thus, it seemed inconceivable that the pleading was adopted in order to discourage the defendants from exercising their right to removal. *Id.* Moreover, the addition of plaintiff's new claims "did not change the target of Wilson's attack or the nature of the relief sought." *Id.* at 966. The basic legal theory of Wilson's claims, that the defendants' rules were unfair and discriminatory, remained unchanged. Thus, the amendments were not an abandonment of the original claims for a new cause of action and "clearly did not alter the character of the suit," or "change the original complaint so drastically" that the exception should apply. *Id.* Instead, the Court observed, "it is more likely that the defendants removed the case because they were doing badly in the state court than because they felt that the amended complaint confronted them with a different case than they had been fighting in [state] court[]." *Id.* Accordingly, the Seventh Circuit reversed the district court and ordered the action remanded to Illinois state court. *Id.*

5

Like *Wilson*, in this case, the basic legal theory – that defendants are liable as a result of

MTBE contamination – has remained unchanged during the pendency of the suit. Thus, like in

*Wilson*, it is inconceivable to argue that Plaintiffs' first five complaints misled the defendants

about the true nature of plaintiffs' claims. Instead, like in *Wilson*, it is much more likely that

defendants removed the case because they thought they could do better in Federal court than

because they were presented with a completely different case. In fact, the "revival exception"

discussed in *Wilson*, and upon which defendants rely, has rarely been used successfully given its

stringent requirements, *Dunn v. Gaiam, Inc.*, 166 F.Supp.2d 1273, 1279 (C.D.Cal. 2001), and its

limits are easily shown through discussion of a few cases.

For example, in *Dunn*, the plaintiff amended his complaint to add five new defendants

and ten new causes of action. *Id.* at 1276. Following removal, the plaintiff moved for remand

contending that defendants' removal was untimely. *Id.* 1278-1279. Noting the rarity of

successful application of the revival exception, the court discussed its proper construction. The

court concluded that because of the exception's "exceedingly narrow scope," it should only be

applied to cases where a plaintiff seeks to mislead the defendant about the true nature of his suit

only to amend once the time for removal has passed. *Id.* at 1279. The court determined that

while "the defendants may have been understandably surprised to see that a RICO claim was

added," the addition of new claims and defendants "did not so substantially alter the scope of the

case as to render it 'new'." *Id.* at 1279-1280.

*Frye v. General Finance Corp.*, 35 B.R. 742 (N.D.Ill. 1983), also helps to define the

boundaries of the revival exception. In *Frye*, the plaintiff brought a class action seeking

damages for emotional distress caused by defendants' attempts to collect debts discharged in

bankruptcy. *Id.* at 743. Faced with a motion to dismiss, however, plaintiffs amended their

complaint by adding 36 new named plaintiffs, three new defendants and charging that defendants' conduct violated various Illinois statutes and the federal Truth in Lending Act. *Id*. at 743, 747. Following removal, Plaintiffs moved for remand on the ground that the removal was untimely and defendants opposed the motion arguing that the revival exception was met. *Id*. at 743-744. Judge Shadur examined the differences between the two complaints and while noting that defendants' were correct in their characterizations of the changes in Plaintiffs' complaint, found the "gravamina" of the two complaints remained "precisely the same." *Id*. at 747. Moreover, the "amendment was within the normal scope of equity practice to enlarge upon or to set forth more accurately, the cause of action alleged in the complaint." *Id*. In short, Judge Shadur found, "plaintiffs did not sandbag their case by withholding the true and weighty federal grounds that they had been holding back." *Id*. (citations omitted). Thus, *Frye* was remanded. *Id*.

On the other hand, *Johnson v. Heublein, Inc.*, 227 F.3d 236 (5th Cir. 2000), provides an example, the only example, of what a circuit court has found will constitute "new" allegations sufficient to grant revival. In *Johnson*, plaintiff's original conversion claim sought recovery from five parties. The defendants did not remove the case initially although removal was available based on diversity. *Id*. at 239. Following eighteen months of litigation and a partial assignment of claims, an amended complaint was filed whereby two of the five defendants became plaintiffs. *Id*. at 238. Moreover, the amended complaint, in addition to the original conversion claim, added claims for breach of contract, bad faith breach of contract, unjust enrichment, and fraud by the former defendants and the original plaintiff against the three remaining defendants. *Id*. at 238-40. Defendants removed based on diversity and the plaintiffs filed a motion to remand. *Id*.

In reviewing the denial of the motion on appeal, the *Johnson* Court found the facts merited application of the judicially-created revival exception because the amended complaint

resulted in a complete re-alignment of the parties, the new allegations bore "no resemblance whatsoever" to those of the original complaint, and the defendants were now "confronted with a suit on a construction contract involving exposure to substantial compensatory and punitive damages, instead of only a questionable conversion claim by a competing creditor with an apparently inferior lien," thus starting "a virtually new, more complex, and substantial case ... upon which no significant proceedings ha[d] been held." *Id.* at 242. Therefore, the Fifth Circuit determined that the purpose of the thirty day limitation on removal would not be thwarted under the facts of that case and affirmed the denial of plaintiffs' motion to remand. *Id.* at 242.

This suit, like *Wilson*, *Frye* and *Dunn*, stands in stark contrast to the procedural history in *Johnson*. Plaintiffs' instant action has from the beginning been a suit on behalf of well owners complaining of threatened or actual MTBE contamination. The complaint at issue in Defendant's removal ***reduced*** the scope of the action by dismissing five more defendants, dropping a count for conspiracy, and recasting a strict liability count as one for nuisance, while further limiting the proposed class to include only those Illinois well owners who were within 3000 feet of service stations owned or operated by defendants. These changes should not be surprising to defendants much less evidence that plaintiffs were sandbagging the defendants with their true claim. It is impossible to argue that the gravaman of this action has changed. *See, e.g., Frye,* 35 B.R. at 747.

In addition, courts have consistently found that the addition or substitution of plaintiffs or even the passage of a new law granting federal jurisdiction[2] does not satisfy the revival

---

[2] It is clear that neither the CAFA nor The Energy Policy Act applies to this suit instituted prior to their passage. *See Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805 (7th Cir. June 7, 2005) (CAFA only applies to cases filed on or after February 18, 2005); *Pfizer Inc., v. Lott,* 417 F.3d 725 (7th Cir. Aug. 4, 2005) (same); *Schorsch v. Hewlwtt-Packard Co.,* 417 F.3d 748 (7th Cir. Aug. 8, 2005) (same); *Schillinger v. Union Pac. R.R. Co.,* ___ F.3d ___, 2005 WL 2450230 (7th Cir. Oct. 5, 2005) (same); *Bush v. Cheaptickets Inc.,* ___ F.3d ___, 2005 WL 2456926 (9th Cir. Oct. 6, 2005) (same); *Natale v. Pfizer, Inc.,* ___ F.3d ___, 2005 WL 2253622 (1st Cir. Sep. 16, 2005) (same); *Pritchett v. Office Depot, Inc.,* 420 F.3d 1090 (10th Cir. Aug. 18, 2005) (same); *Weekley v. Guidant Corp.,* ___ F.Supp. ___,

exception. *See, e.g., Clarson v. Southern General Life Ins. Co.*, 694 F.Supp. 847 (M.D.Fla.1987) (finding substitution of plaintiffs, addition of two new causes of action and change in law did not implicate exception); *Camino Camper of San Jose, Inc. v. Winnebago Indus., Inc.*, 715 F.Supp. 964 (D.C.Cal. 1989) (finding passage of new statute giving rise to jurisdiction did not allow for removal.); *Clegg v. Bristol-Meyers Squibb Co.*, 285 B.R. 23 (M.D.Fla. 2002) (new basis for removal did not implicate exception). As one court put it, "[i]f a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b); subsequent events do not make it 'more removable' or 'again removable'." *Hubbard v. Union Oil Company*, 601 F.Supp. 790, 795 (S.D.W.Va.1985).

Moreover, as Judge Shadur noted in *Frye*, the addition of new named plaintiffs not only does not give rise to the revival exception, it is "irrelevant" because the new named representative are members of the previously defined class. *Frye*, 35 B.R. at 747 n. 11. This suit, was originally, and is still now, brought under the same basic legal theory – that defendants are liable for MTBE contamination. Based on the "revival exception" case law, the changes here do not constitute a substantially new suit worthy of a revival. *Wilson*, 668 F.2d at 964; *Dunn*, 166 F.Supp.2d at 1279; *Johnson*, 227 F.3d at 242. Accordingly, since plaintiffs' action was initially removable as provided under 28 U.S.C. §1446(b) and no circumstances exist to revive or renew the previously expired 30-day limitation, defendants' removal is untimely, and plaintiffs' motion to remand must be granted.

---

2005 WL 2348476 (E.D.Ark. Sep. 23, 2005) (same); *Brannigan v. U.S.*, 249 F.3d 584 (7th Cir. 2001) (a single set of facts producing a single injury is one "claim," no matter how many legal theories can be invoked in support of relief.); *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (One set of facts producing one injury creates one "claim for relief," no matter how many laws the deeds violate.); *Ethesda Lutheran Homes and Serv., Inc., v. Born*, 238 F.3d 853 (a "claim" is not an argument or a ground, but the events claimed to give rise to a right to a legal remedy.); *Bolton v. Mcwane Cast Iron & Pipe Co.*, 328 F.Supp.2d 1229 (N.D.Ala. 2004) (Where both federal and state causes of actions are asserted as a result of a single wrong based on a common event or transaction, they are the same claim under section 1441(c).).

## CONCLUSION

Although defendants represent the jurisdictional issues in this case to be complex, in fact, the only relevant question for this Court is whether 28 U.S.C. §1446(b) bars Defendants' removal. Plaintiffs submit that Defendants' failure to timely remove this action when it was originally filed acts as a complete bar to federal jurisdiction requiring remand.

Respectfully submitted,

KOREIN TILLERY

s/ Aaron M. Zigler
Stephen M. Tillery
Christine J. Moody
Aaron M. Zigler
Gateway One on the Mall
701 Market Street, Suite 300
Saint Louis, Missouri 63101-1820

Scott Summy
Celeste Evangelesti
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219-4281

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOWARD GRAHAM and RHEA McMANNIS, individually and on behalf of all others similarly situated,       )<br>)<br>)<br>)<br>Plaintiffs,   )<br>)<br>vs.   )<br>)<br>SHELL OIL COMPANY and EXXON MOBIL CORPORATION,   )<br>)<br>)<br>Defendants.   )<br>)<br>) | Case No. 05-703-MJR |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2005, I electronically filed Plaintiffs' Memorandum in Support of Remand with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Craig H. Zimmerman
- Edward Abraham Cohen
- John E. Galvin
- Michael P. Downey
- Robert J. Wagner
- Roman P. Wuller

s/ Aaron M. Zigler
Aaron M. Zigler        # 6276907
Gateway One on the Mall
701 Market Street, Suite 300
Saint Louis, Missouri 63101
Telephone:    (314) 241-4844
Facsimile:    (314) 241-3525
azigler@koreintillery.com

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| ~~FRANCES MISUKONIS, FRANK PROVAZNIK AND~~ ~~DOLORES PROVAZNIK, INDIVIDUALLY AND ON BEHALF~~ ~~OF ALL OTHERS SIMILARLY SITUATED,~~ HOWARD GRAHAM and RHEA McMANNIS,) | |
| Plaintiffs, | |
| vs. | Cause No. 01-L-1472 |
| ~~ATLANTIC RICHFIELD COMPANY; BP CORPORATION~~ ~~NORTH AMERICA; BP PRODUCTS NORTH AMERICA,~~ ~~INC.; CITGO PETROLEUM CORPORATION; CONOCO,~~ ~~INC.;~~ SHELL OIL COMPANY and EXXON MOBIL CORPORATION, ~~F/K/A EXXON~~ ~~CORPORATION AND F/K/A MOBIL CORPORATION;~~ ~~CHEVRON U.S.A., INC.; PHILLIPS PETROLEUM~~ ~~COMPANY; AND SHELL OIL COMPANY,~~, | |
| Defendants. | |

## ~~FOURTH~~FIFTH AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, ~~FRANCES MISUKONIS, FRANK PROVAZNIK~~HOWARD GRAHAM and ~~DOLORES PROVAZNIK~~RHEA McMANNIS, by and through their undersigned counsel, on behalf of themselves and all others similarly situated, and for their ~~Third~~Fifth Amended Complaint against Defendants, state as follows:

1.     Plaintiff ~~FRANCES MISUKONIS~~HOWARD GRAHAM is an adult citizen and resident of ~~Madison County, Illinois.  She is reliant upon groundwater from her privately owned well which is~~ ~~contaminated with MTBE.~~

~~2.     Plaintiff FRANK PROVAZNIK is an adult citizen and resident of Madison~~St. Clair County, Illinois.  He is the owner of ~~a private~~privately owned well reliant on groundwater~~.~~

~~3.     Plaintiff DOLORES PROVAZNIK,~~ which well is within 3000 feet of a station owned or

controlled by EXXON MOBIL CORPORATION.

2.      Plaintiff RHEA MCMANNIS is an adult citizen and resident of Madison County, Illinois.  She is the owner of ~a private well reliant on groundwater.~

~4.      ATLANTIC RICHFIELD COMPANY (hereinafter referred to as "ARCO") is a Delaware corporation with its principal place of business in California and doing business in the State of Illinois.~

~5.      BP AMOCO CORPORATION ("AMOCO") is a Indiana corporation with its principal place of business in the State of Illinois.  Defendant AMOCO OIL COMPANY is a wholly owned subsidiary of BP AMOCO CORPORATION and has its principal place of business in the State of Illinois.~

~6.      CITGO PETROLEUM CORPORATION ("CITGO") is a Delaware corporation with its principal place of business in Oklahoma and doing business in the State of Illinois.~

~7.      CONOCO, INC. ("CONOCO") is a Delaware corporation with its principal place of business in Texas and doing business in the State of Illinois.~

~8.      CHEVRON U.S.A. INC. ("CHEVRON") is a Delaware corporation with its principal place of business in California and doing business in the State of Illinois.~

~9.~ , which well is within 3000 feet of a station owned or controlled by SHELL OIL COMPANY.

3.      EXXON MOBIL CORPORATION, formed as a result of the merger on November 30, 1999 of EXXON CORPORATION and MOBIL CORPORATION, ("EXXON") is a New Jersey corporation with its principal place of business in Texas and doing business in the State of Illinois.

~10~4.      ~PHILLIPS PETROLEUM~SHELL OIL COMPANY (~"PHILLIPS"~"SHELL") is a Delaware

2

corporation with its principal place of business in ~~Oklahoma~~Texas and doing business in the State of Illinois.

~~11.    SHELL OIL COMPANY ("SHELL") is a Delaware corporation with its principal place of business in Texas and doing business in the State of Illinois.~~

~~12~~5.    When reference in this Complaint is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

~~13~~6.    Defendants in this action are manufacturers of MTBE and gasoline containing MTBE, and do business in the State of Illinois.

~~14~~7.    This Court has jurisdiction over Defendants because they are either Illinois corporations authorized to do business in Illinois, are registered with the Illinois Secretary of State, do sufficient business with sufficient minimum contacts in Illinois, or otherwise intentionally avail themselves of the Illinois market through the sale, manufacturing, distribution and/or processing of petroleum-related products in Illinois to render the exercise of jurisdiction over Defendants by the Illinois courts consistent with traditional notions of fair play and substantial justice. There is no diversity of citizenship in this action.

~~15~~8.    Venue is proper in this Court because ~~at least one of the transactions giving rise to these causes of action --~~the actual or threatened contamination of one of Plaintiffs' property by MTBE took place in Madison County, Illinois.

3

169.    Methyl tertiary butyl ether ("MTBE") is the gasoline additive that has caused wide-spread contamination to drinking water sources throughout the United States.

170.    MTBE does not occur naturally but is produced in very large amounts from isobutylene, a by-product produced by the oil companies in the gasoline refining process.  MTBE is a member of a class of chemical compounds, ethers, whose unique properties include enhanced solubility in water and chemical attraction to water molecules.  Unlike oil, which does not mix with water, MTBE mixes so well with water that it spreads its toxic plumes faster and farther than other chemical components contained in gasoline.  Once MTBE is released into the environment and is permitted to contaminate groundwater, its foul taste and odor may render the water virtually unusable and unfit for human consumption.  Moreover, MTBE does not attach readily to soil particles and is therefore not readily susceptible to natural biodegradation.  Thus, once it has been discharged and/or permitted to contaminate groundwater, MTBE will continue to exist for an extensive period of time and poses a danger of spreading to uncontaminated sources of drinking water.  Additionally, once in the groundwater, MTBE is costly and difficult to remediate.

181.    Tert butyl alcohol ("TBA") is a degradation product of MTBE.

192.    TBA is used as a raw material in the production of isobutylene, which is then used to produce MTBE, it is an intermediate product of MTBE biodegradation, and it is also sometimes added to gasoline as an oxygenate.  Therefore, TBA often shows up wherever there is MTBE contamination.

2013.    TBA has the same characteristics as MTBE that make it a persistent and pernicious groundwater contaminant: low solubility ( more so than MTBE); resistance to biodegradation, etc.

2114.    To make matters worse, TBA is even more expensive to clean up than MTBE.  In

4

fact, the presence of TBA in water being treated for MTBE may generate compounds potentially of health and environmental concern, limiting the usefulness of these technologies and further increasing costs.

22~~15~~.   In addition, TBA is highly toxic when inhaled and is irritating to the skin, eyes, and mucous membranes.  There is also some evidence that TBA causes cancer and it causes kidney and thyroid tumors in rats and mice exposed to it.

23~~16~~.   Defendants failed to warn Plaintiffs, regulators, and the general public that they often add TBA to their gasoline and that MTBE breaks down into TBA.  Further, Defendants failed to warn Plaintiffs of the need to test their water wells for contamination by TBA.

24~~17~~.   In or around 1979, ~~MTBE~~ Defendants began using MTBE as a gasoline additive to boost octane.  Despite the Defendants' knowledge of the dangerous characteristics of MTBE and its propensity to contaminate groundwater, these Defendants formed joint task-forces and committees, and in doing so, conspired to misrepresent to the government and the public the true characteristics of MTBE, in order to pave the way for MTBE to become one of the most widely-used petroleum products in the United States.

25~~18~~.   Since the early 1980's, the Defendants formed numerous Committees under the auspices of various trade organizations including the American Petroleum Institute ("API") and the Oxygenated Fuels Association ("OFA") to analyze MTBE and its impact on the environment.  Although these trade organizations allegedly state that their purpose is to provide information to regulatory agencies and the public, the members in effect conspired to keep truthful information

regarding MTBE and its risk to the environment from being known. Among the many Committees established was the "MTBE Committee." The oil industry mobilized an effort to convince the EPA that MTBE was safe and that additional testing of MTBE was not needed. An MTBE Committee was formed by Defendants with the express and stated purpose as set forth in a written agreement of "addressing the environmental, health, safety, legislative and regulatory issues concerning MTBE of importance to the public and the producers and users of MTBE." The MTBE Committee lauded itself as "being a source of information to MTBE producers, users, the government and the public" and stated that its goal was to "address environmental health and safety issues relating to MTBE ..., provide technical data to appropriate regulatory agencies and legislative bodies ..., conduct[ ] and fund[ ] testing of MTBE ..., [and] make available to interested parties and the general public technical and scientific information relating to the use of MTBE in fuels."

26 19. In 1986, the Defendants, individually and via the MTBE Committee, submitted a written report to the EPA regarding MTBE. However, despite the innocuous description of the MTBE Committee's goals, the information provided by Defendants was misleading and false. Clearly, the purpose behind the Defendants' comments was to dissuade the EPA from requiring additional health and environmental testing of MTBE. For example, the Defendants provided information to the EPA representing that MTBE is only slightly soluble in water, that potential environmental exposure is not high, that MTBE had excellent biodegradation characteristics, and that additional testing should not be done. The representations made by the Defendants to the EPA were an alarming and inaccurate attempt to obtain approval for use of MTBE without adequate testing so that the Defendants could avoid public scrutiny of the product and thereby maximize their profits. In making and supporting such representations, the Defendants demonstrated their

6

willingness to use any means to place their economic interest above the health, property and well-being of the people of the United States.

270.    Defendants misled not only the EPA, but Plaintiffs and Class members. Despite their duties to provide a safe product and to warn Plaintiffs, government regulators, and those who handle and store their product, of MTBE's dangerous properties and other known or reasonably knowable risks, Defendants failed to take proper action.  Neither state agencies nor public well providers were told of the existence of MTBE in gasoline, much less that ground water should be tested for the presence of MTBE.

281.    Further, Defendants continued to misrepresent the characteristics of MTBE to the public and the government.  Despite the fact that the true story about MTBE is now coming to light, Defendants have not only failed to take steps to inform the EPA and the public that the information Defendants provided about MTBE was inaccurate and/or misleading, but have continued to tout MTBE as a benefit to the environment and have withheld information regarding MTBE's harmful characteristics and risks to the Nation's groundwater.

292.    In deciding to add MTBE to their gasoline, Defendants were fully aware that leaking USTs threatened the nation's water supply and the presence of MTBE served to exacerbate this threat. Defendants chose to place MTBE gasoline in leaking USTs without regard for the integrity of the country's groundwater system, as well as the safety and well-being of residents who were dependent on groundwater.  Substantial industry reports, Congressional testimony and concerns expressed by the EPA document Defendants' knowledge of the UST crisis.

3023.   Further, Defendants were also fully aware that thousands of gallons of gasoline enter the soil from gasoline dispensing stations due to consumer overfills of automobile gas tanks and

jobber overfills of the USTs each year. In fact, it has been predicted that over 15 million UST over-filling events and over 12 billion automotive over-fueling events occur annually in this country. Defendants were also aware that gasoline is used and stored by nearly every adult person in the United States. With this many fuel handling events, human error inevitably occurs. Defendants knew that the human error involved in the millions of fuel handling events would allow gasoline containing MTBE to migrate through the soil and into the groundwater. Nevertheless, they introduced MTBE into the stream of commerce and distributed gasoline containing MTBE to thousands of sites in the United States without warning anyone about the risks of MTBE.

~~31~~24. Although this case does not involve claims for personal injury, it is important to note that Defendants added MTBE to gasoline before decisive, long-term cancer studies were completed. It is common knowledge within the scientific community and Defendants knew, that prior to the introduction of a widely used chemical like MTBE, toxicological tests must first be performed. However, Defendants did not perform the standard toxicological procedures to test the effects of MTBE prior to placing it into the stream of commerce. Instead, Defendants attempted to convince the EPA that health testing of MTBE was not needed by pointing to tests which Defendants structured and funded. Thus, Defendants exposed millions of Americans, including Plaintiffs, to potential harm without warning of the potential health risks associated with MTBE.

~~32~~25. Since gasoline containing MTBE at increased levels was introduced in the early 1990s, the United States Geological Survey has reported that MTBE is the second most frequently detected chemical in groundwater in the United States. MTBE-contaminated wells have been found from coast-to-coast with serious incidents in states from New Hampshire to California.

~~33~~26. MTBE contamination has become so severe that the EPA has recently initiated an

Advanced Notice of Proposed Rule-making regarding MTBE in an effort to eliminate or limit the use of MTBE as a fuel additive in gasoline. The EPA report indicates that MTBE is a "threat to the nation's drinking water resources;" and that it "has caused widespread and serious contamination." As stated, the EPA's review of existing information on contamination of drinking water resources by MTBE "indicates substantial evidence of a significant risk to the nation's drinking water supply."

34̶27. As manufacturers and distributors of MTBE with vastly superior knowledge and resources to those of Plaintiffs and even of government regulators, Defendants individually and severally had and have: (i) a duty to protect the nation's groundwater/drinking water; (ii) a duty to timely and fully inform government agencies and regulators of the nature and risks of MTBE; (iii) a duty to warn gasoline station operators, public water providers, and the general public, including the Plaintiffs, of MTBE's unique properties, and transport characteristics; and (iv) a duty to warn all entities who own a water supply well of MTBE's propensity to migrate great distances upon being released, of its potential adverse effects and of the need for testing.

35̶28. Defendants have known of MTBE's chemical characteristics that make it virtually certain that if MTBE were released into the environment it would contaminate sources of drinking water to a greater degree than other gasoline constituents. Defendants knew that the storage systems responsible for storing gasoline containing MTBE were deteriorating and/or leaking and that there were numerous other pathways that would allow for MTBE to get into the environment and cause extensive pollution of this country's groundwater. Despite this knowledge, Defendants misrepresented to the public and the government the true nature of MTBE and negligently elected to promote and market MTBE. Further, Defendants have failed to warn the appropriate persons that own and operate gasoline stations and storage tanks, as well as Plaintiffs and the Class, of the

9

various pathways that MTBE can enter the environment and its effect on groundwater.

3629. The process of manufacturing and distribution of petroleum products, principally gasoline containing MTBE, includes complex arrangements whereby the Defendants trade, barter or otherwise exchange product for delivery throughout the United States. The specific manufacturer of MTBE for any particular groundwater contamination cannot always be fairly and accurately determined, thereby necessitating the pursuit of all Defendants, jointly and severally, for those damages which they have collectively visited upon Plaintiffs and members of the Class they seek to represent.

370. MTBE is fungible, such that it is impossible to identify the exact defendant who manufactured any given batch of MTBE found free in the environment. Defendants in this action are manufacturers that control the market for gasoline containing MTBE in the United States during the relevant time frame, and one or more of the Defendants is responsible for the harm to Plaintiffs and the Class, as alleged in this Complaint. Each Defendant engaged in substantially the same conduct that resulted in substantially the same increased threat to groundwater in the United States and risk of causing the injuries complained of in this Complaint, and the conduct of each Defendant was tortious. Therefore, alternative liability attaches to all Defendants.

381. Each Defendant agreed to conceal the true nature of MTBE, to profit from the use of MTBE at Plaintiffs and the Class' expense, to contaminate Plaintiffs and the Class' aquifers and wells, and to avoid liability for such contamination, and each Defendant acted tortiously in pursuance of this agreement. Concert of action liability attaches to all Defendants.

392. Defendants were jointly aware of the risks of MTBE, as alleged in this Complaint, and had a joint capacity to reduce or affect these risks. Enterprise liability attaches to all of the

10

Defendants.

## COUNT I (NEGLIGENCE)

~~COME~~Come N~~OW~~ow Plaintiffs, ~~FRANCES MISUKONIS, FRANK PROVAZNIK and DOLORES PROVAZNIK,~~ individually, and for Count I of their Complaint against Defendants, state as follows:

~~40~~33.   Plaintiffs incorporate paragraphs 1 through 392 of this Complaint by reference in this Count, as if fully set forth herein.

~~41~~34.   The Plaintiffs are and have been captives to the petroleum industry of which Defendants are a part.   Literally every resident of the United States is heavily dependent upon gasoline in their day-to-day lives.   Defendants are responsible for the design, manufacture, sale and distribution of all chemicals that are part of gasoline.   As a result, the Plaintiffs and the residents of the United States are in a disadvantaged position where they must rely on Defendants to provide gasoline of a nature and in a manner that is safe in anticipated and foreseeable usage.   Defendants possess vastly superior knowledge, resources, experience and other advantages to those of Plaintiffs concerning the manufacture, distribution, nature and properties of gasoline and particularly MTBE.

~~42~~35.   Many of Defendants employ scientists such as hydrogeologists, chemists, engineers and toxicologists.   Defendants are in a position to "know" the effects of wide scale production, distribution and use of certain chemicals contained in gasoline, including MTBE and/or TBA. Defendants have tremendous economic power, as well as substantial resources to analyze all facets of the wide scale production, distribution and use of the chemicals they place and distribute in gasoline, including MTBE and/or TBA.

~~43~~36.   With respect to MTBE and/or TBA, Defendants knew or should have known, prior to and subsequent to the wide scale production of MTBE, that:

      A.      MTBE is an ether and is, therefore, water soluble;

B.  MTBE has certain fate and transport characteristics which make it highly pervasive in water and that once in water, it would not adsorb to soil particles and would be recalcitrant to biodegradation;

C.  MTBE plumes would spread faster and farther than BTEX plumes and thereby threaten groundwater and drinking water;

D.  MTBE is extremely hazardous to groundwater aquifers and Plaintiffs' wells and water systems;

E.  millions of Americans would handle gasoline containing MTBE in the course of their daily lives;

F.  there is a tremendous problem with leaking USTs throughout the Country;

G.  Plaintiffs' resources were inadequate to deal with the wide scale contamination problem MTBE would cause; and

H.  Private Well Owners including Plaintiffs, would be unsuspecting and not test for MTBE on a regular basis, if at all.

~~44~~37. Defendants had a duty to:

A.  ensure that MTBE, when used as intended, would not pose an unreasonable risk to groundwater from which Plaintiffs and the Class draw their water;

B.  determine whether MTBE contains any latent defects and to warn Plaintiffs, the public and others of any such latent defects known or reasonably knowable by them, their agents and employees;

C.  warn Plaintiffs and others who own or control a well that provides water of MTBE's propensity to migrate great distances upon being released and of its potential adverse effects;

D.  warn anyone who owns or operates a water well that it should frequently be tested for MTBE; and,

E.  take reasonable actions to minimize or eliminate the harmful impacts and risks of their product.

~~45~~38. Defendants have negligently breached these duties by:

A.  using MTBE as a gasoline additive, knowing of its dangerous propensities;

13

B.   failing to adequately test MTBE prior to its manufacture, distribution and/or sale;

C.   failing to adequately test, identify and remediate wells that are contaminated with MTBE;

D.   failing to warn sellers of gasoline containing MTBE about the risks associated with the use of MTBE;

E.   failing to adequately warn Plaintiffs, government agencies and/or regulators, and the general public regarding MTBE and its associated risks, including the impact on water;

F.   forming joint committees and task-forces to create strategic approaches to keep information surrounding MTBE concealed while promoting and defending MTBE;

G.   failing to eliminate or minimize the harmful impacts and risks posed by MTBE;

H.   failing to curtail or reduce MTBE's manufacture and distribution;

I.   failing to instruct the purchasers and users of gasoline containing MTBE about the safe handling and use of such product;

J.   failing to inspect, test and take the necessary steps to prevent the distribution and storage system from releasing MTBE in the general public's water or threatening such release; and/or,

K.   making material misrepresentations and/or omissions of material facts regarding MTBE.

46~39.   As a direct and proximate result of one or more of the foregoing acts or omissions of negligence on the part of Defendants, the Plaintiffs water supply wells ~are contaminated or~ are at risk for MTBE and/or TBA contamination.

47~0.   Plaintiffs individually bring this action for all monetary damages associated with their potential MTBE contamination situation, including damages for reduction of value of their property, and request that Defendants be required to pay all costs associated with supplying bottled water and

14

a filtration system on a temporary basis and pay all costs associated with a permanent hook up a local municipal or private water system. Defendants should also be required to pay all costs of supplying this alternative water for a reasonable amount of time into the future until MTBE no longer poses a risk. In the event a permanent water supply is unavailable, Plaintiffs request that Defendants be required to pay all costs associated with an appropriate filter system at the wellhead as well as all costs associated with maintenance and upkeep of the filter system until a reasonable amount of time into the future until MTBE no longer poses a risk. Finally, Plaintiffs request that Defendants be required to pay the costs associated with remediating all MTBE contamination that is located on or threatens their property.

481. All of the damages of which Plaintiffs complain were reasonably foreseeable and proximately caused by the negligence of Defendants, jointly and severally, as hereinbefore alleged.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows: Awarding the Named Plaintiffs individually compensatory damages, costs of suit, and attorneys' fees, including all monetary damages associated with their ~~MTBE~~actual or threatened MTBE/TBA contamination situation, including damages for reduction of value of their property, and all costs associated with testing, supplying bottled water and a filtration system on a temporary basis, and all costs associated with a permanent hook up a local municipal or private water system. Defendants should also be required to pay all costs of supplying this alternative water for a reasonable amount of time into the future until MTBE no longer poses a risk. In the event a permanent water supply is unavailable, Plaintiffs request that Defendants be required to pay all costs associated with an appropriate filter system at the wellhead as well as all costs associated with maintenance and upkeep of the filter system until a reasonable amount of time into the future until

15

MTBE no longer poses a risk. Finally, Plaintiffs request that Defendants be required to pay the costs associated with remediating all ~~MTBE~~MTBE/TBA contamination that is located on or threatens their property.

**COUNT II (~~STRICT LIABILITY~~**
~~**COME NOW Plaintiffs, FRANCES MISUKONIS, FRANK PROVAZNIK and DOLORES**~~
~~**PROVAZNIK,**~~ **NUISANCE)**

Come Now Plaintiffs, individually, and for Count II of their Complaint against Defendants, state as follows:

49~~2~~. Plaintiffs incorporates paragraphs 1 through 48~~1~~ of this Complaint by reference in this Count, as if fully set forth herein.

~~50. At the time Defendants placed MTBE and gasoline containing MTBE into the stream of commerce, it was defective and/or unreasonably dangerous for its intended and foreseeable uses for the following reasons:~~

~~A. MTBE is highly soluble in water and recalcitrant to bioremediation and biodegradation; and~~

~~B. If gasoline containing MTBE is leaked, MTBE has a tendency to mix with groundwater and migrate great distances;~~

~~C. Defendants failed to warn persons in the business of owning and operating gasoline stations and storage tanks, and government regulators that:~~

~~(i) MTBE is highly soluble in water and recalcitrant to bioremediation~~

16

and biodegradation;

(ii)     if MTBE is leaked, it has a tendency to mix with groundwater and migrate great distances;

(iii)     it is necessary to maintain and require that USTs be kept tight and that overfills must immediately be addressed;

(iv)     testing should be conducted on a frequent basis in and around USTs and related systems where MTBE is stored for early detection to prevent harmful exposure to humans and property;

(v)     secondary containment is essential to storing MTBE; and

(vi)     in the event of a leak, anyone living or residing near a site should be immediately warned.

D.     Defendants failed to warn43. Defendant, by the wide-scale production, distribution and use of the chemicals they place and distribute in gasoline, including MTBE and/or TBA, performed in a negligent, reckless and/or abnormally dangerous manner, has caused contamination of the nation's groundwater supply, thereby contaminating or potentially contaminating

17

private water wells and creating a public nuisance. Defendants knew or had reason to know that their production, distribution and use of the chemicals they place and distribute in gasoline, including MTBE and/or TBA, would have a significant, long-standing effect on the public's rights, as described above. The nuisance caused by Defendants is continuing and abatable.

44.     As a result of Defendants' conduct, Plaintiffs and members of the ~~Class they seek to represent that:~~

~~(i)     MTBE is highly soluble in water and recalcitrant to bioremediation and biodegradation;~~

~~(ii)    if MTBE is leaked, it has a tendency to mix with groundwater and migrate great distances;~~

~~(iii)   anyone storing gasoline is at risk for contaminating wells and what care should have been taken in handling and storing gasoline containing MTBE; and~~

~~(iv)    that anyone who owns or controls a well or water system should frequently test for the presence of MTBE because of its rapid movement through groundwater and propensity to contaminate large volumes of groundwater and drinking water.~~

~~51.   As a direct and proximate result of the unreasonably dangerous and/or defective condition of MTBE or gasoline containing MTBE and its introduction into the stream of commerce by Defendants,~~proposed class have suffered and will suffer damages and injury distinct from these harms to the general public, namely the Plaintiffs water supply wells ~~are contaminated or~~ are at risk for MTBE and/or TBA contamination.

~~52~~45.  All of the damages of which Plaintiffs complain were reasonably foreseeable and proximately caused by the Defendants, jointly and severally, as hereinbefore alleged.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows: Awarding the Named Plaintiffs individually compensatory damages, costs of suit, and attorneys' fees, including all monetary damages associated with their ~~MTBE~~actual or threatened MTBE/TBA contamination situation, including damages for reduction of value of their property, and all costs associated with testing, supplying bottled water and a filtration system on a temporary basis, and all costs associated with a permanent hook up a local municipal or private water system. Defendants should also be required to pay all costs of supplying this alternative water for a reasonable amount of time into the future until MTBE no longer poses a risk. In the event a permanent water supply is unavailable, Plaintiffs request that Defendants be required to pay all costs associated with an appropriate filter system at the wellhead as well as all costs associated with maintenance and upkeep of the filter system until a reasonable amount of time into the future until MTBE no longer poses a risk. Finally, Plaintiffs request that Defendants be required to pay the costs associated with remediating all ~~MTBE~~MTBE/TBA contamination that is located on or threatens their property.

~~COUNT III (CONSPIRACY)~~

19

COME NOW Plaintiffs, FRANCES MISUKONIS, FRANK PROVAZNIK and DOLORES PROVAZNIK, individually and on behalf of all others similarly situated, and for Count III of their Complaint against Defendants, state as follows:

53. Plaintiffs incorporate paragraphs 1 through 52 of this Complaint by reference in this Count, as if fully set forth herein.

54. As set forth above, Defendants formed joint task-forces and committees with the express purpose of providing information about MTBE to the public and to government agencies.

55. Instead of providing truthful and accurate information about the fate and transport characteristics, propensity to contaminate ground water, and health effects of MTBE, Defendants intentionally misrepresented to the EPA and the public that MTBE was safe and did not pose a risk to groundwater.

56. Defendants agreed among themselves to continue to conceal the dangers of MTBE from the government and the public by repeatedly requesting that information about the dangers and health effects of MTBE be suppressed and not otherwise published by third-parties.

57. With respect to the foregoing wrongful conduct, Defendants have conspired and acted in concert to use MTBE because it was the most profitable gasoline additive and without due regard for the risks posed by MTBE to groundwater. Defendants thereby directly and proximately caused reasonably foreseeable damages to Plaintiffs and the Class they seek to represent.

58. Defendants have conspired and colluded to make misrepresentations and omissions to promote the acceptance and use of MTBE and to create a market for such chemical without disclosing the characteristics of and risks posed by MTBE to groundwater.

59. Beginning in the early 1980s and continuing through the date of the filing of this

Complaint, Defendants have knowingly and wilfully acted in concert for the unlawful purposes of suppressing and concealing material information concerning the adverse fate and transport characteristics of MTBE, the propensity of MTBE to contaminate groundwater, the potential adverse health effects of MTBE, and the extent of the leaking UST crisis. Defendants have organized UST and MTBE task forces to collectively use their resources to fight UST legislation and conceal or downplay any adverse findings related to MTBE. Defendants further conspired to conceal and/or represent, in an inaccurate and misleading fashion, the chemical fate and transport characteristics and the public health risks associated with MTBE to not only the EPA, but to Plaintiffs and the public at large, including members of the Class Plaintiffs seek to represent.

60.     Defendants did act in furtherance of the above-alleged conspiracy and ratified and adopted the acts of each co-conspirator.

61.     As a direct and proximate cause of the wrongful acts committed in furtherance of the conspiracy described above, MTBE has contaminated groundwater in the United States and the Plaintiffs water supply wells are contaminated or are at risk for MTBE and/or TBA contamination.

62.     All of the damages of which Plaintiffs complain were reasonably foreseeable and proximately caused by the Defendants, jointly and severally, as hereinbefore alleged.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows: Awarding the Named Plaintiffs individually compensatory damages, costs of suit, and attorneys' fees, including all monetary damages associated with their MTBE contamination situation, including damages for reduction of value of their property, and all costs associated with supplying bottled water and a filtration system on a temporary basis and all costs associated with a permanent hook up a local municipal or private water system. Defendants should also be required

21

~~to pay all costs of supplying this alternative water for a reasonable amount of time into the future~~

~~until MTBE no longer poses a risk. In the event a permanent water supply is unavailable, Plaintiffs~~

~~request that Defendants be required to pay all costs associated with an appropriate filter system at~~

~~the wellhead as well as all costs associated with maintenance and upkeep of the filter system until~~

~~a reasonable amount of time into the future until MTBE no longer poses a risk. Finally, Plaintiffs~~

~~request that Defendants be required to pay the costs associated with remediating all MTBE~~

~~contamination that is located on or threatens their property.~~

## COUNT I~V~II (DECLARATORY JUDGMENT)

~~COME NOW Plaintiffs, FRANCES MISUKONIS, FRANK PROVAZNIK and DOLORES~~

~~PROVAZNIK,~~ Come Now Plaintiffs, individually and on behalf of all others similarly situated, and

for Count I~V~II of their Complaint against Defendants, state as follows:

~~63~~46. Plaintiffs incorporate paragraphs 1 through ~~62~~45 of this Complaint by reference in

this Count, as if fully set forth herein.

~~64~~47. This action is brought by Plaintiffs on their own behalf and on behalf of all others

similarly situated, pursuant to 735 ILCS 5/2-801, on behalf of a Class, defined as follows:

> All persons who own real property in the State of Illinois that is not
> used for commercial purposes upon which a private water supply
> well exists that provides drinking water, and who are within 3000 feet
> of services stations that are or were owned or operated by
> Defendants.
>
> Specifically excluded from the proposed Class are: (1) any claims
> brought by Public Water Providers[1]; (2) Defendants herein, any entity

---

[1]   "Public Water Provider" is defined as an entity, regardless of ownership, whose primary business purpose is
to provide water for human consumption for purchase to its customers through pipes or other constructed
conveyances, and where the system has 15 or more service connections, or regularly serves 25 or more

> in which any Defendant has a controlling interest, and the employees, affiliates, legal representatives, heirs, successors, or assignees of Defendants; and (3) any Judge conducting any proceeding in this action and members of their immediate families.

65~~48~~.   The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class Members is unknown at this time, it is generally ascertainable by appropriate discovery, and it is believed that the Class includes hundreds ~~of thousands~~ of members.

66~~49~~.   Common questions of law or fact arising from Defendants' conduct exist as to all members of each Class, as required by 735 ILCS 5/2-801.  These common questions predominate over any questions which affect individual members of each Class. These common questions include:

    A.      Were the Defendants negligent by adding MTBE to gasoline that was distributed in the State of Illinois.

    B.      Were the Defendants negligent when they failed to warn of the risks associated with gasoline containing MTBE distributed in the State of Illinois?

    C.      ~~At the time~~Did Defendants ~~placed'~~ placing of  MTBE and gasoline containing MTBE into the stream of commerce in the State of Illinois~~, was it defective and/or unreasonably dangerous for its intended and foreseeable uses?~~

~~D.      Did Defendants conspire and act in concert when they chose to add MTBE to gasoline?~~

~~67~~ create a nuisance?

50.   Class Action treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is

persons.  This definition includes all publicly-held and privately-held entities.

impracticable.  The Class Action provides an appropriate and effective method whereby the enforcement of the rights of Plaintiffs and members of the Class can be fairly managed without unnecessary expense or duplication.  The expense and burden of individual litigation of a case of this magnitude make it impractical for individual Class Members to seek redress for the wrongs done to them.

68 51.   Individual litigation of all claims which might be asserted by all Class Members would produce such a multiplicity of cases that the judicial systems having jurisdiction of the claims would remain congested for years.  The certification of a Class would allow litigation of claims that, in view of the expenses of the litigation, may be insufficient in amount to support separate actions. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class Members, and result in judicial consistency.

69 52.   Plaintiffs will fairly and adequately protect the interests of the Class they represent. The interests of Plaintiffs, as the Class Representative, are consistent with those of the members of the Class.  In addition, Plaintiffs are represented by counsel experienced in complex class action litigation.

70 53.   The prosecution of separate actions by individual members of the Class would create a risk of:

      A.    Inconsistent or varying adjudications with respect to individual members of the Class; and;

      B.    Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

71 54.  Plaintiffs and Class Members envision no unusual difficulty in the management of this action as a Class Action.

72 55.  Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a Class Action on behalf of all persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water.  Plaintiffs bring this action on behalf of the Class to determine:

> A.  Were the Defendants negligent by adding MTBE to gasoline that was distributed in the State of Illinois.

> B.  Were the Defendants negligent when they failed to warn of the risks associated with gasoline containing MTBE distributed in the State of Illinois?

> C.  At the time Did Defendants placed' placing of  MTBE and gasoline containing MTBE into the stream of commerce in the State of Illinois, was it defective and/or unreasonably dangerous for its intended and foreseeable uses?

> D.  Did Defendants conspire and act in concert when they chose to add MTBE to gasoline?
> 73 create a nuisance?

56.  Plaintiffs, on behalf of themselves and all others similarly situated, bring this claim pursuant to 735 ILCS 5/2-701 for a declaration of the legal rights of the Class as set forth herein.

74 57.  An actual controversy exists in the State of Illinois between the Plaintiffs and the members of the class and the Defendants regarding the issues of:  whether the Defendants negligent by adding MTBE to gasoline that was distributed in the State of Illinois; whether  the Defendants were negligent when they failed to warn of the risks associated with gasoline containing MTBE distributed in the State of Illinois; whether at the time Defendants placed MTBE and gasoline containing MTBE into the stream of commerce in the State of Illinois, was it defective and/or unreasonably dangerous for its intended and foreseeable uses; and whether the Defendants conspires

and acted in concert when they chose to add MTBE to gasoline.

~~75~~58.   Plaintiffs bring this action on behalf of the Class to certify and make a determination

of the legal rights of the Class with respect to the following ~~four~~three issues:

      A.    Were the Defendants negligent by adding MTBE to gasoline that was distributed in the State of Illinois.

      B.    Were the Defendants negligent when they failed to warn of the risks associated with gasoline containing MTBE distributed in the State of Illinois?

      C.    ~~At the time~~Did Defendants ~~placed'~~ placing of MTBE and gasoline containing MTBE into the stream of commerce in the State of Illinois, ~~was it defective and/or unreasonably dangerous for its intended and foreseeable uses?~~

~~      D.    Did Defendants conspire and act in concert when they chose to add MTBE to gasoline~~ create a nuisance?

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and

severally, as follows:

      a.    Ordering that the action be maintained as a class action pursuant to 735 ILCS 5/2-801

and the following Class be certified as follows:

      All persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water, and which is within 3000 feet of services stations that are or were owned or operated by Defendants.

      Specifically excluded from the proposed Class are: (1) any claims brought by Public Water Providers[2]; (2) Defendants herein, any entity in which any Defendant has a controlling interest, and the employees,

---

[2]    "Public Water Provider" is defined as an entity, regardless of ownership, whose primary business purpose is to provide water for human consumption for purchase to its customers through pipes or other constructed conveyances, and where the system has 15 or more service connections, or regularly serves 25 or more persons. This definition includes all publicly-held and privately-held entities.

affiliates, legal representatives, heirs, successors, or assignees of Defendants; and (3) any Judge conducting any proceeding in this action and members of their immediate families.

b.  Determining the legal rights of the Class with respect to the following four issues:

~~A.~~1)  Were the Defendants negligent by adding MTBE to gasoline that was distributed in the State of Illinois.

~~B.~~2)  Were the Defendants negligent when they failed to warn of the risks associated with gasoline containing MTBE distributed in the State of Illinois?

~~C.~~3)  ~~At the time~~Did Defendants ~~placed'~~ placing of  MTBE and gasoline containing MTBE into the stream of commerce in the State of Illinois~~, was it defective and/or unreasonably dangerous for its intended and foreseeable uses?~~

~~D.   Did Defendants conspire and act in concert when they chose to add MTBE to gasoline~~ create a nuisance?

c.  Entering an Order appointing Plaintiffs and their counsel to represent the Class.

KOREIN TILLERY

STEPHEN M. TILLERY #2834995
CHRISTINE J. MOODY #6211904
#10 Executive Woods Court
Swansea, IL  62226
Telephone:   618/277-1180
Facsimile:   314/241-1854

BARON & BUDD, P.C.
SCOTT SUMMY & CELESTE A. EVANGELISTI
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281

*Attorneys for Plaintiffs and the Class*

27

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FRANCES MISUKONIS, et al.          )
                                   )
     Plaintiffs,          )
                                   )
VS.                                )    Cause No. 01-L-1472
                                   )
ALON USA ENERGY, INC.; et al.,     )
                                   )
     Defendants.          )

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of Plaintiffs' ~~Fourth~~Fifth Amended Compliant was served upon all counsel of record as noted below by enclosing same in an envelope, with postage fully prepaid, and deposited in a U.S. Mail Box this ~~17~~th          day of ~~November~~          , 200~~3~~5.

**KOREIN TILLERY**

CHRISTINE J. MOODY # 6211904
#10 Executive Woods Court
Belleville, IL  62226
Telephone:     618/277-1180
Facsimile:     314/241-1854

cc:

Mr. ~~J. Andrew Langan~~
~~KIRKLAND & ELLIS~~
~~200 East Randolph Drive, Suite 54~~
~~Chicago, IL  60601-6636~~
~~and~~
~~Mr. Martin K. Morrissey~~
~~REED, ARMSTRONG,~~
~~GORMAN, MUDGE & MORRISSEY, PC~~
~~115 North Buchanan~~
~~PO Box 368~~
~~Edwardsville, IL 62025~~
~~*Attorneys for BP Corporation North America,*~~
~~*Inc., BP Products North America Inc. and*~~
~~*Atlantic Richfield Company*~~


~~Mr.~~ John E. Galvin
**FOX GALVIN, LLC**
One Memorial Drive, 8th Floor
St. Louis, MO  63102
         and
Richard E. Wallace
**WALLACE KING MARRARO & BRANSON,**
**PLLC**
1050 Thomas Jefferson Street, NW
Washington, DC 20007
***Attorneys for Defendant Shell Oil Company***
**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

Mr. Ed Cohen
**THOMPSON COBURN, LLP**
One Firstar Plaza
St. Louis, MO  63101
***Attorneys for Conoco, Inc., Chevron***
***U.S.A., Inc.,Phillips Petroleum Company***
***and Exxon Mobile Corporation***


~~Mr. Nathan P. Eimer~~
~~Ms. Pamela R. Hanebutt~~
~~EIMER, STAHL, KLEVORN & SOLBERG~~
~~224 South Michigan Avenue, Suite 1100~~
~~Chicago, IL  60604~~
~~*Attorneys for Citgo Petroleum Company*~~


~~Richard E. Wallace~~
~~WALLACE KING MARRARO & BRANSON~~
~~1050 Thomas Jefferson Street, NW~~
~~Washington, DC 20007~~
~~*Attorneys for Shell Oil Company*~~

**2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| HOWARD GRAHAM and RHEA McMANNIS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05-703-MJR |
| SHELL OIL COMPANY and EXXON MOBIL CORPORATION, | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY

Although Defendants were perfectly content in litigating this action in state court for almost four years, they now argue that it will be so burdensome to continue to litigate this Illinois contamination claim in Illinois that they risk irreparable harm should this court even consider its own jurisdiction. Contrary to Defendants' contentions, however, courts often choose not to defer remand decisions to the Judicial Panel for Multidistrict Litigation and choose instead to consider the motion themselves. *Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004) ("Though some district courts stay proceedings during the interim following a conditional transfer order, ... this is not required where the court concludes that it lacks subject matter jurisdiction.").[1]

---

[1] *See also,* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 20.131 (FJC 2004) ("The transferor court should not automatically stay discovery; ... [n]or should the court automatically postpone rulings on pending motions, or generally suspend further proceedings. When notified of the filing of a motion for transfer, therefore, matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer."); *Ret. Sys. of Alabama v. Merrill Lynch & Co.*, 209 F.Supp. 2d 1257, 1261 (M.D.Ala. 2002) (the court finds that the circumstances of this case weigh in favor of first

*footnote cont'd on next page...*

In fact, when a court is presented both a motion to remand and a motion to stay

proceedings pending a decision of the MDL panel, the court "should first give preliminary

scrutiny to the merits of the motion to remand." *Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1049

(E.D.Wis. 2001). If it appears that that removal was clearly improper, the court should promptly

remand the case to state court. *Id.* If the remand motion appears factually or legally difficult

however, the court should then determine whether the transferee court will face identical

jurisdictional issues. *Id.* Only if the remand motion is both difficult and identical to those cases

to be consolidated should the court consider the stay. *Id.*[2]

As discussed in Plaintiffs' Motion to Remand, Defendants' removal of this action is

facially invalid. This action should be promptly remanded and Defendants' motion to stay

should be denied as moot.

---

addressing the issues raised by the motion to remand," even though a conditional transfer order had already been entered.); *In Claims Removed by Honeywell Int'l Inc.*, 179 F.Supp.2d 649, 652 (S.D.W.Va. 2002) (denying stay pending transfer); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1055 (D. Kan. 1999) ("The Court retains jurisdiction to decide the remand issue, despite defendants' motion to the JPMDL."); *Tortola Rests., L.P. v. Kimberly-Clark Corp.*, 987 F.Supp. 1186, 1188-89 (N.D. Cal. 1997) ("A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed."); *Villarreal v. Chrysler Corp.*, 1996 WL 116832, *1 (N.D. Cal. Mar. 11, 1996) and cases cited *infra*. Some courts will even deny motions to stay *sua sponte*. *See Sumner v. Merck & Co., Inc.*, No. 04-864-MJR (S.D.Ill. Dec. 8, 2004).

[2] The *Meyers* test is universally accepted as the proper standard in this Circuit. *See, e.g., Kantner v. Merck & Co., Inc.*, 2005 WL 277688 (S.D.Ind. 2005) (following *Meyers*); *Hotseller v. Pfizer Inc.*, 2005 WL 756224 (S.D.Ind. 2005) (same); *Wisconsin v. Abbott Labs.*, 2004 WL 2055717 (W.D.Wis. 2004) (same); *Nauheim v. Interpublic Group of Companies, Inc.*, 2003 WL 1888843 (N.D.Ill. Apr 16, 2003) (same); *Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. WorldCom, Inc.*, 244 F.Supp.2d 900 (N.D.Ill. 2002) (same). *See also, Martin v. Merck & Co., Inc.*, 2005 WL 1984483 (E.D.Cal. Aug 15, 2005) (same); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049 (N.D.Cal. 2004) (same); *New Mexico State Investment Council v. Alexander*, 317 B.R. 440 (D.N.M. 2004) (same); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F.Supp.2d 740 (E.D.N.Y. 2001) (same); *Chinn v. Belfer*, 2002 WL 31474189 (D.Or. 2002) (same); *Moton v. Bayer Corp.*, 2005 WL 1653731 (S.D.Ala. 2005) (same); *Brock v. Stolt-Nielsen SA*, 2004 WL 1837934 (N.D.Cal. 2004) (same); *Greene v. Wyeth*, 344 F.Supp.2d 674 (D.Nev. 2004) (same); *Nekritz v. Canary Capital Partners, LLC*, 2004 WL 1462035 (D.N.J. 2004); *Medical Society of State of New York v. Connecticut General Corp.*, 187 F.Supp.2d 89 (S.D.N.Y. 2001) (same); *Clark v. Pfizer Inc.*, 2004 WL 1970138 (E.D.Pa. 2004) (same).

## ARGUMENT

"The Judicial Panel on Multidistrict Litigation ("Panel") is neither a trial court, appellate

tribunal, nor (as some have called it) a mysterious 'Super Court.' Rather, it is simply a special

judicial creature comprised of seven federal district or appellate judges[.]" Earle F. Kyle, IV, *The

Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation*, 175 F.R.D.

589 (1998). The Panel's purpose is to transfer "civil actions involving one or more common

questions of fact ... for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).

The mechanics of this transfer are laid out in the Panel Rules that can be found at 199

F.R.D. 425. These Rules provide that upon learning that a case involves common questions of

fact with a MDL proceeding, the Panel may issue a conditional transfer order consolidating the

action with the MDL. Rule 7.4(a). The pendency of this conditional transfer order does not

affect or suspend pretrial orders or proceedings in the district court in which the action is pending

or in any way limit the pretrial jurisdiction of that court. Rule 1.5. Following the entry of a

Conditional Transfer Order ("CTO") plaintiffs have 15 days to object to the transfer. Rule

7.4(c). If plaintiffs object, the CTO is not sent to the district court and a briefing schedule is set

for the objection. *Id*. Following completion of briefing on plaintiffs' objection to the CTO, the

matter is set for the next appropriate hearing session. Rule 7.4(d). These safeguards result in a

lag time of at least three to four months from the issuance of a CTO and the final transfer of an

action in which district court may resolve motions to remand. *In re Prudential Ins. Co. of Am.

Sales Practices Litig.*, 170 F.Supp.2d 1346, 1347 (J.P.M.L. 2001).

Accordingly, the MANUAL FOR COMPLEX LITIGATION instructs that when faced with an

action that may be transferred: "[t]he transferor court should not automatically stay discovery; ...

[n]or should the court automatically postpone rulings on pending motions, or generally suspend

3

further proceedings. When notified of the filing of a motion for transfer, therefore, matters such as motions ... to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer." MANUAL FOR COMPLEX LITIGATION, FOURTH, §20.132 (F.J.C. 2004).

## I.    The Court Should first determine its own jurisdiction

Federal Courts have a fundamental obligation to determine their own jurisdiction. *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 878 (7th Cir. 2002), and neither the filing nor the entry of a conditional transfer order frees this Court of its obligation to determine if jurisdiction is present. *Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir.2004).

Accordingly, the most often cited methodology to be followed when a court is presented with both a motion to remand and a motion to stay requires that absent compelling reasons, the district court should decide plaintiff's motion to remand first:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. If on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other case that have been or may be transferred to the MDL proceeding...
> Only if the jurisdictional issue is both difficult and similar or identical to those cases transferred or likely to be transferred should the court proceed to the third step and consider the stay.

*Meyers,* 143 F.Supp.2d at 1049.

As detailed in Plaintiffs' Motion to Remand, the jurisdictional issues presented in this action are very simple. Section 1446(b) requires that removal take place within 30 days of the initial pleading giving rise to federal jurisdiction. Defendants did not make this deadline and the only exception to this rule, the revival exception, does not apply to the facts of this case.

Accordingly, the court should promptly complete its consideration of the jurisdictional issues and remand the case to state court.

## II.     Defendants' Motion Should be Denied

Notwithstanding the clear direction of the MANUAL FOR COMPLEX LITIGATION, *Meyers* and *IMRF*, should this court choose to consider Defendants' motion prior to determining its own jurisdiction, it is clear that a stay is not warranted in this case.

The proponent of a motion to stay has the burden of proving it will suffer irreparable injury if the case moves forward, and the non-moving party will not be injured by a stay. *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) ("the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."); *Ohio Environmental Council v. U.S. Dist. Court, Southern Dist. of Ohio, Eastern Div.*, 565 F.2d 393, 396 (6th Cir. 1977) ("the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order."). Defendants cannot meet this heavy burden.

### a.     Defendants will Suffer No Hardship Should the Court Consider Plaintiffs' Motion to Remand.

In *IMRF*, Citigroup appealed Judge Murphy's Order of remand entered in the face of both a motion to stay and a Conditional Transfer Order. Citigroup argued that once a Conditional Transfer Order was entered a transferor court could not issue decisions contrary to the transferee court. *Id* at 851. Otherwise, Citigroup argued, discordant rulings would undermine the purpose of the multidistrict litigation statute and lead to "absurd results," *Id.*, as the issuance of any Order during the pendency of the transfer process undermines the promotion of efficient litigation and avoidance of inconsistent rulings. *Id.* at 852.

Defendants in this action proffer the same argument to support of their motion to stay claiming that "the very purpose of such MDL transfers is to ...eliminate the potential for conflicting pretrial rulings" ... and "[i]f this case is not stayed, conflicting rulings ... might result." (Doc. 6-1 at 5, 7.). However, as the *IMRF* court made clear, suffering the potential for conflicting rulings is not a hardship at all, rather it is exactly the result that Congress prefers and 28 U.S.C. § 1447 requires. *IMRF* at 851-52. Moreover, before a conditional transfer is effective, the potential transferee court wields no power to prevent jurisdictional rulings in the unconsolidated cases. *Id.* at 852. Accordingly, a potential transferee court (this Court) is not required to stay proceedings to prohibit conflicting rulings when it concludes that it lacks subject matter jurisdiction. *IMRF* at 852. Thus, Defendants have done nothing to sustain their burden of establishing irreparable harm should a stay not be granted.

### b.  Plaintiffs will suffer harm as a result of a stay.

Plaintiffs, on the other hand, will be harmed through needless delay as well as additional burdens should this action be stayed. Defendants have already caused unnecessary delay by improperly removing this action to Federal Court. *See, e.g., Meyers*, 143 F.Supp.2d at 1048 ("[r]emoving a case to federal court has long been known to impose a burden upon plaintiffs"). These delays are further compounded by the nature of the MDL process. Under the Panel Rules, following the issuance of a conditional transfer order, plaintiffs have 15 days to object to the transfer and another 15 days to file a brief in opposition to the transfer. MDL Rule 7.4. Following such briefing, the Panel will set a date for defendants' response to the motion and then will set the motion for hearing. *Id.* In this case, Plaintiffs' Objection to the CTO is due November 7, 2005. Thus, Plaintiffs' brief will be due on or about November 22, 2005 with defendants' response sometime thereafter. Since the Panel only meets every two months and its

next hearing is set for November 17, 2005, the earliest the Panel could hear Plaintiffs' objection

to transfer is sometime in January 2006. More likely however, Plaintiffs' objection will not be

heard until the Panel's March hearing and not ruled upon until sometime in April 2006.

Moreover, should the Panel transfer the action to the Southern District of New York,

Plaintiffs would then be required to re-brief their Motion to Remand, (Doc. 9), so that it is based

on Second Circuit precedent. *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("transferee

federal court should apply its interpretations of federal law, not the constructions of federal law

of the transferor circuit."). If that court decides not to remand the action, the case will continue

in the Southern District of New York only to return to this Court once it is ready for trial.

*Lexecon Inc. v. Milberg Weiss Beshad Hynes & Lerach*, 523 U.S. 26 (1998) (any case transferred

by the Panel must be returned to transferor for trial). Then, because it is the duty of every federal

court first to determine its own jurisdiction, this Court would again be presented with the

question of whether the revival exception under Seventh Circuit law provides a basis for

Defendants' removal. *Hay*, 312 F.3d at 878. Such a path for this case only adds to the already

high burden plaintiffs face in this complex and fiercely litigated action.

### c. Judicial Economy is not served by staying this action

In addition to the unnecessary burdens outlined above, this case presents precisely the

situation where considerations of judicial economy support denial of the motion to stay and

resolution of the motion to remand. When a motion to remand raises questions of fact or law

that would not otherwise arise in the MDL, the interest of judicial economy is best served by

denying the motion to stay and adjudicating the motion to remand in the court in which the

action is pending. *See, e.g., Greene v. Wyeth*, 344 F.Supp.2d 674, 678-79 (D.Nev.2004); *In re*

*Massachusetts Diet Drug Litig.*, 338 F.Supp.2d 198, 201 (D.Mass.2004); *Edsall v. Merck & Co.,*

7

*Inc.*, 2005 WL 1867730 (N.D.Cal. 2005); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1054 (N.D.Cal. 2004). "In particular, where case-specific issues of fact or law are raised by a motion to remand and a defendant has clearly failed to meet the substantive or procedural requirements for removing a state court action, the court should promptly complete its consideration and remand the case to state court." *Edsall v. Merck & Co., Inc.*, 2005 WL 1867730 (N.D.Cal. 2005) *citing Conroy*, 325 F.Supp.2d at 1053. This case presents exactly such an instance.

## CONCLUSION

This case presents the Court with a clear cut procedural deficiency requiring remand. Judicial economy is not served by burdening the MDL court with this unique issue while transfer of this state court action into the federal MDL only serves to prejudice the plaintiffs. Moreover, Defendants have failed to make even a *prima facie* showing of harm should this case not be stayed. For these reasons, Defendants motion should be denied and the case should be remanded.

Respectfully submitted,

KOREIN TILLERY

s/ Aaron M. Zigler
Stephen M. Tillery
Christine J. Moody
Aaron M. Zigler
Gateway One on the Mall
701 Market Street, Suite 300
Saint Louis, Missouri 63101-1820

Scott Summy
Celeste Evangelesti
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas  75219-4281

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **HOWARD GRAHAM and RHEA McMANNIS, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 05-703-MJR** |
| **SHELL OIL COMPANY and EXXON MOBIL CORPORATION,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2005, I electronically filed Plaintiffs' Memorandum in opposition to Defendants' Motion to Stay with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Craig H. Zimmerman
- Edward Abraham Cohen
- John E. Galvin
- Michael P. Downey
- Robert J. Wagner
- Roman P. Wuller

s/ Aaron M. Zigler
Aaron M. Zigler        # 6276907
Gateway One on the Mall
701 Market Street, Suite 300
Saint Louis, Missouri 63101
Telephone:    (314) 241-4844
Facsimile:    (314) 241-3525
azigler@koreintillery.com