MDL 1358

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 1 2006

FILED
CLERK'S OFFICE

**PLEADING NO. 233**

# DOCKET NO. 1358

## BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

## IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

*Isaiah Machin, et al.  v.  Taylor Investments, LLC, et al.,* N.D. California, C.A. No.  4:06-3243

### MOTION/BRIEF TO VACATE CONDITIONAL TRANSFER ORDER (CTO-23)

RECEIVED
CLERK'S OFFICE
2006 AUG -1  A 11: 23
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

K:\Medmal\9408\Mtn Vacate CTO.pld.wpd

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

**OFFICIAL FILE COPY** IMAGED AUG - 2 2006

## TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   LACK OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 1

   B.   THE DISPARATE FACTS UNDERLYING THIS CASE
        MILITATE AGAINST PRETRIAL CONSOLIDATION AND/OR
        COORDINATION IN MDL 1358 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.   GENERAL OVERVIEW OF THE RELEVANT LEGAL PRINCIPLES
        SUPPORTING REMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.   SECTION 1442(a) "FEDERAL AGENT" JURISDICTION DOES NOT
        EXIST BECAUSE PLAINTIFFS DID NOT ALLEGE DESIGN
        DEFECTS AND THEIR NEGLIGENCE CLAIMS ARE MATERIALLY
        DIFFERENT FROM THE "DEFECTIVE DESIGN" THEORIES
        ADVANCED IN OTHER MDL 1358 CASES . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.   Plaintiffs' "Failure to Warn" and Negligence Claims Are Not the
             Functional Equivalent of a "Design Defect" Cause of Action . . . . . . . . . 6

        2.   Section 1442(a) "Federal Agent" Jurisdiction Does Not Exist
             Without a "Design Defect" Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             a.   Arness and Freiberg Are Persuasive Precedent Because
                  They Explain Why "Federal Agent" Jurisdiction Does Not
                  Apply To Cases Like Ours Where The Government Did
                  Not Exercise "Direct and Detailed" Control Over the
                  Defendants' Omission of Reasonable Warnings and
                  Negligent Storage/Disposal of Hazardous Materials . . . . . . . . . 9

             b.   Other Analogous "Government Contractor Defense" Cases
                  Show That No Federal Agency Exercised "Direct and
                  Detailed" Control Over the Defendants' Tortious Conduct
                  to the Extent Required to Establish Section 1442(a)
                  Jurisdiction Under Arness and Freiberg Analysis . . . . . . . . . . . 11

   C.   SECTION 1503 REMOVAL IS IMPROPER UNDER THE
        ABSTENTION DOCTRINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF CONTENTS** (Cont'd)

D.     THE DISPARATE FACTS UNDERLYING THIS CASE
       MILITATE AGAINST PRETRIAL CONSOLIDATION AND/OR
       COORDINATION IN MDL 1358 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

## TABLE OF AUTHORITIES

<u>CASES</u>

<u>Arness v. Boeing North American, Inc.</u>, 997 F. Supp. 1268 (C.D. Cal. 1998) . . . . . . . .  9-11, 16

<u>Balido v. Improved Mach., Inc.</u>, 29 Cal.App.3d 633 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

<u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

<u>Blackwell v. Phelps Dodge Corp.</u>, 157 Cal.App.3d 372 (1984) . . . . . . . . . . . . . . . . . . . . . . 2, 7

<u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500, 507 (1988) . . . . . . . . . . . . . . . . . 12, 13, 14

<u>Burford v. Sun Oil Co.</u> 319 US 315 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Butler v. Ingalls Shipbuilding, Inc.</u>, 89 F3d 582 (9th Cir. 1996) . . . . . . . . . . . . . . . . . 12, 13, 16

<u>Caterpillar v. Williams</u>, 482 U.S. 386, 392 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Davis. v. Brunswick Corp.</u>, 854 F.Supp.1574 (N.D. Ga. 1994) . . . . . . . . . . . . . . . . . . . . . . . 2, 7

<u>Emrichv. Touche Ross & Co.</u>, 846 F.2d 1190, 1195 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . 4

<u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983) . . . . . . . . . . . . . . . 4

<u>Freiberg v. Swinerton & Walberg Property Services, Inc.</u>,    245 F. Supp. 2d 1144
      (D. Colo.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

<u>Gaus v. Miles, Inc.</u>, 980 F.2d 564 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Groll v. Shell Oil Co.</u>, 148 Cal.App.3d 444 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

<u>Gulf Offshore Co. v. Mobil Oil Corp.</u>, 453 U.S. 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>In re Hawaii Federal Asbestos Cases</u>, 960 F2d 806 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . 12, 13

<u>In re Joint Eastern & Southern Dist. New York Asbestos Litig.</u>,
      897 F2d 626 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

<u>In Re MTBE Product Liability Litigation</u>, 364 F.Supp. 2d 329 (S.D.N.Y. Nov. 3, 2004) . . . . . 15

**MOTION/BRIEF TO VACATE CONDITIONAL**
**TRANSFER ORDER (CTO-23)**

TABLE OF AUTHORITIES (Cont'd)

CASES (Cont'd)

Irving v. Mazda Motor Corp., 136 F.3d 764 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Jefferson County v. Acker, 527 U.S. 423 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lambert v. General Motors, 67 Cal.App.4th 1179 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Lewis v. Intermedics Intraocular, Inc., 56 F.3d 703 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . 2, 5

Libhart v. Santa Monica Dairy Co., 592 F.2d 1062 (9th Cir.1979) . . . . . . . . . . . . . . . . . . . . . . 4

Louisiana Power & Light Co. v. City of Thibodaux, 360 US 25 28 (1959) . . . . . . . . . . . . . . 16

Marcus v. AT&T Corp., 138 F.3d 46, 53 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . 14

Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Merrill v. Navegar, Inc., 26 Cal. 4th 465 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

New Orleans Pub. Service, Inc. v. City Council of New Orleans (1989) 491 US 350 . . . . . . . 17

Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709 (9th Cir.1990) . . . . . . . . . . . . . . . 4

Pennzoil Co. v. Texaco, Inc., 481 US 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651 (2d Cir. 1979) . . . . . . . . . . . . . . 14

Tafflin v. Levitt, 493 U.S. 455 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

United States v. Morros, 268 F3d 695 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

///

///

///

<u>TABLE OF AUTHORITIES</u> (Cont'd)

## STATUTES

28 U.S.C. section 1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 8, 10, 11

28 U.S.C. section 1447(c) of Title 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. section 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 8, 16, 18

119 Stat. 594 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## MISCELLANEOUS

Energy Policy Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

## I.

## SUMMARY OF ARGUMENT

This action must not be transferred to MDL 1358 because the federal courts lack subject matter jurisdiction and its distinctive facts militate against coordinated and/or consolidated pretrial proceedings with the other cases consigned to the MDL.

### A.    LACK OF SUBJECT MATTER JURISDICTION

Defendants have asserted federal subject matter jurisdiction on two grounds: (1) "federal agent" jurisdiction under 28 U.S.C. §1442(a) (hereinafter "Section 1442(a)"); and (2) discretionary federal jurisdiction alluded to in the Energy Policy Act of 2005, Section 1503 (hereinafter "Section 1503"). However, neither basis for federal jurisdiction is sufficient to defeat plaintiffs' pending motion to remand.

Section 1442(a) "federal agent" jurisdiction does not apply. Although defendants in other cases have argued that they were "federally directed" to use MTBE in fuel designs, plaintiffs have not alleged design defects in this action. Therefore, defendants cannot base federal jurisdiction upon contentions that they were "federally directed" to design fuels incorporating MTBE.

Furthermore, plaintiffs' "failure to warn" and negligence claims are not the functional equivalent of a "design defect" cause of action as defendants contend. Plaintiffs are suing defendants for (1) omitting warnings about a hazardous material they placed into the stream of commerce and (2) negligently failing to safely distribute, store and/or dispose of same. The design of the fuel is completely irrelevant to these issues. Indeed, plaintiffs would have asserted the same causes of action if defendants had commercially distributed a dangerous substance that occurs naturally without any

K:\Medmal\9408\Mtn Vacate CTO.pld.wpd

1

alteration or design, *e.g.*, Clostridium Botulinum (the bacterium responsible for botulism), raw lead, or some hazardous raw material.

Defendants' argument is quickly reduced to the ridiculous since no one would seriously argue that an implied "design defect" claim existed just because plaintiffs asserted "failure to warn" and/or negligence claims against a defendant that dumped raw lead dust or another dangerous natural contaminant into a preschool's water supply and remained silent while the children drank.

Thus, since defendants' conduct would be tortious even if a natural hazardous material was involved, plaintiffs can easily satisfy <u>Blackwell</u>'s "unreasonably dangerous condition or feature"predicate to their "failure to warn" claim without alleging defective design. *See* <u>Blackwell v. Phelps Dodge Corp.</u>, 157 Cal.App.3d 372, 377 (1984); <u>Groll v. Shell Oil Co.</u>, 148 Cal.App.3d 444, 448 (1983). Viewed in this light, defendants' contrary decisional law is neither binding nor persuasive. *See,* e.g., <u>Irving v. Mazda Motor Corp.</u>, 136 F.3d 764, 770 (11th Cir. 1998), cert. Denied, 525 U.S. 1018 (1998); <u>Davis. v. Brunswick Corp.</u>, 854 F.Supp.1574, 1583 (N.D. Ga. 1994); <u>Lewis v. Intermedics Intraocular, Inc.</u>, 56 F.3d 703 (11th Cir. 1995).

Likewise, because plaintiffs' negligence claims do not depend on "proof of a design defect," they do not magically "merge" into a claim strict liability claim for design defect as defendants' argue. *See*, e.g., <u>Lambert v. General Motors</u>, 67 Cal.App.4th 1179, 1185 (1999); <u>Balido v. Improved Mach., Inc.</u>, 29 Cal.App.3d 633, 640 (1972); <u>Merrill v. Navegar, Inc.</u>, 26 Cal. 4th 465 (2001). Thus, <u>Lambert</u>, <u>Balido</u>, and <u>Merrill</u> are readily distinguishable. <u>Id</u>.

Based on the foregoing, it is clear that plaintiffs' "failure to warn" and negligence claims do not equal a cause of action for "design defect."

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

Therefore, since the federal government never directed the defendants to omit adequate warnings or to participate in the negligent storage/disposal of MTBE fuels, Section 1442(a) "federal agent" removal is improper. Federal agent jurisdiction depends on the defendants' ability to honestly claim "the government made me do it." Defendants were never "federally directed" to engage in the tortious conduct alleged in the complaint. Thus, the relevant decisional law precludes removal because defendants' failure to warn and negligent storage/disposal of hazardous materials does not constitute conduct performed under the "direct and detailed control" of the government.

Likewise, Section 1503 is not sufficient to defeat remand because it only confers *discretionary* federal jurisdiction and federal abstention is proper.

### B.    THE DISPARATE FACTS UNDERLYING THIS CASE MILITATE AGAINST PRETRIAL CONSOLIDATION AND/OR COORDINATION IN MDL 1358

This action is *very* different from the other cases pending in MDL 1358. First, this matter does not allege design defects in MTBE fuels, so different procedural and substantive law will apply as explained more fully below. Second, most of the other consolidated cases involve litigation by large water districts. Conversely, this action is brought by a handful of plaintiffs suing in their individual capacities. Consequently, it would be manifestly unjust to embroil these plaintiffs in complex pretrial proceedings between large, sophisticated litigants, which will undoubtedly be onerously complicated, protracted and expensive.

///

///

///

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

## II.

## LEGAL ARGUMENT

A.    **GENERAL OVERVIEW OF THE LEGAL PRINCIPLES SUPPORTING REMAND**

Section 1447(c) of Title 28 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Courts in the Ninth Circuit apply a "'strong presumption' against removal jurisdiction," with the result that "the defendant always has the burden of establishing that removal is proper." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992) (citing Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n. 3 (9th Cir.1990); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.1988)).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Id. (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.1979)).

In the absence of diversity jurisdiction, a case is generally not removable if the complaint does not affirmatively allege a federal claim. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. A case "arises under" federal law when federal law provides for the cause of action (Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986)), or where the vindication of a right turns on some construction of federal law (Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9 (1983)).

"To determine whether a claim arises under federal law, we examine the 'well-pleaded' allegations of the complaint and ignore potential defenses." Beneficial Nat'l Bank, 539 U.S. at 6. The presence of a federal defense does not raise a federal question, even if the "defense is anticipated in the

4

plaintiff's complaint, and even if ... the federal defense is the only question truly at issue." Marcus v.

AT&T Corp., 138 F.3d 46, 53 (2d Cir.1998) (quoting Caterpillar v. Williams, 482 U.S. 386, 392

(1987)).

There are only two exceptions to the well-pleaded complaint rule that might permit removal of

state law actions under circumstances that are not present here. First, a case arises under federal law,

and is thus removable, when a federal statute wholly displaces the state law cause of action through

complete preemption. Beneficial Nat'l Bank, 539 U.S. at 8. Second, a state law case may be removed

where Congress specifically gives federal courts jurisdiction over a particular subject matter. Id.

Judge Scheindlin already rejected complete preemption arguments in the MDL 1358 cases. *See*

Scheindlin's Second Order[1] at 50-51. Moreover, Section 1503 is not sufficient to defeat remand because

it only confers discretionary federal jurisdiction and federal abstention is proper.

**Therefore, as explained below, "federal agent"**jurisdiction does not exist and it would be

improper to exercise jurisdiction under Section 1503 under the abstention doctrine.

**B.      SECTION 1442(a) "FEDERAL AGENT" JURISDICTION DOES NOT EXIST
         BECAUSE PLAINTIFFS DID NOT ALLEGE DESIGN DEFECTS, AND THEIR
         NEGLIGENCE CLAIMS ARE MATERIALLY DIFFERENT FROM THE
         "DEFECTIVE DESIGN" THEORIES ADVANCED IN OTHER MDL 1358
         CASES**

For reasons explained more fully below, Section 1442(a) removal is improper because

jurisdiction on that basis depends on defective design claims that were not alleged.

///

---

[1]  Judge Scheindlin's September 3, 2004 Order attached as Exhibit 4 to defendants' Notice
of Removal (hereinafter "Scheindlin's Second Order").

                                                    **MOTION/BRIEF TO VACATE CONDITIONAL
                                                    TRANSFER ORDER (CTO-23)**

1.   **Plaintiffs' "Failure to Warn" and Negligence Claims Are Not the Functional Equivalent of a "Design Defect" Cause of Action**

Plaintiffs' "failure to warn" and negligence claims are not the functional equivalent of a "design defect" cause of action as defendants contend. Essentially, plaintiffs are suing defendants for (1) omitting warnings about a hazardous material they placed into the stream of commerce and (2) negligently failing to safely distribute, store and/or dispose of same. The design of the fuel is completely irrelevant to these issues. Indeed, plaintiffs would have asserted the same causes of action if defendants had commercially distributed a dangerous substance that occurs naturally without any alteration or design, *e.g.*, Clostridium Botulinum (the bacterium responsible for botulism), raw lead, or some hazardous raw material.

Consequently, "defective design" is not implicated by the following "failure to warn" and negligence allegations cited by defendants[2] because the conduct would be tortious even if natural hazardous materials were involved: (1) marketing a hazardous material despite knowledge of its dangerous character (Machin Complaint, ¶¶ 36, 60, 67, 69); (2) breaching a duty to refrain from engaging in conduct that would injure plaintiffs (Machin Complaint, ¶41); (3) marketing a hazardous material despite knowledge of the high probability of contamination from MTBE fuels (Machin Complaint, ¶43); (4) allowing MTBE fuels to permeate the well water, soil, and air (Machin Complaint, ¶42); and (5) failing to prevent contamination of well water by MTBE fuels (Machin Complaint, ¶43). Clearly, these allegations have nothing to do with design defects. The determinative issue is whether or not the material was dangerous. Plaintiffs do not care how it got that way.

---

[2] *See* Defendants Memorandum of Points and Authorities in Support of Opposition by BP Defendants, Shell Defendants, and Unocal Defendants to Motion For Remand (hereinafter "Opposition"), Page 3.

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

Indeed, defendants' argument is quickly reduced to the ridiculous since no one would seriously argue that an implied "design defect" claim existed just because plaintiffs asserted "failure to warn" and/or negligence claims against a defendant that dumped raw lead dust or another dangerous natural contaminant into a preschool's water supply and remained silent while the children drank.

Thus, since defendants' conduct would be tortious even if natural hazardous materials were involved, plaintiffs can easily satisfy Blackwell's "unreasonably dangerous condition or feature"predicate to their "failure to warn" claim without alleging defective design. *See* Blackwell v. Phelps Dodge Corp., 157 Cal.App.3d 372, 377 (1984); Groll v. Shell Oil Co., 148 Cal.App.3d 444, 448 (1983). When viewed in this light, contrary decisional law is neither binding nor persuasive. *See*, e.g., Irving v. Mazda Motor Corp., 136 F.3d 764, 770 (11th Cir. 1998), cert. Denied, 525 U.S. 1018 (1998); Davis. v. Brunswick Corp., 854 F.Supp.1574, 1583 (N.D. Ga. 1994); Lewis v. Intermedics Intraocular, Inc., 56 F.3d 703 (11th Cir. 1995).

Likewise, since plaintiffs' negligence claims do not depend on "proof of a design defect," they do not magically "merge" into a claim strict liability claim for design defect as defendants' contend. *See*, e.g., Lambert v. General Motors, 67 Cal.App.4th 1179, 1185 (1999); Balido v. Improved Mach., Inc., 29 Cal.App.3d 633, 640 (1972); Merrill v. Navegar, Inc., 26 Cal. 4th 465 (2001). Thus, Lambert, Balido, and Merrill are readily distinguishable. Id.

Based on the foregoing, it is clear that plaintiffs' "failure to warn" and negligence claims do not equal a cause of action for "design defect."

///

///

**MOTION/BRIEF TO VACATE CONDITIONAL**
**TRANSFER ORDER (CTO-23)**

2.    **Section 1442(a) "Federal Agent" Jurisdiction Does Not Exist Without a "Design Defect" Claim**

To remove a case under Section 1442(a), the removing party bears the burden of establishing that (1) it acted under the direction of a federal officer or agency;  (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal direction and the conduct at issue. Jefferson County v. Acker, 527 U.S. 423, 431 (1999).

Defendants' assert that "federal agent" jurisdiction exists under Section 1442(a) because Congress and the EPA directed them to design fuels incorporating MTBE. Defendants' then exhaustively detail the scope of that purported "federal direction." (*See*, e.g. Notice of Removal, ¶¶ 16-41.)

However, although courts have accepted the argument that the federal government effectively directed oil companies to use MTBE in their fuel designs, defendants' long dissertation is ***completely irrelevant*** to this action since plaintiffs have not alleged design defects and the federal government never required defendants to violate California state laws mandating adequate warnings and reasonable safeguards to ensure the safe storage/disposal of dangerous MTBE fuels.

Significantly, defendants' ***sixteen-(16) page*** discussion regarding the relevant legislative and administrative "direction" does not contain a scintilla of evidence that the federal government ever directed defendants to violate California state laws requiring adequate MTBE warnings and reasonable precautions to ensure the safe storage/disposal of dangerous MTBE fuels.

 Thus, "federal agent" jurisdiction cannot be established because the requisite "federal direction" does not exist when the governing legislation and administrative rules are completely silent on the issue of providing MTBE warnings and ensuring for its safe storage and disposal.

K:\Medmal\9408\Mtn Vacate CTO.pld.wpd

8

**MOTION/BRIEF TO VACATE CONDITIONAL TRANSFER ORDER (CTO-23)**

a.   ***Arness*** **and** ***Freiberg*** **Are Persuasive Precedent Because They Explain Why "Federal Agent" Jurisdiction Does Not Apply To Cases Like Ours Where The Government Did Not Exercise "Direct and Detailed" Control Over the Defendants' Omission of Reasonable Warnings and Negligent Storage/Disposal of Hazardous Materials.**

"Government Contractor Defense" cases are highly analogous and persuasive because they share defendants' underlying premise that "the government made me do it" and convincingly explain why that argument fails when the government did not exercise "direct and detailed" control over the defendants' omission of reasonable warnings and negligent storage/disposal of hazardous materials.

For example, <u>Arness</u> held that "federal agent" jurisdiction does not exist when the victims are harmed by a defendant's "failure to warn," negligent storage/disposal of hazardous materials, and other tortious conduct that is "not performed under the direct and detailed control of a government officer." <u>Arness v. Boeing North American, Inc.</u>, 997 F. Supp. 1268, 1273 (C.D. Cal. 1998). In <u>Arness</u>,

> Plaintiffs allege[d] that in the process of "testing, developing and researching rocket engines," the Defendants negligently allowed TCE and other toxic substances to enter the soil and groundwater. [citations] . . . Specifically, Plaintiffs allege[d] that the contamination occurred through Defendants' (1) storage of solvents, including TCE;  (2) use of TCE and other solvents to flush rocket engine hardware;  (3) disposal of toxic solvents "through recycling, inadvertent dumping and intentional dumping;"  (4) use of unlined and lined "surface impoundment and onsite creeks ... to dispose of solvents;" (5) dumping of "solvents through the connections of solvent drains into old septic systems, causing leakage from surface impoundments and piping and leakage from solvent storage barrels;  and (6) "[i]ntentionally dumping volatile organic compounds and industrial solvents." [citations] . . .
>
> [Defendant] assert[ed] that it performed its rocket engine contracts at "the direction of federal officers pursuant to detailed and comprehensive procedures dictated by [said] officers." [citations] . . . Specifically, one of [defendant's] test engineers, . . ., declare[d] that "[t]he Department of Defense and NASA imposed the use of TCE as a contractual requirement in the manufacturing and test operations" of rocket engines. [citations] . .

**MOTION/BRIEF TO VACATE CONDITIONAL**
**TRANSFER ORDER (CTO-23)**

. The TCE was used to "flush" the rocket engines to "eliminate the potential for fire or explosion upon subsequent hot fire test or missile launch." [citations] . . . [and] that "designees and agents of the Administrator of NASA, the Secretary of the Air Force and the Secretary of Defense were present to oversee ... and ... had the authority to stop" the TCE flushing operations. [citations] . . .

Id. at 1270.

The Arness defendants sought removal on the grounds of "federal agent" jurisdiction because they claimed the government directed and oversaw defendant's use of TCE. However, the court rejected those arguments since the defendant must show that the government directed the actions on which the plaintiffs based their claims. Id. at 1275.

The court explained that a defendant cannot

> establish that it was "acting under" a federal officer, [unless it can] . . . show a causal nexus between the conduct charged . . . and the acts [it supposedly] performed . . . at the direction of official federal authority. Willingham v. Morgan, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969).  Most courts have held that the **federal officer must have " 'direct and detailed control' over the defendant."** Fung, 816 F.Supp. at 572;  see also Ryan, 781 F.Supp. at 947. "This control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " Fung, 816 F.Supp. at 572. (quoting Gulati v. Zuckerman, 723 F.Supp. 353 (E.D.Pa.1989)).  However, **"if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal."** Good, 914 F.Supp. at 1128 (citing Fung, 816 F.Supp. at 569;  Ryan, 781 F.Supp. at 947).

Id. at 1273 (emphasis added).

The court held that defendant's negligent disposal and storage of TCE "was not performed under the direct and detailed control of a government officer" because, even though defendants were "federally directed" to use TCE, and federal agencies oversaw the TCE flushing operations, the

10

**MOTION/BRIEF TO VACATE CONDITIONAL TRANSFER ORDER (CTO-23)**

defendants still remained completely free (and obligated) to take reasonable precautions to ensure for its safe storage/disposal. Ultimately, the action was remanded because the federal court lacked subject matter jurisdiction.

Likewise, in <u>Freiberg v. Swinerton & Walberg Property Services, Inc.</u>, 245 F. Supp. 2d 1144 (D. Colo. 2002), the court denied "federal agent" jurisdiction absent a showing that a federal agency's direction and control actually interfered with defendants' ability to fulfill state-law obligations to warn employees of asbestos-related safety hazards and to avoid negligently causing asbestos exposures on the job. Therefore, the defendants were not entitled to "federal agent" removal because they failed to demonstrate the requisite nexus between their construction/safety practices and the governmental direction and control.

        **b.**        **Other Analogous "Government Contractor Defense" Cases Show That No Federal Agency Exercised "Direct and Detailed" Control Over the Defendants' Tortious Conduct to the Extent Required to Establish Section 1442(a) Jurisdiction Under *Arness* and *Freiberg* Analysis**     .

Analogous decisional law concerning the "government contractor defense" should be used to analyze defendants' "federal agent" jurisdiction arguments because **both rules are based on the common rationale that "the federal government made me do it"** and share other similar policy

///

///

///

**MOTION/BRIEF TO VACATE CONDITIONAL TRANSFER ORDER (CTO-23)**

concerns (e.g., that state courts should not second guess federal government determinations made after balancing countervailing interests).[3]

Importantly, the "government contractor defense" only displaces ordinary tort liability when "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law....' " Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988).   In short, the "government contractor defense" only applies when the defendant clearly shows that the federal government really did make defendants do it. The same rule should apply here.

Thus, state law liability for design defects in military equipment can only be avoided if (1) the United States approved reasonably precise specifications;  (2) the equipment conformed to those specifications;  and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512.

Accordingly, federal courts have consistently rejected the "government contractor defense" when there is no evidence that federal direction actually conflicted with a duty under state law. See, e.g., Butler v. Ingalls Shipbuilding, Inc., 89 F3d 582, 586 (9th Cir. 1996)(government contractor defense is precluded absent evidence of a conflict between federal contract and the state law duty to warn); In re Hawaii Federal Asbestos Cases, 960 F2d 806, 812-814 (9th Cir. 1992);  In re Joint Eastern & Southern Dist. New York Asbestos Litig., 897 F2d 626, 629 (2nd Cir. 1990).

---

[3] The "government contractor defense" is justified on the grounds that the federal government's selection of the appropriate design for military equipment is a discretionary function that often involves both engineering analysis and judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness, which should not be second guessed in state tort suits since federal tort immunity for those decisions would be effectively destroyed when the contractors increased prices to pass the financial burden of such judgments through to the United States government. Id. at 511-512.

K:\Medmal\9408\Mtn Vacate CTO.pld.wpd

12

Thus, in <u>Butler v. Ingalls Shipbuilding, Inc.</u>, 89 F3d 582, 586 (9th Cir. 1996), the court held that

> [although] the government contractor's defense may be used to trump a
> design defect claim by proving that the government, not the contractor, is
> responsible for the defective design, that defense is **inapplicable to a**
> **failure to warn claim in the absence of evidence that in making its**
> **decision whether to provide a . . . suitable warning, [the defendant]**
> **was "acting in compliance with 'reasonably precise specifications'**
> **imposed on [it] by the United States."** [citations] . . . In a
> failure-to-warn action, where no conflict exists between requirements
> imposed under a federal contract and a state law duty to warn, regardless
> of any conflict which may exist between the contract and state law design
> requirements, <u>Boyle</u> commands that we defer to the operation of state
> law.

Similarly, <u>In re Hawaii Federal Asbestos Cases</u>, 960 F2d 806, 812-814 (9th Cir. 1992), held that

the "government contractor defense" is not a shield when there is "no conflict between [defendants']

state law duty to provide adequate warnings to the users [of defective products] and the conditions

imposed on them pursuant to the agreements they had entered into with the Government." The court

reasoned that the "military contractor defense would, . . . , be **no defense at all" to a failure to warn**

**theory of liability** since the government never "prohibited [defendants] from placing warnings on their

[dangerous] products" and they "could have provided detailed and prominent statements regarding the

dangers of [such products] without violating the terms of their procurement contracts or their product

specifications." <u>Id.</u> (emphasis added

The court further opined that

> a crucial element of the military contractor defense as defined in <u>Boyle</u>
> [*supra*] is missing. [Defendants] have simply failed to allege, let alone
> establish, that in making their decisions regarding warnings they were
> acting in compliance with "reasonably precise specifications" imposed on
> them by the United States. <u>Boyle</u>, 487 U.S. at 512. . . . [Essentially,] 'the

**MOTION/BRIEF TO VACATE CONDITIONAL**
**TRANSFER ORDER (CTO-23)**

military contractor's defense under <u>Boyle</u> is to claim, "The Government
made me do it." <u>Boyle</u> displaces state law only when the Government,
making a discretionary, safety-related military procurement decision
contrary to the requirements of state law, incorporates this decision into a
military contractor's contractual obligations, thereby limiting the
contractor's ability to accommodate safety in a different fashion.' Here,
**the Government did not require [defendants] to do anything with
respect to the placement of warnings on their products.   Nothing in
<u>Boyle</u> suggests preemption of a state law duty to warn under such
circumstances. . . .** Plaintiffs in a sense have complicated their case.
**Had they proceeded to trial only on a failure to warn theory of
liability, the military contractor defense would, as indicated, be *no
defense at all.***

<u>Id</u>. (emphasis added).

Based on the foregoing case law, it is abundantly clear that defendants cannot avoid liability for

failure to warn and negligent disposal/storage of MTBE by asserting "the government made me do it"

because no federal entity ever directed defendants' conduct in that regard.

"Federal agent" jurisdiction does not magically materialize just because the defendants cry "the

government made me do it." "[T]he burden falls squarely upon the removing party to establish its right

to a federal forum by 'competent proof.'" <u>R.G. Barry Corp. v. Mushroom Makers, Inc.</u>, 612 F.2d

651,655 (2d Cir. 1979)(quoting <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189

(1936)). Thus, defendants' "federal agent" jurisdiction arguments fail abysmally because there is

absolutely nothing in defendants' sixteen (16) page "federal direction" dissertation that even hints that

the federal government ever required them to omit adequate warnings or engage in the negligent

storage/disposal of MTBE products.

Moreover, the "colorable federal defense" prerequisite for "federal agent" jurisdiction

evaporates when there is no allegation of design defect. Defendants' mistakenly base their right to

14

removal upon Judge Scheindlin's determination that preemption constitutes a "colorable federal

defense." *See*, Scheindlin's First Order[4] at p. 25; *see also*, In Re MTBE Product Liability Litigation, 364

F.Supp. 2d 329, 336-37 (S.D.N.Y. Nov. 3, 2004). However, careful analysis reveals that Judge

Scheindlin's conclusions only apply to actions based on design defect. As Judge Scheindlin stated:

> Defendants assert two preemption defenses: express preemption and
> conflict preemption. First, defendants contend that state law claims
> seeking to penalize defendants for using MTBE [in their fuel *design*]
> interfere with federal controls on fuel and fuel additives as set forth in the
> CAA. [citations] Second, they argue that it would have been impossible
> for them to adhere to federal law and to state controls banning MTBE [in
> their fuel *design*] because MTBE was the only approved oxygenate
> available in quantities necessary to meet the CAA's requirements.
> [citations]   If defendants' assertions are true, plaintiffs' state law claims
> would present an obstacle to the enforcement of federal law. Thus, it is
> appropriate to permit defendants to remove these actions to federal court.

In Re MTBE Product Liability Litigation, 364 F.Supp. 2d 329, 336 (S.D.N.Y. Nov. 3, 2004).

However, these bases for preemption do not exist here because there is absolutely no conflict

between the relevant federal and state laws. Plaintiffs' state law claims for failure to warn and negligent

storage/disposal ***do not*** "present an obstacle to the enforcement of federal law" because plaintiffs are

not "seeking to penalize defendants for using MTBE" in their fuel design but rather to impose liability

for failing to provide reasonable warnings and to ensure the safe storage/disposal of MTBE products in

accordance with California state law. Likewise, since there is absolutely no federal direction limiting

defendants' ability to comply with state law in this regard, it was not "impossible for [defendants] to

///

---

[4] Judge Scheindlin's March 16, 2004 Order attached as Exhibit 3 to defendants' Notice of Removal (hereinafter "Scheindlin's First Order").

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

adhere to federal law and to state controls." In short, the rationale underlying all of Judge Scheindlin's decisions regarding the propriety of "federal agent" jurisdiction over MTBE cases is inapplicable.

Consequently, no "colorable federal defense" exists in this action since (1) there is no evidence that "federal direction" conflicted with a state duty to warn (Butler v. Ingalls Shipbuilding, Inc., 89 F3d 582, 586 (9th Cir. 1996)) and (2) defendants' negligent disposal/ storage of MTBE products was not performed under the "direct and detailed control of a government officer" (Arness v. Boeing North American, Inc., 997 F. Supp. 1268 (C.D. Cal. 1998)).

And, of course, absent "federal direction," the requisite "causal nexus" cannot be shown since the federal government never limited defendants' state law duties to warn the public about MTBE dangers and to take reasonable measures to make sure that dangerous MTBE products were stored/disposed of in a safe manner.  Therefore, based on the foregoing legal principles, federal jurisdiction, including "federal agent" jurisdiction, does not exist here and this case must be remanded to the state court.

## C.   SECTION 1503 REMOVAL IS IMPROPER UNDER THE ABSTENTION DOCTRINE

Federal courts should abstain from asserting jurisdiction over cases raising unsettled issues of state law where the decision by the district court would affect sovereign powers of the state (Louisiana Power & Light Co. v. City of Thibodaux, 360 US 25, 28 (1959)), and in other cases where it is necessary "to soften the tensions" inherent in a dual state-federal system of justice (Pennzoil Co. v. Texaco, Inc., 481 US 1, 11-12, fn. 9 (1987)).

For instance, it has long been held that abstention is proper in cases involving complex questions of state law administered by state administrative agencies, which are subject to timely and

16

MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)

adequate state court review, when federal adjudication could potentially undermine the state's administrative process and disrupt the state's efforts to establish a coherent, uniform policy with respect to the matter at issue. *See*, e.g., <u>Burford v. Sun Oil Co.</u> (1943) 319 US 315, 334; *see also* <u>New Orleans Pub. Service, Inc. v. City Council of New Orleans</u> (1989) 491 US 350, 362. It is well established that federal courts should "decline to rule on an essentially local issue arising out of a complicated state regulatory scheme." <u>United States v. Morros</u>, 268 F3d 695, 705 (9th Cir. 2001).

Consequently, the federal court should abstain from exercising jurisdiction whenever the suit involves local issues concentrated by state law in a particular court or administrative agency; the federal issues cannot be separated easily from complex state law issues with respect to which state courts have special competence; and federal review might disrupt state efforts to establish a coherent policy. <u>Id</u>. at 705.

Deference to California state courts is appropriate here because they retain concurrent jurisdiction. The United States Supreme Court has long upheld the "axiom that, under our federal system, the States possess sovereignty concurrent with that of then Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [it has] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." <u>Tafflin v. Levitt</u>, 493 U.S. 455, 458-459 (1990). "'[I]f exclusive jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it.'" <u>Id</u>.

State courts may only be "divested of jurisdiction . . . 'by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

jurisdiction and federal interests.'" Id. at 460, citing Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478. A permissive federal jurisdictional grant is not sufficient to oust state courts of concurrent jurisdiction. Id. at 460-461. Thus, concurrent jurisdiction is not defeated just because a statute states that an action "'may' be brought in the federal district courts, not that they must be. [citations] Indeed, [i]t is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." Id. (internal quotations omitted).

Ultimately, Tafflin held that abstention was appropriate in light of the state's concurrent jurisdiction.

Under the circumstances, this Court should abstain from asserting federal jurisdiction because the defendants' violations of California environmental laws involve local issues concentrated by state law in a particular court or administrative agency; the federal issues cannot be separated easily from complex state law issues with respect to which state courts have special competence; and federal review might disrupt state efforts to establish a coherent policy regarding MTBE contamination. See, e.g., Morros, supra, at 705.

**Forum Non Conveniens considerations also favor abstention** since it would be patently ridiculous to force plaintiffs with meager financial resources to litigate this action in New York -- approximately 3,000 miles away from the situs of the relevant facts, evidence and witnesses.

For these reasons, this court should abstain from asserting jurisdiction under Section 1503 and remand this action to the California courts.

///

///

**MOTION/BRIEF TO VACATE CONDITIONAL
TRANSFER ORDER (CTO-23)**

**D.     THE DISPARATE FACTS UNDERLYING THIS CASE MILITATE AGAINST PRETRIAL CONSOLIDATION AND/OR COORDINATION IN MDL 1358**

Civil actions pending in different districts and involving one or more common questions of fact, may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers are made by the Judicial Panel on Multi-district Litigation ('JPMDL'). 28 USC § 1407(a).

The purpose is to effect judicial economy and to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district courts. Weigel, The Judicial Panel on Multidistrict Litigation (1978) 78 FRD 575.

However, our legal system is founded on the premise that the interest of judicial economy must always be subservient to the interest of justice. Indeed, what is the point of having courts if justice is denied?

Moreover, neither of these interests will be served by consolidation and coordination because this action is *very* different from the other cases pending in MDL 1358. First, this matter does not allege design defects in MTBE fuels, so different procedural and substantive law will apply as explained more fully below. Second, most of the other consolidated cases involve litigation by large water districts. Conversely, this action is brought by a handful of plaintiffs suing in their individual capacities.

Consequently, it would be manifestly unjust to embroil these plaintiffs in complex pretrial proceedings between large, sophisticated litigants, which will undoubtedly be onerously complicated, protracted and expensive. Again, the interest of justice must predominate.

Furthermore, judicial economy will not be served by consolidation/coordination because the factual dissimilarity of this case will force the transferee court to make special accommodations, e.g., consider special arguments that only apply to this action, grant special discovery orders and other

pretrial relief, etc. Thus, since the transferee court will have to   everything twice anyway, consolidation/coordination will not really improve judicial economy.

**Forum Non Conveniens considerations also preclude transfer to MDL 1358** since it would be patently ridiculous to force plaintiffs with meager financial resources to litigate this action in New York – approximately 3,000 miles away from the situs of the relevant facts, evidence and witnesses.

## CONCLUSION

Based on the foregoing, this Court must not transfer this action to MDL 1358 because it would seriously prejudice plaintiffs. This action involves a struggle between a handful of injured plaintiffs and corporate Goliaths. Transfer to MDL 1358 would kill their plaintiffs' hopes of obtaining justice for the injuries suffered at defendants' hands.

Dated: _July 26, 2006_

BRAYTON❖PURCELL LLP

By: _____
    Clayton W. Kent, Esq. (SBN 123164)
    Attorneys for Plaintiffs

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 Rush Landing Road
Novato, California 94945
(415) 898-1555
(415) 898-1247 (fax)
ckent@braytonlaw.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 1 2006

FILED
CLERK'S OFFICE

**PROOF OF SERVICE**

State of California   )
                 )
County of Marin     )

Short Title:    Machin, et al., v. Taylor Investments, et al.,
Case No.:     U.S.D.C. Case No.  C06-03243 CW

     I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is 222 Rush Landing Road, Novato, California, 94948.

     On July 31, 2006, I served the within document(s):

**MOTION/BRIEF TO VACATE CONDITIONAL TRANSFER ORDER (CTO-23)**

     [XX ]   (By Mail) By causing each such envelope to be served by depositing same, with postage thereon fully prepaid, with the United States Postal Service in the ordinary course of business at Novato, California.  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.

**SEE ATTACHED SERVICE LIST**

     I declare under penalty of perjury that the foregoing is true and correct and I am employed in the office of a member of the bar of this court at whose direction the service was made . This declaration was executed on July 28, 2006, California.

CLAYTON W. KENT
BRAYTON PURCELL LLP

K:\Medmal\9408\proofofservice.fmo.pld.wpd

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 1 2006

FILED
CLERK'S OFFICE

**SERVICE LIST**

| | |
|---|---|
| Michael T. Zarro, Esq.<br>Morgan, Lewis & Bockius, LLP<br>300 South Grand Avenue, 22nd Floor<br>Los Angeles, CA 90071 | Attorneys for<br>Union Oil Company of California, Union Oil<br>Development Corporation, Unocal<br>Corporation, Unocal Supply Company,<br>Unocal Foundation, Unocal Intl. Supply &<br>Trading Co., Unocal Land & Development<br>Company, Unocal Limited and Unocal<br>Pipeline Company |
| Hojoon Hwang, Esq.<br>Blanca Young, Esq.<br>Munger, Tolles, & Olson, LLP<br>560 Mission Street, 27th Floor<br>San Francisco, CA 94105-2907 | Attorneys for<br>Shell Oil Company, Shell Oil Company<br>Foundation and Shell Oil Products Company,<br>LLC |
| Carl B. Shapiro, Esq.<br>Shapiro & Shapiro<br>404 San Anselmo Avenue<br>San Anselmo, CA 94960 | Attorneys for<br>Ahamad Avash, Ali Salkhi and A& Agas |
| John W. Elliot<br>Elliot & Elliot<br>225 W. Santa Clara Street<br>Suite 950<br>San Jose, CA 95113 | |
| Robert J. Gordon<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane<br>17h Floor<br>New York, NY 10038-4925 | |
| Robin Greenwald<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane<br>40h Floor<br>New York, NY 10038 | |
| Matthew T. Heartney<br>Arnold & Porter, LLP<br>777 South Figueroa Street<br>44th Floor<br>Los Angeles, CA 90017-5844 | |
| Patricia A. Madrid<br>NM Attorney General's Office<br>P.O. Drawer 1508<br>Santa Fe, NM 87504-1508 | |
| Peter J. Sacripanti<br>Mc Dermott, Will & Emery<br>50 Rockefeller Plaza<br>New York, NY 10020 | |

K:\Medmal\9408\proofofservice.fmo.pld.wpd

| | |
|---|---|
| Victor M.  Sher<br>Sher & Leff, LLP<br>450 Mission Street<br>Suite 400<br>San Francisco, CA 94105 | |
| Glenn R.  Smith<br>NM Attorney General's Office<br>111 Lonas, N.W.<br>#300<br>Albuquerque, NM 87102 | |
| Scott Summy<br>Baron & Budd<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219-4281 | |

K:\Medmal\9408\proofofservice.fmo.pld.wpd

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

# Brayton❖Purcell LLP

AUG - 1 2006

FILED
CLERK'S OFFICE

### TRIAL LAWYERS

ALAN R. BRAYTON
GILBERT L. PURCELL

───────

DAVID R. DONADIO
CHRISTOPHER E. ANDREAS
LLOYD F. LEROY

OF COUNSEL
JEFFREY D. EISENBERG∗

∗ ADMITTED ONLY IN STATES
OTHER THAN CALIFORNIA

222 Rush Landing Road
P O Box 6169
Novato, California 94948-6169
Telephone: (415) 898-1555
Facsimile: (415) 898-1247

Portland: (503) 295-4931
Los Angeles: (415) 898-1555
Salt Lake City: (801) 366-9100

Email: mail@braytonlaw.com
www.braytonlaw.com

NICHOLAS ALOIA
JARED J. BABULA
LEAH T. HAGERTON
DAVID H. BACKENSTOE
BRYAN S. RORDON
GARY L. BRAYTON
COURTNEY G. HIRDADEN∗
ANDREW CHEW
BEVERLY J. CHU
DAVID COLLINS
HUGH C. COOK
MICHELE L. DE ROUEN
DOUGLAS W. DUKELOW
PETER B. FREDMAN
CHRISTINA D. FRENCH
JOHN B. GOLDSTEIN
LAUREL HALLORAN
CECILIA HAN
ZACHARY B. HIRSCHENSOHN∗
CRYSTAL G. HOWARD
SARAH K. ISAACS
GARY V. JUDD
CLAYTON W. KENT
KERRY LAW

MATTHEW D. LEE
CARRIE LIN
JACQUELINE K. LOVELESS
A. RUSSELL MARTIN
REBECCA D. MARTINO
LORENA MATEI
MAURLEN C. MCGAWAN
S. BROOK MILLARD∗
TONNY MIRZAYAN
JAMES P. NEVIN
SCOTT A. NIERLING∗
OREN P. NOAH
JAMES A. SHADDUCK∗
CHRISTINA C. SKUBIC
ERIC C. SOLOMON
ROBYN L. STEIN
NANCY H. THORINGTON
PAUL A. WALLANCOURT
GRANT B. WALTERS
JEREMIE J. WATTELLIER
KIMBERLY A. WILLIAMS
NANCY T. WILLIAMS
STEVEN W. YUEN

July 31, 2006

<u>**VIA FACSIMILE ONLY**</u>
**(202) 502-2888**

Jeffery N. Luthi
**Clerk of the Panel**
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 200002

┌─────────────────────────────────────────┐
│ Request of pltfs. in Machin, et al., CAN 4:06-3243 │
│ for Extension of Time to File Motion/Brief to │
│ Vacate CTO -- GRANTED │
│                              (cdm - 8/1/06) │
└─────────────────────────────────────────┘

Re:   Short Title:   <u>Machin, et al., v. Taylor Investments, et al.,</u>
      Case No.:      <u>U.S.D.C. Case No. C06-03243 CW</u>

Dear Clerk:

Per the courts request, this letter will serve as a formal request that plaintiffs in the above-entitled action be allowed to file our **MOTION/BRIEF TO VACATE CTO-23** one day late. Apparently, our original of such brief did not arrive in time via mail, and we are overnighting the same to your office today, July 31, 2006. I have previously discussed this situation with Ms. Denise Morgan, should you have any further questions or concerns.

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Clayton W. Kent

CWK:fmo