**MDL 1358**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 25 2007

FILED
CLERK'S OFFICE

PLEADING NO. 245

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re Methyl Tertiary Butyl Ether ("MTBE")      **MDL Docket No. 1358**
Products Liability Litigation

| | |
|---|---|
| CRESCENTA VALLEY WATER DISTRICT, ) | United States District Court, |
| ) | Central District of California, |
| Plaintiff, ) | C.A. No. 2:07-2630 |
| ) | (Judge Dean D. Pregerson) |
| v. ) | |
| ) | |
| EXXON MOBIL CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION TO VACATE**

**CONDITIONAL TRANSFER ORDER**

RECEIVED
CLERK'S OFFICE
2007 JUN 25 A 11:00

**OFFICIAL FILE COPY**

IMAGED JUN 2 7 2007

## **Table of Contents**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Atlantic Richfield's "Acting Under" Removal Theory Has Been Rejected by the Second Circuit and the Supreme Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  Atlantic Richfield's "Preemption" and "Federal Question" Removal Theory Has Been Rejected by the Second Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  Atlantic Richfield's "Bankruptcy" Removal Theory Is Without Merit. . . . . . . . . . . . . . 7

    A.  A 1988 Bankruptcy Order Involving Texaco Does Not Create a Basis for Removal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.  Atlantic Richfield's "Bankruptcy" Removal Theory Has Been Rejected by the Second Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  The Energy Policy Act of 2005 Requires Unanimity of Consent for Removal. . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

**Table of Authorities**

<u>Cases</u>

<u>Alban v. Exxon Mobil Corp.</u>,
No. MJG-06-3098 (D. Md. Dec. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

<u>Chow v. City of Santa Barbara</u>,
217 Cal. 673 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Garland & Lachance Const. Co., Inc. v. City of Keene by Planning Bd.</u>,
144 B.R. 586 (D.N.H. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Asbestos & Asbestos Insulation Material Prods. Liability Litigation</u>,
431 F.Supp. 906 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>In re Branded Products, Inc.</u>,
154 B.R. 936 (Bankr. W.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Casal</u>,
998 F.2d 28 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>In re Fietz</u>,
852 F.2d 455 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>In re G.S.F. Corp.</u>,
938 F.2d 1467 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>In re "Light Beer" Trademark Litigation</u>,
437 F.Supp. 754 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>In re McGhan</u>,
288 F.3d 1172 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig. ("MTBE V")</u>,
341 F.Supp.2d 386 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.</u>,
457 F.Supp.2d 324 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>In re Middlesex Power Equipment & Marine, Inc.</u>,
292 F.3d 61 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Republic Reader's Service, Inc.,
  81 B.R. 422 (Bankr. S.D. Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Southmark Corp.,
  163 F.3d 925 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Joslin v. Marin Mun. Water Dist.,
  67 Cal.2d 132 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Niles Sand & Gravel Co. v. Alameda County Water Dist.,
  37 Cal.App.3d 924 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Oxygenated Fuels Ass'n v. Davis,
  331 F.3d 665 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Oxygenated Fuels Ass'n v. Pataki,
  158 F.Supp.2d 248 (N.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People of the State of California v. Atlantic Richfield Co.,
  No. 04-5974-cv, ___ F.3d ___, 2007 WL 1500338 (2d Cir. May 24, 2007),
  petition for reh'g and petition for reh'g en banc filed (June 7, 2007) . . . . . 2-7, 10, 11, 13

Russell Corp. v. American Home Assur. Co.,
  264 F.3d 1040 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Watson v. Philip Morris Companies,
  ___ U.S. ___, 127 S.Ct. 2301 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

Williams v. Shell Oil Co.,
  169 B.R. 684 (S.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

Willingham v. Morgan,
  395 U.S. 402 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Constitutions**

California Constitution, article X, section 2 (former art. XIV, § 3) . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

7 U.S.C. § 136a (2000 ed. and Supp. IV)
  Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. § 101(27) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

28 U.S.C. § 1334(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-9

28 U.S.C. § 1334(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

28 U.S.C. § 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

28 U.S.C. § 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

28 U.S.C. § 1452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

42 U.S.C. §§ 7401-7671q
          Clean Air Act (CAA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 7

42 U.S.C. § 7545 Note,
          Pub. L. 109-58, § 1503
          Energy Policy Act of 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

California Water Code, § 31080 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Water Code, § 31081 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Water Code, § 31082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Court Rules**

Panel Rule 7.4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Panel Rule 7.4(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### Introduction

On June 11, 2007, pursuant to Rule 7.4(c) of the Panel's Rules, plaintiff Crescenta Valley Water District ("Crescenta Valley" or "District") filed a Notice of Opposition to the proposed transfer of this case.[1]  Pursuant to Rule 7.4(d) of the Panel's Rules, plaintiff now moves to vacate the Conditional Transfer Order entered on May 24, 2007.

The Conditional Transfer Order should be vacated because there is no federal jurisdiction in the case, and defendants Atlantic Richfield Company, et al.'s (Atlantic Richfield's) removal to federal court was improper.  Plaintiff respectfully requests that the Panel deny defendants' requested transfer into MDL 1358, to allow Judge Pregerson to determine whether the action should be remanded.

This is a tort case based on state common law causes of action for (1) strict liability, (2) negligence, (3) trespass, (4) nuisance, and (5) declaratory relief, arising from MTBE contamination of Crescenta Valley's water system.  See Notice of Removal, Ex. 1 (plaintiff's state court Complaint).

Atlantic Richfield's removal is without substantive merit.  Atlantic Richfield claimed four bases for removal:  First, that plaintiff's claims are "preempted" by the Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671q, therefore invoking 28 U.S.C. § 1441 (the "federal question" removal statute).  Notice of Removal at 3, ¶ 3.  Second, that defendants were acting under federal

---

[1] On May 9, 2007, District Judge Dean D. Pregerson approved a Stipulation and Order to Stay Proceedings Pending Transfer and Consolidation by Judicial Panel on Multidistrict Litigation (attached hereto as Ex. 1).  Thus, plaintiff is not requesting a stay from the Panel. When plaintiff approved the Stipulation on April 27, 2007, plaintiff did not object to the transfer of this action to MDL 1358, however, intervening case law has rejected defendants' bases for removal.  Further, the Stipulation expressly reserved plaintiff's "right to challenge federal jurisdiction and/or seek remand at a later date."  Ex. 1, at 3:9-11.

direction, therefore invoking 28 U.S.C. § 1442(a)(1) (the "federal officer" removal statute).

Notice of Removal at 3, ¶ 4. Third, that the Energy Policy Act of 2005 (42 U.S.C. § 7545 Note,

Pub. L. 109-58, § 1503) permits removal of claims related to actions involving MTBE

contamination. Notice of Removal at 3-4, ¶ 5. Fourth, that removal is "appropriate because

Texaco Inc., predecessor in interest to Defendant ChevronTexaco Corporation, filed a voluntary

petition under Chapter 11 of the Bankruptcy Code," therefore invoking 28 U.S.C. § 1334(b) (the

"bankruptcy" removal statute). Notice of Removal at 4, ¶ 6.

There are several fundamental problems with Atlantic Richfield's arguments, notably that

Atlantic Richfield's first, second, and fourth reasons were rejected by the Second Circuit on May

24, 2007, in an appeal from MDL 1358, People of the State of California v. Atlantic Richfield

Co., No. 04-5974-cv, ___ F.3d ___, 2007 WL 1500338 (2d Cir. May 24, 2007), petition for reh'g

and petition for reh'g en banc filed (June 7, 2007). Atlantic Richfield's "federal officer"

argument was also rejected by the Supreme Court on June 11, 2007, in Watson v. Philip Morris

Companies, ___ U.S. ___, 127 S.Ct. 2301 (2007).

Atlantic Richfield's third reason, the Energy Policy Act of 2005, requires the consent of

all defendants for removal. Alban v. Exxon Mobil Corp., No. MJG-06-3098 (D. Md. Dec. 27,

2006) (slip op. attached hereto as Ex. 2). Following the decisions in People of the State of

California v. Atlantic Richfield Co. and Watson v. Philip Morris Companies, several defendants

advised the MDL 1358 court and the Second Circuit that they conceded the complete absence of

federal officer jurisdiction and the potential absence of bankruptcy jurisdiction. See June 5,

2007, letter from Peter John Sacripanti to Hon. Shira A. Scheindlin (attached hereto as Ex. 3,

without its exhibit); June 12, 2007, letter from Nathan P. Eimer to the Second Circuit (attached

hereto as Ex. 4). Accordingly, it is likely that some defendants may now object to removal, so the propriety of federal jurisdiction should be addressed by Judge Pregerson instead of having this action transferred into the MDL.

The Panel should vacate its Conditional Transfer Order, and reject Atlantic Richfield's groundless attempt to have this state law case transferred into MDL 1358.

## I.    Atlantic Richfield's "Acting Under" Removal Theory Has Been Rejected by the Second Circuit and the Supreme Court.

Atlantic Richfield's first cited basis for federal jurisdiction in this case is 28 U.S.C. § 1442(a)(1), the "federal officer" removal statute. Notice of Removal at 3, ¶ 3. The statute provides for removal of state actions against "the United States or any agency thereof or an officer (or any person acting under that officer) of the United States or of any agency thereof . . . ." Atlantic Richfield argues that, although it is not an "officer of the United States," the oxygenate provisions of the Clean Air Act (42 U.S.C. §§ 7401-7671q) (CAA) "directed" Atlantic Richfield to put MTBE in its gasoline, and this "directive" triggered the "acting under" provisions of § 1442(a)(1):

> Congress also knew, when it enacted these oxygenate mandates, that the industry would have to blend MTBE into at least some of the gasoline sold in OFP and RFG areas in order to comply with the program requirements.

Notice of Removal at 9, ¶ 27. The Notice of Removal also alleges that the EPA "knew there was not a sufficient capacity of ethanol, on a nationwide basis, nor sufficient infrastructure for ethanol, to comply with the regulation." Notice of Removal at 13, ¶ 43.

These allegations supporting removal are identical to the allegations in the Notices of Removal at issue before the Second Circuit in People of the State of California v. Atlantic

3

Richfield Co., supra, at *13. The Court rejected these allegations as insufficient to support

federal officer removal:

> While the legislation that emerged from the House-Senate Conference suggests
> that the large oil companies ultimately obtained the result they allegedly sought,
> namely, the reduction of the oxygenation requirement to 2.7 percent, this proves
> little more than that they achieved the goal of ensuring that MTBE would be used
> widely as an oxygenate. It does not establish, however, that the defendants were
> required to use MTBE or that, if MTBE were not used, ethanol producers would
> have been unable to meet the expected demand in the few years before the fuel-
> oxygenation requirements took effect.

Id. at *16. The Court concluded:

> Against this backdrop, the other allegations in the Notices of Removal are
> similarly unavailing. Even if the Notices of Removal were sufficient to establish
> that Congress and the EPA may have expected that the defendants would use
> MTBE, they leave unstated the reason for that expectation. Of course, constraints
> on the supply of other oxygenates constitute one plausible explanation, but it is
> also possible that Congress and the EPA based their expectation on price
> differences among the oxygenates or the fact that the major oil companies also
> controlled the natural gas from which MTBE is derived. That it may have been
> more convenient or less expensive for the defendants to use MTBE does not mean
> it would have been impossible for them to use other, less-polluting additives.
> Moreover, most of the facts alleged by the defendants in their Notices of Removal
> only indicate that MTBE would be one of several oxygenates used, and many of
> the floor statements cited by the defendants put ethanol and ethyl tertiary butyl
> ether, another oxygentate [sic], on equal footing with MTBE with respect to the
> means by which gasoline refiners would comply with the terms of the CAA. In
> sum, the defendants have not met their burden of providing "candid, specific and
> positive" allegations, Willingham [v. Morgan], 395 U.S. [402] at 408 [(1969)]
> (internal quotation marks omitted), that they were acting under federal officers
> when they added MTBE, and not some approved alternative, to their reformulated
> gasoline.

Id.

Atlantic Richfield's "federal officer" removal theory was then dealt a fatal blow by the

Supreme Court in Watson v. Philip Morris Companies, ___ U.S. ___, 127 S.Ct. 2301, supra.

The Court unanimously rejected the Philip Morris Companies' argument that the Federal Trade

4

Commission's direction, supervision, and monitoring of the company's activities in considerable

detail brought the company within the scope of the "acting under" provision and thereby

permitted "federal officer" removal:

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. See, e.g., Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136a (2000 ed. and Supp. IV) (mandating disclosure of testing results in the context of pesticide registration). Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

127 S.Ct. at 2308.

As noted supra, several parties who are also defendants here[2] advised the Second Circuit:

"Defendants read Watson as now foreclosing federal officer and agent removal in these cases."

Ex. 4, June 12, 2007, letter from Nathan P. Eimer to the Second Circuit, at 2. Other parties,

including several defendants here,[3] advised the MDL 1358 Court regarding People of the State of

California v. Atlantic Richfield Co.: "The Second Circuit clearly held that 28 U.S.C. §1442

cannot serve as the basis for federal jurisdiction for any of the cases comprising MDL 1358 . . . ."

Ex. 3, June 5, 2007, letter from Peter John Sacripanti to Hon. Shira A. Scheindlin, at 1.

---

[2] Atlantic Richfield Company, BP Products North America, Inc., Chevron Corporation (formerly known as ChevronTexaco Corporation), Chevron, U.S.A., Inc., Equilon Enterprises LLC, doing business as Shell Oil Products US, Shell Oil Company, TMR Company, formerly known as Texaco Refining and Marketing Inc., and Unocal Corporation. Ex. 4, at 1, n. 1.

[3] Exxon Mobil Corporation and Lyondell Chemical Company. Ex. 3, at 1, n. 1. The letter was also sent on behalf of Valero Energy Corporation (id.), while defendants here include Valero Refining Company-California and Valero Marketing and Supply Company.

As defendants concede, the Second Circuit and the Supreme Court have squarely rejected

Atlantic Richfield's "federal officer" theory, which provides no basis for federal jurisdiction.

Due to the lack of federal jurisdiction, the Panel should decline to transfer the case to MDL 1358.

**II.    Atlantic Richfield's "Preemption" and "Federal Question" Removal Theory Has
Been Rejected by the Second Circuit.**

Atlantic Richfield invokes 28 U.S.C. § 1441 as an alternative basis for removal, arguing

that there is a removeable "federal question" as to whether the District's claims are "preempted"

by the CAA.  Notice of Removal at 3, ¶ 3.

In People of the State of California v. Atlantic Richfield Co., supra, the Second Circuit

rejected defendants' contentions that preemption and federal question jurisdiction existed:

> In addition, for the reasons articulated in [In re Methyl Tertiary Butyl
> Ether ("MTBE") Prods. Liab. Litig.] MTBE V, 341 F.Supp.2d [386] at 403-11
> [S.D.N.Y. 2004], we agree with Judge Scheindlin that the plaintiffs' claims are
> not completely preempted by federal law.  Specifically, we agree with her
> conclusions that the EPA considered the preemptive effect of its regulations to be
> "limited," id. at 406;  that the agency intended its regulations to preempt
> nonidentical state controls in the context of fuel emissions, not in every
> conceivable area related to fuel and fuel additives, id. at 406-07;  and that
> Congress did not intend to preempt state regulations unrelated to emissions
> control, id. at 408-09.  We also agree with the conclusions of other courts that
> have found that similar claims were not preempted by the CAA.  See, e.g.,
> Oxygenated Fuels Ass'n v. Davis, 331 F.3d 665, 673 (9th Cir. 2003);  Oxygenated
> Fuels Ass'n v. Pataki, 158 F.Supp.2d 248, 257 & n. 4 (N.D.N.Y. 2001).
>
> We also note that, since oral argument was held in these cases, the district
> court has denied the defendants' motions for summary judgment on the related
> affirmative defense of conflict preemption.  In re Methyl Tertiary Butyl Ether
> ("MTBE") Prods. Liab. Litig., 457 F.Supp.2d 324 (S.D.N.Y. 2006).  Judge
> Scheindlin held that there was no conflict preemption, as "[i]t was not physically
> impossible for defendant[s] to comply with both standards because, even if state
> tort law demands that defendants not use MTBE, the federal law did not require
> the use of MTBE."  Id. at 335.  Likewise, she held that there was no obstacle
> preemption, because the CAA amendments created a fuel-neutral program that
> could succeed even if tort liability were available for the use or misuse of MTBE.

6



Id. at 335-43.  While conflict preemption is a defense, not a basis for jurisdiction, this holding only reinforces the plaintiffs' argument that state tort law and the federal regulations at issue are compatible with one another.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

For the reasons stated in Judge Scheindlin's opinion, we agree that the plaintiffs' claims do not raise a substantial federal question giving rise to federal subject matter jurisdiction.  See MTBE V, 341 F.Supp.2d at 400-03. . . .

. . . That the defendants might use MTBE to meet fuel oxygenation requirements does not necessarily conflict with the state's goal of securing the safety of its water supply.  Because the California complaint focuses on spills, leaks, and discharges of MTBE into groundwater, as well as alleged misrepresentations and omissions related to the safety of MTBE, they are entirely separate issues.  A jury finding in favor of the plaintiffs would undermine neither Congress's intent in enacting the CAA amendments, nor the EPA regulations implementing them.

2007 WL 1500338 at *22-*23.

Accordingly, Atlantic Richfield's "preemption" and "federal question" removal theory fails, and the action should be remanded, not transferred into the MDL.

## III.  Atlantic Richfield's "Bankruptcy" Removal Theory Is Without Merit.

### A.  A 1988 Bankruptcy Order Involving Texaco Does Not Create a Basis for Removal.

Atlantic Richfield argues that removal is authorized by 28 U.S.C. § 1334(b), "because Texaco Inc., predecessor in interest to Defendant ChevronTexaco Corporation filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which is implicated by Plaintiff's claims." Notice of Removal at 4, ¶ 6.  Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11."  Cases "arising under" Title 11 are "those cases in which the cause of action is created by title 11," and those "arising in a case under" Title 11 are

7

those that, while "not based on any right expressly created by title 11, . . . nevertheless, would have no existence outside of the bankruptcy." In re Middlesex Power Equipment & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002). None of the causes of action set forth in plaintiff's state court complaint involve the Bankruptcy Code, and all of the causes of action "exist independently of bankruptcy law." Williams v. Shell Oil Co., 169 B.R. 684, 688 (S.D. Cal. 1994). This case therefore plainly does not fall within § 1334(b).

Atlantic Richfield attempts to shoehorn this case into § 1334(b) by arguing that because Texaco Inc. (a predecessor to defendant ChevronTexaco Corporation), filed for bankruptcy under Title 11 in April 1987, and obtained confirmation of its reorganization plan in March 1988 (almost 20 years ago), this case "relates to" a title 11 case. Notice of Removal at 21-22, ¶¶ 68-69. But the 20-year-old bankruptcy is no longer even being administered, and the rights of all creditors already have been determined in the confirmation order.

Whether a civil proceeding is "related to" bankruptcy depends on "whether the outcome of the proceeding could conceivably have any effect on the estate being administered." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), abrogation on other grounds recognized by In re Casal, 998 F.2d 28, 31, n. 2 (1st Cir. 1993); In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988). In Fietz, the Ninth Circuit held there was no federal "related to" jurisdiction over a cross-claim because entry of the confirmation order "destroyed any possible relationship between the outcome of the suit and the administration of the bankruptcy estate." Id. In the instant case, Atlantic Richfield provides no evidence that the estate is even still being administered, much less how this case will "effect" the administration of the estate.

The fact that plaintiff's state causes of action may potentially involve some pre-1988 conduct of Texaco does not establish federal "related to" jurisdiction under section 1334(b). At most, it means that ChevronTexaco may have a discharge defense based on the confirmation order as to some small portion of its liability – a defense that a state court is fully capable of adjudicating. See In re McGhan, 288 F.3d 1172 (9th Cir. 2002) ("a state court [has] jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court").

Even if this action were "related to" the Texaco bankruptcy (it is not), federal courts should nonetheless abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(2).[4] As the court held in Garland & Lachance Const. Co., Inc. v. City of Keene by Planning Bd.:

> Mandatory abstention is required when the Motion for Abstention is timely made and the underlying proceeding is (a) based on a state law claim or cause of action; (b) commenced in the state court; (c) capable of timely adjudication in the state court; (d) an action that could not have been commenced in a court of the United States absent the jurisdiction conferred under § 1334 for Title 11 cases; and (e) is related to a case under Title 11, but is not a case arising under Title 11 or arising in a case under Title 11.

144 B.R. 586, 591 (D.N.H. 1991).[5]

---

[4] Although a small minority of courts have held that mandatory abstention (absent a motion to remand) is inapplicable to removed cases because it is a dismissal device and would leave no claim to go forward, see, e.g., In re Branded Products, Inc., 154 B.R. 936, 939-40 (Bankr. W.D. Tex. 1993), abrogated by In re Southmark Corp., 163 F.3d 925, 929 and n. 6 (5th Cir. 1999), the majority of courts have rejected this "hypertechnical" interpretation and held that mandatory abstention is applicable to removed cases. Williams, 169 B.R. at 691; In re Southmark Corp., supra, 163 F.3d at 929.

[5] Finding that "only state law causes of action are involved," the court concluded that it was required to abstain and remand the case under section 1334(c)(2). Because "[s]tate courts afford the best forum for deciding issues whose resolution turns on interpretation of state law," the Panel should allow the case to remain before Judge Pregerson for determination of remand.

(continued...)

Each of these criteria applies here.  Plaintiff has commenced an action in state court based on state law claims, which is capable of timely adjudication in state court and which could not have been filed in federal court unless it was related to a bankruptcy proceeding (which it is not). The case should be remanded, so the Panel should decline to transfer this action to MDL 1358.

**B.     Atlantic Richfield's "Bankruptcy" Removal Theory Has Been Rejected by the Second Circuit.**

Pursuant to the bankruptcy removal statute, "[a] party may remove any claim or cause of action in a civil action other than . . . a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452.  The Bankruptcy Code defines a "governmental unit" as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).

In <u>People of the State of California v. Atlantic Richfield Co.</u>, <u>supra</u>, defendants contended that the "police or regulatory power" exception to removal under section 1452 would not apply under the "pecuniary purpose" test adopted in other circuits, "under which it is necessary to

---

[5] (...continued)
See also <u>Williams v. Shell Oil Co.</u>, <u>supra</u>, 169 B.R. at 687 (rejecting removal when single defendant in a multi-defendant state mass tort case attempted removal on grounds that another defendant had filed for bankruptcy); <u>In re Republic Reader's Service, Inc.</u>, 81 B.R. 422, 427 (Bankr. S.D. Tex. 1987).

determine whether the governmental action relates primarily to the government's pecuniary interest in the debtor's property, in which case the automatic stay applies, or to matters of safety and welfare, in which case the suit may proceed," or under the "public purpose" test, "under which the reviewing court determines whether the government seeks to 'effectuate public policy' or 'adjudicate private rights.'" *Id.* at *19. The Second Circuit held that the "police or regulatory power" exception to bankruptcy removal existed for the public agency complaints at issue, even applying the tests advocated by defendants:

> Although we do not find it necessary to pass on the validity of these tests at this time, we find them satisfied in this case. The California and New Hampshire actions relate primarily to matters of public health and welfare, and the money damages sought will not inure, strictly speaking, to the economic benefit of the states. Instead, the clear goal of these proceedings is to remedy and prevent environmental damage with potentially serious consequences for public health, a significant area of state policy. Thus, even under the tests advocated by the defendant companies, these proceedings represent efforts by California and New Hampshire to enforce their "police or regulatory power" and are not subject to removal under section 1452.

*Id.* at *20.

The letter, noted <u>supra</u>, from several defendants to the MDL 1358 Court regarding <u>People of the State of California v. Atlantic Richfield Co.</u>, conceded: "The Second Circuit clearly held that 28 U.S.C. §1442 cannot serve as the basis for federal jurisdiction for any of the cases comprising MDL 1358, and that <u>at least with respect to cases involving governmental units exercising their police power, bankruptcy jurisdiction also does not exist</u>." Ex. 3, June 5, 2007, letter from Peter John Sacripanti to Hon. Shira A. Scheindlin, at 1 (emphasis added).

The California Constitution expressly provides that the State's police powers include the protection of water resources:

> It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. . . . This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained.

Cal. Const., art. X, § 2 (former art. XIV, § 3). After this constitutional provision was adopted in 1928, the California Supreme Court squarely held that it expressed a legitimate exercise of the police power of the state:

> That the constitutional amendment . . . is a legitimate exercise of the police power of the state cannot be questioned. It is the highest and most solemn expression of the people of the state in behalf of the general welfare. The present and future well-being and prosperity of the state depend upon the conservation of its life-giving waters.

Chow v. City of Santa Barbara, 217 Cal. 673, 701 (1933).

The police power thus endorsed by the California Constitution applies "to all water rights enjoyed or asserted in this state, whether the same be grounded on the riparian right or the right, analogous to the riparian right, of the overlying land owner, or the percolating water right, or the appropriative right." Joslin v. Marin Mun. Water Dist., 67 Cal.2d 132, 138 (1967). "On innumerable occasions, the Legislature has implemented the constitutional mandate by enacting statutes which stress the equation of the state's water resources with the public 'health, safety and welfare' . . . ." Niles Sand & Gravel Co. v. Alameda County Water Dist., 37 Cal.App.3d 924, 937 (1974).

Plaintiff District was formed as a County Water District under the provisions of Division 12 of the California Water Code, operating as a political subdivision of the State. See Notice of

Removal, Ex. 1, plaintiff's state court Complaint, at 3, ¶ 5.  In addition to the California

constitutional authority noted <u>supra</u>, the California Water Code gives County Water Districts

broad police and regulatory powers to protect the public health and welfare:

> A district may sue and be sued, except as otherwise provided in this division or by law, in all actions and proceedings in all courts and tribunals of competent jurisdiction.

Cal. Water Code, § 31080.

> A district may commence, maintain, intervene in, compromise, and assume the costs of any action or proceeding involving or affecting the ownership or use of waters or water rights within the district used or useful for any purpose of the district or a benefit to any land.

Cal. Water Code, § 31081.

> A district may commence, maintain, intervene in, defend, and compromise actions and proceedings to prevent interference with or diminution of the natural flow of any stream or natural subterranean supply of waters which may:

> (a) Be used or be useful for any purpose of the district.

> (b) Be of common benefit to the land or its inhabitants.

> (c) Endanger the inhabitants or land.

Cal. Water Code, § 31082.

Here, as in the complaints at issue in <u>People of the State of California v. Atlantic</u>

<u>Richfield Co.</u>, "the clear goal of these proceedings is to remedy and prevent environmental

damage with potentially serious consequences for public health." *Id.* at *20.  The District

brought the Complaint in the exercise of its police and regulatory powers, so the exception to the

bankruptcy removal statute applies and the Panel should decline to transfer the action to MDL

1358.

IV.     **The Energy Policy Act of 2005 Requires Unanimity of Consent for Removal.**

The Energy Policy Act of 2005 provides permissive, but not mandatory, removal for

actions relating to MTBE contamination:

> Claims and legal actions filed after the date of enactment of this Act [Aug. 8,
> 2005] related to allegations involving actual or threatened contamination of
> methyl tertiary butyl ether (MTBE) may be removed to the appropriate United
> States district court.

42 U.S.C. § 7545 Note, Pub. L. 109-58, § 1503.

In Alban v. Exxon Mobil Corp., supra, No. MJG-06-3098 (D. Md. Dec. 27, 2006) (Ex.

2), the only federal court known to have addressed this removal provision held that the consent of

all defendants is required for removal:

> Congress has enacted statutes that permit a defendant to remove a case from state
> court without consent of a Co-Defendant.  The Court holds that Section 1503 is
> not such a statute.

Id., slip op. at 4.  The Court concluded:

> This Court concludes that Section 1503 serves to place otherwise unremovable
> state court cases involving MTBE dilution in the category of cases that may be
> removed.  The statute does not, however, provide each defendant in such a case
> with an exception from compliance with the generally applicable removal
> requirements, including the obligation to obtain the consent of all defendants.

Id., slip op. at 6.

Federal courts have generally required unanimity of consent where removal is sought in a

case involving multiple defendants.  Russell Corp. v. American Home Assur. Co., 264 F.3d

1040, 1050 (11th Cir. 2001).

The opposition to transfer of most or all of the parties is a persuasive factor to deny

transfer.  In re "Light Beer" Trademark Litigation, 437 F.Supp. 754, 755-56 (J.P.M.L. 1977);  In

14

re Asbestos & Asbestos Insulation Material Prods. Liability Litigation, 431 F.Supp. 906, 910

(J.P.M.L. 1977).

As discussed supra, several defendants have advised the MDL 1358 court and the Second

Circuit that they concede the complete absence of federal officer jurisdiction and the potential

absence of bankruptcy jurisdiction.  See Exs. 3 and 4.  Accordingly, it is likely that some

defendants may now object to removal.  The propriety of removal should be addressed by Judge

Pregerson instead of having the action transferred into the MDL.

**Conclusion**

The District's state court Complaint in this case does not implicate federal jurisdiction in

any way.  For the above reasons, plaintiff respectfully requests that the Panel vacate its

Conditional Transfer Order.

Respectfully submitted,

Dated:  June 22, 2007
**MILLER, AXLINE & SAWYER**
A Professional Corporation

By:  _Evan Eickmeyer_
DUANE C. MILLER
MICHAEL AXLINE
EVAN EICKMEYER
Attorneys for plaintiff Crescenta Valley Water
District
MILLER, AXLINE & SAWYER
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688

15

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 5 2007

FILED
CLERK'S OFFICE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the attached **PLAINTIFF'S MOTION TO**

**VACATE CONDITIONAL TRANSFER ORDER** was served on the following counsel of

record via United States Mail, postage pre-paid, on this 22nd day of June, 2007:

| | |
|---|---|
| Thomas S. Bunn III<br>Lagerlof, Senecal, Gosney & Kruse<br>301 North Lake Avenue, 10th Floor<br>Pasadena, CA 91101 | Attorneys for plaintiff<br>Crescenta Valley Water District |
| Patrick E. Cafferty, Jr.<br>Munger, Tolles & Olson<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071-1560 | Attorneys for defendant<br>Shell Oil Company, Equilon<br>Enterprises, and Texaco Refining<br>& Marketing |
| Jeffrey J. Parker, Esq.<br>Whitney Jones Roy, Esq.<br>Sheppard, Mullin, Richter & Hampton<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA 90071-1448 | Attorneys for defendants<br>ExxonMobil Corporation and<br>Exxon Oil Corporation |
| Jon D. Anderson<br>Latham & Watkins<br>650 Town Center Drive, Suite 2000<br>Costa Mesa, CA 92626-1918 | Attorneys for defendants<br>ConocoPhillips Company and<br>Tosco Corporation |
| Robert Meadows<br>Charles Correll<br>King & Spaulding<br>1100 Louisiana Street, Suite 4000<br>Houston, TX 77002-5213 | Attorneys for defendants<br>Unocal Corporation, Union Oil<br>Company of California, Chevron<br>U.S.A., Inc., and ChevronTexaco<br>Corporation |
| J. Clifford Gunther, III<br>Bracewell & Giuliani<br>Pennzoil South Tower<br>711 Louisiana Street, Suite 2900<br>Houston, TX 77002 | Attorney for defendants<br>Ultramar, Inc., Valero Refining<br>Company-California, and Valero<br>Marketing & Supply Company |

Matthew T. Heartney, Esq.
Stephanie B. Weirick, Esq.
James Jacob Finsten, Esq.
Arnold & Porter
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844

Attorneys for defendants
Atlantic Richfield Company and
BP Products North America

Alan J. Hoffman, Esq.
Jeffrey S. Moller, Esq.
Blank Rome
One Logan Square
Eighteenth and Cherry Street
Philadelphia, PA  19103-6998

Attorneys for defendant
Lyondell Chemical Company
AKA Arco Chemical Company

Robin L. Greenwald, Esq.
Weitz & Luxenberg, PC.
180 Maiden Lane, 17th Floor
New York, NY  10038
(Also served via e-mail to:  rgreenwald@weitzlux.com)

Plaintiffs' Liaison Counsel for
MDL 1358

Peter J. Sacripanti, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY  10020
(Also served via e-mail to:  psacripanti@mwe.com)

Defendants' Liaison Counsel for
MDL 1358

Dated:  June 22, 2007

CHRISTINA HISE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 2 5 2007

FILED
CLERK'S OFFICE

**EXHIBIT 1**

COPY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 25 2007

FILED FILED
CLERK, U.S. CLERK'S OFFICE

MAY - 9 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   JEFFREY J. PARKER, Cal. Bar No. 155377
3  WHITNEY JONES ROY, Cal. Bar No. 211541
   333 South Hope Street, 48th Floor
4  Los Angeles, California  90071-1448
   Telephone:  213-620-1780
5  Facsimile:  213-620-1398
   jparker@sheppardmullin.com
6  wroy@sheppardmullin.com

7  Attorneys for Defendants EXXON MOBIL
   CORPORATION, individually and formerly
8  known as EXXON CORPORATION and
   d/b/a EXXONMOBIL REFINING AND
9  SUPPLY COMPANY, EXXON CHEMICAL
   U.S.A, and EXXONMOBIL CHEMICAL
10 COMPANY CORPORATION;
   EXXONMOBIL OIL CORPORATION, sued
11 as and formerly known as MOBIL OIL
   CORPORATION;

12 [ADDITIONAL PARTIES LISTED ON SIGNATURE BLOCKS]

13                UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16

17 CRESCENTA VALLEY WATER        Case No. CV07-02630DDP (JWJx)
   DISTRICT,
18
                    Plaintiff,
19                                 STIPULATION AND [PROPOSED]
       v.                          ORDER TO STAY PROCEEDINGS
20                                 PENDING TRANSFER AND
   EXXON MOBIL CORPORATION,       CONSOLIDATION BY JUDICIAL
21 individually and formerly known as   PANEL ON MULTIDISTRICT
   EXXON CORPORATION, and doing   LITIGATION
22 business as EXXONMOBIL
   REFINING AND SUPPLY
23 COMPANY, EXXON CHEMICAL
   U.S.A., and EXXONMOBIL
24 CHEMICAL CORPORATION;
   MOBIL OIL CORPORATION;
25 TOSCO CORPORATION;
   CONOCOPHILLIPS COMPANY;
26 UNOCAL CORPORATION,
   individually and formerly known as
27 UNION OIL COMPANY OF
   CALIFORNIA; UNION OIL
28 COMPANY OF CALIFORNIA,
   individually and doing business as

CLERK, U.S. LODGED DISTRICT COURT
APR 27 2007
CENTRAL DISTRICT OF CALIFORNIA
BY

1  UNOCAL and UNION 76; CHEVRON
   U.S.A., INC., individually and doing
2  business as CHEVRON PRODUCTS
   COMPANY and CHEVRON
3  CHEMICAL COMPANY;
   CHEVRONTEXACO
4  CORPORATION; TEXACO
   REFINING AND MARKETING INC.,
5  now known as TRMI; EQUILON
   ENTERPRISES LLC; SHELL OIL
6  COMPANY, individually and doing
   business as SHELL OIL PRODUCTS
7  US; ULTRAMAR, INC.; VALERO
   REFINING COMPANY-
8  CALIFORNIA; VALERO
   MARKETING AND SUPPLY
9  COMPANY; ATLANTIC RICHFIELD
   COMPANY, individually and doing
10 business as ARCO PRODUCTS
   COMPANY (formerly known as ARCO
11 PETROLEUM COMPANY) and also
   known as ARCO; BP PRODUCTS
12 NORTH AMERICA, INC.;
   LYONDELL CHEMICAL
13 COMPANY, individually and formerly
   known as ARCO CHEMICAL
14 COMPANY; DOES 1-1000, inclusive,

15            Defendants.

16

17

18              **STIPULATION**

19

20     Plaintiff Crescenta Valley Water District ("Plaintiff") and defendants

21 Exxon Mobil Corporation, individually and formerly known as Exxon Corporation

22 and d/b/a ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A, and

23 ExxonMobil Chemical Corporation; ExxonMobil Oil Corporation, sued as and

24 formerly known as Mobil Oil Corporation; ConocoPhillips Company; Tosco

25 Corporation; Unocal Corporation, individually and formerly known as Union Oil

26 Company of California; Union Oil Company of California, individually and doing

27 business as Unocal and Union 76; Chevron U.S.A. Inc., individually and doing

28 business as Chevron Products Company and Chevron Chemical Company;

-- 1 --

1  ChevronTexaco Corporation (n/k/a Chevron Corporation); Shell Oil Company;

2  Equilon Enterprises LLC, doing business as Shell Oil Products US; Texaco Refining

3  and Marketing Inc.; Ultramar Inc.; Valero Refining Company-California; Valero

4  Marketing and Supply Company; Atlantic Richfield Company, BP Products North

5  America Inc.; and Lyondell Chemical Company (collectively, "Defendants"), by

6  and through their counsel of records hereby stipulate as follows:

7

8          WHEREAS, Plaintiff filed a complaint against Defendants in Los

9  Angeles County Superior Court on January 31, 2007, and began serving Defendants

10  on or about March 26, 2007.

11

12          WHEREAS, on April 20, 2007, defendants Atlantic Richfield

13  Company; BP Products North America Inc.; Unocal Corporation, individually and

14  formerly known as Union Oil Company of California; Union Oil Company of

15  California, individually and doing business as Unocal and Union 76; Chevron

16  U.S.A. Inc., individually and doing business as Chevron Products Company and

17  Chevron Chemical Company; and ChevronTexaco Corporation (n/k/a Chevron

18  Corporation) filed a Notice of Removal to remove this action from the Los Angeles

19  County Superior Court to the above-captioned Court.  The remaining served

20  Defendants all consented to the removal.

21

22          WHEREAS, pursuant to Federal Rule of Civil Procedure 81,

23  Defendants therefore currently have until April 27, 2007 to answer or otherwise

24  respond to the Complaint.

25

26          WHEREAS, Defendants believe that the transfer of this action to *In re*

27  *Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, currently

28  pending in the United States District Court for the Southern District of New York

-- 2 --

STIPULATION AND [PROPOSED] ORDER TO STAY
PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1    (MDL 1358), is proper on the grounds that the allegations in these cases involve a

2    material part of the same subject matter and substantially the same defendants.

3

4            WHEREAS, in conjunction with the Notice of Removal, Defendants

5    are giving notice of the relatedness of this action and MDL 1358 to the Judicial

6    Panel on Multidistrict Litigation (the "Panel") and requesting transfer of this action

7    to MDL 1358.

8

9            WHEREAS, Plaintiff presently does not object to the transfer of this

10   action to MDL 1358, but expressly reserves the right to challenge federal

11   jurisdiction and/or seek remand at a later date.

12

13           WHEREAS, Defendants do not object to Plaintiff's reservation of right

14   to challenge jurisdiction after the case is transferred and in a manner that complies

15   with the transferee court's rules.

16

17           WHEREAS, to conserve resources and promote an efficient

18   determination of the action, Plaintiff and Defendants desire to stay this action for all

19   purposes, including responsive pleadings, discovery, and other pre-trial activities,

20   until after the Panel has ruled on the transfer request and the MDL 1358 court or this

21   court issues a further scheduling order.

22

23

24

25

26

27

28

W02-WEST:LWJ\400301671.1                           STIPULATION AND [PROPOSED] ORDER TO STAY
                                           PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1    NOW, THEREFORE, Plaintiff and Defendants agree that this action

2  may be stayed for all purposes, including responsive pleadings, discovery, and

3  other-pretrial activities subject Plaintiff's right to challenge jurisdiction.

4

5  Dated: April 27, 2007

6
                        MILLER AXLINE & SAWYER

7

8                    By

9                            TRACEY L. O'REILLY

10                           Attorneys for Plaintiff

11                 CRESCENTA VALLEY WATER DISTRICT

12

13

14  Dated: April 27, 2007

15           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17                   By

18                       JEFFREY J. PARKER

                      WHITNEY JONES ROY

19

20                     Attorneys for Defendants

21              EXXON MOBIL CORPORATION and
             EXXONMOBIL OIL CORPORATION

22

23

24

25

26

27

28

W02-WEST:LWJ400301671.1

STIPULATION AND [PROPOSED] ORDER TO STAY
PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1  Dated:  April 27, 2007

2                    LATHAM & WATKINS

3

4                    By _____  for Jon
                                                   Anderson
5                         JON D. ANDERSON
                          ERIC M. KATZ
6

7                    Attorneys for Defendants
                   CONOCOPHILLIPS COMPANY AND
8                     TOSCO CORPORATION

9  Dated:  April 27, 2007

10

11                   KING & SPAULDING

12

                     By _____  for Charles
13                                                 Correll, Jr.
                          ROBERT MEADOWS
14                        CHARLES CORRELL JR.

15                   Attorneys for Defendants
16              UNOCAL CORPORATION, individually and
              formerly known as Union Oil Company of
17            California; UNION OIL COMPANY OF
                CALIFORNIA, individually and doing
18          business as Unocal and Union 76; CHEVRON
19          U.S.A. INC., individually and doing business
              as Chevron Products Company and Chevron
20            Chemical Company; and CHEVRONTEXACO
21          CORPORATION (n/k/a Chevron Corporation)

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER TO STAY
PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1  Dated: April 27, 2007

2                                    MUNGER, TOLLES & OLSON LLP

3

4                                    By _____  for Hojoon Hwang

5                                          WILLIAM D. TEMKO
                                           HOJOON HWANG

6

7                                    Attorneys for Defendants
                                     SHELL OIL COMPANY, EQUILON
8                                    ENTERPRISES LLC, doing business as Shell
                                     Oil Products US, and TEXACO REFINING &
9                                    MARKETING INC.

10

11  Dated: April 27, 2007

12                                   BRACEWELL & GIULIANI LLP

13

14                                   By _____  for Coy Connelly

15                                         J. CLIFFORD GUNTER III
                                           ANDREW M. TAYLOR
16                                         M. COY CONNELLY

17                                   Attorneys for Defendants
                                     ULTRAMAR, INC., VALERO REFINING
18                                   COMPANY – CALIFORNIA, and VALERO
                                     MARKETING AND SUPPLY COMPANY
19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER TO STAY
PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1   Dated: April 27, 2007

2

3                 ARNOLD & PORTER LLP

4                 By                   *for Matthew Heartney*

5                         MATTHEW T. HEARTNEY

6                         STEPHANIE B. WEIRICK

                        MELANIE HANSON SARTORIS

7

8                       Attorneys for Defendants

9           ATLANTIC RICHFIELD COMPANY and BP

              PRODUCTS NORTH AMERICA INC.

10   Dated: April 27, 2007

11

12                 BLANK ROME LLP

13                 By                 *for Jeffrey Moller*

14                         ALAN HOFFMAN

15                         JEFFREY S. MOLLER

16                       Attorneys for Defendants

17            LYONDELL CHEMICAL COMPANY

          (formerly known as ARCO CHEMICAL

18                      COMPANY)

19

20

21

22

23

24

25

26

27

28

      STIPULATION AND [PROPOSED] ORDER TO STAY
              PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

1

## <u>ORDER</u>

2

3        Based on the stipulation of the partners, and **GOOD CAUSE**

4 **APPEARING, IT IS ORDERED**:

5

6        The request for stay is **GRANTED**.  This action is hereby stayed for all

7 purposes, including responsive pleadings, discovery and other pre-trial activities

8 until after the Panel has ruled on the transfer request and the MDL 1358 court or this

9 court issues a further scheduling order.

10

11 DATED: _____5-7_____, 2007

12

13                           DEAN D. PREGERSON

14                   The Honorable Dean D. Pregerson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-- 8 --

STIPULATION AND [PROPOSED] ORDER TO STAY
PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, 48th Floor, Los Angeles, California 90071-1448.

On **April 27, 2007**, I served the following document(s) described as ***STIPULATION AND [PROPOSED] ORDER TO STAY PROCEEDINGS PENDING TRANSFER AND CONSOLIDATION BY JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

**See Attached Service List**

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **April 27, 2007**, at Los Angeles, California.

_Elinor A. McNeel_

ELINOR A. MCNEEL

## SERVICE LIST

1

2  Duane C. Miller, Esq.
   Michael D. Axline, Esq.
3  A. Curtis Sawyer, Jr., Esq.                    Attorneys for Plaintiff
   Tracey L. O'Reilly, Esq.                       CRESCENTA VALLEY WATER
4  Tamarin E. Austin, Esq.                        DISTRICT
   Evan Eickmeyer, Esq.
5  Daniel Boone, Esq.
   Miller Axline & Sawyer
6  1050 Fulton Avenue, Suite 100
   Sacramento, CA  95825
7  Telephone:  (916) 488-6688
   Facsimile:  (916) 488-4288

8

9  Thomas S. Bunn III, Esq.
   Lagerlof, Senecal, Gosney & Kruse LLP
10 301 N. Lake Avenue, 10th Floor               Attorneys for Plaintiff
   Pasadena, CA  91101                           CRESCENTA VALLEY WATER
                                                 DISTRICT
11 Robert Meadows, Esq.
   Charles Correll, Esq.
12 King & Spaulding                              Attorneys for Defendants
   1100 Louisiana, Suite 4000                    CHEVRON USA, INC. , CHEVRON
13 Houston, TX  77002                            TEXACO CORPORATION, UNOCAL
   Telephone:  (713) 751-3200                    CORPORATION and UNOCAL OIL
14 Facsimile:  (713) 751-3290                    COMPANY OF CALIFORNIA

15 Les Oakes, Esq.
   King & Spaulding                              Attorneys for Defendants
16 1180 Peachtree Street                         CHEVRON USA, INC. , CHEVRON
   Atlanta, GA  30309-3521                       TEXACO CORPORATION, UNOCAL
17 Telephone:  (404) 572-4600                    CORPORATION and UNOCAL OIL
   Facsimile:  (404) 572-5100                    COMPANY OF CALIFORNIA

18

19 Jon D. Anderson, Esq.
   Michele D. Johnson, Esq.
20 Latham & Watkins
   650 Town Center Drive, Suite 2000            Attorneys for Defendants
21 Costa Mesa, CA  92626                         CONOCOPHILLIPS COMPANY,
   Telephone:  (714) 540-1235                    individually and as successor-in-interest
22 Facsimile:  (714) 755-8290                    to Defendant TOSCO CORP.

23 Hojoon Hwang, Esq.
   Munger, Tolles & Olson, LLP                  Attorneys for Defendants
24 560 Mission Street, 27th Floor                SHELL OIL COMPANY, EQUILON
   San Francisco, CA 94105                       ENTERPRISES LLC, and TEXACO
25 Telephone:  (415) 512-4000                    REFINING & MARKETING INC
   Facsimile:  (415) 512-4077

26

27

28

W02-WEST:LWJ400291908.1                        -1-

William D. Temko, Esq.
Munger, Tolles & Olson, LLP
355 South Grand Avenue, 35th Floor          Attorneys for Defendants
Los Angeles, CA  90071-1560                 SHELL OIL COMPANY, EQUILON
Telephone:  (213) 683-9100                  ENTERPRISES LLC, and TEXACO
Facsimile:  (213) 687-3702                  REFINING & MARKETING INC.

Melanie Hanson Sartoris
Matthew T. Heartney
Arnold & Porter LLP                         Attorneys for Defendants
777 South Figueroa Street, 44th Floor       EXXON MOBIL CORPORATION and
Los Angeles, CA  90017-5844                 MOBIL CORPORATION
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

Peter J. Sacripanti, Esq.
James Pardo, Esq.                           Attorneys for Defendants
McDermott, Will, & Emery LLP                EXXON MOBIL CORPORATION and
340 Madison Avenue                          MOBIL CORPORATION
New York, New York 10017
Tel: (212) 547-5400
Fax: (212) 547-5444

Alan J. Hoffman, Esq.
Blank Rome, LLP
One Logan Square                            Attorney for Defendant
18th and Cherry Street                      LYONDELL CHEMICAL COMPANY
Philadelphia, PA  19103-6998                (formerly known as ARCO CHEMICAL
Telephone:  (215) 569-5500                  COMPANY)
Facsimile:  (215) 569-5341

M. Coy Connelly, Esq.
Eduardo Perez, Esq.
Bracewell & Giuliani, LLP                   Attorneys for Defendants
711 Louisiana Street, Suite 2300            ULTRAMAR, INC., VALERO
Houston, TX 77002-2781                      REFINING COMPANY - CALIFORNIA
Telephone:  (713) 223-2300                  and VALERO MARKETING AND
Facsimile:  (713) 221-1212                  SUPPLY COMPANY

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFF ALBAN, et al.                        *

        Plaintiffs                 *

    vs.                               *   CIVIL ACTION NO. MJG-06-3098
                                (Consolidated with MJG-06-3099 to 3176)

EXXON MOBIL CORPORATION, et al. *

        Defendants                 *

*         *         *         *         *         *         *         *         *

MEMORANDUM AND ORDER

The Court has before it Plaintiffs' Motion to Remand
[Paper 9] and the materials submitted relating thereto.  The
Court has held a hearing and had the benefit of the arguments of
counsel.

I.   BACKGROUND

Since about 1984, an Exxon gasoline station (the
"Jacksonville Exxon") has been operated at 14258 Jarrettsville
Pike in Phoenix, Maryland.  At all times relevant hereto Storto
Enterprises ("Storto") operated the Jacksonville Exxon through a
licensing, franchise, and/or other agreement with Exxon Mobil
Corporation ("Exxon").  Exxon owns the real property on which the
Jacksonville Exxon is located and allegedly is responsible for
maintaining the underground storage tanks at the gas station.

On or about January 12, 2006, gasoline was released from the
underground storage tank systems located at the Jacksonville
Exxon.  The release allegedly occurred when a contractor for the
Defendants drilled a hole into a product line.  The hole spewed
gasoline into the environment unchecked until February 17, 2006,

when Defendants notified the Maryland Department of the
Environment ("MDE").  The MDE estimated over 25,000 gallons of
gasoline escaped from the tanks and affected many properties in
the area.

On or after May 11, 2006, Plaintiffs' counsel filed 56
individual cases against Exxon and Storto in the Circuit Court
for Baltimore County alleging claims relating to the Phoenix,
Maryland gas spill (the "First Alban Cases").  Exxon, with
Storto's consent, filed a Notice of Removal and subsequently
filed a Motion to Stay Proceedings Pending Action by Judicial
Panel on Multidistrict Litigation.

Plaintiffs' counsel sought remand of the First Alban Cases.
This Court, however, held that the Complaints in those cases
"related to allegations involving actual or threatened
contamination" by MTBE so that the cases were remanded by virtue
of § 1503 of the Energy Policy Act of 2005 ("Section 1503").
Pub. L. No. 109-58 § 1503, 119 Stat. 594, 1076 (2005), 42 U.S.C.
§ 7545, see Alban v. Exxon Mobil Corp., No. 06-1441, slip op. (D.
Md., July 21, 2006).  Shortly thereafter, the case was
transferred to the Southern District of New York, where cases
involving MTBE were consolidated by the MDL Panel.  Plaintiffs'
counsel then voluntarily dismissed without prejudice all of the
First Alban Cases.

On October 17, 2006, Plaintiffs' counsel filed the instant
cases (the "Second Alban Cases") on behalf of the original
plaintiffs plus some additional ones in the Circuit Court for

2

Baltimore County, Maryland.  Plaintiffs' counsel hoped to avoid
the applicability of Section 1503 by drafting Complaints that
avoided any mention of MTBE.  Exxon sought to test the
effectiveness of this drafting ploy and filed a timely Notice of
Removal to this Court on November 27, 2006.  Exxon contended that
the cause of action, in fact, involved pollution by MTBE even
though Plaintiffs' counsel did not expressly mentioned it.

Exxon's removal in the Second Alban Cases was not consented
to by its Co-Defendant Storto.  Therefore, Plaintiffs seek remand
based upon (1) the absence of Storto's consent and (2) the
alleged inapplicability of Section 1503.

The Court, at Plaintiffs' request, has considered the
unanimity issue and concludes that it is not necessary to reach
the parties' Section 1503 contentions.

II.  DISCUSSION

The general removal statute provides in pertinent part:

> Except as otherwise provided by Act of
> Congress, any civil action brought in a state
> court of which the district courts of the
> United States have original jurisdiction, may
> be removed by the defendant or the
> defendants, to [federal court].

28 U.S.C. § 1441(a).  District Courts have original jurisdiction
over a matter if a civil action "[a]rises under the Constitution,
laws, or treaties of the United States."  28 U.S.C. § 1331.

It is well established that all defendants (even those
without the right to remove) must join the petition for removal.
See Chi., R.I. & P. Ry. v. Martin, 178 U.S. 245, 248 (1900); Doe

3

v. Kerwood, 969 F.2d 165, 167 (5th Cir. 1992); Jackson v. Roseman, 878 F. Supp. 820, 826-27 (D. Md. 1995); Whitcomb v. Potomac Physicians, P.A., 832 F. Supp. 1011, 1013 (D. Md. 1993). This unanimity is required whether federal jurisdiction is based on diversity or the existence of a federal question.  Bradford v. Harding, 284 F.2d 307, 309 (2d Cir. 1960).

There can be an exception to the need for unanimity if a special removal statute so provides.  14C Charles Alan Right et al., Federal Practice and Procedure § 3731 at 258-66 (3d ed. 1998)(footnotes omitted).  Section 1503 is a special removal statute.  Thus, the question presented is whether Section 1503 provides an exception to the general remand unanimity requirement.

Section 1503 of the Energey Policy Act of 2005 provides that: "[c]laims and legal actions filed after the date of enactment of this Act . . . may be removed to the appropriate United States district court." Pub.L. 109-58, Title XV, § 1503, Aug. 8, 2005, 119 Stat. 1076 (2005) (emphasis added).  Exxon argues that by using the phrase "may be removed" without reference to which party or parties may remove, Congress intended to permit any defendant to effect removal without the need to obtain the consent of a Co-Defendant that is required under the general removal statute.

Congress has enacted statutes that permit a defendant to remove a case from state court without consent of a Co-Defendant. The Court holds that Section 1503 is not such a statute.

4

Congress has used the passive term "may be removed" together
with identification of particular defendants to permit those
defendants to remove certain types of cases without obtaining
consent of other defendants.  See 28 U.S.C. § 1441(d) (a civil
action brought against a foreign state "may be removed by the
foreign state"), 28 U.S.C. § 1442 (providing that suits against
officers of the United States, federal agencies, or officers of
Congress "may be removed by them"), 28 U.S.C. 1443 (permitting
civil rights cases "may be removed by the defendant"), 28 U.S.C.
§ 1444 (foreclosure actions against the United States "may be
removed by the United States").

Congress also has permitted unilateral removal by any
defendant in certain cases by expressly so providing.  See 12
U.S.C. § 632 (in civil suits involving international banking and
the United States, "any defendant in any such suit may . . .
remove such suits . . . into the district court of the United
States"), 28 U.S.C. § 1453 (class actions "may be removed by any
defendant without the consent of all defendants").

Exxon contends that the Section 1503 removal provision was
part of a comprehensive statutory scheme to channel MTBE cases to
federal courts so as to reduce the potential for conflicting
state court decisions.  This contention - central to Exxon's
position - is contradicted by the fact that Congress did not give
federal courts original jurisdiction of MTBE cases.  Accordingly,
while defendants could (if they found it beneficial to do so)
carry out the purported objective of channeling otherwise purely

5

state law cases to federal court because of the involvement of
MTBE pollution, plaintiffs could not.  Accordingly, defendants
(but not plaintiffs) have the ability to keep an MTBE case in
state court despite the desire of plaintiffs to obtain federal
jurisdiction and carry out the purported Congressional purpose.

The only special removal statute the Court has found that
uses the term "may be removed" without reference to "a defendant"
or any identified defendant is 39 U.S.C. § 409 - regarding suits
by and against the Postal Service.  This statute provides the
federal courts with "original but not exclusive jurisdiction over
all actions by or against the Postal Service" and provides that
such a case "may be removed to the appropriate United States
district court." 39 U.S.C. § 409(a).  Accordingly, unlike Section
1503, the special postal statute plainly is part of a statutory
scheme "to give the Postal Service, an instrumentality of the
United States, the protection of a federal forum."  Continental
Cablevision of St. Paul, Inc. v. U.S. Postal Serv., 945 F.2d
1434, 1437 (8th Cir. 1991).

This Court concludes that Section 1503 serves to place
otherwise unremovable state court cases involving MTBE dilution
in the category of cases that may be removed.  The statute does
not, however, provide each defendant in such a case with an
exception from compliance with the generally applicable removal
requirements, including the obligation to obtain the consent of
all defendants.

III. <u>CONCLUSION</u>

For the foregoing reasons:

      1.   Plaintiffs' Motion for Remand [Paper 9] is
            GRANTED.

      2.   This case shall be remanded by separate Order

SO ORDERED, on <u>Wednesday, December 27, 2006</u>.

<u>          / s /         </u><br>
Marvin J. Garbis<br>
United States District Judge

**EXHIBIT 3**

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

June 5, 2007

## BY ELECTRONIC MAIL AND HAND DELIVERY

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re:   Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
      *MTBE Second Circuit Opinion and Federal Jurisdiction*

Dear Judge Scheindlin:

We write on behalf of certain defendants[1] to address the jurisdictional issues raised by the Second Circuit's recent opinion (*California v. Atlantic Richfield, et al.*, 04-5974-cv(L) (May 24, 2007)). We feel that it is appropriate at this juncture for the Court to make a fully briefed appraisal of its subject matter jurisdiction in order to avoid a potential wasting of the time, expense and energy of not only the litigants, but the Court itself.

The Second Circuit clearly held that 28 U.S.C. §1442 cannot serve as the basis for federal jurisdiction for any of the cases comprising MDL 1358, and that at least with respect to cases involving governmental units exercising their police power, bankruptcy jurisdiction also does not exist. To the extent cases do not involve governmental units exercising their police power, the complaints and petitions must be carefully examined to ascertain if bankruptcy jurisdiction in fact exists, and even if so, whether the Court wishes to exercise its discretion to remand those cases. As this Court specifically noted in *In re MTBE Products Liability Litigation*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004):

> In the absence of federal agent jurisdiction, the balance of factors may have weighed in favor of the Court's abstention from the exercise of bankruptcy jurisdiction.

---

[1] Equistar Chemicals, LP, Exxon Mobil Corporation, Hess Corporation, Lyondell Chemical Company, Marathon Petroleum Company LLC, Valero Energy Corporation.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

The Honorable Shira A. Scheindlin
June 5, 2007
Page 2

*Id.* at n. 169.  It is precisely such jurisdiction that the Second Circuit has now found to be absent.

As a result, we believe that at a minimum, 71 cases must be remanded, including *County of Suffolk* (which was not even removed on bankruptcy grounds), *City of New York* and *United Water New York. See* list of cases attached at Exhibit A.  Plaintiffs acknowledged this result by including "governmental unit" and "non-governmental unit" cases on the list submitted on May 24th.

The amendments to some of the complaints after removal do not cure the jurisdictional defects.  The right to remove is generally determined at the time of the removal.  *See Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 31 (Bankr. S.D.N.Y. 1994) ("When removal is attacked prior to final judgment and the alleged basis of subject matter jurisdiction is found wanting, the Court must remand the case without consideration of an alternative basis . . . On the other hand, once the federal court enters final judgment, the appellate court must expand the scope of its review and uphold the removal if any basis of jurisdiction existed at the time of removal.") (internal citations omitted).  Obviously, "[a] complaint improvidently removed cannot confer jurisdiction necessary to entertain its amendment." *Bell v. Amcast Indus. Corp.*, 607 F. Supp 486, 487 (S.D. Ohio 1985) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) (holding that when a case is improvidently removed "no federal jurisdiction exist[s] to entertain a later amendment to the complaint").  Unlike in *Barbara v. New York Stock Exchange*, 93 F.3d 49, 56 (2d Cir. 1996), the amendments here were not as of right and there has been no final judgment.

We respectfully request that a schedule to brief these issues be established during the call with the Court scheduled for June 6, 2007.[2]

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:   All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel

---

[2] It is possible that some defendants will seek *en banc* review by the Second Circuit of its recent ruling.  We believe that in the interest of avoiding unnecessary delay, we should nonetheless proceed with briefing on the issues outlined above.

**EXHIBIT 4**

# EimerStahl

Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604-2516
Tel 312 660 7600   Fax 312 692 1718

Nathan P. Eimer
(312) 660-7601
neimer@eimerstahl.com

June 12, 2007

## *VIA FEDERAL EXPRESS*

Roseann B. MacKechnie
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007
Case Manager Facsimile:  (212) 857-8578
Calendar Facsimile:  (212) 857-8681

> Re:   *The People of the State of California v. Atlantic Richfield Co., et al.*,
> No. 04-5974-cv (L); *State of New Hampshire v. Amerada Hess Corp.*
> *et al.*, No. 04-6056-cv (con); **Oral Argument January 26, 2006**
> **(Raggi, Hall, C.JJ., Korman, D.J.)**

Dear Ms. MacKechnie:

Please distribute this letter to the panel and to all active judges on the Court.  Pursuant to FRAP 28(j), defendants/appellees[1] write to apprise the Court of the Supreme Court's decision yesterday in *Watson v. Philip Morris Cos.*, No. 05-1284.  In its opinion, the Court reversed the decision of the Eighth Circuit and held that light cigarette manufacturers could not remove certain tort actions to federal court.

---

[1] This letter is submitted on behalf of the following parties:   Atlantic Richfield Company; BP Products North America Inc.; Chevron Corporation (formerly known as ChevronTexaco Corporation); Chevron, U.S.A., Inc.; CITGO Petroleum Corporation; CITGO Refining and Chemicals Company L.P.; Equilon Enterprises LLC, doing business as Shell Oil Products US; Motiva Enterprises LLC; PDV Midwest Refining and Chemicals Company L.P.; Shell Oil Company; TMR Company, formerly known as Texaco Refining and Marketing Inc.; and Unocal Corporation.  The undersigned counsel has not been advised that any defendant disagrees with the positions set forth in this letter, but we have not yet had an opportunity to confer with all defendants.



Roseann B. MacKechnie
June 12, 2007
Page 2

Defendants/appellees' petition for rehearing and for rehearing en banc is not rendered moot by *Watson*. As explained in the petition (pp. 3-8), the panel had no authority to reach the issue of the District Court's removal jurisdiction on an interlocutory, Eleventh Amendment appeal. Because it lacked appellate jurisdiction to consider removal, the panel's opinion should be modified to omit any discussion of removal jurisdiction.

However, given *Watson*, defendants no longer seek rehearing on the issue of federal agent removal, although (if this Court does not omit the removal discussion) defendants do still seek rehearing on the issue of bankruptcy jurisdiction (petition, p. 14) and seek modification of the opinion's overbroad conflict preemption language (p. 15). The effect of *Watson* itself on these cases is this: When the cases are returned to the District Court, the District Court will apply the Supreme Court's decision in *Watson* and remand the cases if warranted. Defendants read *Watson* as now foreclosing federal officer and agent removal in these cases.

Respectfully submitted,

Nathan P. Eimer
Attorney for CITGO Petroleum Corporation

NPE/mc

cc:     Russ Detrick (via e-mail)
        Victor M. Sher (via e-mail)
        Robin Greenwald (Liaison Counsel for Plaintiffs) (via e-mail)
        Peter Sacripanti (Liaison Counsel for Defendants) (via e-mail)