**MDL 1358**

PLEADING NO. 262

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | §<br>§<br>§<br>§<br>§<br>§ | |
| This Document Relates To: | §<br>§ | MDL Docket No. 1358 |
| *Harrison, et al. v. 7-Eleven, Inc., et al.*<br>Cause No. 07-01179 (D. Md.) | §<br>§<br>§ | |
| and | §<br>§ | |
| *Ryan, et al. v. 7-Eleven, Inc., et al.*<br>Cause No. 07-02770 (D. Md.) | §<br>§<br>§ | |

## DEFENDANT 7-ELEVEN, INC.'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 30

7-Eleven, Inc. ("7-Eleven"), a Defendant in *Harrison, et al. v. 7-Eleven, Inc., et al.*,

Cause No. 07-01179 in the United States District Court for the District of Maryland

("*Harrison*"), and *Ryan, et al. v. 7-Eleven, Inc., et al.*, Cause No. 07-02770 in the United

States District Court for the District of Maryland ("*Ryan*"), hereby moves the Judicial

**OFFICIAL FILE COPY**

IMAGED DEC 1 2 2007

Panel on Multidistrict Litigation to vacate Conditional Transfer Order No. 30 entered on November 8, 2007, for the reasons set forth below.[1]

## I.

## INTRODUCTION

1.      On November 8, 2007, the Judicial Panel on Multidistrict Litigation (the "Panel") entered Conditional Transfer Order No. 30 ("CTO-30") in MDL No. 1358, conditionally transferring *Harrison* and *Ryan* to the United States District Court for the Southern District of New York (the "MDL Court") for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  Because *Harrison* and *Ryan* do not involve "one or more…questions of fact" in common with the cases previously consolidated in MDL No. 1358 and because the transfer of these cases will not further "the convenience of the parties and witnesses" or the "just and efficient conduct of such actions," the *Harrison* and *Ryan* cases should not be transferred, and CTO-30 should be vacated. *See* 28 U.S.C. § 1407(a).

## II.

## SUMMARY OF ARGUMENT

2.      Over the last three years, the MDL Court "has issued thirty-six substantive opinions and orders, comprising more than one thousand pages of text; has issued thirty Case Management Orders; and has held over thirty-five status conferences." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 510 F. Supp. 2d 299, 301 (S.D.N.Y. 2007).  No opinion, order, or conference concerns realtors, environmental

---

[1] 7-Eleven's brief in support of its motion is consolidated herein.  Attached hereto as **Exhibit A** is the schedule required by R.P.J.P.M.L. 7.2(a)(ii).   7-Eleven also is concurrently filing as a separate pleading its request for oral argument.

consultants, or sellers of real estate, nor does MDL No. 1358 contain a single case only asserting claims against a convenience store operator for claims solely related to the release of gasoline.  MDL No. 1358 is, and always has been, predominantly a products liability litigation against "upstream" defendants such as MTBE manufacturers and gasoline refiners for harm allegedly caused by MTBE, not other constituents of gasoline. The *Harrison* and *Ryan* plaintiffs elected not to pursue product defect claims against upstream defendants, and having elected not to pursue claims that are central to and predominate in the MDL No. 1358 proceedings, these plaintiffs and their claims should remain in their local federal court.

3.      While extensive discovery has been conducted in MDL No. 1358 of dozens of manufacturers, refiners, and distributors, including millions of pages of documents and thousands of pages of deposition testimony covering up to thirty (30) years of gasoline industry manufacturing, refining, transportation, and legislative history, none will be needed to prosecute or defend the current claims in either *Harrison* or *Ryan*.  Nor is it reasonable to believe that discovery or other proceedings in *Harrison* or *Ryan* will be needed or even relevant to the prosecution or defense of any MDL No. 1358 case.

4.      While many cases transferred to MDL No. 1358 concern the release of gasoline, it is the alleged properties of MTBE, to the exclusion of the other constituents of gasoline, that form the basis for the MDL plaintiffs' alleged damages.  The MDL plaintiffs' claims concern the presence of MTBE in drinking water, as opposed to the presence of all gasoline constituents as in *Harrison* and *Ryan*.  The cases presently

before the Panel concern something materially different by claiming that "gasoline and gasoline constituents" caused their harm.

5.      *Harrison* and *Ryan* deal with fact- and defendant-specific claims, and vacating CTO-30 will not result in rulings or orders that conflict in any material way to any rulings in MDL No. 1358.  A ruling in either *Harrison* or *Ryan* on whether or not the station owner was negligent in the handling of gasoline at a particular location will have no bearing on a subsequent MDL product defect case involving a different location at a different time.  *Harrison* and *Ryan* are defendant- and site-specific, and the issues unique to each case must be decided in each case and are not susceptible to global treatment.  These issues are even more compelling for the environmental consultant, real estate entity, and property owner defendants.[2]

6.      Transfer of these cases threatens to render the MDL Court a processing center for simple negligence claims and to bog the MDL Court down with endless site-specific discovery and motion practice based upon issues such as ownership, control, and limitations that are not common to other cases in MDL No. 1358.

### III.

### BACKGROUND

7.      7-Eleven is an owner and operator of convenience stores, many of which sell gasoline.  7-Eleven is not a refiner, marketer, or distributor of gasoline.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation ("In re MTBE")*, 379 F. Supp. 2d 348, 397-98 (S.D.N.Y. 2005) (dismissing plaintiffs' products liability and failure

---

[2] Inclusion of these cases in MDL No. 1358 will multiply the work to be done by most *Harrison* and *Ryan* defendants to familiarize themselves with the vast reservoir of work completed in MDL No. 1358 to determine what, if any, applies in these cases.

to warn claims against downstream handlers such as 7-Eleven as "inherently contradictory"). 7-Eleven operates a convenience store located at 7627 Woodbine Road, Woodbine, Maryland, also known as 7-Eleven No. 28920 (the "Woodbine Store"), that is the subject of the *Harrison* and *Ryan* cases.

8.      *Harrison* was filed on March 30, 2007, in the Circuit Court for Carroll County, Maryland, and was removed by 7-Eleven to the United States District Court for the District of Maryland on May 4, 2007. *Ryan* was filed in the Circuit Court for Baltimore County, Maryland, on August 28, 2007, and was removed by 7-Eleven to federal court on October 11, 2007. Both cases allege that 7-Eleven wrongfully permitted gasoline to escape from its storage facilities at the Woodbine Store, causing injury to the plaintiffs.[3]

9.      The plaintiffs in *Harrison* are owners and/or residents of residential property located near the Woodbine Store. (*Harrison* Complaint ¶ 1.) In addition to 7-Eleven, the *Harrison* plaintiffs sued Frall Developers, Inc. ("Frall"), the owner of the real property on which the Woodbine Store is located, and Binaya Shami, who the plaintiffs incorrectly believed to be the operator of the Woodbine Store.[4] (*See id.* ¶¶ 6-7.) The *Harrison* plaintiffs allege that the defendants were involved in the "negligent, wrongful and unlawful release of gasoline and gasoline constituents into the drinking water supply of Plaintiffs...." (*Id.* ¶ 10.) The *Harrison* plaintiffs allege causes of action for

---

[3] Copies of the plaintiffs' complaints filed in *Harrison* and *Ryan* are attached hereto as **Exhibit B** and **Exhibit C**, and are referred to herein as the *Harrison* Complaint and the *Ryan* Complaint, respectively.

[4] The *Harrison* plaintiffs' claims against Binaya Shami were dismissed by the Court on October 12, 2007. The *Harrison* plaintiffs also have sought leave to file an amended complaint, to add ENSR Corporation to the case.

negligence, strict liability for an abnormally dangerous activity, private nuisance, and trespass, all relating to the defendants' alleged release of gasoline.

10.     Similarly, the plaintiffs in *Ryan* are residents and owners of property near the Woodbine Store.  (*Ryan* Complaint ¶ 1.)  The *Ryan* plaintiffs sued 7-Eleven and Frall, as well as ENSR Corporation, 7-Eleven's environmental consultant.  (*Id.* ¶¶ 2-9.) The *Ryan* plaintiffs also sued the real estate agents and real estate companies involved in their purchase of their property.  (*Id.* ¶¶ 10-13, 19.)  Like the *Harrison* plaintiffs, the *Ryan* plaintiffs blame 7-Eleven, Frall, and ENSR for the "negligent, wrongful and unlawful release of gasoline and gasoline constituents into the drinking water supply of Plaintiffs...."  (*Id.* ¶ 16.)  Against 7-Eleven, Frall, and ENSR, the *Ryan* plaintiffs allege causes of action for negligence, strict liability for an abnormally dangerous activity, private nuisance, and trespass relating to the Woodbine Store's gasoline release.  The *Ryan* plaintiffs claim that the remaining defendants are liable for failing to investigate and/or disclose information about the contamination known to them at the time of the sale of the property to the *Ryan* plaintiffs.  (*Id.* ¶¶ 19, 99.)

11.     MDL No. 1358 was created by order of the Panel dated October 10, 2000. *See In re MTBE*, 2000 U.S. Dist. LEXIS 14901 (J.P.M.L. Oct. 10, 2000) (the "Original Transfer Order").   The Original Transfer Order found pretrial coordination and/or consolidation of the three pending cases appropriate because common questions of fact existed among them relating to

> i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public, ***and***

ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination.

*Id.* at *2 (emphasis added). Since the Original Transfer Order, the Panel found that approximately 149 additional actions met these criteria and transferred such cases to the Honorable Shira Ann Scheindlin in the United States District Court for the Southern District of New York. (*See* CTO-30.) CTO-30 conditionally transfers *Harrison* and *Ryan* to the MDL Court based on those same criteria. On November 26, 2007, 7-Eleven filed its Notice of Opposition to CTO-30.

## IV.

## **ARGUMENT AND AUTHORITIES**

12.     Section 1407(a) of Title 28 provides, in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions ***may*** be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by [the Panel] upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a) (emphasis added). *Harrison* and *Ryan* should not be transferred pursuant to Section 1407 because they do not involve questions of fact in common with the cases previously transferred in MDL No. 1358. Further, these cases should not be transferred because doing so would greatly inconvenience the parties and witnesses and would impede the just and efficient conduct of such actions.

A.     ***Harrison* and *Ryan* are Factually Distinct from the Cases in MDL No. 1358**

13.     Both *Harrison* and *Ryan* deal with the same alleged release of gasoline from the Woodbine Store. Although the *Harrison* and *Ryan* cases allege that the

presence of various gasoline constituents in that gasoline, including MTBE, caused injury to the plaintiffs, the similarities with the cases previously transferred to MDL No. 1358 end there.

14.     Potential tag-along actions such as *Harrison* and *Ryan* may only be transferred if they involve "one or more common questions of fact" with the other actions transferred to the MDL Court for pretrial proceedings.   *See* 28 U.S.C. § 1407(a). However, the mere showing that common questions of fact exist is not sufficient to warrant transfer.  *In re Cessna Aircraft Distributorship Antitrust Litigation*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978).  In order to warrant transfer, common questions of fact must predominate over individual questions of fact unique to the particular cases.  *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation*, 259 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003); *In re Rely Tampon Products Liability Litigation*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982).

15.     In this multi-district products liability litigation, the Panel has focused on two questions of fact in determining whether cases should be transferred to the MDL Court:

> i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public, and
>
> ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination.

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000).  Because neither *Harrison* nor *Ryan* involves any allegations or fact questions relating to the first of the two necessary

prongs of this two-part test, i.e., whether defendants misrepresented the nature of MTBE and conspired to market it without disclosing its alleged risks, *Harrison* and *Ryan* are not appropriate cases for transfer, and CTO-30 should be vacated.

### 1.    *Harrison* and *Ryan* are not products liability cases

16.    MDL No. 1358 is styled a "products liability litigation," and the cases coordinated or consolidated in MDL No. 1358 overwhelmingly involve questions of products liability, relating to the design, manufacture, and distribution of MTBE and/or gasoline containing MTBE, and conspiracy to market MTBE without disclosing its allegedly harmful nature.   *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation ("In re MTBE")*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005); *In re MTBE*, 209 F.R.D. 323, 328, 330-31 (S.D.N.Y. 2002); *In re MTBE*, 175 F. Supp. 2d 593, 598-602 (S.D.N.Y. 2001).   MDL No. 1358 was created to deal not with ordinary "spill" claims, such as the *Harrison* and *Ryan* cases, but with the characteristics of MTBE and whether MTBE is a defective product.   Because *Harrison* and *Ryan* are not products liability cases, and do not involve any questions of fact relating to the design, manufacture, or distribution of MTBE (or even gasoline containing MTBE), those cases should not be transferred to the MDL Court.

17.    In connection with other products liability litigations, the Panel has transferred cases that shared central factual questions relating to the design, manufacture, and distribution of the allegedly defective product.   *See, e.g., In re Seroquel Products Liability Litigation*, 447 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) (granting transfer due to commonality of questions regarding the drug's "development, testing, manufacturing and marketing" and the defendants' "knowledge concerning the

drug's possible adverse effects"); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (granting transfer where all actions share allegations of defective design and manufacture by the same defendant); *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F. Supp. 2d 1377, 1377 (J.P.M.L. 2005) (granting transfer due to common question of whether manufacturer knew of increased risks of product but failed to disclose them and/or improperly marketed product); *In re High Sulfur Content Gasoline Products Liability Litigation*, 344 F. Supp. 2d 755, 756-57 (J.P.M.L. 2004) (granting transfer when all cases shared claims of negligence and products liability arising from defective gasoline refined by defendants); *In re Ephedra Products Liability Litigation*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) (granting transfer when cases involved alleged side effects of drug, and whether defendants knew of side effects and concealed, misrepresented, or failed to warn of such effects); *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation*, 259 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003) (granting transfer where common issues of defective design and manufacture predominated over individual issues).

18.     No plaintiff in *Harrison* or *Ryan* alleges any products liability cause of action against any defendant in either case. The claims in *Harrison* and *Ryan* relate only to the release of gasoline into the environment.[5]   (*Harrison* Complaint ¶ 10; *Ryan* Complaint ¶ 16.)   Neither *Harrison* nor *Ryan* raises any question as to the defective design, manufacture, marketing, or distribution of gasoline, let alone MTBE—such issue

---

[5] In the common parlance of the proceedings in MDL No. 1358, the *Harrison* and *Ryan* actions may be accurately described as mere "spill cases."

being central to the cases previously transferred to the MDL Court.[6]  *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005).  The Panel has consistently found that cases should not be transferred when the theories of liability therein are distinct from those already consolidated in the transferee court.  *See, e.g., In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 227 F. Supp. 2d 1389, 1392 (J.P.M.L. 2002) (vacating CTO when cases involved related, but not common, questions of fact); *In re Air Crash Disaster Near Silver Plume, Colorado, on October 2, 1970*, 368 F. Supp. 810, 811 (J.P.M.L. 1973) (vacating CTO when cases involved warranty claims, instead of certification and operation-related claims common to transferred cases).  Because the claims and causes of action at issue in *Harrison* and *Ryan* are markedly different from those at issue in the cases already transferred in MDL No. 1358, common questions of fact cannot predominate, and transfer is inappropriate.

**2.      *Harrison* and *Ryan* do not involve misrepresentation or conspiracy claims regarding the nature of MTBE**

19.      In addition to claims of products liability, the cases previously consolidated in MDL No. 1358 share intentional tort claims and common factual questions concerning "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal

---

[6] The potential transfer of these cases raises the question of whether the Panel would have transferred (a) an ordinary negligence case involving the negligent operation of a Ford Crown Victoria to the *In re Ford Motor Co.* MDL just because the vehicle had an allegedly defective fuel tank at the time of the accident, even if the claims did not involve any claim of product defect or (b) a pharmaceutical case wherein a drug at issue in an MDL was ingested, but where the only claims were against the pharmacy for negligently dispensing the drug?  Because *Harrison* and *Ryan* involve no *products* claims, they are no different than an ordinary car wreck case or a negligent dispensing case and ought not be transferred.

government, or the public." *In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at \*2 (J.P.M.L. Oct. 10, 2000); *see also In re MTBE*, 209 F.R.D. 323, 330-31 (S.D.N.Y. 2002); *In re MTBE*, 175 F. Supp. 2d 593, 601-02 (S.D.N.Y. 2001).  As set forth above, neither the *Harrison* nor the *Ryan* case deals with any such claims or allegations.  Indeed, the MDL Court itself has ruled that 7-Eleven and other downstream handlers cannot be accused of failing to warn of the alleged dangers of MTBE when 7-Eleven and other downstream handlers were alleged to have been deprived of such information by refiners, manufacturers, and distributors of gasoline containing MTBE.  *See In re MTBE*, 379 F. Supp. 2d 348, 398 (S.D.N.Y. 2005) (dismissing claims against 7-Eleven and other downstream handlers, holding that "Plaintiffs cannot maintain their actions against parties as both the perpetrators and victims of the same tortious conduct").  Because no such claims are present, or even viable, in *Harrison* or *Ryan*, these cases should not be transferred.

### 3.    *Harrison* and *Ryan* are not "MTBE Cases"

20.    Common to all cases previously consolidated in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL No. 1358, is the centrality of allegations relating to MTBE.   *See In re MTBE*, 379 F. Supp. 2d 348, 361 (S.D.N.Y. 2005) ("In this consolidated multi-district litigation, plaintiffs seek relief from defendants' alleged contamination...with the gasoline additive [MTBE]."); *In re MTBE*, 2007 WL 3306690, at \*1 (S.D.N.Y. November 7, 2007) ("In each action, plaintiffs have brought claims against oil companies for their use and handling of [MTBE]...").  The MDL No. 1358 plaintiffs' factual allegations focus on the design, manufacture, nature, and

qualities of MTBE.  *See In re MTBE*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005) (summarizing all MDL plaintiffs' allegations).

21.    In contrast to the plaintiffs' allegations in MDL No. 1358, the *Harrison* and *Ryan* plaintiffs assert no claims regarding the design and manufacture of MTBE and mention MTBE only as one of many components of gasoline of which they complain. (*See Harrison* Complaint ¶¶ 14, 32 (regarding spills of "gasoline containing benzene, MTBE, and other [volatile organic compounds]"); *Ryan* Complaint ¶¶ 20, 37 (same).) Although *Harrison* and *Ryan* allege that MTBE was present in the gasoline that reached their property, neither case seeks to prove that any alleged unique characteristic of MTBE could cause any greater or more extensive damage distinct from the other components of gasoline, such as benzene.  *Harrison* and *Ryan* are "gasoline cases," do not involve any specific factual questions regarding MTBE, and are not appropriate for transfer to the MTBE products liability litigation.  As such, CTO-30 should be vacated.

### 4.    *Harrison* and *Ryan* do not involve parties responsible for the refining, manufacture, or marketing of MTBE or MTBE gasoline

22.    The cases currently consolidated in MDL No. 1358 generally involve defendants that were or are "engaged in…the design, manufacture, and distribution of gasoline containing MTBE."  *In re MTBE*, 379 F. Supp. 2d 348, 364 (S.D.N.Y. 2005); *see also In re MTBE*, 175 F. Supp. 2d 593, 598 (S.D.N.Y. 2001) (noting that defendants are "petroleum companies"); *In re MTBE*, 2007 WL 3306690, at *1 (S.D.N.Y. November 7, 2007) (summarizing that plaintiffs' claims are "against oil companies").  The Panel has found, in other products liability litigations, transfer appropriate when plaintiffs in new cases seek damages against the same defendant, or against a different defendant involved in the same particular transaction.  *See, e.g., In re Ford Motor Co. Crown*

*Victoria Police Interceptor Products Liability Litigation*, 259 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003) (granting transfer where Ford was the common defendant in actions relating to defective design and manufacture); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 227 F. Supp. 2d 1389, 1391 (J.P.M.L. 2002) (transferring cases against Arthur Andersen relating to the collapse of Enron).

23.     The defendants in *Harrison* and *Ryan* are not involved in the design, manufacture, refining, distribution, or marketing of MTBE or gasoline containing MTBE, nor do Plaintiffs allege them to be. 7-Eleven is a convenience store owner/operator that sells gasoline. The other six defendants in these cases are not even involved in the convenience store business. In fact, the *Ryan* plaintiffs' claims against four of the defendants are only regarding the purchase and sale of the *Ryan* plaintiffs' home, alleging that those defendants failed to investigate and/or disclose existing contamination to the *Ryan* plaintiffs prior to the transaction. (*See Ryan* Complaint ¶¶ 19, 99.) While the cases previously transferred to the MDL Court involve oil companies and others involved in the creation of MTBE and MTBE gasoline, these cases do not. *See In re MTBE*, 379 F. Supp. 2d 348, 364 (S.D.N.Y. 2005); *In re MTBE*, 2007 WL 3306690, at *1 (S.D.N.Y. November 7, 2007). Thus, as shown by the causes of action asserted, these cases differ from the MDL No. 1358 cases in that the only defendant in *Harrison* and *Ryan* involved in the gasoline business is a local "downstream handler" (the owner and operator of the Woodbine Store) and that they do not involve any "upstream" actors, such as refiners, manufacturers, or distributors. Because *Harrison* and *Ryan* deal only with distinct, localized claims against distinct, localized defendants, *Harrison* and *Ryan* should not be transferred to MDL No. 1358.

**5.     *Harrison* and *Ryan* do not warrant transfer because they concern case-specific claims and defendant-specific conduct not relevant to any other case pending in the MDL**

24.     The only similarity between *Harrison* and *Ryan* and the cases previously transferred to the MDL Court for pretrial coordination and/or consolidation is that they concern contaminated drinking water. However, the site specific contamination at issue in *Harrison* and *Ryan* does not constitute a "common question of fact" with respect to any site specific contamination alleged in any other cases in MDL No. 1358 so as to warrant transfer pursuant to 28 U.S.C. § 1407.

25.     As set forth above, to warrant transfer of a case for coordinated or consolidated pretrial proceedings, common questions of fact must ***predominate*** over individual questions of fact.  *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation*, 259 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003); *In re Rely Tampon Products Liability Litigation*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982).  The common question of fact being addressed in the MDL (i.e., what manufacturers and refiners knew about the alleged defective nature of MTBE before it was introduced into the stream of commerce throughout the United States), not only do not predominate in *Harrison* and *Ryan*, they do not even exist in these cases.  If *Harrison* and *Ryan* are added to the MDL, then hundreds, if not thousands, of other spill cases across the country also could be added.  These "release" claims thus are not, and cannot be, factually tied to the cases currently in MDL No. 1358, and certainly are not a predominant factual issue that those cases share in common.

26.     Moreover, release or "spill" claims such as those that constitute the *Harrison* and *Ryan* cases are inherently "individual" questions of fact and are not the

type of fact questions that are or can be shared by the products liability cases transferred by the Panel.  Cases found by the Panel to be appropriate for pretrial coordination and/or consolidation have centered on a common event or series of events, such that coordination would serve to eliminate duplicitous discovery of the same issue.  *See, e.g.*, *In re High Sulfur Content Gasoline Products Liability Litigation*, 344 F. Supp. 2d 755, 756-57 (J.P.M.L. 2004) (granting transfer when all cases shared claims of negligence and products liability arising from defective gasoline refined by defendants).  Although *Harrison* and *Ryan* both are focused on the same spill of gasoline allegedly occurring at the Woodbine Store, no other case in MDL No. 1358 shares the relevance of that fact.  Indeed, all pure "spill" cases, like *Harrison* and *Ryan*, relate only to the local events surrounding the release in question *in that case*. Although some of the cases in MDL No. 1358 may include spill claims, those cases are primarily based on common claims relating to the design, manufacture, refining, distribution, and/or marketing of MTBE and the unique properties of a component of gasoline not the gasoline itself.  *See In re MTBE*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005) (summarizing all MDL plaintiffs' allegations).  Even Judge Scheindlin has acknowledged this fact in open court, in a discussion with the MDL plaintiffs' liaison counsel relating to market share theories of liability:

> MR. MCNEW: The defense keeps saying, well, this is a really easy case to prove.  They want to make this a spill case.  This is a products case not a spill case....
>
> THE COURT: Didn't I just say all that?
>
> MR. MCNEW: Yes, you did....
>
> \*       \*       \*

> MR. MCNEW: The problem is [the MDL defendants] keep
> wanting to turn this into a spill case.  They want to take it out
> of the products case that we brought.

(Transcript of June 9, 2005, Status Conference at 62-63.)  Because *Harrison* and *Ryan*

only involve local, individual issues relating to an isolated site-specific release of

gasoline and defendant-specific conduct, and do not involve the common questions of

fact relating to design, manufacture, and distribution of MTBE, *Harrison* and *Ryan*

should not be transferred, and CTO-30 should be vacated.[7]

## B.   Transfer Will Inconvenience the Parties and Witnesses

27.    As set forth above, the factual matters at issue in *Harrison* and *Ryan* are

distinctly local—they involve the localized actions of local players.  Of the witnesses

likely to testify in *Harrison* and *Ryan*, none will have any information relevant to any

other case pending in MDL No. 1358.  Likewise, because of the particular issues at bar

in *Harrison* and *Ryan*, it is unlikely that any testimony taken in MDL No. 1358 will have

any relevance in these cases.  Forcing the parties involved in *Harrison* and *Ryan*—who

include families, local property owners, local businesses, and local real estate entities—

to litigate these claims in New York will be disproportionately burdensome, especially

considering the lack of any benefit to those parties of litigating their claims there rather

than in their home jurisdiction.

---

[7] The predominance of localized, individual "spill" claims at issue in *Harrison* and *Ryan* is analogous to the facts considered by the MDL Court in rejecting certain of the MDL plaintiffs' requests for class certification.  *See In re MTBE*, 209 F.R.D. 323, 349-50 (S.D.N.Y. 2002).  Despite the commonality of the MDL plaintiffs' products liability claims (none of which are present in *Harrison* or *Ryan*), the MDL Court nevertheless rejected class certification, finding that individual factual issues such as those relating to the maintenance of underground storage tanks and other property-specific questions (the primary issues in *Harrison* and *Ryan*) precluded the commonality of the plaintiffs' alleged claims.  *Id.* at 350.

**C.**     **Transfer Will Not Promote Just and Efficient Adjudication**

28.     Finally, but perhaps most importantly, transfer of *Harrison* and *Ryan* will set a dangerous precedent that could potentially cause the progress of MDL No. 1358 to grind to a halt.  Transfer for consolidated pre-trial proceedings is of no benefit where discovery will—as it must here—"focus on localized factual issues."  *In re Grand Funk R.R. Trademark Litigation*, 371 F. Supp. 1084, 1085 (J.P.M.L. 1974).  As explained at length in Part III.A., above, the *Harrison* and *Ryan* cases focus on local issues and bear little resemblance to the cases presently consolidated in MDL No. 1358.  Indeed, *Harrison* and *Ryan* are no different from potentially thousands of mere "spill cases" pending across the country in which plaintiffs complain of gasoline leakage and/or contamination, but in which the design, manufacture, and nature of MTBE is not at issue.

29.     The consolidation of spill cases in the MTBE products liability litigation will have the double-edged effect of (1) disrupting those cases' progress in the local courts[8] and, perhaps more importantly, (2) saddling the MDL Court with hundreds if not thousands of new cases, none of which have any factual claims or controversies in common with any other case.  The transfer of hundreds of new cases to Judge Scheindlin for incorporation into MDL No. 1358 would likely have disastrous results for the progress of the cases already transferred.  Setting such a precedent by the transfer of *Harrison* and *Ryan* will be inherently inefficient and unjust.

---

[8] The trial court judge in *Harrison*, for example, has entered an aggressive scheduling order in that case, including a Summer 2008 trial date that already is affected by the delay from this issue alone.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 11 2007

FILED
CLERK'S OFFICE

WHEREFORE, for the reasons set forth above, Defendant 7-Eleven, Inc. respectfully requests that the Panel vacate Conditional Transfer Order No. 30.

Respectfully submitted,

**MICHAEL A. WALSH**
Texas State Bar No. 00790146
New York Bar No. 2032191
**COURTNEY L. JONES**
Texas State Bar No. 24007457
**JADD F. MASSO**
Texas State Bar No. 24041411
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone: 214-651-4300
Facsimile: 214-651-4330

**ATTORNEYS FOR DEFENDANT
7-ELEVEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served upon the following counsel of record via certified mail, return receipt requested, on December 10, 2007.

Mary V. Koch
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street, 22nd Floor
Baltimore, Maryland 21201
E-mail: mvk@lawpga.com
*Attorneys for all Plaintiffs*

Richard L. Miller
Monshower, Miller & Magrogan, LLP
10451 Twin Rivers Road, Suite 230
Columbia, Maryland 21044
E-mail: rmiller@monmilmag.com
*Attorneys for RE/MAX Greater Metro and Edgar C. Whittington*

Michael D. Lorensen
Bowles Rice McDavid Graff & Love
101 South Queen Street
P.O. Drawer 1419
Martinsburg, West Virginia 25402
*Attorney for Frall Developers, Inc.*

Michael S. Baig
Foley and Lardner LLP
321 N. Clark St. Ste. 2800
Chicago, IL 60610-4764
E-mail: mbaig@foley.com
*Attorney for ENSR Corporation*

Joseph Dowell Edmondson, Jr.
Foley and Lardner LLP
3000 K St. NW Ste. 500
Washington, D.C. 20007
E-mail: jedmondson@foleylaw.com
*Attorney for ENSR Corporation*

Matthew A. Ranck
Eccleston and Wolf PC
2001 S St NW Ste 310
Washington, DC 20009-1125
E-mail: ranck@ewdc.com
*Attorneys for Rollinmead Realty, Inc. and Chris Erichsen*

Robin Greenwald
Weitz & Luxenberg, PC
180 Maiden Lane, 40th Floor
New York, New York 10038
*MDL 1358 Liaison Counsel for Plaintiffs*

Peter John Sacripanti
McDermott Will & Emery LLP
340 Madison Avenue, 14th Floor
New York, New York 10173
*MDL 1358 Liaison Counsel for Defendants*

**MICHAEL A. WALSH**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 1 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | § § § § § § | |
| This Document Relates To: | § § | **MDL Docket No. 1358** |
| *Harrison, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-01179 (D. Md.) | § § § | |
| and | § § | |
| *Ryan, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-02770 (D. Md.) | § § § § | |

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD AS TO DEFENDANT 7-ELEVEN, INC.'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 30

7-Eleven, Inc. ("7-Eleven"), Defendant in the above-referenced causes, hereby submits the following Reasons Why Oral Argument Should be Heard as to 7-Eleven's Motion to Vacate Conditional Transfer Order No. 30 (the "Motion"), filed simultaneously herewith.

Oral argument of the Motion will be desirable to the Panel for the following reasons:

1. These cases lack common questions of fact with cases previously consolidated in MDL No. 1358. Based upon the current claims in *Harrison* and *Ryan*, the extensive discovery and other proceedings in MDL No. 1358 cases will not be relevant to the prosecution or defense of either *Harrison* or *Ryan*. Moreover, discovery and other proceedings in *Harrison* or *Ryan* will not be relevant to the prosecution or defense of any MDL No. 1358 case because these are defendant-specific and site-specific cases and the issues unique to each case must be decided in each case and are not susceptible to, nor do they warrant, global treatment.

2. This transfer involves different "downstream" parties than those involved in other cases in MDL No. 1358. Transfer of most MDL No. 1358 cases has been sought by refiners and manufacturers of MTBE or gasoline, *Harrison* and *Ryan* involve no such parties. In these cases, a different class of parties—local property owners, convenience store operators, and other local businesses—are defendants, all of whom *oppose* transfer. Inclusion of these cases in MDL No. 1358 will inconvenience the parties and multiply the work to be done by most *Harrison* and *Ryan* defendants to familiarize themselves with the extensive opinions, orders, schedules and discovery, while virtually none will be relevant to the claims or defense in these two cases.

3. These cases present parties not subject to prior transfer orders who present issues not previously heard by the panel. These are among the first, if not the first, cases removed to federal court where transfer is being sought by the plaintiffs and not defendants.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 1 2007

FILED
CLERK'S OFFICE

Respectfully submitted,

**MICHAEL A. WALSH**
Texas State Bar No. 00790146
New York Bar No. 2032191
**COURTNEY L. JONES**
Texas State Bar No. 24007457
**JADD F. MASSO**
Texas State Bar No. 24041411
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone: 214-651-4300
Facsimile: 214-651-4330

**ATTORNEYS FOR DEFENDANT
7-ELEVEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served upon the following counsel of record via certified mail, return receipt requested, on December 10, 2007.

Mary V. Koch
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street, 22nd Floor
Baltimore, Maryland 21201
E-mail: mvk@lawpga.com
*Attorneys for all Plaintiffs*

Richard L. Miller
Monshower, Miller & Magrogan, LLP
10451 Twin Rivers Road, Suite 230
Columbia, Maryland 21044
E-mail: rmiller@monmilmag.com
*Attorneys for RE/MAX Greater Metro and Edgar C. Whittington*

Michael D. Lorensen
Bowles Rice McDavid Graff & Love
101 South Queen Street
P.O. Drawer 1419
Martinsburg, West Virginia 25402
*Attorney for Frall Developers, Inc.*

Michael S. Baig
Foley and Lardner LLP
321 N. Clark St. Ste. 2800
Chicago, IL 60610-4764
E-mail: mbaig@foley.com
*Attorney for ENSR Corporation*

Joseph Dowell Edmondson, Jr.
Foley and Lardner LLP
3000 K St. NW Ste. 500
Washington, D.C. 20007
E-mail: jedmondson@foleylaw.com
*Attorney for ENSR Corporation*

Matthew A. Ranck
Eccleston and Wolf PC
2001 S St NW Ste 310
Washington, DC 20009-1125
E-mail: ranck@ewdc.com
*Attorneys for Rollinmead Realty, Inc. and Chris Erichsen*

Robin Greenwald
Weitz & Luxenberg, PC
180 Maiden Lane, 40th Floor
New York, New York 10038
*MDL 1358 Liaison Counsel for Plaintiffs*

Peter John Sacripanti
McDermott Will & Emery LLP
340 Madison Avenue, 14th Floor
New York, New York 10173
*MDL 1358 Liaison Counsel for Defendants*

MICHAEL A. WALSH

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**SCHEDULE OF INVOLVED ACTIONS**

DEC 11 2007

FILED
CLERK'S OFFICE

*Thomas E. Ryan, Jr., Paula C. Ryan, and Thomas E. Ryan, III v. 7-Eleven, Inc., ENSR Corporation, Frall Developers, Inc., RE/MAX Greater Metro, Edgar C. Whittington, Rollinmead Realty, Inc., and Chris Erichsen*

> United States District Court for the District of Maryland, Baltimore Division
> Civil Action No. 1:07-CV-02770
> Hon. J. Frederick Motz

*Michael Harrison, Hope Harrison, and April Matlock v. 7-Eleven, Inc. and Frall Developers, Inc.*

> United States District Court for the District of Maryland, Baltimore Division
> Civil Action No. 1:07-CV-01179
> Hon. William D. Quarles, Jr.


EXHIBIT
A

| | | |
|---|---|---|
| **MICHAEL HARRISON** | * | IN THE |
| and | | |
| **HOPE HARRISON, his Wife,** | * | CIRCUIT COURT |
| **7633 Woodbine Road** | | |
| **Woodbine, Maryland 21797** | * | FOR |
| | | |
| *and* | * | CARROLL COUNTY |
| | | |
| **APRIL MATLOCK** | * | CASE NO.: |
| **7633 Woodbine Road** | | |
| **Woodbine, Maryland 21797** | * | |
| | | |
| Plaintiffs, | * | |
| | | |
| v. | * | |
| | | |
| **7-ELEVEN, INC.** | * | |
| **2828 North Haskell Avenue** | | |
| **Dallas, Texas 75204-2909** | * | |
| | | |
| Serve On: | * | |
| | | |
| **CSC Lawyers Incorporating** | * | |
| **Service, Company** | | |
| **7 St. Paul Street, Suite 1660** | * | |
| **Baltimore, MD 21202** | | |
| | * | |
| *and* | | |
| | * | |
| **FRALL DEVELOPERS, INC.** | * | |
| **PO Box 659** | | |
| **Mount Airy, Maryland 21771** | * | |
| | | |
| Serve On: | * | |
| | | |
| **James M. Frey** | * | |
| **13992 Penn Shop Road** | | |
| **PO Box 659** | | |
| **Mount Airy, Maryland 21771** | * | |
| | | |
| *and* | * | |
| | | |
| | * | |

RCVD 06 MAR30'07 15:29

EXHIBIT
tabbies
**B**

1

BINAYA SHAMI        \*
Woodbine, Maryland

                      \*

      Defendants.             •

                      \*

                      \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by their attorneys, the Law Offices of Peter G. Angelos, a Professional Corporation, for their Complaint against the above-named Defendants, allege, upon information and belief, as follows:

## PARTIES

1. Plaintiffs are the owners and/or residents of the property located at 7633 Woodbine Road, Woodbine, Maryland 21797. Their water supply is contaminated by gasoline and/or gasoline constituents released from the 7-Eleven Store No. 28920 (Store) located at 7627 Woodbine Road, Woodbine, Maryland 21797.

2. Defendant 7-Eleven, Inc., formerly known as Southland Corporation and d/b/a 7-Eleven Store No. 28920(referred to herein as "7-Eleven"), is a Texas corporation with its principal place of business in Dallas, Texas.

3. Defendant 7-Eleven was and is a duly organized foreign corporation authorized to do business in the State of Maryland.

4. Defendant 7-Eleven was and is a duly organized foreign corporation transacting business in the State of Maryland.

5. On information and belief, Defendant 7-Eleven leases the real property and owns the appurtenances known as 7-Eleven Store No. 28920, located at 7627 Woodbine Road, Woodbine, Maryland, 21797, and exercises legal authority over and/or otherwise controls the Store.

2

Defendant 7-Eleven is also responsible for maintaining underground storage tanks and associated piping, above-ground dispensers and associated systems and supplies all fuel products to this location.

6.     Defendant Frall Developers, Inc., a Maryland corporation with its principal place of business in Mount Airy, Maryland, owns the real property located at 7627 Woodbine Road, Woodbine, Maryland 21797.

7.     On information and belief, Defendant Shami operated the 7-Eleven Store No. 28920 including through a licensing, franchise, and/or other agreement with Defendant 7-Eleven during the relevant time periods.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to *inter alia* the provisions of Maryland Code, Courts & Judicial Proceedings Article, Section 1-501. This Court has personal jurisdiction over the Defendants pursuant to *inter alia* the provisions of Courts & Judicial Proceedings Article, Secs. 6-102 and 6-103.

9.     Venue is proper in the Circuit Court for Carroll County pursuant to, *inter alia*, the provisions of the Maryland Code, Courts & Judicial Proceedings Article, Sections 6-201, 6-202.

## FACTS COMMON TO ALL COUNTS

10. This action involves the negligent, wrongful and unlawful release of gasoline and gasoline constituents into the drinking water supply of Plaintiffs, who own and/or reside at the property located at 7633 Woodbine Road, Woodbine, Maryland 21797.  The release was first detected in January of 2002 when a random sample of the drinking water supply well at the Store, located in the Woodbine/Hilltop Shopping Center, 7627 Woodbine Road was found to

3

have a strong odor of petroleum. In February of 2002, the Carroll County Health Department (CCHD) notified the Maryland Department of the Environment-Oil Control Program (MDE) of methyl tertiary butyl ether (MTBE) detected at 4,254.61 parts per billion (ppb) in one of four drinking water supply wells serving the shopping center where the Store is located. The entire shopping center was temporarily closed and a tanker truck was connected to provide an alternative water supply.

11. The Store is an active gasoline station that currently operates four 8,000 gallon underground storage tanks (USTs); three gasoline and one diesel. These are first generation UST systems that consist of cathodically protected steel tanks with double-walled piping. The UST systems were installed in 1986. Stage II vapor recovery upgrades were conducted in January 1995 and automatic tank gauges installed in June 1997. A total of nine monitoring wells are located on-site. Six of these wells are screened at shallow depths while the three drinking water supply wells that once served the shopping center have been converted to recovery and monitoring points.

12. On February 1, 2002 MDE in coordination with the CCHD collected private drinking water samples, including from 7633 Woodbine Road. MTBE was detected at 8.65 ppb. The levels of MTBE in the water supply well at 7633 Woodbine Road continued to rise, requiring a granular activated carbon filtration system (GAC) to be installed in the home.

13. On April 1, 2004, Plaintiffs Michael and Hope Harrison entered into a non-arms length contract for purchase of the premises at 7633 Woodbine Road. On April 4, 2004 Plaintiffs were given access to the home. On April 9, 2004 Plaintiffs went to settlement and assumed ownership of the property. At the time of the purchase of the home, plaintiffs inquired

about the presence of the GAC system.  They were shown test results indicating the water was free of contaminants.

14. Since Plaintiffs Michael and Hope Harrison's purchase of the property in April 2004, Defendant has continued, as required by the MDE, to test the water for the presence of volatile organic compounds (VOCs), including MTBE and benzene.  The levels of MTBE in the well have reached 2,021 ppb.  Benzene was detected in the well on at least two occasions.

15. The levels of MTBE in the Plaintiffs' well have been so high as to require the installation of six separate carbon tanks in the home in an attempt to remove the gasoline contaminants from the water supply.

16. Plaintiffs have made numerous complaints to Defendant 7-Eleven's consultant regarding the taste and odor of their water.  In July 2006, in response to the complaints of Plaintiffs, CCHD tested the water at the residence.  It was determined that the sample taken prior to the filtration system contained 2021 ppb of MTBE.  There were 92 ppb of MTBE in the water that was coming out of Plaintiffs fixtures after having passed through the six filtration units.

17. As a result of the ineffectiveness of the GAC systems, Plaintiffs have been required to bypass their supply well and obtain their water from a tanker truck.  On multiple occasions Plaintiffs have been left without water as a result of problems with this alternative water supply.

18. As a result of the increased levels of gasoline contaminants in Plaintiffs supply well, they have had taste and odor problems with their water.

10. Ingestion of gasoline contaminants contained in Plaintiffs' water supply has caused them to become ill with skin irritations, headaches, nausea, vomiting, inflammation of the throat, gastrointestinal problems and diarrhea.

19.   Gasoline is refined from crude oil, which contains benzene, toluene, ethylbenzene, and xylenes ("BTEX").

20.   Benzene is a known human carcinogen.  Benzene has been linked to various forms of leukemia in humans including acute myeloid leukemia ("AML").  Benzene also causes known acute health effects in humans, including anemia and excessive bleeding.

21.   MTBE is member of a class of chemical compounds, called ethers, whose unique properties include enhanced solubility in water and chemical attraction to water molecules.

22.   MTBE is also slow to degrade or break down once it is released into the environment, particularly in the subsurface of the ground.  Because of its "recalcitrance," plumes of MTBE can persist in underground aquifers for decades.

23.   MTBE has been linked to cancer in animal studies.  It can also cause symptoms such as headaches, nausea, vomiting, diarrhea and skin irritations, as well as other acute conditions.

24.   Clean water is a basic and most precious resource as well as a fundamental commodity of incalculable value.

25.   Defendants maintained water supply wells on the Store property and were aware that residents in the vicinity of the Store, including Plaintiffs, are supplied water through individual wells located on their property.

26.   As a result of Defendants' release of gasoline and gasoline constituents,  Plaintiffs, have an increased risk of developing cancer and other illnesses, and of suffering other acute health effects, and/or the exacerbation of existing medical conditions.

27.   Plaintiffs have incurred damages in an amount representing the cost to restore their property and the underlying soil and groundwater to their original condition.

28.   Plaintiffs' property has and will continue to suffer a substantial, if not total, diminution in value as a result of Defendants' contamination.

29.   The harm suffered by Plaintiffs was the result of Defendants' acts and omissions. Such acts and omissions were actuated by actual malice and/or accompanied by a wanton or willful disregard for the safety of an identifiable and foreseeable group of individuals, including Plaintiffs, who likely would be harmed by the release of gasoline.  Defendants engaged in intentional wrongdoing by failing to appropriately monitor and control underground storage tank systems that they knew were likely to release toxic chemicals into the soil and groundwater that would readily dissolve into and otherwise contaminate drinking water.  Defendants negligently, recklessly and/or intentionally failed to properly remediate or contain the contamination.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

30.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 29 inclusive.

31.   Defendants 7-Eleven and Shami stored and handled gasoline at the Store.

32.   Defendants knew or should have known that if gasoline containing benzene, MTBE, and other VOCs were spilled or otherwise released into the subsurface, it would mix with groundwater and spread its toxic plume to neighboring properties.

33.   Defendants owed Plaintiffs a duty to exercise reasonable care in the storage, handling, cleanup and disposal of their harmful and hazardous gasoline and gasoline constituents.  Defendants had a specific duty to prevent and contain the discharge and release of such substances which might harm the persons, property or economic interests of Plaintiffs. Defendants also had a specific duty to warn or notify Plaintiffs that discharges or releases of

7

these substances had occurred, or were likely to occur in the future, and to warn or notify

residents in the area, including Plaintiffs, of the potential hazards of exposure to these toxic and

hazardous substances.

34.    Defendants breached these duties by their negligent, reckless and intentional

management, storage, and use of its petroleum-related products.  Defendants' negligent,

reckless, and/or intentional conduct has resulted in dangerous releases of hazardous and toxic

substances onto and into Plaintiffs' land and water supply.  These actual and continued releases

and discharges have subjected Plaintiffs to unreasonable risk of harm, threat of future harm, and

actual injuries to their persons, property and economic interests.  Defendants also failed to warn

Plaintiffs of the actual and threatened releases of such substances and of the reasonably

foreseeable effects of such releases, an omission that was negligent, reckless, grossly negligent

and/or intentional.  Defendants failed to and continue to fail to act to contain, remediate and

prevent the further release of these dangerous chemicals from harming Plaintiffs.

35.    Defendants' negligence was a direct and proximate cause of injuries to Plaintiffs

causing actual present harm to Plaintiffs' persons, property and economic interests and creating

an increased risk of future harm to Plaintiffs.  Plaintiffs are entitled to recover damages for such

present and future injuries.

36.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries

and damages.  Damages will be determined at trial and are in excess of TWENTY-FIVE

THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 2: STRICT LIABILITY FOR AN ABNORMALLY DANGEROUS ACTIVITY

37.    Plaintiffs reallege and incorporate by reference as if fully set forth herein the

allegations contained in Paragraphs 1 through 36 inclusive.

38. The use and storage of gasoline containing MTBE is an abnormally dangerous activity in this context, exposing Plaintiffs to a severe risk of harm, regardless of the degree of caution which Defendants might have exercised.

39. As a direct and proximate result of Defendant 7-Eleven and Shami's sale and storage of gasoline, contaminants were released into the environment, thereby injuring Plaintiffs. Injuries include actual present harm to Plaintiffs' property and economic interests, and potential future harm to Plaintiffs due to the ongoing contamination. These injuries constitute the type of harm which make the activities abnormally dangerous.

40. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages for which the Defendants are liable. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 3: PRIVATE NUISANCE

41. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 40 inclusive.

42. At all material times, Plaintiffs were in lawful possession of their land. Defendants 7-Eleven and Shami's use, occupation, storage and sale of gasoline at the Store have resulted in an unreasonable and continuous invasion of Plaintiffs' property, which has substantially, if not totally, diminished the value of the Plaintiffs' property and seriously interfered with their rights to use and enjoy their property.

43. Defendants' unreasonable emission, disposal and release of toxic and hazardous substances into Plaintiffs' drinking water supply is substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

44.   Defendants' interference with Plaintiffs' rights has been so unusual and excessive that it necessarily caused and continues to cause injury, damage, harm and inconvenience to Plaintiffs.

45.   Defendants 7-Eleven and Shami's use, occupation, storage and sale of gasoline at the Store has resulted in an entry and intrusion, and the continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

46.   Defendants' conduct directly and proximately caused and continues to cause Plaintiffs' injuries, including actual or increased harm to their property and economic interests and injuries to their persons.  Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 4: TRESPASS

47.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 46 inclusive.

48.   Plaintiffs Michael and Hope Harrison were at all relevant times in possession of land they owned and/or occupied.

49.   Defendants knew its discharge of contaminants had migrated or was likely to migrate into Plaintiffs' drinking water supply.

50.   Despite Defendants' knowledge of the danger that their activities at the Store posed to Plaintiffs, Defendants intentionally continued the actions and inactions that resulted in the discharge of gasoline contaminants into the groundwater and surrounding soil.

51.   The discharge of contaminants onto and into Plaintiffs' property and drinking water supply has interfered, and continues to interfere, with the Plaintiffs Michael and Hope Harrison's

interests in the exclusive possession of their land, and therefore constitutes an actual and/or constructive trespass to Plaintiffs' property.

52.    Plaintiffs Michael and Hope Harrison's property continues to be threatened, exposed to and/or contaminated by hazardous chemicals and materials emanating from the Store.

53.    Defendants 7-Eleven and Shami's ownership, use, storage and sale of gasoline at the Store have resulted in an entry and intrusion onto Plaintiffs' property without privilege, permission, invitation or justification.

56.    Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons.  Plaintiffs are entitled to recover damages for such injuries.  Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

WHEREFORE, Plaintiffs pray for relief as follows:

a.    Compensatory damages in an amount in excess of this Court's minimal jurisdictional limits, including but not limited to damages representing:

i) costs of providing Plaintiffs with an alternate source of potable water as a result of the contamination of Plaintiffs' drinking water supply;

ii) damages representing the substantial, if not total, diminution in Plaintiffs' property values; and

iii) damages sufficient to compensate Plaintiffs for past, present and future pain and suffering, inconvenience, reduction in quality of life, lost wages and reasonable medical expenses;

iv) costs of providing and maintaining a program of medical monitoring sufficient to allow qualified medical and toxicological professionals to evaluate the effects of Plaintiffs' exposure to the MTBE and other harmful and hazardous substances released by Defendants into Plaintiffs' water supply;

b.   Restoration damages representing the cost to fully investigate, monitor, clean and remediate the contamination that Defendants caused to be discharged onto and into Plaintiffs' land and water supply;

c.   Nominal damages;

d.   Punitive damages;

e.   Entry of judgment in favor of Plaintiffs for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorney's fees recoverable by law; and

f.   Such other and further relief as the nature of Plaintiffs' causes may require.

Respectfully submitted,

Mary V. McNamara-Koch
Craig M. Silverman
Law Offices of Peter G. Angelos, P.C.
100 North Charles Street, 22nd Floor
Baltimore, MD  21201
(410) 649-2000

**Attorneys for Plaintiffs**

**PRAYER FOR JURY TRIAL**

Plaintiffs elect to have their case tried before a jury.

Mary V. McNamara-Koch

| | | |
|---|---|---|
| THOMAS E. RYAN, JR. | * | IN THE |
| and | | |
| PAULA C. RYAN, his Wife, | * | CIRCUIT COURT |
| and | | |
| THOMAS E. RYAN, III, his Son, | * | FOR |
| 7637 Woodbine Road | | |
| Woodbine, Maryland 21797 | * | BALTIMORE COUNTY |
| | | |
| Plaintiffs, | * | CASE NO.: |
| | | |
| v. | * | |
| | | |
| 7-ELEVEN, INC. | * | |
| 2828 North Haskell Avenue | | |
| Dallas, Texas 75204-2909 | * | |
| | | |
| Serve On: | * | |
| | | |
| CSC Lawyers Incorporating | * | |
| Service, Company | | |
| 7 St. Paul Street, Suite 1660 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| and | | |
| | * | |
| ENSR CORPORATION | | |
| 2 Technology Park Drive | * | |
| Westford, Pennsylvania 01886 | | |
| | * | |
| Serve On: | | |
| | * | |
| The Corporation Trust, Inc. | | |
| 300 E. Lombard Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| and | | |
| | * | |
| FRALL DEVELOPERS, INC. | | |
| PO Box 659 | * | |
| Mount Airy, Maryland 21771 | | |
| | * | |
| Serve On: | | |
| | * | |
| James M. Frey | | |
| 13992 Penn Shop Road | * | |
| PO Box 659 | | |

RECEIVED AND FILED

2007 AUG 28   AM 9: 10

CIRCUIT COURT
BALTIMORE COUNTY

1

EXHIBIT

C

tabbies

Mount Airy, Maryland 21771     *

     *and*     *

**RE/MAX GREATER METRO**     *
22 West Road, Suite 100
Baltimore, Maryland 21204     *

      <u>Serve On</u>:     *

      Mary Lou Kaestner     *
      22 West Road, Suite 100
      Baltimore, Maryland 21204     *

      *and*     *

**EDGAR C. WHITTINGTON**     *
22 West Road, Suite 100
Baltimore, Maryland 21204     *

      *and*     *

**ROLLINMEAD REALTY, INC.**     *
1 Galesville Court
Darnestown, Maryland 20878     *

      <u>Serve On</u>:     *

      Lawrence F. Regan, Jr.     *
      51 Monroe Street, Suite 1800
      Rockville, Maryland 20850     *

      *and*     *

**CHRIS ERICHSEN**     *
5 Brighton Drive
Gaithersburg, Maryland 20877     *

      Defendants.     *

      *

**************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by their attorneys, the Law Offices of Peter G. Angelos, a Professional Corporation, for their Complaint against the above-named Defendants, allege, upon information and belief, as follows:

## PARTIES

1.     Plaintiffs are the owners and/or residents of the property located at 7637 Woodbine Road, Woodbine, Maryland 21797. Their water supply is contaminated by gasoline and/or gasoline constituents released from the 7-Eleven Store No. 28920 (Store) located at 7627 Woodbine Road, Woodbine, Maryland 21797.

2.     Defendant 7-Eleven, Inc., formerly known as Southland Corporation and d/b/a 7-Eleven Store No. 28920(referred to herein as "7-Eleven"), is a Texas corporation with its principal place of business in Dallas, Texas.

3.     Defendant 7-Eleven was and is a duly organized foreign corporation authorized to do business in the State of Maryland.

4.     Defendant 7-Eleven was and is a duly organized foreign corporation transacting business in the State of Maryland.

5.     On information and belief, Defendant 7-Eleven leases the real property and owns the appurtenances known as 7-Eleven Store No. 28920, located at 7627 Woodbine Road, Woodbine, Maryland, 21797, and exercises legal authority over and/or otherwise controls the Store. Defendant 7-Eleven is also responsible for maintaining underground storage tanks and associated piping, above-ground dispensers and associated systems and supplies all fuel products to this location.

6.     Defendant ENSR Corporation (referred to herein as "ENSR") is a Delaware corporation with its principal place of business in Westford, Pennsylvania.

3

7.     Defendant ENSR was and is a duly organized foreign corporation authorized to do business in the State of Maryland.

8.     Defendant ENSR was and is a duly organized foreign corporation transacting business in the State of Maryland.

9.     Defendant Frall Developers, Inc., a Maryland corporation with its principal place of business in Mount Airy, Maryland, owns the real property located at 7627 Woodbine Road, Woodbine, Maryland 21797.

10.    Defendant RE/MAX Greater Metro (hereinafter "RE/MAX") is a Maryland business with its principle place of business located at 22 West Road, Suite 100, Baltimore, MD 21204.

11.    On information and belief, Defendant Whittington is a resident of Baltimore County, Maryland.

12.    Defendant Rollinmead Realty, Inc. (hereinafter "Rollinmead") is a Maryland corporation with its principle place of business located at 1 Galesville Court, Darnestown, Maryland 20878.

13.    On information and belief, Defendant Erichsen is a resident of Montgomery County, Maryland.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the subject matter of this action pursuant to *inter alia* the provisions of Maryland Code, Courts & Judicial Proceedings Article, Section 1-501. This Court has personal jurisdiction over the Defendants pursuant to *inter alia* the provisions of Courts & Judicial Proceedings Article, Secs. 6-102 and 6-103.

4

15.    Venue is proper in the Circuit Court for Baltimore County pursuant to, *inter alia*, the provisions of the Maryland Code, Courts & Judicial Proceedings Article, Sections 6-201, 6-202.

## FACTS COMMON TO ALL COUNTS

16.    This action involves the negligent, wrongful and unlawful release of gasoline and gasoline constituents into the drinking water supply of Plaintiffs, who own and/or reside at the property located at 7637 Woodbine Road, Woodbine, Maryland 21797.  The release was first detected in January of 2002 when a random sample of the drinking water supply well at the Store, located in the Woodbine/Hilltop Shopping Center, 7627 Woodbine Road was found to have a strong odor of petroleum.  In February of 2002, the Carroll County Health Department (CCHD) notified the Maryland Department of the Environment-Oil Control Program (MDE) of methyl tertiary butyl ether (MTBE) detected at 4,254.61 parts per billion (ppb) in one of four drinking water supply wells serving the shopping center where the Store is located.  The entire shopping center was temporarily closed and a tanker truck was connected to provide an alternative water supply.

17.    The Store is an active gasoline station that currently operates four 8,000 gallon underground storage tanks (USTs); three gasoline and one diesel.  These are first generation UST systems that consist of cathodically protected steel tanks with double-walled piping.  The UST systems were installed in 1986.  Stage II vapor recovery upgrades were conducted in January 1995 and automatic tank gauges installed in June 1997.  A total of nine monitoring wells are located on-site.  Six of these wells are screened at shallow depths while the three drinking water supply wells that once served the shopping center have been converted to recovery and monitoring points.

18.     On or about February 7, 2002 MDE in coordination with the CCHD collected private drinking water samples, including from 7637 Woodbine Road. MTBE was detected at 9.3 ppb. The levels of MTBE in the water supply well at 7637 Woodbine Road continued to rise, requiring a granular activated carbon filtration system (GAC) to be installed in the home. The intended purpose of a GAC system is to remove MTBE and other gasoline constituents from the water prior to the water entering the home.

19.     On or about August 28, 2004, Plaintiff Paula Ryan entered into an arms length contract for the purchase of the premises at 7637 Woodbine Road with Matthew J. Freise. Defendant RE/MAX brokered the transaction, and it's agent Defendant Whittington represented Freise as the seller's agent. Defendants Rollinmead and Erichsen represented Plaintiff ryan. Neither the fact of the MTBE contamination, nor the nature or purpose of the GAC system, was disclosed by Defendants RE/MAX or Whittington to Plaintiff or Plaintiff's agent at the time they contracted to buy the home. On or about October 8, 2004 Plaintiff Ryan went to settlement and assumed ownership of the property. Plaintiffs currently own the home as tenants by entireties.

20.     Since Plaintiff closed on the property in October 2004, Defendant 7-Eleven through its environmental consultant, Defendant ENSR, has, tested the water for the presence of volatile organic compounds (VOCs), including MTBE and benzene. The levels of MTBE in the well have reached 227 ppb.

21.     The levels of MTBE in the Plaintiffs' well have been so high as to require the installation of three separate carbon tanks in the home in an attempt to remove the gasoline contaminants from the water supply.

22.     Despite the installation of a GAC system, numerous well test results revealed detectable levels of MTBE coming out of Plaintiffs fixtures after having passed through the three filtration units.

23.     Ingestion of gasoline contaminants contained in Plaintiffs' water supply has caused them to become ill.

24.     Gasoline is refined from crude oil, which contains benzene, toluene, ethylbenzene, and xylenes ("BTEX").

25.     Benzene is a known human carcinogen. Benzene has been linked to various forms of leukemia in humans including acute myeloid leukemia ("AML"). Benzene also causes known acute health effects in humans, including anemia and excessive bleeding.

26.     MTBE is member of a class of chemical compounds, called ethers, whose unique properties include enhanced solubility in water and chemical attraction to water molecules.

27.     MTBE is also slow to degrade or break down once it is released into the environment, particularly in the subsurface of the ground. Because of its "recalcitrance," plumes of MTBE can persist in underground aquifers for decades.

28.     MTBE exposure substantially increases the risk of developing adverse health effects including cancers in humans. MTBE is known to be carcinogenic in animals, and animal studies reveal tumors associated with MTBE that may also occur in humans. The animal studies indicate that certain cancers, such as leukemia and lymphoma, can arise from exposure to MTBE via ingestion, inhalation and contact from ordinary household water use. The animal studies also identify testicular tumors, hepatocellular (liver) adenomas and carcinomas, and renal tubular adenomas and carcinomas as being associated with exposure to MTBE.

7

29.   Clean water is a basic and most precious resource as well as a fundamental commodity.

30.   Defendant 7-Eleven maintained water supply wells on the Store property and were aware that residents in the vicinity of the Store, including Plaintiffs, are supplied water through individual wells located on their property.

31.   As a result of Defendant 7-Eleven's release of gasoline and gasoline constituents, and Defendant ENSR's failure to properly remediate the release, Plaintiffs have an increased risk of developing cancer and other illnesses, and of suffering other acute health effects, and/or the exacerbation of existing medical conditions.

32.   Plaintiffs have incurred damages in an amount representing the cost to restore their property and the underlying soil and groundwater to their original condition.

33.   Plaintiffs' property has and will continue to suffer a substantial, if not total, diminution in value as a result of Defendant 7-Eleven's contamination and Defendant ENSR's actions in contaminating, and failing to properly remediate and restore, Plaintiffs' property.

34.   The harm suffered by Plaintiffs was the result of the acts and omissions of all Defendants.  Such acts and omissions were actuated by actual malice and/or accompanied by a wanton or willful disregard for the safety of an identifiable and foreseeable group of individuals, including Plaintiffs, who likely would be harmed by the release of gasoline.  Defendant 7-Eleven engaged in intentional wrongdoing by failing to appropriately monitor and control underground storage tank systems that they knew were likely to release toxic chemicals into the soil and groundwater that would readily dissolve into and otherwise contaminate drinking water. Defendant 7-Eleven and its environmental consultant, Defendant ENSR, negligently, recklessly and/or intentionally failed to properly remediate or contain the contamination.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

#### (DEFENDANTS 7-ELEVEN AND FRALL DEVELOPERS)

35.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 34 inclusive.

36.   Defendant 7-Eleven stored and handled gasoline at the Store.

37.   Defendant 7-Eleven knew or should have known that if gasoline containing benzene, MTBE, and other VOCs were spilled or otherwise released into the subsurface, it would mix with groundwater and spread its toxic plume to neighboring properties.

38.   Defendant 7-Eleven owed Plaintiffs a duty to exercise reasonable care in the storage, handling, cleanup and disposal of their harmful and hazardous gasoline and gasoline constituents.  Defendant had a specific duty to prevent and contain the discharge and release of such substances which might harm the persons, property or economic interests of Plaintiffs. Defendant also had a specific duty to warn or notify Plaintiffs that discharges or releases of these substances had occurred, or were likely to occur in the future, and to warn or notify residents in the area, including Plaintiffs, of the potential hazards of exposure to these toxic and hazardous substances.

39.   Defendant 7-Eleven breached these duties by its negligent, reckless and intentional management, storage, and use of its petroleum-related products.  Defendant's negligent, reckless, and/or intentional conduct has resulted in dangerous releases of hazardous and toxic substances onto and into Plaintiffs' land and water supply.   These actual and continued releases and discharges have subjected Plaintiffs to unreasonable risk of harm, threat of future harm, and actual injuries to their persons, property and economic interests.  Defendants also failed to warn

Plaintiffs of the actual and threatened releases of such substances and of the reasonably foreseeable effects of such releases, an omission that was negligent, reckless, grossly negligent and/or intentional. Defendants failed to and continue to fail to act to contain, remediate and prevent the further release of these dangerous chemicals from harming Plaintiffs.

40. Defendant 7-Eleven's negligence was a direct and proximate cause of injuries to Plaintiffs causing actual present harm to Plaintiffs' persons, property and economic interests and creating an increased risk of future harm to Plaintiffs. Plaintiffs are entitled to recover damages for such present and future injuries.

41. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 2: STRICT LIABILITY FOR AN ABNORMALLY DANGEROUS ACTIVITY

### (DEFENDANT'S 7-ELEVEN AND FRALL DEVELOPERS)

42. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 41 inclusive.

43. The use and storage of gasoline containing MTBE is an abnormally dangerous activity in this context, exposing Plaintiffs to a severe risk of harm, regardless of the degree of caution which Defendants might have exercised.

44. As a direct and proximate result of Defendant 7-Eleven's sale and storage of gasoline, contaminants were released into the environment, thereby injuring Plaintiffs. Injuries include actual present harm to Plaintiffs' property and economic interests, and potential future harm to Plaintiffs due to the ongoing contamination. These injuries constitute the type of harm which make the activities abnormally dangerous.

45.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages for which the Defendants are liable. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

COUNT 3: NEGLIGENCE

(DEFENDANT ENSR)

46.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 45 inclusive.

47.   At or around the time in which the MDE was notified of the release from the Store, Defendant 7-Eleven employed Defendant ENSR, an international environmental consulting firm, who holds itself out to the public as knowledgeable in the remediation of environmentally contaminated sites, as their environmental consultant responsible for remediating the contamination on and emanating from the site.

48.   By accepting employment by Defendant 7-Eleven in the capacity of environmental consultant, Defendant ENSR was charged with the responsibility of preventing further harm to Plaintiffs' well water, remediating the existing harm to Plaintiffs' well water, and testing and reporting test results to Plaintiffs' regarding the status and condition of their water supply well. As such, Defendant ENSR undertook a duty to Plaintiffs to act with skill and care of a reasonable environmental consultant under similar circumstances.

49.   Defendant ENSR failed to implement a plan reasonably suitable to contain and remediate the contamination emanating from the Store; and, failed to use the skill and degree of care that a reasonable environmental consultant would be expected to utilize under similar circumstances.

50. Defendant ENSR also failed to timely notify anyone in the area, including Plaintiffs, of elevated MTBE levels in their well water, which prevented Plaintiffs from making efforts to protect their health and property.

51. By failing to exercise the degree of care and skill of a reasonable environmental consultant under similar circumstances, and by failing to provide timely notice to Plaintiffs of increased MTBE levels in their well, Defendant ENSR breached the duty it owed to Plaintiffs.

52. Defendant ENSR's conduct directly and proximately caused and continues to cause Plaintiffs' injuries, including actual or increased harm to their property and economic interests and injuries to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 4: PRIVATE NUISANCE

### (DEFENDANTS 7-ELEVEN, ENSR AND FRALL DEVELOPERS)

53. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 52 inclusive.

54. At all material times, Plaintiffs were in lawful possession of their land. Defendant 7-Eleven's use, occupation, storage and sale of gasoline at the Store have resulted in an unreasonable and continuous invasion of Plaintiffs' property, which has substantially, if not totally, diminished the value of the Plaintiffs' property and seriously interfered with their rights to use and enjoy their property.

55. Defendant 7-Eleven's unreasonable emission, disposal and release of toxic and hazardous substances, and Defendant ENSR's failure to contain and remediate said release, into

Plaintiffs' drinking water supply is substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

56.   Defendant 7-Eleven's and Defendant ENSR's interference with Plaintiffs' rights has been so unusual and excessive that it necessarily caused and continues to cause injury, damage, harm and inconvenience to Plaintiffs.

57.   Defendant 7-Eleven's use, occupation, storage and sale of gasoline at the Store has resulted in an entry and intrusion, and the continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

58.   Defendant ENSR's failure to contain and remediate the release of gasoline constituents by Defendant 7-Eleven resulted in a continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

59.   Defendants' conduct directly and proximately caused and continues to cause Plaintiffs' injuries, including actual or increased harm to their property and economic interests and injuries to their persons.   Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 5: TRESPASS

### (DEFENDANTS 7-ELEVEN, ENSR AND FRALL DEVELOPERS)

60.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 59 inclusive.

61.   Plaintiffs Thomas and Paula Ryan were at all relevant times in possession of land they owned and/or occupied.

62.   Defendant 7-Eleven and Defendant ENSR knew the discharge of contaminants from the Store had migrated or was likely to migrate into Plaintiffs' drinking water supply.

63.   Despite Defendant 7-Eleven's and Defendant ENSR's knowledge of the danger that their activities at the Store posed to Plaintiffs, they intentionally continued the actions and inactions that resulted in the discharge of gasoline contaminants into the groundwater and surrounding soil.

64.   The discharge of contaminants onto and into Plaintiffs' property and drinking water supply has interfered, and continues to interfere, with the Plaintiffs' interests in the exclusive possession of their land, and therefore constitutes an actual and/or constructive trespass to Plaintiffs' property.

65.   Plaintiffs' property continues to be threatened, exposed to and/or contaminated by hazardous chemicals and materials emanating from the Store.

66.   Defendant 7-Eleven's ownership, use, storage and sale of gasoline at the Store have resulted in an entry and intrusion onto Plaintiffs' property without privilege, permission, invitation or justification.

67.   Defendant ENSR's failure to contain and remediate the release of gasoline constituents by Defendant 7-Eleven resulted in a continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

68.   Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons.  Plaintiffs are entitled to recover damages for such injuries.  Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

COUNT 6: INTENTIONAL MISREPRESENTATION

(DEFENDANTS RE/MAX AND WHITTINGTON)

69.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 68 inclusive.

70.     On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

71.     Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

72.     Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein.  Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

73.     Additionally, Defendant Whittington made affirmative statements to Plaintiffs regarding the cleanliness of the water being drawn from their well.

74.     Defendants' failure to disclose the existence of the contamination and the GAC system constituted a failure to disclose a material fact, which it had a duty to disclose.

75.     Defendant Whittington and Defendant RE/MAX failed to disclose the existence of the contamination with the intent to deceive Plaintiffs.  Defendants knew that Plaintiffs would not have purchased the property had they known of the contamination thereon.

76.     Plaintiff relied on the belief that the property they were purchasing was free from gasoline constituent contamination, and they were justified in their reliance.

77.     Defendant Whittington and Defendant RE/MAX's conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons.  Plaintiffs are entitled to recover damages for such injuries.  Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

COUNT 7: NEGLIGENT MISREPRESENTATION

(DEFENDANTS RE/MAX AND WHITTINGTON)

78.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 77 inclusive.

79.     On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

80.     Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

81.     Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein.  Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

82. Additionally, Defendant Whittington made affirmative statements to Plaintiffs regarding the cleanliness of the water being drawn from their well.

83. Defendants Whittington and RE/MAX had a duty of care to Plaintiffs. This duty required the disclosure of all material information and the transmittal of accurate information to Plaintiffs. The statements that the water being provided to the home was free from VOCs were false.

84. Defendants Whittington and RE/MAX were negligent in the assertion of these false statements and in the omission of the material information relating to the presence of VOCs. Careful investigation by Defendants, or a review of available information in their possession, would have enabled them to appreciate that the water was contaminated by VOCs.

85. The statements made by Defendant Whittington were made with the intention of having Plaintiffs act and rely upon the negligent assertions. Defendants Whittington and RE/MAX were desirous of inducing Plaintiffs to follow-through with the purchase of the property.

86. Defendants Whittington and RE/MAX knew that Plaintiffs would likely rely upon, and were in fact, relying upon their negligent statements/omissions and that Plaintiffs would incur damage.

87. Relying on the misrepresentations, Plaintiffs executed the settlement documents and closed on the purchase of the property. Plaintiffs were justified in their reliance.

88. Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will

be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

**COUNT 8: NEGLIGENCE**

**(DEFENDANTS RE/MAX AND WHITTINGTON)**

89.    Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 88 inclusive.

90.    On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

91.    Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

92.    Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein. Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

93.    As a result of the agent-customer relationship established between Defendants and Plaintiffs, Defendants owed Plaintiffs a duty of care to advise Plaintiffs of all pertinent facts relating to the property, including but not limited to, actual and known latent defects.

94.    By failing to properly inform Plaintiffs of the contamination on the property and the fact and purpose of the GAC system installed in the home, Defendants negligently breached

the duty owed to Plaintiffs to advise them of all pertinent facts relating to the transaction thereby failing to act with the care and skill of a reasonably competent real estate agent/broker.

95.   As a direct and proximate result of Defendant's negligent actions, Plaintiffs have suffered injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 8: NEGLIGENCE

### (DEFENDANTS ROLLINMEAD AND ERICHSEN)

96.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 95 inclusive.

97.   On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

98.   Plaintiff was represented in the aforesaid transaction by Defendant Rollinmead and its licensed real estate agent, Defendant Erichsen. At all times relevant hereto, Defendant Erichsen acted within the scope of his employment and/or as an agent for Defendant Rollinmead, and Defendant Rollinmead is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

99.   While viewing the property with Plaintiffs, Defendant Erichsen inquired about the purpose of water filtration tanks located in the basement. The seller and/or seller's agent informed that there was once a problem with the water, but that the problem no longer existed. Defendant Erichsen failed to make any further inquiry regarding the tanks and/or the water problems.

100.   As a result of the principal-agent relationship established between Defendant Erichsen and Plaintiff, Defendant owed Plaintiff a fiduciary duty, including a duty to exercise reasonable care and due diligence in investigating the condition of the property.

101.   By failing to follow-up on his inquiry regarding the purpose of the water filtration tanks, Defendant Erichsen negligently breached the duty owed to Plaintiffs to exercise reasonable care and due diligence in investigating the condition of the property thereby failing to act with the care and skill of a reasonably competent real estate agent.

102.   As a direct and proximate result of Defendants' negligent actions, Plaintiffs have suffered injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

WHEREFORE, Plaintiffs pray for relief as follows:

a.   Compensatory damages in an amount in excess of this Court's minimal jurisdictional limits, including but not limited to damages representing:

i) costs of providing Plaintiffs with an alternate source of potable water as a result of the contamination of Plaintiffs' drinking water supply;

ii) damages representing the substantial, if not total, diminution in Plaintiffs' property values; and

iii) damages sufficient to compensate Plaintiffs for past, present and future pain and suffering, inconvenience, reduction in quality of life, lost wages and reasonable medical expenses;

iv) costs of providing and maintaining a program of medical monitoring sufficient to allow qualified medical and toxicological professionals to evaluate the effects of Plaintiffs' exposure to the MTBE and other harmful and hazardous substances released by Defendants into Plaintiffs' water supply;

b. Nominal damages;

c. Punitive damages;

d. Entry of judgment in favor of Plaintiffs for litigation costs and expenses reasonably incurred; pre-judgment interest; post-judgment interest; and attorney's fees recoverable by law; and

e. Such other and further relief as the nature of Plaintiffs' causes may require.

Respectfully submitted,

Mary V. McNamara-Koch
Craig M. Silverman
Law Offices of Peter G. Angelos, P.C.
100 North Charles Street, 22nd Floor
Baltimore, MD 21201
(410) 649-2000

Attorneys for Plaintiffs

## PRAYER FOR JURY TRIAL

Plaintiffs elect to have their case tried before a jury.

Mary V. McNamara-Koch

RECEIVED AND FILED

2007 AUG 28  AM 9: 10

CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY