**MDL 1358**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: METHYL TERTIARY BUTYL     *
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION     *

                      MDL Docket No. 1358

Thomas E. Ryan, Jr., et al. v. 7-Eleven, Inc., et al.,     *
    D. Maryland, C.A. No. 1:07-2770 JFM

                        *

*    *    *    *    *    *    *    *    *    *    *    *    *

## DEFENDANTS ROLLINMEAD REALTY, INC., CHRIS ERICHSEN, RE/MAX GREATER METRO, AND EDGAR C. WHITTINGTON'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-30)

COME NOW Defendants Rollinmead Realty, Inc., Chris Erichsen, Re/MAX Greater Metro, and Edgar C. Whittington ("Real Estate Defendants"), by and through undersigned counsel, and hereby move pursuant to Rule 7.4(d) of the United States Judicial Panel on Multidistrict Litigation ("JPML"), to vacate the Conditional Transfer Order (CTO-30) entered in the above-referenced case on November 8, 2007.  In support of their Motion, Real Estate Defendants state the following:

(1)     This action was removed from the Circuit Court for Baltimore County, Maryland and is currently pending in the U.S. District Court for the District of Maryland (Northern Division) before Judge J. Frederick Motz.

(2)     On October 25, 2007, Plaintiffs filed a Notice of Related Tag-Along Actions in the JPML and a Motion to Stay pending JPML action in the District Court.

(3)     The JPML entered a Conditional Transfer Order (CTO-30) on November 8, 2007 and ordered Notices of Opposition to be filed by November 26, 2007.

(4)     Pursuant to the consent of all parties, Judge Motz granted the Motion to Stay on November 14, 2007.

IMAGED DEC 13 2007

**OFFICIAL FILE COPY**

1

PLEADING NO. 263

(5)   Each defendant filed a Notice of Opposition with the JPML on November 26, 2007, making the deadline to file Motions to Vacate and supporting Briefs December 11, 2007.

(6)   Because this action is not sufficiently similar to the other MDL-1358 cases and transfer would not be convenient for the parties and witnesses, the JPML should vacate the Conditional Transfer Order and allow this action to remain in the U.S. District Court for the District of Maryland for all purposes.

(7)   In further support of this Motion, Real Estate Defendants refer the JPML to the supporting Brief filed contemporaneously herewith and incorporated herein.

WHEREFORE, Real Estate Defendants respectfully request that the Panel:

    a.   Schedule oral argument on this Motion;

    b.   Vacate the instant Conditional Transfer Order (CTO-30) as it applies to the above-captioned matter;

    c.   Order that the above-captioned matter remain in the United States District Court for the District of Maryland for all purposes; and

    d.   Order such other relief as the Panel deems to be just and appropriate.

Dated: December 11, 2007               Respectfully submitted,

Matthew A. Ranck (D. Md. #23762)
ECCLESTON AND WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
(202) 857-0762 (facsimile)
ranck@ewdc.com
*Attorney for Defendants Rollinmead Realty, Inc. and Chris Erichsen*

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 2 2007

FILED
CLERK'S OFFICE

*Richard Miller/MR w/permission*

Richard L. Miller (D. Md. #11045)
MONSHOWER, MILLER & MAGROGAN LLP
10451 Twin Rivers Road
Suite 230
Columbia, MD 21044
*Attorney for Defendants Re/MAX Greater*
*Metro and Edgar C. Whittington*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of December, 2007, a copy of the foregoing

Defendants' Motion to Vacate Conditional Transfer Order (CTO-30) and Brief in Support

thereof was mailed via certified mail, return receipt requested, to:

> Michael S. Baig
> FOLEY & LARDNER LLP
> 321 North Clark Street
> Suite 2800
> Chicago, IL 60610-4764
>
> Joseph Dowell Edmondson, Jr.
> FOLEY & LARDNER LLP
> 3000 K Street, N.W.
> Suite 500
> Washington, D.C. 20007-5109
>
> Robin Greenwald
> WEITZ & LUXEMBERG PC
> 180 Maiden Lane
> 40th Floor
> New York, NY 10038
>
> Mary V. Koch
> LAW OFFICES OF PETER G. ANGELOS P.C.
> One Charles Center
> 100 North Charles Street
> 22nd Floor
> Baltimore, MD 21201-3804

Michael D. Lorensen
BOWLES, RICE, MCDAVID, GRAFF & LOVE
101 South Queen Street
P.O. Drawer 1419
Martinsburg, WV 25402-1419

Richard L. Miller
MONSHOWER, MILLER & MAGROGAN, LLP
10451 Twin Rivers Road
Suite 230
Columbia, MD 21044

Peter J. Sacripanti
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
14th Floor
New York, NY 10173-1922

Michael A. Walsh
STRASBURGER & PRICE LLP
901 Main Street
Suite 4400
P.O. Box 50100
Dallas, TX 75202-3794

Matthew A. Ranck

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 12 2007

IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE")
PRODUCTS LIABILITY LITIGATION

MDL No. 1358

FILED
CLERK'S OFFICE

## PANEL SERVICE LIST (CTO-30)

Thomas E. Ryan, Jr., et al. v. 7-Eleven, Inc., et al., D. Maryland, C.A. No. 1:07-2770

Michael S. Baig
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60610-4764

Joseph Dowell Edmondson, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W.
Suite 500
Washington, DC 20007-5109

Robin Greenwald
WEITZ & LUXENBERG PC
180 Maiden Lane
40th Floor
New York, NY 10038

Mary V. Koch
LAW OFFICES OF PETER G ANGELOS PC
One Charles Center
100 North Charles Street
22nd Floor
Baltimore, MD 21201-3804

Michael D. Lorensen
BOWLES RICE MCDAVID GRAFF & LOVE
101 South Queen Street
P.O. Drawer 1419
Martinsburg, WV 25402-1419

Richard L. Miller
MONSHOWER MILLER & MAGROGAN LLP
10451 Twin Rivers Road
Suite 230
Columbia, MD 21044

Matthew A. Ranck
ECCLESTON & WOLF PC
2001 S Street, NW
Suite 310
Washington, DC 20009-1125

Peter J. Sacripanti
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
14th Floor
New York, NY 10173-1922

Michael A. Walsh
STRASBURGER & PRICE LLP
901 Main Street
Suite 4400
P.O. Box 50100
Dallas, TX 75202-3794

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 12 2007

FILED
CLERK'S OFFICE

## SCHEDULE OF INVOLVED ACTIONS

*Thomas E. Ryan, Jr , Paula C. Ryan, and Thomas E. Ryan, III v. 7-Eleven, Inc., ENSR Corporation, Frall Developers, Inc., RE/MAX Greater Metro, Edgar C. Whittington, Rollinmead Realty, Inc., and Chris Erichsen*

United States District Court for the District of Maryland, Baltimore Division

Civil Action No. 1:07-CV-02770

Hon. J. Frederick Motz

*Michael Harrison, Hope Harrison, and April Matlock v. 7-Eleven, Inc. and Frall Developers, Inc.*

United States District Court for the District of Maryland, Baltimore Division

Civil Action No. 1:07-CV-01179

Hon. William D. Quarles, Jr.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 12 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: METHYL TERTIARY BUTYL     *
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION     *
                                   MDL Docket No. 1358
Thomas E. Ryan, Jr., et al. v. 7-Eleven, Inc., et al.,     *
     D. Maryland, C.A. No. 1:07-2770 JFM
                                   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANTS ROLLINMEAD REALTY, INC., CHRIS ERICHSEN, RE/MAX GREATER METRO, AND EDGAR C. WHITTINGTON'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-30)

COME NOW Defendants Rollinmead Realty, Inc., Chris Erichsen, Re/MAX Greater Metro, and Edgar C. Whittington ("Real Estate Defendants"), by and through undersigned counsel, and hereby move pursuant to Rule 7.4(d) of the United States Judicial Panel on Multidistrict Litigation ("JPML"), to vacate the Conditional Transfer Order (CTO-30) entered in the above-captioned case on November 8, 2007. In support of their Motion, Real Estate Defendants state the following.

### BACKGROUND

As to the background of the above-captioned matter, the Real Estate Defendants join in the Brief filed by Defendant 7-Eleven, Inc. ("7-Eleven").

### ARGUMENT

The Real Estate Defendants join in the Brief filed by 7-Eleven and the arguments raised therein as they pertain to the law on Multidistrict Litigation ("MDL") transfers, the JPML standard of review on such issues, and transfer of this case in general.

The Real Estate Defendants have filed a separate Motion to Vacate and supporting Brief, however, as the Plaintiffs' claims against them are unique when compared with the other MDL-1358 cases. In this regard, MDL-1358 was formed, as expressly stated in the JPML-assigned

1

caption, to litigate *products liability* cases. Specifically, the classes of plaintiffs in those cases seek to hold defendants liable for the marketing and/or distribution of gasoline containing MTBE. However, the only allegations against the Real Estate Defendants in the instant case concern negligence and alleged misrepresentations regarding the purchase and sale of a single piece of residential real estate. Plaintiffs do not allege that the Real Estate Defendants were at all complicit in any marketing or distribution of gasoline containing MTBE. As evidenced by the two issues identified in the original MDL-1358 Transfer Order, MDL-1358 was clearly not created to litigate claims such as those advanced against the Real Estate Defendants. To the Real Estate Defendants' knowledge, no other case transferred to MDL-1358 involves claims of professional malpractice by real estate brokers or agents.

*Koch v. Hicks, et al.*, 1:04-cv-03345-MJG, a case transferred in 2005 by the JPML from the U.S. District Court for the District of Maryland, appears facially similar to the instant case but is distinguishable in several respects. Most significantly, in *Koch*, no real estate brokers or agents were included as defendants. The only defendants were the franchisee of the individual Exxon gasoline station at issue and ExxonMobil Corporation ("ExxonMobil"). The mere fact that MTBE is at issue in the instant case does not render it similar enough to the other MDL-1358 cases to be transferred and consolidated with those, especially as it pertains to the Real Estate Defendants.

Moreover, even the claims asserted against 7-Eleven in the instant case are different than those asserted against ExxonMobil in *Koch*.[1] Importantly, Paragraph 19 of the *Koch* Complaint alleges:

---

[1] Additionally, a clear reason for the transfer in *Koch*, as stated in the JPML Transfer Order of June 17, 2005, was that "[t]he oil company defendants [ExxonMobil Corporation, as it pertained to *Koch*] favor inclusion of these actions in MDL-1358 proceedings." Obviously the defendants in the instant action do not favor such a transfer.

> Defendants intentionally, knowingly, and deliberately withheld from all non-oil-industry parties information identified in the preceding paragraph [the possibility of groundwater contamination], including information known to Defendants related to: specific incidents of groundwater contamination; health dangers posed to humans by MTBE contamination (including those resulting from the failure to store MTBE properly); and/or other adverse consequences resulting from the failure to safely store MTBE ... Indeed, in 1986-87, Defendants took ... public positions that ... Defendants knew to be false (or misleading); this false information being put forth by Defendants exclusively for their own benefit.

Thus, the allegations in *Koch* are more akin to the misleading marketing/distribution of MTBE that MDL-1358 was intended to litigate than to the allegations in the instant case. In this regard, the Complaint in the instant case contains no allegations of misleading the public and/or disseminating false information regarding MTBE. In fact, the instant Complaint merely alleges that 7-Eleven allowed gasoline containing MTBE to enter the well-water of Plaintiffs. *See generally*, Compl., *Ryan, et al. v. 7-Eleven, Inc., et al.*, attached hereto as Exhibit 1.

Furthermore, Plaintiffs are incorrect in their Notice of Related Tag-Along Actions when they state that the instant case "involve[s] issues of fact that are in common with those involved in actions previously transferred ... Specifically, the cases involve the question 'whether plaintiffs sustained drinking water contamination as a result of MTBE contamination.'" Notice of Related Tag-Along Actions, *Ryan, et al. v. 7-Eleven, Inc., et al.*, No. 1:07-2770, Doc. 21. In addition to the fact that the other common issue identified by the JPML in its original transfer order of October 10, 2000 is not present in the instant case, there are distinct plaintiffs in each MDL-1358 case. As such, each plaintiff may have varying degrees and forms of illness and/or property damage, if at all. Thus, by definition, the issue of whether plaintiffs sustained contamination cannot be common among cases with different plaintiffs.

Because the instant case is not sufficiently similar to other MDL-1358 cases, insofar as they do not concern real estate brokers or agents, and this case does not concern misleading marketing or distribution of MTBE contaminates, transfer will not "promote the just and efficient conduct" of the litigation. 28 U.S.C § 1407(a). "Congregating all these actions ... is necessary in order to avoid duplication of discovery ... and conserve the resources of the parties, their counsel and the judiciary. As a result, resolution of overlapping issues – relating to discovery concerning these similar practices and class certification -- will be streamlined." *MDL-1453—In Re Immunex Corp. Average Wholesale Price Litigation; MDL-1454—In Re Pharmacia Corp. Average Wholesale Price Litigation; MDL-1455—In Re Glaxosmithkline Corp. Average Wholesale Price Litigation: MDL-1456—In Re Baxter International, Inc./Pharmaceutical Industry Wholesale Price Litigation*, 201 F. Supp. 2d 1378, 1380 (JPML 2002).

In the instant action, transfer and centralization will undoubtedly not serve to avoid the duplication of discovery because the instant case does not have issues substantially in common with the other MDL-1358 actions. Specifically as it pertains to the Real Estate Defendants, discovery will involve distinct issues not affecting the other defendants and vice versa. In this regard, this action will involve interrogatories, production of documents, and depositions of expert witnesses pertaining to the standard of care owed by real estate brokers and agents in similar circumstances, an issue not involved in the other MDL-1358 cases. In addition, as previously mentioned, because each case may involve varying degrees and forms of damage, duplicate depositions and other discovery may still be required even after transfer. As such, transfer may actually serve to impede the progress of MDL-1358 rather than promote efficiency.

Finally, transfer will be exceedingly prejudicial to the Real Estate Defendants. In this regard, as the claims against the Real Estate Defendants involve allegations of malpractice in

providing professional services, the allegations have the potential to be far more harmful than the allegations against the other defendants in the instant action.  A case such as the one at bar against professional service providers involves far more than money, as it has the potential to damage a defendant's livelihood, reputation in the community, and ability to carry on a successful professional practice.  Thus, if the instant case is transferred, Real Estate Defendants will be compelled to monitor all filings and participate in all discovery and hearings (even depositions and hearings seemingly unrelated to the allegations against Real Estate Defendants) due to the possibility that a court order or an answer in a deposition could serve to bind Real Estate Defendants to a compromising position.  For these movants, who are small-scale real estate brokers/agents, the cost of this participation will be astronomical.  Therefore, for the Real Estate Defendants, transfer will certainly not serve to conserve the parties' resources.

WHEREFORE, the Real Estate Defendants respectfully request that the Panel·

a.   Schedule oral argument on this Motion;

b.   Vacate the instant Conditional Transfer Order (CTO-30) as it applies to the above-captioned matter;

c.   Order that the above-captioned matter remain in the United States District Court for the District of Maryland for all purposes; and

d.   Order such other relief as the Panel deems to be just and appropriate.

Dated: December 11, 2007                    Respectfully submitted,


Matthew A. Ranck (D. Md. #23762)
Eccleston and Wolf, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
(202) 857-0762 (facsimile)
ranck@ewdc.com
*Attorney for Defendants Rollinmead*
*Realty, Inc. and Chris Erichsen*


Richard L. Miller (D. Md. #11045)
MONSHOWER, MILLER & MAGROGAN LLP
10451 Twin Rivers Road
Suite 230
Columbia, MD 21044
*Attorney for Defendants Re/MAX Greater*
*Metro and Edgar C. Whittington*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 2 2007

FILED
CLERK'S OFFICE

| | | |
|---|---|---|
| **THOMAS E. RYAN, JR.** | * | IN THE |
| and | | |
| **PAULA C. RYAN, his Wife,** | * | CIRCUIT COURT |
| and | | |
| **THOMAS E. RYAN, III, his Son,** | * | FOR |
| 7637 Woodbine Road | | |
| Woodbine, Maryland 21797 | * | BALTIMORE COUNTY |
| | | |
| Plaintiffs, | * | CASE NO.: |
| | | |
| v. | * | |
| | | JFM 07 CV 2770 |
| 7-ELEVEN, INC. | * | |
| 2828 North Haskell Avenue | | |
| Dallas, Texas 75204-2909 | * | |
| | | |
| Serve On: | * | |
| | | |
| CSC Lawyers Incorporating | * | |
| Service, Company | | |
| 7 St. Paul Street, Suite 1660 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| and | | |
| | * | |
| ENSR CORPORATION | | |
| 2 Technology Park Drive | * | |
| Westford, Pennsylvania 01886 | | |
| | * | |
| Serve On: | | |
| | * | |
| The Corporation Trust, Inc. | | |
| 300 E. Lombard Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| and | | |
| | * | |
| FRALL DEVELOPERS, INC. | | |
| PO Box 659 | * | |
| Mount Airy, Maryland 21771 | | |
| | * | |
| Serve On: | | |
| | * | |
| James M. Frey | | |
| 13992 Penn Shop Road | * | |
| PO Box 659 | | |

RECEIVED AND FILED

2007 AUG 28 AM 9: 10

BALTIMORE CIRCUIT COURT
BALTIMORE COUNTY

1



Mount Airy, Maryland 21771          *

    *and*                 *

**RE/MAX GREATER METRO**          *
**22 West Road, Suite 100**
**Baltimore, Maryland 21204**          *

    <u>Serve On:</u>         *

    **Mary Lou Kaestner**          *
    **22 West Road, Suite 100**
    **Baltimore, Maryland 21204**          *

    *and*                 *

**EDGAR C. WHITTINGTON**          *
**22 West Road, Suite 100**
**Baltimore, Maryland 21204**          *

    *and*                 *

**ROLLINMEAD REALTY, INC.**          *
**1 Galesville Court**
**Darnestown, Maryland 20878**          *

    <u>Serve On:</u>         *

    **Lawrence F. Regan, Jr.**          *
    **51 Monroe Street, Suite 1800**
    **Rockville, Maryland 20850**          *

    *and*                 *

**CHRIS ERICHSEN**          *
**5 Brighton Drive**
**Gaithersburg, Maryland 20877**          *

    **Defendants.**          *

                           *

*****************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by their attorneys, the Law Offices of Peter G. Angelos, a Professional Corporation, for their Complaint against the above-named Defendants, allege, upon information and belief, as follows:

### PARTIES

1.     Plaintiffs are the owners and/or residents of the property located at 7637 Woodbine Road, Woodbine, Maryland 21797. Their water supply is contaminated by gasoline and/or gasoline constituents released from the 7-Eleven Store No. 28920 (Store) located at 7627 Woodbine Road, Woodbine, Maryland 21797.

2.     Defendant 7-Eleven, Inc., formerly known as Southland Corporation and d/b/a 7-Eleven Store No. 28920(referred to herein as "7-Eleven"), is a Texas corporation with its principal place of business in Dallas, Texas.

3.     Defendant 7-Eleven was and is a duly organized foreign corporation authorized to do business in the State of Maryland.

4.     Defendant 7-Eleven was and is a duly organized foreign corporation transacting business in the State of Maryland.

5.     On information and belief, Defendant 7-Eleven leases the real property and owns the appurtenances known as 7-Eleven Store No. 28920, located at 7627 Woodbine Road, Woodbine, Maryland, 21797, and exercises legal authority over and/or otherwise controls the Store. Defendant 7-Eleven is also responsible for maintaining underground storage tanks and associated piping, above-ground dispensers and associated systems and supplies all fuel products to this location.

6.     Defendant ENSR Corporation (referred to herein as "ENSR") is a Delaware corporation with its principal place of business in Westford, Pennsylvania.

3

7.    Defendant ENSR was and is a duly organized foreign corporation authorized to do business in the State of Maryland.

8.    Defendant ENSR was and is a duly organized foreign corporation transacting business in the State of Maryland.

9.    Defendant Frall Developers, Inc., a Maryland corporation with its principal place of business in Mount Airy, Maryland, owns the real property located at 7627 Woodbine Road, Woodbine, Maryland 21797.

10.   Defendant RE/MAX Greater Metro (hereinafter "RE/MAX") is a Maryland business with its principle place of business located at 22 West Road, Suite 100, Baltimore, MD 21204.

11.   On information and belief, Defendant Whittington is a resident of Baltimore County, Maryland.

12.   Defendant Rollinmead Realty, Inc. (hereinafter "Rollinmead") is a Maryland corporation with its principle place of business located at 1 Galesville Court, Darnestown, Maryland 20878.

13.   On information and belief, Defendant Erichsen is a resident of Montgomery County, Maryland.

<u>JURISDICTION AND VENUE</u>

14.   This Court has jurisdiction over the subject matter of this action pursuant to *inter alia* the provisions of Maryland Code, Courts & Judicial Proceedings Article, Section 1-501. This Court has personal jurisdiction over the Defendants pursuant to *inter alia* the provisions of Courts & Judicial Proceedings Article, Secs. 6-102 and 6-103.

15.    Venue is proper in the Circuit Court for Baltimore County pursuant to, *inter alia*, the provisions of the Maryland Code, Courts & Judicial Proceedings Article, Sections 6-201, 6-202.

### FACTS COMMON TO ALL COUNTS

16.    This action involves the negligent, wrongful and unlawful release of gasoline and gasoline constituents into the drinking water supply of Plaintiffs, who own and/or reside at the property located at 7637 Woodbine Road, Woodbine, Maryland 21797.  The release was first detected in January of 2002 when a random sample of the drinking water supply well at the Store, located in the Woodbine/Hilltop Shopping Center, 7627 Woodbine Road was found to have a strong odor of petroleum.  In February of 2002, the Carroll County Health Department (CCHD) notified the Maryland Department of the Environment-Oil Control Program (MDE) of methyl tertiary butyl ether (MTBE) detected at 4,254.61 parts per billion (ppb) in one of four drinking water supply wells serving the shopping center where the Store is located.  The entire shopping center was temporarily closed and a tanker truck was connected to provide an alternative water supply.

17.    The Store is an active gasoline station that currently operates four 8,000 gallon underground storage tanks (USTs); three gasoline and one diesel.  These are first generation UST systems that consist of cathodically protected steel tanks with double-walled piping.  The UST systems were installed in 1986.  Stage II vapor recovery upgrades were conducted in January 1995 and automatic tank gauges installed in June 1997.  A total of nine monitoring wells are located on-site.  Six of these wells are screened at shallow depths while the three drinking water supply wells that once served the shopping center have been converted to recovery and monitoring points.

5

18.     On or about February 7, 2002 MDE in coordination with the CCHD collected private drinking water samples, including from 7637 Woodbine Road. MTBE was detected at 9.3 ppb. The levels of MTBE in the water supply well at 7637 Woodbine Road continued to rise, requiring a granular activated carbon filtration system (GAC) to be installed in the home. The intended purpose of a GAC system is to remove MTBE and other gasoline constituents from the water prior to the water entering the home.

19.     On or about August 28, 2004, Plaintiff Paula Ryan entered into an arms length contract for the purchase of the premises at 7637 Woodbine Road with Matthew J. Freise. Defendant RE/MAX brokered the transaction, and it's agent Defendant Whittington represented Freise as the seller's agent. Defendants Rollinmead and Erichsen represented Plaintiff ryan. Neither the fact of the MTBE contamination, nor the nature or purpose of the GAC system, was disclosed by Defendants RE/MAX or Whittington to Plaintiff or Plaintiff's agent at the time they contracted to buy the home. On or about October 8, 2004 Plaintiff Ryan went to settlement and assumed ownership of the property. Plaintiffs currently own the home as tenants by entireties.

20.     Since Plaintiff closed on the property in October 2004, Defendant 7-Eleven through its environmental consultant, Defendant ENSR, has, tested the water for the presence of volatile organic compounds (VOCs), including MTBE and benzene. The levels of MTBE in the well have reached 227 ppb.

21.     The levels of MTBE in the Plaintiffs' well have been so high as to require the installation of three separate carbon tanks in the home in an attempt to remove the gasoline contaminants from the water supply.

22.     Despite the installation of a GAC system, numerous well test results revealed detectable levels of MTBE coming out of Plaintiffs fixtures after having passed through the three filtration units.

23.     Ingestion of gasoline contaminants contained in Plaintiffs' water supply has caused them to become ill.

24.     Gasoline is refined from crude oil, which contains benzene, toluene, ethylbenzene, and xylenes ("BTEX").

25.     Benzene is a known human carcinogen. Benzene has been linked to various forms of leukemia in humans including acute myeloid leukemia ("AML"). Benzene also causes known acute health effects in humans, including anemia and excessive bleeding.

26.     MTBE is member of a class of chemical compounds, called ethers, whose unique properties include enhanced solubility in water and chemical attraction to water molecules.

27.     MTBE is also slow to degrade or break down once it is released into the environment, particularly in the subsurface of the ground. Because of its "recalcitrance," plumes of MTBE can persist in underground aquifers for decades.

28.     MTBE exposure substantially increases the risk of developing adverse health effects including cancers in humans. MTBE is known to be carcinogenic in animals, and animal studies reveal tumors associated with MTBE that may also occur in humans. The animal studies indicate that certain cancers, such as leukemia and lymphoma, can arise from exposure to MTBE via ingestion, inhalation and contact from ordinary household water use. The animal studies also identify testicular tumors, hepatocellular (liver) adenomas and carcinomas, and renal tubular adenomas and carcinomas as being associated with exposure to MTBE.

7

29.    Clean water is a basic and most precious resource as well as a fundamental commodity.

30.    Defendant 7-Eleven maintained water supply wells on the Store property and were aware that residents in the vicinity of the Store, including Plaintiffs, are supplied water through individual wells located on their property.

31.    As a result of Defendant 7-Eleven's release of gasoline and gasoline constituents, and Defendant ENSR's failure to properly remediate the release, Plaintiffs have an increased risk of developing cancer and other illnesses, and of suffering other acute health effects, and/or the exacerbation of existing medical conditions.

32.    Plaintiffs have incurred damages in an amount representing the cost to restore their property and the underlying soil and groundwater to their original condition.

33.    Plaintiffs' property has and will continue to suffer a substantial, if not total, diminution in value as a result of Defendant 7-Eleven's contamination and Defendant ENSR's actions in contaminating, and failing to properly remediate and restore, Plaintiffs' property.

34.    The harm suffered by Plaintiffs was the result of the acts and omissions of all Defendants.  Such acts and omissions were actuated by actual malice and/or accompanied by a wanton or willful disregard for the safety of an identifiable and foreseeable group of individuals, including Plaintiffs, who likely would be harmed by the release of gasoline.  Defendant 7-Eleven engaged in intentional wrongdoing by failing to appropriately monitor and control underground storage tank systems that they knew were likely to release toxic chemicals into the soil and groundwater that would readily dissolve into and otherwise contaminate drinking water.  Defendant 7-Eleven and its environmental consultant, Defendant ENSR, negligently, recklessly and/or intentionally failed to properly remediate or contain the contamination.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

### (DEFENDANTS 7-ELEVEN AND FRALL DEVELOPERS)

35.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 34 inclusive.

36.   Defendant 7-Eleven stored and handled gasoline at the Store.

37.   Defendant 7-Eleven knew or should have known that if gasoline containing benzene, MTBE, and other VOCs were spilled or otherwise released into the subsurface, it would mix with groundwater and spread its toxic plume to neighboring properties.

38.   Defendant 7-Eleven owed Plaintiffs a duty to exercise reasonable care in the storage, handling, cleanup and disposal of their harmful and hazardous gasoline and gasoline constituents. Defendant had a specific duty to prevent and contain the discharge and release of such substances which might harm the persons, property or economic interests of Plaintiffs. Defendant also had a specific duty to warn or notify Plaintiffs that discharges or releases of these substances had occurred, or were likely to occur in the future, and to warn or notify residents in the area, including Plaintiffs, of the potential hazards of exposure to these toxic and hazardous substances.

39.   Defendant 7-Eleven breached these duties by its negligent, reckless and intentional management, storage, and use of its petroleum-related products. Defendant's negligent, reckless, and/or intentional conduct has resulted in dangerous releases of hazardous and toxic substances onto and into Plaintiffs' land and water supply. These actual and continued releases and discharges have subjected Plaintiffs to unreasonable risk of harm, threat of future harm, and actual injuries to their persons, property and economic interests. Defendants also failed to warn

Plaintiffs of the actual and threatened releases of such substances and of the reasonably foreseeable effects of such releases, an omission that was negligent, reckless, grossly negligent and/or intentional. Defendants failed to and continue to fail to act to contain, remediate and prevent the further release of these dangerous chemicals from harming Plaintiffs.

40. Defendant 7-Eleven's negligence was a direct and proximate cause of injuries to Plaintiffs causing actual present harm to Plaintiffs' persons, property and economic interests and creating an increased risk of future harm to Plaintiffs. Plaintiffs are entitled to recover damages for such present and future injuries.

41. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

## COUNT 2: STRICT LIABILITY FOR AN ABNORMALLY DANGEROUS ACTIVITY
### (DEFENDANT'S 7-ELEVEN AND FRALL DEVELOPERS)

42. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 41 inclusive.

43. The use and storage of gasoline containing MTBE is an abnormally dangerous activity in this context, exposing Plaintiffs to a severe risk of harm, regardless of the degree of caution which Defendants might have exercised.

44. As a direct and proximate result of Defendant 7-Eleven's sale and storage of gasoline, contaminants were released into the environment, thereby injuring Plaintiffs. Injuries include actual present harm to Plaintiffs' property and economic interests, and potential future harm to Plaintiffs due to the ongoing contamination. These injuries constitute the type of harm which make the activities abnormally dangerous.

45. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages for which the Defendants are liable. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

COUNT 3: NEGLIGENCE

(DEFENDANT ENSR)

46. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 45 inclusive.

47. At or around the time in which the MDE was notified of the release from the Store, Defendant 7-Eleven employed Defendant ENSR, an international environmental consulting firm, who holds itself out to the public as knowledgeable in the remediation of environmentally contaminated sites, as their environmental consultant responsible for remediating the contamination on and emanating from the site.

48. By accepting employment by Defendant 7-Eleven in the capacity of environmental consultant, Defendant ENSR was charged with the responsibility of preventing further harm to Plaintiffs' well water, remediating the existing harm to Plaintiffs' well water, and testing and reporting test results to Plaintiffs' regarding the status and condition of their water supply well. As such, Defendant ENSR undertook a duty to Plaintiffs to act with skill and care of a reasonable environmental consultant under similar circumstances.

49. Defendant ENSR failed to implement a plan reasonably suitable to contain and remediate the contamination emanating from the Store; and, failed to use the skill and degree of care that a reasonable environmental consultant would be expected to utilize under similar circumstances.

50. Defendant ENSR also failed to timely notify anyone in the area, including Plaintiffs, of elevated MTBE levels in their well water, which prevented Plaintiffs from making efforts to protect their health and property.

51. By failing to exercise the degree of care and skill of a reasonable environmental consultant under similar circumstances, and by failing to provide timely notice to Plaintiffs of increased MTBE levels in their well, Defendant ENSR breached the duty it owed to Plaintiffs.

52. Defendant ENSR's conduct directly and proximately caused and continues to cause Plaintiffs' injuries, including actual or increased harm to their property and economic interests and injuries to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 4: PRIVATE NUISANCE

### (DEFENDANTS 7-ELEVEN, ENSR AND FRALL DEVELOPERS)

53. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 52 inclusive.

54. At all material times, Plaintiffs were in lawful possession of their land. Defendant 7-Eleven's use, occupation, storage and sale of gasoline at the Store have resulted in an unreasonable and continuous invasion of Plaintiffs' property, which has substantially, if not totally, diminished the value of the Plaintiffs' property and seriously interfered with their rights to use and enjoy their property.

55. Defendant 7-Eleven's unreasonable emission, disposal and release of toxic and hazardous substances, and Defendant ENSR's failure to contain and remediate said release, into

Plaintiffs' drinking water supply is substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits.

56. Defendant 7-Eleven's and Defendant ENSR's interference with Plaintiffs' rights has been so unusual and excessive that it necessarily caused and continues to cause injury, damage, harm and inconvenience to Plaintiffs.

57. Defendant 7-Eleven's use, occupation, storage and sale of gasoline at the Store has resulted in an entry and intrusion, and the continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

58. Defendant ENSR's failure to contain and remediate the release of gasoline constituents by Defendant 7-Eleven resulted in a continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

59. Defendants' conduct directly and proximately caused and continues to cause Plaintiffs' injuries, including actual or increased harm to their property and economic interests and injuries to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 5: TRESPASS

#### (DEFENDANTS 7-ELEVEN, ENSR AND FRALL DEVELOPERS)

60. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 59 inclusive.

61. Plaintiffs Thomas and Paula Ryan were at all relevant times in possession of land they owned and/or occupied.

13

62. Defendant 7-Eleven and Defendant ENSR knew the discharge of contaminants from the Store had migrated or was likely to migrate into Plaintiffs' drinking water supply.

63. Despite Defendant 7-Eleven's and Defendant ENSR's knowledge of the danger that their activities at the Store posed to Plaintiffs, they intentionally continued the actions and inactions that resulted in the discharge of gasoline contaminants into the groundwater and surrounding soil.

64. The discharge of contaminants onto and into Plaintiffs' property and drinking water supply has interfered, and continues to interfere, with the Plaintiffs' interests in the exclusive possession of their land, and therefore constitutes an actual and/or constructive trespass to Plaintiffs' property.

65. Plaintiffs' property continues to be threatened, exposed to and/or contaminated by hazardous chemicals and materials emanating from the Store.

66. Defendant 7-Eleven's ownership, use, storage and sale of gasoline at the Store have resulted in an entry and intrusion onto Plaintiffs' property without privilege, permission, invitation or justification.

67. Defendant ENSR's failure to contain and remediate the release of gasoline constituents by Defendant 7-Eleven resulted in a continued entry and intrusion onto and into the property of Plaintiffs without privilege, permission, invitation or justification.

68. Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

14

## COUNT 6: INTENTIONAL MISREPRESENTATION

### (DEFENDANTS RE/MAX AND WHITTINGTON)

69. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 68 inclusive.

70. On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

71. Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

72. Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein. Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

73. Additionally, Defendant Whittington made affirmative statements to Plaintiffs regarding the cleanliness of the water being drawn from their well.

74. Defendants' failure to disclose the existence of the contamination and the GAC system constituted a failure to disclose a material fact, which it had a duty to disclose.

75. Defendant Whittington and Defendant RE/MAX failed to disclose the existence of the contamination with the intent to deceive Plaintiffs. Defendants knew that Plaintiffs would not have purchased the property had they known of the contamination thereon.

76.     Plaintiff relied on the belief that the property they were purchasing was free from gasoline constituent contamination, and they were justified in their reliance.

77.     Defendant Whittington and Defendant RE/MAX's conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 7: NEGLIGENT MISREPRESENTATION
### (DEFENDANTS RE/MAX AND WHITTINGTON)

78.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 77 inclusive.

79.     On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

80.     Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

81.     Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein. Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

82. Additionally, Defendant Whittington made affirmative statements to Plaintiffs regarding the cleanliness of the water being drawn from their well.

83. Defendants Whittington and RE/MAX had a duty of care to Plaintiffs. This duty required the disclosure of all material information and the transmittal of accurate information to Plaintiffs. The statements that the water being provided to the home was free from VOCs were false.

84. Defendants Whittington and RE/MAX were negligent in the assertion of these false statements and in the omission of the material information relating to the presence of VOCs. Careful investigation by Defendants, or a review of available information in their possession, would have enabled them to appreciate that the water was contaminated by VOCs.

85. The statements made by Defendant Whittington were made with the intention of having Plaintiffs act and rely upon the negligent assertions. Defendants Whittington and RE/MAX were desirous of inducing Plaintiffs to follow-through with the purchase of the property.

86. Defendants Whittington and RE/MAX knew that Plaintiffs would likely rely upon, and were in fact, relying upon their negligent statements/omissions and that Plaintiffs would incur damage.

87. Relying on the misrepresentations, Plaintiffs executed the settlement documents and closed on the purchase of the property. Plaintiffs were justified in their reliance.

88. Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will

be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 8: NEGLIGENCE

### (DEFENDANTS RE/MAX AND WHITTINGTON)

89.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 88 inclusive.

90.     On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

91.     Freise was represented in the aforesaid transaction by Defendant Whittington, a licensed real estate agent, employed by or otherwise acting on behalf of, Defendant RE/MAX. At all times relevant hereto, Defendant Whittington acted within the scope of his employment and/or as an agent for Defendant RE/MAX, and Defendant RE/MAX is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

92.     Defendant Whittington and Defendant RE/MAX had knowledge that the property located at 7637 Woodbine Road had contamination from gasoline constituents thereon and a GAC system installed therein. Despite having this knowledge, Defendants neither disclosed the fact of the MTBE contamination, nor the presence or purpose of the GAC system to Plaintiffs.

93.     As a result of the agent-customer relationship established between Defendants and Plaintiffs, Defendants owed Plaintiffs a duty of care to advise Plaintiffs of all pertinent facts relating to the property, including but not limited to, actual and known latent defects.

94.     By failing to properly inform Plaintiffs of the contamination on the property and the fact and purpose of the GAC system installed in the home, Defendants negligently breached

the duty owed to Plaintiffs to advise them of all pertinent facts relating to the transaction thereby failing to act with the care and skill of a reasonably competent real estate agent/broker.

95. As a direct and proximate result of Defendant's negligent actions, Plaintiffs have suffered injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

### COUNT 8: NEGLIGENCE

### (DEFENDANTS ROLLINMEAD AND ERICHSEN)

96. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 95 inclusive.

97. On or about August 28, 2004, Plaintiff Paula Ryan contracted with Freise to purchase the property located at 7637 Woodbine Road.

98. Plaintiff was represented in the aforesaid transaction by Defendant Rollinmead and its licensed real estate agent, Defendant Erichsen. At all times relevant hereto, Defendant Erichsen acted within the scope of his employment and/or as an agent for Defendant Rollinmead, and Defendant Rollinmead is responsible for all of his acts, representations and omissions made within the scope of his employment and/or as its agent.

99. While viewing the property with Plaintiffs, Defendant Erichsen inquired about the purpose of water filtration tanks located in the basement. The seller and/or seller's agent informed that there was once a problem with the water, but that the problem no longer existed. Defendant Erichsen failed to make any further inquiry regarding the tanks and/or the water problems.

19

100. As a result of the principal-agent relationship established between Defendant Erichsen and Plaintiff, Defendant owed Plaintiff a fiduciary duty, including a duty to exercise reasonable care and due diligence in investigating the condition of the property.

101. By failing to follow-up on his inquiry regarding the purpose of the water filtration tanks, Defendant Erichsen negligently breached the duty owed to Plaintiffs to exercise reasonable care and due diligence in investigating the condition of the property thereby failing to act with the care and skill of a reasonably competent real estate agent.

102. As a direct and proximate result of Defendants' negligent actions, Plaintiffs have suffered injuries, including actual physical harm to property and economic interests and an increased risk of future harm to their persons. Plaintiffs are entitled to recover damages for such injuries. Damages will be determined at trial and are in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) for each Plaintiff.

WHEREFORE, Plaintiffs pray for relief as follows:

a. Compensatory damages in an amount in excess of this Court's minimal jurisdictional limits, including but not limited to damages representing:

> i) costs of providing Plaintiffs with an alternate source of potable water as a result of the contamination of Plaintiffs' drinking water supply;

> ii) damages representing the substantial, if not total, diminution in Plaintiffs' property values; and

> iii) damages sufficient to compensate Plaintiffs for past, present and future pain and suffering, inconvenience, reduction in quality of life, lost wages and reasonable medical expenses;

> iv) costs of providing and maintaining a program of medical monitoring sufficient to allow qualified medical and toxicological professionals to evaluate the effects of Plaintiffs' exposure to the MTBE and other harmful and hazardous substances released by Defendants into Plaintiffs' water supply;

    b.  Nominal damages;

    c.  Punitive damages;

    d.  Entry of judgment in favor of Plaintiffs for litigation costs and expenses

reasonably incurred; pre-judgment interest; post-judgment interest; and attorney's fees

recoverable by law; and

    e.  Such other and further relief as the nature of Plaintiffs' causes may require.

Respectfully submitted,

Mary V. McNamara-Koch
Craig M. Silverman
Law Offices of Peter G. Angelos, P.C.
100 North Charles Street, 22nd Floor
Baltimore, MD 21201
(410) 649-2000

Attorneys for Plaintiffs

## PRAYER FOR JURY TRIAL

Plaintiffs elect to have their case tried before a jury.

Mary V. McNamara-Koch

RECEIVED AND FILED

2007 AUG 28 AM 9: 10

CLERK OF THE DISTRICT COURT
BALTIMORE COUNTY