**MDL 1358**

**PLEADING NO. 270**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | §§§§§§ | |
| This Document Relates To: | §§§ | **MDL Docket No. 1358** |
| *Harrison, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-01179 (D. Md.) | §§§§ | |
| and | §§§ | |
| *Ryan, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-02770 (D. Md.) | §§§§§ | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER NO. 30

7-Eleven, Inc. ("7-Eleven"), Frall Developers, Inc., ENSR Corporation, Rollinmead Realty, Inc., Chris Erichsen, RE/MAX Greater Metro, and Edgar C. Whittington (collectively "Defendants"), Defendants in *Harrison, et al. v. 7-Eleven, Inc., et al.*, Cause No. 07-01179 in the United States District Court for the District of Maryland ("*Harrison*"), and/or *Ryan, et al. v. 7-Eleven, Inc., et al.*, Cause No. 07-02770 in the United States District Court for the District of Maryland ("*Ryan*"), hereby file this their

**OFFICIAL FILE COPY** IMAGED JAN 8 ‐ 2008

joint Reply Brief in support of their motions to vacate Conditional Transfer Order No. 30 ("CTO-30").

## I.

## INTRODUCTION

1.      On November 8, 2007, the Judicial Panel on Multidistrict Litigation (the "Panel") entered CTO-30 in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation ("In re MTBE")*, MDL No. 1358, conditionally transferring *Harrison* and *Ryan* to the United States District Court for the Southern District of New York (the "MDL Court"). Because *Harrison* and *Ryan* do not involve "one or more…questions of fact" in common with the cases previously consolidated in MDL No. 1358 and because the transfer of these cases will not further "the convenience of the parties and witnesses" or the "just and efficient conduct of such actions," Defendants filed motions to vacate CTO-30 pursuant to 28 U.S.C. § 1407.  Plaintiffs filed a single Response in Opposition (the "Response") to the motions to vacate on December 27, 2007.

2.      In their Response, Plaintiffs argue that *Harrison* and *Ryan* should be transferred because they have at least one fact question in common with the cases already consolidated in MDL No. 1358.  Plaintiffs cite no Panel opinions in support of their argument that *Harrison* and *Ryan* are appropriate for transfer.[1]  Plaintiffs rely entirely on the transfer of *Quick v. Shell Oil Co.*, No. 05-2072 (C.D. Ill.) ("*Quick*")—a case that has since been remanded to state court for lack of federal subject-matter

---

[1] In contrast, Defendant 7-Eleven's brief in support of its motion to vacate CTO-30 cites twelve (12) prior Panel opinions and transfer orders as well as five opinions of the MDL Court in support of its arguments that *Harrison* and *Ryan* should not be transferred to MDL No. 1358.

jurisdiction, which Plaintiffs erroneously contend to be factually equivalent—as support for the transfer of *Harrison* and *Ryan*.[2]

3.      *Harrison* and *Ryan* are no different from potentially thousands of non-MDL "spill cases" pending across the country in which plaintiffs complain of gasoline leakage and/or contamination, but in which the design, manufacture, and nature of MTBE are not at issue.  Transfer of *Harrison* and *Ryan* will open the MDL Court to hundreds if not thousands of new cases, none of which have anything in common with the cases presently in MDL No. 1358 or one another, save for the fact of alleged gasoline contamination.  Such was not the Panel's purpose in creating the MTBE products liability litigation.  *See In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000) (defining the parameters of cases to be transferred as those involving allegations that defendants "knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public").  Because the factual and legal matters in dispute in *Quick* are markedly different from those at bar in *Harrison* and *Ryan*, and because *Harrison* and *Ryan*—unlike *Quick*—are atypical of all the cases previously transferred to MDL No. 1358, CTO-30 should be vacated.

II.

**ARGUMENT AND AUTHORITIES**

4.      In creating and defining this products liability MDL, the Panel set forth two questions of fact which, if at issue in a case subject to transfer, would warrant transfer of that case to MDL No. 1358:

---

[2] Plaintiffs' Fourth Amended Complaint in *Quick* (the "*Quick* Complaint") is attached hereto as **Exhibit A** and incorporated by reference.

> i) whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public, **and**
>
> ii) whether plaintiffs sustained drinking water contamination as a result of MTBE contamination.

*In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000) (emphasis added). Plaintiffs focus entirely on the second prong of this two-prong test (again, a factual issue likely common to hundreds if not thousands of non-MDL lawsuits pending nationwide), and wholly ignore the first prong, i.e., whether defendants misrepresented the nature of MTBE and conspired to market it without disclosing its alleged risks. By applying only the second prong of the Panel's standard, Plaintiffs seek to dramatically broaden the types of cases includable in MDL No. 1358.

5. Although Plaintiffs assert that common questions of fact need not predominate over uncommon questions of fact in order to warrant transfer pursuant to 28 U.S.C. § 1407 (*see* Response at 2),[3] Plaintiffs cite no authority in support of this argument and fail to refute the contrary Panel opinions cited by Defendants. The Panel has previously transferred cases only when common questions of fact predominate over individual questions. *See, e.g., In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation*, 259 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003) (ordering transfer because common factual questions predominated); *In re Rely Tampon Products Liability Litigation*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (denying transfer because common factual questions did not predominate). Although cases may share

---

[3] Citations to Plaintiffs' Response may be approximate. Plaintiffs' Response contains no page numbers and is not set forth in numbered paragraphs as required by R.P.J.P.M.L. 7.1.

common questions of fact, "a mere showing that such questions exist is not sufficient, in and of itself, to warrant transfer by the Panel." *In re Cessna Aircraft Distributorship Antitrust Litigation*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978) (denying transfer despite common factual issues).

## A.    *Harrison* and *Ryan* are Factually Distinct from the Cases in MDL No. 1358

6.    Plaintiffs allege that "[o]ne does not have to look far to find a case currently pending before the MDL that has numerous questions of fact in common with those involved in the present case," and cite *Quick v. Shell Oil Co.*, No. 05-2072 (C.D. Ill.) ("*Quick*"), a case that was until recently consolidated in MDL No. 1358, as their sole example.  (Response at 2.)  *Quick* was filed in state court in Illinois in 2001 and was removed to federal court by the defendants, who then sought transfer of the case to MDL No. 1358.  In *Quick*, as in most other cases previously considered by the Panel in MDL No. 1358, Plaintiffs opposed transfer.  (*See* Plaintiffs' Motion to Vacate Conditional Transfer Order (Document No. 186), May 9, 2005.)  The *Quick* defendants defeated the plaintiffs' motion to vacate and the Panel ordered transfer on August 11, 2005, due to common factual allegations that the *Quick* defendants "knew about and misrepresented the nature of MTBE resulting in drinking water contamination."  (*See* Transfer Order (Document No. 196), August 11, 2005.)  By order of the MDL Court on December 10, 2007, *Quick* was remanded to state court for lack of subject matter jurisdiction.[4]

7.    *Quick* is typical of the cases previously transferred to MDL No. 1358. *Quick* involves products liability causes of action, including substantial allegations of

---

[4] Because *Quick* has been remanded for lack of federal jurisdiction, Plaintiffs should not have cited, and the Panel should not consider, opinions dealing with *Quick*.  The MDL Court itself has stated that such opinions are void.  *See* Transcript of MDL Court Status Conference, August 23, 2007, at 6.

misrepresentation and conspiracy relating to the characteristics of MTBE, asserted against a refiner, manufacturer, and distributors of MTBE and gasoline containing MTBE. (*See Quick* Complaint ¶¶ 245-49.)  Although *Quick* and many of the other MDL cases may also contain some localized claims (so-called "spill claims") similar to those asserted in *Harrison* and *Ryan*,[5] these disparate and site-specific issues are not the common factual threads that bind all current MDL cases together.[6]  Because *Harrison* and *Ryan* contain only spill claims, and do not involve misrepresentation, conspiracy, or other product liability claims against any refiners or manufacturers of gasoline and/or MTBE—claims that are common to *Quick* and the other MDL cases—*Harrison* and *Ryan* should not be transferred.

### 1.    *Harrison* and *Ryan* are not products liability cases

8.     Plaintiffs do not deny that MDL No. 1358 is a "products liability litigation" or that the cases consolidated in MDL No. 1358 overwhelmingly involve questions of

---

[5] Although 7-Eleven may have overgeneralized in stating that "[n]o opinion, order, or conference concerns realtors, environmental consultants, or sellers of real estate" (*see* 7-Eleven's Motion at 2-3), Plaintiffs' retort that an environmental consultant was named a defendant in *Quick* (*see* Response at 4) remains inconsequential.   Plaintiffs themselves concede that the presence or absence of such spill-specific defendants has no bearing on whether common factual questions exist such that transfer is warranted. (*Id.*)  Moreover, the single opinion cited that discusses such a defendant demonstrates that the issues related to this category of defendant remain defendant-specific, case-specific and site-specific, and do not warrant MDL treatment.  *See In re MTBE*, 241 F.R.D. 435, 450-51 (S.D.N.Y. 2007) (denying class certification as to claims against the environmental consultant).  Such defendants are not the focus of MDL No. 1358, and the MDL Court has not devoted significant substantive work to those defendants or claims.

[6] As Plaintiffs point out in their Reply, 7-Eleven is a defendant in two cases currently in MDL No. 1358.   However, the plaintiffs in those two cases assert products liability claims.  With regard to the real estate defendants in *Harrison* and *Ryan*, Plaintiffs have failed to identify even one case in MDL No. 1358 in which claims of professional malpractice are levied against real estate brokers or agents.  Plaintiffs have offered no explanation why such defendants or claims belong in MDL No. 1358.

---

products liability relating to the design, manufacture, and distribution of MTBE and/or gasoline containing MTBE and conspiracy to market MTBE without disclosing its allegedly harmful nature.  Instead, Plaintiffs engage in sophistry and insist that *Harrison* and *Ryan* are, despite Plaintiffs' failure to plead any such cause of action, "products liability" cases.  In support of this curious assertion, Plaintiffs proclaim that because negligence (which Plaintiffs assert in *Harrison* and *Ryan*) would be "commonly studied in a products liability curriculum in an academic setting," this case is thus a "products liability case" similar to *Quick* and the other MDL cases, all of which state products liability causes of action against manufacturers and refiners.  (*See* Response at 5.) Plaintiffs conveniently ignore the fact that *Quick*—like all of the other MDL cases— contains extensive products liability allegations, including allegations of defective design and manufacture of MTBE and failure to adequately warn of the purported dangers of MTBE.  (*See Quick* Complaint ¶ 248.)  Had Plaintiffs and their counsel wanted to pursue products liability causes of action in *Harrison* and *Ryan*, they should have, and certainly could have, done so.[7]  Plaintiffs and their counsel should not be permitted to escape their own pleadings by arguing that such pleadings contain claims that they clearly do not.

9.      While the cases in MDL No. 1358 focus on the design, manufacture, and distribution of MTBE by "upstream" actors, *Harrison* and *Ryan* deal only with the localized spill of gasoline by downstream handlers.  *See In re MTBE*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005); *Harrison* Complaint ¶ 10; *Ryan* Complaint ¶ 16.  As such, *Harrison* and *Ryan* have no place in MDL No. 1358, and CTO-30 should be vacated.

---

[7] Indeed, Plaintiffs' counsel in *Harrison* and *Ryan* are also counsel in other MDL cases in which they have specifically pleaded products liability claims on behalf of their clients.

### 2.   *Harrison* and *Ryan* do not involve misrepresentation or conspiracy claims regarding the nature of MTBE

10.     As they must, Plaintiffs concede that the cases in MDL No. 1358 share intentional tort claims and common factual questions concerning "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public." *See In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000).   No claims relating to misrepresentation of the nature of MTBE or conspiracy to market MTBE are present in Plaintiffs' pleadings in *Harrison* or *Ryan*.   In their Response, Plaintiffs now allege that their claims against the local real estate agents and/or brokers named as defendants fulfill this requirement from the Panel's original transfer order, qualifying *Harrison* and *Ryan* for inclusion in MDL No. 1358.   (*See* Response at 6-7.)

11.     Plaintiffs claim that local real estate agents and brokers "negligently failed to warn Plaintiffs of the presence of MTBE and other gasoline constituents in the water supply of the properties they offered for sale to Plaintiffs."   (Response at 6.)   However, such a claim, even if viable, does not equate to a failure to warn as that term is defined in the context of products liability.   It bears repeating that the MTBE MDL concerns industry-wide allegations of misrepresentation and conspiracy as noted by the Panel in its original transfer order and that are common to all cases in MDL No. 1358.   As to products liability/failure to warn claims asserted against non-refiner/downstream handler defendants, the MDL Court itself has ruled that downstream handlers (such as local retailers) cannot be accused of being both the victim and perpetrator of a failure to warn.   *See In re MTBE*, 379 F. Supp. 2d 348, 398 (S.D.N.Y. 2005).   Certainly products liability/failure to warn and conspiracy claims are equally unavailing against local

realtors and environmental consultants. Because no fact questions regarding misrepresentation or conspiracy are present, or even viable, in *Harrison* or *Ryan*, these cases should not be transferred.

### 3. *Harrison* and *Ryan* are not centered on MTBE

12.     Plaintiffs do not contend that their pleadings focus on MTBE as a contaminant, but argue instead that such allegations are not required to warrant transfer to the MTBE multi-district litigation. Plaintiffs again turn to *Quick* as a purportedly analogous case that has been transferred to MDL No. 1358. Plaintiffs assert that the *Quick* plaintiffs, like themselves, complain only of "the presence of 'gasoline contamination' on their properties, and in their water supplies, as a result of the release." (Response at 5.) Plaintiffs surmise, "Clearly, plaintiffs' complaint in *Quick* hardly centers on the 'alleged properties of MTBE, to the exclusion of other constituents of gasoline, [as a] basis for…plaintiffs' alleged damages.'" (Response at 5-6.)

13.     Plaintiffs' analysis with regard to *Quick* is patently wrong and should not mislead the Panel. Unlike the complaints in *Harrison* and *Ryan*, the *Quick* Complaint (attached as Exhibit A) is replete with specific and extensive allegations about MTBE, its manufacture, its characteristics, and the *Quick* defendants' alleged misrepresentations relating thereto. The *Quick* Complaint devotes at least 13 paragraphs, constituting more than four pages of text, to the particulars of MTBE, including its chemical properties, its "taste and odor," and the refiner defendant's history of use and knowledge of MTBE. (*See Quick* Complaint ¶¶ 51-63, at 10-14.) Neither the *Harrison* Complaint nor the *Ryan* Complaint contains such allegations. Furthermore, the *Quick* Complaint devotes no such allegations to any other component of gasoline. *Quick* is,

unquestionably, an "MTBE case," making clear why its transfer was appropriate and why the transfer of *Harrison* and *Ryan*—which Plaintiffs now concede are mere "gasoline" cases[8]—would be inappropriate.

**4.    *Harrison* and *Ryan* do not involve refiners, manufacturers, or distributors of MTBE or gasoline containing MTBE**

14.    Plaintiffs cannot escape the fact that, while *Quick* and the other cases in MDL No. 1358 include manufacturer, refiner, and distributor defendants, *Harrison* and *Ryan* do not. Although Plaintiffs may be correct that 7-Eleven is a party to two of nearly 150 cases in MDL No. 1358 involving hundreds of upstream manufacturers, refiners, and distributors, and that one party similar in position to ENSR is party to one other case that was previously in the MDL, Plaintiffs fail to acknowledge that those cases are primarily products liability cases asserted against manufacturers, refiners, and distributors of MTBE and gasoline containing MTBE. No such claims or parties exist in *Harrison* and *Ryan*. Without products liability claims against "products liability defendants," *Harrison* and *Ryan*, which deal only with distinct, localized spill claims against distinct, localized defendants, bear no similarity to the other cases transferred to MDL No. 1358, all of which involve nation- and industry-wide claims and defendants.

---

[8] Plaintiffs effectively concede that *Harrison* and *Ryan* are no different than potentially thousands of ordinary non-MDL gasoline spill cases pending across the country. If *Harrison* and *Ryan* are appropriate for transfer merely because MTBE was present in the allegedly spilled gasoline, all such cases would thus be subject to transfer to MDL No. 1358.

5. ***Harrison* and *Ryan* concern only case-specific claims and defendant-specific conduct not relevant to any case pending in MDL No. 1358**

15.    Plaintiffs do not deny and, indeed, apparently concede that the only similarity between *Harrison* and *Ryan* and the cases previously transferred to the MDL Court for pretrial coordination and/or consolidation is that they concern contaminated drinking water.  However, the Panel's own original transfer order establishes that this is insufficient.  Neither *Harrison* nor *Ryan* involve "whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public," which element the Panel has established also is necessary for a case to be included in the MDL.  *See In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000).  Release or "spill" claims such as those that constitute the *Harrison* and *Ryan* cases are inherently "individual" questions of fact and are not the type of fact questions that are or can be shared by the products liability cases transferred by the Panel.  Spill cases like *Harrison* and *Ryan*, unlike *Quick* and the other products liability cases in MDL No. 1358, share no common event or series of events, such as refining industry knowledge and actions regarding MTBE, so that coordination would serve to eliminate duplicitous discovery of the same issue.  *See, e.g., In re High Sulfur Content Gasoline Products Liability Litigation*, 344 F. Supp. 2d 755, 756-57 (J.P.M.L. 2004) (granting transfer when all cases shared claims of negligence and products liability arising from defective gasoline refined by defendants).

16.    For example, the determination of whether ENSR—an environmental consultant that does not refine, distribute, or handle gasoline or MTBE—acted negligently in the remediation of contamination emanating from one gasoline station in

Maryland has no bearing on, and is wholly irrelevant to, the resolution of the defective design, conspiracy, and other issues at the core of the MDL No. 1358 products liability cases. Likewise, the determination of whether or to what extent the real estate agent and broker Defendants acted negligently or failed to fully inform Plaintiffs of potential contamination is irrelevant to the resolution of the core issues in the MDL cases. Because *Harrison* and *Ryan* do not involve common questions of fact relating to design, manufacture, and distribution of MTBE, *Harrison* and *Ryan* should not be transferred, and CTO-30 should be vacated.

**B.    Transfer Will Inconvenience the Parties and Witnesses and Will Not Promote Just and Efficient Adjudication**

17.    Plaintiffs' only responses to Defendants' arguments regarding the inconvenience of transferring *Harrison* and *Ryan* and the unnecessary waste of judicial resources that such a transfer would effect are that (1) Maryland is only a "short train ride" away from New York and (2) 7-Eleven is already a defendant in two cases in the MDL Court. (Response at 3.) Plaintiffs dramatically understate the burden that the transfer of *Harrison* and *Ryan* would have on the parties to these cases and, moreover, the MDL Court.

18.    While true that 7-Eleven is a party to two actions currently consolidated in MDL No. 1358, none of the remaining defendants—local property owners, local businesses, and local real estate entities—have any presence there. As explained at length above and in Defendants' Motions, because *Harrison* and *Ryan* focus entirely on local acts, omissions, and damages, none of the evidence in this case will have any bearing on any issue before the MDL Court, and likewise no issue before the MDL Court will have any bearing on any issue in *Harrison* or *Ryan*. Forcing such a

"hometown" property dispute into coordination with a nationwide products liability litigation will serve no purpose other than to burden all parties.

19.     As explained above, the claims and parties involved in *Harrison* and *Ryan* are similar to those in potentially thousands of "spill cases" across the country, in which the design, manufacture, and nature of MTBE is not at issue.  Subjecting the MDL Court to hundreds if not thousands of new cases, none with any issues in common with the MDL cases or one another save for allegations of local contamination with gasoline will not serve the purposes of the MTBE products liability litigation and will only delay and complicate the administration of justice.  *See In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at \*2 (J.P.M.L. Oct. 10, 2000).

**C.     The Fact of Federal Subject-Matter Jurisdiction is Irrelevant**

20.     Finally, Plaintiffs assert that Defendants seek to "have it both ways" by removing *Harrison* and *Ryan* to federal court but then opposing transfer to MDL No. 1358.  The Energy Policy Act of 2005, which permitted Defendants to remove these cases to federal court, states, in relevant part:

> Claims and legal actions filed after the date of enactment of this Act [Aug. 8, 2005] related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States district court.

Pub. L. No. 109-58, Title XV § 1503, 119 Stat. 594, 1076 (2005).  Comparatively, the Panel's standard for consolidation in MDL No. 1358 is much narrower and requires allegations relating to

> whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public[.]

REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER NO. 30
2387885.1/SP/76088/0389/010408

Page 13

*In re MTBE*, 2000 U.S. Dist. LEXIS 14901, at *2 (J.P.M.L. Oct. 10, 2000).

21.     The fact that a case is removable to federal court pursuant to the Energy Policy Act does not mean the case automatically belongs in MDL No. 1358.  Plaintiffs again lose the distinction between cases that may simply deal with MTBE contamination, on the one hand, and cases that deal with the design, manufacture, and distribution of MTBE, on the other.  *Harrison*, *Ryan*, and virtually all gasoline spill cases filed in the United States during the last two decades arguably involve MTBE, and thus fit the first category.  Only a small subset of those cases, exemplified by *Quick* and the other cases currently in MDL No. 1358, involve the products and misrepresentation-related claims that make them appropriate for transfer to MDL No. 1358.  *Harrison* and *Ryan* are not MDL cases because Plaintiffs and their counsel (who, in other cases, *have* asserted products liability causes of action against MTBE manufacturers and refiners) chose for these cases not to involve the parties, claims, or causes of action that would qualify them for transfer to MDL No. 1358.


WHEREFORE, for the reasons set forth above and in the briefing filed in support of Defendants' motions, Defendants respectfully request that the Panel GRANT their motions to vacate Conditional Transfer Order No. 30.

Respectfully submitted,

**MICHAEL A. WALSH**
Texas Bar No. 00790146
New York Bar No. 2032191
**COURTNEY L. JONES**
Texas Bar No. 24007457
**JADD F. MASSO**
Texas Bar No. 24041411
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone: 214-651-4300
Facsimile: 214-651-4330

**ATTORNEYS FOR DEFENDANT
7-ELEVEN, INC.**


**RICHARD L. MILLER**
**MONSHOWER, MILLER & MAGROGAN, LLP**
10451 Twin Rivers Road, Suite 230
Columbia, Maryland 21044
E-mail: rmiller@monmilmag.com

**ATTORNEYS FOR RE/MAX GREATER METRO
AND EDGAR C. WHITTINGTON**


**MICHAEL D. LORENSEN**
**BOWLES RICE MCDAVID GRAFF & LOVE**
101 South Queen Street
P.O. Drawer 1419
Martinsburg, West Virginia 25402

**ATTORNEY FOR FRALL DEVELOPERS, INC.**

_Michael S. Baig (by permission JDM)_

**MICHAEL S. BAIG**
**FOLEY AND LARDNER LLP**
321 N. Clark St. Ste. 2800
Chicago, IL 60610-4764
E-mail: mbaig@foley.com

**JOSEPH DOWELL EDMONDSON, JR.**
**FOLEY AND LARDNER LLP**
3000 K St. NW Ste. 500
Washington, D.C. 20007
E-mail: jedmondson@foleylaw.com

**ATTORNEY FOR ENSR CORPORATION**

_Matthew A. Ranck (by permission JDM)_

**MATTHEW A. RANCK**
Maryland Bar No. 23762
**ECCLESTON AND WOLF PC**
2001 S St NW Ste 310
Washington, DC 20009-1125
E-mail: ranck@ewdc.com

**ATTORNEYS FOR ROLLINMEAD REALTY, INC.**
**AND CHRIS ERICHSEN**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 7 2008

FILED
CLERK'S OFFICE

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served upon the following counsel of record via certified mail, return receipt requested, on January 4, 2008.

Mary V. Koch
Law Offices of Peter G. Angelos
One Charles Center
100 N. Charles Street, 22nd Floor
Baltimore, Maryland 21201
E-mail: mvk@lawpga.com
*Attorneys for all Plaintiffs*

Robin Greenwald
Weitz & Luxenberg, PC
180 Maiden Lane, 40th Floor
New York, New York 10038
*MDL 1358 Liaison Counsel for Plaintiffs*

Peter John Sacripanti
McDermott Will & Emery LLP
340 Madison Avenue, 14th Floor
New York, New York 10173
*MDL 1358 Liaison Counsel for Defendants*

JADD F. MASSO

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 7 2008

FILED
CLERK'S OFFICE

## SCHEDULE OF INVOLVED ACTIONS

*Thomas E. Ryan, Jr., Paula C. Ryan, and Thomas E. Ryan, III v. 7-Eleven, Inc., ENSR Corporation, Frall Developers, Inc., RE/MAX Greater Metro, Edgar C. Whittington, Rollinmead Realty, Inc., and Chris Erichsen*

> United States District Court for the District of Maryland, Baltimore Division
> Civil Action No. 1:07-CV-02770
> Hon. J. Frederick Motz

*Michael Harrison, Hope Harrison, and April Matlock v. 7-Eleven, Inc. and Frall Developers, Inc.*

> United States District Court for the District of Maryland, Baltimore Division
> Civil Action No. 1:07-CV-01179
> Hon. William D. Quarles, Jr.



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 7 2008

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | § § § § § § | |
| This Document Relates To: | § § | **MDL Docket No. 1358** |
| *Harrison, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-01179 (D. Md.) | § § § | |
| and | § § | |
| *Ryan, et al. v. 7-Eleven, Inc., et al.* Cause No. 07-02770 (D. Md.) | § § § § | |

# EXHIBIT "A"

# TO THE REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER NO. 30



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDITH QUICK; LISA KIBBONS and CARL KIBBONS, Individually and as parents of EVAN KIBBONS, a Minor; EDITH BUCKLEY and GREGORY BUCKLEY, Individually and as parents of ELLEN BUCKLEY, a Minor; JEFFERY QUICK and LISA QUICK; CHARLES QUICK, Jr. and CATHY QUICK; JOHN PANOZZO, guardian of MARGUERITE PANOZZO, a disabled person; CHRISTOPHER BURGE and ANGELA BURGE; KENNETH CLARK, and LISA KIBBONS and JOHN PANOZZO, as purported representatives of a class, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1358 Master File C.A. No. 1:00-1898 (SAS) Case No. 05 Civ. 7269 Transferred from: United States District Court, Central District of Illinois, Case No. 05-CV-2072 MPM DGB |
| Plaintiffs, | ) ) | Removed from: Circuit Court of Kankakee County, Illinois, 21st Judicial Circuit Case No. 01-L-147 |
| vs. | ) ) ) | |
| SHELL OIL COMPANY, a foreign corporation; SHELL PIPE LINE CORPORATION, a foreign corporation; EQUILON PIPELINE COMPANY LLC, a foreign limited liability company;  and PARSONS ENGINEERING SCIENCE, INC., foreign corporation; | ) ) ) ) ) ) ) ) ) ) | PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT
## TABLE OF CONTENTS

| | | |
|---|---|---|
| COUNT I - | Edith Quick: Common Law Trespass / Shell Defendants and Equilon Pipe Line; | p. 14 |
| COUNT II - | Edith Quick: Private Nuisance / Shell Defendants and and Equilon Pipe Line; | p. 15 |
| COUNT III - | Edith Quick: Negligence / Shell Defendants and Equilon Pipe Line; | p. 17 |
| COUNT IV - | Edith Quick: Negligence / Parsons Defendant; | p. 20 |
| COUNT V - | Edith Quick: Res Ipsa Loquitur -- Shell Defendants And Equilon Pipe Line; | p. 22 |

COUNT VI -        Lisa and Carl and Evan Kibbons:  Trespass / Shell
                  Defendants and Equilon Pipe Line;                          p. 24

COUNT VII -       Lisa and Carl and Evan Kibbons:  Private Nuisance /
                  Shell Defendants and Equilon Pipe Line;                    p. 26

COUNT VIII -      Lisa and Carl and Evan Kibbons:  Negligence / Shell
                  Defendants and Equilon Pipe Line;                          p. 27

COUNT IX -        Lisa and Carl and Evan Kibbons:  Negligence / Parsons
                  Defendants;                                                p. 27

COUNT X -         Lisa and Carl and Evan Kibbons: Res Ipsa Loquitur – Shell
                  Defendants and Equilon Pipe Line;                          p. 28

COUNT XI -        Gregory and Edith and Ellen Buckley:  Trespass Shell
                  Defendants and Equilon Pipe Line;                          p. 29

COUNT XII -       Gregory and Edith and Ellen Buckley:  Private Nuisance /
                  Shell Defendants and Equilon Pipe Line;                    p. 31

COUNT XIII -      Gregory and Edith and Ellen Buckley:  Negligence /
                  Shell Defendants and Equilon Pipe Line;                    p. 32

COUNT XIV -       Gregory and Edith and Ellen Buckley:  Negligence /
                  Parsons Defendant;                                         p. 33

COUNT XV -        Gregory and Edith and Ellen Buckley: Res Ipsa Loquitur /
                  Shell Defendants and Equilon Pipe Line;                    p. 33

COUNT XVI -       Jeffrey Quick and Lisa Quick:  Trespass / Shell
                  Defendants and Equilon Pipe Line;                          p. 34

COUNT XVII -      Jeffrey Quick and Lisa Quick:  Private Nuisance /
                  Shell Defendants and Equilon Pipe Line;                    p. 35

COUNT XVIII -     Jeffrey Quick and Lisa Quick:  Negligence /
                  Shell Defendants and Equilon Pipe Line;                    p. 36

COUNT XIX -       Jeffrey Quick and Lisa Quick: Res Ipsa Loquitur /
                  Shell Defendants;                                          p. 37

COUNT XX -        Jeffrey Quick and Lisa Quick:  Negligence /
                  Parson Defendants;                                         p. 38

COUNT XXI -       Charles Quick, Jr. and Cathy Quick:  Trespass / Shell
                  Defendants and Equilon Pipe Line;                          p. 39

COUNT XXII -      Charles Quick, Jr. and Cathy Quick:  Private Nuisance /
                  Shell Defendants and Equilon Pipe Line;                    p. 40

COUNT XXIII -     Charles Quick, Jr. and Cathy Quick:  Negligence /
                  Shell Defendants and Equilon Pipe Line;                    p. 41

COUNT XXIV -      Charles Quick, Jr. and Cathy Quick: Res Ipsa Loquitur /
                  Shell Defendants;                                          p. 41

COUNT XXV -       Charles Quick, Jr. and Cathy Quick:  Negligence /
                  Parsons Defendant;                                         p. 43

COUNT XXVI -      John Panozzo, Guardian of Marguerite Panozzo, a disabled
                  person:  Trespass / Shell Defendants and Equilon Pipe Line;  p. 43

COUNT XXVII -     John Panozzo, Guardian of Marguerite Panozzo, a disabled
                  person:  Private Nuisance / Shell Defendants and Equilon
                  Pipe Line;                                                 p. 45

COUNT XXVIII -    John Panozzo, Guardian of Marguerite Panozzo, a disabled
                  person:  Negligence / Shell Oil and Shell Pipe Line and
                  Equilon Pipe Line;                                         p. 45

COUNT XXIX -      John Panozzo, Guardian of Marguerite Res Ipsa Loquitur /
                  Shell Defendants;                                          p. 46

COUNT XXX -            Christopher Burge and Angela Burge:  Trespass / Shell
                      Defendants and Equilon Pipe Line;                            p. 47
COUNT XXXI -          Christopher Burge and Angela Burge:  Negligence /
                      Shell Defendants and Equilon Pipe Line;                      p. 48
COUNT XXXII -         Christopher Burge and Angela Burge:  Private Nuisance /
                      Shell Defendants and Equilon Pipe Line;                      p. 48
COUNT XXXIII -        Christopher Burge and Angela Burge: Res Ipsa Loquitur /
                      Shell Defendants;                                            p. 49
COUNT XXXIV -         Kenneth Clark:  Trespass / Shell Defendants and Equilon
                      Pipe Line Company;                                           p. 50
COUNT XXXV -          Kenneth Clark:  Negligence / Shell Defendants and
                      Equilon Pipe Line;                                           p. 51
COUNT XXXVI -         Kenneth Clark:  Private Nuisance / Shell Defendants and
                      Equilon Pipe Line;                                           p. 51
COUNT XXXVII -        Kenneth Clark: Res Ipsa Loquitur / Shell Defendants;         p. 52
COUNT XXXVIII -       Lisa Kibbons / Declaratory Judgment;                         p. 53
COUNT XXXIX -         Strict Liability;                                            p. 56
COUNT XXXX -          Lisa Kibbons and John Panozzo: Class Action;                 p. 58

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDITH QUICK; LISA KIBBONS and CARL KIBBONS, Individually and as parents of EVAN KIBBONS, a Minor; EDITH BUCKLEY and GREGORY BUCKLEY, Individually and as parents of ELLEN BUCKLEY, a Minor; JEFFERY QUICK and LISA QUICK; CHARLES QUICK, Jr. and CATHY QUICK; JOHN PANOZZO, guardian of MARGUERITE PANOZZO, a disabled person;  CHRISTOPHER BURGE and ANGELA BURGE; KENNETH CLARK, and LISA KIBBONS and JOHN PANOZZO, as purported representatives of a class, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1358 Master File C.A. No. 1:00-1898 (SAS)  Case No. 05 Civ. 7269   Transferred from: United States District Court, Central District of Illinois, Case No. 05-CV-2072 MPM DGB  Removed from: Circuit Court of Kankakee County, Illinois, 21st Judicial Circuit Case No. 01-L-147 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS |
| SHELL OIL COMPANY, a foreign corporation; SHELL PIPE LINE CORPORATION, a foreign corporation; EQUILON PIPELINE COMPANY LLC, a foreign limited liability company;  and PARSONS ENGINEERING SCIENCE, INC., foreign corporation; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## FOURTH AMENDED
## COMPLAINT AT LAW

## ALLEGATIONS COMMON TO ALL PLAINTIFFS

1.    All plaintiffs are or were residents and/or owners of real estate in Limestone

Township, Kankakee County, Illinois, as is stated in more detail hereinafter.

1

2.    Defendant Shell Pipe Line Corporation ("Shell Pipe Line") is a Maryland corporation, doing business in Illinois, with its principal place of business in Houston, Texas. Shell Pipe Line operated, managed, maintained, and controlled an underground pipeline ("Pipe Line"), which transported certain petroleum products, including gasoline, from the state of Texas to the vicinity of Chicago, Illinois.

3.    Defendant Shell Oil Company ("Shell Oil") is a Delaware corporation, doing business in Illinois, with its principal place of business in Houston, Texas. Shell Pipe Line is, or until some time after the year 1999 was, a wholly-owned subsidiary of Shell Oil Company. Shell Oil directed or controlled the policies and management of Shell Pipe Line, including but not limited to the sale of the assets of Shell Pipe Line to Equilon Pipeline Company LLC ("Equilon Pipeline") at some time after 1999. Equilon Pipeline Company LLC is a Delaware limited liability company, doing business in Illinois, with its principal place of business in Houston, Texas.

4.    Defendant Parsons Engineering Science, Inc. ("Parsons"), is a California corporation, doing business in Illinois, with its Illinois headquarters in the Village of Westmont, DuPage County, Illinois, and its principal place of business in Pasadena, California.

5.    Each plaintiff is an individual citizen of Illinois and no defendant is a citizen of Illinois, so there is complete diversity of citizenship between the parties.

6.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.    On November 9, 1988, an announcement was made of a release of an estimated

16,000 gallons of SU2000 gasoline from the Pipe Line (hereinafter "release").  SU2000 gasoline is a product manufactured, distributed, and sold by Shell Oil.  Shell Oil's SU2000 gasoline contains methyl tertiary-butyl ether (hereinafter "MTBE") and its degradation byproduct tertiary butyl alcohol (TBA), as well as other chemicals such as benzene, ethyl-benzene, toluene and xylene ("BETX" or "BETX COMPOUNDS").  The release of these substances constituted an unauthorized "release" within the meaning of the Illinois Environmental Protection Act (the "Act"), 415 ILCS Section 5/1 through 5/7.5

8.     Shell Oil's estimates of the amount of gasoline released have varied over time. At one time, Shell Oil estimated that over 100,000 gallons had been released.  Shell later revised that estimate downwards to between 12,000 and 21,000 gallons.

9.     The release of Shell SU2000 gasoline from the Pipe Line occurred in a rural agricultural area in Limestone Township, west of the City of Kankakee, in Kankakee County, Illinois, on a property known as the Danhausen Farm.  There are over 1,000 private wells in Limestone Township, according to the Illinois State Water Survey.

10.     Gasoline and gasoline constituents, including MTBE, continue to persist in surface water and groundwater in the general vicinity of the release, indicating that an additional subsurface Pipe Line leak or spill has occurred or, alternatively, that leakage from the original Pipe Line release location was never permanently sealed off. Groundwater beneath the release point flows in a generally northerly direction toward the Kankakee River.  The underground terrain in the vicinity of the release, however, is fractured and complex.  As a consequence, groundwater at different times can flow in different directions, and contamination of at least some wells is likely to be cyclical.  The plume of contamination extends for a number of miles in all directions from the release site.

3

11.     Benzene, toluene, and xylene are listed as "toxic substances" by certain agencies of the United States of America.

12.     Benzene is a known cause of human cancer.  Benzene also has been reported in the scientific literature to: (a) be toxic to the liver; (b) cause central nervous system malfunction; (c) cause cardiac irregularities; (d) be teratogenic and mutagenic.

13.     Toluene has been reported in medical articles to be a cause of cancer in animals and a suspected cause of cancer in humans.  Toluene also has been reported in medical articles to: (a) be toxic to the liver; (b) cause central nervous system malfunction; (c) cause cardiac irregularities; (d) be teratogenic and mutagenic.

14.     MTBE, TBA, and BETX can enter the human body in one or more or all of the following ways: (a) through inhalation of vapor; (b) by penetration of the skin and absorption (which occurs when showering or bathing in contaminated water, or when swimming in contaminated water); and (c) through consumption of, among other things, drinking water and food mixed with water (i.e., baby formula).  Since 1988, the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline have caused and allowed gasoline, benzene, and MTBE, to migrate toward, seep into, and contaminate plaintiff's well and the groundwater, surface water, and the air in the area surrounding the plaintiff's property.  The release of gasoline, benzene, and MTBE, present an immediate threat to health and the environment because, among other things, it can be inhaled once it evaporates. Wildlife and aquatic life and farm crops on or near the plaintiff's property are also threatened by the contamination.

15.     After the 1988 release, several monitoring wells were installed on behalf of Shell Oil and Shell Pipe Line.  These wells were located approximately one (1) mile northwest and one (1) mile southeast of the release site.

16.    Plaintiff Edith Quick is presently 70 years of age and lives at the common address of 913 A North 4000 West Road, in Limestone Township, Kankakee County, Illinois, immediately across the road from the Danhausen farm that is the site of the release. Edith's house is on a farmstead, where she has continuously resided since 1960. From 1960 until September of 2001 Edith's drinking and general household use water came from a well on her own property.

17.    Since 1960, Edith has sold parcels of her original property to some of her children, who now reside on those nearby parcels.  Edith's daughter Lisa Kibbons, Lisa's husband Carl Kibbons, and their family, as well as Edith's daughter Edith Buckley, her husband Gregory Buckley and their family, and Edith Quick's son Jeffrey Quick and his wife Lisa Quick, all live within about 1600 feet of each other in a north/south direction along the east side of "Townhall Road 4000 West." Edith, her children and their families, and other homeowners within the area affected by the release, depend upon their own wells for their potable water supply.

18.    Periodically between 1994 and March 2001, Parsons' employees came to Edith's home and took samples out of an exterior water faucet located near her house.

19.    The water sampling by Parsons during the period 1994 to the present time took place at various times on a twice-a-month basis, or monthly, or every second or every third month.

20.    Laboratory test reports from Parsons' sampling on Edith's property stated that chemicals were not detected ("ND") above the laboratory detection limit.

21.    Plaintiffs aver, on information and belief, that with few exceptions, all written reports of water testing by Parsons of wells within the area affected by the release were reported

as "ND" to residents within the area.

22.     In March of 2000 Edith's skin color suddenly turned "high-lighter yellow" and she went to Alfred L. Baker, M.D., at the University of Chicago Hospitals in Chicago, who examined her, put her through some liver function tests, and sent her a written report dated March 28, 2000 stating that she had chronic hepatitis.  The report did not discuss the possibility that chemical exposure caused this injury.

23.     In June 2001, Lisa Kibbons drew water samples from wells on Lisa's property, and the property Edith Quick, Edith Buckley, and Jeffrey Quick, and sent it to a laboratory to be tested for MTBE.  The laboratory report came back positive for MTBE from each of the four wells.

24.     In August 2001, the Kankakee County Health Department took samples of well waters at 10 locations, including the homes of Edith and other nearby homes. Edith was told that the results for her well were positive for the presence of benzene.

25.     Edith's son Charles Quick, Jr., has a home about 2 miles west/northwest of the release site.  Charles' well water was sampled and tested in August of 2001 by the Kankakee County Health Department, and was reported positive for the presence of benzene.

26.     In September 2001, Edith had blood and urine tests performed and was told by a physician at St. Mary's/Provena Hospital in Kankakee that her blood and urine tested positive for the likely presence of toluene.

27.     September 2001 was the first time that anybody told Edith, or that Edith became possessed of sufficient information or understanding, that she was likely affected by the chemicals in her well's drinking water that came from gasoline discharges from the Pipe Line.

28.     Starting in September 2001 Edith quit drinking the water from the well on her

property.

29.    The water Edith consumed from her well at various times from 1988 to September 2001 was the likely cause of toluene in her blood and urine in September 2001 and is also a likely cause of her liver disease.

30.    The contamination of Edith's well water was likely caused by the 1988 Pipe Line spill and/or an additional spills or discharges from the Pipe Line.

31.    Plaintiffs Lisa Kibbons ("Lisa") and Carl Kibbons ("Carl") own property located at 993 North West Road, Kankakee, Illinois 60901, and have resided there on a continuous basis since 1988. Following the gasoline release in 1988, it was determined that the Kibbons' well, which was utilized for drinking, cooking, cleaning, washing, and bathing, was in fact contaminated with MTBE.

32.    Lisa and Carl's son, Evan Kibbons ('Evan"), was born January 12, 1990.

33.    Evan has been diagnosed by his physician as having the following conditions, all of central nervous system origin: facial twitching, involuntary spasms in his arms, fatigue, nausea, and chest pains despite a normal echocardiogram, all of which symptoms are claimed by Lisa and Carl as likely caused by the presence of MTBE and benzene and toluene in Evan's body from his home water consumption in the uterus of his mother and thereafter.

34.    At a routine dentist visit, the dentist ran an ECG on Carl and found that Carl had an irregular heartbeat, which Carl claims is likely caused by the presence of MTBE and benzene and toluene in his body from his home water consumption.

35.    Plaintiffs Edith Buckley ("Edith B") and Gregory Buckley ("Gregory") own property located at 947 North West Road, Kankakee, Illinois 60901 where they have resided since 1987. Following the gasoline release in 1988, it was determined that the well on the

premises at 947 North West Road, Kankakee, Illinois which was utilized for drinking, cooking, cleaning, washing and bathing, was in fact contaminated with MTBE.

36.     Edith B. and Gregory have a daughter, Ellen Buckley, ("Ellen") who was born on May 9, 1999.

37.     When Ellen was eight (8) months old her right kidney was removed because it was engulfed by a cancerous tumor known as a Wilm's tumor.

38.     Ellen's tumor was likely caused by exposure to benzene and other components of gasoline present in the water supplied for her home and the contaminated air she breathed from the release.

39.     Jeffrey Quick and Lisa Quick own property located at 781 North 4000 West Road, Kankakee, Illinois 60901 where they have resided since 1996.  Jeffrey and Lisa use their own private well water for drinking, cooking, cleaning, washing and bathing.  Jeffrey and Lisa's property is adjacent to that of Edith Quick, and divided from the property of Edith Quick by a drainage ditch that carries surface water from the Danhausen property to Wiley Creek.  The drainage ditch has been tested for gasoline contaminants since 1988 and such test results were positive.

40.     Plaintiff John Panozzo is the Court-appointed guardian of the Estate of Marguerite Panozzo, a disabled person, having been so appointed on October 7, 1994, Case Number 94-P-199, in the Circuit Court of Kankakee County.  The disabled person, Marguerite Panozzo, is the mother of plaintiff, John Panozzo, and is 95 years of age.  Prior to 1998, Marguerite Panozzo resided at 4045 West Route 17, Kankakee, Illinois.  Marguerite is the owner of approximately 125 acres partially contiguous and situated directly south of the Danhausen Farm.  Marguerite Panozzo's acreage encompasses two (2) residences located at 4045 West

8

Route 17, Kankakee, Illinois, and 129 North 4000 West Road, Kankakee, Illinois, which in 1988 and subsequent thereto, shared a common well.

41.    The public water supply wells nearest the release site serve the Oakdale Acres and Village Green subdivisions, and are located approximately 3/4 of a mile to the northwest of the release site. A sampling program conducted on behalf of Shell Oil and Shell Pipe Line from March 1996 to May 1996 confirmed the presence of MTBE in public water supply wells serving the Oakdale Acres and Village Green subdivisions. In August 2001, gasoline was observed on the surface of a large pond in the Oakdale Acres subdivision used by children for summer swimming.

42.    A sampling program conducted on behalf of Shell Oil and Shell Pipe Line, from March 1989 to March 1996, confirmed the presence of gasoline, including components of SU2000 gasoline, in several monitoring wells located within approximately one (1) mile (primarily northwest and southeast) of the release site.

43.    A sampling program conducted on behalf of Shell Oil and Shell Pipe Line in August 1993, confirmed the presence of benzene in several monitoring wells located within approximately one (1) mile (primarily northwest and southeast) of the release site.

44.    During the year 2001, the chemicals toluene, benzene, or MTBE were discovered in the blood and urine of residents in the area affected by the pipeline release.

45.    Plaintiffs aver, on information and belief, that women residing in the affected area and using private well water area who are trying to get pregnant have had more difficulty in doing so than women residents of other nearby areas supplied by City of Kankakee water.

46.    Plaintiffs aver, on information and belief, that in addition to the 1988 release, a

release at another location on the Pipe Line, or from the original Pipe Line release which was never permanently sealed off, continues to cause water pollution in the vicinity of the release, and such pollution has occurred within two (2) years prior to the filing of the complaint in this matter, and is still occurring.

47.     From at least November 9, 1988, up to and continuing through the filing of this Complaint, Shell Oil has maintained and controlled a continuing source of contamination into the waters of the State of Illinois, and gasoline and other products released by Shell Oil have penetrated in, under, and upon lands owned or occupied by plaintiffs, including wells used for drinking water purposes.

48.     Shell Oil and Shell Pipe Line erected or controlled the erection of a structure containing machinery, including a "stripper" machine through which processes contaminated water in Limestone Township, on property owned by Martha Danhausen. Even when gasoline-contaminated water is run through the "stripper" as many as six (6) times, the resulting "cleansed" water still shows traces of gasoline.

49.     Shell Oil and Shell Pipe Line have installed or caused to be installed 40 to 50 wells on the Danhausen property.

50.     The structure and air stripper installed by Shell Oil on the Danhausen property is located about 1700 feet in a straight west/southwesterly line from plaintiff Edith Quick's home.

51.     MTBE is an additive to gasoline.  As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE, such as TBA, and may contain additional oxygenates and ethers, including TAME, DIPE, and ETBE.

52.     MTBE contaminates the environment through leaks and spills from gasoline delivery systems.  Once released to the environment from gasoline delivery systems, MTBE has

unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare. In particular, the fate and transport of MTBE in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the BTEX COMPOUNDS.

53.     Once released into the subsurface, MTBE separates from other gasoline constituents in the presence of moisture. In contrast to the BTEX compounds, MTBE has a strong affinity for water. If MTBE is released into the environment in sufficient quantities, MTBE has the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.

54.     MTBE spreads farther and faster than other components of gasoline, resists biodegradation, and is difficult and costly to remove from groundwater and drinking water supplies.

55.     No federal or state agency has approved MTBE as an additive to drinking water. No federal or state agency has approved releasing MTBE to groundwater.

56.     Along with its other vile properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption. MTBE also presents a significant public health threat.

57.     Shell Oil promoted the use of gasoline containing MTBE for its purported environmental benefits, knowing of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound, by (among other things): widespread pollution of groundwater with MTBE, contamination of public drinking water by MTBE,

11

MTBE's rendering drinking water supplies unfit and unusable for consumption, MTBE threatening public health, and MTBE increasing costs to public water suppliers and their customers.

58.     Despite knowing that MTBE pollution was inevitable unless adequate precautions were taken, and despite the availability of reasonable alternatives (including but not limited to adequate warnings), Shell Oil chose not to warn customers, retailers, regulators or public officials.  As production and sales of MTBE and gasoline containing MTBE increased, Shell Oil failed to take any reasonable, appropriate, and special precautions to transport gasoline containing MTBE safely, or to prevent, detect and clean up spills and leaks of gasoline containing MTBE.  Despite knowing the risk of harm posed by MTBE, Shell Oil also failed to warn purchasers, the public, regulators, and/or plaintiffs that without such precautions more and more MTBE would be released into the environment and cause, among other significant adverse effects, long term groundwater contamination, pollution of water supplies, and threats to public health and safety.

59.     Shell Oil further exacerbated the situation by continuing unreasonable and negligent acts, including transporting gasoline containing MTBE without taking precautions adequate to prevent releases of MTBE to the subsurface, knowing that release to the environment of this compound would be inevitable because the gasoline was transported in inadequate and leaking pipelines.  Shell Oil failed to take reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE to soil and/or groundwater, and failed to take reasonable, appropriate or special precautions to investigate, contain and clean up releases of MTBE.

12

60.     Shell Oil took affirmative actions that led to the past, present, and continuing contamination with MTBE, including but not limited to, making representations to downstream users of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that gasoline containing MTBE was environmentally sound and appropriate for widespread production, distribution, sale and use. Indeed, Shell Oil represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

61.     Shell Oil had a duty (which it breached) to test MTBE thoroughly to determine its environmental fate and transport characteristics, and potential human health impacts before it sold MTBE and/or gasoline containing MTBE. Shell Oil had a further duty (which it also breached) to take precautions necessary to assure that gasoline containing MTBE was properly transported, and to institute all necessary measures to contain and promptly abate inevitable spills and leaks. Shell Oil failed adequately to test, transport, warn about, or control gasoline containing MTBE, and, among other things, failed to abate groundwater contamination caused by MTBE, including contamination in and pollution to the area affected by the release.

62.     Shell Oil and its agents and employees created, participated in, and/or facilitated the flow of gasoline containing MTBE into pipeline systems that Shell Oil knew could not safely contain such products. The widespread problems of leaking pipeline systems were well known to the defendants prior to the introduction of MTBE. At least as early as the mid-1960's, Shell Oil knew, or reasonably should have known, that pipeline systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

63.     Before introducing MTBE into gasoline, Shell Oil knew, or reasonably should have known, among other things, that MTBE released into the environment would mix easily with groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from private wells and public drinking water supplies, and otherwise threaten the public health and welfare. Shell Oil knew, or reasonably should have known, that the gasoline pipelines contained leaks or were prone to leaks.

### COUNT I – EDITH QUICK: COMMON LAW TRESPASS/ SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, Edith Quick (Edith), complaining against defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

64.     Plaintiff repeats and realleges paragraphs 1 through 63 herein.

65.     The gasoline-contaminated groundwater described herein resulted in a subsurface physical invasion of the real property on which plaintiff resides and in the interference with the use of the property both past, present and prospective, which constitutes a common law trespass to the exclusive right to the use of the real property by plaintiff

66.     The gasoline-contaminated groundwater has returned on a cyclical basis and continues to do so with the result that the common law trespass is a continuing wrong affecting plaintiff's interest.

67.     The aforesaid common law trespass was a proximate cause of damage to plaintiff.

68.     The nature of the injury or damage that plaintiff has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of her own injuries;

(b)     Disfigurement resulting from the injury;

(c)     The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(d)     The disability experienced and reasonably certain to be experienced in the future;

(e)     The emotional distress experienced and reasonably certain to be experienced in the future as a result of defendants' conduct.

(f)     The diminution in market value of her real estate by reason of its groundwater contamination.

(g)     Physical discomfort and interference with the normal use of her home and property.

WHEREFORE, Plaintiff, Edith Quick, demands judgment from the Defendants, Shell Oil Company and Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demands trial by jury.

## COUNT II - EDITH QUICK: PRIVATE NUISANCE/ SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, Edith Quick, complaining against Defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

69.     Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through

15

63.

70.     The contamination of groundwater as alleged in this Complaint constituted a common law private nuisance, in that it constituted a substantial invasion of the use and enjoyment of the real property owned by plaintiff and upon which plaintiff and her family members resided.

71.     The continuation of said nuisance persists over a long period of years without Shell Oil and Shell Pipe Line and/or Equilon Pipeline stopping the continued discharge of its gasoline and preventing further releases into subsurface groundwater, and continues to persist.

72.     The nuisance as alleged was a proximate cause of injury or damage to plaintiff.

73.     The nature of the injury or damage which the plaintiff has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of her own injuries;

(b)     Disfigurement resulting from the injury;

(c)     The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(d)     The disability experienced and reasonably certain to be experienced in the future;

(e)     The emotional distress experienced and reasonably certain to be experienced in the future as a result of defendants' conduct.

(f)   The diminution in market value of her real estate by reason of its groundwater contamination.

(g)   Physical discomfort and interference with the normal use of her home and property.

WHEREFORE, Plaintiff, Edith Quick, demands judgment from the Defendants, Shell Oil Company and Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demands trial by jury.

## COUNT III- EDITH QUICK/NEGLIGENCE/
## SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, Edith Quick, complaining against Defendants Shell Oil, Shell Pipe Line, Equilon Pipeline, states:

74.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 63.

75.   The defendants had a duty to plaintiff to use ordinary care for the safety of adjacent landowners including plaintiff, in the operation of their pipeline.  They owed a duty to maintain their pipeline in a reasonably safe condition by periodic inspection of the pipeline for potential leaks, periodic repair and replacement of or relining of all sections of the pipeline, re-digging and placement of the pipeline below worst-case front line levels in Limestone Township, and use of all reasonable means to prevent a break in the integrity of the pipeline.

76.   Notwithstanding their duties, the defendants, Shell Oil, Shell Pipeline, and Equilon Pipeline were negligent and breached their duty in one or more or all of the following ways:

17

(a)     Failed to prevent the contamination of plaintiff's well water and property with petroleum products from a leaking underground pipeline owned and controlled by the defendants, Shell Oil and Shell Pipe Line, which released benzene and MTBE;

(b)     Failed to prevent the release of gasoline or other petroleum products from a leaking underground pipeline that they owned and controlled from migrating onto plaintiff's property and into plaintiff's private drinking well;

(c)     Failed to notify and warn plaintiff of the release and gasoline contamination from their leaking underground pipeline onto her property and into her well water after they had actual or constructive notice that their pipeline was leaking;

(d)     Failed to adequately protect the pipeline from winter frost by placing it deep enough in the ground;

(e)     Failed to properly test and inspect the underground pipeline at sufficient periodic intervals and in an adequate manner to ensure against a break in the pipeline;

(f)     Failed to repair, replace, or reline the section of pipeline in Limestone Township to ensure against a break in the pipeline;

(g)     Violated and continues to violate Section 12(a) of the Act, 415 ILCS 5/12(a) (1998), Section 12(d) of the Act, 415 ILCS 5/12 (1998) and 35 Ill. Adm. Code 620.301, 620.405 and 620.410(b).

77.     The defendants named herein so negligently, carelessly, and/or recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack thereof), released, spilled, and/or sold MTBE and/or TBA, and/or so negligently, carelessly and recklessly dispensed, spilled, and released gasoline containing MTBE and/or TBA, and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA into

gasoline pipelines, and/or so negligently, carelessly and/or recklessly designed, installed, operated and/or maintained gasoline pipelines and/or gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties and directly and proximately caused MTBE and/or TBA to contaminate and pollute the surface and groundwaters in Limestone Township, resulting in the compensatory damages alleged in this complaint.

78.     Defendants, and each of them, among other things, negligently, carelessly, and/or recklessly failed to: (1) prevent leaks of MTBE and/or TBA through the use of appropriate technology; (2) install and maintain gasoline pipeline systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leak(s); and (5) clean up and abate MTBE and/or TBA spill(s) as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

79.     The negligence of the defendants Shell Oil and Shell Pipe Line and Equilon Pipeline was and continues to be a proximate cause of injury and damage to plaintiff.

80.     The nature of the injury or damage which plaintiff has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of her own injuries;

(b)     Disfigurement resulting from the injury;

(c)     The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(d)     The disability experienced and reasonably certain to be experienced in the future;

19

(e)     The emotional distress experienced and reasonably certain to be experienced in the future as a result of defendants' conduct.

(f)     The diminution in market value of her real estate by reason of its groundwater contamination.

(g)     Physical discomfort and interference with the normal use of her home and property.

WHEREFORE, Plaintiff, Edith Quick, demands judgment from the Defendants, Shell Oil Company and Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages plus costs, and demands trial by jury.

## COUNT IV - EDITH QUICK/NEGLIGENCE/PARSONS DEFENDANT

Plaintiff, Edith Quick, complaining against Defendant Parsons Engineering Science, Inc., states:

81.     Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 63.

82.     Gasoline is lighter than water.  When a well is not pumping, gasoline may float on top of the water in the well column.  Under sustained pumping the fluid in the well is mixed and agitated and gasoline is present in water pumped from the well.

83.     In order to take an accurate sample of water from a well, the person taking the sample should conduct part of the sampling by drawing the sample after a sustained pumping so as to duplicate the conditions of the actual manner in which typical well users draw water out of their well under conditions of maximum draw and low groundwater levels.

84.    Parsons employees who directed, supervised or took water samples from plaintiff's well and other private water supply wells within the area affected by the release likely followed a procedure that did not draw down well water by sustained pumping, because the "ND" reports by Parsons indicating insignificant levels of the five chemicals reported upon are inconsistent with the presence of benzene and other toxic chemicals in plaintiff's blood and urine, and are also inconsistent with testing of samples drawn and tested by persons unaffiliated with Parsons, which detected the presence of gasoline chemical contaminants in the water samples at greater levels than reported by Parsons.

85.    During the period 1994 to the present time, Parsons was negligent in one or more or all of the aforesaid ways:

(a)    When water samples were taken by various employees of Parsons, the samples were taken in such a manner as to permit and facilitate an inaccurate reading of the quantities of toxic chemicals in well water.

(b)    The water sampling protocol or procedure designed by Parsons or otherwise promulgated by Parsons was such as to permit and facilitate an inaccurate reading of the quantities of toxic chemicals in well water.

86.    The negligence of Parsons was a proximate cause of injury and damage to plaintiff.

87.    The nature of the injury or damage which the plaintiff has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain in the area of her breasts and in other parts of her body as well as mental anguish as a result of her own injuries;

(b)     Disfigurement resulting from the injury;

(c)     The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(d)     The disability experienced and reasonably certain to be experienced in the future;

(e)     The emotional distress experienced and reasonably certain to be experienced in the future as a result of defendants' conduct.

(f)     The diminution in market value of her real estate by reason of its groundwater contamination.

(g)     Physical discomfort and interference with the normal use of her home and property.

WHEREFORE, Plaintiff, Edith Quick, demands judgment from the Defendant Parsons Engineering Science, Inc., jointly and severally with Shell Oil Company and Shell Pipe Line Corporation, and Equilon Pipeline Company LLC, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs and demands trial by jury.

## COUNT V - EDITH QUICK/RES IPSA LOQUITUR – SHELL DEFENDANTS AND EQUILON PIPELINE

Now comes the plaintiff, Edith Quick, and complaining of the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, and states:

88.     Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63.

89.     Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

90.     At all times when the release and leakage of gasoline that contaminated plaintiff's property and drinking water well was occurring, the defendants Shell Oil, Shell Pipe Line and Equilon Pipeline, had exclusive control of the underground pipeline.

91.     As a direct and proximate result of the contamination, plaintiff was injured as hereinafter alleged.

92.     The nature of the injury or damage which the plaintiff has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of her own injuries;

(b)     Disfigurement resulting from the injury;

(c)     The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and Services reasonably certain to be received in the future;

(d)     The disability experienced and reasonably certain to be experienced in the future;

(e)     The emotional distress experienced and reasonably certain to be experienced in the future as a result of defendants' conduct.

(f)     The diminution in market value of her real estate by reason of its groundwater contamination.

(g)    Physical discomfort and interference with the normal use of her home and property.

WHEREFORE, plaintiff demands judgment from defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, for an amount in excess of Fifty Thousand Dollars ($50,000.00) plus costs, and demands trial by jury.

## COUNT VI - LISA AND CARL AND EVAN KIBBONS / TRESPASS - SHELL DEFENDANTS AND EQUILON PIPELINE

Lisa Kibbons and Carl Kibbons, Individually and on behalf of their son Evan Kibbons, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

93.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 – 63.

94.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 65 through 66 of Count I as their claims of common law trespass.

95.    The common law trespass as alleged was a proximate cause of injury or damage to Plaintiffs.

96.    The nature of the injury or damage which the plaintiff Evan has sustained by wrongful conduct of any defendant includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    the pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of his injuries;

(b)    the reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(c)    the disability experienced and reasonably certain to be experienced in the future.

97.     The nature of the injury or damage which the plaintiffs Lisa and Carl have sustained by wrongful conduct of any defendant includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     the diminution in market value of their real estate by reason of its groundwater contamination;

(b)     the emotional distress experienced and reasonably certain to be experienced in the future as the result of defendants' conduct.

98.     The nature of the injury or damage which Carl alone has sustained by wrongful conduct of any defendant includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of his injuries;

(b)     the reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(c)     the disability experienced and reasonably certain to be experienced in the future.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, as parents of Evan Kibbons, a Minor, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, and Equilon

Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT VII - LISA AND CARL AND EVAN KIBBONS / PRIVATE NUISANCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Lisa Kibbons and Carl Kibbons, Individually and on behalf of their son Evan Kibbons, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

99.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

100.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 70 through 71 of Count II as their claims of common law private nuisance.

101.    The private nuisance as alleged was a proximate cause of injury or damage to the Plaintiffs.

102.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 96 through 98 of Count VI as their injury and damage counts.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, as parents of Evan Kibbons, a Minor, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT VIII- LISA AND CARL AND EVAN KIBBONS / NEGLIGENCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Lisa Kibbons and Carl Kibbons, Individually and on behalf of their son Evan Kibbons, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

103.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

104.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 75 through 78 of Count III as their claims of common law negligence.

105.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 96 through 98 of Count VI as their injury or damage counts.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, as parents of Evan Kibbons, a Minor, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, and Equilon Pipeline Company LLC, jointly and severally in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

## COUNT IX – LISA AND CARL AND EVAN KIBBONS / NEGLIGENCE – PARSONS DEFENDANT

Lisa Kibbons and Carl Kibbons, Individually and on behalf of their son Evan Kibbons, complaining of the defendant Parsons Engineering Science, Inc., state:

106.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

107.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 82 through 85 of Count IV as their claims of common law negligence against the Parsons defendant.

108.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 96 through 98 of Count VI as their damage or injury claim.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, as parents of Evan Kibbons, a Minor, demand judgment from the Defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, Individually, demand judgment from the Defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT X - LISA AND CARL KIBBONS AND EVAN KIBBONS/RES IPSA LOQUITUR – SHELL DEFENDANTS AND EQUILON PIPELINE

Now come the plaintiffs, Lisa Kibbons and Carl Kibbons, individually and on behalf of their son, Evan Kibbons, and complaining of the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline and state:

109.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63.

110.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 89 through 90 of Count V as their claims of res ipsa loquiter against the Shell defendants.

111.    As a direct and proximate result of the contamination, the plaintiffs were injured as hereinafter alleged.

112.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 96 through 98 of Count VI as their damage or injury claim.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, as parents of Evan Kibbons, a Minor, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, and Equilon Pipeline Company LLC, jointly and severally in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Evan Kibbons, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Lisa Kibbons and Carl Kibbons, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XI - GREGORY AND EDITH AND ELLEN BUCKLEY / TRESPASS - SHELL DEFENDANTS AND EQUILON PIPELINE

Edith Buckley and Gregory Buckley, individually and on behalf of their daughter, Ellen Buckley, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

113.    Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 – 63.

114.    Plaintiffs repeat and re-allege and incorporate by reference paragraphs 65 through 66 of Count I as their claims of common law trespass.

115.    The common law trespass as alleged was a proximate cause of injury or damage to Plaintiffs.

116.    The nature of the injury or damage which Ellen has sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    The pain and suffering experienced and reasonably certain to be experienced in the future, including both physical pain and mental anguish as a result of her own injuries;

(b)    Disfigurement resulting from the injury;

(c)    The reasonable expense of medical care treatment and services provided and the present cash value of the reasonable expense of necessary medical care, treatment and services reasonably certain to be received in the future;

(d)    The disability experienced and reasonably certain to be experienced in the future;

(e)    The emotional distress experienced and reasonably certain to be experienced in the future as the result of defendants' conduct.

117.    The nature of the injury or damage which Edith B. and Gregory have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    The diminution in market value of their real estate by reason of its groundwater contamination.

(b)    The emotional distress experienced and reasonably certain to be experienced in the future as the result of defendants' conduct.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, as parents of Ellen Buckley, a Minor, demand judgment from the Defendants Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Ellen Buckley, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XII- GREGORY AND EDITH AND ELLEN BUCKLEY / PRIVATE NUISANCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Edith Buckley and Gregory Buckley, individually and on behalf of their daughter, Ellen Buckley, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

118.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

119.    Plaintiffs repeat and re-allege and incorporate by reference paragraphs 70 through 71 of Count II as their claims of common law private nuisance.

120.    The common law private nuisance as alleged was a proximate cause of injury or damage to the Plaintiffs.

121.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 116 through 117 as their injury and damage counts.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, as parents of Ellen Buckley, a Minor, demand judgment from the Defendants Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Ellen Buckley, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley Individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon

Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XIII - GREGORY AND EDITH AND ELLEN BUCKLEY / NEGLIGENCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Edith Buckley and Gregory Buckley, individually and on behalf of their daughter, Ellen Buckley, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

122.   Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

123.   Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 75 through 78 as their claims of common law negligence.

124.   The common law negligence as alleged was a proximate cause of injury or damage to Plaintiffs.

125.   Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 116 through 117 and their injury and damage counts.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, as parents of Ellen Buckley, a Minor, demand judgment from the Defendants Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Ellen Buckley, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, individually, demand judgment from the Defendants, Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XIV – GREGORY AND EDITH AND ELLEN BUCKLEY / NEGLIGENCE – PARSONS DEFENDANT

126.    Edith Buckley and Gregory Buckley, individually and on behalf of their daughter, Ellen Buckley, complaining of the defendant Parsons Engineering Science, Inc., state:

127.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

128.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 82 through 85 of Count IV as their claims of common law negligence.

129.    The common law negligence as alleged was a proximate cause of injury or damage to Plaintiffs.

130.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 116 through 117 and their injury and damage counts.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley, as parents of Ellen Buckley, a Minor, demand judgment from the Defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages on behalf of Ellen Buckley, plus costs, and demand trial by jury.

WHEREFORE, Plaintiffs Edith Buckley and Gregory Buckley Individually, demand judgment from the Defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XV - GREGORY AND EDITH AND ELLEN BUCKLEY/RES IPSA LOQUITUR – SHELL DEFENDANTS AND EQUILON PIPELINE

Edith Buckley and Gregory Buckley, individually and on behalf of their daughter, Ellen Buckley, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

33

131.   Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63.

132.   Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

133.   At all times when the release and leakage of gasoline that contaminated plaintiff's property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line and Equilon Pipeline had exclusive control of the underground pipeline.

134.   As a direct and proximate result of the contamination, the plaintiff was injured as hereinafter alleged.

135.   Plaintiffs repeat, reallege and incorporate herein by reference paragraphs 116 through 117 and their injury and damage counts.

WHEREFORE, plaintiffs demand judgment from defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, for an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XVI - JEFFREY QUICK AND LISA QUICK / TRESPASS –SHELL DEFENDANTS AND EQUILON PIPELINE

Jeffrey Quick and Lisa Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

136.   Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 63.

137.   Plaintiffs repeat and reallege and incorporate by reference paragraphs 65 through 66 of Count I as their claims of common law trespass.

138.   The common law trespass as alleged was a proximate cause of injury or damage to Plaintiffs.

139.   The nature of the injury or damage which Jeffrey Quick and Lisa Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)   The diminution in market value of their real estate by reason of its groundwater contamination.

(b)   Physical discomfort and deprivation of the use and comfort of their home and property.

WHEREFORE, plaintiffs, Jeffrey Quick and Lisa Quick, individually demand judgment from the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as an for compensatory damages, plus costs, and demand trial by jury.

## COUNT XVII - JEFFREY QUICK AND LISA QUICK / PRIVATE NUISANCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Jeffrey Quick and Lisa Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline state:

140.   Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

141.   Plaintiffs repeat and reallege and incorporate by reference paragraphs 70 through 71 of Count II as their claims of common law private nuisance.

142.   The common law private nuisance as alleged was a proximate cause of injury or damage to Plaintiffs.

143.   The nature of the injury or damage which Jeffrey Quick and Lisa Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The diminution in market value of their real estate by reason of its groundwater contamination.

(b)     Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Jeffrey Quick and Lisa Quick, individually demand judgment from the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages plus costs, and demand trial by jury.

## COUNT XVIII - JEFFREY QUICK AND LISA QUICK / NEGLIGENCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Jeffrey Quick and Lisa Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

144.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

145.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 75 through 78 of Count III as their claims of common law negligence.

146.    The common law negligence as alleged was a proximate cause of injury or damage to Plaintiffs.

147.    The nature of the injury or damage which Jeffrey Quick and Lisa Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The diminution in market value of their real estate by reason of its groundwater contamination.

(b)  Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Jeffrey Quick and Lisa Quick, individually demand judgment from the defendant, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XIX - JEFFREY QUICK AND LISA QUICK/ RES IPSA LOQUITUR – SHELL DEFENDANTS

Jeffrey Quick and Lisa Quick, complaining of the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

148.  Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63.

149.  Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

150.  At all times when the release and leakage of gasoline that contaminated plaintiffs' property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line and Equilon Pipeline had exclusive control of the underground pipeline.

151.  As a direct and proximate result of the contamination, the plaintiffs were injured as hereinafter alleged.

152.  The nature of the injury or damage which Jeffrey Quick and Lisa Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)  The diminution in market value of their real estate by reason of its groundwater contamination.

(b)     Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Jeffrey Quick and Lisa Quick, individually demand judgment from the defendant, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XX - JEFFREY QUICK AND LISA QUICK / NEGLIGENCE – PARSONS DEFENDANT

Jeffrey Quick and Lisa Quick, complaining of the defendant Parsons Engineering Science, Inc., state:

153.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63.

154.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 82 through 85 of Count IV as their claims of common law negligence.

155.    The common law negligence as alleged was a proximate cause of injury or damage to Plaintiffs.

156.    The nature of the injury or damage which Jeffrey Quick and Lisa Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     The diminution in market value of their real estate by reason of its groundwater contamination.

(b)     Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Jeffrey Quick and Lisa Quick, individually demand judgment from the defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXI - CHARLES QUICK, JR. AND CATHY QUICK / TRESPASS – SHELL DEFENDANTS AND EQUILON PIPELINE

Charles Quick, Jr. and Cathy Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

157.   Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 63.

158.   Charles Quick, Jr. and Cathy Quick own property located at 1768 North 6250 West Road, Bonfield, Illinois, 60913 where they have resided since 1973.

159.   Following the gasoline release in 1988, it was determined that the well on the premises at 6250 West Road, Bonfield, Illinois, which was utilized for drinking, cooking, cleaning, washing and bathing, was in fact contaminated with MTBE.

160.   Plaintiffs repeat and reallege and incorporate by reference paragraphs 65 through 66 of Count I as their claims of common law trespass.

161.   The common law trespass as alleged was a proximate cause of injury or damage to Plaintiffs.

162   The nature of the injury or damage which Charles Quick, Jr. and Cathy Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)   The diminution in market value of their real estate by reason of its groundwater contamination.

(b)   Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Charles Quick, Jr. and Cathy Quick, individually demand judgment from the defendant, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXII - CHARLES QUICK, JR. AND CATHY QUICK / PRIVATE NUISANCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Charles Quick, Jr. and Cathy Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

163.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63 and 158 through 159.

164.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 70 through 71 of Count II as their claims of common law private nuisance.

165.    The common law private nuisance as alleged was a proximate cause of injury or damage to Plaintiffs.

166.    The nature of the injury or damage which Charles Quick, Jr. and Cathy Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    The diminution in market value of their real estate by reason of its groundwater contamination.

(b)    Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Charles Quick, Jr. and Cathy Quick, individually demand judgment from the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon

Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXIII - CHARLES QUICK, JR. AND CATHY QUICK / NEGLIGENCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Charles Quick, Jr. and Cathy Quick, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

167.    Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63 and 158 through 159.

168.    Plaintiffs repeat and reallege and incorporate by reference paragraphs 75 through 78 of Count III as their claims of common law negligence.

169.    The nature of the injury or damage which Charles Quick, Jr. and Cathy Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    The diminution in market value of their real estate by reason of its groundwater contamination.

(b)    Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Charles Quick, Jr. and Cathy Quick, individually demand judgment from the defendant, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXIV - CHARLES QUICK, JR. AND CATHY QUICK/ RES IPSA LOQUITUR - SHELL DEFENDANTS

Charles Quick, Jr. and Cathy Quick, complaining of the defendants Shell Oil,

41

Shell Pipe Line, and Equilon Pipeline, state:

170.    Plaintiffs, repeat, re-allege and incorporate by reference paragraphs 1 through 63 and 158 through 159.

171.    Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

172.    At all times when the release and leakage of gasoline that contaminated plaintiff's property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line and Equilon Pipeline, had exclusive control of the underground pipeline.

173.    As a direct and proximate result of the contamination, the plaintiffs were injured as hereinafter alleged.

174.    The nature of the injury or damage which Charles Quick, Jr. and Cathy Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)    diminution in market value of their real estate by reason of its groundwater contamination.

(b)    Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs, Charles Quick, Jr. and Cathy Quick, individually demand judgment from the defendant, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, jointly and severally, in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXV - CHARLES QUICK, JR. AND CATHY QUICK / NEGLIGENCE – PARSONS DEFENDANT

Charles Quick, Jr. and Cathy Quick, complaining of the defendant Parsons Engineering Science, Inc., state:

175.     Plaintiffs repeat, re-allege and incorporate herein by reference paragraphs 1 through 63 and 158 through 159.

176.     Plaintiffs repeat and reallege and incorporate by reference paragraphs 82 through 85 of Count IV as their claims of common law negligence.

177.     The nature of the injury or damage which Charles Quick, Jr. and Cathy Quick have sustained includes one or more or all of the following elements of damage, taking into account the nature, extent and duration of the injury:

(a)     diminution in market value of their real estate by reason of its groundwater contamination.

(b)     Physical discomfort and interference with the normal use of their home and property.

WHEREFORE, Plaintiffs Charles Quick, Jr. and Cathy Quick demand judgment from the Defendant Parsons Engineering Science, Inc., in a sum greater than Fifty Thousand Dollars ($50,000.00) as and for compensatory damages plus costs, and demand trial by jury.

## COUNT XXVI - JOHN PANOZZO, GUARDIAN OF MARGUERITE PANOZZO, a disabled person/TRESPASS – SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, John Panozzo, Guardian of Marguerite Panozzo, a disabled person, complaining against the defendants, Shell Oil, and Shell Pipe Line, and Equilon Pipeline, states:

178.     Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63.

179.    Following the release and gas spill in 1988, it was determined by defendants that the common well for plaintiff's residences was in fact contaminated with MTBE.

180.    The contamination of the plaintiff's well was likely caused by the 1988 pipeline spill and/or additional spills or discharges from the pipeline since 1988.

181.    The hydrology of the underground areas of Limestone Township permits the contamination to be cyclical and movement of groundwater containing gasoline into different areas and different compass directions at different times.

182.    The gasoline-contaminated groundwater described herein resulted in a subsurface physical invasion of the real property on which plaintiff resided and in the interference with the use of the property both past, present and prospective which constitutes a common law trespass to the exclusive right to the use of the real property by plaintiff.

183.    The gasoline contaminated groundwater has returned on a cyclical basis and continues to do so with the result that the common law trespass is a continuing wrong affecting the interests of plaintiff and plaintiff's disabled person.

184.    The aforesaid common law trespass was a proximate cause of damage to the plaintiff and plaintiff's disabled person.

185.    The nature of the injury or damage which the plaintiff has sustained includes physical discomfort and deprivation of the normal use and comfort of the home and property and diminution and market value of the real estate by reason of its groundwater contamination, the inability to develop said real estate for residential homes resulting in substantial monetary loss and income.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of

Fifty Thousand Dollars ($50,000.00), as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XXVII - JOHN PANOZZO, GUARDIAN OF MARGUERITE PANOZZO, a disabled person/PRIVATE NUISANCE – SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, John Panozzo, Guardian of Marguerite Panozzo, a disabled person, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

186.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and 179 through 181.

187.    Plaintiff repeats and realleges and incorporates by reference paragraphs 70 through 71 of Count II as claims of common law private nuisance.

188.    The private nuisance as alleged was a proximate cause of injury or damage to the Plaintiffs.

189.    Plaintiff repeats and re-alleges and incorporates by reference paragraph 185.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company and Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XXVIII -JOHN PANOZZO, GUARDIAN OF MARGUERITE PANOZZO, a disabled person/NEGLIGENCE – SHELL OIL AND SHELL PIPE LINE AND EQUILON PIPELINE

Plaintiff, John Panozzo, Guardian of Marguerite Panozzo, a disabled person, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

190.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and 179 through 181.

191.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 75 through 78 of Count III as the claims of common law negligence.

192.    Plaintiff repeats, re-alleges and incorporates by reference paragraph 185.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company and Shell Pipeline Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXIX – JOHN PANOZZO, GUARDIAN OF MARGUERITE PANOZZO, a disabled person/RES IPSA LOQUITUR – SHELL DEFENDANTS

Plaintiff, John Panozzo, Guardian of Marguerite Panozzo, a disabled person, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

193.    Plaintiff, repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and 179 through 181.

194.    Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

195.    At all times when the release and leakage of gasoline that contaminated plaintiff's property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, had exclusive control of the underground pipeline.

196.    As a direct and proximate result of the contamination, the plaintiff was injured as hereinafter alleged.

197.    Plaintiff repeats, re-alleges and incorporates by reference paragraph 185.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company and Shell Pipeline Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demands

trial by jury.

## COUNT XXX - CHRISTOPHER BURGE and ANGELA BURGE/ TRESPASS – SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiffs, Christopher Burge and Angela Burge, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

198.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63.

199.    Plaintiffs own and occupy a residence located at 5627 W. Rt. 17, Kankakee, Illinois.

200.    In August 2001, plaintiffs were informed by the Kankakee County Health Department that the well for their residence was contaminated with gasoline additives.

201.    Since being so informed, plaintiffs have ceased using their well for drinking purposes and now rely on bottled water.

202.    The contamination of plaintiffs' well water was caused by the 1988 pipe line spill and/or additional spills or discharges from the pipe line since 1988.

203.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 65 through 66 of Count I as their claims of common law trespass.

204.    The nature of the injury or damage which the plaintiffs have sustained includes diminution and market value of their real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of their home and property.

WHEREFORE, plaintiffs demand judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXI - CHRISTOPHER BURGE AND ANGELA BURGE/ NEGLIGENCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiffs, Christopher Burge and Angela Burge, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

205.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63 and paragraphs 199 to 202.

206.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 75 through 78 of Count III as their claims of common law negligence.

207.    The nature of the injury or damage which the plaintiffs have sustained includes diminution and market value of their real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of their home and property.

WHEREFORE, plaintiffs demand judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXII - CHRISTOPHER BURGE AND ANGELA BURGE/ PRIVATE NUISANCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiffs, Christopher Burge and Angela Burge, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

208.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63 and paragraphs 199 to 202.

209.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 70 through 71 of count II as their claims of common law private nuisance.

210.    The nature of the injury or damage which the plaintiffs have sustained includes

diminution and market value of their real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of their home and property.

WHEREFORE, plaintiffs demand judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXIII - CHRISTOPHER BURGE AND ANGELA BURGE/ RES IPSA LOQUITUR – SHELL DEFENDANTS

Plaintiffs, Christopher Burge and Angela Burge, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

211.   Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 through 63 and 199 through 202.

212.   Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

213.   At all times when the release and leakage of gasoline that contaminated plaintiffs' property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, had exclusive control of the underground pipeline.

214.   As a direct and proximate result of the contamination, the plaintiffs were injured as hereinafter alleged.

215.   The nature of the injury or damage which the plaintiffs have sustained includes diminution and market value of their real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of their home and property.

WHEREFORE, plaintiffs demand judgment against the defendants, Shell Oil Company and Shell Pipeline Corporation and Equilon Pipeline Company LLC, in an amount in excess of

Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXIV - KENNETH CLARK/ TRESPASS - SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, Kenneth Clark, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

216.   Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63.

217.   Plaintiff, for many years, has owned and occupied a residence at 5675 W. 1000 N. Rd., Kankakee, Illinois, which is a single family residence with a well wherein plaintiff and his family obtained their drinking water and general household use water.

218.   In February 2002, plaintiff ascertained that his well was contaminated with MTBE and since that time has ceased using the well for drinking water.

219.   The contamination of plaintiff's well water was likely caused by the 1988 pipe line spill and/or additional spills or discharges from the pipe line since 1988.

220.   Plaintiff repeats, re-alleges and incorporates by reference paragraphs 65 through 66 of Count I as his claim of common law trespass.

221.   The aforesaid trespass was a proximate cause of damage to the plaintiff and the nature of the injury or damage which the plaintiff has sustained includes diminution and market value of his real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of his home and property.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and

demands, trial by jury.

## COUNT XXXV- KENNETH CLARK/NEGLIGENCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff Kenneth Clark, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

222.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and paragraphs 217 to 219.

223.    Plaintiff repeats, realleges and incorporates by reference paragraphs 75 through 78 of Count III as his claim of common law negligence.

224.    The nature of the injury or damage which the plaintiff has sustained includes diminution and market value of his real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of his home and property.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXVI - KENNETH CLARK/
## PRIVATE NUISANCE - SHELL DEFENDANTS AND EQUILON PIPELINE

Plaintiff, Kenneth Clark, complaining against the defendants, Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

225.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and paragraphs 217 to 219.

226.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 70 through 71 of Count II as his claim of common law private nuisance.

227.    The nature of the injury or damage which the plaintiff has sustained includes diminution and market value of his real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of his home and property.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company, Shell Pipe Line Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

## COUNT XXXVII – KENNETH CLARK/RES IPSA LOQUITUR – SHELL DEFENDANTS

Plaintiff, Kenneth Clark, complaining of the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

228.    Plaintiff, repeats, re-alleges and incorporates by reference paragraphs 1 through 63 and 217 through 219.

229.    Underground pipelines do not ordinarily leak to the extent that gasoline would migrate over 100 feet through soil and into private drinking wells in the absence of negligence.

230.    At all times when the release and leakage of gasoline that contaminated plaintiff's property and drinking well was occurring, the defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, had exclusive control of the underground pipeline and gasoline transported in that pipeline.

231.    As a direct and proximate result of the contamination, the plaintiff was injured as hereinafter alleged.

232.    The nature of the injury or damage which the plaintiff has sustained includes diminution and market value of his real estate by reason of its groundwater contamination and for physical discomfort and interference with the normal use of his home and property.

WHEREFORE, plaintiff demands judgment against the defendants, Shell Oil Company and Shell Pipeline Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demands trial by jury.

### COUNT XXXVIII – LISA KIBBONS/ DECLARATORY JUDGMENT

Lisa Kibbons, complaining of the Defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, states:

233.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 – 63.

234.    Shell Oil sold its wholly-owned subsidiary corporation Shell Pipe Line to Equilon Pipeline, a company that in turn is wholly-owned by Shell Oil and Texaco.

235.    Beginning at least by 1996, Shell Oil knew or must have known that the original 1988 Pipe Line spill was far greater in volume than 16,000 gallons. The volume of gasoline being put through its "stripper" machinery was substantial for a contamination site described in 1994 as being 95 percent remediated. Large quantities of gasoline were observable to the naked eye on the Danhausen Farm.

236.    Plaintiff claims one or more or all of the following:  (a) that a major reason Shell Oil directed, controlled and entered into the transaction and sold Shell Pipe Line was fraudulently to avoid liability in damages through the vehicle of a successor "limited liability company"; (b) that the sale transaction to Equilon Pipeline amounted to a consolidation or merger; (c) the purchaser Equilon Pipeline was in substance a "mere continuation" of Shell Oil as the controlling seller of Shell Pipe Line.

237.    Plaintiff makes the foregoing claim whether or not Equilon Pipeline has assumed liability for damages arising from the 1988 Pipe Line release as part of the sale transaction by

Shell Oil to Equilon Pipeline, and despite the presence of Texaco as a joint co-owner of Equilon Pipeline.

238.    Plaintiff also claims that Shell Oil cannot enjoy the cash flow or profits or other benefits from its subsidiary Shell Pipe Line for 45 years and in the process create a situs of substantial environmental pollution and a superannuated in-ground pipeline subject to inevitable corrosion and further spills, then walk away from what Shell Oil has created by means of a later purported sell-off of its dangerous asset through a corporate labyrinth transaction, and that to permit such would be contrary to the public policy of the State of Illinois.

239.    Plaintiff also claims that a significant reason the Pipe Line was sold to Equilon Pipeline was to allow Shell Oil to assert that Equilon Pipeline cannot be liable for damages incurred by Shell Oil at a time that Shell Pipe Line operated the Pipe Line even if liability for damages was assigned to Equilon Pipeline by Shell Oil.

240.    On information and belief Plaintiff claims that Shell Oil claims that the conditions of the sale to Equilon Pipeline entitles Shell Oil to avoid liability for damages for personal injury and property damage arising out of the 1988 Pipe Line spill.

241.    An actual and substantial controversy exists as between all Plaintiffs and Shell Oil, Shell Pipe Line, and Equilon Pipeline regarding the foregoing matters.

242.    Plaintiff claims that the Court should enter a Declaratory Judgment pursuant to 735 ILCS 5/2-701 as follows:

(a)    that Shell Oil cannot assign its liability for the 1988 Pipe Line spill to Equilon Pipeline, or any other entity on the basis that such an assignment would violate the public policy of Illinois; or

(b)     that Shell Oil and any other entity to which Shell Oil has purported to assign, sell

or otherwise transfer the Pipe Line shall remain jointly liable for any and all damages

arising out of the 1988 Pipe Line spill.

243.   Plaintiff also claims that the Court should enter a further Declaratory Judgment

pursuant to 735 ILCS 5/2-701 as follows:

In the event the Court makes a finding that gasoline may be present in domestic water

supplies in the area affected by the release, then to safeguard the health of residents the Court

should enter a Declaratory Judgment pursuant to 735 ILCS 5/2-701 as follows:

(A)     declaring that the presence of the contaminants constitutes a common law

public nuisance and/or a violation of 415 ILCS 5/11(a) (1) (1996) [which

states in part: "The General Assembly finds: (a) that pollution of the

waters of this State constitutes a menace to public health and welfare;

creates public nuisances, ... depresses property values, and offends the

senses"] in that gasoline contaminants likely have caused pollution of the

waters of the State of Illinois;

(B)     prescribing an impartial protocol for the independent testing of public and

private water supply wells within the affected area at the expense of Shell

Oil;

(C)     prescribing the contents of a warning notice to be sent by Shell Oil, at the

expense of Shell Oil, to all residents and businesses drawing their water

from public and private water supply wells within the 3-mile radius area;

(D)     prescribing the conditions for the independent testing of blood and urine

of selected individuals resident in, or working in businesses within, the 3-

mile radius area, who are and have been consuming water from public and private water supply wells in the area, the reasonable expense of such testing to be at the expense of Shell Oil;

(E)     determining the route of, and estimated cost for, running City of Kankakee water lines to all structures in the affected area now using well water, part or all of the cost of which Shell Oil could agree to pay, the expense of which could be held by the Court to constitute a setoff against any potential awards of damages to real property owners within the affected area.

244.     Plaintiff asserts that ensuring safe water to well users for all forms of water consumption is an urgent situation for which the Court should set an accelerated schedule for ruling on the issues raised in this Count of this Complaint.

## COUNT XXXIX: STRICT LIABILITY

All plaintiffs, complaining against defendants Shell Oil, Shell Pipe Line, and Equilon Pipeline, state:

245.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-63 herein.

246.     Defendant Shell Oil designed, formulated, compounded, manufactured, packaged, merchandised, advertised, promoted, distributed, and/or sold MTBE and/or TBA which is polluting groundwater in the area of the above-described pipeline leak(s) and spill(s).

247.     Shell Oil represented, asserted, claimed and warranted that gasoline containing MTBE could be used and distributed in the same manner as gasoline not containing MTBE and/or TBA, and that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

248.   MTBE and/or TBA, and gasoline containing MTBE and/or TBA, are defective products because, among other things:

(a)   The design and manufacture of these products was defective

(b)   The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment;

(c)   MTBE and/or TBA cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

(d)   Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders drinking water unfit for drinking water;

(e)   MTBE and TBA pose significant threats to the public health and welfare

(f)   Shell Oil failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA, including but not limited to the risks of groundwater contamination;

(g)   Shell Oil failed to conduct reasonable, appropriate or adequate studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA; and

(h)   Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

249.   MTBE and/or TBA and/or gasoline containing MTBE and/or TBA were used in a manner in which they were foreseeably intended to be used, and as a proximate result of the

defects previously described, MTBE and/or TBA directly and proximately caused the plaintiffs to sustain the injuries set forth in this Complaint.

WHEREFORE, plaintiffs demand judgment against the defendants, Shell Oil Company and Shell Pipeline Corporation and Equilon Pipeline Company LLC, in an amount in excess of Fifty Thousand dollars ($50,000.00) as and for compensatory damages, plus costs, and demand trial by jury.

### COUNT XXXX: LISA KIBBONS AND JOHN PANOZZO: CLASS ACTION

Lisa Kibbons and John Panozzo, complaining of all Defendants, state:

250.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-63.

251.    The requirements for a class action whereby Lisa and John sue as representative parties of a class in Illinois pursuant to 735 ILCS 5/2-801 in Illinois are:

(1)    the class is so numerous that joinder of all parties is impracticable;

(2)    there are questions of law or fact common to the class, which common questions predominate over any questions affecting only individual members;

(3)    the representative parties will fairly and adequately protect the interest of the class;

(4)    the class action is an appropriate method for the fair and efficient adjudication of the controversy.

252.    The members of the proposed class are:

(1)    The Market Value and Quiet Enjoyment Class.  This class consists of persons alleging that their real property was contaminated at any time after January 1, 1988, by gasoline from Shell's pipeline release, resulting in a loss of market value of that property, or interference with the quiet enjoyment of that property.

(2)    The Pure Water Procurement Class.  This class consists of persons alleging that their wells were contaminated at any time after January 1, 1988, by gasoline from Shell's pipeline release, resulting in expenses associated with procuring uncontaminated water, including the cost of connecting to a public or commercial source of uncontaminated water.

(3)    The Personal Injury Class.  This class consists of persons alleging that they (or their children who are presently minors under the age of 18 years of age) were exposed at any time after January 1, 1988, to gasoline contamination from Shell's pipeline release, resulting in personal injury or an increased risk of personal injury, including cancer.

253.    The population of Limestone Township in the year 2000 census was 4,659, according to a Kankakee County Planning Commission document already on file with this Court. This document also shows there are 1,652 "occupied housing units" in said Township so that if the number of wells stated by Shell as being tested is 450, that equates to about one-third of all 1,490 "owner-occupied housing units" in the Township.  Even if a mailed notice were sent to every householder in Limestone Township such a mailing would total less than 1700 letters.

254.    Plaintiff estimates that the minimum potential size of the class is the residents and employees of structures within the area affected by the release, which includes at least 450 private wells and at least one thousand affected persons, which is approximately one percent of the total population of Kankakee County.

255.    The only way of finding out which potential claimants have sustained personal injury from consumption of well water in the affected area is to test their blood and urine and test their well water, with such tests being performed under specific protocols approved by the Court.

256.   The only way of preventing further damage from consumption of contaminated well water is to engage in a program to notify each potentially exposed person to stop consuming well water until further notice, but for persons whose only source of water in quantity for purposes of washing and bathing is a private well in the affected area, a different source of water other than a private well ought to be regarded as a necessity from the standpoint of health considerations.

257.   The matters alleged in this complaint involve common issues of law, including but not limited to the law of: (a) nuisance; (b) trespass; (c) negligence; (d) strict liability; (e) compensatory damages, with particular attention to the Illinois Doctrine of "fluid recovery" of damages with respect to depreciation of property values; (f) tolling of statute of limitation; and (g) predecessor/corporate successor liability.  These common questions of law will affect each class member in substantially and probably exactly the same way.

258.   The matters alleged in this complaint also involve common questions of fact, including but not limited to: (a) facts surrounding the release; (b) facts surrounding Shell Oil's production and transportation of a defective product; (c) facts regarding the extent and movement of the plume created by the release; (d) facts involving whether the released substances are capable of causing the injuries suffered by class members and potential class members; (e) facts involving whether and to what extent damage to the market value of agricultural, residential and business real estate results from contamination of ground water on those real estate parcels which have water supply wells used for human consumption; and (g) facts involving the feasibility and costs of securing a clean and reliable source of water for affected properties.

259.   Although the damages to individual class claimants may vary in amount depending on the extent of their personal injuries or property damage, Illinois law provides that such individual differences do not necessarily preclude or militate against class certification.

260.   Lisa Kibbons would be entitled to the status of a class member whose family members have suffered personal injury and she will fairly and adequately protect the rights of the class members who have suffered personal injury.

261.   John Panozzo would be entitled to the status of a class member whose family members have suffered property damage and he will fairly and adequately protect the rights of the class members who have suffered property damage.

262.   Persons who are within the definition adopted by the court if class certification is allowed have the right to exclude themselves, and persons who fit within such definition but through error or oversight are not named later as class members are allowed to intervene under Illinois law.

263.   Allowing class certification in this case is appropriate as a fair and efficient way to manage the controversy since class actions in water pollution cases affecting a multitude of persons are a standard method used in previous Illinois actions at law, and the facts in this case present what is basically a water pollution case.  The "fluid recovery" doctrine is particularly appropriate in this instance to allow damages on a formula basis to all property owners in the affected area whose property has been depreciated by the contamination of ground and surface water by gasoline.

WHEREFORE, Plaintiffs, Lisa Kibbons and John Panozzo, request entry of an order as follows:

1.      That this cause may properly be maintained as a class action.

2.      That all residents of the area affected by the release be certified as members of a class for the purpose of determining the merits of any claims or defenses in this action and for the purposes of effecting a settlement and resolution of this matter.

3.      That plaintiff Lisa Kibbons be appointed as class representative for personal injury claims and that John Panozzo be appointed as class representative for property damage claims.

4.      And for such other relief and purposes as the Court may deem proper.

MICHAEL AXLINE

JOSEPH R. YURGINE
Attorney for Plaintiffs
One Dearborn Square, Suite 500
Kankakee, Illinois 60901
Tel.: 815/939-3322
Fax: 815/939-3322
AR No: 03096297

JOHN BERNARD CASHION
Attorney for Plaintiffs
33 North LaSalle Street, Suite 2500
Chicago, IL 60602
Tel.: 312/460-0001
Fax: 312/460-0004
AR No: 0409766

DUANE C. MILLER, SBN 57812
MICHAEL AXLINE, SBN 229840
Attorneys for Plaintiffs
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
Telephone: (916) 488-6688
Facsimile: (916) 488-4288
Admitted *pro hac vice* August 4, 2004