MDL 1358

# NAPOLI BERN RIPKA LLP
### Attorneys•At•Law

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR – 2 2009

FILED
CLERK'S OFFICE

**VIA FACSIMILE (202) 502-2888**

April 1, 2009

Jeffery N. Luthi
Clerk of the Panel
One Columbus Circle, NE
Federal Judiciary Building
Room G-255, North Lobby
Washington, DC 20002-8004

PLEADING NO. 286

  **Re: MDL No. 1358 – IN RE: Methyl Tertiary Butyl Ether ("MTBE")**
    **Products Liability Litigation**

Dear Mr. Luthi:

  Enclosed please find Plaintiffs' Affirmation seeking to rescind the Tag Along Notice and resulting CTO-33, in accord with the attached March 9, 2009 Order and Opinion of the Honorable Shira A. Scheindlin, who presides over the MTBE MDL. By the terms of her March 9, 2009 Order, Judge Scheindlin conditionally dismissed all suits from the MTBE MDL that were predominantly based upon state law causes of action. The instant matter was originally in state court in New York and is predominantly based upon New York State law causes of action, effectively superceding Plaintiffs' Notice and the resulting CTO-33. For that reason, Plaintiffs did not submit a response to the Defendants' opposition to CTO-33. While Plaintiffs do not adopt nor agree with the Defendants' arguments, Plaintiffs respectfully submit that transfer of this matter is no longer tenable.

Respectfully submitted,

NAPOLI BERN RIPKA & ASSOCIATES, LLP

By: _____
  Christopher LoPalo

Enclosures
CC: All Parties on the Involved Counsel List (via First Class Mail)

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2009 APR –2  A 6: 37

RECEIVED
CLERK'S OFFICE

NAPOLI BERN RIPKA LLP

Empire State Building, 350 Fifth Avenue, Suite 7413, New York, New York 10118

Tel: (212) 267-3700 | www.napolibern.com

# OFFICIAL FILE COPY IMAGED APR 3 2009

## CERTIFICATE OF SERVICE

I, Tate J. Kunkle, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 1st day of April, 2009, I caused the accompanying Letter of Withdrawal to be served upon all of the parties to this action, as named in the attached Involved Counsel List by First Class United States Mail.

Tate J. Kunkle

APR. 1. 2009 6:21PM    NAPOLI BERN RIPKA                    NO. 6162    P. 5

Case MDL No. 1358   Document 286   Filed 04/02/09   Page 3 of 26

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 2 2009

FILED
CLERK'S OFFICE

**IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE")
PRODUCTS LIABILITY LITIGATION**

**MDL No. 1358**

### INVOLVED COUNSEL LIST (CTO-33)

Marc Jay Bern
NAPOLI BERN RIPKA & ASSOCIATES LLP
350 5th Avenue
Suite 7413
New York, NY 10118

Jonathan K. Cooperman
KELLEY DRYE& WARREN LLP
101 Park Avenue
New York, NY 10178

Celeste A. Evangelisti
BARON & BUDD PC
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219-4281

Robin Greenwald
WEITZ & LUXENBERG PC
180 Maiden Lane
40th Floor
New York, NY 10038

Michael Denis Hall
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017

Brian A. McGill
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005-3096

Margaret M. Murphy
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
150 East 42nd Street
New York, NY 10017-5639

Mathew Paul Ross
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
150 East 42nd Street
New York, NY 10017-5639

Cheryl A. Sabnis
KING & SPALDING LLP
Four Embarcadero Center
Suite 3500
San Francisco, CA 94111

Peter J. Sacripanti
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
14th Floor
New York, NY 10173-1922

Victor Marc Sher
SHER& LEFF LLP
450 Mission Street
Suite400
San Francisco, CA 94105

John F. Tully
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, NY 10103

## BEFORE THE JUDICIAL PANAL ON MULTIDISTRICT LITIGATION  APR · 2 2009

FILED
CLERK'S OFFICE

-------------------------------------------------------------X

IN RE:

METHYL BUTYL TERTIARY ETHER ("MTBE")
PRODUCTS LIABILITY LITIGATION

:
:
:
:
:
:
:
:

MDL Docket No. 1358

This Document Relates to:
*Spiroff v. Exxon Mobil Corp., et al.*, Case No 06-CV-2865
(KAM)(RML)(E.D.N.Y.)

-------------------------------------------------------------X

## VERIFICATION OF COUNSEL FOR PLAINTIFFS IN SUPPORT OF RESCINDING TAG ALONG NOTICE

Christopher LoPalo, a member of the Bar of the Southern District of New York, under the penalties of perjury pursuant to the laws of the United States of America, states:

1. I am an associate of the firm of Napoli Bern Ripka & Associates, LLP, ("NBR"), counsel for the Plaintiffs in the above-captioned matter and I have personal knowledge of the facts, herein.

2. On or about January 15, 2009, NBR filed a "Notice of Tag Along Action" with the Clerk of this Panel, based upon recent expert reports identifying MTBE as a significant contaminant.

3. On or about January 29, 2009, this MDL Panel issued CTO-33, conditionally transferring this matter from the Eastern District of New York, to the Methyl Butyl Tertiary Ether Products Liability Litigation, MDL No. 1358 ("MTBE MDL").

4. On or about March 2, 2009, Defendants filed their respective briefs in opposition to CTO-33.

5. On or about March 9, 2009, the Honorable Shira A. Scheindlin, the judge presiding over the MTBE MDL, entered an Order and opinion conditionally dismissing all state law-based cases from the MTBE MDL, a true copy of which is attached hereto as Exhibit "A."

6.      Judge Scheindlin's Order and opinion are believed by Plaintiffs' counsel to be applicable to the present matter, that, like the cases to which it expressly applies, was removed from state court and is based upon predominantly state law-based causes of action.

7.      Accordingly, it is respectfully submitted that Plaintiffs' Tag Along Notice has been effectively rendered obsolete and contrary to the subsequent MTBE MDL Order of March 9, 2009. If permitted by the rules and procedures of this Panel, Plaintiffs respectfully withdraw their previous Tag Along Notice.

8.      For the reasons set forth herein, Plaintiffs have also not opposed, and do not oppose, Defendants' opposition to CTO-33, though Plaintiffs do not adopt the Defendants' arguments.

Dated:  April 1, 2009                          Napoli Bern Ripka & Associates, LLP


                                               By:_____
                                               Christopher LoPalo (CL-6466)
                                               W. Steven Berman (1672)
                                               William J. Dubanevich (5969)
                                               350 Fifth Avenue, Suite 7413
                                               New York, New York  10118
                                               Phone:  (212) 267-3700
                                               Fax: (212) 587-0031
                                               *Attorneys for Plaintiffs*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR    3 2009

FILED
CLERK'S OFFICE

Exhibit "A"

RECEIVED
CLERK'S OFFICE

2009 APR -2  P 4: 09

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

                 :

**IN RE: METHYL TERTIARY BUTYL**    :
**ETHER ("MTBE") PRODUCTS**    :    <u>OPINION AND ORDER</u>
**LIABILITY LITIGATION**    :

------------------------------------------------ :

               :    **Master File No. 1:00-1898**

**This document relates to:**    :    **MDL 1358 (SAS)**

               :    **M21-88**

*Albertson Water District v. Amerada Hess*    :
*Corp., et al.,* 08 Civ. 9618;    :

               :

*City of Glen Cove Water Department v.*    :
*Amerada Hess Corp., et al.,* 08 Civ. 9622;    :

               :

*Greenlawn Water District v. Amerada Hess*    :
*Corp., et al.,* 08 Civ. 9619;    :

               :

*Manhasset-Lakeville Water District v.*    :
*Amerada Hess Corp., et al.,* 08 Civ. 7764;    :

               :

*Plainview Water District v. Amerada Hess*    :
*Corp., et al.,* 08 Civ. 9667;    :

               :

*Riverhead Water District v. Amerada Hess*    :
*Corp., et al.,* 08 Civ. 7766;    :

               :

*Town of Huntington/Dix Hills Water*    :
*District v. Amerada Hess Corp., et al.,* 08    :
Civ. 9620;    :

               :

*South Huntington Water District v.*    :
*Amerada Hess Corp., et al.,* 08 Civ. 9621.    :

------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/9/09

RECEIVED CLERK'S OFFICE
2009 APR -2 P 4: 09
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

Between September and November of 2008, these eight actions were filed in the Southern District of New York, each involving allegations relating to the defendants' knowledge, use and handling of the gasoline additive methyl tertiary butyl ether ("MTBE").  In each action, plaintiffs base their assertion of federal jurisdiction on the citizen suit provision of the Toxic Substances Control Act ("TSCA").[1]  Each Complaint asserts a panoply of state law claims, over which this Court is asked to exercise supplemental jurisdiction based on the TSCA claim. Defendants now move to dismiss the state law claims for lack of supplemental jurisdiction or, in the alternative, for this Court to decline to exercise supplemental jurisdiction over these claims as a matter of discretion.[2]  For the following reasons, defendants' motion is granted.

## II.     BACKGROUND

Plaintiffs assert nine causes of action, eight of which arise under New York law: (1) public nuisance, (2) strict liability for design defect and/or defective

---

[1]      *See* 15 U.S.C. §§ 2601 *et seq.*

[2]      The motion was first brought on behalf of the defendants who were not named in the TSCA claim.  On March 6, 2009, defendants notified this Court that all defendants support the dismissal of the non-TSCA claims against all defendants.

product, (3) failure to warn, (4) negligence, (5) private nuisance, (6) deceptive

business acts and practices, (7) violation of section 170 of the Navigation Law, the

New York Spill, Prevention, Control and Compensation Act and (8) trespass. The

number of defendants named in the Complaints ranges between 53 and 61.

     Plaintiffs assert their state law claims against all defendants. As relief

for the state law claims, plaintiffs seek injunctive and equitable relief,

compensatory damages and punitive damages.[3] For equitable and injunctive relief

under state law, plaintiffs seek investigation of the harms of MTBE, testing and

monitoring of wells, the provision of alternative water, treatment and protection of

well heads, and abatement of the continuing nuisance.[4]

     Plaintiffs' sole federal claim asserts that twelve defendant companies[5]

violated section 8(e) of TSCA, which provides:

> Any person who manufactures, processes, or distributes in
> commerce a chemical substance or mixture and who obtains
> information which reasonably supports the conclusion that such
> substance or mixture presents a substantial risk of injury to health

---

[3]    *See* Complaint in *Manhasset-Lakeville Water District* ("Compl."),
Prayer for Relief. For ease of discussion, and because the eight Complaints
contain very similar allegations, subsequent references to the Complaint will refer
to the *Manhasset-Lakeville* Complaint.

[4]    *See id.*

[5]    *See* Compl. ¶ 226 (defining TSCA defendants as "ExxonMobil,
ChevronTexaco, Lyondell, and Shell" and their named affiliates).

or the environment shall immediately inform the Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.[6]

Plaintiffs seek one form of relief for the TSCA claim: "an injunction compelling TSCA defendants to provide to the EPA the Substantial Risk Information."[7]

Six of these actions were previously filed asserting the identical state law claims but not the TSCA claim.[8]  In five of those actions, plaintiffs attempted to base federal jurisdiction on the Energy Policy Act of 2005.[9]  After defendants moved to dismiss those actions on the ground that the Energy Policy Act provides removal jurisdiction but not original jurisdiction, plaintiffs moved to voluntarily dismiss the actions.[10]  Plaintiffs then refiled the identical actions adding the TSCA claims for the first time.

---

[6]     15 U.S.C. §§ 2607(e).  Section 2619(e) of this title authorizes citizen suits for violations of section 2607(e).

[7]     Compl. ¶ 225.

[8]     These actions are: *Albertson, City of Glen Cove, Greenlawn, Plainview, Town of Huntington Dix Hills,* and *South Huntington.*

[9]     Pub.L. 109-58, tit. XV, § 1503, 119 Stat. 1076 (codified at 42 U.S.C. § 7545 note).  In the sixth action, *South Huntington,* there was no statement of jurisdiction and no federal cause of action was specified in the Complaint.

[10]     *See* MDL 1358, No. 00 Civ. 1898, docket ## 1841 (motion to dismiss), 2173 (voluntary dismissals).

Defendants argue that this Court lacks jurisdiction over the state law claims on the ground that they do not form part of the "same case of controversy" as the TSCA claim, as required by section 1367(a) of title 28. In the alternative, defendants argue that this Court should decline to exercise supplemental jurisdiction over the state law claims because (a) the state law claims "substantially predominate" over the federal claim, within the meaning of section 1367(b) of title 28, and (b) the interests of convenience, fairness and comity weigh in favor of declining jurisdiction.

## III.   APPLICABLE LAW

### A.     Section 1367(a): Same Case or Controversy

Under section 1367(a) of title 28, "federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'"[11] "Federal and state claims form 'one case or controversy,'" and thus satisfy section 1367(a), if they "derive from a common nucleus of operative facts or when both claims would normally be

---

[11]     *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (quoting 28 U.S.C. § 1367(a)).

5

expected to be tried in a single judicial proceeding."[12]  "This is so even if the state

law claim is asserted against a party different from the one named in the federal

claim."[13]  When a federal claim is raised against one party and a state claim is

raised against another party, section 1367(a) "makes pendent party jurisdiction

possible where the [state] claim in question arises out of the same set of facts that

give rise to an anchoring federal question claim against another party."[14]

     In the *Suffolk County* action, which belonged to the same multi-

district litigation ("MDL") as these eight actions and asserted the *exact same* state

law claims, this Court held that the state law claims formed part of the same case

---

[12]   *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)).

[13]   *Briarpatch*, 373 F.3d at 308.

[14]   *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000).   This statement indicates that the state law claims must arise out of the same set of facts that are at issue in the "anchoring federal question claim." *Id.*  Thus, even if the state claims against the TSCA defendants are properly within this Court's supplemental jurisdiction, the question of whether there is supplemental jurisdiction over the state law claims brought against the non-TSCA defendants is *not* analyzed by reference to their relation to the *state* claims against the TSCA defendants. Rather, the test is whether the state law claims are sufficiently related to the anchoring federal claim.  The statute makes this plain. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action *within such original jurisdiction* that they form part of the same case or controversy under Article III of the United States Constitution." (emphasis added)).

or controversy as the TSCA claim.[15]  After summarizing the allegations set forth in

the TSCA claim and the state law claims, this Court concluded that the state

claims and the TSCA claim shared a common nucleus of operative fact because

both sets of claims raised "the issue of the defendants' knowledge and

concealment of the dangers of MTBE":[16]

> Th[e] overview of the TSCA and various state law claims makes
> clear that any issues related to what the [TSCA] oil companies
> knew, and when they knew it, are raised by the TSCA claim and
> also by those state law claims.  Moreover, the question of when
> one [TSCA] oil company knew of the dangers of MTBE will be
> relevant as to when another [non-TSCA] company knew, or
> should have known, about the threat.[17]

   This Court further explained that there was a significant overlap in

the evidence that plaintiffs would proffer to support the federal and state claims:

---

[15]    *See In re Methyl Tertiary Butyl Ether Products Liability Litigation*
("*Suffolk County*"), 510 F. Supp. 2d 299, 302, 324-36 (S.D.N.Y. 2007) (holding
that the following claims formed part of the same state or controversy: "(a)
violation of Section 8(e) of the Toxic Substances Control Act; (b) public nuisance;
(c) strict liability for design defect; (d) strict liability for failure to warn; (e)
negligence; (f) private nuisance; (g) violation of New York's General Business
Law; (h) violation of New York's Navigation Law; and (i) trespass.").

[16]    *Id.* at 324.

[17]    *Id.* at 325.  The Court also noted that "many of the defenses that will
be raised are relevant to both the federal and state claims. For example, when the
oil companies argue that MTBE is not harmful, or at the very least not as harmful
as plaintiffs contend, they will be raising an issue that underlies all of the claims."
*Id.*

For example, in order to establish their TSCA claim, plaintiffs must prove that the twelve [TSCA] defendants . . . possessed [information] that reasonably supports the conclusion that the gasoline containing MTBE presents a substantial risk of injury to public health or the environment. Similarly, to prove plaintiffs' state-law strict liability claim, plaintiffs must establish that MTBE was an unreasonably dangerous product.[18]

Finally, this Court noted that, broadly speaking, there was a common nucleus of fact at the center of all of the claims: "plaintiffs . . . sued various corporations for their use and handling of the gasoline additive methyl tertiary butyl ether ('MTBE')."[19] These circumstances, coupled with the nature of this MDL that referred all similar actions to this Court for consolidated pre-trial proceedings, supported the conclusion that the parties "would ordinarily be expected to try all [their claims] in one judicial proceeding."[20]

## B. Section 1367(c): Discretion to Deny Supplemental Jurisdiction

Section 1367(c) of title 28 states that the "district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if":

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[18]  *Id.*

[19]  *Id.* at 326.

[20]  *Id.* (quoting *Gibbs*, 383 U.S. at 725).

8

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[21]

"[T]he discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of [28 U.S.C.A. § 1367(c)]."[22]  The Second Circuit has held that "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it *also* determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity."[23]

The "substantially predominates" factor is a codification of the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, where the Court held that "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the

---

[21]    28 U.S.C. § 1367(c) (emphasis added).

[22]    *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998).

[23]    *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (emphasis added) (citation omitted) (noting the Second Circuit's resolution of a Circuit split on this issue in *Itar-Tass Russian News Agency*, 140 F.3d at 445-47).

comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."[24]

"In general, the question of whether state law predominates must be answered by looking to the nature of the claims as set forth in the pleading and by determining whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims."[25] The "substantially predominates" standard is met if the "state claim constitutes the real body of a case, to which the federal claim is only an appendage" and "litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."[26] "The 'substantially predominate' standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on

---

[24]    383 U.S. 715, 726-27 (1966). *Accord Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (stating that a state law claim "substantially predominates" within the meaning of section 1367(a) "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.").

[25]    *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994) (quotation marks omitted).

[26]    *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3rd Cir. 2003) (quotation marks omitted).

the basis of the same set of facts. An analysis more sensitive to the relevant interests is required."[27]

In *Suffolk County*, this Court declined to determine whether the state law claims substantially predominated over the federal claim and held that even if they did, considerations of comity, convenience and fairness weighed strongly in favor of retaining supplemental jurisdiction over all claims.[28]  The most important consideration in *Suffolk County* was the "advanced stage of the litigation" and the amount of judicial resources already invested in the *Suffolk County* action:

> In late 2006, *Suffolk County* was selected to be the first of the focus cases to be scheduled for trial. As a result, it is now, and has been for some time, the most active case in the MDL and has demanded – and consumed – extensive judicial and party resources. For at least two years, the Court has held monthly status conferences, each lasting several hours, for which the parties prepare joint and separate agendas of issues arising in the MDL. Although the Suffolk County action is only one in over one hundred actions in the MDL, it is no exaggeration to say that the Suffolk County action consumes the majority of time at all of these conferences.[29]

In addition, this Court had already issued several opinions in the *Suffolk County* matter defining the scope of the applicable state law:

---

[27]   *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).

[28]   See *Suffolk County*, 510 F. Supp. 2d at 329-30.

[29]   *Id.* at 303.

> [F]or more than three years, this Court has resolved virtually
> every substantive and procedural issue in the focus cases,
> including – and especially – the *Suffolk County* action. . . .
> Granting defendants' request would result in vacating each and
> every one of those opinions and orders and would possibly result
> in a delay of years before a jury finally considers the claims.
> Further, requiring these cases to be brought in state court would
> burden a state court with the very time-consuming task of
> learning the facts, theories, and evidence that have taken this
> Court over three years to untangle.[30]

The second major consideration that supported retaining

supplemental jurisdiction was that defendants had originally removed the case to

federal court. This Court explained:

> Defendants removed this case and vigorously contested plaintiffs'
> motion to remand. Now . . . those same defendants ask the Court
> to reconsider whether the very claims they removed to federal
> court should remain here. If there were ever a case to deny such
> a request, this is it.[31]

Beyond the obvious fairness concerns this raised, this Court was concerned that

the procedural history demonstrated that the defendants were engaged in illicit

"forum shopping."[32]

---

[30]     *Id.* at 333.

[31]     *Id.* at 332-33. In response to defendants' argument that the case
raised "novel or complex issue of State law" within the meaning of section
1367(c)(1), this Court similarly emphasized that this Court had already resolved
many of the difficult questions of state law. *See id.* at 327-28.

[32]     *Id.* at 329.

Finally, this Court cited a prior decision in this MDL that noted that "exercising jurisdiction here will avoid the waste and inconsistency that multi-district litigation is designed to eliminate."[33]

## IV. DISCUSSION

### A. 1367(a): Supplemental Jurisdiction

For the reasons stated in *Suffolk County*, it is beyond cavil that the TSCA claims and the state law claims raised against the TSCA defendants share a common nucleus of operative fact: both sets of claims allege that the defendants had in their possession, but failed to disclose, facts indicating that MTBE "presents a substantial risk of injury to health or the environment."[34] The connection between the TSCA claims and the state law claims against the non-TSCA defendants is less robust: the TSCA claims contain no allegation that the non-TSCA defendants knew, or failed to disclose, that MTBE presents such a substantial risk to health or the environment.

However, as this Court held in *Suffolk County*, there is a common thread that unites the TSCA claims and the state law claims against the non-TSCA

---

[33] *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 399 F. Supp. 2d 340, 355 (S.D.N.Y. 2005).

[34] 15 U.S.C. §§ 2607(e).

13

defendants: in order to prevail on the TSCA claims, plaintiffs must establish the existence of facts indicating that MTBE *in fact* presents a substantial risk to health or the environment; similarly, in order to prevail on the state law claims against the non-TSCA defendants, plaintiffs must establish that MTBE in fact presents a substantial risk to health or the environment. Further, the facts showing that the TSCA defendants knew of the dangers of MTBE might support an inference that there was industry-wide knowledge of these dangers, which extends to many, if not all, of the non-TSCA defendants. In short, I adhere to the decision in *Suffolk County* that the TSCA claims and the state law claims brought against the non-TSCA defendants form part of the same case or controversy.

**B.   1367(c): Discretion to Deny Supplemental Jurisdiction**

Plaintiffs do not dispute that the state law claims in this case substantially predominate over the TSCA claims. This is with good reason: *first,* "in terms of proof [and] the scope of the issues raised,"[35] a threshold issue in every state law claim, around which much of the litigation will focus, is whether the defendants *contaminated* plaintiffs' water supply in such a way as to cause a concrete injury; this issue is not implicated in any way by the TSCA claim. *Second,* in terms of "the comprehensiveness of the remedy sought," the state law

---

[35]   *Gibbs*, 383 U.S. at 726.

claims seek compensatory, injunctive and declaratory relief, whereas the federal

claim seeks a narrow form of injunctive relief: providing information to the EPA.

Indeed, because the plaintiffs' state-law claims will permit plaintiffs to unearth all

the information that defendants have regarding the dangers of MTBE, which can

be transmitted to the EPA, the narrow federal remedy under TSCA is largely

duplicative of the remedies already available under state law.[36]  In short, these

actions attempt to wield a federal tail to wag a state dog.

      The remaining question, therefore, is whether declining to exercise

supplemental jurisdiction would "not promote the values articulated in *Gibbs*:

economy, convenience, fairness, and comity."[37]  At the outset, it should be

emphasized that these cases present a very different prudential calculus from the

*Suffolk County* action: these cases were filed a few months ago; no opinions or

orders have issued in these cases; there has been no discovery; the Court is not

familiar with the facts; and the defendants did not remove these cases to federal

court.  Further, if there was forum shopping in these cases, it was done by

---

[36]    It is worth noting in this regard that the statute authorizing citizen suits under TSCA explicitly provides that the statute does *not* prevent plaintiffs from seeking overlapping remedies in non-TSCA actions.  *See* 28 U.S.C. § 2619(c)(3) ("Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of this chapter or any rule or order under this chapter or to seek any other relief.").

[37]    *Jones*, 358 F.3d at 214.

plaintiffs, who originally filed most of these actions without mentioning TSCA,
then added TSCA claims only after it was pointed out to them that there was no
federal jurisdictional base in their original Complaints.

Because no judicial resources have been invested in these matters, the
interests of economy and convenience in retaining supplemental jurisdiction are
modest. Because many defendants have no federal claim pending against them,
and the state claims are the real substance of these suits, fairness is served by
requiring plaintiffs to proceed in state court. Although this Court has gained
familiarity with many surrounding legal issues, this Court has no familiarity with
the facts alleged in these Complaints or with the unique legal issues that will arise
in applying the law to these factual allegations. Further, in this Court's experience
with this MDL, novel and complex issues of state law never cease to arise.[38]
Notwithstanding my experience in this area of litigation, I have every confidence
that the state tribunals will be able to handle these state law issues at least as well
as they can be handled in the federal courts.

---

[38]    *See Suffolk County*, 510 F. Supp. 2d at 328 ("[I]t cannot be denied
that as the years have gone by and the defendants have continued to make motions
(and plan to make several more), that there are complex issues of state law that
continue to be raised.").

16

Finally, the fact that TSCA is a narrow and specialized federal statute, the citizen suit provision of which displaces no state law and provides only a limited remedy,[39] demonstrates that the federal interest in these actions seeking compensatory damages is limited.[40] Because the actions relate to alleged pollution of local water supplies, in actions brought by local towns and districts, the state's interest in these disputes is strong. Comity thus counsels in favor of allowing these state claims to proceed in state court.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion is granted. Accordingly, the state law claims against all parties are dismissed without prejudice. The Clerk of the Court is directed to close these motions (docket # 2177 in No. 00 Civ. 1898; docket # 2 in No. 08 Civ. 9619; docket # 17 in No. 08 Civ. 7764; docket # 16 in No. 08 Civ. 7766; and docket # 3 in No. 08 Civ. 9621).

---

[39]   *See Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 248 n. 5 (3rd Cir. 2005) ("The only citizens' suits allowed under 15 U.S.C. § 2619 are to enjoin violations of the Toxic Substances Control Act, not for money damages. Courts have held that the Toxic Substances Control Act does not permit private citizens to pursue either civil penalties available under the statute (which may only be imposed by the EPA).").

[40]   *See Lyon v. Whisman*, 45 F.3d 758, 764 (3rd Cir. 1995) ("[W]hen a court exercises federal jurisdiction pursuant to a rather narrow and specialized federal statute it should be circumspect when determining the scope of its supplemental jurisdiction.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 9, 2009

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR - 7 2009

FILED
CLERK'S OFFICE

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York  10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York  10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**Counsel for Plaintiffs:**

Denise A. Rubin, Esq.
Paul J. Napoli, Esq.
Napoli Bern Ripka & Associates, LLP
3500 Sunrise Hwy., Suite T-207
Great River, New York 11739
Tel: (212) 267-3700

**Counsel for Defendants:**

Steven L. Leifer, Esq.
Baker Botts LLP
The Warner Building
1299 Pennsylvania Ave., N.W.

2009 APR - 2  P 4: 10
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

RECEIVED
CLERK'S OFFICE

Washington, D.C. 20004-2400
Tel: (202) 639-7723
Fax: (202) 595-1040

RECEIVED
CLERK'S OFFICE
2009 APR -2  P 4: 10
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION