# ATTACHMENT A

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:11-cv-01037-ELH

Mayor and City Council of Berlin et al v. 7-Eleven, Inc. et al
Assigned to: Judge Ellen L. Hollander
Demand: $9,999,000
Case in other court: Circuit Court for Baltimore City, 24C-11-001207
Cause: 28:1441 Petition for Removal- Torts to Land

Date Filed: 04/20/2011
Jury Demand: Plaintiff
Nature of Suit: 240 Torts to Land
Jurisdiction: Federal Question

## Plaintiff

**Mayor and City Council of Berlin**    represented by    **John McNeill Broaddus**
116 Avon Rd
Haverford, PA 19041
18567551115
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**City of Aberdeen**    represented by    **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**The Town of Chestertown**    represented by    **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**City of Salisbury**    represented by    **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Commissioners of Sharptown**    represented by    **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**The City of Taneytown**    represented by    **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**County Commissioners of Worcester County**

represented by **John McNeill Broaddus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**7-Eleven, Inc.**

**Defendant**

**Ashland, Inc.**

**Defendant**

**Atlantic Richfield Company**

**Defendant**

**BP Amoco Chemical Company**

**Defendant**

**BP Products North America, Inc.**

**Defendant**

**Chevron Corporation**

represented by **Peter C Condron**
Wallace King Comike and Reiskin PLLC
2900 K St NW Ste 500
Washington, DC 20007
12022041000
Fax: 12022041001
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E Wallace , Jr**
Wallace King Domike Reiskin
Harbourside Ste 500
2900 K St NW
Washington, DC 20007
12022041000
Fax: 12022041001
Email: rwallace@wallaceking.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chevron U.S.A. Inc.**

represented by **Peter C Condron**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Richard E Wallace , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Citgo Petroleum Corporation**

**Defendant**

**Citgo Refining and Chemicals
Company, LP**

**Defendant**

**Coastal Eagle Point Oil Company**          represented by   **David Samuel Panzer**
Greenberg Traurig LLP
2101 L St NW Ste 1000
Washington, DC 20037
12023313100
Fax: 12023313101
Email: panzerd@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Coastal Oil New England**          represented by   **David Samuel Panzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ConcoPhillips Company**

**Defendant**

**Crown Central, LLC**

**Defendant**

**El Paso Merchant Energy-Petroleum**          represented by   **David Samuel Panzer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Equilon Enterprises, LLC**          represented by   **Peter C Condron**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Exxon Mobil Corporation**

**Defendant**

**Exxon Mobil Oil Corporation**

**Defendant**

**Flint Hills Resources, LP**                    represented by    **Warren N Weaver**
                                                                  Whiteford Taylor and Preston LLP
                                                                  Seven Saint Paul St Ste 1400
                                                                  Baltimore, MD 21202
                                                                  14103478700
                                                                  Fax: 14106596470
                                                                  Email: wweaver@wtplaw.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Harry S Johnson**
                                                                  Whiteford Taylor and Preston LLP
                                                                  Seven St Paul St Ste 1400
                                                                  Baltimore, MD 21202-1626
                                                                  14103478700
                                                                  Email: hjohnson@wtplaw.com
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Getty Petroleum Marketing, Inc.**

**Defendant**

**Gulf Oil Limited Partnership**

**Defendant**

**Hess Corporation**

**Defendant**

**Marathon Petroleum Company, LLC**

**Defendant**

**Marathon Oil Company**

**Defendant**

**Mobil Corporation**

**Defendant**

**Motiva Enterprises, LLC**                    represented by    **Peter C Condron**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**PDV Midwest Refining, LLC**

**Defendant**
**Placid Refining Company, LLC**

**Defendant**
**The Premcor Refining Group Inc.**

**Defendant**
**Shell Oil Company**                    represented by **Peter C Condron**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**Shell Oil Products Company, LLC**      represented by **Peter C Condron**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**Shell Petroleum Inc.**

**Defendant**
**Shell Trading (US) Company**           represented by **Peter C Condron**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**Sunoco, Inc.**

**Defendant**
**Sunoco, Inc. (R&M)**

**Defendant**
**Texaco, Inc.**                         represented by **Peter C Condron**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Richard E Wallace , Jr**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**
**TMR Company**                          represented by **Peter C Condron**
                                         (See above for address)
                                         *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**Total Petrochemicals USA, Inc.**

**Defendant**

**Valero Energy Corporation**

**Defendant**

**Valero Marketing and Supply Company**

**Defendant**

**Valero Refining and Marketing Company**

**Defendant**

**Valero Refining Company - New Jersey**

**Defendant**

**Valero Refining Company - Delaware, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/20/2011 | 1 | NOTICE OF REMOVAL from Circuit Court for Baltimore City, case number 24C11-001207. ( Filing fee $ 350 receipt number 14637050480), filed by TMR Company, Shell Trading (US) Company, Texaco, Inc., Chevron Corporation, Chevron U.S.A. Inc., Motiva Enterprises, LLC, Shell Oil Company, Equilon Enterprises, LLC, Shell Oil Products Company, LLC. (Attachments: # 1 Civil Cover Sheet)(raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 2 | COMPLAINT against 7-Eleven, Inc., Ashland, Inc., Atlantic Richfield Company, BP Amoco Chemical Company, BP Products North America, Inc., Chevron Corporation, Chevron U.S.A. Inc., Citgo Petroleum Corporation, Citgo Refining and Chemicals Company, LP, Coastal Eagle Point Oil Company, Coastal Oil New England, ConcoPhillips Company, Crown Central, LLC, El Paso Merchant Energy-Petroleum, Equilon Enterprises, LLC, Exxon Mobil Corporation, Exxon Mobil Oil Corporation, Flint Hills Resources, LP, Getty Petroleum Marketing, Inc., Gulf Oil Limited Partnership, Hess Corporation, Marathon Oil Company, Marathon Petroleum Company, LLC, Mobil Corporation, Motiva Enterprises, LLC, PDV Midwest Refining, LLC, Placid Refining Company, LLC, Shell Oil Company, Shell Oil Products Company, LLC, Shell Petroleum Inc., Shell Trading (US) Company, Sunoco, Inc., Sunoco, Inc. (R&M), TMR Company, Texaco, Inc., The Premcor Refining Group Inc., Total Petrochemicals USA, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, Valero Refining Company - Delaware, LLC, Valero Refining Company - New Jersey, Valero Refining and Marketing Company, |

| | | |
|---|---|---|
| | | filed by City of Salisbury, Mayor and City Council of Berlin, The City of Taneytown, County Commissioners of Worcester County, City of Aberdeen, Commissioners of Sharptown, The Town of Chestertown.(raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | | Jury Trial Demand by City of Aberdeen, City of Salisbury, Commissioners of Sharptown, County Commissioners of Worcester County, Mayor and City Council of Berlin, The City of Taneytown, The Town of Chestertown. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 3 | Summons Issued 60 days as to Equilon Enterprises, LLC, Motiva Enterprises, LLC, Shell Oil Company, Shell Oil Products Company, LLC, Shell Trading (US) Company, TMR Company. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 4 | CONSENT TO REMOVAL by Ashland, Inc., Atlantic Richfield Company, BP Amoco Chemical Company, BP Products North America, Inc., Citgo Petroleum Corporation, Citgo Refining and Chemicals Company, LP, Coastal Eagle Point Oil Company, Coastal Oil New England, ConcoPhillips Company, Crown Central, LLC, El Paso Merchant Energy-Petroleum, Exxon Mobil Corporation, Exxon Mobil Oil Corporation, Flint Hills Resources, LP, Getty Petroleum Marketing, Inc., Gulf Oil Limited Partnership, Hess Corporation, Marathon Oil Company, Marathon Petroleum Company, LLC, Mobil Corporation, PDV Midwest Refining, LLC, Sunoco, Inc., Sunoco, Inc. (R&M), The Premcor Refining Group Inc., Total Petrochemicals USA, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, Valero Refining Company - Delaware, LLC, Valero Refining Company - New Jersey, Valero Refining and Marketing Company re 1 Notice of Removal, (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | | THE ABOVE PLEADINGS 2-3 ARE COPIES FILED IN THE CIRCUIT COURT FOR BALTIMORE CITY. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 5 | Local Rule 103.3 Disclosure Statement by Chevron Corporation, Chevron U.S.A. Inc., Texaco, Inc. identifying Corporate Parent Chevron Corporation for Chevron Corporation, Chevron U.S.A. Inc., Texaco, Inc. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 6 | Local Rule 103.3 Disclosure Statement by Equilon Enterprises, LLC, Motiva Enterprises, LLC, Shell Oil Company, Shell Oil Products Company, LLC, Shell Trading (US) Company, TMR Company identifying Corporate Parent Royal Dutch Shell plc for Equilon Enterprises, LLC, Motiva Enterprises, LLC, Shell Oil Company, Shell Oil Products Company, LLC, Shell Trading (US) Company, TMR Company. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/20/2011 | 7 | Local Rule 7.1 Disclosure Statement as to ConocoPhillips Company (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/22/2011 | 8 | STANDING ORDER re: removal. Signed by Judge Ellen L. Hollander on 4/22/11. (raf, Deputy Clerk) (Entered: 04/22/2011) |
| 04/25/2011 | 9 | Correspondence re: removal notification. (c/m to Condron, Broaddus and Wallace on 4/25/11). (raf, Deputy Clerk) (Entered: 04/25/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/25/2011 12:35:51 | | | |
| **PACER Login:** | mw0036 | **Client Code:** | 037771-0188-07648 |
| **Description:** | Docket Report | **Search Criteria:** | 1:11-cv-01037-ELH |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

MAYOR AND COUNCIL OF BERLIN,
et al.,

                  Plaintiffs,

v.

7-ELEVEN, INC.,
et al.,

                  Defendants.

Case No. _____
(Removal from the Circuit Court
for Baltimore City, Case No.
24-C-11-001207 OT)

## NOTICE OF REMOVAL

The undersigned defendants ("Defendants"), by their attorneys and pursuant to 28 U.S.C. § 1441, et seq., file their Notice of Removal of the action captioned as *Mayor and Council of Berlin, et al., v. Ashland, Inc., et al.*, Case No.: 24-C-11-001207 OT, from the Circuit Court for Baltimore City, Maryland, to the United States District Court for the District of Maryland. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and § 1503 of the Energy Policy Act of 2005 ("EPACT"), 42 U.S.C. § 7545 note. All prerequisites for removal have been satisfied. Accordingly, Defendants hereby remove this case to this Court, without waiving any challenges to personal jurisdiction or proper service as to any particular Defendant, and in support thereof state as follows:

1. On January 17, 2011, Plaintiffs filed this action in the Circuit Court for Baltimore City, Maryland. A copy of Plaintiffs' Original Complaint ("Complaint") is attached hereto as Exhibit 1. A copy of all other "process, pleadings, and orders" Defendants have received in the underlying action are attached hereto as Exhibit 2. *See* 28 U.S.C. § 1446(a).

DM_US 28049064-1.037771.0188

2.      Defendants remove this action on the basis of the Energy Policy Act of 2005, which includes an express provision allowing for the removal of claims and legal actions related to actual or threatened contamination of methyl tertiary-butyl ether ("MTBE") to the appropriate United States District Court.  This law was enacted on August 8, 2005.  *See* 42 U.S.C. §§ 7545, *et seq.*, Pub. L. 109-58, Title XV, § 1503.  Removal is appropriate here pursuant to the Energy Policy Act because, as described in greater detail below, Plaintiffs' claims relate to alleged MTBE contamination.

3.      This Notice of Removal is filed in the District Court of the United States for the district in which this suit was filed.

4.      No defendant was served prior to March 21, 2011.  Accordingly, this Notice of Removal is filed within the time frame provided by 28 U.S.C. § 1446(b).

5.      The following defendants consent to and join in this removal, and consents are attached as Exhibit 3:

> Ashland Inc.
> Atlantic Richfield Company
> BP Amoco Chemical Company
> Chevron Corporation
> Chevron U.S.A. Inc.
> CITGO Petroleum Corporation
> CITGO Refining and Chemicals Company, LP
> Coastal Eagle Point Oil Company
> Coastal Oil New England
> ConocoPhillips Company
> Crown Central LLC
> El Paso Merchant Energy-Petroleum Company
> Equilon Enterprises LLC
> ExxonMobil Corporation
> ExxonMobil Oil Corporation
> Flint Hills Resources, LP
> Getty Petroleum Marketing, Inc.
> Gulf Oil Limited Partnership

Hess Corporation
Marathon Petroleum Company, LLC
Marathon Oil Company
Mobil Corporation
Motiva Enterprises LLC
PDV Midwest Refining, LLC
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company, LLC
Shell Petroleum, Inc.
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
TMR Company
Total Petrochemicals USA, Inc.
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company
Valero Refining Company – New Jersey
Valero Refining Company – Delaware, LLC

6.      Pursuant to the requirements of 28 U.S.C. § 1446(d), Defendants will promptly

file a copy of this Notice of Removal with the Clerk of the Circuit Court for Baltimore City,

where the action was originally filed.  Defendants have also served Plaintiff with this Notice of

Removal.

7.      In their Complaint, Plaintiffs contend that Defendants' products, containing

methyl tertiary butyl ether ("MTBE"), have, will or threaten to contaminate Plaintiffs'

production wells and/or groundwater in the vicinity of Plaintiffs' production wells.

Accordingly, this action is one which may be removed to this Court pursuant to the provisions

of the Energy Policy Act of 2005 ("EPACT").  Section 1503 of EPACT provides:

> Claims and legal actions filed after the date of enactment of this Act related to
> allegations involving actual or threatened contamination of methyl tertiary butyl
> ether (MTBE) may be removed to the appropriate United States District Court.

- 3 -

42 U.S.C. § 7545 note.

8.    Plaintiffs' Complaint makes specific allegations about actual and threatened contamination of their production wells and of groundwater by MTBE.  Specifically, Plaintiffs allege that as a direct and proximate result of Defendants' acts, MTBE has "posed and continues to pose a threat to groundwater and to Plaintiffs' production wells," and has "contaminated and/or will contaminate Plaintiffs' production wells or groundwater in the vicinity of Plaintiffs' property." *See* Exhibit 1, ¶¶ 1, 9, 172-281.

9.    Because this is a case for which removal is expressly provided by an Act of Congress, jurisdiction is proper without regard to other federal statutes so long as it is a case to which this Court's judicial powers extend under Section 2, Article III of the Constitution of the United States. *See In re MTBE Prod. Liab. Litigation: City of Merced Redvp. Agcy. v. ExxonMobil Corp,* 674 F. Supp. 2d 494, 496-504 (S.D.N.Y. 2009).  This Court has Article III jurisdiction of this case for two separate reasons.  First, although this case is not being removed pursuant to 28 U.S.C. § 1332, there is minimal, constitutional diversity because the controversy is one between citizens of different states within the meaning of the Constitution.  Plaintiffs are citizens of the State of Maryland and one or more of the Defendants are citizens of states other than Maryland.  For example, Shell Oil Company is incorporated under the laws of Delaware and has its principal place of business in Texas, and many of the other Defendants are likewise Delaware corporations with their principal places of business in states other than Maryland.

10.    Second, and as a further basis for removal jurisdiction, allegations relating to MTBE contamination raise questions of federal law, namely the Clean Air Act ("CAA") and the Energy Policy Act, which together are part of a comprehensive federal scheme.  Plaintiffs'

allegations attack the broad federal system that regulates the content of gasoline, a system that expressly authorizes and effectively requires the conduct that Plaintiffs seek to prohibit based on state common law.

11.     Plaintiffs allege that Defendants are liable for acts which complied with Environmental Protection Agency ("EPA") guidelines.  Specifically, Plaintiffs seek to hold oil industry participants liable for conduct directed by the EPA under the CAA:  the addition of oxygenates such as MTBE to gasoline.  Thus, federal law preempts Plaintiffs' claims.

## JURISDICTION AND BASIS FOR REMOVAL

12.     Defendants remove this case on the basis of the Energy Policy Act of 2005, which specifies that "Claims and legal actions filed after the date of enactment of this Act [Aug. 8, 2005] related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States district court." Pub. L. 109-58, Title XV, § 1503, Aug. 8, 2005, 119 Stat. 1076. As this action was filed on January 17, 2011, was served no earlier than March 21, 2011 and includes allegations regarding MTBE contamination, this action is properly removed under the Energy Policy Act.

13.     In addition to the jurisdiction over the claims against Defendants, as set forth above, this Court has supplemental jurisdiction over the remainder of the state court claims pursuant to 28 U.S.C. § 1367.

WHEREFORE, Defendants hereby remove this action from the Circuit Court for Baltimore City, Maryland, to this Court.  Defendants do not waive and do hereby expressly reserve their rights as to any challenges to personal jurisdiction or proper service by Plaintiffs.

Dated: April 20, 2011

Respectfully submitted,

By: _____
Peter C. Condron
Bar No. 15903
WALLACE KING DOMIKE & REISKIN PLLC
2900 K Street, N.W.
Harbourside – Suite 500
Washington, D.C.  20007
Telephone:  (202) 204-1000
Facsimile:  (202) 204-1001
E-mail:  pcondron@wallaceking.com

*Attorneys for Defendants Chevron Corporation,
Chevron U.S.A. Inc., Equilon Enterprises LLC,
Motiva Enterprises LLC, Shell Oil Company, Shell
Oil Products Company LLC, Shell Trading (US)
Company, Texaco Inc., and TMR Company*

Of counsel for Defendants Chevron Corporation,
Chevron U.S.A. Inc., and Texaco Inc.:

Robert E. Meadows
Charles C. Correll, Jr.
James J. Maher
King & Spalding
1100 Louisiana, Suite 4000
Houston, TX  77002
(713) 751-3200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of the foregoing was sent by United States Mail, postage prepaid, to all parties of record, this 25th day of April, 2011 to:

John M. Broaddus
WEITZ & LUXENBERG, P.C.
200 Lake Drive East, Suite 205
Cherry Hill, New Jersey 08002

P. Scott Summy
Carla M. Burke
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219

Robert J. Gordon
Robin Greenwald
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003

Charles D. Macleod
Jefferson L. Blomquist
FUNK & BOLTON, P.A.
315 High Street, Suite 202
Chestertown, Maryland 21620

# EXHIBIT 1

MAYOR AND COUNCIL OF BERLIN
Mayor and Council of Berlin
10 William Street
Berlin, Maryland  21811

CITY OF ABERDEEN
60 N. Parke Street
Aberdeen, Maryland  21001

THE TOWN OF CHESTERTOWN
118 N. Cross Street
Chestertown, Maryland  21620

CITY OF SALISBURY
125 N. Division Street
Salisbury, Maryland  21801

COMMISSIONERS OF SHARPTOWN
401 Main Street
Sharptown, Maryland  21861

THE CITY OF TANEYTOWN
17 E. Baltimore Street
Taneytown, Maryland  21787

COUNTY COMMISSIONERS OF
WORCESTER COUNTY
1  West Market Street
Snow Hill, Maryland  21863

      Plaintiffs,

v.

7-ELEVEN, INC.
2711  N. Haskell Avenue
Dallas, TX 75204

ASHLAND, INC.,
50 E. Rivercenter Boulevard
Covington, Kentucky  41012

ATLANTIC RICHFIELD COMPANY
28100 Torch Parkway
Warrenville, IL 60555

IN THE

CIRCUIT COURT

FOR

BALTIMORE CITY

24C 11- 001207

Case No.: _____



*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

BP AMOCO CHEMICAL COMPANY                    *
4101 Winfield Road
Warrenville, Illinois 60555                  *

BP PRODUCTS NORTH AMERICA, INC.              *
4101 Winfield Road
Warrenville, Illinois 60555                  *

CHEVRON CORPORATION                          *
6001 Bollinger Canyon Road
San Ramon, California 94583                  *

CHEVRON U.S.A., INC.                         *
6001 Bollinger Canyon Road
San Ramon, California 94583                  *

CITGO PETROLEUM CORPORATION                  *
1293 Eldridge Parkway
Attn: Tax Department                         *
Houston, TX 77077
                                             *
CITGO REFINING AND CHEMICALS COMPANY, LP
6100 S. Yale Avenue                          *
Tulsa, Oklahoma 74136
                                             *
COASTAL EAGLE POINT OIL COMPANY
1001 Louisiana Street                        *
Houston, Texas 77002
                                             *
COASTAL OIL NEW ENGLAND
1001 Louisiana Street                        *
Houston, Texas 77002
                                             *
CONOCOPHILLIPS COMPANY
600 N. Dairy Ashford Road                    *
Houston, Texas 77070
                                             *
CROWN CENTRAL, LLC
1 North Charles Street                       *
Baltimore, Maryland 21201
                                             *
EL PASO MERCHANT ENERGY-PETROLEUM
COMPANY                                      *
1001 Louisiana Street
Houston, Texas 77002                         *

EQUILON ENTERPRISES, LLC
1100 Louisiana Street, Suite 2200
Houston, Texas 77002

EXXON MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039

EXXONMOBIL OIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039

FLINT HILLS RESOURCES, LP
4111 E. 37th Street N.
Wichita, Kansas 67220

GETTY PETROLEUM MARKETING, INC.
1500 Hempstead Turnpike
East Meadow, New York 11554

GULF OIL LIMITED PARTNERSHIP
100 Crossing Boulevard E.
Framingham, Massachusetts 01702

HESS CORPORATION
1185 Avenue of the Americas
New York, New York 10036

MARATHON PETROLEUM COMPANY, LLC
539 S. Main Street
Findlay, Ohio 45840

MARATHON OIL COMPANY
5555 San Felipe Road
Houston, Texas 77056

MOBIL CORPORATION
5959 Las Colinas Boulevard
Irving, Texas 75039

MOTIVA ENTERPRISES, LLC
910 Louisiana Street, 25th Floor
Houston, Texas 77002

PDV MIDWEST REFINING, LLC
1293 Eldridge Parkway
Houston, TX 77077

PLACID REFINING COMPANY, LLC                          *
1601 Elm Street, Suite 3400
Dallas, TX 75201                                      *

THE PREMCOR REFINING GROUP INC.                      *
8182 Maryland Avenue
St. Louis, Missouri  63105                            *

SHELL OIL COMPANY                                     *
910 Louisiana Avenue
Houston, Texas  77002                                 *

SHELL OIL PRODUCTS COMPANY, LLC                      *
910 Louisiana Avenue
Houston, Texas  77002                                 *

SHELL PETROLEUM, INC.                                *
910 Louisiana Avenue
Houston, Texas  77002                                 *

SHELL TRADING (US) COMPANY                           *
910 Louisiana Avenue
Houston, Texas  77002                                 *

SUNOCO, INC.                                         *
1735 Market Street
Philadelphia, Pennsylvania  19103                    *

SUNOCO, INC. (R&M)                                   *
1818 Market Street
Philadelphia, Pennsylvania  19103                    *

TEXACO, INC.                                         *
6001 Bollinger Canyon Road
San Ramon, California  94583                         *

TMR COMPANY                                          *
910 Louisiana Avenue
Houston, TX  77002                                   *

TOTAL PETROCHEMICALS USA, INC.                       *
1201 Louisiana Avenue, Suite 1800
Houston, Texas  77002                                *

VALERO ENERGY CORPORATION                            *
One Valero Way
San Antonio, Texas  78249                            *

VALERO MARKETING AND SUPPLY COMPANY
One Valero Way
San Antonio, Texas 78249

VALERO REFINING AND MARKETING COMPANY
One Valero Way
San Antonio, Texas 78249

VALERO REFINING COMPANY - NEW JERSEY
800 Billingsport Road
Paulsboro, New Jersey 08066

VALERO REFINING COMPANY - DELAWARE, LLC
One Valero Way
San Antonio, Texas 78249

                    Defendants.

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs MAYOR AND COUNCIL OF BERLIN, CITY OF ABERDEEN, THE TOWN OF CHESTERTOWN, CITY OF SALISBURY, COMMISSIONERS OF SHARPTOWN, THE CITY OF TANEYTOWN and COUNTY COMMISSIONERS OF WORCESTER COUNTY, ("Plaintiffs") make the following allegations against the Defendants listed above:

## NATURE OF THE CASE

1.    This case involves Maryland's most precious natural resource – water.  Throughout this great state, public water wells are contaminated by methyl tertiary butyl ether ("MTBE"). As used in this Complaint, the term "MTBE" includes all its degradation products, such as tert-butyl alcohol ("TBA").  MTBE is a gasoline additive needlessly and recklessly added to gasoline in Maryland. MTBE is highly soluble in water and does not readily biodegrade. MTBE is a possible human carcinogen, a known animal carcinogen, and even very small

amounts impart a foul taste and odor to water.  Despite knowing that MTBE has unique characteristics in water which allows it to contaminate water sources never seen before its addition to gasoline, these Defendants chose to make it the second largest chemical manufactured in the United States.  In doing so, these Defendants have unleashed an unprecedented assault on the water supplied to the citizens of Maryland.

**PARTIES**

Plaintiffs

2.    Plaintiff, Mayor and Council of Berlin, is a body corporate and politic of the State of Maryland (*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland Constitution and the laws of the State) that is authorized to sue under its municipal charter. Plaintiff operates a public water system that supplies drinking water to the residents of the Town.

3.    Plaintiff City of Aberdeen is a body corporate and politic of the State of Maryland (*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland Constitution and the laws of the State) that is authorized to sue under its municipal charter.  Plaintiff operates a public water system that supplies drinking water to the residents of the City.

4.    Plaintiff The Town of Chestertown is a body corporate and politic of the State of Maryland (*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland Constitution and the laws of the State) that is authorized to sue under its municipal charter.  Plaintiff operates a public water system that supplies drinking water to the residents of the Town.

5.    Plaintiff City of Salisbury is a body corporate and politic of the State of Maryland (*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland Constitution and

the laws of the State) that is authorized to sue under its municipal charter.  Plaintiff

operates a public water systems that supplies drinking water to the residents of the City.

6.     Plaintiff Commissioners of Sharptown is a body corporate and politic of the State of

Maryland (*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland

Constitution and the laws of the State) that is authorized to sue under its municipal charter.

Plaintiff operates a public water system that supplies drinking water to the residents of the

Town.

7.     Plaintiff The City of Taneytown is a body corporate and politic of the State of Maryland

(*i.e.*, a municipal corporation organized pursuant to Article XI-E of the Maryland

Constitution and the laws of the State) that is authorized to sue under its municipal charter.

Plaintiff operates a public water system that supplies drinking water to the residents of the

City.

8.     Plaintiff County Commissioners of Worcester County ("Worcester County") is a Code

Home Rule County (organized pursuant to Article XI-F of the Maryland Constitution and

the laws of the State).  Plaintiff Worcester County is a body corporate and politic of the

State of Maryland that is authorized to sue.  Plaintiff Worcester County owns and operates

the wells that serve the unincorporated community of Ocean Pines, Maryland.

9.     At least one of each Plaintiffs' wells have been contaminated with MTBE and/or TBA.

**Defendants**

10.    Defendants do business in Maryland as manufacturers, designers, refiners, formulators,

distributors, suppliers, sellers and/or marketers of MTBE and/or gasoline containing

MTBE.

11.    At all times relevant to this litigation, Defendants engaged in one or more phases of the

petroleum business, from manufacturing MTBE and adding it to gasoline at the refinery,

the distribution of gasoline containing MTBE, including the design and manufacture of

gasoline containing MTBE and/or MTBE sold in Maryland, and the marketing and sale of

MTBE in Maryland.

12. Any and all references to a Defendant or Defendants in this Complaint include any

predecessors, successors, parents, subsidiaries, affiliates and divisions of the named

Defendants.

13. When the term "Defendants" is used alone, it refers to all Defendants jointly. When

reference is made to any act or omission of the Defendants, it shall be deemed to mean that

the officers, directors, agents, employees, or representatives of the Defendants committed

or authorized such act or omission, or failed to adequately supervise or properly control or

direct their employees while engaged in the management, direction, operation or control of

the affairs of Defendants, and did so while acting within the scope of their employment or

agency.

14. 7-ELEVEN, INC. is a Texas corporation with its principal place of business at: 2711 N.

Haskell Avenue, Dallas, TX 75204, doing business in the State of Maryland.

15. ASHLAND, INC. is a Kentucky corporation with its principal place of business at:  50 E.

Rivercenter Boulevard, Covington, KY 41012, doing business in the State of Maryland.

16. ATLANTIC RICHFIELD COMPANY, (formerly known as Atlantic Richfield Delaware

Corporation), individually, as successor-by-merger to Atlantic Richfield Company (a

Pennsylvania corporation), and doing business as ARCO Products Company, is a Delaware

corporation with its principal place of business at: 28100 Torch Parkway, Warrenville, IL

60555, doing business in the State of Maryland.

17. BP AMOCO CHEMICAL COMPANY, (formerly known as Amoco Chemical Company,

Amoco Chemicals Company, and Amoco Chemicals Corporation) is a Delaware

corporation with its principal place of business at: 4101 Winfield Road, Warrenville, IL 60555, doing business in the State of Maryland.

18. BP PRODUCTS NORTH AMERICA, INC., (formerly known as Amoco Oil Company), individually and as successor-by-merger to BP Exploration and Oil Inc., and successor-in-interest to BP North America Inc., is a Maryland corporation with its principal place of business at: 4101 Winfield Road, Warrenville, IL 60555, doing business in the State of Maryland.

19. CHEVRON CORPORATION, (formerly known as ChevronTexaco Corporation) is a Delaware corporation with its principal place of business at: 6001 Bollinger Canyon Road, San Ramon, CA 94583, doing business in the State of Maryland.

20. CHEVRON U.S.A., INC. (formerly known as Gulf Oil Corporation), is a Pennsylvania corporation with its principal place of business at: 6001 Bollinger Canyon Road, San Ramon, CA 94583, doing business in the State of Maryland.

21. CITGO PETROLEUM CORPORATION is a Delaware corporation with its principal place of business at: 1293 Eldridge Parkway, Attn: Tax Department, Houston, TX 77077, doing business in the State of Maryland.

22. CITGO REFINING AND CHEMICALS COMPANY, LP is a Delaware limited partnership with its principal place of business at: 6100 South Yale Avenue, Tulsa, Oklahoma 74136, doing business in the State of Maryland.

23. COASTAL EAGLE POINT OIL COMPANY is Delaware corporation with its principal place of business at: 1001 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

24.    COASTAL OIL NEW ENGLAND is a Delaware corporation with its principal place of business at: 1001 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

25.    CONOCOPHILLIPS COMPANY (formerly known as Phillips Petroleum Company), individually and as successor-by-merger to Conoco, Inc. and Tosco Corporation, and doing business as Phillips 66 Company, Phillips Chemical Company, and Phillips Oil Company, is a Delaware corporation with its principal place of business at: 600 N. Dairy Ashford Road, Houston, TX 77079-1175, doing business in the State of Maryland.

26.    CROWN CENTRAL, LLC, (individually, as successor-by-merger to Crown Central Petroleum Corporation, and successor-in-interest to La Gloria Oil & Gas Company), is a Maryland limited liability company with its principal place of business at: 1 N. Charles Street, Baltimore, MD 21203, doing business in the State of Maryland.

27.    EL PASO MERCHANT ENERGY-PETROLEUM COMPANY, (formerly known as Coastal Refining and Marketing, Inc., Coastal Derby Refining Company, and Derby Refining Company), is a Delaware corporation with its principal place of business at: 1001 Louisiana Street, Houston, TX 77002-5089, doing business in the State of Maryland.

28.    EQUILON ENTERPRISES, LLC, individually, as successor-by-merger to Equiva Services LLC, is a Delaware limited liability company with its principal place of business at: 910 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

29.    EXXON MOBIL CORPORATION, (formerly known as Exxon Corporation, and doing business as ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A. and ExxonMobil Chemical Corporation), is a New Jersey corporation with its principal place of business at: 5959 Las Colinas Boulevard, Irving, TX 75039, doing business in the State of Maryland.

30. EXXONMOBIL OIL CORPORATION , is a New York corporation with its principal place of business at: 5959 Las Colinas Boulevard, Irving, TX 75039, doing business in the State of Maryland.

31. FLINT HILLS RESOURCES, LP, (formerly known as Koch Petroleum Group, LP and Koch Refining Company, LP and doing business as Koch Refining, L.P.), is a Delaware limited partnership with its principal place of business at: 4111 E. 37th Street North Wichita, KS 67220, doing business in the State of Maryland.

32. GETTY PETROLEUM MARKETING, INC. is a Maryland corporation with its principal place of business at: 1500 Hempstead Turnpike, East Meadow, NY 11753, doing business in the State of Maryland.

33. GULF OIL LIMITED PARTNERSHIP is Delaware limited partnership with its principal place of business at: 1500 Hempstead Turnpike, East Meadow, NY 11753, doing business in the State of Maryland.

34. HESS CORPORATION, (formerly known as Amerada Hess Corporation) is a Delaware corporation with it principal place of business at: 1185 Avenue of the Americas, New York, NY 10063, doing business in the State of Maryland.

35. MARATHON PETROLEUM COMPANY, LLC is a Delaware limited liability company with its principal place of business at: 555 San Felipe, Houston, TX 77056, doing business in the State of Maryland..

36. MARATHON OIL COMPANY is an Ohio corporation with its principal place of business at: 5555 San Felipe, Houston, TX 77056, doing business in the State of Maryland.

37. MOBIL CORPORATION is a Nevada corporation with its principal place of business at: 5959 Las Colinas Boulevard, Irving, TX 75039, doing business in the State of Maryland.

38.  MOTIVA ENTERPRISES LLC is a Delaware limited liability company with its principal place of business at: 910 Louisiana Street, 25th Floor, Houston, TX 77002, doing business in the State of Maryland.

39.  PDV Midwest Refining, L.L.C. is a Delaware limited liability company with its principal place of business at: 1293 Eldridge Parkway, Houston, TX 77077, doing business in the State of Maryland.

40.  PLACID REFINING COMPANY, LLC is a Delaware limited liability company with its principal place of business at: 1601 Elm Street, Suite 3400, Dallas, TX 75201.

41.  THE PREMCOR REFINING GROUP, INC. is a Delaware corporation with its principal place of business at: One Valero Way, San Antonio, TX 78249, doing business in the State of Maryland.

42.  SHELL OIL COMPANY is a Delaware corporation with its principal office address at: 910 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

43.  SHELL OIL PRODUCTS COMPANY, LLC is a Delaware limited liability company with its principal place of business at: 910 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

44.  SHELL PETROLEUM, INC. is a Delaware corporation with its principal place of business at: 910 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

45.  SHELL TRADING (US) COMPANY is a Delaware corporation with its principal place of business at: 910 Louisiana Street, Houston, TX 77002, doing business in the State of Maryland.

46.  SUNOCO, INC. is a Pennsylvania corporation with its principal place of business at: 1209 Orange Street, Wilmington, DE 19801, doing business in the State of Maryland.

47. SUNOCO, INC. (R&M), (formerly known as Sun Company, Inc. (R&M), Sun Refining and Marketing Company, and Sun Oil Company of Pennsylvania), is a Pennsylvania corporation with its principal place of business at: 1735 Market Street, Philadelphia, PA 19103, doing business in the State of Maryland.

48. TEXACO INC. is a Delaware corporation with its principal place of business at:: 6001 Bollinger Canyon Road, San Ramon, CA 94583, doing business in the State of Maryland.

49. TMR COMPANY, (formerly known as Texaco Refining and Marketing, Inc.), individually and as successor-by-merger to TRMB Company, (formerly known as Texaco Refining and Marketing (East), Inc.)) is a Delaware corporation with its principal place of business at: 910 Louisiana Street, Houston, Texas 77002, doing business in the State of Maryland.

50. TOTAL PETROCHEMICALS USA, INC., (formerly known as Atofina Petrochemicals, Inc., and Fina Oil and Chemical Company) is a Delaware corporation with its principal place of business at: 1201 Louisiana Street, Suite 1800, Attn: Legal Department, Houston, TX 77002, doing business in the State of Maryland.

51. VALERO ENERGY CORPORATION, is a Delaware corporation with its principal office address at: One Valero Way, San Antonio, TX 78249, doing business in the State of Maryland.

52. VALERO MARKETING AND SUPPLY COMPANY, is a Delaware corporation with its principal office address at: One Valero Way, San Antonio, TX 78249, doing business in the State of Maryland.

53. VALERO REFINING TEXAS, L.P., (individually and as successor-in-interest to Valero Refining Company - Texas and Valero Refining Company) is Texas limited partnership with its principal office address at: One Valero Way, San Antonio, TX 78249, doing business in the State of Maryland.

54. VALERO REFINING AND MARKETING COMPANY is a Delaware corporation with its principal office address at: One Valero Way, San Antonio, TX 78249, doing business in the State of Maryland.

55. VALERO REFINING COMPANY — NEW JERSEY is a Delaware corporation with its principal office address at: 800 Billingsport Road, Paulsboro, NJ 08060, doing business in the State of Maryland.

## JURISDICTION AND VENUE

56. This Court has jurisdiction over Defendants because they are either Maryland corporations authorized to do business in Pennsylvania, are registered with the Maryland Secretary of the State, do sufficient business with sufficient minimum contacts in Maryland, or otherwise intentionally avail themselves of the Maryland market through the sale, manufacturing, distribution and/or processing of petroleum-related products in Maryland to render the exercise of jurisdiction over Defendants by the Maryland courts consistent with traditional notions of fair play and substantial justice.

57. Venue is proper in this Court pursuant to Maryland Code, Courts and Judicial Proceedings, § 6-201, because at least one Defendant maintains its principal offices in Baltimore. Specifically, CROWN CENTRAL, LLC is a Maryland limited liability company with its principal place of business at 1 N. Charles Street, Baltimore, Maryland, 21203.

## MTBE FACTS

58. MTBE is a member of a class of chemical compounds called aliphatic ethers, one of whose properties is that they are "hydrophilic," or water-seeking, *i.e.*, they have enhanced solubility in water and chemical attraction to water molecules.

59. MTBE does not occur naturally.

60. MTBE is produced from methanol and isobutylene, a by-product of the gasoline-refining process. MTBE is not found in gasoline unless someone adds it.

61. Defendants used and continue to use MTBE as a gasoline additive.

<u>Why Defendants Add MTBE to Gasoline: Profit</u>

62. Sometime after 1979, Defendants started manufacturing, distributing and/or selling gasoline with MTBE in concentrations averaging approximately 2 to 4% in order to boost the octane level in higher grades of gasoline.

63. MTBE was not the only viable option to achieve higher octane in gasoline. Rather, its use reflected a choice and preference of Defendants, to make money off gasoline refining waste byproducts.

64. Since the early 1990's, Defendants have chosen to add MTBE to gasoline in much greater concentrations, typically 11-15%, in all grades of gasoline. Defendants claim that MTBE, an oxygenate, helps fuel burn more efficiently to reduce air pollution. Defendants' motivation for including MTBE in gasoline, however, was to boost octane cheaply and increase their own profits, and their use of MTBE as a gasoline additive predated the environmental concerns they invoke to justify their use of MTBE. The Clean Air Act of 1990 required oxygenates but Defendants chose MTBE from a list of possibilities as a cheap method to comply.

66. It is now apparent that MTBE did not even deliver Defendants' promise of cleaner air. Contrary to industry assurances, MTBE did little or nothing to reduce such air-polluting car emissions as carbon monoxide or smog precursors. A detailed 1998 report commissioned by the State of California concluded that "there is no significant air quality benefit to the

use of oxygenates such as MTBE in reformulated gasoline" when compared to alternative non-oxygenated formulations.[1]

67.   In May 1999, The National Research Council of the National Academy of Sciences ("NAS") issued a report concluding that MTBE does little to reduce ozone air pollution and smog.[2]

68.   NAS previously had concluded that reductions of carbon monoxide concentrations in the nation's air actually took place before MTBE was added to gasoline as a purported "clean air" oxygenate.[3]

69.   In fact, combustion of gasoline containing MTBE in car engines actually increases exhaust emissions of formaldehyde, nitrous oxide and other toxic chemicals including MTBE itself.

<u>Gasoline containing MTBE has widely contaminated and<br>continues to pose a threat to groundwater</u>

70.   MTBE is more than an order of magnitude more soluble in water than other gasoline constituents and therefore has a stronger affinity for and dissolves more easily in any available water. In technical terms, MTBE has a low octanol water partition coefficient and high solubility in water, particularly as compared to other common gasoline components — benzene, toluene, ethylbenzene and xylene (collectively "BTEX compounds").

---

[1] "Health and Environmental Assessment of MTBE," Report to the Governor and Legislature of the State of California as sponsored by SB 521 (Nov. 12, 1998).

[2] The Ozone-Forming Potential of Reformulated Gasoline", Nat'l Research Council, Nat'l Academy of Sciences (May 11, 1999).

[3] "Toxicological and Performance Aspects of Oxygenated Motor Vehicle Fuels," Nat'l Research Council, Nat'l Academy of Sciences (1996).

71.  Whenever gasoline with MTBE leaks, spills, or is otherwise released into the environment, the MTBE races through underground water reservoirs, spreading faster and farther than other chemical components contained in gasoline, reaching the water table, and soon contaminating wells that draw from the affected underground aquifers.

72.  In addition, MTBE resists physical, chemical and microbial degradation.  As a result, MTBE is slow to break down after it is released into the environment, particularly in the subsurface of the ground.  Plumes of MTBE can persist in underground aquifers for many decades — far longer than other components of gasoline.  Once an MTBE plume reaches a well, it continues to contaminate the water drawn from that well.

73.  Even in very small quantities, MTBE gives water a foul taste and odor that renders the water unusable and unfit for human consumption.  MTBE's taste and odor alone are enough to render previously potable water unfit for consumption.

74.  Research has shown that some people can detect the distressing turpentine-like taste or odor at concentrations in water as low as one part per billion ("ppb") or lower.

75.  MTBE is also a known animal carcinogen that is linked to many potential human health problems.  The U.S. Environmental Protection Agency ("EPA") considers MTBE to be a possible human carcinogen.

**The longstanding prevalence of unintended gasoline discharges ensures that gasoline with MTBE will contaminate groundwater.**

76.  Before the introduction by Defendants of MTBE as a gasoline additive, leaking underground storage tanks ("UST") and other gasoline discharges were a known threat to Maryland's groundwater. The introduction of gasoline containing MTBE in steadily increasing quantities and concentrations exponentially exacerbated the threat to groundwater caused by leaking USTs and other spills. Because of MTBE's unique

properties, the addition of MTBE to gasoline created an entirely new threat from even very small leaks and spills of gasoline.

77. Given the properties of MTBE and the long history of gasoline spills, leaks and other losses during distribution, sale and use, widespread MTBE contamination of groundwater was and is both inevitable and foreseeable by Defendants.

**Defendants have known all along that adding MTBE to gasoline would result in massive groundwater contamination.**

78. At all times relevant to this litigation, Defendants were aware that there is a national crisis involving gasoline leaking from multiple sources, including USTs. Substantial industry reports, Congressional testimony, and concerns expressed by the EPA show Defendants' knowledge that the systems used for shipping, storing, pumping, and using gasoline involve leaks and spillages at all links in the gasoline distribution chain.

79. At all times relevant to this litigation, Defendants were aware that thousands of gallons of gasoline enter the soil annually from gasoline-dispensing stations due to consumer and jobber overfills and from leaks, as described above.

80. At all times relevant to this litigation, Defendants were or should have been aware of the potential for additional mishandling events involving gasoline used and/or stored by nearly every American adult.

81. At all times relevant to this litigation, Defendants were or should have been aware that additional quantities of MTBE reach the soil and groundwater in the form of rainfall, as a result of evaporation during transport, storage, and fueling, as described above.

82. At all times relevant to this litigation, Defendants were or should have been aware that additional quantities of MTBE reach the soil and groundwater through vaporization from

USTs, and that such vaporization and other small releases occur even when a tank is

considered to have tested tight.

**Defendants' knowledge of the threat to groundwater as a result of
unintended discharges of gasoline blended with MTBE.**

    I.    **Defendants' constructive knowledge of MTBE's threat to groundwater.**

83.  At all times relevant to this litigation, Defendants were or should have been aware that

MTBE contamination of groundwater was inevitable, as a result of MTBE's water-seeking

properties, recalcitrance to biodegradation and bioremediation, and the long history of

nationwide gasoline spills, leaks, and other losses during distribution, sale, and use.

84.  For example, the American Petroleum Institute ("API"), a trade association representing

the domestic petroleum industry including Defendants in a broad range of topics, formed a

Toxicology Committee in or around 1980. The Toxicology Committee included Exxon,

Mobil, Shell, ARCO, Tosco and ChevronTexaco, among others.

85.  API's Toxicology Committee had a specific program to study MTBE. Meeting minutes

make plain that committee members shared information and repeatedly discussed MTBE's

propensity to contaminate groundwater. The Committee specifically acknowledged the

need for certain toxicological information due to MTBE's propensity to contaminate

groundwater and thus the likelihood of extensive ingestion of MTBE through drinking

water.

86.  Despite early knowledge and a shared recognition of the need to do long term, low level

ingestion studies on the effects of MTBE, none was ever undertaken or completed by

Defendants.

87.  Defendants possess and have always had knowledge, resources, experience and other

advantages which are vastly superior to those of Plaintiffs concerning the manufacture,

distribution, nature and properties of gasoline in general and MTBE in particular. By virtue of their tremendous economic power and analytical resources, including the employment of scientists such as hydrogeologists, chemists, engineers and toxicologists, Defendants have at all times relevant to this litigation been in a position to know the threat which MTBE poses to groundwater.

88. In addition, by virtue of this superior knowledge, and/or by virtue of the Defendants' partial and incorrect statements regarding the nature and impacts of MTBE, Defendants had a duty to disclose the truth and to act in accordance with the truth about MTBE.

    **II.   Defendants' early knowledge of specific instances of MTBE contamination of groundwater.**

89. Defendants knew at least as early as 1980 of the impact of MTBE and its contamination of water.

90. In or around October 1980, Defendants learned of a serious incident of MTBE groundwater contamination in Rockaway, New Jersey, which substantiated the threat that MTBE poses to drinking water supplies serving thousands of water consumers. Approximately 4,000 residents of Rockaway tasted MTBE or DIPE (another ether) in water supplied from a municipal well, leading oil industry insiders to further investigate the groundwater threat posed by MTBE.

91. In April 1983, a serious MTBE incident in Jacksonville, Maryland in Baltimore County came to public attention. Spills or leaks that occurred at least two years earlier at two different gas stations, one owned by ExxonMobil, created a large underground reservoir of MTBE that fouled the domestic wells of local residents and stalled a planned housing project.

92.   Defendants were also aware of two MTBE groundwater contamination events in Liberty, N.Y., and East Patchogue, N.Y., both of which preceded by several years the introduction of gasoline with higher concentrations of MTBE and presaged the now widespread calamity.

93.   At the East Patchogue site, spilled gasoline left over from the operation of a filling station whose underground storage tanks had been dug up and removed in 1988 sent a plume of MTBE into Long Island's sole source aquifer. The MTBE plume was detected when the water from a private well 4,000 feet from the old filling station site was rendered undrinkable with 350 ppb of MTBE. Although trace levels of BTEX were eventually found in wells, that did not happen until the MTBE levels had reached the astounding level of 7,600 ppb.

94.   A decade after the spill in East Patchogue, government officials were still tracking the MTBE plume through the aquifer thousands of feet from the site. In contrast, BTEX compounds were found concentrated in the soils and water much closer to the spill site, and the mass of these compounds was observed to be steadily decreasing through the Liberty incident started sometime before August 1990, when state health officials learned that a sample of the Village of Liberty's public water supply, drawn from local groundwater, tested positive for MTBE.

95.   In December 1992, MTBE was again found in Liberty's water at concentrations approximately three times higher than the New York State Department of Health drinking water standard of 50 ppb.

### III.    Defendants' awareness of the 1986 Garrett Report specifically warning of inevitable MTBE contamination of groundwater.

96.    In 1986, Peter Garrett and Marcel Moreau of the Maine Department of Environmental Protection drafted a paper entitled "Methyl Tertiary Butyl Ether as a Ground Water Contaminant" ("the Garrett Report").[4] The paper described approximately 30 Maine wells contaminated with MTBE. The authors explained that as a result of their experience dealing with the contamination, they learned that: (a) groundwater contaminated with MTBE is difficult to remediate, (b) MTBE is more soluble than the other constituents of gasoline and therefore a plume of MTBE in groundwater will be more extensive than the plume of the other gasoline components, and (c) MTBE has a distressing "terpene-like" odor in low concentrations.

97.    As a result of MTBE's characteristics, the Garrett Report's authors recommended that MTBE be banned as a gasoline additive or at least be stored in double-contained facilities. The paper was to be presented at and published in the proceedings of the "Petroleum Hydrocarbons and Organic Chemicals in Ground Water Conference" sponsored by the National Well Water Association and the API in November of 1986.

98.    As soon as the existence of the Garrett Report was known, even before it was published, the draft was widely circulated throughout the oil industry. Oil industry representatives, including many of the Defendants, joined forces and acted to pressure the authors to radically revise their negative conclusions and recommendations about MTBE. Even after succeeding in having the report's language softened, Defendants continued to discredit the report.

---

[4] Peter Garrett, Marcel Moreau & J.D. Lowry, "MTBE as a Ground Water Contaminate," in NWWA/API Conference on Petroleum Hydrocarbons and Organic Chemicals in Ground Water — Prevention, Detection, and Restoration, Houston, TX, November 12-14, 1986 [Proceedings]: Dublin, OH, National Water Well Ass'n, pp. 227-238.

99. Arco Chemical, which was then a part of ARCO, initially became involved in October of 1986, prior to the presentation of the first version of the paper. Arco Chemical provided "data that indicated that many of their theories were incorrect" to the authors of the paper in an attempt to change their opinions. However, despite Arco Chemical's efforts, the authors concluded that "MTBE presented an environmental hazard different to other gasoline components" and went ahead with their presentation of the paper to the National Well Water Association in November of 1986.

100. On December 23, 1986, a staff person to the Groundwater Technical Task Force ("GTTF") of API forwarded the Garrett Report to members of the GTTF including representatives of Shell and Exxon. These individuals were asked to review the Garrett Report and provide comments/critiques. The stated reason was that the article was "of possible grave concern to the oxygenate producers."

101. The comments from the GTTF members culminated in a letter from API to the National Well Water Association, which was to present the paper. The letter states in part:

> The authors' "recommendations" that MTBE. . . be either banned as gasoline additives or require double-lined storage is clearly a policy statement and not an objective credible scientific conclusion. Further, data presented in this paper as well as those generated by ongoing API research indicate that such a policy is reactionary, unwarranted and counter-productive.

102. However, the API letter to the National Well Water Association in no way refuted the Garrett Report's conclusions regarding MTBE's solubility, MTBE's low odor and taste threshold, the fact that MTBE could travel faster in groundwater than the other gasoline constituents, or the conclusion that MTBE was difficult to remediate. These issues were not even addressed.

103. BP (then known as "Amoco") publicly denounced the Garrett Report, stating flatly that the report "isn't true."

### IV.   Defendants' internal documents demonstrating their awareness of MTBE Contamination of groundwater.

104. Privately, however, Defendants were forced to acknowledge that the major findings of the Garrett Report were correct. For instance, while the oil companies, via the GTTF, attacked the authors of the Garrett Report, saying the paper had a "general lack of technical data to support the rather strong policy statements," behind closed doors, Defendants were admitting that the authors might in fact be correct. Arco Chemical, in communications to others within the oil industry, admitted that they had no data to refute the Garrett Report's conclusions. For example, a letter dated February 4, 1987, states "we don't have any data to refute comments made in the paper that MTBE may spread farther in a plume or may be more difficult to remove/clean up than other gasoline constituents."

105. On or around May 6, 1987, Mobil's laboratory prepared and circulated a memo based upon a compilation of data on MTBE contamination of groundwater in New York State and elsewhere in the region, including laboratory analyses verifying the presence of MTBE in water samples from three wells in Harrison, New York and four wells in Port Jefferson, New York. In its report, Mobil's laboratory stated: "We agree that MTBE in gasoline will dissolve in groundwater at a faster rate than any gasoline hydrocarbon, including benzene." The report further stated that "[b]ecause of its more frequent occurrence, even when other hydrocarbons are not found, we feel it is important for you to be aware of MTBE. From an environmental and engineering standpoint, you may need to be informed of its presence to assist you in responding effectively to regulatory and remedial requirements."

106.   Communications among officials at ChevronTexaco (Chevron) were similar. A 1987

memo, widely circulated within the company, states:

> Two considerations impact MTBE. One is potential health risk, and the second is
> increased solubility over normally regulated constituents of interest, i.e. benzene,
> toluene and xylene (BTX).
>
> MTBE is significantly more soluble in water than BTX. Consequently, the dissolved
> "halo" from a leak containing MTBE can be expected to extend farther and spread
> faster than a gasoline leak that does not include MTBE as one of its constituents.
>
> Further compounding the problem of increased solubility, MTBE is more difficult to
> remove from groundwater using current technology (air stripping or carbon
> adsorption). Because of its lower volatility, MTBE requires more than double to air
> stripping capacity to reach a 95 percent reduction. Removal using carbon adsorption
> is even worse. MTBE breaks through activated carbon four times faster than BTX.

107.   In 1992, Shell employees C.C. Stanley, W.G. Rixey, and C.Y. Chiang created a document

entitled "MTBE WHITE PAPER - The Impact of MTBE on Groundwater." The purpose of

the document was to put together what was known about the movement of MTBE in

groundwater and the document was to be circulated internally among the employees of the

various Shell companies.

108.   According to Shell's MTBE White Paper, MTBE is nearly 25 times more soluble than

benzene and therefore, MTBE's plumes are expected to move faster and farther than

benzene plumes emanating from a gasoline spill. Further, Shell's MTBE White Paper

indicates that MTBE does not biodegrade in the subsurface environment. Finally, Shell's

MTBE White Paper indicates that MTBE has a low odor and taste threshold and that "at

many locations odor and taste criteria may determine clean-up levels."

109.  Shell's MTBE White Paper further states:

> MTBE has had an impact on groundwater management at only a few Shell marketing terminals and service stations to date. However, as the usage of this oxygenate begins to increase, a stringent clean-up criteria for MTBE will become adopted in more states, we should anticipate increased concerns over how its release to groundwater is managed.

Not surprisingly, this paper was never published outside of Shell.

110.  A June 1997 Shell document entitled "Summary of Current MTBE Issues and Status" states:

> MTBE is relatively quite soluble in water (compared to other components in gasoline, like BTEX), and it moves essentially with the ground water, thus MTBE tends to "lead the plume" whenever there is a gasoline spill or leak. MTBE also has a very low biodegradation potential, which makes it more difficult to remove from ground water than other gasoline components such as BTEX.

**V.  Defendants' knowledge that no adequate toxicity studies had been done prior to Defendants' decision to add MTBE to gasoline.**

111.  Defendants added MTBE to gasoline even though no long-term cancer studies had been undertaken. Studies showed MTBE caused cancer in animals.  It is common knowledge within the scientific community, and Defendants knew, that prior to the introduction of a widely used chemical like MTBE, toxicological tests must first be performed. However, Defendants did not perform the standard toxicological procedures to test the effects of MTBE prior to placing it into the stream of commerce. Instead, Defendants attempted to convince the EPA that health testing of MTBE was not needed. Thus, Defendants exposed millions of Americans to potential harm without warning of the potential health risks associated with MTBE.

**VI.** **Despite knowing that adding MTBE to gasoline inevitably results in widespread MTBE groundwater contamination, Defendants conspired to mislead the EPA and the public about the hazards of adding MTBE to gasoline.**

112. Despite their superior knowledge of the groundwater threat posed by MTBE, Defendants, beginning in the early 1980's, formed various formal and informal task-forces and committees for the purpose of concealing the actual threat of MTBE, facilitating the Defendants' use of MTBE without regard to its impact on Plaintiffs and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable. Defendants formed these joint task-forces and committees under the auspices of trade organizations such as the API and the Oxygenated Fuels Association ("OFA"). Defendants, as members of these joint task forces and committees, conspired to conceal the risk of MTBE contamination of groundwater and agreed to use MTBE, thereby placing corporate profits above known-but-concealed harm to the environment and Plaintiffs. Defendants manufactured and distributed MTBE with actual knowledge of MTBE's defects and with actual knowledge that MTBE would cause harm in groundwater and production wells and took affirmative steps to conceal those effects.

**A.** **Defendants misled the EPA into not testing MTBE under the Toxic Substances Control Act (TSCA) in the late 1980's.**

113. In 1986, the federal Interagency Testing Committee ("ITC"), established pursuant to the Toxic Substances Control Act, recommended testing and review to assess MTBE's health and environmental risks.[5] The ITC characterized MTBE as having relatively high water

---

[5] Nineteenth Report of the ITC to the Administrator, Receipt and Request for Comments Regarding Priority List of Chemicals, 51 Fed. Rep. 220 (1986) (the "1986 Notice").

solubility, and stated that MTBE's persistence in groundwater following spills was unknown but that it was likely not to be readily biodegradable. The ITC recommended chemical fate monitoring of MTBE to determine the risk MTBE poses to the environment. The ITC also recommended additional medical testing of MTBE and invited written comments. The 1986 Notice credited the Dynamac Corporation for supplying the government with MTBE information.

114. The oil industry, including Defendants, mobilized to convince the EPA that additional testing of MTBE was not needed.

115. On or about December 12, 1986, Atlantic Richfield Company ("ARCO"), speaking on behalf of and/or with the approval of the Defendants, responded to the 1986 Notice in an effort to derail further testing of MTBE. ARCO's comments included a critique of the Dynamac Corporation's information review of MTBE, on which the ITC had relied. ARCO stated that its "critique of the CRCS/Dynamac report revealed that some erroneous assumptions had been made that cause the hazards of MTBE to be seriously overestimated." In further comments to the EPA, ARCO stated the following:

> Characteristics — Moderate water solubility is reported. However, an ARCO Technical Bulletin states that 'MTBE is only slightly soluble in water...'

> ***

> The CRSC/Dynamac report states that potential environmental exposure is 'high.' This conclusion is not supported by the available information.

> ***

> Exposure from accidental spills of MTBE could occur, but should be regarded as a minimal possibility. The closed nature of the manufacturing and transportation process reduces worker exposure and product loss. Training and safety programs also lower the possibility of accidental spills. Many current programs at EPA and industry are underway to monitor and reduce the possibility of gasoline loss from leaking

underground storage tanks.... MTBE losses would be extremely small from this source.

\*\*\*

## VI.  Environmental Information

As has been reportedly stated, environmental entry would not occur in every stage of the gasoline marketing chain . . . . Environmental entry of MTBE from this source would be considerably less than the report indicates.

MTBE is only slightly soluble so environmental fate projections based on this assumption will not be correct.

ARCO's comments, made with other Defendants' explicit or implicit approval, were misleading when made, improperly downplaying the risks of MTBE contamination of groundwater and omitting material facts known to Defendants at the time.

116.  On or around December 17, 1986, EPA held a Public Focus Meeting to hear comments on the need for additional testing of MTBE. The Minutes of the meeting show that government officials expressed concern over the need to assess the potential for groundwater contamination. The Minutes show that Arco and Exxon made a presentation to support the industry position that additional medical testing of MTBE was unnecessary. Other Defendants assented to these representations either explicitly or by their silence.

117.  In or around early 1987, Defendants formed the "MTBE Committee," with the express and stated purpose, as set forth in a written agreement, of "addressing the environmental, health, safety, legislative and regulatory issues concerning MTBE of importance to the public and the producers and users of MTBE."  The MTBE Committee included Defendants, BP Corporation (Amoco), Arco, ChevronTexaco (Chevron), Citgo, ExxonMobil (Exxon), Shell, and Sunoco, among others.

118. The MTBE Committee lauded itself as "being a source of information to MTBE producers, users, the government and the public" and stated that its goal was to "address environmental health and safety issues relating to MTBE ..., provide technical data to appropriate regulatory agencies and legislative bodies..., conduct[] and fund[] testing of MTBE required under a Toxic Substances Control Act Section 4 Consent Order or Test Rule..., [and] make available to interested parties and the general public technical and scientific information relating to the use of MTBE in fuels."

119. On January 29, 1987, the MTBE Technical Subcommittee, a subcommittee of the MTBE Committee, had its first meeting. The meeting minutes, circulated February 2, 1987, indicate:

> [T]he plan of attack on the combined response to the EPA on the ITC report is as follows: Since each producer must respond to the EPA before February 12 on the 8A and 8D [sic] questions and many will respond individually to production and economic questions which were also sought by EPA, a letter will be sent by George Dominguez requesting that information requested by the EPA be sent to the MTBE Committee before February 9. A form will be included in George's letter....the Technical Committee will then meet on February 19 to combine the three reports from the working groups and draft a response to the EPA which will then be passed on to the Steering Committee for their approval on February 20... The combined response to the EPA will be submitted by February 27, to be followed shortly thereafter by a formal visit to EPA. Dominguez will meet with EPA and notify them that the MTBE Committee has been formed and will be submitting its overview.

120. Although Defendants were keenly aware that the EPA was interested in obtaining more information about MTBE in groundwater, Defendants were not forthcoming in their responses to the EPA. On February 12, 1987, Arco Chemical responded to the EPA's request for information about "data gaps" concerning MTBE's environmental and health effects in a letter stating:

---

> Item D requests more information on the presence and persistence of MTBE in groundwater. We are not aware of any incidents where MTBE contaminated groundwater at manufacturing facilities. Where gasoline containing MTBE is stored at refineries, terminals, or service stations, there is little information on MTBE in groundwater. We feel there are no unique handling problems when gasoline containing MTBE is compared to hydrocarbon-only gasoline.

121. At the same time that Arco Chemical was telling the EPA that MTBE posed no significant environmental or health problems, Arco Chemical admitted to other Defendants that it "had no data to refute the claims made in the Garrett Report that MTBE posed a significant threat of groundwater contamination."

122. On or around February 27, 1987, the MTBE Committee submitted written comments drafted to convince the EPA not to require additional health and environmental testing of MTBE. The information provided by Defendants was misleading and false. For example, the Defendants provided information to the EPA representing that MTBE is only slightly soluble in water, that potential environmental exposure is not high, and that MTBE has excellent biodegradation characteristics. The MTBE Committee's Statement added:

> there is no evidence that MTBE poses any significant risk of harm to health or the environment, that human exposure to MTBE and release of MTBE to the environment is negligible, that sufficient data exists to reasonably determine or predict that manufacture, processing, distribution, use and disposal of MTBE will not have an adverse effect on health or the environment, and that testing is therefore not needed to develop such data. Furthermore, issuance of a test rule requiring long term chronic testing will have a significant adverse environmental impact.

123. The agenda of the MTBE Committee is reflected in the following excerpt from those comments addressed to the issue of medical testing:

> If a test rule is issued requiring chronic testing that will take 3-4 years to complete, great uncertainty will be created as to whether MTBE is a safe fuel additive. As a result, demand for MTBE and expansion of productive capacity is not likely to grow significantly. Refiners will be likely to commit capital to more costly alternative methods of octane enhancement such as isomerization and reformate plants that do