# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

MAYOR AND COUNCIL OF BERLIN, et al.,      *

         Plaintiff,    *

      v.     *

7-ELEVEN, INC., et al.,     *

         Defendants.    *

*    *    *    *    *    *    *    *

Case No. 1:11-cv-1037-ELH
(Removal from the Circuit Court
for Baltimore City, Case No.
24-C-11-001207 OT)

## THE CHEVRON-SHELL-TEXACO DEFENDANTS'
## MEMORANDUM OF LAW IN SUPPORT OF REMOVAL

## **TABLE OF CONTENTS**

Procedural Background ...........................................................................................3

ARGUMENT .........................................................................................................7

I.   THIS COURT HAS JURISDICTION PURSUANT TO
     THE BANKRUPTCY REMOVAL STATUTE ...................................................7

   A. Texaco's Supplemental Notice of Removal Was Timely And Proper .................7

   B. Bankruptcy Removal Does Not Require Unanimous Consent ...........................9

   C. This Court Has Core Bankruptcy Jurisdiction Over This Action ......................9

      1. Other District Courts have found jurisdiction in identical cases .................13

      2. Jurisdiction exists even though the Texaco plan was confirmed in 1988.................16

      3. This action is not an exercise of "police or regulatory power".....................17

      4. Supplemental jurisdiction exists over all other claims ...............................18

II.  REMOVAL WAS PROPER UNDER SECTION 1503 OF THE
     ENERGY POLICY ACT OF 2005.......................................................................19

III. THIS COURT MAY DEFER REMOVAL ISSUES TO
     THE MDL 1358 COURT ...................................................................................22

CONCLUSION......................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Alban v. Exxon Mobil Corp.*, No. MJG-06-3098 (D. Md. Dec. 27, 2006) ...............................2, 21

*Barbour v. Int'l Union*, 2011 U.S. App. LEXIS 1695 (4th Cir. Jan. 27, 2011) .........................8, 24

*Bradford v. Harding*, 284 F.2d 307 (2d Cir. 1960) .........................................................................22

*CALPERS v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004) .......................................................9, 21

*Chaghervand v. CareFirst*, 909 F. Supp. 304 (D. Md. 1995) ...........................................................6

*In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991) .............................................................................14

*In re Chicago, M., St. P. & P. R.R.*, 6 F.3d 1184 (7th Cir. 1993) ...........................................13, 18

*Chicago, R.I.& P. Ry. v. Martin*, 178 U.S. 245 (1900) .............................................................3, 20

*Corporacion de Servicios Medicos Hospitalarios v. Mora (In re Corporacion de Servicios Medicos Hospitalarios)*, 805 F.2d 440 (1st Cir. 1986) ....................................................................... 17

*Creasy v. Coleman Furniture Corp.*, 763 F.2d 656 (4th Cir. 1985) ...................................... *passim*

*Edgell v. Texaco Inc.*, No. A-96-CA-671 JN (W.D. Tex. Jan. 21, 1997) ...................................9, 16

*Esquivel v. BP Co. N. Am.*, 2010 U.S. Dist. LEXIS 110015 (S.D. Tex. Oct. 14, 2010) ..............23

*Falgoust v. Microsoft Corp.*, 2000-1 Trade Cases (CCH) ¶72,885 (E.D. La. 2000) ...................23

*Fenza's Auto, Inc. v. Montagnaro's, Inc.*, 2011 U.S. Dist. LEXIS 29696 (D.N.J. Mar. 21, 2011) .......................................................................................................................8

*In re Franklin Nat'l Bank Secs. Litig.*, 532 F.2d 842 (2d Cir. 1976) ........................................... 21

*In re Ivy*, 901 F.2d 7 (2d Cir. 1990) .............................................................................................. 23

*In re Johns-Manville Corp.*, 57 B.R. 680 (S.D.N.Y. 1986) ...........................................................14

*Jones v. Texaco Inc.*, No. M-95-5042 (S.D. Tex. March 11, 1996) ....................................... 9, 16

*Levy v. Bank of the Orient (In re Levy)*, 87 B.R. 107 (Bankr. N.D. Cal. 1988) ............................18

*In re MTBE Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 88436 (S.D.N.Y. Nov. 29, 2007)
(*City of Fresno v. Chevron U.S.A. Inc., et al.*) ........................................................1, 9, 17

*In re MTBE Prods. Liab..Litig.*, 522 F. Supp. 2d 569 (S.D.N.Y. 2007) ........................ 22

*In re MTBE Prods. Liab. Litig.*, 510 F. Supp. 2d 299 (S.D.N.Y. 2007) ..........................5

*In re MTBE Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 20575 (S.D.N.Y. 2006) .......................23

*In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 340 (S.D.N.Y. 2005) ..........................23

*In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 356 (S.D.N.Y. 2005) ..........................23

*In re MTBE Prods. Liab. Litig.*, 361 F. Supp. 2d 137 (S.D.N.Y. 2004) ..........................23

*In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004) .............................. *passim*

*In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ..........................2

*Meinhart v. Halliburton Energy Servs.*, 2011 U.S. Dist. LEXIS 36430
(S.D. Tex. Apr. 4, 2011) ....................................................................................23

*In re Millennium Studios, Inc.*, 286 B.R. 300 (D. Md. 2002) .........................................11

*In re Miller*, 81 B.R. 669 (Bankr. M.D. Fla. 1988) .......................................................11

*In re Mills*, 163 B.R. 198 (Bankr. D. Kan. 1994) .........................................................11

*Mohel v. Texaco Inc.*, No. M-95-250 (S.D. Tex. 1997).............................................9, 15

*Moody v. Diamond Shamrock Ref. & Mktg. Co.*, No. M-95-249 (S.D. Tex. 1997) ..................9, 15

*In re Morabito*, 1995 U.S. App. LEXIS 25278 (4th Cir. Aug. 25, 1995) ........................11

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 334 (1999) ........................7

*In re Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997) ...............................................12

*Palisades Collections LLC v. Shorts*, 552 F.3d 327 (4th Cir. 2008) ............................2, 20

*Pettitt ex rel. Stewart v. Boeing Co.*, 606 F.3d 340 (7th Cir. 2010) ....................2, 19, 20

*Polysat, Inc. v. Union Tank Car Co. (In re Polysat, Inc.)*, 152 B.R. 866 (E.D. Pa. 1993) ...........11

iii

*In re REPH Acq. Co.*, 134 B.R. 194 (Bankr. N.D. Tex. 1991) ......................................................16

*Rivera v. Texaco Inc.*, No. M-95-269 (S.D. Tex.) ....................................................................9, 15

*In re Schepps Food Stores, Inc.*, 160 B.R. 792 (Bankr. S.D. Tex. 1993) ...............................12, 16

*Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001
(Bankr. N.D. Ill. 1996) ................................................................................................................12

*Texaco, Inc. v. Sanders*, 182 B.R. 937 (S.D.N.Y. 1995) ...................................................10, 13, 15

*Timely Adventures, Inc. v. Phillips Props., Inc.*, No. M-95-049 (S.D. Tex. 1997) .............9, 15, 16

*Tipton v. Baltimore Am. Mtg. Corp.*, 2011 U.S. Dist. LEXIS 17782
(D. Md. Feb. 22, 2011) ...........................................................................................................9, 21

*W. Va. ex rel. McGraw v. Rite Aid, Inc.*, 2010 U.S. Dist. LEXIS
(S.D.W. Va. Feb. 1, 2010) .............................................................................................................8

*Wolf v. Kennelly*, 574 F.3d 406 (7th Cir. 2009) ..........................................................................20

*In re Wood*, 825 F.2d 90 (5th Cir. 1987) ......................................................................................11

**Statutes**

Energy Policy Act of 2005 § 1503, Pub. L. 109-58, Title XV, § 1503, Aug. 8, 2005,
119 Stat. 1076 (2005) ........................................................................................................... *passim*

11 U.S.C. § 524 ..............................................................................................................................12

11 U.S.C. § 1141 .............................................................................................................................12

28 U.S.C. § 157 .........................................................................................................................11, 12

28 U.S.C. § 1334 ..................................................................................................................... *passim*

28 U.S.C. § 1369 ............................................................................................................................20

28 U.S.C. § 1441 ..................................................................................................................... *passim*

28 U.S.C. § 1446 ..............................................................................................................................7

28 U.S.C. § 1452 ..................................................................................................................... *passim*

**<u>Other Authorities</u>**

3 *Collier on Bankruptcy* ¶ 362.05[b][ii] ........................................................................17

14C Wright & Miller, *Federal Practice & Procedure* § 3733 (4th ed. 2009) ...............................8

Pursuant to the Court's May 4, 2011, Memorandum to Counsel, defendants Chevron Corporation, Chevron U.S.A. Inc., Equilon Enterprises LLC, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Petroleum, Inc., Shell Trading (US) Company, Texaco Inc. and TMR Company (the "Chevron-Shell-Texaco Defendants") submit this memorandum in support of Defendants' removal of this action to this Court from the Circuit Court for Baltimore City. This memorandum is further submitted on behalf of all Defendants listed on Schedule A appended hereto. This action was timely removed by the Chevron-Shell-Texaco Defendants, and joined by all other Defendants except 7-Eleven, Inc., on two separate bases: (1) bankruptcy removal under 28 U.S.C. § 1452, which allows a party to "remove any claim or cause of action in a civil action... to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under Section 1334 of this title"; and (2) Section 1503 of the Energy Policy Act of 2005, which provides for removal of claims and legal actions related to allegations involving actual or threatened methyl tertiary butyl ether ("MTBE") contamination. Because neither basis for removal requires consent of the other defendants, removal was proper and this Court should retain jurisdiction over this matter.

Judge Scheindlin of the United States District Court for the Southern District of New York, who presides over a federal multidistrict litigation specifically established to address MTBE product liability claims identical to those asserted here, has repeatedly recognized the validity of Texaco's removal of state court MTBE actions based on bankruptcy removal jurisdiction where, as here, the plaintiffs' claims implicate pre-petition conduct arguably discharged under Texaco's 1988 Confirmation Order and the Bankruptcy Code. *In re MTBE Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 88436 (S.D.N.Y. Nov. 29, 2007) (*City of Fresno v.*

*Chevron U.S.A. Inc., et al.*); *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 386, 414 (S.D.N.Y. 2004) (denying motion to remand cases with identical claims because "these allegations constitute arguably dischargeable claims because they pre-date the confirmation of Texaco's reorganization plan"); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 603 n.9 (S.D.N.Y. 2001) (noting existence of jurisdiction under 28 U.S.C.§ 1334). There is no meaningful difference between the claims asserted by Plaintiffs here and those over which Judge Scheindlin has retained bankruptcy removal subject matter jurisdiction in MDL 1358. On this basis alone, removal and federal jurisdiction over this matter are proper.

Jurisdiction is also proper under Section 1503 of the Energy Policy Act of 2005, a special removal statute enacted by Congress to allow for removal of precisely the type of claims Plaintiffs assert here – allegations of actual or threatened contamination by MTBE. Because Section 1503 is a "special" removal statute, any defendant may remove pursuant to it and unanimous consent of defendants is not required. Defendants acknowledge that Judge Garbis of this Court reached a contrary conclusion in *Alban v. Exxon Mobil Corp.*, No. MJG-06-3098 (D. Md. Dec. 27, 2006), in which he recognized that Section 1503 is a special removal statute, but nevertheless ruled that unanimous consent of defendants was necessary. However, as the Seventh Circuit recently recognized, the so-called "unanimity" requirement stems from particular language present in 28 U.S.C. § 1441(a), the "general" removal statute. *Pettitt ex rel. Stewart v. Boeing Co.*, 606 F.3d 340 (7th Cir. 2010). *Cf. Palisades Collections LLC v. Shorts*, 552 F.3d 327, 338 (4th Cir. 2008) (Niemeyer, J., dissenting) (also noting that the language of § 1441(a) providing that an action "may be removed by the defendant or the defendants" "is the basis for ... the rule that all defendants must unanimously consent to removal") (citing *Chicago,*

2

*R.I.& P. Ry. v. Martin,* 178 U.S. 245, 247 (1900)).  This action was removed pursuant to Section 1503, **not** 28 U.S.C. § 1441(a), and Section 1503, like the "special" removal statute at issue in *Pettit,* does not contain the language from 28 U.S.C. § 1441(a) that has been deemed to require unanimous consent of defendants.  Accordingly, removal was also proper under Section 1503, and this Court has jurisdiction over this action.

<u>**Procedural Background**</u>

On or about January 17, 2011,[1] seven Maryland plaintiffs[2] brought suit against 42 Defendants in the Circuit Court for Baltimore City, alleging that their "public water wells are contaminated by methyl tertiary butyl ether ('MTBE')."  Compl. ¶ 1; *see also* Compl. ¶ 9 ("[a]t least one of each Plaintiffs' [sic] wells have been contaminated with MTBE....").  The Complaint alleges claims against all Defendants for public and private nuisance, strict liability for design defect and failure to warn, negligence, and civil conspiracy.  All of the Plaintiffs' claims arise out of the alleged actual or threatened contamination of their wells by MTBE. Compl. ¶¶ 58-281.  Moreover, the Complaint seeks to impose liability on all Defendants on a joint and several basis, as well as under multiple "non-traditional" collective liability theories like market share liability, alternative liability, and concert of action.  Compl. ¶¶ 162-71.  With the exception of defendant Shell Petroleum, Inc., which still has not been served with a copy of the summons and complaint, Plaintiffs effected service on each of the Chevron-Shell-Texaco

---

[1]  The date on the Complaint's signature page is January 17, 2011, but the Clerk's Office stamp on the face of the Complaint indicates that it was filed on February 8, 2011.

[2]  The Mayor and Council of Berlin, the City of Aberdeen, the Town of Chestertown, the City of Salisbury, the Commissioners of Sharptown, the City of Taneytown, and the County Commissioners of Worcester County.

Defendants on April 4 or 5, 2011. *See* Statement of Certain Defendants Pursuant to the Court's

Standing Order Concerning Removal ¶ 1 (filed May 5, 2011) (Exh. A).

On April 20, 2011, the Chevron-Shell-Texaco Defendants filed a timely notice of

removal of this action to this Court.[3] Every other Defendant in this action, with the exception of

7-Eleven, either joined in or consented to removal.[4] (*See* Notice of Removal ¶ 5 & Exh.3)  As

grounds for removal, the Chevron-Shell-Texaco Defendants relied on Section 1503 of the

Energy Policy Act of 2005, which provides for removal of cases precisely like this one involving

alleged MTBE contamination:

> Claims and legal actions filed after the date of enactment of this Act related to
> allegations involving actual or threatened contamination of methyl tertiary butyl
> ether (MTBE) may be removed to the appropriate United States district court.

Notice of Removal ¶¶ 2, 7, citing 42 U.S.C. § 7545 note, Pub. L. 109-58, Title XV, § 1503, 119

Stat. 1076 (Aug. 8, 2005).  Notably, this MTBE removal statute enacted by Congress in 2005

does not specify **who** may remove the case, does not require (as does 28 U.S.C. § 1441(a)) that

removal be by "the defendant or the defendants," and does not require all defendants to consent

to or join in the removal.  Rather, the statute simply provides that claims and legal action related

to MTBE contamination "may be removed."

When it enacted the Energy Policy Act of 2005, Congress was aware that in October

2000, to facilitate efficient handling of claims relating to allegations of MTBE contamination,

the Judicial Panel on Multidistrict Litigation established a coordinated proceeding, *In re MTBE*

---

[3] The Chevron-Shell-Texaco Defendants are unaware of any defendant being served with a copy of the summons and complaint prior to March 21, 2011. *See* Statement of Certain Defendants Pursuant to the Court's Standing Order Concerning Removal ¶ 1 (Exh. A).

[4] Plaintiffs dismissed their claims against Placid Refining LLC on or about April 15, 2011, prior to the removal of this action to this Court.

4

*Products Liability Litigation*, MDL No. 1358, which remains pending before Judge Shira A.

Scheindlin in the United States District Court for the Southern District of New York.  As Judge

Scheindlin noted in 2007:

> There are now well over one hundred actions assigned to this Court, each having
> been transferred here for consolidated pretrial proceedings from district courts in
> nineteen states.  Every action in the MDL asserts claims arising from one or more
> defendants' production, distribution, handling, or sale of MTBE-containing
> gasoline that is alleged to have contaminated plaintiffs' groundwater.  Most of
> these actions were removed from state courts by defendants under some
> combination of: federal officer jurisdiction, federal question jurisdiction based on
> federal preemption, the bankruptcy removal statute, and, most recently, the
> Energy Policy Act of 2005....

*In re MTBE Prods. Liab. Litig.,* 510 F. Supp. 2d 299, 302-03 (S.D.N.Y. 2007).[5]  Following the

removal of this action, the JPML issued Conditional Transfer Order No. 41 ("CTO-41"), which

conditionally transferred this action to MDL No. 1358.  (Exh. B.)  7-Eleven is the only party,

plaintiff or defendant, that has expressed its intent to challenge CTO-41.  Its sole basis for

objecting is its contention that this action was improperly removed.

Thereafter, on May 2, 2011, within thirty (30) days after it was served with a copy of the

summons and complaint, defendant Texaco Inc. ("Texaco") filed a Supplemental Notice of

Removal in which it asserted its right to remove this action under 28 U.S.C.§ 1452, the federal

bankruptcy removal statute.  Section 1452(a) specifically provides that "a party" may remove

matters related to bankruptcy cases; the statute does not contain language requiring the consent

of any other party.  *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985).

Specifically, as stated in the Supplemental Notice of Removal, on April 12, 1987, Texaco

filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States

---

[5] The number of cases pending in MDL No. 1358 today is lower as a result of settlements, trial and dismissals.

Bankruptcy Court for the Southern District of New York, Jointly Administered Chapter 11 Case Nos. 87-B-20142, 87-B-20143, and 87-B-20144. (Supp. Removal Notice ¶ 19)  On March 23, 1988, the United States Bankruptcy Court for the Southern District of New York confirmed Texaco's Second Amended Joint Plan of Reorganization (the "Confirmation Order").  Pursuant to the Confirmation Order, Texaco was discharged forever from any and all claims or liabilities arising before the date of the entry of the Confirmation Order, whether or not a proof of claim was filed, and whether or not the holder of such claim accepted the Plan of Reorganization. Furthermore, pursuant to Bankruptcy Code section 524(a)(2) and the Confirmation Order, "commencement... of any action, the employment of process, or any act to collect, recover or offset any debt discharged herein" was permanently enjoined and restrained.  (*Id.* ¶ 20.) Texaco's Supplemental Notice of Removal asserted that, because the Complaint contains allegations of purported wrongdoing dating back to 1979, this action seeks recovery for claims arising prior to Texaco's 1988 bankruptcy Confirmation Order, and such claims were discharged under that Confirmation Order. Id. ¶¶ 22-23; *see also* Order (i) Confirming Second Amended Joint Plan of Reorganization and (ii) Authorizing Texaco Inc. to Incur Secured Indebtedness for Purposes of Consummating Plan (Exh. C).

To the Chevron-Shell-Texaco Defendants' knowledge, the only party, plaintiff or defendant, seeking remand of this action is 7-Eleven, and 7-Eleven's sole basis for challenging removal is that it did not provide its consent.[6]

---

[6] Ironically, 7-Eleven argues in its April 27, 2011, motion to remand that "[b]y upholding the unanimity rule, courts can prevent one defendant from imposing his or her choice of forum upon other unwilling defendants and an unwilling plaintiff." 7-Eleven Motion at 2, citing *Chaghervand v. CareFirst*, 909 F. Supp. 304, 308-09 (D. Md. 1995). Yet here, of course, 7-Eleven is seeking to impose _its_ choice of forum upon other unwilling defendants and unwilling plaintiffs. Every other Defendant in this action joined or consented to the removal, and Plaintiffs themselves have not sought remand.

## ARGUMENT

### I.   THIS COURT HAS JURISDICTION PURSUANT TO THE BANKRUPTCY REMOVAL STATUTE.

Texaco filed a timely Supplemental Notice of Removal that properly invoked this Court's jurisdiction under the federal bankruptcy removal statute, 28 U.S.C. § 1452. That removal was proper and there is no basis for remand.

#### A.   Texaco's Supplemental Notice of Removal Was Timely And Proper.

Texaco was served with the summons and complaint in this action on or after April 4, 2011, and filed its Supplemental Notice of Removal on May 2, 2011, within thirty days of service. The procedure for removal from state court is governed by 28 U.S.C. § 1446(b), which requires a removal notice to "be filed within thirty days after the receipt by the defendant, by service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action is based...." The thirty day period for removal commences when the defendant is formally served with process. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 334, 347-48 (1999).

A supplemental notice of removal filed within thirty days of formal service of process on a defendant is timely and effective because, during the 30-day period following removal, defendants may freely supplement and/or amend their removal petitions. 14C Wright & Miller, *Federal Practice & Procedure* § 3733 (4th ed. 2009) ("[p]rior to the expiration of the 30-day period for removal..., defendants may freely amend the notice of removal required by Section 1446(b)"); *W. Va. ex rel. McGraw v. Rite Aid, Inc.*, 2010 U.S. Dist. LEXIS *19 (S.D.W. Va. Feb. 1, 2010) (same); *see also, e.g., Fenza's Auto, Inc. v. Montagnaro's, Inc.*, 2011 U.S. Dist. LEXIS

29696 (D.N.J. Mar. 21, 2011) ("[p]rior to the expiration of the thirty-day period for removal, a defendant may freely amend his notice of removal").

As the Fourth Circuit has held, where bankruptcy removal under 28 U.S.C. § 1452 is the basis for removal in a case with multiple defendants, the removal petition must be filed within thirty days of service on the party asserting bankruptcy as the basis for removal; thus, "so long as **one defendant** meets the thirty-day requirement, the bankruptcy removal petition would be timely." *Creasy*, 763 F.2d at 660-61 (emphasis added).[7] Because Texaco's Supplemental Notice of Removal asserting removal under the federal bankruptcy statute was filed within thirty days of service on Texaco, that Supplemental Notice was timely and proper.[8]

### B. Bankruptcy Removal Does Not Require Unanimous Consent.

Defendant 7-Eleven's objection to Defendants' removal of this matter is that it did not consent. But as the Fourth Circuit held in *Creasy*, the consent of other defendants is not required

---

[7] In a recent filing with the JPML (Exh. Q), 7-Eleven misstates the law on the timeliness of bankruptcy removals and argues, based on *Barbour v. Int'l Union*, 2011 U.S. App. LEXIS 1695 (4th Cir. Jan. 27, 2011), that Texaco's Supplemental Notice of Removal is untimely because it was not filed within thirty days of service on **7-Eleven**, the "first-served defendant." The "first-served defendant" rule enunciated in *Barbour* applies only to removals under 26 U.S.C. § 1441(a), where all defendants must consent. As *Creasy* held, removal under 28 U.S.C. § 1452 is timely "so long as **one defendant** meets the thirty-day requirement." 763 F.2d at 660-61 (emphasis added). Aside from ignoring the Fourth Circuit's explicit holding in *Creasy*, 7-Eleven's argument, if accepted, would necessarily require the incongruous result that a defendant could lose its federally-created unilateral right to remove on bankruptcy grounds in a multi-defendant case if the plaintiff merely waited for thirty days after serving another defendant before effecting service on the bankrupt defendant.

[8] Defendants recognize that Local Rule 103.5(d) calls for cases removed under 28 U.S.C. § 1452 to be brought to the Bankruptcy Clerk. However, Texaco filed its Supplemental Notice of Removal with the District Court here due to, *inter alia*, (1) the pendency of MDL 1358, *In re MTBE Products Liability Litigation*, in the Southern District of New York; (2) the issuance of CTO-41 by the JPML, conditionally transferring this action to MDL 1358; (3) the invocation of Energy Policy Act § 1503 as a separate and independent non-bankruptcy basis for removal; and (4) the fact that the Texaco bankruptcy proceeding was filed in, and the Confirmation Order issued out of, the U.S. Bankruptcy Court for the Southern District of New York, the district to which this matter would be transferred under CTO-41. Judge Scheindlin has previously opted to exercise jurisdiction over identical MTBE product liability claims against Texaco in the District Court rather than referring them to the Bankruptcy Court because she recognized the existence of "core" bankruptcy jurisdiction and, due to plaintiffs' assertion of "collective liability" theories against all defendants, including Texaco, "the exercise of jurisdiction is appropriate because plaintiffs' theories of collective liability cause the defendants to be inextricably intertwined; defendants will stand or fall together." *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 386, 415-16 (S.D.N.Y. 2004).

to remove a state court action under 28 U.S.C. § 1452.  In *Creasy*, the court distinguished

between removals pursuant to the general removal statute, 28 U.S.C. § 1441(a), which typically

require unanimous consent, and removals pursuant to 28 U.S.C. § 1452.  As the court held,

"[u]nder the bankruptcy removal statute…, any one party has the right to remove the state court

action without the consent of the other parties."  *Creasy*, 763 F.2d at 660; *Tipton v. Baltimore*

*Am. Mtg. Corp.*, 2011 U.S. Dist. LEXIS 17782 (D. Md. Feb. 22, 2011) ("consent of all

defendants is not necessary to remove a state court action under the bankruptcy removal

statute").  *Accord CALPERS v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004).  Thus, whether 7-

Eleven, or any other defendant, consented to Texaco's removal of this action is irrelevant.

## C.  This Court Has Core Bankruptcy Jurisdiction Over This Action.

Courts have repeatedly recognized that state law tort suits against Texaco alleging

conduct or activities predating Texaco's 1987 bankruptcy petition and 1988 Confirmation Order

and discharge involve substantial questions of federal bankruptcy law and support removal of

such claims under 28 U.S.C. § 1452.  *In re MTBE Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS

88436 (S.D.N.Y. Nov. 29, 2007) (*City of Fresno v. Chevron U.S.A. Inc., et al.*); *In re MTBE*

*Prods. Liab. Litig.*, 341 F. Supp. 2d 386, 414 (S.D.N.Y. 2004); *Timely Adventures, Inc. v.*

*Phillips Props., Inc.*, No. M-95-049 (S.D. Tex. 1997); *Moody v. Diamond Shamrock Ref. &*

*Mktg. Co.*, No. M-95-249; *Mohel v. Texaco Inc.*, No. M-95-250; *Rivera v. Texaco Inc.*, No. M-

95-269;[9] *Jones v. Texaco Inc.*, No. M-95-5042 (S.D. Tex. March 11, 1996); *Edgell v. Texaco*

---

[9] *See Timely Adventures* petition (Exh. D); *Timely Adventures* Report & Recommendation (Exh. E); *Timely Adventures* transcript (Exh. F) at page 2, lines 1-7; *Moody* petition (Exh. G); *Moody* transcript (Exh. H); *see also Mohel* petition (Exh. I); *Mohel* transcript (Exh. J), at page 3, line 3 through page 4, line 1; *Rivera* petition (Exh. K); *Rivera* transcript (Exh. L), at page 2, lines 14-15.

*Inc.,* No. A-96-CA-671 JN (W.D. Tex. Jan. 21, 1997);[10] *Texaco, Inc. v. Sanders,* 182 B.R. 937, 951 (S.D.N.Y. 1995). The claims here are no different.

On April 12, 1987, Texaco filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On March 23, 1988, the bankruptcy court confirmed Texaco's plan of reorganization. Pursuant to the Confirmation Order, Texaco was forever discharged of and from any and all claims and liabilities that arose prior to the entry of that order, whether "or not a proof of claim was filed or deemed filed, such claim was allowed, or the holder of such claim had accepted the plan of reorganization." That Order permanently enjoined "commencement ... of any action, the employment of process, or any act to collect, recover or offset any debt discharged therein."

Plaintiffs' claims against Texaco unquestionably implicate activities going back to the 1970's, well before entry of the 1988 Confirmation Order. Because the claims involve activities that pre-date Texaco's bankruptcy, and directly raise issues concerning Texaco's discharge and the integrity of its Confirmation Order, Texaco properly removed this suit to this Court.

28 U.S.C. § 1452(a) allows a party to "remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11."

---

[10] *See Jones* petition (Exh. M); *Jones* order (Exh. N); *Edgell* petition (Exh. O); *Edgell* (Exh. P).

This case falls squarely within this Court's jurisdiction under section 1334(b). The Fifth Circuit's widely-adopted test for bankruptcy jurisdiction set forth in *In re Wood*, 825 F.2d 90 (5th Cir. 1987), defines §.1334(b) "arising under" and "arising in" jurisdiction as follows:

> The phrase, "arising under" Title 11 describes those proceedings that involve a cause of action created *or determined* by a statutory provision of Title 11, and the phrase "arising in" refers to those administrative matters that arise only in bankruptcy cases....

825 F.2d at 96-97 (emphasis added). *Wood* referred to those two types of proceedings as "core" bankruptcy jurisdiction and, as the Fourth Circuit has noted, held that "a proceeding is core ... if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Morabito,* 1995 U.S. App. LEXIS 25278, *8 (4th Cir. Aug. 25, 1995) (quoting *Wood,* 825 F.2d at 97); *see also In re Millennium Studios, Inc.*, 286 B.R. 300, 305 (D. Md. 2002) (quoting *Wood*). Indeed, 28 U.S.C. § 157(b), which explicitly defines those matters within the "core" bankruptcy jurisdiction of federal courts, specifically provides that "[c]ore proceedings include, but are not limited to ... determinations as to the dischargeability of particular debts...." 28 U.S.C. § 157(b)(2)(I).[11]

Following confirmation of a Chapter 11 plan, bankruptcy jurisdiction remains over matters affecting the confirmation decree, preventing interference with consummation of the plan, or otherwise aiding in the plan's operation. *See Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers),* 190 B.R. 1001, 1007 (Bankr. N.D. Ill. 1996); *In re Schepps Food Stores, Inc.,* 160 B.R. 792, 796 (Bankr. S.D. Tex. 1993).

---

[11] *Accord Polysat, Inc. v. Union Tank Car Co. (In re Polysat, Inc.)*, 152 B.R. 866, 888 (E.D. Pa. 1993) (proceeding concerning scope of discharge injunction arising from §§ 524 and 1141 of the Code is a core proceeding under §§ 157(b)(2)(A), (I) or (O), and "invokes a substantive right provided by Title 11"); *In re Mills*, 163 B.R. 198, 202 (Bankr. D. Kan. 1994) (determination as to dischargeability is core proceeding); *In re Miller*, 81 B.R. 669 (Bankr. M.D. Fla. 1988) (federal jurisdiction exists to enforce discharge injunction).

This case invokes substantive rights created by the federal bankruptcy laws, is a matter affecting the Texaco confirmation decree, and therefore falls within this Court's core bankruptcy jurisdiction. The bankruptcy discharge of a former debtor such as Texaco is a right created by the provisions of the Bankruptcy Code. 11 U.S.C. § 1141(d)(1); 11 U.S.C. § 524(a).[12] Texaco's Confirmation Order enjoins the bringing of any claims against Texaco arising prior to entry of that order. An action such as this one, therefore, which implicates a bankruptcy discharge, falls squarely within federal bankruptcy jurisdiction. *In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1064 (5th Cir. 1997) ("a proceeding to enforce or construe a bankruptcy court's section 524(a) discharge injunction ...*necessarily 'arises under' title 11 and supports a finding that federal jurisdiction exists under 28 U.S.C. § 1334 and that such a proceeding is 'core' under 28 U.S.C. § 157(b)*" (emphasis added)); *In re Chicago, M., St. P. & P. R.R.,* 6 F.3d 1184, 1189 (7th Cir. 1993) (where reorganization court had entered confirmation order that barred and discharged all

---

[12] Section 1141(d)(1) of the Bankruptcy Code provides, in relevant part, that the confirmation of a plan:

    (A)    discharges the debtor from any debt that arose before the date of such confirmation, ... whether or not—

           (i)      a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

           (ii)     such claim is allowed under section 502 of this title; or

           (iii)    the holder of such claim has accepted the plan; ...

11 U.S.C. § 1141(d)(1). Section 524(a) of the Bankruptcy Code provides, in relevant part, that:

    (a)    A discharge in a case under this title—

           (1)     voids any judgment at any time obtained, to the extent such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section ... 1141 ... [and]

           (2)     operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect recover or offset any such debt as a personal liability of the debtor ...

11 U.S.C. § 524(a).

contingent and non-contingent claims, district court had federal jurisdiction over discharge issue); *Texaco Inc. v. Sanders (In re Texaco Inc.),* 182 B.R. 937 (Bankr. S.D.N.Y. 1995) (enforcement and interpretation of Texaco's discharge and confirmation order constitutes "core" proceeding pursuant to 28 U.S.C. § 157(b)).

### 1. Other District Courts have found jurisdiction in identical cases.

Other federal courts have addressed identical jurisdictional issues in cases implicating Texaco's discharge and confirmation order and have concluded that jurisdiction existed and that remand was not appropriate. Most notably, Judge Scheindlin had occasion to rule on the propriety of Texaco's bankruptcy removal of multiple MTBE product liability actions asserting allegations identical to those brought by Plaintiffs here. *In re MTBE,* 341 F. Supp. 2d at 411-16. In sustaining Texaco's removal and holding that the court had core bankruptcy jurisdiction over the claims, Judge Scheindlin ruled that claims identical to those asserted by Plaintiffs here directly implicated the bankruptcy discharge contained in Texaco's 1988 Confirmation Order. There, as here, plaintiffs alleged:

- "Sometime after 1979," defendants manufactured, distributed, and sold gasoline with certain MTBE concentrations.

- Defendants knew "at least as early as 1980 of the impact of MTBE and its contamination of water."

- In October 1980 and April 1983, defendants learned of spills in Rockaway, New Jersey and Jacksonville, Maryland, respectively.

- In 1986, defendants received and discussed the Garrett Report, a paper warning of inevitable groundwater contamination.

- "Beginning in the early 1980s," defendants colluded with others to suppress information regarding MTBE.

13

- Prior to the petition date, defendants misled the EPA into not testing MTBE under the Toxic Substances Control Act.

- "[O]n April 1 and 2, 1987" at a Conference on Alcohols and Octane, defendants represented that MTBE gasoline spills had been effectively dealt with, failing to inform the audience that MTBE resists biodegradation and is difficult to remediate.

341 F. Supp. 2d at 413-14. Literally identical allegations are contained in the Complaint here.

(Compl. ¶¶ 62, 89, 91, 97-102, 112, 113-125, 137.) Judge Scheindlin determined that "[a]ll of

these allegations constitute arguably dischargeable claims because they pre-date the confirmation

of Texaco's reorganization plan." 341 F. Supp. 2d at 414, citing *In re Chateaugay*, 944 F.2d 997,

1005 (2d Cir. 1991) (obligation to reimburse EPA for response costs is dischargeable claim

whenever based upon pre-petition release or threatened release of hazardous substances);

*Sanders*, 182 B.R. at 951 (claims based on chromate contamination and migration of subsurface

contaminants were "claims" within the meaning of section 101(5) because the events arose prior

to the confirmation order); *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (S.D.N.Y. 1986) ("[t]he

focus should be on the time when the acts giving rise to the alleged liability were performed . . . .

Thus, for federal bankruptcy purposes, a prepetition 'claim' may well encompass a cause of

action that, under state law, was not cognizable until after the bankruptcy petition was filed").

As Judge Scheindlin further held: "This Court has core bankruptcy jurisdiction because

questions concerning when certain 'claims' arose and whether those claims were discharged

involve the enforcement and construction of Texaco's discharge injunction, a substantive right

created by the federal Bankruptcy Code. Proceedings to determine the allowance and

disallowance of a claim against the estate are core proceedings." *Id.* (footnotes omitted).

14

Accordingly, Judge Scheindlin denied a motion to remand, declined to abstain from exercising jurisdiction, and retained jurisdiction.

Other courts have reached the same conclusion. In *Timely Adventures, Inc. v. Phillips Properties, Inc.,* No. M-95-049 (S.D. Tex.) (Exhs. D-F), plaintiffs initiated a state court lawsuit alleging, as in this case, environmental claims against Texaco and other defendants. Texaco removed the case to federal court. Following a hearing, a bankruptcy judge recommended to the district court that the case remain in federal court, and concluded: (1) core federal bankruptcy jurisdiction existed because the case, like this one, attacked the integrity of Texaco's confirmation order and involved enforcement and construction of that order; (2) equitable remand or abstention "should be exercised sparingly by Federal Courts"; and (3) the case did not fall within the narrow class of extraordinary cases in which the district court should decline to exercise its properly-conferred jurisdiction. The court found persuasive and cited with approval the "well-reasoned opinion of Judge Hardin" in *Sanders.* (Exh. E.) Significantly, the court in *Sanders* refused to abstain in favor of a state court to enforce and interpret Texaco's discharge and Confirmation Order. 182 B.R. at 946-47.

The district court in *Timely Adventures* adopted the report and recommendation and denied Plaintiffs' motion to remand. (Exh. F.) On that same day, for the same reasons, the court also denied motions to remand three similar cases against Texaco: *Moody v. Diamond Shamrock Ref. & Mktg. Co.,* No. M-95-249; *Mohel v. Texaco Inc.,* No. M-95-250; and *Rivera v. Texaco Inc.,* No. M-95-269 (Exhs. G-L). Similar motions to remand have been denied in *Jones v. Texaco Inc.,*No. M-95-5042 (S.D. Tex. March 11, 1996), and *Edgell v. Texaco Inc.,*No. A-96-CA-671 JN (W.D. Tex. Jan. 21, 1997) (Exhs. M-P).

15

This case involves the same issues regarding enforcement and construction of Texaco's Confirmation Order, and Plaintiffs attack the integrity of that same order in the same manner. Federal jurisdiction, therefore, is proper.

## 2. Jurisdiction exists even though the Texaco plan was confirmed in 1988.

The fact that Texaco has emerged from bankruptcy and that its reorganization plan was confirmed in 1988 has no bearing on whether federal bankruptcy jurisdiction exists here. It is precisely the confirmation of the Texaco plan and conclusion of the Texaco case that *give rise* to federal jurisdiction. By asserting pre-confirmation claims, Plaintiffs' action attacks the integrity of Texaco's discharge and confirmation order and invokes substantive rights created by federal bankruptcy law. In a case arising *after* confirmation of a Chapter 11 plan, federal jurisdiction remains over matters affecting the confirmation decree, preventing interference with consummation of the plan, or otherwise aiding in the plan's operation. *See In re REPH Acq. Co.,* 134 B.R. 194, 203 (Bankr. N.D. Tex. 1991) (jurisdiction under § 1334(b) exists even where plan confirmed and estate concluded); *Timely Adventures,* No. M-95-049 (S.D. Tex.) (Exhs. E & F, discussed *supra)* ("enforcement and construction of a confirmation order is a core proceeding"); *In re Schepps Food Stores, Inc.,* 160 B.R. 792, 796 (Bankr. S.D. Tex. 1993) (post-confirmation federal jurisdiction exists to protect confirmation decree). *Cf.* Reorg. Plan (Exh. C) at § IX (Retention of Jurisdiction).

## 3. This action is not an exercise of "police or regulatory power".

An exception to bankruptcy removal under 28 U.S.C. § 1452(a) exists where a plaintiff is engaged in an exercise of police or regulatory power. That is not the case here. The exception to removal contained in § 1452(a), and a similar exception from the automatic stay contained in the

Bankruptcy Code, only allow a governmental agency, under limited circumstances, *to prevent or stop ongoing actions*, not to seek money damages for past conduct. *Corporacion de Servicios Medicos Hospitalarios v. Mora* (*In re Corporacion de Servicios Medicos Hospitalarios*), 805 F.2d 440, 445 n.4 (1st Cir. 1986) (actions in which government seeks to protect pecuniary interest do not qualify for police power exception); 3 *Collier on Bankruptcy* ¶ 362.05[b][ii] (police power exception applies only "as long as no attempt is made to collect on a monetary judgment based upon past violations").

Here, there is no question that Plaintiffs' action relates to protection of a pecuniary interest. Plaintiffs predominantly seek common law and statutory money damages for acts alleged to have already occurred. As a result, Plaintiffs' action is not one falling within the "police power" exception of 28 U.S.C. § 1452(a). In denying a motion to remand in MDL 1358 filed by the City of Fresno, California, Judge Scheindlin ruled that claims identical to those asserted here did not involve an exercise of police or regulatory power. *In re MTBE*, 2007 U.S. Dist. LEXIS 88436 (S.D.N.Y. Nov. 29, 2007). As the court held:

> Fresno is not seeking to impose fines but rather seeks compensatory and punitive damages from the oil companies. In the end, Fresno's claims are ... akin to the claims bought by private entities that do not posses police or regulatory powers (*i.e.,* common law tort claims). For Fresno to be successful in arguing that its action was improperly removed, it would need to explain why its claims enforce police or regulatory powers when, for example, private corporations are bringing the very same claims.... It would make no sense to hold that a tort claim filed by a private entity seeking compensatory and punitive damages enforces "police or regulatory" powers when filed by a governmental unit that has also suffered alleged property damage.

2007 U.S. Dist. LEXIS 88436, at *9-10.

17

**4.**   **Supplemental jurisdiction exists over all other claims.**

Because bankruptcy jurisdiction exists, this Court should retain jurisdiction over all the claims in this litigation. *See* 28 U.S.C. § 1367(a). No practical or workable basis exists for severing or separating out claims involving conduct of Texaco prior to 1988. The Complaint alleges causes of action for negligence, design defect, failure to warn, a nd private and public nuisance against Texaco without setting forth the individual actions, or the alleged dates thereof, which might support those claims. Moreover, as Judge Scheindlin recognized in retaining jurisdiction over all claims in prior MTBE litigation, "the exercise of jurisdiction is appropriate because plaintiffs' theories of collective liability cause the defendants to be inextricably intertwined; defendants will stand or fall together. That is, plaintiffs can only recover if liability is apportioned among all manufacturers of MTBE-containing gasoline due to the impossibility of matching particular defendants to specific releases of MTBE." 341 F. Supp. 2d at 413-14. Plaintiffs here, of course, assert identical theories of collective liability as a basis for recovery.

Until the discharge issues are decided, the parties inevitably will be embroiled in a dispute as to when certain claims arose and whether those claims have been discharged. That dispute is the very basis of jurisdiction here, the resolution of which should be decided in a federal forum. *See In re Chicago*, 6 F.3d at 1193 (discharged debtor was entitled to *federal* determination of discharge question *before* it could be forced to litigate claim in state court); *Levy v. Bank of the Orient (In re Levy)*, 87 B.R. 107, 108 (Bankr. N.D. Cal. 1988) (noting that § 524(a) was designed to eliminate creditor's suing debtor in state court, while alleging that claim was not discharged). Accordingly, this Court should retain jurisdiction not only over Plaintiffs' claims against Texaco, but over all claims against all Defendants.

Because Texaco's removal under 28 U.S.C. § 1452 was timely and proper, this Court has, and should retain, jurisdiction over this matter.

## II.   REMOVAL WAS PROPER UNDER SECTION 1503 OF THE ENERGY POLICY ACT OF 2005.

Although Texaco's Supplemental Notice of Removal asserting bankruptcy removal jurisdiction under 28 U.S.C. § 1452 is, by itself, a sufficient basis for jurisdiction here, Defendants (with the sole exception of 7-Eleven) have also asserted as a basis for removal § 1503 of the Energy Policy Act of 2005, which provides that "[c]laims and legal actions… related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States district court." The Chevron-Shell-Texaco Defendants understand the main thrust of 7-Eleven's objection to this Court's removal jurisdiction to be 7-Eleven's failure to consent. However, unanimous consent of all defendants is not required for removal of an action under the removal provision of the Energy Policy Act of 2005. As the Seventh Circuit recently recognized, the "unanimity requirement" is not a general prerequisite for all removals but instead is dictated by the particular language of 28 U.S.C. § 1441(a), which specifies that a matter may be removed under § 1441(a) by "the defendant or the defendants." *Pettitt ex rel. Stewart v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). Because this matter was **not** removed pursuant to 28 U.S.C. § 1441(a), and because Energy Policy Act § 1503 is a "special" removal statute enacted by Congress allowing for removal of cases like this one involving "actual or threatened contamination of methyl tertiary-butyl ether (MTBE)" to the appropriate federal district court, unanimous consent of all defendants is not required.

In *Pettitt*, the Seventh Circuit held that unanimous consent of all defendants was not

necessary where the defendant removed an action pursuant to a "special" removal statute, the

Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C. § 1369 ("MMTJA"), rather than 28

U.S.C. § 1441(a). Much like Energy Policy Act § 1503, the MMTJA allows for removal of a

certain class of otherwise unremovable state court cases – those involving an accident resulting

in the deaths of at least 75 people – to federal court. In *Pettitt*, the appellate court held that the

district court had erred in remanding the action to state court on the ground that not all

defendants consented to the removal, holding that unanimous consent to removal was required

only where removal was accomplished pursuant to 28 U.S.C. § 1441(a):

> It is indeed true that valid removal generally requires the unanimous consent of all
> defendants. *See Wolf v. Kennelly*, 574 F.3d 406, 409-10 (7th Cir. 2009). This
> general rule follows from the language of 28 U.S.C. § 1441(a), which provides
> that "[e]xcept as otherwise expressly provided by Act of Congress, any civil
> action brought in a State court of which the district courts of the United States
> have original jurisdiction, may be removed by *the defendant or the defendants*."
> (emphasis added). We have interpreted the italicized language to mean that all
> defendants must consent to removal. *See Doe* [*v. GTE Corp*, 347 F.3d 655, 657
> (7th Cir. 2003)]. However, the present case was not removed under 28 U.S.C. §
> 1441(a); it was removed under the MMTJA (28 U.S.C. § 1369). Section
> 1441(e)(1) provides that "*a defendant* . . . may remove . . , if the action could
> have been brought . . . under section 1369." (emphasis added).

*Pettitt*, 606 F.3d at 343. *Cf. Palisades Collections LLC v. Shorts*, 552 F.3d 327, 338 (4th Cir.

2008) (Niemeyer, J., dissenting) (also noting that the "may be removed by the defendant or the

defendants" language of § 1441(a) "is the basis for ... the rule that all defendants must

unanimously consent to removal") (citing *Chicago, R.I.& P. Ry. v. Martin*, 178 U.S. 245, 247

(1900)).

Here, as in *Pettitt*, Defendants did not remove this action pursuant to 28 U.S.C.

§ 1441(a); they removed pursuant to a special removal statute, § 1503 of the Energy Policy Act

20

of 2005. The removal provision of that statute does not contain the "may be removed by the *defendant or the defendants*" language on which the unanimity requirement has been predicated. Rather, the Energy Policy Act removal provision states that "[c]laims and legal actions ... related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States district court." Pub. L. 109-58, Title XV, § 1503, Aug. 8, 2005, 119 Stat. 1076 (2005). Unlike 28 U.S.C. § 1441(a), therefore, there is no language in Section 1503 that mandates that all defendants must join in the removal. Accordingly, unanimous consent of all defendants is not required.

Defendants recognize that Judge Garbis of this Court reached a different result in an unpublished decision in *Alban v. Exxon Mobil Corp.*, No. MJG-06-3098 (D. Md. Dec. 27. 2006) (acknowledging that § 1503 is a "special removal statute," but finding unanimous consent of defendants needed). However, Judge Garbis did not have the benefit of the Seventh Circuit's reasoning in *Pettitt* at the time he was considering the issue. Moreover, in *Alban*, the court held that unanimity was required without considering whether the statutory source for the unanimity requirement – which, as the Seventh Circuit held in *Pettitt*, is the specific statutory language of 28 U.S.C. § 1441(a) – was the basis for removal in that action. And indeed, other courts have held that where removal is accomplished pursuant to statutes other than 28 U.S.C. § 1441(a), unanimity among defendants is not required. Perhaps the most prominent example, as previously noted, is the bankruptcy removal statute, 28 U.S.C. § 1452. *See* Section I.B, *supra*; *Creasy*, 763 F.2d at 660; *Tipton*, 2011 U.S. Dist. LEXIS 17782 (D. Md. Feb. 22, 2011); *CALPERS v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004). Likewise, other "special removal statutes" do not require unanimous consent of all defendants. *See In re Franklin Nat'l Bank*

21

*Secs. Litig.,* 532 F.2d 842, 846 (2d Cir. 1976) (FDIC did not need unanimous consent of all defendants where federal banking laws gave FDIC right to remove because "special, rather than general, removal statutes control, [so] the requirement that all defendants join in the petition for removal has been held inapplicable"); *Bradford v. Harding,* 284 F.2d 307, 309-10 (2d Cir. 1960) (fewer than all defendants may remove under 28 U.S.C. § 1442 governing removal by defendants who are federal officials). *See also Creasy*, 763 F.2d at 660 (distinguishing requirement for unanimity under 28 U.S.C §1441(a), the general removal statute, from federal bankruptcy removal, under which unanimity not required).

Because removal here was accomplished pursuant to § 1503 of the Energy Policy Act of 2005 rather than 28 U.S.C. § 1441(a), and because § 1503 lacks the same kind of statutory language present in 28 U.S.C. § 1441(a) that gave rise to the unanimity requirement, unanimity is not required for removal under § 1503.

### III.   THIS COURT MAY DEFER REMOVAL ISSUES TO THE MDL 1358 COURT.

Pursuant to CTO-41 issued by the JPML, this action already has been conditionally transferred to MDL 1358 in the Southern District of New York. Although this Court certainly has jurisdiction until such time as the conditional transfer becomes final, other courts have refrained from deciding removal issues in deference to the MDL 1358 court. That court has already ruled multiple times on the validity of removal under, *inter alia*, Section 1503 of the Energy Policy Act of 2005 and the federal bankruptcy removal statute, 28 U.S.C. § 1452. *See, e.g., In re MTBE Prods. Liab. Litig.,* 522 F. Supp. 2d 569, 571-72 (S.D.N.Y. 2007) (describing procedure whereby judge in U.S. District Court for the Eastern District of California entered stay to allow MDL court to rule on remand); *In re MTBE Prods. Liab. Litig.,* 361 F. Supp. 2d 137

22

(S.D.N.Y. 2004) (deciding remand motions filed by States of California and New Hampshire after MDL transfer); *In re MTBE Prods. Liab. Litig.,* 341 F. Supp. 2d at 413-14 (deciding remand motions filed by 21 plaintiffs around the country following MDL transfers from Kansas, Iowa, Indiana, Florida, Virginia, Vermont, California, Louisiana, and West Virginia); *In re MTBE Prods. Liab. Litig.,* 399 F. Supp. 2d 340 (S.D.N.Y. 2005) (ruling on remand after MDL transfer in Maryland case); *In re MTBE Prods. Liab. Litig.,* 399 F. Supp. 2d 356 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.,* 2006 U.S. Dist. LEXIS 20575 (S.D.N.Y. 2006) (ruling on remand in Illinois cases).

In its filing with the JPML, 7-Eleven suggests that "arguments regarding removal do not relate to the commonalities of the cases consolidated in MDL 1358." (Exh. Q at 4.) That simply is not the case, as evidenced by Judge Scheindlin's multiple common rulings on the very issues implicated by 7-Eleven's opposition to removal. As Judge Scheindlin's rulings demonstrate, the bases for removal asserted (and challenged) here have recurred again and again across multiple MDL cases in the past and, to the extent additional MTBE products liability actions continue to be filed, will recur in the future. Thus, they are precisely the type of issue appropriate for resolution by the MDL court to conserve judicial resources and avoid the risk of inconsistent results. *See, e.g., Meinhart v. Halliburton Energy Servs.,* 2011 U.S. Dist. LEXIS 36430 (S.D. Tex. Apr. 4, 2011) (if remand "presents difficult issues that are common to cases that will be consolidated before the MDL court, a stay is generally appropriate"); *Esquivel v. BP Co. N. Am.,* 2010 U.S. Dist. LEXIS 110015 (S.D. Tex. Oct. 14, 2010) (same); *Falgoust v. Microsoft Corp.,* 2000-1 Trade Cases (CCH) ¶72,885 (E.D. La. 2000) (consistency and judicial economy best served by allowing single transferee court to rule on remand issues). *Cf. In re Ivy,* 901 F.2d 7, 8-

23

10 (2d Cir. 1990) ("[o]nce transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course").  Indeed, even 7-Eleven concedes that such deference to an MDL transferee court on removal issues is "routine[ ]."  (Exh. Q at 3-4.)

7-Eleven further suggests that allowing the MDL court to rule on removal is somehow inappropriate because the so-called "McKinney Intermediate Rule" regarding the timeliness of removals that was recently clarified by the Fourth Circuit in *Barbour v. Int'l Union*, 2011 U.S. App. LEXIS 1695 (4th Cir. Jan. 27, 2011), is not recognized as the law in other circuits.  As noted in footnote 7, *supra*, 7-Eleven misstates the law.  *Barbour*, and the McKinney Intermediate Rule, by their own terms apply only when unanimous consent of other defendants is needed for removal.  Unambiguous Fourth Circuit law provides that such consent is **not** necessary when bankruptcy is the basis for removal, and further provides that removal under 28 U.S.C. § 1452 is timely "so long as **one defendant** meets the thirty-day requirement," which unquestionably was the case here.  *Creasy*, 763 F.2d at 660-61 (emphasis added).  But even if 7-Eleven's erroneous reading of *Barbour* were somehow correct, Judge Scheindlin is perfectly capable of considering 7-Eleven's argument and the timeliness of Texaco's bankruptcy removal.  Thus, 7-Eleven's position is legally insupportable and, ultimately, a red herring.

## CONCLUSION

For all the foregoing reasons, the Chevron-Shell-Texaco Defendants' removal of this action from the Circuit Court for Baltimore City was timely and proper, and this Court should retain jurisdiction.

Dated:  May 20, 2011

Respectfully submitted,

_/s/_____
Peter C. Condron
Bar No. 15903
WALLACE KING DOMIKE & REISKIN PLLC
2900 K Street, N.W.
Harbourside – Suite 500
Washington D.C. 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001
E-mail: pcondron@wallaceking.com

*Counsel for Defendants Chevron
Corporation, Chevron U.S.A. Inc., Equilon
Enterprises LLC, Motiva Enterprises LLC,
Shell Oil Company, Shell Oil Products
Company LLC, Shell Petroleum, Inc., Shell
Trading (US) Company, Texaco Inc., and
TMR Company and as authorized by and on
behalf of all Defendants listed in Schedule A*

*Of counsel for Defendants Chevron Corporation,
Chevron U.S.A. Inc., and Texaco Inc.:*

Robert E. Meadows
Charles C. Correll, Jr.
James J. Maher
KING & SPALDING
1100 Louisiana, Suite 4000
Houston, Texas  77002
(713) 751-3200

## SCHEDULE A

Ashland Inc.
Atlantic Richfield Company
BP Amoco Chemical Company
BP Products North America Inc.
Chevron Corporation
Chevron U.S.A. Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company L.P.
Coastal Eagle Point Oil Company
Coastal Oil New England
ConocoPhillips Company
Crown Central LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC
Exxon Mobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Getty Petroleum Marketing Inc.
Gulf Oil Limited Partnership
Hess Corporation
Marathon Oil Company
Mobil Oil Corporation
Motiva Enterprises LLC
PDV Midwest Refining, LLC
Shell Oil Company
Shell Oil Products Company LLC
Shell Petroleum, Inc.
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
The Premcor Refining Group, Inc.
TMR Company
TOTAL PETROCHEMICALS USA, INC
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company
Valero Refining Company-Delaware LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of the foregoing was sent to all parties of record,

this 20th day of May, 2011, via the Court's CM/ECF filing system and/or via electronic mail:

John M. Broaddus
WEITZ & LUXENBERG, P.C.
200 Lake Drive East, Suite 205
Cherry Hill, New Jersey 08002

P. Scott Summy
Carla M. Burke
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219

Charles D. Macleod
Jefferson L. Blomquist
FUNK & BOLTON, P.A.
315 High Street, Suite 202
Chestertown, Maryland 21620

Michael Lorensen
Jared Adams
BOWLES RICE MCDAVID GRAFF & LOVE LLP
Post Office Drawer 1419
Martinsburg, West Virginia 25402-1419

By: /s/ Peter C. Condron